## IN THE UNITED STATES BANKRUPTCY COURT
## FOR THE DISTRICT OF DELAWARE

| | |
|---|---|
| In re: | Chapter 11 |
| Prime Core Technologies Inc., *et al.*,[1] | Case No. 23-11161 (JKS) |
| Debtors. | (Joint Administration Requested) |

**DEBTORS' MOTION FOR ENTRY OF AN ORDER (I) AUTHORIZING DEBTORS TO FILE A CONSOLIDATED CREDITOR MATRIX AND TOP 50 CREDITORS LIST; (II) AUTHORIZING REDACTION OF CERTAIN PERSONALLY IDENTIFIABLE INFORMATION; (III) AUTHORIZING THE DEBTORS TO SERVE CERTAIN PARTIES BY ELECTRONIC MAIL; (IV) APPROVING CERTAIN NOTICE PROCEDURES; AND (V) GRANTING RELATED RELIEF**

Prime Core Technologies Inc. and certain of its affiliates and subsidiaries, as debtors and debtors in possession in the above-captioned chapter 11 cases (collectively, the "Debtors") hereby move (the "Motion") for entry of an order substantially in the form attached hereto as **Exhibit A** (the "Proposed Order"), (i) authorizing the Debtors to file a consolidated matrix and list of their 50 largest unsecured creditors on a consolidated basis; (ii) authorizing the Debtors to redact certain personally identifiable information from all filings on this Court's public docket; (iii) authorizing the Debtors to serve certain parties by electronic mail; (iv) approving certain notice procedures; and (v) granted related relief.  In support thereof, the Debtors rely upon the *Declaration of Jor Law, Interim Chief Executive Officer and President of Prime Core Technologies Inc., et al., in Support of Chapter 11 Petitions and First Day Motions*

---

[1] The debtors in these chapter 11 cases, along with the last four digits of each debtor's federal tax identification number are:  Prime Core Technologies Inc. (5317); Prime Trust, LLC (6823); Prime IRA LLC (8436); and Prime Digital, LLC (4528). The Debtors' service address is 330 South Rampart Blvd., Suite 260, Las Vegas, NV 89145.

(the "First Day Declaration")[2] filed concurrently herewith. In further support of the Motion, the Debtors respectfully represent as follows:

## JURISDICTION AND VENUE

1.     The United States Bankruptcy Court for the District of Delaware (the "Court") has jurisdiction to consider the Motion pursuant to 28 U.S.C. §§ 157 and 1334 and the *Amended Standing Order of Reference* from the United States District Court for the District of Delaware, dated February 29, 2012. This is a core proceeding under 28 U.S.C. § 157(b). Venue of these cases and the Motion in this District is proper under 28 U.S.C. §§ 1408 and 1409.

2.     The legal predicates for the relief requested herein are sections 105(a), 107(c), and 521 of title 11 of the United States Code (the "Bankruptcy Code"), Rules 1007 and 2002(a) of the Federal Rules of Bankruptcy Procedure (the "Bankruptcy Rules"), and Rules 1001-1(c), 1007-1, 1007-2, 2002-1, 9013-1(m) and 9018-1(d) of the Local Rules of Bankruptcy Practice and Procedure of the United States Bankruptcy Court for the District of Delaware (the "Local Rules").

3.     Pursuant to Local Rule 9013-1(f), the Debtors confirm their consent, to the entry of a final order by the Court in connection with the Motion in the event that it is later determined that the Court, absent consent of the parties, cannot enter final orders or judgments in connection herewith consistent with Article III of the United States Constitution.

---

[2]     Capitalized terms used but not otherwise defined herein shall have the meanings ascribed to them in the First Day Declaration.

**BACKGROUND**

**I.    The Chapter 11 Cases**

1.    On August 14, 2023 (the "Petition Date"), each Debtor commenced a case by filing a voluntary petition for relief under chapter 11 of the Bankruptcy Code (collectively, the "Chapter 11 Cases").

