## IN THE UNITED STATES BANKRUPTCY COURT
## FOR THE DISTRICT OF DELAWARE

| | |
|---|---|
| In re: | Chapter 11 |
| Prime Core Technologies Inc., *et al.*,[1] | Case No. 23-11161 (JKS) |
| Debtors. | (Joint Administration Requested) |

### DEBTORS' MOTION FOR ENTRY OF INTERIM AND FINAL ORDERS (I)(A) APPROVING DEBTORS' PROPOSED FORM OF ADEQUATE ASSURANCE OF PAYMENT FOR FUTURE UTILITY SERVICES, (B) APPROVING DEBTORS' PROPOSED PROCEDURES FOR RESOLVING ADDITIONAL ASSURANCE REQUESTS, AND (C) PROHIBITING UTILITY PROVIDERS FROM ALTERING, REFUSING, OR DISCONTINUING SERVICES, AND (II) GRANTING RELATED RELIEF

Prime Core Technologies Inc. and certain of its affiliates and subsidiaries, as debtors and debtors-in-possession in the above-captioned chapter 11 cases (collectively, the "Debtors"), hereby move (the "Motion") for entry of interim and final orders, substantially in the forms attached hereto as **Exhibit A** and **Exhibit B** (the "Interim Order" and the "Final Order," respectively), granting the relief described below. In support thereof, the Debtors rely upon the *Declaration of Jor Law, Interim Chief Executive Officer and President of Prime Core Technologies Inc., et al., in Support of Chapter 11 Petitions and First Day Motions* (the "First Day Declaration")[2] filed concurrently herewith. In further support of the Motion, the Debtors respectfully represent as follows:

---

[1] The debtors in these chapter 11 cases, along with the last four digits of each debtor's federal tax identification number are:  Prime Core Technologies Inc. (5317); Prime Trust, LLC (6823); Prime IRA LLC (8436); and Prime Digital, LLC (4528). The Debtors' service address is 330 South Rampart Blvd., Suite 260, Las Vegas, NV 89145.

[2] Capitalized terms used but not otherwise defined in this Motion shall have the meanings ascribed to them in the First Day Declaration.

## JURISDICTION AND VENUE

1.      The United States Bankruptcy Court for the District of Delaware (the "Court")
has jurisdiction to consider the Motion pursuant to 28 U.S.C. §§ 157 and 1334 and the *Amended
Standing Order of Reference* from the United States District Court for the District of Delaware,
dated February 29, 2012. This is a core proceeding under 28 U.S.C. § 157(b). Venue of these
cases and the Motion in this District is proper under 28 U.S.C. §§ 1408 and 1409.

2.      The legal predicates for the relief requested herein are sections 105(a), 366,
1107(a), and 1108 of title 11 of the United States Code (the "Bankruptcy Code"), Rules 2002 and
6003 of the Federal Rules of Bankruptcy Procedure (the "Bankruptcy Rules"), and Rules 2002-1
and 9013-1(m) of the Local Rules of Bankruptcy Practice and Procedure of the United States
Bankruptcy Court for the District of Delaware (the "Local Rules").

3.      The Debtors confirm their consent, pursuant to Local Rule 9013-1(f), to the entry
of a final order by the Court in connection with the Motion in the event that it is later determined
that the Court, absent consent of the parties, cannot enter final orders or judgments in connection
herewith consistent with Article III of the United States Constitution.

## BACKGROUND

### I.      The Chapter 11 Cases

4.      On August 14, 2023 (the "Petition Date"), each Debtor commenced a case by
filing a voluntary petition for relief under chapter 11 of the Bankruptcy Code (collectively, the
"Chapter 11 Cases"). The Debtors have requested that these Chapter 11 Cases be jointly
administered.

5.      The Debtors continue to manage their properties as debtors and debtors-in-
possession pursuant to Bankruptcy Code sections 1107(a) and 1108.

