**IN THE UNITED STATES BANKRUPTCY COURT**
**FOR THE DISTRICT OF DELAWARE**

| | |
|---|---|
| In re: | Chapter 11 |
| Prime Core Technologies Inc., *et al.*,[1] | Case No. 23-11161 (JKS) |
| Debtors. | (Joint Administration Requested) |

**DEBTORS' MOTION FOR ENTRY OF INTERIM AND FINAL ORDERS (I) AUTHORIZING THE DEBTORS TO (A) MAINTAIN EXISTING INSURANCE POLICIES AND PAY ALL INSURANCE OBLIGATIONS ARISING THEREUNDER, (B) CONTINUE TO PAY CERTAIN BROKERAGE FEES, (C) RENEW, SUPPLEMENT, MODIFY, OR PURCHASE INSURANCE COVERAGE, AND (D) MAINTAIN THEIR SURETY BOND PROGRAM, (II) AUTHORIZING BANKS TO HONOR RELATED CHECKS AND TRANSFERS, AND (III) GRANTING RELATED RELIEF**

Prime Core Technologies Inc. and certain of its affiliates and subsidiaries, as debtors and debtors-in-possession in the above-captioned chapter 11 cases (collectively, the "Debtors"), hereby move (the "Motion") for entry of interim and final orders, substantially in the forms attached hereto as **Exhibit A** and **Exhibit B** (the "Interim Order" and "Final Order," respectively), granting the relief described below. In support hereof, the Debtors rely on the *Declaration of Jor Law, Interim Chief Executive Officer and President of Prime Core Technologies Inc., et al., in Support of Chapter 11 Petitions and First Day Motions* (the "First Day Declaration")[2] filed concurrently herewith, and further represent as follows:

---

[1] The debtors in these chapter 11 cases, along with the last four digits of each debtor's federal tax identification number are: Prime Core Technologies Inc. (5317); Prime Trust, LLC (6823); Prime IRA LLC (8436); and Prime Digital, LLC (4528). The Debtors' service address is 330 South Rampart Blvd., Suite 260, Las Vegas, NV 89145.

[2] Capitalized terms used but not otherwise defined herein shall have the meanings ascribed to them in the First Day Declaration.

1

**JURISDICTION AND VENUE**

1. The United States Bankruptcy Court for the District of Delaware (this "Court") has jurisdiction over this matter pursuant to 28 U.S.C. §§ 157 and 1334 and the *Amended Standing Order of Reference* from the United States District Court for the District of Delaware dated February 29, 2012. This is a core proceeding pursuant to 28 U.S.C. § 157(b)(2). Venue of these chapter 11 cases and this Motion is proper in this district under 28 U.S.C. §§ 1408 and 1409.

2. The legal predicates for the relief requested herein are sections 105(a), 363(b), 1107(a), and 1108 of title 11 of the United States Code, as amended (the "Bankruptcy Code") and Rules 6003 and 6004(h) of the Federal Rules of Bankruptcy Procedures (the "Bankruptcy Rules").

3. Pursuant to Rule 9013-1(f) of the Local Rules of Bankruptcy Practice and Procedure for the District of Delaware (the "Local Rules"), the Debtors confirm their consent to the entry of a final order by the Court in connection with this Motion to the extent that it is later determined that the Court, absent consent of the parties, cannot enter final orders or judgments in connection herewith consistent with Article III of the United States Constitution.

**BACKGROUND**

**I.   The Chapter 11 Cases**

4. On August 14, 2023 (the "Petition Date"), each Debtor commenced a case by filing a voluntary petition for relief under chapter 11 of the Bankruptcy Code (collectively, the "Chapter 11 Cases"). The Debtors have requested that these Chapter 11 Cases be jointly administered.

5. The Debtors continue to manage their properties as debtors and debtors-in-possession pursuant to Bankruptcy Code sections 1107(a) and 1108.

