**IN THE UNITED STATES BANKRUPTCY COURT**
**FOR THE DISTRICT OF DELAWARE**

| | |
|---|---|
| In re: | Chapter 11 |
| Prime Core Technologies Inc., *et al.*,[1] | Case No. 23-11161 (JKS) |
| Debtors. | (Joint Administration Requested) |

**DEBTORS' MOTION FOR ENTRY OF INTERIM AND
FINAL ORDERS (I) AUTHORIZING DEBTORS TO PAY CERTAIN
PREPETITION TAXES AND FEES AND (II) GRANTING RELATED RELIEF**

Prime Core Technologies Inc. and certain of its affiliates and subsidiaries, as debtors and debtors-in-possession in the above-captioned chapter 11 cases (collectively, the "Debtors"), hereby move (the "Motion") for entry of interim and final orders, substantially in the forms attached hereto of **Exhibit A** and **Exhibit B** (the "Interim Order" and "Final Order," respectively), granting the relief described below. In support thereof, the Debtors rely upon the *Declaration of Jor Law, Interim Chief Executive Officer and President of Prime Core Technologies Inc., et al., in Support of Chapter 11 Petitions and First Day Motions* (the "First Day Declaration"),[2] filed concurrently herewith. In further support of the Motion, the Debtors respectfully represent as follows:

**JURISDICTION AND VENUE**

1.      The United States Bankruptcy Court for the District of Delaware (this "Court") has jurisdiction over this matter pursuant to 28 U.S.C. §§ 157 and 1334 and the *Amended*

---

[1]    The debtors in these chapter 11 cases, along with the last four digits of each debtor's federal tax identification number are:  Prime Core Technologies Inc. (5317); Prime Trust, LLC (6823); Prime IRA LLC (8436); and Prime Digital, LLC (4528). The Debtors' service address is 330 South Rampart Blvd., Suite 260, Las Vegas, NV 89145.

[2]    Capitalized terms used but not otherwise defined in this Motion shall have the meanings ascribed to them in the First Day Declaration.

*Standing Order of Reference* from the United States District Court for the District of Delaware dated February 29, 2012. This is a core proceeding pursuant to 28 U.S.C. § 157(b)(2). Venue of these chapter 11 cases and this Motion is proper in this district under 28 U.S.C. §§ 1408 and 1409. This is a core proceeding pursuant to 28 U.S.C. § 157(b)(2). Venue of these chapter 11 cases and this Motion is proper in this district under 28 U.S.C. §§ 1408 and 1409.

2.      The legal predicates for the relief requested herein are sections 105(a), 363(b), 507(a)(8), 541, 1107(a), and 1108 of title 11 of the United States Code, as amended (the "Bankruptcy Code"), Rules 2002, 6003, and 6004(h) of the Federal Rules of Bankruptcy Procedures (the "Bankruptcy Rules"), and Rules 2002-1 and 9013-1(m) of the Local Rules of Bankruptcy Practice and Procedure for the District of Delaware (the "Local Rules").

3.      Pursuant to Local Rule 9013-1(f), the Debtors confirm their consent to the entry of a final order by the Court in connection with this Motion to the extent that it is later determined that the Court, absent consent of the parties, cannot enter final orders or judgments in connection herewith consistent with Article III of the United States Constitution.

## BACKGROUND

**I.      The Chapter 11 Cases**

1.      On August 14, 2023 (the "Petition Date"), each Debtor commenced a case by filing a voluntary petition for relief under chapter 11 of the Bankruptcy Code (collectively, the "Chapter 11 Cases"). The Debtors have requested that these Chapter 11 Cases be jointly administered.

2.      The Debtors continue to manage their properties as debtors and debtors-in-possession pursuant to Bankruptcy Code sections 1107(a) and 1108.

3.      To date, the Office of the United States Trustee for the District of Delaware (the "U.S. Trustee") has not appointed an official committee in these Chapter 11 Cases, nor has any trustee or examiner been appointed.

4.      Additional information regarding the Debtors and these Chapter 11 Cases, including the Debtors' business operations, capital structure, financial condition, and the reasons for and objectives of these Chapter 11 Cases, is set forth in the First Day Declaration, which is incorporated by reference as if fully set forth herein.

