**IN THE UNITED STATES BANKRUPTCY COURT
FOR THE DISTRICT OF DELAWARE**

| In re: Prime Core Technologies Inc., *et al.*,[1] Debtors. | Chapter 11<br>Case No. 23-11161 (JKS)<br>(Joint Administration Requested) |
|---|---|

**PRELIMINARY RESPONSE OF POLARIS VENTURES REGARDING FIRST DAY PLEADINGS OF DEBTORS PRIME CORE TECHNOLOGIES, INC., *ET AL.***

Polaris Ventures ("Polaris"), a customer of debtor Prime Trust, LLC, by and through its undersigned counsel, hereby submits this preliminary response (the "Preliminary Response") regarding the First Day Pleadings.[2] [D.I. 15, 16, 17, 18, 19, 20.] In support of this Preliminary Response, Polaris respectfully states as follows:

**PRELIMINARY STATEMENT**

Two months ago, the Financial Institutions Division of the State of Nevada ("Nevada FID") issued a cease and desist order and commenced a receivership action against certain Debtors in Nevada state court (the "Nevada Court") based on the Debtors' failure to safeguard assets under their custody and willful breaches of fiduciary duties to its customers.[3] The Nevada FID's cease and desist order prohibited the Debtors from engaging in their primary operation, a retail trust

[1] The debtors in these chapter 11 cases (the "Debtors"), along with the last four digits of each debtor's federal tax identification number are: Prime Core Technologies Inc. (5317); Prime Trust, LLC (6823); Prime IRA LLC (8436); and Prime Digital, LLC (4528). The Debtors' service address is 330 South Rampart Blvd., Suite 260, Las Vegas, NV 89145.

[2] Capitalized terms used but not defined herein have the meanings ascribed to them in the *Declaration of Jor Law, Interim Chief Executive Officer and President of Prime Core Technologies Inc., et al., in Support of Chapter 11 Petitions and First Day Motions* [D.I. 14] ("First Day Declaration").

[3] *See O'Laughlin v. Prime Core Technologies, Inc. et al.*, Case No. A-23-872963-B (Nev.) (the "Receivership Action").

company, and was followed by appointment of a receiver to protect remaining assets, including customer funds, from the brazen malfeasance that rendered the Debtors unable to fund customer disbursement requests.  Specifically, the Debtors used funds in customer accounts to cover their own operational blunders, leaving a shortfall in those accounts of approximately $83.5 million, and – as the receiver reported to the Nevada Court just a few weeks ago – only a relatively small pot of funds to make up that shortfall.

Rather than preserving the remaining funds for customers, the Debtors have embarked on a speculative strategy using those funds, commencing these chapter 11 cases at an enormous cost, with a seemingly bloated workforce and expense budget, and with the hope of selling the Debtors as a going concern – despite the Debtors effectively having been shuttered for months.  Indeed, based on the limited information disclosed thus far, millions of dollars in funds that could be preserved for customers and trade creditors have instead been spent over the past few weeks on professionals, the receiver, insiders and employees.

While relief under the Bankruptcy Code may be appropriate here, it is the customers – whose funds are at stake as a result of the Debtors' decisions – who, once again, find themselves underwriting the costs of the Debtors' choices, including to pursue a speculative "going concern" sale process or reorganization.  The First Day Pleadings request extensive – and expensive – relief that, based on the Debtors' preliminary budget, will nearly exhaust the Debtors' remaining funds, and seek this relief on shortened time before a committee is formed and has an opportunity to meaningfully analyze the Debtors' strategy in these cases.

Accordingly, for the reasons set forth below, Polaris respectfully requests that the Court (i) set a continued interim hearing on the First Day Pleadings on or about September 1, 2023, and

(ii) limit any relief granted at the August 25, 2023 hearing to interim relief absolutely necessary for the period between the two hearings.

**BACKGROUND**

1. Polaris, a Swiss nonprofit association, entrusted fiat currency with debtor Prime Trust, LLC ("Prime Trust") in April 2023. The Debtors listed Polaris as their second largest unsecured creditor. [D.I. 1]. Polaris should have approximately $31.7 million of fiat currency in its account with Prime Trust.

2. Just two months after Polaris entrusted its funds with Prime Trust, on June 21, 2023, the Debtors halted operations as a result of an order issued by the Nevada FID requiring Prime Trust to cease and desist all retail trust activities. [D.I. 14, ¶ 57]. The cease and desist order concluded, *inter alia*, that Prime Trust "failed to safeguard assets under its custody and is unable to meet all customer withdrawals." **Exhibit 1** (Order to Cease and Desist), ¶ 20. Therefore, the Nevada FID ordered Prime Trust to "[c]ease and desist from accepting fiat currency from existing and new clients for custody purposes" and "[c]ease and desist from accepting cryptocurrency from existing and new clients for custody purposes." *Id.* at 6.

3. Shortly thereafter, the Nevada FID filed a *Petition for Appointment of Receiver, Temporary Injunction, and Other Permanent Relief* (the "Receivership Petition") with the Eighth Judicial District Court of the State of Nevada seeking, among other relief, appointment of a receiver. [D.I. 14, ¶ 59] In the Receivership Petition, the Nevada FID explained the Debtors "may not be financially solvent and/or [are] in an unsafe or unsound condition to transact business" and thus the state regulator sought "to protect PRIME's customers through the above-referenced injunctions and the appointment of a receiver for PRIME." **Exhibit 2** (Receivership Petition), at 5:8-10.

4.      At the time it filed the Receivership Petition, the Nevada FID asserted the Debtors owed customers fiat currency of $85,670,000 and cryptocurrency of $69,509,000, but held only $2,904,000 in fiat currency (leaving an $82,766,000 fiat currency deficit) and $68,648,000 in cryptocurrency (leaving an $861,000 cryptocurrency deficit). *Id.*, at 7:3-8. Thus, the Nevada FID requested the court appoint a receiver who "would be under a duty to act for the protection of PRIME's customers, as well as to conserve the available Assets." *Id.*, at 14:14-16.

5.      On July 14, 2023, the Nevada Court granted the Receivership Petition on an interim basis and appointed John Guedry as receiver.  [D.I. 14, ¶ 59].

6.      On August 3, 2023, in anticipation of commencing the Debtors' bankruptcy cases, the receiver filed a motion to modify the receivership order to approve the receiver's decisions to (a) establish a three-member special restructuring committee, including the receiver and two other members (the "Special Committee"), each paid $25,000 per month, to direct the Debtors to file voluntary petitions for relief under chapter 11 of the Bankruptcy Code; (b) retain additional professionals in connection with the anticipated bankruptcy cases; and (c) pay McDermott Will & Emery, proposed counsel for the Debtors, a $1,250,000 retainer.  *See* **Exhibit 3** (Motion to Modify), at 5:9-16, 6:8-12, 8:25-26.

7.      On August 14, 2023, the Nevada Court entered an order, among other things, approving the appointment of the Special Committee, but leaving the decision to commence chapter 11 proceedings to the discretion of the receiver.  *See* **Exhibit 4** (Order on Motion to Modify).

8.      On August 14, 2023 (the "Petition Date"), the Debtors commenced these cases by filing voluntary petitions for relief under chapter 11 of the Bankruptcy Code.  Ten days later, on

August 24, 2023, the Debtors filed the First Day Pleadings, which were set for hearing on an emergency basis despite the Debtors' substantial delay in seeking the relief thereunder.

9. To date, no official committee of unsecured creditors has been appointed in these cases. The Debtors have no secured debt [D.I. 14, ¶ 35], and thus the only creditor constituency in this case are unsecured creditors – whom the Debtors describe as primarily customers whose fiat currency was misappropriated. Polaris comprises approximately 37% of this group of customers.

**RELIEF ON THE FIRST DAY PLEADINGS SHOULD BE LIMITED**

10. Polaris acknowledges that the relief sought in the First Day Pleadings is consistent with relief sought and granted in other chapter 11 cases in this Court and, conceptually, Polaris does not take issue with the nature of the relief sought. That said, Polaris files this Preliminary Statement to raise two issues and ask the Court to significantly limit the relief sought by the Debtors on an interim basis.

11. First, although the Debtors request relief on the First Day Pleadings on an emergency basis, the Debtors' substantial delay in filing the First Day Pleadings – until ten days after the Petition Date – calls into question the extent to which the relief sought therein must be granted immediately. A committee has not yet been appointed in these cases, but is likely to be formed in the very near future. Given the Debtors' apparent ability to operate in chapter 11 for nearly two weeks without seeking first day relief, and the limited funds in the estate the Debtors contend are not "customer funds"[4] – Polaris respectfully submits that the Court should set a continued interim hearing in approximately one week, after a committee has presumably been

[4] Polaris reserves all rights with respect to the Debtors' characterization of funds, included whether any funds characterized by the Debtors as "corporate" funds are traceable to funds deposited by customers.

appointed, and that any interim orders granting the First Day Pleadings should be limited to the relief necessary prior to that continued hearing.

12. Second, the First Day Pleadings reflect the Debtors' plans to rapidly deplete their cash in a matter of weeks, demonstrating the need for a committee – as the representative of the customers harmed by the Debtors – to have an opportunity to meaningfully assess the necessity of the Debtors' intended expenditures, as well as the propriety of the Debtors' decision to liquidate through chapter 11, rather than chapter 7.

13. As of July 31, 2023, Prime Trust had "operating" funds on hand totaling $12,298,007.58 that the receiver represented were not derived from customer deposits. **Exhibit 5** (Suppl. To Motion to Modify), at Ex. A (Receiver's Declaration in Support), ¶ 6. By August 19, 2023, it appears that over $4.3 million – over 35% of the Debtors' funds – had been spent, leaving a balance of less than $8 million to fund these cases. [D.I. 14, at Ex. A.]

14. Despite this dwindling cash, the Debtors' preliminary budget and First Day Pleadings contemplate that the Debtors and their professionals will continue to incur "seemingly excessive expenditures" (as Mr. Law described the Debtors' spending under prior management [D.I. 14, ¶ 39]) and rapidly deplete the remaining funds. The budget and the First Day Pleadings contemplate disbursements exceeding $3.5 million in the next three weeks, including over $1.5 million to Debtors' proposed professionals (possibly in addition to the sizeable retainers previously paid), $75,000 a month to pay the receiver and the other members of the Special Committee, and over $1.1 million in payroll and benefits to 64 employees plus independent contractors (which may range in number from 7 to 100) of the Debtors (companies that were ordered by the Nevada FID to cease operations over two months ago). [D.I. 14, at Ex. A]; [D.I. 19, ¶ 8]; **Exhibit 1** (Order to Cease and Desist). As a result, prior to the final hearings on the First Day Pleadings, the Debtors

project to consume the majority of funds currently available for customer recoveries and payment of these amounts in the interim period is likely harm that cannot be undone as a practical, if not legal, matter.

15.     Under these circumstances, the Debtors' use of remaining cash should be closely scrutinized by the committee to ensure these proposed expenditures will generate value for the Debtors' customers.   For example, the committee should examine the Debtors' use of funds prepetition (such as to pay over $125,000 in severance to two members of their management [D.I. 19, n.4]); the extent to which the Debtors' current payroll of approximately $1,000,000 per month is necessary to support the going concern value of the Debtors; the amount, if any, by which the going concern value of the Debtors exceeds the liquidation value of the Debtors; the benefit to customers from the Debtors' decision to incur the $75,000 per month cost of a three-member Special Committee rather than, for example, a single CRO; and the need for the Debtors to incur the nearly $2.3 million annual expense of six separate D&O insurance policies (including two policies procured specially for the receiver at a cost of $800,000 just a month before the bankruptcy cases were filed).   The committee's ability to address these and other important issues with the Debtors should not be limited by the broad relief sought on an interim basis in the First Day Pleadings, such as the Debtors' request for authorization, "in their sole discretion, to continue, renew, supplement, modify, or enter into new Insurance Policies or Surety Bonds in the ordinary course of business and honor all postpetition obligations arising thereunder."  [D.I. 18-1, ¶ 4.]

16.     Each dollar spent by the Debtors and their professionals is a dollar that could be used to reimburse customers who lost funds due to the Debtors' malfeasance.  Indeed, the Nevada FID sought appointment of a receiver who "would be under a duty to act for the protection of PRIME's customers, as well as to conserve the available Assets."   **Exhibit 2** (Receivership

Petition), at 14:14-16. It is critical that expenditures in these cases be carefully managed, and are incurred only if the return to customers will outweigh the cost. To wit, while the potential benefits to be realized from commencing these cases may become apparent over time, it bears noting that as of August 1, 2023, the Debtors had sufficient "corporate" funds to satisfy nearly 15% of the customer shortfall. Now, just a few weeks later, those funds are less than 10% of the customer shortfall and are in substantial jeopardy of being available to restore any of the customer shortfall.

17. In light of these issues, interim relief on the First Day Pleadings should be limited to the relief necessary prior to a continued interim hearing to be scheduled in approximately one week.

**RESERVATION OF RIGHTS**

Polaris reserves all rights to further object to the First Day Pleadings on any grounds and to respond to any reply filed by the Debtors or any other party in interest, either by further submission to this Court or at oral argument.

**CONCLUSION**

For the foregoing reasons, Polaris respectfully requests that the Court (i) set a continued interim hearing on the First Day Pleadings on or about September 1, 2023, and (ii) limit any relief granted at the August 25, 2023 hearing to interim relief absolutely necessary for the period between the two hearings.

Date: August 25, 2023
Wilmington, Delaware

**YOUNG CONAWAY STARGATT & TAYLOR, LLP**

*/s/ Michael R. Nestor*
Michael R. Nestor (No. 3526)
Ryan M. Bartley (No. 4985)
Rodney Square
1000 North King Street
Wilmington, Delaware 19801
Telephone: (302) 571-6600
Facsimile: (302) 571-1253
Email: mnestor@ycst.com
rbartley@ycst.com

-and-

**MINTZ, LEVIN, COHN, FERRIS, GLOVSKY AND POPEO, P.C.**
Joseph R. Dunn (to be admitted *pro hac vice*)
3580 Carmel Mountain Road
Suite 300
San Diego, CA 92130
Telephone: (858) 314-1500
Email: jrdunn@mintz.com

-and-

Abigail O'Brient (to be admitted *pro hac vice*)
2049 Century Park East
Suite 300
Los Angeles, CA 90067
Telephone: (310) 586-3200
Email: aobrient@mintz.com

*Counsel to Polaris Ventures*

**EXHIBIT 1**

Order to Cease and Desist



3300 W. Sahara Avenue, Suite 250
Las Vegas, Nevada 89102
(702) 486-4120

**STATE OF NEVADA**
**DEPARTMENT OF BUSINESS AND INDUSTRY**
**FINANCIAL INSTITUTIONS DIVISION**

1830 E College Parkway, Suite 100
Carson City, Nevada 89706
(775) 684-2970

In Re:

Prime Trust, LLC

Respondent.

**ORDER TO CEASE AND DESIST FROM VIOLATIONS OF NRS 669; NOTICE OF RIGHT TO A HEARING**

**ORDER TO CEASE AND DESIST FROM VIOLATIONS OF NRS 669**

The State of Nevada, Department of Business and Industry, Financial Institutions Division (hereinafter "Division" or "NFID") hereby orders Prime Trust, LLC (hereafter "Respondent") to cease and desist from any and all activities that are in violation of Chapter 669 of the Nevada Revised Statutes ("NRS") and of the Nevada Administrative Code ("NAC").

**JURISDICTION**

1. The business of trust companies in the State of Nevada is governed by Nevada Revised Statutes (NRS) Chapter 669 and Nevada Administrative Code (NAC) Chapter 669.

2. The Commissioner has primary jurisdiction for the licensing and regulation of persons operating and/or engaging in trust company business. *See* NRS 669, including, but not limited to, NRS 657.210, NRS 669.010, NRS 669.130, NRS 669.250, NRS 669.270, and NAC 669.090.

3. Pursuant to the authority vested by NRS 669, the Commissioner hereby makes the following Findings of Fact and Conclusions of Law.

**FINDINGS OF FACT**

4. Respondent is registered under the laws of the State of Nevada, and its resident agent is Saltzman Mugan Dushoff, PLCC-CRA, located at 1835 Village Center Circle, Las Vegas, Nevada 89134.

5. Respondent operates the business of a trust company at the following location: 330 South Rampart Boulevard, Suite 260, Las Vegas, Nevada 89145.

6. On or about January 26, 2017, Respondent was granted a license pursuant to NRS 669 authorizing Respondent to operate a trust company in the State of Nevada.

