**IN THE UNITED STATES BANKRUPTCY COURT**
**FOR THE DISTRICT OF DELAWARE**

| | |
|---|---|
| In re: | Chapter 11 |
| Prime Core Technologies Inc., *et al.*,[1] | Case No. 23-11161 (JKS) |
| Debtors. | (Jointly Administered) |

**DEBTORS' MOTION FOR ENTRY OF (A) AN ORDER (I) APPROVING BIDDING PROCEDURES FOR THE SALE OF ALL OF THE DEBTORS' EQUITY OR ALL OR SUBSTANTIALLY ALL OF DEBTORS' ASSETS, (II) AUTHORIZING THE DEBTORS TO ENTER INTO ONE OR MORE STALKING HORSE AGREEMENTS, (III) APPROVING BID PROTECTIONS, (IV) SCHEDULING AN AUCTION AND RELATED DATES THERETO, (V) APPROVING THE FORM AND MANNER OF NOTICE THEREOF, (VI) APPROVING CONTRACT ASSUMPTION AND ASSIGNMENT PROCEDURES, AND (VII) GRANTING RELATED RELIEF; (B) AN ORDER AUTHORIZING AND APPROVING (I) SALE FREE AND CLEAR OF ALL LIENS, CLAIMS, ENCUMBRANCES, AND OTHER INTERESTS, (II) ASSUMPTION AND ASSIGNMENT OF CERTAIN CONTRACTS AND LEASES, AND (III) GRANTING RELATED RELIEF**

Prime Core Technologies Inc. and certain of its affiliates and subsidiaries, as debtors and debtors in possession in the above-captioned chapter 11 cases (collectively, the "Debtors"), hereby move (the "Motion") for:

A. entry of an order, substantially in the form attached hereto as **Exhibit A** (the "Bid Procedures Order"),

    i. approving the procedures in connection with the sale or sales (collectively, the "Sale Transaction") of all or substantially all of the Debtors' assets (the "Assets") or any portion thereof or 100% of the equity interests in the reorganized Debtors (the "Equity") through a stock purchase transaction (an "Equity Transaction," and together with a Sale, a "Transaction") substantially in the form attached to the Bid Procedures Order as **Exhibit 1** (the "Bid Procedures");[2]

---

[1] The debtors in these chapter 11 cases, along with the last four digits of each debtor's federal tax identification number are:  Prime Core Technologies Inc. (5317); Prime Trust, LLC (6823); Prime IRA LLC (8436); and Prime Digital, LLC (4528). The Debtors' service address is 330 South Rampart Blvd., Suite 260, Las Vegas, NV 89145.

[2] Capitalized terms used but not otherwise defined in this Motion shall have the meanings ascribed to them in the Bid Procedures.

    ii.    approving certain bid protections and authorizing the Debtors, in their discretion, and after consultation with the Committee to select one or more bidders to act as stalking horse bidders (each, a "Stalking Horse Bidder") and, if a Sale Transaction, enter into purchase agreements or, if an Equity Transaction, agree to terms of a chapter 11 plan (the "Plan") with such Stalking Horse Bidder(s) (each such agreement, a "Stalking Horse Agreement");

    iii.    scheduling related bid deadlines and an auction (the "Auction");

    iv.    approving the form and manner of notice thereof substantially in the form attached to the Bid Procedures Order as **Exhibit 2** (the "Transaction Notice");

    v.    approving procedures (the "Assumption and Assignment Procedures") related to the assumption and assignment of certain of the Debtors' executory contracts and unexpired leases (the "Assumed Contracts"), and certain related notice, including the form and manner of cure notice substantially in the form attached to the Bid Procedures Order as **Exhibit 3** (the "Cure Notice");

B.  if a Sale Transaction, entry of an order (the "Sale Order"),

    i.    authorizing and approving the Debtors' entry into an asset purchase agreement (a "Purchase Agreement") with the Successful Bidder(s) or Back-Up Bidder(s), as applicable; and

    ii.    authorizing the Transaction, free and clear of all liens, claims and encumbrances (the "Encumbrances"), except for certain assumed liabilities.

In support of the Motion, the Debtors rely upon the *Declaration of Jor Law, Interim Chief Executive Officer and President of Prime Core Technologies Inc., et al. in Support of Chapter 11 Petitions and First Day Motions* (the "First Day Declaration"). In further support of the Motion, the Debtors respectfully represent as follows:

## JURISDICTION AND VENUE

1.    The United States Bankruptcy Court for the District of Delaware (the "Court") has jurisdiction to consider the Motion pursuant to 28 U.S.C. §§ 157 and 1334 and the *Amended Standing Order of Reference* from the United States District Court for the District of Delaware, dated February 29, 2012. This is a core proceeding under 28 U.S.C. § 157(b). Venue of these cases and the Motion in this District is proper under 28 U.S.C. §§ 1408 and 1409.

2.      The legal predicates for the relief requested herein are sections 105(a), 363(b), 365, 503, and 507 of title 11 of the United States Code (the "Bankruptcy Code"), Rules 2002, 6004, 6006, 9007, 9008, and 9014 of the Federal Rules of Bankruptcy Procedure (the "Bankruptcy Rules"), and Rules 2002-1, 6004-1, 9006-1, and 9013-1(m) of the Local Rules of Bankruptcy Practice and Procedure of the United States Bankruptcy Court for the District of Delaware (the "Local Rules").

3.      The Debtors confirm their consent, pursuant to Local Rule 9013-1(f), to the entry of a final order by the Court in connection with the Motion in the event that it is later determined that the Court, absent consent of the parties, cannot enter final orders or judgments in connection herewith consistent with Article III of the United States Constitution.

## PRELIMINARY STATEMENT

4.      As described in greater detail in the First Day Declaration, prior to cessation of operations, the Debtors served as a market leader in the cryptocurrency industry offering a unique set of digital asset infrastructure tools that simplified the complexity of building with digital assets. Due to a series of events, however, the Debtors faced numerous challenges that prompted a Cease and Desist Order (as defined in the First Day Declaration), which was followed shortly be a receivership.

5.      Shortly after the receivership commenced, the Debtors commenced these chapter 11 cases to avail themselves of the benefits afforded under chapter 11, including a breathing spell to focus on ensuring a bright path forward that maximizes the value of their enterprise and for the benefit of all stakeholders. The Debtors determined, in consultation with their advisors, that an expedited Transaction process under chapter 11 of the Bankruptcy Code is the best path forward to maximizing value for the benefit of all stakeholders under the circumstances.

6.     The Debtors previously conducted a marketing and sale process that resulted in a potential sale to a market competitor, but that sale ultimately failed. Notwithstanding the failed sale, the Debtors, in consultation with their advisors, have determined that a marketing and sale process under Bankruptcy Code section 363 provides the Debtors with certain advantages that were not available to the Debtors during the prepetition marketing process. Furthermore, the Debtors believe that certain parties identified during their prepetition marketing efforts as well as new parties will have interest in pursuing an acquisition of the Debtors or their assets either in whole or part. The Debtors have now commenced a second marketing and sale process to solicit interest in two types of deal structures: (a) a Sale Transaction; and (b) an Equity Transaction.

7.     Intent on moving expeditiously through the chapter 11 process the Debtors seek to establish formal Bid Procedures to set the guidelines for a potential Transaction. The Transaction will either be consummated through: (a) a Plan; or (b) a sale pursuant to Bankruptcy Code section 363. The Debtors believe that the Bid Procedures will best facilitate a potential Auction, thereby garnering the best recovery available for all stakeholders. The Bid Procedures provide for substantial flexibility with respect to the structure of any Transaction and allow the Debtors to select a Stalking Horse Bidder and provide Bid Protections (as defined below) on the terms described in the Bid Procedures if the Debtors believe, in an exercise of their business judgement, that doing so will generate the best Transaction for their estates.

8.     Given the circumstances, the Bid Procedures proposed herein provide appropriate time for the Debtors to complete their comprehensive marketing process, receive and evaluate bids, execute a stalking horse agreement and, if necessary, hold an Auction to determine the highest or otherwise best bid. The proposed dates and deadlines are critical to driving the Debtors' restructuring to an efficient and value-maximizing conclusion, particularly in view of

4

the industry in which the Debtors operate. At the same time, the Debtors seek to minimize the time and expense in chapter 11. The Bid Procedures will expedite resolution of these chapter 11 cases, will cut off the expenses of administering these cases, and will permit the Debtors to distribute value to their stakeholders in a timely manner.

9.      To maximize the competitiveness of any bidding process, the Debtors also seek authority to (a) select one or more Stalking Horse Bidders, and (b) in connection with any Stalking Horse Bidder and related Stalking Horse Agreement, provide customary Bid Protections.

10.      Accordingly, the Debtors respectfully request that the Court grant the relief requested herein as establishing formal Bid Procedures best positions the Debtors for success in these chapter 11 cases.

## **BACKGROUND**

### I.      **The Chapter 11 Cases**

11.      On August 14, 2023 (the "Petition Date"), each Debtor commenced a case by filing a voluntary petition for relief under chapter 11 of the Bankruptcy Code (collectively, the "Chapter 11 Cases"). These cases have been jointly administered for procedural purposes only.

