## EXHIBIT 1

**Bid Procedures**

**IN THE UNITED STATES BANKRUPTCY COURT**
**FOR THE DISTRICT OF DELAWARE**

| | |
|---|---|
| In re: | Chapter 11 |
| Prime Core Technologies Inc., *et al.*,[1] | Case No. 23-11161 (JKS) |
| Debtors. | (Jointly Administered) |

**BIDDING PROCEDURES FOR THE SALE OF THE**
**DEBTORS' EQUITY AND/OR ASSETS**

On August 14, 2023, the above-captioned debtors and debtors in possession (collectively, the "Debtors") filed voluntary petitions for relief under chapter 11 of title 11 of the United States Code (the "Bankruptcy Code"), in the United States Bankruptcy Court for the District of Delaware, Houston Division (the "Court").

On [●], 2023, the Court entered the *Order (I) Approving Bidding Procedures for the Sale of All of the Debtors' Equity or All Substantially All of Debtors' Assets, (II) Authorizing the Debtors to Enter Into One or More Stalking Horse Agreements, (III) Approving Bid Protections, (IV) Scheduling an Auction and Related Dates Thereto, (V) Approving the Form and Manner of Notice Thereof, (VI) Approving Contract Assumption and Assignment Procedures, and (VII) Granting Related Relief* [Docket No. ●] (the "Bid Procedures Order"),[2] by which the Court approved the following procedures (the "Bid Procedures").

These Bid Procedures set forth the process by which the Debtors are authorized to solicit the highest or otherwise best bids (each, a "Bid") and conduct an auction (the "Auction") for the sale or sales (collectively, the "Sale Transaction") of all or substantially all of the Debtors' assets (the "Assets") or any portion thereof or 100% of the equity interests in the reorganized Debtors (the "Equity") through a stock purchase transaction (an "Equity Transaction," and together with a Sale, a "Transaction"). A Transaction will be implemented pursuant to Bankruptcy Code section 363 or through a chapter 11 plan of reorganization (as modified, amended, or supplemented from time to time, the "Plan"), pursuant to Bankruptcy Code section 1123.

---

[1]  The debtors in these chapter 11 cases, along with the last four digits of each debtor's federal tax identification number are:  Prime Core Technologies Inc. (5317); Prime Trust, LLC (6823); Prime IRA LLC (8436); and Prime Digital, LLC (4528). The Debtors' service address is 330 South Rampart Blvd., Suite 260, Las Vegas, NV 89145.

[2]  All capitalized terms used but not immediately defined shall have the meanings ascribed to them elsewhere in these Bid Procedures, the Bid Procedures Motion, or the Bid Procedures Order, as applicable.

> **Copies of the Bid Procedures Order or other documents related thereto are available upon request to Stretto by calling 888-533-4753 or visiting the Debtors' restructuring website at https://cases.stretto.com/primetrust/.**

## Equity and/or Assets to Be Auctioned

These Bid Procedures set forth the terms by which prospective bidders, if any, may qualify for and participate in an Auction, thereby competing to make the highest or otherwise best offer or combination of offers which in the aggregate will make the highest or otherwise best offer to purchase the Debtors' Equity or some or all of the Debtors' Assets. The Debtors may consider bids from multiple bidders (including multiple bids submitted by the same bidder) in any combination for the Debtors' Equity or some or all of the Debtors' Assets.

The following is a table setting forth key dates and deadlines with respect to the Transaction process:

| Date[3] | Event |
|---|---|
| **At or prior to the Bid Procedures Hearing** | Bid Procedures Motion Objection Deadline |
| **September 8, 2023 at [●]:[●]0 [●].m.** | Bid Procedures Hearing |
| **Within three business days after entry of Bid Procedures Order** | Deadline to File Transaction Notice |
| **Within three business days after entry of Bid Procedures Order** | Deadline to File Assumption and Assignment Notice |
| **September 25, 2023** | Deadline to Submit Stalking Horse Bid |
| **September 26, 2023** | Deadline to Designate Stalking Horse Bidder(s) if Selected by Debtors, after consultation with the Committee |
| **September 29, 2023 at 4:00 p.m.** | Deadline to Object to Stalking Horse Bidder(s) Designation |
| **October 2, 2023 at 4:00 p.m.** | Cure/Assignment Objection Deadline |
| **October 5, 2023** | Deadline to Submit Qualified Bids |
| **October 10, 2023 at 10:00 a.m.** | Auction (as necessary) |
| **Promptly after Auction** | Deadline to File Notice of Successful Bidder(s) and Backup Bidder(s) |
| **October 12, 2023 at 4:00 p.m.** | Adequate Assurance Objection Deadline |
| | If a Sale Transaction, Deadline to Object to Transaction(s) |
| **October 13, 2023** | If a Sale Transaction, Sale Hearing |
| **TBD** | If an Equity Transaction, the Deadline to Object to Plan Confirmation |
| **TBD** | If an Equity Transaction, the Confirmation Hearing |

---

[3]    All times are prevailing Eastern time.

