## EXHIBIT A

### Revised Proposed Order

## IN THE UNITED STATES BANKRUPTCY COURT
## FOR THE DISTRICT OF DELAWARE

| | |
|---|---|
| In re: | Chapter 11 |
| Prime Core Technologies Inc., *et al.*,[1] | Case No. 23-11161 (JKS) |
| Debtors. | (Jointly Administered) |
| | **Re: Docket Nos. 55, 57, 76, 98** |

**ORDER (I) APPROVING BIDDING PROCEDURES FOR THE SALE OF ALL OR SUBSTANTIALLY ALL OF DEBTORS' ASSETS, (II) AUTHORIZING THE DEBTORS TO ENTER INTO ONE OR MORE STALKING HORSE AGREEMENTS, (III) SCHEDULING AN AUCTION AND RELATED DATES THERETO, (IV) APPROVING THE FORM AND MANNER OF NOTICE THEREOF, (V) APPROVING CONTRACT ASSUMPTION AND ASSIGNMENT PROCEDURES, AND (VI) GRANTING RELATED RELIEF**

Upon the motion (the "Motion")[2] of the above-captioned debtors and debtors in possession (collectively, the "Debtors") for entry of an order (this "Order"), (i) approving the Bid Procedures substantially in the form attached to this Order as **Exhibit 1** (the "Bid Procedures"), (ii) authorizing the Debtors in their discretion to select one or more bidders to act as Stalking Horse Bidders and enter into Stalking Horse Agreements, (iii) scheduling the Auction and related bid deadlines, (iv) approving the Transaction Notice substantially in the form attached to this Order as **Exhibit 2**, (v) approving the Assumption and Assignment Procedures, including the form and manner of Cure Notice attached to this Order as **Exhibit 3**, and (vi) granting related relief, all as more fully set forth in the Motion; upon consideration of the *Declaration of Albert*

---

[1]  The debtors in these chapter 11 cases, along with the last four digits of each debtor's federal tax identification number are:  Prime Core Technologies Inc. (5317); Prime Trust, LLC (6823); Prime IRA LLC (8436); and Prime Digital, LLC (4528). The Debtors' service address is 10845 Griffith Peak Dr.,#03-153, Las Vegas, NV 89135.

[2]  Capitalized terms used but not otherwise defined herein have the meanings ascribed to them in the Motion or the Bid Procedures, as applicable.

*Chao in Support of Debtors' Motion for Entry of (A) an Order (I) Approving Bidding Procedures for the Sale of All of the Debtors' Equity or All or Substantially All of Debtors' Assets, (II) Authorizing the Debtors to Enter Into One or More Stalking Horse Agreements, (III) Scheduling an Auction and Related Dates Thereto, (IV) Approving the Form and Manner of Notice Thereof, (V) Approving Contract Assumption and Assignment Procedures, and (VI) Granting Related Relief; (B) an Order Authorizing and Approving (I) Sale Free and Clear of All Liens, Claims, Encumbrances, and Other Interests, (II) Assumption and Assignment of Certain Contracts and Leases, and (III) Granting Related Relief* [Docket No. 98]; and the Court having reviewed the evidence in support of the Motion; and the Court having reviewed the Motion and having heard the statements in support of the relief requested therein at a hearing before the Court (the "Hearing"); and the Court having determined that the legal and factual bases set forth in the Motion and at the Hearing establish just cause for the relief granted herein; and any objections to the Motion having been withdrawn with prejudice or overruled on the merits at the Hearing; and upon all of the proceedings had before the Court; and after due deliberation and sufficient cause appearing therefor,

**THE COURT FINDS**:[3]

A.      Jurisdiction and Venue. The Court has jurisdiction to consider the Motion and the relief requested therein pursuant to 28 U.S.C. § 1334, and venue is proper before this Court pursuant to 28 U.S.C. §§ 1408 and 1409. This is a core proceeding pursuant to 28 U.S.C. § 157(b).

B.      Bases for Relief. The bases for the relief requested in the Motion are Bankruptcy

---

[3]     The findings of fact and conclusions of law herein constitute the Court's findings of fact and conclusions of law for the purposes of Bankruptcy Rule 7052 made applicable pursuant to Bankruptcy Rule 9014. To the extent any findings of facts are conclusions of law, they are adopted as such.

Code sections 105, 363, 365, 503, and 507 and Bankruptcy Rules 2002(a)(2), 6004, 6006, 9007, and 9014 and Local Rule 9013-1.

C.      Notice of the Bid Procedures Motion. Good and sufficient notice of the Motion, the Bid Procedures, and the relief sought in the Motion has been given under the circumstances, and no other or further notice is required except as set forth herein and in the Bid Procedures. The notice of the Motion and of the Hearing is reasonable and sufficient in light of the circumstances and nature of the relief requested in the Motion, and no other or further notice of the Motion or the Hearing is necessary. A reasonable and fair opportunity to object to the Motion and the relief granted in this Order has been afforded under the circumstances.

D.      Bid Procedures. The Debtors have articulated good and sufficient reasons for authorizing and approving the Bid Procedures, which are fair, reasonable, and appropriate under the circumstances and designed to maximize value for the benefit of the Debtors' estates, their creditors, and other parties in interest. The Debtors, with the assistance of their advisors, are engaged in a fulsome marketing and transaction process to solicit and develop the highest or otherwise best offer for the Debtors' Equity or some or all of the Debtors' Assets. The Bid Procedures are designed to build on that marketing and transaction process following entry of this Order.

E.      Assumption and Assignment Procedures. The Cure Notice is reasonably calculated to provide counterparties to the Assumed Contracts to be assumed, assumed and assigned, or transferred with proper notice of the intended assumption, assumption and assignment, or transfer of their Assumed Contracts, any cure amounts, and the Assumption and Assignment Procedures, and no other or further notice of such intention, the cure amounts, or the Assumption and Assignment Procedures shall be required.

3

F.      Transaction Notice. The Transaction Notice is reasonably calculated to provide all interested parties with timely and proper notice of the Auction, including the date, time, and place of the Auction (if one is held) and the Bid Procedures and certain dates and deadlines related thereto, and no other or further notice of the Auction shall be required.

**NOW, THEREFORE, IT IS ORDERED, ADJUDGED AND DECREED**:

1.      All objections, statements, and reservations of rights to the relief granted herein that have not been withdrawn with prejudice, waived, or settled are overruled and denied on the merits with prejudice.

**I.      Approved Process Timeline.**

2.      The following dates and deadlines regarding the Transaction are hereby established, subject to the right of the Debtors, to modify the following dates provided notice is given in accordance with the terms of this Order:

| Date[4] | Event |
|---|---|
| **At or prior to the Bid Procedures Hearing** | Bid Procedures Motion Objection Deadline |
| **September 13, 2023 at 3:00 p.m..** | Bid Procedures Hearing |
| **Within three business days after entry of Bid Procedures Order** | Deadline to File Transaction Notice |
| **Within three business days after entry of Bid Procedures Order** | Deadline to File Assumption and Assignment Notice |
| **September 25, 2023** | Deadline to Submit Stalking Horse Bid |
| **September 26, 2023** | Deadline to Designate Stalking Horse Bidder(s) if Selected by Debtors, after consultation with the Committee |
| **October 2, 2023 at 4:00 p.m.** | Cure/Assignment Objection Deadline |

---

[4]      All times are prevailing Eastern time. The Debtors may adjust these dates (the "Schedule") in the exercise of their business judgment; *provided, however*, that the Debtors will provide the Committee with as much advance notice of the Debtors' intention to adjust the Schedule as is reasonably practicable under the particular facts and circumstances. Notwithstanding the foregoing, the Debtors may not extend the Confirmation Hearing beyond December 31, 2023 absent consent of the Committee (which shall not be unreasonably withheld) or an order of the Court; *provided*, that to the extent the Debtors are required to file a motion to extend the date of the Confirmation Hearing beyond December 31, 2023, the Committee will not oppose the Debtors' request for expedited consideration of same. Further, to the extent the Committee objects to the Debtors' adjustment of any of the Schedule, the Debtors will not oppose consideration on an expedited basis of any motion the Committee files in opposition to such adjustments; *provided, however*, the Debtors reserve all rights to oppose the substance of any such motion.

| October 3, 2023 at 4:00 p.m. | Deadline to Object to Stalking Horse Bidder(s) Designation |
| October 5, 2023 | Deadline to Submit Qualified Bids |
| October 10, 2023 at 10:00 a.m. | Auction (as necessary) |
| **Promptly after Auction** | Deadline to File Notice of Successful Bidder(s) and Backup Bidder(s) |
| October 13, 2023 at 4:00 p.m. | Adequate Assurance Objection Deadline |
| | If a Sale Transaction, Deadline to Object to Transaction(s) |
| October 18, 2023 at 2:00 p.m. | If a Sale Transaction, Sale Hearing |
| **TBD** | If an Equity Transaction, the Deadline to Object to Plan Confirmation |
| **TBD** | If an Equity Transaction, the Confirmation Hearing |

3.    ***Successful Bidder***.  Following the Auction (if any), the Debtors will promptly

file with the Court a notice (the "Notice of Successful Bidder") that will inform the Court of the

results of the Auction. In the event that, in accordance with the Bid Procedures, no Auction is

conducted and the Stalking Horse Bidder(s) (if any) is/are named the Successful Bidder, the

Debtors will file a notice to that effect, which will constitute the Notice of Successful Bidder.

The Notice of Successful Bidder will identify: (i) the Successful Bidder(s); (ii) the amount and

form of consideration to be paid by the Successful Bidder(s); (iii) the liabilities to be assumed

by the Successful Bidder(s); and (iv) the Potential Assumed Contracts to be assumed by the

Debtors and assigned or transferred to the Successful Bidder(s), or the Debtors' rights and

interests therein sold and transferred to the Successful Bidder(s), as the case may be, in

connection with the Transaction(s). If a Sale Transaction, the list of Assumed Contracts may be

modified at any time until the closing of the Transaction. If an Equity Transaction, the list of

Assumed Contracts may be modified as set forth in the Plan. The Notice of Successful Bidder

will also include similar information relating to the Back-Up Bidder(s) and the Back-Up Bid(s).

In addition, the Debtors will attach to the Notice of Successful Bidder: (i) if a Sale Transaction,

the Sale Order(s) approving the Sale Transaction (s) to the Successful Bidder(s) (as necessary);

(ii) a copy of the Transaction Agreement(s) entered into by the Debtors and the Successful

Bidder(s) following the Auction; and (iii) any additional information or documentation relevant to the Successful Bid(s). The Debtors will file the Notice of Successful Bidder on the docket for these Chapter 11 Cases by the earlier of (a) 5 business hours after the close of the Auction or (b) noon the day after the close of the Auction.

4.        All parties' rights are reserved regarding whether and to what extent any funds or other property are held by a Debtor in trust or constitute property of the Debtors' estates.

