IN THE UNITED STATES BANKRUPTCY COURT
FOR THE DISTRICT OF DELAWARE

|  |  |
|---|---|
| In re:<br><br>Prime Core Technologies Inc., *et al.*,<br><br>Debtors.[1] | Chapter 11<br><br>Case No. 23-11161 (JKS)<br><br>(Jointly Administered)<br><br>Obj. Deadline: Sept. 28, 2023 at 4:00 p m. (ET)<br>Hrg. Date: October 5, 2023 at 2:00 p.m. (ET) |

**APPLICATION OF THE DEBTORS FOR ENTRY OF AN ORDER AUTHORIZING THE RETENTION AND EMPLOYMENT OF MCDERMOTT WILL & EMERY LLP AS COUNSEL, PURSUANT TO BANKRUPTCY CODE SECTION 327(a), BANKRUPTCY RULES 2014(a) AND 2016, AND LOCAL RULE 2014-1, EFFECTIVE AS OF THE PETITION DATE**

Prime Core Technologies Inc. and certain of its affiliates and subsidiaries, as debtors and debtors in possession in the above-captioned chapter 11 cases (collectively, the "Debtors"), hereby file this application (the "Application"), seeking entry of an order, substantially in the form attached hereto **Exhibit A** (the "Proposed Order"), authorizing the employment and retention of McDermott Will & Emery LLP ("McDermott" or the "Firm") as their counsel, pursuant to section 327(a) of the title 11 of the United States Code (the "Bankruptcy Code"), Rules 2014(a) and 2016 of the Federal Rules of Bankruptcy Procedure (the "Bankruptcy Rules"), and Rule 2014-1 of the Local Rules of Practice and Procedure of the United States Bankruptcy Court for the District of Delaware (the "Local Rules"), effective as of August 14, 2023. In support of this Application, the Debtors submit the *Declaration of Darren Azman in Support of Application of the Debtors for Entry of an Order Authorizing the Retention and Employment of*

---

[1] The Debtors in these Chapter 11 Cases, along with the last four digits of each debtor's federal tax identification number are: Prime Core Technologies Inc. (5317); Prime Trust, LLC (6823); Prime IRA LLC (8436); and Prime Digital, LLC (4528). The Debtors' service address is 10845 Griffith Peak Dr., #03-153, Las Vegas, NV 89135.

*McDermott Will & Emery LLP as Counsel, Pursuant to Bankruptcy Code section 327(a), Bankruptcy Rules 2014(a) and 2016, and Local Rule 2014-1, Effective as of the Petition Date* (the "Azman Declaration"), which is attached hereto as **Exhibit B**, and the *Declaration of Michael Wyse, in His Capacity as a Member of the Special Committee of the Debtors*, which is attached hereto as **Exhibit C** (the "Wyse Declaration"). In further support of this Application, the Debtors respectfully state as follows:

## JURISDICTION AND VENUE

1. The United States Bankruptcy Court for the District of Delaware (the "Court") has jurisdiction to consider the Application pursuant to 28 U.S.C. §§ 157 and 1334 and the *Amended Standing Order of Reference* from the United States District Court for the District of Delaware, dated February 29, 2012. This is a core proceeding under 28 U.S.C. § 157(b). Venue of these cases and the Application in this District is proper under 28 U.S.C. §§ 1408 and 1409.

2. The legal predicates for the relief requested herein are Bankruptcy Code sections 327(a) and 330, Bankruptcy Rules 2014(a) and 2016, and Local Rule 2014-1.

3. The Debtors confirm their consent, pursuant to Local Rule 9013-1(f), to the entry of a final order by the Court in connection with the Application in the event that it is later determined that the Court, absent consent of the parties, cannot enter final orders or judgments in connection herewith consistent with Article III of the United States Constitution.

## BACKGROUND

4. On August 14, 2023 (the "Petition Date"), each Debtor commenced a case by filing a voluntary petition for relief under chapter 11 of the Bankruptcy Code (collectively, the "Chapter 11 Cases"). These cases have been jointly administered for procedural purposes only.

5. The Debtors continue to manage their properties as debtors and debtors in possession pursuant to Bankruptcy Code sections 1107(a) and 1108.

6. On August 29, 2023, the Office of the United States Trustee for the District of Delaware (the "U.S. Trustee") appointed an official committee of unsecured creditors pursuant to Bankruptcy Code section 1102 (the "Committee") [Docket No. 51]. The Committee is comprised of the following unsecured creditors: (a) Yousef Abbasi; (b) Allsectech, Inc.; (c) DMG Blockchain Solutions, Inc.; (d) Net Cents Technology, Inc.; (e) Polaris Ventures; (f) Stably Corporation; and (g) Austin Ward.

