**<u>Exhibit B</u>**

**Azman Declaration**

## IN THE UNITED STATES BANKRUPTCY COURT
## FOR THE DISTRICT OF DELAWARE

| | |
|---|---|
| In re: | Chapter 11 |
| Prime Core Technologies Inc., *et al.*, | Case No. 23-11161 (JKS) |
| Debtors.[1] | (Jointly Administered) |

**DECLARATION OF DARREN AZMAN IN SUPPORT OF
APPLICATION OF DEBTORS FOR ENTRY OF AN ORDER AUTHORIZING
THE RETENTION AND EMPLOYMENT OF MCDERMOTT WILL & EMERY LLP
AS COUNSEL, PURSUANT TO BANKRUPTCY CODE SECTION 327(a),
BANKRUPTCY RULES 2014(a) AND 2016, AND LOCAL RULE 2014-1,
EFFECTIVE AS OF THE PETITION DATE**

I, Darren Azman, being duly sworn, state the following under penalty of perjury:

1.     I am a partner in the law firm of McDermott Will & Emery LLP ("McDermott" or the "Firm"), located at One Vanderbilt Avenue, New York, NY 10017-3852. I am a member in good standing of the Bars of the State of New York and the Commonwealth of Massachusetts, and I have been admitted to practice in the United States District Courts for the District of Colorado, the District of Massachusetts, the Eastern and Southern Districts of New York, and the United States Bankruptcy Court for the Southern District of New York. There are no disciplinary proceedings pending against me.

2.     I submit this declaration (the "Declaration") in support of the *Application of the Debtors for Entry of an Order Authorizing the Retention and Employment of McDermott Will & Emery LLP as Counsel Pursuant to Bankruptcy Code section 327(a), Bankruptcy Rules 2014(b)*

---

[1]    The Debtors in these Chapter 11 Cases, along with the last four digits of each debtor's federal tax identification number are: Prime Core Technologies Inc. (5317); Prime Trust, LLC (6823); Prime IRA LLC (8436); and Prime Digital, LLC (4528). The Debtors' service address is 10845 Griffith Peak Dr., #03-153, Las Vegas, NV 89135.

*and 2016, and Local Rule 2014-1, Effective as of the Petition Date* (the "Application").[2] Except

as otherwise noted, I have personal knowledge of the matters set forth herein.

## McDermott's Qualifications

3.      The Debtors selected McDermott as their restructuring counsel because of

McDermott's expertise with debtors' and creditors' rights and business reorganizations under

chapter 11 of the Bankruptcy Code, particularly in the cryptocurrency sector. The Debtors

believe that McDermott has assembled a highly-qualified team of professionals and

paraprofessionals to provide services to the Debtors during these Chapter 11 Cases. The Debtors

believe further that McDermott has the knowledge and experience necessary to deal effectively

with the issues that will arise in these Chapter 11 Cases, and that McDermott's continued

representation of the Debtors is critical to the success of the Debtors' reorganization.

4.      McDermott, or attorneys currently employed by McDermott, have represented

debtors in many recent cases in this and other jurisdictions, including, among others:  *In re*

*Sunland Medical Foundation*, No. 23-80000 (MVL) (Bankr. N.D. Tex. Aug. 29, 2023); *In re*

*Envistacom, LLC*, Case No. 23-52696 (Bankr. N.D. Ga. June 26, 2023); *In re Volunteer Energy*

*Services Inc.*, Case No. 22-50804 (Bankr. S.D. Ohio Apr. 26, 2022); *In re Red River Waste*

*Solutions, LP*, Case. No. 21-42423 (Bankr. N.D. Tex. Jan. 20, 2022); *In re Gulf Coast Health*

*Care, LLC*, Case No. 21-11336 (KBO) (Bankr. D. Del. Nov. 19, 2021); *In re Quorum Health*

*Corp.*, 20-10766 (KBO) (Bankr. D. Del. May 1, 2020); *In re NinePoint Medical, Inc.*, Case No.

20-12618 (KBO) (Bankr. D. Del. Oct. 16, 2020); *In re Melinta Therapeutics, Inc.*, Case No. 19-

12748 (LSS) (Bankr. D. Del. Dec. 27, 2019); *In re Furie Operating Alaska, LLC*, Case No. 19-

---

[2]     Capitalized terms used but not defined herein have the meanings given to such terms in the Application.

11781 (LSS) (Bankr. D. Del. Aug. 9, 2019); and *In re SportCo Holdings, Inc.*, Case No. 19-11299 (LSS) (Bankr. D. Del. June 10, 2019).

5.      In addition, McDermott has represented official committees and/or wind down trusts in *In re Cred Inc., et al.*, Case No. 20-12836 (JTD) (Bankr. D. Del.) and *In re Voyager Digital Holdings, Inc., et al.,* Case No. 22-10943 (MWE) (Bankr. S.D. N.Y.), and has otherwise been involved in most, if not all, of the other cryptocurrency chapter 11 cases filed in the past two years.

