IN THE UNITED STATES BANKRUPTCY COURT
FOR THE DISTRICT OF DELAWARE

|  |  |
|---|---|
| In re: | Chapter 11 |
| Prime Core Technologies Inc., *et al.*, | Case No. 23-11161 (JKS) |
| Debtors.[1] | (Jointly Administered) |
|  | Obj. Deadline: Sept. 28, 2023 at 4:00 p.m. (ET) |
|  | Hrg. Date: October 5, 2023 at 2:00 p.m. (ET) |

**APPLICATION OF THE DEBTORS FOR ENTRY OF AN ORDER (I) AUTHORIZING THE EMPLOYMENT AND RETENTION OF GALAXY DIGITAL PARTNERS LLC AS INVESTMENT BANKER TO THE DEBTORS AND DEBTORS-IN-POSSESSION, EFFECTIVE AS OF THE PETITION DATE, (II) APPROVING THE TERMS OF THE GALAXY ENGAGEMENT LETTER, (III) WAIVING CERTAIN TIME-KEEPING REQUIREMENTS PURSUANT TO LOCAL RULE 2016-2(h), AND (IV) GRANTING RELATED RELIEF**

Prime Core Technologies Inc. and certain of its affiliates and subsidiaries, as debtors and debtors in possession in the above-captioned chapter 11 cases (collectively, the "Debtors"), hereby file this application (the "Application"), seeking entry of an order, substantially in the form attached hereto **Exhibit A** (the "Proposed Order"), (a) authorizing the employment and retention of Galaxy Digital Partners LLC ("Galaxy") as their investment banker, effective as of August 14, 2023, pursuant to that certain engagement letter dated August 14, 2023, which is attached to the Proposed Order as **Exhibit 1** (the "Engagement Letter"), (b) approving the terms of the Engagement Letter, (c) waiving certain time-keeping requirements pursuant to Rule 2016-2(h) of the Local Rules of Practice and Procedure of the United States Bankruptcy Court for the

---

[1] The Debtors in these Chapter 11 Cases, along with the last four digits of each debtor's federal tax identification number are: Prime Core Technologies Inc. (5317); Prime Trust, LLC (6823); Prime IRA LLC (8436); and Prime Digital, LLC (4528). The Debtors' service address is 10845 Griffith Peak Dr., #03-153, Las Vegas, NV 89135.

District of Delaware (the "Local Rules"), and (d) granting related relief. In support of this Application, the Debtors submit the *Declaration of Michael Ashe in Support of Retention of Galaxy Digital Partners LLC*, (the "Ashe Declaration"), which is attached hereto as **Exhibit B**. In further support of this Application, the Debtors respectfully state as follows:

## JURISDICTION AND VENUE

1. The United States Bankruptcy Court for the District of Delaware (the "Court") has jurisdiction to consider the Application pursuant to 28 U.S.C. §§ 157 and 1334 and the *Amended Standing Order of Reference* from the United States District Court for the District of Delaware, dated February 29, 2012. This is a core proceeding under 28 U.S.C. § 157(b). Venue of these cases and the Application in this District is proper under 28 U.S.C. §§ 1408 and 1409.

2. The legal predicates for the relief requested herein are sections 327(a) and 330 of title 11 of the United States Code (the "Bankruptcy Code"), Rules 2014(a) and 2016 of the Federal Rules of Bankruptcy Procedure (the "Bankruptcy Rules"), and Local Rule 2014-1.

3. The Debtors confirm their consent, pursuant to Local Rule 9013-1(f), to the entry of a final order by the Court in connection with the Motion in the event that it is later determined that the Court, absent consent of the parties, cannot enter final orders or judgments in connection herewith consistent with Article III of the United States Constitution.

## BACKGROUND

4. On August 14, 2023 (the "Petition Date"), each Debtor commenced a case by filing a voluntary petition for relief under chapter 11 of the Bankruptcy Code (collectively, the "Chapter 11 Cases"). These cases have been jointly administered for procedural purposes only.

5. The Debtors continue to manage their properties as debtors and debtors in possession pursuant to Bankruptcy Code sections 1107(a) and 1108.

