## Exhibit A

**Proposed Order**

## IN THE UNITED STATES BANKRUPTCY COURT
## FOR THE DISTRICT OF DELAWARE

| | |
|---|---|
| In re: | )  Chapter 11 |
| | ) |
| Prime Core Technologies Inc., *et al.*, | )  Case No. 23-11161 (JKS) |
| | ) |
| Debtors.[1] | )  (Jointly Administered) |
| | ) |
| | )  **Re Docket No.** |

## ORDER (I) AUTHORIZING THE EMPLOYMENT AND RETENTION OF GALAXY DIGITAL PARTNERS LLC AS INVESTMENT BANKER TO THE DEBTORS AND DEBTORS-IN-POSSESSION, EFFECTIVE AS OF THE PETITION DATE, (II) APPROVING THE TERMS OF THE GALAXY ENGAGEMENT LETTER, (III) WAIVING CERTAIN TIME-KEEPING REQUIREMENTS PURSUANT TO LOCAL RULE 2016-2(h), AND (IV) GRANTING RELATED RELIEF

Upon the application (the "Application")[2] of the above-captioned debtors and debtors-in-possession (collectively, the "Debtors") for entry of an order (this "Order"), pursuant to Bankruptcy Code sections 327(a) and 328(a), Bankruptcy Rule 2014(a), and Local Rules 2014-1 and 2016-2(h): (a) authorizing the retention and employment of Galaxy Digital Partners LLC ("Galaxy") as investment banker to the Debtors, effective as of the Petition Date, on the terms set forth in the Engagement Letter; (b) approving the terms of the Engagement Letter; (c) waiving certain time-keeping requirements pursuant to Local Rule 2016-2(h); and (d) granting related relief, all as more fully set forth in the Application; and the *Declaration of Michael Ashe in Support of Retention of Galaxy Digital Partners LLC* (the "Ashe Declaration") filed in support of the same; and this Court having jurisdiction over this matter pursuant to 28 U.S.C. §§ 157 and

---

[1]    The Debtors in these Chapter 11 Cases, along with the last four digits of each debtor's federal tax identification number are: Prime Core Technologies Inc. (5317); Prime Trust, LLC (6823); Prime IRA LLC (8436); and Prime Digital, LLC (4528). The Debtors' service address is 10845 Griffith Peak Dr., #03-153, Las Vegas, NV 89135.

[2]    Capitalized terms used but not defined herein have the meanings given to such terms in the Application.

1334 and the *Amended Standing Order of Reference* from the United States District Court for the

District of Delaware, dated February 29, 2012; and this Court being able to enter a final order

consistent with Article III of the United States Constitution; and this Court having found that this

is a core proceeding pursuant to 28 U.S.C. § 157(b)(2), and this Court having found that venue of

this proceeding and the Application in this district is proper pursuant to 28 U.S.C. §§ 1408 and

1409; and this Court having found that the relief requested in the Application is in the best

interests of the Debtors' estates, their creditors, and other parties in interest; and this Court

having found that the Debtors' notice of the Application and opportunity for a hearing on the

Application were appropriate under the circumstances and no other notice need be provided; and

this Court having reviewed the Application; and this Court having determined that the legal and

factual bases set forth in the Application establish just cause for the relief granted herein; and

upon all of the proceedings had before this Court; and after due deliberation and sufficient cause

appearing therefor, it is HEREBY ORDERED THAT:

1.      The Application is approved as set forth in this Order.

2.      In accordance with Bankruptcy Code sections 327(a) and 328(a), Bankruptcy

Rule 2014(a), and Local Rules 2014-1 and 2016-2(h), the Debtors are authorized to employ and

retain Galaxy in accordance with the terms and conditions set forth in the Engagement Letter,

effective as of the Petition Date.

3.      The Engagement Letter, together with all attachments thereto and all

compensation set forth therein, including, without limitation, the Monthly Restructuring Fee, the

Financing Fee, the Transaction Fee, the Minimum Fee, the expense reimbursement, the

Indemnification Provision, and related obligations, are approved pursuant to Bankruptcy Code

section 328(a) and Galaxy shall be compensated, reimbursed and indemnified pursuant to

Bankruptcy Code section 328(a) in accordance with the terms of, and at the times specified in, the Engagement Letter.

4.      No amounts shall be paid to Galaxy absent an order of this Court approving an interim or final fee statement or application for the allowance of compensation and reimbursement of expenses filed by Galaxy pursuant to the procedures set forth in Bankruptcy Code sections 330 and 331, the Bankruptcy Rules, the Local Rules, and any other applicable procedures and orders of this Court, except that the Debtors are authorized to pay the Monthly Restructuring Fee to Galaxy each month when required under the Engagement Letter without a prior fee application.

5.      Notwithstanding paragraphs 2 through 4 of this Order and any provision to the contrary in the Application or the Engagement Letter, the U.S. Trustee shall have the right to object to Galaxy's request for compensation and reimbursement based on the reasonableness standard provided in Bankruptcy Code section 330, and not Bankruptcy Code section 328(a). This Order and the record relating to this Court's consideration of the Application shall not prejudice the rights of the U.S. Trustee to challenge the reasonableness of Galaxy's fees under Bankruptcy Code section 330. Accordingly, nothing in this Order or the record relating to this Court's consideration of the Application shall constitute a finding of fact or conclusion of law binding on the U.S. Trustee with respect to the reasonableness of Galaxy's fees. Furthermore, nothing in the Engagement Letter shall affect or modify the standard of review applicable to an objection by the U.S. Trustee under this paragraph.

6.      Notwithstanding anything to the contrary in the Bankruptcy Code, the Bankruptcy Rules, the Local Rules, orders of this Court, or any guidelines regarding submission and approval of fee applications, in light of services to be provided by Galaxy and the structure of

3

Galaxy's compensation pursuant to the Engagement Letter, Galaxy and its professionals shall be granted a limited waiver of the information-keeping requirements of Bankruptcy Rule 2016(a), Local Rule 2016-2(d), the U.S. Trustee Fee Guidelines, and any otherwise applicable orders or procedures of the Court in connection with the services to be rendered pursuant to the Engagement Letter, and shall instead be required only to maintain time records of its services rendered for the Debtors in one-half hour (0.5) increments, and shall be authorized to file interim fee applications and/or final fee applications without previously filing or serving monthly fee statements covering the same period.

