## IN THE UNITED STATES BANKRUPTCY COURT
## FOR THE DISTRICT OF DELAWARE

|  |  |
|---|---|
| In re: | ) Chapter 11 |
|  | ) |
| Prime Core Technologies Inc., *et al.*, | ) Case No. 23-11161 (JKS) |
|  | ) |
| Debtors.[1] | ) (Jointly Administered) |
|  | ) |
|  | ) **Obj. Deadline: Sept. 28, 2023 at 4:00 p.m. (ET)** |
|  | ) **Hrg. Date: October 5, 2023 at 2:00 p.m. (ET)** |

### APPLICATION OF THE DEBTORS FOR ENTRY OF AN ORDER AUTHORIZING AND APPROVING THE EMPLOYMENT AND RETENTION OF M3 ADVISORY PARTNERS, LP AS FINANCIAL ADVISOR PURSUANT TO BANKRUPTCY CODE SECTION 327(a), BANKRUPTCY RULES 2014(a) AND 2016, AND LOCAL RULE 2014-1, EFFECTIVE AS OF THE PETITION DATE

Prime Core Technologies Inc. and certain of its affiliates and subsidiaries, as debtors and debtors in possession in the above-captioned chapter 11 cases (collectively, the "Debtors"), hereby file this application (the "Application"), seeking entry of an order, substantially in the form attached hereto **Exhibit A** (the "Proposed Order"), authorizing the employment and retention of M3 Advisory Partners, LP ("M3"), as their financial advisor, pursuant to section 327(a) of the title 11 of the United States Code (the "Bankruptcy Code"), Rules 2014(a) and 2016 of the Federal Rules of Bankruptcy Procedure (the "Bankruptcy Rules"), and Rule 2014-1 of the Local Rules of Practice and Procedure of the United States Bankruptcy Court for the District of Delaware (the "Local Rules"), effective as of August 14, 2023. In support of this Application, the Debtors submit the *Declaration of Robert Winning in Support of the Application of the Debtors for Entry of an Order Authorizing and Approving the Employment and Retention*

---

[1]  The Debtors in these Chapter 11 Cases, along with the last four digits of each debtor's federal tax identification number are: Prime Core Technologies Inc. (5317); Prime Trust, LLC (6823); Prime IRA LLC (8436); and Prime Digital, LLC (4528). The Debtors' service address is 10845 Griffith Peak Dr., #03-153, Las Vegas, NV 89135.

*of M3 Advisory Partners, LP as Financial Advisor Pursuant to Bankruptcy Code Section 327(a),*

*Bankruptcy Rules 2014(a) And 2016, And Local Rule 2014-1, Effective as of the Petition Date*

"Winning Declaration"), attached hereto as **Exhibit C**.

## JURISDICTION AND VENUE

1.      The United States Bankruptcy Court for the District of Delaware (the "Court") has

jurisdiction to consider the Application pursuant to 28 U.S.C. §§ 157 and 1334 and the *Amended*

*Standing Order of Reference* from the United States District Court for the District of Delaware,

dated February 29, 2012. This is a core proceeding under 28 U.S.C. § 157(b). Venue of these cases

and the Application in this District is proper under 28 U.S.C. §§ 1408 and 1409.

2.      The legal predicates for the relief requested herein are Bankruptcy Code sections

327(a) and 330, Bankruptcy Rules 2014(a) and 2016, and Local Rule 2014-1.

3.      The Debtors confirm their consent, pursuant to Local Rule 9013-1(f), to the entry

of a final order by the Court in connection with the Motion in the event that it is later determined

that the Court, absent consent of the parties, cannot enter final orders or judgments in connection

herewith consistent with Article III of the United States Constitution.

## BACKGROUND

4.      On August 14, 2023 (the "Petition Date"), each Debtor commenced a case by

filing a voluntary petition for relief under chapter 11 of the Bankruptcy Code (collectively, the

"Chapter 11 Cases"). These cases have been jointly administered for procedural purposes only.

5.      The Debtors continue to manage their properties as debtors and debtors in

possession pursuant to Bankruptcy Code sections 1107(a) and 1108.

6.      On August 29, 2023, the Office of the United States Trustee for the District of

Delaware (the "U.S. Trustee") appointed an official committee of unsecured creditors pursuant to

Bankruptcy Code section 1102 (the "Committee") [Docket No. 51]. The Committee is comprised of the following unsecured creditors: (a) Yousef Abbasi; (b) Allsectech, Inc.; (c) DMG Blockchain Solutions, Inc.; (d) Net Cents Technology, Inc.; (e) Polaris Ventures; (f) Stably Corporation; and (g) Austin Ward.

7.     Additional information regarding the Debtors and these Chapter 11 Cases, including the Debtors' business operations, capital structure, financial condition, and the reasons for and objectives of these Chapter 11 Cases, is set forth in the *Declaration of Jor Law, Interim Chief Executive Officer and President of Prime Core Technologies Inc., et al., in Support of Chapter 11 Petitions and First Day Motions* [Docket No. 14], which is incorporated by reference as if fully set forth herein.

**<u>RETENTION OF M3</u>**

8.     The Debtors seek to retain M3 because they have determined that the services of experienced financial advisors will substantially enhance their attempts to maximize the value of their estates. M3 is well qualified to provide these services in light of their extensive knowledge and expertise with respect to chapter 11 proceedings.

9.     M3 is a leading, independent corporate advisory firm that provides operational, strategic, and financial solutions to a broad range of clients across a wide range of industries. M3 employs more than 50 professionals and its senior professionals have led hundreds of engagements, including some of the most significant restructurings in the market, while working alongside or across from the largest lenders, private equity sponsors, hedge funds, investment bankers, and legal advisors in the industry. M3's professionals have experience providing these services in many large and mid-size bankruptcy cases in this and other districts nationwide. *See, e.g.*, *In re Celsius Network LLC, et al.*, No. 22-10964 (MG) (Bankr. S.D.N.Y. Oct. 18, 2022); *In*

*re Sorrento Therapeutics, Inc.*, No. 23-90085 (DRJ) (Bankr. S.D. Tex. Apr. 13, 2023); *In re PWM Property Management LLC*, No. 21-11445 (MFW) (Bankr. D. Del. 2021); *In re Secure Home Holdings LLC*, No. 21-10745 (JKS) (Bankr. D. Del. 2021); *In re Sanchez Energy Corp.*, No. 19-34508 (MI) (Bankr. S.D. Tex. 2019); *In re Barneys New York, Inc.*, No. 19-36300 (CMG) (Bankr, S.D.N.Y. 2019); *In re Sears Holdings Corp.*, No. 18-23538 (RDD) (Bankr. S.D.N.Y. 2018); *In re Real Industry, Inc.*, No. 17-12464 (KJC) (Bankr. D. Del. 2018).

10.     The Debtors submit this Application because of their need to retain a qualified and experienced financial advisor with the resources, capabilities, and experience of M3 to effectively manage their transition into, and continuation of operations in, these Chapter 11 Cases. As described in the Winning Declaration, M3 has a wealth of experience providing financial advisory services to distressed companies in complex restructurings. M3 has an excellent reputation for providing high-quality services in large and complex chapter 11 cases on behalf of debtors and creditors throughout the United States. M3's expertise includes significant experience assisting distressed companies with day-to-day management activities, including development of pro forma financials and business plans, cash flow management, and implementation of liquidity-enhancing and cost-saving strategies.

11.     Furthermore, M3 has acquired significant knowledge of the Debtors and their business and is intimately familiar with the Debtors' financial affairs and systems, assets, capital structure, operations, and related matters. During its engagement, M3 has provided a wide range of services targeted at: (a) monitoring and managing cash and cash flows, including assisting management with the development of liquidity forecasts; (b) designing and assessing various financial restructuring and other strategic alternatives; and (c) executing chapter 11 filings and first-day relief.

12.    Accordingly, the Debtors believe that M3 is well qualified to advise the Debtors

in an efficient and timely manner in the Chapter 11 Cases.

## **SERVICES TO BE PROVIDED**

13.    Subject to approval by the Court, the Debtors propose to retain and employ M3 on

the terms and conditions set forth in the engagement letter, dated August 2, 2023 (the

"Engagement Letter"), attached hereto as **Exhibit B**, except as otherwise explicitly set forth

herein or in any order granting this Application.

14.    Among other things, M3 will specifically but without limitation, render the

following financial advisory services to support the Debtors throughout the Chapter 11 Cases:[2]

a.    Assist the Debtors in the development and administration of its short-term
cash flow forecasting and related methodologies, as well as its cash
management planning;

b.    Provide such assistance as reasonably may be required by management of
the Debtors in connection with (i) development of its business plan, (ii)
any restructuring plans and strategic alternatives intended to maximize
enterprise value, and (iii) any related forecasts that may be required by
creditor constituencies in connection with negotiations or by the Debtors
for other corporate purposes

c.    Assist the professionals who are representing the Debtors in the
reorganization process or who are working for the Debtors' various
stakeholders to coordinate their effort and individual work product to be
consistent with the Debtors' overall restructuring goals;

d.    Assist, if required, the Debtors in communications and negotiations with
their outside constituents, including creditors, trade vendors and their
respective advisors;

e.    Assist the Debtors in obtaining and presenting such information as may be
required by the parties in interest to the Chapter 11 Cases and bankruptcy

---

[2]    The summaries of the Engagement Letter (and indemnification agreements constituting a part thereof)
contained in this Application are provided for purposes of convenience only. In the event of any inconsistency
between the summaries contained herein and the terms and provisions of the Engagement Letter, the terms of
the Engagement Letter shall control. Capitalized terms used in such summaries but not otherwise defined
herein shall have the meanings set forth in the Engagement Letter.

processes that may be initiated by the Debtors, including any creditors' committees and the bankruptcy court;

f.      Provide such other services as are reasonable and customary for a financial advisor in connection with the administration and prosecution of a bankruptcy proceeding of this nature, including assisting the Debtor's counsel and other advisors with respect to investigations and litigation matters;

g.      Provide such other Services as are described in the Engagement Letter; and

h.      Provide such additional services as M3 and the Debtors shall otherwise agree in writing.

15.      Concurrently with the filing of this Application, the Debtors also filed applications to employ (a) McDermott Will & Emery LLP as their counsel, (b) Galaxy Digital Partners LLC as investment banker; and (c) Stretto, Inc. as claims and noticing agent, and administrative advisor in the Chapter 11 Cases. M3 has advised the Debtors that it intends to carefully monitor the efforts of these other professionals and coordinate with such professionals to clearly delineate their respective duties in order to prevent duplication of effort. The efficient coordination of the efforts of the Debtors' attorneys and other professionals will greatly add to the effective administration of the Chapter 11 Cases.

16.      The Debtors do not believe that the services to be rendered by M3 will be duplicative of the services performed by any other professional, and M3 will work with the other professionals retained by the Debtors to minimize any duplication of services on behalf of the Debtors.

## **TERMS OF RETENTION**

17.      Subject to Court approval, and in compliance with the applicable provisions of the Bankruptcy Code, the Bankruptcy Rules, and the Local Rules, and such other procedures as may

be fixed by order of the Court, the Debtors will compensate M3 in accordance with the terms and conditions of the Engagement Letter, which is attached as **Exhibit B** to the Application.

A.     **Compensation**

18.     As set forth more fully in the Engagement Letter, M3 and the Debtors have agreed on the terms of compensation and expense reimbursement (the "Service Fees and Expenses") to (a) compensate M3 for the services set forth in the Engagement Letter on an hourly basis in accordance with M3's ordinary and customary rates in effect on the date such services are rendered, and (b) reimburse reasonable allocated and direct expenses incurred by M3 in connection with all services performed on behalf of the Debtors.

