UNITED STATES BANKRUPTCY COURT
DISTRICT OF DELAWARE

|  |  |  |
|---|---|---|
| IN RE: | . | Chapter 11 |
|  | . |  |
|  | . | Case No. 23-11161(JKS) |
| PRIME CORE TECHNOLOGIES, | . |  |
| INC., et al, | . |  |
|  | . |  |
|  | . | 824 Market Street |
|  | . | Wilmington, Delaware 19801 |
| Debtors. | . |  |
| . . . . . . . . . . . . . . . | . | Wednesday, September 13, 2023 |

TRANSCRIPT OF HEARING RE:
DEBTORS' MOTION FOR ENTRY OF AN ORDER (I) APPROVING BIDDING
PROCEDURES FOR THE SALE OF ALL OF THE DEBTORS' EQUITY OR
SUBSTANTIALLY ALL OF DEBTORS' ASSETS, (II) AUTHORIZING THE
DEBTORS TO ENTER INTO ONE OR MORE STALKING HORSE AGREEMENTS,
(III) APPROVING BID PROTECTIONS, (IV) SCHEDULING AN AUCTION
AND RELATED DATES THERETO, (V) APPROVING THE FORM AND MANNER
OF NOTICE THEREOF, (VI) APPROVING CONTRACT ASSUMPTION AND
ASSIGNMENT PROCEDURES, AND (VII) GRANTING RELATED RELIEF
BEFORE THE HONORABLE J. KATE STICKLES
UNITED STATES BANKRUPTCY JUDGE

APPEARANCES:

For the Debtors:          Maris J. Kandestin, Esq.
                          MCDERMOTT, WILL & EMERY, LLP
                          1007 North Orange Street
                          10th Floor
                          Wilmington, Delaware 19801

                          Darren Azman, Esq.
                          Joseph B. Evans, Esq.
                          MCDERMOTT, WILL & EMERY
                          One Vanderbilt Avenue
                          New York, New York 10017
(Appearances Continued)

Audio Operator:           Electronically Recorded
                          by Sean Moran, ECRO

Transcription Company:    Reliable
                          1007 N. Orange Street
                          Wilmington, Delaware 19801
                          (302)654-8080
                          Email:  gmatthews@reliable-co.com

Proceedings recorded by electronic sound recording,
transcript produced by transcription service.

APPEARANCES:   (Continued)

```
For the U.S. Trustee:         Joseph Cudia, Esq.
                              OFFICE OF THE U.S. TRUSTEE
                              844 King Street, Suite 2207
                              Wilmington, Delaware 19801


For the Official Committee
of Unsecured Creditors:       Donald J. Detweiler, Esq.
                              WOMBLE BOND DICKINSON (US), LLP
                              1313 North Market Street
                              Suite 1200
                              Wilmington, Delaware 19801

                              Robert J. Stark, Esq.
                              Bennett S. Silverberg, Esq.
                              BROWN RUDNICK, LLP
                              Seven Times Square
                              New York, New York 10036


For Bittrex:                  Kenneth J. Enos, Esq.
                              YOUNG, CONAWAY, STARGATT
                               & TAYLOR, LLP
                              Rodney Square
                              1000 North King Street
                              Wilmington, Delaware 19801

                              Patricia B. Tomasco, Esq.
                              QUINN, EMANUEL, URQUHART
                               & SULLIVAN, LLP
                              Pennzoil Place
                              711 Louisiana Street, Suite 500
                              Houston, Texas 77002


For Polaris:                  Ryan M. Bartley, Esq.
                              YOUNG, CONAWAY, STARGATT
                               & TAYLOR, LLP
                              Rodney Square
                              1000 North King Street
                              Wilmington, Delaware 19801
```

<u>INDEX</u>

<u>PAGE</u>

<u>ARGUMENT/PRESENTMENT BY MR. AZMAN</u>                    7

<u>ARGUMENT BY MR. STARK</u>                              22

<u>SCHEDULING</u>                                         37

<u>COURT DECISION</u>                                     41

<u>EXHIBIT</u>                                        <u>EVID.</u>

Chao Declaration                                     7

4

1        (Proceedings commence at 3:11 p.m.)

2        **(No Recording Microphones at Counsel Table and Lectern)**

3        THE COURT: Good afternoon, everyone.  Please be

4    seated.

5        This is Judge Stickles.  We're on the record in

6    Prime Core Technologies, Case Number 23-11161.

7        Good afternoon.

8        MS. KANDESTIN:  Good afternoon, Your Honor.  May it

9    please the Court, Maris Kandestin of McDermott, Will & Emery

10   on behalf of the debtors.  With me in the courtroom today are

11   my partners Darren Azman and Joseph Evans, and also

12   (indiscernible) is here from our Chicago office, as well.

13       THE COURT:  Welcome.

14       MS. KANDESTIN:  Thank you again for shortening time

15   on these bid procedures.

16       With that, I will turn it over to Mr. Azman to walk

17   the Court through the motion.

18       THE COURT:  Okay.  Thank you.

19       MR. AZMAN:  Hi, Your Honor.  Good afternoon.

20   Darren Azman, McDermott, Will & Emery, proposed counsel to

21   the debtors.

22       Your Honor, as I discussed with you at the first-

23   day hearing, there's really only so much cash in this estate

24   to support a Chapter 11 process, and we only have so much

25   time.  So we're moving fast, quickly, not just on the sale

1   process, but, as we'll talk about in a little bit, the plan

2   time line, which I think the committee generally agrees with,

3   as you probably read in their limited objection, and it

4   really is in everyone's best interests just to move quickly.

5          Since the committee was appointed, we have been

6   working closely with them.  They have retained advisors,

7   counsel, and a financial advisor, and that also has involved

8   discussions on a plan process.

9          As you probably know, we filed a plan and

10   disclosure statement on Friday of last week and we're seeking

11   to have that heard on an expedited time line.  While we

12   ordinarily would have liked to have had a discussion with the

13   committee before filing a plan, like we typically do in every

14   case, we didn't have that luxury here, just due to time, and

15   that's really the only reason.

16          We, of course, intend to engage with the committee

17   and their professionals on a plan.  And to that end, next

18   week, on Monday actually, we're having an all-hands meeting

19   in person in New York at our office to discuss, among other

20   things, the plan.  And so I'm hopeful that will be a

21   productive dialogue with them.

22          Unless Your Honor has any questions, I'd like to

23   move forward with the only item on today's agenda, which is

24   the bid procedures motion, as well as the two objections that

25   were filed, both of which, by the way, I'm happy to tell you

1    are fully resolved.

2              THE COURT:  Okay.  Thank you.

3              MR. AZMAN:  And so I believe we are fully

4    consensual here today, subject to comments that others may

5    have.

6              THE COURT:  Okay.  Thank you.

7              MR. AZMAN:  Your Honor, I'd first like to move the

8    declaration of Albert Chao into evidence.  Mr. Chao is a

9    Managing Director at Galaxy Digital.  And Galaxy, as you may

10   recall, is our investment banker for this sale process.  Mr.

