IN THE UNITED STATES BANKRUPTCY COURT
FOR THE DISTRICT OF DELAWARE

| | |
|---|---|
| In re: | ) Chapter 11 )  ) Case No. 23-11161 (JKS) |
| Prime Core Technologies Inc., *et al.*,[1] | )  ) (Jointly Administered) |
| Debtors. | )  ) **Related to Docket No. 15** ) |

**JOINDER OF THE OFFICIAL COMMITTEE OF UNSECURED CREDITORS TO DEBTORS' MOTION ENTRY OF AN ORDER (I) AUTHORIZING THE DEBTORS TO FILE A CONSOLIDATED CREDITOR MATRIX AND TOP 50 CREDITORS LIST; (II) AUTHORIZING REDACTION OF CERTAIN PERSONALLY IDENTIFIABLE INFORMATION; (III) AUTHORIZING THE DEBTORS TO SERVE CERTAIN PARTIES BY ELECTRONIC MAIL; (IV) APPROVING CERTAIN NOTICE PROCEDURES; AND (V) GRANTING RELATED RELIEF**

The Official Committee of Unsecured Creditors (the "**Committee**") appointed in the above-captioned Chapter 11 cases of Prime Core Technologies Inc. and its affiliated debtors and debtors in possession (collectively, the "**Debtors**" or "**Prime Core**"), respectfully files this joinder (the "**Joinder**") to the *Debtors' Motion for Entry of an Order (I) Authorizing the Debtors to File a Consolidated Creditor Matrix and Top 50 Creditors List; (II) Authorizing Redaction of Certain Personally Identifiable Information; (III) Authorizing the Debtors to Serve Certain Parties by Electronic Mail; (IV) Approving Certain Notice Procedures; and (V) Granting Related Relief* [Docket No. 15] (the "**Motion**"). In support of this Joinder, the Committee incorporates by

---

[1] The Debtors in these Chapter 11 Cases, along with the last four digits of each Debtor's federal tax identification number are: Prime Core Technologies Inc. (5317); Prime Trust, LLC (6823); Prime IRA LLC (8436); and Prime Digital, LLC (4528). The Debtors' service address is 10845 Griffith Peak Dr., #03-153, Las Vegas, Nevada 89135.

reference the testimony of Jor Law provided at the interim hearing on the Motion on August 25, 2023[2] and further states as follows:

## PRELIMINARY STATEMENT

1. These proceedings exist to ameliorate the harm caused to any of the Debtors' customers, not to expose them to greater harm. To that end, it is absolutely essential that personally identifiable information be sealed to protect creditors of the Debtors. The benefits of such protections are beyond reasonable dispute.

2. Hacking, identity theft, and harassment remain outsized risks in the cryptocurrency space, and disclosure of client names alone (let alone additional personally identifying information) significantly increases the risk of those clients being targeted for theft. Additionally, due to the nature of the Debtors' work with other large crypto trading platforms, the publication of this information could potentially expose personal data of a large number of customers. Although the Committee understands the need for transparency and public disclosure in a Chapter 11 proceeding, public access to court records is not absolute and these circumstances warrant additional protection.

3. But the benefits of sealing also inure to the Debtors' estates. The Debtors are contemplating an expedited sale; their client list is a potentially valuable asset, and it is at least highly coextensive with the creditor list in these cases. If this information becomes publicly available, (a) actual and potential clients will lose even more trust in the Debtors, depleting any form of intrinsic value to such information and (b) competitors may gain access to the information, and potentially interested parties may find the Debtors a less attractive value proposition for a sale or equity investment.

---

[2] *See* Hr'g Tr. Aug. 25, 2023 ("First Day Transcript") at pp. 67-73.

4.    Likewise, it is in the best interests of all parties that the Court authorize electronic service to creditors as it is the most reliable and effective way to provide notice to creditors in the cryptocurrency industry. The Debtors creditor matrix contains over 5.4 million customers creditors and approximately 50,000 non-customer creditors.[3] The cost of serving notice by post to these customers would deplete the estate to the detriment of creditors. Notably, Debtors use email as their primary means of correspondence with customers. Accordingly, customers are accustomed to email correspondence and such service is likely more effective.

