# **Exhibit A**



The New York Times Company

620 8th Avenue
New York, NY 10018
nytimes.com

# PROOF OF PUBLICATION

September 26, 2023

I, Larnyce Tabron, in my capacity as a Principal Clerk of the Publisher of The New York Times, a daily newspaper of general circulation printed and published in the City, County, and State of New York, hereby certify that the advertisement annexed hereto was published in the editions of The New York Times on the following date or dates, to wit on.

9/26/2023, NY & NATL, pg B4

Sworn to me this 26th day of September, 2023

Ellen Herb
___________________________
Notary Public

Ellen Herb
Notary Public, State of New York
No. 01HE6163785
Qualified in New York County
Commission expires April 2, 2027

Larnyce Tabron

**IN THE UNITED STATES BANKRUPTCY COURT**
**FOR THE DISTRICT OF DELAWARE**

| In re: Prime Core Technologies Inc., *et al.*,[1] Debtors. | Chapter 11<br>Case No. 23-11161 (JKS)<br>(Jointly Administered) |
|---|---|

**NOTICE OF BAR DATES FOR FILING PROOFS OF CLAIM**

**PLEASE TAKE NOTICE THAT:**

**TO: ALL PERSONS OR ENTITLES WHO MAY HAVE CLAIMS AGAINST ANY OF THE FOLLOWING DEBTOR ENTITIES: DEBTOR, CASE NO.:** Prime Core Technologies Inc., 23-11161 (JKS); Prime Trust, LLC, 23-11162 (JKS); Prime IRA LLC, 23-11164 (JKS); Prime Digital, LLC, 23-11168 (JKS)

On August 14, 2023 (the "Petition Date"), the above-listed debtor entities (the "Debtors") filed voluntary petitions for relief under chapter 11 of the United States Bankruptcy Code (the "Bankruptcy Code") with the United States Bankruptcy Court for the District of Delaware (the "Court"). On September 19, 2023, the Court entered an order [Docket No. 164] (the "Bar Date Order")[2] establishing the following Bar Dates:

i. **October 22, 2023 at 4:00 p.m. (prevailing Eastern Time)** as the deadline by which each person or entity (including individuals, partnerships, corporations, joint ventures, and trusts, but not including governmental units (as defined in section 101(27) of the Bankruptcy Code, "Governmental Units")) must file a proof of claim (each, a "Proof of Claim") in respect of a prepetition claim (as defined in section 101(5) of the Bankruptcy Code) against the Debtor (the "General Bar Date");

ii. **October 22, 2023 at 4:00 p.m. (prevailing Eastern Time)** as the deadline by which claimants asserting an administrative expense claim arising between August 14, 2023 and September 15, 2023, pursuant to sections 503(b) or 507(a) of the Bankruptcy Code (an "Administrative Expense Claim") must file an Administrative Expense Claim with the Court (the "Administrative Expense Claims Bar Date")."

iii. **February 10, 2024 at 4:00 p.m. (prevailing Eastern Time)** as the deadline by which Governmental Units must file a Proof of Claim in respect of a prepetition claim against the Debtors (the "Governmental Bar Date");

iv. **The later of (i) the General Bar Date or the Governmental Bar Date, as applicable, and (ii) 4:00 p.m. (prevailing Eastern Time) on the date that is 21 days from which the Debtors provide notice of an amendment or supplement to the Schedules** as the deadline by which claimants holding claims affected by such amendment or supplement must file a Proof of Claim with respect to such claim (the "Amended Schedules Bar Date"); and

v. **The later of (i) the General Bar Date or the Governmental Bar Date, as applicable, and (ii) 4:00 p.m. (prevailing Eastern Time) on the date that is 21 days following service of an order authorizing the rejection of an executory contract or unexpired lease** as the deadline by which claimants asserting claims resulting from the Debtors' rejection[3] of an executory contract or unexpired lease must file a Proof of Claim with respect to such claim (the "Rejection Damages Bar Date," and together with the General Bar Date, the Amended Schedules Bar Date, and the Governmental Bar Date, the "Bar Dates").

