# IN THE UNITED STATES BANKRUPTCY COURT
# FOR THE DISTRICT OF DELAWARE

| | |
|---|---|
| In re:<br><br>Prime Core Technologies Inc., *et al.*,[1]<br><br>                          Debtors. | Chapter 11<br><br>Case No. 23-11161 (JKS)<br><br>(Jointly Administered)<br><br>**Re. 92, 93 and 94** |

### OBJECTION OF TIKI LABS, INC. DBA AUDUIS INC. TO DEBTORS' DISCLOSURE STATEMENT PURSUANT TO SECTION 1125 OF THE BANKRUPTCY CODE WITH RESPECT TO THE JOINT CHAPTER 11 PLAN OF REORGANIZATION FOR PRIME CORE TECHNOLOGIES INC. AND ITS AFFILIATED DEBTORS

Tiki Labs, Inc. dba Audius Inc. ("Tiki Labs"), by and through its undersigned attorneys, submits this objection (the "Objection") with respect to the *Motion for Entry of an Order (I) Approving the Disclosure Statement on an Interim Basis for Solicitation Purposes Only; (II) Establishing Procedures for Solicitation and Tabulation of Votes to Accept or Reject the Plan; (III) Approving the Form of Ballot and Solicitation Packages; (IV) Establishing the Voting Record Date; (V) Scheduling a Combined Hearing for Final Approval of the Adequacy of Information in the Disclosure Statement and Confirmation of the Plan; and (VI) Granting Related Relief* [D.I. 94] (the "Motion") and the *Joint Chapter 11 Plan of Reorganization for Prime Core Technologies Inc. and Its Affiliated Debtors* [D.I. 92] (the "Plan") filed by the above-captioned debtors (the "Debtors"). In support of this Objection, Tiki Labs respectfully states as follows:

### PRELIMINARY STATEMENT

1.      To meet the standard under Bankruptcy Code section 1125, the *Debtors' Disclosure Statement Pursuant to Section 1125 of the Bankruptcy Code with Respect to the Joint Chapter 11*

---

[1] The debtors in these chapter 11 cases, along with the last four digits of each debtor's federal tax identification number are: Prime Core Technologies Inc. (5317); Prime Trust, LLC (6823); Prime IRA LLC (8436); and Prime Digital, LLC (4528). Prime Trust, LLC's service address is 10845 Griffith Peak Dr., #03-153, Las Vegas, NV 89135.

1

*Plan of Reorganization for Prime Core Technologies Inc. and Its Affiliated Debtors* [D.I. 93] (the "Disclosure Statement") of Prime Trust, LLC (the "Debtor" or "Prime Trust") must provide adequate information to allow those eligible to vote on the Plan to make an informed decision on whether the Plan meets their best interests.

2. Prime Trust's Disclosure Statement does not meet this standard. It fails to meaningfully describe its custodial business, which is a central component of Prime Trust's operations, and which represents much of its value as a going concern. Nor does the Disclosure Statement explain whether there are disputes regarding the ownership of custodied assets, how such disputes will be resolved, and the potential impact of such disputes on confirmation of the Plan.

3. Accordingly, Tiki Labs requests that the Court deny the Motion seeking approval of the Disclosure Statement or, in the alternative, condition approval of the Disclosure Statement and Plan on the inclusion of express language therein providing adequate information regarding the ownership of custodied assets held by Prime Trust on behalf of Tiki Labs and other similarly situated customers, how and when any disputes regarding such ownership will be resolved, and the potential impact of such disputes on the confirmability of the Plan.

**BACKGROUND**

4. Tiki Labs is a Delaware corporation founded to advance the development and success of Audius Music and the Audius Protocol, an open source, decentralized content streaming and sharing service.

5. The Audius ecosystem provides a blockchain-based alternative to existing streaming platforms to help artists publish and monetize their work and distribute it directly to fans. Platform participants earn $AUDIO tokens from the network through a variety of activities and services, from artists uploading content to service providers participating in the operation and governance of the platform.

6. On or around October 2020, Tiki Labs entered into a custodial relationship with Prime Trust, LLC. Tiki Labs holds its $AUDIO tokens (the "Tokens") in a custodial account with Prime Trust.

7. As of the Petition Date, the Tokens remain in the Debtor's custody and Tiki Labs is unable to access or otherwise transfer the Tokens from its Prime Trust Custody Account, contrary to the terms of its agreement with Prime Trust.

