## IN THE UNITED STATES BANKRUPTCY COURT
## FOR THE DISTRICT OF DELAWARE

| | |
|---|---|
| In re: | Chapter 11 |
| Prime Core Technologies Inc., *et al.*,[1] | Case No. 23-11161 (JKS) |
| Debtors. | (Jointly Administered) |
| | **Re: Dkt No. 166** |

### OBJECTION OF KADO SOFTWARE, INC. D/B/A KADO MONEY TO DEBTORS' NOTICE OF POTENTIAL ASSUMPTION AND ASSIGNMENT

Kado Software, Inc. d/b/a Kado Money ("**Kado**") hereby objects to the *Notice to Contract Parties to Potentially Assumed Executory Contracts and Unexpired Leases* [Docket No. 166] (the "**Cure Notice**"), and respectfully states as follows.

### PRELIMINARY STATEMENT

1.      Kado is a fiat to crypto on/off ramp platform for easy onboarding to decentralized finance and self-custody of cryptocurrencies.  To facilitate its operations, Kado has had certain accounts with Prime Trust LLC ("**Prime Trust**"), one of the Debtors in these cases, since September 2021.

2.      The Cure Notice identifies a "Vendor Agreement" between Prime Trust and Kado with a proposed cure of $0.00.  No such agreement exists.  While there are certain agreements between Prime Trust and Kado, because Kado has deposited $590,535.64 (USD) and certain cryptocurrencies with Prime Trust under those agreements – including $345,000.49 in a custody

---

[1]   The debtors in these chapter 11 cases, along with the last four digits of each debtor's federal tax identification number are: Prime Core Technologies Inc. (5317); Prime Trust, LLC (6823); Prime IRA LLC (8436); and Prime Digital, LLC (4528). The Debtors' service address is 10845 Griffith Peak Dr., #03-153, Las Vegas, NV 89135.

account that remains the property of Kado – these agreements cannot be assumed and assigned without, among other things, the return of these deposits and property to Kado.

3.      In other words, the Debtors' proposal of a $0.00 cure amount for any agreement with Kado is nonsense and has no good faith basis.  This failure compounds the Debtors' ongoing, unexplained failure to meaningfully disclose or otherwise address their custody account agreements despite multiple formal or informal objections, comments, or requests for information from Kado and/or other custody account holders.

## BACKGROUND

4.      Kado began transacting with Prime Trust in September 2021 by establishing a custody account to facilitate ACH transactions (the "**Custody Account**").  The Custody Account is governed by various executed agreements and other documents that include without limitation express requirements that Kado's funds remain in a segregated account and owned by Kado.

5.      Among other things, the documents governing the custody account relationship between Kado and Prime Trust include the requirement to hold such funds "in a segregated account at Prime Trust,"[2] and that the custody account funds "are ear-marked for each customer and protected"[3] and "are kept separate from [other] assets . . . or are otherwise specifically identified as belonging to a particular customer,"[4] "will always be owned by and available to th[e] customer,"[5] "are kept in a separate system and never confused with corporate assets . . . and are

---

[2]   ACH Processing Agreement dated as of December 28, 2021 by and between Kado and Prime Trust.
[3]   *Bankruptcy and Digital Assets*,  https://support.primetrust.com/hc/en-us/articles/10306286945051-Bankruptcy-and-Digital-Assets, last accessed October 1, 2023 (a copy of which is attached as **Exhibit A**).
[4]   *Id.*
[5]   *How does the movement of funds under custody work?*  https://support.primetrust.com/hc/en-us/articles/10425655503643-How-does-the-movement-of-funds-under-custody-work-,  last  accessed October 1, 2023 (a copy of which is attached as **Exhibit B**).

10048789.1

ear-marked for each customer,"[6] and are never used by Prime Trust "in any lending or borrowing services nor rehypothecation of customer assets."[7]

6.    Since October 2021, Kado also maintained a demand account with Prime Trust holding certain USD and cryptocurrency deposits for use by Kado on demand (the "**Settlement Account**") and governed by various executed agreements and other documents.

7.    Kado maintained and relied on the Custody Account and the Settlement Account from their opening in September and October 2021 until Prime Trust abruptly ceased operations on June 21, 2023 after the cease and desist order issued by the Nevada state court.  This failure by Prime Trust forced Kado to temporarily cease operating and caused damages and losses to Kado.

8.    Prime Trust commenced these cases on August 14, 2023.  As of such date, the balance of the Custody Account was $345,000.49, and the balance of the Settlement Account was $245,535.15 as well as 1 USD Coin (Stellar) and 382.2285 Lumens.