2.    The Debtors continue to manage their properties as debtors and debtors in possession pursuant to Bankruptcy Code sections 1107(a) and 1108.[3]

3.    To date, the Office of the United States Trustee for the District of Delaware (the "U.S. Trustee") has not appointed an official committee in these Chapter 11 Cases, nor has any trustee or examiner been appointed.

4.    Additional information regarding the Debtors and these Chapter 11 Cases, including the Debtors' business operations, capital structure, financial condition, and the reasons for and objectives of these Chapter 11 Cases, is set forth in the First Day Declaration, which incorporated by reference as if fully set forth herein.

**RELIEF REQUESTED**

5.    The Debtors seek entry of the Proposed Order (a) authorizing the Debtors to file a consolidated matrix and list of their 50 largest unsecured creditors on a consolidated basis, (b) authorizing the Debtors to redact certain personally identifiable information from all filings on this Court's public docket,[4] (c) authorizing the Debtors to serve certain parties by electronic mail, (d) approving certain notice procedures, and (e) granted related relief.

---

[3]    As discussed in the First Day Declaration, prior to the Petition Date, the Debtors were subject to a Cease and Desist Order (as defined in the First Day Declaration) and, therefore the Debtors' businesses were not operating on the Petition Date.

[4]    At the U.S. Trustee's request, the name, address, e-mail address, or phone number of any creditor appointed to any official committee shall not be redacted.

**BASIS FOR RELIEF**

**I.      Maintaining a Consolidated Creditor Matrix is Warranted and Appropriate.**

6.      Bankruptcy Code section 521(a)(1)(A) requires a debtor to file a list of creditors. 11 U.S.C. § 521(a)(1)(A). Additionally, Bankruptcy Rule 1007(a)(1) requires a debtor to file "a list containing the name and address of each entity included or to be included on Schedules D, E/F, G, and H." Fed. R. Bank. P. 1007(a)(1). Likewise, Local Rule 1007-2(a) requires a debtor to file, together "with the [voluntary] petition a list containing the name and complete address of each creditor." Del. Bankr. L.R. 1007-2(a). Local Rule 2002-1(f)(v) further requires each debtor or any court-appointed claims and noticing agent to maintain a separate creditor matrix for each debtor. *See* Del. Bankr. L.R. 2002-1(f)(v).  Local Rule 1001-1(c) permits the modification of the Local Rules by the Court "in the interest of justice."  *See* Local Rule 1001-1(c).

7.      The Debtors submit that modifying the requirements of Local Rule 2002-1(f)(v) and authorizing the Debtors to file and maintain a consolidated list of creditors (the "Consolidated Creditor Matrix"), in lieu of filing individual matrices for each Debtor, is warranted in the interest of justice.[5]

8.      Here, the Debtors have in excess of 45,000 creditors, most of whom are the Debtors' customers.  Prior to entry of the Cease and Desist Order, the Debtors operated a consolidated enterprise with substantial creditor overlap.  The Debtors have identified a large number of entities and individuals to which numerous notices of certain matters in these Chapter 11 Cases must be provided. The Debtors anticipate that such notices will include the notice of

---

[5]      Contemporaneously herewith, the Debtors have filed an application seeking the appointment of a claims and noticing agent pursuant to 28 U.S.C. § 156(c) (the "Claims and Noticing Agent").  If the Motion is granted, the Claims and Noticing Agent will, among other things, (a) assist with compiling and maintaining the Consolidated Creditor Matrix, and (b) complete the mailing or e-mailing, as applicable, of notices to creditors on the Consolidated Creditor Matrix.

the commencement of these Chapter 11 Cases, the hearings on the motions requesting first and second day relief, the hearings on the bidding procedures and sale motion, the joint hearing on the adequacy of the disclosure statement and confirmation of the chapter 11 plan, to name a few.

9. Requiring the Debtors to segregate and convert their computerized records to a Debtor-specific creditor matrix format would be an unnecessarily burdensome task and would likely result in duplicative mailings, creditor confusion, and unnecessary costs. Under these circumstances, the exercise of satisfying the literal requirements of Bankruptcy Rule 1007(d) would only serve to frustrate its intended purpose.