6.      To date, the Office of the United States Trustee for the District of Delaware (the "U.S. Trustee") has not appointed an official committee in these Chapter 11 Cases, nor has any trustee or examiner been appointed.

7.      Additional information regarding the Debtors and these Chapter 11 Cases, including the Debtors' business operations, capital structure, financial condition, and the reasons for and objectives of these Chapter 11 Cases, is set forth in the First Day Declaration, which is incorporated by reference as if fully set forth herein.

## II.    Utility Services and Utility Providers

8.      In connection with the operation of their businesses and management of their properties, the Debtors obtain telecommunications, digital infrastructure, and other services (collectively, the "Utility Services" and, the obligations arising therefrom, the "Utility Obligations") from the utility providers (the "Utility Providers"). As of the Petition Date, the Debtors had approximately five utility accounts. A list of the Debtors' Utility Providers and the respective Utility Services they provide (the "Utility Provider List") is attached as **Exhibit C** to the Motion.[3] The relief requested herein pertains to all Utility Providers providing Utility Services to the Debtors and is not limited to those listed on the Utility Provider List.

9.      Further, pursuant to the Debtors' real property lease agreement, certain Utility Services, including electric, sewage, and waste management, are billed directly to the Debtors' landlord and passed through to the Debtors as part of the Debtors' lease payments in the ordinary course of business.

---

[3]    The inclusion of any entity on, or the omission of any entity from, **Exhibit C** is not an admission by the Debtors that such entity is, or is not, a utility within the meaning of section 366 of the Bankruptcy Code, and the Debtors reserve all rights with respect to any such determination. Additionally, although **Exhibit C** is intended to be comprehensive and the Debtors have, in good faith, diligently tried to identify all of their Utility Providers, the Debtors may have inadvertently omitted one or more Utility Providers. By this Motion, the Debtors request relief applicable to all Utility Providers, regardless of whether such Utility Provider is specifically identified on **Exhibit C**.

10.     The Debtors require the Utility Services to properly maintain and support their ongoing business. Should any Utility Provider refuse or discontinue service, even for a brief period, the Debtors' business would be severely disrupted, to the detriment of their estates and creditors. Such disruption would adversely affect, among other things, customer goodwill and employee relations, which, in turn, would jeopardize the Debtors' reorganization efforts to reach a value-maximizing resolution for the Debtors' estates and all of their stakeholders. It is imperative that the Utility Services continue uninterrupted during these Chapter 11 Cases.

11.     Prior to the Petition Date, the Debtors paid on average approximately $202,772.70 per month for Utility Services based on a historical average payment for the twelve (12)-month period ended August 1, 2023.The Debtors do not anticipate that the monthly average will change materially during these Chapter 11 Cases. For the avoidance of doubt, the foregoing monthly average does not include the Utility Deposit (defined below) to be paid pursuant to this Motion.

### III.    Proposed Adequate Assurance and Related Procedures

#### A.    Proposed Adequate Assurance

12.     The Debtors intend to pay all timely undisputed postpetition obligations owed to the Utility Providers. The Debtors believe that cash in the Debtors' corporate treasury will provide sufficient liquidity for the Debtors to pay their postpetition Utility Obligations in the ordinary course of business.

13.     Although the Debtors believe that the foregoing may be sufficient to satisfy the requirements under Bankruptcy Code section 366, as additional assurance of payment, the Debtors propose to, within 14 days after entry of the Interim Order, place a deposit equal to approximately two (2) weeks of the Debtors' average monthly cost of Utility Services, $105,000.00 (the "Utility Deposit") into a segregated account (the "Utility Deposit Account") for the benefit of each Utility Provider (the  Proposed Adequate Assurance").