6.     To date, the Office of the United States Trustee for the District of Delaware (the "U.S. Trustee") has not appointed an official committee in these Chapter 11 Cases, nor has any trustee or examiner been appointed.

7.     Additional information regarding the Debtors and these Chapter 11 Cases, including the Debtors' business operations, capital structure, financial condition, and the reasons for and objectives of these Chapter 11 Cases, is set forth in the First Day Declaration, which is incorporated by reference as if fully set forth herein.

**I.    Overview of Insurance Obligations.**

8.     The Debtors maintain 9 insurance policies (as may be amended, modified, or supplemented as described herein and, together with any insurance policies that the Debtors may purchase after the date hereof, the "Insurance Policies") administered by multiple third-party insurance carriers (collectively, the "Insurance Carriers"). The Insurance Policies provide coverage for, among other things, property, general liability, umbrella liability, international liability, directors and officers liability, fiduciary liability, automobile liability, errors and omissions, cyber errors and omissions liability, and commercial crime liability.[3] A schedule of the Insurance Policies is attached hereto as **Exhibit C** (the "Insurance Schedule").[4] For each Insurance Policy, the Insurance Schedule includes, among other things: (i) the applicable

---

[3]   Contemporaneously herewith, the Debtors have filed the [*Debtor's Motion for Entry of Interim and Final Orders (I) Authorizing Debtors to (A) Pay Prepetition Wages and (B) Pay Expenses Arising Under Employee Benefits Programs and Pay Related Administrative Obligations, and (II) Authorizing Banks to Honor and Process Checks and Transfers Related to Such Obligations, and (II) Granting Related Relief* (the "Wages Motion"). The Wages Motion seeks, among other things, authority to continue to (i) provide various benefits, including applicable insurance coverage, for employee health and welfare programs, and (ii) administer the Debtors' workers' compensation program and honor all obligations in connection therewith in the ordinary course of business.

[4]   The Debtors believe that **Exhibit C** is a complete list of their Insurance Policies. To the extent that any Insurance Policy has been omitted from that list, the Debtors request that the order granting the relief sought herein apply to any and all of Debtors' Insurance Policies.

3

Insurance Carrier; (ii) the type of coverage; (iii) the policy number; (iv) the annual premium; and (v) the policy coverage dates.

9.  The Insurance Policies are essential to preserve the value of the Debtors' businesses, property, and assets during these Chapter 11 Cases. Bankruptcy Code section 1112(b)(4)(C) provides that "failure to maintain appropriate insurance that poses a risk to the estate or to the public" is "cause" for mandatory conversion or dismissal of a chapter 11 case. 11 U.S.C. § 1112(b)(4)(C). Moreover, the *Operating Guidelines for Chapter 11 Cases of the Office of the United States Trustee for the District of Delaware* (the "U.S. Trustee") require the Debtors to maintain insurance coverage throughout the pendency of these Chapter 11 Cases.

10.  The annual premiums under the current Insurance Policies total approximately $2.3 million in the aggregate.[5] The premiums are paid to the relevant Insurance Carriers either as annual prepayments or as installment payments. The estimated prepetition amount accrued, but not yet owing, in connection with the Insurance Policies is $16,955.64.[6] The Debtors seek authority to continue the Insurance Policies in the ordinary course of business and to pay prepetition premiums in respect of the Insurance Policies as they come due.

**II.     Broker Fees.**

11.  In connection with the Insurance Policies, the Debtors obtain insurance brokerage services from Woodruff Sawyer & Co. (the "Broker"). The Broker assists the Debtors in obtaining comprehensive insurance coverage for the Debtors' operations by aiding with the procurement and negotiation of the Insurance Policies and enabling the Debtors to obtain those

---

[5] Calculations for total annual premiums and for the annual premium under each Policy listed in the Insurance Schedule include additional charges such as broker commissions, surcharges, policy fees, and charges for surplus lines. The Debtors seek to make payments to these charges as well as on the base premiums due.