## II.      The Debtors' Tax and Fee Obligations[3]

5.      In the ordinary course of business, the Debtors collect, withhold, incur, or collect and pay franchise, property, commerce, and income taxes (collectively, the "Taxes") to various federal, state, and local taxing and other governmental authorities, and/or certain municipal or governmental subdivisions of those states (collectively, the "Taxing Authorities"). The Debtors also incur various fees and assessments related to their licenses and permits in connection with obtaining the licenses and permits that are necessary to operate their businesses (the "Fees").[4] The Debtors remit such Taxes and Fees to the Taxing Authorities identified in the schedule attached hereto as **Exhibit C**[5] in accordance with applicable laws. The Taxes and Fees are paid monthly, quarterly, or annually to the respective Authorities, depending on the given Taxes or Fees and the Taxing Authority to which they are paid. Taxes and Fees are remitted and paid by

---

[3]     The Debtors do not seek authority to collect and remit state and federal employee-related withholding taxes by this Motion. That relief is requested *Debtor's Motion for Entry of Interim and Final Orders (I) Authorizing Debtors to (A) Pay Prepetition Wages and (B) Pay Expenses Arising Under Employee Benefits Programs and Pay Related Administrative Obligations, and (II) Authorizing Banks to Honor and Process Checks and Transfers Related to Such Obligations, and (II) Granting Related Relief*, filed concurrently herewith.

[4]     The Debtors do not believe there are any Fees currently due and owing, but, out of an abundance of caution, request authorization to pay any such outstanding prepetition amounts.

[5]     Although **Exhibit C** is intended to be comprehensive, the Debtors may have inadvertently omitted Authorities from **Exhibit C**. By this Motion, the Debtors request relief with respect to Taxes and Fees payable to all Authorities, regardless of whether such Authority is specifically identified on **Exhibit C**.

the Debtors through electronic ACH transfers that are processed through their banks and other financial institutions. As of the Petition Date, the Debtors estimate that they owe approximately $66,611.58 of Taxes and Fees that have accrued but are not yet due.

6.      The Debtors pay the Taxes and Fees to the Taxing Authorities on a periodic basis, typically remitting them monthly, quarterly, and annually depending on the nature and incurrence of a particular Tax or Fee. Although the Debtors believe that they are current with respect to their payment of Taxes and Fees, the Debtors seek authority pursuant to this Motion to make such payments where: (a) Taxes and Fees accrue or are incurred postpetition; (b) Taxes and Fees have accrued or were incurred prepetition but were not paid prepetition, or were paid in an amount less than actually owed; (c) payments made prepetition by the Debtors were lost or otherwise not received in full by any of the Taxing Authorities; and (d) Taxes and Fees incurred for prepetition periods become due and payable after the commencement of these Chapter 11 Cases. In addition, for the avoidance of doubt, the Debtors seek authority to pay Taxes and Fees for so-called "straddle" periods.[6]

7.      Additionally, the Debtors may become subject to routine audit investigations on account of tax returns and/or tax obligations in respect of prior years ("Audits") during these Chapter 11 Cases. Audits may result in additional prepetition Taxes and Fees being assessed against the Debtors (such additional Taxes and Fees, the "Assessments"). The Debtors may also be subject to additional Audits in the future, which could result in additional Assessments on account of prepetition Taxes and Fees. Thus, out of an abundance of caution, the Debtors request

---

[6]     The Debtors reserve their rights with respect to the proper characterization of any "straddle" Taxes and Fees and to seek reimbursement of any portion of any payment made that ultimately is not entitled to administrative priority treatment.

authority to pay all Assessments, as applicable, as they come due in the ordinary course of business.[7]

8.      Failure by the Debtors to pay the Taxes and Fees when due could materially disrupt the Debtors' chapter 11 goals in several ways, including (but not limited to): (a) the Taxing Authorities may initiate audits of the Debtors, which would unnecessarily divert the Debtors' attention from these Chapter 11 Cases; (b) the Taxing Authorities may attempt to file liens, seek to lift the automatic stay, and/or pursue other remedies that will harm the estates; and (c) in certain instances, the Debtors' directors and officers could be subject to claims of personal liability, which would likely distract those key individuals from their duties related to the Debtors' restructuring. Taxes and Fees not paid on the due date as required by law may result in fines and penalties, the accrual of interest, or both. The Debtors also collect and hold certain outstanding tax liabilities in trust for the benefit of the applicable Taxing Authorities, and these funds may not constitute property of the Debtors' estates.