7. On November 7, 2022, the Division commenced a safety and soundness examination of Respondent.

8. The original examination scope was as of September 30, 2022.

9. The examination remains open and ongoing due to NFID expanding the scope of examination and the need to monitor the solvency of the trust company.

10. Respondent reported in its March 31, 2023, Nationwide Multistate Licensing System Money Service Business Call Report, a negative $12,071,508 stockholders' equity position.

11. The overall financial condition of Respondent has considerably deteriorated to a critically deficient level, and Respondent is now in position where it is in an unsafe or unsound condition to transact business and/or if it were to continue to operate it would be in an unviable and/or unsafe manner.

12. On or about June 21, 2023, Respondent was unable to honor customer withdrawals due to a shortfall of customer funds caused by a significant liability on the Respondent's balance sheet owed to customers.

13. Respondent has materially and willfully breached its fiduciary duties to its customers by failing to safeguard assets under its custody and is unable to meet all customer disbursement requests.

14. Respondent is violating NRS 669.100(1) and/or NRS 669.2825(1)(a), (b), (c), (f) and (k).

15. If any finding of fact is more properly characterized as a conclusion of law, it shall be construed as such.

## CONCLUSIONS OF LAW

Based on the findings of fact, the Commissioner finds as follows:

16. NRS 669.100(1) states, "No retail trust company may be organized or operated with a stockholders' equity of less than $1,000,000, or in such greater amount as may be required by the Commissioner. The full amount of the initial stockholders' equity must be paid in cash, exclusive of all organization expenses, before the trust company is authorized to commence business." Respondent may not operate with a stockholders' equity of less than $1,000,000. However, as reported in its March 31, 2023, Nationwide Multistate Licensing System Money Service Business Call Report, Respondent is operating with a negative $12,071,508 stockholders' equity position. As such, Respondent is without the necessary equity required to operate as a Trust company pursuant to NRS 669.100(1).

17. NRS 669.2825(1) states:

> 1. The Commissioner may institute disciplinary action or forthwith initiate proceedings to take possession of the business and property of any retail trust company when it appears that the retail trust company:
> (a) Has violated its charter or any state or federal laws applicable to the business of a trust company.
> (b) Is conducting its business in an unauthorized or unsafe manner.
> (c) Is in an unsafe or unsound condition to transact its business.
> (d) Has an impairment of its stockholders' equity.
> (e) Has refused to pay or transfer account assets to its account holders as required by the terms of the accounts' governing instruments.
> (f) Has become insolvent.
> (g) Has neglected or refused to comply with the terms of a lawful order of the Commissioner.
> (h) Has refused, upon proper demand, to submit its records, affairs and concerns for inspection and examination of an appointed or authorized examiner of the Commissioner.
> (i) Has made a voluntary assignment of its assets to receivers, conservators, trustees or creditors without complying with NRS 669.230.
> (j) Has failed to pay a tax as required pursuant to the provisions of chapter 363A or 363C of NRS.

(k) Has materially and willfully breached its fiduciary duties to its customers.

(l) Has failed to properly disclose all fees, interest and other charges to its customers.

(m) Has willfully engaged in material conflicts of interest regarding a customer's account.

(n) Has made intentional material misrepresentations regarding any aspect of the services performed or proposed to be performed by the retail trust company.

18.    Respondent has failed to satisfy the requirements of NRS 669.100(1), which constitutes a violation of NRS 669.2825(1)(a).

19.    Respondent is operating at a substantial deficit and/or is insolvent and will not be able to satisfy all withdrawals, therefore, Respondent is in an unsafe condition to transact business and/or is insolvent, which violates NRS 669.2825(1)(b), (c), and (f).

20.    On or about June 21, 2023, Respondent was unable to honor customer withdrawals due to a shortfall of customer funds caused by a significant liability on the Respondent's balance sheet owed to customers. Additionally, Respondent failed to safeguard assets under its custody and is unable to meet all customer withdrawals.    As such, Respondent has materially and willfully breached its fiduciary duties to its clients, in violation of NRS 669.2825(1)(k).

21.    NRS 669.2846(1) states  "Whenever the Commissioner has reasonable cause to believe that any person is violating or is threatening to or intends to violate any provision of this chapter, the Commissioner may, in addition to all actions provided for in this chapter and without prejudice thereto, enter an order requiring the person to desist or to refrain from such violation."

22.    NRS 669.280(1) states "The violation of any of the provisions of this chapter by the officers or directors, or the managers or members acting in a managerial capacity, of any trust company is sufficient cause for the Commissioner to close the trust company, liquidate its business and revoke its license."

23.    The Commissioner has reasonable cause to believe that Respondent is violating the provisions of NRS Chapter 669 by operating a trust company in an unauthorized, unsafe manner.

24. Respondent has 30 days after the date of the instant ORDER TO CEASE AND DESIST FROM VIOLATIONS OF NRS 669 ("Order") to request an administrative hearing. The Order shall be deemed final if the Division does not receive a verified petition for a hearing within the time prescribed.

**ORDER**

IT IS HEREBY ORDERED that Respondent shall **CEASE AND DESIST** from operating and/or engaging in the trust company business in violation of NRS Chapter 669, specifically NRS 669.100(1) and NRS 669.2825(1)(a), (b), (c), (f) and (k).

IT IS FURTHER ORDERED that the Respondent:

a. Cease and desist from accepting fiat currency from existing and new clients for custody purposes.

b. Cease and desist from accepting cryptocurrency from existing and new clients for custody purposes.

DATED this 21st day of June 2023.

STATE OF NEVADA
DEPARTMENT OF BUSINESS AND INDUSTRY
FINANCIAL INSTITUTIONS DIVISION

By: ____________________
Sandy O'Laughlin
Commissioner

**NOTICE OF RIGHT TO A HEARING**

**RESPONDENT HAS THE RIGHT TO REQUEST A HEARING IN THIS MATTER.** If you wish to request a hearing, you must file a request **within thirty (30) days** after this Order to Cease and Desist was served on the Respondent. This Order to Cease and Desist shall be deemed final if the Division does not receive a verified petition for hearing from the Respondent within this prescribed time.

Respondent's request for a hearing must be delivered to:

FINANCIAL INSTITUTIONS DIVISION
DEPARTMENT OF BUSINESS AND INDUSTRY
3300 W. Sahara Avenue, Suite 250
Las Vegas, Nevada 89102

Other important rights you have are listed in Nevada Revised Statutes Chapters 669 and 233B and the Nevada Administrative Code Chapter 669.

DATED this 21st day of June 2023.

STATE OF NEVADA
DEPARTMENT OF BUSINESS AND INDUSTRY
FINANCIAL INSTITUTIONS DIVISION

By: ______________________
Sandy O'Laughlin
Commissioner

**CERTIFICATE OF SERVICE**

I certify that I am an employee of the State of Nevada, Department of Business and Industry, Financial Institutions Division, and that on June 21, 2023, I deposited in the U.S. mail, postage prepaid, via First Class Mail and Certified Return Receipt Requested, a true and correct copy of the foregoing **ORDER TO CEASE AND DESIST FROM VIOLATIONS OF NRS CHAPTER 669; NOTICE OF RIGHT TO A HEARING**, addressed as follows:

Matthew Saltzman
Saltman Mugan Dushoff
1835 Village Center Circle
Las Vegas, NV 89134
*Certified Mail: 7019 1120 0000 3407 8744*

Jor Law
Prime Trust
330 S Rampart Blvd, Suite 260
Las Vegas, NV 89145
*Certified Mail: 7019 1120 0000 3407 8751*

DATED this 21 day of June 2023.

By: [signature]

**CERTIFICATE OF SERVICE**

I certify that I am an employee of the State of Nevada, Department of Business and Industry, Financial Institutions Division, and that on June 21, 2023, I hand-delivered a true and correct copy of the foregoing **ORDER TO CEASE AND DESIST FROM VIOLATIONS OF NRS CHAPTER 669; NOTICE OF RIGHT TO A HEARING**, to the following address:

*Personal Service to:*
Prime Trust
330 S Rampart Blvd, Suite 260
Las Vegas, NV 89145

DATED this 21 day of June 2023.

By: ____________________

# **EXHIBIT 2**

Receivership Petition

Electronically Filed
6/26/2023 4:02 PM
Steven D. Grierson
CLERK OF THE COURT

**PET**

AARON D. FORD
Attorney General
MICHAEL DETMER
Chief Deputy Attorney General
Nevada Bar No. 10873
555 E. Washington Avenue, Suite 3900
Las Vegas, NV 89101
P: (702) 486-3809
Email: mdetmer@ag.nv.gov
*Attorneys for the Financial Institutions Division*

CASE NO: A-23-872963-B
Department 22

**IN THE EIGHTH JUDICIAL DISTRICT COURT OF THE STATE OF NEVADA**

**CLARK COUNTY, NEVADA**

SANDY O'LAUGHLIN, in her capacity as Commissioner of the State of Nevada, Department of Business and Industry, Financial Institutions Division,

Petitioner,

vs.

PRIME CORE TECHNOLOGIES, INC., PRIME TRUST, LLC, PRIME IRA, LLC, PRIME DIGITAL, LLC,

Respondent.

Case No.

Dept. No.

**PETITION FOR APPOINTMENT OF RECEIVER, TEMPORARY INJUNCTION, AND OTHER PERMANENT RELIEF**

Pursuant to Nevada Revised Statute ("NRS") 669.2846 and Rule 65 of the Nevada Rules of Civil Procedure ("NRCP"), Petitioner, Sandy O'Laughlin, Commissioner ("Commissioner") of the Financial Institutions Division ("Division"), State of Nevada petitions this Honorable Court to enter a temporary restraining order ("TRO") enjoining PRIME CORE TECHNOLOGIES, INC., and/or any of its subsidiaries or entities related thereto including PRIME TRUST, LLC, PRIME IRA, LLC, and/or PRIME DIGITAL, LLC,

(hereinafter collectively referred to as "PRIME"), from operating in the business as a retail trust company, and further to issue an order appointing a receiver over PRIME for the purpose of its conservation or rehabilitation.

This Petition is based upon the attached Points and Authorities, the Declaration of the Commissioner, and the stipulation of PRIME for this receivership. Accordingly, the Commissioner moves the Court to issue an order to show cause why the Petition should not be granted. Because PRIME has requested the receivership and in order to urgently address/evaluate PRIME's financial condition to protect its customers, good cause exists to set the show-cause hearing sooner than 15 days from the date of this Petition, or to proceed without a show-cause hearing.

**REQUEST FOR TEMPORARY INJUNCTIVE RELIEF**

Pending permanent orders of the Court, the Commissioner requests, as authorized by NRS 669.2846 and the referenced statutes, that the Court immediately issue the following temporary orders for injunctive relief:

1. Immediately impound the property of PRIME, including all its assets, books, papers, documents, and records pertaining thereto, which includes, but is not limited to, all of PRIME's accounts, trust, customer, operating, cryptocurrency, or otherwise, and/or its Application Programming Interface ("API") (hereinafter cumulatively referred to "Assets"). NRS 669.2846(3).

2. Immediately appoint a Receiver over PRIME with the authority to enter the business and immediately oversee the operation and rehabilitation of the business. NRS 669.2846(3).

3. Immediately enjoin PRIME, including its officers, agents, and employees, from disbursing, committing, transferring, substituting, or withdrawing any funds from all of PRIME's accounts, trust, customer, operating, cryptocurrency or otherwise, or removing other property from, controlled, or owned by PRIME except as expressly directed or approved by the Receiver pending the show-cause hearing. *Id.*

4. Immediately enjoin PRIME, the officers, directors, stockholders, members, subscribers, managers, agents, employees, and all other persons from: (1) wasting or disposing of any Assets or property of PRIME, or (2) transacting any further business on behalf of PRIME except as expressly directed or approved by the Receiver pending the show-cause hearing. *Id.*

5. Authorize the Receiver to employ and to fix the compensation of such deputies, counsel, employees, accountants, actuaries, investment counselors, asset managers, consultants, assistants, and other personnel as the Receiver considers necessary.

**REQUEST FOR PERMANENT INJUNCTIVE RELIEF**

After the show-cause hearing, as authorized by NRCP 65 and the referenced statutes (unless the Court proceeds without such hearing) the Commissioner moves for permanent injunctive and other relief, as follows, in order to protect PRIME's customers and the public:

1. Permanently appoint a Receiver over PRIME with the authority to enter the business and immediately oversee the operation and conservation or rehabilitation of the business. NRS 669.2846. Should the Court grant the instant Petition, PRIME and the Division respectfully request permission to submit to the Court recommendations as to the individual to be appointed as the receiver over PRIME. The parties have conferred in these regards and would recommend those individuals listed in the "Affidavit of Commissioner O'Laughlin" which is attached herein as "Exhibit 1".

2. Permanently enjoin PRIME, the officers, directors, stockholders, members, subscribers, managers, agents, employees, and all other persons from: (1) wasting or disposing of any Assets or property of PRIME, or (2) transacting any further business on behalf of PRIME except as expressly directed or approved by the Receiver. *Id.*

. . .

3.    Permanently enjoin PRIME, including its officers, agents, and employees, from disbursing, committing, transferring, substituting, or withdrawing any funds from PRIME's accounts, trust, customer, operating, cryptocurrency, or otherwise, or removing other property from, controlled, or owned by PRIME except as expressly directed or approved by the Receiver. *Id.*

4.    Vest the Receiver with title to all of PRIME's real and personal property of every kind whatsoever and take possession of the Assets wherever located, whether in the possession of PRIME or its officers, directors, employees, consultants, attorneys, agents, managers, parents, subsidiaries, affiliated corporations, or those acting in concert with any of these persons, and any other persons, including, but not limited to, all property, offices maintained or utilized by PRIME, books, papers, contracts, deposits, stocks, securities, rights of action, accounts, documents, data records, papers, evidences of debt, bonds, debentures, mortgages, furniture, fixtures, office supplies, safe deposit boxes, legal/litigation files, and all books and records of insurers, and administer them under the general supervision of the Court.

5.    Authorize the Receiver to take any and all actions that the Receiver deems necessary in connection with these proceedings, and as provided in NRS chapter 669 and any other applicable law.

DATED this 26th day of June, 2023.


AARON D. FORD
Attorney General

By: /s/ Michael D. Detmer
    MICHAEL DETMER
    Chief Deputy Attorney General
    *Attorney for the Financial Institutions Division*

## POINTS AND AUTHORITIES

### I. Introduction

Following discussions between the Financial Institutions Division (the "Division") and PRIME, PRIME has stipulated and agreed to a receivership. (*See* PRIME's "Written Stipulation of the Board of Directors" attached herein as "Exhibit 2"). Prime was notified on or about June 26, 2023, that the instant Petition would be filed with the Court. In this case, the Commissioner agrees that a receivership is appropriate on the grounds that PRIME may not be financially solvent and/or is in an unsafe or unsound condition to transact business. The Commissioner seeks to protect PRIME's customers through the above-referenced injunctions and the appointment of a receiver for PRIME.

### II. Facts

1. Prime Trust, LLC ("Prime Trust"), is a Nevada-domiciled retail trust company licensed as of January 26, 2017, License No. TR10035. Comm'r Aff. at ¶ 6 . Prime Trust is a wholly-owned subsidiary of Prime Core Technologies, Inc., ("Prime Core"), a Delaware corporation with its principal office located in Las Vegas, NV. Prime Digital, LLC and Prime IRA, LLC are Nevada-domiciled companies that are wholly-owned subsidiaries of Prime Trust .

2. PRIME is also currently licensed in fifteen (15) states across the US as a money transmitter.

3. PRIME provides trust services and operates as a financial technology-driven company, dealing in cryptocurrency and developing its own FinTech software and providing software services to its clients. PRIME's business model is business-to-business-to-consumer.

4. In 2018, PRIME engaged in the business of holding cryptocurrency in trust for clients. In furtherance of the same, PRIME created a digital wallet ("Wallet") for the purpose of holding digital currency in trust for its customers. Comm'r Aff. at ¶ 7(a).

. . .

. . .

5. In 2019, the company contracted with Fireblocks, LLC ("Fireblocks"), a digital asset security platform, to store all of the cryptocurrency assets it held in custody. Comm'r Aff. at ¶ 7(b).

6. Though the migration from the Wallet to the Fireblocks' platform was completed in 2020, the original Wallet continued to exist but was marked as inactive. Comm'r Aff. at ¶ 7(c).

7. In 2020, after the migration to Fireblocks was completed, PRIME came under new management. When the new management came to PRIME they were purportedly informed by prior management that all cryptocurrency assets were maintained and accessible in the Fireblocks platform. Comm'r Aff. at ¶ 7(d).