12.      The Debtors continue to manage their properties as debtors and debtors in possession pursuant to Bankruptcy Code sections 1107(a) and 1108.

13.      On August 29, 2023, the Office of the United States Trustee for the District of Delaware (the "U.S. Trustee") appointed an official committee of unsecured creditors pursuant to Bankruptcy Code section 1102 (the "Committee") [Docket No. 51]. The Committee is comprised of the following unsecured creditors: (a) Yousef Abbasi; (b) Allsectech, Inc.; (c) DMG

Blockchain Solutions, Inc.; (d) Net Cents Technology, Inc.; (e) Polaris Ventures; (f) Stably

Corporation; and (g) Austin Ward.

14.     Additional information regarding the Debtors and these Chapter 11 Cases,

including the Debtors' business operations, capital structure, financial condition, and the reasons

for and objectives of these Chapter 11 Cases, is set forth in the First Day Declaration, which is

incorporated by reference as if fully set forth herein.

**II.     Proposed Sale Process and Timeline**

15.     On or about April 11, 2023, J.V.B. Financial Group, LLC, acting through its

Cohen & Company Capital Markets division ("Cohen"), commenced work on behalf of the

Debtors as their financial advisor with respect to a Series C rights offering process. On April 26,

2023, Cohen commenced its outreach. By June 6, 2023, Cohen had contacted 240 potential

investors and 31 potential acquisition parties in connection with the capital raise for the Series C

Right Offering.[3]

16.     In August 2023, the Debtors engaged Galaxy Digital Partners LLC ("Galaxy"), as

investment banker, and M3Partners, LLC, as financial advisor, to assist the Debtors in their

pursuit of a dual-track marketing process to solicit interest in, among other possible deal

structures (a) a Sale Transaction and (b) an Equity Transaction. To that end Galaxy has contacted

more than 200 potential counterparties and intends to contact approximately 200 additional

potential counterparties. Moreover, Galaxy has prepared marketing materials and a virtual

dataroom containing files with certain information regarding the Debtors' business operations,

finances, material contracts, and other pertinent documents.

---

[3]     The Company entertained a merger offer from BitGo; however, the offer carried insurmountable contingencies
and as a result, failed to garner support from investors.

17.     Through this Motion, the Debtors are seeking approval of the Bid Procedures to establish an open process for the solicitation, receipt, and evaluation of bids on a timeline that allows for an expeditious exit from chapter 11. The Debtors believe that the Bid Procedures described herein will best facilitate a potential auction, thereby maximizing recoveries for all creditors, by providing substantial flexibility with respect to the number and structure of any Transactions.

18.     Given the circumstances, the marketing process and the proposed Bid Procedures provide appropriate time for the Debtors to finish marketing the assets, receive and evaluate bids, execute one or more Stalking Horse Agreements, and hold an Auction (if necessary) to determine the highest or otherwise best bid(s), particularly in light of the liquidity constraints that the Debtors are facing in these Chapter 11 Cases.

19.     The timeline set forth in the Bid Procedures was calculated to balance the need to provide adequate notice to parties in interest and potential bidders with the need to run an expeditious and efficient sale process. The Bid Procedures are designed to generate the highest or otherwise best available recoveries to the Debtors' stakeholders by encouraging prospective bidders to submit competitive, value-maximizing bids. The Debtors believe that the Bid Procedures and the timeline set forth therein are in the best interests of the Debtors' estates, will establish whether and to what extent any additional market for the assets exists, and provide interested parties with sufficient opportunity to participate. Specifically, through this Motion, the Debtors respectfully request that the Court approve the following timeline:

| Date[4] | Event |
|---|---|
| **At or prior to the Bid Procedures Hearing** | Bid Procedures Motion Objection Deadline |
| **September 8, 2023 at [●]:[●]0 [●].m.** | Bid Procedures Hearing |

---

[4]    All times are prevailing Eastern time.

7

| **Within three business days after entry of Bid Procedures Order** | Deadline to File Transaction Notice |
|---|---|
| **Within three business days after entry of Bid Procedures Order** | Deadline to File Assumption and Assignment Notice |
| **September 25, 2023** | Deadline to Submit Stalking Horse Bid |
| **September 26, 2023** | Deadline to Designate Stalking Horse Bidder(s) if Selected by Debtors, after consultation with the Committee |
| **September 29, 2023 at 4:00 p.m.** | Deadline to Object to Stalking Horse Bidder(s) Designation |
| **October 2, 2023 at 4:00 p.m.** | Cure/Assignment Objection Deadline |
| **October 5, 2023** | Deadline to Submit Qualified Bids |
| **October 10, 2023 at 10:00 a.m.** | Auction (as necessary) |
| **Promptly after Auction** | Deadline to File Notice of Successful Bidder(s) and Backup Bidder(s) |
| **October 12, 2023 at 4:00 p.m.** | Adequate Assurance Objection Deadline |
| | If a Sale Transaction, Deadline to Object to Transaction(s) |
| **October 13, 2023** | If a Sale Transaction, Sale Hearing |
| **TBD** | If an Equity Transaction, the Deadline to Object to Plan Confirmation |
| **TBD** | If an Equity Transaction, the Confirmation Hearing |

## PROPOSED BID PROCEDURES

## I.      The Bid Procedures and Auction Process

20.      The Debtors designed the Bid Procedures to promote participation and active bidding, and to ensure that the Debtors receive the highest or otherwise best offer for the Assets. As such, the Debtors believe the timeline for consummating the Transaction process established pursuant to the Bid Procedures is in the best interest of their estates and all parties in interest.

21.      The Bid Procedures describe, among other things, the requirements for prospective purchasers to participate in the bidding process, the availability and conduct of due diligence, the deadline for submitting a competing bid, the method and factors for determining Qualified Bids, the criteria for selecting a Successful Bidder and the non-exhaustive procedures for conducting an auction if timely Qualified Bids are received.

II.       **Stalking Horse Bids**

22.       The Debtors may designate a Stalking Horse Bidder whose Qualified Bid shall

serve as the stalking horse bid (the "Stalking Horse Bid"). Any Stalking Horse Agreement

memorializing the proposed Transaction set forth in the Stalking Horse Bid will be binding on

the Stalking Horse Bidder and set the floor for all Qualified Bids, subject to higher or otherwise

better Qualified Bids. If the Stalking Horse Bid is not selected as the Successful Bid, the Stalking

Horse Bidder will still serve as the Back-Up Bidder, if its bid represents the second-highest or

otherwise best bid after the Auction. Notwithstanding any of the foregoing, the Debtors are not

obligated to select a Stalking Horse Bidder and may proceed to the Auction without one.

23.       In the event that the Debtors designate a Stalking Horse Bidder and seek to enter

into a Stalking Horse Agreement on or prior to September 26, 2023, at 4:00 p.m. (prevailing

Eastern Time) (the "Stalking Horse Supplement Deadline"), the Debtors shall file a supplement

to the Motion (the "Stalking Horse Supplement") seeking approval of the same, and serve the

Stalking Horse Supplement by email, where available, or otherwise by first class mail, with no

less than three (3) business days' notice of the objection deadline (the "Stalking Horse Objection

Deadline") to: (a) the U.S. Trustee; (b) counsel to the Committee; and (c) those parties who have

requested notice of all pleadings filed in the Chapter 11 Cases pursuant to Bankruptcy Rule 2002

(collectively, the "Stalking Horse Notice Parties") with no further notice being required,

provided that the Stalking Horse Supplement (a) sets forth the identity of the Stalking Horse

Bidder (and if the Stalking Horse Bidder is a newly-formed entity, then the Stalking Horse

Bidder's parent company or sponsor); (b) sets forth the amount of the Stalking Horse Bid and

what portion (if any) is cash; (c) states whether the Stalking Horse Bidder has any connection to

the Debtors other than those that arise from the Stalking Horse Bid; (d) specifies any proposed

Bid Protections; (e) attaches the Stalking Horse Agreement, including all exhibits, schedules or attachments thereto; and (f) sets forth the deadline to object to the Stalking Horse Bidder designation and Bid Protections. The Stalking Horse Supplement shall also include or be accompanied by any evidence the Debtors would like the Court to consider in connection with any request to approve any Bid Protections as an administrative expense under Bankruptcy Code section 503(b). If the Debtors designate a Stalking Horse Bidder by the Stalking Horse Supplement Deadline, the Debtors may file a proposed form of Stalking Horse Approval Order (as defined below) agreed to by the Stalking Horse Bidder on or before the Stalking Horse Supplement Deadline.

24.     Objections to the designation of a Stalking Horse Bidder or any of the terms of a Stalking Horse Bid (the "Stalking Horse Objection") shall: (a) be in writing; (b) comply with the Bankruptcy Code, Bankruptcy Rules, and Local Rules; (c) state, with specificity, the legal and factual bases thereof; and (d) be filed with the Court and served on the Stalking Horse Notice Parties within three (3) business days after the service of the Stalking Horse Supplement.