I.    **Potential Bidder Requirements**.

To participate in the bidding process or otherwise be considered for any purpose hereunder, a person or entity interested in a Transaction (a "Potential Bidder") must deliver or have previously delivered to the Debtors the following documents (collectively, the "Preliminary Bid Documents"):

a.    an executed confidentiality and non-disclosure agreement (a "Confidentiality Agreement") in form and substance acceptable to the Debtors;

b.    a non-binding written indication of interest specifying, among other things, the type of proposed Transaction, if a Sale Transaction, the identity of the Assets to be acquired, the amount and type of consideration to be offered in connection with a proposed Transaction, and any other material terms to be included in a bid by such party;

c.    preliminary proof by the Potential Bidder of its financial wherewithal to close the proposed Transaction (which may include current audited or verified financial statements of, or verified financial commitments ("Financial Statements") obtained by, the Potential Bidder (or, if the Potential Bidder is an entity formed for the purpose of acquiring the property to be sold, the party that will bear liability for a breach) as well as an overview of any recent transactions), the adequacy of which must be reasonably acceptable to the Debtors;

d.    identity of the Potential Bidder, including its legal name, jurisdiction and form of organization, and details regarding the ownership and capital structure of the Potential Bidder, as well as the identity of any controlling persons, significant direct or indirect equity or debt investors, and/or guarantors of such entity, and any known connections the Potential Bidder has to the Debtors or their advisors, any statutory committee appointed in these cases or its advisors, or any creditor or equity security interest holder of the Debtors; and

e.    a list with the names and contact information for any financial, legal, and other advisors the Potential Bidder has engaged to assist in connection with the proposed Transaction.

The Debtors, in their discretion, may agree to waive some or all of the Potential Bidder requirements set forth above. Each Potential Bidder shall comply with all reasonable requests for information and access by the Debtors or their advisors regarding the ability of such Potential Bidder, as applicable, to consummate a proposed Transaction.

Only those Potential Bidders that have submitted acceptable Preliminary Bid Documents to the reasonable satisfaction of the Debtors and their advisors may submit a Bid.

The Debtors reserve the right to work with any Potential Bidder to cure any deficiencies in the Preliminary Bid Documents.

**II.**     **Obtaining Due Diligence Access**.

Only Potential Bidders that have submitted acceptable Preliminary Bid Documents to the reasonable satisfaction of the Debtors and their advisors shall be eligible to receive information and access to the Debtors' electronic data room and to additional non-public, non-privileged information regarding the Debtors. All information requests must be directed to the Debtors' investment banker, Galaxy Digital Partners LLC, Attn: Michael Ashe (email: michael.ashe@galaxy.com), Albert Chao (albert.chao@galaxy.com), and Alwyn Clarke (alwyn.clarke@galaxy.com). The Debtors will provide to each Potential Bidder reasonable due diligence information, as requested by such Potential Bidder in writing, as soon as reasonably practicable after such request, and the Debtors shall post substantially all written due diligence provided to any Potential Bidder to the Debtors' electronic data room. Potential Bidders will not, directly or indirectly, contact or initiate or engage in discussions in respect of matters relating to the Debtors or a potential Transaction with any customer, supplier, or contractual counterparty of the Debtors without the prior written consent of the Debtors. The due diligence period will end on the Bid Deadline (as defined herein), *provided* that the Debtors may will provide reasonable access to information reasonably requested by any Qualified Bidder (as defined below) after the Bid Deadline.

In connection with the provision of due diligence information to Potential Bidders, the Debtors shall not furnish any confidential information relating to the Debtors or a potential Transaction to any person except a Potential Bidder or such Potential Bidder's duly authorized representatives and only to the extent provided for in the Confidentiality Agreement.

The Debtors and their advisors shall coordinate all reasonable requests for additional information and due diligence access from Potential Bidders; *provided* that the Debtors may decline to provide such information to Potential Bidders who, in the Debtors' business judgment have not established, or who have raised doubt, that such Potential Bidders intend in good faith to, or have the capacity to, consummate any Transaction. For any Bidder who is a competitor or customer of the Debtors or is affiliated with any competitors or customers of the Debtors, the Debtors reserve the right to withhold or modify any diligence materials that the Debtors determine are commercially sensitive or otherwise inappropriate for disclosure to such bidder.

> **Galaxy Digital Partners LLC, Attn: Michael Ashe (email: michael.ashe@galaxy.com), Albert Chao (albert.chao@galaxy.com), and Alwyn Clarke (alwyn.clarke@galaxy.com) shall coordinate all requests for additional information and due diligence access on behalf of the**

### A.    Communications with Potential Bidders (including Qualified Bidders).

Notwithstanding anything to the contrary in these Bid Procedures, all substantive direct communications, including any diligence requests, with Potential Bidders and Qualified Bidders shall be through Galaxy Digital Partners LLC (via email shall be acceptable), Attn:

Michael Ashe (michael.ashe@galaxy.com),
Albert Chao (albert.chao@galaxy.com), and
Alwyn Clarke (alwyn.clarke@galaxy.com).