**II.      The Bid Procedures.**

5.        The Bid Procedures, which are incorporated by reference as though fully set forth herein, are hereby approved, and the Debtors are authorized to solicit bids and conduct an Auction, if necessary, on the terms set forth in the Bid Procedures. The Bid Procedures shall govern the submission, receipt, and analysis of all bids, and any party desiring to submit a bid on the Debtors' Equity or some or all of the Debtors' Assets must do so strictly in accordance with the terms of the Bid Procedures and this Order. The Debtors are authorized to take all actions as are reasonably necessary or appropriate to implement the Bid Procedures.

6.        Each bidder participating at an Auction (if any) shall be required to confirm that it has not engaged in any collusion with respect to the bidding or the Transaction, as set forth in the Bid Procedures, and an Auction (if any) shall be transcribed or recorded.

7.        Pursuant to the Bid Procedures, the Debtors, in consultation with the Committee as set forth therein, may (a) determine which Qualified Bid is the highest or otherwise best offer for the Equity or applicable Assets, (b) at any time prior to entry of an Order of the Court approving the applicable Successful Bid, reject any Bid (other than the Stalking Horse Agreement, if any) that the Debtors determine is (i) inadequate or insufficient, (ii) not in conformity with the requirements of the Bankruptcy Code or the Bid Procedures, or (iii)

6

contrary to the best interests of the Debtors' estates and their creditors, and (c) prior to conclusion of an Auction (if any) impose such other terms and conditions upon Qualified Bidders as the Debtors determine to be in the best interests of the Debtors' estates in the Chapter 11 Cases.

8.      If the Auction is cancelled, then the Debtors shall file a notice with the Court of such election as soon as practicable following the determination of such election by the Debtors. If a Sale Transaction, the deadline to object to the Transaction shall be **October 12, 2023, at 4:00 p.m.** (prevailing Eastern Time). If an Equity Transaction, the deadline to object to the Transaction will be the deadline to object to the Plan, which will be set at a later date.

9.      Other than any Bid Protections approved for the Stalking Horse Bidder (if any) in accordance with the procedures set forth in this Order, no person or entity shall be entitled to any expense reimbursement, breakup fees, "topping," termination, or other similar fee or payment, and by submitting a bid, such person or entity is deemed to have waived their right to request or to file with this Court any request for expense reimbursement or any fee of any nature in connection with such bid, whether by virtue of Bankruptcy Code section 503(b) or otherwise.

**III.    Approval of Procedures for Selection of Stalking Horse Bidder and Bid Protections.**

10.      The Debtors are authorized to enter into a Stalking Horse Agreement, which may offer Bid Protections, as set forth in the Bid Procedures, subject to notice and entry of an order approving the selection of the Stalking Horse Bidder as set forth herein.

11.      In the event that the Debtors designate a Stalking Horse Bidder and seek to enter into a Stalking Horse Agreement on or prior to September 26, 2023, at 4:00 p.m. (prevailing Eastern Time) (the "Stalking Horse Supplement Deadline"), the Debtors shall file a supplement

to the Motion (the "Stalking Horse Supplement") seeking approval of the same. An appropriate declaration in support of the proposed Bid Protections (the "Stalking Horse Declaration") and a proposed form of order approving the Bid Protections (the "Stalking Horse Order") shall be attached to the Stalking Horse Supplement. The Debtors shall serve the Stalking Horse Supplement by email, where available, or otherwise by first class mail, with no less than seven (7) calendar days' notice of the objection deadline (the "Stalking Horse Objection Deadline") to: (a) the U.S. Trustee; (b) the Committee; and (c) those parties who have requested notice of all pleadings filed in the Chapter 11 Cases pursuant to Bankruptcy Rule 2002 (collectively, the "Stalking Horse Notice Parties") with no further notice being required. The Stalking Horse Objection Deadline shall be October 3, 2023 at 4:00 p.m. (prevailing Eastern Time). The Stalking Horse Supplement and Stalking Horse Declaration shall set forth the reasons the Debtors believe the Bid Protections satisfy the requirements of section 503(b) of the Bankruptcy Code. For the avoidance of doubt, nothing in this Order is shifting the Debtors' burden of proof that the Bid Protections are actually necessary to preserve the value of the estates pursuant to section 503(b) of the Bankruptcy Code. If a timely objection is filed, the Debtors will schedule a hearing in consultation with the objecting parties, the Committee, and the Court; *provided, however*, any such hearing shall be held on or before October 6, 2023, subject to the Court's availability. After such notice and absent timely objection, the Debtors may submit an order to the Court under certification of counsel approving the selection of such Stalking Horse Bidder(s) and the Bid Protections. If and to the extent necessary, the Debtors shall be entitled to set an expedited hearing on any objection to the designation of the Stalking Horse Bidder promptly following the expiration of any Stalking Horse Objection Deadline, subject to the availability of the Court.  For the avoidance of doubt, no Bid Protections are approved by this Order.

**IV.     The Assumption and Assignment Procedures**

12.     The following Assumption and Assignment Procedures regarding the assumption and assignment of the Assumed Contracts proposed to be assumed by the Debtors and assigned to a Successful Bidder are approved:

(a)     **Cure Notice**. Within five business days after entry of the Bid Procedures Order, the Debtors will file the Cure Notice identifying the potential Assumed Contracts (such list, the "Cure Schedule"), and serve such notice on all Assumed Contract counterparties. The Cure Schedule attached to the Cure Notice served on each counterparty shall: (i) identify potential Assumed Contracts; (ii) identify the Debtor counterparty to such potential Assumed Contracts; (iii) list the proposed cure amounts, if any, that the Debtors believe must be paid to cure all defaults outstanding under each potential Assumed Contract (the "Cure Amounts") as of such date; (iv) include a statement that assumption and assignment of such potential Assumed Contracts is not required or guaranteed; and (v) inform such contract counterparty of the requirement to file any Cure/Assignment Objection (as defined below) by the Cure/Assignment Objection Deadline (as defined below). Service of the Cure Notice, including the Cure Schedule, upon a counterparty does not constitute an admission that a particular potential Assumed Contract is an executory contract or unexpired lease, or confirm that the Debtors are required to assume and/or assign such contract and/or lease. For the avoidance of doubt, the Debtors retain the right to add or remove Assumed Contracts from the Cure Schedule at any time prior to the closing of a Sale Transaction, or, in the case of an Equity Transaction, at any time prior to confirmation of a chapter 11 plan effectuating such Equity Transaction; *provided, further*, that to the extent that the Debtors add an Assumed Contract through a Supplemental Cure Notice, the non-Debtor counterparty to such additional Assumed Contract shall have the opportunity to object to such Supplemental Cure Notice pursuant to the procedures set forth in paragraph 11(g) below.

(b)     **Cure and Assignment Objections**. A contract counterparty with any potential Assumed Contract listed on the Cure Schedule must file any objections to a proposed Cure Amount (a "Cure Objection") and/or any other objections to the assumption and assignment or transfer of any of the potential Assumed Contract (an "Assignment Objection") by **October 2, 2023 at 4:00 p.m. (prevailing Eastern Time)** (the "Cure/Assignment Objection Deadline"). Any Cure Objection and/or Assignment Objection must: (i) be in writing; (ii) comply with the applicable provisions of the Bankruptcy Rules, the Local Rules, and any order governing the administration of these Chapter 11 Cases; (iii) state

9

with specificity the nature of the objection and, if the Cure Objection pertains to the proposed Cure Amounts, state the cure amount alleged to be owed to the objecting contract counterparty, together with any applicable and appropriate documentation in support thereof; (iv) include complete contact information for such contract counterparty (including address, telephone number, and email address); and (v) be filed with the Court and served upon the Objection Notice Parties[5] prior to the Cure/Assignment Objection Deadline; *provided* that the Debtors may modify the Cure/Assignment Objection Deadline with respect to any Contract Counterparty upon consultation with the Stalking Horse Bidder (if any) or the Successful Bidder, as applicable, by email confirmation.

(c)    **Adequate Assurance Objections.**  A contract counterparty with any potential Assumed Contract listed on the Cure Schedule must file any objections to, as applicable, the Stalking Horse Bidder's or Successful Bidder's proposed form of adequate assurance of future performance (an "Adequate Assurance Objection" and, together with Cure Objections and Assignment Objections, "Contract Objections") no later than **October 12, 2023 at 4:00 p.m. (prevailing Eastern Time)**.

(d)    **Effects of Filing a Cure Objection**. A properly filed Contract Objection will reserve such objecting party's rights against the Debtors only with respect to the assumption and assignment or transfer of the potential Assumed Contract at issue, and/or objection to the accompanying Cure Amounts, as set forth in the Contract Objection, but will not constitute an objection to the remaining relief requested in the Motion.

(e)    **Dispute Resolution**. Any Contract Objection that remains unresolved after the Sale Hearing shall be heard at such later date as may be agreed upon by the parties or fixed by the Court. To the extent that any Contract Objection cannot be resolved by the parties, any potential Assumed Contract subject to such Contract Objection shall be assumed and assigned or transferred only upon satisfactory resolution of the Contract Objection, to be determined in the Successful Bidder's reasonable discretion. To the extent a Contract Objection remains unresolved, the potential Assumed Contract may be conditionally assumed and assigned, subject to the consent of the Successful Bidder, pending a resolution of the Contract Objection after notice and a hearing. If a Contract Objection is not satisfactorily resolved, the Successful Bidder may determine that such Contract should not be an Assumed Contract, in which case the Successful Bidder will not be responsible for any Cure Amounts in respect of such contract. Notwithstanding the foregoing, if a Contract Objection is solely a Cure Objection (any such objection, a "Cure

---

[5] The Objection Notice Parties are (i) the United States Trustee for the District of Delaware; (ii) counsel to the Committee; (iii) counsel to any Stalking Horse Bidder (if any); and (iv) persons who have filed a request for notice pursuant to Bankruptcy Rule 2002.

Dispute"), the applicable potential Assumed Contract may be assumed by the Debtors and assigned to the Successful Bidder, *provided* that the cure amount the contract counterparty asserts is required to be paid under Bankruptcy Code section 365(b)(1)(A) and (B) (or such lower amount as agreed to by the contract counterparty) is deposited in a segregated account by the Debtors pending the Court's adjudication of the Cure Dispute or the parties' consensual resolution of the Cure Dispute.

(f)     **Supplemental Cure Notice**. If the Debtors discover potential Assumed Contract inadvertently omitted from the Cure Notice or the Successful Bidder identifies other potential Assumed Contract that it desires to assume or assume and assign in connection with the Transaction, the Debtors may, after consultation with the Successful Bidder, at any time before the closing of the Transaction (if a Sale Transaction) or as set forth in the Plan (if an Equity Transaction), supplement the Cure Notice with previously omitted potential Assumed Contracts or modify a previously filed Cure Notice, including by modifying the previously stated Cure Amounts associated with any potential Assumed Contract (the "Supplemental Cure Notice").