7. Additional information regarding the Debtors and these Chapter 11 Cases, including the Debtors' business operations, capital structure, financial condition, and the reasons for and objectives of these Chapter 11 Cases, is set forth in the *Declaration of Jor Law, Interim Chief Executive Officer and President of Prime Core Technologies Inc., et al., in Support of Chapter 11 Petitions and First Day Motions* [Docket No. 14], which is incorporated by reference as if fully set forth herein.

## MCDERMOTT'S QUALIFICATIONS

8. The Debtors seek to retain McDermott as their restructuring counsel because of, among other things, McDermott's experience, knowledge, and expertise in the cryptocurrency space and with respect to complex business reorganizations under chapter 11 of the Bankruptcy Code. Moreover, in addition to McDermott's extensive bankruptcy and restructuring experience, it has substantial experience in virtually all other aspects of the law that may arise in these Chapter 11 Cases, including, corporate governance, employee benefits, finance, and tax. Thus, the Debtors believe that McDermott has the knowledge and experience necessary to deal effectively with the issues that will arise in the Chapter 11 Cases, and that McDermott's

continued representation of the Debtors is critical to the successful prosecution of the Chapter 11 Cases.

9. Through its prepetition work with the Debtors, McDermott has become intimately familiar with the Debtors' business and many of the potential legal issues that may arise in the context of these Chapter 11 Cases. Moreover, prior to the Petition Date, McDermott worked closely with the Debtors and their other professionals with respect to the development and implementation of strategic alternatives. Based on its substantial prepetition involvement with the Debtors and their business, the Debtors believe that McDermott is both well-qualified and uniquely able to represent the Debtors in the Chapter 11 Cases in an efficient and timely manner. The Debtors further believe that McDermott has assembled a highly-qualified team of professionals and paraprofessionals to provide services to the Debtors during the Chapter 11 Cases.

10. McDermott, or attorneys currently employed by McDermott, have represented debtors in many recent cases in this and other jurisdictions, including, among others: *In re Sunland Medical Foundation*, No. 23-80000 (MVL) (Bankr. N.D. Tex. Aug. 29, 2023); *In re Envistacom, LLC*, Case No. 23-52696 (Bankr. N.D. Ga. June 26, 2023); *In re Volunteer Energy Services Inc.*, Case No. 22-50804 (Bankr. S.D. Ohio Apr. 26, 2022); *In re Red River Waste Solutions, LP*, Case. No. 21-42423 (Bankr. N.D. Tex. Jan. 20, 2022); *In re Gulf Coast Health Care, LLC*, Case No. 21-11336 (KBO) (Bankr. D. Del. Nov. 19, 2021); *In re Quorum Health Corp.*, 20-10766 (KBO) (Bankr. D. Del. May 1, 2020); *In re NinePoint Medical, Inc.*, Case No. 20-12618 (KBO) (Bankr. D. Del. Oct. 16, 2020); *In re Melinta Therapeutics, Inc.*, Case No. 19-12748 (LSS) (Bankr. D. Del. Dec. 27, 2019); *In re Furie Operating Alaska, LLC*, Case No. 19-

11781 (LSS) (Bankr. D. Del. Aug. 9, 2019); and *In re SportCo Holdings, Inc.*, Case No. 19-11299 (LSS) (Bankr. D. Del. June 10, 2019).

11. In addition, McDermott has represented official committees and/or wind down trusts in *In re Cred Inc., et al.*, Case No. 20-12836 (JTD) (Bankr. D. Del. Nov. 7, 2020) and *In re Voyager Digital Holdings, Inc., et al.,* Case No. 22-10943 (MWE) (Bankr. S.D. N.Y.), and has otherwise been involved in most, if not all, of the other cryptocurrency chapter 11 cases filed in the past two years.

12. In preparing for its representation of the Debtors in these Chapter 11 Cases, McDermott has become familiar with the Debtors' business and many of the potential legal issues that may arise in the context of these Chapter 11 Cases. The Debtors believe that McDermott is both well-qualified and uniquely able to represent the Debtors in these Chapter 11 Cases in an efficient and timely manner.