6.      On July 20, 2023, John Guedry, in his capacity as receiver for the Debtors, retained McDermott to provide restructuring and other legal advice on behalf of the Debtors.  On July 31, 2023, John Guedry executed a new engagement letter with McDermott to clarify that McDermott's clients in connection with the engagement were the Debtors.

7.      In preparing for its representation of the Debtors in these Chapter 11 Cases, McDermott has become familiar with the Debtors' business and many of the potential legal issues that may arise in the context of these Chapter 11 Cases. The Debtors believe that McDermott is both well-qualified and uniquely able to represent the Debtors in these Chapter 11 Cases in an efficient and timely manner.

**<u>Services to Be Provided</u>**

8.      Subject to further order of the Court and the Engagement Letter, the Debtors retained McDermott to render, without limitation, the following legal services:

a.      advising the Debtors with respect to their powers and duties as debtors-in-possession in the continued management and operation of their business and properties;

b.      advising and consulting on the conduct of these Chapter 11 Cases, including all of the legal and administrative requirements of operating in chapter 11;

c.      attending meetings and negotiating with representatives of the Debtors' creditors and other parties in interest;

d.      taking all necessary actions to protect and preserve the Debtors' estates, including prosecuting actions on the Debtors' behalf, defending any action commenced against the Debtors, and representing the Debtors in negotiations concerning litigation in which the Debtors are involved, including objections to claims filed against the Debtors' estates;

e.      preparing pleadings in connection with these Chapter 11 Cases, including motions, applications, answers, orders, reports, and papers necessary or otherwise beneficial to the administration of the Debtors' estates;

f.      advising the Debtors in connection with any potential sale of assets;

g.      appearing before the Court and any appellate courts to represent the interests of the Debtors' estates;

h.      advising the Debtors regarding tax matters;

i.      advising the Debtors regarding insurance and regulatory matters;

j.      taking any necessary action on behalf of the Debtors to negotiate, prepare, and obtain approval of a disclosure statement and confirmation of a chapter 11 plan and all documents related thereto; and

k.      performing all other necessary legal services for the Debtors in connection with the prosecution of these Chapter 11 Cases, including: (i) analyzing the Debtors' leases and contracts and the assumption and assignment or rejection thereof; (ii) analyzing the validity of liens against the Debtors; and (iii) advising the Debtors on corporate and litigation matters.

9.      In addition to the services set forth above, McDermott may perform other services assigned to it by the Debtors. To the extent McDermott determines that such services fall outside the scope of services historically or generally performed by McDermott as counsel in connection with these Chapter 11 Cases, McDermott will file a supplemental declaration.

## **Professional Compensation**

10.     McDermott intends to apply for compensation for professional services rendered on an hourly basis and reimbursement of expenses incurred in connection with these Chapter 11 Cases, subject to the Court's approval and in compliance with applicable provisions of the Bankruptcy Code, the Bankruptcy Rules, the Local Rules, and any other applicable procedures and orders of the Court. The hourly rates and corresponding rate structure McDermott will use in these Chapter 11 Cases are the same as the hourly rates and corresponding rate structure that

McDermott uses in other restructuring matters, as well as similar corporate and litigation matters, whether in court or otherwise, regardless of whether a fee application is required. These rates and the rate structure reflect that such restructuring and other complex matters typically are national in scope and involve great complexity, high stakes, and severe time pressures.

11.    McDermott operates in a national marketplace for legal services in which rates are driven by multiple factors relating to the individual lawyer, his or her area of specialization, the Firm's expertise, performance, and reputation, the nature of the work involved, and other factors.

12.    McDermott's current hourly rates for matters related to these Chapter 11 Cases range as follows:

| Billing Category | U.S. Range |
|---|---|
| Partners | $1,170-$2,330 |
| Senior Counsel | $895-$1,820 |
| Employee Counsel | $900-$1,685 |
| Associates | $655-$1,125 |
| Paraprofessionals | $240-$675 |

13.    McDermott's hourly rates are set at a level designed to compensate McDermott fairly for the work of its counsel and paraprofessionals and to cover fixed and routine expenses. Hourly rates vary with the experience and seniority of the individuals assigned. These hourly rates are subject to periodic adjustments to reflect economic and other conditions.[3]

14.    It is McDermott's policy to charge its clients in all areas of practice for identifiable, non-overhead expenses incurred in connection with the client's case that would not have been incurred except for representation of that particular client. It is also McDermott's