6. On August 29, 2023, the Office of the United States Trustee for the District of Delaware (the "U.S. Trustee") appointed an official committee of unsecured creditors pursuant to Bankruptcy Code section 1102 (the "Committee") [Docket No. 51]. The Committee is comprised of the following unsecured creditors: (a) Yousef Abbasi; (b) Allsectech, Inc.; (c) DMG Blockchain Solutions, Inc.; (d) Net Cents Technology, Inc.; (e) Polaris Ventures; (f) Stably Corporation; and (g) Austin Ward.

7. Additional information regarding the Debtors and these Chapter 11 Cases, including the Debtors' business operations, capital structure, financial condition, and the reasons for and objectives of these Chapter 11 Cases, is set forth in the *Declaration of Jor Law, Interim Chief Executive Officer and President of Prime Core Technologies Inc., et al., in Support of Chapter 11 Petitions and First Day Motions* [Docket No. 14] (the "First Day Declaration"), which is incorporated by reference as if fully set forth herein.

8. As discussed in greater detail in the First Day Declaration, the Debtors operated a software technology company in the digital asset space that offered an all-in-one financial infrastructure platform to its customers. The Debtors suite of offerings included custody services, AML/KYC as a service, access to a redundant network of banking rails, crypto liquidity services, compliance and regulatory services, settlement services, Application Programming Interface integration, and professional services.

**RETENTION OF GALAXY**

9. The Debtors require a qualified and experienced investment banker with the resources, capabilities, and experience of Galaxy to assist them in pursuing the transaction(s) that are crucial to the success of the Debtors' Chapter 11 Cases. In particular, given the unique and novel space in which the Debtors operated, the Debtors require an investment banker with

specialized expertise in the digital asset space that not only has experience in the industry, but also understands the full suite of services the Debtors provide. An investment banker such as Galaxy fulfills a critical service that complements and enhances the services provided by the Debtors' other professionals.

10.     Galaxy is well qualified to serve as the Debtors' investment banker. As detailed in the Ashe Declaration, Galaxy is the leading financial services firm focused exclusively on digital assets, web3, and blockchain technologies. Galaxy offers institutional-grade expertise and access to a broad range of digital asset products, including digital asset trading, derivatives, structured products, financing, capital markets, and M&A advisory services. Galaxy has represented various digital asset companies in, among other things, capital raises, mergers and acquisitions, and direct and bridge financing, including Bitstamp, Blockdaemon, CoreWeave, Genesis Volatility, among others.

11.     Galaxy has worked closely with the Debtors, their management, and their other advisors and is well acquainted with, among other things, the Debtors' operations, business needs, and capital structure. Thus, Galaxy is particularly well suited to provide the investment banking services to the Debtors that are contemplated by the Engagement Letter and described herein.

12.     The Debtors have selected Galaxy as their investment banker based upon, among other things, (i) the Debtors' need to retain an investment banking firm to provide advice with respect to the Debtors' restructuring activities, (ii) Galaxy's experience with the Debtors' assets and operations; and (iii) Galaxy's extensive experience and excellent reputation in providing investment banking and financial advisory services to companies in the digital assets, web3, and crypto industries.

**SCOPE OF EMPLOYMENT**

13.     Pursuant to the Engagement Letter, Galaxy will advise and assist the Debtors in connection with, among other things, the following tasks:[2]

    a)   Review the Debtors' financial condition and outlook and assist in analyzing the range of options available to the Debtors;

    b)   Assist in the development of financial data, analysis and presentations (including, for the avoidance of doubt, an informal valuation of the Debtors to gauge the Debtors' current or future worth);

    c)   Analyze the Debtors' financial liquidity and evaluate alternatives to improve such liquidity;

    d)   Evaluate the Debtors' debt capacity, if any, and alternative capital structures;

    e)   Participate in negotiations among the Debtors and their vendors, creditors, suppliers, lessors and other interested parties;

    f)   Advise the Debtors and negotiate with lenders with respect to potential waivers or amendments of any credit facilities;

    g)   Provide such other advisory services as are customarily provided in connection with the analysis and negotiation of any of the transactions contemplated by the Engagement Letter;

    h)   Analyze various Restructuring scenarios and the potential impact of these scenarios on the value of the Debtors and the recoveries of those stakeholders impacted by the Restructuring;

    i)   Provide strategic advice with regard to restructuring or refinancing the Debtors' obligations;

    j)   Provide financial advice and assistance to the Debtors in developing a Restructuring and/or asset monetization process;