7.      The provisions set forth in the Indemnification Provision are approved.

8.      None of the fees payable to Galaxy under the Engagement Letter shall constitute a "bonus" or fee enhancement under applicable law.

9.      No agreement or understanding exists between Galaxy and any other person, other than as permitted by Bankruptcy Code section 504, to share compensation received for services rendered in connection with these cases, nor shall Galaxy share or agree to share compensation received for services rendered in connection with these cases with any other person other than as permitted by Bankruptcy Code section 504.

10.     To the extent that there may be any inconsistency between the terms of the Application, the Ashe Declaration, the Engagement Letter, and this Order, the terms of this Order shall govern.

11.     Notwithstanding Bankruptcy Rule 6004(h), the terms and conditions of this Order are immediately effective and enforceable upon its entry.

12.     The Debtors are authorized to take all actions necessary to effectuate the relief granted in this Order in accordance with the Application.

13.    Notwithstanding anything to the contrary in the Engagement Letter, this Court retains jurisdiction with respect to all matters arising from or related to the implementation, interpretation, and enforcement of this Order.

## **<u>Exhibit 1</u>**

**Engagement Letter**



Galaxy Digital · 300 Vesey Street, New York, NY 10282
contact@galaxy.com · (+1) 212.390.9216

August 14, 2023

<u>CONFIDENTIAL</u>

Prime Core Technologies, Inc.
330 S Rampart Blvd, Suite 260
Las Vegas, NV 89134
Attn: Mr. John Guedry

Dear Mr. Guedry:

This letter agreement (the "**Agreement**"), dated as of the date hereof (the "**Effective Date**"), confirms the terms under which Prime Core Technologies, Inc. and/or any of its subsidiaries or entities related thereto (including Prime Trust, LLC, Prime IRA, LLC and/or Prime Digital, LLC, collectively, the "**Company**") has engaged Galaxy Digital Partners LLC ("**Galaxy**", "**we**" or "**us**") as financial advisor and sole investment banker to the Company in connection with developing, and advising the Company with respect to, various strategic and business alternatives for the Company, which may include, without limitation, a possible Restructuring, Financing and/or a Sale (each, as defined below, and together, the "**Transactions**") and with respect to such other financial matters as to which the Company and Galaxy may agree in writing during the term of this engagement (the "**Engagement**"), as more specifically discussed herein. For purposes hereof, the term "**Company**" includes any entity formed or invested in to consummate a Transaction, and shall also include any successor to or assignee of all or substantially all of the assets and/or business of the Company, whether pursuant to a plan of reorganization under any chapter 11 case(s) filed or pursuant to Nevada receivership or otherwise.

      1.   <u>Services to be Rendered</u>. The financial advisory services to be provided by Galaxy shall include the following:

      (a)   *General Financial Advisory and Investment Banking Services.* To the extent requested by the Company, we shall:

      (i)  Familiarize ourselves with the business, operations, properties, financial condition and prospects of the Company and its assets;

      (ii)  Review the Company's financial condition and outlook and assist in analyzing the range of options available to the Company;

      (iii)  Assist in the development of financial data, analysis and presentations (including, for the avoidance of doubt, an informal valuation of the Company to gauge the Company's current or future worth) to the Company's Board of Directors, various creditors and other parties;

      (iv)  Analyze the Company's financial liquidity and evaluate alternatives to improve such liquidity;

      (v)  Evaluate the Company's debt capacity, if any, and alternative capital structures;

1

(vi)  Participate in negotiations among the Company and its vendors, creditors, suppliers, lessors and other interested parties with respect to any of the transactions contemplated by this Agreement;

(vii)  Advise the Company and negotiate with lenders with respect to potential waivers or amendments of any credit facilities; and

(viii)  Provide such other advisory services as are customarily provided in connection with the analysis and negotiation of any of the transactions contemplated by this Agreement, as requested and mutually agreed.

(b)  *Restructuring Services*. To the extent requested by the Company, we shall:

(i)  Analyze various Restructuring (as defined below) scenarios and the potential impact of these scenarios on the value of the Company and the recoveries of those stakeholders impacted by the Restructuring;

(ii)  Provide strategic advice with regard to restructuring or refinancing the Company's obligations;

(iii)  Provide financial advice and assistance to the Company in developing a Restructuring and/or asset monetization process;

(iv)  In connection therewith, provide financial advice and assistance to the Company in structuring any new securities to be issued under a Restructuring; and

(v)  Assist the Company and/or participate in negotiations with entities or groups affected by the Restructuring.

For purposes of this Agreement, the term "**Restructuring**" means the effectiveness of a plan of reorganization of the Company under Chapter 11 (or structured dismissal or other transaction implemented as an alternative to a plan of reorganization) involving any recapitalization, modification or restructuring of the Company's equity and/or debt securities and/or other indebtedness, obligations or liabilities (including partnership interests, lease obligations, trade credit facilities and/or contract or tort obligations). For the avoidance of doubt, this Agreement specifically contemplates, and the parties anticipate, only one Restructuring.

(c)  *Financing Services*. To the extent requested by the Company, we shall:

(i)  Provide financial advice to the Company in structuring and effecting a Financing (as defined below), identify potential Investors (as defined below) and, at the Company's request, contact and solicit such Investors; and

(ii)  Assist in the arranging of a Financing, including identifying potential sources of capital, assisting in the due diligence process, and negotiating the terms of any proposed Financing, as requested.