19.     *Hourly Fees*. The current standard U.S. hourly rates (expressed in USD), subject to periodic adjustments, that M3 professionals will charge for the work of professionals and staff members pursuant to the Engagement Letter are as follows:

| Professional | Hourly Rate |
|---|---|
| Managing Partner | $1,350 |
| Senior Managing Director | $1,245 |
| Managing Director | $1,025 - $1,150 |
| Director | $840 - $945 |
| Vice President | $750 |
| Senior Associate | $650 |
| Associate | $550 |
| Analyst | $450 |

20.     These hourly rates reflect M3's normal and customary billing practices for engagements of this complexity and magnitude. M3 revises its hourly rates periodically and M3 will provide ten (10) business days' advance notice of any rate increases to the Debtors, the U.S. Trustee, and the Committee.

21.    *Expenses*. In addition to compensation for professional services, M3 will seek reimbursement for reasonable and documented out-of-pocket expenses incurred in connection with these Chapter 11 Cases, including, without limitation, travel costs.

22.    The Debtors believe that the Service Fees and Expenses are reasonable and comparable to those generally charged by financial advisors and consultants of similar stature to M3 for comparable engagements, both in and out of chapter 11. The Service Fees and Expenses summarized above and described more fully in the Engagement Letter are consistent with M3's normal and customary billing practices for comparably sized and complex cases and transactions, both in and out of court, involving the services to be provided in connection with Chapter 11 Cases. In addition, the Service Fees and Expenses are comparable to the terms and conditions M3 offers to similar clients for similar services. The Debtors therefore submit that the Service Fees and Expenses are fair and reasonable under the standards set forth in Bankruptcy Code section 328(a).

23.    To the best of the Debtors' knowledge, information, and belief, and as set forth in the Winning Declaration, M3 has not shared or agreed to share any of its compensation from the Debtors or any other person, other than as permitted by Bankruptcy Code section 504. Further, M3 has not received any promises as to compensation in connection with these Chapter 11 Cases, other than as outlined in the Engagement Letter.

24.    M3 will seek the Court's approval of its compensation for professional services rendered and reimbursement of expenses incurred in connection with these Chapter 11 Cases in compliance with applicable provisions of the Bankruptcy Code, the Bankruptcy Rules, Local Rules, as well as the guidelines established by the U.S. Trustee, and any other applicable

procedures and orders of the Court, and consistent with the proposed compensation set forth herein.

25.     M3 will also maintain records in support of any fees (in 1/10th of an hour increments), costs, and expenses incurred in connection with services rendered in these Chapter 11 Cases. Records will be arranged by category and nature of the services rendered and will include reasonably detailed descriptions of those services provided on behalf of the Debtors. M3's applications for compensation of fees and reimbursement of expenses will be paid by the Debtors pursuant to the terms of the Engagement Letter and any procedures established by this Court.

**B.     Indemnification**

26.     The Engagement Letter contains standard indemnification language with respect to M3's services including, without limitation, an agreement by the Debtors to indemnify M3 and its affiliates, equity holders, partners, directors, employees, agents, representatives and contractors, including past, present or future partners, principals and personnel of each, against all costs, fees, expenses, damages, and liabilities relating to or arising out of the Engagement Letter or M3's services, except to the extent caused by bad faith, gross negligence, or willful misconduct.

27.     The indemnification provisions contained in the Engagement Letter (the "Indemnification Provisions") are customary and reasonable for M3 and comparable firms providing financial advisory services. The terms and conditions of the Indemnification Provisions were negotiated by the Debtors and M3 at arm's length and in good faith. The provisions contained in the Engagement Letter, viewed in conjunction with the other terms of

M3's proposed retention, are reasonable and in the best interest of the Debtors, their estates, and creditors in light of the fact that the Debtors require M3's services to successfully reorganize.

## COMPENSATION RECEIVED BY M3

28.     Prior to the Petition Date and upon execution of the Engagement Letter, M3 received an initial retainer of $500,000 from the Debtors (the "Retainer").  Pursuant to the Engagement Letter, invoiced amounts have been offset against the Retainer and payments on the invoices have been used to replenish the Retainer.  As set forth in the Winning Declaration, according to M3's books and records for the ninety-days prior to the Petition Date, M3 received cash payments from the Debtors of $500,000 on account of retainers, invoices for financial advisory services performed and expenses incurred in contemplation of, or in connection with, the Debtors' restructuring efforts.  M3's current estimate is that it received unapplied advance payments from the Debtors in excess of prepetition billings of approximately $392,730, which is subject to final determination after all prepetition billings, expenses and collections are reconciled.  The unapplied residual Retainer will be held until the end of these Chapter 11 Cases and applied to M3's fees.

## M3'S DISINTERESTEDNESS

29.     To the best of the Debtors' knowledge, except as otherwise disclosed in the Winning Declaration, (a) M3 is a "disinterested person" within the meaning of Bankruptcy Code section 101(14), as required by Bankruptcy Code section 327(a), and does not hold or represent an interest adverse to the Debtors' estates and (b) M3 has no connection to the Debtors, their creditors, or other parties in interest, except as may be disclosed in the Winning Declaration.

30.     As disclosed in the Winning Declaration, M3 has in the past represented, currently represents, and likely in the future will represent, certain parties in interest in the Chapter 11 Cases. All such representations (other than its pre-petition services to the Debtors

described herein) are or were in connection with matters wholly unrelated to the Debtors and the

Chapter 11 Cases. Pursuant to Bankruptcy Code section 327(c), M3 is not disqualified from

acting as the Debtors' financial advisor merely because it has represented or currently represents

certain parties in interest in matters unrelated to the Chapter 11 Cases.

31.     M3 will periodically review its files during the pendency of the Chapter 11 Cases

to ensure that no conflicts or other disqualifying circumstances exist or arise. If any new relevant

facts or relationships are discovered or arise, M3 will use reasonable efforts to identify such

further developments and will promptly file a supplemental declaration, as required by

Bankruptcy Rule 2014(a).

## BASIS FOR RELIEF

32.     The Debtors respectfully request retention of M3 as their financial advisor

pursuant to Bankruptcy Code section 327(a), which provides that a debtor, subject to court

approval:

> [M]ay employ one or more attorneys, accountants, appraisers, auctioneers, or other
> professional persons, that do not hold or represent an interest adverse to the estate,
> and that are disinterested persons, to represent or assist the [debtor] in carrying out
> the [debtor]'s duties under this title.

11 U.S.C. § 327(a).

33.     The Debtors respectfully request retention of M3 under a general retainer pursuant

to Bankruptcy Code section 328(a), which provides that a debtor, subject to court approval:

> [M]ay employ or authorize the employment of a professional person under section
> 327 or 1103 of this title, as the case may be, on any reasonable terms and conditions
> of employment, including on a retainer, on an hourly basis, on a fixed or percentage
> fee basis, or on a contingent fee basis. Notwithstanding such terms and conditions,
> the court may allow compensation different from the compensation provided under
> such terms and conditions after the conclusion of such employment, if such terms
> and conditions prove to have been improvident in light of developments not capable
> of being anticipated at the time of the fixing of such terms and conditions.

11 U.S.C. § 328(a)

34.     Bankruptcy Rule 2014(a) requires that an application for retention include:

[S]pecific facts showing the necessity for the employment, the name of the [firm] to be employed, the reasons for the selection, the professional services to be rendered, any proposed arrangement for compensation, and, to the best of the applicant's knowledge, all of the [firm's] connections with the debtor, creditors, any other party in interest, their respective attorneys and accountants, the United States trustee, or any person employed in the office of the United States trustee.

Fed. R. Bankr. P. 2014(a).

35.     Pursuant to Bankruptcy Rule 2016(b), M3 has neither shared nor agreed to share (a) any compensation it has received or may receive from the Debtors with another party or person, other than with the employees and professionals associated with M3 as permitted under Bankruptcy Code section 504(b)(1), or (b) any compensation another person or party has received or may receive from the Debtors. Other than as set forth above, there is no proposed arrangement between the Debtors and M3 with respect to compensation to be paid in these cases. M3 will comply with the requirements of Local Rule 2016-1 when requesting compensation or reimbursement for expenses during these cases.

36.     M3 has significant relevant experience, including with the Debtors, to deal effectively and efficiently with the primary legal issues and problems likely to arise in the context of these cases. The Debtors believe that M3 is both well-qualified and uniquely able to represent them in the Chapter 11 Cases in an efficient and effective manner. If the Debtors were required to retain a financial advisor other than M3 in connection with the prosecution of their Chapter 11 Cases, the Debtors, their estates, and all parties in interest will be unduly and materially prejudiced, including by the time and substantial expense necessary to enable other counsel to become familiar with the Debtors' businesses and restructuring goals.

37.     The Debtors submit that for all the reasons stated above and in the Winning Declaration, the retention and employment of M3 as its financial advisor is warranted. Further,

as stated in the Winning Declaration, M3 is a "disinterested person" within the meaning of Bankruptcy Code section 101(14), as required by Bankruptcy Code section 327(a), and does not hold or represent an interest adverse to the Debtors' estates and has no connection to the Debtors, their creditors, or other parties in interest, except as may be disclosed in the Winning Declaration. Accordingly, the retention of M3 as financial advisor to the Debtors should be approved.

## NOTICE

38.     The Debtors will provide notice of this Application to the following parties or their respective counsel: (a) the U.S. Trustee; (b) proposed counsel for the Committee; and (c) any party that requests service pursuant to Bankruptcy Rule 2002. The Debtors submit that no other or further notice need be given.

## No Prior Request

39.     No prior request for the relief sought in this Application has been made to this or any other court.

DocuSign Envelope ID: 116FD99C-53DC-443B-B04C-31771FAAD342

WHEREFORE, the Debtors respectfully request that the Court enter the Order, substantially in the form attached hereto as **Exhibit A**, granting the relief requested herein and such other and further relief as the Court deems just and proper.

Dated: September 14, 2023
      New York, New York

                              _/s/ Michael Wyse_

                              Mike Wyse
                              Solely in his Capacity as a Member of the Debtors'
                              Special Restructuring Committee

## Exhibit A

**Proposed Order**

## IN THE UNITED STATES BANKRUPTCY COURT
## FOR THE DISTRICT OF DELAWARE

|  |  |  |
|---|---|---|
| In re: | ) | Chapter 11 |
|  | ) |  |
| Prime Core Technologies Inc., *et al.*, | ) | Case No. 23-11161 (JKS) |
|  | ) |  |
| Debtors.[1] | ) | (Jointly Administered) |
|  | ) |  |
|  | ) | **Re Docket No. __** |

---

### ORDER AUTHORIZING AND APPROVING THE EMPLOYMENT AND RETENTION OF M3 ADVISORY PARTNERS, LP AS FINANCIAL ADVISOR FOR THE DEBTORS, EFFECTIVE AS OF THE PETITION DATE

Upon the application (the "Application")[2] of the above-captioned debtors and debtors in possession (collectively, the "Debtors") for an order (, pursuant to Bankruptcy Code sections 327(a), 328(a), 329, and 330, Rules 2014(a) and 2016 of the Bankruptcy Rules, and Rules 2014-1 and 2016-1 of the Local Rules, authorizing the Debtors to retain and employ M3 Advisory Partners, LP ("M3") as their financial advisor effective as of the Petition Date, in accordance with the terms and conditions set forth in the Engagement Letter; and the Court having reviewed the Application and the Winning Declaration, and the Court having jurisdiction to consider the Application and the relief requested therein pursuant to 28 U.S.C. §§ 157(b) and 1334 and the *Amended Standing Order of Reference* from the United States District Court for the District of Delaware dated as of February 29, 2012; and the Court having found that this is a core proceeding pursuant to 28 U.S.C. § 157(b)(2); and that the Court may enter a final order

---

[1] The Debtors in these Chapter 11 Cases, along with the last four digits of each debtor's federal tax identification number are: Prime Core Technologies Inc. (5317); Prime Trust, LLC (6823); Prime IRA LLC (8436); and Prime Digital, LLC (4528). The Debtors' service address is 10845 Griffith Peak Dr., #03-153, Las Vegas, NV 89135.