11   Chao is just seated over here and is available for cross-

12   examination.  Your Honor, that declaration was filed at

13   Docket Number 98.

14             THE COURT:  Does anyone object to the admission of

15   the Chao declaration at Docket Number 98?

16             MR. STARK:  No, Your Honor.

17             Robert Stark from Brown Rudnick, proposed co-

18   counsel to the official committee.

19             We don't object.  But I would ask for an

20   accommodation for this go-around and going forward, if Your

21   Honor was willing, just as a policy matter.  When we're

22   dealing with declarations and evidence submitted in writing,

23   our general request is often that it just be for the

24   particular contested matter and not have (indiscernible) you

25   know, any impact going forward for other matters as they may

1    arise during the course of the case.

2              THE COURT:  Okay.  The Chao declaration is for

3    purposes of today's bidding --

4              MR. STARK:  Thank you --

5              THE COURT:  -- procedures --

6              MR. STARK:  -- Your Honor.

7              THE COURT:  -- motion.

8              Let me ask.  Does anyone wish to cross-examine Mr.

9    Chao regarding the content of his declaration?

10        (No verbal response)

11             THE COURT:  Okay.  I hear none.  The declaration is

12   admitted uncontroverted.

13        (Chao Declaration received in evidence)

14             MR. AZMAN:  Thank you.

15             Your Honor, the bid procedures are relatively

16   straightforward.  I'm happy to walk through any aspects of

17   them, if you'd like.  But if not, I think maybe what's more

18   productive is to walk through the changes that we have made

19   and address how we've resolved the two objections?

20             THE COURT:  Yes, because I -- candidly, I read your

21   proposed order and I had comments on it.  But I was just

22   handed, before I walked in here, a revised order and a

23   revised -- excuse me -- revised bid procedures, so I would

24   appreciate you walking through it.

25             MR. AZMAN:  Yeah.  We can --

1   THE COURT:  And --

2   MR. AZMAN:  We --

3   THE COURT:  Right, so and we should have

4   objections, as well.

5   MR. AZMAN:  Yeah, we cut it close.  Let me just

6   grab --

7   THE COURT:  No.

8   MR. AZMAN:  -- a redline.

9   THE COURT:  No.  I was in court all day, so ...

10   MR. AZMAN:  Okay.  Do you have a redline line or

11   would you like me to --

12   THE COURT:  I do.

13   MR. AZMAN:  Okay.  Fantastic.

14   So, as I said, we're fully resolved in all the

15   issues.  We got informal comments from the U.S. Trustee.  We

16   -- also, there were two responses by Bittrex, as well as the

17   committee.

18   We resolved the issues with -- before I go to the

19   redline, we resolved the issues with the U.S. Trustee and

20   Bittrex through modifications to both the bid procedures and

21   the order.

22   THE COURT:  Okay.

23   MR. AZMAN:  Similarly, we resolved the committee's

24   objections the same way, but there are two other pieces of

25   our resolution with the committee, and I'll get into this in

1    a bit in more detail.

2           First, they've agreed to support a revised plan

3    time line.  And again, I'll walk through that in a moment.

4    And I know that's not on for today, but it's just part of an

5    overall resolution for this -- for at least this piece of the

6    case.

7           And second, they've agreed to not oppose Galaxy

8    Digital's retention as an investment banker if we make two

9    adjustments to their proposed fee.

10          So, again, let me maybe just start with the

11   redline, and then I can come back to the two sort of pieces

12   that are not in this revised order.

13          So let's start with the bidding procedures, if that

14   makes sense.  I'm going to skip over anything that you

15   probably don't care to hear about, including the change from

16   -- the deletion of "Houston division" on the first page.

17          So, on Page 2 of the redline, we added in -- we

18   moved this date just above, October 3rd, I think it's just --

19   it was out of order.

20          The footnote here is important.  This is the crux

21   of one of our resolutions with the committee.  Basically,

22   what it says is that, as is typical in bid procedures, the

23   debtors can modify anything they want, including the

24   schedule.  But if we are going to modify the schedule, we're

25   going to give them notice.

1          And the sort of guardrail that we've agreed to here

2     is that this case will be over before the end of the year.

3     And if, for any reason, we want to make a modification to

4     this time line that is going to push this case, push

5     confirmation out beyond 2023, then we've got to come to the

6     Court and talk to Your Honor about why that makes sense.  And

7     they will, of course, have their opportunity to oppose it --

8          THE COURT:  Okay.

9          MR. AZMAN:  -- but it can, of course, consent to

10    it, but if there's not an agreement.

11         THE COURT:  Okay.

12         MR. AZMAN:  So that's basically what that footnote

13    entails.

14         THE COURT:  And I appreciate that the debtor and

15    committee are working together.

16         MR. AZMAN:  On Page 4 of the redline, Subsection

17    (c), this was in response to a comment by the U.S. Trustee.

18    We, originally, were going to require some enhanced diligence

19    for bidders to provide before we gave them access to the data

20    room.

21         THE COURT:  Uh-huh.

22         MR. AZMAN:  And the U.S. Trustee asked that we

23    remove that and we had no problem doing that.

24         THE COURT:  Okay.

25         MR. AZMAN:  So ...

1          THE COURT:  And again, thank you all, sir, for

2     working with the U.S. Trustee.

3          MR. AZMAN:  Of course.

4          I think most of the rest of the comments -- and

5     I'll just continue to flip through -- are just committee

6     consultation rights, which are -- again, are typical in

7     bidding procedures here, including at the bottom of Page 4,

8     getting copies of the bid documents.

9          And please stop me if you want me to pause on any

10    of these.

11         Page 5, at the top, we wanted to protect the

12    identifies of the bidders.  So, basically, the committee will

13    be able to share with its constituents the structure,

14    economics, basically everything about the bids that are

15    received.

16         The only thing they cannot share, unless we agree

17    to it, is the identity of the bidder.  Based on our shared

18    experiences in other cases, there are inevitably leaks of

19    information, and that's the last thing that we want to happen

20    in this shortened sale process.

21         Page 6, all consultation rights.

22         Page 7 has just additional language on the stalking

23    horse designation, if there is going to be one.

24         THE COURT:  Okay.  This is a -- this is a topic

25    that I had an issue with.  So you ...

1          (Pause in proceedings)

2                THE COURT:  Okay.  I -- one of the concerns I had

3    was that I would not prospectively approve bidding

4    protections.  And so it looks to me that you've modified that

5    to require both a supplement, whether that be a notice or

6    some type of supplement to your motion, as well as a

7    declaration in support of the relief sought.  Is that

8    correct?  Reading this quickly, that's how I read this.

9          (Participants confer)

10               MR. AZMAN:  Yes, Your Honor.

11               THE COURT:  Okay.  All right.  And that's, you

12   know, since the allowability of breakup fees and expense

13   reimbursement, like other administrative expense, depend on

14   the requesting party's ability to show that they were -- the

15   fees were actually reasonable and necessary.  That is why I

16   cannot do it in advance.