5.    Law, equity, and financial common sense demand the protection of client identity information. The Motion should be granted.

## Joinder

### A. The Redaction of Personally Identifying Data is Essential to Protect Creditors.

6.    Cause exists to seal clients' personally identifying information pursuant to section 107(c) of the Bankruptcy Code. Section 107(c) provides that the Court may protect an individual from disclosure of certain information if it finds that "disclosure of such information would create undue risk of identity theft or other unlawful injury to the individual[.]". The information encompassed by this provision includes "[a]ny means of identification (as defined in section 1028(d) of title 18) contained in a paper filed, or to be filed, in a case under this title" and "[o]ther information contained in a paper described in subparagraph (A)." The Bankruptcy Code defines "means of identification" as "any name or number that may be used, along or in conjunction with any other information, to identify a specific individual[.]" 18 U.S.C. 1028(d)(7).

7.    Debtors are in possession of a vast amount of confidential information belonging to customers, including, but not limited to, their names, addresses, and e-mail addresses.

---

[3] *See* First Day Transcript at 73:8-11.

Undoubtedly, this information in the wrong hands can pose significant risks (both in terms of monetary loss and personal safety) to account holders. If customer names are exposed, the Committee expects that creditors would be the subject of identity theft, fraud, harassment, hacking and blackmail. Courts have routinely granted such requests to protect the identity of creditors. *See In re Forever 21, Inc.,* Case No. 19-12122, Hr'g Tr. 60:22–25 (Bankr. D. Del. Dec. 19, 2019) ("[w]e live in a new age in which the theft of personal identification is a real risk, as is injury to persons who, for personal reasons, seek to have their addresses withheld."); *In re Art Van Furniture, LLC*, Case No. 20-10553, Hr'g Tr. 25:13-16 (Bankr. D. Del. Mar. 10, 2020) ("at this point and given the risks associated with having any kind of private information out on the internet, [redacted] has really become routine [and] I think obvious relief.")

8. These concerns are not merely hypothetical – there have unfortunately been severe consequences for account holders in the Celsius bankruptcy whose personal information was released. *See, e.g., Mack DeGeurin, New Tool Shows the Biggest Losers in the Celsius Crypto Meltdown*, Gizmodo, Oct. 10, 2022, available at https://gizmodo.com/crypto-celsius-1849637951 (noting that searchable lists were created presumably from unredacted Celsius filings after the bankruptcy court made public approximately 14,000 pages of Celsius customer information, including their names and accompanying transaction histories).

9. Because digital assets are such an attractive target for online theft, individuals known to possess digital assets face targeted hacking attempts. For example, one bitcoin core developer (presumably well-versed in online security) disclosed he had been the target of a concerted, personalized hacking campaign that resulted in the compromise of all of his bitcoin private keys and the theft of over 200 bitcoins – over $3.6 million worth at the time of the hack.[4]

---

[4] *See, e.g.,* https://cointelegraph.com/news/bitcoin-core-developer-claims-to-have-lost-200-btc-in-hack.

Many if not most of the Debtors' customers, presumably, have significantly less experience securing their systems against a determined attacker than a software developer who has worked in this area and provides security services, and are thus at significantly greater risk if targeted for theft.

10. As a result, the mere disclosure of client names creates an unacceptable risk of theft to customers. Such a result is unnecessary and unfair, particularly in a case where creditors are already faced with financial loss as a result of the Debtors' mismanagement and fraudulent practices. In contrast, because customers of the Debtors all have similar claims against the Debtors, there is no public interest served in making the list of these customers public. But such risk is massively increased if any additional personal information is released.