You may be a creditor of the Debtors.

**If you have questions concerning the filing or processing of Proofs of Claim, you may contact the Stretto, Inc., Debtors' Claims Agent, Stretto, at (888) 533-4753 (toll free in the U.S.) or +1 (303) 536-6996 (International callers), or PrimeCoreInquiries@stretto.com. Neither the staff of the Clerk of the Court (the "Clerk"), the Office of the U.S. Trustee, nor Stretto can provide you with legal advice.**

All Proofs of Claim must (i) be written in the English language; (ii) be denominated in lawful currency of the United States (using the exchange rate, if applicable, as of the Petition Date), or, if based on cryptocurrency, in the type and number of units of such cryptocurrency; (iii) specify by name and case number the Debtors' Chapter 11 Case; (iv) set forth with specificity the legal and factual basis for the alleged claim; (v) include supporting documentation for the claim or an explanation as to why such documentation is not available; and (vi) be signed by the claimant or, if the claimant is not an individual, by an authorized agent of the claimant under penalty of perjury.

Proofs of Claim must be filed (i) electronically through the Claim Agent's website for these Chapter 11 Cases (https://cases.stretto.com/primetrust) by following instructions for filing proofs of claims electronically; (ii) by delivering the original Proof of Claim by regular mail, overnight delivery, courier, or hand delivery to **Prime Core Technologies Inc., *et al.*, Claims Processing Center, c/o Stretto, Inc., 410 Exchange, Suite 100, Irvine, CA 92602**.

A Proof of Claim shall be deemed timely filed only if it **is actually received** by the Claims Agent as set forth above, in each case, on or before the applicable Bar Date. Proofs of Claim **will not** be accepted if submitted by facsimile, telecopy, or electronic mail transmission. Do **not** file your Proof of Claim Form (Official Bankruptcy Form 410) with the Clerk.

**Absent further order of the Court, any person or entity that is required to file a Proof of Claim Form in the form and manner specified in the Bar Date Order and that fails to do so on or before the applicable Bar Date: (i) shall be forever barred, estopped, and enjoined from asserting such claim against the Debtors, their estates, or the property of the estates; (ii) shall not, with respect to such claim, be treated as a creditor of the Debtors for the purpose of voting upon any plan in these proceedings; and (iii) shall not receive or be entitled to receive any payment or distribution of property from the Debtors or their successors or assigns with respect to such claim.**

**Questions concerning this Notice should be directed to Stretto at (888) 533-4753 (toll free in the U.S.) or +1 (303) 536-6996 (International callers), or PrimeCoreInquiries@stretto.com. Please note that Stretto's staff is not permitted to give legal advice.**

**A holder of a possible claim against the Debtors should consult an attorney if such holder has any questions regarding this Notice, including whether the holder should file a Proof of Claim.**

Dated: September 22, 2023 **BY ORDER OF THE COURT**
Wilmington, Delaware

**MCDERMOTT WILL & EMERY LLP,** Maris J. Kandestin (No. 5294), 1000 N. West Street, Suite 1400, Wilmington, Delaware 19801, Telephone: (302) 485-3900, Facsimile: (302) 351-8711, Email: mkandestin@mwe.com -and- Darren Azman, Joseph B. Evans, Greer Griffith, One Vanderbilt Avenue, New York, New York 10017-3852, Telephone: (212) 547-5400, Facsimile: (646) 547-5444, Email: dazman@mwe.com, jbevans@mwe.com, ggriffith@mwe.com -and- Gregg Steinman, 333 SE 2nd Avenue, Suite 4500, Miami, Florida 33131, Telephone: (305) 358-3500, Facsimile: (305) 347-6500, Email: gsteinman@mwe.com, *Proposed Counsel to the Debtors and Debtors in Possession*

[1] The debtors in these chapter 11 cases, along with the last four digits of each debtor's federal tax identification number are: Prime Core Technologies Inc. (5317); Prime Trust, LLC (6823); Prime IRA LLC (8436); and Prime Digital, LLC (4528). The Debtors' service address is 10845 Griffith Peak Dr., #03-153, Las Vegas, NV 89135.