8. The custodial relationship between Tiki Labs and the Debtor is governed by an August 15, 2022, Prime Trust Order Form (the "Order Form"), the Prime Trust Master Services Agreement (the "MSA"), and a Service Schedule for Prime Trust Custodial Services (the "Service Schedule," and together with the Order Form and the MSA, the "Agreement"). The MSA and the Service Schedule are incorporated into the Order Form by reference.

9. The Service Schedule establishes that the Tokens are held in a "Customer Custody Account for and in the name of [Tiki Labs]," that Prime Trust is a custodian of all property distributed in the account, that ownership of the property rests with Tiki Labs, that the property will not be reflected on Prime Trust's balance sheet as assets of Prime Trust, that Tiki Labs' ownership of the Tokens is segregated on Prime Trust's books and records, and that, while Prime Trust may for convenience hold bare legal title to the property, it has no equitable interest in the property.

10. On September 8, 2023, the Debtors filed their *Joint Chapter 11 Plan of Reorganization for Prime Core Technologies Inc. and Its Affiliated Debtors* [D.I. 92] (the "Plan") and the accompanying *Disclosure Statement Pursuant to Section 1125 of the Bankruptcy Code with Respect to the Joint Chapter 11 Plan of Reorganization for Prime Core Technologies Inc. and Its Affiliated Debtors* [D.I. 93] (the "Disclosure Statement").

11. Prime Trust, LLC, a Nevada corporation, began "as a trust and custodial services company with respect to fiat currency and other more traditional assets[,]" later refocusing to

"providing custodial services for cryptocurrency and other digital assets." Disclosure Statement [D.I. 93] at 10, 15. Prime Trust "was a registered money service business with FinCEN (an "MSB") and held a Nevada trust charter. *Id*. at 10.

12. In describing the "Custody Services" provided by the Debtors, the Disclosure Statement provides only a brief description of one type of agreement that governs "many of its customers . . . ." *Id*. at 11. Under the agreement described, the Debtor "will hold customer digital and fiat currency in commingled, omnibus-style accounts or wallets, and that once a contribution has been made and settled on the Company's ledger, the assets are fungible." *Id*. The Disclosure Statement goes on to describe how Prime Trust may use customers' fiat currency, including that it may transfer or use assets under the terms of the agreement governing fiat services, "with all attendant rights of ownership . . . . *Id*.

13. This description does not apply to the Agreement between Prime Trust and Tiki Labs. Tiki Labs never accepted fiat services from Prime Trust and is not subject to the terms governing those services.

14. Nowhere does the Disclosure Statement describe the type of custodial relationship it entered with Tiki Labs, or how the Debtor views ownership of custodied assets like the Tokens, which are listed in the Debtors' schedules even though assets held in trust are not estate property.

### **OBJECTION**

**A.  A disclosure statement must include "adequate information" to allow the interest holders to make an informed vote on the plan.**

15. Under the Bankruptcy Code, a debtor must provide a disclosure statement that contains "adequate information" regarding a proposed plan for the holders of impaired claims and interests to make an informed vote on that plan. 11 U.S.C. § 1125(b). The Bankruptcy Code defines "adequate information" as "information of a kind, and in sufficient detail, as far as is reasonably practicable in light of the nature and history of the debtor and the condition of the debtor's books

4

and records, . . . that would enable . . . a hypothetical investor of the relevant class to make an informed judgment about the plan . . . ." *Id.*

16.  A debtor's "express obligation of candid disclosure" is a "critical step" in a chapter 11 reorganization. *Oneida Motor Freight. Inc. v. United Jersey Bank*, 848 F.2d 414, 417 (3d Cir. 1988). Given "the reliance placed upon the disclosure statement by the creditors and the court," the Third Circuit has stated that it "cannot overemphasize the debtor's obligation to provide sufficient data to satisfy the Code standard of 'adequate information.'" *Id.*

17.  The disclosure statement's general purpose "is to provide 'adequate information' to enable 'impaired' classes of creditors and interest holders to make an informed judgment about the proposed plan and determine whether to vote in favor of or against that plan." *In re Phoenix Petroleum Co.*, 278 B.R. 385, 393 (Bankr. E.D. Pa. 2001) (citing, *inter alia*, *Century Glove, Inc. v. First American Bank of New York*, 860 F.2d 94, 100 (3d Cir. 1988)). Accordingly, the disclosure statement should include "all those factors presently known to the plan proponent that bear upon the success or failure of the proposals contained in the plan." *In re Beltrami Enters., Inc.*, 191 B.R. 303, 304 (Bankr. M.D. Pa. 1995).