9.    Since commencing these cases, the Debtors have received numerous formal and informal objections, comments or requests for information on Prime Trust's custody account arrangements from Kado and/or other parties.  However, the Debtors' pleadings and various supporting declarations have ignored and continue to ignore the existence of these custody accounts.

10.    On September 19, 2023, the Debtors filed the Cure Notice, which identifies a "Vendor Agreement" with Kado and a cure amount of $0.00.  *See* Cure Notice at 8 (Exh. A #198).

11.    There is no "Vendor Agreement" between Kado and Prime Trust.

---

[6] *How does Prime Trust treat my assets under custody?* https://support.primetrust.com/hc/en-us/articles/10425649977499-How-does-Prime-Trust-treat-my-assets-under-custody-, last accessed October 1, 2023 (a copy of which is attached as **Exhibit C**).

[7] *Does Prime Trust re-hypothecate customers' digital assets?* Does Prime Trust re-hypothecate customers' digital assets? – Prime Trust, last accessed October 1, 2023 (a copy of which is attached as **Exhibit D**).

10048789.1

12. Based on communications with the Debtors after the filing of the Cure Notice, Kado understands that the "Vendor Agreement" is intended to refer to an "Order Form" dated as of March 1, 2023 that addresses certain API services and custody account services.

**OBJECTION**

**A. THE CURE NOTICE DOES NOT ADEQUATELY IDENTIFY THE AGREEMENTS TO BE ASSUMED**

13. As noted above, the "Vendor Agreement" does not exist, and the relationships between Kado and Prime Trust are subject to multiple agreements and documents. Even the Order Form expressly refers to and incorporates other agreements and documents. Accordingly, the Cure Notice fails to provide sufficient information to allow Kado (or any potential assignee) to determine which agreements, terms or conditions apply with respect to Kado.

**B. THE CURE AMOUNT IS WRONG**

14. All agreements between Kado and Prime Trust relate to one or both of the Custody Account and the Settlement Account. These agreements cannot be assumed and assigned without the return of Kado's deposits thereunder. Accordingly, the cure amount with respect to the Custody Account and related contracts is not less than $345,000.49 and the cure amount with respect to the Settlement Account and related contracts is not less than $245,535.15 as well as 1 USD Coin (Stellar) and 382.2285 Lumens.

15. In addition to the outstanding balances on the Custody Account and the Settlement Account, Prime Trust's prepetition cessation of operations constitutes a breach of its obligations under its agreements with Kado. This breach by Prime Trust forced Kado to temporarily cease its operations and caused Kado to incur damages and costs in an amount to be determined. All such damages must be cured before any contract assumption and assignment.

4

16.     More broadly, certain of the agreements between Kado and Prime Trust – including without limitation the Order Form dated as of March 1, 2023, which was executed by Jor Law on behalf of Prime Trust – were entered into after Prime Trust was fully aware of its many failures with respect to customer accounts, from the "98f Wallet" failure to what appears to be a total disregard of its obligations to keep custody accounts segregated and earmarked for specific customers and what appears to be a practice of looting custody accounts to satisfy other claims. No such failures were disclosed by Prime Trust to Kado before entry into such agreements, including but not limited to the Order Form dated as of March 1, 2023.  The failure by Prime Trust and Mr. Law to disclose these shocking practices, which are material breaches of its obligations to and agreements with Kado, constitute fraud in the inducement of the underlying contracts for which Kado has incurred damages and which must be cured prior to any assumption or assignment.

*[ remainder of page intentionally left blank ]*

## <u>CONCLUSION</u>

WHEREFORE, Kado respectfully requests that the Court deny the Debtors' attempt to assign any agreements with Kado without the full cure thereunder, including but not limited to the return of all outstanding deposits and cure of all damages.

Dated: October 2, 2023

**GELLERT SCALI BUSENKELL & BROWN, LLC**

*/s/ Michael Van Gorder*
Michael Van Gorder (DE 6214)
1201 North Orange Street, Suite 300
Wilmington, Delaware 19801
Telephone (302) 425-5800
Email: mvangorder@gsbblaw.com

- and –

David S. Forsh (*pro hac vice* pending)
**RAINES FELDMAN LITTRELL LLP**
1350 Avenue of the Americas, 22nd Floor
New York, NY 10019
Telephone: 917.790.7100
Email: dforsh@raineslaw.com

*Counsel for Kado Software, Inc. d/b/a Kado Money*