10. Accordingly, the Debtors submit that fling a Consolidated Creditor Matrix in lieu of separate mailing matrices for each Debtor is warranted in connection with these Chapter 11 Cases.[6]

11. Moreover, Courts in this district have routinely granted relief similar to that requested in this Motion. *See, e.g.*, *In re Starry Group Holdings, Inc.*, No. 23-10219 (KBO) (Bankr. D. Del. Feb. 22, 2023), Docket No. 63 (authorizing the maintenance of a consolidated list of top 30 general unsecured creditors); *In re Kabbage, Inc. d/b/a KServicing*, No. 22-10951 (CTG) (Bankr. D. Del. Oct. 6, 2022), Docket No. 77 (same); *Clovis Oncology, Inc.*, No. 22-11292 (JKS) (Bankr. D. Del. July 23, 2023, Docket No. 982 (same); and *Gulf Coast Health Care, LLC*, No. 21-11336 (KBO) (Bankr. D. Del. Nov. 1, 2021), Docket No. 218 (authorizing the maintenance of a consolidated list of top 40 general unsecured creditors).

---

[6] If any of the Debtors' Chapter 11 Cases converts to a case under chapter 7 of the Bankruptcy Code, the applicable Debtor will maintain its own creditor mailing matrix.

**II.      Maintaining a Consolidated Top 50 Creditors List is Appropriate and Warranted.**

12.      In connection with the filing of a petition for relief, a debtor must file a list setting forth the names, addresses, and claim amounts of the creditors, excluding insiders, who hold the 20 largest unsecured claims against the debtor's estate. *See* Fed. R. Bankr. P. 1007(d). Through this Motion, the Debtors request authority to file a single list of their 50 largest non-insider, general unsecured creditors on a consolidated basis the "<u>Consolidated Top 50 Creditors List</u>").[7] Prior to the Petition Date, the Debtors operated a single business enterprise and shared many creditors.  The exercise of compiling separate top 20 lists for each individual Debtor would consume an excessive amount of the Debtors' and their advisors' limited time and resources. For these reasons, the Debtors submit that filing separate top 20 lists for each Debtor would be of limited utility.

13.      Here, instead of preparing a list of their top 20 unsecured creditors as required under Bankruptcy Rule 1007(d), the Debtors prepared a Consolidated Top 50 Creditors List to, among other things, provide the U.S. Trustee with a clear picture of the Debtors' creditor body. One of the primary purposes of filing an unsecured creditors list is to assist the U.S. Trustee in evaluating whether to form an official committee of general unsecured creditors and identifying potential candidates to serve on same. Because the Debtors' significant unsecured creditors are captured on the Consolidated Top 50 Creditors List, the U.S. Trustee will have a sufficiently clear picture of the Debtors' unsecured creditor body.  In addition, the Consolidated Top 50 Creditors List will alleviate administrative burdens, costs, and the possibility of duplicative service.

---

[7]      If any of the Debtors' Chapter 11 Cases converts to a case under chapter 7 of the Bankruptcy Code, the applicable Debtor will file an unconsolidated top 20 list within 10 days of any such conversion.

14.     Moreover, courts in this district have routinely granted relief similar to the relief requested in this Motion. *See, e.g.*, *See, e.g.*, *In re Starry Group Holdings, Inc.*, No. 23-10219 (KBO) (Bankr. D. Del. Feb. 22, 2023), Docket No. 63 (authorizing the maintenance of a consolidated list of top 30 general unsecured creditors); *In re Kabbage, Inc. d/b/a KServicing*, No. 22-10951 (CTG) (Bankr. D. Del. Oct. 6, 2022), Docket No. 77 (same); *Clovis Oncology, Inc.*, No. 22-11292 (JKS) (Bankr. D. Del. July 23, 2023, Docket No. 982 (same); and *Gulf Coast Health Care, LLC*, No. 21-11336 (KBO) (Bankr. D. Del. Nov. 1, 2021), Docket No. 218 (authorizing the maintenance of a consolidated list of top 40 general unsecured creditors).