14.     The Debtors are in the processing of opening an account at Western Alliance Bank for the duration of these Chapter 11 Cases to serve as adequate assurance of performance for the benefit of the Utility Providers and may be applied to any postpetition defaults in payment to the Utility Providers. During the pendency of these Chapter 11 Cases, the Debtors propose to adjust the amount in the Utility Deposit Account to reflect factors including (a) termination of Utility Services by the Debtors, regardless of any Additional Assurance Request (as defined below) and (b) agreements reached with Utility Providers. These adjustments will permit the Debtors to maintain the Utility Deposit Account that consistently provides the Utility Providers with a two-week deposit on account of such services. The Debtors' creditors will not have any lien on the Utility Deposit.

15.     The Debtors submit that the Proposed Adequate Assurance constitutes sufficient adequate assurance to the Utility Providers for the provision of future Utility Services in full satisfaction of Bankruptcy Code section 366.

**B.     Proposed Adequate Assurance Procedures.**

16.     Although the Debtors do not believe that any adequate assurance beyond that proposed in this Motion is necessary, the Debtors submit that any Utility Provider that is dissatisfied with the Proposed Adequate Assurance should be required to make a request for additional assurance (an "Additional Assurance Request") pursuant to the following Adequate Assurance Procedures (the "Adequate Assurance Procedures"):

    a)  Within 48 hours after the date of entry of the Interim Order, the Debtors will cause to be served by first class mail a copy of the Interim Order to the Utility Providers on the Utility Provider List.

    b)  If a Utility Provider is not satisfied with the Proposed Adequate Assurance and seeks additional adequate assurance of payment, it must serve an Additional Assurance Request upon (i) proposed counsel to the Debtors, McDermott Will & Emery LLP (a) 1007 North Orange Street, 10th Floor, Wilmington, Delaware 19801 (Attn: Maris J. Kandestin

(mkandestin@mwe.com)), (b) One Vanderbilt Avenue, New York, New York 10017-3852 (Attn: Darren Azman (dazman@mwe.com)) and (c) 333 SE 2nd Avenue, Suite 5400, Miami, Florida 33131 (Attn: Gregg Steinman (gsteinman@mwe.com)); (ii) counsel to any official committee appointed in the Chapter 11 Cases; and (iii) the United States Trustee for the District of Delaware, 844 King Street, Suite 2207, Lockbox 35, Wilmington, Delaware 19801 (Attn: Joseph Cudia (joseph.cudia@usdoj.gov)) (collectively, the "Adequate Assurance Notice Parties") so that it is received on or before 4:00 p.m. (prevailing Eastern time) on the day that is fourteen (14) days following entry of the Interim Order.

c) Each Additional Assurance Request must (a) be made in writing, (b) set forth the amount and form of additional assurance of payment requested, (c) set forth the type of Utility Services, any account numbers, and the location for which Utility Services are provided, (d) include a summary of the Debtors' payment history to such Utility Provider relevant to the affected account(s), including whether the Utility Provider holds any deposits or other security, and if so, in what amount, and (e) set forth why the Utility Provider believes the Proposed Adequate Assurance is insufficient. A Utility Provider may make an Additional Assurance Request at any time during the pendency of these Chapter 11 Cases.

d) Upon the Debtors' receipt of an Additional Assurance Request, the Debtors shall promptly negotiate with the requesting Utility Provider and resolve its Additional Assurance Request.

e) Should the Debtors be unable to reach a mutual resolution with respect to an Additional Assurance Request, the Debtors shall, upon reasonable notice, request a hearing before the Court to determine the adequacy of assurance of payment (the "Adequate Assurance Dispute") pursuant to Bankruptcy Code section 366(c)(3).

f) Any Utility Provider that makes an Additional Assurance Request is prohibited from altering, refusing, or discontinuing service, including as a result of unpaid charges for prepetition services, pending resolution of such Additional Assurance Request by agreement or order of this Court.