[6] This amount does not include a premium payment in the amount of $50,502.00 that was initiated three days before the Petition Date on account of the Debtors' workers' compensation policy but which did not clear. The Debtors are seeking relief to pay such premium in connection with the Wages Motion.

4

policies on advantageous terms at competitive rates. The Broker receives compensation (the "Broker Fees") for its services through commissions from insurers.

### III.    Surety Bond Program

12.    In the ordinary course of business, certain statutes, rules, contracts, and regulations require that the Debtors provide surety bonds to certain third parties, often to governmental units or other public agencies, to secure the Debtors' payment or performance of certain obligations (the "Surety Bond Program"). These include, among other things, obligations related to money transmission. Many states classify businesses engaged in the exchange of virtual currency, such as the Debtors' business, as money transmitters. Money transmitters are required to obtain a separate license in all states from which and to which money is transmitted, and a surety bond is required in connection with certain state licensing protocols. As such, failing to provide, maintain, or timely replace their surety bonds would prevent the Debtors from undertaking essential functions related to their businesses and would work contrary to the Debtors' chapter 11 goals.

13.    The Debtors have outstanding surety bonds issued by Allegheny Casualty Company (collectively, the "Surety"). As of the Petition Date, the Debtors collectively maintain approximately 23 surety bonds in the aggregate amount of approximately $7.6 million (the "Surety Bonds"). A schedule of the Surety Bonds is attached hereto as **Exhibit D**.[7] The premiums related to the Surety Bond Program generally are determined on an annual basis and are paid by the Debtors when the bonds are issued and annually upon each renewal (the "Surety

---

[7]    Although **Exhibit D** is intended to be comprehensive, the Debtors may have inadvertently omitted one or more Surety Bonds. By this Motion, the Debtors request relief applicable to all Surety Bonds, regardless of whether such Surety Bond is specifically identified on Exhibit D. Further, to the extent there is a discrepancy between the schedule of Surety Bonds listed in Exhibit D and the Surety Bonds, the Surety Bonds and business records relating thereto shall control.

Premiums" and, together with the Insurance Premium, the "Premium Payments"). The total estimated Surety Premiums for the Surety Bonds is approximately $191,125 per year.

14. The purpose of the Surety Bonds is to shift the risk of the Debtors' nonperformance or nonpayment from the Debtors to a surety, subject to the terms of the bond. A surety bond is unlike an insurance policy in that if a surety incurs a loss or expense in relation to a surety bond, such surety is entitled to recover the full amount of that loss or expense from the principal and contractual indemnitors (*i.e.*, the applicable Debtor). To that end, the Surety may require the Debtors to furnish the Surety with cash collateral or other collateral, such as letters of credit, to back the Surety Bonds and effectively indemnify any loss, cost, or expense the Surety may incur on account of its issuance of the Surety Bonds. As of the Petition Date, the Debtors had posted $5,726,250 in collateral in connection with their Surety Bonds.

15. The Debtors do not believe they owe any prepetition amounts on account of the Surety Premiums. Out of an abundance of caution, and to ensure uninterrupted coverage, the Debtors request authority to continue paying the Surety Premiums in the ordinary course of business on a postpetition basis, including any prepetition obligations related thereto.

16. The Debtors obtain their Surety Bonds through their surety broker, Alpha Surety (the "Surety Broker"). The Surety Broker assists the Debtors with, among other things, obtaining the Surety Bonds and evaluating bond offerings. It also assists the Debtors with the procurement and negotiation of the Surety Bonds, enabling the Debtors to obtain the bonds on advantageous terms and at competitive rates. The Debtors pay the Surety Broker a fee for all brokerage services (the "Surety Brokerage Fees" and, together with the Insurance Brokerage Fees, the "Brokerage Fees"). The Debtors pay the Surety Brokerage Fees on account of brokerage services as part of the Surety Premium payments for each Surety Bond. As of the Petition Date, the

Debtors do not believe there are any unpaid prepetition obligations due and owing in connection with the Surety Brokerage Fees. Out of an abundance of caution, the Debtors seek authority to honor any prepetition amounts owed in connection with the Surety Brokerage Fees and to pay any Surety Brokerage Fees that may arise on a postpetition basis in the ordinary course of business to ensure uninterrupted coverage under the Surety Bond Program.