**RELIEF REQUESTED**

9.      The Debtors respectfully request entry of the Interim Order and Final Order:  (i) authorizing the Debtors to: (a) remit and pay certain Taxes and Fees (each as defined below) accrued prior to the Petition Date (as defined below) that will become payable during the pendency of these Chapter 11 Cases, including any penalties and interest thereon, to the Taxing Authorities and (b) remit and pay any Assessments that may become payable in the ordinary course of business; (ii) authorizing applicable banks and other financial institutions to honor and process related checks and transfers; and (iii) granting related relief.

---

[7]     Nothing in this Motion or any related order constitutes or should be construed as an admission of liability by the Debtors with respect to any Audit or Assessment. The Debtors expressly reserve all rights with respect to any Audit. Furthermore, the Debtors reserve the right to contest any Assessment, if any, claimed to be due as a result of the Audits.

**BASIS FOR RELIEF**

**I.      Payment of Certain Taxes is Authorized Pursuant to Bankruptcy Code Section 541**

10.      The Debtors believe that certain of the Taxes constitute so-called "trust fund" obligations that are required to be collected from third parties and held in trust for payment to the taxing and regulatory authorities. *See*, *e.g.*, I.R.C. § 7501 (stating that certain taxes and fees are held in trust); 11 U.S.C. § 541(d); *Official Comm. of Unsecured Creditors of the Columbia Gas Transmission Corp. v. Columbia Gas Sys. Inc. (In re Columbia Gas Sys. Inc.)*, 997 F.2d 1039, 1051 (3d Cir. 1993) (refunds required to be collected by federal law created trust fund that was not property of debtor's estate); *Shank v. Wash. State Dep't of Revenue (In re Shank)*, 792 F.2d 829, 830 (9th Cir. 1986) (same); *DeChiarov. N.Y. State Tax Comm'n*, 760 F.2d 432, 435–36 (2d Cir. 1985) (same). To the extent these "trust fund" taxes are collected, they are not property of the Debtors' estates under Bankruptcy Code section 541(d). *See Begier v. IRS*, 496 U.S. 53, 57–60 (1990) (holding that any prepetition payment of trust fund taxes is not an avoidable preference because the funds are not the debtor's property); *In re Am. Int'l Airways, Inc.*, 70 B.R. 102, 104–05 (Bankr. E.D. Pa. 1987). Because the Debtors may not have an equitable interest in funds held on account of such "trust fund" taxes, the Debtors should be permitted to pay those funds to the Taxing Authorities as they become due.

**II.     Payment of Certain of the Taxes is Appropriate Pursuant to Bankruptcy Code Section 507(a)(8)**

11.      Claims for some or all of the Taxes and Fees owed by the Debtors are or may be entitled to priority status under Bankruptcy Code section 507(a)(8). Claims entitled to priority status pursuant to Bankruptcy Code section 507(a)(8) must be paid in full under a confirmable plan pursuant to section 1129(a)(9)(C).

12.     Bankruptcy Code section 507(a)(8) provides that claims entitled to priority status include unsecured claims of governmental units for: (i) taxes on or measured by income or gross receipts for a taxable year ending on or before the Petition Date, for which a return, if required, is last due after three years prior to the Petition Date, and which is assessed within 240 days before the Petition Date, *see* 11 U.S.C. § 507(a)(8)(A); (ii) property taxes incurred before the Petition Date and last payable without penalty after one year before the Petition Date, *see* 11 U.S.C. § 507(a)(8)(B); and (iii) taxes required to be collected or withheld and for which the debtor is liable in whatever capacity, *see* 11 U.S.C. § 507(a)(8)(C). Moreover, to the extent that the Taxes and Fees are entitled to priority treatment under Bankruptcy Code section 507(a)(8)(B), the governmental unit also may attempt to assess penalties that may also be accorded priority status. *See* 11 U.S.C. § 507(a)(8)(G) (granting eighth-priority status to "a penalty related to a claim of a kind specified in [section 507(a)(8)] and in compensation for actual pecuniary loss").