8. In January 2021, PRIME reintroduced specific legacy wallet forwarding addresses to customers ("Legacy Wallets"). It is understood PRIME did so because of limitations associated with creating new wallets within the Fireblocks platform. PRIME purportedly believed that these legacy wallets existed  on the Fireblocks platform or were configured to forward to wallets accessible on the Fireblocks platform. Comm'r Aff. at ¶ 7(e).

9. However, it is understood that on or about December 2021, PRIME discovered that it was unable to access the Legacy Wallets and the cryptocurrency therein. Comm'r Aff. at ¶ 7(f).

10. It is understood that from December 2021 to March 2022, to satisfy the withdrawals from the inaccessible Legacy Wallets, PRIME purchased additional digital currency using customer money from its omnibus customer accounts. Comm'r Aff. at ¶ 7(g).

11. PRIME is reported to have been making efforts to regain access to the Legacy Wallets. However, as of the date of this Petition, PRIME has been unable to do so. Comm'r Aff. at ¶ 7(h).

. . .

. . .

. . .

12. In addition to the above, it is reported that the frequency of customer withdrawals from PRIME have recently increased[1]. Furthermore, many of the withdrawals were for large sums. As such, at or about the time of the instant Petition, it is understood that PRIME's financial status is such that it owes, in fiat currency, $85,670,000 to its clients but has $2,904,000 in fiat currency (equaling an $82,766,000 fiat currency liability). As to digital currency, PRIME owes $69,509,000 to its clients but only has $68,648,000 in digital currency. Comm'r Aff. at ¶ 7(i) (see also, "Declaration of Jor Law," which is attached herein as "Exhibit 3"). As such, PRIME would be unable to satisfy all of its withdrawals[2].

13. With consideration of the above, PRIME is in an unsafe financial condition and/or is insolvent. Additionally, PRIME's condition will only progressively worsen as customers continue to withdraw from PRIME.

## III. Analysis

### A. Legal Standard

Pursuant to NRS 669.2846, the Court is authorized to enter injunctive relief and appoint a receiver in the following circumstances:

> 2. The Attorney General or the **Commissioner may bring an action to enjoin a person from engaging in or continuing a violation or from doing any act or acts in furtherance thereof. In any such action, an order or judgment may be entered awarding a preliminary or final injunction as may be deemed proper.**
>
> 3. In addition to all other means provided by law for the enforcement of a restraining order or injunction, **the court in which an action is brought may impound, and appoint a**

[1] The recent surge in withdrawals may be attributed to reporting in the news of PRIME's dire financial condition(https://blockworks.co/news/prime-trust-said-to-be-scrambling-for-emergency-cash-package; https://protos.com/prime-trust-delays-withdrawals-spooks-binance-us-swan-users-amid-acquisition/), as well as articles concerning an entity known as "Banq," which is reported to have declared bankruptcy, and which incorrectly identify it as a subsidiary of Prime Trust: (https://www.coindesk.com/business/2023/06/14/prime-trust-unit-banq-files-for-bankruptcy/).

[2] All monetary references provided within the instant Petition are approximations unless otherwise specified.

> **receiver for, the property and business of the defendant, including books, papers, documents and records pertaining thereto, or so much thereof as a court may deem reasonably necessary to prevent violations of this chapter through or by means of the use of property and business, whether such books, papers, documents and records are in the possession of the defendant, a registered agent acting on behalf of the defendant or any other person**. A receiver, when appointed and qualified, has such powers and duties as to custody, collection, administration, winding up and liquidation of such property and business as may from time to time be conferred upon the receiver by the court.
>
> 4. If a receiver is appointed pursuant to subsection 3, such receiver shall remit to the owners, members or shareholders of the retail trust company any amount of equity and capital of the retail trust company remaining after discharge of the liabilities and payment of the normal, prudent and reasonable expenses of the receivership. [emphasis added].

(Emphasis added).

NRCP 65(b) further provides, that the Court, in its sound discretion, may enter a temporary restraining order if (1) it clearly appears from affidavits or a verified complaint that immediate and irreparable injury, loss, or damage will result to the applicant before the adverse party or that party's attorney can be heard in opposition; and (2) the applicant's attorney certifies to the efforts made to notify the adverse party, and the reasons why notice should not be required.

The following four factors are appropriate consideration for the Court in determining whether it should enter temporary and preliminary injunctive relief:

1. The threat of immediate, irreparable harm;
2. The likelihood that the party seeking a preliminary injunction will be successful on the merits of the underlying action;
3. Whether the balance of interests weighs in favor of the party seeking the preliminary injunction; and
4. Whether issuance of the preliminary injunction is in the public's interest.

*Clark County School District v. Buchanan,* 112 Nev. 1146, 924 P.2d 716 (1996).

. . .

The State and its officers are not required to post security for a temporary restraining order or preliminary injunction. NRCP 65(c).

**B. PRIME is in Violation of Multiple Sections of Chapter 669 of NRS.**

As provided above, NRS 669.2846(2) provides that the Court may order an injunction on a trust company to "enjoin a person from engaging in or continuing a violation or from doing any act or acts in furtherance thereof." Additionally, pursuant to NRS 669.2846(3), the court may appoint a receiver "for the enforcement of a restraining order or injunction." NRS 669.2825 enumerates conduct for which the Commissioner may take disciplinary action and which would authorize the requested injunctions and receiver appointment under NRS 669.2846(2) and (3). NRS 669.2825 provides:

> 1. The Commissioner may institute disciplinary action or forthwith initiate proceedings to take possession of the business and property of any retail trust company when it appears that the retail trust company:
> **(a) Has violated its charter or any state or federal laws applicable to the business of a trust company.**
> (b) Is conducting its business in an unauthorized or unsafe manner.
> **(c) Is in an unsafe or unsound condition to transact its business.**
> (d) Has an impairment of its stockholders' equity.
> (e) Has refused to pay or transfer account assets to its account holders as required by the terms of the accounts' governing instruments.
> **(f) Has become insolvent.**
> (g) Has neglected or refused to comply with the terms of a lawful order of the Commissioner.
> (h) Has refused, upon proper demand, to submit its records, affairs and concerns for inspection and examination of an appointed or authorized examiner of the Commissioner.
> (i) Has made a voluntary assignment of its assets to receivers, conservators, trustees or creditors without complying with NRS 669.230.
> (j) Has failed to pay a tax as required pursuant to the provisions of chapter 363A or 363C of NRS.
> (k) Has materially and willfully breached its fiduciary duties to its customers.
> (l) Has failed to properly disclose all fees, interest and other charges to its customers.

> (m) Has willfully engaged in material conflicts of interest regarding a customer's account.
>
> (n) Has made intentional material misrepresentations regarding any aspect of the services performed or proposed to be performed by the retail trust company.
>
> 2. The Commissioner also may forthwith initiate proceedings to take possession of the business and property of any trust company when it appears that the officers of the trust company have refused to be examined upon oath regarding its affairs. [emphasis added].

(Emphasis added).

As referenced above, it is understood that at or about the time of the filing of the instant Petition, PRIME is currently operating under an $82,766,000 fiat deficit. At or about the time of the filing of the instant Petition, PRIME's financial condition is more specifically understood to be described as follows:

- Fiat currency
  - Amounts PRIME owe to clients: $85,670,000
  - PRIME's fiat currency $2,904,000
  - PRIME's total client liability: $82,766,000
- As to cryptocurrency (converted to USD and rounded to the nearest thousand)
  - Amounts PRIME owes to clients: $69,509,000
  - PRIME's assets $68,648,000
  - PRIME's total client liability: $861,000

(Comm'r Aff. at ¶ 7(i); Law Dec. at ¶ 5).

As evidenced above, PRIME's current financial status is such that its liabilities greatly exceed its assets and it therefore will not be able to satisfy all withdrawals. Such inherently requires the necessary conclusion that PRIME is in an unsafe and/or unsound condition to transact its business and/or PRIME is insolvent. As such, PRIME is in violation of NRS 669.2825(c), (f).

In addition to being in violation of NRS 669.2825, PRIME is also in violation of NRS 669.100(1), which provides:

. . .

> No retail trust company may be organized or operated with a stockholders' equity of less than $1,000,000, or in such greater amount as may be required by the Commissioner. The full amount of the initial stockholders' equity must be paid in cash, exclusive of all organization expenses, before the trust company is authorized to commence business.

Pursuant to the above, PRIME may not operate with a stockholders' equity of less than $1,000,000. However, it was observed in PRIME's NMLS Money Service Business Call Report, that Prime is operating with a negative $-12,071,508 stockholders' equity position[3]. Comm'r Aff. at ¶ 7(j). As such, PRIME is without the necessary equity required by NRS 669.100(1). Such is further evidence of its insolvency and/or unsafe/unsound condition to transact business[4].

**C. <u>Temporary Restraining Order is Necessary.</u>**

1. <u>Immediate, Irreparable Harm Will Result if PRIME is Permitted to Continue to Operate.</u>

For a Temporary Restraining Order to be issued there must exist the threat of immediate and irreparable harm. Irreparable harm is that which cannot be adequately remedied by compensatory damages. *Hamm v. Arrowcreek Homeowners' Ass'n*, 124 Nev. 28, 183 P.3d 895, 901 (2008).

As noted above, PRIME's liabilities greatly exceed its assets, and it is currently in a position wherein it would be unable to satisfy all withdrawals. As such, if PRIME is not enjoined, PRIME will continue to operate in an unsafe/unsound manner and/or while insolvent and it will be without funds to satisfy client withdrawals. Under such a scenario,

---

[3] Call report data was pulled from the March 2023 Money Service Business Call Report, which was submitted to NMLS by Prime Trust LLC.

[4] A failure to satisfy the requirements of NRS 669.100(1) constitutes a violation of NRS 669.2825(1)(a) ("The Commissioner may institute disciplinary action or forthwith initiate proceedings to take possession of the business and property of any retail trust company when it appears that the retail trust company…(a) Has violated its charter or any state or federal laws applicable to the business of a trust company.")

Compensatory damages from PRIME would not be an option as they would not have the money to pay said damages.

In addition to the above, with the manner in which it operates, PRIME has put itself into a deficit that ultimately may require PRIME to close its doors. A Receiver may be able to rehabilitate PRIME into a company that operates legally and viably and therefore save PRIME's employees from unemployment.

Furthermore, as PRIME becomes unable to satisfy customer withdrawals, aside from the immediate harm to the customers who will lose their money with PRIME, the public at large will be harmed in the form of harm to the public's confidence in financial institutions, specifically including harm to the confidence in the emerging market of cryptocurrency.

With consideration of the above, compensatory damages will not deter the cascade of problems that will continue should PRIME not be enjoined and a receiver not be appointed over it.

2. <u>The Division is Likely to Succeed on the Merits.</u>

For a preliminary injunction to issue, the moving party must show that the moving party has a reasonable likelihood of success on the merits. *Boulder Oaks Community Ass'n v. B&J Andrews Enterprises, LLC.,* 125 Nev. 397, 215 P.3d 27, 31 (2009).

Entities that wish to operate as a retail trust company in Nevada must be in a safe and sound condition to transact business. NRS 669.2825(c). Furthermore, a trust company may not be insolvent. NRS 669.2825(f). Further still, a trust company may not operate with a stockholders' equity of less than $1,000,000. NRS 669.100(1). However, as noted throughout the instant Petition, PRIME is currently operating at a substantial deficit and will not be able to satisfy all withdrawals. Such leads to the necessary conclusion that PRIME is in an unsafe condition to transact business and/or is insolvent. NRS 669.2825(1)(c), (f). This conclusion is only further buttressed by the fact that PRIME does not have sufficient stockholder equity as required by NRS 669.100, as well as the continuing withdrawals that PRIME is being required to satisfy.

While all of the above factors are indicative, if not dispositive, of the Division's "reasonable likelihood of success on the merits" as they show multiple violations of NRS chapter 669, of critical importance to the instant Petition is that the Petition is stipulated/agreed to and, therefore, there is no dispute of fact.

3. <u>The Balance of Interests Favors an Injunction and an Injunction is in the Public's Interest.</u>

In determining whether to grant the TRO/Injunction the court must weigh the harm likely to be suffered by PRIME against the injury that will likely befall PRIME's customers if it is not. Notably, the public interest in ensuring that PRIME's obligations to its customers can continue to be observed.

The Nevada Legislature determined "a need, for the protection of the public interest, to regulate companies which are engaged in the trust company business" NRS 669.010(1). The legislature therefore placed trust companies under the supervision/regulation of the Division in observation of that need. NRS 669.010.  It is a necessary conclusion that the public interest is consistent with the Division's interest to protect the public. Such protection inherently requires that PRIME be enjoined from continuing to operate in an unsafe/unsound condition and/or while insolvent and in the manner which has led to the substantial $82,766,000 liabilities that are the catalyst for the instant Petition.

4. <u>A Show Cause Hearing Would Unnecessarily Delay this Matter and/or Would be to the Detriment of the Public.</u>

Finally, the Commissioner presents the question to the Court as to whether a show-cause hearing is necessary in this matter when such will increase expenses to PRIME (expenses that it soon may not be able to afford and that would reduce the ultimate receivership estate) and unnecessarily delay this matter.  At the very least, in order to urgently evaluate PRIME's financial condition to protect its customers, good cause exists to set the show-cause hearing sooner than 15 days from the date of this Petition

Additionally, a show-cause hearing may be unnecessary because PRIME (the party who is to be ordered to appear to defend the petitioned action) has stipulated to the

action. (Ex. 2.) A show-cause hearing will increase expenses to PRIME and unnecessarily delay this matter. At the very least, because PRIME has stipulated to this receivership action, and in order to urgently evaluate PRIME's financial condition to protect policyholders, good cause exists to set the show-cause hearing sooner than 15 days from the date of this Petition.

**D. Receivership Appointment**

The Petition filed in this case seeks an order of the court to grant temporary and permanent injunctive relief relative to PRIME's operation of business, *as well as* to appoint a receiver over PRIME. NRS 669.2846(3). Pursuant to NRS 669.2846(3), the Court may appoint a receiver as it deems "reasonably necessary to prevent violations of" Chapter 669 of the NRS. A receiver appointed by the Court pursuant to NRS 669.2846(3) "has such duties as to custody, collection, administration, winding up and liquidation of such property and business as may from time to time be conferred upon the receiver by the court."

Pursuant to the above, it is understood that the receiver would be responsible for the proper administration of the business and would be under a duty to act for the protection of PRIME's customers, as well as to conserve the available Assets. Accordingly, it is interpreted that should the Court appoint a receiver, the receiver would be vested with title to all of the company's property and have the sole right to receive the books, records, and Assets of PRIME, wherever located, to satisfy his or her duties/claims in this state and elsewhere.

In this case, PRIME has stipulated to the receivership which the Commissioner agrees to be appropriate. As PRIME is operating under a substantial deficit between its assets and liabilities, and the remediation measures it has taken to date has not resolved those liabilities, the appointment of a receiver is reasonably necessary to protect the public and to prevent PRIME's perpetual violations of NRS chapter 669.

**IV. Conclusion**

The Commissioner seeks to preserve the status quo, to enforce the purposes of NRS chapter 669, and to protect PRIME's customers. Based on the foregoing, the Commissioner

respectfully requests that the Court issue an Order to Show Cause directing PRIME to appear and show cause why the Petition for Appointment of a Receiver, Temporary Injunction, and Other Permanent Relief should not be granted, or alternatively grant the Petition for permanent relief without such show-cause hearing. If a show-cause hearing is ordered, the Commissioner further requests that the Court issue interim orders of injunction as set forth herein, pending the show-cause hearing and further permanent relief, injunctions, and orders of the Court as set forth herein.

DATED this 26th day of June, 2023.

AARON D. FORD
Attorney General

By: /s/ Michael D. Detmer
    MICHAEL DETMER
    Chief Deputy Attorney General
    *Attorney for the Financial Institutions Division*

# Exhibit 1

# AFFIDAVIT OF SANDY O'LAUGHLIN

I, Sandy O'Laughlin, being first duly sworn and under all penalties of perjury of the State of Nevada, do hereby swear that the assertions of this Affidavit are true and correct to the best of my knowledge and belief:

1. I am the Commissioner of the Nevada Financial Institutions Division ("Division"). I have served as the Commissioner of the Division since November 11, 2019.
2. I am over 18 years of age and am qualified to submit this Affidavit.
3. The Division regulates multiple financial institutions including, but not limited to, retail trust companies.
4. The Division conducts investigations and/or examinations of its licensees to ensure their compliance with the law, including those enumerated in the Nevada Revised Statutes and/or Nevada Administrative Code.
5. In my capacity as the Commissioner of the Division, I have direct access to all of the Division's records including, but not limited to, licenses, licenses applications, examination reports and/or examination findings.
6. The Division has been conducting an examination of Prime Trust LLC, a Nevada-domiciled retail trust company licensed as of January 26, 2017, License No. TR10035 ("Prime").
7. The following information was procured in the course of the examination, including through discussions with PRIME and/or its agents, and is understood to be true and accurate:
    a. In 2018, PRIME engaged in the business of holding cryptocurrency in trust for clients. In furtherance of the same, PRIME created a digital wallet ("Wallet") for the purpose of holding digital currency in trust for its customers.
    b. In 2019, the company contracted with Fireblocks LLC, ("Fireblocks"), a digital asset security platform, to store all of the cryptocurrency assets it held in custody.