25.     If a timely Stalking Horse Objection is filed, the Debtors will schedule a hearing regarding such Stalking Horse Objection as soon as reasonably practicable seeking approval of such Stalking Horse Bid on or before October 3, 2023 (but in no event fewer than three (3) business days after the service of the Stalking Horse Supplement). If no Stalking Horse Objection is timely filed and served with respect to the Stalking Horse Bid, upon the expiration of the Stalking Horse Objection Deadline, the Debtors will submit to the Court an order under certification of counsel approving the designation of the Stalking Horse Bidder and Stalking Horse Agreement (the "Stalking Horse Approval Order"), which may be entered by the Court

without a hearing, including with respect to any Bid Protections set forth in the Stalking Horse

Supplement.

26.     The following summary describes the salient points of the Bid Procedures and

discloses certain information as required by Local Rule 6004-1:[5]

| Provision | Summary |
|---|---|
| **Provisions Governing Qualifications of Bidders** (Del. Bankr. L.R. 6004-1(c)(i)(A)) | To participate in the bidding process or otherwise be considered for any purpose hereunder, a person or entity interested in a Transaction (a "Potential Bidder") must deliver or have previously delivered to the Debtors the following documents (collectively, the "Preliminary Bid Documents"): <br><br> a.    an executed confidentiality and non-disclosure agreement (a "Confidentiality Agreement") in form and substance acceptable to the Debtors; <br><br> b.    a non-binding written indication of interest specifying, among other things, the type of proposed Transaction, if a Sale Transaction, the identity of the Assets to be acquired, the amount and type of consideration to be offered in connection with a proposed Transaction, and any other material terms to be included in a bid by such party; <br><br> c.    preliminary proof by the Potential Bidder of its financial wherewithal to close the proposed Transaction (which may include current audited or verified financial statements of, or verified financial commitments ("Financial Statements") obtained by, the Potential Bidder (or, if the Potential Bidder is an entity formed for the purpose of acquiring the property to be sold, the party that will bear liability for a breach) as well as an overview of any recent transactions), the adequacy of which must be reasonably acceptable to the Debtors; <br><br> d.    identity of the Potential Bidder, including its legal name, jurisdiction and form of organization, and details regarding the ownership and capital structure of the Potential Bidder, as well as the identity of any controlling persons, significant |

---

[5]   This summary of the Bid Procedures is qualified in its entirety by the Bid Procedures attached as **Exhibit 1** to the Bid Procedures Order. All capitalized terms that are used in this summary, but not otherwise defined herein, shall have the meanings set forth in the Bid Procedures. To the extent there are any conflicts between this summary and the Bid Procedures, the terms of the Bid Procedures shall govern.

| Provision | Summary |
|---|---|
| | direct or indirect equity or debt investors, and/or guarantors of such entity, and any known connections the Potential Bidder has to the Debtors or their advisors, any statutory committee appointed in these cases or its advisors, or any creditor or equity security interest holder of the Debtors; and<br><br>e.    a list with the names and contact information for any financial, legal, and other advisors the Potential Bidder has engaged to assist in connection with the proposed Transaction.<br><br>The Debtors, in their discretion, may agree to waive some or all of the Potential Bidder requirements set forth above. Each Potential Bidder shall comply with all reasonable requests for information and access by the Debtors or their advisors regarding the ability of such Potential Bidder, as applicable, to consummate a proposed Transaction.<br><br>Only those Potential Bidders that have submitted acceptable Preliminary Bid Documents to the reasonable satisfaction of the Debtors and their advisors may submit a Bid. The Debtors reserve the right to work with any Potential Bidder to cure any deficiencies in the Preliminary Bid Documents.<br><br>Bid Procedures §I. |
| **Good Faith Deposit**<br>(Del. Bankr. L.R. 6004-1(b)(iv)(F)) | Each Bid must be accompanied by a cash deposit equal to ten percent (10%) of the Purchase Price of the Bid (the "<u>Good Faith Deposit</u>"), which will be held in a segregated account identified by the Debtors.<br><br>Bid Procedures §IV.c. |
| **Other Highlighted Terms**<br>(Del. Bankr. L.R. 6004-1(b)(iv)) | Private Sale/No Competitive Bidding: The Sale is being conducted pursuant to the competitive bidding process detailed in the Motion.<br><br>Relief from Bankruptcy Rule 6004(h) and 6006(d): As noted in this Motion, the Debtors are requesting relief from the 14-day stay imposed by Bankruptcy Rules 6004(h) and 6006(d). |
| **Provisions Governing Qualified Bids**<br>(Del. Bankr. L.R. 6004-1(c)(i)(A), (B)) | To be selected to acquire the Debtors' Equity or some or all of the Debtors' Assets or to be eligible to participate in the Auction, if applicable, a Potential Bidder must deliver to the parties set forth in Section V below a written, irrevocable, and binding Bid for a Sale Transaction and/or Equity Transaction that must be determined by the Debtors in their business judgment, and after consultation with the Official Committee of Unsecured Creditors (the "<u>Committee</u>"), |

| Provision | Summary |
|---|---|
| | to satisfy each of the following conditions (collectively, the "Bid Requirements"): |

<table>
<tr><td>a.</td><td><strong>Purpose</strong>: Each Potential Bidder must state that the Bid includes an offer by the Acceptable Bidder to acquire the Debtors' Equity or some or all of the Debtors' Assets, and identify the Assets with reasonable specificity.</td></tr>
<tr><td>b.</td><td><strong>Transaction Structure and Purchase Price</strong>. Each Bid must clearly set forth the purchase price to be paid for the Debtors' Equity or some or all of the Debtors' Assets (the "Purchase Price") and must indicate the source of consideration, including funding commitments, and confirm that such consideration is not subject to any contingencies. The Bid should include a detailed sources and uses schedule. Each Bid shall also provide for appropriate treatment for the claims held by the Debtors' customers.</td></tr>
<tr><td>c.</td><td><strong>Bid Deposit</strong>. Each Bid must be accompanied by a cash deposit equal to ten percent (10%) of the Purchase Price of the Bid (the "Good Faith Deposit"), which will be held in a segregated account identified by the Debtors.</td></tr>
<tr><td>d.</td><td><strong>Committed Financing</strong>. To the extent that a Bid is not accompanied by evidence of the Potential Bidder's financial wherewithal to consummate the Transaction set forth in its Bid with cash on hand, each Bid must include committed financing documented to the Debtors' satisfaction that demonstrates that the Potential Bidder has received sufficient debt and/or equity funding commitments to satisfy the Potential Bidder's Purchase Price and other obligations under its Bid. Such funding commitments or other financing must be unconditional and must not be subject to any internal approvals, syndication requirements, diligence, or credit committee approvals, and shall have covenants and conditions reasonably acceptable to the Debtors in their sole discretion.</td></tr>
<tr><td>e.</td><td><strong>Good Faith Offer</strong>. Each Bid must constitute a good faith, bona fide offer to purchase the Debtors' Equity or some or all of the Debtors' Assets.</td></tr>
<tr><td>f.</td><td><strong>Marked Plan or Draft Purchase Agreement</strong>. Each Bid</td></tr>
</table>

| Provision | Summary |
|---|---|
| | must be accompanied by clean and duly executed transaction documents including, at a minimum, a markup of the as-filed chapter 11 plan or a draft asset purchase agreement, including the exhibits and schedules related thereto and any related material documents integral to such Bid pursuant to which the Potential Bidder proposes to effectuate the Transaction. The Debtors, in their business judgment and after consultation with the Committee, will determine whether any such amendments and modifications are materially more burdensome.<br><br>g.    **No Contingencies**. A Bid must not be conditioned on any contingency, including, among others, on obtaining any of the following (a) financing contingencies, (b) shareholder, board of directors, or other approval, and/or (c) contingencies related to the outcome or completion of a due diligence review by the Potential Bidder.<br><br>h.    **Binding and Irrevocable**. A Potential Bidder's Bid must be irrevocable unless and until the Debtors accept a higher Bid and such Potential Bidder is not selected as the Back-Up Bidder (as defined herein).<br><br>i.    **Joint Bids**. The Debtors, after consultation with the Committee, will be authorized to approve joint Bids in their discretion on a case-by-case basis.<br><br>j.    **Adequate Assurance Information**. Each Bid must be accompanied by sufficient and adequate financial and other information (the "<u>Adequate Assurance Information</u>") to demonstrate, to the reasonable satisfaction of the Debtors, that such Potential Bidder (a) has the financial wherewithal and ability to consummate the acquisition of the Debtors' Equity or some or all of the Debtors' Assets (the "<u>Closing</u>"), and (b) can provide adequate assurance of future performance in connection with the proposed Transaction. The Bid must also identify a contact person that parties may contact to obtain additional Adequate Assurance Information.<br><br>k.    **Identity & Corporate Authority**. Each Bid must fully disclose the identity of each entity that will be participating in connection with such Bid (including any equity owners or sponsors, if the purchaser is an entity formed for the |