### B.    Due Diligence from Potential Bidders (including Qualified Bidders).

Each Potential Bidder (including any Qualified Bidder) shall comply with all reasonable requests for additional information and due diligence access requested by the Debtors or their advisors regarding the ability of such Potential Bidder (including any Qualified Bidder) to consummate its contemplated Transaction. Failure by a Potential Bidder (including any Qualified Bidder) to comply with such reasonable requests for additional information and due diligence access may be a basis for the Debtors to determine that such bidder is no longer a Qualified Bidder or that a bid made by such bidder is not a Qualified Bid.

### C.    No Communications Among Potential Bidders.

Potential Bidders shall not communicate between or amongst other Potential Bidders, unless the Debtors have previously authorized such communication in writing. Should any Potential Bidder attempt to communicate directly with another Potential Bidder, such Potential Bidder, as applicable shall immediately inform, in writing, the Debtors' counsel and the Debtors' investment banker. The Debtors reserve the right, in their business judgment, to disqualify any Potential Bidders that have communications between and amongst themselves without the prior written consent of the Debtors (email acceptable).

## III.    Bid Protections in the Event of a Stalking Horse Bidder.

Recognizing that a Stalking Horse Bidder will expend time, energy, and resources, and that the Stalking Horse Bidder (if any) provides a floor bid with respect to the Equity or Assets that it offers to purchase, pursuant to the Bid Procedures Order, the Debtors are authorized, but not required, to provide the following bid protections to the Stalking Horse Bidder (if any):

(A) an expense reimbursement on account of the actual, reasonable, documented out-of-pocket expenses of the Stalking Horse Bidder incurred in connection with the Stalking Horse Agreement in an aggregate amount not to exceed $750,000 ("Expense Reimbursement"); and

(B) a breakup fee in an amount not to exceed three percent (3%) of the cash portion of the purchase price under the Stalking Horse Agreement ("Breakup Fee," and together with the Expense Reimbursement, the "Bid Protections"), payable only from the proceeds

of an alternative Transaction. The Bid Protections shall constitute an allowed administrative expense.

Any Bid submitted on or before the Bid Deadline by a party or parties other than the Stalking Horse Bidder must be in an amount that is sufficient to pay the Bid Protections and result in additional consideration to the Debtors' estates in the amount of at least $250,000.00 (as compared to the Purchase Price offered by the Stalking Horse Bidder), after payment of the Bid Protections.

## IV. <u>Bid Requirements</u>.

To be selected to acquire the Debtors' Equity or some or all of the Debtors' Assets or to be eligible to participate in the Auction, if applicable, a Potential Bidder must deliver to the parties set forth in Section V below a written, irrevocable, and binding Bid for a Sale Transaction and/or Equity Transaction that must be determined by the Debtors in their business judgment, and after consultation with the Official Committee of Unsecured Creditors (the "<u>Committee</u>"), to satisfy each of the following conditions (collectively, the "<u>Bid Requirements</u>"):

a.  **Purpose**: Each Potential Bidder must state that the Bid includes an offer by the Acceptable Bidder to acquire the Debtors' Equity or some or all of the Debtors' Assets, and identify the Assets with reasonable specificity.

b.  **Transaction Structure and Purchase Price**. Each Bid must clearly set forth the purchase price to be paid for the Debtors' Equity or some or all of the Debtors' Assets (the "<u>Purchase Price</u>") and must indicate the source of consideration, including funding commitments, and confirm that such consideration is not subject to any contingencies. The Bid should include a detailed sources and uses schedule. Each Bid shall also provide for appropriate treatment for the claims held by the Debtors' customers.

c.  **Bid Deposit**. Each Bid must be accompanied by a cash deposit equal to ten percent (10%) of the Purchase Price of the Bid (the "<u>Good Faith Deposit</u>"), which will be held in a segregated account identified by the Debtors.

d.  **Committed Financing**. To the extent that a Bid is not accompanied by evidence of the Potential Bidder's financial wherewithal to consummate the Transaction set forth in its Bid with cash on hand, each Bid must include committed financing documented to the Debtors' satisfaction that demonstrates that the Potential Bidder has received sufficient debt and/or equity funding commitments to satisfy the Potential Bidder's Purchase Price and other obligations under its Bid. Such funding commitments or other financing must be unconditional and must not be subject to any internal approvals, syndication requirements, diligence, or credit committee approvals, and shall have covenants and conditions reasonably acceptable to the Debtors in their sole discretion.

e.      **Good Faith Offer**. Each Bid must constitute a good faith, bona fide offer to purchase the Debtors' Equity or some or all of the Debtors' Assets.