(g)     **Objection to the Supplemental Cure Notice**. Any contract counterparty listed on a Supplemental Cure Notice may file an objection (a "Supplemental Cure/Assignment Objection") only if such objection is to the proposed assumption or assumption and assignment or transfer of the applicable potential Assumed Contract or the proposed Cure Amounts, if any. All Supplemental Cure/Assignment Objections must: (i) be in writing; (ii) comply with the applicable provisions of the Bankruptcy Rules, the Local Rules, and any order governing the administration of these Chapter 11 Cases; (iii) state with specificity the nature of the objection and, if the Supplemental Cure/Assignment Objection pertains to the proposed Cure Amounts, state the cure amount alleged to be owed to the objecting contract counterparty, together with any applicable and appropriate documentation in support thereof; (iv) include complete contact information for such contract counterparty (including address, telephone number, and email address); and (v) be filed no later than 5:00 p.m. (prevailing Eastern Time) on the date that is the later of (x) seven days following the date of service of such Supplemental Cure Notice and (y) the Cure/Assignment Objection Deadline (the "Supplemental Cure/Assignment Objection Deadline"); *provided* that the Debtors may modify the Supplemental Cure/Assignment Objection Deadline with respect to any contract counterparty upon consultation with the Stalking Horse Bidder or the Successful Bidder, as applicable, by email confirmation.

(h)     **Dispute Resolution of Supplemental Cure Objection**. If a contract counterparty files a Supplemental Cure/Assignment Objection in a manner that is consistent with the requirements set forth above, and the

parties are unable to consensually resolve the dispute, the Debtors shall seek an expedited hearing before the Court to determine the Cure Amounts, if any, and approve the assumption or transfer of the relevant potential Assumed Contracts. If there is no such objection, then the Sale Order shall constitute an order of the Court fixing the Cure Amounts and approving the assumption and assignment or transfer of any potential Assumed Contracts listed on a Supplemental Cure Notice, subject to such potential Assumed Contract's designation as an Assumed Contract. Notwithstanding the foregoing, if a Supplemental Cure/Assignment Objection relates solely to a Cure Dispute, the applicable potential Assumed Contracts may be assumed by the Debtors and assigned to the Successful Bidder, *provided* that the cure amount the contract counterparty asserts is required to be paid under Bankruptcy Code section 365(b)(1)(A) and (B) (or such lower amount as agreed to by the Contract Counterparty) is deposited in a segregated account by the Debtors pending the Court's adjudication of the Cure Dispute or the parties' consensual resolution of the Cure Dispute.

(i)     **No Cure Objections**. If there are no Contract Objections or Supplemental Cure/Assignment Objections, or if a contract counterparty does not file and serve a Contract Objection or a Supplemental Cure/Assignment Objection in a manner that is consistent with the requirements set forth above, and absent a subsequent order of the Court establishing an alternative Cure Amount, (i) the Cure Amounts, if any, set forth in the Cure Notice (or Supplemental Cure Notice) shall be controlling, notwithstanding anything to the contrary in any potential Assumed Contract or any other document, and (ii) the contract counterparty will be deemed to have consented to the assumption, assumption and assignment, or transfer of the potential Assumed Contract and the Cure Amounts, if any, and will be forever barred from objecting to the assumption, assumption and assignment, or transfer of such potential Assumed Contract and rights thereunder, including the Cure Amounts, if any, and from asserting any other claims related to such potential Assumed Contracts against the Debtors or the Successful Bidder, or the property of any of them, *provided, however*, that a counterparty to an Assumed Contract shall not be barred from seeking additional amounts on account of any defaults occurring between the service of the Cure Notice and the assumption of the contract.

13.     Any objection to the ability of the Successful Bidder to provide adequate assurance of future performance with respect to any Assumed Contract must be filed with the Court no later than **October 12, 2023 at 4:00 p.m. (prevailing Eastern Time)**.

14.     The inclusion of a potential Assumed Contract on a Cure Notice or

Supplemental Cure Notice will not (a) obligate any Debtor to assume, assume and assign, and/or transfer such potential Assumed Contract listed thereon nor obligate the Stalking Horse Bidder or any other Successful Bidder to take assignment of such potential Assumed Contract; or (b) constitute any admission or agreement of the Debtors that such potential Assumed Contract is an executory contract or unexpired lease. Only those potential Assumed Contracts that are included on a schedule of assumed and assigned contracts attached to the definitive agreement of the Successful Bidder (including amendments or modifications to such schedules in accordance with such agreement)—*i.e.* the Assumed Contracts— will be assumed and assigned or transferred to the Successful Bidder.

**V.      Transaction Notice and Related Relief.**

15.      The Transaction Notice, substantially in the form attached hereto as **<u>Exhibit 2</u>**, is hereby approved. Within two business days after entry of this Order, the Debtors shall serve the Bid Procedures and the Transaction Notice upon (a) the U.S. Trustee; (b) counsel to the Committee; (c) any party that has requested notice pursuant to Bankruptcy Rule 2002; and (d) any other party entitled to notice pursuant to Local Rule 9013-1(d). In addition, within three business days after entry of this Order, (i) the Debtors will publish the Transaction Notice, with any modifications necessary for ease of publication, on the case-specific website maintained by Stretto to provide notice to any other potential interested parties, and (ii) will serve the Cure Notice upon the Objection Notice Parties and the applicable contract counterparties.

16.      Nothing in this Order or the Bid Procedures shall be deemed a waiver of any rights, remedies, or defenses that any party (including the Debtors, the Stalking Horse Bidder, or any other prospective purchaser) has or may have under applicable bankruptcy and non-bankruptcy law or any rights, remedies or defenses of the Debtors with respect thereto, including

seeking relief from the Court with regard to the Auction, the Bid Procedures, the Transaction, and any related items (including, if necessary, to seek an extension of the Bid Deadline).

17.     All time periods set forth in this Order shall be calculated in accordance with Bankruptcy Rule 9006(a).

18.     The Debtors are authorized to take all actions necessary to effectuate the relief granted pursuant to this Order in accordance with the Motion.

19.     The requirements set forth in the Local Rules are satisfied by the contents of the Motion.

20.     Notwithstanding Bankruptcy Rule 6004(h) and 6006, to the extent applicable, this Order shall be immediately effective and enforceable upon entry hereof.

21.     The Court retains jurisdiction with respect to all matters arising from or related to the implementation of this Order.

**IN THE UNITED STATES BANKRUPTCY COURT
FOR THE DISTRICT OF DELAWARE**

|  |  |
|---|---|
| In re: | Chapter 11 |
| Prime Core Technologies Inc., *et al.*,[1] | Case No. 23-11161 (JKS) |
| Debtors. | (Jointly Administered) |

**BIDDING PROCEDURES FOR THE SALE OF THE
DEBTORS' EQUITY AND/OR ASSETS**

On August 14, 2023, the above-captioned debtors and debtors in possession (collectively, the "Debtors") filed voluntary petitions for relief under chapter 11 of title 11 of the United States Code (the "Bankruptcy Code"), in the United States Bankruptcy Court for the District of Delaware (the "Court").

On [●], 2023, the Court entered the *Order (I) Approving Bidding Procedures for the Sale of All of the Debtors' Equity or All Substantially All of Debtors' Assets, (II) Authorizing the Debtors to Enter Into One or More Stalking Horse Agreements, (III) Scheduling an Auction and Related Dates Thereto, (IV) Approving the Form and Manner of Notice Thereof, (V) Approving Contract Assumption and Assignment Procedures, and (VI) Granting Related Relief* [Docket No. ●] (the "Bid Procedures Order"),[2] by which the Court approved the following procedures (the "Bid Procedures").

These Bid Procedures set forth the process by which the Debtors are authorized to solicit the highest or otherwise best bids (each, a "Bid") and conduct an auction (the "Auction") for the sale or sales (collectively, the "Sale Transaction") of all or substantially all of the Debtors' assets (the "Assets") or any portion thereof or 100% of the equity interests in the reorganized Debtors (the "Equity") through a stock purchase transaction (an "Equity Transaction," and together with a Sale, a "Transaction"). A Transaction will be implemented pursuant to Bankruptcy Code section 363 or through a chapter 11 plan of reorganization (as modified, amended, or supplemented from time to time, the "Plan"), pursuant to Bankruptcy Code section 1123.

---

[1]    The debtors in these chapter 11 cases, along with the last four digits of each debtor's federal tax identification number are:  Prime Core Technologies Inc. (5317); Prime Trust, LLC (6823); Prime IRA LLC (8436); and Prime Digital, LLC (4528). The Debtors' service address is 10845 Griffith Peak Dr., #03-153, Las Vegas, NV 89135.

[2]    All capitalized terms used but not immediately defined shall have the meanings ascribed to them elsewhere in these Bid Procedures, the Bid Procedures Motion, or the Bid Procedures Order, as applicable.

> **Copies of the Bid Procedures Order or other documents related thereto are available upon request to Stretto by calling 888-533-4753 or visiting the Debtors' restructuring website at https://cases.stretto.com/primetrust/.**

### Equity and/or Assets to Be Auctioned

These Bid Procedures set forth the terms by which prospective bidders, if any, may qualify for and participate in an Auction, thereby competing to make the highest or otherwise best offer or combination of offers which in the aggregate will make the highest or otherwise best offer to purchase the Debtors' Equity or some or all of the Debtors' Assets. The Debtors may consider bids from multiple bidders (including multiple bids submitted by the same bidder) in any combination for the Debtors' Equity or some or all of the Debtors' Assets.