## SERVICES TO BE PROVIDED

13. The Debtors request the retention and employment of McDermott to render the following legal services:

    a. advising the Debtors with respect to their powers and duties as debtors in possession in the continued management and operation of their business and properties;

    b. advising and consulting on the conduct of these Chapter 11 Cases, including all of the legal and administrative requirements of operating in chapter 11;

    c. attending meetings and negotiating with representatives of the Debtors' creditors and other parties in interest;

    d. taking all necessary actions to protect and preserve the Debtors' estates, including prosecuting actions on the Debtors' behalf, defending any action commenced against the Debtors, and representing the Debtors in negotiations concerning litigation in which the Debtors are involved, including objections to claims filed against the Debtors' estates;

    e. preparing pleadings in connection with these Chapter 11 Cases, including motions, applications, answers, orders, reports, and papers necessary or otherwise beneficial to the administration of the Debtors' estates;

      f.      advising the Debtors in connection with any potential sale of assets;

      g.      appearing before the Court and any appellate courts to represent the interests of the Debtors' estates;

      h.      advising the Debtors regarding tax matters;

      i.      advising the Debtors regarding insurance and regulatory matters;

      j.      taking any necessary action on behalf of the Debtors to negotiate, prepare, and obtain approval of a disclosure statement and confirmation of a chapter 11 plan and all documents related thereto; and

      k.      performing all other necessary legal services for the Debtors in connection with the prosecution of these Chapter 11 Cases, including: (i) analyzing the Debtors' leases and contracts and the assumption and assignment or rejection thereof; (ii) analyzing the validity of liens against the Debtors; and (iii) advising the Debtors on corporate and litigation matters.

14. In addition to the services set forth above, McDermott may perform other services assigned to it by the Debtors. To the extent McDermott determines that such services fall outside the scope of services historically or generally performed by McDermott as counsel in connection with these Chapter 11 Cases, McDermott will file a supplemental declaration.

## **PROFESSIONAL COMPENSATION**

15. McDermott intends to apply for compensation for professional services rendered on an hourly basis and reimbursement of expenses incurred in connection with these Chapter 11 Cases, subject to the Court's approval and in compliance with applicable provisions of the Bankruptcy Code, the Bankruptcy Rules, the Local Rules, and any other applicable procedures and orders of the Court. The hourly rates and corresponding rate structure McDermott will use in the Chapter 11 Cases are the same as the hourly rates and corresponding rate structure that McDermott uses in other restructuring matters, as well as similar corporate and litigation matters, whether in court or otherwise, regardless of whether a fee application is required. These rates and the rate structure reflect that such restructuring and other complex matters typically are national in scope and involve great complexity, high stakes, and severe time pressures.

16. McDermott operates in a national marketplace for legal services in which rates are driven by multiple factors relating to the individual lawyer, his or her area of specialization, the Firm's expertise, performance, and reputation, the nature of the work involved, and other factors.

17. McDermott's current hourly rates for matters related to these Chapter 11 Cases range as follows:

| Billing Category | U.S. Range |
| --- | --- |
| Partners | $1,170-$2,330 |
| Senior Counsel | $895-$1,820 |
| Employee Counsel | $900-$1,685 |
| Associates | $655-$1,125 |
| Paraprofessionals | $240-$675 |

18. McDermott's hourly rates are set at a level designed to compensate McDermott fairly for the work of its counsel and paraprofessionals and to cover fixed and routine expenses. Hourly rates vary with the experience and seniority of the individuals assigned. These hourly rates are subject to periodic adjustments to reflect economic and other conditions.[2]

19. The rate structure provided by McDermott is appropriate and not significantly different from (a) the rates that McDermott charges for other similar types of representations or (b) the rates that other comparable counsel would charge to do work substantially similar to the work McDermott will perform in these Chapter 11 Cases.

20. In addition, McDermott intends to make a reasonable effort to comply with the U.S. Trustee's requests for information and additional disclosures as set forth in the *Appendix B Guidelines for Reviewing Applications for Compensation and Reimbursement of Expenses Filed under 11 U.S.C. § 330 by Counsel in Larger Chapter 11 Cases Effective as of November 1, 2013*

---

[2] As set forth in the Proposed Order, McDermott will provide ten business days' notice to the Debtors, the U.S. Trustee, and the Committee before implementing any periodic increases.

(the "Revised UST Guidelines"), both in connection with this Application and the interim and final fee applications to be filed by McDermott in these Chapter 11 Cases.