---

[3]    For example, like many of its peer law firms, McDermott increases the hourly billing rate of counsel and paraprofessionals in the form of: (i) step increases historically awarded in the ordinary course on the basis of advancing seniority and promotion and (ii) periodic increases within each attorney's and paraprofessional's current level of seniority. The step increases do not constitute "rate increases" (as the term is used in the Revised UST Guidelines). As set forth in the Proposed Order, McDermott will provide ten business days' notice to the Debtors, the U.S. Trustee, and the Committee before implementing any periodic increases, and shall file such notice with the Court.

policy to charge its clients only the amount actually incurred by McDermott in connection with

such items. Examples of such expenses include postage, overnight mail, courier delivery,

transportation, computer-assisted legal research, photocopying, airfare, meals, and lodging. In

addition, McDermott professionals also may charge their overtime meals and overtime

transportation to the Debtors consistent with prepetition practices.

15.     McDermott will charge no more than $0.10 per page for standard

duplication services in connection with these Chapter 11 Cases.  McDermott does not charge its

clients for incoming facsimile transmissions.  McDermott has negotiated a discounted rate for

Westlaw and Lexis Nexis computer-assisted legal research.

### Compensation Received by McDermott From The Debtors

16.     Prior to the Petition Date, McDermott rendered legal services to the

Debtors in connection with and in contemplation of the Debtors' chapter 11 filing. As set forth in

more detail below, the Debtors deposited with McDermott a total retainer of $1,000,000.00 (the

"Retainer")[4] to cover fees and expenses actually incurred, as well as anticipated to be incurred, in

connection with the Debtors' restructuring and commencement of these Chapter 11 Cases. Also

as set forth in more detail below, McDermott drew down on the Retainer in satisfaction of fees

and expenses actually incurred and anticipated to be incurred through the Petition Date. As of the

Petition Date, $161,253.39 of the Retainer remains available and unused.

17.     During the 90-day period prior to the Petition Date, the Debtors paid advanced

payment retainers in the following amounts to McDermott:

---

[4]     McDermott continues to hold the Retainer in a trust account for the Debtors. Such amount will constitute a general
retainer as security for post-petition services and expenses.

| Type of Transaction | Date | Amount of Fees and Expenses Listed on Statement | Amount of Advance Payment Retainer Received | Advance Payment Retainer Balance |
|---|---|---|---|---|
| Receipt of Additional Advance Payment Retainer | 7/24/2023 | | $75,000.00 | $75,000 |
| Receipt of Additional Advance Payment Retainer | 7/25/2023 | | $50,000.00 | $125,000 |
| Receipt of Additional Advance Payment Retainer | 8/1/2023 | | $400,000.00 | $525,000.00 |
| Receipt of Additional Advance Payment Retainer | 8/8/2023 | | $475,000.00 | $1,000,000.00 |
| Application of Advance Payment Retainer | 8/14/2023 | $785,894.11 | | $214,105.89 |
| Receipt of Additional Advance Payment Retainer | 8/14/2023 | $52,852.50 | | $161,253.39 |

18.     As of the Petition Date, the Debtors did not owe McDermott any amounts for legal services rendered before the Petition Date. Although certain expenses and fees may have been incurred but not yet applied to McDermott's advance payment retainer, McDermott's total advance payment retainer exceeded fees and expenses incurred (on a "rates times hours" and "dates of expenses incurred" basis) prior to the Petition Date.

19.     McDermott requests that the remainder of the Retainer be treated as an evergreen retainer to be held by McDermott as security throughout these Chapter 11 Cases and be applied to outstanding fees and expenses that the Court has approved through any final fee application filed by McDermott.  Any remaining amounts after such application shall be returned to the Debtors or such other entity as the Debtors or the Court so designates.

20.     Pursuant to Bankruptcy Rule 2016(b), McDermott has neither shared nor agreed to share (a) any compensation it has received or may receive with another party or person, other than with the partners, associates, and contract counsel associated with McDermott or (b) any compensation another person or party has received or may receive.

## Statement Regarding U.S. Trustee Guidelines

21.　　McDermott shall apply for compensation and professional services rendered and reimbursement of expenses incurred in connection with the Chapter 11 Cases in compliance with Bankruptcy Code sections 330 and 331 and applicable provisions of the Bankruptcy Rules, the Local Rules, and such other procedures as may be fixed by order of this Court. McDermott also intends to make a reasonable effort to comply with the U.S. Trustee's requests for information and additional disclosures as set forth in the *Guidelines for Reviewing Applications for Compensation and Reimbursement of Expenses Filed under 11 U.S.C. § 330 by Counsel in Larger Chapter 11 Cases Effective as of November 1, 2013*, both in connection with the Application and the interim and final fee applications to be filed by the McDermott in these Chapter 11 Cases.