---

[2] The summary provided herein is for illustrative purposes only and is subject to the Engagement Letter in all respects. In the event of any inconsistency between the summary of services as set forth herein and the Engagement Letter, the Engagement Letter will control. Capitalized terms not otherwise defined in such summary shall have the meanings ascribed to them in the Engagement Letter.

k) In connection therewith, provide financial advice and assistance to the Debtors in structuring any new securities to be issued under a Restructuring;

l) Assist the Debtors and/or participate in negotiations with entities or groups affected by the Restructuring;

m) Provide financial advice to the Debtors in structuring and effecting a Financing, identify potential Investors, and contact and solicit such Investors;

n) Assist in the arranging of a Financing, including identifying potential sources of capital, assisting in the due diligence process, and negotiating the terms of any proposed Financing, as requested;

o) Provide financial advice to the Debtors in structuring, evaluating and effecting a Sale, including a monetization of individual or multiple assets, identify potential acquirers, and contact and solicit potential acquirers; and

p) Assist in the arranging and executing of a Sale, including identifying potential buyers or parties in interest, assisting in the due diligence process and marketing process, and negotiating the terms of any proposed Sale.

14. The Debtors believe that Galaxy is well qualified and able to provide the foregoing services to the Debtors. Galaxy has indicated a willingness to act on behalf of the Debtors, on the terms described herein.

## **PROFESSIONAL COMPENSATION**

15. Galaxy intends to apply for compensation for professional services rendered and reimbursement of expenses incurred in connection with these cases, subject to the Court's approval and in compliance with applicable provisions of the Bankruptcy Code, the Bankruptcy Rules, the Local Rules, and any other applicable procedures and orders of the Court (to the extent compliance is not waived), and consistent with the proposed compensation set forth in the Engagement Letter (the "Fee Structure"). Galaxy's decision to advise and assist the Debtors is conditioned upon its ability to be retained in accordance with its customary terms and conditions

of employment and to be compensated for its services and reimbursed for the expenses it incurs in accordance with its customary billing practices.

16. In summary, the Fee Structure provides that the Debtors shall pay Galaxy the following fees:[3]

    a) **Monthly Restructuring Fee**. The Debtors will pay Galaxy a non-refundable cash fee of $25,000 per month for the first three months of the Chapter 11 Cases and $100,000 per month thereafter (each, a "Monthly Restructuring Fee").

    b) **Transaction Fee**. If a Sale or Restructuring is consummated, the Debtors will pay Galaxy a one-time cash fee (a "Transaction Fee") equal to $5% of the Transaction value.

    c) **Financing Fee**. If a Financing is consummated, the Debtors will pay Galaxy a fee in the amount equal to (a) 7.00% of all gross proceeds from the issuance of any Instruments sold to New Investors in the Financing and (b) 4.00% of all gross proceeds from the issuance of any Instruments sold to Existing Investors in the Financing.

    d) **Minimum Fee**. Notwithstanding any other provision of the Engagement Letter or any other agreement or understanding between the Debtors and Galaxy, in the event of either a liquidation or a restructuring of the Debtors, the Debtors agree and undertake to pay Galaxy a fee no less than $2 million (the "Minimum Fee").

17. Galaxy intends to apply to the Court for reimbursement of its reasonable out-of-pocket expenses incurred after the Petition Date (including travel costs, printing costs, data processing and communication charges, research expenses, courier charges and other similar expenses and fees).