For purposes of this Agreement, the term "**Financing**" shall mean a private issuance, sale or placement of the equity, equity-linked or debt securities, instruments or obligations of the Company

("**Instruments**") with one or more lenders and/or investors, or any loan or other financing, or a rights offering (each such lender or investor, an "**Investor**"). For purposes of this Agreement, the term "**New Investor**" shall refer to any person or entity whom Galaxy solicits for participation in a Financing, and who, as of the Effective Date of this Agreement, has not previously acquired equity, equity-linked or debt securities, instruments or obligations of the Company; and the term "**Existing Investor**" shall refer to any person or entity whom Galaxy solicits for participation in a Financing, and who, as of the Effective Date of this Agreement, holds equity, equity-linked or debt securities, instruments or obligations of the Company.

It is understood that nothing contained herein shall constitute an express or implied commitment by us to act in any capacity or to underwrite, place or purchase any financing or securities, which commitment shall only be set forth in a separate underwriting, placement agency or other appropriate agreement relating to the Financing. There may be no Financing, one Financing or multiple Financings as part of the Engagement.

(d)    *Sale Services*. To the extent requested by the Company, we shall:

(i)    Provide financial advice to the Company in structuring, evaluating and effecting a Sale (as defined below), including a monetization of individual or multiple assets, identify potential acquirers and, at the Company's request, contact and solicit potential acquirers; and

(ii)    Assist in the arranging and executing of a Sale, including identifying potential buyers or parties in interest, assisting in the due diligence process and marketing process, and negotiating the terms of any proposed Sale.

For purposes of this Agreement, the term "**Sale**" shall mean the disposition in one or a series of related transactions (i) of all or a significant portion of the equity securities of the Company, any subsidiary of the Company, or any affiliate of the Company, or of the Company's equity interests or investment interest or position in any other company, investment vehicle, partnership, joint venture, business, entity or asset, by the security holders of the Company, any subsidiary of the Company, or any affiliate of the Company or (ii) of all or a significant portion of the assets, businesses, investment interests or positions, partnership interests, joint venture interests or other interests of or held by the Company, any affiliate of the Company or any subsidiary of the Company or affiliates, in any case, including through a sale or exchange of capital stock, options or assets, a lease of assets with or without a purchase option, a merger, consolidation or other business combination, a tender offer, the formation of a joint venture, partnership or similar entity, or any similar transaction (other than a Restructuring) including through a sale permitted or compelled by the Department of Business and Industry Financial Institutions Division or a court appointed receiver (the "**Receiver**") or otherwise pursuant Section 363 of the Bankruptcy Code (defined below).

(e)    *Generally.* Notwithstanding anything contained in this Agreement to the contrary, we shall have no responsibility for designing or implementing any initiatives to improve the Company's operations, profitability, cash management or liquidity or to provide any fairness, valuation or solvency opinions or to make any independent evaluation or appraisal of any assets or liabilities of the Company or any other party. We make no representations or warranties about the Company's ability to (i) successfully improve its operations, (ii) maintain or secure sufficient liquidity to operate its business, or (iii) successfully complete a Restructuring, Financing or Sale. We are retained under this Agreement solely to provide advice and services regarding the transactions contemplated by this Agreement. Our Engagement does not encompass providing "crisis management."

3

The advisory services and compensation arrangements set forth in this Agreement do not encompass other investment banking services or transactions that may be undertaken by us at the request of the Company, or any other specific services not set forth in this Agreement. The terms and conditions of such investment banking services, including compensation and arrangements, would be set forth in a separate written agreement between us and the Company.

This Agreement is not intended to conflict with the engagement letters previously executed by the Company with Cohen & Company Capital Markets, McDermott, Will & Emory LLP, or any other firm, and fees and expenses payable by the Company pursuant to those letters. Notwithstanding that, however, the Company agrees to pay the Fees and Expenses (each as defined below) to which we are entitled hereunder for any transactions or events, even if fees are payable to such other firms in respect of the same transactions or events.

2.     <u>Compensation</u>. As compensation for our services, the Company agrees to pay us in cash, by wire transfer of immediately available funds when due, the following fees (individually or collectively, "**Fees**"):

(a)    a monthly financial advisory fee of $100,000, which shall be discounted to a monthly fee of $25,000 for the first three-months of the Engagement (the "**Monthly Fee**"), due and payable on the first day of each month (the "**Payment Date**") during the Engagement, provided that such Monthly Fee shall be on a prorated basis from the Engagement Date through the end of the month in which this Agreement is dated; *plus*

(b)    a "**Sale Fee**" payable in cash promptly upon the consummation of each Sale, equal to 5.00% of the Transaction Value, provided that in the event of multiple Sales, each Sale Fee for each respective Sale will be calculated independently of any other Sale Fee, and payable promptly upon consummation of each respective Sale.

(i)    For the purpose of calculating a Sale Fee, "**Transaction Value**" shall include without limitation: (i) all cash (including escrowed amounts, and other withheld amounts) paid or payable to the Company or its owners by the purchaser in the transaction; (ii) the fair market value of all notes, securities and other property issued or delivered or to be issued or delivered to the Company or its securityholders (including holders of the Company's or any of its subsidiaries' common stock, preferred stock, options and warrants) by the purchaser in the Sale; (iii) the fair value of liabilities, including all debt, pension liabilities and guarantees, outstanding as of the closing date of the Sale or directly or indirectly assumed, refinanced, extinguished or consolidated; (iv) the amount of all installment payments to be made to the Company's securityholders; (v) amounts paid or payable to the Company's direct or indirect security holders and management under consulting, non-compete or similar agreements; and (vi) the net present value of any contingent payments (whether or not related to future earnings or operations). For purposes of computing Transaction Value hereunder, non-cash consideration shall be valued as follows: (a) publicly traded securities shall be valued at the average of their closing prices (as reported in *The Wall Street Journal* or other reputable source reasonably designated by us if *The Wall Street Journal* does not publish such closing prices) for the five trading days prior to the closing of the transaction, (b) options shall be valued using the treasury stock method without giving effect to tax implications, and (c) any other non-cash consideration shall be valued at the fair market value thereof as determined in good faith by us and the Company. For the avoidance of doubt, in the event of a Sale involving multiple assets, the Transaction Value for such assets shall be calculated on an aggregated basis.