[2] Capitalized terms used herein but not otherwise defined shall have the meanings given to them in the Application.

consistent with Article III of the United States Constitution; and the Court having found

venue of this proceeding and Application in this district is proper pursuant to 28 U.S.C. §§ 1408

and 1409; and the Court having found based on the representations made in the Application and

in the Winning Declaration that (i) M3 does not hold or represent an interest adverse to the

Debtors' estates and (ii) M3 is a "disinterested person" within the meaning of Bankruptcy Code

section 101(14) and as required by Bankruptcy Code section 327(a); and the Court having found

that the relief requested in the Application is in the best interests of the Debtors' estates, their

creditors, and other parties in interest; and the Court having found that it may enter a final order

consistent with Article III of the United States Constitution; and the Court having found that the

Debtors' notice of the Application and opportunity for a hearing on the Application were

appropriate and no other notice need be provided; and the Court having reviewed the Application

and having heard the statements in support of the relief requested therein at a hearing before this

Court, if any (the "Hearing"); and this Court having determined that the legal and factual bases

set forth in the Application and at the Hearing, if any, establish just cause for the relief granted

herein; and upon all of the proceedings had before this Court; and after due deliberation and

sufficient cause appearing therefor, **it is HEREBY ORDERED THAT**:

      1.      The Application is granted and approved to the extent set forth herein.

      2.      Pursuant to Bankruptcy Code section 327(a), Bankruptcy Rules 2014 and 2016,

and Local Rules 2014-1 and 2016-1, the Debtors, as debtors in possession, are authorized to

employ and retain M3 as their financial advisor, effective as of the Petition Date, on the terms set

forth in the Engagement Letter.

      3.      M3 is authorized to provide the Debtors with the professional services as

described in the Application.

4.      M3 shall apply for compensation for professional services rendered and reimbursement of expenses incurred in connection with the Debtors' Chapter 11 Cases, as set forth in the Application, in compliance with Bankruptcy Code sections 330 and 331 and the applicable provisions of the Bankruptcy Rules, the Local Rules, and any other applicable procedures and orders of the Court.

5.      Notwithstanding anything to the contrary in the Engagement Letter, the Application, or the Winning Declaration, the indemnification provisions are hereby modified as follows:

    i.    No Indemnitee (as that term is defined in the Engagement Letter) shall be entitled to indemnification, contribution or reimbursement pursuant to the Engagement Letter for services, unless such services and the indemnification, contribution or reimbursement therefore are approved by this Court;

    ii.    The Debtors shall have no obligation to indemnify any Indemnitee, or provide contribution or reimbursement to any Indemnitee, for any claim or expense to the extent it is either:  (i) judicially determined (the determination having become final and no longer subject to appeal) to have arisen from the Indemnitee's gross negligence, bad faith, fraud, or willful misconduct; (ii) for a contractual dispute in which the Debtors allege breach of an Indemnitee's contractual obligations, unless the Court determines that indemnification, contribution, or reimbursement would be permissible pursuant to *In re United Artists Theatre Company*, 315 F.3d 217 (3d Cir. 2003); or (iii) settled prior to a judicial determination as to the exclusions set forth in clauses (i) and (ii) above, but determined by this Court, after notice and a hearing pursuant to subparagraph (c) hereof to be a claim or expense for which the Indemnitee should not receive indemnity, contribution or reimbursement under the terms of the Engagement Letter, as modified by this Order.; and

    iii.    If, before the earlier of (i) the entry of an order confirming a chapter 11 plan in the Chapter 11 Cases (that order having become a final order no longer subject to appeal) and (ii) the entry of an order closing the Chapter 11 Cases, an Indemnitee believes that it is entitled to the payment of any amounts by the Debtors on account of the Debtors' indemnification, contribution, and/or reimbursement obligations under the Engagement Letter (as modified by this Order), including without limitation, the advancement of defense costs, the Indemnitee must file an application therefor in this Court, and the Debtors may not pay any such amounts to the Indemnitee y before the entry of an order by this Court approving the payment.  This subparagraph (c) is intended only to specify the period of time

under which this Court shall have jurisdiction over any request for fees and expenses by any Indemnitee for indemnification, contribution, and/or reimbursement, and is not a provision limiting the duration of the Debtors' obligation to indemnify, or make contributions or reimbursements to, the Indemnitees. All parties in interest shall retain the right to object to any demand by any Indemnitee for indemnification, contribution, and/or reimbursement.

6.     M3 is authorized without further order of the Court to reserve and apply amounts from the prepetition Retainer that would otherwise be applied toward payment of post-petition fees and expenses as are necessary and appropriate to compensate and reimburse M3 for fees or expenses incurred on or prior to the Petition Date consistent with its ordinary course billing practices.

7.     M3 shall provide ten (10) business days' advance notice to the Debtors, the U.S. Trustee, and the Committee  before any increases in the rates set forth in the Application are implemented. The U.S. Trustee retains all rights to object to any rate increase on all grounds, including reasonableness standard set forth in Bankruptcy Code section 330, and the Court retains the right to review any rate increase pursuant to Bankruptcy Code section 330.

8.     Notice of the Application as provided therein is deemed to be good and sufficient notice of such Application, and the requirements of the Local Rules are satisfied by the contents of the Application.

9.     The terms and conditions of this Order shall be immediately effective and enforceable upon its entry.

10.     To the extent the Application or the Winning Declaration is inconsistent with this Order, the terms of this Order shall govern.

11.     The Debtors are authorized to take all actions necessary to effectuate the relief granted in this Order in accordance with the Application.

12.     This Court shall retain jurisdiction with respect to all matters arising from or

4

related to the implementation or interpretation of this Order.

**Exhibit B**

**Engagement Letter**



August 2, 2023

Prime Core Technologies Inc.
Prime Trust, LLC
Prime IRA, LLC
Prime Digital LLC
Prime New York Trust, LLC
330 Ranpart Boulevard
Las Vegas, Nevada 89145
Attention: John Guedry

<u>Engagement Letter</u>

Dear Mr. Guedry:

This letter agreement (this "***Agreement***") sets forth the terms and conditions of the engagement (the "***Engagement***") of M3 Advisory Partners, LP ("***M3***") to provide the Services (as defined below) to Prime Core Technologies, Inc., Prime Trust, LLC, Prime IRA, LLC, Prime Digital LLC, and Prime New York Trust, LLC (collectively, the "***Client***") through its court appointed receiver (the "***Receiver***"). For the avoidance of doubt, the obligations of the Client shall be joint and several among the entities comprising the Client and notice to any one of such entities shall be deemed to constitute notice to all such entities. M3 and the Client are collectively referred to in this Agreement as the "***Parties***."

    1. <u>Services</u>: The Client hereby retains M3 to provide, and M3 hereby agrees to provide, the following services (the "***Services***") upon the terms and subject to the conditions set forth in this Agreement:

        (a) support the Client's management team in evaluating the business operations and financial prospects of the Client and preparing cash flow forecasts;

        (b) advise and assist the Client and its counsel with their on-going assessment of the Client's financial performance and its ability to repay its outstanding obligations;

        (c) assist the Client and its advisors in a potential bankruptcy filing under chapter 11 of title 11 of the United States Code, including providing customary support in the prosecution of such bankruptcy proceeding; and

        (d) provide such other services as M3 and the Client shall otherwise agree in writing.

In providing the Services, M3 shall report directly to the Receiver.

2.  <u>Engagement Term</u>.  The Engagement shall commence on the date of acceptance of this Agreement and may be terminated by either Party at any time upon ten business days' written notice.  Following any such termination, neither Party shall have further liability to the other, except with respect to fees and expenses earned and incurred through the date of termination and any provisions of this Agreement which are expressly stated to survive its termination or expiration.

3.  <u>Staffing</u>.  M3 will staff a team that it believes to be appropriate to provide the Services in accordance with the terms of this Agreement.  The individual members of the team are subject to change by M3 from time to time in its sole discretion.  M3 also may provide Services through independent contractors and, unless the context shall otherwise indicate, references in this Agreement to M3 and its employees or staff shall be deemed to include any such independent contractors and their respective employees.

4.  <u>Compensation for Services</u>.  (a)  M3's compensation for services rendered under this Agreement shall be paid by the Client by wire transfer of immediately available funds in accordance with instructions provided from time to time by M3 to the Client and will consist of the following:

(i)  <u>Retainer</u>:  On or promptly following the date hereof, the Client will deliver to M3 a retainer of $500,000.$^{00}$ (the "***Retainer***") as collateral security for amounts from time to time owing under this Agreement or otherwise on account of the Engagement and hereby grants to M3 a security interest in the Retainer balance from time to time held by M3. The Retainer is not intended to be an estimate of the fees and expenses for the Engagement.  Except to the extent applied in accordance with the provisions of Section 4(b) below, M3 will hold the Retainer until the conclusion of the Engagement, at which time the final billing shall be applied against it, with any excess being returned promptly to the Client and any deficiency being promptly paid by the Client.

(ii)  <u>Service Fees</u>:  As compensation for providing the Services hereunder, M3 shall be entitled to non-refundable professional fees based on the actual hours incurred by M3 personnel on matters pertinent to the Engagement (the "***Service Fees***").  The Service Fees shall be based upon the following hourly rates:

| Professional | Hourly Rate |
| --- | --- |
| Managing Partner | $1,350 |
| Senior Managing Director | $1,245 |
| Managing Director | $1,025 - $1,150 |
| Director | $840 - $945 |
| Vice President | $750 |
| Senior Associate | $650 |
| Associate | $550 |
| Analyst | $450 |



The Service Fees shall be billed by M3 to the Client on a weekly basis by M3 furnishing to the Client an invoice for the Service Fees in respect of the billing period (as well as any unbilled amounts from prior billing periods) and shall be paid in accordance with the provisions of Section 4(b) below. From time to time in the normal course of business M-3 may adjust its billing rates upon notice to the Client.

(iii) <u>Expenses</u>: In addition to any compensation for providing the Services, the Client shall reimburse M3 for all reasonable and documented out-of-pocket expenses incurred in the performance of the Services (including, without limitation, reasonable travel costs). Any request for reimbursement of an out-of-pocket expense in excess of $100 shall be accompanied by reasonable back-up for each expense and as otherwise required by applicable law.

(b) Amounts owing hereunder shall be paid by offset against the Retainer, with the Client being obligated to replenish the Retainer to the amount described in clause (a)(i) above or to such other amount as may be agreed upon in writing by M3 and the Client from time to time by wire transfer of immediately available funds within five days following the invoice date. In the event that the amount of any invoice exceeds the Retainer balance at such time, then (in addition to replenishing the Retainer) the Client shall pay such excess by wire transfer of immediately available funds within five days following the invoice date. Any amounts payable hereunder which are not paid within five business days of the invoice date shall be deemed "past due". M3 reserves the right to suspend further Services until payment is received on past due invoices and/or the Retainer is restored and to exercise all rights and remedies available under applicable law (with the Client being obligated to pay M3's reasonable attorney fees and other costs of collection and enforcement). In the event that M3 so suspends the Services, M3 shall not be responsible or liable for any resulting loss, damage or expense due to such suspension.

(c) Unless expressly stated otherwise in the relevant invoice, none of the amounts invoiced by M3 from time to time with respect to the Engagement shall be contingent upon, or in any way tied to the delivery of, any reports or other work product in the future, nor upon the outcome of any case or matters. All fees payable to M3 are exclusive of taxes or similar charges, which shall be the sole obligation of the Client (other than any taxes which may be payable on account of M3's income generally, which shall be the obligation of M3).