17               MR. AZMAN:  Understood --

18               THE COURT:  So I --

19               MR. AZMAN:  -- Your Honor.

20               THE COURT:  -- appreciate that this is consistent

21   with the practice in this district.

22               MR. AZMAN:  Of course.

23               THE COURT:  And I will set an expedited hearing if

24   one is necessary.

25               MR. AZMAN:  Thank you, Your Honor.  We appreciate

1   that.

2          Page 9 in the redline, this is Subsection (h).  We

3   just clarified that, by submitting a bid, you're agreeing to

4   serve as a backup bidder.  I think that was clear elsewhere,

5   but just to clean up.

6          THE COURT:  I think that's a very important

7   provision.

8          MR. AZMAN:  It is, particularly from other crypto

9   cases that we've been involved in.  It is, indeed.

10          Page 11, just notice provisions in the middle there

11   and at the top.  We probably have to cross-reference.  I

12   think this is just cleanup to make it clear that it's not

13   modifying another section of the bidding procedures, which

14   was 2(c).  I'll take a look.

15      (Pause in proceedings)

16          MR. AZMAN:  Because -- yeah, like because 2(c)

17   talks about no communication between bidders.

18          Page 12 is just cleanup.

19          THE COURT:  Uh-huh.

20          MR. AZMAN:  Page 13, this is another request, I

21   believe by the U.S. Trustee, changing the 5 business days to

22   48 hours.

23          THE COURT:  Okay.  And that's not -- that's more

24   consistent with our local rules and practice, so that's

25   acceptable.

1          MR. AZMAN:  Page 17, just jumping ahead here, all

2   cleanup and also consultation rights added.

3          And I don't think anything fairly substantive on

4   18, but happy to address those.

5          So those are the procedures.  Unless Your Honor has

6   questions, I can move on to the order.

7          THE COURT:  No.  I just -- bear with me one second.

8   I'm looking at your --

9          MR. AZMAN:  Of course.

10         THE COURT:  -- fiduciary out.  Okay.  Okay.

11  Understood.

12       (Pause in proceedings)

13         MR. AZMAN:  Are you ready to move on to the order -

14  -

15         THE COURT:  Yes.

16         MR. AZMAN:  -- Your Honor?  Okay.  Thanks.

17         Okay.  So we're not seeking the bid protections, as

18  we discussed, so a lot of these changes are in that vein,

19  including on the first page, including on Page 3.

20         Page 4 of the redline, footnote, same as what I

21  mentioned before, in terms of the guardrails around the

22  length of this case.

23         Same changes to the time line on Page 5.

24         The bottom of Page 6.  This just sets a more

25  definitive deadline by when we need to file a notice of

1    successful bidder.

2              THE COURT:  This is a nice modification.

3              MR. AZMAN:  Which one?

4              THE COURT:  About when you need to identify.

5              MR. AZMAN:  Yes.  Thank you.

6              Paragraph 4 is a new edition.  You'll probably

7    remember that there was a lot of discussion about what is

8    property of the estate and how we're handling that.

9              This is to resolve the objection filed by Bittrex.

10   They just wanted to make sure that, to the extent we're

11   selling assets, we're not selling anything that's not

12   property of the estate.  And effectively, what this does is

13   preserve everyone's rights to come in and argue that

14   something is or is not property of the estate.

15             THE COURT:  How does that impact the bids?

16             MR. AZMAN:  I don't think it impacts the bids at

17   all.  It's a complicated question, probably better answered

18   by the investment bankers.

19             But from my perspective, this is not a case where a

20   bidder is really placing a value on buying, for example,

21   bitcoin, right?  We're not going to sell bitcoin from the

22   estate at a price other than what it's trading at.  And so

23   it's almost like buying the assets on a cash-free basis.

24             I don't, ultimately, know whether those assets will

25   be transferred to a buyer.  That's really subject to

1   discussions with the various bidders.  But certainly, it's

2   something that's at the front of our mind, in terms of how

3   we're going to structure a bid.

4           My only point is I don't think it's going to drive

5   the process, right?  Because really, what we're talking

6   about, in terms of value of this company, is the technology -

7   -

8           THE COURT:  Sure.

9           MR. AZMAN:  -- the licenses, not really the -- you

10  know, the bitcoin or the other tokens that the company has.

11  Does that make sense, Your Honor?

12          THE COURT:  Yes.  I just -- just looking ahead,

13  where we're going and what potential issues arise is really

14  my concern here.

15          MR. AZMAN:  Sure.  Maybe --

16          THE COURT:  And I --

17          MR. AZMAN:  -- take --

18          THE COURT:  And I appreciate the objector's

19  position, and I appreciate this as being a way to resolve it.

20  I just want to make sure that it's not something that could

21  chill bids or blow up the process.

22          MR. AZMAN:  Understood, Your Honor.

23          I don't think that's the case.  And what I'll tell

24  you is that, since day one of this case, really, before we

25  filed, one major work stream in this case is trying to figure

1   out what is property of the estate and what is not.

2          This case is a little different from the larger

3   crypto cases.  Even though it's smaller, it's actually, in

4   many ways, more complicated when it comes to property of the

5   estate issues because this company had many different

6   agreements with its customers that say different things about

7   how property is going to be held.  And the way in which they

8   held it is also different in many respects from the other

9   cases.

10          So it's a complicated question, but it's definitely

11   on the forefront of our mind and something we're talking with

12   the committee about, as well.

13          THE COURT:  Okay.  Thank you.

14          MR. AZMAN:  The rest on Page 7, in Paragraph 7 is

15   consultation rights.

16          Paragraph 10 is just cleanup.  I'm on Page 8, by

17   the way.

18          Paragraph 11 talks about the declaration that we

19   just mentioned for the stalking horse.

20          We've changed the notice period from three to

21   seven.

22          The rest of the changes on Page 9 are conforming to

23   what we discussed in the procedures.

24          Page 10 made some modifications to the assumption

25   of contracts procedures, just to give the estate a little bit

1    more flexibility, given the time line here.  We're just

2    concerned about the bidders' ability to fully diligence

3    contracts.

4              There's no "Southern District of Delaware," but I'm

5    sure --

6              THE COURT:  Yeah.

7              MR. AZMAN:  -- it would be lovely if there was, in

8    the footnote --

9              THE COURT:  There's a Southern Delaware that's

10   lovely.

11        (Laughter)

12             MR. AZMAN:  Page 13.  Okay.  Just additional

13   clarification on the assumed contracts procedures.

14             And I think -- and then the deletion of exclusive

15   for jurisdiction in Paragraph 21.

16             So that's everything that we've modified in the

17   procedures and the order, Your Honor, that resolves, as our -

18   - as we understand it, the U.S. Trustee's objections, as well

19   as those filed by Bittrex and the committee.

20             I'd like to move on to talk about sort of the two

21   other pieces of our settlement with the committee.

22             So, as I said, the UCC has also agreed to not

23   object to Galaxy's retention if we make two changes to their

24   engagement.  This is obviously a little strange.  We don't

25   have a retention application on file for any of the

1   professionals yet.