11. The publication of any personally identifiable information imposes an undue risk and burdens on creditors, that would not be anticipated in an ordinary commercial bankruptcy case:

   a. **Email Addresses**: A person's email address is a 'skeleton key' to their entire online identity. Virtually any account can be accessed, without the password, if an attacker is in control of the targets email account: the attacker can initiate a password change (which, generally, requires only access to the password change email sent to the email address on file). Further, emails within that account will indicate where the client has accounts on other websites that might be worth attempting to hack. As a result, disclosure of a client's email address indicates to an attacker which email account they should target for compromise. Further, an email address can be used to search databases of password leaks to identify potential passwords to use in compromising accounts.

   b. **Phone Numbers**: Because passwords are commonly compromised, the "gold standard" for online security is two-factor authentication: requiring both a password and some additional authenticating detail. Most commonly, online companies rely on text messages (SMS) for the second factor: sending a one-time code to the cell phone number on file, to demonstrate control of that phone number as an additional layer of security. However, online attackers have begun to use so-called "SIM Swap" attacks to gain control of the target's phone number and intercept the SMS containing the

        code, thus bypassing the two-factor authentication.3 As a result, disclosure of client phone numbers discloses to an attacker which phone number they should target.

    c. **Mailing Address**: Because digital asset transfers are irreversible, a target can be physically compelled to transfer their digital assets. Further, if an individual keeps their digital assets in "cold storage" (*i.e.* not vulnerable to online theft), they can nonetheless be physically compelled to transfer them, or the computers containing those keys can be stolen. The Debtors operated internationally, internationally, including in countries where such a risk is significantly higher than the United States.[5]

12. Moreover, it is worth considering that information disclosure is never an isolated event. For instance, on December 22, 2022, data security firm LastPass announced a data breach that compromised client passwords for thousands of email addresses, online bank accounts, and other services. Widely used communications service Slack and software testing and delivery company CircleCI soon followed. *See Dan Goodin, "First LastPass, now Slack and CircleCI. The hacks go on (and will likely worsen)"*, ARS TECHNICA, Jan. 5, 2023, available at https://arstechnica.com/information-technology/2023/01/first-lastpass-now-slack-and-circleci-the-hacks-go-on-and-will-likely-worsen/. More recently, on August 25, 2023, Kroll announced that a hacker accessed sensitive information of creditors related to the FTX, BlockFi Inc. and Voyager bankruptcies. *See Jack Shickler, "FTX, BlockFi, Genesis Customer Data Compromised in Kroll Hack"*, COINDESK Aug. 25, 2023, https://www.coindesk.com/policy/2023/08/25/ftx-blockfis-customer-data-compromised-in-kroll-hack/. Accordingly, any of the Debtors' customers that used these services (or whose data is compromised in any similar manner) would face significantly heightened risk of hacking and theft due to the potential for cross-referencing usernames and passwords with the addresses and financial records the Debtors now seek to protect.

---

[5] *See, e.g.*, An Empirical Study of Wireless Carrier Authentication for SIM Swaps, available at https://www.usenix.org/system/files/soups2020-lee.pdf (discussing how SIM swapping works, vulnerabilities in commonly used systems, and noting that SIM swapping is commonly used to steal cryptocurrencies).

13. With account holders reeling from the past months (including the lost seed phrases), it is critical that the Court alleviate any further damage that may be done with the release of customers' personally identifiable information.

### B. Sealing is Appropriate Under the Circumstances.

14. Likewise, cause exists to seal client information under section 107(b) of the Bankruptcy Code. Section 107(b) provides that "[o]n request of a party in interest, *the bankruptcy court shall* … protect an entity with respect to a trade secret or confidential research, development, or commercial information" (emphasis added). Commercial information is defined as information that would result in "unfair advantage to competitors by providing them information as to the commercial operations of the debtor." *In re Alterra healthcare Corp.*, 353 B.R. 66, 75 (Bankr. D. Del. 2006) (*citing In re Itel Corp.*, 17 B.R. 942, 944 (9th Cir. BAP 1982)).

15. If the Motion is not granted, not only would customers be subject to the risks described herein, but any goodwill remaining with the Debtors would only be further eroded. This would diminish the value of the Debtors brand to any potential purchaser. In *In re FTX Trading Ltd.*, the Court recognized the value of such information: "it goes without saying that a customer list in any bankruptcy case is something that is protected by 107(b) as a trade secret. Companies hold those things very closely and don't want them disclosed." Hr'g Tr. 103:1-5, Case No. 22-11068 (Bankr. D. Del. Jan. 11, 2023); *see also In re Cred Inc.*, Hr'g Tr. at 113:20-114:2, Case No. 20-12836 (Bankr. D. Del. Dec. 18, 2020) (finding that the creditor matrix "has some intrinsic value, and that disclosure of that list could affect the ability of the debtors to market and sell that list as a part of their going toward a plan of reorganization.").