[2] Capitalized terms not otherwise defined herein shall have the meanings ascribed to such terms in the Bar Date Order.

[3] For the avoidance of doubt, a party to an executory contract or unexpired lease who asserts a claim on account of unpaid amounts accrued and outstanding as of the Petition Date pursuant to such executory contract or unexpired lease (other than a rejection damages claim) must file a Proof of Claim for such amounts on or before the General Bar Date, the Governmental Bar Date, or the Amended Schedules Bar Date, as applicable, unless an exception identified in this Notice applies.

# Switching Search Engines Isn't as Easy as Google Claims

FROM FIRST BUSINESS PAGE

and most people would probably give up before completing the change.

"God help me, I'm dead," Ted Selker, a product design veteran who worked at IBM and Xerox PARC, said after reading the steps to change the search engine on an iPhone.

Harry Brignull, a user-experience consultant in Britain, concluded about Google search: "Most people will just stick with it."

I had similar takeaways. Here's what the design experts and I found after trying to break up with Google search.

### On an iPhone

Google said iPhone owners could switch to a different search engine in four taps by opening the Settings app, tapping Safari, tapping Search Engine and then selecting a search engine.

In reality, it's more complicated.

Once the Settings app is open, Safari doesn't immediately appear on the screen. It's buried under 36 other menu items, so the user has to swipe upward at least twice to find the Safari menu. In reality, it takes six taps.

But even four steps would probably be too much for many of us, Mr. Selker said. It might have been simple 15 years ago, when most web browsing was done on stationary computers, but in the smartphone era, someone looking for that setting could be interrupted while on the go — to hop on a bus, for instance.

"You cannot expect people to have multi-stepped memory," he said.

### On a Mac

With just two clicks, Google said, Mac users can switch the default Safari browser to a different search engine — by first clicking on the magnifying glass icon and then selecting a different search engine, like Yahoo, Bing or DuckDuckGo.

That's much simpler than on an iPhone. But not everyone knows that the magnifying glass icon is a button — it allows people to enter a query in the search bar.



JASON HENRY FOR THE NEW YORK TIMES

A presentation on Google Search in Mountain View, Calif., in May. The Justice Department has sued the internet search behemoth on antitrust grounds.

More problematic is that switching search engines can be confusing, because the steps are inconsistent between Safari on an iPhone and Safari on a Mac, said Tony Hu, a director at the Massachusetts Institute of Technology who oversees an engineering leadership program.

"Overall, the average person would probably struggle with this," he said.

Mr. Selker said a better design would have been to make changing the search engine more "in your face," like a prompt asking users to choose a search engine when opening the browser.

"It has to make you aware it's there until you've dismissed it," he said.

### On Android

On an Android phone, Google said, it takes one long press on the search bar to prompt the Remove button to appear. Users can then tap on it to remove the Google search bar widget from the home screen.

This example is especially flawed. First, Google's steps to remove the search bar widget work on some Samsung phones, but they do not work across all Android devices. On Google's Pixel phones, for example, when a user long presses on the search bar, no Remove option appears.

Most important, removing the search widget deletes a shortcut to the Google search bar on the home screen, but it does not change the search engine in an Android web browser. Changing to a different search engine requires a different set of steps. Similar to the path on iPhones, it's a four-step process that involves opening the browser and changing its settings.

### The Default Option

The overarching lesson from the government's antitrust trial against Google is that when companies make arrangements to become a default option, they are aware you will probably stick with the status quo because switching to an alternative requires awareness and effort, said Mr. Brignull, the author of "Deceptive Patterns: Exposing the Tricks Tech Companies Use to Control You."

Google said in a statement that it was easy for people to change their default search engine on Android devices and Apple's Safari. The company added that on Windows computers, which require a long process to switch from Bing as the default search engine in Microsoft's Edge browser, the overwhelming majority of people chose Google as their search engine.

With all of that in mind, and the instructions now in front of you, you can try other search engines. If it turns out that you prefer Google anyway, at least it will be your decision — not Google's.