18.  The courts have developed "[r]elevant factors for evaluating the adequacy of a disclosure statement, which may include, but are not limited to: the events that led to the filing of the bankruptcy petition; a complete description of the available assets and their value; the scheduled claims; data and projections relevant to the creditors' decision to accept or reject the Chapter 11 plan; the anticipated future of the company; the present condition of the debtor while in Chapter 11; the future management of the debtor; the Chapter 11 plan or a summary thereof; the estimated administrative expenses, including attorneys' and accountants' fees; information relevant to the risks posed to creditors under the plan; the existence, likelihood, and possible success of litigation likely to arise outside the bankruptcy; and the relationship of the debtor with

affiliates. *See In re Metrocraft Publ'g Servs., Inc.*, 39 B.R. 567, 568 (Bankr. N. D. Ga. 1984) (collecting cases).

19. Whether a disclosure statement provides "adequate information will be determined by the facts and circumstances of each case." *Oneida Motor Freight*, 848 F.2d at 417.

### B.  The Debtors' Disclosure Statement is inadequate.

20. The Disclosure Statement falls far short of providing adequate information to Tiki Labs and other Prime Trust customers with custodial accounts.

21. To meet the requirements under the Bankruptcy Code, the Disclosure Statement should include everything a hypothetical investor would need to know to make an informed decision about whether to vote in favor of the Plan. It should disclose how much the claims are, what is going to be paid, and how the different classes with claims and interests will be treated. The Debtor's Disclosure Statement provides none of that information.

22. The Debtor provides no disclosure of the adequacy of funds to pay claims. Accordingly, it is unclear whether the Plan is—or if it ever can—be feasible.

23. Further, there is no discussion of Prime Trust's custodial business. This is a core, if not the central, element of Prime Trust's business, as its very name implies. The Disclosure Statement does not provide any description of the custodial business. Nor does it disclose how many customers this aspect of its business has.

24. Crucially, the Disclosure Statement does not describe the agreements, like the Agreement Prime Trust entered with Tiki Labs, that govern its relationships with these customers. Instead, it misleadingly suggests that the only relationships worth mentioning are those that provide Prime Trust an ownership interest in the assets in its customers' accounts. That discussion ignores the fact that Tiki Labs, and presumably numerous customers like it, hold all equitable interests in the assets in their accounts, while Prime Trust holds none.

25. Despite this, Prime Trust lists these custodial assets on its schedules, then provides no disclosure whatsoever about whether there are disputes about ownership of the custodied assets.

26. Even if there were no disputes about ownership of the custodied assets, the Disclosure Statement should explain how customer accounts will be handled under the Plan. Yet it provides no such explanation.

27. In the event that there is a dispute about the ownership of custodied assets, the Disclosure Statement should explain how and when those disputes will be resolved. Again, it does not.

28. Ultimately, the resolution of such disputes may have significant implications for confirmation of the Plan. But the Disclosure Statement does not address whether the Plan is confirmable if Prime Trust does not prevail in such disputes.

29. Without this information, it is impossible for Tiki Labs and other similarly situated customers to gauge whether their best interests are met by the plan. Accordingly, until the Debtor provides adequate information about the size and contours of its custodial business, whether there are disputes about the ownership of custodied assets, how and when such disputes will be resolved, and the impact on the Plan if Prime Trust does not prevail in such disputes, the Court should not approve the Disclosure Statement and Plan.

## CONCLUSION

WHEREFORE, for the reasons set forth herein, Tiki Labs respectfully requests that the Court (1) deny the Motion seeking approval of the Disclosure Statement or (2) in the alternative, condition approval of the Disclosure Statement and Plan on the inclusion of express language therein providing adequate information regarding the ownership of custodied assets held by Prime Trust on behalf of Tiki Labs and other similarly situated customers, how and when any disputes regarding such ownership will be resolved, and the potential impact of such disputes on the confirmability of the

Plan; and (3) that the Court provide such other and further relief to Tiki Labs as this Court deems just and proper.

Dated:  September 28, 2023      **PASHMAN STEIN WALDER HAYDEN, P.C**

By: */s/ John W. Weiss*
John W. Weiss (Del. Bar 4160)
1007 North Orange Street, 4th Floor #183
Wilmington, DE 19801
Telephone: (302) 592-6496
Email: jweiss@pashmanstein.com

-- and --

**KELLER BENVENUTTI KIM LLP**
Tobias S. Keller (Cal. Bar 151445) *pro hac vice application pending*
Traci Shafroth (Cal. Bar 251673) *pro hac vice application pending*
650 California Street, Suite 1900
San Francisco, California 94108
Telephone: (415) 496-6723
Email:  tkeller@kbkllp.com
       tshafroth@kbkllp.com

*Attorneys for Tiki Labs, Inc. dba Audius Inc.*