## III.    Redaction of Certain Personal Identification Information in Public Filings is Warranted and Appropriate.

15.     Although the public has a common law "right of access to judicial proceedings and records," *Goldstein v. Forbes (In re Cendant Corp.)*, 260 F.3d 183, 192 (3d Cir. 2001), the Bankruptcy Code permits courts, in appropriate circumstances, to protect individuals from an undue risk of identity theft or other unlawful injury by limiting the public's access, placing papers under seal, or otherwise entering orders to prohibit the dissemination of sensitive information. 11 U.S.C. § 107(c); *see also Cendant*, 260 F.3d at 194 (noting the public's right of access "is not absolute") (citation and internal quotation marks omitted); *see also Leucadia, Inc. v. Applied Extrusion Tech., Inc.*, 998 F.2d 157, 165 (3d Cir. 1993) ("Although the right of access is firmly entrenched, so also is the correlative principle that the right is not absolute.") (citation and internal quotation marks omitted).

16.     Specifically, Bankruptcy Code section 107 enables a court to issue orders that protect parties from the potential harm that could result from disclosing confidential information. Bankruptcy Code section 107(b) provides, in pertinent part, as follows:

> On the request of a party in interest, the bankruptcy court shall, and on the bankruptcy court's own motion, the bankruptcy court may

protect an entity with respect to a trade secret or confidential
research, development, or commercial information.

11 U.S.C. § 107(b)(1); *see* Fed. R. Bankr. P. 9018 (same).

17.     Additionally, Bankruptcy Code section 107(c) provides:

The bankruptcy court, for cause, may protect an individual, with
respect to the following types of information to the extent the court
finds that disclosure of such information would create undue risk of
identity theft or other unlawful injury to the individual or the
individual's property[.]

A.  Any means of identification (as defined in section 1028(d) of
title 18 [of the United States Code]) contained in a paper filed,
or tobe filed, in a case under [the Bankruptcy Code].

B.  Other information contained in a paper described in
subparagraph (A).

11 U.S.C. § 107(c)(1).

18.     Courts in this district have stressed the importance of redacting individual

creditors' personally identifiable information. In overruling an objection by the U.S. Trustee in

*Art Van Furniture* to relief similar to that which is being requested herein, Judge Sontchi noted

that the proposed redaction is not a "burden of proof" issue so "much as a common sense issue."

Hr'g Tr. at 25:6–7, *In re Art Van Furniture, LLC*, No. 20-10553 (CSS) (Bankr. D. Del. Mar. 10,

2020) [Docket No. 82].[8] Judge Sontchi found that "at this point and given the risks associated

---

[8] Similarly, Judge Sontchi previously overruled the U.S. Trustee's objection to the redaction of individuals'
information and found that "it's just plain common sense in 2019—soon to be 2020—to put as little information
out as possible about people's personal lives to present [sic] scams . . . [Identity theft] is a real-life issue, and, of
course, the issue of domestic violence is extremely important." Hr'g Tr. at 48:20–22, 49:3–5, *In re Anna
Holdings*, No. 19-12551 (CSS) (Bankr. D. Del. Dec. 3, 2019) [Docket No. 112].

Notably, Judge Sontchi acknowledged that "the world is very different from [the 1980s] when you and I started
practice with the problems of identity theft" and that his perspective had evolved in that he was not previously
aware of "the dangers with this kind of information becoming public." *See* Hr'g Tr. at 45:25-46:2, 47:22–24.
The Debtors reserve the right to supplement the record with respect to such risks insofar as they are not self-
evident in this instance. *Id.*

with having any kind of private information out on the internet, [redaction] has really become routine [and] I think obvious relief." *Id*. at 25:13–16. Similarly, in *Clover Technologies*, Judge Owens overruled the U.S. Trustee's objection, noting that:

> [t]o me it is common sense. I don't need evidence that there is, at best, a risk of identity theft and worse a risk of personal injury from listing someone's name and address on the internet by way of the court's electronic case filing system and, of course, the claims agent's website. . . . The court can completely avoid contributing to the risk by redacting the addresses. And while there is, of course, an important right of access we routinely redact sensitive and confidential information for corporate entities and redact individual's home addresses.