g) The Debtors may, in their sole discretion, resolve any Additional Assurance Request by mutual agreement with the requesting Utility Provider without further notice to the Court or any other party in interest and may, in connection with any such agreement, provide a Utility Provider with additional adequate assurance of future payment, including, but not limited to, a cash deposit, prepayment, letter of credit, or other forms of security, without further order of the Court to the extent that the Debtors believe that such additional assurance is reasonable in the exercise of their business judgment, and the Debtors may, by mutual agreement with the objecting Utility Provider and without further order of the Court, reduce the Utility Deposit by an

amount not exceeding the requesting Utility Provider's estimated two-week utility expense.

h) Upon the closure of one of the Debtors' locations and the discontinuance of the Utility Services associated therewith, or the termination of Utility Services independent thereof, the Debtors may, in their sole discretion and without further order of the Court, reduce the Utility Deposit by an amount not exceeding, for each of the Utility Services being discontinued, the amount of the Utility Deposit then attributable to the applicable Utility Provider; *provided* that for any Utility Provider for which the Utility Deposit is reduced, the Debtors shall have paid such Utility Provider in full for any outstanding post-petition Utility Services before reducing the Adequate Assurance Deposit.

17.     The Debtors submit that the Utility Deposits to be held in the Utility Deposit Account constitute adequate assurance to the Utility Providers. Accordingly, the Debtors request that, from and after entry of the Interim Order, any Utility Provider that fails to serve upon the Adequate Assurance Notice Parties an Additional Assurance Request or file an Objection (as defined below) to this Motion, as described below, be deemed to have (a) received adequate assurance of payment as required by Bankruptcy Code section 366 and be prohibited from altering, refusing, or discontinuing Utility Services, including as a result of unpaid charges for prepetition Utility Services, and (b) waived any right to seek additional adequate assurance during the course of these Chapter 11 Cases, except as provided in Bankruptcy Code section 366(c)(3).

**C.     Subsequent Modifications of the Utility Provider List and Procedures for Subsequently Identified Utility Providers**

18.     Although the Debtors have made a diligent and good faith effort to identify all of the Debtors' Utility Services on the Utility Provider List, certain Utility Providers may have been inadvertently omitted. To the extent the Debtors identify additional Utility Providers, the Debtors seek authority, in their sole discretion, to amend or supplement the Utility Provider List. The Debtors will file any such amendments and serve copies of the Motion, and the Interim Order or

the Final Order (as applicable) on such newly identified Utility Providers (each a

"Subsequently Identified Utility Provider").

19.     The Debtors request that any entered orders relating to the Motion be binding on

all Utility Providers, regardless of when any particular Utility Provider was added to the Utility

Provider List.

20.     In addition, the Debtors propose that any Subsequently Identified Utility Provider

have the right to make an Additional Assurance Request on the Adequate Assurance Notice

Parties within fourteen (14) days after it receives notice of the Motion (the "Additional

Assurance Request Deadline"). Any such request must be actually received by the Adequate

Assurance Notice Parties by the Additional Assurance Request Deadline. If no timely Additional

Assurance Request is filed, the Debtors propose that the provisions of the Interim Order or Final

Order, whichever is in effect, apply to the Subsequently Identified Utility Provider. Should any

Subsequently Identified Utility Provider make an Additional Assurance Request, the Debtors

request that such Subsequently Identified Utility Provider be prohibited from discontinuing,

altering, or refusing service to the Debtors, including as a result of unpaid charges for prepetition

services, pending resolution of such request.

**D.      Prohibition on Altering, Refusing, or Discontinuing Service**

21.     Pending the entry of Interim and Final Orders with respect to this Motion and

pending resolution of any Additional Assurance Request, the Debtors respectfully request that

the Utility Providers, including the Subsequently Identified Utility Providers, be prohibited from

(a) discriminating against the Debtors, (b) altering, refusing, or discontinuing service to

the Debtors, or (c) requiring payment of a deposit or receipt or any other security for continued

service other than the Utility Deposit, as a result of the Debtors' bankruptcy filings or any

outstanding prepetition invoices.