17. To maximize value and further their chapter 11 goals, the Debtors must maintain the existing Surety Bond Program, including, without limitation: (a) paying Surety Premiums as they come due; (b) renewing or potentially acquiring additional bonding capacity, as necessary, in the ordinary course of business; (c) requesting releases from duplicate bonding obligations; (d) canceling, revising, and/or supplementing Surety Bonds; (e) renewing, supplementing, and/or canceling letters of credit or other forms of collateral as may be necessary; (f) paying Surety Brokerage Fees as they come due; (g) providing collateral and complying with collateral and indemnity requirements in the ordinary course of business; (h) replacing the Surety Broker as may be necessary; and (i) executing other agreements in connection with the Surety Bond Program. Accordingly, the Debtors request authority to honor any amounts owed on account of the Surety Bond Program, to continue the Surety Bond Program in the ordinary course of business, and to continue acquiring additional bonds to ensure that the Surety Bond Program and the Debtors' business operations remain uninterrupted on a postpetition basis.

## **RELIEF REQUESTED**

18. By this Motion, the Debtors respectfully request entry of the Interim Order and Final Order: (i) authorizing, but not directing, the Debtors to (a) continue to maintain and administer their prepetition insurance policies and revise, extend, renew, supplement, or change such policies, as needed, (b) pay or honor obligations arising under or in connection with their

7

insurance policies, including prepetition obligations arising in the ordinary course of business, (c) continue to pay certain brokerage fees, and (d) maintain their Surety Bond Program; and (ii) authorizing the Debtors' banks and other financial institutions (collectively, the "<u>Banks</u>") to honor and process related checks and electronic transfers.

## BASIS FOR RELIEF

**I.  Continuation of the Insurance Policies and Surety Bond Program and Payment of Prepetition Obligations in Respect Thereof Are Necessary and Appropriate.**

19. The Court may grant the relief requested herein pursuant to Bankruptcy Code section 363. Section 363(b)(1) provides that a debtor in possession, "after notice and a hearing, may use, sell, or lease, other than in the ordinary course of business, property of the estate." 11 U.S.C. § 363(b)(1). Under this section, a court may authorize a debtor to pay certain prepetition claims. *See, e.g., In re Ionosphere Clubs, Inc.*, 98 B.R. 174, 175 (Bankr. S.D.N.Y. 1989) (finding that a sound business justification existed to justify payment of prepetition wages); *see also Armstrong World Indus., Inc. v. James A. Phillips, Inc. (In re James A. Phillips, Inc.)*, 29 B.R. 391, 397 (S.D.N.Y. 1983) (relying on Bankruptcy Code section 363 to allow a contractor to pay prepetition claims of suppliers who were potential lien claimants because the payments were necessary for general contractors to release funds owed to debtors). To do so, "the debtor must articulate some business justification, other than the mere appeasement of major creditors." 98 B.R. at 175.

20. In addition, Bankruptcy Code sections 1107(a) and 1108 authorize a debtor in possession to continue to operate its business. 11 U.S.C. §§ 1107(a), 1108. Indeed, a debtor in possession operating a business under Bankruptcy Code section 1108 has a duty to protect and preserve the value of its business, and prepetition claims may be paid if necessary to perform the debtor's duty. *See In re CoServ, L.L.C.*, 273 B.R. 487, 497 (Bankr. N.D. Tex. 2002) ("There are

occasions when this duty can only be fulfilled by the preplan satisfaction of a prepetition claim."). The *CoServ* court specifically noted that the pre-plan satisfaction of prepetition claims would be a valid exercise of the debtor's fiduciary duty when the payment "is the only means to effect a substantial enhancement of the estate." *Id.*