13.     To the extent that such Taxes and Fees are entitled to priority treatment under the Bankruptcy Code, the respective obligation may accrue interest and the Debtors may be assessed remunerative penalties if such amounts are not paid timely. *See* 11 U.S.C. § 507(a)(8)(G) (granting priority status to "a penalty related to a claim of a kind specified in this paragraph and in compensation for actual pecuniary loss").

14.     Consequently, payment of such Taxes and Fees will give the applicable Authorities no more than that to which they otherwise would be entitled under a chapter 11 plan and only affect the timing of payment for the amounts at issue, which will not unduly prejudice the rights and recoveries of junior creditors, while saving the Debtors potential interest expense, legal expense, and penalties that otherwise may accrue on, or be incurred in connection with, such Taxes and Fees.

**III.    Payment of the Taxes and Fees is Appropriate Pursuant to Bankruptcy Code Sections 105 and 363**

15.    The timely payment of the Taxes and Fees is appropriate because it is necessary for the Debtors' successful reorganization. Bankruptcy Code section 363(b) permits a debtor to use estate property "other than in the ordinary course of business" after notice and a hearing. 11 U.S.C. § 363(b)(1). Under Bankruptcy Code section 363(b), courts require only that the debtor "show that a sound business purpose justifies such actions." *In re Montgomery Ward Holding Corp.*, 242 B.R. 147, 153 (D. Del. 1999) (internal citations omitted) (requiring that the debtor show a "sound business purpose" to justify its actions under Bankruptcy Code section 363); *see also In re Phoenix Steel Corp.*, 82 B.R. 334, 335–36 (Bankr. D. Del. 1987). Further, "[w]here the debtor articulates a reasonable basis for its business decisions (as distinct from a decision made arbitrarily or capriciously), courts will generally not entertain objections to the debtor's conduct." *Comm. of Asbestos-Related Litigants and/or Creditors v. Johns-Manville Corp. (In re Johns-Manville Corp.)*, 60 B.R. 612, 616 (Bankr. S.D.N.Y. 1986); *see also In re Tower Air, Inc.*, 416 F.3d 229, 238 (3d Cir. 2005) (stating that "[o]vercoming the presumptions of the business judgment rule on the merits is a near-Herculean task").

16.    Bankruptcy Code section 105(a) empowers the Court to "issue any order, process, or judgment that is necessary or appropriate to carry out the provisions of this title."  11 U.S.C. § 105(a). Under Bankruptcy Code section 105(a), courts may permit payments of prepetition obligations prior to confirmation of a plan and emergence from chapter 11 when essential to the continued operation of a debtor's business. Specifically, the Court may use its power under Bankruptcy Code section 105(a) to authorize payment of prepetition obligations pursuant to the "doctrine of necessity."

17.    Under the "doctrine of necessity," bankruptcy courts may authorize the payment
of prepetition claims if such payment is essential to the continued operation of the debtor. *In re
Lehigh and New England Railway Co.*, 657 F.2d 570, 581 (3d Cir. 1981) (stating courts may
authorize payment of prepetition claims when there "is the possibility that the creditor will
employ an immediate economic sanction, failing such payment"); *see also In re Penn Cent.
Transp. Co.*, 467 F.2d 100, 102 n.1 (3d Cir. 1972) (recognizing necessity of payment doctrine
permits "immediate payment of claims of creditors where those creditors will not supply services
or materials essential to the conduct of the business until its pre-reorganization claims have been
paid"); *In re Just for Feet, Inc.*, 242 B.R. 821, 824–25 (D. Del. 1999) (noting that, in the Third
Circuit, debtors may pay prepetition claims that are essential to continued operation of business);
*In re Columbia Gas Sys., Inc.*, 171 B.R. 189, 191–92 (Bankr. D. Del. 1994) (same).