. . .

(equaling an $82,766,000 fiat currency liability). As to digital currency, PRIME owes $69,509,000 to its clients but only has $68,648,000 in digital currency. As such, PRIME would be unable to satisfy all of its withdrawals[1].

j. Additionally, it was observed in Prime's NMLS Money Service Business Call Report that Prime is operating with a negative $-12,071,508 stockholders' equity position.

8. With consideration of the above, Prime's financial status appears to be such that Prime will be unable to satisfy all of the withdrawals of its customers.

9. As Prime is operating, and will seemingly continue to operate, with a substantial deficit, it is believed that Prime is inherently in an unsafe/unsound condition to conduct business and/or is insolvent.

10. The Parties have conferred regarding possible candidates for appointment as a receiver over PRIME and have agreed that any of the below listed individuals may be qualified to act as a receiver over it, should the Court and said individual agree to the appointment:

- John Guedry (Former CEO of Bank of Nevada; Former CEO of First Independent Bank)
- Paul Huygens (Director of Meadows Bank; Principal of Province)
- Arvind Menon (Former President and CEO of Meadows Bank; Former President and CEO/CFO at Nevada First Bank; Former CFO of Bank of America, Nevada)

______________________ Signature of Affiant

6/26/2023 Date

The foregoing affidavit was sworn to and subscribed before me by Sandra Lee S. O'Laughlin on this 26 day of June, 2023.

[1] All monetary references provided within the instant Affidavit are approximations unless otherwise specified.

DESIREE DENISE GARDINE-JEFFERSON
NOTARY PUBLIC
STATE OF NEVADA
APPT. NO. 21-0621-01
MY APPT. EXPIRES JUNE 21, 2025

June 26, 2023

Notary Public                                    Date

# Exhibit 2

**ACTION BY UNANIMOUS WRITTEN CONSENT**
**OF THE BOARD OF DIRECTORS OF**
**PRIME CORE TECHNOLOGIES INC.**

June 23, 2023

The undersigned, being all of the members of the Board of Directors (the "***Board***") of Prime Core Technologies Inc., a Delaware corporation (the "***Company***"), pursuant to Section 141(f) of the Delaware General Corporation Law and the Bylaws of the Company, hereby adopt and approve the following recitals and resolutions by unanimous written consent without a meeting, effective as of the date written above:

1. Stipulation to Receivership.

**WHEREAS**, on the date written above, the Board reviewed material and information regarding that certain Nevada Financial Institution Division's (the "***NV FID***") Petition for Appointment of Court Appointed Receiver, Temporary Injunction, and Other Permanent Relief, dated as of June 22, 2023; and

**WHEREAS**, following the exploration of various strategic alternatives and careful consideration of the facts and circumstances, the Board has determined that it is in the best interests of the Company and its stockholders to stipulate to receivership for the Company and its subsidiary, Prime Trust, LLC, a Nevada limited liability company ("***Prime Trust***" and, together with the Company, the "***Prime Entities***"), and for the Prime Entities to execute the Consent to Order of Receiver and Injunctions attached hereto as Exhibit A (the "***Consent***").

**NOW, THEREFORE, BE IT RESOLVED**, that the Board agrees to the Consent and entry of an order placing a receiver appointed by the Eighth Judicial District Court of Clark County (the "***Court***") over the Prime Entities without further notice or hearing;

**RESOLVED**, that grounds may exist for the entry of an order placing Prime Trust under a receiver under Nevada Revised Statute ("***NRS***") § 669.2846 as Prime Trust may be in an unsafe/unsound condition to transact business and/or is insolvent;

**FURTHER RESOLVED**, that the Board consents to any injunctions over the Prime Entities the Court deems necessary and appropriate under NRS § 669.2846;

**FURTHER RESOLVED**, that the Board agrees that the Court appointed receiver may, at the receiver's sole discretion, apply to the receivership Court for any additional orders regarding the Prime Entities;

**FURTHER RESOLVED**, that should the Court appoint a receiver, the Company consents and agrees to pay all costs of the receiver and/or the receiver's administration of the Prime Entities as ordered by the Court; and

**FURTHER RESOLVED**, that the directors and the officers of the Company are hereby authorized to execute any and all consent agreements or documents on behalf of the

Company and are authorized to take any and all additional actions as deemed necessary or appropriate by the receiver without further approval of the directors or stockholders.

2. Omnibus Resolutions.

**RESOLVED**, that the officers and directors of the Company be, and each of them hereby is, authorized and directed, for and on behalf of the Company, to make all such arrangements, to do and perform all such acts and to execute and deliver all such certificates and such other instruments, agreements, and documents, and to pay all such reasonable expenses, as they may deem necessary or appropriate in order to fully effectuate the purpose of each and all of the foregoing resolutions, and to waive all conditions and to do all things necessary and helpful to carry out the purposes of the foregoing resolutions, and that any and all prior or future actions taken by those officers or directors that are consistent with the purposes and intent of the above resolutions are ratified, approved, adopted, and confirmed;

**RESOLVED FURTHER**, that all documents, agreements and instruments previously executed and delivered, and any and all actions previously taken by any director, officer, employee or agent of the Company in connection with or related to the matters set forth in, or reasonably contemplated or implied by, the foregoing resolutions be, and each of them hereby is, adopted, ratified, confirmed and approved in all respects and for all purposes as the acts and deeds of the Company;

**RESOLVED FURTHER**, that this Action by Unanimous Written Consent of the Board may be executed in counterparts, each of which shall be deemed an original, but all of which together shall constitute one and the same original; and

**RESOLVED FURTHER**, that the directors of the Company may execute and deliver their executed counterpart of this Action by Unanimous Written Consent of the Board to the Secretary of the Company by facsimile signature, electronic mail (including PDF or any electronic signature complying with the U.S. federal ESIGN Act of 2000, e.g., www.docusign.com) or other transmission method, and no confirmation of such delivery by the mailing or personal delivery of an executed original of this Action by Written Consent of the Board of Directors to the Secretary of the Company shall be required in order for this Action by Written Consent of the Board of Directors to be effective.

**[SIGNATURE PAGE FOLLOWS]**

DocuSign Envelope ID: EF787D0E-FE47-41DB-9B6E-EE74639B741E Case 23-11161-JKS Doc 30 Filed 08/25/23 Page 43 of 94

**IN WITNESS WHEREOF**, the undersigned have executed this Action by Unanimous Written Consent as of the date set forth above.

**DIRECTORS:**

DocuSigned by:
DA6D97BED3D54E4...

Jon P. Jiles

DocuSigned by:
Thomas Gonser
8715CA7A35A84ED...

Thomas Gonser

DocuSigned by:
Zane Busteed
C5904B2AB5CB41D...

Zane Busteed

[SIGNATURE PAGE TO ACTION BY UNANIMOUS WRITTEN CONSENT
OF THE BOARD OF DIRECTORS OF PRIME CORE TECHNOLOGIES INC.]

**EXHIBIT A**

**CONSENT TO ORDER OF RECEIVER AND INJUNCTIONS**

**It is hereby agreed to as follows:**

1. Prime Trust, LLC ("***Prime Trust***") is a Nevada-domiciled retail trust company licensed as of January 26, 2017, License No. TR10035. Prime Trust is a wholly-owned subsidiary of Prime Core Technologies Inc. ("***Prime Core***"). Prime Digital, LLC ("***Prime Digital***") and Prime IRA LLC ("***Prime IRA***" and together with Prime Trust, Prime Core and Prime Digital, the "***Prime Entities***") are wholly-owned subsidiaries of Prime Trust.

2. Prime Core acknowledges that grounds may exist for the entry of an order enjoining, and having a receiver placed over the Prime Entities pursuant to Nevada Revised Statute ("***NRS***") § 669.2846 and as described in the Nevada Financial Institution Division's Petition for Appointment of Court Appointed Receiver, Temporary Injunction, and Other Permanent Relief (the "***Petition***").

3. Prime Core consents through an Action of Unanimous Written Consent of the Board of Directors to the entry of an order placing the Prime Entities under a court appointed receiver pursuant to NRS § 669.2846.

4. Prime Core consents to the injunctions requested within the Petition and/or the Court deems necessary and appropriate pursuant to NRS § 669.2846. Prime Core agrees that the receiver may, at the receiver's sole discretion, apply to Court for any additional orders regarding the Prime Entities.

5. Prime Core agrees to pay all costs of the receiver and/or associated with the receiver's administration of the Prime Entities as ordered by the Court.

6. This consent is attached to the Unanimous Written Consent of the Board of Directors adopting it.

7. Prime Core acknowledges that it has agreed to this "Consent to Order of Receiver and Injunctions" voluntarily and after having the opportunity to consult counsel of its choosing. **Prime Core consents to the entry of an order appointing a receiver over the Prime Entities, as well as the injunctions requested in the Petition and/or those deemed appropriate by the Court, and agrees without reservation to all of the above terms and conditions, and shall be bound by all provisions herein.**

**ACTION BY WRITTEN CONSENT
OF THE BOARD OF MANAGERS OF
PRIME TRUST, LLC**

June 23, 2023

The undersigned, being all of the members of the Board of Managers (the "***Board***") of Prime Trust, LLC, a Nevada limited liability company (the "***Company***"), pursuant to Chapter 86 of the Nevada Revised Statutes (the "***NRS***") and the Operating Agreement of the Company, hereby adopt and approve the following recitals and resolutions by unanimous written consent without a meeting, effective as of the date written above:

1. Stipulation to Receivership.

**WHEREAS**, on the date written above, the Board reviewed material and information regarding that certain Nevada Financial Institution Division's (the "***NV FID***") Petition for Appointment of Court Appointed Receiver, Temporary Injunction, and Other Permanent Relief, dated as of June 22, 2023; and

**WHEREAS**, following the exploration of various strategic alternatives and careful consideration of the facts and circumstances, the Board has determined that it is in the best interests of the Company, its sole member and its subsidiaries for the Company to stipulate to receivership and execute the Consent to Order of Receiver and Injunctions attached hereto as Exhibit A (the "***Consent***").

**NOW, THEREFORE, BE IT RESOLVED**, that the Board agrees to the Consent and entry of an order placing a receiver appointed by the Eighth Judicial District Court of Clark County (the "***Court***") over the Company without further notice or hearing;

**RESOLVED FURTHER**, that grounds may exist for the entry of an order placing the Company under a receiver under NRS §669.2846 as the Company may be in an unsafe/unsound condition to transact business and/or is insolvent;

**RESOLVED FURTHER**, that the Board consents to any injunctions over the Company the Court deems necessary and appropriate under Nevada Revised Statute §669.2846;

**RESOLVED FURTHER**, that the Board agrees that the Court appointed receiver may, at the receiver's sole discretion, apply to the receivership Court for any additional orders regarding the Company;

**RESOLVED FURTHER**, that should the Court appoint a receiver, the Company consents and agrees to pay all costs of the receiver and/or the receiver's administration of the Company as ordered by the Court; and

**RESOLVED FURTHER**, that the managers and the officers of the Company are hereby authorized to execute any and all consent agreements or documents on behalf of the Company and are authorized to take any and all additional actions as deemed necessary or appropriate by the receiver without further approval of the managers or sole member.

2. Omnibus Resolution.

**RESOLVED**, that the officers and managers of the Company be, and each of them hereby is, authorized and directed, for and on behalf of the Company, to make all such arrangements, to do and perform all such acts and to execute and deliver all such certificates and such other instruments, agreements, and documents, and to pay all such reasonable expenses, as they may deem necessary or appropriate in order to fully effectuate the purpose of each and all of the foregoing resolutions, and to waive all conditions and to do all things necessary and helpful to carry out the purposes of the foregoing resolutions, and that any and all prior or future actions taken by those officers or directors that are consistent with the purposes and intent of the above resolutions are ratified, approved, adopted, and confirmed;

**RESOLVED FURTHER**, that all documents, agreements and instruments previously executed and delivered, and any and all actions previously taken by any manager, officer, employee or agent of the Company in connection with or related to the matters set forth in, or reasonably contemplated or implied by, the foregoing resolutions be, and each of them hereby is, adopted, ratified, confirmed and approved in all respects and for all purposes as the acts and deeds of the Company. The actions taken by this consent shall have the same force and effect as if taken by the undersigned at a meeting of the Board, duly called and constituted pursuant to the Act and the Operating Agreement of the Company. This consent shall be filed with the minutes of the proceedings of the Board;

**RESOLVED FURTHER**, that this Action by Unanimous Written Consent of the Board may be executed in counterparts, each of which shall be deemed an original, but all of which together shall constitute one and the same original; and

**RESOLVED FURTHER**, that the directors of the Company may execute and deliver their executed counterpart of this Action by Unanimous Written Consent of the Board to the Secretary of the Company by facsimile signature, electronic mail (including PDF or any electronic signature complying with the U.S. federal ESIGN Act of 2000, e.g., www.docusign.com) or other transmission method, and no confirmation of such delivery by the mailing or personal delivery of an executed original of this Action by Written Consent of the Board of Managers to the Secretary of the Company shall be required in order for this Action by Written Consent of the Board of Managers to be effective.

**[SIGNATURE PAGE FOLLOWS]**

**IN WITNESS WHEREOF**, the undersigned have executed this Action by Written Consent of the Board of Managers of Prime Trust, LLC, as of the date(s) set forth below, and this Action by Written Consent shall be effective as of the date last set forth below.

**MANAGERS:**

Date: 06/23/2023

DocuSigned by:
Michael Garrett
24FBB22FAEE9472...
Michael Garrett

Date: 06/22/2023

DocuSigned by:
Jon P. Jiles
DA6D97BED3D54E4...
Jon Jiles

Date: 06/22/2023

DocuSigned by:
1AF66E1928FA449...
Robert F. List

Date: 06/22/2023

DocuSigned by:
BRENT BEEMAN
371DAED488C6480...
Brent Beeman

Date: 06/22/2023

DocuSigned by:
Michael Smith
D533C82F97B74D1...
Michael Smith

**EXHIBIT A**

**CONSENT TO ORDER OF RECEIVER AND INJUNCTIONS**

**It is hereby agreed to as follows:**

1. Prime Trust, LLC ("***Prime Trust***"), is a Nevada-domiciled retail trust company licensed as of January 26, 2017, License No. TR10035. Prime Trust is a wholly-owned subsidiary of Prime Core Technologies Inc. ("***Prime Core***"). Prime Digital, LLC ("***Prime Digital***") and Prime IRA LLC ("***Prime IRA***" and together with Prime Trust and Prime Digital, the "***Prime Entities***") are wholly-owned subsidiaries of Prime Trust.

2. Prime Trust acknowledges that grounds may exist for the entry of an order enjoining, and having a receiver placed over the Prime Entities pursuant to Nevada Revised Statute ("***NRS***") § 669.2846 and as described in the Nevada Financial Institution Division's (the "***Division***") "Petition for Appointment of Court Appointed Receiver, Temporary Injunction, and Other Permanent Relief" (the "***Petition***").

3. Prime Trust consents through an Action of Unanimous Written Consent of the Board of Managers to the entry of an order placing the Prime Entities under a court appointed receiver pursuant to NRS § 669.2846.

4. Prime Trust consents to the injunctions requested within the Petition and/or the Court deems necessary and appropriate pursuant to NRS § 669.2846. Prime Trust agrees that the receiver may, at the receiver's sole discretion, apply to Court for any additional orders regarding the Prime Entities.

5. Prime Trust agrees to pay all costs of the receiver and/or associated with the receiver's administration of the Prime Entities as ordered by the Court.