| Provision | Summary |
|---|---|
| | purpose of consummating the acquisition of the Debtors' Equity or some or all of the Debtors' Assets), and the complete terms of any such participation, along with sufficient evidence that the Potential Bidder is legally empowered, by power of attorney or otherwise, to complete the transactions on the terms contemplated by the parties. A Bid must also fully disclose any connections or agreements with the Debtors, any known, potential, prospective bidder or Qualified Bidder (as defined herein), or any officer, director, or equity security holder of the Debtors. |
| | l.    **Authorization**. Each Bid must contain evidence that the Potential Bidder has obtained authorization or approval from its board of directors (or a comparable governing body reasonably acceptable to the Debtors) with respect to the submission of its Bid and the consummation of the transactions contemplated in such Bid. |
| | m.   **No Fees**. Each Potential Bidder presenting a Bid or Bids will bear its own costs and expenses (including legal fees) in connection with the proposed transaction, and by submitting its Bid is agreeing to refrain from and waive any assertion or request for reimbursement on any basis, including under Bankruptcy Code section 503(b); *provided* that the Debtors are authorized in their discretion to provide the Bid Protections to one or more Stalking Horse Bidders in accordance with these Bid Procedures. |
| | n.   **Adherence to Bid Procedures**. By submitting its Bid, each Potential Bidder is agreeing to abide by and honor the terms of these Bid Procedures and agrees not to submit a Bid or seek to reopen the Auction after conclusion of the Auction. |
| | o.   **Regulatory Approvals and Covenants**. A Bid must set forth each regulatory and third-party approval required for the Potential Bidder to consummate the applicable Transaction, if any, and the time period within which the Potential Bidder expects to receive such regulatory and third-party approvals (and in the case that receipt of any such regulatory or third-party approval is expected to take more than thirty days following execution and delivery of the Plan term sheet and/or asset purchase agreement, those |

| Provision | Summary |
|---|---|
| | actions the Potential Bidder will take to ensure receipt of such approvals as promptly as possible). |
| | p.   **As-Is, Where-Is**. Each Bid must include a written acknowledgement and representation that the Potential Bidder (a) has had an opportunity to conduct any and all due diligence regarding the Debtors' Equity or some or all of the Debtors' Assets prior to making its offer, (b) has relied solely upon its own independent review, investigation, and/or inspection of any documents and/or the Debtors' Equity or some or all of the Debtors' Assets in making its Bid, and (c) did not rely upon any written or oral statements, representations, promises, warranties, or guaranties whatsoever, whether express, implied by operation of law, or otherwise, regarding the Debtors' Equity or some or all of the Debtors' Assets or the completeness of any information provided in connection therewith or the Auction, except as expressly stated in, if a Sale Transaction, the Potential Bidder's proposed purchase agreement or, if an Equity Transaction, in the Potential Bidder's markup of the chapter 11 plan. |
| | q.   **Time Frame for Closing**. A Bid by a Potential Bidder must be reasonably likely (based on antitrust or other regulatory issues, experience, and other considerations) to be consummated, if selected as the Successful Bid (as defined herein), within a time frame acceptable to the Debtors after consultation with the Committee. |
| | r.   **Consent to Jurisdiction**. The Potential Bidder must submit to the jurisdiction of the Bankruptcy Court and waive any right to a jury trial in connection with any disputes relating to the Debtors' qualification of Bids, the Auction, the construction and enforcement of these Bid Procedures, the Plan, the Transaction documents, and the Closing, as applicable. |
| | Only Bids fulfilling all of the preceding requirements contained in this section may, at the Debtors' discretion, be deemed to be "Qualified Bids," and only those parties submitting Qualified Bids may, at the Debtors' discretion, be deemed to be "Qualified Bidders." |
| | Bid Procedures §IV. |

| Provision | Summary |
|---|---|
| **Stalking Horse Bid Protections** (Del. Bankr. L.R. 6004-1(c)(i)(C)) | Recognizing that a Stalking Horse Bidder will expend time, energy, and resources, and that the Stalking Horse Bidder (if any) provides a floor bid with respect to the Equity or Assets that it offers to purchase, pursuant to the Bid Procedures Order, the Debtors are authorized, but not required, to provide the following bid protections to the Stalking Horse Bidder (if any): <br><br> (A) an expense reimbursement on account of the actual, reasonable, documented out-of-pocket expenses of the Stalking Horse Bidder incurred in connection with the Stalking Horse Agreement in an aggregate amount not to exceed $750,000 ("Expense Reimbursement"); and <br><br> (B) a breakup fee in an amount not to exceed three percent (3%) of the cash portion of the purchase price under the Stalking Horse Agreement ("Breakup Fee," and together with the Expense Reimbursement, the "Bid Protections"), payable only from the proceeds of an alternative Transaction. The Bid Protections shall constitute an allowed administrative expense. <br><br> Bid Procedures §III. |
| **Bidding Increments** (Del. Bankr. L.R. 6004-1(c)(i)(C)(3)) | Bids at the Auction, including any Bids by the Stalking Horse Bidder, must be made in minimum increments of $250,000.00 or such amount as the Debtors determine and announce at or prior to the Auction of additional value (including after payment of the Bid Protections to the Stalking Horse Bidder). <br><br> Bid Procedures §VIII.f. |
| **Modifications of Bidding and Auction Procedures** (Del. Bankr. L.R. 6004-1(c)(i)(D)) | The Debtors reserve their rights to modify these Bid Procedures in their business judgment in a manner consistent with the exercise of their fiduciary duties, and in any manner that will best promote the goals of the bidding process, or impose, at or before the Auction (if held), additional customary terms and conditions on the Transaction, including, without limitation: (a) extending the deadlines set forth in these Bid Procedures; (b) adjourning the Auction; (c) modifying the Auction Procedures or adding procedural rules that are reasonably necessary or advisable under the circumstances for conducting the Auction; (d) canceling the Auction; (e) rejecting any or all Bids or Qualified Bids; and (f) adjusting the applicable minimum overbid increment, including by requesting that Qualified Bidders submit last or final bids on a "blind" basis. For the avoidance of doubt, the Debtors reserve the right at any point prior to the selection of the Successful Bidder to terminate the Transaction processes contemplated hereunder with respect to the Debtors' Equity or some |

| Provision | Summary |
|---|---|
| | or all of the Debtors' Assets and seek to sell the Assets pursuant to Bankruptcy Code section 363(b).<br><br>Bid Procedures §XV. |
| **Closing with Alternative Backup Bidders** (Del. Bankr. L.R. 6004-1(c)(i)(E)) | The Auction shall continue until only one Qualified Bid is the highest or otherwise best bid to purchase the Debtors' Equity or some or all of the Debtors' Assets in the Debtors' business judgment and in a manner consistent with the exercise of their fiduciary duties and outlined below in further detail, after consultation with the Committee (a "Successful Bid"), and that further bidding is unlikely to result in a different Successful Bid or Successful Bids that would be acceptable to the Debtors, after consultation with the Committee, at which point, the Auction will be closed. When determining the highest or otherwise best Qualified Bid, as compared to other Qualified Bids, the Debtors may consider the following factors in addition to any other factors that the Debtors deem appropriate: (a) the amount and nature of the total consideration; (b) the likelihood of the Qualified Bidder's ability to close a Transaction and the timing thereof; (c) the net economic effect of any changes to the value to be received by each of the Debtors' estates from the Transaction contemplated by the Bid Documents; (d) the tax consequences of such Qualified Bid; and (e) the certainty of the Debtors being able to confirm a chapter 11 plan.<br><br>For the avoidance of doubt, the Debtors may select more than one Qualified Bid to collectively serve as a Successful Bid if each such Qualified Bid contemplates the purchase of different Equity or Assets. The Qualified Bidder or Qualified Bidders having submitted the Successful Bid or Successful Bids will be deemed the "Successful Bidder" or "Successful Bidders," with respect to the Equity or applicable Assets. The Debtors shall promptly file notice of the Successful Bid(s) and the Successful Bidder(s) with the Court.<br><br>Bid Procedures §IX. |
| **Provisions Governing the Auction** (Del. Bankr. L.R. 6004-1(c)(ii)) | If one or more Qualified Bids are received by the Bid Deadline with respect to any applicable non-overlapping Assets or Equity, then the Debtors shall conduct the Auction with respect to such Equity and/or Assets. The Auction will be held on **October 10, 2023**, at **10:00 a.m. (prevailing Eastern Time)**, at the office of McDermott Will & Emery LLP, One Vanderbilt Avenue, New York, New York 10017-3852, or at such later time or other place as the Debtors determine in which case the Debtors shall timely notify all Qualified Bidders of such later time or other place, by |

| Provision | Summary |
|---|---|
| | announcing the change on the record at the Auction, or if the Auction has not yet commenced, by filing a notice on the docket of these Chapter 11 Cases.[6]<br><br>The Auction will be conducted in accordance with the following procedures (the "<u>Auction Procedures</u>"):<br><br>a.    except as otherwise provided herein, the Auction will be conducted openly;<br><br>b.    only Qualified Bidders, including the Stalking Horse Bidder (if any), shall be entitled to bid at the Auction;<br><br>c.    the Qualified Bidders, including the Stalking Horse Bidder (if any), shall appear at the Auction through duly authorized representatives at the Auction;<br><br>d.    only the following parties shall be permitted to attend the Auction: authorized representatives of each of the Qualified Bidders (including the Stalking Horse Bidder), the Debtors, the Committee, creditors, and their respective advisors; *provided, however* that creditors attending the Auction shall notify counsel for the Debtors of their intention to attend the Auction by emailing counsel within five business days prior to the Auction;<br><br>e.    bidding at the Auction will begin at the applicable Starting Bid;<br><br>f.    Bids at the Auction, including any Bids by the Stalking Horse Bidder, must be made in minimum increments of $250,000.00 or such amount as the Debtors determine and announce at or prior to the Auction of additional value (including after payment of the Bid Protections to the Stalking Horse Bidder);<br><br>g.    each Qualified Bidder will be permitted a reasonable time to respond to previous bids at the Auction, as determined by the Debtors;<br><br>h.    the bidding will be transcribed or recorded to ensure an |