f.      **Marked Plan or Draft Purchase Agreement**. Each Bid must be accompanied by clean and duly executed transaction documents including, at a minimum, a markup of the as-filed chapter 11 plan or a draft asset purchase agreement, including the exhibits and schedules related thereto and any related material documents integral to such Bid pursuant to which the Potential Bidder proposes to effectuate the Transaction. The Debtors, in their business judgment and after consultation with the Committee, will determine whether any such amendments and modifications are materially more burdensome.

g.      **No Contingencies**. A Bid must not be conditioned on any contingency, including, among others, on obtaining any of the following (a) financing contingencies, (b) shareholder, board of directors, or other approval, and/or (c) contingencies related to the outcome or completion of a due diligence review by the Potential Bidder.

h.      **Binding and Irrevocable**. A Potential Bidder's Bid must be irrevocable unless and until the Debtors accept a higher Bid and such Potential Bidder is not selected as the Back-Up Bidder (as defined herein).

i.      **Joint Bids**. The Debtors, after consultation with the Committee, will be authorized to approve joint Bids in their discretion on a case-by-case basis.

j.      **Adequate Assurance Information**. Each Bid must be accompanied by sufficient and adequate financial and other information (the "Adequate Assurance Information") to demonstrate, to the reasonable satisfaction of the Debtors, that such Potential Bidder (a) has the financial wherewithal and ability to consummate the acquisition of the Debtors' Equity or some or all of the Debtors' Assets (the "Closing"), and (b) can provide adequate assurance of future performance in connection with the proposed Transaction. The Bid must also identify a contact person that parties may contact to obtain additional Adequate Assurance Information.

k.      **Identity & Corporate Authority**. Each Bid must fully disclose the identity of each entity that will be participating in connection with such Bid (including any equity owners or sponsors, if the purchaser is an entity formed for the purpose of consummating the acquisition of the Debtors' Equity or some or all of the Debtors' Assets), and the complete terms of any such participation, along with sufficient evidence that the Potential Bidder is legally empowered, by power of attorney or otherwise, to complete the transactions on the terms contemplated by the parties. A Bid must also fully disclose any connections or agreements with the Debtors, any known, potential, prospective bidder or Qualified Bidder (as defined herein), or any officer, director, or equity security holder of the Debtors.

l.    **Authorization**. Each Bid must contain evidence that the Potential Bidder has obtained authorization or approval from its board of directors (or a comparable governing body reasonably acceptable to the Debtors) with respect to the submission of its Bid and the consummation of the transactions contemplated in such Bid.

m.   **No Fees**. Each Potential Bidder presenting a Bid or Bids will bear its own costs and expenses (including legal fees) in connection with the proposed transaction, and by submitting its Bid is agreeing to refrain from and waive any assertion or request for reimbursement on any basis, including under Bankruptcy Code section 503(b); *provided* that the Debtors are authorized in their discretion to provide the Bid Protections to one or more Stalking Horse Bidders in accordance with these Bid Procedures.

n.    **Adherence to Bid Procedures**. By submitting its Bid, each Potential Bidder is agreeing to abide by and honor the terms of these Bid Procedures and agrees not to submit a Bid or seek to reopen the Auction after conclusion of the Auction.

o.    **Regulatory Approvals and Covenants**. A Bid must set forth each regulatory and third-party approval required for the Potential Bidder to consummate the applicable Transaction, if any, and the time period within which the Potential Bidder expects to receive such regulatory and third-party approvals (and in the case that receipt of any such regulatory or third-party approval is expected to take more than thirty days following execution and delivery of the Plan term sheet and/or asset purchase agreement, those actions the Potential Bidder will take to ensure receipt of such approvals as promptly as possible).

p.    **As-Is, Where-Is**. Each Bid must include a written acknowledgement and representation that the Potential Bidder (a) has had an opportunity to conduct any and all due diligence regarding the Debtors' Equity or some or all of the Debtors' Assets prior to making its offer, (b) has relied solely upon its own independent review, investigation, and/or inspection of any documents and/or the Debtors' Equity or some or all of the Debtors' Assets in making its Bid, and (c) did not rely upon any written or oral statements, representations, promises, warranties, or guaranties whatsoever, whether express, implied by operation of law, or otherwise, regarding the Debtors' Equity or some or all of the Debtors' Assets or the completeness of any information provided in connection therewith or the Auction, except as expressly stated in, if a Sale Transaction, the Potential Bidder's proposed purchase agreement or, if an Equity Transaction, in the Potential Bidder's markup of the chapter 11 plan.

q.    **Time Frame for Closing**. A Bid by a Potential Bidder must be reasonably likely (based on antitrust or other regulatory issues, experience, and other considerations) to be consummated, if selected as the Successful Bid (as defined herein), within a time frame acceptable to the Debtors after consultation with the Committee.

r.       **Consent to Jurisdiction**. The Potential Bidder must submit to the jurisdiction of the Bankruptcy Court and waive any right to a jury trial in connection with any disputes relating to the Debtors' qualification of Bids, the Auction, the construction and enforcement of these Bid Procedures, the Plan, the Transaction documents, and the Closing, as applicable.