The following is a table setting forth key dates and deadlines with respect to the Transaction process:

| Date[3] | Event |
|---|---|
| **At or prior to the Bid Procedures Hearing** | Bid Procedures Motion Objection Deadline |
| **September 13, 2023 at 3:00 p.m..** | Bid Procedures Hearing |
| **Within three business days after entry of Bid Procedures Order** | Deadline to File Transaction Notice |
| **Within three business days after entry of Bid Procedures Order** | Deadline to File Assumption and Assignment Notice |
| **September 25, 2023** | Deadline to Submit Stalking Horse Bid |
| **September 26, 2023** | Deadline to Designate Stalking Horse Bidder(s) if Selected by Debtors, after consultation with the Committee |
| **October 2, 2023 at 4:00 p.m.** | Cure/Assignment Objection Deadline |
| **October 3, 2023 at 4:00 p.m.** | Deadline to Object to Stalking Horse Bidder(s) Designation |
| **October 5, 2023** | Deadline to Submit Qualified Bids |
| **October 10, 2023 at 10:00 a.m.** | Auction (as necessary) |
| **Promptly after Auction** | Deadline to File Notice of Successful Bidder(s) and Backup Bidder(s) |
| **October 13, 2023 at 4:00 p.m.** | Adequate Assurance Objection Deadline |

---

[3]    All times are prevailing Eastern time. The Debtors may adjust these dates (the "Schedule") in the exercise of their business judgment; *provided, however*, that the Debtors will provide the Committee with as much advance notice of the Debtors' intention to adjust the Schedule as is reasonably practicable under the particular facts and circumstances. Notwithstanding the foregoing, the Debtors may not extend the Confirmation Hearing beyond December 31, 2023 absent consent of the Committee (which shall not be unreasonably withheld) or an order of the Court; *provided*, that to the extent the Debtors are required to file a motion to extend the date of the Confirmation Hearing beyond December 31, 2023, the Committee will not oppose the Debtors' request for expedited consideration of same.  Further, to the extent the Committee objects to the Debtors' adjustment of any of the Schedule, the Debtors will not oppose consideration on an expedited basis of any motion the Committee files in opposition to such adjustments; *provided, however*, the Debtors reserve all rights to oppose the substance of any such motion.

|  | If a Sale Transaction, Deadline to Object to Transaction(s) |
| **October 18, 2023 at 2:00 p.m.** | If a Sale Transaction, Sale Hearing |
| **TBD** | If an Equity Transaction, the Deadline to Object to Plan Confirmation |
| **TBD** | If an Equity Transaction, the Confirmation Hearing |

## I.    Potential Bidder Requirements.

To participate in the bidding process or otherwise be considered for any purpose hereunder, a person or entity interested in a Transaction (a "Potential Bidder") must deliver or have previously delivered to the Debtors the following documents (collectively, the "Preliminary Bid Documents"):

a.    an executed confidentiality and non-disclosure agreement (a "Confidentiality Agreement") in form and substance acceptable to the Debtors;

b.    a non-binding written indication of interest specifying, among other things, the type of proposed Transaction, if a Sale Transaction, the identity of the Assets to be acquired, the amount and type of consideration to be offered in connection with a proposed Transaction, and any other material terms to be included in a bid by such party;

c.    identity of the Potential Bidder, including its legal name, jurisdiction and form of organization, and details regarding the ownership and capital structure of the Potential Bidder, as well as the identity of any controlling persons, significant direct or indirect equity or debt investors, and/or guarantors of such entity, and any known connections the Potential Bidder has to the Debtors or their advisors, any statutory committee appointed in these cases or its advisors, or any creditor or equity security interest holder of the Debtors; and

d.    a list with the names and contact information for any financial, legal, and other advisors the Potential Bidder has engaged to assist in connection with the proposed Transaction.

The Debtors, in their discretion, may agree to waive some or all of the Potential Bidder requirements set forth above. The Debtors shall make available to the Committee copies of all Preliminary Bid Documents and consult with the Committee regarding any such waiver of requirements. Each Potential Bidder shall comply with all reasonable requests for information and access by the Debtors or their advisors regarding the ability of such Potential Bidder, as applicable, to consummate a proposed Transaction.

Only those Potential Bidders that have submitted acceptable Preliminary Bid Documents to the reasonable satisfaction of the Debtors and their advisors may submit a Bid.

The Debtors reserve the right to work with any Potential Bidder to cure any deficiencies in the Preliminary Bid Documents.

Notwithstanding the foregoing, the following shall apply to any information that the Debtors or their professionals share with the Committee's professionals in connection the bidding and sale process contemplated hereunder ("Bid Information"): (1) the identities of any Potential Bidders shall be shared on a professional eyes only basis and the Committee shall maintain such information as such, and (2) all Bid Information shall be treated as Confidential Information, as defined in, and in accordance with, the Committee's bylaws, and may only be reviewed by those Committee members who confirm to the Committee's professionals that they do not have a present intention to submit a Bid.

## II.    Obtaining Due Diligence Access.

Only Potential Bidders that have submitted acceptable Preliminary Bid Documents to the reasonable satisfaction of the Debtors and their advisors shall be eligible to receive information and access to the Debtors' electronic data room and to additional non-public, non-privileged information regarding the Debtors. All information requests must be directed to the Debtors' investment banker, Galaxy Digital Partners LLC, Attn: Michael Ashe (email: michael.ashe@galaxy.com), Albert Chao (albert.chao@galaxy.com), and Alwyn Clarke (alwyn.clarke@galaxy.com). The Debtors will provide to each Potential Bidder reasonable due diligence information, as requested by such Potential Bidder in writing, as soon as reasonably practicable after such request, and the Debtors shall post substantially all written due diligence provided to any Potential Bidder to the Debtors' electronic data room. Potential Bidders will not, directly or indirectly, contact or initiate or engage in discussions in respect of matters relating to the Debtors or a potential Transaction with any customer, supplier, or contractual counterparty of the Debtors without the prior written consent of the Debtors. The due diligence period will end on the Bid Deadline (as defined herein), *provided* that the Debtors may will provide reasonable access to information reasonably requested by any Qualified Bidder (as defined below) after the Bid Deadline.

In connection with the provision of due diligence information to Potential Bidders, the Debtors shall not furnish any confidential information relating to the Debtors or a potential Transaction to any person except a Potential Bidder or such Potential Bidder's duly authorized representatives and only to the extent provided for in the Confidentiality Agreement.

The Debtors and their advisors shall coordinate all reasonable requests for additional information and due diligence access from Potential Bidders; *provided* that the Debtors, in consultation with the Committee, may decline to provide such information to Potential Bidders who, in the Debtors' business judgment have not established, or who have raised doubt, that such Potential Bidders intend in good faith to, or have the capacity to, consummate any Transaction. For any Bidder who is a competitor or customer of the Debtors or is affiliated with any competitors or customers of the Debtors, the Debtors reserve the right to withhold or modify any diligence materials that the Debtors determine are commercially sensitive or otherwise inappropriate for disclosure to such bidder. In the event a party is denied access to information and due diligence access, prompt notice of same shall be provided to the

Committee and the United States Trustee.

> **Galaxy Digital Partners LLC, Attn: Michael Ashe (email: michael.ashe@galaxy.com), Albert Chao (albert.chao@galaxy.com), and Alwyn Clarke (alwyn.clarke@galaxy.com) shall coordinate all requests for additional information and due diligence access on behalf of the**

### A.      Communications with Potential Bidders (including Qualified Bidders).

Notwithstanding anything to the contrary in these Bid Procedures, all substantive direct communications, including any diligence requests, with Potential Bidders and Qualified Bidders shall be through Galaxy Digital Partners LLC (via email shall be acceptable), Attn:

Michael Ashe (michael.ashe@galaxy.com),
Albert Chao (albert.chao@galaxy.com), and
Alwyn Clarke (alwyn.clarke@galaxy.com).

### B.      Due Diligence from Potential Bidders (including Qualified Bidders).

Each Potential Bidder (including any Qualified Bidder) shall comply with all reasonable requests for additional information and due diligence access requested by the Debtors or their advisors regarding the ability of such Potential Bidder (including any Qualified Bidder) to consummate its contemplated Transaction. Failure by a Potential Bidder (including any Qualified Bidder) to comply with such reasonable requests for additional information and due diligence access may be a basis for the Debtors, in consultation with the Committee, to determine that such bidder is no longer a Qualified Bidder or that a bid made by such bidder is not a Qualified Bid.

### C.      No Communications Among Potential Bidders.

Potential Bidders shall not communicate between or amongst other Potential Bidders, unless the Debtors have previously authorized such communication in writing. Should any Potential Bidder attempt to communicate directly with another Potential Bidder, such Potential Bidder, as applicable shall immediately inform, in writing, the Debtors' counsel and the Debtors' investment banker. The Debtors reserve the right, in their business judgment and in consultation with the Committee, to disqualify any Potential Bidders that have communications between and amongst themselves without the prior written consent of the Debtors (email acceptable).

## III.      Bid Protections in the Event of a Stalking Horse Bidder.

Recognizing that a Stalking Horse Bidder will expend time, energy, and resources, and that the Stalking Horse Bidder (if any) provides a floor bid with respect to the Equity or Assets that it offers to purchase, pursuant to the Bid Procedures Order, the Debtors are authorized, but not required, to offer the following bid protections to the Stalking Horse Bidder (if any):

(A) an expense reimbursement on account of the actual, reasonable, documented out-of-pocket expenses of the Stalking Horse Bidder incurred in connection with the Stalking Horse Agreement in an aggregate amount not to exceed $750,000 ("Expense Reimbursement"); and

(B) a breakup fee in an amount not to exceed three percent (3%) of the cash portion of the purchase price under the Stalking Horse Agreement ("Breakup Fee," and together with the Expense Reimbursement, the "Bid Protections"), payable only from the proceeds of an alternative Transaction. The Bid Protections shall constitute an allowed administrative expense.

Any Bid submitted on or before the Bid Deadline by a party or parties other than the Stalking Horse Bidder must be in an amount that is sufficient to pay any Bid Protections and result in additional consideration to the Debtors' estates in the amount of at least $250,000.00 (as compared to the Purchase Price offered by the Stalking Horse Bidder), after payment of any Bid Protections.

In the event that the Debtors designate a Stalking Horse Bidder and seek to enter into a Stalking Horse Agreement on or prior to September 26, 2023, at 4:00 p.m. (prevailing Eastern Time) (the "Stalking Horse Supplement Deadline"), the Debtors shall file a supplement to the Motion (the "Stalking Horse Supplement") seeking approval of the same. An appropriate declaration in support of the proposed Bid Protections (the "Bid Protections Declaration") and a proposed form of order approving any Bid Protections (the "Bid Protections Order") shall be attached to the Stalking Horse Supplement. The Debtors shall serve the Stalking Horse Supplement by email, where available, or otherwise by first class mail, with no less than seven (7) calendar days' notice of the objection deadline (the "Stalking Horse Objection Deadline") to: (a) the U.S. Trustee; (b) the Committee; and (c) those parties who have requested notice of all pleadings filed in the Chapter 11 Cases pursuant to Bankruptcy Rule 2002 (collectively, the "Stalking Horse Notice Parties") with no further notice being required. The Stalking Horse Objection Deadline shall be October 3, 2023 at 4:00 p.m. (prevailing Eastern Time). The Stalking Horse Supplement and Bid Protections Declaration shall set forth the reasons the Debtors believe any Bid Protections satisfy the requirements of section 503(b) of the Bankruptcy Code. For the avoidance of doubt, nothing in this Order is shifting the Debtors' burden of proof that the Bid Protections are actually necessary to preserve the value of the estates pursuant to section 503(b) of the Bankruptcy Code. If a timely objection is filed, the Debtors will schedule a hearing in consultation with the objecting parties, the Committee, and the Court; provided, however, any such hearing shall be held on or before October 6, 2023, subject to the Court's availability. After such notice and absent timely objection, the Debtors may submit an order to the Court under certification of counsel approving the selection of such Stalking Horse Bidder(s) and any Bid Protections. If and to the extent necessary, the Debtors shall be entitled to set an expedited hearing on any objection to the designation of the Stalking Horse Bidder promptly following the expiration of any Stalking Horse Objection Deadline, subject to the availability of the Court.