21. It is McDermott's policy to charge its clients in all areas of practice for identifiable, non-overhead expenses incurred in connection with the client's case that would not have been incurred except in connection with McDermott's representation of that particular client. It is also McDermott's policy to charge its clients only the amount actually incurred by McDermott in connection with such items. Examples of such expenses include postage, overnight mail, courier delivery, transportation, computer-assisted legal research, photocopying, airfare, meals, and lodging. In addition, McDermott professionals also may charge their overtime meals and overtime transportation to the Debtors consistent with prepetition practices.

22. McDermott will charge no more than $0.10 per page for standard duplication services in connection with these Chapter 11 Cases. McDermott does not charge its clients for incoming facsimile transmissions. McDermott has negotiated a discounted rate for Westlaw and Lexis Nexis computer-assisted legal research.

**PREPETITION PAYMENTS AND COMPENSATION**

23. Prior to the Petition Date, McDermott rendered legal services to the Debtors in connection with and in contemplation of the Debtors' chapter 11 filing. As is set forth in greater detail in the Azman Declaration, the Debtor deposited with McDermott a total retainer of $1,000,000.00 (the "Retainer")[3] to cover fees and expenses actually incurred, as well as anticipated to be incurred, in connection with the Debtors' restructuring and the commencement of these Chapter 11 Cases. As set forth in the Azman Declaration, McDermott drew down on the

---

[3] McDermott continues to hold the Retainer in a trust account for the Debtors. Such amount will constitute a general retainer as security for post-petition services and expenses.

8

Retainer in satisfaction of fees and expenses actually incurred and anticipated to be incurred through the Petition Date. As of the Petition Date, $161,253.39 of the Retainer remains available and unused. The Debtor proposes that the remainder of the Retainer be treated as an evergreen retainer to be held by McDermott as security throughout these Chapter 11 Cases and be applied to outstanding fees and expenses that the Court has approved through any final fee application filed by McDermott. Any remaining amounts after such application, shall be returned to the Debtors or such other entity as the Debtors or the Court so designates.

24. In this District, evergreen retainer agreements reflect normal business terms in the marketplace. *See In re Insilco Tech., Inc.*, 291 B.R. 628, 634 (Bankr. D. Del. 2003) ("[T]he practice [of receiving security retainers] in this district has been engaged in since at least the early 1990's."). Moreover, McDermott believes that its request for approval of an evergreen retainer in these cases satisfies the five-part test articulated by Judge Carey in *Insilco*.

25. *First*, McDermott submits that the proposed terms of its engagement reflect normal business terms in the marketplace. *Second*, McDermott submits that both it and the Debtors are sophisticated business entities that have negotiated the Retainer at arm's-length. *Third*, the Debtors believe that approval of the Retainer as an evergreen retainer is in the best interests of the Debtors' estates. *Fourth*, McDermott is currently unaware of any creditor who opposes the approval of the Retainer as an evergreen retainer. *Fifth*, given the size, circumstances, and posture of these Chapter 11 Cases, McDermott believes approval of the Retainer as an evergreen retainer (particularly in light of the very modest size of the Retainer) provides McDermott with an appropriate level of risk minimization in connection with the payment of its prospective fees and costs in connection with these Chapter 11 Cases.

26. Given the extensive nature of the services that McDermott will provide to the Debtors, the retention of McDermott under an evergreen retainer is appropriate and necessary to enable the Debtors to faithfully execute their duties as debtors and debtors in possession and to implement the reorganization of the Debtor.

27. Other than as set forth in the Azman Declaration, no arrangement is proposed between the Debtors and McDermott for compensation to be paid in this Chapter 11 Case. Consistent with Bankruptcy Rule 2016(b), McDermott has informed the Debtors that it has no agreement with any other entity to share any compensation received, nor will any be made, except as permitted under Bankruptcy Code section 504(b)(1).

## MCDERMOTT'S DISINTERESTEDNESS

28. To the best of the Debtors' knowledge, and except as otherwise set forth in this Application and in the Azman Declaration, McDermott (a) does not have any connection with any of the Debtors, their creditors, or any other party in interest, or their respective counsel and accountants, the U.S. Trustee or any person employed in the office of the same, or any judge in the United States Bankruptcy Court or District Court for the District of Delaware or any person employed in the offices of the same; (b) is a "disinterested person," as such term is defined in Bankruptcy Code section 101(14), as modified by Bankruptcy Code section 1107(b); and (c) does not hold or represent an interest adverse to the Debtors' estates.

29. As set forth in the Azman Declaration, McDermott has in the past represented, currently represents, and likely in the future will represent certain parties in interest in these Chapter 11 Cases in matters unrelated to the Debtors, these Chapter 11 Cases, or such entities' claims against or interests in the Debtors.