## Attorney Statement Pursuant to Revised UST Guidelines

22.　　The following is provided in response to the request for additional information set forth in Paragraph D.1. of the Revised UST Guidelines:

　　a.　　**Question:** Did McDermott agree to any variations from, or alternatives to, McDermott's standard billing arrangements for this engagement?

　　b.　　**Answer:** No. McDermott and the Debtors have not agreed to any variations from, or alternatives to, McDermott's standard billing arrangements for this engagement.

　　c.　　**Question:** Do any of the McDermott professionals in this engagement vary their rate based on the geographic location of the Debtors' Chapter 11 Cases?

　　d.　　**Answer:** No. The hourly rates used by McDermott in representing the Debtors are consistent with the rates that McDermott charges other comparable chapter 11 clients, regardless of the location of the chapter 11 case.

　　e.　　**Question:** If McDermott has represented the Debtors in the 12 months prepetition, disclose McDermott's billing rates and material financial terms for the prepetition engagement, including any adjustments during the 12 months prepetition. If McDermott's billing rates and material financial

8

terms have changed postpetition, explain the difference and the reasons for the difference.

f.    **Answer:** McDermott's current hourly rates for matters related to these Chapter 11 Cases range as follows:

| Billing Category | U.S. Range |
|------------------|------------|
| Partners | $1,170-$2,330 |
| Senior Counsel | $895-$1,820 |
| Employee Counsel | $900-$1,685 |
| Associates | $655-$1,125 |
| Paraprofessionals | $240-$675 |

g.    **Question:** Have the Debtors approved McDermott's budget and staffing plan, and, if so, for what budget period?

h.    **Answer:** McDermott and the Debtors have developed a 13-week cash flow forecast and budget for these Chapter 11 Cases, which involved consideration of McDermott's staffing plans and estimated professional fees to be incurred in connection with the forecast.

## McDermott's Disinterestedness

23.    In connection with its proposed retention by the Debtors in these Chapter 11 Cases, McDermott undertook to determine whether it had any conflicts or other relationships that might cause it not to be disinterested or to hold or represent an interest adverse to the Debtors. Specifically, McDermott obtained from the Debtors and their representatives the names of individuals and entities that may be parties in interest in these Chapter 11 Cases (the "Potential Parties in Interest"), which parties are listed on Schedule 1 hereto. McDermott has searched its electronic database for its connections to the entities listed on Schedule 1. To the extent that I have been able to ascertain that McDermott has been retained within the last three years to represent any of the Potential Parties in Interest in matters unrelated to these Chapter 11 Cases, such facts are disclosed on Schedule 2 attached hereto.[5]

---

[5]    As referenced in Schedule 2, the term "current client" means a client to whom time was posted in the twelve months preceding the Petition Date. As referenced in Schedule 2, the term "former client" means a client to whom time was posted between twelve and 36 months preceding the Petition Date, but for whom no time has been posted in the 12 months preceding the Debtors' Petition Date. As referenced in Schedule 2, the term "closed client" means a client to whom time was posted in the 36 months preceding the Petition Date, but for which the

24.     McDermott and certain of its partners and associates may have in the past represented, may currently represent, and likely in the future will represent parties in interest in these Chapter 11 Cases in connection with matters unrelated (except as otherwise disclosed herein) to the Debtors and these Chapter 11 Cases. The information listed on <u>Schedule 1</u> may have changed without our knowledge and may change during the pendency of these Chapter 11 Cases. Accordingly, McDermott will update this Declaration as necessary and when McDermott becomes aware of additional material information.

25.     The following is a list of the categories that McDermott has searched:  the Debtors; predecessors and related entities to the Debtors; current and former officers and directors of the Debtors, along with their board of managers; equity holders holding 1% or more of common equity as of the Petition Date; bankruptcy professionals and ordinary course professionals; banks, bondholders, and other lenders; insurers, insurance agents, and sureties; litigation counterparties; major suppliers and vendors; the top 50 creditors; taxing and other governmental authorities; and members of the creditors' committee.[6]

26.     To the best of my knowledge, McDermott (a) is a "disinterested person" within the meaning of Bankruptcy Code section 101(14), as required by Bankruptcy Code section 327(a), and does not hold or represent an interest adverse to the Debtors' estates and (b) has no connection with any of the Debtors, their creditors, or any other party in interest, or their respective counsel and accountants, the U.S. Trustee, or any person employed in the office of the

---

client representation has been closed. As a general matter, McDermott discloses connections with former clients or closed clients for whom time was posted in the last 36 months, but does not disclose connections if time was billed more than 36 months before the Petition Date.

[6]     McDermott's inclusion of parties in the following Schedules is solely to illustrate McDermott's conflict search process and is not an admission that any party has a valid claim against the Debtors or that any party properly belongs in the schedules or has a claim or legal relationship to the Debtors of the nature described in the schedules.

same, or any judge in this Court, the District Court, or any person employed in the offices of the foregoing, except as may be disclosed in this Declaration.