18. The Debtors believe the Fee Structure is consistent with and typical of compensation arrangements entered into by Galaxy and other comparable firms in connection with the rendering of similar services under similar circumstances. Galaxy's strategic and

---

[3] Capitalized terms not otherwise defined in such summaries shall have the meanings ascribed to them in the Engagement Letter.

financial advisory expertise as well as its capital markets knowledge, financing skills, restructuring capabilities, and mergers and acquisitions expertise, some or all of which may be required by the Debtors during the term of Galaxy's engagement, were all important factors in determining the Fee Structure. The Debtors believe that the ultimate benefit of Galaxy's services cannot be measured by reference to the number of hours to be expended by Galaxy's professionals in the performance of such services. Indeed, the Debtors and Galaxy have agreed upon the Fee Structure in anticipation that a substantial commitment of professional time and effort will be required of Galaxy and its professionals in connection with these cases and in light of the fact that: (a) such commitment may foreclose other opportunities for Galaxy and (b) the actual time and commitment required of Galaxy and its professionals to perform its services under the Engagement Letter may vary substantially from week to week and month to month, creating "peak load" issues for Galaxy.

19.     In light of the foregoing and given the numerous issues that Galaxy may be required to address in the performance of its services hereunder, Galaxy's commitment to the variable level of time and effort necessary to address all such issues as they arise and the market prices for Galaxy's services for engagements of this nature both in- and out-of-court and in the chapter 11 context, the Debtors believe that the Fee Structure is fair, reasonable, and market-based under the standard set forth in Bankruptcy Code section 328(a).

## RECORD KEEPING AND APPLICATIONS FOR COMPENSATION

20.     Investment bankers such as Galaxy do not typically charge for their services on an hourly basis. Instead, they customarily charge a monthly advisory fee plus an additional fee that is contingent upon the occurrence of a specified type of transaction. The Engagement Letter

follows this custom in the investment banking industry, and sets forth the monthly and transaction-based fees that are to be payable to Galaxy.

21.     Galaxy requests that it not be required to file time records in accordance with Bankruptcy Rule 2016(a), Local Rule 2016-2, the fee guidelines established by the Office of the U.S. Trustee (the "<u>U.S. Trustee Fee Guidelines</u>"), and any otherwise applicable orders or procedures of the Court. Notwithstanding that Galaxy does not charge for its services on an hourly basis, Galaxy will nonetheless maintain records (in summary format) of its services rendered for the Debtors in one-half hour increments, setting forth descriptions of those services and the individuals who provided those services, and will present such records to the Court in its interim and final fee applications. The Debtors also request that, in accordance with the procedures set forth in Bankruptcy Code sections 330 and 331, the Bankruptcy Rules, the Local Rules, and any other applicable procedures and orders of this Court, the Debtors be authorized to pay the Monthly Fee to Galaxy each month in accordance with the terms of, and at the times specified in, the Engagement Letter, without further order of the Court and without Galaxy filing or serving any prior fee application or statement.

22.     The compensation arrangements contained in the Engagement Letter are highly beneficial to the Debtors' estates as they provide certainty and proper inducement for Galaxy to act expeditiously and prudently with respect to the matters for which it will be employed. Accordingly, because the Debtors are seeking to retain Galaxy under Bankruptcy Code section 328(a), the Debtors believe that Galaxy's compensation should not be subject to any additional standard of review under Bankruptcy Code section 330 and does not constitute a "bonus" or fee enhancement under applicable law.

## INDEMNIFICATION

23.     The Debtors have agreed to indemnify, to make certain contributions to, and to reimburse Galaxy and the other Indemnified Persons (as defined in the Engagement Letter) in accordance with the provisions set forth in the Engagement Letter, which forms a part of and is incorporated by reference into the Engagement Letter (the "Indemnification Provision").

24.     The indemnification, contribution, and reimbursement provisions reflected in the Engagement Letter are customary and reasonable terms of consideration for investment bankers such as Galaxy for proceedings both out-of-court and in chapter 11. The terms of the Indemnification Provision were fully negotiated between the Debtors and Galaxy at arm's-length and the Debtors respectfully submit that the Indemnification Provision is reasonable and in the best interests of the Debtors, their estates, and stakeholders. Accordingly, the Debtors request that the Court approve the Indemnification Provision.