4

(c)    a "**Financing Fee**", payable promptly upon consummation of any Financing, in an amount equal to (a) 7.00% of all gross proceeds from the issuance of any Instruments sold to New Investors in the Financing and (b) 4.00% of all gross proceeds from the issuance of any Instruments sold to Existing Investors in the Financing; *plus*

(d)    a "**Restructuring Fee**", payable promptly upon consummation of any Restructuring, in an amount to be mutually agreed in good faith between the Company and Galaxy (subject to court approval) following identification and preliminary qualification of the Company's assets and liabilities, taking into account the size and complexity of the Restructuring, the intensity and duration of our efforts, the results obtained and the custom and practice among internationally recognized investment bankers acting in similar circumstances.

(e)    Notwithstanding any other provision of this engagement letter or any other agreement or understanding between the parties, in the event of either a liquidation or a restructuring of the Company, the Company agrees and undertakes to pay Galaxy a fee no less than $2 million. This fee shall be due and payable to Galaxy upon the conclusion of the bankruptcy proceedings, irrespective of the specific outcome or resolution of said proceedings. Our Fees and Expenses are quoted and are payable in United States dollars net of any withholding, value added or other taxes which may be assessed in jurisdictions outside the United States. In the event you must pay any such tax, please forward to us for our records an official receipt or other document specifically evidencing such payment by you.

3.    <u>Expenses</u>. In addition to our fees for professional services, the Company agrees that it will periodically, at our request, reimburse us for all of our expenses ("**Expenses**"), including, but not limited to, professional and legal fees, charges and disbursements of our legal counsel, any sales, use or similar taxes (including additions to such taxes, if any) arising in connection with any matter referred to in this letter, travel and hotel expenses, printing costs, data processing and communication charges, research expenses and courier and postage services. The Company's obligation to reimburse expenses incurred by us in connection with the Engagement will survive the completion or termination of the Engagement.

4.    <u>Indemnification</u>. The Company acknowledges that we have been retained hereunder solely as an independent contractor and that nothing in this Agreement or the nature of our services shall be deemed to create a fiduciary or agency relationship between us and the Company or its equity holder(s), employees or creditors. In order to induce us to accept the Engagement, the Company agrees to the indemnity, exculpation provisions and other matters set forth in Annex A, which forms a part of and is incorporated by reference into the Agreement. Prior to entering into any agreement or arrangement with respect to, or effecting, any proposed sale, exchange, dividend or other distribution or liquidation of all or a significant portion of its assets in one or a series of transactions or any significant recapitalization or reclassification of its outstanding securities that does not directly or indirectly provide for the assumption of the obligations of the Company set forth in Annex A (in each case, other than in connection with a Chapter 11 plan of reorganization), the Company will notify us in writing thereof (if not previously so notified) and, if requested by us, shall arrange in connection therewith alternative means of providing for the obligations of the Company set forth in Annex A, including the assumption of such obligations by another party, insurance, surety bonds or the creation of an escrow, in each case, in an amount and upon terms and conditions reasonably satisfactory to us and the Company. The terms and provisions of this Section 4 and of Annex A shall survive the completion or termination of the Engagement.

5.    <u>Bankruptcy Court Approval</u>. The Company shall use its reasonable efforts to seek an order authorizing our employment pursuant to the terms of this Agreement, as a professional person pursuant to, and subject to the standard of review of, Section 328(a) of title 11 of the United States Code (the

DocuSign Envelope ID: 5E7225E0-193A-4BBF-BEA6-0ED06E910E01

"**Bankruptcy Code**"), the applicable Federal Rules of Bankruptcy Procedure (the "**Bankruptcy Rules**") and applicable local rules and orders and not subject to any other standard of review under Section 330 of the Bankruptcy Code. In so agreeing to seek our retention under Section 328(a) of the Bankruptcy Code, the Company acknowledges that it believes that our general restructuring experience and expertise, our knowledge of the capital markets and our merger and acquisition capabilities will inure to the benefit of the Company in pursuing any Restructuring, Sale or Financing, that the value to the Company of our services derives in substantial part from that expertise and experience and that, accordingly, the structure and amount of the contingent Fees are reasonable regardless of the number of hours to be expended by our professionals in the performance of the services to be provided hereunder. The Company shall submit our employment application as soon as practicable following the Company's filing of a voluntary Chapter 11 case, or the entry of an order for relief in any involuntary case filed against the Company, and use its reasonable efforts to cause such application to be considered on the most expedited basis, provided that our initial employment application shall not seek approval of a Restructuring Fee. The employment application and the proposed order authorizing our employment shall be provided to us as much in advance of any Chapter 11 filing as is practicable, and must be acceptable to us in our sole discretion. Following entry of the order authorizing our employment, the Company shall pay all Fees and Expenses due pursuant to this Agreement, as approved by the court having jurisdiction of the bankruptcy case involving the Company (the "**Bankruptcy Court**"), as promptly as possible in accordance with the terms of this Agreement and the order of such Bankruptcy Court, the Bankruptcy Code, the Bankruptcy Rules and applicable local rules and orders, and will work with us to promptly file any and all necessary applications regarding such fees and expenses with the Bankruptcy Court. We shall have no obligation to provide services under this Agreement unless our retention under this Agreement is approved under Section 328(a) of the Bankruptcy Code by final order of the Bankruptcy Court which is acceptable to Galaxy and which approves this Agreement in all material respects. If the order authorizing our employment is not obtained, or is later reversed, modified or set aside for any reason, we may terminate this Agreement, and the Company shall promptly reimburse us for all Fees and Expenses due hereunder, including any Fees due or to become due under the Tail Period (as defined below). The terms of this Section are solely for our benefit, and may be waived, in whole or in part, only by us. In addition, the Company shall seek Bankruptcy Court approval of a Restructuring Fee promptly when agreed following the identification and preliminary qualification of the Company's assets and liabilities. No Restructuring Fee shall be due unless subsequently agreed in writing by both parties to this Agreement and approved by the Bankruptcy Court.