5. <u>Cooperation from Client</u>. In order to properly perform the Services and fulfill its responsibilities on a timely basis, M3 will rely on the timely cooperation of the Client and its other professional advisors, including, without limitation, making available to M3 relevant data, information and personnel, performing any tasks or responsibilities assigned to the Client and notifying M3 of any issues or concerns that the Client may have relating to the Services. The Client will provide M3 with full access to all personnel, books and records of the Client and its subsidiaries, as well as to all advisors and professionals retained by the Client and its Subsidiaries. The Client also will provide M3 with access to workspaces and data connectivity at the Client's offices on an as-needed basis. The Client understands and acknowledges that M3's proper delivery of the Services is dependent upon timely decisions and approvals by the Client and its management. M3 shall have no responsibility or liability for any delays, additional costs or other



deficiencies caused by the Client failing to properly fulfill its responsibilities under this Agreement.

6. <u>Deliverables</u>. (a) In connection with the Engagement, M3 may furnish the Client with information, advice, reports, analyses, presentations or other materials (the "***Deliverables***"). The Deliverables may contain factual data, the interpretation of which may change over the project term as more information or better understanding becomes available. The Client acknowledges that M3 will have no obligation to update the Deliverables as part of the Services in the event of such a change.

(b) Any materials prepared by M3 are solely for the confidential use of the Client and its directors, officers, attorneys, and employees and will not be distributed, reproduced, summarized, referred to, disclosed publicly or given to any other person without the prior written consent of M3, *provided* that such permission shall not be required if the materials are required to be disclosed by applicable law or by order or act of any court or governmental or regulatory authority or body.

(c) The provisions of this Section shall survive the termination or expiration of this Agreement.

7. <u>Limitations on Services</u>. (a) The Services are limited to those specifically noted in this Agreement.

(b) M3 does not provide accounting or tax-related assistance and no Deliverable or other information or advice provided to the Client shall be deemed to be accounting or tax-related assistance. The Client shall be solely responsible for determining the accounting and tax-related implications of the Deliverables and other information and advice provided to it by M3. M3 shall not express any professional opinions on financial statements or perform attest procedures with respect to other information in conjunction with the Engagement. The Services are not designed, nor should they be relied upon, to disclose weaknesses in internal controls, financial statement errors, irregularities or illegal acts. M3 shall assume the accuracy and completeness of all information submitted by or on behalf of the Client to M3 for analysis and which will form the basis of M3's conclusions, without any obligation of M3 to verify the accuracy or completeness of such information, and M3 shall not be responsible for any analysis, advice or other Services to the extent based on inaccurate or incomplete information provided or accepted by or on behalf of the Client.

(c) The Services shall not include preparing, auditing or otherwise attesting in any way (including without limitation, with respect to the accuracy, achievability, reliability, relevance, usefulness or other appropriateness) to the Client's financial projections, and the Client has not engaged M3 for that purpose. The Services are provided based upon the understanding that the Client has sole responsibility for its financial projections (including preparation thereof), developing underlying assumptions and providing any disclosure related thereto. To the extent that, during the performance of Services hereunder, M3 is required to consider the Client's



financial projections, the Client understands that M3's procedures with respect to such projections do not constitute an examination in accordance with procedures established by the American Institute of Certified Public Accountants and do not and are not intended to provide any assurance on any aspect of such projections, including, without limitation, the reasonableness of the assumptions underlying such projections, nor do they provide assurance that M3 might not become aware of significant matters affecting the reasonableness of the projections that might be disclosed by more extensive procedures. There will usually be differences between projected and actual results, and those differences may be material. The Client understands and agrees that M3 will have no responsibility or liability relating to any such differences.

(b) M3 does not provide investment advice and the Services shall not include the provision of investment advice. The Client shall have sole responsibility for all investment decisions made by it. Similarly, M3 is providing advisory and consulting services only and will not make management decisions for the Client. Although M3 may from time to time suggest or recommend options that may be available to the Client, the ultimate decision with respect to such options rests with the Client and the Client shall be solely responsible for such decision and its outcome. M3 makes no representation, promise or guarantee with respect to the outcome of any matter affecting the Client.

(d) To the extent that the performance of the Services requires that M3 form conclusions or reach opinions, M3 shall do so without regard to or consideration of the impact that such conclusions or opinions may have on the initiation or outcome of any litigation to which the Client is or may become a party.

(e) The Client shall be solely responsible for the work and fees of any third parties engaged by the Client to provide services in connection with the Engagement, regardless of whether such third party was recommended to the Client by M3 or M3 is involved with the services provided by it. M3 shall not be responsible for providing or reviewing the advice or services of any such third party, including advice as to legal, regulatory, accounting or taxation matters.

(f) The provisions of this Section shall survive the termination or expiration of this Agreement.

8.  <u>Non-Solicitation</u>. The Client covenants and agrees that, prior to the first anniversary of the termination or expiration of this Agreement, it will not, directly or indirectly, hire directly or as an independent contractor, or refer to another for employment, any person who was during the term of this Agreement an employee or contractor of M3 or any of its affiliated entities who was involved on behalf of M3 with the Engagement or the performance of the Services. In the event of the breach of the foregoing covenant, the Client shall be liable to M3, and shall pay on demand to M3, liquidated damages equal to 200% of the total annual compensation of each relevant employee for the preceding calendar year (and, in the event that any such employee was not employed for the full year, the amount equal to 200% of his or her annualized compensation). The Parties mutually agree that the actual damages that would be sustained by M3 as the result of any such breach will be substantial and will be impossible to measure accurately, and that the



foregoing liquidated damage amount is fair and reasonable.  The provisions of this Section shall survive the termination or expiration of this Agreement.

9.  <u>Confidentiality</u>.  (a)  Each Party shall use reasonable efforts, but in no event less effort than it would use to protect its own confidential information, to keep confidential all non-public confidential or proprietary information obtained from the other Party in the scope of the Engagement (the "***Confidential Information***"), and neither Party will disclose any Confidential Information of the other Party to any other person or entity.  For the avoidance of doubt, the term "Confidential Information" shall include (i) the terms of this Agreement, (ii) all non-public confidential and proprietary data, plans, reports, schedules, drawings, accounts, records, calculations, specifications, flow sheets, computer programs, source or object codes, results, and models and (iii) any work product relating to the business of either Party, its subsidiaries, distributors, affiliates, vendors, customers, employees, contractors and consultants. Notwithstanding the foregoing, the term "Confidential Information" shall not include information that (a) is or becomes publicly available other than as a result of disclosure by the receiving Party in violation of this Agreement, (b) was already known to the receiving Party or (c) was independently acquired or developed by the receiving Party from a source not known by it to be bound by a confidentiality requirement with respect to such information.  In performing the Services, M3 will use and rely primarily on the Confidential Information and on information available from public sources without having independently verified any of such information.

(b)  The foregoing is not intended to prohibit, nor shall it be construed as prohibiting, M3 from making such disclosures of Confidential Information that M3 reasonably believes are required by law or any regulatory requirement or authority, or to clear client conflicts.  M3 also may disclose Confidential Information to its partners, directors, officers, employees, independent contractors, agents and advisors who have a need to know the Confidential Information for the proper performance of the Services or otherwise in connection with the Engagement.  M3 may make reasonable disclosures of Confidential Information to third parties to the extent that M3 reasonably believes that such disclosure is consistent with its performance of the Services.  In addition, M3 will have the right to disclose to any person that it provided services to the Client or its affiliates and a general description of such services, but such disclosure shall not provide any other Confidential Information about M3's involvement with the Client.

(c) The provisions of this Section shall survive for a period of two years following the termination or expiration of this Agreement and shall supersede any separate confidentiality or analogous agreement between M3 and the Client.

10.  <u>Intellectual Property</u>.  Upon payment in full of all amounts owing to M3 hereunder, the Client will own all Deliverables furnished by M3 to the Client in connection with the Services, *provided* that M3 will retain ownership of (a) all concepts, analyses, know-how, tools, frameworks, models and industry perspectives used and/or developed by M3 in connection with the Services and (b) all other intellectual property not containing Confidential Information which has been developed by M3 outside of the provision of the Services (the "***M3 Tools***"), it being understood that M3 will have no ownership right to, and will maintain in accordance with the provisions of this Agreement the confidentiality of, any Confidential Information contained in the M3 Tools.



To the extent that the Deliverables include any M3 Tools, M3 hereby grants the Client a non-exclusive, non-transferable, non-sublicensable worldwide, royalty-free license to use and copy the M3 Tools solely as part of the Deliverables and subject to the confidentiality provisions contained in this Agreement. The Client acknowledges and agrees that the M3 Tools are provided to the Client on an "as is" basis and without any warranty or condition of any kind (whether express, implied or otherwise), and including without limitation any implied warranty of merchantability or fitness for a particular purpose. The provisions of this Section shall survive the termination or expiration of this Agreement.

11. <u>Indemnification</u>. The Client hereby irrevocably agrees to indemnify and hold harmless the Indemnitees (as defined in Annex I to this Agreement) to the extent described in Annex I to this Agreement, with such Annex I being incorporated herein by reference and constituting an integral and enforceable part of this Agreement. The provisions of this Section (including, without limitation, the provisions of Annex I) shall survive the termination or expiration of this Agreement.

12. <u>Limitation on Damages</u>. In no event shall M3 or any other Indemnitee be liable to the Client or its affiliates, successors, or any person claiming on behalf of or in the right of the Client (including the Client's owners, parents, affiliates, directors, officers, employees, agents, security holders, or creditors) for (i) any amount which, when taken together with all losses for which M3 and all Indemnitees are liable in connection with this Agreement or the Engagement, would exceed the amount of fees for the Services actually received by M3 from the Client in connection with the Engagement during the immediately preceding 12 months or (ii) any special, consequential, incidental or exemplary damages or loss (or any lost profits, savings or business opportunity) (collectively, the "***Liability Cap***"). This paragraph shall apply regardless of the nature of any claim(s) (including claims based on contract, statute, negligence, tort, strict liability or otherwise), regardless of any failure of the essential purpose of any remedy and whether or not M3 was advised of the possibility of the damage or loss asserted, but shall not apply to the extent finally determined by final and non-appealable judgment of a court of competent jurisdiction to be prohibited by applicable law. For the avoidance of doubt, the Parties hereby irrevocably agree that the Liability Cap is intended to be the total limit of liability for M3 and all other Indemnitees in the aggregate for any and all claims or demands by anyone in connection with this Agreement, the Services and the Engagement, including without limitation any liability to the Client and to any others making claims relating to the Services and the Engagement. Any such claimants shall allocate among themselves any amounts payable by M3, but the failure of the claimants to reach such an agreement shall not affect the enforceability of the Liability Cap. Under no circumstances shall the collective liability of M3 and the other Indemnitees in connection with this Agreement exceed the Liability Cap. The provisions of this Section shall survive the termination or expiration of this Agreement.