2              THE COURT:  Okay.  I was going to say I haven't

3   seen a --

4              MR. AZMAN:  Yeah.

5              THE COURT:  -- retention application.

6              MR. AZMAN:  And you wouldn't have seen it.

7         And this agreement, it's only binding on the

8   committee.

9         And although it's a little bit strange because

10  there's no retention application on file, in many ways, it

11  makes sense because both the committee, the debtors, and

12  Galaxy wanted certainty about, you know, what the economics

13  of the sale process are going to be.  And so, you know, we

14  all agreed that it made sense to resolve this issue now.

15        And certainly other parties' rights are reserved.

16  Your Honor is going to need to review that retention

17  application and make a decision on it.  But this is just the

18  committee agreeing to support -- or rather, not oppose

19  Galaxy's retention, subject to two important changes, which I

20  wanted to read into the record.

21        The first is that, again, you don't have the

22  engagement letter, but there is a DIP financing fee, as you

23  might expect in an investment banker engagement letter.  That

24  is going to be removed entirely.  There will be no DIP

25  financing fee component of -- for Galaxy.

1          To the extent that we pursue DIP financing -- and

2    we may very well do that -- it's going to be a topic of

3    another discussion with the committee, and we'll have to come

4    back to you for that.

5          The second, Galaxy's engagement letter has a

6    minimum transaction fee structure, as -- again, as you've

7    probably seen in many investment banker engagement letters.

8    The fee is $2 million.  And right now, the way it's drafted

9    is that that is payable no matter what happens, is probably

10   the easiest way to put it, whether there's a plan confirmed,

11   whether there's no plan confirmed, whether there's a sale,

12   whether there's no sale.

13         The committee had some issues with that.  And the

14   agreement is that, for the scenario where there is no sale,

15   whether it's under a plan or whether it's a 363 sale, but,

16   you know, anything else, that minimum fee will be reduced

17   from $2 million to $750,000; or, stated differently, if there

18   is a transaction of any kind -- in any -- of any kind, then

19   the fee will be $2 million.

20         And so those are the two changes that we've agreed

21   to make, that Galaxy has agreed to make in exchange for

22   resolving this.  And again, the committee has agreed that

23   they will not oppose the retention application.  And my

24   understanding is that the committee members have voted and

25   support that.

1          The next piece of the deal with the committee --

2     again, not related really directly to the bidding procedures

3     -- relates to the accelerated plan time line.  They have --

4     the committee has agreed to not oppose our accelerated time

5     line, with some revisions.  We will file that in advance of

6     the conditional approval hearing.

7          I don't want to go through all the dates, unless

8     Your Honor would like me to do that.  But we've pushed out

9     some of the dates to give parties more time to object, if

10    needed.  And I think, ultimately, where we land is a

11    confirmation hearing on November 9th, of course, subject to

12    Your Honor's calendar.

13         And so I'm not asking Your Honor to rule on any of

14    this right now.  I'm just telling you that one of the issues

15    they raised was what the time line looked like.  The

16    committee has agreed to some revisions for that time line and

17    that's what we're going to move forward with.

18         So, Your Honor, with that, I'll cede the podium,

19    unless you have any questions, to Mr. Stark.  I'm sure he'd

20    like to make some remarks and Your Honor may also have some

21    questions for him.

22              THE COURT:  Okay.  Thank you.

23              MR. AZMAN:  All right.  Thank you, Your Honor.

24              THE COURT:  Mr. Stark.

25              MR. STARK:  Thank you, Your Honor.  It's a pleasure

1    to be in front of the Court.  Thank you for allowing me

2    today.  Robert Stark and Ben Silverberg from Brown Rudnick,

3    with Mr. Detweiler --

4              THE COURT:  Good afternoon.

5              MR. STARK:  -- who Your Honor knows quite well.

6    We're co-counsel, proposed co-counsel for the official

7    creditors' committee.

8              We're scurrying a little bit right now, so forgive

9    us.  You may have seen us scurrying a little (indiscernible)

10   I'm not entirely sure we agree with the exact way Mr. Azman

11   presented the discussion on compensation for Galaxy, so I'm

12   going to let the smarter people figure that out while I

13   filibuster for a minute or two, if Your Honor will allow me.

14             I did want to say only a few things:

15             Number one, to introduce the committee.  We have a

16   seven-person committee, deeply invested, smart people,

17   working already very hard on the case.

18             Second, I wanted to offer the Court a little bit of

19   perspective right off the bat, as far as the case, that is a

20   little bit odd.  And maybe this will be helpful for the days

21   ago.  And the scurrying will continue --

22             THE COURT:  That's okay.

23             MR. STARK:  -- in the background.

24             THE COURT:  That's okay.

25             MR. STARK:  Forgive me.

1          THE COURT:  No, no problem.

2          MR. STARK:  What the committee -- as we sort of

3   very loosely put in the papers -- we don't really want to

4   start any sort of battling off the bat -- but our perspective

5   is pretty clear.  Okay?  Thoughtful, analytical, smart

6   Chapter 11, efficiency is key.  And here's what I mean by

7   that:

8          You know, we do widget cases all the time, but this

9   is a crypto case.

10         (Participants confer)

11         MR. STARK:  Apologies.

12         THE COURT:  Sure.

13         MR. STARK:  This is a crypto case.  The lawyers

14  here have done every single one of them.  You have, in this -

15  - in these two lines here every single crypto case for the

16  past several years, in one facet or another.  Okay?  So we've

17  seen it all.

18         And here's, I think, Your Honor can know from that

19  collective experience.  And I think maybe there will be

20  disagreement, but I doubt it.  Chapter 11 does not work well

21  for the crypto industry at all, not -- and maybe that's the

22  regulatory space that still remains fairly vacuous.  And so,

23  again, transactions done in that sort of environment is risky

24  money.  Maybe it's that the industry has yet matured to a

25  point where its first sort of throes through Chapter 11, it

1   understands what that means, or maybe it's the inherent anti-

2   government spirit of the industry itself that makes the

3   contracting, the resolution of issues, and in fact the

4   business running before we got here different than what we've

5   been doing for decades, since 1978.

6        But it hasn't gone very well.  And it hasn't gone

7   very well, in part, because cases have pursued, in stacked

8   format, one strategy and then a different strategy, then a

9   different strategy, each one costing an enormous amount of

10  money, pursuit this way, pursuit that way.

11       And yes, in Voyager, if you don't get that backup

12  bidder, something bad may happen if a CoinDesk article shows

13  that your bidder is maybe not capable of closing and you

14  don't have that backup bidder ready to go, and the bankruptcy

15  continues on and on and on.  We're all veterans of that.

16       We're also veterans of seeing an enormous amount of

17  administrative expenses that we have to go back at the end of

18  the case and say to the constituency it was worthwhile.  In

19  hindsight, maybe it wasn't.

20       This case is going to be different.  This is case

21  is going to track that for a couple of different reasons:

22       Number one is we're all a little bit callous from

23  what we've seen in the other cases, we've learned a little

24  bit.  Number one.