16. Notwithstanding cause for relief, the proposed order accompanying the Motion nonetheless provides various parties full access to the relevant account holder information. The

Debtors shall provide the information to the U.S. Trustee, the SEC, this Committee and, upon further order of the Court, any other party. This adequately balances the need for the public's right to disclosure in this Chapter 11 case against the need to ensure the safety of the Debtors' creditors.

### C. **Notice By Email is Warranted.**

17. The Debtors should be permitted to serve creditors by electronic notice because such notice was their customary business practice, and physical service to Debtors tens of thousands of creditors would be unduly burdensome and deplete the already limited funds available to creditors. While the Bankruptcy Rules default to service at creditors' physical address, the Bankruptcy Rules give this Court flexibility to modify the method of service. *See* Fed. R. Bankr. P. 2002(m); Fed. R. Bankr. P. 9007.

18. The Debtors have millions of customers that require notice. *See* Motion ¶ 26; First Day Transcript at 73:8-11. The cost of service by mail for the commencement of this case alone was estimated to be approximately $10.2 million. *See* First Day Transcript at 73:19-20. Prior to the Petition Date, the Debtors almost exclusively communicated with its customers through email. *See* Motion ¶ 26. These facts raise the concern that not only would physical service bankrupt the estates, but that such notice would be ineffective because, not having previously communicated with customers in substance by mail, the Debtors cannot even confirm that customer mailing addresses are appropriate and up to date for such parties.

19. As the U.S. Trustee conceded at the First Day hearing, electronic service has been permitted in nearly every cryptocurrency case as recognized by this Court at the First Day Hearing. *Id.* at 77:19-23. Creditors in this case have been harmed already; they should be afforded the same cost-saving benefits as others in comparable cases.

20. The Committee reserves all rights to amend/and or supplement this Joinder and to make arguments as may be applicable, including, the right to put forth an evidentiary presentation as consistent with any opportunity provided to the Debtors.

WHEREFORE, this Court should grant the Motion, overrule any objection thereto, and grant related relief.

[*Remainder of page intentionally left blank*]

| | |
|---|---|
| Dated: September 18, 2023 | WOMBLE BOND DICKINSON (US) LLP |
| | |
| | /s/ Donald J. Detweiler |
| | Donald J. Detweiler (DE Bar No. 3087) |
| | Elazar A. Kosman (DE Bar No. 7077) |
| | 1313 North Market Street, Suite 1200 |
| | Wilmington, Delaware 19801 |
| | Telephone: (302) 252-4320 |
| | Facsimile: (302) 252-4330 |
| | Email: don.detweiler@wbd-us.com |
| | Email: elazar.kosman@wbd-us.com |
| | |
| | BROWN RUDNICK LLP |
| | Robert J. Stark (admitted *pro hac vice*) |
| | Bennett S. Silverberg (admitted *pro hac vice*) |
| | Kenneth J. Aulet (admitted *pro hac vice*) |
| | Jennifer M. Schein (admitted *pro hac vice*) |
| | 7 Times Square |
| | New York, New York 10036 |
| | Telephone: (212) 209-4800 |
| | Facsimile: (212) 209-4801 |
| | Email: rstark@brownrudnick.com |
| | Email: bsilverberg@brownrudnick.com |
| | Email: kaulet@brownrudnick.com |
| | Email: jschein@brownrudnick.com |
| | |
| | BROWN RUDNICK LLP |
| | Tristan G. Axelrod (admitted *pro hac vice*) |
| | Matthew A. Sawyer (admitted *pro hac vice*) |
| | One Financial Center |
| | Boston, Massachusetts 02111 |
| | Telephone: (617) 856-8200 |
| | Facsimile: (617) 856-8201 |
| | Email: taxelrod@brownrudnick.com |
| | Email: msawyer@brownrudnick.com |
| | |
| | *Proposed Counsel to the Official Committee of Unsecured Creditors of Prime Core Technologies, Inc., et al.* |