# Air Taxis Have Landed, Vertically and Quietly. First Stop: The Air Force.

By NIRAJ CHOKSHI

The Air Force said on Monday that it had received its first electric passenger aircraft capable of taking off and landing vertically, a milestone for the companies that hope to one day sell thousands of such vehicles to serve as air taxis.

Joby Aviation, an air taxi start-up, delivered the aircraft to Edwards Air Force Base in Southern California, where the first supersonic flight took place. Air taxis are typically powered by batteries and designed to lift off and land like helicopters, but they include wings to fly like airplanes.

Joby, which is based in Santa Cruz, Calif., said that its electric aircraft is substantially quieter than helicopters or planes. Each can carry one pilot and four passengers and travel as fast as 200 miles per hour and as far as 100 miles, according to the company.

The delivery is the first under an Air Force contract that Joby said was valued at up to $131 million and gives the government the option to receive up to nine aircraft. The Air Force and Joby will operate the vehicle, but Joby will still own the aircraft and receive both fixed and variable payments for hours flown. NASA, which has a facility at the base, will also conduct research on the vehicle.

The Air Force has signed similar contracts with other air taxi companies under a program called Agility Prime, part of a broader effort to promote innovation. Agility Prime's mission is to support development of air taxis and similar technology, giving the Air Force a head start in exploring how it might use such aircraft while also providing financial and testing support to the air taxi companies.




DAVID PAUL MORRIS/BLOOMBERG

Joby Aviation's electric aircraft can travel as fast as 200 miles per hour and as far as 100 miles, carrying five people.

"It is incredibly valuable for us to be getting to do early operations and to build the operational muscle," Joby's chief executive, JoeBen Bevirt, said.

The collaboration will help Joby in several ways, including in learning how best to train pilots and maintain and charge aircraft in real-world situations.

Joby and other air taxi companies, including Archer Aviation and Beta Technologies, are separately rushing to get the Federal Aviation Administration to certify their aircraft for commercial flight. All three companies hope to begin commercial service as soon as 2025. The F.A.A. has said it is preparing to support robust air taxi operations by 2028.

But because the agency does not govern aircraft used by the military, air taxi companies have eagerly pursued defense contracts while they work toward F.A.A. approval.

At Edwards Air Force Base, Joby's aircraft will be tested as a means to transport cargo and people. The vehicles could also be used to monitor the expansive base or tested to conduct medical evacuations, for example.

**They're like winged helicopters that are powered by batteries.**

All told, the Air Force has more than 100 performance measures it wants to evaluate, said Beau Griffith, the deputy lead of Agility Prime.

"Bearing out the promise of these vehicles is the program's goal," he said.

NASA will work closely with the military and Joby in testing the aircraft, with the aim of using its research to guide air taxi development and support the F.A.A.

Starting next year, NASA pilots and researchers will explore how Joby's vehicle would operate in a typical city environment, examining flight procedures and how it could interact with air traffic control and local infrastructure. Joby's aircraft is expected to remain at the base for at least a year, and the company has plans to deliver another in 2024.

Other leading air taxi companies have similar partnerships.

Archer, a company based in Santa Clara, Calif., announced this summer that it had signed Air Force contracts valued at up to $142 million, which included delivery of up to six aircraft similar to Joby's.

Beta, in Burlington, Vt., is the first electric air taxi manufacturer to receive an airworthiness certificate for manned flight from the military, with pilots from both the Air Force and the Army having flown its aircraft. That company is also installing the first electric aircraft charging station at a military installation.

In addition to support from the military, the air taxi industry has received substantial support from other aviation and automotive companies.

Joby's investors include Delta Air Lines and Toyota, which is Joby's largest external shareholder and is helping the air taxi manufacturer as it builds a factory in Ohio.

Archer recently received investments from Boeing, United Airlines and Stellantis, the parent company of Chrysler, Jeep and Ram, which is helping Archer to establish a factory in Georgia.

And Beta is collaborating with UPS to test deliveries in the United Arab Emirates and has raised funds from Fidelity and other investors.