Hr'g Tr. at 24:21-25, 25:9-10, *In re Clover Techs. Grp.*, LLC, No. 19-12680 (KBO) (Bankr. D. Del. Jan. 22, 2020) [Docket No. 146]. And, in *Forever 21*, Judge Gross overruled the U.S. Trustee's objection finding that "[w]e live in a new age in which the theft of personal identification is a real risk, as is injury to persons who, for personal reasons, seek to have their addresses withheld." Hr'g Tr. at 60:22–25, *In re Forever 21, Inc.*, No. 19-12122 (KG) (Bankr. D. Del. Dec. 19, 2019) [Docket No. 605].

19.     The risk related to disclosure is not merely speculative. In at least one recent chapter 11 case, the abusive former partner of a debtor's employee used the publicly accessible creditor and employee information filed in the chapter 11 case to track the employee at her new address, which had not been publicly available until then, forcing the employee to change addresses again. *See In re Charming Charlie Holdings, Inc*., No. 19-11534 (CSS) (Jul. 11, 2019), D.I. 4 (describing incident which occurred during Charming Charlie's 2017 bankruptcy cases). Other courts have since expressed serious privacy and safety concerns and recognized that the threat to the individuals involved is real. See In re Forever 21, Inc., No. 19- 12122 (KG) (Dec. 20, 2019), D.I. 605 (Dec. 19, 2019 Hr'g Tr. at 61:1–8) ("In addition, the Court's concern with the disclosure of addresses is not speculative. The Court, for example, recently had a situation in

which a former spouse in an abuse situation was able to locate his former spouse through the creditors' matrix. The Court has serious concerns with requiring disclosure of home addresses of employees and the violation of privacy and safety concerns. The threat to the employees is real.").

20.     In this case, the risk of identity theft or injury to innocent individual creditors—customers and employees—of the Debtors outweighs the presumption in favor of public access to judicial records and papers, or concerns of judicial efficiency. *See In re Continental Airlines*, 150 B.R. 334, 340–41 (D. Del. 1993). Absent such relief, individuals will be unnecessarily rendered more susceptible to identity theft and could jeopardize the safety of individuals.

21.     Here, the majority of the Debtors' creditors are customers and, absent the relief requested herein, the Debtors will be required to disclose the personally identifiable information of their customers in the Consolidated Creditor Matrix, certificates or affidavits of services, the Debtors' Schedules of Assets and Liabilities and Statements of Financial Affairs (together, the "Schedules and Statements"), and other filings on the Court's public docket (collectively, the "Public Filings").

22.     The Debtors will instruct the Claims and Noticing Agent to serve the individuals at their personal addresses or e-mail addresses, as applicable, ensuring that each individual creditor will receive the same notices in these Chapter 11 Cases as all other creditors without the potentially harmful disclosure of these details. The Debtors will also make the unredacted version of any applicable filings redacted pursuant to the Proposed Order available to the Court, the U.S. Trustee, and counsel to any official committee appointed in these Chapter 11 Cases and, upon Court order, to any other party.

23.     For these reasons, the Debtors respectfully submit that cause exists to authorize the Debtors to seal all personally identifiable information in Public Filings, pursuant to 11 U.S.C. § 107(c)(1).