**RELIEF REQUESTED**

22.     The Debtors seek entry of the Interim Order and the Final Order (a)(i) approving

the Debtors' Proposed Adequate Assurance for Utility Services to Utility Providers;

(ii) approving the Debtors' proposed Adequate Assurance Procedures; and (iii) prohibiting the

Utility Providers from altering, refusing, or discontinuing services; and (b) granting related

relief.

**BASIS FOR RELIEF**

I.     **The Proposed Adequate Assurance Provides Utility Providers with Adequate Assurance of Payment**

23.     Bankruptcy Code section 366(a) provides that a "utility may not alter, refuse, or

discontinue service to, or discriminate against, the trustee or the debtor solely on the basis of the

commencement of a case under this title" or for late payment for service provided before an

order for relief. 11 U.S.C. § 366(a). Bankruptcy Code section 366(b) goes on to provide,

however, that the utility provider "may alter, refuse, or discontinue service if neither the trustee

nor the debtor . . . furnishes adequate assurance of payment, in the form of a deposit or other

security, for service after such date." 11 U.S.C. § 366(b). Bankruptcy Code section 366(c)(2)

further provides that in a case filed under chapter 11 of the Bankruptcy Code, a utility may alter

or discontinue service "if during the 30-day period beginning on the date of the filing of the

petition, the utility does not receive from the debtor or the trustee adequate assurance of payment

for utility service that is satisfactory to the utility." 11 U.S.C. § 366(c)(2). Bankruptcy Code

section 366(c)(1)(A) defines "assurance of payment" to include, among other things, "a cash

deposit." 11 U.S.C. § 366(c)(l)(A)(i).

24.     Although assurance of payment must be "adequate," it need not constitute an

absolute guarantee of a debtors' ability to pay. *See, e.g.*, *In re Great Atl. & Pac. Tea Co.*,

No. 11-CV-1338, 2011 WL 5546954, at *5 (Bankr. S.D.N.Y. Nov. 14, 2011) (finding that "[c]ourts will approve an amount that is adequate enough to insure against unreasonable risk of nonpayment, but are not required to give the equivalent of a guaranty of payment in full") (citation omitted); *see also In re Caldor, Inc.*, 199 B.R. 1, 3 (S.D.N.Y. 1996), *aff'd sub nom. Va. Elec. & Power Co. v. Caldor, Inc.*, 117 F.3d 646 (2d Cir. 1997) ("Section 366(b) requires . . . adequate assurance of payment. The statute does not require an absolute guarantee of payment.") (internal quotation and citation omitted); *see also In re Anchor Glass Container Corp.,* 342 B.R. 872, 875 (Bankr. M.D. Fla. 2005) (finding that section 366 of the Bankruptcy Code "does not require a guarantee of payment") (citations omitted).

25.    When considering whether a given assurance of payment is "adequate," the Court should examine the totality of the circumstances to make an informed decision as to whether the Utility Provider will be subject to an unreasonable risk of nonpayment. *See Mass. Elec. Co. v. Keydata Corp. (In re Keydata Corp.)*, 12 B.R. 156, 158 (B.A.P. 1st Cir. 1981) (citing *In re Cunha*, 1 B.R. 330 (Bankr. E.D. Va. 1979)) (stating that the meaning of "'adequate assurance of payment' . . . depends upon the facts and circumstances of each case, keeping in mind the intent of Congress to protect the utility provider while preventing discrimination against the debtor"); *see also In re Adelphia Bus. Solutions, Inc.*, 280 B.R. 63, 82–83 (Bankr. S.D.N.Y. 2002) (finding that "the heart of the inquiry . . . is the examination of the totality of the circumstances to make an informed judgment as to whether or not the utilities would be subject to an unreasonable risk of payment").