21.   To supplement these explicit powers, Bankruptcy Code section 105(a) empowers the Court to "issue any order, process, or judgment that is necessary or appropriate to carry out the provisions of this title." 11 U.S.C. § 105(a). Numerous courts have recognized that payments to prepetition creditors are appropriate pursuant to Bankruptcy Code section 105(a) under the "doctrine of necessity" or the "necessity of payment" rule where such payments are necessary to the continued operation of the debtor's business. *See, e.g., In re Lehigh & New England Ry. Co.*, 657 F.2d 570, 581 (3d Cir. 1981) (holding that a court could authorize the payment of prepetition claims if such payment was essential to the continued operation of the debtor); *In re Penn Cent. Transp. Co.*, 467 F.2d 100, 102 n.1 (3d Cir. 1972) (holding that the necessity of payment doctrine permits "immediate payment of claims of creditors where those creditors will not supply services or material essential to the conduct of the business until their pre-reorganization claims have been paid"); *Ionosphere Clubs*, 98 B.R. at 176 (recognizing "the existence of the judicial power to authorize a debtor . . . to pay prepetition claims where such payment is essential to the continued operations of the debtor."); *see also In re Just for Feet, Inc.*, 242 B.R. 821, 825 (D. Del. 1999) ("The Supreme Court, the Third Circuit and the District of Delaware all recognize the court's power to authorize payment of pre-petition claims when such payment is necessary for the debtor's survival during chapter 11."); *In re Columbia Gas Sys., Inc.*, 171 B.R. 189, 191-92 (Bankr. D. Del. 1994) (finding that a debtor is entitled to pay certain prepetition creditors upon a

showing that the payment is "essential to the continued operation of the business") (citations omitted).

22. Here, the Debtors seek to continue their existing Insurance Policies and Surety Bond Program and continue to honor their obligations thereunder in the ordinary course of their business on a postpetition basis. Such obligations include, among other things, renewing the Insurance Policies and Surety Bond Program when they expire, and paying the premiums when they come due. Further, the Insurance Policies and Surety Bond Program cover obligations that are required by law or regulation, as described above. The Debtors' failure to maintain, renew, or timely replace existing Insurance Policies and Surety Bonds may jeopardize the Debtors' ability to preserve and maximize value for the benefit of the Debtors' estates, creditors, and parties in interest.

23. Although the Debtors believe continuing the Insurance Policies and Surety Bond Program is within their authority to continue in the ordinary course of business, out of an abundance of caution and to ensure authority to pay any prepetition obligations related to the Insurance Policies and Surety Bond Program, the Debtors are seeking Court approval for the Debtors' authority to maintain, continue, renew, revise, and supplement the Insurance Policies and Surety Bond Program under Bankruptcy Code sections 105(a) and 363(b). The use of estate property should be authorized under section 363(b) so long as a sound business purpose exists for the transaction. *See, e.g., Ionosphere Clubs*, 98 B.R. at 175 (Bankr. S.D.N.Y. 1989).

24. Once the debtor articulates a reasonable basis for its business decisions, "courts will generally not entertain objections to the debtor's conduct." *Comm. of Asbestos-Related Litigants v. JohnsManville Corp. (In re Johns-Manville Corp.)*, 60 B.R. 612, 616 (Bankr. S.D.N.Y. 1986). There is a presumption that "in making a business decision the directors of a

corporation acted on an informed basis, in good faith and in the honest belief that the action taken was in the best interests of the company." *In re Integrated Res., Inc*., 147 B.R. 650, 656 (S.D.N.Y. 1992) (quoting *Smith v. Van Gorkom*, 488 A.2d 858, 872 (Del. 1985)). Indeed, when applying the "business judgment" standard, courts show great deference to a debtor's business decisions. *See Integrated Res*., 147 B.R. at 656 ("Courts are loath to interfere with corporate decisions absent a showing of bad faith, self-interest, or gross negligence."); *In re First Wellington Canyon Assocs.*, No. 89-593, 1989 WL 106838, at *3 (N.D. Ill. Sept. 8, 1989) (stating that "the debtor's business judgment . . . must be accorded deference unless shown that the bankrupt's decision was taken in bad faith or in gross abuse of the bankrupt's retained discretion.").