18.    Although the "doctrine of necessity" predates the Bankruptcy Code,
*see Miltenberger v. Logansport Ry. Co.*, 106 U.S. 286, 309 (1882), the modern application of the
doctrine of necessity is grounded in specific provisions of the Bankruptcy Code, including
sections 105(a), 1107(a), and 1108. *See In re CoServ, L.L.C.*, 273 B.R. 487, 497
(Bankr. N.D. Tex. 2002) (fiduciary duties implicit in Bankruptcy Code section 1107(a) justify
the "preplan satisfaction of a prepetition claim" where necessary to preserve going concern
value). The doctrine, largely unchanged from the Court's reasoning in *Miltenberger*, is a widely
accepted component of bankruptcy jurisprudence. *See Just for Feet, Inc.*, 242 B.R. at 826
(approving payment of key inventory suppliers' prepetition claims when such suppliers could
destroy the debtor's business by refusing to deliver new inventory on the eve of debtor's key
sales season); *Mich. Bureau of Workers' Disability Comp. v. Chateaugay Corp. (In re
Chateaugay Corp.)*, 80 B.R. 279, 285–86 (S.D.N.Y. 1987) (affirming order authorizing payment

of prepetition wages, salaries, expenses and benefits); *In re Payless Cashways, Inc.*, 268 B.R.

543, 546–47 (Bankr. W.D. Mo. 2001) (authorizing payment of critical prepetition suppliers'

claims when such suppliers agreed to provide postpetition trade credit).

19.     The Debtors have determined, in the sound exercise of their business judgment,

that any failure to pay the Taxes and Fees could materially disrupt the Debtors' restructuring

efforts because, among other things, (a) Taxing Authorities may initiate audits of the Debtors,

which would unnecessarily divert the Debtors' attention from the restructuring process,

(b) certain Taxing Authorities may attempt to revoke the Debtors' licenses and permits, subject

the Debtors to audits, seek to lift the automatic stay or impose liens on the Debtors' real or

personal property, and (c) certain of the Debtors' directors and officers could be subject to claims

of personal liability, which would likely distract them from their duties related to the Debtors'

restructuring. Further, the Debtors collect and hold certain outstanding tax liabilities in trust for

the benefit of the applicable Authorities, and such funds may not constitute property of the

Debtors' estates. Moreover, unpaid Taxes and Fees may result in penalties, the accrual of

interest, or both, reducing creditor recoveries.

20.     The Debtors' ability to pay the Taxes and Fees is critical to maintaining the value

of the Debtors' estates. The Debtors' ability to maximize value and further their chapter 11 goals

with as little disruption as possible requires, in part, that they remain in good stead with the

Taxing Authorities in respect of their obligations on account of Taxes and Fees. Any collection

action on account of such tax amounts and penalties, and any ensuing liability, would distract the

Debtors and their personnel to the detriment of all parties in interest. The dedicated and active

participation of the Debtors' officers and employees is essential to the orderly administration of

these Chapter 11 Cases and maximizing the value of the Debtors' estates for the benefit of their

stakeholders. Accordingly, the Debtors submit that it is critical and essential that they be able to pay the Taxes and Fees.

**IV.    Authorizing and Directing Banks is Appropriate**

21.    The Debtors also request that the Court authorize and direct the Banks to receive, process, honor, and pay all checks presented for payment of, and to honor all fund transfer requests made by the Debtors related to, the claims that the Debtors request authority to pay in this Motion, regardless of whether the checks were presented or fund transfer requests were submitted before, on, or after the Petition Date, provided that funds are available in the Debtors' accounts to cover the checks and fund transfers and that the Banks are authorized to rely on the Debtors' designation of any particular check as approved by the Interim Order and the Final Order.

22.    The Debtors have sufficient liquidity to pay the amounts set forth in this Motion in the ordinary course of business and have implemented controls to ensure that prepetition claims will not be paid out except as authorized by this Court. The Debtors therefore submit that the payment-processing procedures described in this Motion are appropriate.

23.    In addition, under the Debtors' existing cash management system, the Debtors can readily identify checks or wire transfer requests as relating to any authorized payment in respect of the relief requested herein. Accordingly, the Debtors believe that checks or wire transfer requests, other than those relating to authorized payments, will not be honored inadvertently. Therefore, the Debtors respectfully request that the Court authorize all applicable financial institutions, when requested by the Debtors, to receive, process, honor, and pay any and all checks or wire transfer requests in respect of the relief requested in this Motion.