6. This consent is attached to the Unanimous Written Consent of the Board of Managers adopting it.

7. Prime Trust acknowledges that it has agreed to this "Consent to Order of Receiver and Injunctions" voluntarily and after having the opportunity to consult counsel of its choosing. **Prime Trust consents to the entry of an order appointing a receiver over the Prime Entities, as well as the injunctions requested in the Petition and/or those deemed appropriate by the Court, and agrees without reservation to all of the above terms and conditions, and shall be bound by all provisions herein.**

# Exhibit 3

**DECLARATION OF JOR LAW**

I, JOR LAW, hereby declare as follows:

1. I am Interim Chief Executive Officer of Prime Trust LLC. I have served in this position since Nov. 29, 2022.
2. I am over 18 years of age and am qualified to submit this Declaration.
3. In my capacity as the Interim Chief Executive Officer, information about Prime Trust LLC including, but not limited to, financial data, is reported to me by Prime Trust personnel.
4. I have reviewed the Petition to Appoint a Receiver, Temporary Injunction, and Other Permanent Relief ("the Petition") filed by Petitioner, by and through counsel, Aaron D. Ford, Attorney General of the State of Nevada, and Michael Detmer, Chief Deputy Attorney General of the State of Nevada, and am familiar with its contents.
5. To the best of my knowledge and at or around the time of the filing of the Petition, the financial status reports for fiat and digital assets contained in the Petition accurately match figures that were obtained through a review of Prime Trust's records by trust company personnel and reported to me.

I declare under penalty of perjury that the foregoing information is true and correct.

Executed this June 26, 2023.

Jor Law

JOR LAW
Interim Chief Executive Officer
Prime Trust LLC

**EXHIBIT 3**

Motion to Modify

ELECTRONICALLY SERVED
8/3/2023 4:55 PM

Electronically Filed
08/03/2023 4:55 PM
CLERK OF THE COURT

~~MOT~~ OST

MATTHEW T. DUSHOFF, ESQ.
Nevada Bar No. 004975
WILLIAM A. GONZALES, ESQ.
Nevada Bar No. 015230
**SALTZMAN MUGAN DUSHOFF**
1835 Village Center Circle
Las Vegas, Nevada 89134
Telephone: (702) 405-8500
Facsimile: (702) 405-8501
E-Mail: mdushoff@nvbusinesslaw.com
wgonzales@nvbusinesslaw.com

Attorneys for Receiver
**JOHN GUEDRY**

SALTZMAN MUGAN DUSHOFF PLLC
1835 Village Center Circle
Las Vegas, Nevada 89134
Tel: (702) 405-8500 / Fax: (702) 405-8501

**DISTRICT COURT**

**CLARK COUNTY, NEVADA**

* * *

SANDY O'LAUGHLIN, in her capacity as Commissioner of the State of Nevada, Department of Business and Industry, Financial Institutions Division,

Petitioner,

vs.

PRIME CORE TECHNOLOGIES, INC., PRIME TRUST, LLC, PRIME IRA, LLC, PRIME DIGITAL, LLC,

Respondents.

CASE NO. A-23-872963-B

DEPT NO. 22

**HEARING DATE REQUESTED**

**RECEIVER JOHN GUEDRY'S MOTION FOR RELIEF/MODIFY "ORDER TO SHOW CAUSE; INJUNCTION; ORDER APPOINTING RECEIVER PENDING FURTHER ORDER OF THE COURT; ORDER TO PRESERVE ASSETS OF RESPONDENT" ON ORDER SHORTENING TIME**

Comes now, JOHN GUEDRY ("Guedry" or "Receiver"), the Court-Appointed Receiver of Respondents PRIME CORE TECHNOLOGIES, INC., and/or any of its subsidiaries or entities related thereto, including PRIME TRUST, LLC, PRIME IRA, LLC, and/or PRIME DIGITAL, LLC (hereinafter collectively referred to as the "Prime Entities"), by and through his attorneys of record, SALTZMAN MUGAN DUSHOFF, hereby files this **Motion for Relief/Modify "Order to Show Cause; Injunction; Order Appointing Receiver Pending Further Order of the Court; Order to Preserve Assets of Respondent"** on Order Shortening Time pursuant to NRCP 60(b)(2) and (6).

SALTZMAN MUGAN DUSHOFF PLLC
1835 Village Center Circle
Las Vegas, Nevada 89134
Tel: (702) 405-8500 / Fax: (702) 405-8501

Pursuant to EDCR 2.26, Guedry further moves that this Court set the hearing on the above-referenced Motion on an order shortening time due to the importance of receiving authorization to move forward with a potential filing under 11 U.S.C. § 101, *et seq.* to timely protect the Prime Entities' assets.

This Motion is based on the papers and pleadings filed herein, declaration of Matthew T. Dushoff, Esq., the following memoranda of points and authorities, the pleadings, all papers on file, and any oral argument granted by this honorable Court.

DATED this 3rd day of August, 2023.

**SALTZMAN MUGAN DUSHOFF**

By ______________________________
MATTHEW T. DUSHOFF, ESQ.
Nevada Bar No. 004975
WILLIAM A. GONZALES, ESQ.
Nevada Bar No. 015230
1835 Village Center Circle
Las Vegas, Nevada 89134

Attorneys for Receiver
**JOHN GUEDRY**

**ORDER SHORTENING TIME TO HEAR RECEIVER JOHN GUEDRY'S MOTION FOR RELIEF/MODIFY "ORDER TO SHOW CAUSE; INJUNCTION; ORDER APPOINTING RECEIVER PENDING FURTHER ORDER OF THE COURT; ORDER TO PRESERVE ASSETS OF RESPONDENT"**

Upon the Declaration of Matthew T. Dushoff, Esq. and upon a showing of good cause, IT IS HEREBY ORDERED that RECEIVER JOHN GUEDRY'S MOTION FOR RELIEF/MODIFY "ORDER TO SHOW CAUSE; INJUNCTION; ORDER APPOINTING RECEIVER PENDING FURTHER ORDER OF THE COURT; ORDER TO PRESERVE ASSETS OF RESPONDENT" ON ORDER SHORTENING TIME ("Motion to Modify"), shall be heard before the above-entitled Court in Department XX at 8:30 A.M. o'clock __m. on the 8th day of August 2023.

IT IS FURTHER ORDERED that any Opposition to the Receiver's Motion to Modify shall be filed no later than 12:00 a.m. .m. on the 5th day of August, 2023, ~~and any Reply in Support of Receiver's Motion to Modify shall be filed no later than ______ __.m. on the _____ day of ________________, 2023.~~

Dated this 3rd day of August, 2023

Susan Johnson

**1C7 623 7C22 E74F**
**Susan Johnson**
**District Court Judge**

SALTZMAN MUGAN DUSHOFF PLLC
1835 Village Center Circle
Las Vegas, Nevada 89134
Tel: (702) 405-8500 / Fax: (702) 405-8501

*Sandy O'Laughlin, etc. v. Prime Core Technologies, Inc., et al.*/A-23-872963-B
Motion for Relief/Modify "Order to Show Cause; Injunction; Order Appointing Receiver Pending Further Order of the Court; Order to Preserve Assets of Respondent" on Order Shortening Time

Mot to Modify on OSC - Final (20658-1)
DM_US 198465647-8.121647.0011

Page 3 of 10

**DECLARATION OF MATTHEW T. DUSHOFF, ESQ. IN SUPPORT OF RECEIVER JOHN GUEDRY'S MOTION FOR RELIEF/MODIFY "ORDER TO SHOW CAUSE; INJUNCTION; ORDER APPOINTING RECEIVER PENDING FURTHER ORDER OF THE COURT; ORDER TO PRESERVE ASSETS OF RESPONDENT" ON ORDER SHORTENING TIME**

I, MATTHEW DUSHOFF, declare as follows:

1. I am over the age of eighteen, I have personal knowledge of the facts set forth in this declaration, except for those facts stated on information and belief, and am competent to testify thereto if called upon to do so.

2. I am a duly licensed and practicing attorney of the State of Nevada and a shareholder with Saltzman Mugan Dushoff.

3. Saltzman Mugan Dushoff serves as legal counsel to Guedry in his capacity as Receiver for the Prime Entities.

4. I offer this declaration pursuant to NRCP 65(b) in support of Guedry's Motion for Relief/Modify "Order to Show Cause; Injunction; Order Appointing Receiver Pending Further Order of the Court; Order to Preserve Assets of Respondent" on order shortening time.

5. Guedry is requesting that his Motion to Modify be heard on shortened time as Guedry has determined the best path forward for the Prime Entities is through filing for relief under 11 U.S.C. § 101, *et seq.* no later than Monday, August 7, 2023.

6. If this matter is heard in the ordinary course, Receiver will be unduly delayed in taking the necessary steps to protect the Prime Entities and their assets for the benefit of its customers and creditors.

I declare under penalty of perjury under the laws of the State of Nevada that the foregoing is true and correct.

Executed this 3rd day of August, 2023.

MATTHEW T. DUSHOFF, ESQ.

SALTZMAN MUGAN DUSHOFF PLLC
1835 Village Center Circle
Las Vegas, Nevada 89134
Tel: (702) 405-8500 / Fax: (702) 405-8501

SALTZMAN MUGAN DUSHOFF PLLC
1835 Village Center Circle
Las Vegas, Nevada 89134
Tel: (702) 405-8500 / Fax: (702) 405-8501

## MEMORANDUM OF POINTS AND AUTHORITIES

## I. INTRODUCTION

Since his appointment by this Court in its July 14, 2023 Order (the "Order"), John Guedry, as Receiver for the Prime Entities, has explored multiple areas of relief to determine the best way for the Prime Entities to continue their business and maximize value for stakeholders. After much consideration, the Receiver has determined that the best path forward is for the Prime Entities to seek voluntary relief under chapter 11 of title 11 of the United States Code (hereinafter, "chapter 11"). In anticipation of such a filing, the Receiver seeks entry of an order of this Court approving the following relief: (a) establishing a special restructuring committee (the "Special Committee") with a grant of authority to direct the Prime Entities to file voluntary petitions for relief under chapter 11 of the Bankruptcy Code; (b) appointing John Guedry, John Wilcox, and Michael Wyse (collectively, the "Special Committee Members") as the sole members of the Special Committee; (c) authorizing the Receiver or the Special Committee, as applicable, to retain such additional professionals determined to be necessary to assist the Prime Entities in the filing and prosecution of their chapter 11 cases; and (d) authorizing the Receiver, on behalf of the Prime Entities, to remit the Retainer (as defined below) to McDermott Will & Emery LLP ("McDermott").

## II. STATEMENT OF FACTS

The Receiver hereby adopts the statement of facts as stated in the Petition for Appointment of Receiver, Temporary Injunction, and Other Permanent Relief on file herein.

Since the Order, the Receiver has worked with experienced professionals to determine the best path forward for the Prime Entities. The Receiver has interviewed management, worked with his professionals, and sought legal and financial advice. Based on the work performed since the Order, the Receiver has determined that the best path forward is to seek protection under chapter 11.

The Receiver has also determined that it is appropriate to establish a Special Committee comprised of the Special Committee Members. The Special Committee should be vested with the requisite authority under applicable Nevada law to guide the Prime Entities through chapter 11 with this Court maintaining jurisdiction over the corporate governance of the Prime Entities for as

SALTZMAN MUGAN DUSHOFF PLLC
1835 Village Center Circle
Las Vegas, Nevada 89134
Tel: (702) 405-8500 / Fax: (702) 405-8501

long as the receivership exists. The appointment of the Special Committee and the appointment of the Special Committee Members thereto are being sought primarily to ensure that current management does not dictate decisions concerning the chapter 11 cases.

To facilitate a responsible chapter 11 filing, the Receiver has determined that it needs a series of experienced professionals. While Section 7 of the Court's Order permits the hiring of "counsel" and "accountants," the Receiver has determined that additional professionals are required. Section 7 of this Court's Order also imposes a cap of $500,000 for any particular professional services organization. The Receiver has determined that McDermott is the appropriate law firm to hire in connection with the prospective chapter 11 cases based on McDermott's expertise in complex chapter 11 cases generally and in cryptocurrency chapter 11 cases in particular. Accordingly, the Receiver seeks to remit a retainer in the amount of $1,250,000 (the "Retainer") to McDermott.

## III. LEGAL STANDARD

Pursuant to NRCP 60(b), the court may relieve a party from an order based on newly discovered evidence that with reasonable diligence, could not have been discovered in time to move for a new trial or any other reason that justifies relief. NRCP 60(b)(1) and (6).

## IV. LEGAL ARGUMENT

### A. THIS COURT SHOULD APPOINT A SPECIAL COMMITTEE OF THE BOARD COMPRISED OF THE SPECIAL COMMITTEE MEMBERS.

The Special Committee is necessary to ensure that the Receiver or the Special Committee Members, as applicable, control the decision-making in connection with the chapter 11 cases. The Receiver is primarily making this motion to ensure that current management does not control the chapter 11 cases. While the Order, Nevada statutory authority, and the draft stipulation by the Prime Entities authorize the Receiver to appoint the Special Committee, in an abundance of caution the Receiver seeks court approval of this appointment.

//

//

//

The Receiver seeks to appoint the following persons as the sole members of the Special Committee:

| | | |
|---|---|---|
| (A) | John Guedry: | Receiver |
| (B) | John Wilcox: | An experienced Nevada banker who has been advising the Receiver in connection with his duties. |
| (C) | Michael Wyse: | A bankruptcy professional who has overseen dozens of chapter 11 restructurings over the balance of his career. |

The Receiver will file copies of the resumes of Mr. Wilcox and Mr. Wyse, as well as declarations from Mr. Wilcox and Mr. Wyse, in advance of the hearing on this Motion.

The Receiver maintains the authority to appoint the Special Committee and the members thereof. The Order vested the Receiver with the authority to "enter the business and immediately oversee the operation, conservation, rehabilitation, administration, and/or liquidation of the business of PRIME, subject to the terms of this Order and any other pertinent orders of this court." (*See* Order; *see also* NRS 669.2846.) The Order is consistent with NRS 669.2846, which vests the Receiver with "such powers and duties as to custody, collection, administration, winding up and liquidation of such property and business as may from time to time be conferred upon the receiver by the court." NRS 669.2846. The Order was issued after a petition filed by the Chief Deputy Attorney General and an affidavit by the Commissioner Sandy O'Laughlin of the Financial Institutions Division seeking the appointment of a Receiver to ensure that responsible decisions were made. By the powers vested to the Receiver in the Order to "oversee" the "administration" and "liquidation" of the Prime Entities, the Receiver is seeking to ensure that the Special Committee – and not current management – are responsible for making decisions in connection with the prospective chapter 11 filings. Similarly, the Receiver is seeking to ensure that the Special Committee has the authority to file for chapter 11 protections.

On June 23, 2023, the Prime Entities executed an "Action by Unanimous Written Consent" which consented to, among things, the appointment of the Receiver ("June 23 Consent"). The June 23 Consent which states that "the managers and the officers of the Company are hereby authorized to execute any and all consent agreements or documents on behalf of the Company and are authorized to take any and all additional actions as deemed necessary or appropriate by the

SALTZMAN MUGAN DUSHOFF PLLC
1835 Village Center Circle
Las Vegas, Nevada 89134
Tel: (702) 405-8500 / Fax: (702) 405-8501

SALTZMAN MUGAN DUSHOFF PLLC
1835 Village Center Circle
Las Vegas, Nevada 89134
Tel: (702) 405-8500 / Fax: (702) 405-8501

receiver . . ."  The Receiver will propose a draft consent agreement to the Board of Directors of Prime Core Technologies Inc. to appoint the Special Committee, and it is the Receiver's belief that the Boards of Directors or Managers, as applicable, of the Prime Entities, will vote to adopt the resolutions shortly upon entry of the order sought in this motion.

Counsel for the Receiver has spoken with Chief Deputy Attorney General Michael Detmer and will forward Mr. Detmer a copy of the motion as soon as it is filed.

One reason to appoint the Special Committee is to avoid litigation in the bankruptcy court in which current management or another stakeholder seeks to divest the Receiver of his power to oversee the chapter 11 cases.  One such argument would be under the "turnover" provision in 11 U.S.C. 543(a)-(b), which could be read to bar a "custodian" (which includes receivers) from overseeing chapter 11 cases. *See* 11 U.S.C. 543(a)-(b).  A bankruptcy court is statutorily permitted to excuse the "turnover" requirement "if the interests of creditors and, if the debtor is not insolvent, of equity security holders would be better served by permitting a [receiver] custodian to continue in possession, custody, or control of such property." *See* 11 U.S.C. § 543(d).  Rather than engage in protracted and unnecessary litigation, the appointment of the Special Committee would ensure that the Receiver and the new Special Committee Members – and not current management – maintain control of the chapter 11 cases.  This ruling would be consistent with this Court's prior Order, which prohibited current management from "filing or assisting in the filing of a petition for relief under the Bankruptcy Code, 11 U.S.C. 101, *et seq.*, or of any similar insolvency proceeding . . . " (Order at 2.)