---

[6]    If the Debtors decide to hold a live, in-person Auction, subject to the Debtors' discretion, Qualified Bidders may still have the ability to submit Bids remotely.

| Provision | Summary |
|---|---|
| | accurate recording of the bidding at the Auction; |
| | i.      no Qualified Bidders (or their respective representatives) may communicate with one another, collude, or otherwise coordinate for purposes of participating in the Auction, and each Qualified Bidder will be required to confirm on the record of the Auction that (i) it has not engaged in any collusion, coordination, or unfair competitive practices with respect to the bidding or the Transaction and (ii) its Bid represents an irrevocable, binding, good faith, and bona fide offer to purchase the Debtors' Equity or some or all of the Debtors' Assets identified in such Bid if such Bid is selected as the Successful Bid; *provided*, *however*, that two or more Qualified Bidders may coordinate to the extent they wish to provide a combined bid if the Debtors approve such coordination in their discretion; |
| | j.      the Auction will not close unless and until all Qualified Bidders have been given a reasonable opportunity to submit an overbid at the Auction to the then-prevailing highest bid, subject to the Debtors' right to require last and final bids to be submitted on a "blind" basis; |
| | k.      the Debtors reserve the right, in their business judgment, to adjourn the Auction one or more times to, among other things, (i) facilitate discussions between the Debtors and Qualified Bidders, (ii) allow Qualified Bidders to consider how they wish to proceed, and (iii) provide Qualified Bidders the opportunity to provide the Debtors with such additional evidence as the Debtors, in their business judgment, may require that the Qualified Bidder has sufficient internal resources or has received sufficient non-contingent debt and/or equity funding commitments to consummate the proposed transaction at the prevailing amount; and |
| | l.      the Auction will be governed by such other Auction Procedures as may be announced by the Debtors and their advisors from time to time on the record at the Auction; *provided* that such other Auction Procedures are (i) not inconsistent with the Bid Procedures Order, the Bankruptcy Code, or any other order of the Court, (ii) disclosed orally or in writing to all Qualified Bidders, and (iii) determined by the Debtors to further the goal of |

| Provision | Summary |
|---|---|
| | attaining the highest or otherwise best offer for the Equity or applicable Assets. |
| | For the avoidance of doubt, nothing in the Auction Procedures (if an Auction is held) will prevent the Debtors from exercising their respective fiduciary duties under applicable law (as reasonably determined in good faith by the Debtors). |
| | Bid Procedures §VIII. |

27.     Importantly, the Bid Procedures recognize the Debtors' fiduciary obligations to maximize value, and, as such, do not impair the Debtors' ability to consider all qualified bid proposals, and preserve the Debtors' right to modify the Bid Procedures as necessary or appropriate to maximize value for their estates. Moreover, through the Bid Procedures, the Debtors have agreed to provide substantial information about the ongoing process to their stakeholders to ensure that they are apprised of the status and determinations related to the Transaction.

**III.     Form and Manner of Transaction Notice**

28.     The Auction, if needed, shall be scheduled on a date as selected by the Debtors, and will be held on October 10, 2023 at 10:00 a.m. prevailing Eastern Time (or such other date as selected by the Debtors) at the offices of proposed counsel to the Debtors: McDermott Will & Emery, One Vanderbilt Avenue, New York, New York, 10017.

29.     As soon as practicable after entry of the Bid Procedures Order, the Debtors will cause the Transaction Notice, substantially in the form attached as **<u>Exhibit 2</u>** to the Order, to be served on the parties that receive notice of this Motion. The Debtors submit that, in light of the nature of the relief requested, no other or further notice need be given.

30.    In addition, as soon as practicable after entry of the Order, the Debtors will post the Transaction Notice on their restructuring website, https://www.cases.stretto.com/primetrust (the "Case Website"). The Transaction Notice is reasonably calculated to provide all interested parties with timely and proper notice of the proposed Transaction, including the date, time, and place of the Auction (if one is held) and the Bid Procedures and the dates and deadlines related thereto. Accordingly, the Debtors request that the form and manner of the Transaction Notice be approved and no other or further notice of the Auction be required.

**IV.    Assumption and Assignment Procedures**

31.    In connection with any Transaction, the Debtors may seek to assume and assign to a Successful Bidder one or more executory contracts or unexpired leases, as selected by such Successful Bidder in its Successful Bid, in accordance with the Assumption and Assignment Procedures. The Assumption and Assignment Procedures are designed to, among other things, govern the Debtors' provision of Adequate Assurance Information and the provision of notice to all counterparties.

32.    Because the Bid Procedures Order sets forth the Assumption and Assignment Procedures in detail, they are not restated herein. Generally, however, the Assumption and Assignment Procedures: (i) outline the process by which the Debtors shall serve notice to all Assigned Contract Counterparties regarding the proposed assumption and assignment and related cure amounts, if any, informing such parties of their right, and the procedures, to object thereto, and (ii) establish objection and other relevant deadlines and the manner for resolving disputes relating to the assumption and assignment of the Assigned Contracts to the extent necessary.

## **RELIEF REQUESTED**

33.     Accordingly, the Debtors respectfully request entry of the Bid Procedures Order,

substantially in the form attached hereto:

   a.   authorizing and approving the Bid Procedures substantially in the form
        attached as **Exhibit 1** to the Bid Procedures Order;

   b.   authorizing the Debtors, in their discretion, to enter into one or more Stalking
        Horse Agreements with one or more Stalking Horse Bidders, and (ii) in
        connection with the Stalking Horse Agreement, authorization to pay (1) an
        expense reimbursement ("Expense Reimbursement") for the reasonable,
        documented out-of-pocket expenses of the Stalking Horse Bidder incurred in
        connection with the Stalking Horse Agreement in an aggregate amount not to
        exceed $750,000.00 of actual, documented out of pocket expenses; and (2) a
        breakup fee ("Breakup Fee") for the Stalking Horse Bidder in an amount not to
        exceed three percent (3%) of the cash portion of the purchase price under the
        Stalking Horse Agreement, payable only from the proceeds of a Transaction
        with a Qualified Bidder other than the Stalking Horse Bidder. The Bid
        Protections shall be an allowed administrative expense;

   c.   scheduling the Auction and approving the Transaction Notice;

   d.   establishing certain Assumption and Assignment Procedures relating to the
        Assumed Contracts, including notice of proposed cure amounts, and approving
        the Cure Notice;

   e.   if a Sale Transaction, setting a hearing for approval of any Sale(s) (the "Sale
        Hearing");[7] and

   f.   granting related relief.

34.      If a Sale Transaction, the Debtors also seek entry of a Sale Order, among other

things:

   a.   approving the Sale Transaction of the Debtors' assets to the Stalking Horse
        Bidder(s) (if any) or other successful bidder(s) (the "Successful Bidder") at the
        Auction (as necessary) free and clear of liens, claims, and interests pursuant to
        Bankruptcy Code section 363(f);

   b.   approving the assumption and assignment of the Assumed Contracts pursuant
        to Bankruptcy Code section 365(a);

---

[7]     If an Equity Transaction, the Equity Transaction will be approved in connection with confirmation of a chapter
        11 plan.

c. determining that the Successful Bidder is a good faith purchaser pursuant to Bankruptcy Code sections 363(f) and (m), and is entitled to the protections thereof;

d. waiving the 14-day stay under each of Bankruptcy Rules 6004 and 6006; and

e. granting related relief.