Only Bids fulfilling all of the preceding requirements contained in this section may, at the Debtors' discretion, be deemed to be "Qualified Bids," and only those parties submitting Qualified Bids may, at the Debtors' discretion, be deemed to be "Qualified Bidders."

No later than two (2) business days following the Bid Deadline, the Debtors, after consultation with the Committee, shall determine which Potential Bidders are Qualified Bidders and will notify the Potential Bidders whether Bids submitted constitute Qualified Bids, which will enable such Qualified Bidders to participate in the Auction (if held). Any Bid that is not deemed a Qualified Bid shall not be considered by the Debtors; *provided*, *however*, that if the Debtors receive a Bid prior to the Bid Deadline that does not satisfy the requirements of a Qualified Bid, the Debtors may provide the Potential Bidder with the opportunity to remedy any deficiencies prior to the Auction. The Debtors may accept a single Qualified Bid or multiple Bids for non-overlapping material portions of the Debtors' Equity or some or all of the Debtors' Assets such that, if taken together in the aggregate, would otherwise meet the standards for a single Qualified Bid (in which event those multiple bidders will be treated as a single Qualified Bidder for purposes of selecting the Successful Bidder; *provided* that the Debtors also reserve the right to conduct more than one Transaction process or Auction with respect to non-overlapping material portions of the Debtors' Equity or some or all of the Debtors' Assets).

## V.      Bid Deadline.

Binding Bids must be received (via email shall be acceptable) by (a) proposed counsel to the Debtors, McDermott Will & Emery LLP (i) 1000 North West Street, Suite 1400, Wilmington, Delaware 19801 (Attn: Maris J. Kandestin (mkandestin@mwe.com)), (ii) One Vanderbilt Avenue, New York, New York 10017-3852 (Attn: Darren Azman (dazman@mwe.com)) and (iii) 333 SE 2nd Avenue, Suite 5400, Miami, Florida 33131 (Attn: Gregg Steinman (gsteinman@mwe.com)); (b) the Debtors' investment banker, Galaxy Digital Partners LLC, Attn: Michael Ashe (email: michael.ashe@galaxy.com), Albert Chao (albert.chao@galaxy.com), and Alwyn Clarke (alwyn.clarke@galaxy.com); and (c) the United States Trustee for the District of Delaware, 844 King Street, Suite 2207, Lockbox 35, Wilmington, Delaware 19801 (Attn: Joseph Cudia (joseph.cudia@usdoj.gov)); in each case so as to be **actually received** no later than **5:00 p.m. (prevailing Eastern Time) on October 5, 2023** (the "Bid Deadline").

## VI.      Evaluation of Qualified Bids.

Prior to the Auction (if held), the Debtors and their advisors will evaluate Qualified Bids and identify the Qualified Bid(s) that is, in the Debtors' business judgment, and after

consultation with the Committee, the highest or otherwise best Bid, which Bid may be the Stalking Horse Bid (the "Starting Bid"). If applicable, the Starting Bid shall include the amount provided for in the Stalking Horse Agreement, if any, *plus* the amount of the Bid Protections, *plus* $250,000.00. In addition, prior to the selection of the Successful Bidder, the Debtors may, in the Debtors' business judgment, engage in negotiations with bidders with respect to their Bids. For the avoidance of doubt, the Debtors may select more than one Qualified Bid to collectively serve as the Starting Bid in an Auction (if held) if each such Qualified Bid contemplates the purchase of different Assets and/or the Equity. In conducting the evaluation of the Qualified Bids, the Debtors will take into consideration the following non-exclusive factors:

a.  the amount of the Purchase Price of the Qualified Bid;

b.  the value to be provided to the Debtors under the Bid, including the net economic effect upon the Debtors' estates, taking into account the Bid Protections;

c.  the chapter 11 plan markup or draft asset purchase agreement delivered in connection with such Qualified Bid and the comparative favorability of the terms set forth in such proposed chapter 11 plan markup or draft asset purchase agreement;

d.  the assets and liabilities excluded from the Qualified Bid and any executory contracts or leases or other liabilities proposed to be assumed;

e.  any benefit to the Debtors' bankruptcy estates from any assumption of liabilities or waiver of liabilities;

f.  the certainty of a Qualified Bid leading to a confirmed Plan;

g.  the transaction structure and execution risk, including conditions to, timing of, and certainty of closing; termination provisions; availability of financing and financial wherewithal to meet all commitments; and required governmental or other approvals; and

h.  any other factors the Debtors may reasonably deem relevant in the exercise of their fiduciary duties.

Promptly after determination of the Starting Bid and prior to the Auction, the Debtors will distribute a copy of the Starting Bid to the Committee and each Qualified Bidder who has submitted a Qualified Bid with respect to the such Equity or Assets.

If any Bid is determined by the Debtors not to be a Qualified Bid, the Debtors will refund such Qualified Bidder's Good Faith Deposit within five (5) business days after the Bid Deadline.