IV.   **Bid Requirements**.

To be selected to acquire the Debtors' Equity or some or all of the Debtors' Assets or to be eligible to participate in the Auction, if applicable, a Potential Bidder must deliver to the parties set forth in Section V below a written, irrevocable, and binding Bid for a Sale Transaction and/or Equity Transaction that must be determined by the Debtors in their business judgment, and after consultation with the Official Committee of Unsecured Creditors (the "Committee"), to satisfy each of the following conditions (collectively, the "Bid Requirements"):

a.      **Purpose**: Each Potential Bidder must state that the Bid includes an offer by the Acceptable Bidder to acquire the Debtors' Equity or some or all of the Debtors' Assets, and identify the Assets with reasonable specificity.

b.      **Transaction Structure and Purchase Price**. Each Bid must clearly set forth the purchase price to be paid for the Debtors' Equity or some or all of the Debtors' Assets (the "Purchase Price") and must indicate the source of consideration, including funding commitments, and confirm that such consideration is not subject to any contingencies. The Bid should include a detailed sources and uses schedule. Each Bid shall also provide for appropriate treatment for the claims held by the Debtors' customers.

c.      **Bid Deposit**. Each Bid must be accompanied by a cash deposit equal to ten percent (10%) of the Purchase Price of the Bid (the "Good Faith Deposit"), which will be held in a segregated account identified by the Debtors.

d.      **Committed Financing**. To the extent that a Bid is not accompanied by evidence of the Potential Bidder's financial wherewithal to consummate the Transaction set forth in its Bid with cash on hand, each Bid must include committed financing documented to the Debtors' satisfaction that demonstrates that the Potential Bidder has received sufficient debt and/or equity funding commitments to satisfy the Potential Bidder's Purchase Price and other obligations under its Bid. Such funding commitments or other financing must be unconditional and must not be subject to any internal approvals, syndication requirements, diligence, or credit committee approvals, and shall have covenants and conditions reasonably acceptable to the Debtors in their sole discretion.

e.      **Good Faith Offer**. Each Bid must constitute a good faith, bona fide offer to purchase the Debtors' Equity or some or all of the Debtors' Assets.

f.      **Marked Plan or Draft Purchase Agreement**. Each Bid must be accompanied by clean and duly executed transaction documents including, at a minimum, a markup of the as-filed chapter 11 plan or a draft asset purchase agreement, including the exhibits and schedules related thereto and any related material documents integral to such Bid pursuant to which the Potential Bidder proposes to effectuate the Transaction. The Debtors, in their business judgment and after

consultation with the Committee, will determine whether any such amendments and modifications are materially more burdensome.

g.    **No Contingencies**. A Bid must not be conditioned on any contingency, including, among others, on obtaining any of the following (a) financing contingencies, (b) shareholder, board of directors, or other approval, and/or (c) contingencies related to the outcome or completion of a due diligence review by the Potential Bidder.

h.    **Binding and Irrevocable**. A Potential Bidder's Bid must be irrevocable unless and until the Debtors accept a higher Bid and such Potential Bidder is not selected as the Back-Up Bidder (as defined herein). All Potential Bidders submitting a bid consent to serve as a Back-Up Bidder.

i.    **Joint Bids**. The Debtors, after consultation with the Committee, will be authorized to approve joint Bids in their discretion on a case-by-case basis.

j.    **Adequate Assurance Information**. Each Bid must be accompanied by sufficient and adequate financial and other information (the "Adequate Assurance Information") to demonstrate, to the reasonable satisfaction of the Debtors, that such Potential Bidder (a) has the financial wherewithal and ability to consummate the acquisition of the Debtors' Equity or some or all of the Debtors' Assets (the "Closing"), and (b) can provide adequate assurance of future performance in connection with the proposed Transaction. The Bid must also identify a contact person that parties may contact to obtain additional Adequate Assurance Information.

k.    **Identity & Corporate Authority**. Each Bid must fully disclose the identity of each entity that will be participating in connection with such Bid (including any equity owners or sponsors, if the purchaser is an entity formed for the purpose of consummating the acquisition of the Debtors' Equity or some or all of the Debtors' Assets), and the complete terms of any such participation, along with sufficient evidence that the Potential Bidder is legally empowered, by power of attorney or otherwise, to complete the transactions on the terms contemplated by the parties. A Bid must also fully disclose any connections or agreements with the Debtors, any known, potential, prospective bidder or Qualified Bidder (as defined herein), or any officer, director, or equity security holder of the Debtors.

l.    **Authorization**. Each Bid must contain evidence that the Potential Bidder has obtained authorization or approval from its board of directors (or a comparable governing body reasonably acceptable to the Debtors) with respect to the submission of its Bid and the consummation of the transactions contemplated in such Bid.

m.    **No Fees**. Each Potential Bidder presenting a Bid or Bids will bear its own costs and expenses (including legal fees) in connection with the proposed transaction,

and by submitting its Bid is agreeing to refrain from and waive any assertion or request for reimbursement on any basis, including under Bankruptcy Code section 503(b); *provided* that the Debtors are authorized in their discretion to offer Bid Protections to one or more Stalking Horse Bidders in accordance with these Bid Procedures.

n.    **Adherence to Bid Procedures**. By submitting its Bid, each Potential Bidder is agreeing to abide by and honor the terms of these Bid Procedures and agrees not to submit a Bid or seek to reopen the Auction after conclusion of the Auction.

o.    **Regulatory Approvals and Covenants**. A Bid must set forth each regulatory and third-party approval required for the Potential Bidder to consummate the applicable Transaction, if any, and the time period within which the Potential Bidder expects to receive such regulatory and third-party approvals (and in the case that receipt of any such regulatory or third-party approval is expected to take more than thirty days following execution and delivery of the Plan term sheet and/or asset purchase agreement, those actions the Potential Bidder will take to ensure receipt of such approvals as promptly as possible).

p.    **As-Is, Where-Is**. Each Bid must include a written acknowledgement and representation that the Potential Bidder (a) has had an opportunity to conduct any and all due diligence regarding the Debtors' Equity or some or all of the Debtors' Assets prior to making its offer, (b) has relied solely upon its own independent review, investigation, and/or inspection of any documents and/or the Debtors' Equity or some or all of the Debtors' Assets in making its Bid, and (c) did not rely upon any written or oral statements, representations, promises, warranties, or guaranties whatsoever, whether express, implied by operation of law, or otherwise, regarding the Debtors' Equity or some or all of the Debtors' Assets or the completeness of any information provided in connection therewith or the Auction, except as expressly stated in, if a Sale Transaction, the Potential Bidder's proposed purchase agreement or, if an Equity Transaction, in the Potential Bidder's markup of the chapter 11 plan.

q.    **Time Frame for Closing**. A Bid by a Potential Bidder must be reasonably likely (based on antitrust or other regulatory issues, experience, and other considerations) to be consummated, if selected as the Successful Bid (as defined herein), within a time frame acceptable to the Debtors after consultation with the Committee.

r.    **Consent to Jurisdiction**. The Potential Bidder must submit to the jurisdiction of the Bankruptcy Court and waive any right to a jury trial in connection with any disputes relating to the Debtors' qualification of Bids, the Auction, the construction and enforcement of these Bid Procedures, the Plan, the Transaction documents, and the Closing, as applicable.

Only Bids fulfilling all of the preceding requirements contained in this section may, at

the Debtors' discretion, be deemed to be "Qualified Bids," and only those parties submitting Qualified Bids may, at the Debtors' discretion, be deemed to be "Qualified Bidders."

No later than two (2) business days following the Bid Deadline, the Debtors, after consultation with the Committee, shall determine which Potential Bidders are Qualified Bidders and will notify the Potential Bidders whether Bids submitted constitute Qualified Bids, which will enable such Qualified Bidders to participate in the Auction (if held). Any Bid that is not deemed a Qualified Bid shall not be considered by the Debtors; *provided*, *however*, that if the Debtors receive a Bid prior to the Bid Deadline that does not satisfy the requirements of a Qualified Bid, the Debtors may provide the Potential Bidder with the opportunity to remedy any deficiencies prior to the Auction. The Debtors may accept a single Qualified Bid or multiple Bids for non-overlapping material portions of the Debtors' Equity or some or all of the Debtors' Assets such that, if taken together in the aggregate, would otherwise meet the standards for a single Qualified Bid (in which event those multiple bidders will be treated as a single Qualified Bidder for purposes of selecting the Successful Bidder; *provided* that (i) the Debtors also reserve the right to conduct more than one Transaction process or Auction with respect to non-overlapping material portions of the Debtors' Equity or some or all of the Debtors' Assets, and (ii) this paragraph shall not be construed to waive or modify section II.C of these Bid Procedures.

## V.     Bid Deadline.

Binding Bids must be received (via email shall be acceptable) by (a) proposed counsel to the Debtors, McDermott Will & Emery LLP (i) 1000 North West Street, Suite 1400, Wilmington, Delaware 19801 (Attn: Maris J. Kandestin (mkandestin@mwe.com)), (ii) One Vanderbilt Avenue, New York, New York 10017-3852 (Attn: Darren Azman (dazman@mwe.com)) and (iii) 333 SE 2nd Avenue, Suite 5400, Miami, Florida 33131 (Attn: Gregg Steinman (gsteinman@mwe.com)); (b) the Debtors' investment banker, Galaxy Digital Partners LLC, Attn: Michael Ashe (email: michael.ashe@galaxy.com), Albert Chao (albert.chao@galaxy.com), and Alwyn Clarke alwyn.clarke@galaxy.com); (c) the United States Trustee for the District of Delaware, 844 King Street, Suite 2207, Lockbox 35, Wilmington, Delaware 19801 (Attn: Joseph Cudia (joseph.cudia@usdoj.gov)); (d) proposed counsel to the Committee, Brown Rudnick LLP, 7 Times Square, 47th Fl., New York, NY 10036 (Attn: Robert Stark (rstark@brownrudnick.com) and Bennett Silverberg (bsilverberg@brownrudnick.com)); and (e) proposed financial advisors to the Committee, Province, 445 Park Avenue, Suite 10C, New York, NY 10022 (Attn: David Dunn (ddunn@provincefirm.com), Joseph Berman (jberman@provincefirm.com), and Jin Dong (jdong@provincefirm.com)); in each case so as to be **actually received** no later than **5:00 p.m. (prevailing Eastern Time) on October 5, 2023** (the "Bid Deadline").