30. The Debtors understand that, except as otherwise set forth in the Azman Declaration:

(a) neither McDermott nor any attorney at the Firm holds or represents an interest adverse to the Debtors' estates;

(b) neither McDermott nor any attorney at the Firm is or was a creditor or an insider of the Debtors, except that McDermott previously rendered legal services to the Debtors for which it has been compensated as discussed above;

(c) neither McDermott nor any attorney at the Firm is or was, within two years before the Petition Date, a director, officer, or employee of the Debtors; and

(d) McDermott does not have an interest materially adverse to the interest of the estates or of any class of creditors or equity security holders, by reason of any direct or indirect relationship to, connection with, or interest in the Debtors, or for any other reason.

31. In view of the foregoing, the Debtors believe that McDermott is a "disinterested person" within the meaning of Bankruptcy Code section 101(14), as modified by Bankruptcy Code section 1107(b).

## BANKRUPTCY RULE 5002

32. In addition, as set forth in the Azman Declaration, and except as described therein, no director, counsel, or associate of McDermott is a relative of, or has been so connected with, any United States Bankruptcy Judge for the District of Delaware, any of the District Court Judges for the District of Delaware who handle bankruptcy cases, the United States Trustee for Region 3, the Assistant United States Trustee for the District of Delaware, the attorneys for the United States Trustee assigned to these Chapter 11 Cases, or any other employee of U.S. Trustee that would render McDermott's retention in these Chapter 11 Cases improper under Bankruptcy Rule 5002. Accordingly, the appointment of McDermott is not prohibited by Bankruptcy Rule 5002.

33. Throughout these Chapter 11 Cases, McDermott will review its files to ensure that no conflicts or other disqualifying circumstances exist or arise. If any new relevant facts or relationships are discovered or arise, McDermott will use reasonable efforts to identify such further developments and will promptly file a supplemental declaration, as required by Bankruptcy Rule 2014(a).

**BASIS FOR RELIEF REQUESTED**

34. The Debtors seek to retain McDermott as their counsel pursuant to Bankruptcy Code section 327(a), which provides that a debtor, subject to Court approval:

> [M]ay employ one or more counsel, accountants, appraisers, auctioneers, or other professional persons, that do not hold or represent an interest adverse to the estate, and that are disinterested persons, to represent or assist the [debtor] in carrying out the [debtor]'s duties under this title.

11 U.S.C. § 327(a).

35. Bankruptcy Rule 2014(a) requires that an application for retention include:

> [S]pecific facts showing the necessity for the employment, the name of the [firm] to be employed, the reasons for the selection, the professional services to be rendered, any proposed arrangement for compensation, and, to the best of the applicant's knowledge, all of the [firm's] connections with the debtor, creditors, any other party in interest, their respective counsel and accountants, the United States trustee, or any person employed in the office of the United States trustee.

Fed. R. Bankr. P. 2014.

36. The Debtors submit that for all the reasons stated above and in the Azman Declaration, the retention and employment of McDermott as counsel to the Debtors is warranted. Further, as stated in the Azman Declaration, McDermott is a "disinterested person" within the meaning of Bankruptcy Code section 101(14), as required by Bankruptcy Code section 327(a), and does not hold or represent an interest adverse to the Debtors' estates, and has no connection with any of the Debtors, their creditors, or any other party in interest, or their respective counsel and accountants, the U.S. Trustee, any Judge of this Court, any judge in the United States

Bankruptcy Court or District Court for the District of Delaware (the "<u>District Court</u>"), or any person employed in the offices of the foregoing entities same, except as otherwise disclosed in the Azman Declaration.

## **NOTICE**

37. The Debtors will provide notice of this Application to the following parties: or their respective counsel: (a) the U.S. Trustee; (b) proposed counsel for the Committee; and (c) any party that requests service pursuant to Bankruptcy Rule 2002. The Debtors submit that no other or further notice need be given.

## **NO PRIOR REQUEST**

38. No prior request for the relief sought in this Application has been made to this or any other court.

*[Remainder of page intentionally left blank]*

WHEREFORE, the Debtors respectfully request that the Court enter the Proposed Order, substantially in the form attached hereto as <u>Exhibit A</u>, authorizing the Debtors to employ and retain McDermott Will & Emery LLP as their counsel, effective as of the Petition Date, and grant such other relief as the Court deems appropriate.

Dated: September 14, 2023
      New York, New York

*Michael Wyse* (DocuSigned)
Mike Wyse
Solely in his Capacity as a Member of the Debtors' Special Restructuring Committee