27.     For the avoidance of doubt, McDermott will not commence a cause of action in these Chapter 11 Cases against the parties listed on <u>Schedule 2</u> that are current or ongoing clients of McDermott unless McDermott has an applicable waiver on file or first receives a waiver from such party allowing McDermott to commence such an action. To the extent that a waiver does not exist or is not obtained from such client, and it is necessary for the Debtors to commence an action against that client, the Debtors will be represented in such particular matter by conflicts counsel.

28.     Except as disclosed in the "Specific Disclosures" section below, none of the clients listed on <u>Schedule 2</u> represent more than 1% of McDermott's fee receipts for the twelve-month period preceding the Petition Date.

29.     McDermott's conflicts search of the parties in interest listed on <u>Schedule 1</u> (that McDermott was able to locate using its reasonable efforts) reveals, to the best of McDermott's knowledge, that those McDermott attorneys and paraprofessionals who previously worked at other law firms that represented certain potential parties in interest in these Chapter 11 Cases have not worked on matters relating to the Debtors' restructuring efforts while at McDermott.

30.     Based on the conflicts search conducted to date and described herein, to the best of my knowledge, neither McDermott, nor any partner or associate thereof, insofar as I have been able to ascertain, has any connection with any of the Debtors, their creditors, or any other party in interest, or their respective counsel and accountants, the U.S. Trustee, any judge in this Court or the District Court,  or any person employed in the offices of the same, except as disclosed or otherwise described herein.

31.     McDermott will review its files periodically during the pendency of these Chapter 11 Cases to ensure that no conflicts or other disqualifying circumstances exist or arise. If any new relevant facts or relationships are discovered or arise, McDermott will use reasonable efforts to identify such further developments and will promptly file a supplemental declaration, as required by Bankruptcy Rule 2014(a). If necessary, McDermott will arrange for an "ethical wall" with respect to any McDermott attorney who worked on a matter giving rise to a conflict or arrange for representation of the Debtors by conflicts counsel.

32.     Generally, it is McDermott's policy to disclose clients in the capacity that they first appear in a conflicts search. For example, if a client already has been disclosed in this Declaration in one capacity (*e.g.*, a customer), and the client appears in a subsequent conflicts search in a different capacity (*e.g.*, a vendor), McDermott does not disclose the same client again in supplemental declarations, unless the circumstances are such in the latter capacity that additional disclosure is required.

33.     Certain insurance companies pay the legal bills of McDermott clients. Some of these insurance companies may be involved in these Chapter 11 Cases. None of these insurance companies, however, are McDermott clients as a result of the fact that they pay legal fees on behalf of McDermott's clients.

## Specific Disclosures

34.     As specifically set forth below and in the attached exhibits, McDermott represents certain of the Debtors' creditors, equity security holders, or other parties in interest in ongoing matters unrelated to the Debtors. None of the representations described herein are materially adverse to the interests of the Debtors' estates, and, representations of any of the Debtors' creditors, equity security holders, or other parties in interest accounts for less than 1% of

McDermott's fees received for the twelve-month period preceding the Petition Date.[7]  Moreover,

pursuant to section Bankruptcy Code 327(c), McDermott is not disqualified from acting as the

Debtors' counsel merely because it represents certain of the Debtors' creditors, equity security

holders, or other parties in interest in matters unrelated to the Debtors and these Chapter 11

Cases.

**A.    Connections to Certain Specified Parties**

35.    As disclosed in <u>Schedule 2</u>, McDermott currently represents, or formerly has

represented, BMO Harris Bank National Association, BMO Asset Management Corporation,

BMO Trust Company, Fidelity Investments, JP Morgan Chase, JP Morgan Chase Bank N.A.,

J.P. Morgan Securities LLC, JP Morgan Chase Bank, N.A. (London Branch), Soros Fund

Management LLC, and William Blair & Co. and/or certain of their affiliates (collectively, the

"<u>Specified Parties</u>") in matters unrelated to the Debtors or these Chapter 11 Cases.

36.    McDermott represents Ripple Labs, Inc. ("<u>Ripple</u>") in matters unrelated to these

Chapter 11 Cases.  It has been publicly reported that Ripple may be acquiring Fortress

Trust.  McDermott is one of the law firms representing Ripple in that matter.  Fortress Trust

employs a number of former executives of the Debtors.  The Debtors have sought discovery from

some of those former executives.  McDermott will not represent Ripple or Fortress in any matter

related to the Chapter 11 Cases.

37.    David Guedry, a Partner in McDermott's Dallas office, is the brother of John

Guedry, who is one of the three members of the Special Committee of the Debtors.

---

[7]    Specific percentages will be disclosed to the U.S. Trustee upon request.