## NO DUPLICATION OF SERVICES

25.     The Debtors intend that Galaxy's services will not duplicate the services to be rendered by any other professional retained by the Debtors in these Chapter 11 Cases. The Engagement Letter reflects Galaxy's understanding that the Debtors may retain other professionals during the term of the engagement, and the Debtors believe that at their request Galaxy will work cooperatively with such professionals to integrate any respective work conducted by the professionals on behalf of the Debtors.

## GALAXY'S DISINTERESTEDNESS

26.     Galaxy has informed the Debtors that Galaxy: (a) does not hold any interest adverse to the Debtors' estates; and (b) believes that it is a "disinterested person" as that term is defined in Bankruptcy Code section 101(14), as modified by Bankruptcy Code section 1107(b),

as required by Bankruptcy Code section 327(a). If any new material facts or relationships are discovered or arise, Galaxy will inform the Court as required by Bankruptcy Rule 2014(a).

27. Accordingly, to the best of the Debtors' knowledge, information, and belief (which in each case is based in reliance on the representations made to the Debtors by Galaxy), the Debtors believe that Galaxy is disinterested and holds no materially adverse interest as to the matters upon which to be retained in these Chapter 11 Cases.

## BASIS FOR RELIEF

28. Bankruptcy Code section 327(a) authorizes a debtor-in-possession to employ professionals that "do not hold or represent an interest adverse to the estate, and that are disinterested persons." 11 U.S.C. § 327(a). As discussed above, Galaxy satisfies the disinterestedness standard of Bankruptcy Code section 327(a).

29. In addition, the Debtors seek approval of the Engagement Letter, including the Fee Structure set forth therein, pursuant to Bankruptcy Code section 328(a). Bankruptcy Code section 328(a) provides, in relevant part, that the Debtors "with the court's approval, may employ or authorize the employment of a professional person under section 327 . . . on any reasonable terms and conditions of employment, including on a retainer, on an hourly basis, on a fixed or percentage fee basis, or on a contingent fee basis." 11 U.S.C. § 328(a).

30. Bankruptcy Code section 328 permits the compensation of professionals, including investment bankers and financial advisors, on more flexible terms that reflect the nature of their services and market conditions. As the United States Court of Appeals for the Fifth Circuit recognized in *Donaldson Lufkin & Jenrette Sec. Corp. v. Nat'l Gypsum Co. (In re Nat'l Gypsum Co.)*, 123 F.3d 861 (5th Cir. 1997):

> Prior to 1978 the most able professionals were often unwilling to work for bankruptcy estates where their compensation would be subject to the uncertainties

of what a judge thought the work was worth after it had been done. That uncertainty continues under the present § 330 of the Bankruptcy Code, which provides that the court award to professional consultants "reasonable compensation" based on relevant factors of time and comparable costs, etc. Under present § 328 the professional may avoid that uncertainty by obtaining court approval of compensation agreed to with the trustee (or debtor or committee).

*Id.* at 862 (internal citations omitted).

31. As set forth above, notwithstanding approval of the Engagement Letter under Bankruptcy Code section 328(a), Galaxy intends to apply for compensation for professional services rendered and reimbursement of expenses incurred in connection with these cases, subject to the Court's approval and in compliance with the applicable provisions of the Bankruptcy Code, the Bankruptcy Rules, the Local Rules, and any other applicable procedures and orders of the Court (to the extent compliance is not waived) and consistent with the Fee Structure set forth in the Engagement Letter.

32. The Debtors believe that the Fee Structure appropriately reflects the nature and scope of services to be provided by Galaxy in these Chapter 11 Cases, Galaxy's substantial experience with respect to investment banking services, and the fee structures typically utilized by Galaxy and other leading investment banks that do not bill their client on an hourly basis. In agreeing to seek Galaxy's retention under Bankruptcy Code section 328(a), the Debtors acknowledge that: (a) they believe that Galaxy's general restructuring experience and expertise, its knowledge of the capital markets, and its merger and acquisition capabilities will inure to the benefit of the Debtors in pursuing any Restructuring (as defined in the Engagement Letter); (b) the value to the Debtors of Galaxy's services under the Engagement Letter derives in substantial part from that expertise and experience; (c) accordingly, the Fee Structure is reasonable regardless of the number of hours to be expended by Galaxy's professionals in the performance of the services to be provided under the Engagement Letter; and (d) any deferred fees earned by

Galaxy pursuant to the Engagement Letter should not be considered to be "bonuses" or fee enhancements under applicable law.