6.  <u>Expertise</u>. The Company acknowledges and agrees that Galaxy's restructuring expertise as well as its capital markets knowledge, financing skills and mergers and acquisitions capabilities, some or all of which may be required by the Company during the term of our Engagement hereunder, were important factors in determining the amount of the various fees set forth herein, and that the ultimate benefit to the Company of our services hereunder could not be measured merely by reference to the number of hours to be expended by our professionals in the performance of such services. The Company also acknowledges and agrees that the various fees set forth herein have been agreed upon by the parties in anticipation that a substantial commitment of professional time and effort will be required of us and our professionals hereunder over the life of the Engagement, and in light of the fact that such commitment may foreclose other opportunities for us and that the actual time and commitment required of us and our professionals to perform their services hereunder may vary substantially from week to week or month to month, creating "peak load" issues for the firm. In addition, given the numerous issues which we may be required to address in the performance of our services hereunder, our commitment to the variable level of time and effort necessary to address all such issues as they arise, and the market prices for our services for engagements of this nature in an out-of-court context, the Company agrees that all of the fee arrangements specified herein are commercially reasonable.

7.    Information; Cooperation.

(a)    In connection with the Engagement, the Company will provide us with access to the Company's officers, directors, employees, accountants, legal advisors, and other representatives (collectively, "**Representatives**"), and will furnish us and cause its Representatives to furnish us with such information as we believe appropriate for the Engagement (all such information so furnished being the "**Information**"). The Company recognizes and confirms that we (i) will use and rely primarily on the Information and on information available from generally recognized public sources in performing its services without having independently verified the same and (ii) do not assume responsibility for the accuracy or completeness of the Information and such other information or have any liability therefore. The Company will promptly notify us if it learns of any material inaccuracy or misstatement in, or material omission from, any Information theretofore delivered to us.

(b)    The Company agrees to cooperate with us in the performance of our services under this Agreement and shall provide us with timely access to and use of personnel, facilities, equipment, data and Information to the extent necessary to permit us to perform services under this Agreement. In order to coordinate effectively the Company's and our activities to effect a Restructuring, Financing and/or Sale, or other transaction, the Company will promptly inform us of any pending or future discussions, negotiations or inquiries regarding a possible Restructuring, Financing and/or Sale (including any such discussions, negotiations or inquiries that have occurred in the six- month period prior to the date of this Agreement) of which the Chief Executive Officer is or becomes aware.

(c)    The Company shall use its best efforts to make available to Galaxy all Information concerning the assets, operations, financial condition, and prospects of the Company that Galaxy may require to render the services hereunder. The Company shall provide Galaxy with access to the Company's officers, employees, independent accountants, counsel, and other advisors and agents as Galaxy deems appropriate. In order to coordinate effectively the Company's and Galaxy's activities to effect any Transaction, the Company will promptly inform Galaxy of any discussions, negotiations, or inquiries regarding a possible Transaction (including any such discussions, negotiations, or inquiries that have occurred prior to the date of this Agreement).

(d)    The Company represents that, to the best of its knowledge, all Information furnished by it or on its behalf to Galaxy at all times during Galaxy's Engagement:

(i)    will be true and correct in all material respects, and

(ii)    will not contain any untrue statement of a material fact or omit to state a material fact necessary in order to make the statements therein not misleading in light of the circumstances under which such statements are made, in each case as of the date on which such Information is provided, or as of the date indicated in such Company Information, as applicable. If at any time during the term of this Engagement, the Company becomes aware that the Information is or has become inaccurate or misleading in any material respect, then the Company shall promptly notify Galaxy of the same.

(e)    Galaxy agrees that it will use the Company Information for the sole purpose of the Engagement, and that it will not use Company Information in connection with an Engagement with any of its other clients. The Company recognizes and acknowledges that in advising the Company and completing its Engagement hereunder, Galaxy will also be using and relying on publicly available information and on data, material, and, with the Company's permission, other information furnished to Galaxy by the

7

DocuSign Envelope ID: 5E7225E0-193A-4BBF-BEA5-0ED06E910E01

Company's other advisors.

8.    <u>Work Product</u>. All documents, materials or information of any kind created by us in connection with this Engagement, including, without limitation, any written reports, memoranda, analyses, work papers or status summaries, whether or not delivered to the Company, are work product (collectively, "**Work Product**"). All Work Product shall be owned and maintained by us. You agree not to use any Work Product except in connection with any transaction contemplated by this Agreement or otherwise within the scope of the Engagement, and not for any other purpose. Our Work Product may not be relied upon by any other person including, but not limited to, any security holder, or employee or creditor of the Company, and may not be used or relied upon for any other purpose. You may not publicly disclose, summarize, excerpt from or otherwise refer to any Work Product rendered by us, whether formal or informal, without our prior written consent.

9.    <u>Confidentiality</u>. The Company may not publicly disclose, summarize, excerpt from or otherwise refer to any advice rendered by us, whether formal or informal, without our prior written consent. In addition, the Company may not refer to our name or the terms of our Engagement without our prior written consent. The Company's obligations under this section will survive the completion or termination of the Engagement. We will not be providing the Company with, and the Company will not look to us for, tax, legal, accounting or other similar advice and we agree that nothing in this Agreement is intended to impose any conditions of confidentiality within the meaning of Section 6111 of the Internal Revenue Code of 1986, as amended, or US Treasury Regulation Section 1.6011-4. The Company may disclose to any and all persons, without limitation of any kind, the United States tax treatment (federal, state and local) and tax structure of any transaction and all materials of any kind relating to such tax treatment and tax structure.