13. <u>Bankruptcy Proceedings</u>. In the event that bankruptcy proceedings are commenced by or against the Client (the "***Case***"), then the Client will apply to the bankruptcy court having jurisdiction over such proceedings (the "***Court***") for approval of M3's retention and the designation as financial advisor to the Client, nunc pro tunc to the date of the petition for relief, and use commercially reasonable efforts to obtain an order of the Court authorizing the retention of M3 as such under the Bankruptcy Code and upon the terms of this Agreement. The Client shall provide a copy of such application and proposed order to M3 for review as much in advance of



filing as is reasonably practicable and such application and order must be acceptable to the Client and M3. Following entry of the order authorizing M3's retention, the Client shall pay all fees and expenses due pursuant to this Agreement, as approved by the Court, as promptly as possible in accordance with the terms of this Agreement, the order of the Court approving the Engagement, the Bankruptcy Code, the Bankruptcy Rules and applicable local rules and other orders of the Court, and will work with M3 to promptly file any and all necessary applications regarding such fees and expenses with the Court. M3 shall have no obligation to provide services under this Agreement following the commencement of a bankruptcy proceeding unless M3's retention under this Agreement is approved by final order of the Court which is acceptable to M3 and which approves this Agreement in all material respects. The Client shall reimburse M3 for all reasonable and documented costs and expenses incurred by M3 (including, without limitation, reasonable and documented fees of counsel to M3) in obtaining such order of the Court and, if requested by M3, the Client's counsel shall provide reasonable assistance to M3 in seeking to obtain such order. If the order authorizing M3's employment is not obtained, or is later reversed, modified or set aside for any reason, then M3 may terminate this Agreement, and the Client shall promptly reimburse M3 for all fees and expenses due pursuant to this Agreement. The provisions of this Section shall survive the termination or expiration of this Agreement.

14. <u>Client Acknowledgement</u>.  The Client hereby acknowledges and agrees that M3 may, in the ordinary course of its business, serve clients who are competitive with, or have conflicting interests with, the Client.  Consistent with its confidentiality obligations hereunder and its confidentiality obligations to its other clients, M3 will not advise or consult to the Client with respect to any aspect of M3's engagement or potential engagement with any other client, potential client or former client.  Similarly, M3 will not advise or consult to any other client, potential client or former client with respect to any aspect of the Engagement.  M3 will maintain the confidentiality of the Confidential Information in accordance with the terms of this Agreement and, similarly, will not share confidential information of any client, potential client or former client of M3 with the Client.  The provisions of this Section shall survive the termination or expiration of this Agreement.

15. <u>Miscellaneous</u>.  (a)  This Agreement (i) constitutes the entire agreement of the Parties with respect to the subject matter hereof and supersedes any other communications, understandings or agreements (both written and oral) among the parties with respect to the subject matter hereof, and (ii) may be modified, amended or supplemented only by prior written agreement of each of the Parties.

(b)  The invalidity, illegality, or unenforceability of any provision in or obligation under this Agreement in any jurisdiction shall not affect or impair the validity, legality, or enforceability of the remaining provisions or obligations under this Agreement or of such provision or obligation in any other jurisdiction.  If feasible, any such offending provision shall be deemed modified to be within the limits of enforceability or validity; *provided* that, if the offending provision cannot be so modified, it shall be stricken and all other provisions of this Agreement in all other respects shall remain valid and enforceable.



(c)  M3's services hereunder are personal in nature and may not be assigned without the written consent of the Client.  The obligations of M3 hereunder are owing only to the Client and there shall be no third-party beneficiaries of the obligations of M3 hereunder.

(d)  This Agreement may be executed in any number of counterparts, each of which when so executed shall be deemed an original, but all such counterparts shall constitute one and the same instrument, and all signatures need not appear on any one counterpart.

(e)  This Agreement and all controversies arising from or related to performance hereunder shall be governed by and construed in accordance with the laws of the State of New York applicable to contracts to be executed and performed within such state.  The Parties hereby submit to the exclusive jurisdiction of and venue in the federal and state courts located in New York City and waive any right to trial by jury in connection with any dispute related to this Agreement.  The provisions of this paragraph shall survive the termination or expiration of this Agreement.

*[Remainder of Page Intentionally Left Blank]*



This Agreement shall be binding upon the Parties and their respective successors and assigns, and no other person shall acquire or have any right under or by virtue of this Agreement.

Please confirm the foregoing is in accordance with your understanding by signing and returning a copy of this Agreement, whereupon it shall become binding and enforceable in accordance with its terms.

Very truly yours,

M3 ADVISORY PARTNERS, LP


By _____
  Name:  Mohsin Y. Meghji
  Title:  Managing Member


ACCEPTED AND AGREED
as of the date first set forth above:

PRIME CORE TECHNOLOGIES INC.
PRIME TRUST, LLC
PRIME IRA, LLC
PRIME DIGITAL LLC
PRIME NEW YORK TRUST, LLC



By: _____
  Name: John Guedry
  Title: Receiver

Annex I

AGREEMENTS REGARDING INDEMNIFICATION

In consideration of M3 performing the Services for the benefit of the Client, the Client (the "***Indemnitor***") shall indemnify M3 and its affiliates, equity holders, partners, directors, employees, agents, representatives and contractors, including past, present or future partners, principals and personnel of each (collectively hereinafter called the "***Indemnitees***") against all costs, fees, expenses, damages, and liabilities (including defense costs) associated with any pending or threatened claim, action, proceeding or investigation (a "***Claim***") relating to or arising as a result of the Engagement or the provision of the Services, the Client's use or disclosure of the Deliverables, or this Agreement ("***Losses***").  For the avoidance of doubt, the obligations of the Indemnitor hereunder shall be joint and several among the entities which collectively comprise the Client and notice to any one of such entities shall be deemed to constitute notice to all such entities. This provision is intended to apply regardless of the nature of any Claim (including contract, statute, any form of negligence, whether of the Client, M3, or others, tort, strict liability or otherwise), except to the extent such Losses are determined by a final and non-appealable judgment of a court of competent jurisdiction to be the result of M3's bad faith, gross negligence or willful misconduct.

The Indemnitor shall not, without M3's prior written consent (which will not be unreasonably withheld) settle, compromise, or consent to the entry of any judgment in any pending or threatened Claim in respect of which indemnification could reasonably be sought hereunder (whether or not M3 or any other Indemnitee is an actual or potential party to such Claim), if such settlement, compromise, or consent does not include an unconditional release of each Indemnitee from all liability arising out of such Claim; *provided*, *however*, that the Indemnitor shall not enter into any such settlement, compromise or consent of a Claim without M3's prior written consent (which may be granted or withheld in M3's sole discretion) if such settlement, compromise or consent provides for injunctive relief against an Indemnitee or an admission of liability by an Indemnitee or would require payment of any amount by an Indemnitee or any insurer of an Indemnitee.  The Indemnitor shall not be liable hereunder to any Indemnitee for any amount paid or payable in the settlement of any action, proceeding or investigation entered into by such Indemnitee without the Indemnitor's written consent.

Upon receipt by an Indemnitee of actual notice of a Claim against such Indemnitee in respect of which indemnity may be sought hereunder, such Indemnitee shall promptly notify the Indemnitor with respect thereto.  In addition, an Indemnitee shall promptly notify the Indemnitor after any action is commenced (by way of service with a summons or other legal process giving information as to the nature and basis of the claim) against such Indemnitee in respect of which indemnity may be sought hereunder.  In any event, failure to notify the Indemnitor shall not relieve the Indemnitor from any liability which the Indemnitor may have on account of this indemnity or otherwise, except to the extent, and only to the extent, that the Indemnitor shall have been materially prejudiced by such failure.

Indemnitor shall advance all expenses indemnifiable hereunder that are reasonably incurred by or on behalf of each Indemnitee in connection with any Claim within thirty (30) days after receipt by

Indemnitor of a statement or statements from Indemnitee requesting such advance or advances from time to time, whether prior to or after final disposition of such Claim. Such statement or statements shall reasonably evidence the expenses incurred by Indemnitee and shall include or be preceded or accompanied by a written undertaking by or on behalf of Indemnitee to repay any expenses advanced if it shall ultimately be determined by a final and non-appealable judgment of a court of competent jurisdiction that Indemnitee is not entitled to be indemnified against such expenses. Any advances and undertakings to repay pursuant to this <u>paragraph</u> shall be unsecured and interest free.

To the extent that the Indemnitor so elects, it shall be entitled to assume the defense, with counsel selected by the Indemnitor (and approved by M3, with such approval not to be unreasonably withheld), of any action that is the subject of the Claim in respect of which indemnity may be sought. After notice to the Indemnitees of its election to assume the defense thereof, the Indemnitor will not be liable to the Indemnitee under this Agreement for any expenses subsequently incurred by such Indemnitee in connection with the defense thereof except as otherwise provided below. Such Indemnitee shall have the right to employ counsel of its choice in such Claim, but the fees and expenses of such counsel incurred after notice from the Indemnitor of the assumption of the defense thereof shall be at the expense of the Indemnitee unless the employment of counsel by the Indemnitee has been authorized by the Indemnitor, in which case the reasonably incurred fees and expenses of such counsel of the Indemnitee shall be at the expense of the Indemnitor.

The Client agrees that neither M3 nor any other Indemnitee shall have any liability (whether direct or indirect and regardless of the legal theory advanced) to the Client or any person or entity asserting claims on behalf of or in right of the Client caused by, relating to, based upon or arising out of (directly or indirectly) this Agreement or the Engagement, except for losses, claims, damages, penalties or liabilities incurred by the Client which are finally determined by a non-appealable judgment of a court of competent jurisdiction to have resulted primarily and directly from the bad faith, willful misconduct or gross negligence of M3 or any such other Indemnitee, as the case may be. In no event, however, shall M3's or any other Indemnitee's liability to the Client or their respective affiliates, successors, or any person claiming on behalf of or in the right of the Client (including the Client's owners, parents, affiliates, directors, officers, employees, agents, security holders, or creditors) exceed the Liability Cap.

In the event that any M3 personnel are requested or required to appear as a witness in connection with any claim, action or proceeding relating to or arising as a result of the Engagement or the provision of the Services, the Client's use or disclosure of the Deliverables, or this Agreement, the Indemnitor shall, to the extent permitted by applicable law, reimburse M3 for all reasonable and documented out-of-pocket expenses incurred by it in connection with such personnel appearing and preparing to appear as a witness, including, without limitation, the reasonable fees and disbursements of its legal counsel, and to compensate M3 at a rate equal to M3's then standard hourly rate for the relevant personnel for each day that such personnel is involved in preparation, discovery proceedings or testimony pertaining to such Claim. Additionally, M3 will have the right to obtain advice from independent legal counsel with respect to its actual or potential obligations and liability hereunder and the Client will promptly reimburse M3 for the reasonable out-of-pocket fees and expenses paid by M3 on account thereof.



The provisions of this Annex I shall be deemed to be an integral part of this Agreement to which this Annex I is affixed and shall survive the termination or expiration of this Agreement for any reason. The provisions of this Annex I shall be binding upon the Client and its successors and assigns.



## **Exhibit C**

**Declaration of Robert Winning**

**IN THE UNITED STATES BANKRUPTCY COURT
FOR THE DISTRICT OF DELAWARE**

| | |
|---|---|
| In re: | ) Chapter 11 |
| | ) |
| Prime Core Technologies, *et al.*, | ) Case No. 23-11161 (JKS) |
| | ) |
| Debtors.[1] | ) (Jointly Administered) |
| | ) |
| | ) |
| | ) |

**DECLARATION OF ROBERT WINNING IN SUPPORT OF THE APPLICATION OF
THE DEBTORS FOR ENTRY OF AN ORDER AUTHORIZING AND APPROVING
THE EMPLOYMENT AND RETENTION OF M3 ADVISORY PARTNERS, LP AS
FINANCIAL ADVISOR PURSUANT TO BANKRUPTCY CODE SECTION 327(a),
BANKRUPTCY RULES 2014(a) AND 2016, AND LOCAL RULE 2014-1, EFFECTIVE
AS OF THE PETITION DATE**

I, Robert Winning, being duly sworn, hereby state as follows:

1.    I am a Managing Director at M3 Advisory Partners, LP ("M3"), the proposed

financial advisor to the above debtors and debtors in possession (the "Debtors") in the above-

captioned Chapter 11 Cases. I am authorized to submit this Declaration and am competent to

testify to the matters contained herein.