25       Number two is we're not a typical crypto company.

1    We're -- the Courts have seen, in Delaware, in New Jersey,

2    and in Houston and New York, are brokerage houses, banks,

3    hodgepodge, mining companies.  We're a custodian company.

4    That makes our business processes different because, when

5    people put their currency, in one form or another, with the

6    debtor, it's supposed to be essentially held in custody, not

7    subjected to brokerage risks or otherwise banking risks.  So

8    it should be streamlined, except it may not have been.

9         We find out now that things were not necessarily

10   kosher pre-petition; hence, allegations in Nevada that get

11   the house management, bring in a receivership.  Now that

12   receivership has migrated into a new board of directors.  And

13   now we lead the receivership into Delaware Chapter 11, but we

14   don't have an operational business because Delaware shut us

15   down with cease-and-desist order.

16        THE COURT:  Nevada.

17        MR. STARK:  Apologies.  Nevada.  My mouth is going

18   ahead of my brain (indiscernible)

19        THE COURT:  Okay.

20        MR. STARK:  Right.  So Nevada told us to stop doing

21   business.  So we're not running a 363 process with an

22   operational business.  We're among Rule 6.

23        We need to move quickly, for no other reason we

24   don't have any money.  This case is not funded very well.

25   But actually, that's a useful organizing principle of this

1    Chapter 11 case.  Let's get on the same page.  Let's not

2    fight with one another as they were doing in all these other

3    bankruptcy cases, all these crypto cases.

4           And again, since we have very shared experiences,

5    we can actually sit and meet in the middle relatively

6    quickly.  And that, so far, has been, for our two weeks, our

7    experience so far.

8           Yes, we filed our objection saying, look, we want

9    to know the speed and we want to know the costs of running

10   things, and we want to do them, not in stacked formats, but

11   in parallel lines of work streams.  Running a plan process,

12   that's good.  Running your M&A process, that's good.  But

13   don't let one (indiscernible) ahead of the other and get this

14   case wrapped up before we get to 2024.  Agreed.  That's a

15   first in a crypto bankruptcy.  Okay?

16          Let's get the costs so that they align ourselves,

17   in terms of incentives.  I'm sure there are people that don't

18   like what we ask for, in terms of the negotiating dynamic,

19   getting a 2 million fee down to seven fifty.  I am very sure

20   people didn't like that.  But we said, look, we've got to get

21   this done right at the forefront of the bid procedures.

22          What is the cost of this process?  Because I don't

23   want to be two months into this and then, Your Honor, we're

24   in front of you saying I don't think the fee structure is

25   appropriate, and somebody gets up and says you backed what we

1   asked, you're estopped, you waived it.  Get it done now, so

2   that we have rules of engagement, so that we don't have

3   problems going forward.  That's our perspective, Your Honor.

4           A technical matter on Galaxy is that -- I don't

5   want where we ...

6       (Participants confer)

7           MR. STARK:  We may still have an issue on the

8   compensation amount.

9           The -- just to be very clear on the technical

10  point, the committee, we don't have a problem with Galaxy at

11  all.  They're quite good at what they do, right?  I don't

12  have their retention application, so I have no view on

13  disinterestedness, conflicts of interest, things along --

14          THE COURT:  Right.

15          MR. STARK:  -- those lines.

16          THE COURT:  All rights --

17          MR. STARK:  What we have --

18          THE COURT:  -- reserved on those issues.

19          MR. STARK:  All rights reserved.  Thank you, Your

20  Honor.

21          All I'm saying is, in terms of the compensation

22  structure that we've negotiated, this is acceptable to the

23  committee as a means to move forward and we will not come

24  back and revisit that point.  But I don't know about those

25  other things.

1         (Participants confer)

2              MR. STARK:  Your Honor, may I have a moment?

3              THE COURT:  Of course, take a few moments.

4              MR. STARK:  Thank you.

5              THE COURT:  Do you need more than a few moments.

6    Do you want --

7              MR. STARK:  I don't --

8              THE COURT:  -- me to leave --

9              MR. STARK:  -- believe so.

10             THE COURT:  -- the room?

11             MR. STARK:  May I just --

12             THE COURT:  Okay.

13             MR. STARK:  Thank you.

14        (Participants confer)

15             MR. STARK:  Your Honor, I think we -- sadly, we do

16   need a few minutes.

17             THE COURT:  Okay.  Why don't we -- 10, 15 minutes?

18             MR. STARK:  Oh, I don't think we need that much.

19             THE COURT:  Okay.

20             MR. STARK:  Ten -- we'll take ten.

21             THE COURT:  Take ten.  If you have to have a

22   comfort break, take it during the time, too.  And we'll just

23   reconvene at ten of 4.

24             MR. STARK:  Thank you, Your Honor.

25             THE COURT:  Thank you.

1          We stand in recess.

2      (Recess taken at 3:39 p.m.)

3      (Proceedings resume at 3:59 p.m.)

4          THE COURT:  Mr. Stark.

5          MR. STARK:  Your Honor, we are fighting over small

6   dollars, just -- which is probably a good thing, in a way,

7   that we're being attentive to the issues and being thoughtful

8   about the way this case is presenting itself.  But it's a

9   burden on the Court and I apologize for that.

10          I'll tell you what the issue is.  And I actually

11  think it will result in a nonissue, but Mr. Azman will tell

12  me if he disagrees with me on that.

13          THE COURT:  Okay.

14          MR. STARK:  So the deal on the seven fifty versus

15  the 2 million -- again, I am not used to seeing financial

16  advisors and bankers running a process, getting a success

17  fee, let alone a multi-million-dollar one, if it is a failure

18  of an M&A process.

19          But their monthly fees -- and we have the actual

20  engagement letter, if it would be easier for Your Honor to

21  see it, but I'll tell you what it says --

22          THE COURT:  No, you can --

23          MR. STARK:  -- (indiscernible)

24          THE COURT:  -- tell me because --

25          MR. STARK:  So --

1        THE COURT:  -- it's not before me, technically, so

2    --

3        MR. STARK:  Understood.

4        Your Honor, their monthly fee is $100,000 for the

5    first 3 months of the case.  It goes down to $25,000, and

6    that's very reasonable from a market perspective, 25,000 a

7    month.  And if we --

8        THE COURT:  So --

9        MR. STARK:  And -- but the percent -- oh, forgive

10   me, Your Honor.

11       THE COURT:  No.  I just -- so I'm -- I don't --

12   this case recently filed like a couple of weeks ago, right?

13   We haven't even had second-days.  So it's --

14       MR. STARK:  Right.

15       THE COURT:  -- September, October, November,

16   basically.

17       MR. STARK:  Right.

18       THE COURT:  Okay.

19       MR. STARK:  And Your Honor, again, our joint vision

20   for this case is that we'll be largely over once we hit

21   around December, right?  So that's actually a very

22   reasonable, from our perspective, proposal to make on a

23   comparative, relative basis.