# *Amazon Invests Up to $4 Billion In A.I. Start-Up*

By ADAM SATARIANO and CADE METZ

Amazon said on Monday that it would invest up to $4 billion in the artificial intelligence start-up Anthropic, as the world's biggest technology companies race to benefit from A.I. breakthroughs that could reshape parts of their businesses — and the economy as a whole.

Amazon is trying to keep pace with rivals such as Microsoft and Google, which have each poured billions of dollars into A.I. research. Anthropic, seen as one of the most promising of a batch of A.I. start-ups, will use Amazon's data centers, cloud-computing platform and A.I. chips.

The deal underscores the frenzy to be at the forefront of A.I., a technology that has seized the public's imagination and has the power to potentially transform the way people work and live. Tech giants have been teaming with up-and-coming A.I. start-ups by providing them with computing power and cash to help them develop new models and applications. Google has also invested in Anthropic, while Microsoft has poured $13 billion into OpenAI, the maker of ChatGPT.

Amazon's investment of up to $4 billion would give it a minority stake in Anthropic, it said.

Like OpenAI, Anthropic is a developer of so-called generative A.I., the technology capable of learning from vast amounts of data to create humanlike texts and images. These tools are seen as possessing the potential to automate many tasks, reshaping aspects of the global economy.

***A frenzy to be at the forefront of a rapidly evolving technology.***

Anthropic, which operates a chatbot called Claude, has sought to position itself as one of the industry's more responsible actors. Its executives have warned that A.I. could cause tremendous damage to society if not developed carefully. The company's cofounder Jack Clark attended a recent meeting on Capitol Hill to discuss A.I. policy, including the risks and potential of the rapidly evolving technology.

Working with Anthropic also helps Amazon, which is competing against Microsoft and Google in cloud computing and has been trying to establish itself more deeply in artificial intelligence. Amazon is also battling Nvidia as a provider of the chips needed to run complex A.I. systems.

The huge amounts of money and computing power needed to run A.I. models have made it nearly impossible for smaller companies to remain independent from established tech giants with deep pockets.

Anthropic's partnership with Amazon is also another example of a new kind of circular business arrangement that can be mutually beneficial to both cloud computing companies and A.I. start-ups.

Anthropic will pump much of the money it's raising from Amazon back into the company as it pays for time on the massive clusters of computer servers operated by the Seattle tech giant. So while Amazon is making a strategic investment in a start-up, it is also feeding its own cloud-computing business, which now accounts for more than 70 percent of its profits.

Microsoft first created this kind of deal with OpenAI in 2019. In recent months, other cloud computing companies, including Google and Oracle, have made similar arrangements with A.I. start-ups.

While Microsoft and Google have also launched their own online chatbots in the months since OpenAI unveiled ChatGPT, Amazon has not followed suit. Instead, it has worked to provide various tools for companies and independent developers looking to build their own chatbots and other A.I. technologies.

In addition to increasing its cloud computing revenues, Amazon's deal with Anthropic could raise its profile in the field and fuel the development of new A.I. technologies inside the tech giant.

"We can help improve many customer experiences, short- and long-term, through our deeper collaboration," Andy Jassy, Amazon's chief executive, said in a statement.




MARISSA LESHNOV FOR THE NEW YORK TIMES

Anthropic is seen as one of the most promising of a batch of A.I. start-ups.

**IN THE UNITED STATES BANKRUPTCY COURT FOR THE DISTRICT OF DELAWARE**

| In re: Prime Core Technologies Inc., *et al.*,[1] Debtors. | Chapter 11 Case No. 23-11161 (JKS) (Jointly Administered) |
|---|---|

**NOTICE OF BAR DATES FOR FILING PROOFS OF CLAIM**

**PLEASE TAKE NOTICE THAT:**

**TO: ALL PERSONS OR ENTITLES WHO MAY HAVE CLAIMS AGAINST ANY OF THE FOLLOWING DEBTOR ENTITIES: DEBTOR, CASE NO.:** Prime Core Technologies Inc., 23-11161 (JKS); Prime Trust, LLC, 23-11162 (JKS); Prime IRA LLC, 23-11164 (JKS); Prime Digital, LLC, 23-11168 (JKS)