24.     Moreover, Courts in this district have routinely granted relief similar to that requested in this Motion. *See, e.g.*, *In re FTX Trading LTD., et al.*, No. 22-11068 (JTD) (June 15, 2023) (authorizing debtors to redact certain names, addresses, and e-mail addresses of customers); *In re Cred Inc*., No. 20-12836 (JTD) (Dec. 21, 2020), Docket No. 264 (authorizing debtors to redact names, addresses and e-mail addresses of customers); *In re Starry Group Holdings, Inc.*, No. 23-10219 (KBO) (Bankr. D. Del. Feb. 22, 2023), Docket No. 63 (authorizing the redaction of the home addresses of individuals on the creditor matrix); *In re Kabbage, Inc. d/b/a KServicing*, No. 22-10951 (CTG) (Bankr. D. Del. Oct. 6, 2022), Docket No. 77 (same); *Clovis Oncology, Inc.*, No. 22-11292 (JKS) (Bankr. D. Del. July 23, 2023, Docket No. 982 (authorizing the redaction of certain personal identification information); and *Gulf Coast Health Care, LLC*, No. 21-11336 (KBO) (Bankr. D. Del. Nov. 1, 2021), Docket No. 218 (authorizing the redaction of current and former employees' address information).

## IV.     E-Mail Service to Creditors in Warranted and Appropriate

25.     Although the Bankruptcy Rules generally require notices to be served on creditors at their physical addresses, they give significant latitude to bankruptcy courts with respect to modifying the general rule. *See* Fed. R. Bankr. P. 2002(m); Fed. R. Bankr. P. 9007. Bankruptcy courts have explicit authority to modify the manner in which notice is given. Fed. R. Bankr. P. 2002(m); *see In re Cred Inc., et al.,* Case No.20-12836 (JTD) (Bankr. D. Del. Nov. 10, 2020) (authorizing debtor cryptocurrency platform to serve creditors via e-mail).

26.     As noted above, the Debtors have in excess of 45,000 creditors, most of whom are the Debtors' customers. Additionally, the Debtors' numerous former customers also will require service of a voluminous number of notices.[9] Because the Debtors operate an online cryptocurrency platform, all of the Debtors current and former customers interact with the Debtors via e-mail, and the Debtors interact with their customers online through web-based applications and e-mail.

27.     Accordingly, the Debtors request authority to serve creditors by e-mail, where an e-mail account is available to the Debtors. Not only is this likely the most efficient manner by which service of all interested parties can be completed, it is also the most likely to facilitate creditor responses because the customer base currently receives all notices electronically from the Debtors.

28.     The Debtors submit that implementation of the procedures requested herein are appropriate in these Chapter 11 Cases and well within the Court's equitable powers under section Bankruptcy Code 105(a).

**V.      The Court May Establish Procedures for Providing Notice to Creditors**

29.     As stated above, by separate application, the Debtors are seeking the appointment of the Claims and Noticing Agent. The Debtors propose that the Claims and Noticing Agent undertake all mailings or e-mailing, as applicable, directed by the Court, the U.S. Trustee, or as required by the Bankruptcy Code. The assistance of the Claims and Noticing Agent with mailing and e-mailing, as applicable, and preparing creditor lists and notices will ease the administrative burden on the Court and the Clerk's Office.

---

[9]     The Debtors also had more than 4 million customer accounts within the three-year period preceding the Petition Date. Although the majority of such customers may no longer be creditors, in an abundance of caution, the Debtors intend to provide notice of these Chapter 11 Cases to such customers.

30.     In order to assist the Claims and Noticing Agent with these tasks, the Debtors respectfully request that the Court establish the procedures outlined herein. Bankruptcy Rule 2002(a) provides, in relevant part, that "the clerk, or some other person as the court may direct, shall give the debtor, the trustee, all creditors and indenture trustees at least 21 days' notice by mail of . . . the meeting of creditors under § 341 or § 1104(b) of the Code." Fed. R. Bank. P. 2002(a)(1). As requested above, the Debtors seek authority for the Claims and Noticing Agent to serve the notice of commencement of these Chapter 11 Cases (the "<u>Notice of Commencement</u>") by e-mail to creditors, and will serve in that manner, if granted.

31.     Bankruptcy Rule 2002(l) permits the Court to order "notice by publication if it finds that notice by mail is impracticable or that it is desired to supplement the notice." Fed. R. Bankr. P. 2002(l). In addition to e-mailing the Notice of Commencement, the Debtors propose to publish the Notice of Commencement, as soon as reasonably practicable, on the website maintained by the Claims and Noticing Agent at https://cases.stretto.com/primetrust/. The Debtors believe that such publication of the Notice of Commencement provides sufficient notice to persons who did not otherwise receive notice by e-mail.