26.    Courts have recognized that, in determining the requisite level of adequate assurance, however, "a bankruptcy court must focus upon the need of the utility for assurance, and . . . require that the debtor supply no more than that, since the debtor almost perforce has a

conflicting need to conserve scarce financial resources." *Va. Elec. & Power Co.*, 117 F.3d at 650

(internal quotations omitted) (citing *In re Penn Jersey Corp.*, 72 B.R. 981, 985

(Bankr. E.D. Pa. 1987)); *see also In re Penn. Cent. Transp. Co.*, 467 F.2d 100, 103–04

(3d Cir. 1972) (affirming the bankruptcy court's ruling that no utility deposits were necessary

where such deposits likely "would jeopardize the continuing operation of the [debtor] merely to

give further security to suppliers who already are reasonably protected"). Additionally, the Court

is not bound by state or local regulations that set adequate assurance of payment postpetition.

*In re Begley,* 41 B.R. 402, 405–06 (Bankr. D. Pa. 1984); *see also In re Monroe Well Serv., Inc.,*

83 B.R. 317, 321–22 (Bankr. E.D. Pa. 1988) (noting that without utility service, the debtors

"would have to cease operations" and that section 366 of the Bankruptcy Code "was intended to

limit the leverage held by utility companies, not increase it"). Accordingly, demands by a Utility

Provider for a guarantee of payment should be refused when the Debtors' specific circumstances

already afford adequate assurance of payment.

      27.     Here, the Debtors respectfully submit that the Utility Providers are adequately

assured against any risk of nonpayment for future services. The Debtors will place a deposit

equal to approximately two (2) weeks of the Debtors' average monthly cost of Utility Services

into the Utility Deposit Account for the benefit of any Utility Provider that requests its *pro rata*

portion of the Utility Deposit. *See Great Atl. & Pac. Tea Co.,* 2011 WL 5546954, at *2, 5, 10

(affirming bankruptcy court's finding that utility providers were adequately assured payment

through a two (2) week cash deposit). The deposit and the Debtors' ongoing ability to meet

obligations as they come due in the ordinary course provide assurance of the Debtors' payment

of their future obligations. Accordingly, the Proposed Adequate Assurance provides the Utility

Providers with adequate assurance of payment consistent with the requirements of Bankruptcy Code sections 366(b) and 366(c)(l)(A)(i), to the extent applicable.

28.     Moreover, the Proposed Adequate Assurance comports with the policy underlying Bankruptcy Code section 366, which is to protect debtors from utility service cutoffs upon the filing of a bankruptcy case, while also providing utility companies with adequate assurance that the debtor will pay for postpetition services. *See* H.R. Rep. No. 95-595, at 350 (1978), *reprinted in* 1978 U.S.C.C.A.N. 5963, 6306; *see also In re Jones,* 369 B.R. 745, 748 (B.A.P. 1ˢᵗ Cir. 2007) ("The purpose of § 366 is 'to prevent the threat of termination from being used to collect pre-petition debts while not forcing the utility to provide services for which it may never be paid.'" (quoting *Begley v. Phila. Elec. Co.,* 760 F.2d 46, 49 (3d Cir. 1985)).

29.     Further, courts in this district have routinely granted relief similar to the relief requested herein. *See, e.g.*, *In re Starry Group Holdings, Inc.*, No. 23-10219 (KBO) (Bankr. D. Del. Feb. 22, 2023), Docket No. 62 (authorizing adequate assurance consisting of a deposit equal to approximately two weeks' payment for utility services in a segregated account); *In re Kabbage, Inc.*, No. 22-10951 (CTG) (Bankr. D. Del. Oct. 21, 2022), Docket No. 134 (same); *In re Clovis Oncology, Inc.*, No. 22-11292 (JKS) (Bankr. D. Del. Jan. 18, 2023), Docket No. 217 (same); *In re Gulf Coast Health Care, LLC*, No. 21-11336 (KBO) (Bankr. D. Del. Nov. 10, 2021), Docket No. 222 (same).