25. The relief sought by this Motion is appropriate under each of the foregoing standards. In light of the importance of maintaining insurance and surety bond coverage with respect to their business activities, the Debtors believe it is in the best interest of their estates to maintain the Insurance Policies and Surety Bond Program to pay any Premium Payments necessary to do so, as well as to revise, extend, supplement, or change insurance coverage, as necessary, pursuant to Bankruptcy Code section 363(b)(1). If the Insurance Policies or Surety Bond Program lapse, or if certain of the Insurance Carriers or the Surety cancel the Insurance Policies or Surety or otherwise refuse to continue doing business with the Debtors on account of unpaid premiums before the Debtors are able to find replacement coverage, the Debtors' estates could be exposed to significant liabilities. The loss of any insurance or surety bond coverage would impose considerable administrative and financial burden on the Debtors, requiring the Debtors' management to expend significant attention and resources to secure replacement coverage at a critical juncture in these Chapter 11 Cases. Additionally, a lapse in coverage may

render the Debtors non-compliant with the U.S. Trustee's requirement that debtors maintain insurance coverage during these Chapter 11 Cases. Accordingly, the Debtors respectfully submit that the approval of this Motion is appropriate and in the best interests of the Debtors' estates, creditors, and other interested parties.

### II.     Authorizing and Directing Banks is Appropriate.

26.     The Debtors also request that the Court authorize and direct the Banks when requested by the Debtors, in their discretion, to receive, process, honor, and pay all checks or electronic fund transfers drawn on the Debtors' bank accounts presented for payment of, and to honor all fund transfer requests made by the Debtors related to, the claims that the Debtors request authority to pay in this Motion, regardless of whether the checks were presented or fund transfer requests were submitted before, on, or after the Petition Date, provided that sufficient funds are available in the applicable bank accounts to cover the checks and electronic fund transfers. The Debtors also request that the Banks be authorized to rely on the Debtors' designation or representation that any particular check or electronic payment request has been approved pursuant to the Interim Order and the Final Order.

27.     The Debtors have sufficient liquidity to pay the amounts set forth in this Motion in the ordinary course of business and have implemented controls to ensure that prepetition claims will not be paid out except as authorized by this Court. The Debtors therefore submit that the payment-processing procedures described in this Motion are appropriate.

28.     In addition, under the Debtors' existing cash management system, the Debtors can readily identify checks or wire transfer requests as relating to any authorized payment in respect of the relief requested herein. Accordingly, the Debtors believe that checks or wire transfer requests, other than those relating to authorized payments, will not be honored inadvertently.

Therefore, the Debtors respectfully request that the Court authorize all applicable financial institutions, when requested by the Debtors, to receive, process, honor, and pay any and all checks or wire transfer requests in respect of the relief requested in this Motion.

## THE REQUIREMENTS OF BANKRUPTCY RULE 6003 ARE SATISFIED

29.     Bankruptcy Rule 6003 provides that the relief requested in this Motion may be granted if the "relief is necessary to avoid immediate and irreparable harm." Fed. R. Bankr. P. 6003. As described above, any disruption of the Insurance Policies and Surety Bond Program would substantially diminish or impair the Debtors' efforts in these Chapter 11 Cases to preserve and maximize the value of their estates. For this reason and those set forth above, the Debtors respectfully submit that Bankruptcy Rule 6003(b) has been satisfied and the relief requested herein is necessary to avoid immediate and irreparable harm to the Debtors and their estates.