## THE REQUIREMENTS OF BANKRUPTCY RULE 6003 ARE SATISFIED

24.     Bankruptcy Rule 6003 provides that the relief requested in this Motion may be granted if the "relief is necessary to avoid immediate and irreparable harm." Fed. R. Bankr. P. 6003. As described above, any disruption to the payment of Taxes and Fees would substantially diminish or impair the Debtors' efforts in these Chapter 11 Cases to preserve and maximize the value of their estates. For this reason and those set forth above, the Debtors respectfully submit that Bankruptcy Rule 6003(b) has been satisfied and the relief requested herein is necessary to avoid immediate and irreparable harm to the Debtors and their estates.

## RESERVATION OF RIGHTS

25.     Nothing in this Motion or any order granting the relief requested in this Motion, and no action take pursuant to the relief requested or granted (including any payment made in accordance with any such order):  (a) is intended or shall be deemed to constitute an assumption of any agreement pursuant to Bankruptcy Code section 365 or an admission as to the basis for or the validity of any claim against the Debtors or their estates; (b) shall impair, prejudice, waive, or otherwise affect the rights of the Debtors or their estates to contest the validity, priority, or amount of any claim against the Debtors or their estates; (c) shall impair, prejudice, waive, or otherwise affect the rights of the Debtors or their estates with respect to any and all claims or causes of action against any third party; (d) shall be construed as a promise to pay a claim or continue any applicable program postpetition, which decision shall be in the sole discretion of the Debtors; (e) an implication, admission, or finding that any particular claim is an administrative expense claim, other priority claim, or otherwise of a type specified or defined in this Motion or any order granting the relief requested by this Motion; (f) an admission to the validity, priority, enforceability, or perfection of any lien on, security interest in, or other encumbrance on property of the Debtors' estates; or (g) a waiver or limitation of any claims,

causes of action, or other rights of the Debtors or any other party in interest against any person or

entity under the Bankruptcy Code or any other applicable law. Any payment made pursuant to an

order of the Court granting the relief requested herein is not intended to be nor should it be

construed as an admission as to the validity of any claim or a waiver of the Debtors' rights to

subsequently dispute such claim.

**WAIVER OF BANKRUPTCY RULES 6004(A) AND 6004(H)**

26.     To implement the foregoing successfully, the Debtors seek a waiver of the notice

requirements under Bankruptcy Rule 6004(a) and the 14-day stay of an order authorizing the use,

sale, or lease of property under Bankruptcy Rule 6004(h).

**NOTICE**

27.     The Debtors will provide notice of this Motion to:  (a) the U.S. Trustee; (b) the

holders of the 50 largest unsecured claims against the Debtors (on a consolidated basis); (c) the

Internal Revenue Service; (d) the Securities and Exchange Commission; (e) the United States

Attorney's Office for the District of Delaware; (f) the state attorneys general for all states in which

the Debtors conduct business; (g) the Taxing Authorities; (h) the Banks; and (i) any party that has

requested notice pursuant to Bankruptcy Rule 2002. As this Motion is seeking "first day" relief,

the Debtors will service copies of this Motion and any order entered in respect to this Motion as

required by Local Rule 9013-1(m). The Debtors submit that no other or further notice is required.

WHEREFORE, the Debtors respectfully request that this Court enter the Interim Order and

the Final Order, substantially in the form annexed hereto as **Exhibit A** and **Exhibit B**, respectively,

granting the relief requested herein and such other and further relief as may be just and proper.

Dated:  August 24, 2023          **MCDERMOTT WILL & EMERY LLP**
       Wilmington, Delaware

          _/s/ Maris J. Kandestin_
          Maris J. Kandestin (No. 5294)
          1007 North Orange Street, 10th Floor
          Wilmington, Delaware 19801
          Telephone:  (302) 485-3900
          Facsimile:   (302) 351-8711
          Email:          mkandestin@mwe.com

          -and-

          Darren Azman (admitted _pro hac vice_)
          Joseph B. Evans (admitted _pro hac vice_)
          One Vanderbilt Avenue
          New York, New York 10017-3852
          Telephone:  (212) 547-5400
          Facsimile:   (646) 547-5444
          Email:          dazman@mwe.com
                     jbevans@mwe.com

          -and-

          Gregg Steinman (admitted _pro hac vice_)
          333 SE 2nd Avenue, Suite 5400
          Miami, Florida 33131
          Telephone:  (305) 358-3500
          Facsimile:   (305) 347-6500
          Email:          gsteinman@mwe.com

          _Proposed Counsel to the Debtors and Debtors in Possession_

14