Accordingly, the Receiver requests that this Court (a) establish the Special Committee; (b) appoint the Special Committee Members as the sole members of the Special Committee; (c) vest the Special Committee with the power to file and oversee petitions for relief under chapter 11 notwithstanding anything to the contrary in any existing corporate governance documents or agreements; and (d) authorize reasonable compensation for the Special Committee Members in the amount of $25,000 per month.

//

//

SALTZMAN MUGAN DUSHOFF PLLC
1835 Village Center Circle
Las Vegas, Nevada 89134
Tel: (702) 405-8500 / Fax: (702) 405-8501

**B. THIS COURT SHOULD ALLOW THE RECEIVER TO RETAIN SUCH ADDITIONAL PROFESSIONALS AS NECESSARY TO FILE AND PROSECUTE THE CHAPTER 11 CASES OF THE PRIME ENTITIES AND PROVIDE A PROFESSIONAL FEE RETAINER TO McDERMOTT IN EXCESS OF THE CAP.**

The Receiver has determined that in order to responsibly seek chapter 11 protection it needs professional advice from organizations other than "personnel," "counsel" and "accountants." (*See* Order at ¶ 7.) While the Order states that the Receiver may hire "personnel," the Receiver is seeking clarification that it may hire additional professionals that are necessary for a cryptocurrency-related chapter 11 filing, including, without limitation, a financial advisor, an investment banker, a cryptocurrency tracing and recovery expert, and a claims and noticing agent. Accordingly, the Receiver seeks authority to retain such additional professionals as the Receiver determines necessary and in the best interests of the Prime Entities, as well as authority to remit retainers up to the $500,000 limit set forth in the Order without further leave of the Court. All professional fees incurred in connection with the chapter 11 cases will be subject to review by the bankruptcy court pursuant to 11 U.S.C. § 327.

As stated in Section 7 of this Court's Order, the Receiver is permitted to retain counsel and accountants in the exercise of his duties as Receiver. However, the Receiver is not permitted to incur any expenditure in excess of $500,000 using the Prime Entities' assets without prior court approval. (*See* Order at ¶ 7.) As stated above, Receiver has determined that the Prime Entities' best path forward is to seek protection pursuant to chapter 11 of the Bankruptcy Code. Given the novel and complex issues presented by the downfall of the Prime Entities, the Receiver has determined that the Prime Entities must retain sophisticated legal representation with cryptocurrency experience in connection with any chapter 11 filing. The Receiver has vetted various law firms to represent the Prime Entities in connection with a chapter 11 filing and has selected McDermott based on its experience in chapter 11 restructuring generally and specifically in cryptocurrency-related chapter 11 cases. Accordingly, the Receiver seeks "prior approval" pursuant to the Order to remit the Retainer which is in excess of $500,000 to McDermott. All counsel fees incurred in connection with the chapter 11 cases will be subject to review by the bankruptcy court pursuant to 11 U.S.C. 327.

SALTZMAN MUGAN DUSHOFF PLLC
1835 Village Center Circle
Las Vegas, Nevada 89134
Tel: (702) 405-8500 / Fax: (702) 405-8501

## V. CONCLUSION

For the reasons set forth above, Receiver respectfully requests entry of an order:

(a) establishing the Special Committee and appointing the Special Committee Members as the sole members thereof;

(b) vesting the Special Committee with authority to file and oversee the chapter 11 cases of the Prime Entities;

(c) authorizing the Receiver or the Special Committee, as applicable, to retain additional professionals; and

(d) authorizing the Receiver, on behalf of the Prime Entities, to remit the Retainer to McDermott.

Because of the urgency of the matter, we request the hearing be set as soon as possible.

DATED this 3rd day of August, 2023.

SALTZMAN MUGAN DUSHOFF

By________________________
MATTHEW T. DUSHOFF, ESQ.
Nevada Bar No. 004975
WILLIAM A. GONZALES, ESQ.
Nevada Bar No. 015230
1835 Village Center Circle
Las Vegas, Nevada 89134

Attorneys for Receiver
**JOHN GUEDRY**

**CSERV**

DISTRICT COURT
CLARK COUNTY, NEVADA

| Sandy O'Laughlin, Commissioner of State of NV, Financial Institutions Division, Plaintiff(s)<br><br>vs.<br><br>Prime Core Technologies Inc, Defendant(s) | CASE NO: A-23-872963-B<br><br>DEPT. NO. Department 22 |
|---|---|

**AUTOMATED CERTIFICATE OF SERVICE**

This automated certificate of service was generated by the Eighth Judicial District Court. The foregoing Order Shortening Time was served via the court's electronic eFile system to all recipients registered for e-Service on the above entitled case as listed below:

Service Date: 8/3/2023

| | |
|---|---|
| Blakeley Griffith | bgriffith@swlaw.com |
| Sonja Dugan | sdugan@swlaw.com |
| Tom Edwards, Esq. | tedwards@nevadafirm.com |
| Ismail Amin, Esq. | iamin@talglaw.com |
| Frank Ellis, III | fellis@nevadafirm.com |
| Michael Detmer | mdetmer@ag.nv.gov |
| Marilyn Millam | mmillam@ag.nv.gov |
| Louis Csoka | lcsoka@ag.nv.gov |
| Danielle Wright | dwright2@ag.nv.gov |

| | |
|---|---|
| Docket Docket | docket_las@swlaw.com |
| Maricris Williams | mawilliams@swlaw.com |
| Candace Carlyon | ccarlyon@carlyoncica.com |
| Dawn Cica | dcica@carlyoncica.com |
| Nancy Rodriguez | nrodriguez@carlyoncica.com |
| Cristina Robertson | crobertson@carlyoncica.com |
| Matthew Dushoff | mdushoff@nvbusinesslaw.com |
| William Gonzales | wgonzales@nvbusinesslaw.com |
| Matthew Vesterdahl | mvesterdahl@talglaw.com |
| Peter Gilmore | pgilmore@talglaw.com |
| Nathaniel Collins | ncollins@talglaw.com |
| Marian Massey | mmassey@talglaw.com |
| Lisa Causey | lcausey@talglaw.com |
| Nicholas Santoro | nsantoro@nevadafirm.com |
| Jaklin Guyumjyan | jguyumjyan@talglaw.com |
| Candice Korkis | candice.korkis@bmo.com |
| Candice Korkis | candice.korkis@bmo.com |
| Candice Korkis | candice.korkis@bmo.com |
| Jill Williamson | jwilliamson@gravislaw.com |
| John O'Leary | JOleary@gravislaw.com |
| Marissa Pyfrom | mpyfrom@gravislaw.com |

**EXHIBIT 4**

Order on Motion to Modify

ELECTRONICALLY SERVED
8/14/2023 9:05 AM

Electronically Filed
08/14/2023 9:04 AM
CLERK OF THE COURT

**OGM**

MATTHEW T. DUSHOFF, ESQ.
Nevada Bar No. 004975
WILLIAM A. GONZALES, ESQ.
Nevada Bar No. 015230
**SALTZMAN MUGAN DUSHOFF**
1835 Village Center Circle
Las Vegas, Nevada 89134
Telephone: (702) 405-8500
Facsimile: (702) 405-8501
E-Mail: mdushoff@nvbusinesslaw.com
wgonzales@nvbusinesslaw.com

Attorneys for Receiver
**JOHN GUEDRY**

SALTZMAN MUGAN DUSHOFF PLLC
1835 Village Center Circle
Las Vegas, Nevada 89134
Tel: (702) 405-8500 / Fax: (702) 405-8501

**DISTRICT COURT**

**CLARK COUNTY, NEVADA**

* * *

SANDY O'LAUGHLIN, in her capacity as Commissioner of the State of Nevada, Department of Business and Industry, Financial Institutions Division,

Petitioner,

vs.

PRIME CORE TECHNOLOGIES, INC., PRIME TRUST, LLC, PRIME IRA, LLC, PRIME DIGITAL, LLC,

Respondents.

CASE NO. A-23-872963-B

DEPT NO. 22

**ORDER GRANTING RECEIVER JOHN GUEDRY'S MOTION FOR RELIEF/MODIFY "ORDER TO SHOW CAUSE; INJUNCTION; ORDER APPOINTING RECEIVER PENDING FURTHER ORDER OF THE COURT; ORDER TO PRESERVE ASSETS OF RESPONDENT" ON ORDER SHORTENING TIME**

This matter came before the Court, the Honorable Susan H. Johnson presiding, on the 8th day of August, 2023, at 8:30 a.m., on JOHN GUEDRY's ("Guedry" or "Receiver"), the Court-Appointed Receiver of Respondents PRIME CORE TECHNOLOGIES, INC., and/or any of its subsidiaries or entities related thereto including PRIME TRUST, LLC, PRIME IRA, LLC, and/or PRIME DIGITAL, LLC (hereinafter collectively referred to as "Prime") Motion to Relief/Modify "Order to Show Cause; Injunction; Order Appointing Receiver Pending Further Order of the Court; Order to Preserve Assets of Respondent" on Order Shortening Time (the "Motion"). Matthew T. Dushoff appeared on behalf of Receiver. Michael Detmer, Esq., of the Office of the Attorney General of the State of Nevada, appeared on behalf of Petitioner; Ismail Amin appeared on behalf

SALTZMAN MUGAN DUSHOFF PLLC
1835 Village Center Circle
Las Vegas, Nevada 89134
Tel: (702) 405-8500 / Fax: (702) 405-8501

of Stably Corporation and Coinbits, Inc.; Marian Massey appeared on behalf of Coinbits, Inc.; F. Thomas Edwards appeared on behalf of AnchorCoin, LLC; and Blakeley Griffith appeared on behalf of Polaris Ventures.

The Court having considered the pleadings, papers, and memoranda on file; having heard the arguments of counsel; and good cause appearing, makes the following Findings of Fact, Conclusions of Law, Decision, and Order:

**FINDINGS OF FACT**

1. Prime Trust, LLC is a Nevada-domiciled retail trust company licensed as of January 26, 2017, License No. TR10035.

2. Prime Trust is a wholly owned subsidiary of Prime Core Technologies, Inc., a Delaware corporation with its principal office located in Las Vegas, NV.

3. Prime Digital, LLC and Prime IRA, LLC are Nevada domiciled companies that are wholly owned subsidiaries of Prime Trust.

4. On June 26, 2023, Sandy O'Laughlin, in her capacity as Commissioner of the State of Nevada Department of Business and Industry, Financial Institutions Division ("FID") filed a Petition to Appoint a Receiver, Temporary Injunction and Other Permanent Relief to have a receiver appointed over Prime and to enjoin Prime from conducting any further retail trust company business ("Injunction Motion").

5. On July 14, 2023, this Court executed an order ("Injunction Order") that temporarily appointed John Guedry as the Receiver for Prime.[1]

6. Among other authorizations, the Injunction Order granted the Receiver authority to enter Prime and immediately oversee the operation, conservation, rehabilitation, administration, and/or liquidation of Prime, which would include the authority to file bankruptcy.

7. The Injunction Order further enjoined Prime's directors and officers from conducting any Prime activities that would interfere with the exclusive jurisdiction of this Court

[1] Capitalized terms not otherwise defined herein shall have the meanings ascribed to such terms in the Motion or the Injunction Order, as applicable.

SALTZMAN MUGAN DUSHOFF PLLC
1835 Village Center Circle
Las Vegas, Nevada 89134
Tel: (702) 405-8500 / Fax: (702) 405-8501

over Prime's Assets or Documents including the filing of a petition for relief under the Bankruptcy Code.

8. Mr. Guedry has represented that he has determined, in his business judgment, that Prime's best path forward is to seek protection pursuant to chapter 11 of the Bankruptcy Code.

9. On August 3, 2023, Mr. Guedry, as Receiver for Prime, filed the Motion.

10. The Receiver specifically requested that the Court (a) authorize the formation of a Special Committee and grant such Special Committee authority to direct Prime to file voluntary petitions for relief under chapter 11 of title 11 of the United States Code (the "Bankruptcy Code"); and (b) appoint John Guedry, John Wilcox, and Michael Wyse as the sole members of the Special Committee, and vest the Special Committee with requisite authority to (1) direct Prime to file voluntary petitions for relief under chapter 11 of the Bankruptcy Code, and (2) manage and oversee Prime during the pendency of any case(s) filed under the Bankruptcy Code, and (c) authorize the Receiver, on behalf of Prime, to remit an additional retainer in the amount of $1,250,000 (the "Retainer") to the law firm of McDermott Will & Emery, LLP ("McDermott").

11. This Court granted Prime's Motion to hear the matter on an order shortening time.

12. The hearing was set for August 8, 2023.

13. On August 4, 2023, Polaris Ventures, the FID and AnchorCoin, LLC filed limited oppositions to the Motion.

14. On August 6, 2023, Stably Corporation filed a joinder to the limited oppositions to the Motion.

15. On August 8, 2023, this Court held the hearing on the Motion.

16. At the hearing, the Court heard arguments from the Parties, as well as testimony from the Receiver and Prime's bankruptcy counsel from McDermott.

17. Mr. Guedry testified that he has not used any of Prime's customer deposits to pay legal fees or professional fees.

18. Mr. Guedry testified that the funds used to pay for Prime's legal and professional fees were provided by Prime Core through a Series B investment.

//

SALTZMAN MUGAN DUSHOFF PLLC
1835 Village Center Circle
Las Vegas, Nevada 89134
Tel: (702) 405-8500 / Fax: (702) 405-8501

19. Mr. Guedry testified regarding the need to provide McDermott with an additional retainer.

20. This Court also asked the Parties if there was an objection to rule upon the Injunction Motion at this hearing.

21. No Parties objected to the Court ruling on the Injunction Motion at the hearing.

## CONCLUSIONS OF LAW

1. Pursuant to NRCP 65(b), this Court has the authority to modify the Injunction Order.

2. Based upon the Motion, arguments and testimony at the hearing, this Court determines that there is good cause to grant the Motion and convert the temporary relief granted in the Injunction Order to permanent relief, thereby granting the Injunction Motion on a final basis.

## DECISION

1. The Receiver's request to appoint the Special Committee is GRANTED.

2. John Guedry, John Wilcox, and Michael Wyse are appointed as the sole members of the Special Committee, which Special Committee is vested with all necessary authority to (1) direct Prime to file voluntary petitions for relief under chapter 11 of the Bankruptcy Code, and (2) manage and oversee Prime during the pendency of any case(s) filed under chapter 11 of the Bankruptcy Code, notwithstanding anything to the contrary in any of Prime's organizational documents (or otherwise), including any necessary consent rights.

3. The directors, managers and officers of Prime are authorized to execute only those resolutions, consent agreements or documents on behalf of Prime that are deemed necessary or appropriate by the Receiver and/or the Special Committee to form and empower the Special Committee in accordance with this Order under applicable law.

4. The Receiver's request to remit an additional Retainer to McDermott is GRANTED; *provided*, *however*, that the additional Retainer shall be limited to $500,000, without prejudice to the Receiver's ability to request such further relief as he deems necessary and appropriate.

//

5. The Receiver's request to retain and compensate such additional professionals as the Receiver or the Special Committee, as applicable, deem necessary for a cryptocurrency-related chapter 11 filing, including, without limitation, a financial advisor, an investment banker, a cryptocurrency tracing and recovery expert, and a claims and noticing agent, is GRANTED; *provided, however*, that such compensation shall be subject to paragraph 7 of the Injunction Order unless and until Prime files for bankruptcy.

6. For the avoidance of doubt, nothing in this Order is intended to direct the Receiver and/or the Special Committee to commence any cases under the Bankruptcy Code, nor to approve any decision by the Receiver and/or the Special Committee to commence any such cases, which decision is left to the business judgment of the Receiver and/or the Special Committee, and the rights of all creditors, customers, and other parties in interest with respect to any such decision are expressly reserved.

7. The FID's Injunction Motion is GRANTED, and those orders provided within the Injunction Order are hereby made permanent on a final basis.

8. A status check shall be held on October 11, 2023, at 8:30 a.m. unless otherwise directed by the Court.

IT IS SO ORDERED.

**Dated this 14th day of August, 2023**

**0C0 5E5 94F6 3443**
**Susan Johnson**
**District Court Judge**

SALTZMAN MUGAN DUSHOFF PLLC
1835 Village Center Circle
Las Vegas, Nevada 89134
Tel: (702) 405-8500 / Fax: (702) 405-8501

*Sandy O'Laughlin, etc. v. Prime Core Technologies, Inc., et al.*/A-23-872963-B
Order Granting Receiver John Guedry's Motion for Relief/Modify "Order to Show Cause; Injunction; Order Appointing Receiver Pending Further Order of the Court; Order to Preserve Assets of Respondent" on Order Shortening Time

Order re Mot to Modify OSC - Final (20658-1) Page 5 of 6

**APPROVED AS TO FORM:**

OFFICE OF THE ATTORNEY GENERAL

By ***/s/ Michael Detmer***
MICHAEL DETMER
Chief Deputy Attorney General
Nevada Bar No. 10873
555 E. Washington Avenue, Suite 3900
Las Vegas, NV 89101

Attorneys for Petitioner
THE FINANCIAL INSTITUTIONS DIVISION

TALG, NV, LTD.