**BASIS FOR RELIEF**

I. **The Bid Procedures Are Fair, Designed to Maximize the Value Received for the Property, and Consistent with the Debtors' Reasonable Business Judgment**

15. The paramount goal in any proposed sale of property of the estate is to maximize the proceeds received by the estate. *See Burtch et al. v. Ganz, et al. (In re Mushroom Transp. Co.)*, 382 F.3d 325, 339 (3d Cir. 2004) (noting debtor in possession "had a fiduciary duty to protect and maximize the estate's assets"); *Official Comm. of Unsecured Creditors of Cybergenics, Corp v. Chinery*, 330 F.3d 548, 573 (3d Cir. 2003) (same); *Four B. Corp. v. Food Barn Stores, Inc. (In re Barn Stores, Inc.)*, 107 F.3d 558, 564–65 (8th Cir. 1997) (observing in bankruptcy sales, "a primary objective of the Code [is] to enhance the value of the estate at hand"); *Metro. Airports Comm'm v. Northwest Airlines, Inc. (In re Midway Airlines, Inc.)*, 6 F.3d 492, 494 (7th Cir. 1993) ("Section 365 . . . advances one of the Code's central purposes, the maximization of the value of the bankruptcy estate for the benefit of creditors.").

16. To that end, courts uniformly recognize that procedures to enhance competitive bidding are consistent with the goal of maximizing the value received by the estate and therefore are appropriate in the context of bankruptcy transactions. *See Calpine Corp. v. O'Brien Envtl. Energy, Inc. (In re O'Brien Envtl. Energy, Inc.)*, 181 F.3d 527, 537 (3d Cir. 1999); *In re Fin'l News Network, Inc.*, 126 B.R. 152, 156 (Bankr. S.D.N.Y. 1992) ("Court-imposed rules for the disposition of assets . . . [should] provide an adequate basis for comparison of offers, and [should] Bid Procedures will encourage competitive bidding and are appropriate under the

24

relevant standards governing auction proceedings and bidding incentives in bankruptcy

proceedings. provide for fair and efficient resolution of bankrupt estates."); *see also Official*

*Comm. of Subordinated Bondholders v. Integrated Res. Inc. (In re Integrated Res. Inc.)*, 147

B.R. 650, 659 (S.D.N.Y. 1992) (stating bidding procedures "encourage bidding and . . .

maximize the value of the Debtors' assets").

17.     The Debtors believe that the Bid Procedures will provide an orderly and uniform

mechanism by which interested buyers and investors can submit offers for the Debtors' Equity or

some or all of the Debtors' Assets, and will ensure a competitive and fair bidding process. The

Debtors also believe that the Bid Procedures will promote active bidding from seriously

interested parties and will confirm the best and highest offer reasonably available for such

Assets. The Bid Procedures will allow the Debtors to conduct the Auction, subject to the terms of

the Bid Procedures, in a controlled, fair, and open manner that will encourage participation by

financially capable bidders that demonstrate the ability to close a transaction. The Debtors

believe that the Bid Procedures will encourage bidding, are consistent with other procedures

routinely approved by courts in this and other districts, and are appropriate under the relevant

standards governing auction proceedings and bidding incentives in bankruptcy proceedings.

18.     Courts in this District and other districts routinely approve procedures

substantially similar to the proposed Bid Procedures, including procedures providing for sale

timelines consistent with (or more accelerated) than the timeline proposed herein.[8] *See, e.g., In re*

*Mabvax Therapeutics Holdings, Inc.*, No. 19-10603 (CSS) [D.I. 78] (Bankr. D. Del. Apr. 8,

2019) (approving bidding procedures with a bid deadline 18 days after entry of bidding

procedures order); *In re Things Remembered, Inc.*, No. 19-10248 (CSS) [Docket No. 100]

---

[8]     The Debtors' Bid Procedures seek to establish a bid deadline approximately 27 days after and an auction
        approximately 29 days after entry of the Bid Procedures Order.

(Bankr. D. Del. Mar. 13, 2019) (approving bidding procedures with bid deadline 7 days after entry of order and auction scheduled for 26 days after entry of order); *In re Sequential Brads Group, Inc.*, No. 21-11194 (JTD) (Bankr. D. Del. Sept. 24, 2021) [Docket No. 138] (approving bidding procedures with bid deadline 30 days after entry of order allowing for bids for some or substantially all assets of the debtor); *In re Charlotte Russe Holding, Inc.*, No. 19-10210 (LSS) [Docket No. 199] (Bankr. D. Del. Feb. 21, 2019) (approving bidding procedures with bid deadline 10 days after entry of order and auction scheduled for 29 days after entry of order).

19.    Accordingly, the Bid Procedures should be approved as the procedures are consistent with procedures approved by courts in this District in cases of similarly-situated debtors and are otherwise reasonable, appropriate, and in the best interests of the Debtors, their estates and all parties in interest.

## II.    The Bid Protections Have a Sound Business Purpose and Should Be Approved

20.    The Debtors are also seeking authority to provide the Bid Protections to any Stalking Horse Bidder. The Debtors have not identified any Stalking Horse Bidder, but reserve the right to designate a Stalking Horse Bidder up to the time of the Auction. The use of a stalking horse in a public auction process is a customary practice in chapter 11 cases, as the use of a stalking horse bid is, in many circumstances, the best way to maximize value in an auction process by "establish[ing] a framework for competitive bidding and facilitat[ing] a realization of that value." *Official Comm. of Unsecured Creditors v. Interforum Holding LLC*, 2011 WL 2671254, No. 11-cv-219, at *1 n. 1 (E.D. Wis. July 7, 2011). As a result, stalking horse bidders virtually always require break-up fees and, in many cases, other forms of bidding protections as an inducement for "setting the floor at auction, exposing [their] bid[s] to competing bidders, and providing other bidders with access to the due diligence necessary to enter into an asset purchase

26

agreement." *Id*. (citation omitted).  The use of bidding protections has become an established

practice in chapter 11 cases.

21.     Break-up fees and other forms of bidding protections are a customary and, in

many cases, necessary component of significant sales conducted in chapter 11: "Break-up fees

are important tools to encourage bidding and to maximize the value of the debtor's assets . . . In

fact, because the directors of a corporation have a duty to encourage bidding, break-up fees can

be *necessary* to discharge the directors' duties to maximize value." *Integrated Res.*, 147 B.R. at

659-60 (emphasis in original). Specifically, bid protections "may be legitimately necessary to

convince a 'white knight' to enter the bidding by providing some form of compensation for the

risks it is undertaking." *In re 995 Fifth Ave. Assocs., L.P.*, 96 B.R. 24, 28 (Bankr. S.D.N.Y. 1989)

(citation and quotations omitted); *see also Integrated Res.*, 147 B.R. at 660–61 (noting bid

protections can prompt bidders to commence negotiations and "ensure that a bidder does not

retract its bid").

22.     As a result, courts routinely approve such bid protections in connection with

proposed bankruptcy sales where a proposed fee or reimbursement provides a benefit to the

estate. *See In re O'Brien Envtl. Energy, Inc.*, 181 F.3d 527, 535 (3d Cir. 1999) ("In other words,

the allowability of break-up fees, like that of other administrative expenses, depends upon the

requesting party's ability to show that the fees were actually necessary to preserve the value of

the estate."). The approval of the Bid Protections is in the best interests of the Debtors' estates

and their creditors, as the Stalking Horse Agreement will establish a floor for further bidding that

may increase the consideration given in exchange for the Debtors' Equity or some or all of the

Debtors' Assets, which will inure to the benefit of the Debtors' estates.

23.     The Bid Protections are a critical component of the Transaction process. A Stalking Horse Bidder will have expended substantial time and resources negotiating, drafting, and performing due diligence activities necessitated by the Transaction, despite the fact that its bid will be subject not only to Court approval, but also to overbidding by third parties. The proposed Bid Protections are within the commonly approved ranges used by bankruptcy courts. By the Bid Protections, the Debtors will be able to ensure that their estates can realize the benefit of a transaction with the Stalking Horse Bidder without sacrificing the potential for interested parties to submit overbids at the Auction.

24.     The Bid Protections (a) are an actual and necessary cost and expense of preserving the Debtors' estates within the meaning of Bankruptcy Code sections 503(b) and 507(a)(2), (b) are commensurate to the real and material benefits conferred upon the Debtors' estates by the Stalking Horse Bidder, and (c) are fair, reasonable, and appropriate, including in light of the size and nature of the proposed transaction, the commitments that have been made, and the efforts that have been and will be expended by the Stalking Horse Bidder.

25.     If the Court does not approve the Bid Protections, the Debtors may not be able to induce any Qualified Bidder to serve as the Stalking Horse Bidder, to the detriment of the Debtors' estates. Further, if the Bid Protections were ultimately to be paid, it will necessarily be because the Debtors have received higher or otherwise superior offers for their Equity or Assets. In short, the proposed Bid Protections are fair and reasonable under the circumstances because they constitute a "fair and reasonable percentage of the proposed purchase price" and are "reasonably related to the risk, effort, and expenses of the prospective purchaser." *Integrated Res.*, 147 B.R. at 662.

26.    The Debtors believe that the Bid Protections are well within market, and fair and reasonable in amount in light of the size and nature of the proposed Transaction, and the efforts that will have been expended by the Stalking Horse Bidder in connection with negotiating and entering into the Stalking Horse Agreement, which will serve as the baseline for other Bids for the Debtors' Equity or some or all of the Debtors' Assets. In addition, given that the Breakup Fee will be paid out of the proceeds of any competing Transaction that may be consummated, such payment will not diminish the Debtors' estates.