## VII.    No Qualified Bids.

If no Qualified Bids other than the Stalking Horse Bid(s), if any, are received by the Bid Deadline, then the Debtors may cancel the Auction, and may decide, in the Debtors' business judgment, to designate the Stalking Horse Bid as the Successful Bid, and pursue entry of an order approving a Sale Transaction or Equity Transaction to the Stalking Horse Bidder pursuant to the Stalking Horse Agreement. The Debtors shall file notice of any cancellation of the Auction and designation of the Stalking Horse Agreement as the Successful Bid with the Court, within two business days of the determination of such election by the Debtors.

## VIII.    Auction.

If one or more Qualified Bids are received by the Bid Deadline with respect to any applicable non-overlapping Assets or Equity, then the Debtors shall conduct the Auction with respect to such Equity and/or Assets. The Auction will be held on **October 10, 2023**, at **10:00 a.m. (prevailing Eastern Time)**, at the office of McDermott Will & Emery LLP, One Vanderbilt Avenue, New York, New York 10017-3852, or at such later time or other place as the Debtors determine in which case the Debtors shall timely notify all Qualified Bidders of such later time or other place, by announcing the change on the record at the Auction, or if the Auction has not yet commenced, by filing a notice on the docket of these Chapter 11 Cases.[4]

The Auction will be conducted in accordance with the following procedures (the "Auction Procedures"):

a.    except as otherwise provided herein, the Auction will be conducted openly;

b.    only Qualified Bidders, including the Stalking Horse Bidder (if any), shall be entitled to bid at the Auction;

c.    the Qualified Bidders, including the Stalking Horse Bidder (if any), shall appear at the Auction through duly authorized representatives at the Auction;

d.    only the following parties shall be permitted to attend the Auction: authorized representatives of each of the Qualified Bidders (including the Stalking Horse Bidder), the Debtors, the Committee, creditors, and their respective advisors; *provided, however* that creditors attending the Auction shall notify counsel for the Debtors of their intention to attend the Auction by emailing counsel within five business days prior to the Auction;

e.    bidding at the Auction will begin at the applicable Starting Bid;

f.    Bids at the Auction, including any Bids by the Stalking Horse Bidder, must be made in minimum increments of $250,000.00 or such amount as the Debtors

---

[4]    If the Debtors decide to hold a live, in-person Auction, subject to the Debtors' discretion, Qualified Bidders may still have the ability to submit Bids remotely.

determine and announce at or prior to the Auction of additional value (including after payment of the Bid Protections to the Stalking Horse Bidder);

g.      each Qualified Bidder will be permitted a reasonable time to respond to previous bids at the Auction, as determined by the Debtors;

h.      the bidding will be transcribed or recorded to ensure an accurate recording of the bidding at the Auction;

i.      no Qualified Bidders (or their respective representatives) may communicate with one another, collude, or otherwise coordinate for purposes of participating in the Auction, and each Qualified Bidder will be required to confirm on the record of the Auction that (i) it has not engaged in any collusion, coordination, or unfair competitive practices with respect to the bidding or the Transaction and (ii) its Bid represents an irrevocable, binding, good faith, and bona fide offer to purchase the Debtors' Equity or some or all of the Debtors' Assets identified in such Bid if such Bid is selected as the Successful Bid; *provided*, *however*, that two or more Qualified Bidders may coordinate to the extent they wish to provide a combined bid if the Debtors approve such coordination in their discretion;

j.      the Auction will not close unless and until all Qualified Bidders have been given a reasonable opportunity to submit an overbid at the Auction to the then-prevailing highest bid, subject to the Debtors' right to require last and final bids to be submitted on a "blind" basis;

k.      the Debtors reserve the right, in their business judgment, to adjourn the Auction one or more times to, among other things, (i) facilitate discussions between the Debtors and Qualified Bidders, (ii) allow Qualified Bidders to consider how they wish to proceed, and (iii) provide Qualified Bidders the opportunity to provide the Debtors with such additional evidence as the Debtors, in their business judgment, may require that the Qualified Bidder has sufficient internal resources or has received sufficient non-contingent debt and/or equity funding commitments to consummate the proposed transaction at the prevailing amount; and

l.      the Auction will be governed by such other Auction Procedures as may be announced by the Debtors and their advisors from time to time on the record at the Auction; *provided* that such other Auction Procedures are (i) not inconsistent with the Bid Procedures Order, the Bankruptcy Code, or any other order of the Court, (ii) disclosed orally or in writing to all Qualified Bidders, and (iii) determined by the Debtors to further the goal of attaining the highest or otherwise best offer for the Equity or applicable Assets.

For the avoidance of doubt, nothing in the Auction Procedures (if an Auction is held) will prevent the Debtors from exercising their respective fiduciary duties under applicable law (as reasonably determined in good faith by the Debtors).