## VI.     Evaluation of Qualified Bids.

Prior to the Auction (if held), the Debtors and their advisors will evaluate Qualified Bids and identify the Qualified Bid(s) that is, in the Debtors' business judgment, and after consultation with the Committee, the highest or otherwise best Bid, which Bid may be the Stalking Horse Bid (the "Starting Bid"). If applicable, the Starting Bid shall include the amount

provided for in the Stalking Horse Agreement, if any, *plus* the amount of any Bid Protections, *plus* $250,000.00. In addition, prior to the selection of the Successful Bidder, the Debtors may, in the Debtors' business judgment, engage in negotiations with bidders with respect to their Bids. For the avoidance of doubt, the Debtors may select more than one Qualified Bid to collectively serve as the Starting Bid in an Auction (if held) if each such Qualified Bid contemplates the purchase of different Assets and/or the Equity. In conducting the evaluation of the Qualified Bids, the Debtors will take into consideration the following non-exclusive factors:

    a.    the amount of the Purchase Price of the Qualified Bid;

    b.    the value to be provided to the Debtors under the Bid, including the net economic effect upon the Debtors' estates, taking into account the any Bid Protections;

    c.    the chapter 11 plan markup or draft asset purchase agreement delivered in connection with such Qualified Bid and the comparative favorability of the terms set forth in such proposed chapter 11 plan markup or draft asset purchase agreement;

    d.    the assets and liabilities excluded from the Qualified Bid and any executory contracts or leases or other liabilities proposed to be assumed;

    e.    any benefit to the Debtors' bankruptcy estates from any assumption of liabilities or waiver of liabilities;

    f.    the certainty of a Qualified Bid leading to a confirmed Plan;

    g.    the transaction structure and execution risk, including conditions to, timing of, and certainty of closing; termination provisions; availability of financing and financial wherewithal to meet all commitments; and required governmental or other approvals; and

    h.    any other factors the Debtors may reasonably deem relevant in the exercise of their fiduciary duties.

Promptly after determination of the Starting Bid and prior to the Auction, the Debtors will distribute a copy of the Starting Bid to the Committee and each Qualified Bidder.

If any Bid is determined by the Debtors not to be a Qualified Bid, the Debtors will refund such Qualified Bidder's Good Faith Deposit within five (5) business days after the Bid Deadline.

VII.    **No Qualified Bids**.

If no Qualified Bids other than the Stalking Horse Bid(s), if any, are received by the Bid Deadline, then the Debtors may cancel the Auction, and may decide, in the Debtors' business judgment, to designate the Stalking Horse Bid as the Successful Bid, and pursue entry of an order approving a Sale Transaction or Equity Transaction to the Stalking Horse Bidder pursuant to the Stalking Horse Agreement. The Debtors shall file notice of any cancellation of the Auction and designation of the Stalking Horse Agreement as the Successful Bid with the Court, as soon as practicable following the determination of such election by the Debtors.

VIII.   **Auction**.

If one or more Qualified Bids are received by the Bid Deadline with respect to any applicable non-overlapping Assets or Equity, then the Debtors shall conduct the Auction with respect to such Equity and/or Assets. The Auction will be held on **October 10, 2023**, at **10:00 a.m. (prevailing Eastern Time)**, at the office of McDermott Will & Emery LLP, One Vanderbilt Avenue, New York, New York 10017-3852, or at such later time or other place as the Debtors determine in which case the Debtors shall timely notify all Qualified Bidders of such later time or other place, by announcing the change on the record at the Auction, or if the Auction has not yet commenced, by filing a notice on the docket of these Chapter 11 Cases.[4]

The Auction will be conducted in accordance with the following procedures (the "Auction Procedures"):

a.      except as otherwise provided herein, the Auction will be conducted openly;

b.      only Qualified Bidders, including the Stalking Horse Bidder (if any), shall be entitled to bid at the Auction;

c.      the Qualified Bidders, including the Stalking Horse Bidder (if any), shall appear at the Auction through duly authorized representatives at the Auction;

d.      only the following parties shall be permitted to attend the Auction: authorized representatives of each of the Qualified Bidders (including the Stalking Horse Bidder), the Debtors, the Committee, the United States Trustee, creditors, and their respective advisors; *provided*, *however* that creditors attending the Auction shall notify counsel for the Debtors of their intention to attend the Auction by emailing counsel at least 48 hours prior to the Auction;

e.      bidding at the Auction will begin at the applicable Starting Bid;

f.      Bids at the Auction, including any Bids by the Stalking Horse Bidder, must be made in minimum increments of $250,000.00 or such amount as the Debtors

---

[4]     If the Debtors decide to hold a live, in-person Auction, subject to the Debtors' discretion, Qualified Bidders may still have the ability to submit Bids remotely.

determine and announce at or prior to the Auction of additional value (including after payment of any Bid Protections to the Stalking Horse Bidder);

g.      each Qualified Bidder will be permitted a reasonable time to respond to previous bids at the Auction, as determined by the Debtors;

h.      the bidding will be transcribed or recorded to ensure an accurate recording of the bidding at the Auction;

i.      no Qualified Bidders (or their respective representatives) may communicate with one another, collude, or otherwise coordinate for purposes of participating in the Auction, and each Qualified Bidder will be required to confirm on the record of the Auction that (i) it has not engaged in any collusion, coordination, or unfair competitive practices with respect to the bidding or the Transaction and (ii) its Bid represents an irrevocable, binding, good faith, and bona fide offer to purchase the Debtors' Equity or some or all of the Debtors' Assets identified in such Bid if such Bid is selected as the Successful Bid; *provided*, *however*, that two or more Qualified Bidders may coordinate to the extent they wish to provide a combined bid if the Debtors approve such coordination in their discretion;

j.      the Auction will not close unless and until all Qualified Bidders have been given a reasonable opportunity to submit an overbid at the Auction to the then-prevailing highest bid, subject to the Debtors' right to require last and final bids to be submitted on a "blind" basis;

k.      the Debtors reserve the right, in their business judgment, to adjourn the Auction one or more times to, among other things, (i) facilitate discussions between the Debtors and Qualified Bidders, (ii) allow Qualified Bidders to consider how they wish to proceed, and (iii) provide Qualified Bidders the opportunity to provide the Debtors with such additional evidence as the Debtors, in their business judgment, may require that the Qualified Bidder has sufficient internal resources or has received sufficient non-contingent debt and/or equity funding commitments to consummate the proposed transaction at the prevailing amount; and

l.      the Auction will be governed by such other Auction Procedures as may be announced by the Debtors and their advisors from time to time on the record at the Auction; *provided* that such other Auction Procedures are (i) not inconsistent with the Bid Procedures Order, the Bankruptcy Code, or any other order of the Court, (ii) disclosed orally or in writing to all Qualified Bidders, and (iii) determined by the Debtors to further the goal of attaining the highest or otherwise best offer for the Equity or applicable Assets.

For the avoidance of doubt, nothing in the Auction Procedures (if an Auction is held) will prevent the Debtors from exercising their respective fiduciary duties under applicable law (as reasonably determined in good faith by the Debtors).

IX.   **Acceptance of the Successful Bid**.

The Auction shall continue until only one Qualified Bid is the highest or otherwise best bid to purchase the Debtors' Equity or some or all of the Debtors' Assets in the Debtors' business judgment and in a manner consistent with the exercise of their fiduciary duties and outlined below in further detail, after consultation with the Committee (a "Successful Bid"), and that further bidding is unlikely to result in a different Successful Bid or Successful Bids that would be acceptable to the Debtors, after consultation with the Committee, at which point, the Auction will be closed. When determining the highest or otherwise best Qualified Bid, as compared to other Qualified Bids, the Debtors may consider the following factors in addition to any other factors that the Debtors deem appropriate: (a) the amount and nature of the total consideration; (b) the likelihood of the Qualified Bidder's ability to close a Transaction and the timing thereof; (c) the net economic effect of any changes to the value to be received by each of the Debtors' estates from the Transaction contemplated by the Bid Documents; (d) the tax consequences of such Qualified Bid; and (e) the certainty of the Debtors being able to confirm a chapter 11 plan.

For the avoidance of doubt, the Debtors may select more than one Qualified Bid to collectively serve as a Successful Bid if each such Qualified Bid contemplates the purchase of different Equity or Assets. The Qualified Bidder or Qualified Bidders having submitted the Successful Bid or Successful Bids will be deemed the "Successful Bidder" or "Successful Bidders," with respect to the Equity or applicable Assets. The Debtors shall promptly file notice of the Successful Bid(s) and the Successful Bidder(s) with the Court.

X.   **Designation of Backup Bidder**.

The Qualified Bidder or Qualified Bidders with the second highest or otherwise best bid(s) or combination(s) of bids (each, a "Backup Bid") to purchase the Debtors' Equity or some or all of the Debtors' Assets (each, a "Backup Bidder") will be determined by the Debtors, after consultation with the Committee, at the conclusion of the Auction and will be announced at that time to all the Qualified Bidders participating in the Auction. Each Backup Bidder shall be required to keep its Qualified Bid open and irrevocable until the earlier of (i) the closing of the transaction with the applicable Successful Bidder; and (ii) December 31, 2023. The Backup Bidder's Good Faith Deposit (if any) shall be held in escrow until the closing of the transaction with the applicable Successful Bidder. If for any reason a Successful Bidder fails to consummate the purchase of such Equity or Assets within the time permitted after the entry of the Sale Order or the Confirmation Order (as applicable), then the Backup Bidder will automatically be deemed to have submitted the Successful Bid for such Equity or Assets, and the Backup Bidder shall be deemed a Successful Bidder for such Equity or Assets and shall be required to consummate the Transaction with the Debtors as soon as is commercially practicable without further order of the Court; *provided* that the Debtors shall file a notice with the Court.

**XI.    Approval of Transaction**.

The Debtors will present the results of the Auction or, if no Auction, will present the Successful Bidder to the Court for approval at the Sale Hearing or Confirmation Hearing (each as defined below), at which certain findings will be sought from the Court regarding the Auction, including, among other things, that: (a) the Auction was conducted, and the Successful Bidder or Successful Bidders were selected, in accordance with the Bid Procedures; (b) the Auction was fair in substance and procedure; (c) the Successful Bid or Successful Bids were Qualified Bids as defined in the Bid Procedures; and (d) consummation of any Transaction(s) as contemplated by the Successful Bid(s) in the Auction will provide the highest or otherwise best offer for the Debtors' Equity or some or all of the Debtors' Assets and is in the best interests of the Debtors and their estates.

**XII.    Sale Hearing.**

In the event a Sale Transaction is consummated pursuant to Bankruptcy Code section 363, a hearing before the Bankruptcy Court to consider approval of the Successful Bid or Successful Bids (the "Sale Hearing"), pursuant to which the Debtors and the Successful Bidder or Successful Bidders will consummate the Sale Transaction, will be held on October 18, at 2:00 p.m., prevailing Eastern Time, before the Honorable J. Kate Stickles, United States Bankruptcy Judge for the Bankruptcy Court for the District of Delaware at 824 N. Market Street, 5th Floor, Courtroom 6, Wilmington, DE 19801.