**B.**     **Connections to Vendors.**

38.     As disclosed in <u>Schedule 2</u>, certain of the Debtors' vendors are current, former, or closed clients of McDermott in matters unrelated to the Debtors or these Chapter 11 Cases. McDermott does not currently represent such vendors in these Chapter 11 Cases, or any matters related to the Debtors.

**C.**     **Connections to Other Chapter 11 Professionals.**

39.     As disclosed on <u>Schedule 2</u>, McDermott currently represents, or formerly has represented, certain professionals that the Debtors seek to retain in connection with these Chapter 11 Cases or their affiliates, subsidiaries, and associated entities. All McDermott representations of these entities have been in matters unrelated to the Debtors and these Chapter 11 Cases. McDermott has not represented and will not represent any such professionals in connection with any matter in these Chapter 11 Cases.

**D.**     **McDermott Attorney & Employee Investments.**

40.     From time to time, McDermott partners, of counsel, associates, and employees may personally directly acquire a debt or equity security of a company which may be (or become) one of the Debtors, their creditors, or other parties in interest in these Chapter 11 Cases. McDermott has a long-standing policy prohibiting counsel and employees from using confidential information that may come to their attention in the course of their work. In this regard, all McDermott counsel and employees are barred from trading in securities with respect to which they possess confidential information.

**E.**     **Connections to Court Personnel**

41.     One of McDermott's restructuring associates, Jake Jumbeck, was trained in 2018, for a clerkship for the Honorable Chief Judge A. Benjamin Goldgar, United States Bankruptcy Court for the Northern District of Illinois, by outgoing clerk Rosa Sierra-Fox. Ms. Sierra-Fox

14

currently is an attorney at the U.S. Trustee's Office in Delaware.  I make this disclosure; however, I do not believe Mr. Jumbeck's representation of the Debtors before this Court poses any conflict of interest.

<u>**Affirmative Statement of Disinterestedness**</u>

42.      Based on the conflicts search conducted to date and described herein, to the best of my knowledge and insofar as I have been able to ascertain, McDermott (a) does not hold or represent any interest adverse to the Debtors' estates, (b) is a "disinterested person" within the meaning of Bankruptcy Code section 101(14), as required by Bankruptcy Code section 327(a), (c) does not hold or represent an interest adverse to the Debtors' estates, and (d) has no connection with any of the Debtors, their creditors, or any other party in interest, the U.S. Trustee, any judge in this Court or the District Court, or any person employed in the offices of the foregoing, except as disclosed or otherwise described herein.

Pursuant to 28 U.S.C. § 1746, I declare under penalty of perjury that the foregoing is true and correct to the best of my knowledge and belief.

Dated: September 14, 2023                    Respectfully submitted,

                                             */s/ Darren Azman*
                                             Darren Azman
                                             Partner
                                             McDermott Will & Emery LLP

**<u>Schedule 1</u>**

## Schedule 1

## Potential Parties In Interest

### Debtors

Prime Core Technologies Inc.
Prime Trust, LLC
Prime IRA LLC
Prime Digital, LLC

### Debtors' Predecessors and Related Entities

Banq., Inc.
Issuances Inc.
Finovation Systems, LLC
JumpStart Securities, LLC
FundAmerica, LLC
Secure Digital Notes B.T.
Secure Cash Sweep B.T.

### Current and Former Officers & Directors and Board of Managers

Amanda Ortega
Anthony Botticella
Bob Zhao
Bond Nthenge
Brad Epstein
Brent Beeman
David Ko
David Pigott
Desta Getachew
Dmitry Dakhnovsky
Elizabeth Bildner
Erin Holloway
Eugene Lao
George Georgiades
George Thomas Lewis Brandl
J. Max Jiles
Jeffrey Smits
Jennifer Blanco
Joe Capone
John Zelazny
Jon P. Jiles
Jor Law

### Current and Former Officers & Directors and Board of Managers cont'd

Kristin Smith
Mary Kate Baker
Matt Parrella
Melissa Bonner
Melissa Ryken Westhoff
Michael Garrett
Michael Julian
Michael Smith
Nicole Yates
Nicoleta Purcell
Nirvana Patel
Noah Green
Patty Wang
Philip D. LaChapelle
Ren Riley
Rob Desroches
Robb Balaban
Robert List
Rodrigo Vicuna
Roger Wang
Russel Doolittle
Sara Xi
Scott Purcell
Scott Trainor
Stephen Cheng
Jim Wimberly
Thomas Gonser
Thomas Pageler
Timothy Bowman
Whitney White
Yunan (Jeffrey) Ren
Zane Busteed
Aja Heise
Tiago Requeijo