33. Indeed, similar fixed and contingency fee arrangements in other large chapter 11 cases have been routinely approved by courts in this district and elsewhere. *See, e.g., In re Insys Therapeutics, Inc.*, No. 19-11292 (KG) (Bankr. D. Del. July 15, 2019); *In re Promise Healthcare Group, LLC*, No. 18-12491 (CSS) (Bankr. D. Del. Dec. 7, 2018); *In re Sears Holdings Corp.*, No. 18-23538 (RDD) (Bankr. S.D.N.Y. Nov. 9, 2018); *In re Nine West Holdings, Inc.*, No. 18-10847 (SCC) (Bankr. S.D.N.Y. June 5, 2018); *In re Claire's Stores, Inc.*, No. 18-10584 (MFW) (Bankr. D. Del. Apr. 4, 2018).

34. Moreover, the Debtors and Galaxy believe that the Indemnification Provision is customary and reasonable for investment banking engagements, both out-of-court and in chapter 11 cases, and reflects the qualifications and limitations on indemnification provisions in this district and others. *See, e.g., In re Insys-Therapeutics, Inc.*, No. 19-11292 (KG) (Bankr. D. Del. July 15, 2019) (approving similar indemnification provisions as set forth in the Indemnification Letter); *In re Promise Healthcare Group, LLC*, No. 18-12491 (CSS) (Bankr. D. Del. Dec. 7, 2018) (same); *In re Sears Holdings Corp.*, No. 18-23538 (RDD) (Bankr. S.D.N.Y. Nov. 9, 2018) (same); *In re Nine West Holdings, Inc.*, No. 18-10947 (SCC) (Bankr. S.D.N.Y. June 8, 2018) (same); and *In re Claire's Stores, Inc.*, No. 18-10584 (MFW) (Bankr. D. Del. Apr. 4, 2018) (same).

35. The Debtors also believe that employment of Galaxy effective as of the Petition Date is warranted by the circumstances presented by these cases. The Third Circuit has identified "time pressure to begin service" and absence of prejudice as factors favoring *nunc pro tunc* retention. *See In re Arkansas Co.*, 798 F.2d 645, 650 (3d Cir. 1986). The complexity,

compressed timing, and intense activity relating to the preparation and filing of these Chapter 11 Cases necessitated that the Debtors and Galaxy, as well as the Debtors' other professionals, focus their immediate attention on time-sensitive matters, and promptly devote substantial resources to the affairs of the Debtors to comply with the pending submission and approval of this Application.

36. In light of the foregoing, and given the numerous issues that Galaxy may be required to address in the performance of its services under the Engagement Letter, Galaxy's commitment to the variable level of time and effort necessary to address all such issues as they arise, and the market prices for Galaxy's services for engagements of this nature, the Debtors believe that the terms and conditions of the Engagement Letter are fair, reasonable, and market-based under the standards set forth in Bankruptcy Code section 328(a).

## **NOTICE**

37. The Debtors will provide notice of this Application to the following parties or their respective counsel: (a) the U.S. Trustee; (b) proposed counsel for the Committee; and (c) any party that requests service pursuant to Bankruptcy Rule 2002. The Debtors submit that no other or further notice need be given.

## **NO PRIOR REQUEST**

38. No prior request for the relief sought in this Application has been made to this or any other court.

*[Remainder of page intentionally left blank]*

WHEREFORE, the Debtors respectfully request entry of the Order, substantially in the form attached hereto as **Exhibit A**, (a) granting the relief requested herein and (b) granting such other relief as is just and proper.

Dated: September 14, 2023
      New York, New York

*DocuSigned by: Michael Wyse*

Mike Wyse
Solely in his Capacity as a Member of the Debtors' Special Restructuring Committee