10.    <u>Representations and Warranties</u>. The Company and Galaxy agree as follows with respect to the Transaction:

(a)    The Company warrants and agrees that: (i) none of the Company, any of its predecessors, any affiliated issuer, any director, executive officer, or any other officer of the Company expected to participate in the offering of securities of the Company, any beneficial owner (as that term is defined in Rule 13d-3 under the Securities Exchange Act of 1934, as amended (the "**Exchange Act**"), of 20% or more of the Company's outstanding voting equity securities, calculated on the basis of voting power, nor any promoter (as that term is defined in Rule 405 of the Securities Act of 1933, as amended (the "**Securities Act**")) connected with the Company in any capacity (each, a "**Covered Person**" and, together, "**Covered Persons**") is subject to any of the "Bad Actor" disqualifications described in Rule 506(d)(1)(i) to (viii) under the Securities Act (a "**Disqualification Event**"), except for a Disqualification Event covered by Rule 506(d)(2) or (d)(3); (ii) the Company has exercised reasonable care to determine (x) the identity of each person that is a Covered Person and (y) whether any Covered Person is subject to a Disqualification Event; (iii) the Company is not aware of any person other than any Covered Person or any Galaxy Covered Person (as defined in Section 5(b)) that has been or will be paid (directly or indirectly) remuneration for solicitation of purchasers in connection with the Transaction, and the Company will notify Galaxy of any agreement entered into between the Company and such person in connection with any sale of securities; (iv) the Company has established procedures reasonably designed to ensure that it receives notice from each such Covered Person of (A) any Disqualification Event relating to that Covered Person and (B) any event that would, with the passage of time, become a Disqualification Event relating to that Covered Person, in each case occurring up to and including the execution and delivery of a definitive agreement and any closing under any such definitive agreement; and (v) the Company shall provide prompt written notice to Galaxy of any Disqualification Event relating to any Covered Person, prior to both the execution and delivery of a definitive agreement and prior to any closing under any such definitive agreement. The

Company will also comply, to the extent applicable, with its disclosure obligations under Rule 506(e), and will furnish to Galaxy a copy of any disclosures to be provided thereunder.

(b)  Galaxy represents, warrants and agrees that neither it, nor any of its directors, executive officers, other officers participating in the offering securities of the Company, general partners or managing members, or any of the directors, executive officers or other officers participating in the Transaction of any such general partner or managing member (each, a "**Galaxy Covered Person**" and, together, "**Galaxy Covered Persons**"), is subject to any Disqualification Event, except for any Disqualification Event (i) contemplated by Rule 506(d)(2) of the Securities Act and (ii) a description of which has been furnished in writing to the Company on or prior to execution hereof. Galaxy shall provide prompt written notice to the Company of any Disqualification Event relating to any Galaxy Covered Person. Galaxy represents and warrants that it is not aware of any person other than any Covered Person or Galaxy Covered Person that has been or will be paid (directly or indirectly) remuneration for solicitation of purchasers in connection with the sale of securities of the Company, and Galaxy will notify the Company of any agreement entered into between Galaxy and such person in connection with any sale of securities of the Company.

(c)  The Company warrants and agrees that it and its counsel are solely responsible for determining whether the Transaction and the sale of securities constitutes a sale of securities, and will comply with all state, federal and international laws and regulations, including the Securities Act, to the extent such laws and regulations apply to the Transaction, and Galaxy shall be entitled to rely on such determinations and on the Company's compliance with such laws.

(d)  The Company acknowledges that (i) Galaxy is a registered broker-dealer and member of FINRA and SIPC and (ii) pursuant to its registration with FINRA, Galaxy is not currently authorized as a broker-dealer to (a) engage in underwriting or private placement services with respect to digital assets, virtual currencies, tokens or warrants to purchase tokens, initial coin offerings or any other digital representations of securities on a blockchain (collectively, "**Digital Securities**"); (b) buy, hold or sell any Digital Securities, on behalf of itself or its clients; or (c) accept Digital Securities as payment for the provision of broker-dealer services.

11.  <u>Right of First Refusal</u>. For a period of twelve months from the consummation of the Transaction, whether or not the Engagement contemplated under this Agreement is terminated, the Company grants Galaxy the right, but not the obligation, to provide investment banking services to the Company on a non-exclusive basis in all matters for which investment banking services are sought by the Company (such right, the "**Right of First Refusal**"), which right is exercisable in Galaxy sole discretion. The Company shall promptly notify Galaxy in writing if the Company intends to engage an advisor for investment banking services. For these purposes, investment banking services shall include, without limitation, the services described herein. Galaxy shall notify the Company of its intention to exercise the Right of First Refusal within 10 business days following notice in writing by the Company. Any decision by Galaxy to act in any such capacity shall be contained in separate agreements, which agreements would contain, among other matters, provisions for customary fees for transactions of similar size and nature, as may be mutually agreed upon, and indemnification of Galaxy and shall be subject to general market conditions. If Galaxy declines to exercise the Right of First Refusal, the Company shall have the right to retain any other person or persons to provide such services on terms and conditions which are not materially more favorable to such other person or persons than the terms declined by Galaxy.

12.  <u>Termination</u>. Our services hereunder may be terminated by providing 30 days prior written notice by either party hereto with or without cause by you or by us at any time and without liability

or continuing obligation to you or to us. No termination of our Engagement or this Agreement shall modify or affect (i) the Company's obligation to pay our Fees and to pay or reimburse Expenses through the effective date of termination under Sections 2 and 3 of this Agreement, respectively, and (ii) the Company's obligations under Sections 4, 5, 8, 9, 10, 11, 12, 13, 14, 15, 16 and 17, 18 and 19 all of which shall survive the termination of our Engagement; provided, however, that in the case of termination by you, we shall be entitled to be paid the full amount of our Restructuring, Financing or Sale Fees if, during the term or within one (1) year of such termination (the "**Tail Period**"), (x) any Restructuring, Financing and/or Sale is effected, or (y) the Company agrees to a Restructuring, Financing and/or Sale which is subsequently effected, at any time. Notwithstanding any other provision of this Agreement, the obligations of the Company with respect to the Tail Period shall not bind any purchaser in a transaction approved by the Bankruptcy Court or any successor entity of the Company after the effectiveness of a Chapter 11 plan of reorganization.