2.    I submit this declaration (the "Declaration") in support of the *Application of the*

*Debtors for Entry of an Order Authorizing and Approving the Employment and Retention of M3*

*Advisory Partners, LP as Financial Advisor Pursuant to Bankruptcy Code Section 327(a),*

*Bankruptcy Rules 2014(a) And 2016, and Local Rule 2014-1, Effective as of the Petition Date*

---

[1]    The Debtors in these Chapter 11 Cases, along with the last four digits of each debtor's federal tax identification number are: Prime Core Technologies Inc. (5317); Prime Trust, LLC (6823); Prime IRA LLC (8436); and Prime Digital, LLC (4528). The Debtors' service address is 10845 Griffith Peak Dr., #03-153, Las Vegas, NV 89135.

(the "Application").[2] Except as otherwise noted, I have personal knowledge of the matters set forth herein.[3] To the extent any information disclosed herein requires amendment or modification as additional information becomes available to M3, a supplemental declaration will be submitted to this Court reflecting such amended or modified information.

## M3'S QUALIFICATIONS

3.      M3 is a leading, independent corporate advisory firm that provides operational, strategic, and financial solutions to a broad range of clients across a wide range of industries. M3 employs more than 60 professionals and its senior professionals have led hundreds of engagements, including some of the most significant restructurings in the market, while working alongside or across from the largest lenders, private equity sponsors, hedge funds, investment bankers, and legal advisors in the industry. Among other cases, M3 has served or currently is serving as financial advisor to the debtor(s) or other constituency in: *In re Celsius Network LLC, et al.*, No. 22-10964 (MG) (Bankr. S.D.N.Y. Oct. 18, 2022); *In re Sorrento Therapeutics, Inc.*, No. 23-90085 (DRJ) (Bankr. S.D. Tex. Apr. 13, 2023); *In re PWM Property Management LLC*, No. 21-11445 (MFW) (Bankr. D. Del. 2021); *In re Secure Home Holdings LLC*, No. 21-10745 (JKS) (Bankr. D. Del. 2021); *In re Sanchez Energy Corp.*, No. 19-34508 (MI) (Bankr. S.D. Tex. 2019); *In re Barneys New York, Inc.*, No. 19-36300 (CMG) (Bankr, S.D.N.Y. 2019); *In re Sears Holdings Corp.*, No. 18-23538 (RDD) (Bankr. S.D.N.Y. 2018); *In re Real Industry, Inc.*, No. 17-12464 (KJC) (Bankr. D. Del. 2018).

---

[2]    Capitalized terms used herein but not otherwise defined shall have the meanings given to them in the Application.

[3]    Certain of the disclosures set forth herein relate to matters not within my personal knowledge but rather within the knowledge of other employees and professionals at M3 and are based on information provided to me by them.

4.      The Debtors seek to retain M3 because of their need to retain a qualified and experienced financial advisor with the resources, capabilities and experience of M3 to effectively manage their transition into, and continuation of operations in, these Chapter 11 Cases. M3 has a wealth of experience providing financial advisory services to distressed companies in complex restructurings. M3 has an excellent reputation for providing high-quality services in large and complex chapter 11 cases on behalf of debtors and creditors throughout the United States. M3's expertise includes significant experience assisting distressed companies with day-to-day management activities, including development of pro forma financials and business plans, cash flow management, and implementation of liquidity-enhancing and cost-saving strategies.

5.      I believe that M3 is both well-qualified and uniquely able to represent the Debtors in the Chapter 11 Cases and that such representation will contribute greatly to the efficient administration of the estates, thereby minimizing expense to the estates and facilitating the progress of the Chapter 11 Cases.

## SERVICES TO BE PROVIDED

6.      The Debtors are requesting the retention and employment of M3 to, specifically but without limitation, render the following financial advisory services throughout the Chapter 11 Cases:

a. Assist the Debtors in the development and administration of its short-term cash flow forecasting and related methodologies, as well as its cash management planning;

b. Provide such assistance as reasonably may be required by management of the Debtors in connection with (a) development of its business plan, (b) any restructuring plans and strategic alternatives intended to maximize enterprise value, and (c) any related forecasts that may be required by creditor constituencies in connection with negotiations or by the Debtors for other corporate purposes;

    c.   Assist the professionals who are representing the Debtors in the reorganization process or who are working for the Debtors' various stakeholders to coordinate their effort and individual work product to be consistent with the Debtors' overall restructuring goals;

    d.   Assist, if required, the Debtors in communications and negotiations with their outside constituents, including creditors, trade vendors and their respective advisors;

    e.   Assist the Debtors in obtaining and presenting such information as may be required by the parties in interest to the Chapter 11 Cases and bankruptcy processes that may be initiated by the Debtors, including any creditors' committees and the bankruptcy court;

    f.   Provide such other services as are reasonable and customary for a financial advisor in connection with the administration and prosecution of a bankruptcy proceeding of this nature, including assisting the Debtor's counsel and other advisors with respect to investigations and litigation matters;

    g.   Provide such other Services as are described in the Engagement Letter; and

    h.   Provide such additional services as M3 and the Debtors shall otherwise agree in writing.

7.     I have been informed that, concurrently with the filing of the Application, the Debtors also have filed or intend to file applications to employ (a) McDermott Will & Emery LLP as their counsel, (b) Galaxy Digital Partners LLC as investment banker; and (c) Stretto, Inc. as claims and noticing agent and administrative advisor in the Chapter 11 Cases. M3 has advised the Debtors that it intends to carefully monitor the efforts of these other professionals and coordinate with such professionals to clearly delineate their respective duties in order to prevent duplication of effort. The efficient coordination of the efforts of the Debtors' attorneys and other professionals should greatly add to the effective administration of the Chapter 11 Cases.

8.     I have been informed that the Debtors do not believe that the services to be rendered by M3 will be duplicative of the services performed by any other professional, and M3 will work with the other professionals retained by the Debtors to minimize any duplication of

services on behalf of the Debtors.  The Debtors will compensate M3 in accordance with the terms of the Engagement Letter, which is attached as **Exhibit B** to the Application.

## COMPENSATION RECEIVED BY M3 FROM THE DEBTORS

9.      As of the Petition Date, the Debtors owed approximately $14,910 to M3 for financial advisory services rendered before the Petition Date.

10.      Prior to the Petition Date and upon execution of the Engagement Letter, M3 received an initial retainer of $500,000 from the Debtors (the "Retainer").  Pursuant to the Engagement Letter, invoiced amounts have been offset against the Retainer and payments on the invoices have been used to replenish the Retainer.  As set forth in the Winning Declaration, according to M3's books and records for the ninety-days prior to the Petition Date, M3 received cash payments from the Debtors of $500,000 on account of retainers, invoices for financial advisory services performed and expenses incurred in contemplation of, or in connection with, the Debtors' restructuring efforts.  M3's current estimate is that it received unapplied advance payments from the Debtors in excess of prepetition billings of approximately $392,730, which is subject to final determination after all prepetition billings, expenses and collections are reconciled.  The unapplied residual Retainer will be held until the end of these Chapter 11 Cases and applied to M3's fees.

## INDEMNIFICATION PROVISIONS

11.      The Engagement Letter contains M3's standard indemnification language with respect to M3's services including, without limitation, an agreement by the Debtors to indemnify M3 and its affiliates, equity holders, partners, directors, employees, agents, representatives and contractors, including past, present or future partners, principals and personnel of each against all costs, fees, expenses, damages, and liabilities relating to or arising out of the Engagement Letter

or M3's services, except to the extent caused by bad faith, gross negligence, or willful misconduct.

12.      The indemnification provisions contained in the Engagement Letter (the "Indemnification Provisions") are customary and reasonable for M3 and, to my knowledge, comparable firms providing similar financial advisory services. The terms and conditions of the Indemnification Provisions were negotiated by the Debtors and M3 at arm's length and in good faith. I believe that the provisions contained in the Engagement Letter, viewed in conjunction with the other terms of M3's proposed retention, are reasonable and in the best interest of the Debtors, their estates, and creditors in light of the fact that the Debtors require services of this nature to successfully reorganize.

## DISINTERESTEDNESS

13.      In connection with the preparation of this Declaration, M3 requested and obtained from the Debtors' proposed counsel a list of interested parties and significant creditors in these Chapter 11 Cases (collectively, the "Potential Parties in Interest"). The list of Potential Parties in Interest is reflected on **Schedule 1** attached hereto.[4]

14.      Senior professionals at M3 then reviewed the names of each of the Potential Parties in Interest and M3 compared the names on the list with its records concerning current and former clients and key parties in interest with respect to those current and former clients. Known connections between former or recent clients of M3 and the Potential Parties in Interest were compiled for purposes of preparing this Declaration. These connections are described in **Schedule 2** annexed hereto.

---

[4]    M3's inclusion of parties in Schedules 1 and 2 is solely to illustrate M3's conflict search process and is not an admission that any party has a valid claim against the Debtors or that any party properly belongs in the Debtors' schedules or has a claim or legal relationship to the Debtors of the nature described in the Schedules.

15.     To the best of my knowledge, information, and belief, and based on the foregoing inquiry, other than in connection with this engagement or as otherwise disclosed in this Declaration or as set forth in **Schedule 2**, M3 has no relationships or connections with the Debtors or their affiliates.

16.     M3 has previously represented, presently represents, and may in the future represent, credit facility agents, syndicate lenders, and equity holders who may be involved in these proceedings in various engagements unrelated to the Debtors or these proceedings. These agents, lenders, and owners include parties listed on **Schedule 1**. Such relationships have been unrelated to the Debtors, do not create interests adverse to the Debtors and are not in connection with these cases.

17.     In addition, to the best of my knowledge, information, and belief, neither I nor any other professional of M3 who is working on this engagement: (a) has any connection with the Debtors, their creditors, equity security holders, or other parties in interest in these Chapter 11 Cases (other than M3's services as financial advisor to the Debtors prior to filing of the petition); (b) has or represents any interest adverse to the Debtors' estates; (c) is a creditor, equity security holder, or an insider of any of the Debtors; or (d) is or has been, within two years before the Petition Date, a director, officer, or employee of any of the Debtors. None of the M3 professionals expected to assist the Debtors in these Chapter 11 Cases are related or connected to any United States Bankruptcy Judge for the District of Delaware, the U.S. Trustee, or any person employed in the office of the U.S. Trustee. To the extent that any new relevant facts or relationships bearing on the matters described herein during the period of the Debtors' retention are discovered or arise, M3 will use reasonable efforts to file promptly a supplemental declaration, as required by Bankruptcy Rule 2014(a).

18.    M3 provides services to many clients with interests in the Chapter 11 Cases. To the best of my knowledge M3's services for such clients do not relate to the Chapter 11 Cases.

19.    I have read the Application that accompanies this Declaration and, to the best of my knowledge, information and belief, the contents of such Application are true and correct.

*[Remainder of page intentionally left blank]*

Pursuant to 28 U.S.C. §1746, I declare under penalty of perjury that the foregoing is true and correct to the best of my knowledge and belief.

Dated this 14th day of September 2023

By: */s/ Robert Winning*
Robert Winning
Managing Director
M3 Advisory Partners, LP

## **<u>Schedule 1</u>**

### **List of Potential Parties in Interest**

**Debtors**

Prime Core Technologies Inc.
Prime Trust, LLC
Prime IRA LLC
Prime Digital, LLC

**Debtors' Predecessors and Related Entities**

Banq., Inc.
Issuances Inc.
Finovation Systems, LLC
JumpStart Securities, LLC
FundAmerica, LLC
Secure Digital Notes B.T.
Secure Cash Sweep B.T.