24       The percentages that we normally see for bankers

25   raising capital or transaction amounts, sort of the binding

1    interests, a little bit elevated from a market perspective.

2    But given the nature of the case and how reasonable they're

3    being and on their monthly fees, that seems like a decent

4    spot.

5              Here's where we sort of fall off the rails, and

6    that is the $2 million gets paid even if this case crashes

7    and burns and nothing productive comes out of the M&A process

8    and it's a liquidation, a plan of liquidation, but it's

9    really a Chapter 7.  That's where we said, listen, a couple

10   of million dollars to run the option play doesn't seem like a

11   good trade.  Okay?

12             So the negotiation was move it down to seven fifty

13   and we would support those economics.  And they agreed to

14   that.  So, in their -- and the idea -- and one scenario,

15   where the M&A process does not produce anything that's value-

16   accretive to the case, they would receive the compensation of

17   seven hundred and fifty, plus those monthlies, and that's

18   328(a).  They would be entitled to that.  That would be,

19   effectively, the minimum recovery for having flown the

20   option.  And it's not perfect from our perspective, but it's

21   reasonable enough, and we thought that that was a workable

22   solution, so that the option could be run and it's something

23   that was related to what (indiscernible) okay?

24             But -- and this is where we kind of had a little

25   bit of scurrying.  The way that Mr. Azman phrased it was, if

1  there's a transaction, no matter what the transaction is,

2  they get 2 million, not the 750,000.  And we said, well, wait

3  a section now, "transactions" are often defined as a

4  "transaction."  It's a (indiscernible) in the plan of

5  reorganization, even one that's a liquidation is a

6  transaction; and so, therefore, we end up having gotten

7  snookered by agreeing to seven fifty, but it turns out to be

8  2 million, even if nothing productive happened out of the M&A

9  process and the plan toggles to that liquidation.  Wait,

10  wait, wait, that's not the deal.

11          I think it really boils down to this.  And

12  hopefully, this obviates the issue all together.  And I hope

13  that (indiscernible) if not, we'll go back at it.  But if, in

14  fact, the M&A process does not succeed in the form of

15  generating bids that is consummated in a 363 order or a plan,

16  it has not produced a result that is actionable as a sale

17  transaction in one format or another, right?  That's a seven

18  fifty scenario.  Okay?

19          If they -- if there is a transaction -- again, I'm

20  using that circular language.  But if there is something

21  produced through the M&A process that yields value -- and I

22  mean more than the 2 million that we're going to be paying

23  them -- well, of course, they get the 2 million and not the

24  750,000.  They were value-accretive and they should get their

25  minimum bumped to the two-million point.

1          THE COURT:  You mean --

2          MR. STARK:  (Indiscernible)

3          THE COURT:  -- yield value, such as a 363 sale, or

4  --

5          MR. STARK:  A plan --

6          THE COURT:  -- plan that --

7          MR. STARK:  -- that has a sponsor, has a funder,

8  has a buyer, and would toggle under the plan, and there's

9  more than $2 million of incremental value brought to the

10  table because of their efforts, that's an easy scenario two,

11  they get their 2 million.

12          Where we fall into the gap space is where there is

13  some form of outcome that is the product of their efforts,

14  but is a little -- but is somewhere between the zero and the

15  2 million.  We sell some deck chairs on the Titanic, and we

16  made a million out of it, that's not a very good outcome,

17  right?  Why would they get 2 million for the 1 million of

18  work?

19          Now I think the solution -- because I mean, how

20  many angels can we put on the head of a pin today at a bid

21  procedures hearing when their retention application is not

22  even before Your Honor, right?  Is that there's an element of

23  self-help in all of this.

24          Galaxy deserves certainty.  They need to move

25  forward today, knowing that they have a deal with the

1    committee on the economics and I appreciate that.  Okay?

2    We're not going to draft up an engagement letter in a case of

3    this size that's 40 pages long of every float in the parade

4    of horribles (indiscernible) right?

5              But the one thing that we do have here, and it is a

6    saving grace, is the fact that the company has filed a plan,

7    admittedly without discussing it with us first, to keep the

8    calendar to get us out of bankruptcy by year-end.  We're the

9    only impaired accepting class.  They're not going to confirm

10   a plan and cram it down on us.  Okay?  And this case is thin.

11   They don't have the ability to run a plan one, it fails, and

12   then go to plan two, right?

13             So we're going to be talking in the days ahead,

14   Monday (indiscernible)

15             THE COURT:  Monday you're meeting, I recall.

16             MR. STARK:  Yeah.  And we're going to sit and we're

17   going to talk about these things.

18             Obviously, if there is a plan toggle that

19   anticipates selling some chairs off of the Titanic for a

20   million dollars, where we have to pay 2 million, we're not

21   going to be supportive of that plan toggle.

22             So I'm assuming that the self-help regime will be,

23   under that scenario, that that plan is not going to move

24   forward, at least with that toggle, and we can resolve it

25   that way.  And we don't need to hold up the bid procedures

1 and Galaxy can have its surety moving forward.

2 But I'll cede the podium back to Mr. Azman and see

3 if I have stated it in a way that he doesn't agree with.

4 MR. AZMAN:  Your Honor, Darren Azman from McDermott

5 for the debtors.

6 It's a little unusual, right?  Because we're not

7 asking -- I can't ask you to adjudicate a dispute we have.

8 THE COURT:  No.

9 MR. AZMAN:  It's not before you.  And so I think,

10 for purposes of today -- after the hearing, I really need to

11 speak with Galaxy because I think where we are aligned is --

12 and just to repeat Mr. Stark's words, and he'll have to stand

13 up again and correct me if I get it wrong.  But we are a

14 hundred percent aligned on all but one scenario.

15 We are aligned that, if there is a Chapter 11 plan

16 of liquidation and no sale of any kind, whether under 363 or

17 other -- under that plan, then it is $750,000 for the

18 minimum.

19 We are aligned that, if there is a conversion or a

20 dismissal, they earned their seven fifty minimum.

21 We are also aligned where there is a sale, whether

22 under 363, otherwise a plan sponsor arrangement, anything

23 that generates proceeds in excess of 2 million, then they get

24 their minimum two-million-dollar fee.

25 And again, I think where we're just -- we're

1    struggling to come up with all the parade of horribles, and I

2    think that's probably the most difficult thing.  I don't

3    think it's so much of a disagreement, as opposed to

4    frustration and not having a simple solution to address it,

5    about the zero to two area.

6         But there may be scenarios in which they produce a

7    sale at 1.8 million for the whole company, and they did all

8    the work to do that.  I'm not -- I don't think Mr. Stark is

9    standing -- saying today that, definitively, we wouldn't get

10   it.  But he's saying that's an area where he's not sure that

11   makes sense and I understand that and appreciate it.

12        So I think, for purposes of today, we're as aligned

13   as we're going to get.  And I'm going to talk with Galaxy to

14   see if we can come up with something specific and concrete

15   because certainty is what everybody craves, including me.