On August 14, 2023 (the "Petition Date"), the above-listed debtor entities (the "Debtors") filed voluntary petitions for relief under chapter 11 of the United States Bankruptcy Code (the "Bankruptcy Code") with the United States Bankruptcy Court for the District of Delaware (the "Court"). On September 19, 2023, the Court entered an order [Docket No. 164] (the "Bar Date Order")[2] establishing the following Bar Dates:

i. **October 22, 2023 at 4:00 p.m. (prevailing Eastern Time)** as the deadline by which each person or entity (including individuals, partnerships, corporations, joint ventures, and trusts, but not including governmental units (as defined in section 101(27) of the Bankruptcy Code, "Governmental Units")) must file a proof of claim (each, a "Proof of Claim") in respect of a prepetition claim (as defined in section 101(5) of the Bankruptcy Code) against the Debtor (the "General Bar Date");

ii. **October 22, 2023 at 4:00 p.m. (prevailing Eastern Time)** as the deadline by which claimants asserting an administrative expense claim arising between August 14, 2023 and September 15, 2023, pursuant to sections 503(b) or 507(a) of the Bankruptcy Code (an "Administrative Expense Claim") must file an Administrative Expense Claim with the Court (the "Administrative Expense Claims Bar Date")."

iii. **February 10, 2024 at 4:00 p.m. (prevailing Eastern Time)** as the deadline by which Governmental Units must file a Proof of Claim in respect of a prepetition claim against the Debtors (the "Governmental Bar Date");

iv. **The later of (i) the General Bar Date or the Governmental Bar Date, as applicable, and (ii) 4:00 p.m. (prevailing Eastern Time) on the date that is 21 days from which the Debtors provide notice of an amendment or supplement to the Schedules** as the deadline by which claimants holding claims affected by such amendment or supplement must file a Proof of Claim with respect to such claim (the "Amended Schedules Bar Date"); and

v. **The later of (i) the General Bar Date or the Governmental Bar Date, as applicable, and (ii) 4:00 p.m. (prevailing Eastern Time) on the date that is 21 days following service of an order authorizing the rejection of an executory contract or unexpired lease** as the deadline by which claimants asserting claims resulting from the Debtors' rejection[3] of an executory contract or unexpired lease must file a Proof of Claim with respect to such claim (the "Rejection Damages Bar Date," and together with the General Bar Date, the Amended Schedules Bar Date, and the Governmental Bar Date, the "Bar Dates").

You may be a creditor of the Debtors.

**If you have questions concerning the filing or processing of Proofs of Claim, you may contact the Stretto, Inc., Debtors' Claims Agent, Stretto, at (888) 533-4753 (toll free in the U.S.) or +1 (303) 536-6996 (International callers), or PrimeCoreInquiries@stretto.com. Neither the staff of the Clerk of the Court (the "Clerk"), the Office of the U.S. Trustee, nor Stretto can provide you with legal advice.**

All Proofs of Claim must (i) be written in the English language; (ii) be denominated in lawful currency of the United States (using the exchange rate, if applicable, as of the Petition Date), or, if based on cryptocurrency, in the type and number of units of such cryptocurrency; (iii) specify by name and case number the Debtors' Chapter 11 Case; (iv) set forth with specificity the legal and factual basis for the alleged claim; (v) include supporting documentation for the claim or an explanation as to why such documentation is not available; and (vi) be signed by the claimant or, if the claimant is not an individual, by an authorized agent of the claimant under penalty of perjury.

Proofs of Claim must be filed (i) electronically through the Claim Agent's website for these Chapter 11 Cases (https://cases.stretto.com/primetrust) by following instructions for filing proofs of claims electronically; (ii) by delivering the original Proof of Claim by regular mail, overnight delivery, courier, or hand delivery to **Prime Core Technologies Inc., *et al.*, Claims Processing Center, c/o Stretto, Inc., 410 Exchange, Suite 100, Irvine, CA 92602**.