32.     These proposed procedures will ensure that the Debtors' creditors receive prompt notice of the commencement of these Chapter 11 Cases and of the meeting of creditors. The Debtors submit that implementing these procedures is within the Court's equitable powers under Bankruptcy Code section 105(a). The Debtors accordingly request that the Court approve the foregoing as providing sufficient notice of the commencement of these Chapter 11 Cases.

<b><u>RESERVATION OF RIGHTS</u></b>

33.     Nothing in this Motion or any order granting the relief requested in this Motion, and no action take pursuant to the relief requested or granted (including any payment made in

13

accordance with any such order):  (a) is intended or shall be deemed to constitute an assumption

of any agreement pursuant to Bankruptcy Code section 365 or an admission as to the basis for or

the validity of any claim against the Debtors or their estates; (b) shall impair, prejudice, waive, or

otherwise affect the rights of the Debtors or their estates to contest the validity, priority, or

amount of any claim against the Debtors or their estates; (c) shall impair, prejudice, waive, or

otherwise affect the rights of the Debtors or their estates with respect to any and all claims or

causes of action against any third party; (d) shall be construed as a promise to pay a claim or

continue any applicable program postpetition, which decision shall be in the sole discretion of

the Debtors; (e) an implication, admission, or finding that any particular claim is an

administrative expense claim, other priority claim, or otherwise of a type specified or defined in

this Motion or any order granting the relief requested by this Motion; (f) an admission to the

validity, priority, enforceability, or perfection of any lien on, security interest in, or other

encumbrance on property of the Debtors' estates; or (g) a waiver or limitation of any claims,

causes of action, or other rights of the Debtors or any other party in interest against any person or

entity under the Bankruptcy Code or any other applicable law. Any payment made pursuant to an

order of the Court granting the relief requested herein is not intended to be nor should it be

construed as an admission as to the validity of any claim or a waiver of the Debtors' rights to

subsequently dispute such claim.

## NOTICE

34.      The Debtors will provide notice of this Motion to:  (a) the U.S. Trustee; (b) the

holders of the 50 largest unsecured claims against the Debtors (on a consolidated basis); (c) the

Internal Revenue Service; (d) the Securities and Exchange Commission; (e) the United States

Attorney's Office for the District of Delaware; (f) the state attorneys general for all states in

which the Debtors conduct business; and (g) any party that has requested notice pursuant to

14

Bankruptcy Rule 2002. As this Motion is seeking "first day" relief, the Debtors will service copies of this Motion and any order entered in respect to this Motion as required by Local Rule 9013-1(m). The Debtors submit that no other or further notice is required.

WHEREFORE, the Debtors respectfully request that this Court enter the Proposed Order, substantially in the form attached hereto as **Exhibit A**, granting the relief requested herein and such other and further relief as may be just and proper.

Dated:  August 24, 2023
Wilmington, Delaware

**MCDERMOTT WILL & EMERY LLP**

    */s/ Maris J. Kandestin*
Maris J. Kandestin (No. 5294)
1007 North Orange Street, 10th Floor
Wilmington, Delaware 19801
Telephone:  (302) 485-3900
Facsimile:  (302) 351-8711
Email:        mkandestin@mwe.com

-and-

Darren Azman (admitted *pro hac vice*)
Joseph B. Evans (admitted *pro hac vice*)
One Vanderbilt Avenue
New York, New York 10017-3852
Telephone:  (212) 547-5400
Facsimile:  (646) 547-5444
Email:        dazman@mwe.com
                 jbevans@mwe.com

-and-

Gregg Steinman (admitted *pro hac vice*)
333 SE 2nd Avenue, Suite 5400
Miami, Florida 33131
Telephone:  (305) 358-3500
Facsimile:  (305) 347-6500
Email:        gsteinman@mwe.com

*Proposed Counsel for the Debtors and Debtors in Possession*