**II.     The Debtors' Proposed Adequate Assurance Procedures Properly Balance the Interests of the Utility Providers and those of the Debtors and their Estates.**

30.     Uninterrupted Utility Services are essential to the preservation of the Debtors' business and, hence, the overall success of these Chapter 11 Cases. Should any Utility Provider refuse or discontinue service, even for a brief period, the Debtors' business would be severely disrupted, which would d adversely affect, among other things, customer goodwill and employee

relations, which, in turn, would jeopardize the Debtors' reorganization efforts to reach a value-maximizing resolution for the Debtors' estates and all of their stakeholders. Accordingly, it is essential that the Utility Services continue uninterrupted during these Chapter 11 Cases.

31.     The Debtors' proposed Adequate Assurance Procedures provide the Utility Providers with a fair and orderly process for seeking modification of the Proposed Adequate Assurance while protecting the Debtors from being forced to address numerous Additional Assurance Requests in a disorganized manner and at a time when the Debtors' efforts could be more productively focused on the seamless continuation of their existing business and furtherance of their reorganization in chapter 11.

32.     Here, notwithstanding the Debtors' belief that the Proposed Adequate Assurance constitutes sufficient adequate assurance, any rights the Utility Providers believe they have under Bankruptcy Code sections 366(b) and 366(c)(2) are wholly preserved by the Adequate Assurance Procedures. *See In re Circuit City Stores, Inc.,* No. 08–35653, 2009 WL 484553 at *6 (Bankr. E.D. Va. Jan. 14, 2009) (adopting similar adequate assurance procedures and holding that "notwithstanding [a] determination on an interim basis that the adequate assurance proposed by the [d]ebtors constitute[d] sufficient adequate assurance under 366(b), [the] utility companies . . . [could] also exercise their rights under 366(c)(2) in accordance with the [p]rocedures established by the [c]ourt"). The Utility Providers still may choose, in accordance with the established Adequate Assurance Procedures, to request modification of the Proposed Adequate Assurance. *Id*. On the other hand, the Adequate Assurance Procedures avoid a haphazard and chaotic process whereby each Utility Provider could make an extortionate, last-minute demand for adequate assurance, which the Debtors would be pressured to pay under the threat of losing critical Utility Services. *Id.*

33.     The Adequate Assurance Request Procedures are reasonable and in accord with the purposes of Bankruptcy Code section 366. As a result, the Court should grant the relief requested herein. Further, the Court possesses the power, under Bankruptcy Code section 105(a), to "issue any order, process, or judgment that is necessary or appropriate to carry out the provisions of this title." 11 U.S.C. § 105(a).

34.     Further, courts in this district have routinely granted relief similar to the relief requested herein. *See, e.g.*, *In re Starry Group Holdings, Inc.*, No. 23-10219 (KBO) (Bankr. D. Del. Feb. 22, 2023), Docket No. 62 (authorizing adequate assurance procedures giving utility providers the opportunity to request additional assurance and debtors the ability to request a hearing before the court to determine the adequacy of assurance); *In re Kabbage, Inc.*, No. 22-10951 (CTG) (Bankr. D. Del. Oct. 21, 2022), Docket No. 134 (same); *In re Clovis Oncology, Inc.*, No. 22-11292 (JKS) (Bankr. D. Del. Jan. 18, 2023), Docket No. 217 (same); *In re Gulf Coast Health Care, LLC*, No. 21-11336 (KBO) (Bankr. D. Del. Nov. 10, 2021), Docket No. 222 (same).

Case 23-11161-JKS    Doc 17    Filed 08/24/23    Page 15 of 17

## THE REQUIREMENTS OF BANKRUPTCY RULE 6003 ARE SATISFIED

35. Bankruptcy Rule 6003 provides that the relief requested in this Motion may be granted if the "relief is necessary to avoid immediate and irreparable harm." Fed. R. Bankr. P. 6003. As described above, any disruption of the Utility Services would substantially diminish or impair the Debtors' efforts in these Chapter 11 Cases to preserve and maximize the value of their estates. For this reason and those set forth above, the Debtors respectfully submit that Bankruptcy Rule 6003(b) has been satisfied and the relief requested herein is necessary to avoid immediate and irreparable harm to the Debtors and their estates.