## RESERVATION OF RIGHTS

30.     Nothing in this Motion or any order granting the relief requested in this Motion, and no action take pursuant to the relief requested or granted (including any payment made in accordance with any such order):  (a) is intended or shall be deemed to constitute an assumption of any agreement pursuant to Bankruptcy Code section 365 or an admission as to the basis for or the validity of any claim against the Debtors or their estates; (b) shall impair, prejudice, waive, or otherwise affect the rights of the Debtors or their estates to contest the validity, priority, or amount of any claim against the Debtors or their estates; (c) shall impair, prejudice, waive, or otherwise affect the rights of the Debtors or their estates with respect to any and all claims or causes of action against any third party; (d) shall be construed as a promise to pay a claim or continue any applicable program postpetition, which decision shall be in the sole discretion of the Debtors; (e) an implication, admission, or finding that any particular claim is an administrative expense claim, other priority claim, or otherwise of a type specified or defined in

this Motion or any order granting the relief requested by this Motion; (f) an admission to the validity, priority, enforceability, or perfection of any lien on, security interest in, or other encumbrance on property of the Debtors' estates; or (g) a waiver or limitation of any claims, causes of action, or other rights of the Debtors or any other party in interest against any person or entity under the Bankruptcy Code or any other applicable law. Any payment made pursuant to an order of the Court granting the relief requested herein is not intended to be nor should it be construed as an admission as to the validity of any claim or a waiver of the Debtors' rights to subsequently dispute such claim.

## **WAIVER OF BANKRUPTCY RULES 6004(A) AND 6004(H)**

31. To implement the foregoing successfully, the Debtors seek a waiver of the notice requirements under Bankruptcy Rule 6004(a) and the 14-day stay of an order authorizing the use, sale, or lease of property under Bankruptcy Rule 6004(h).

## **NOTICE**

32. The Debtors will provide notice of this Motion to: (a) the U.S. Trustee; (b) the holders of the 50 largest unsecured claims against the Debtors (on a consolidated basis); (c) the Internal Revenue Service; (d) the Securities and Exchange Commission; (e) the United States Attorney's Office for the District of Delaware; (f) the state attorneys general for all states in which the Debtors conduct business; (g) the Insurance Carriers; (h) the Surety; (i) the Banks; and (j) any party that has requested notice pursuant to Bankruptcy Rule 2002. As this Motion is seeking "first day" relief, the Debtors will service copies of this Motion and any order entered in respect to this Motion as required by Local Rule 9013-1(m). The Debtors submit that no other or further notice is required.

WHEREFORE, the Debtors respectfully request that this Court enter the Interim Order and the Final Order, substantially in the form annexed hereto as **Exhibit A** and **Exhibit B**, respectively, granting the relief requested herein and such other and further relief as may be just and proper.

| | |
|---|---|
| Dated:  August 24, 2023<br>Wilmington, Delaware | **MCDERMOTT WILL & EMERY LLP**<br><br> /s/ *Maris J. Kandestin*<br>Maris J. Kandestin (No. 5294)<br>1007 North Orange Street, 10th Floor<br>Wilmington, Delaware 19801<br>Telephone:  (302) 485-3900<br>Facsimile:   (302) 351-8711<br>Email:          mkandestin@mwe.com<br><br>-and-<br><br>Darren Azman (admitted *pro hac vice*)<br>Joseph B. Evans (admitted *pro hac vice*)<br>One Vanderbilt Avenue<br>New York, New York 10017-3852<br>Telephone:  (212) 547-5400<br>Facsimile:   (646) 547-5444<br>Email:          dazman@mwe.com<br>                     jbevans@mwe.com<br><br>-and-<br><br>Gregg Steinman (admitted *pro hac vice*)<br>333 SE 2nd Avenue, Suite 5400<br>Miami, Florida 33131<br>Telephone:  (305) 358-3500<br>Facsimile:   (305) 347-6500<br>Email:          gsteinman@mwe.com<br><br>*Proposed Counsel to the Debtors and Debtors in Possession* |