By ***/s/ Ismail Amin***
ISMAIL AMIN, ESQ. (Nevada Bar No. 9343)
5852 S. Durango Dr., Suite 105
Las Vegas, NV 89113

Attorney for STABLY CORPORATION & COINBITS, INC.

HOLLEY DRIGGS

By ***/s/ F. Thomas Edwards***
NICHOLAS J. SANTORO, ESQ.
Nevada Bar No. 532
FRANK A. ELLIS, III, ESQ.
Nevada Bar No. 1623
F. THOMAS EDWARDS, ESQ.
Nevada Bar No. 9549
300 South Fourth Street, Suite 1600
Las Vegas, Nevada 89101

Attorneys for ANCHORCOIN, LLC

SNELL & WILMER L.L.P.

By ***Does not approve***
BLAKELEY E. GRIFFITH, ESQ.
Nevada Bar No. 12386
Hayley J. Cummings, Esq.
Nevada Bar No. 14858
3883 Howard Hughes Parkway, Suite 1100
Las Vegas, NV 89169

Attorney for POLARIS VENTURES

Submitted by:

SALTZMAN MUGAN DUSHOFF

By________________________
MATTHEW T. DUSHOFF, ESQ.
Nevada Bar No. 004975
WILLIAM A. GONZALES, ESQ.
Nevada Bar No. 015230
1835 Village Center Circle
Las Vegas, Nevada 89134

Attorneys for Receiver
JOHN GUEDRY

SALTZMAN MUGAN DUSHOFF PLLC
1835 Village Center Circle
Las Vegas, Nevada 89134
Tel: (702) 405-8500 / Fax: (702) 405-8501

*Sandy O'Laughlin, etc. v. Prime Core Technologies, Inc., et al.*/A-23-872963-B
Order Granting Receiver John Guedry's Motion for Relief/Modify "Order to Show Cause; Injunction; Order Appointing Receiver Pending Further Order of the Court; Order to Preserve Assets Of Respondent" on Order Shortening Time

Order re Mot to Modify OSC - Final (20658-1) Page 6 of 6

**From:**          Michael D. Detmer <MDetmer@ag.nv.gov>
**Sent:**          Thursday, August 10, 2023 2:45 PM
**To:**            Matthew T. Dushoff; Ismail Amin; Marian Massey; nsantoro@nevadafirm.com;
                   tedwards@nevadafirm.com; Griffith, Blakeley
**Cc:**            Will A. Gonzales; Cindy Kishi
**Subject:**       RE: Prime Order

CAUTION: This email originated from outside of the organization. Do not click links or open attachments unless you recognize the sender and know the content is safe.

Matt,

Small detail/request but can you please change the reference to "Injunctive Order" on P5Ln19 to "Injunction Order."

I agree to your use of my e-signature.

Regards,

**Michael Detmer**

Chief Deputy Attorney General
Office of the Nevada Attorney General
555 E. Washington Ave. Ste. 3900
Las Vegas, NV 89101
(702) 486-3809



This email contains the thoughts and opinions of the sender, and does not represent official Attorney General policy. This email may contain legally privileged and/or confidential information. If you are not the intended recipient(s), any dissemination, distribution or copying of this email message is strictly prohibited. If you have received this message in error, please immediately notify the sender and delete this email from your computer.

**From:** Tom Edwards <tedwards@nevadafirm.com>
**Sent:** Thursday, August 10, 2023 2:46 PM
**To:** Matthew T. Dushoff
**Subject:** RE: Prime Order

CAUTION: This email originated from outside of the organization. Do not click links or open attachments unless you recognize the sender and know the content is safe.

You may affix my e-signature. Thanks

**F. Thomas Edwards**
Shareholder
Las Vegas Office

HOLLEY DRIGGS

Tel: 702.791.0308 | Fax: 702.791.1912
300 S. 4th Street, Suite 1600, Las Vegas NV 89101

Tel: 775.851.8700 | Fax: 775.851.7681
800 S. Meadows Parkway, Suite 800, Reno NV 89521

www.nevadafirm.com

This email message (including any attachments): (a) may include privileged, confidential, proprietary and/or other protected information, (b) is sent based upon a reasonable expectation of privacy, and (c) is not intended for transmission to, or receipt by, unauthorized persons. If you are not the intended recipient, please notify the sender immediately by telephone (702.791.0308) or by replying to this message and then delete the message and all copies or portions from your system. Thank you.

---

**From:** Matthew T. Dushoff <mdushoff@nvbusinesslaw.com>
**Sent:** Thursday, August 10, 2023 2:01 PM
**To:** Michael D. Detmer <MDetmer@ag.nv.gov>; Ismail Amin <iamin@talglaw.com>; Marian Massey <mmassey@talglaw.com>; Nicholas J. Santoro <nsantoro@nevadafirm.com>; Tom Edwards <tedwards@nevadafirm.com>; Griffith, Blakeley <bgriffith@swlaw.com>
**Cc:** Will A. Gonzales <wgonzales@NVBUSINESSLAW.COM>; Cindy Kishi <ckishi@nvbusinesslaw.com>
**Subject:** Prime Order

I made some additional changes in blue. Very minor changes. I understand that this order is not agreeable to all in form. Please advise before 3:00 p.m. today whether I can use your e-signature as agreeable to form, or that you do not agree to form. If I do not hear from you by 3:00 p.m., I will assume that you do not agree to the form. Thank you.

**Matthew T. Dushoff**
Shareholder

SALTZMAN MUGAN DUSHOFF
**Attorneys at Law**
1835 Village Center Circle, Las Vegas, NV 89134
Office : (702) 405-8500 / Fax : (702) 405-8501

**From:** Ismail Amin <iamin@talglaw.com>
**Sent:** Thursday, August 10, 2023 2:47 PM
**To:** Michael D. Detmer; Matthew T. Dushoff; Marian Massey; nsantoro@nevadafirm.com; tedwards@nevadafirm.com; Griffith, Blakeley
**Cc:** Will A. Gonzales; Cindy Kishi
**Subject:** Re: Prime Order
**Attachments:** Revised Order re Mot to Modify OSC to Address Comments.MTD[TALG].docx

CAUTION: This email originated from outside of the organization. Do not click links or open attachments unless you recognize the sender and know the content is safe.

We had a few minor cosmetic changes. With these incorporated, you have my consent to e-file.

Thanks,

Ismail Amin, MBEE, LL.M
talglaw.com
Direct: 702.331.6263
E-mail: iamin@talglaw.com
***Celebrating 18 Years of Exceptional Service.***
Las Vegas · Irvine · Dallas · Raleigh · Scottsdale · New York

This e-mail is sent by a law firm and contains information that may be privileged and confidential. If you are not the intended recipient, please notify us immediately, and delete the e-mail.

IRS Circular 230 Disclosure:
To ensure compliance with requirements imposed by the IRS, we inform you that any U.S. tax advice contained in this communication (including any attachments) is not intended or written to be used, and cannot be used for the purpose of (i) avoiding penalties under the Internal Revenue Code, or (ii) promoting, marketing or recommending to another party any matters addressed herein.



**CSERV**

DISTRICT COURT
CLARK COUNTY, NEVADA

| | |
|---|---|
| Sandy O'Laughlin, Commissioner of State of NV, Financial Institutions Division, Plaintiff(s)<br><br>vs.<br><br>Prime Core Technologies Inc, Defendant(s) | CASE NO: A-23-872963-B<br><br>DEPT. NO. Department 22 |

**AUTOMATED CERTIFICATE OF SERVICE**

This automated certificate of service was generated by the Eighth Judicial District Court. The foregoing Order Granting Motion was served via the court's electronic eFile system to all recipients registered for e-Service on the above entitled case as listed below:

Service Date: 8/14/2023

| | |
|---|---|
| Blakeley Griffith | bgriffith@swlaw.com |
| Sonja Dugan | sdugan@swlaw.com |
| Tom Edwards, Esq. | tedwards@nevadafirm.com |
| Louis Bubala III | lbubala@kcnvlaw.com |
| Michael Detmer | mdetmer@ag.nv.gov |
| Ismail Amin, Esq. | iamin@talglaw.com |
| Frank Ellis, III | fellis@nevadafirm.com |
| Marilyn Millam | mmillam@ag.nv.gov |
| Louis Csoka | lcsoka@ag.nv.gov |

| | |
|---|---|
| Danielle Wright | dwright2@ag.nv.gov |
| Docket Docket | docket_las@swlaw.com |
| Maricris Williams | mawilliams@swlaw.com |
| Candace Carlyon | ccarlyon@carlyoncica.com |
| Dawn Cica | dcica@carlyoncica.com |
| Nancy Rodriguez | nrodriguez@carlyoncica.com |
| Cristina Robertson | crobertson@carlyoncica.com |
| Jennifer Martinez | jmartinez@kcnvlaw.com |
| Tonya Binns | tbinns@gtg.legal |
| Matthew Dushoff | mdushoff@nvbusinesslaw.com |
| William Gonzales | wgonzales@nvbusinesslaw.com |
| Matthew Vesterdahl | mvesterdahl@talglaw.com |
| Peter Gilmore | pgilmore@talglaw.com |
| Brittney Lehtinen | blehtinen@kcnvlaw.com |
| Desiree Endres | dendres@kcnvlaw.com |
| Nathaniel Collins | ncollins@talglaw.com |
| Marian Massey | mmassey@talglaw.com |
| Lisa Causey | lcausey@talglaw.com |
| Nicholas Santoro | nsantoro@nevadafirm.com |
| Jaklin Guyumjyan | jguyumjyan@talglaw.com |
| Candice Korkis | candice.korkis@bmo.com |
| Sandy O'Laughlin | SOLaughlin@fid.state.nv.us |
| Candice Korkis | candice.korkis@bmo.com |

| | |
|---|---|
| Candice Korkis | candice.korkis@bmo.com |
| Jill Williamson | jwilliamson@gravislaw.com |
| John O'Leary | JOleary@gravislaw.com |
| Marissa Pyfrom | mpyfrom@gravislaw.com |
| David Neumann | dneumann@meyersroman.com |

**EXHIBIT 5**

Supplement to Motion to Modify

Electronically Filed
8/7/2023 5:03 PM
Steven D. Grierson
CLERK OF THE COURT

SUPPL

MATTHEW T. DUSHOFF, ESQ.
Nevada Bar No. 004975
WILLIAM A. GONZALES, ESQ.
Nevada Bar No. 015230
**SALTZMAN MUGAN DUSHOFF**
1835 Village Center Circle
Las Vegas, Nevada 89134
Telephone: (702) 405-8500
Facsimile: (702) 405-8501
E-Mail: mdushoff@nvbusinesslaw.com
wgonzales@nvbusinesslaw.com

Attorneys for Receiver
**JOHN GUEDRY**

**DISTRICT COURT**

**CLARK COUNTY, NEVADA**

* * *

SANDY O'LAUGHLIN, in her capacity as Commissioner of the State of Nevada, Department of Business and Industry, Financial Institutions Division,

Petitioner,

vs.

PRIME CORE TECHNOLOGIES, INC., PRIME TRUST, LLC, PRIME IRA, LLC, PRIME DIGITAL, LLC,

Respondents.

CASE NO. A-23-872963-B

DEPT NO. 22

**SUPPLEMENT TO RECEIVER JOHN GUEDRY'S MOTION FOR RELIEF/MODIFY "ORDER TO SHOW CAUSE; INJUNCTION; ORDER APPOINTING RECEIVER PENDING FURTHER ORDER OF THE COURT; ORDER TO PRESERVE ASSETS OF RESPONDENT" ON ORDER SHORTENING TIME**

Comes now, JOHN GUEDRY ("Guedry" or "Receiver"), the Court-Appointed Receiver of Respondents PRIME CORE TECHNOLOGIES, INC., and/or any of its subsidiaries or entities related thereto, including PRIME TRUST, LLC, PRIME IRA, LLC, and/or PRIME DIGITAL, LLC (hereinafter collectively referred to as the "Prime Entities"), by and through his attorneys of record, SALTZMAN MUGAN DUSHOFF, hereby files this **Supplement to Motion for Relief/Modify "Order to Show Cause; Injunction; Order Appointing Receiver Pending Further Order of the Court; Order to Preserve Assets of Respondent" on Order Shortening Time** pursuant to NRCP 60(b)(2) and (6).

SALTZMAN MUGAN DUSHOFF PLLC
1835 Village Center Circle
Las Vegas, Nevada 89134
Tel: (702) 405-8500 / Fax: (702) 405-8501

SALTZMAN MUGAN DUSHOFF PLLC
1835 Village Center Circle
Las Vegas, Nevada 89134
Tel: (702) 405-8500 / Fax: (702) 405-8501

Attached as **Exhibit A** are copies of Mr. Guedry's, Mr. Wyse's and Mr. Wilcox's declarations. Attached to Mr. Guedry's declaration is the Intracompany Contribution Agreement between Prime Core Technologies Inc. and Prime Trust LLC.

DATED this 7th day of August, 2023.

SALTZMAN MUGAN DUSHOFF

By ______________________
MATTHEW T. DUSHOFF, ESQ.
Nevada Bar No. 004975
WILLIAM A. GONZALES, ESQ.
Nevada Bar No. 015230
1835 Village Center Circle
Las Vegas, Nevada 89134

Attorneys for Receiver
**JOHN GUEDRY**

SALTZMAN MUGAN DUSHOFF PLLC
1835 Village Center Circle
Las Vegas, Nevada 89134
Tel: (702) 405-8500 / Fax: (702) 405-8501

## CERTIFICATE OF SERVICE

I hereby certify that I am an employee of SALTZMAN MUGAN DUSHOFF, and that on the 7th day of August, 2023, I caused to be served a true and correct copy of the foregoing **SUPPLEMENT TO RECEIVER JOHN GUEDRY'S MOTION FOR RELIEF/MODIFY "ORDER TO SHOW CAUSE; INJUNCTION; ORDER APPOINTING RECEIVER PENDING FURTHER ORDER OF THE COURT; ORDER TO PRESERVE ASSETS OF RESPONDENT" ON ORDER SHORTENING TIME** in the following manner:

(ELECTRONIC SERVICE) Pursuant to Administrative Order 14-2, the above-referenced document was electronically filed on the date hereof and served through the Notice of Electronic Filing automatically generated by the Court's facilities to those parties listed below:

**Sandy O'Laughlin, Commissioner of State of NV, Financial Institutions Division:**
Michael Detmer (mdetmer@ag.nv.gov)
Marilyn Millam (mmillam@ag.nv.gov)
Louis Csoka (lcsoka@ag.nv.gov)
Danielle Wright (dwright2@ag.nv.gov)
Candice Korkis (candice.korkis@bmo.com)

**Public Copy Request:**
Candice Korkis (candice.korkis@bmo.com)

**John Guedry:**
Matthew Dushoff (mdushoff@nvbusinesslaw.com)
William Gonzales (wgonzales@nvbusinesslaw.com)

**AnchorCoin LLC:**
Tom Edwards, Esq. (tedwards@nevadafirm.com)
Frank Ellis, III (fellis@nevadafirm.com)
Nicholas Santoro (nsantoro@nevadafirm.com)

**Stably Corporation:**
Ismail Amin, Esq. (iamin@talglaw.com)
Matthew Vesterdahl (mvesterdahl@talglaw.com)
Peter Gilmore (pgilmore@talglaw.com)
Nathaniel Collins (ncollins@talglaw.com)
Marian Massey (mmassey@talglaw.com)
Lisa Causey (lcausey@talglaw.com)
Jaklin Guyumjyan (jguyumjyan@talglaw.com)
Jill Williamson (jwilliamson@gravislaw.com)
John O'Leary (JOleary@gravislaw.com)
Marissa Pyfrom (mpyfrom@gravislaw.com)

**Other Service Contacts not associated with a party on the case:**
Sonja Dugan (sdugan@swlaw.com)
Docket Docket (docket_las@swlaw.com)
Maricris Williams (mawilliams@swlaw.com)
Blakeley Griffith (bgriffith@swlaw.com)
Candace Carlyon (ccarlyon@carlyoncica.com)
Dawn Cica (dcica@carlyoncica.com)
Nancy Rodriguez (nrodriguez@carlyoncica.com)
Cristina Robertson (crobertson@carlyoncica.com)
David Neumann (dneumann@meyersroman.com)

Cindy Kishi
An Employee of SALTZMAN MUGAN DUSHOFF

# EXHIBIT A

EXHIBIT A

**DECL**
MATTHEW T. DUSHOFF, ESQ.
Nevada Bar No. 004975
WILLIAM A. GONZALES, ESQ.
Nevada Bar No. 015230
**SALTZMAN MUGAN DUSHOFF**
1835 Village Center Circle
Las Vegas, Nevada 89134
Telephone: (702) 405-8500
Facsimile: (702) 405-8501
E-Mail: mdushoff@nvbusinesslaw.com
wgonzales@nvbusinesslaw.com

Attorneys for Receiver
**JOHN GUEDRY**

SALTZMAN MUGAN DUSHOFF PLLC
1835 Village Center Circle
Las Vegas, Nevada 89134
Tel: (702) 405-8500 / Fax: (702) 405-8501

**DISTRICT COURT**

**CLARK COUNTY, NEVADA**

* * *

SANDY O'LAUGHLIN, in her capacity as Commissioner of the State of Nevada, Department of Business and Industry, Financial Institutions Division,

Petitioner,

vs.