27.    The Bid Protections fall within the range of bid protections typically approved by bankruptcy courts in the Third Circuit. When considered together, the combined total Breakup Fee and Expense Reimbursement, or three percent (3.0%) of the Purchase Price, plus up to $750,000.00 of Expense Reimbursement, is consistent with the range of bid protections typically paid in sale transactions that court have approved recently. *See, e.g., In re Agspring Miss. Region, LLC*, Case No. 21-11238 (CTG) (Bankr. D. Del. Oct. 14, 2021) [Docket No. 103] (approving bid protections of 3% of the purchase price); *In re Sequential Brands Grp., Inc*., Case No. 21-11194 (JTD) (Bankr. D. Del. Sept. 24, 2021) [Docket No. 138] (approving bid protections of 3.65% of the purchase price); *In re Knotel, Inc., et al*., Case No. 21-10146 (MFW) (Bankr. D. Del. Mar. 11, 2021) [Docket No. 418] (approving bid protections of 3% of the purchase price); *In re Brooks Brothers Grp., Inc., et al*., Case No. 20-11785 (CSS) (Bankr. D. Del. Aug. 3, 2020) [Docket No. 285] (approving bid protections of 3% of the purchase price and expense reimbursement up to $1,000,000); *In re Things Remembered, Inc*., No. 19-10234 (KG) (Bankr. D. Del. Feb. 21, 2019) (approving break-up fee and expense reimbursement equal to 4.4% the purchase price).

28.     Accordingly, the Bid Protections are a sound exercise of the Debtors' business

judgment and are in the best interests of the Debtors, their estates, and all stakeholders.

III.    **If a Sale Transaction, the Court Should Approve the Debtors' Sale of
        Their Assets as a Sound Exercise of Business Judgment**

        A.      **A Sound Business Purpose Exists for the Sale**

        29.     Bankruptcy Code section 363 provides that a debtor, "after notice and a hearing,

may use, sell, or lease, other than in the ordinary course of business, property of the estate . . . ."

11 U.S.C. § 363(b). A debtor must demonstrate a sound business justification for the sale or use

of assets outside the ordinary course of business. *See, e.g., Myers v. Martin (In re Martin)*, 91

F.3d 389, 395 (3d Cir. 1996); *Dai-Ichi Kangyo Bank, Ltd. v. Montgomery Ward Holding Corp.

(In re Montgomery Ward Holding Corp.)*, 242 B.R. 147, 153 (D. Del. 1999*); In re Del. &

Hudson Ry. Co.*, 124 B.R. 169, 175-76 (D. Del. 1991).

        30.     The "sound business reason" test requires a debtor to establish four elements in

order to justify the sale or lease of property outside the ordinary course of business, namely: (1)

that a sound business purpose justifies the sale of assets outside the ordinary course of business;

(2) that accurate and reasonable notice has been provided to interested persons; (3) that the

debtor has obtained a fair and reasonable price; and (4) good faith. *See generally In re Abbotts

Dairies of Penn., Inc.*, 788 F.2d 143 (3d Cir. 1986); *see also Titusville Country Club*, 128 B.R.

396, 399 (Bankr. W.D. Pa. 1991); *In re Phoenix Steel Corp.*, 82 B.R. 334, 335-36 (Bankr. D.

Del. 1987); *Comm. Of Equity Sec. Holders v. Lionel Corp. (In re Lionel Corp.)*, 722 F.2d 1063,

1071 (2d Cir. 1983). A debtor's showing of a sound business purpose need not be unduly

exhaustive, rather, a debtor is "similarly situated to justify the proposed disposition with sound

business reasons." *In re Baldwin United Corp.*, 43 B.R. 888, 906 (Bankr. S.D. Ohio 1984).

Whether or not there are sufficient business reasons to justify a transaction depends upon the facts and circumstances of each case. *Lionel*, 722 F.2d at 1071.

31.     Pursuant to the Bid Procedures, the Debtors, in consultation with their advisors, will reserve the right to disregard and disqualify any bid that does not contain a fair and adequate price or the acceptance of which would not be in the best interests of the estates or the Auction. In addition, the value of the Assets will be tested through the Auction and sale process provided for in the Bid Procedures. Consequently, the fairness and reasonableness of the consideration to be paid or financed by the Successful Bidder for the Assets ultimately will be demonstrated by adequate "market exposure" and an open and fair auction and sale process—the best means for establishing whether a fair and reasonable price is being paid. The Successful Bid will constitute the highest or best offer for the Assets, and may provide a greater recovery for the Debtors' estates than is likely to be provided by any other available alternative. As a result, the Debtors' determination to explore a sale of the Assets through an auction and sale process, as provided for in the Bid Procedures, is a valid and sound exercise of the Debtors' business judgment. Accordingly, the Debtors respectfully request that the Sale Transaction be approved.

> **B.     If a Sale Transaction, Successful Bidders Should Be Entitled to the Protections of Bankruptcy Code Section 363(m)**

32.     Bankruptcy Code section 363(m protects the sale of a debtor's property to a good faith purchaser. Specifically, section 363(m) provides: The reversal or modification on appeal of an authorization under subsection (b) or (c) of this section of a sale or lease of property does not affect the validity of a sale or lease under such authorization to an entity that purchased or leased such property in good faith, whether or not such entity knew of the pendency of the appeal, unless such authorization and such sale or lease were stayed pending appeal. 11 U.S.C. § 363(m).

33.     Courts in this Circuit have upheld section 363 purchase agreements "negotiated, proposed, and entered into . . . in good faith, without collusion . . . [resulting from] arm's-length bargaining with . . . parties represented by independent counsel." *In re THQ Inc*., No. -12-13398 (MFW), 2013 Bankr. LEXIS 781 (Bankr. D. Del. Jan. 24, 2013); *In re Gottschalks Inc*., Nos. 09-10157 (KJC), 526, 603, 2009 Bankr. LEXIS 4880 (Bankr. D. Del. June 10, 2009); I*n re Against All Odds USA, Inc*., Nos. 09-10117 (DHS), TIN: 22-3391747, 2009 Bankr. LEXIS 5234, at *1 (Bankr. D.N.J. May 28, 2009); *In re Allegheny Health, Educ. & Research Found*., Case Nos. 98-25773, 98-25774, 98-25775, 98-25776, 98-25777, 1998 Bankr. LEXIS 1684, at *31 (Bankr. W.D. Pa. Oct. 30, 1998). A sale to a good-faith purchaser cannot be avoided under section 363(m), unless the sale authorization was stayed pending appeal. *See* 11 U.S.C. § 363(m) ("The reversal or modification of an authorization under subsection (b) of this section of a sale . . . does not affect the validity of [the] sale . . . to an entity that purchased . . . the property in good faith . . . ."). However, "[t]he trustee may avoid a sale . . . if the sale price was controlled by an agreement among potential bidders . . . ." *Id*. at § 363(n). Additionally, for the sale to be considered in good faith, consideration must: (1) be fair and reasonable; (2) be the highest and best offer for the. property, and (3) constitute reasonably equivalent value, fair value, and fair consideration. Gottschalks, 2009 Bankr. LEXIS 4880, at *5.

34.     The Debtors submit, and the testimony presented at the Sale Hearing will demonstrate, that the terms and conditions of the Sale Transaction will have been negotiated by the Debtors and the Successful Bidder at arm's length and in good faith, with the assistance of the Debtors' professional advisors, and that the parties did not engage in any conduct that would cause or permit the Sale Transaction to be avoided under Bankruptcy Code section 363(n).

35.     Accordingly, the Debtors request that the Court make a finding at the Sale Hearing that the Successful Bidder purchased the Assets in good faith and that such purchase will be entitled to the full protections of Bankruptcy Code section 363(m).

**IV.     The Form and Manner of the Transaction Notice Should Be Approved**

36.     Pursuant to Bankruptcy Rule 2002(a), the Debtors are required to provide creditors with 21-days' notice of a hearing where the Debtors will seek to use, lease, or sell property of the estate outside the ordinary course of business. Bankruptcy Rule 2002(c) requires any such notice to include the time and place of the auction and the hearing and the deadline for filing any objections to the relief requested therein. As required under Bankruptcy Rule 2002(b), the Debtors seek approval of the Transaction Notice as proper notice of the Auction. Notice of this Motion and the related hearing to consider entry of the Bid Procedures Order, coupled with service of the Transaction Notice, as provided for herein, constitutes good and adequate notice of the Auction and the proceedings with respect thereto in compliance with, and satisfaction of, the applicable requirements of Bankruptcy Rule 2002. The Debtors request that this Court approve the form and manner of the Transaction Notice.