IX.    <u>**Acceptance of the Successful Bid**</u>.

The Auction shall continue until only one Qualified Bid is the highest or otherwise best bid to purchase the Debtors' Equity or some or all of the Debtors' Assets in the Debtors' business judgment and in a manner consistent with the exercise of their fiduciary duties and outlined below in further detail, after consultation with the Committee (a "<u>Successful Bid</u>"), and that further bidding is unlikely to result in a different Successful Bid or Successful Bids that would be acceptable to the Debtors, after consultation with the Committee, at which point, the Auction will be closed. When determining the highest or otherwise best Qualified Bid, as compared to other Qualified Bids, the Debtors may consider the following factors in addition to any other factors that the Debtors deem appropriate: (a) the amount and nature of the total consideration; (b) the likelihood of the Qualified Bidder's ability to close a Transaction and the timing thereof; (c) the net economic effect of any changes to the value to be received by each of the Debtors' estates from the Transaction contemplated by the Bid Documents; (d) the tax consequences of such Qualified Bid; and (e) the certainty of the Debtors being able to confirm a chapter 11 plan.

For the avoidance of doubt, the Debtors may select more than one Qualified Bid to collectively serve as a Successful Bid if each such Qualified Bid contemplates the purchase of different Equity or Assets. The Qualified Bidder or Qualified Bidders having submitted the Successful Bid or Successful Bids will be deemed the "<u>Successful Bidder</u>" or "<u>Successful Bidders</u>," with respect to the Equity or applicable Assets. The Debtors shall promptly file notice of the Successful Bid(s) and the Successful Bidder(s) with the Court.

X.    <u>**Designation of Backup Bidder**</u>.

The Qualified Bidder or Qualified Bidders with the second highest or otherwise best bid(s) or combination(s) of bids (each, a "<u>Backup Bid</u>") to purchase the Debtors' Equity or some or all of the Debtors' Assets (each, a "<u>Backup Bidder</u>") will be determined by the Debtors, after consultation with the Committee, at the conclusion of the Auction and will be announced at that time to all the Qualified Bidders participating in the Auction. Each Backup Bidder shall be required to keep its Qualified Bid open and irrevocable until the earlier of (i) the closing of the transaction with the applicable Successful Bidder; and (ii) December 31, 2023. The Backup Bidder's Good Faith Deposit (if any) shall be held in escrow until the closing of the transaction with the applicable Successful Bidder. If for any reason a Successful Bidder fails to consummate the purchase of such Equity or Assets within the time permitted after the entry of the Sale Order or the Confirmation Order (as applicable), then the Backup Bidder will automatically be deemed to have submitted the Successful Bid for such Equity or Assets, and the Backup Bidder shall be deemed a Successful Bidder for such Equity or Assets and shall be required to consummate the Transaction with the Debtors as soon as is commercially practicable without further order of the Court; *provided* that the Debtors shall file a notice with the Court.

## XI.    <u>Approval of Transaction</u>.

The Debtors will present the results of the Auction or, if no Auction, will present the Successful Bidder to the Court for approval at the Sale Hearing or Confirmation Hearing (each as defined below), at which certain findings will be sought from the Court regarding the Auction, including, among other things, that: (a) the Auction was conducted, and the Successful Bidder or Successful Bidders were selected, in accordance with the Bid Procedures; (b) the Auction was fair in substance and procedure; (c) the Successful Bid or Successful Bids were Qualified Bids as defined in the Bid Procedures; and (d) consummation of any Transaction(s) as contemplated by the Successful Bid(s) in the Auction will provide the highest or otherwise best offer for the Debtors' Equity or some or all of the Debtors' Assets and is in the best interests of the Debtors and their estates.

## XII.    <u>Sale Hearing.</u>

In the event a Sale Transaction is consummated pursuant to Bankruptcy Code section 363, a hearing before the Bankruptcy Court to consider approval of the Successful Bid or Successful Bids (the "<u>Sale Hearing</u>"), pursuant to which the Debtors and the Successful Bidder or Successful Bidders will consummate the Sale Transaction, will be held on October 13, at [●]:00 a.m., prevailing Eastern Time, before the Honorable J. Kate Stickles, United States Bankruptcy Judge for the Bankruptcy Court for the District of Delaware at 824 N. Market Street, 5th Floor, Courtroom 6, Wilmington, DE 19801.

**The Sale Hearing may be continued to a later date by the Debtors by sending notice prior to, or making an announcement at, the Sale Hearing. No further notice of any such continuance will be required to be provided to any party.**

At the Sale Hearing, the Debtors will present the Successful Bid or Successful Bids to the Bankruptcy Court for approval.

## XIII.    <u>Confirmation Hearing</u>

In the event an Equity Transaction is consummated through a Plan, a hearing before the Bankruptcy Court to consider confirmation of the Plan (the "<u>Confirmation Hearing</u>") will be held at a later date, before the Honorable J. Kate Stickles, United States Bankruptcy Judge for the Bankruptcy Court for the District of Delaware at 824 N. Market Street, 5th Floor, Courtroom 6, Wilmington, DE 19801, and otherwise in accordance with any scheduling orders entered by the Bankruptcy Court relating to confirmation of the Plan.