**The Sale Hearing may be continued to a later date by the Debtors by sending notice prior to, or making an announcement at, the Sale Hearing. No further notice of any such continuance will be required to be provided to any party.**

At the Sale Hearing, the Debtors will present the Successful Bid or Successful Bids to the Bankruptcy Court for approval.

**XIII.    Confirmation Hearing**

In the event an Equity Transaction is consummated through a Plan, a hearing before the Bankruptcy Court to consider confirmation of the Plan (the "Confirmation Hearing") will be held at a later date, before the Honorable J. Kate Stickles, United States Bankruptcy Judge for the Bankruptcy Court for the District of Delaware at 824 N. Market Street, 5th Floor, Courtroom 6, Wilmington, DE 19801, and otherwise in accordance with any scheduling orders entered by the Bankruptcy Court relating to confirmation of the Plan.

**The Confirmation Hearing may be continued to a later date by the Debtors by sending notice prior to, or making an announcement at, the Confirmation Hearing. No further notice of any such continuance will be required to be provided to any party.**

At the Confirmation Hearing, the Debtors will present the Plan, which will incorporate the terms of the Successful Bid or Successful Bids, to the Bankruptcy Court for confirmation.

**XIV.**    **Return of Good Faith Deposit.**

The Good Faith Deposit of a Successful Bidder shall, upon consummation of any Transaction, be credited to the purchase price paid for the Equity or the applicable Assets. If a Successful Bidder fails to consummate the Transaction, then the Good Faith Deposit (if any) shall be forfeited to, and retained irrevocably by, the Debtors, and the Debtors specifically reserve the right to seek all available damages from the defaulting Successful Bidder.

The Good Faith Deposit of any Qualified Bidders that are not Successful Bidders or Backup Bidders will be returned within five (5) business days after the Auction or upon the permanent withdrawal of the applicable proposed Transaction, and the Good Faith Deposit of any Backup Bidders will be returned within five (5) business days after the consummation of the applicable Transaction or upon the permanent withdrawal of the applicable proposed Transaction.

Each Good Faith Deposit shall be held in interest free escrow and at no time shall be deemed property of the Debtors' estates absent further order of the Court, except as otherwise provided herein.

**XV.**    **Reservation of Rights**.

The Debtors reserve their rights to modify these Bid Procedures in their business judgment, and in consultation with the Committee, in a manner consistent with the exercise of their fiduciary duties, and in any manner that will best promote the goals of the bidding process, or impose, at or before the Auction (if held), additional customary terms and conditions on the Transaction, including, without limitation: (a) extending the deadlines set forth in these Bid Procedures; (b) adjourning the Auction; (c) modifying the Auction Procedures or adding procedural rules that are reasonably necessary or advisable under the circumstances for conducting the Auction; (d) canceling the Auction; (e) rejecting any or all Bids or Qualified Bids; and (f) adjusting the applicable minimum overbid increment, including by requesting that Qualified Bidders submit last or final bids on a "blind" basis. For the avoidance of doubt, the Debtors reserve the right, following consultation with the Committee, to terminate the Transaction processes contemplated hereunder with respect to the Debtors' Equity or some or all of the Debtors' Assets at any point prior to the selection of the Successful Bidder and thereafter seek to sell the Assets pursuant to Bankruptcy Code section 363(b).

**XVI.**    **Consent to Jurisdiction.**

All Qualified Bidders at the Auction shall be deemed to have consented to the core jurisdiction of the Court and waived any right to a jury trial in connection with any disputes relating to any Transaction, the Auction, and the construction and enforcement of these Bid Procedures, any written indications of interest, any Preliminary Bid Documents, or any Bid documents, as applicable, and consented to the entry of a final order or judgment in any way related to these Bid Procedures, the bid process, the Auction, the Sale Hearing, the Confirmation Hearing, or the construction and enforcement of any agreement or any other document relating to a Transaction if it is determined that the Court would lack Article III

jurisdiction to enter such a final order or judgment absent the consent of the parties.

Any parties raising a dispute relating to these Bid Procedures must request that such dispute be heard by the Court on an expedited basis.

## XVII. <u>Fiduciary Out</u>.

Notwithstanding anything to the contrary in these Bid Procedures, nothing in these Bid Procedures or the Bid Procedures Order shall require a Debtor or the Debtors' Special Restructuring Committee (the "<u>Special Committee</u>"), or similar governing body of a Debtor, after consulting with counsel, to take any action or to refrain from taking any action related to any Transaction to the extent taking or failing to take such action would be inconsistent with applicable law or its fiduciary obligations under applicable law; *provided*, *however*, that (i) the foregoing does not constitute a finding by the Court or any other court of competent jurisdiction that the Debtors' or the Special Committee have complied with their fiduciary duties by taking, or refraining from, any such action, and (ii) this paragraph shall not be construed to relieve the Debtors of any duty of consultation with the Committee otherwise set forth in these Bid Procedures.

Further, notwithstanding anything to the contrary in these Bid Procedures, through the date of the Auction (if held), nothing in these Bid Procedures or the Bid Procedures Order shall diminish the right of the Debtors, the Special Committee, and their respective directors, officers, employees, investment bankers, attorneys, accountants, consultants, and other advisors or representatives to: (a) consider, respond to, and facilitate alternate Transactions (each an "<u>Alternate Proposal</u>"); (b) provide access to non-public information concerning the Debtors to any entity or enter into confidentiality agreements or nondisclosure agreements with any entity; (c) maintain or continue discussions or negotiations with respect to Alternate Proposals; (d) otherwise cooperate with, assist, participate in, or facilitate any inquiries, proposals, discussions, or negotiation of Alternate Proposals; and (e) enter into or continue discussions or negotiations with holders of claims against or equity interests in a Debtor or any other party in interest in these Chapter 11 Cases (including the U.S. Trustee), or any other entity regarding Alternate Proposals, *provided, however*, that the Debtors shall inform the Committee of any material discussions or negotiations concerning an Alternate Proposal and consult with the Committee regarding the forgoing.

**<u>EXHIBIT 2</u>**

**Form of Transaction Notice**

## IN THE UNITED STATES BANKRUPTCY COURT
## FOR THE DISTRICT OF DELAWARE

| | |
|---|---|
| In re: | Chapter 11 |
| Prime Core Technologies Inc., *et al.*,[1] | Case No. 23-11161 (JKS) |
| Debtors. | (Jointly Administered) |

### NOTICE OF AUCTION FOR THE SALE OF THE DEBTORS' EQUITY OR ALL OR SUBSTANTIALLY ALL OF THE DEBTORS' ASSETS FREE AND CLEAR OF ANY AND ALL CLAIMS, INTERESTS, AND ENCUMBRANCES

**PLEASE TAKE NOTICE** that the above-captioned debtors and debtors in possession (collectively, the "Debtors") are soliciting offers for a sale or sales (collectively, the "Sale Transaction") of all or substantially all of the Debtors' assets (the "Assets") or any portion thereof or 100% of the equity interests in the reorganized Debtors (the "Equity") through a stock purchase transaction (an "Equity Transaction," and together with a Sale, a "Transaction") and assumption of certain liabilities of the Debtors, consistent with the bidding procedures (the "Bid Procedures")[2] approved by the United States Bankruptcy Court for the District of Delaware (the "Court") by entry of an order on September 13, 2023 [Docket No. ●] (the "Bidding Procedures Order"). **All interested bidders should carefully read the Bid Procedures and Bid Procedures Order**. To the extent that there are any inconsistencies between this notice and the Bid Procedures or the Bid Procedures Order, the Bid Procedures or the Bid Procedures Order, as applicable, shall govern in all respects.

---

**Copies of the Bid Procedures Order or other documents related thereto are available upon request to Stretto by calling 888-533-4753 or visiting the Debtors' restructuring website at https://cases.stretto.com/primetrust/.**

---

**PLEASE TAKE FURTHER NOTICE** that the Bid Deadline is **October 5, 2023 at 5:00 p.m. (prevailing Eastern Time)**, and that any person or entity who wishes to participate in the Auction must comply with the participation requirements, bid requirements, and other requirements set forth in the Bid Procedures.

**PLEASE TAKE FURTHER NOTICE** that the Debtors intend to conduct the Auction, at which time they will consider proposals submitted to the Debtors and their professionals, by

---

[1] The debtors in these chapter 11 cases, along with the last four digits of each debtor's federal tax identification number are:  Prime Core Technologies Inc. (5317); Prime Trust, LLC (6823); Prime IRA LLC (8436); and Prime Digital, LLC (4528). The Debtors' service address is 10845 Griffith Peak Dr., #03-153, Las Vegas, NV 89135.

[2] Capitalized terms used but not otherwise defined herein shall have the meanings ascribed to them in the Bid Procedures Order or the Bid Procedures, as applicable.

and pursuant to the Bid Procedures as set forth in the Bid Procedures Order, beginning on **October 10, 2023**, at **10:00 a.m. (prevailing Eastern Time)**.

**PLEASE TAKE FURTHER NOTICE** that, if a Sale Transaction, the Debtors expect to seek approval of: (i) any Sale Transaction at the Sale Hearing, which is presently scheduled to commence on **October 18, 2023**, at **2:00 p.m. (prevailing Eastern Time)**, or as soon thereafter as counsel may be heard, before the Honorable J. Kate Stickles, United States Bankruptcy Judge for the Bankruptcy Court for the District of Delaware at 824 N. Market Street, 5th Floor, Courtroom 6, Wilmington, DE 19801; and/or (ii) if an Equity Transaction at the Confirmation Hearing, which will occur at a later date to be determined before the Honorable J. Kate Stickles, United States Bankruptcy Judge for the Bankruptcy Court for the District of Delaware at 824 N. Market Street, 5th Floor, Courtroom 6, Wilmington, DE 19801.

**PLEASE TAKE FURTHER NOTICE** that, except as otherwise set forth in the Bid Procedures Order with respect to objections to proposed cure amounts or the assumption and assignment of Assumed Contracts, objections, if any, to a proposed Transaction **must**: (a) be in writing; (b) conform to the applicable provisions of the Bankruptcy Rules and the Local Rules; (c) state with particularity the legal and factual basis for the objection and the specific grounds therefor; and (d) be filed with the Court by **October 2, 2023** at **4:00 p.m. (prevailing Eastern Time)**; *provided, however,* that any objections to the manner in which the Auction was conducted and the identity of the Successful Bidder or Backup Bidder may be filed by **October 13, 2023** at **4:00 p.m. (prevailing Eastern Time)**.