### Equity Holders (Holders of 1% or More of Common Equity as of Petition Date)

10T DAE Expansion Fund, LP

**Equity Holders cont'd**

10T Fund A, LP
10T Fund, LP
Akkadian Ventures V, LP
Brue2Ventures, LLC
Clearvoyance Holdings
Commerce Ventures III, L.P.
Deborah G Jiles Trust
Fidelity Information Services, LLC
Fin VC Horizons II, LP – Series VIII
GateCap Ventures II LP
GateCap Ventures LP
Gateway VCA 0521, LLC
Harvest Growth Capital III LLC
Justin R. Law Irrevocable Trust Dated
October 22, 2021
Kraken Ventures Fund I LP
Lawrence Sue Kok Law and Fui Ming
Thian, Co-Trustees of the 2021
Lawrence Sue Kok Law and Fui Ming
Thian, Co-Trustees of the 2021 Jaden T.
Law Irrevocable Trust Dated October 22,
2021
Mercato Traverse Prime Core Co-Invest,
LLC
Mercato Traverse SPV 2, A Series of
Mercato Coinvestments, LLC
Mercato Partners Traverse IV QP, L.P.
Mercato Partners Traverse IV, L.P.
The Ko Family Trust
UGH II Affiliates II, LLC
N9 Advisors, LLC
Nevcaut Ventures Fund I, LP
OKC USA Holding Inc.
Palindrome Master Fund LP
Quantum Partners LP
Senior Comfort Corp
Seven Peaks Ventures Fund II, LP
SPV – Prime Core, LLC
STCAP Partners I, L.P.
The J. Max Jiles Trust
The Ko Family Trust UGF II Affiliates II,
LLC
Timus Capital, LLC

**Equity Holders cont'd**

Triton Venture Capital Prime Trust Fund I
LP
University Growth Fund II, LP
William Blair MB Investments, LP – PCTI
2022 Series

**Bankruptcy Professionals and Ordinary
Course Professionals**

Ankura (f/k/a Chartwell Compliance) (MTL
Maintenance)
Cooley LLP
Cahill Gordon & Reindel LLP
Saltzman Mugan Dushoff, PLLC
K&L Gates LLP
Innovest
Goodwin Procter LLP
Crowell Moring
Fisher & Phillips LLP
LTL Attorneys LLP
Hyland Law PLLC
Robert Half
M3 Partners, LP
Galaxy Digital, Ltd.
Stretto
J.S. Held LLC
JVB Financial Group, LLC

**Banks, Bondholders, and Other Lenders**

Anchorage Digital
BMO Harris Bank, N.A.
Cross River Bank
Homium Inc.
J.P. Morgan Asset Management Inc.
JXN, LLC
Metatech Operating Company LLC
Lexicon Bank
Piermont Bank, N.A.
Western Alliance
Switch Reward Card DAO, LLC

**Insurers, Insurance Agents, and Sureties**

Allegheny Casualty Company
Alpha Surety – A Gallagher Company
Brian Nelson
Heather Vaughn
Philadelphia Insurance Company

**Litigation Counterparties**

Const LLC
Cynthia Edwards
Austin Ward
David Krevat
Nabil Mohamad
All MTL State Regulators
US DOJ Subpoena
NY DFS Enforcement
NY FID Audit

**Major Suppliers and Vendors**

Amazon Web Services, Inc. (AWS)
Fireblocks, Inc.
Microsoft Azure Inc.
Robert Half International, Inc.
Deel, Inc.
SoftServe, Inc.
Kori Boxdell
Electric Solidus, Inc. (d/b/a Swan Bitcoin)
Okcoin USA, Inc.

**Top 50 Creditors**

450 Investments
Allsec Technologies Limited
BAM Trading Services, Inc.
Beam Networks (Eco)
BKR International KB
Individual Name Redacted
Individual Name Redacted
Individual Name Redacted
CoinFLEX US LLC
CoinMetro OU
Const LLC
Cresent Financial Inc.
Dapper Labs Inc.

**Top 50 Creditors cont'd**

Individual Name Redacted
Individual Name Redacted
Individual Name Redacted
GCEX Holding Limited
Individual Name Redacted
Gth-Trade Group KFT
Individual Name Redacted
Individual Name Redacted
Individual Name Redacted
Individual Name Redacted
Individual Name Redacted
Individual Name Redacted
Kado Software, Inc.
Individual Name Redacted ntenot
Individual Name Redacted
Individual Name Redacted
Individual Name Redacted
Individual Name Redacted
Individual Name Redacted
Plutus Lending LLC
Individual Name Redacted
Reliz Ltd
Individual Name Redacted
Individual Name Redacted
Individual Name Redacted
Individual Name Redacted
Securitize, Inc.
Individual Name Redacted
Shima Capital Management LLC
Socure Inc.
Individual Name Redacted
TrustToken, Inc.
Individual Name Redacted
Vorka USA Corp.
Wonderpro Limited
Individual Name Redacted

**Taxing and Other Governmental Authorities**

State of Alaska
State of Arizona
State of Arkansas
State of Connecticut
State of Delaware

**Taxing and Other Governmental Authorities cont'd**

State of Hawaii
State of Idaho
State of Iowa
State of Kansas
State of Louisiana
State of Maine
State of Maryland
State of Massachusetts
State of Michigan
State of Minnesota
State of Mississippi
State of Nebraska
State of Nevada
State of New Jersey
State of New Mexico
State of New York
State of North Carolina
State of North Dakota
State of Ohio
State of Rhode Island
State of South Carolina
State of South Dakota
State of Texas
State of Vermont
State of West Virginia
Washington D.C.