13.  <u>Other Galaxy Activities</u>. Galaxy is a financial services firm engaged directly and through its affiliates in investment banking, financial advisory services, investment management, asset management and other advisory services and sponsors special purpose acquisition vehicles. The Company understands and acknowledges that in performing the Engagement we will not be under any duty to disclose to the Company, or use for the benefit of the Company, any confidential or non-public information obtained by us or our affiliates in the course of providing services to any other person or engaging in any other transaction (including as principal) or business activities. In the ordinary course of business activities, Galaxy Digital LP or its affiliates or their respective personnel may at any time hold long or short positions, and may trade or otherwise effect transactions, for its or their own accounts or the accounts of customers, in debt or equity or other securities (or related derivative securities) or financial instruments (including bank loans or other obligations) of the Company or any other party to a transaction or any of their respective affiliates. The foregoing notwithstanding, nothing set forth herein shall be deemed to prohibit Galaxy or its affiliates from engaging in its principal investing, investment banking, financial advisory services, investment management, asset management or other advisory activities in the ordinary course of business involving financial technology, tokens, cryptocurrencies, tokens or securities of any other party or potential party to a transaction, provided that personnel engaged in such activities have all been instructed to keep such non-public information confidential in compliance with this Agreement. In addition, nothing in this Agreement precludes Galaxy from using General Knowledge. "**General Knowledge**" means generalized know-how, ideas, concepts, processes, information or techniques related to tokens, cryptocurrency or technology that are retained solely in intangible form in the unaided memories of a Galaxy employee or affiliate who have had access to the confidential information of the Company under this Agreement; provided, however, that none of the foregoing shall relieve Galaxy or its Affiliates from liability associated with the unauthorized disclosure of the Company's confidential information. Subject to applicable confidentiality obligations, Galaxy agrees to disclose in a declaration to the Company certain information concerning Galaxy's material business relationships that it determines, in accordance with its internal policies and procedures (including its internal conflict of interest policies), are applicable to the Engagement, in accordance with its ordinary course connections check process. Notwithstanding anything contained herein, during the term of this agreement, Galaxy shall not become engaged to act as financial advisor to any party (other than the Company) in connection with a Sale, Financing or Restructuring.

14.  <u>Governing Law</u>. All aspects of the relationship created by this Agreement (including Annex A) shall be governed by and construed in accordance with the laws of the State of New York, applicable to agreements made and to be performed entirely in such State. All actions and proceedings arising out of or relating to this Agreement shall be heard and determined exclusively in any New York state or federal court sitting in the Borough of Manhattan of the City of New York, to whose jurisdiction the Company hereby irrevocably submits. The Company hereby irrevocably waives any defense or

10

objection to the New York forum designated above. The Company will appoint and provide us with the name and address of an agent for the service of process in New York, and if the Company fails to do so, the Company hereby consents to allow us to appoint, in our sole discretion, an agent for the service of process on the Company in New York. The Company further agrees that a final judgment in any such action or proceeding shall be conclusive and may be enforced in other jurisdictions by suit or in another manner provided by law, and consents to the service of process upon it by the mailing or delivering such service to its agent and authorizes and directs its agent to accept such service. Galaxy and the Company (on its own behalf and, to the extent permitted by law, on behalf of its equity holders) waives all right to trial by jury in any action, suit, proceeding or counterclaim (whether based upon contract, tort or otherwise) related to or arising out of the Engagement or the performance by us of the services contemplated by this Agreement.

15.    Assignment; Severability. No party hereto may assign, transfer or delegate any of its rights or obligations without the prior written consent of the other parties, such consent not to be unreasonably withheld. In the event that any term or provision of this Agreement shall be held to be invalid, void or unenforceable by a court of competent jurisdiction (not subject to further appeal), then the remainder of this Agreement shall not be affected, and each such term and provision of this Agreement shall be valid and enforceable to the fullest extent permitted by law.

16.    Public Announcements. The Company acknowledges that we may, at our option and expense and after public announcement of a Restructuring, Financing and/or Sale, place announcements and advertisements or otherwise publicize such Restructuring, Financing and/or Sale and our role in it (which may include the reproduction of the Company's logo and a hyperlink to the Company's website) on our internet website, social media, and in such financial and other newspapers and journals as we may choose, stating that we acted as financial advisor to the Company in connection with the Restructuring, Financing and/or Sale.

17.    Regulation Relating to Client Identification. Federal law and regulations require financial institutions to obtain, verify and record information that identifies each person with whom they do business prior to doing such business and to provide reasonable notice to such persons that the financial institution is verifying such person's identity. Accordingly, the Company will provide us, as necessary and upon request, certain identifying information, including, but not limited to, a government- issued identification number (e.g., a U.S. taxpayer identification number) and certain other information or documents necessary to verify the Company's identity, such as certified corporate documentation, partnership agreement or trust instrument.

18.    Co-Advisors. It is understood that no Indemnified Person, as defined herein in Annex A, shall have any responsibility or liability to the Company or its affiliates or any other party in connection with the advice, opinions or actions of any other advisors engaged by the Company, and further, no Indemnified Person or any such other advisor shall have any responsibility or liability to each other in connection with the advice or opinions rendered by such party in connection with the Engagement.

19.    Limitation on Actions. No action, regardless of form, arising out of or relating to the Engagement, may be brought by you more than one year after the cause of action has accrued. 18.Entire Agreement; Amendments. This Agreement, including Annex A, constitutes the entire agreement between us and the Company with respect to the Engagement and supersedes all other oral and written representations, understandings or agreements relating to this Engagement. No alteration, waiver, amendment, change or supplement hereto shall be binding or effective unless the same is set forth in writing signed by a duly authorized representative of each party. You acknowledge the Company's agreement with the terms stated herein, and acknowledge that you have reviewed and agreed to be bound by the terms of

DocuSign Envelope ID: 5E7225E0-193A-4BBF-BEA5-0ED06F910E01

this Agreement, and that you have all requisite power and authority to enter into this Agreement on behalf of the Company, and have been duly and validly authorized to do so, as evidenced by your signature below. Facsimile and electronic signatures shall be deemed original, binding signatures.

*[Signature page follows.]*

12

We are delighted to accept the Engagement and look forward to working with you on this assignment.  Please confirm your agreement to the foregoing by signing and returning to us the enclosed duplicate of this Agreement which will then be a binding agreement.