**Current and Former Officers & Directors and Board of Managers**

Amanda Ortega
Anthony Botticella
Bob Zhao
Bond Nthenge
Brad Epstein
Brent Beeman
David Ko
David Pigott
Desta Getachew
Dmitry Dakhnovsky
Elizabeth Bildner
Erin Holloway
Eugene Lao
George Georgiades
George Thomas Lewis Brandl
J. Max Jiles
Jeffrey Smits
Jennifer Blanco
Joe Capone
John Zelazny
Jon P. Jiles
Jor Law
Kevin Lehtiniitty

Kristin Smith
Mary Kate Baker
Matt Parrella
Melissa Bonner
Melissa Ryken Westhoff
Michael Garrett
Michael Julian
Michael Smith
Nicole Yates
Nicoleta Purcell
Nirvana Patel
Noah Green
Patty Wang
Philip D. LaChapelle
Ren Riley
Rob Desroches
Robb Balaban
Robert List
Rodrigo Vicuna
Roger Wang
Russel Doolittle
Sara Xi
Scott Purcell
Scott Trainor
Stephen Cheng
Jim Wimberly
Thomas Gonser
Thomas Pageler
Timothy Bowman
Whitney White
Yunan (Jeffrey) Ren
Zane Busteed
Aja Heise
Tiago Requeijo

**Equity Holders (Holders of 1% or More of Common Equity as of Petition Date)**

10T DAE Expansion Fund, LP
10T Fund A, LP
10T Fund, LP
Akkadian Ventures V, LP
Brue2Ventures, LLC
Clearvoyance Holdings

**Equity Holders cont'd**

Commerce Ventures III, L.P.
Deborah G Jiles Trust
Fidelity Information Services, LLC
Fin VC Horizons II, LP – Series VIII
GateCap Ventures II LP
GateCap Ventures LP
Gateway VCA 0521, LLC
Harvest Growth Capital III LLC
Justin R. Law Irrevocable Trust Dated
October 22, 2021
Kraken Ventures Fund I LP
Lawrence Sue Kok Law and Fui Ming
Thian, Co-Trustees of the 2021
Lawrence Sue Kok Law and Fui Ming
Thian, Co-Trustees of the 2021 Jaden T.
Law Irrevocable Trust Dated October 22,
2021
Mercato Traverse Prime Core Co-Invest,
LLC
Mercato Traverse SPV 2, A Series of
Mercato Coinvestments, LLC
Mercato Partners Traverse IV QP, L.P.
Mercato Partners Traverse IV, L.P.
The Ko Family Trust
UGH II Affiliates II, LLC
N9 Advisors, LLC
Nevcaut Ventures Fund I, LP
OKC USA Holding Inc.
Palindrome Master Fund LP
Quantum Partners LP
Senior Comfort Corp
Seven Peaks Ventures Fund II, LP
SPV – Prime Core, LLC
STCAP Partners I, L.P.
The J. Max Jiles Trust
The Ko Family Trust UGF II Affiliates II,
LLC
Timus Capital, LLC
Triton Venture Capital Prime Trust Fund I
LP
University Growth Fund II, LP
William Blair MB Investments, LP – PCTI
2022 Series

**Bankruptcy Professionals and Ordinary Course Professionals**

Ankura (f/k/a Chartwell Compliance) (MTL
Maintenance)
Cooley LLP
Cahill Gordon & Reindel LLP
Saltzman Mugan Dushoff, PLLC
K&L Gates LLP
Innovest
Goodwin Procter LLP
Crowell Moring
Fisher & Phillips LLP
LTL Attorneys LLP
Hyland Law PLLC
Robert Half
M3 Partners, LP
Galaxy Digital, Ltd.
Stretto
J.S. Held LLC
JVB Financial Group, LLC

**Banks, Bondholders, and Other Lenders**

Anchorage Digital
BMO Harris Bank, N.A.
Cross River Bank
Homium Inc.
J.P. Morgan Asset Management Inc.
JXN, LLC
Metatech Operating Company LLC
Lexicon Bank
Piermont Bank, N.A.
Western Alliance
Switch Reward Card DAO, LLC

**Insurers, Insurance Agents, and Sureties**

Allegheny Casualty Company
Alpha Surety – A Gallagher Company
Brian Nelson
Heather Vaughn
Philadelphia Insurance Company

## Litigation Counterparties

Const LLC
Cynthia Edwards
Austin Ward
David Krevat
Nabil Mohamad
All MTL State Regulators
US DOJ Subpoena
NY DFS Enforcement
NY FID Audit

## Major Suppliers and Vendors

Amazon Web Services, Inc. (AWS)
Fireblocks, Inc.
Microsoft Azure Inc.
Robert Half International, Inc.
Deel, Inc.
SoftServe, Inc.
Kori Boxdell
Electric Solidus, Inc. (d/b/a Swan Bitcoin)
Okcoin USA, Inc.

## Top 50 Creditors

450 Investments
Allsec Technologies Limited
BAM Trading Services, Inc.
Beam Networks (Eco)
BKR International KB
Individual Name Redacted
Individual Name Redacted
Individual Name Redacted
CoinFLEX US LLC
CoinMetro OU
Const LLC
Cresent Financial Inc.
Dapper Labs Inc.
Individual Name Redacted
Individual Name Redacted
Individual Name Redacted
GCEX Holding Limited
Individual Name Redacted
Gth-Trade Group KFT
Individual Name Redacted

## Top 50 Creditors cont'd



Individual Name Redacted rs
Individual Name Redacted
Individual Name Redacted
Individual Name Redacted
Individual Name Redacted g
Kado Software, Inc.
Individual Name Redacted
Individual Name Redacted
Individual Name Redacted
Individual Name Redacted
Individual Name Redacted
Individual Name Redacted
Plutus Lending LLC
Individual Name Redacted
Reliz Ltd
Individual Name Redacted
Individual Name Redacted
Individual Name Redacted
Individual Name Redacted
Securitize, Inc.
Individual Name Redacted
Shima Capital Management LLC
Socure Inc.
Individual Name Redacted
TrustToken, Inc.
Individual Name Redacted
Vorka USA Corp.
Wonderpro Limited
Individual Name Redacted

## Taxing and Other Governmental Authorities

State of Alaska
State of Arizona
State of Arkansas
State of Connecticut
State of Delaware
State of Georgia
State of Hawaii
State of Idaho
State of Iowa
State of Kansas
State of Louisiana

**Taxing and Other Governmental Authorities cont'd**

State of Maine
State of Maryland
State of Massachusetts
State of Michigan
State of Minnesota
State of Mississippi
State of Nebraska
State of Nevada
State of New Jersey
State of New Mexico
State of New York
State of North Carolina
State of North Dakota
State of Ohio
State of Rhode Island
State of South Carolina
State of South Dakota
State of Texas
State of Vermont
State of West Virginia
Washington D.C.

**Members of the Creditors' Committee**

Yousef Abbasi
DMG Blockchain Solutions, Inc.
NetCents Technology, Inc.
Polaris Ventures
Stably Corporation
Austin Ward
Allsectech, Inc.

**Bankruptcy Judges for the District of Delaware, U.S. Trustee's Office Trustees and key staff for the District of Delaware, and Clerks of Court for the District of Delaware**

The Honorable John T. Dorsey
The Honorable Ashley M. Chan
The Honorable Karen B. Owens
The Honorable Chief Judge Laurie Selber Silverstein

**Court Personnel cont'd**

The Honorable Mary F. Walrath
The Honorable Craig T. Goldblatt
The Honorable Brendan L. Shannon
The Honorable J. Kate Sickles
The Honorable Thomas M. Horan
Angelique Okita
Benjamin Hackman
Christine Green
Claire Brady
David Buchbinder
Denis Cooke
Diane Giordano
Dion Wynn
Edith A. Serrano
Hannah M. McCollum
Holly Dice
James R. O'Malley
Jane Leamy
Jeffrey Heck
Joseph Cudia
Joseph McMahon
Juliet Sarkessian
Karen Starr
Lauren Attix
Linda Casey
Linda Richenderfer
Marquietta Lopez
Michael Panacio
Michael West
Nyanquoi Jones
Ramona Harris
Ramona Vinson
Richard Schepacarter
Rosa Sierra-Fox
Shakima L. Dortch
Stacey Drechsler
Stephen Grant
T. Patrick Tinker
Timothy J. Fox, Jr.
Una O'Boyle

## Schedule 2

## M3 Potential Connections or Related Parties[1]

- In the ordinary course of its financial advisory practice, M3 Advisory Partners, LP or its senior professionals (collectively, "M3") have recently had and/or currently have relationships with various law firms, accounting firms, financial advisory firms, and other professionals and service providers, as well as affiliates of the foregoing who are listed on Schedule 1 (the "**Debtor Disclosure Schedule**") as parties-in-interest in these proceedings (each, an "**Ancillary Entity**"). Such relationships have included, among other things, M3 or its senior professionals[2] serving as an advisor to clients in engagements where (a) such client was or is represented by one or more Ancillary Entities or (b) one or more Ancillary Entities has represented or currently represents one or more parties-in-interest who are not clients of M3. Additionally, certain of the Ancillary Entities may have retained, or been retained by M3 and its affiliates, in the recent past with respect to matters unrelated to the Debtors and their bankruptcy cases. The Persons shown on the Debtor Disclosure Schedule who constitute (or whose affiliates constitute) Ancillary Entities include, without limitation, Ankura (f/k/a Chartwell Compliance); Cahill Gordon & Reindel LLP; Cooley LLP; Crowell Moring; Fisher & Phillips LLP; Goodwin Procter LLP; K&L Gates LP; McDermott Will & Emery LLP; Robert Half and Stretto. To the best knowledge of the senior professionals at M3 on the date hereof, such relationships have been unrelated to the Debtors, do not create interests adverse to the Debtors and are not in connection with these proceedings.

- M3 currently has or recently has had relationships with various bank and non-bank lenders, trustees, other financial institutions acting in various capacities, and other equity and debt financing sources, as well as affiliates of any of the foregoing, who are listed on the Debtor Disclosure Schedule as parties-in-interest to these proceedings (collectively, the "**Financial Institutions**"). Such relationships may include, among other things, (a) a direct relationship between M3 and one or more of the Financial Institutions, (b) M3 advising Persons who themselves have relationships with such Financial Institutions and (c) M3 being involved in a proceeding or other engagement in which one or more Financial Institutions was separately a party-in-interest (the parties-in-interest described in clauses (a), (b) and (c) collectively, "**Ancillary Institutions**"). Such Ancillary Institutions include, without limitation: BMO Harris Bank, N.A.; Fidelity Information Services, LLC; J.P. Morgan Asset Management Inc.; Western Alliance Bank; and William Blair MB Investments, LP – PCTI 2022 Series. To the

---

[1]    References in this Schedule to parties-in-interest with which M3 currently has or recently has had relationships in any category described above are not exclusive and the party-in-interest or an affiliate thereof also may have other relationships with M3 in the same or other categories without specific identification. All disclosures contained herein are made to the knowledge of M3 based upon parties-in-interest disclosures provided in various engagements and other information of which the senior professionals at M3 have actual knowledge. For purposes of this Schedule, the term "Persons" shall include entities and natural persons and any reference to a specific Person shall be deemed to also be a reference to affiliates of such Person.

[2]    For purposes of this Schedule, the term "senior professionals" refers to Managing Directors and Directors of M3.

best knowledge of the senior professionals at M3 on the date hereof, such relationships have been unrelated to the Debtors, do not create interests adverse to the Debtors and are not in connection with these proceedings.

- On the Debtor Disclosure Schedule, 10T DAE Expansion Fund, LP, 10T Fund A, LP and 10T Fund, LP have been disclosed as "1% Shareholders".
  - o 10T Holdings, LLC has been identified as a "Potential M&A Counterparty" in pending bankruptcy proceedings in which M3 serves as financial advisor to the debtors in such proceeding. To the best knowledge of the senior professionals at M3 on the date hereof, such relationships have been unrelated to the Debtors, do not create interests adverse to the Debtors and are not in connection with these proceedings.