16   And so we'll -- I don't know if it's going to come in the

17   form or a stipulation or anything like that.  But for

18   purposes of today, I don't think I can ask you to really do

19   anything on this, other than listen to us.

20        THE COURT:  I don't think I can do anything today.

21        And let me also add, I mean, there are other

22   parties who may express interest in the issue.

23        MR. AZMAN:  Absolutely.

24        THE COURT:  So --

25        MR. AZMAN:  And Galaxy is aware of that.

1          So, with that, Your Honor, I think we're okay,

2    unless you want to --

3          THE COURT:  But I think --

4          MR. AZMAN:  -- correct anything.

5          THE COURT:  You know, look, you're very talented

6    lawyers and you have a worthy adversary.  I'm sure you all

7    will reach an agreement on something.

8          MR. AZMAN:  I think so, too, Your Honor.

9          With that, I believe that's everything.

10         (Participants confer)

11         MR. AZMAN:  Just a moment, Your Honor.

12         (Pause in proceedings)

13         MR. AZMAN:  Your Honor, I'd like to revisit the

14   plan and disclosure statement that we filed.

15         One, Mr. Stark and the committee are supportive of

16   having that heard on shortened notice.  I believe that's

17   before Your Honor.  I was hoping we might be able to get a

18   date.

19         THE COURT:  Oh, that's a good point.  You know, I

20   apologize because I was kind of waiting to -- I think to hear

21   back from the committee, and I got tied up on other matters.

22         I will say my calendar is really ugly for the rest

23   of the month.  You filed it Friday, right?

24         MR. AZMAN:  Very late, I think at 11:59 maybe, but

25   yes, Friday, technically.

1          THE COURT:  And I think you were looking for like

2     on the 20th.  Is that -- I'm talking off the top of my head.

3          MR. AZMAN:  We are -- so, as part of this

4     resolution, we're moving some things out.  So what we're

5     looking for, for the conditional approval hearing date, is

6     Monday, October 4th.

7          (Participants confer)

8          MR. AZMAN:  Oh, it says Monday here, but I guess

9     that's Wednesday the 4th.  October 4th is the date.  I just

10    think I got the day --

11         THE COURT:  Well, I'm sorry.  I thought you wanted

12    -- you want a hearing on your solicitation procedures,

13    correct?

14         MR. AZMAN:  Yes.  Yes.

15         THE COURT:  And so you're looking at the 4th?

16         MR. AZMAN:  Yes, October 4th.

17         THE COURT:  Oh, I just gave that day away for a

18    trial.  Could we do the 5th?

19         MR. AZMAN:  I think we'll have to do that because -

20    - are you okay with that?  Does anyone know if it's a

21    holiday?

22         THE COURT:  The 5th is not a holiday, it's a

23    Thursday.

24         MR. AZMAN:  Okay.

25         THE COURT:  The 9th is a federal holiday and the

1   25th is a Jewish holiday.

2           Mr. Cudia, is that okay with you as trustee?

3   Because I know the U.S. Trustee had raised an issue with

4   shortening notice.  But at this juncture, I'm not sure that's

5   shortened.

6           MR. CUDIA:  Yes.  Good afternoon, Your Honor.

7   Joseph Cudia for the United States Trustee.

8           If you have an interim disclosure statement hearing

9   on the 5th of October, I don't believe that's shortened.

10          THE COURT:  Yeah.

11          MR. CUDIA:  So we would be fine with that.

12          THE COURT:  Okay.  Mr. Lugano, I'm going to have to

13  ask you to move another hearing.

14          THE COURT OFFICER:  Okay.

15          THE COURT:  But could we do two o'clock?  Yeah,

16  let's do two o'clock on October 5.

17          MS. KANDESTIN:  Your Honor, would you like us to

18  submit a revised order for the motion to shorten under

19  certification of counsel (indiscernible)

20          THE COURT:  Well, we're talking about -- let me

21  just count days for a minute here.

22          MS. KANDESTIN:  I agree.  I don't think it's

23  actually shortened.

24          THE COURT:  I'm not sure it's shortened any longer.

25          MS. KANDESTIN:  We could just schedule it.

1          THE COURT:  Just schedule it.

2          MS. KANDESTIN:  Okay.  Thank you, Your Honor.

3          THE COURT:  If it's -- if it is shortened, I'll

4   orally approve the shortened notice, given the consent of all

5   the parties.  But it looks to me like it's 22 days out, so we

6   should be okay.

7          You'll get that notice like today?

8          MS. KANDESTIN:  Yes.

9          THE COURT:  Okay.

10         MS. KANDESTIN:  Yes, Your Honor.

11         THE COURT:  Thank you.

12         MR. AZMAN:  I was just going to say thank you, Your

13  Honor.

14         THE COURT:  Oh, sure.

15         MR. AZMAN:  That's all we have for today, unless

16  the committee has anything else.

17         THE COURT:  Okay.  Did any --

18         MR. STARK:  No, Your Honor.

19         THE COURT:  Did anyone else wish to be heard with

20  respect to bid procedures?

21      (No verbal response)

22         THE COURT:  Okay.  I take it that all objections

23  have been resolved, no objector wants to be heard.  If you do

24  -- I know there are people on Zoom -- now is your

25  opportunity.

1          (No verbal response)

2               THE COURT:  Okay.  Hearing none, I'm prepared to

3     enter the revised bid procedures order with a few

4     modifications.

5               I'm satisfied, based on the facts and circumstances

6     presented, including the Chao declaration, which has been

7     admitted into evidence without contradiction, that entry of

8     the order approving and authorizing bidding procedures will

9     facilitate a process that maximizes value of the assets.

10              Also, the time line is revised that has been laid

11     out.  Given the lead-up today and the processes as expected

12     to go forward, it is sufficient and appropriate to implement

13     a sale and marketing process that, again, will be designed to

14     conduct a process for a value-maximizing transaction.

15              So, with respect to modifications to the proposed

16     form of order -- and I'm going to have to compare it to the

17     order that I looked at earlier.  Let me just --

18              MR. AZMAN:  Are you working off of the redline,

19     Your Honor, or --

20              THE COURT:  I am going to work off your redline and

21     I'm going to work off it simultaneously with my other

22     comments, so I want to make sure -- okay.

23              I had asked that -- I had commented in my notes I

24     was going to ask you to change the title, but I see that

25     you've done that.

1          Exhibit -- Paragraph (e) I was going to ask you to

2     delete, which you have done.

3          With respect to the deadlines, the committee is in

4     agreement with the proposed process time deadline.  Does the

5     United States Trustee have any comment?  I assume you do not.

6          MR. CUDIA:  We do not, Your Honor.

7          THE COURT:  Okay.  I have an issue with October

8     13th for a sale hearing, if there is one.  I am not in town

9     that week.  So I believe, when I first looked at this, I was

10    looking at -- would October 18th work?  That's three

11    additional business days.  And I can give you any time on --

12    that you want on the 18th.

13         MR. AZMAN:  Yes.  And I didn't realize that's NCBJ

14    --

15         THE COURT:  Yes.

16         MR. AZMAN:  -- on October 13th.  So I think a

17    number of us will be there, so that's a good idea.