A Proof of Claim shall be deemed timely filed only if it **is actually received** by the Claims Agent as set forth above, in each case, on or before the applicable Bar Date. Proofs of Claim **will not** be accepted if submitted by facsimile, telecopy, or electronic mail transmission. Do **not** file your Proof of Claim Form (Official Bankruptcy Form 410) with the Clerk.

**Absent further order of the Court, any person or entity that is required to file a Proof of Claim Form in the form and manner specified in the Bar Date Order and that fails to do so on or before the applicable Bar Date: (i) shall be forever barred, estopped, and enjoined from asserting such claim against the Debtors, their estates, or the property of the estates; (ii) shall not, with respect to such claim, be treated as a creditor of the Debtors for the purpose of voting upon any plan in these proceedings; and (iii) shall not receive or be entitled to receive any payment or distribution of property from the Debtors or their successors or assigns with respect to such claim.**

**Questions concerning this Notice should be directed to Stretto at (888) 533-4753 (toll free in the U.S.) or +1 (303) 536-6996 (International callers), or PrimeCoreInquiries@stretto.com. Please note that Stretto's staff is not permitted to give legal advice.**

**A holder of a possible claim against the Debtors should consult an attorney if such holder has any questions regarding this Notice, including whether the holder should file a Proof of Claim.**

Dated: September 22, 2023
Wilmington, Delaware

**BY ORDER OF THE COURT**

**MCDERMOTT WILL & EMERY LLP,** Maris J. Kandestin (No. 5294), 1000 N. West Street, Suite 1400, Wilmington, Delaware 19801, Telephone: (302) 485-3900, Facsimile: (302) 351-8711, Email: mkandestin@mwe.com -and- Darren Azman, Joseph B. Evans, Greer Griffith, One Vanderbilt Avenue, New York, New York 10017-3852, Telephone: (212) 547-5400, Facsimile: (646) 547-5444, Email: dazman@mwe.com, jbevans@mwe.com, ggriffith@mwe.com -and- Gregg Steinman, 333 SE 2nd Avenue, Suite 4500, Miami, Florida 33131, Telephone: (305) 358-3500, Facsimile: (305) 347-6500, Email: gsteinman@mwe.com, *Proposed Counsel to the Debtors and Debtors in Possession*

[1] The debtors in these chapter 11 cases, along with the last four digits of each debtor's federal tax identification number are: Prime Core Technologies Inc. (5317); Prime Trust, LLC (6823); Prime IRA LLC (8436); and Prime Digital, LLC (4528). The Debtors' service address is 10845 Griffith Peak Dr., #03-153, Las Vegas, NV 89135.

[2] Capitalized terms not otherwise defined herein shall have the meanings ascribed to such terms in the Bar Date Order.

[3] For the avoidance of doubt, a party to an executory contract or unexpired lease who asserts a claim on account of unpaid amounts accrued and outstanding as of the Petition Date pursuant to such executory contract or unexpired lease (other than a rejection damages claim) must file a Proof of Claim for such amounts on or before the General Bar Date, the Governmental Bar Date, or the Amended Schedules Bar Date, as applicable, unless an exception identified in this Notice applies.

**PUBLIC NOTICE**

New York State Homes and Community Renewal is making funding available for a limited time to provide rental assistance to properties serving low-income tenants through its Rural Rental Assistance Program (RRAP). A Notice of Funding Availability (NOFA) will be issued on or around September 12, 2023. In order to apply, you must be the owner of a multi-family rental property that is currently financed with a mortgage from the United States Department of Agriculture (USDA) Rural Housing Services 515 program and have a current New York State RRAP contract. For more information, please see the "Fall 2023 Section 8 Project Based Vouchers and Rural Rental Assistance Program NOFA" link at https://hcr.ny.gov/funding-opportunities. Proposals will only be accepted until November 3, 2023 at 5:00PM, or until available funding is fully obligated, and will be evaluated on a first-come, first serve basis. For more information, eligible proposers should reach out to the technical assistance contacts listed in the NOFA.