## RESERVATION OF RIGHTS

36. Nothing in this Motion or any order granting the relief requested in this Motion, and no action take pursuant to the relief requested or granted (including any payment made in accordance with any such order):  (a) is intended or shall be deemed to constitute an assumption of any agreement pursuant to Bankruptcy Code section 365 or an admission as to the basis for or the validity of any claim against the Debtors or their estates; (b) shall impair, prejudice, waive, or otherwise affect the rights of the Debtors or their estates to contest the validity, priority, or amount of any claim against the Debtors or their estates; (c) shall impair, prejudice, waive, or otherwise affect the rights of the Debtors or their estates with respect to any and all claims or causes of action against any third party; (d) shall be construed as a promise to pay a claim or continue any applicable program postpetition, which decision shall be in the sole discretion of the Debtors; (e) an implication, admission, or finding that any particular claim is an administrative expense claim, other priority claim, or otherwise of a type specified or defined in this Motion or any order granting the relief requested by this Motion; (f) an admission to the validity, priority, enforceability, or perfection of any lien on, security interest in, or other

15

encumbrance on property of the Debtors' estates; or (g) a waiver or limitation of any claims, causes of action, or other rights of the Debtors or any other party in interest against any person or entity under the Bankruptcy Code or any other applicable law. Any payment made pursuant to an order of the Court granting the relief requested herein is not intended to be nor should it be construed as an admission as to the validity of any claim or a waiver of the Debtors' rights to subsequently dispute such claim.

### **WAIVER OF BANKRUPTCY RULES 6004(A) AND 6004(H)**

37.     To implement the foregoing successfully, the Debtors seek a waiver of the notice requirements under Bankruptcy Rule 6004(a) and the 14-day stay of an order authorizing the use, sale, or lease of property under Bankruptcy Rule 6004(h).

### **NOTICE**

38.     The Debtors will provide notice of this Motion to:  (a) the U.S. Trustee; (b) the holders of the 50 largest unsecured claims against the Debtors (on a consolidated basis); (c) the Internal Revenue Service; (d) the Securities and Exchange Commission; (e) the United States Attorney's Office for the District of Delaware; (f) the state attorneys general for all states in which the Debtors conduct business; (g) the Utility Providers; and (h) any party that has requested notice pursuant to Bankruptcy Rule 2002. As this Motion is seeking "first day" relief, the Debtors will service copies of this Motion and any order entered in respect to this Motion as required by Local Rule 9013-1(m). The Debtors submit that no other or further notice is required.

WHEREFORE, the Debtors respectfully request that the Court enter the Interim and Final Orders, substantially in the forms attached hereto as **Exhibit A** and **Exhibit B**, respectively, granting the relief requested herein and such other and further relief as may be just and proper.

Dated:  August 24, 2023
      Wilmington, Delaware

**MCDERMOTT WILL & EMERY LLP**

_/s/ Maris J. Kandestin_
Maris J. Kandestin (No. 5294)
1007 North Orange Street, 10th Floor
Wilmington, Delaware 19801
Telephone:  (302) 485-3900
Facsimile:   (302) 351-8711
Email:          mkandestin@mwe.com

-and-

Darren Azman (admitted _pro hac vice_)
Joseph B. Evans (admitted _pro hac vice_)
One Vanderbilt Avenue
New York, New York 10017-3852
Telephone:  (212) 547-5400
Facsimile:   (646) 547-5444
Email:          dazman@mwe.com
              jbevans@mwe.com

-and-

Gregg Steinman (admitted _pro hac vice_)
333 SE 2nd Avenue, Suite 5400
Miami, Florida 33131
Telephone:  (305) 358-3500
Facsimile:   (305) 347-6500
Email:          gsteinman@mwe.com

_Proposed Counsel for the Debtors and Debtors in Possession_