PRIME CORE TECHNOLOGIES, INC., PRIME TRUST, LLC, PRIME IRA, LLC, PRIME DIGITAL, LLC,

Respondents.

CASE NO. A-23-872963-B

DEPT NO. 22

**RECEIVER JOHN GUEDRY'S DECLARATION IN SUPPORT OF MOTION TO MODIFY "ORDER TO SHOW CAUSE; INJUNCTION; ORDER APPOINTING RECEIVER PENDING FURTHER ORDER OF THE COURT; ORDER TO PRESERVE ASSETS OF RESPONDENT" ON ORDER SHORTENING TIME**

I, JOHN GUEDRY, declare as follows:

1. I am over the age of eighteen, I have personal knowledge of the facts set forth in this Declaration, except for those facts stated on information and belief, and am competent to testify thereto if called upon to do so.

2. I offer this Declaration pursuant to NRCP 65(b) in support of my Motion to Modify "Order to Show Cause; Injunction; Order Appointing Receiver Pending Further Order of the Court;

Order to Preserve Assets of Respondent" (the "Motion") and in support of my application to hear the motion on order shortening time.

3. Guedry is requesting that his Motion to Modify be heard on shortened time in light of ongoing receivership and necessary bankruptcy filing.

4. I have no conflicts of interest or any business dealings with former or current management of the Prime Entities which would prevent me from making decision in the best interest of said Prime Entities and all interested stakeholders.

5. The Receiver has not used any customer deposits to pay any legal fees or professional fees.

6. As of July 31, 2023, Prime Trust, LLC's account balances are as follows:

a. Business Interest Checking – Acct #0795: **$1,005,660.47**;

b. Commercial Interest Checking – Acct #181-5: **$18,113.03**;

c. Commercial Interest Checking – Acct #182-3: **$0**;

d. Money Market Fund – Acct # 1747: **$3,991,756.64**;

e. Commercial Interest Checking – Acct # 178-1: **$7,232,291.44**;

f. Commercial Interest Checking – Acct # 180-7: **$50,186.**

**TOTAL: $12,298,007.58.**

7. Prime Core has approximately $5,500,000 in legal retainer fees not yet used. I have requested $2,100,000 of those fees to be returned to Prime Trust also.

8. This money can be used to defray the legal fees and costs for the bankruptcy filing.

9. Prime Core provided the above referenced funds to Prime Trust through an Intracompany Contribution Agreement ("Agreement"). Attached as **Exhibit A** to my declaration is a copy of the Agreement.

//

//

//

//

//

SALTZMAN MUGAN DUSHOFF PLLC
1835 Village Center Circle
Las Vegas, Nevada 89134
Tel: (702) 405-8500 / Fax: (702) 405-8501

10. Money from a Series B investment was wired to Prime Trust for the benefit of Prime Core but could be used for all the Prime Entities per the Agreement.

I declare under penalty of perjury under the laws of the State of Nevada that the foregoing is true and correct.

Executed this 7th day of August, 2023.

JOHN GUEDRY

SALTZMAN MUGAN DUSHOFF PLLC
1835 Village Center Circle
Las Vegas, Nevada 89134
Tel: (702) 405-8500 / Fax: (702) 405-8501

# EXHIBIT A

EXHIBIT A

**PRIME CORE TECHNOLOGIES INC.**
**INTRACOMPANY CONTRIBUTION AGREEMENT**

**THIS INTRACOMPANY CONTRIBUTION AGREEMENT** (this "***Agreement***") is made as of March 7, 2022 (the "***Closing Date***"), by and between **PRIME TRUST LLC**, a Nevada limited liability company ("***Prime Trust***"), and **PRIME CORE TECHNOLOGIES INC.**, a Delaware corporation (the "***Company***").

**RECITALS**

**A.** The Company previously made a cash contribution in the amount of $32,570,929 to Prime Trust (the "***Previous Contribution***"), a wholly-owned subsidiary of the Company, and Prime Trust accepted such equity contribution. The Previous Contribution consisted of (i) proceeds from the Series A financing net of funds used in the share repurchase activities of the Company in 2021 and (ii) proceeds from exercises of Prime Core options.

**B.** The Company may from time to time after the Closing Date contribute additional capital to Prime Trust in the form of debt or equity to Prime Trust, and Prime Trust is willing to accept such capital in consideration for the issuance of membership units of Prime Trust, promissory notes or any kind of debt, which may or may not be convertible into membership units of Prime Trust.

**AGREEMENT**

**NOW, THEREFORE,** the parties agree as follows:

**1. Contribution of Contributed Assets.**

(a) The parties hereby consent to and acknowledge that the Company contributed, transferred, assigned and conveyed to Prime Trust the Previous Contribution, and Prime Trust acknowledges the receipt of the Previous Contribution which shall be treated as an equity contribution as the Company does not intend to seek the return of the funds from Prime Trust.

(b) Each party will execute and cause to be delivered to each other party hereto such instruments and other documents, and will take such other actions, as such other party may reasonably request (prior to, at or after the closing) for the purpose of carrying out or evidencing any of the transactions contemplated by this Agreement.

**2. Agreement to Future Contributions.**

(a) The parties hereby consent to and acknowledge that the Company may from time to time after the Closing Date contribute additional capital to Prime Trust in the form of debt or equity to Prime Trust, and Prime Trust is willing to accept such capital in consideration for the issuance of membership units of Prime Trust, promissory notes or any kind of debt, which may or may not be convertible into membership units of Prime Trust (the "***Future Contributions***"). The parties agree that, upon receipt of a Future Contribution by Prime Trust, Exhibit A attached hereto shall be updated to reflect the amount of such Future Contribution, the date upon which such Future Contribution is received by the Prime Trust and, if applicable, the number of membership interests of Prime Trust issued in connection therewith or in the case of debt, the principal amount, interest rate and any other key terms thereof, which update shall indicate Prime Trust's acceptance of such Future Contribution. Following any such Future

Contribution received by Prime Trust in exchange for membership interests in Prime Trust, the Company will continue to hold one hundred percent (100%) of Prime Trust's outstanding equity.

3. **General.**

(a) **Funds Flow**. The parties hereby agree that the Company and Prime Trust have a centralized cash repository and centralized cash management. As such, any contribution by the Company may be made directly to Prime Trust from a third-party solely for the sake of administrative convenience. Any such contribution by the Company shall be deemed to be made as a contribution by the Company to Prime Trust. The parties hereby agree that the Company and Prime Trust shall execute all documents necessary to adjust the records of any such contributions to reflect the flow of the funds as described in this Section 3(a). In case of conflict between the provisions of this Section 3(a) and any of the records of the parties hereto regarding the flow of funds, the provisions of this Section 3(a) shall prevail and the records shall be adjusted accordingly.

(b) **Assignment.** Neither party may assign its rights or delegate its duties under this Agreement either in whole or in part without the prior written consent of the other party, except that the Company may assign all of its rights and delegate all of its duties under this Agreement without such consent of Prime Trust, to: (i) the surviving entity in a merger, acquisition, consolidation or other such combination; or (ii) to an entity that acquires all or substantially all of the assigning party's assets. Any attempted assignment or delegation without such consent will be void.

(c) **Attorneys' Fees**. If any action is necessary to enforce the terms of this Agreement, the substantially prevailing party will be entitled to reasonable attorneys' fees, costs and expenses in addition to any other relief to which such prevailing party may be entitled.

(d) **Governing Law; Severability**. This Agreement, and any claim or controversy arising out of or relating to this Agreement, will be governed by and construed in accordance with the laws of the State of Delaware, regardless of the laws that might otherwise govern under applicable principles of conflicts of law. If any provision of this Agreement is for any reason found to be unenforceable, the remainder of this Agreement will continue in full force and effect.

(e) **Notices**. Any notices under this Agreement will be sent by certified or registered mail, return receipt requested, to the address specified below or such other address as the party specifies in writing. Such notice will be effective two (2) days after mailing as specified.

(f) **Complete Understanding; Modification**. This Agreement, together with its exhibits, constitutes the complete and exclusive understanding and agreement of the parties and supersedes all prior understandings and agreements, whether written or oral, with respect to the subject matter hereof. Any waiver, modification or amendment of any provision of this Agreement will be effective only if in writing and signed by the parties hereto.

(f) **Counterparts**. This Agreement may be executed in counterparts, any one of which need not contain signatures of more than one party, but all of which taken together will constitute one and the same Agreement. This Agreement may be executed and delivered by facsimile or electronic signature (.pdf) and upon such delivery the facsimile or electronic signature will be deemed to have the same effect as if the original signature had been delivered to the other party.

(g) **Further Assurances**. Each party hereto shall execute and cause to be delivered to the other party such instruments and other documents, and shall take such other actions, as such other

party shall reasonably request (prior to, at or after the Closing Date) for the purpose of carrying out or evidencing any of the transactions contemplated by this Agreement.  In furtherance of the foregoing, the parties agree that if, after the Closing Date, either party holds assets, properties or rights which by the terms hereof were provided to be assigned and transferred to, or retained by, the other party, such party shall, at its expense, promptly assign and transfer or cause to be assigned and transferred such assets, properties and rights to the other party, and the parties agree that the transferring party will hold such assets, properties and rights as trustee of the transferee party and all income and risk of loss of the transferred assets, properties and rights shall be for the account of the intended owner.

[SIGNATURE PAGE FOLLOWS]

DocuSign Envelope ID: E449C95B-8BE5-4C73-9A59-C7113EDD1696

**IN WITNESS WHEREOF,** the parties hereto have executed this **INTERCOMPANY CONTRIBUTION AGREEMENT** as of the date first above written.

**PRIME TRUST, LLC**

DocuSigned by:

By: ______________________

Name: Thomas Pageler

Title: Chief Executive Officer

**PRIME CORE TECHNOLOGIES INC.**

DocuSigned by:

By: ______________________

Name: Thomas Pageler

Title: Chief Executive Officer

# Exhibit A[1]

## Historic Contributions

| Year of Contribution | Contributing Party | Amount Contributed (US$) | Contribution Terms |
|---|---|---|---|
| 2021 | Prime Core Technologies Inc. | $32,570,929 | Capital |

## Future Contributions

| Date of Contribution | Contributing Party | Amount Contributed (US$) | Contribution Terms |
|---|---|---|---|
| [__________] | Prime Core Technologies Inc. | $[__________] | [Debt][Capital] |

[1] NTD: To be updated upon receipt of each Future Contribution by Prime Core.

**DECL**
MATTHEW T. DUSHOFF, ESQ.
Nevada Bar No. 004975
WILLIAM A. GONZALES, ESQ.
Nevada Bar No. 015230
**SALTZMAN MUGAN DUSHOFF**
1835 Village Center Circle
Las Vegas, Nevada 89134
Telephone: (702) 405-8500
Facsimile: (702) 405-8501
E-Mail: mdushoff@nvbusinesslaw.com
wgonzales@nvbusinesslaw.com

Attorneys for Receiver
**JOHN GUEDRY**

SALTZMAN MUGAN DUSHOFF PLLC
1835 Village Center Circle
Las Vegas, Nevada 89134
Tel: (702) 405-8500 / Fax: (702) 405-8501

**DISTRICT COURT**

**CLARK COUNTY, NEVADA**

* * *

SANDY O'LAUGHLIN, in her capacity as Commissioner of the State of Nevada, Department of Business and Industry, Financial Institutions Division,

Petitioner,

vs.

PRIME CORE TECHNOLOGIES, INC., PRIME TRUST, LLC, PRIME IRA, LLC, PRIME DIGITAL, LLC,

Respondents.

CASE NO. A-23-872963-B

DEPT NO. 22

**MICHAEL WYSE'S DECLARATION IN SUPPORT OF MOTION TO MODIFY "ORDER TO SHOW CAUSE; INJUNCTION; ORDER APPOINTING RECEIVER PENDING FURTHER ORDER OF THE COURT; ORDER TO PRESERVE ASSETS OF RESPONDENT" ON ORDER SHORTENING TIME**

I, Michael Wyse, declare as follows:

1. I am over the age of eighteen, I have personal knowledge of the facts set forth in this Declaration, except for those facts stated on information and belief, and am competent to testify thereto if called upon to do so.

2. I offer this Declaration pursuant to NRCP 65(b) in support of my Motion to Modify "Order to Show Cause; Injunction; Order Appointing Receiver Pending Further Order of the Court;

SALTZMAN MUGAN DUSHOFF PLLC
1835 Village Center Circle
Las Vegas, Nevada 89134
Tel: (702) 405-8500 / Fax: (702) 405-8501

Order to Preserve Assets of Respondent" (the "Motion") and in support of my application to hear the motion on order shortening time.

3. I have no conflicts of interest or any business dealings with former or current management of the Prime Entities which would prevent me from making decision in the best interest of said Prime Entities and all interested stakeholders.

I declare under penalty of perjury under the laws of the State of Nevada that the foregoing is true and correct.

Executed this 7th day of August, 2023.

MICHAEL WYSE

DECL
MATTHEW T. DUSHOFF, ESQ.
Nevada Bar No. 004975
WILLIAM A. GONZALES, ESQ.
Nevada Bar No. 015230
SALTZMAN MUGAN DUSHOFF
1835 Village Center Circle
Las Vegas, Nevada 89134
Telephone: (702) 405-8500
Facsimile: (702) 405-8501
E-Mail: mdushoff@nvbusinesslaw.com
wgonzales@nvbusinesslaw.com

Attorneys for Receiver
**JOHN GUEDRY**

SALTZMAN MUGAN DUSHOFF PLLC
1835 Village Center Circle
Las Vegas, Nevada 89134
Tel: (702) 405-8500 / Fax: (702) 405-8501

**DISTRICT COURT**

**CLARK COUNTY, NEVADA**

* * *

SANDY O'LAUGHLIN, in her capacity as Commissioner of the State of Nevada, Department of Business and Industry, Financial Institutions Division,

Petitioner,

vs.

PRIME CORE TECHNOLOGIES, INC., PRIME TRUST, LLC, PRIME IRA, LLC, PRIME DIGITAL, LLC,

Respondents.

CASE NO. A-23-872963-B

DEPT NO. 22

**JOHN WILCOX'S DECLARATION IN SUPPORT OF MOTION TO MODIFY "ORDER TO SHOW CAUSE; INJUNCTION; ORDER APPOINTING RECEIVER PENDING FURTHER ORDER OF THE COURT; ORDER TO PRESERVE ASSETS OF RESPONDENT" ON ORDER SHORTENING TIME**

I, John Wilcox, declare as follows:

1. I am over the age of eighteen, I have personal knowledge of the facts set forth in this Declaration, except for those facts stated on information and belief, and am competent to testify thereto if called upon to do so.

2. I offer this Declaration pursuant to NRCP 65(b) in support of my Motion to Modify "Order to Show Cause; Injunction; Order Appointing Receiver Pending Further Order of the Court;

SALTZMAN MUGAN DUSHOFF PLLC
1835 Village Center Circle
Las Vegas, Nevada 89134
Tel: (702) 405-8500 / Fax: (702) 405-8501

Order to Preserve Assets of Respondent" (the "Motion") and in support of my application to hear the motion on order shortening time.

3. I have no conflicts of interest or any business dealings with former or current management of the Prime Entities which would prevent me from making decision in the best interest of said Prime Entities and all interested stakeholders.

I declare under penalty of perjury under the laws of the State of Nevada that the foregoing is true and correct.

Executed this 5th day of August, 2023.

JOHN WILCOX