**V.     The Assumption and Assignment Procedures Are Appropriate and Should Be Approved**

37.     Bankruptcy Code sections 365(a) and (b) authorize a debtor in possession to assume, subject to the court's approval, executory contracts or unexpired leases of the debtor. Under Bankruptcy Code section 365(a), a debtor, "subject to the court's approval, may assume or reject any executory contract or unexpired lease of the debtor." 11 U.S.C. § 365(a). Bankruptcy Code section 365(b)(1), in turn, codifies the requirements for assuming an unexpired lease or executory contract of a debtor, providing that:

(b)(1) If there has been a default in an executory contract or unexpired lease of the debtor, the trustee may not assume such contract or lease unless, at the time of assumption of such contract or lease, the trustee-

(A) cures or provides adequate assurance that the trustee will promptly cure, such default . . . ;

(B) compensates, or provides adequate assurance that the trustee will promptly compensate, a party other than the debtor to such contract or lease, for any actual pecuniary loss to such party resulting from such default; and

(C) provides adequate assurance of future performance under such contract or lease.

11 U.S.C. § 365(b)(1).

38.     The standard applied by the Third Circuit in determining whether an executory contract or unexpired lease should be assumed is the "business judgment" test, which requires a debtor to determine that the requested assumption or rejection would be beneficial to its estate. *See Sharon Steel Corp. v. Nat'l Fuel Gas Distrib. Corp.*, 872 F.2d 36, 40 (3d Cir. 1989); *see also NLRB v. Bildisco & Bildisco*, 465 U.S. 513, 523 (1984) (describing business judgment test as "traditional") (superseded in part by 11 U.S.C. § 1113).

39.     Courts generally will not second-guess a debtor's business judgment concerning the assumption of an executory contract. *See In re Decora Indus., Inc.*, No. 00-4459 (JJF), 2002 WL 32332749, at *8; *Official Comm. for Unsecured Creditors v. Aust (In re Network Access Sols., Corp.*, 330 B.R. 67, 75 (Bankr. D. Del. 2005) ("The standard for approving the assumption of an executory contract is the business judgment rule"); *In re Exide Techs.*, 340 B.R. 222, 239 (Bankr. Del. 2006) ("The propriety of a decision to reject an executory contract is governed by the business judgment standard").

40.     To determine if the business judgment standard is met, the court is "required to examine whether a reasonable businessperson would make a similar decision under similar

34

circumstances." *In re AbitibiBowater Inc*., 418 B.R. 815, 831 (Bankr. D. Del. 2009). "This is not

a difficult standard to satisfy and requires only a showing that rejection will benefit the estate."

Id. (citations omitted). Specifically, a court should find that the assumption or rejection is elected

on"an informed basis, in good faith, and with the honest belief that the assumption . . . [is] in the

best interests of [the Debtors] and the estate." *Network Access Sols*., 330 B.R. at 75. Under this

standard, a court should approve a debtor's business decision unless that decision is the product

of bad faith or a gross abuse of discretion. See In re Federal Mogul Global, Inc., 293 B.R. 124,

126 (D. Del. 2003).

41.    In the present case, the Debtors' assumption and assignment of the Assumed

Contracts to the relevant Successful Bidder will meet the business judgment standard and satisfy

the requirements of Bankruptcy Code section 365. The assumption and assignment will likely be

necessary for the Successful Bidder to conduct business going forward, and since it is anticipated

that no Successful Bidder would take the Assets without certain Assumed Contracts, the

assumption and assignment of such agreements is essential to securing the highest or best offer

for the Assets.

42.    Consequently, the Debtors submit that the Assumption and Assignment

Procedures are fair and reasonable, and respectfully request that the Court approve such

procedures and authorize the Debtors to assume and assign the Assumed Contracts in the manner

provided for herein.

43.    Further, a debtor in possession may assign an executory contract or an unexpired

lease if it assumes the agreement in accordance with Bankruptcy Code section 365(a) and

provides adequate assurance of future performance by the assignee, whether or not there has

been a default under the agreement. *See* 11 U.S.C. § 365(c)(2).

35

44.    The meaning of "adequate assurance of future performance" depends on the facts and circumstances of each case but should be given "practical, pragmatic construction." *EBG Midtown South Corp. v. McLaren/Hart Envtl. Eng'g Corp. (In re Sanshoe Worldwide Corp.),* 139B.R. 585, 592 (S.D.N.Y. 1992) (citations omitted), aff'd, 993 F.2d 300 (2d Cir. 1993); *In re Prime Motor Inns Inc.*, 166 B.R. 993, 997 (Bankr. S.D. Fla. 1994); *In re Rachels Indus. Inc.*, 109 B.R. 797, 803 (Bankr. W.D. Tenn. 1990); *Carlisle Homes, Inc. v. Azzari (In re Carlisle Homes, Inc.)*, 103 B.R. 524, 538 (Bankr. D.N.J. 1988).

45.    Significantly, among other things, adequate assurance of future performance may be provided by demonstrating the assignee's financial health and experience in managing the type of enterprise or property assigned. *See, e.g., In re Bygaph, Inc.*, 56 B.R. 596, 605-06 (Bankr. S.D.N.Y. 1986) (stating that adequate assurance of future performance is present when the prospective assignee of a lease from the debtor has financial resources and has expressed willingness to devote sufficient funding to the business in order to give it a strong likelihood of succeeding).

46.    Pursuant to the Bid Procedures, the Potential Bidders are required to provide to the Debtors such financial and other information providing adequate assurance of future performance under any executory contracts and unexpired leases to be assumed pursuant to Bankruptcy Code section 365 in connection with the Transaction, in a form requested by the Debtors. Within one (1) business day after receipt, the Debtors shall provide such information to any counterparty that has requested, in writing, such information. Moreover, under the Assignment Procedures, the Non-Debtor Counterparties will have the opportunity to object to adequate assurance of future performance by the relevant Successful Bidder.

47.     Accordingly, the Debtors submit that the assumption and assignment of the Designated Contracts as set forth herein should be approved pursuant to Bankruptcy Code section 365.

**CONCLUSION**

48.     The Bid Procedures provide the formal framework for a Transaction or Transactions and have been structured to elicit value-maximizing bids for the Debtors' assets. Among other things, the Bid Procedures: (a) set forth the timeline for the Transaction process that is reasonable and appropriate to produce value-maximizing bids for the Debtors' Assets; (b) establish the basic rules for submitting bids; and (c) authorize the provision to any Stalking Horse Bidder of certain Bid Protections.

**RESERVATION OF RIGHTS**

35.     Nothing in this Motion or any order granting the relief requested in this Motion, and no action take pursuant to the relief requested or granted (including any payment made in accordance with any such order):  (a) is intended or shall be deemed to constitute an assumption of any agreement pursuant to Bankruptcy Code section 365, an admission as to the executory nature of any agreement, or the basis for or the validity of any claim against the Debtors or their estates; (b) shall impair, prejudice, waive, or otherwise affect the rights of the Debtors or their estates to contest the validity, priority, or amount of any claim against the Debtors or their estates; (c) shall impair, prejudice, waive, or otherwise affect the rights of the Debtors or their estates with respect to any and all claims or causes of action against any third party; (d) shall be construed as a promise to pay a claim or continue any applicable program postpetition, which decision shall be in the sole discretion of the Debtors; (e) an implication, admission, or finding that any particular claim is an administrative expense claim, other priority claim, or otherwise of a type specified or defined in this Motion or any order granting the relief requested by this

37

Motion; (f) an admission to the validity, priority, enforceability, or perfection of any lien on, security interest in, or other encumbrance on property of the Debtors' estates; or (g) a waiver or limitation of any claims, causes of action, or other rights of the Debtors or any other party in interest against any person or entity under the Bankruptcy Code or any other applicable law. Any payment made pursuant to an order of the Court granting the relief requested herein is not intended to be nor should it be construed as an admission as to the validity of any claim or a waiver of the Debtors' rights to subsequently dispute such claim.

## <u>NOTICE</u>

36.     Debtors will provide notice of the Motion to: (a) the U.S. Trustee; (b)  the Committee; and (c) any party that has requested notice pursuant to Bankruptcy Rule 2002. The Debtors submit that no other or further notice is required. The Debtors submit that no other or further notice is required.

WHEREFORE, the Debtors respectfully request that the Court enter the Bid Procedures Order granting the relief requested herein and such other relief as the Court deems appropriate under the circumstances.


*[Remainder of page intentionally left blank.]*

Dated:  August 30, 2023
       Wilmington, Delaware

**MCDERMOTT WILL & EMERY LLP**

*/s/ Maris J. Kandestin*
Maris J. Kandestin (No. 5294)
1000 N. West Street, Suite 1400
Wilmington, Delaware 19801
Telephone:  (302) 485-3900
Facsimile:  (302) 351-8711
Email:          mkandestin@mwe.com

-and-

Darren Azman (admitted *pro hac vice*)
Joseph B. Evans (admitted *pro hac vice*)
One Vanderbilt Avenue
New York, New York 10017-3852
Telephone:  (212) 547-5400
Facsimile:  (646) 547-5444
Email:          dazman@mwe.com
                    jbevans@mwe.com

-and-

Gregg Steinman (admitted *pro hac vice*)
333 SE 2nd Avenue, Suite 5400
Miami, Florida 33131
Telephone:  (305) 358-3500
Facsimile:  (305) 347-6500
Email:          gsteinman@mwe.com

*Proposed Counsel to the Debtors and Debtors in Possession*