**The Confirmation Hearing may be continued to a later date by the Debtors by sending notice prior to, or making an announcement at, the Confirmation Hearing. No further notice of any such continuance will be required to be provided to any party.**

At the Confirmation Hearing, the Debtors will present the Plan, which will incorporate the terms of the Successful Bid or Successful Bids, to the Bankruptcy Court for confirmation.

XIV.    **Return of Good Faith Deposit.**

The Good Faith Deposit of a Successful Bidder shall, upon consummation of any Transaction, be credited to the purchase price paid for the Equity or the applicable Assets. If a Successful Bidder fails to consummate the Transaction, then the Good Faith Deposit (if any) shall be forfeited to, and retained irrevocably by, the Debtors, and the Debtors specifically reserve the right to seek all available damages from the defaulting Successful Bidder.

The Good Faith Deposit of any Qualified Bidders that are not Successful Bidders or Backup Bidders will be returned within five (5) business days after the Auction or upon the permanent withdrawal of the applicable proposed Transaction, and the Good Faith Deposit of any Backup Bidders will be returned within five (5) business days after the consummation of the applicable Transaction or upon the permanent withdrawal of the applicable proposed Transaction.

Each Good Faith Deposit shall be held in interest free escrow and at no time shall be deemed property of the Debtors' estates absent further order of the Court, except as otherwise provided herein.

XV.    **Reservation of Rights**.

The Debtors reserve their rights to modify these Bid Procedures in their business judgment in a manner consistent with the exercise of their fiduciary duties, and in any manner that will best promote the goals of the bidding process, or impose, at or before the Auction (if held), additional customary terms and conditions on the Transaction, including, without limitation: (a) extending the deadlines set forth in these Bid Procedures; (b) adjourning the Auction; (c) modifying the Auction Procedures or adding procedural rules that are reasonably necessary or advisable under the circumstances for conducting the Auction; (d) canceling the Auction; (e) rejecting any or all Bids or Qualified Bids; and (f) adjusting the applicable minimum overbid increment, including by requesting that Qualified Bidders submit last or final bids on a "blind" basis. For the avoidance of doubt, the Debtors reserve the right at any point prior to the selection of the Successful Bidder to terminate the Transaction processes contemplated hereunder with respect to the Debtors' Equity or some or all of the Debtors' Assets and seek to sell the Assets pursuant to Bankruptcy Code section 363(b).

XVI.    **Consent to Jurisdiction.**

All Qualified Bidders at the Auction shall be deemed to have consented to the core jurisdiction of the Court and waived any right to a jury trial in connection with any disputes relating to any Transaction, the Auction, and the construction and enforcement of these Bid Procedures, any written indications of interest, any Preliminary Bid Documents, or any Bid documents, as applicable, and consented to the entry of a final order or judgment in any way related to these Bid Procedures, the bid process, the Auction, the Sale Hearing, the Confirmation Hearing, or the construction and enforcement of any agreement or any other document relating to a Transaction if it is determined that the Court would lack Article III jurisdiction to enter such a final order or judgment absent the consent of the parties.

Any parties raising a dispute relating to these Bid Procedures must request that such dispute be heard by the Court on an expedited basis.

**XVII. <u>Fiduciary Out</u>.**

Notwithstanding anything to the contrary in these Bid Procedures, nothing in these Bid Procedures or the Bid Procedures Order shall require a Debtor or the Debtors' Special Restructuring Committee (the "<u>Special Committee</u>"), or similar governing body of a Debtor, after consulting with counsel, to take any action or to refrain from taking any action related to any Transaction to the extent taking or failing to take such action would be inconsistent with applicable law or its fiduciary obligations under applicable law; *provided*, *however*, that the foregoing does not constitute a finding by the Court or any other court of competent jurisdiction that the Debtors' or the Special Committee have complied with their fiduciary duties by taking, or refraining from, any such action.

Further, notwithstanding anything to the contrary in these Bid Procedures, through the date of the Auction (if held), nothing in these Bid Procedures or the Bid Procedures Order shall diminish the right of the Debtors, the Special Committee, and their respective directors, officers, employees, investment bankers, attorneys, accountants, consultants, and other advisors or representatives to: (a) consider, respond to, and facilitate alternate Transactions (each an "<u>Alternate Proposal</u>"); (b) provide access to non-public information concerning the Debtors to any entity or enter into confidentiality agreements or nondisclosure agreements with any entity; (c) maintain or continue discussions or negotiations with respect to Alternate Proposals; (d) otherwise cooperate with, assist, participate in, or facilitate any inquiries, proposals, discussions, or negotiation of Alternate Proposals; and (e) enter into or continue discussions or negotiations with holders of claims against or equity interests in a Debtor or any other party in interest in these Chapter 11 Cases (including the U.S. Trustee), or any other entity regarding Alternate Proposals.