## CONSEQUENCES OF FAILING TO TIMELY MAKE AN OBJECTION

**IF A SALE TRANSACTION, ANY PARTY OR ENTITY WHO FAILS TO TIMELY MAKE AN OBJECTION TO A SALE TRANSACTION ON OR BEFORE THE SALE TRANSACTION OBJECTION DEADLINE IN ACCORDANCE WITH THE BID PROCEDURES ORDER SHALL BE FOREVER BARRED FROM ASSERTING ANY OBJECTION TO SUCH SALE TRANSACTION, INCLUDING WITH RESPECT TO THE TRANSFER OF THE SELLING DEBTORS' ASSETS FREE AND CLEAR OF ALL LIENS, CLAIMS, ENCUMBRANCES, AND OTHER INTERESTS.**

**PLEASE TAKE FURTHER NOTICE** that the Debtors reserve the right in the Debtors' reasonable business judgment and subject to the exercise of their fiduciary duties, to modify the Bid Procedures and/or to terminate discussions with any Potential Bidders at any time, to the extent not materially inconsistent with the Bid Procedures.

**PLEASE TAKE FURTHER NOTICE** that copies of the Bid Procedures Motion, Bid Procedures, and Bid Procedures Order, as well as all related exhibits, are available: free of charge upon request to Stretto by calling **888-533-4753** or visiting the Debtors' restructuring website at **https://cases.stretto.com/primetrust/**, or for a fee via PACER by visiting http://www.deb.uscourts.gov.

Dated:  September [•], 2023
        Wilmington, Delaware

**MCDERMOTT WILL & EMERY LLP**

*/s/ DRAFT*
Maris J. Kandestin (No. 5294)
1000 N. West Street, Suite 1400
Wilmington, Delaware 19801
Telephone:  (302) 485-3900
Facsimile:  (302) 351-8711
Email:      mkandestin@mwe.com

-and-

Darren Azman (admitted *pro hac vice*)
Joseph B. Evans (admitted *pro hac vice*)
One Vanderbilt Avenue
New York, New York 10017-3852
Telephone:  (212) 547-5400
Facsimile:  (646) 547-5444
Email:      dazman@mwe.com
            jbevans@mwe.com

-and-

Gregg Steinman (admitted *pro hac vice*)
333 SE 2nd Avenue, Suite 5400
Miami, Florida 33131
Telephone:  (305) 358-3500
Facsimile:  (305) 347-6500
Email:      gsteinman@mwe.com

*Proposed Counsel to the Debtors and Debtors in Possession*

**EXHIBIT 3**

**Form of Cure Notice**

## IN THE UNITED STATES BANKRUPTCY COURT
## FOR THE DISTRICT OF DELAWARE

| | |
|---|---|
| In re: | Chapter 11 |
| Prime Core Technologies Inc., *et al.*,[1] | Case No. 23-11161 (JKS) |
| Debtors. | (Jointly Administered) |

## NOTICE TO CONTRACT PARTIES TO POTENTIALLY
## ASSUMED EXECUTORY CONTRACTS AND UNEXPIRED LEASES

**YOU ARE RECEIVING THIS NOTICE BECAUSE YOU
OR ONE OF YOUR AFFILIATES IS A COUNTERPARTY TO AN
EXECUTORY CONTRACT OR UNEXPIRED LEASE WITH ONE OR MORE
OF THE DEBTORS AS SET FORTH ON EXHIBIT A ATTACHED HERETO.**

**PLEASE TAKE NOTICE** that on September 13, 2023, the United States Bankruptcy Court for the District of Delaware (the "Court") entered the *Order (I) Approving Bidding Procedures for the Sale of All of the Debtors' Equity or All Substantially All of Debtors' Assets, (II) Authorizing the Debtors to Enter Into One or More Stalking Horse Agreements, (III) Scheduling an Auction and Related Dates Thereto, (IV) Approving the Form and Manner of Notice Thereof, (V) Approving Contract Assumption and Assignment Procedures, and (VI) Granting Related Relief* [Docket No. ●] (the "Bid Procedures Order"),[2] authorizing the Debtors to conduct an auction (the "Auction") for the sale or sales (collectively, the "Sale Transaction") of all or substantially all of the Debtors' assets (the "Assets") or any portion thereof or 100% of the equity interests in the reorganized Debtors (the "Equity") through a stock purchase transaction (an "Equity Transaction," and together with a Sale, a "Transaction"). The Auction will be governed by the bidding procedures (attached to the Bid Procedures Order as Exhibit 1 the "Bid Procedures").

**PLEASE TAKE FURTHER NOTICE** that, pursuant to the Bid Procedures and the terms of any Successful Bid, the Debtors **may** assume and assign to the Successful Bidder certain of the Assumed Contracts listed on the Assumed Contracts Schedule, attached hereto as **Exhibit A**, to which you are a counterparty, upon approval of the Transaction. The Assumed Contracts Schedule can also be viewed on the Debtors' case website (https://cases.stretto.com/primetrust/). The Debtors have conducted a review of their books and

---

[1]  The debtors in these chapter 11 cases, along with the last four digits of each debtor's federal tax identification number are:  Prime Core Technologies Inc. (5317); Prime Trust, LLC (6823); Prime IRA LLC (8436); and Prime Digital, LLC (4528). The Debtors' service address is 10845 Griffith Peak Dr., #03-153, Las Vegas, NV 89135.

[2]  All capitalized terms used but not immediately defined shall have the meanings ascribed to them elsewhere in these Bid Procedures, the Bid Procedures Motion, or the Bid Procedures Order, as applicable.

records and have determined that the cure amount for unpaid monetary obligations under such Assumed Contracts is as set forth on **Exhibit A** attached hereto (the "Cure Costs").

      **PLEASE TAKE FURTHER NOTICE** that if you disagree with the proposed Cure Costs, object to a proposed assignment to the Successful Bidder of any Assumed Contract, or object to the ability of the Successful Bidder to provide adequate assurance of future performance with respect to any Assumed Contract, your objection must: (i) be in writing; (ii) comply with the applicable provisions of the Bankruptcy Rules, Bankruptcy Local Rules, and any order governing the administration of these Chapter 11 Cases; (iii) state with specificity the nature of the objection and, if the objection pertains to the proposed Cure Costs, state the correct cure amount alleged to be owed, together with any applicable and appropriate documentation in support thereof; and (iv) if you object to proposed Cure Costs or a proposed assignment to the Successful Bidder of any Assumed Contract, be filed with the Court **no later than October 2, 2023, at 4:00 p.m. (prevailing Eastern Time)** (the "Cure Objection Deadline"), and if you object to the ability of the Successful Bidder to provide adequate assurance of future performance with respect to any Assumed Contract, be filed with the Court **no later than October 13, 2023 at 4:00 p.m. (prevailing Eastern time)** (the "Adequate Assurance Objection Deadline"), in each case, by the following parties: (a) proposed counsel to the Debtors, McDermott Will & Emery LLP (i) 1000 North West Street, Suite 1400, Wilmington, Delaware 19801 (Attn: Maris J. Kandestin (mkandestin@mwe.com)), (ii) One Vanderbilt Avenue, New York, New York 10017-3852 (Attn: Darren Azman (dazman@mwe.com)) and (iii) 333 SE 2nd Avenue, Suite 5400, Miami, Florida 33131 (Attn: Gregg Steinman (gsteinman@mwe.com)); (b) the Debtors' investment banker, Galaxy Digital Partners LLC, Attn: Michael Ashe (email: michael.ashe@galaxy.com), Albert Chao (albert.chao@galaxy.com), and Alwyn Clarke alwyn.clarke@galaxy.com); (c) the United States Trustee for the District of Delaware, 844 King Street, Suite 2207, Lockbox 35, Wilmington, Delaware 19801 (Attn: Joseph Cudia (joseph.cudia@usdoj.gov)); (d) proposed counsel to the Committee, Brown Rudnick LLP, 7 Times Square, 47th Fl., New York, NY 10036 (Attn: Robert Stark (rstark@brownrudnick.com) and Bennett Silverberg (bsilverberg@brownrudnick.com)); and (e) proposed financial advisors to the Committee, Province, 445 Park Avenue, Suite 10C, New York, NY 10022 (Attn: David Dunn (ddunn@provincefirm.com), Joseph Berman (jberman@provincefirm.com), and Jin Dong (jdong@provincefirm.com)).

      **PLEASE TAKE FURTHER NOTICE** that if no objection to (a) the Cure Cost(s), (b) the proposed assignment and assumption of any Assumed Contract, or (c) adequate assurance of the Successful Bidder's ability to perform is filed by the Cure Objection Deadline or Adequate Assurance Objection Deadline, as applicable, then (i) you will be deemed to have stipulated that the Cure Costs as determined by the Debtors are correct, (ii) you will be forever barred, estopped, and enjoined from asserting any additional cure amount under the proposed Assumed Contract, and (iii) you will be forever barred, estopped, and enjoined from objecting to such proposed assignment to the Successful Bidder on the grounds that the Successful Bidder has not provided adequate assurance of future performance.

      **PLEASE TAKE FURTHER NOTICE** that any Cure Objection in connection with the Successful Bid that otherwise complies with these procedures yet remains unresolved as of the commencement of the Sale Hearing, shall be heard at a later date to be fixed by the Court.

**PLEASE THAT FURTHER NOTICE** that, notwithstanding anything herein, the mere listing of any Assumed Contract on the Cure Notice does not require or guarantee that such Assumed Contract will be assumed by the Debtors at any time or assumed and assigned, and all rights of the Debtors and the Successful Bidder with respect to such Assumed Contract are reserved. Moreover, the Debtors explicitly reserve their rights, in their reasonable discretion, to seek to reject or assume each Assumed Contract pursuant to Bankruptcy Code section 365(a) and in accordance with the procedures allowing the Debtors and/or the Successful Bidder, as applicable, to designate any Assumed Contract as either rejected or assumed on a post-closing basis.

**PLEASE TAKE FURTHER NOTICE** that, nothing herein (i) alters in any way the prepetition nature of the Assumed Contracts or the validity, priority, or amount of any claims of a counterparty to any Assumed Contract against the Debtors that may arise under such Assumed Contract, (ii) creates a postpetition contract or agreement, or (iii) elevates to administrative expense priority any claims of a counterparty to any Assumed Contract against the Debtors that may arise under such Assumed Contract.

Dated:   September [•], 2023  
         Wilmington, Delaware

**MCDERMOTT WILL & EMERY LLP**

_/s/DRAFT_____

Maris J. Kandestin (No. 5294)  
1000 N. West Street, Suite 1400  
Wilmington, Delaware 19801  
Telephone:   (302) 485-3900  
Facsimile:   (302) 351-8711  
Email:        mkandestin@mwe.com

-and-

Darren Azman (admitted _pro hac vice_)  
Joseph B. Evans (admitted _pro hac vice_)  
One Vanderbilt Avenue  
New York, New York 10017-3852  
Telephone:   (212) 547-5400  
Facsimile:   (646) 547-5444  
Email:        dazman@mwe.com  
            jbevans@mwe.com

-and-

Gregg Steinman (admitted _pro hac vice_)  
333 SE 2nd Avenue, Suite 5400  
Miami, Florida 33131  
Telephone:   (305) 358-3500  
Facsimile:   (305) 347-6500  
Email:        gsteinman@mwe.com

3

*Proposed Counsel to the Debtors and Debtors in Possession*