**Members of the Creditors' Committee**

Yousef Abbasi
DMG Blockchain Solutions, Inc.
NetCents Technology, Inc.
Polaris Ventures
Stably Corporation
Austin Ward
Allsectech, Inc.

**Bankruptcy Judges for the District of Delaware, U.S. Trustee's Office Trustees and key staff for the District of Delaware, and Clerks of Court for the District of Delaware**

The Honorable John T. Dorsey
The Honorable Ashley M. Chan
The Honorable Karen B. Owens
The Honorable Chief Judge Laurie Selber Silverstein
The Honorable Mary F. Walrath
The Honorable Craig T. Goldblatt
The Honorable Brendan L. Shannon
The Honorable J. Kate Sickles
The Honorable Thomas M. Horan
Angelique Okita
Benjamin Hackman
Christine Green
Claire Brady
David Buchbinder
Denis Cooke
Diane Giordano
Dion Wynn
Edith A. Serrano
Hannah M. McCollum
Holly Dice
James R. O'Malley
Jane Leamy
Jeffrey Heck
Joseph Cudia
Joseph McMahon
Juliet Sarkessian
Karen Starr
Lauren Attix
Linda Casey
Linda Richenderfer
Marquietta Lopez
Michael Panacio
Michael West
Nyanquoi Jones
Ramona Harris
Ramona Vinson
Richard Schepacarter
Rosa Sierra-Fox
Shakima L. Dortch
Stacey Drechsler

**<u>Court Personnel cont'd</u>**

Stephen Grant
T. Patrick Tinker
Timothy J. Fox, Jr.
Una O'Boyle

## EXHIBIT 1 – CURRENT[1] CLIENTS[2]

| Name of Entity Searched | Name of Entity and/or Affiliate of Entity, that is a MWE Client |
|---|---|
| Amazon Web Services, Inc. (AWS) | Amazon.com |
| Ankura f.k.a. Chartwell Compliance (MTL Maintenance) | Ankura Consulting Group, LLC |
| BMO Harris Bank, N.A. | BMO Harris Bank National Association<br>BMO Asset Management Corporation<br>BMO Trust Company |
| Fidelity Information Services, LLC | Fidelity Investments |
| Goodwin Procter LLP | Goodwin Procter (UK) LLP |
| J.P. Morgan Asset Management Inc. | JP Morgan Chase<br>JPMorgan Chase Bank N.A.<br>J.P. Morgan Securities LLC<br>JPMorgan Chase Bank, N.A., London Branch |
| Microsoft Azure Inc. | Microsoft Corporation |
| Okcoin USA, Inc. | Okcoin USA Inc. |
| Quantum Partners LP | Soros Fund Management LLC |
| Robert Half | Robert Half International<br>Robert Half Deutschland GmbH & Co. KG |
| State of Massachusetts | Pro Bono Government Organization/Office of the Governor of MA |
| State of North Carolina | Atrium Health, Inc. |
| State of Texas | Cancer Prevention & Research Institute of the State of Texas/MD Anderson Cancer Center |
| William Blair MB Investments, LP – PCTI 2022 Series | William Blair & Co. |

---

[1]   The term "current client" means a client to whom time was posted in the 12 months preceding the Petition Date.

[2]   McDermott may currently represent or have previously represented certain affiliates of the entities disclosed herein, and the disclosure is accordingly broad in scope.

**EXHIBIT 2 – FORMER[3] CLIENTS**

| Name of Entity Searched | Name of Entity and/or Affiliate of Entity, that is a MWE Client |
|---|---|
| State of Michigan | Michigan State University |

---

[3] The term "former" client means a client to whom time was posted between 12 and 36 months preceding the Petition Date, but for whom no time has been posted in the 12 months preceding the Petition Date.

## EXHIBIT 3 – CLOSED CLIENTS[4]

| Name of Entity Searched | Name of Entity and/or Affiliate of Entity, that is a MWE Client |
|---|---|
| Michael Smith | Michael D. Smith |

---

[4]    The term "closed client" means a client to whom time was posted in the 36 months preceding the Petition Date, but for which the client representation has been closed.