Very truly yours,

**GALAXY DIGITAL PARTNERS LLC**

By _____
Name: Michael Ashe
Title: Authorized Signatory

Agreed and accepted as of
the date set forth above:

**PRIME TRUST LLC**

By _____
Name: John Guedry
Title: Receiver

13

DocuSign Envelope ID: 5E7225E0-193A-4BBF-BEA5-0ED06E910E01

**Annex A**
**Indemnification**

The Company agrees to indemnify and hold harmless Galaxy and its affiliates and its and their respective officers, directors, partners, members, employees, consultants and agents and each other person, if any, controlling Galaxy or any of its affiliates (Galaxy and each such other person being an "Indemnified Person") from and against any losses, claims, damages or liabilities related to, or arising out of or in connection with our engagement or any matter referred to in this letter (the "Engagement"), and will reimburse each Indemnified Person for all reasonable and documented out-of-pocket expenses (including fees, charges and disbursements of counsel) as they are incurred in connection with investigating, preparing, pursuing or defending any action, claim, suit, investigation or proceeding related to, arising out of or in connection with the Engagement, whether or not pending or threatened and whether or not any Indemnified Person is a party; provided, however, that the Company will not be responsible for any losses, claims, damages or liabilities (or expenses relating thereto) that are finally judicially determined to have resulted primarily from the gross negligence, bad faith, intentional fraud or willful misconduct of any Indemnified Person. The Company also agrees that no Indemnified Person shall have any liability (whether direct or indirect, in contract or tort or otherwise) to the Company for or in connection with the Engagement, except for any such liability for losses, claims, damages or liabilities incurred by the Company that are finally judicially determined to have resulted primarily from the gross negligence, bad faith, intentional fraud or willful misconduct of such Indemnified Person. Notwithstanding the foregoing, the indemnity obligations herein shall not extend to Actions (as defined below) initiated or brought by or on behalf of any Indemnified Person against the Company or any other Indemnified Person that, in each case, is not initiated or brought in connection with or in any way related to an Action brought by a third party or by the Company or the Client (or any person acting on their behalf) against a third party, in each case in which such Indemnified Person becomes involved in a capacity otherwise covered by this Annex A.

Promptly after receipt by an Indemnified Person of notice of the commencement of any claim, action, suit, investigation or proceeding for which it is entitled to indemnification hereunder (an "Action"), such Indemnified Person shall notify the Company of such Action, provided, however, that no delay on the part of any Indemnified Person in providing such notice shall relieve the Company of its obligations hereunder, except to the extent the Company is materially prejudiced thereby. If any Indemnified Person is entitled to indemnification hereunder with respect to any Action that is also brought against the Company or its affiliates, upon written notice by the Company acknowledging its indemnification obligations hereunder, the Company shall be entitled to assume the defense of any such matter and appoint legal counsel reasonably satisfactory to such Indemnified Person; provided, however, that the Company shall not be entitled to assume the defense of any Action that (i) relates to, or arises out of, any criminal proceeding or (ii) involves an Action seeking injunctive or equitable relief against any Indemnified Person or their affiliates. Upon assumption by the Company of the defense of any such Action in accordance with the foregoing, the Indemnified Person shall have the right to participate in such Action and to retain its own counsel but the Company shall not be liable for any legal expenses of such counsel unless the Indemnified Person shall have been advised by counsel that there are (x) actual or potential conflicting interests between the Company and its affiliates, on the one hand, and the Indemnified Person, on the other hand or (y) additional legal defenses available to the Indemnified Person, in which case the Company shall only be liable for legal expenses for one counsel acting collectively for all such Indemnified Persons, unless additional legal counsels are required in connection with local law or applicable jurisdictional requirements, in which case the Company will also be liable for the legal expenses of such additional legal counsel.

The Company, or any of its affiliates, will not, without Galaxy's prior written consent, settle, compromise, consent to the entry of any judgment in or otherwise seek to terminate any action, claim, suit, investigation

14

DocuSign Envelope ID: 5E7225E0-193A-4BBF-BEA5-0ED06E910E01

or proceeding in respect of which indemnification, reimbursement or contribution may be sought hereunder (whether or not any Indemnified Person is a party thereto), nor will the Company or any of its affiliates participate in or facilitate any such settlement, compromise, consent or termination on behalf of the Company's board of directors (or similar governing body) unless such settlement, compromise, consent or termination includes a full release of each Indemnified Person from any and all liabilities arising out of such action, claim, suit, investigation or proceeding. No Indemnified Person seeking indemnification, reimbursement or contribution under this Annex A will, without the Company's prior written consent, settle, compromise, consent to the entry of any judgment in or otherwise seek to terminate any action, claim, suit, investigation or proceeding referred to in the preceding paragraph.

If the indemnification provided for in the first paragraph of this Annex A is, for any reason not available to an Indemnified Person or is insufficient to hold an Indemnified Person harmless in respect of any losses, claims, damages or liabilities referred to herein, then, in lieu of indemnifying such Indemnified Person hereunder, the Company shall contribute to the amount paid or payable by such Indemnified Person as a result of such losses, claims, damages or liabilities (and expenses relating thereto) (a) in such proportion as is appropriate to reflect the relative benefits to Galaxy, on the one hand, and the Company, on the other hand, of the Engagement or (b) if the allocation provided by clause (a) above is not available, in such proportion as is appropriate to reflect not only the relative benefits referred to in such clause (a) but also the relative fault of each of Galaxy and the Company, as well as any other relevant equitable considerations; provided, however, to the extent permitted by applicable law, in no event shall Galaxy's aggregate contribution to the amount paid or payable exceed the aggregate amount of fees actually received by Galaxy under this letter. For the purposes of this Annex A, the relative benefits to Galaxy and the Company of the Engagement shall be deemed to be in the same proportion as (i) the fees paid or to be paid to Galaxy under this Agreement, bears to (ii) the total value paid or contemplated to be paid to or received or contemplated to be received by the Company or its stockholders, as the case may be, in the transaction or transactions that are the subject of the Engagement, whether or not any such transaction is consummated. The indemnity, contribution, and other obligations and agreements of the Company set forth in this Annex A and the engagement letter to which it is attached shall apply to any services provided by Galaxy in connection with this Engagement prior to the date hereof.