- On the Debtor Disclosure Schedule, Fireblocks, Inc. has been disclosed as one of the Debtors' "Major Vendors, Suppliers, and Other Parties."
  - o Fireblocks Inc. or an affiliate thereof has been identified as a "Custodian", "Potential Bidding Party" or "Significant Vendor" in the bankruptcy proceedings of (a) Genesis Global Holdco, LLC, et al., in the United States Bankruptcy Court for the Southern District of New York (Case No. 23-10063 (SHL)), (b) Block Fi Inc., et al., in the United States Bankruptcy Court for the District of New Jersey (Case No. 22-19361 (MBK)), or (c) Celsius Network LLC, et al., in the United States Bankruptcy Court for the Southern District of New York (Case No. 22-10964 (MG)). M3 serves as financial advisor to the debtors in the Genesis proceedings and as financial advisor to the Official Committees of Unsecured Creditors in the BlockFi and Celsius proceedings. To the best knowledge of the senior professionals at M3 on the date hereof, such relationships have been unrelated to the Debtors, do not create interests adverse to the Debtors and are not in connection with these proceedings.

- On the Debtor Disclosure Schedule, Kraken Ventures Fund I LP has been disclosed as one of the Debtors' "1% Shareholders."
  - o Kraken has been identified as a "Custodian", "Debtors' Banks & Financial Service Providers", "Exchanges/Marketplaces", "Potential Bidding Party" or "Potential M&A Counterparty" in the bankruptcy proceedings of (a) Genesis Global Holdco, LLC, et al., in the United States Bankruptcy Court for the Southern District of New York (Case No. 23-10063 (SHL)), (b) Block Fi Inc., et al., in the United States Bankruptcy Court for the District of New Jersey (Case No. 22-19361 (MBK)), or (c) Celsius Network LLC, et al., in the United States Bankruptcy Court for the Southern District of New York (Case No. 22-10964 (MG)). M3 serves as financial advisor to the debtors in the Genesis proceedings and as financial advisor to the Official Committees of Unsecured Creditors in the BlockFi and Celsius proceedings. To the best knowledge of the senior professionals at M3 on the date hereof, such relationships have been unrelated to the Debtors, do not create interests adverse to the Debtors and are not in connection with these proceedings.

- On the Debtor Disclosure Schedule, Galaxy Digital, Ltd. has been disclosed as "Debtor's Restructuring and Other Significant Professionals."

- o Galaxy Digital, Ltd. has been identified as a purchaser of assets of the estate of Celsius Network LLC in its bankruptcy proceedings in the United States Bankruptcy Court for the Southern District of New York (Case No. 22-10964 (MG)) and it may be a purchaser of additional assets in the future. M3 serves as financial advisor to the Official Committees of Unsecured Creditors in the Celsius proceeding. To the best knowledge of the senior professionals at M3 on the date hereof, such relationships have been unrelated to the Debtors, do not create interests adverse to the Debtors and are not in connection with these proceedings.

- Each of Arrington Capital, Talos, Chainalysis, Paxos, Red Acre Ventures and Ripple has been disclosed as a current or potential NDA counterparty with respect to the Debtors.

  - o Each of such entities or an affiliate thereof has been disclosed as a "Potential NDA Counterparty" or analogous term in certain other M3 engagements.

- Anchorage Digital has been disclosed on the Litigation Tracker provided with the Debtor Disclosure Schedule.

  - o Anchorage Digital has been identified as an investor and lender to M3's client in a recent confidential engagement in which M3 served as financial advisor. M3's work on that engagement is now complete. To the best knowledge of the senior professionals at M3 on the date hereof, such relationships have been unrelated to the Debtors, do not create interests adverse to the Debtors and are not in connection with these proceedings.

- Prime Trust has been disclosed as an "Institutional Customer" in the bankruptcy proceedings of Celsius Network LLC, et al., in the United States Bankruptcy Court for the Southern District of New York (Case No. 22-10964 (MG)). M3 currently serves as financial advisor to the Official Committee of Unsecured Creditors in the Celsius proceeding. To the best knowledge of the senior professionals at M3 on the date hereof, such relationships do not create interests adverse to the Debtors and are not in connection with these proceedings.

- A senior professional at M3 who is not listed on Schedule 1 has received notification from the Debtors that he may be a creditor of the Debtors.  This individual has not, to his knowledge, done business with the Debtors, but believes that he may have had an account with an unaffiliated company that had or has a clearing relationship with the Debtors.  This individual (a) is not involved in M3's services to the Debtors, (b) will not be involved in such services and (c) has assured M3 that he does not intend to seek any recovery on his potential claim from the Debtors.

- M3 currently purchases or recently has purchased goods and services in the ordinary course of business and in the open market from vendors who are listed on the Debtor Disclosure Schedule as parties-in-interest to these proceedings. Similarly, clients of M3, and debtors and parties-in-interest with respect to matters in which M3 is currently involved or recently has been involved in various capacities, also purchase or recently have purchased, or sell or recently have sold, goods and services in the ordinary course of business and in the open market from or to certain of the Persons listed on the Debtor Disclosure Schedule as parties-in-interest to these proceedings. To the best knowledge of the senior professionals at M3 on the date hereof, such

3

relationships have been unrelated to the Debtors, do not create interests adverse to the Debtors and are not in connection with these proceedings.

- M3 currently serves or recently has served as a financial advisor to various Persons which have (a) purchased, or currently purchase, insurance (including, without limitation, health and similar insurance), employment benefits services, or utilities from, (b) leased property or assets from landlords or lease counterparties who are, or (c) recently have been or are subject to the taxing or other regulatory authority of, Persons listed on the Debtor Disclosure Schedule as parties-in-interest to these proceedings. In addition, M3 itself purchases or has recently purchased insurance, employments benefits services or utilities from, or currently or recently has leased property or assets from, or is or recently has been subject to the taxing or other regulatory authority of, Persons who are listed on the Debtor Disclosure Schedule as parties-in-interest to these proceedings. To the best knowledge of the senior professionals at M3 on the date hereof, such relationships have been unrelated to the Debtors, do not create interests adverse to the Debtors and are not in connection with these proceedings.

- In the ordinary course of its business, M3 provides services to Persons currently or recently conducting, or involved in, bankruptcy proceedings in various federal bankruptcy courts in the United States. In connection with these proceedings, M3 interacts with Judges of the United States Bankruptcy Courts and personnel of the Office of the United States Trustee in various jurisdictions, including, without limitation, those of the District of Delaware. To the best knowledge of the senior professionals at M3 on the date hereof, such relationships have been unrelated to the Debtors, do not create interests adverse to the Debtors and are not in connection with these proceedings.

**IN THE UNITED STATES BANKRUPTCY COURT**
**FOR THE DISTRICT OF DELAWARE**

|  |  |
|---|---|
| In re: | Chapter 11 |
| Prime Core Technologies Inc., *et al.*,[1] | Case No. 23-11161 (JKS) |
| Debtors. | (Jointly Administered) |
|  | **Obj. Deadline: Sept. 28, 2023 at 4:00 p.m. (ET)** |
|  | **Hrg. Date: October 5, 2023 at 2:00 p.m. (ET)** |

**NOTICE OF HEARING ON APPLICATION OF THE DEBTORS FOR ENTRY OF AN ORDER AUTHORIZING AND APPROVING THE EMPLOYMENT AND RETENTION OF M3 ADVISORY PARTNERS, LP AS FINANCIAL ADVISOR PURSUANT TO BANKRUPTCY CODE SECTION 327(a), BANKRUPTCY RULES 2014(a) AND 2016, AND LOCAL RULE 2014-1, EFFECTIVE AS OF THE PETITION DATE**

TO:  (a) the U.S. Trustee; (b) proposed counsel for the Committee of Unsecured Creditors; and (c) any party that requests service pursuant to Bankruptcy Rule 2002.

**PLEASE TAKE NOTICE** that, on September 14, 2023 the above-captioned debtors and debtors in possession (collectively, the "Debtors") filed the *Application of the Debtors for Entry of an Order Authorizing and Approving the Employment and Retention of M3 Advisory Partners, LP as Financial Advisor Pursuant to Bankruptcy Code Section 327(a), Bankruptcy Rules 2014(a) and 2016, and Local Rule 2014-1, Effective as of the Petition Date* (the "Application") with the United States Bankruptcy Court for the District of Delaware, 824 Market Street, 3rd Floor, Wilmington, Delaware 19801 (the "Court").

**PLEASE TAKE FURTHER NOTICE** that objections, if any, to the Application must be in writing, filed with the Court, 824 Market Street, 3rd Floor, Wilmington, Delaware 19801, and served upon (a) the Debtors, 10845 Griffith Peak Dr., #03-153, Las Vegas, NV 89135 (Attn: Jor Law); (b) proposed counsel to the Debtors, McDermott Will & Emery LLP, 1000 N. West Street, Suite 1400, Wilmington, DE 19801 (Attn: Maris J. Kandestin), and One Vanderbilt Avenue, New York, NY 10017 (Attn: Darren Azman; Joseph B. Evans), and 333 SE 2nd Avenue, Suite 5400, Miami, FL 33131 (Attn: Gregg Steinman); (c) proposed counsel to the Committee, Brown Rudnick LLP, 7 Times Square, New York, NY 10036 (Attn: Robert Stark; Bennett Silverberg); and (d) the U.S. Trustee, 844 King Street, Suite 2207, Lockbox 35,

---

1   The Debtors in these Chapter 11 Cases, along with the last four digits of each debtor's federal tax identification number are: Prime Core Technologies Inc. (5317); Prime Trust, LLC (6823); Prime IRA LLC (8436); and Prime Digital, LLC (4528). The Debtors' service address is 10845 Griffith Peak Dr., #03-153, Las Vegas, NV 89135.

Wilmington, DE 19801 (Attn: Joseph Cudia), so that it is received on or before **4:00 p.m. (prevailing Eastern Time) on September 28, 2023.**

       **PLEASE TAKE FURTHER NOTICE** that a hearing on the Application, if necessary, will be held **on October 5, 2023 at 2:00 p.m. (prevailing Eastern Time)** before the Honorable J. Kate Stickles, United States Bankruptcy Judge, United States Bankruptcy Court for the District of Delaware, 824 Market Street, 5th Floor, Courtroom No. 6, Wilmington, Delaware 19801.

       IF YOU FAIL TO RESPOND IN ACCORDANCE WITH THIS NOTICE, THE COURT MAY GRANT THE RELIEF REQUESTED IN THE APPLICATION WITHOUT FURTHER NOTICE OR HEARING.

| | |
|---|---|
| Dated: September 14, 2023<br>Wilmington, Delaware | */s/ Maris J. Kandestin*<br>Maris J. Kandestin (No. 5294)<br>**MCDERMOTT WILL & EMERY LLP**<br>1000 N. West Street, Suite 1400<br>Wilmington, Delaware 19801<br>Telephone:   (302) 485-3900<br>Facsimile:   (302) 351-8711<br>Email:      mkandestin@mwe.com<br><br>-and-<br><br>Darren Azman (admitted *pro hac vice*)<br>Joseph B. Evans (admitted *pro hac vice*)<br>One Vanderbilt Avenue<br>New York, New York 10017-3852<br>Telephone:   (212) 547-5400<br>Facsimile:   (212) 547-5444<br>Email: dazman@mwe.com<br>jbevans@mwe.com<br><br>-and-<br><br>Gregg Steinman (admitted *pro hac vice*)<br>333 SE 2nd Avenue, Suite 5400<br>Miami, Florida 33131<br>Telephone: (305) 358-3500<br>Facsimile: (305) 347-6500<br>Email: gsteinman@mwe.com<br><br>*Proposed Counsel to the Debtors and Debtors in Possession* |