18         THE COURT:  Okay.  And unfortunately, I had other

19    things on the 16th and 17th.

20         So I don't know if there's a preference by the

21    parties, in terms of travel or east/west coast.  But want to

22    do 11 a.m.?

23         MR. AZMAN:  11 is great.

24         THE COURT:  Okay.

25       (Participants confer)

1          MR. STARK:  Your Honor, if I may, please?

2          THE COURT:  Yes.

3          MR. STARK:  That would conflict with another

4   hearing I have in this building.  I --

5          THE COURT:  In this building?

6          MR. STARK:  Yes.  Yes, Your Honor.

7          THE COURT:  Sorry, Mr. Stark.

8          MR. STARK:  (Indiscernible)

9          THE COURT:  I couldn't hear you.

10         MR. STARK:  I am sorry.  So we are supposed to be

11  at another -- before another Delaware Bankruptcy Judge

12  between 10:30 and 12:30 that day.  Could we do the afternoon,

13  if possible?

14         THE COURT:  1:30 or 2?

15         MR. AZMAN:  I'm free the whole day, so whatever the

16  parties --

17         THE COURT:  Whatever --

18         MR. STARK:  Two o'clock, if that would be

19  acceptable to the Court?

20         THE COURT:  Okay.  We will --

21         MR. STARK:  Thank you for your accommodation, Your

22  Honor.

23         THE COURT:  Certainly.  Please schedule it for two

24  o'clock.  Okay.  Thank you.  So that's October 13 -- I mean

25  18, at 2 p.m.

1          Okay.  Bear with me a second.

2          (Pause in proceedings)

3          THE COURT:  With respect to Paragraph 8 in the

4    blackline -- and this is really just a practical comment --

5    it requires notice of an election to cancel the auction

6    within two business days.  Is that practical?  I don't --

7    it's a "shall."  I just don't want to restrict you if ...

8          MR. AZMAN:  Probably not.

9          THE COURT:  I mean, I just want to be realistic.

10          MR. AZMAN:  Why don't we just say --

11          THE COURT:  You'll --

12          MR. AZMAN:  -- if it's okay with Your Honor --

13          THE COURT:  Just --

14          MR. AZMAN:  -- "shall file a notice" and --

15          THE COURT:  As soon as practical.

16          MR. AZMAN:  Sure, yeah.

17          THE COURT:  Because I'm concerned the deadline is

18    going to box you in.

19          MR. AZMAN:  I appreciate that, Your Honor.

20          (Pause in proceedings)

21          THE COURT:  Okay.  I'm sorry.  I'm just looking at

22    Paragraph 10.  I will say that, generally in these

23    situations, where I'm approving a bid protection at a hearing

24    subsequent to a bid protections hearing, that I generally

25    schedule a very short hearing on it.  I don't generally allow

1    it under cert simply because I want to make sure there's an -

2    - a sufficient evidentiary foundation.  But I'm going to wait

3    until I see the declaration in this case.  But if it -- if

4    something is filed, it will -- or required, it will be done

5    promptly.

6              MR. AZMAN:  Understood.

7              THE COURT:  And then Paragraph 14 -- and it might

8    be a different number now.  This had to do with a service

9    issue.  And you had three days and I was going to suggest

10   two, given the truncated process.  But you've expanded the

11   process, so I'm going to -- I can live with it given the new

12   schedule.

13             MR. AZMAN:  Which paragraph are you on, Your Honor?

14             THE COURT:  It's actually 15 now.

15             MR. AZMAN:  Oh, just one moment, so that I'm

16   following along.

17             THE COURT:  It's three business days, entry of the

18   order, to serve things.

19             MS. KANDESTIN:  I'm sorry, Your Honor.

20        (Participants confer)

21             MR. AZMAN:  Three business days.

22             THE COURT:  Yeah.

23             MR. AZMAN:  You're saying --

24             THE COURT:  I was going to suggest two --

25             MR. AZMAN:  Oh, yeah.

1        THE COURT:  -- which is our standard.

2        MR. AZMAN:  Yes.

3        THE COURT:  But --

4        MR. AZMAN:  Thank you, Your Honor.

5        THE COURT:  This is -- I'm going to raise this

6   question to Delaware lawyers.  Paragraph 19 in the blackline,

7   procedures for Complex Chapter 11 cases?  Does that exist or

8   is that a Texas thing.

9        MS. KANDESTIN:  That is a Texas thing, Your Honor.

10       THE COURT:  Okay.  Well, I think we can stick to

11   the local rule.

12       MR. AZMAN:  It's a Southern District of Delaware

13   thing, Your Honor.

14       (Laughter)

15       THE COURT:  Okay.  Maintaining a sense of humor is

16   important.

17       So I think you can just say local rules, the local

18   rules.  Okay.  I just was making sure that I wasn't sitting

19   up here not knowing of a process that we had.

20       And with that, with those modifications, if you

21   submit a clean and a blackline under certification of

22   counsel, we'll get it entered.

23       Is there anything else for today?

24       MS. KANDESTIN:  One more question.  With respect to

25   the hearing on --

1          THE COURT:  I'm sorry.  I can't hear you.

2          MS. KANDESTIN:  I'm sorry.  I'm sorry.

3          With respect to the hearing on the 5th, are we

4    going to -- is that going to be treated as an omnibus hearing

5    or is that a special purpose hearing?  Because we don't yet

6    have an omnibus hearing.

7          THE COURT:  Oh, you don't?  When are your second-

8    days?

9          MS. KANDESTIN:  Next week, the 19th.

10         (Pause in proceedings)

11         THE COURT:  Yeah, you could use it as an omnibus.

12         MS. KANDESTIN:  Okay.

13         THE COURT:  I only have you down for an hour.  So,

14    if that becomes problematic, if you could reach out, that

15    would be helpful.

16         MS. KANDESTIN:  Yes, Your Honor (indiscernible)

17         THE COURT:  Okay?

18         MS. KANDESTIN:  Okay.

19         THE COURT:  All right.  Thank you.

20         MS. KANDESTIN:  Thank you.

21         THE COURT:  Anything else?

22         MR. AZMAN:  No, Your Honor.  Thank you very much.

23         THE COURT:  Okay.  Thank you, all.  I apologize for

24    the delay in starting this afternoon, but I appreciate

25    everybody's time.  Everybody have a good day and we'll see

1   you soon.

2          UNIDENTIFIED:  Thank you, Your Honor.

3          THE COURT:  We stand adjourned.

4       (Proceedings concluded at 4:21 p.m.)

5                          *****

6                       CERTIFICATION

7          I certify that the foregoing is a correct

8   transcript from the electronic sound recording of the

9   proceedings in the above-entitled matter to the best of my

10   knowledge and ability.

11

12

13

14

15   _____     September 15, 2023

16   Coleen Rand, AAERT Cert. No. 341

17   Certified Court Transcriptionist

18   For Reliable

19

20

21

22

23

24

25