**<u>Exhibit A</u>**

**Revised Plan**

**IN THE UNITED STATES BANKRUPTCY COURT**
**FOR THE DISTRICT OF DELAWARE**

|  |  |
|---|---|
| In re: | Chapter 11 |
| Prime Core Technologies Inc., *et al.*,[1] | Case No. 23-11161 (JKS) |
| Debtors. | (Jointly Administered) |

**JOINT CHAPTER 11 PLAN OF REORGANIZATION FOR**
**PRIME CORE TECHNOLOGIES INC. AND ITS AFFILIATED DEBTORS**

**MCDERMOTT WILL & EMERY LLP**
Maris J. Kandestin (No. 5294)
1000 N. West Street, Suite 1400
Wilmington, Delaware 19801
Telephone:     (302) 485-3900
Facsimile:     (302) 351-8711
Email:          mkandestin@mwe.com

**MCDERMOTT WILL & EMERY LLP**
Darren Azman (admitted *pro hac vice*)
Joseph B. Evans (admitted *pro hac vice*)
One Vanderbilt Avenue
New York, New York 10017-3852
Telephone:     (212) 547-5400
Facsimile:     (646) 547-5444
Email:          dazman@mwe.com
               jbevans@mwe.com

**MCDERMOTT WILL & EMERY LLP**
Gregg Steinman (admitted *pro hac vice*)
333 SE 2nd Avenue, Suite 5400
Miami, Florida 33131
Telephone:     (305) 358-3500
Facsimile:     (305) 347-6500
Email:          gsteinman@mwe.com

**MCDERMOTT WILL & EMERY LLP**
R. Jacob Jumbeck (admitted *pro hac vice*)
Rebecca E. Trickey (admitted *pro hac vice*)
444 W. Lake Street, Suite 4000
Chicago, Illinois 60606-0029
Telephone:     (312) 372-2000
Facsimile:     (312) 984-7700
Email:          jjumbeck@mwe.com
               rtrickey@mwe.com

*Proposed Counsel to the Debtors and Debtors in Possession*

Dated:   October 2, 2023
         Wilmington, Delaware

---

[1]   The debtors in these chapter 11 cases, along with the last four digits of each debtor's federal tax identification number are:  Prime Core Technologies Inc. (5317); Prime Trust, LLC (6823); Prime IRA LLC (8436); and Prime Digital, LLC (4528). The Debtors' service address is 10845 Griffith Peak Dr., #03-153, Las Vegas, NV 89135.

**TABLE OF CONTENTS**

ARTICLE 1      DEFINITIONS AND INTERPRETATION. ...................................................... 1

ARTICLE 2      ADMINISTRATIVE EXPENSE, PROFESSIONAL FEE CLAIMS, PRIORITY TAX CLAIMS, AND U.S. TRUSTEE FEES.................................................. 17

    2.1     Administrative Expense Claims................................................. 17
    2.2     Professional Fee Claims............................................................ 18
    2.3     Priority Tax Claims................................................................... 19
    2.4     Non-Estate Assets. .................................................................. 20
    2.5     U.S. Trustee Fees. ................................................................... 20

ARTICLE 3      CLASSIFICATION OF CLAIMS AND INTERESTS. ............................. 20

    3.1     Classification of Claims and Interests....................................... 20
    3.2     Formation of Debtor Groups for Convenience Only. ............... 20
    3.3     Summary of Classification. ..................................................... 21
    3.4     Special Provision Governing Unimpaired Claims. ................... 22
    3.5     Subordinated Claims. .............................................................. 22
    3.6     Intercompany Interests. ........................................................... 22
    3.7     Controversy Concerning Impairment. ...................................... 22

ARTICLE 4      TREATMENT OF CLAIMS AND INTERESTS. ................................... 22

    4.1     Class 1A – Secured Tax Claims............................................... 22
    4.2     Class 1B – Other Secured Claims............................................ 23
    4.3     Class 2 – Other Priority Claims............................................... 23
    4.4     Class 3A – Prime Core General Unsecured Claims.................. 23
    4.5     Class 3B – Prime Trust General Unsecured Claims. ............... 24
    4.6     Class 3C – Prime IRA General Unsecured Claims. ................. 24
    4.7     Class 3D – Prime Digital General Unsecured Claims. ............. 25
    4.8     Class 4 – Convenience Claims................................................. 25
    4.9     Class 5 – Section 510(b) Claims.............................................. 25
    4.10    Class 6 – Intercompany Claims. .............................................. 26
    4.11    Class 7 – Intercompany Interests. ........................................... 26
    4.12    Class 8 – Existing Equity Interests. ......................................... 26

ARTICLE 5      ACCEPTANCE OR REJECTION OF THE PLAN. .................................. 27

    5.1     Class Acceptance Requirement................................................. 27
    5.2     Tabulation of Votes on a Non-Consolidated Basis.................... 27
    5.3     Confirmation Pursuant to Section 1129(b) of the Bankruptcy Code or "Cramdown." .................................................................... 27
    5.4     Elimination of Vacant Classes. ............................................... 27
    5.5     Voting Classes; Deemed Acceptance by Non-Voting Classes. ....................... 27

ARTICLE 6      MEANS FOR IMPLEMENTATION. ...................................................... 27

    6.1     Joint Chapter 11 Plan............................................................... 27
    6.2     No Substantive Consolidation.................................................. 27

6.3     General Settlement of Claims and Interests. ........................................................ 28
6.4     Sources of Consideration for Plan Distributions. ............................................... 28
6.5     Restructuring Transactions. ................................................................................ 28
6.6     Creditors' Committee Consent Rights. ............................................................... 29
6.7     Reorganization Transaction. ............................................................................... 29
6.8     Liquidation Transaction. ..................................................................................... 32
6.9     Non-Released D&O Claims. ............................................................................... 32
6.10    Wind-Down Debtor. ........................................................................................... 33
6.11    Cancellation of Notes, Instruments, Certificates, and Other Documents. ......... 41
6.12    Elimination of Duplicate Claims. ....................................................................... 41
6.13    Corporate Action. ............................................................................................... 42
6.14    Exemption From Certain Transfer Taxes. .......................................................... 42
6.15    Preservation of Rights of Action. ....................................................................... 42
6.16    D&O Policies. ..................................................................................................... 43
6.17    Indemnification of Directors, Officers and Employees. ..................................... 43
6.18    Withholding and Reporting Requirements. ......................................................... 44
6.19    Effectuating Documents; Further Transactions. .................................................. 44
6.20    Closing of the Chapter 11 Cases. ....................................................................... 44
6.21    Creditors' Litigation Trust. ................................................................................ 45

ARTICLE 7     DISTRIBUTIONS. ......................................................................... 46

7.1     Timing and Calculation of Amounts to Be Distributed. ..................................... 46
7.2     Rights and Powers of Distribution Agent. .......................................................... 46
7.3     Delivery of Distributions and Undeliverable or Unclaimed Distributions. ........ 46
7.4     Compliance Matters. ........................................................................................... 48
7.5     Foreign Currency Exchange Rate. ...................................................................... 48
7.6     Dollarization of Account Holder Claims. ........................................................... 48
7.7     Claims Paid or Payable by Third Parties. ........................................................... 49
7.8     Setoffs and Recoupment. .................................................................................... 50
7.9     Allocation between Principal and Accrued Interest. ........................................... 50

ARTICLE 8     PROCEDURES FOR DISPUTED CLAIMS. ................................. 50

8.1     Objections to Claims. .......................................................................................... 50
8.2     Allowance of Claims. ......................................................................................... 50
8.3     Estimation of Claims. ......................................................................................... 51
8.4     No Distributions Pending Allowance. ................................................................ 51
8.5     Distributions After Allowance. ........................................................................... 51
8.6     No Interest. .......................................................................................................... 51
8.7     Resolution of Claims. ......................................................................................... 51
8.8     Disallowance of Claims. ..................................................................................... 52
8.9     Amendments to Claims and Late Filed Claims. ................................................. 52
8.10    Insured Claims. ................................................................................................... 52

ARTICLE 9     EXECUTORY CONTRACTS AND UNEXPIRED LEASES. ................. 52

9.1     Assumption and Rejection of Executory Contracts and Unexpired Leases. ...................... 52
9.2     Preexisting Obligations to the Debtors Under Executory Contracts and Unexpired
Leases. ................................................................................................................. 53
9.3     Determination of Cure Claims and Deemed Consent. ........................................ 53

9.4     Payments Related to Assumption of Executory Contracts and Unexpired Leases. .......... 54
9.5     Claims Based on Rejection of Executory Contracts or Unexpired Leases. ..................... 54
9.6     Insurance Policies and Surety Bonds. ................................................................................. 55
9.7     Reservation of Rights. .......................................................................................................... 56
9.8     Nonoccurrence of Effective Date. ....................................................................................... 56
9.9     Contracts and Leases Entered into After the Petition Date. ............................................... 56

ARTICLE 10        SETTLEMENT, RELEASES, INJUNCTIONS, AND RELATED PROVISIONS.... 56

10.1    Release of Liens. .................................................................................................................. 56
10.2    Discharge and Satisfaction of Claims. ................................................................................ 57
10.3    Term of Injunctions or Stays. .............................................................................................. 57
10.4    **Releases by the Debtors.** ................................................................................................... 57
10.5    **Releases By Holders of Claims and Interests.** ............................................................... 59
10.6    **Exculpation.** ....................................................................................................................... 60
10.7    **Injunction.** .......................................................................................................................... 60

ARTICLE 11        CONDITIONS PRECEDENT TO THE EFFECTIVE DATE. ................................. 61

11.1    Conditions Precedent to the Effective Date. ....................................................................... 61
11.2    Waiver of Conditions Precedent. ......................................................................................... 62
11.3    Substantial Consummation. ................................................................................................. 62
11.4    Effect of Vacatur of Confirmation Order. ........................................................................... 63

ARTICLE 12        RETENTION OF JURISDICTION. ..................................................................... 63

ARTICLE 13        MISCELLANEOUS PROVISIONS. ..................................................................... 65

13.1    Subordinated Claims. ........................................................................................................... 65
13.2    Dissolution of Creditors' Committee. .................................................................................. 65
13.3    Amendments. ....................................................................................................................... 65
13.4    Revocation or Withdrawal of the Plan. ............................................................................... 65
13.5    Severability of Plan Provisions Upon Confirmation. .......................................................... 66
13.6    Governing Law. .................................................................................................................... 66
13.7    Time. ..................................................................................................................................... 66
13.8    Additional Documents. ........................................................................................................ 66
13.9    Immediate Binding Effect. ................................................................................................... 66
13.10   Successor and Assigns. ........................................................................................................ 66
13.11   Entire Agreement. ................................................................................................................ 67
13.12   Notices. ................................................................................................................................ 67

Each of the Debtors proposes the following joint chapter 11 plan of reorganization pursuant to section 1121(a) of the Bankruptcy Code.  Capitalized terms used herein shall have the meanings set forth in Article 1.A.

**ARTICLE 1       DEFINITIONS AND INTERPRETATION.**

    **A.       Definitions.**

    1.1.     "Account" means any active account identified in the Debtors' books and records as having a balance as of the Petition Date.  For the avoidance of doubt, Accounts as used herein are not "accounts" within the meaning of Article 9 of the Uniform Commercial Code.

    1.2.     "Account Holder" means any Person or Entity who maintains an Account with any of the Debtors as of the Petition Date.

    1.3.     "Administrative Expense Claim" means any Claim for costs and expenses of administration during the Chapter 11 Cases pursuant to sections 328, 330, 363, 364(c)(1), 365, 503(b), 507(a)(2) or 507(b) of the Bankruptcy Code, including, (i) the actual and necessary costs and expenses incurred after the Petition Date and through the Effective Date of preserving the Estates and operating the businesses of the Debtors; (ii) Professional Fee Claims; and (iii) U.S. Trustee Fees.

    1.4.     "Administrative Expense Claims Bar Date" means the deadline for Filing requests for payment of Administrative Expense Claims, which (i) with respect to such Administrative Expense Claims other than (a) Professional Fee Claims and (b) Administrative Expense Claims arising after the General Bar Date, shall be thirty (30) days after the Effective Date; and (ii) with respect to Professional Fee Claims, shall be sixty (60) days after service of notice of the Effective Date, which notice shall set forth such deadline.

    1.5.     "Administrative Claims Objection Deadline" means the final deadline for objecting to an Administrative Expense Claim arising between September 16, 2023 and the Effective Date, which shall be on the date that is the later of (i) 180 days after the Effective Date or (ii) such later date as may be set by the Bankruptcy Court or upon a motion by the Plan Administrator, as applicable; *provided, however,* that if the Plan Administrator files such motion before the expiration of the then-effective Administrative Claims Objection Deadline, such Administrative Claims Objection Deadline shall be tolled pending entry of a further order by the Bankruptcy Court.

    1.6.     "Affiliate" has the meaning set forth in section 101(2) of the Bankruptcy Code.

    1.7.     "Allowed" means, with reference to any Claim or Interest, a Claim or Interest (i) arising on or before the Effective Date as to which (A) no objection to allowance or priority, and no request for estimation or other challenge, including, without limitation, pursuant to section 502(d) of the Bankruptcy Code or otherwise, has been interposed and not withdrawn within the applicable period fixed by the Plan or applicable law, or (B) any objection has been determined in favor of the Holder of the Claim or Interest by a Final Order; (ii) that is compromised, settled, or otherwise resolved pursuant to the authority of the Debtors, the Reorganized Debtors, or the Wind-Down, as applicable; (iii) as to which the liability of the Debtors, the Reorganized Debtors, or the Wind-Down, as applicable, and the amount thereof are determined by a Final Order of a court of competent jurisdiction; (iv) that is listed in the Schedules as liquidated, non-contingent, and undisputed, and is not superseded by a Proof of Claim; or (v) expressly allowed hereunder; *provided, however,* that, notwithstanding the foregoing, (x) unless expressly waived by the Plan, the Allowed amount of Claims or Interests shall be subject to, and shall not exceed the limitations or maximum amounts permitted by the Bankruptcy Code, including sections 502 or 503 of the Bankruptcy

Code, to the extent applicable, and (y) the Debtors, the Reorganized Debtors, the Wind-Down Debtor, or the Plan Administrator, as applicable shall retain all claims and defenses with respect to Allowed Claims that are Unimpaired pursuant to the Plan; *provided, further,* that any (i) Claim or Interest paid or required to be paid by a Purchaser pursuant to a Bankruptcy Court-approved Asset Purchase Agreement or order approving a sale of the Debtors' Assets during the course of these Chapter 11 Cases or (ii) Claim or Interest listed in the Schedules that has been paid by the Debtors (w) after the Petition Date pursuant to an order of the Bankruptcy Court, (x) before the Petition Date and was inadvertently listed in the Schedules, or (y) paid by the Debtors or a Purchaser pursuant to an Bankruptcy Court-approved Asset Purchase Agreement or order approving a sale of the Debtors' Assets during the course of these Chapter 11 Cases as an assumed liability, shall not be considered an Allowed Claim.

1.8. "Amended Organizational Documents" means, collectively, the Governance Documents of the Wind-Down Debtor.

1.9. "Assets" means all or substantially all of the Debtors' rights, title, and interests of a Debtor in and to property of whatever type or nature (including real, personal, mixed, intellectual, tangible, and intangible property).

1.10. "Asset Purchase Agreement" means an agreement between a Purchaser and the Debtors with respect to the purchase and sale of the Debtors' Assets.

1.11. "Assumption Dispute" means an unresolved objection regarding assumption, assignment, Cure Claim, "adequate assurance of future performance" (within the meaning of section 365 of the Bankruptcy Code), or other issues relating to assumption or assignment of an Executory Contract or Unexpired Lease.

1.12. "Avoidance Action" means any and all actual or potential claims and causes of action arising under chapter 5 of the Bankruptcy Code (including, but not limited to, sections 502(d), 510, 542 through 551, 553, and 724(a) of the Bankruptcy Code), including any claim or cause of action to avoid a transfer of property or an obligation incurred by the Debtors, equitable subordination or recovery actions or proceedings, or under similar or related state or federal statutes and common law of the United States or similar applicable foreign laws or regulations, including fraudulent transfer laws.

1.13. "Ballot" means the form distributed to each Holder of an Impaired Claim that is entitled to vote, to accept, or reject this Plan, on which is to be indicated acceptance or rejection of this Plan.

1.14. "Bankruptcy Code" means title 11 of the United States Code, 11 U.S.C. §§ 101, *et seq.*, as amended from time to time, as applicable to the Chapter 11 Cases.

1.15. "Bankruptcy Court" means the United States Bankruptcy Court for the District of Delaware having jurisdiction over the Chapter 11 Cases and, to the extent of any reference made under section 157 of title 28 of the United States Code, the unit of such District Court having jurisdiction over the Chapter 11 Cases under section 151 of title 28 of the United States Code.

1.16. "Bankruptcy Rules" means the Federal Rules of Bankruptcy Procedure as promulgated by the United States Supreme Court under section 2075 of title 28 of the United States Code, as amended from time to time, applicable to the Chapter 11 Cases, and any local rules of the Bankruptcy Court.

1.17.    "Bar Dates" means the General Bar Date, the Governmental Bar Date, the Initial Administrative Claims Bar Date, and any other dates fixed by order(s) of the Bankruptcy Court (including the Bar Date Order, this Plan, or the Confirmation Order), by which any Persons asserting a Claim against any Debtor must have filed a Proof of Claim or application for allowance of such Claim (as applicable) with the Bankruptcy Court against any such Debtor or be forever barred from asserting such Claim.

1.18.    "Bar Date Order" means the *Order (I) Establishing Bar Dates to File Proofs of Claim; (II) Approving Form and Manner for Filing Proofs of Claim; (III) Approving Form and Manner of Notice of Bar Dates; and (IV) Granting Related Relief* [Docket No. 164] entered by the Bankruptcy Court on September 19, 2023.

1.19.    "Benefits Plans" means each (i) "employee benefit plan," as defined in section 3(3) of ERISA and (ii) all other pension, retirement, bonus, incentive, health, life, disability, group insurance, vacation, holiday and fringe benefit plan, program, contract, or arrangement (whether written or unwritten) maintained, contributed to, or required to be contributed to, by the Debtors for the benefit of any of its current or former employees or independent contractors, other than those that entitle employees to, or that otherwise give rise to, Interests or consideration based on the value of Interests, in the Debtors.

1.20.    "Bid Deadline" means the date on which potential purchasers must submit Qualified Bids under the Bid Procedures Order.

1.21.    "Bid Procedures" means the procedures governing the sale process with respect to any Sale Transaction or Equity Transaction as approved by the Bankruptcy Court pursuant to the Bid Procedures Order (as such procedures may be altered, amended, modified, or supplemented from time to time in accordance with their terms).

1.22.    "Bid Procedures Order" means the *Order (I) Approving Bidding Procedures for the Sale of All of the Debtors' Equity or All or Substantially All of Debtors' Assets, (II) Authorizing the Debtors to Enter Into One or More Stalking Horse Agreements, (III) Approving Bid Protections, (IV) Scheduling an Auction and Related Dates Thereto, (V) Approving the Form and Manner of Notice Thereof, (VI) Approving Contract Assumption and Assignment Procedures, and (VII) Granting Related Relief; (B) an Order Authorizing and Approving (I) Sale Free and Clear of All Liens, Claims, Encumbrances, and Other Interests, (II) Assumption and Assignment of Certain Contracts and Leases, and (III) Granting Related Relief* [Docket No. 119] entered by Bankruptcy Court on September 14, 2023.

1.23.    "Business Day" means any day, other than a Saturday, Sunday or "legal holiday" (as defined in Bankruptcy Rule 9006(a)).

1.24.    "Cash" or "$" means legal tender of the United States of America and equivalents thereof.

1.25.    "Cash Allocation" means all Cash at the Wind-Down Debtor, net of distributions on account of (i) Allowed Administrative Expense Claims; (ii) Allowed Secured Tax Claims; (iii) Allowed Other Secured Claims; and (iv) Allowed Other Priority Claims.

1.26.    "Causes of Action" means, without limitation, any and all actions, causes of action, controversies, liabilities, obligations, rights, suits, damages, judgments, Claims, any right of setoff, counterclaim, or recoupment, any claim for breach of contract or for breach of duties imposed by law or in equity, any claim or defense including fraud, and any demands whatsoever owned by the Debtors, whether known or unknown, reduced to judgment, liquidated or unliquidated, fixed or contingent, matured or unmatured, disputed or undisputed, secured or unsecured, whether assertable directly, indirectly,

derivatively or in any representative or other capacity, existing or hereafter arising, in, law, equity, or otherwise, based in whole or in part upon any act, failure to act, error, omission, transaction, occurrence or other event arising or occurring prior to the Petition Date or during the course of the Chapter 11 Cases, including through the Effective Date.

1.27.    "Chapter 11 Cases" means the jointly administered cases of the Debtors under chapter 11 of the Bankruptcy Code styled *In re Prime Core Technologies Inc., et al.*, Case No. 23-11161 (JKS), pending before the United States Bankruptcy Court for the District of Delaware.

1.28.    "Claim" means any "claim" (as defined in section 101(5) of the Bankruptcy Code) against the Debtors, including, without limitation, any Claim arising after the Petition Date.

1.29.    "Claims Agent" means Bankruptcy Management Solutions, Inc. d/b/a Stretto, in its capacity as the claims, noticing, and solicitation agent in the Chapter 11 Cases for the Debtors and any successors appointed by an order of the Bankruptcy Court.

1.30.    "Claims Objection Deadline" means the date that is 180 days after the Effective Date, subject to extension by the Bankruptcy Court upon a motion by the Debtors, the Reorganized Debtors, or the Wind-Down, as applicable; *provided, however,* that if the Debtors, the Reorganized Debtors, or the Wind-Down Debtor, as applicable, Files such motion before the expiration of the then-effective Claims Objection Deadline, such Claims Objection Deadline shall be tolled pending entry of a further order by the Bankruptcy Court.

1.31.    "Class" means any group of Claims or Interests classified pursuant to Article 3 of the Plan.

1.32.    "Confirmation" means the entry of the Confirmation Order on the docket of the Chapter 11 Cases.

1.33.    "Confirmation Date" means the date on which the Bankruptcy Court enters the Confirmation Order.

1.34.    "Confirmation Hearing" means the combined hearing held by the Bankruptcy Court to consider confirmation of the Plan pursuant to section 1129 of the Bankruptcy Code and the approval of the Disclosure Statement on a final basis in accordance with section 1125 of the Bankruptcy Code, as such hearing may be adjourned or continued from time to time.

1.35.    "Confirmation Order" means the order of the Bankruptcy Court confirming the Plan pursuant to section 1129 of the Bankruptcy Code and approving the Disclosure Statement on a final basis as having adequate information in accordance with section 1125 of the Bankruptcy.

1.36.    "Consummation" means the occurrence of the Effective Date of the Plan.

1.37.    "Convenience Claim" means a Claim, subject to Article 7.3(b) below, that would otherwise be a General Unsecured Claim that (a) was scheduled or filed on or prior to the General Bar Date in an amount less than or equal to $500.00 or (b) is in an amount that has been reduced to $500.00 pursuant to a Convenience Class Election made by the Holder of such Claim; *provided, however*, that: (i) where any portion(s) of a Claim has been transferred on or after the Petition Date, any transferred portion(s) shall continue to be treated together with such Claim as a single Claim for purposes of determining whether such Claim qualifies as a Convenience Claim; and (ii) any General Unsecured Claim that was originally Allowed

in excess of $500.00 may not be subdivided into multiple General Unsecured Claims of $500.00 or less for purposes of receiving treatment as a Convenience Claim.

      1.38.   "<u>Convenience Class Election</u>" means an irrevocable election made on the Ballot by the Holder of a Claim in Class 3A, 3B, 3C, or 3D, as applicable that would otherwise be a General Unsecured Claim in an amount greater than $500.00 to reduce such Claim to $500.00 to be treated as a Convenience Claim.  Subject to the occurrence of the Effective Date, such election shall be deemed to amend such General Unsecured Claim to reduce the amount of such Claim to $500.00.

      1.39.   "<u>Creditors' Committee</u>" means the statutory committee of unsecured creditors appointed in the Chapter 11 Cases pursuant to section 1102 of the Bankruptcy Code on August 29, 2023 [Docket No. 51], as the same may be reconstituted from time to time.

      1.40.   "<u>Creditors' Committee Consent Rights</u>" has the meaning set forth in <u>Article 6.6</u> hereof.

      1.41.   "<u>Creditors' Litigation Trust</u>" means, to the extent set forth and described in <u>Article 6.21</u>, the trust established on or after the Effective Date that, among other things, shall commence, litigate and settle the Vested Causes of Action that are not released, waived, settled, compromised, or transferred under the Plan and make distributions pursuant to the terms of the Plan and the Creditors' Litigation Trust Agreement; *provided, however*, that, for the avoidance of doubt, the Creditors' Litigation Trust shall not conduct any business operations or continue the Debtors' business operations after the Effective Date.

      1.42.   "<u>Creditors' Litigation Trust Agreement</u>" means that certain agreement by and among the Debtors and the Plan Administrator establishing the Creditors' Litigation Trust, which shall be drafted by the Creditors' Committee and in substantially the form included in the Plan Supplement.

      1.43.   "<u>Creditors' Litigation Trustee</u>" means the Person or Persons selected by the Creditors' Committee, after consultation with the Debtors, identified in the Plan Supplement, to serve as the administrator of the Creditors' Litigation Trust within the meaning of Treasury Regulations section 1.468B-2(k)(3), and any successor or successors thereto, appointed pursuant to the Creditors' Litigation Trust Agreement.

      1.44.   "<u>Cryptocurrency</u>" means a digital currency or crypto asset in which transactions are verified and records maintained by a decentralized system using cryptography, rather than by a centralized authority, including stablecoins, digital coins and tokens, such as security tokens, utility tokens and governance tokens.

      1.45.   "<u>Cryptocurrency Allocation</u>" means the allocation of Cryptocurrency, if any, at the Wind-Down Debtor to be distributed to Holders of Claims, in the form determined by the Plan Administrator in accordance with <u>Article 7.6</u>, subject to any applicable withdrawal fees and any administrative costs and expenses incurred in connection with, or arising out of, the Cryptocurrency distributed to Holders of Allowed General Unsecured Claims pursuant to the Plan.

      1.46.   "<u>Cryptocurrency Conversion Table</u>" means the conversion table showing Cryptocurrency values as of the Petition Date, the form of which shall be included in the Plan Supplement.

      1.47.   "<u>Cure</u>" or "<u>Cure Claim</u>" means the amount, including an amount of $0.00, required to cure any monetary defaults under any Executory Contract or Unexpired Lease (or such lesser amount as may be agreed upon by the parties to such Executory Contract or Unexpired Lease) that is either (a) in the event of a Reorganization Transaction, to be assumed by the Plan Sponsor or (b) in the event of a Sale

Transaction, potentially assigned to the Purchaser(s)) pursuant to sections 365 or 1123 of the Bankruptcy Code).

1.48.    "<u>Current Directors and Officers</u>" means the directors and officers of the Debtors as of the Petition Date, other than Mr. Jor Law.

1.49.    "<u>Customer</u>" means a Person or Entity party to a Customer Agreement with the Debtors as of the Petition Date according to the Debtors' books and records.

1.50.    "<u>Customer Agreement</u>" means any contract, agreement, or other document existing between a Debtor and a Person or Entity governing the custodial relationship between the Debtor and such Person or Entity.

1.51.    "<u>Customer Claim</u>" means a Claim held by a Customer.

1.52.    "<u>D&O Policy</u>" means any Insurance Policy for, among others, directors,' members,' trustees,' and officers' liability (or any equivalents) maintained by the Debtors' Estates, and all agreements, documents or instruments relating thereto, including any runoff policies or tail coverage.

1.53.    "<u>Debtors</u>" means Prime Core Technologies Inc., Prime Trust, LLC, Prime IRA LLC, and Prime Digital, LLC.

1.54.    "<u>Definitive Documents</u>" means, as applicable: (a) the Plan (and any and all exhibits, annexes, and schedules thereto); (b) the Confirmation Order; (c) the Disclosure Statement and the other Solicitation Materials; (d) all pleadings filed by the Debtors in connection with the Chapter 11 Cases (or related orders); (e) the Plan Supplement and the documents, exhibits, and addenda thereto; (f) any new material employment, consulting, or similar agreements entered into between the Debtors, the Reorganized Debtors, or the Wind-Down Debtor, as applicable, and any of the Debtors' employees, if any; (g) the Asset Purchase Agreement and other Sale Transaction Documents; (h) the Reorganization Transaction Documents; (i) the Amended Organizational Documents; (j) the New Organizational Documents; (k) the Plan Administrator Agreement; and (*l*) any and all other deeds, agreements, filings, notifications, pleadings, orders, certificates, letters, instruments or other documents reasonably desired or necessary to consummate and document the transactions contemplated by this Plan (including any exhibits, amendments, modifications, or supplements made from time to time thereto).

1.55.    "<u>Directors and Officers</u>" means the Current Directors and Officers and the Former Directors and Officers.

1.56.    "<u>Disallowed</u>" means a Claim against a Debtor, or any portion thereof, (i) that has been disallowed by a Final Order of the Bankruptcy Court, a settlement, or the Plan, (ii) that is listed in the Schedules at zero or as contingent, disputed, or unliquidated and as to which a Bar Date has been established but no Proof of Claim has been timely filed or deemed timely filed with the Bankruptcy Court pursuant to either the Bankruptcy Code or any Final Order of the Bankruptcy Court or applicable law, or (iii) that is not listed in the Debtors' Schedules and as to which a Bar Date has been established but no Proof of Claim has been timely filed or deemed timely filed with the Bankruptcy Court pursuant to either the Bankruptcy Code or any Final Order of the Bankruptcy Court or under applicable law.

1.57.    "<u>Disclosure Statement</u>" means the disclosure statement relating to this Plan, as such disclosure statement may be amended, modified, or supplemented from time to time (including, without limitation, all exhibits and schedules thereto).

1.58.    "Disputed" means, with respect to a Claim, a Claim against a Debtor (i) neither Allowed nor Disallowed, or (ii) held by a Person or Entity against whom or which any of the Debtors, the Reorganized Debtors, or the Wind-Down Debtor, as applicable, has commenced a proceeding, including an objection to such Claim or an Avoidance Action.

1.59.    "Distribution Agent" means, as applicable, the Wind-Down Debtor, the Plan Administrator, or any Entity or Entities designated by the Wind-Down Debtor or the Plan Administrator, as applicable, to make or to facilitate distributions that are to be made pursuant to the Plan.

1.60.    "Distribution Date" means, except as otherwise set forth herein, the date or dates determined by the Debtors, the Reorganized Debtors, or the Wind-Down Debtor, as applicable, on or after the Effective Date, upon which the Distribution Agent shall make distributions to Holders of Allowed Claims or Allowed Interests entitled to receive distributions under the Plan.

1.61.    "Distribution Record Date" means the record date for purposes of determining which Holders of Allowed Claims and Interests against the Debtors are eligible to receive distributions under the Plan, which date shall be determined by the Wind-Down Debtor or the Plan Administrator, as applicable.

1.62.    "DTC" means The Depository Trust Company.

1.63.    "Effective Date" means the date on which all conditions to the effectiveness of the Plan set forth in Article 11 below have been satisfied or waived in accordance with the terms of the Plan.

1.64.    "Employee Arrangements" means all employment and severance arrangements, programs, and policies, and all compensation and Benefits Plans, policies, and programs of the Debtors applicable to their respective employees, retirees, consultants, contractors, and non-employee directors, including all savings plans, retirement plans, healthcare plans, disability plans, severance benefit plans, incentive plans (including equity and equity-based plans), welfare benefits plans, and life and accidental death and dismemberment insurance plans.

1.65.    "Entity" has the meaning set forth in section 101(15) of the Bankruptcy Code.

1.66.    "Estate" or "Estates" means individually or collectively, the estate or estates of the Debtors created under section 541 of the Bankruptcy Code.

1.67.    "Exculpated Parties" means, collectively, and in each case in its capacity as such: (a) each of the Debtors; (b) the Reorganized Debtors; (c) the Wind-Down Debtor; (d) the Special Committee, and each of the members thereof, solely in their capacity as such; (e) the Creditors' Committee, and each of the members thereof, solely in their capacity as such; (f) each of the Released Professionals; (g) the Current Directors and Officers, and Persons employed by each of the Debtors and their Affiliates serving in such capacity on or after the Petition Date but before the Effective Date; (h) the Plan Administrator; (i) the Distribution Agent; (j) Cooley LLP; and (k) J.S. Held LLC.

1.68.    "Executory Contract" means a contract to which one or more of the Debtors is a party that is subject to assumption, assumption and assignment, or rejection under sections 365 or 1123 of the Bankruptcy Code.

1.69.    "Existing Equity Interests" means any Interest in Prime Core existing immediately prior to the occurrence of the Effective Date.

1.70.   "File," "Filed," or "Filing" means file, filed, or filing, respectively, in the Chapter 11 Cases with the Bankruptcy Court or its authorized designee, or, with respect to the filing of a Proof of Claim or Proof of Interest, file, filed, or filing, respectively, with the Claims Agent.

1.71.   "Final Order" means an order or judgment of a court of competent jurisdiction that has been entered on the docket maintained by the clerk of such court, which has not been reversed, vacated or stayed and as to which (i) the time to appeal, petition for certiorari, or move for a new trial, reargument or rehearing has expired and as to which no appeal, petition for certiorari, or other proceedings for a new trial, reargument or rehearing shall then be pending, or (ii) if an appeal, writ of certiorari, new trial, reargument or rehearing thereof has been sought, such order or judgment shall have been affirmed by the highest court to which such order was appealed, or certiorari shall have been denied, or a new trial, reargument or rehearing shall have been denied or resulted in no modification of such order, and the time to take any further appeal, petition for certiorari or move for a new trial, reargument or rehearing shall have expired; *provided, however*, that no order or judgment shall fail to be a "Final Order" solely because of the possibility that a motion pursuant to section 502(j) or 1144 of the Bankruptcy Code or under Rule 60 of the Federal Rules of Civil Procedure or Bankruptcy Rule 9024 has been or may be filed with respect to such order or judgment.

1.72.   "Former Directors and Officers" means the Directors and Officers of the Debtors prior to the Petition Date who are not Current Directors and Officers.

1.73.   "General Bar Date" means October 22, 2023, at 4:00 p.m. (prevailing Eastern Time).

1.74.   "General Unsecured Claim" means, collectively, the Prime Core General Unsecured Claims, the Prime Trust General Unsecured Claims, the Prime IRA General Unsecured Claims, and the Prime Digital General Unsecured Claims.

1.75.   "Governance Documents" means, with respect to any Person that is an entity, such entity's organizational and governance documents, including its certificate or articles of incorporation, certificate of formation or certificate of limited partnership, its bylaws, limited liability company agreement, operating agreement, or limited partnership agreement, and any indemnification agreements, stockholders agreements, or registration rights agreements (or equivalent governing documents of any of the foregoing).

1.76.   "Governmental Bar Date" means February 10, 2024, at 4:00 p.m. (prevailing Eastern Time).

1.77.   "Governmental Unit" has the meaning set forth in section 101(27) of the Bankruptcy Code.

1.78.   "Holder" means an Entity holding a Claim against or an Interest in any Debtor.

1.79.   "Impaired" means, with respect to a Claim, Interest, or Class of Claims or Interests, "impaired" within the meaning of section 1124 of the Bankruptcy Code.

1.80.   "Indemnification Claim" means a General Unsecured Claim with respect to any existing or future obligation of any Debtor to indemnify current and former directors, officers, members, managers, agents or employees of any of the Debtors who served in such capacity, with respect to or based upon such service or any act or omission taken or not taken in any of such capacities, or for or on behalf of any Debtor, whether pursuant to agreement, the Debtors' respective memoranda, articles or certificates of incorporation, corporate charters, bylaws, operating agreements, limited liability company agreements, or

similar corporate or organizational documents or other applicable contract or law in effect as of the Effective Date.

1.81.    "Initial Administrative Claims Bar Date" means October 22, 2023, at 4:00 p.m. (prevailing Eastern Time) as the date set by the Bankruptcy Court pursuant to the Bar Date Order by which a party asserting an administrative expense claim arising between August 14, 2023 and September 15, 2023 was required to file a Proof of Claim.

1.82.    "Initial Assumption and Cure List" means the Notice to Contract Parties to Potentially Assumed Executory Contracts and Unexpired Leases [Docket No. 166], as may be amended.

1.83.    "Initial Cure Objection Deadline" means October 2, 2023, as established by the Bid Procedures Order.

1.84.    "Initial Non-Released D&O Claim Budget" means the initial amount allocated to pursue the Non-Released D&O Claims as of the Effective Date, which amount shall be agreed upon between the Debtors and the Creditors' Committee prior to the Confirmation Hearing, and which is subject to revision following the Effective Date at the discretion of the Plan Administrator without any further notice to or order of the Bankruptcy Court.

1.85.    "Initial Wind-Down Budget" means the initial budget to fund the Wind-Down Debtor, which amount shall be agreed upon between the Debtors and the Creditors' Committee prior to the Confirmation Hearing, and which is subject to revision following the Effective Date at the discretion of the Plan Administrator without any further notice or order of the Bankruptcy Court.

1.86.    "Insurance Policy" means all insurance policies issued or providing coverage to the Debtors in existence as of the Effective Date.

1.87.    "Insured Claim" means any Claim or portion of a Claim that is, or may be, insured under any of the Debtors' Insurance Policies.

1.88.    "Insurer" means any company or other entity that issued any Insurance Policies, any third-party administrators of claims against the Debtor or asserted under the Insurance Policies, and any respective predecessors and/or affiliates thereof.

1.89.    "Intercompany Claim" means a Claim against any Debtor by another Debtor.

1.90.    "Intercompany Interest" means an Interest held by a Debtor or a non-Debtor direct or indirect subsidiary or affiliate of a Debtor in another Debtor or a non-Debtor direct or indirect subsidiary or affiliate of a Debtor.

1.91.    "Interest" means any equity security (as defined in section 101(16) of the Bankruptcy Code) of a Debtor, including all shares, common stock, preferred stock, or other instrument evidencing any fixed or contingent ownership interest in any Debtor, whether or not transferable, and any option, warrant, or other right, contractual or otherwise, to acquire any such interest in the Debtors, whether fully vested or vesting in the future, including, without limitation, equity or equity-based incentives, grants, or other instruments issued, granted or promised to be granted to current or former employees, directors, officers, or contractors of the Debtors, to acquire any such interests in the Debtors that existed immediately before the Effective Date.

1.92.    "Lien" has the meaning set forth in section 101(37) of the Bankruptcy Code.

1.93.    "Liquidation Procedures" means, in the event neither a Sale Transaction nor a Reorganization Transaction is consummated prior to the Effective Date, such procedures filed by the Wind-Down Debtor identifying the mechanics and procedures to effectuate a Liquidation Transaction.

1.94.    "Liquidation Transaction" means a situation where neither a Sale Transaction nor a Reorganization Transaction has been consummated.

1.95.    "New Board" means, solely with respect to a Reorganization Transaction, the new board of directors of Reorganized Prime Core.

1.96.    "New Organizational Documents" means, collectively, the Governance Documents of the Reorganized Debtors.

1.97.    "Ninety-Eight F Wallet" or "98f Wallet" means the Debtors' legacy cold storage wallet with an address ending in "98f."

1.98.    "Ninety-Eight F Wallet Cause of Action" or "98f Wallet Cause of Action" means any Claim or Cause of Action arising from the Debtors' loss of, or loss of access to assets held within, the 98f Wallet, the Debtors' use of Cash or other assets to satisfy redemptions or withdrawals by customers whose assets were held in the 98f Wallet.

1.99.    "Non-Released Directors and Officers" means the Directors and Officers of the Debtors against whom the Debtors, the Reorganized Debtors, or the Wind-Down Debtor hold Non-Released D&O Claims.

1.100.    "Non-Released D&O Claims" has the meaning set forth in Article 6.9 of the Plan.

1.101.    "Other Priority Claim" means any Claim against any of the Debtors that is not (a) an Administrative Expense Claim; (b) a Professional Fee Claim; (c) a Priority Tax Claim; (d) a Secured Tax Claim; (e) an Other Secured Claim; (f) a General Unsecured Claim; (g) a Section 510(b) Claim; (h) an Intercompany Claim; or (i) a Claim that is secured, subordinated, or entitled to priority under the Bankruptcy Code, including, for the avoidance of doubt, an Administrative Expense Claim, a Professional Fee Claim, a Priority Tax Claim, or a Secured Tax Claim.

1.102.    "Other Secured Claim" means any Secured Claim against a Debtor that is not (a) an Administrative Expense Claim; (b) a Professional Fee Claim; (c) a Priority Tax Claim; (d) a Secured Tax Claim; (e) an Other Priority Claim; (f) a General Unsecured Claim; (g) a Section 510(b) Claim; (h) an Intercompany Claim; or (i) a Claim that is secured, subordinated, or entitled to priority under the Bankruptcy Code, including, for the avoidance of doubt, an Administrative Expense Claim, a Professional Fee Claim, a Priority Tax Claim, or a Secured Tax Claim.

1.103.    "Person" means an individual, corporation, partnership, joint venture, association, joint stock company, limited liability company, limited liability partnership, trust, estate, unincorporated organization, Governmental Unit or other entity.

1.104.    "Petition Date" means August 14, 2023.

1.105.    "Plan" means this joint chapter 11 plan, including the exhibits hereto, as the same may be amended or modified from time to time in accordance with Article 13.3 herein.

1.106.   "Plan Administrator" means the Person or Persons selected by the Committee, after consultation with the Debtors, subject to the approval of the Bankruptcy Court and identified in the Plan Supplement, to serve as the administrator(s) of the Residual Estate, the Wind-Down Debtor, and any successor or successors thereto, appointed pursuant to the Plan Administrator Agreement.

1.107.   "Plan Administrator Agreement" means that certain agreement or agreements by and among the Debtors, the Reorganized Debtors, and the Plan Administrator (in connection with a Reorganization Transaction), and the Debtors, the Wind-Down Debtor, and the Plan Administrator (in connection with a Sale Transaction or a Liquidation Transaction), which shall be included in the Plan Supplement in a form reasonably acceptable to the Creditors' Committee.

1.108.   "Plan Documents" means (a) the Plan, (b) the Confirmation Order, (c) the Disclosure Statement, (d) the Plan Supplement and the documents filed in connection therewith, (e) the Reorganization Transaction Documents, if applicable, (f) any other documents or agreements executed, delivered, assumed, or performed to implement or supplement the Plan or the Reorganization Transactions, all as may be amended, modified, or supplemented from time to time.

1.109.   "Plan Sponsor" means the non-Debtor counterparty to the Plan Sponsorship Agreement with respect to a Reorganization Transaction.

1.110.   "Plan Sponsorship Agreement" means the agreement between the Debtors and the Plan Sponsor with respect to a Reorganization Transaction.

1.111.   "Plan Supplement" means the compilation of documents and forms of documents, agreements, schedules, and exhibits to the Plan (in each case, as may thereafter be amended, supplemented, or otherwise modified from time to time in accordance with the terms of the Plan, the Bankruptcy Code, the Bankruptcy Rules, and applicable law), to be Filed by the Debtors no later than seven (7) days before the Voting Deadline or such later date as may be approved by the Bankruptcy Court, and additional documents Filed with the Bankruptcy Court prior to the Effective Date as amendments to the Plan Supplement.  The Plan Supplement may include the following, each as applicable and subject to Article 6.6 hereof, : (a) the Schedule of Assumed Contracts and Leases; (b) the Schedule of Vested Causes of Action; (c) the Plan Administrator Agreement; (d) the identity of the Plan Administrator; (e) the identity of the Plan Sponsor; (f) the Plan Sponsorship Agreement; (g) the Amended Organizational Documents; (h) the New Organizational Documents, if applicable; (i) the Restructuring Transactions Memorandum; (j) the Cryptocurrency Conversion Table; (k) the number and slate of directors to be appointed to the New Board to the extent known and determined; (*l*) with respect to the members of the New Board, information required to be disclosed in accordance with Bankruptcy Code section 1129(a)(5); (m) the identity of the Creditors' Litigation Trustee; and (n) any additional documents necessary to effectuate or that is contemplated by the Plan, including any compensation program for any of the Debtors' employees to be established as contemplated in the Plan and the Definitive Documents to facilitate the Reorganization Transactions.

1.112.   "Prime Core" means Prime Core Technologies Inc.

1.113.   "Prime Core General Unsecured Claim" means any Claim, including any Customer Claim, against Prime Core that is not (a) an Administrative Expense Claim; (b) a Professional Fee Claim; (c) a Priority Tax Claim; (d) a Secured Tax Claim; (e) an Other Priority Claim; (f) an Other Secured Claim; (g) a Prime Trust General Unsecured Claim; (h) a Prime Digital General Unsecured Claim; (i) a Prime IRA General Unsecured Claim; (j) a Section 510(b) Claim; (k) an Intercompany Claim; or (l) a Claim that is secured, subordinated, or entitled to priority under the Bankruptcy Code.

1.114.   "Prime Digital" means Prime Digital, LLC.

1.115.   "Prime Digital General Unsecured Claim" means any Claim, including any Customer Claim, against Prime Digital that is not (a) an Administrative Expense Claim; (b) a Professional Fee Claim; (c) a Priority Tax Claim; (d) a Secured Tax Claim; (e) an Other Priority Claim; (f) an Other Secured Claim; (g) a Prime Core General Unsecured Claim; (h) a Prime Trust General Unsecured Claim; (i) a Prime IRA General Unsecured Claim; (j) a Section 510(b) Claim; (k) an Intercompany Claim; or (l) a Claim that is secured, subordinated, or entitled to priority under the Bankruptcy Code.

1.116.   "Prime IRA" means Prime IRA LLC.

1.117.   "Prime IRA General Unsecured Claim" means any Claim, including any Customer Claim, against Prime IRA that is not (a) an Administrative Expense Claim; (b) a Professional Fee Claim; (c) a Priority Tax Claim; (d) a Secured Tax Claim; (e) an Other Priority Claim; (f) an Other Secured Claim; (g) a Prime Core General Unsecured Claim; (h) a Prime Trust General Unsecured Claim; (i) a Prime Digital General Unsecured Claim; (j) a Section 510(b) Claim; (k) an Intercompany Claim; or (l) a Claim that is secured, subordinated, or entitled to priority under the Bankruptcy Code.

1.118.   "Prime Trust" means Prime Trust, LLC.

1.119.   "Prime Trust General Unsecured Claim" means any Claim, including any Customer Claim, against Prime Trust that is not (a) an Administrative Expense Claim; (b) a Professional Fee Claim; (c) a Priority Tax Claim; (d) a Secured Tax Claim; (e) an Other Priority Claim; (f) an Other Secured Claim; (g) a Prime Core General Unsecured Claim; (h) a Prime Digital General Unsecured Claim; (i) a Prime IRA General Unsecured Claim; (j) a Section 510(b) Claim; (k) an Intercompany Claim; or (l) a Claim that is secured, subordinated, or entitled to priority under the Bankruptcy Code.

1.120.   "Priority Tax Claim" means any Secured Claim or unsecured Claim of a Governmental Unit of the kind entitled to priority in payment as specified in sections 502(i) and 507(a)(8) of the Bankruptcy Code.

1.121.   "Professional" means a Person retained in the Chapter 11 Cases pursuant to and in accordance with sections 327, 363, or 1103 of the Bankruptcy Code and to be compensated for services rendered and expenses incurred pursuant to sections 327, 328, 329, 330, 331, or 363 of the Bankruptcy Code.

1.122.   "Professional Fee Claim" means any Administrative Expense Claim by a Professional for compensation for services rendered or reimbursement of expenses incurred by such Professional through and including the Effective Date to the extent such fees and expenses have not been paid pursuant to an order of the Bankruptcy Court.  To the extent the Bankruptcy Court denies or reduces by a Final Order any amount of a Professional's requested fees and expenses, then the amount by which such fees or expenses are reduced or denied shall reduce the applicable Professional Fee Claim.

1.123.   "Professional Fee Escrow Account" means an escrow account funded by the Debtors with Cash no later than the Effective Date in an amount equal to the Professional Fee Escrow Amount.

1.124.   "Professional Fee Escrow Amount" means the aggregate amount of Professional Fee Claims and other unpaid fees and expenses the Professionals have incurred or will incur in rendering services in connection with the Chapter 11 Cases prior to and as of the Confirmation Date projected to be outstanding as of the anticipated Effective Date, which shall be estimated pursuant to the method set forth in Article 2.3 of the Plan.

1.125.    "Proof of Claim" means a proof of Claim filed against any of the Debtors in the Chapter 11 Cases.

1.126.    "Pro Rata" means the proportion that an Allowed Claim or an Allowed Interest in a particular Class bears to the aggregate amount of Allowed Claims or Allowed Interests in that Class.

1.127.    "Purchaser" means, if applicable, one or more third-party Persons selected to purchase the Debtors' Assets in connection with a Sale Transaction.

1.128.    "Reinstated" or "Reinstatement" means, with respect to Claims and Interests, that the Claim or Interest shall be rendered Unimpaired in accordance with section 1124 of the Bankruptcy Code.

1.129.    "Released Parties" means, subject to the outcome of the Debtors' investigation, collectively, in each case in its capacity as such:  (a) the Debtors; (b) the Reorganized Debtors, (c) the Wind-Down Debtor; (d) the Special Committee, and each of the members thereof, solely in their capacity as such; (e) the Creditors' Committee, and each of the members thereof, solely in their capacity as such; (f) each of the Released Professionals; (g) if applicable, the Purchaser; and (h) if applicable, the Plan Sponsor; *provided, however*, that (x) if (i) the Asset Purchase Agreement is terminated, the Purchaser shall not be a "Released Party" under the Plan or (ii) the Plan Sponsorship Agreement is terminated, the Plan Sponsor shall not be  a "Released Party" under the Plan, (y) Mr. Jor Law shall not be a "Released Party" under the Plan, and (z) notwithstanding anything else in this paragraph, the directors and officers against whom the Debtors hold Non-Released D&O Claims as of the Petition Date shall not be "Released Parties" under the Plan;

1.130.    "Released Professionals" means the following professionals retained by the Debtors and the Creditors' Committee: (a) McDermott Will & Emery LLP; (b) M3 Capital Partners LLC; (c) Galaxy Investment Partners LLC; (d) Bankruptcy Management Solutions, Inc. d/b/a Stretto; (e) Brown Rudnick, LLP; (f) Womble Bond Dickinson (US) LLP; and (g) Province, LLC.

1.131.    "Releasing Parties" means collectively, and in each case, solely in their respective capacities as such:  (a) the Released Parties; (b) all Holders of Claims and Interests that are deemed to accept this Plan and who do not affirmatively opt out of the releases provided by the Plan; (c) all Holders of Claims who (i) vote to accept or reject the Plan or (ii) abstains from voting and, in the case of either (i) or (ii), do not affirmatively opt out of the voluntary release contained in Article 10.5 of the Plan by checking the "opt-out" box on the ballot and returning it in accordance with the instructions set forth thereon; *provided, however*, that if (i) the Asset Purchase Agreement is terminated, the Purchaser shall not be a "Releasing Party" under the Plan and (ii) the Plan Sponsorship Agreement is terminated, the Plan Sponsor shall not be a "Releasing Party" under the Plan.  For the avoidance of doubt, no Holder of any Claim or Interest that is deemed to reject this Plan shall be a Releasing Party.

1.132.    "Reorganized Debtor" means a Debtor, or any successor or assign thereto, by merger, consolidation, reorganization, or otherwise, in the form of a corporation, limited liability company, partnership, or other form, as the case may be, on and after the Effective Date.

1.133.    "Reorganized Equity Interests" means the Interests in the Reorganized Debtors to be issued on the Effective Date pursuant to a Reorganization Transaction.

1.134.    "Reorganization Transaction Documents" means the New Organizational Documents, the Plan Sponsorship Agreement, the Restructuring Transactions Memorandum, and any other

documents that the Debtors and the Plan Sponsor reasonably determine are necessary or appropriate to implement the Reorganization Transaction.

1.135. "Reorganization Transactions" means those mergers, amalgamations, consolidations, reorganizations, arrangements, continuances, restructurings, transfers, conversions, dispositions, liquidations, dissolutions, or other corporate transactions that the Debtors and the Plan Sponsor, if applicable, determine to be necessary to implement the transactions described in this Plan, as described in more detail in Article 6.7 herein, including, without limitation, (i) issuance of the Reorganized Equity Interests; (ii) execution of the New Organizational Documents; (iii) vesting of the Debtors' Assets (other than the Wind-Down Debtor Assets), as applicable, in the Reorganized Debtors, in each case, in accordance with this Plan; and (iv) the other transactions contemplated by the Plan, the Plan Sponsorship Agreement, or that the Debtors and the Plan Sponsor reasonably determine are necessary or appropriate to implement any of the foregoing, in each case, in accordance with this Plan and the Plan Sponsorship Agreement.

1.136. "Residual Estate" means the chapter 11 estate that shall remain open following the Effective Date for purposes of administering this Plan, as such Entity is identified in the Restructuring Transactions Memorandum.

1.137. "Residual Professional Fee Escrow Amount" means any amounts remaining in the Professional Fee Escrow after the payment in full of all Professional Fee Claims.

1.138. "Restructuring Transactions Memorandum" means that certain memorandum as may be amended, supplemented, or otherwise modified from time to time, describing the steps to be carried out to effectuate the Reorganization Transactions, the form of which shall be included in the Plan Supplement.

1.139. "Sale Transaction" means a sale (or sales) of all or substantially all of either the Assets pursuant to section 363 of the Bankruptcy Code and one or more Asset Purchase Agreements.

1.140. "Sale Transaction Documents" means all documents executed and delivered by the Debtors and the Purchaser in connection with the Sale Transaction.

1.141. "Schedules" means the schedules of assets and liabilities and the statements of financial affairs filed by the Debtors under section 521 of the Bankruptcy Code, Bankruptcy Rule 1007, and the Official Bankruptcy Forms of the Bankruptcy Rules, as such schedules and statements have been or may be supplemented or amended from time to time.

1.142. "Schedule of Assumed Contracts and Leases" means a schedule that may be Filed as part of the Plan Supplement of certain Executory Contracts and Unexpired Leases to be assumed by the Debtors pursuant to the Plan, as the same may be amended, modified, or supplemented from time to time by the Debtors, the Reorganized Debtors, or the Wind-Down Debtor, as applicable, in accordance with the Plan.

1.143. "Schedule of Rejected Contracts and Leases" means a schedule that may be Filed as part of the Plan Supplement of certain Executory Contracts and Unexpired Leases to be rejected by the Debtors pursuant to the Plan, as the same may be amended, modified, or supplemented from time to time by the Debtors, the Reorganized Debtors, or the Wind-Down Debtor, as applicable, in accordance with the Plan.

1.144.  "Schedule of Vested Causes of Action" means the schedule of certain Causes of Action of the Debtors that are not released, waived, settled, compromised, or transferred pursuant to the Plan, as the same may be amended, modified, or supplemented from time to time by the Debtors, the Reorganized Debtors, or the Wind-Down Debtor, as applicable, which shall be included in the Plan Supplement.  For the avoidance of doubt, any failure to specifically list any Causes of Action on the Schedule of Vested Causes of Action shall not be deemed a waiver or admission that any such Cause of Action does not constitute Vested Causes of Action.

1.145.  "Section 510(b) Claim" means any Claim against a Debtor subject to subordination under section 510(b) of the Bankruptcy Code.

1.146.  "Secured" means, when referring to a Claim:  (a) secured by a Lien on property in which the applicable Estate has an interest, which Lien is valid, perfected, and enforceable pursuant to applicable law or by reason of a Bankruptcy Court order, or that is subject to a valid right of setoff pursuant to section 553 of the Bankruptcy Code, to the extent of the value of the creditor's interest in such Estate's interest in such property or to the extent of the amount subject to setoff, as applicable, as determined in accordance with section 506(a) of the Bankruptcy Code or (b) Allowed pursuant to the Plan as a secured Claim.

1.147.  "Secured Tax Claim" means any Secured Claim against a Debtor that, absent its Secured status, would be entitled to priority in right of payment under section 507(a)(8) of the Bankruptcy Code (determined irrespective of time limitations), including any related Secured Claim for penalties.

1.148.  "Securities Act" means the U.S. Securities Act of 1933, 15 U.S.C. §§ 77a-77aa, as now in effect or hereafter amended, and the rules and regulations promulgated thereunder.

1.149.  "Security" has the meaning set forth in section 2(a)(1) of the Securities Act.

1.150.  "Solicitation Materials" means all solicitation materials with respect to the Plan.

1.151.  "Special Committee" means the special restructuring committee of the Debtors, which is comprised of (a) John Guedry, (b) John Wilcox, and (c) Michael Wyse.

1.152.  "Tax Code" means the Internal Revenue Code of 1986, as amended from time to time.

1.153.  "U.S. Trustee" means the United States Trustee for Region 3.

1.154.  "U.S. Trustee Fees" means fees arising under 28 U.S.C. § 1930(a)(6), and accrued interest thereon arising under 31 U.S.C. § 3717, if any.

1.155.  "Unclaimed Distribution" means any distribution under the Plan on account of an Allowed Claim or Allowed Interest to a Holder that, after the expiration of six months after the Effective Date, has not:  (a) accepted a distribution, (b) given notice to the Debtors, the Reorganized Debtors, or the Wind-Down Debtor, as applicable, of an intent to accept a particular distribution, (c) responded to the Debtors', the Reorganized Debtors', or the Wind-Down Debtor, as applicable, requests for information necessary to facilitate a particular distribution, or (d) taken any other action necessary to facilitate such distribution.

1.156.  "Unexpired Lease" means a lease to which one or more of the Debtors is a party that is subject to assumption or rejection under sections 365 or 1123 of the Bankruptcy Code.

1.157.   "Unimpaired" means, with respect to a Claim, Interest or Class of Claims or Interests, not "impaired" within the meaning of section 1123(a)(4) and section 1124 of the Bankruptcy Code.

1.158.   "Vested Causes of Action" means the Causes of Action vesting in the Wind-Down Debtor or the Creditors' Litigation Trust, including, but not limited to, (i) those Causes of Action enumerated on the Schedule of Vested Causes of Action, (ii) all 98f Wallet Causes of Action held by the Debtors, which shall be included in the Plan Supplement.

1.159.   "Voting Deadline" means October 23, 2023.

1.160.   "Wind-Down Debtor" means a Debtor, or any successor or assign thereto, by merger, consolidation, reorganization, or otherwise, in the form of a corporation, limited liability company, partnership, or other form, as the case may be, on and after the Effective Date, and as described in Article 6.10 herein  to, among other things, effectuate the wind-down of the Debtors and the Wind-Down Debtor, commence, litigate and settle the Vested Causes of Action that are not released, waived, settled, compromised, or transferred under the Plan and make distributions pursuant to the terms of the Plan and the Agreement; *provided* that, for the avoidance of doubt, the Wind-Down Debtor shall not conduct any business operations or continue the Debtors' business operations after the Effective Date.

1.161.   "Wind-Down Debtor Assets" means all of the Debtors' assets remaining in and/or transferred to, and vesting in, the Wind-Down Debtor pursuant to the Plan Administrator Agreement, which shall include, without limitation, (a) all Cash and Cryptocurrency on-hand, including the Wind-Down Reserve, (b) the Vested Causes of Action (unless otherwise released, waived, compromised, settled, transferred, or discharged pursuant to the Plan); and (c) the Residual Professional Fee Escrow Amounts. For the avoidance of doubt, the Professional Fee Escrow is not a Wind-Down Debtor Asset.

1.162.   "Wind-Down Debtor Expenses" means all actual and necessary costs and expenses incurred by the Wind-Down Debtor or Plan Administrator, as applicable, in connection with carrying out the obligations of the Wind-Down Debtor pursuant to the terms of the Plan and the Plan Administration Trust Agreement.

1.163.   "Wind-Down Debtor Oversight Committee" means the oversight committee, which is tasked with overseeing the Wind-Down Debtor in accordance with the Plan and the Plan Administration Agreement, which shall be selected by the Committee, in consultation with the Debtors.

1.164.   "Wind-Down Reserve" means the amount set forth in the Wind-Down Budget to fund the Wind-Down Debtor.

**B.      Interpretation; Application of Definitions and Rules of Construction**.

Unless otherwise specified, all section or exhibit references in the Plan are to the respective section in, or exhibit to, the Plan, as the same may be amended, waived or modified from time to time.  The words "herein," "hereof," "hereto," "hereunder," and other words of similar import refer to the Plan as a whole and not to any particular section, subsection or clause contained therein.  The headings in the Plan are for convenience of reference only and shall not limit or otherwise affect the provisions hereof.  For purposes herein:  (i) in the appropriate context, each term, whether stated in the singular or the plural, shall include both the singular and the plural, and pronouns stated in the masculine, feminine, or neuter gender shall include the masculine, feminine, and the neuter gender; (ii) any reference herein to a contract, lease, instrument, release, indenture, or other agreement or document being in a particular form or on particular terms and conditions means that the referenced document shall be substantially in that form or substantially

on those terms and conditions; (iii) unless otherwise specified, all references herein to "Articles" are references to Articles hereof or hereto; (iv) the rules of construction set forth in section 102 of the Bankruptcy Code shall apply; and (v) any term used in capitalized form herein that is not otherwise defined but that is used in the Bankruptcy Code or the Bankruptcy Rules shall have the meaning assigned to that term in the Bankruptcy Code or the Bankruptcy Rules, as the case may be.

      **C.**      **Controlling Document**.

In the event of an inconsistency between the Plan and any other document, the terms of the Plan shall control (unless stated otherwise in such other document). The provisions of the Plan and the Confirmation Order shall be construed in a manner consistent with each other so as to effect the purposes of each; *provided, however*, that, if there is determined to be any inconsistency between any Plan provision and any provision of the Confirmation Order that cannot be so reconciled, then, solely to the extent of such inconsistency, the provisions of the Confirmation Order shall govern and any such provision of the Confirmation Order shall be deemed a modification of the Plan and shall control and take precedence.

**ARTICLE 2**      **ADMINISTRATIVE EXPENSE, PROFESSIONAL FEE CLAIMS, PRIORITY TAX CLAIMS, AND U.S. TRUSTEE FEES**.

      2.1      *Administrative Expense Claims.*

      (a)      <u>Deadline to File Administrative Expense Claims</u>.

Holders of an Administrative Expense Claim, other than Holders of (i) Professional Fee Claims; (ii) Administrative Expense Claims that have been Allowed on or before the Effective Date; (iii) Administrative Expense Claim on account of fees and expenses incurred on or after September 16, 2023 but before the Effective Date by ordinary course professionals retained by the Debtors pursuant to an order of the Bankruptcy Court; (iv) Administrative Expense Claims arising, in the ordinary course of business, out of the employment by one or more Debtors of an individual from and after September 16, 2023 but before the Effective Date, but only to the extent that such Administrative Expense Claims are solely for outstanding wages, commissions, accrued benefits, or reimbursement of business expenses; (v) U.S. Trustee Fees; and (vi) Intercompany Claims, must file with the Bankruptcy Court and serve upon the Debtors, the Reorganized Debtors, or the Wind-Down Debtor, as applicable, **proof of such Administrative Expense Claim so as to be received by 5:00 p.m. (prevailing Eastern Time) on the Administrative Expense Claims Bar Date**. Such proof of Administrative Expense Claim must include at a minimum: (i) the name of the applicable Debtor that is purported to be liable for the Administrative Expense Claim; (ii) the name of the Holder of the Administrative Expense Claim; (iii) the amount of the Administrative Expense Claim; (iv) the basis of the Administrative Expense Claim; and (v) supporting documentation for the Administrative Expense Claim.

Holders of Administrative Expense Claims that were required to file and serve a request for payment of such Administrative Expense Claims and that did not file and serve such a request by the Administrative Expense Claims Bar Date shall be forever barred, estopped, and enjoined from asserting such Administrative Expense Claims against the Debtors, the Reorganized Debtors, or the Wind-Down Debtor, as applicable, or their respective property, including the Wind-Down Debtor Assets. The Debtors, the Reorganized Debtors, or the Wind-Down Debtor, as applicable, may file and serve objections to Administrative Expense Claims on or before the Administrative Claims Objection Bar Date.

    (b)    <u>Treatment of Allowed Administrative Expense Claims</u>.

Except to the extent that a Holder of an Allowed Administrative Expense Claim and the Debtors, the Reorganized Debtors, the Wind-Down Debtor,  or the Plan Administrator, as applicable, agree to different treatment, and subject to <u>Article 2.3</u> hereof, the Debtors, the Reorganized Debtors, the Wind-Down Debtor, or the Plan Administrator, as applicable, shall pay to each Holder of an Allowed Administrative Expense Claim in Cash in an amount equal to such Claim attributable to the applicable Debtor within, or as soon thereafter as is reasonably practicable, thirty (30) days after the Effective Date; *provided*, *however,* that Allowed Administrative Expense Claims representing liabilities incurred in the ordinary course of business by the Debtors, as debtors in possession, shall be paid by the Debtors, the Reorganized Debtors, or the Wind-Down Debtor, as applicable, in the ordinary course of business, consistent with past practice and in accordance with the terms and subject to the conditions of any orders or agreements governing, instruments evidencing, or other documents establishing, such liabilities.

    2.2    *Professional Fee Claims.*

    (a)    <u>Deadline to File Professional Fee Claims</u>.

Any Professional seeking approval by the Bankruptcy Court of compensation for services rendered or reimbursement of expenses incurred through and including the Effective Date under sections 327, 328, 330, 331, 503(b)(2), 503(b)(3), 503(b)(4), 503(b)(5), or 1103 of the Bankruptcy Code shall file, on or before the Professional Fee Claim Bar Date, final requests for payment of such Professional Fee Claims.  The Bankruptcy Court shall determine the Allowed amounts of such Professional Fee Claims after notice and a hearing in accordance with the procedures established by the Bankruptcy Code and Bankruptcy Rules.

    (b)    <u>Payment of Professional Fee Claims</u>.

The Debtors, the Reorganized Debtors, or the Wind-Down Debtor, as applicable, shall pay Professional Fee Claims in Cash to such Professionals in the amount the Bankruptcy Court allows, including from funds held in the Professional Fee Escrow Account, as soon as reasonably practicable after such Professional Fee Claims are Allowed by entry of an order of the Bankruptcy Court; *provided, however*, that the obligations of the Debtors, the Reorganized Debtors, or the Wind-Down Debtor, as applicable, to pay Allowed Professional Fee Claims shall not be limited or deemed limited to funds held in the Professional Fee Escrow Account.

    (c)    <u>Professional Fee Escrow Amount</u>.

The Professionals shall deliver to the Debtors a reasonable and good-faith estimate of their unpaid fees and expenses incurred in rendering services to the Debtors before and as of the Confirmation Date projected to be outstanding as of the anticipated Effective Date, and shall deliver such estimate no later than five Business Days prior to the anticipated Effective Date.  For the avoidance of doubt, no such estimate shall be considered or deemed an admission or limitation with respect to the amount of the fees and expenses that are the subject of a Professional's final request for payment of Professional Fee Claims Filed with the Bankruptcy Court, and such Professionals are not bound to any extent by the estimates.  If a Professional does not provide an estimate, the Debtors may estimate the unpaid and unbilled fees and expenses of such Professional.  The total aggregate amount so estimated to be outstanding as of the anticipated Effective Date shall be utilized by the Debtors to determine the amount to be funded to the Professional Fee Escrow Account; *provided, however*, that the Debtors, the Reorganized Debtors, or the Wind-Down Debtor, as applicable, shall use Cash on hand to increase the amount of the Professional Fee Escrow Account to the extent fee applications are Filed after the Effective Date in excess of the amount held in the Professional Fee Escrow Account based on such estimates.

(d)      Professional Fee Escrow Account.

No later than the Effective Date, the Debtors shall establish and fund the Professional Fee Escrow Account with Cash equal to the Professional Fee Escrow Amount.  The Professional Fee Escrow Account shall be maintained in trust solely for the Professionals and the U.S. Trustee and for no other Entities until all quarterly U.S. Trustee fees and all Professional Fee Claims Allowed by the Bankruptcy Court have been irrevocably paid in full to the U.S. Trustee or to the Professionals pursuant to one or more Final Orders of the Bankruptcy Court.  No Liens, claims, or interests shall encumber the Professional Fee Escrow Account or Cash held in the Professional Fee Escrow Account in any way.  No funds held in the Professional Fee Escrow Account shall be property of the Estates of the Debtors, the Residual Estate, the Reorganized Debtors, or the Wind-Down Debtor, as applicable.  When all Professional Fee Claims Allowed by the Bankruptcy Court have been irrevocably paid in full to the Professionals pursuant to one or more Final Orders of the Bankruptcy Court, and all U.S. Trustee quarterly fees plus statutory interest, if any, have been paid in full, any remaining funds held in the Professional Fee Escrow Account shall be turned over to the Wind-Down Debtor without any further notice to or action, order, or approval of the Bankruptcy Court or any other Entity.

(e)      Post-Confirmation Date Fees and Expenses.

Except as otherwise specifically provided in the Plan, from and after the Effective Date, the Debtors, the Reorganized Debtors, or the Wind-Down Debtor, as applicable, shall, in the ordinary course of business and without any further notice to or action, order, or approval of the Bankruptcy Court, pay in Cash the reasonable and documented legal, professional, or other fees and expenses related to implementation of the Plan and Consummation incurred by the Debtors or Reorganized Debtors, as applicable, on and after the Effective Date. Upon the Effective Date, any requirement that Professionals comply with sections 327 through 331, 363, and 1103 of the Bankruptcy Code in seeking retention or compensation for services rendered after such date shall terminate, and the  or the Plan Administrator, as applicable, may employ and pay any Professional in the ordinary course of business for the period after the Confirmation Date without any further notice to or action, order, or approval of the Bankruptcy Court.

2.3      *Priority Tax Claims.*

Except to the extent that a Holder of an Allowed Priority Tax Claim agrees to a different treatment, each Holder of an Allowed Priority Tax Claim shall receive, at the sole option of the Debtors, the Reorganized Debtors, or the Wind-Down Debtor, as applicable, (i) Cash in an amount equal to such Allowed Priority Tax Claim on the later of (a) forty-five (45) calendar days after the Effective Date (or as soon as reasonably practicable thereafter), (b) the first Business Day after the date that is thirty (30) days after the date such Priority Tax Claim becomes an Allowed Priority Tax Claim, and (c) the date such Allowed Priority Tax Claim is due and payable in the ordinary course, or as soon thereafter as is reasonably practicable, or (ii) equal annual Cash payments in an aggregate amount equal to the amount of such Allowed Priority Tax Claim, together with interest at the applicable rate under section 511 of the Bankruptcy Code, over a period not exceeding five (5) years from and after the Petition Date.  The Holders of Allowed Priority Tax Claims shall retain their tax liens on their collateral to the same validity, extent and priority as existed on the Petition Date until all validly determined taxes and related interest, penalties, and fees (if any) have been paid in full.  To the extent a Holder of an Allowed Priority Tax Claim is not paid in the ordinary course of business, payment of the Allowed Priority Tax Claim shall include interest through the date of payment at the applicable state statutory rate, as set forth in sections 506(b), 511, and 1129 of the Bankruptcy Code.

2.4    *Non-Estate Assets.*

Any Assets of a Debtor that are determined by such Debtor or by the Bankruptcy Court not to be property of such Debtor's estate shall be (i) transferred, if necessary, to the Wind-Down Debtor; and (ii) returned to the owner or owners of such Assets in kind, subject to set-off for (a) any negative Account balances, including for any ACH chargeback transactions and (b) any applicable withdrawal fees. For the avoidance of doubt, subject to the outcome of a final determination by the Debtors or the Bankruptcy Court, as applicable, (w) any such assets shall not be included as part of the Cash Allocation or the Cryptocurrency Allocation, (x) any General Unsecured Claim against a Debtor shall be net of non-estate assets actually received by the Holder of such General Unsecured Claim, (y) in no circumstance shall any such assets be transferred to or become property of the Reorganized Debtors and (z) distributions made in accordance with Article 7.6 of the Plan shall only be from Assets, or proceeds of Assets, determined to be property of the estate.

2.5    *U.S. Trustee Fees.*

All U.S. Trustee Fees due and payable before the Effective Date in these cases shall be paid by the Debtors on the Effective Date. On and after the Effective Date, all U.S. Trustee Fees shall be paid when due and payable. The Debtors shall file all monthly operating reports due prior to the Effective Date when they become due, using UST Form 11-MOR. After the Effective Date, each of the Reorganized Debtors, the Wind-Down Debtor, and the Creditors' Litigation Trust (if any) shall file with the Bankruptcy Court separate UST Form 11-PCR reports when they become due. Each and every one of the Debtors, the Reorganized Debtors, the Wind-Down Debtor, and the Creditors' Litigation Trust (if any) shall remain obligated to pay Quarterly Fees to the Office of the U.S. Trustee until the earliest of that particular Debtor's case being closed, dismissed, or converted to a case under chapter 7 of the Bankruptcy Code. The U.S. Trustee shall not be required to file any Administrative Claim in the case, and shall not be treated as providing any release under the Plan.

**ARTICLE 3        CLASSIFICATION OF CLAIMS AND INTERESTS.**

3.1    *Classification of Claims and Interests.*

Except for the Claims addressed in Article 2 of the Plan, all Claims against and Interests in the Debtors are classified in the Classes set forth in this Article 3 for all purposes, including voting, Confirmation, and distributions pursuant to the Plan and in accordance with section 1122 and section 1123(a)(1) of the Bankruptcy Code. A Claim or an Interest is classified in a particular Class only to the extent that the Claim or Interest qualifies within the description of that Class and is classified in other Classes to the extent that any portion of the Claim or Interest qualifies within the description of such other Classes. A Claim or an Interest also is classified in a particular Class for the purpose of receiving distributions under the Plan only to the extent that such Claim or Interest is an Allowed Claim or Allowed Interest in that Class and has not been paid, released, or otherwise satisfied prior to the Effective Date.

3.2    *Formation of Debtor Groups for Convenience Only.*

This Plan (including, but not limited to, Article 2 and Article 3) groups the Debtors together solely for the purpose of describing treatment under this Plan, confirmation of this Plan, and distributions to be made in respect of Claims against and Interests in the Debtors under this Plan. Except as provided in Article 6 of the Plan, such groupings shall not affect each Debtor's status as a separate legal entity, change the organizational structure of the Debtors' business enterprise, constitute a change of control of any Debtor for any purpose, cause a merger or consolidation of any legal entities, or cause the transfer of any assets.

3.3     *Summary of Classification.*

A summary of the classification of Claims against and Interests in each Debtor pursuant to the Plan is set forth in the following chart.  The Plan constitutes a separate chapter 11 plan for each of the Debtors, and accordingly, the classification of Claims and Interests set forth below applies separately to each of the Debtors.  All of the potential Classes for the Debtors are set forth herein.  Certain of the Debtors may not have Holders of Claims or Interests in a particular Class or Classes, and such Claims or Interests shall be treated as set forth in <u>Article 3</u> of the Plan.  Voting tabulations for recording acceptances or rejections of the Plan will be conducted on a Debtor-by-Debtor basis as set forth above.[2]

| Class | Claim or Interest | Status | Voting Rights |
|-------|-------------------|--------|---------------|
| 1A | Secured Tax Claims | Unimpaired | Not Entitled to Vote (Deemed to Accept) |
| 1B | Other Secured Claims | Unimpaired | Not Entitled to Vote (Deemed to Accept) |
| 2 | Other Priority Claims | Unimpaired | Not Entitled to Vote (Deemed to Accept) |
| 3A | Prime Core General Unsecured Claims | Impaired | Entitled to Vote |
| 3B | Prime Trust General Unsecured Claims | Impaired | Entitled to Vote |
| 3C | Prime IRA General Unsecured Claims | Impaired | Entitled to Vote |
| 3D | Prime Digital General Unsecured Claims | Impaired | Entitled to Vote |
| 4 | Convenience Claims | Impaired | Entitled to Vote |
| 5 | Section 510(b) Claims | Impaired | Not Entitled to Vote (Deemed to Reject) |
| 6 | Intercompany Claims | Unimpaired / Impaired | Not Entitled to Vote (Presumed to Accept) |
| 7 | Intercompany Interests | Unimpaired / Impaired | Not Entitled to Vote (Presumed to Accept) |
| 8 | Existing Equity Interests | Impaired | Not Entitled to Vote (Deemed to Reject) |

---

[2]     The Debtors reserve the right to separately classify Claims or Interests to the extent necessary to comply with any requirements under the Bankruptcy Code or applicable law.

3.4     *Special Provision Governing Unimpaired Claims.*

Except as otherwise provided in the Plan, nothing under the Plan shall affect the rights of the Debtors, the Reorganized Debtors, or the Wind-Down Debtor, as applicable, in respect of any Unimpaired Claims, including all rights in respect of legal and equitable defenses to, or setoffs or recoupments against, any such Unimpaired Claims.

3.5     *Subordinated Claims.*

Except as expressly provided herein, the allowance, classification, and treatment of all Allowed Claims against and Allowed Interests in the Debtors and the respective distributions and treatments under the Plan take into account and conform to the relative priority and rights of the Claims and Interests in each Class in connection with any contractual, legal, and equitable subordination rights relating thereto, whether arising under general principles of equitable subordination, section 510(b) of the Bankruptcy Code, or otherwise.  Pursuant to section 510 of the Bankruptcy Code, t the Debtors, the Reorganized Debtors, or the Wind-Down Debtor, as applicable, reserve the right to reclassify any Allowed Claim or Allowed Interest in accordance with any contractual, legal, or equitable subordination relating thereto.

3.6     *Intercompany Interests.*

To the extent Reinstated under the Plan, distributions (if any) on account of Intercompany Interests are not being received by Holders of such Intercompany Interests on account of their Intercompany Interests but for the purposes of administrative convenience and due to the importance of maintaining the corporate structure given the existing intercompany systems connecting the Debtors and their Affiliates, and in exchange for the Debtors' or the Wind-Down Debtor's agreement, as applicable, under the Plan to make certain distributions to the Holders of Allowed Claims.

3.7     *Controversy Concerning Impairment.*

If a controversy arises as to whether any Claims or Interests, or any Class of Claims or Interests, are Impaired, the Bankruptcy Court shall, after notice and a hearing, determine such controversy on or before the Confirmation Date.

**ARTICLE 4        TREATMENT OF CLAIMS AND INTERESTS.**

4.1     *Class 1A – Secured Tax Claims.*

(a)     *Classification*:  Class 1A consists of all Secured Tax Claims.

(b)     *Treatment*:  Each Holder of an Allowed Secured Tax Claim shall receive, in full and final satisfaction of such Allowed Secured Tax Claim, at the option of the applicable Debtor, payment in full in Cash of such Holder's Allowed Secured Tax Claim or such other treatment rendering such Holder's Allowed Secured Tax Claim Unimpaired.

(c)     *Voting*:  Class 1A is Unimpaired under the Plan.  Holders of Allowed Secured Tax Claims are conclusively presumed to have accepted the Plan under section 1126(f) of the Bankruptcy Code.  Therefore, Holders of Allowed Secured Tax Claims are not entitled to vote to accept or reject the Plan.

4.2    *Class 1B – Other Secured Claims.*

    (a)    *Classification*:  Class 1B consists of all Other Secured Claims.

    (b)    *Treatment*:  Each Holder of an Allowed Other Secured Claim shall receive, in full and final satisfaction of such Allowed Other Secured Claim, at the option of the applicable Debtor, payment in full in Cash of such Holder's Allowed Other Secured Claim or such other treatment rendering such Holder's Allowed Other Secured Claim Unimpaired.

    (c)    *Voting*:  Class 1B is Unimpaired under the Plan.  Holders of Allowed Other Secured Claims are conclusively presumed to have accepted the Plan under section 1126(f) of the Bankruptcy Code.  Therefore, Holders of Allowed Other Secured Claims are not entitled to vote to accept or reject the Plan.

4.3    *Class 2 – Other Priority Claims.*

    (a)    *Classification*:  Class 2 consists of all Other Priority Claims.

    (b)    *Treatment*:  Each Holder of an Allowed Other Priority Claim shall receive, in full and final satisfaction of such Allowed Other Priority Claim, at the option of the applicable Debtor, payment in full in Cash of such Holder's Allowed Other Priority Claim or such other treatment rendering such Holder's Allowed Other Priority Claim Unimpaired.

    (c)    *Voting*:  Class 2 is Unimpaired under the Plan.  Holders of Allowed Other Priority Claims are conclusively presumed to have accepted the Plan under section 1126(f) of the Bankruptcy Code.  Therefore, Holders of Allowed Other Priority Claims are not entitled to vote to accept or reject the Plan.

4.4    *Class 3A – Prime Core General Unsecured Claims.*

    (a)    <u>Classification</u>:  Class 3A consists of all Prime Core General Unsecured Claims.

    (b)    <u>Treatment</u>:  Except to the extent a Holder of an Allowed Prime Core General Unsecured Claim agrees to a less favorable treatment, in full and final satisfaction of such Claim, each Holder of an Allowed Prime Core General Unsecured Claim will receive in exchange for such Allowed Prime Core General Unsecured Claim, its Pro Rata share of, in each case, as applicable and subject to Article 7.6 of the Plan:

        (i)    the Cash Allocation attributable to Prime Core; and/or

        (ii)    the Cryptocurrency Allocation attributable to Prime Core; and

        (iii)    any distribution from the Creditors' Litigation Trust.

    (c)    <u>Voting</u>:  Class 3A is Impaired under the Plan.  Holders of Allowed Prime Core General Unsecured Claims are entitled to vote to accept or reject the Plan.

(d)     All Holders of Class 3A Claims shall receive, in total, an equivalent percentage of recovery on account of their Claims, but in no event more than 100% of recovery on account of their Claims.

4.5     *Class 3B – Prime Trust General Unsecured Claims.*

(a)     <u>Classification</u>:  Class 3B consists of all Prime Trust General Unsecured Claims.

(b)     <u>Treatment</u>:  Except to the extent a Holder of an Allowed Prime Trust General Unsecured Claim agrees to a less favorable treatment, in full and final satisfaction of such Claim, each Holder of an Allowed Prime Trust General Unsecured Claim will receive in exchange for such Allowed Prime Trust General Unsecured Claim, its Pro Rata share of, in each case, as applicable and subject to Article 7.6 of the Plan:

(i)     the Cash Allocation attributable to Prime Trust; or

(ii)    the Cryptocurrency Allocation attributable to Prime Trust; and

(iii)   any distribution from the Creditors' Litigation Trust.

(c)     <u>Voting</u>:  Class 3B is Impaired under the Plan.  Holders of Allowed Prime Trust General Unsecured Claims are entitled to vote to accept or reject the Plan.

(d)     All Holders of Class 3B Claims shall receive, in total, an equivalent percentage of recovery on account of their Claims, but in no event more than 100% of recovery on account of their Claims.

4.6     *Class 3C – Prime IRA General Unsecured Claims.*

(a)     <u>Classification</u>:  Class 3C consists of Prime IRA General Unsecured Claims.

(b)     <u>Treatment</u>:  Except to the extent a Holder of an Allowed Prime IRA General Unsecured Claim agrees to a less favorable treatment, in full and final satisfaction of such Claim, each Holder of an Allowed Prime IRA General Unsecured Claim will receive in exchange for such Allowed Prime IRA General Unsecured Claim, its Pro Rata share of, in each case, as applicable and subject to Article 7.6 of the Plan:

(i)     the Cash Allocation attributable to Prime IRA; or

(ii)    the Cryptocurrency Allocation attributable to Prime IRA; and

(iii)   any distribution from the Creditors' Litigation Trust.

(c)     <u>Voting</u>:  Class 3C is Impaired under the Plan.  Holders of Allowed Prime IRA General Unsecured Claims are entitled to vote to accept or reject the Plan.

(d)     All Holders of Class 3C Claims shall receive, in total, an equivalent percentage of recovery on account of their Claims, but in no event more than 100% of recovery on account of their Claims.

4.7    *Class 3D – Prime Digital General Unsecured Claims.*

    (a)    <u>Classification</u>:  Class 3D consists of Prime Digital General Unsecured Claims.

    (b)    <u>Treatment</u>:  Except to the extent a Holder of an Allowed Prime Digital General Unsecured Claim agrees to a less favorable treatment, in full and final satisfaction of such Claim, each Holder of an Allowed Prime Digital General Unsecured Claim will receive in exchange for such Allowed Prime Digital General Unsecured Claim, its Pro Rata share of, in each case, as applicable and subject to Article 7.6 of the Plan:

        (i)    the Cash Allocation attributable to Prime Digital; or

        (ii)    the Cryptocurrency Allocation attributable to Prime Digital; and

        (iii)    any distribution from the Creditors' Litigation Trust.

    (c)    <u>Voting</u>:  Class 3D is Impaired under the Plan.  Holders of Allowed Prime Digital General Unsecured Claims are entitled to vote to accept or reject the Plan.

    (d)    All Holders of Class 3D Claims shall receive, in total, an equivalent percentage of recovery on account of their Claims, but in no event more than 100% of recovery on account of their Claims.

4.8    *Class 4 – Convenience Claims.*

    (a)    <u>Classification</u>:  Class 4 shall consist of all Convenience Claims against the applicable Debtor.

    (b)    <u>Treatment</u>:  Except to the extent a Holder of an Allowed Convenience Claim agrees to a less favorable treatment, in full and final satisfaction of such Claim, each Holder of an Allowed Convenience Claim will receive in exchange for such Allowed Convenience Claim, Cash in an amount equal to 70.00% of the amount of such Allowed Convenience Claim to be paid from the Wind-Down Debtor Assets or the Wind-Down Debtor Assets, as applicable, attributable to the applicable Debtor.

    (c)    <u>Voting</u>:  Class 4 is Impaired under the Plan.  Holders of Allowed Convenience Claims are entitled to vote to accept or reject the Plan.

4.9    *Class 5 – Section 510(b) Claims.*

    (a)    <u>Classification</u>:  Class 5 consists of all Section 510(b) Claims against Prime Core.

    (b)    <u>Allowance</u>:  Notwithstanding anything to the contrary herein, a Section 510(b) Claim against Prime Core, if any such Section 510(b) Claim exists, may only become Allowed by Final Order of the Bankruptcy Court.

    (c)    <u>Treatment</u>:  Holders of Section 510(b) Claims shall not receive or retain any distribution under the Plan on account of such Section 510(b) Claims; *provided, however*, that in the event Allowed Claims in Classes 3A, 3B, 3C, 3D, and 4 are

paid in full, Holders of Section 510(b) Claims shall be entitled to receive distributions on account of such Section 510(b) Claims from the Wind-Down Debtor.

(d)     Voting:  Class 5 is Impaired, and the Holders of Section 510(b) Claims are conclusively deemed to have rejected the Plan pursuant to section 1126(g) of the Bankruptcy Code.  Therefore, the Holders of Section 510(b) Claims are not entitled to vote to accept or reject the Plan.

4.10     *Class 6 – Intercompany Claims.*

(a)     Classification:  Class 6 consists of all Intercompany Claims.

(b)     Treatment:  On the Effective Date, all Intercompany Claims will be, at the option of the Debtors, either (a) reinstated or (b) converted to equity, otherwise set off, settled, distributed, contributed, cancelled, or released and shall not thereafter be subject to any further recharacterization, subordination or objection, in each case in accordance with the Restructuring Transactions Memorandum.

(c)     Voting:  Holders of Intercompany Claims are either Unimpaired or Impaired, and such Holders of Intercompany Claims are conclusively presumed to have accepted the Plan under section 1126(f) of the Bankruptcy Code.  Therefore, Holders of Intercompany Claims are not entitled to vote to accept or reject the Plan.

4.11     *Class 7 – Intercompany Interests.*

(a)     Classification:  Class 7 consists of all Intercompany Interests.

(b)     Treatment:  On the Effective Date, all Intercompany Interests shall be, at the option of the Debtors, either (i) Reinstated in accordance with Article 6.7 of the Plan or (ii) set off, settled, addressed, distributed, contributed, merged, or cancelled.

(c)     Voting:  Holders of Intercompany Interests are either Unimpaired or Impaired, and such Holders of Intercompany Interests are conclusively presumed to have accepted the Plan under section 1126(f) of the Bankruptcy Code.  Therefore, Holders of Intercompany Interests are not entitled to vote to accept or reject the Plan.

4.12     *Class 8 – Existing Equity Interests.*

(a)     Classification:  Class 8 consists of all Existing Equity Interests.

(b)     Treatment:   On the Effective Date, all Existing Equity Interests shall be extinguished, cancelled and released, and Holders of Existing Equity Interests thereof shall not receive any distribution on account of such Existing Equity Interests; *provided, however*, that in the event Allowed Claims in Classes 3A, 3B, 3C, 3D, 4, and 5 are paid in full, Holders of Existing Equity Interests shall be entitled to receive distributions on account of such Existing Equity Interests from the Wind-Down Debtor, as applicable.

(c)　　Voting: Class 8 is Impaired under the Plan.  Holders of Existing Equity Interests are conclusively deemed to have rejected the Plan under section 1126(g) of the Bankruptcy Code. Therefore, Holders of Existing Equity Interests are not entitled to vote to accept or reject the Plan.

## ARTICLE 5        ACCEPTANCE OR REJECTION OF THE PLAN.

5.1    *Class Acceptance Requirement.*

A Class of Claims shall have accepted the Plan if it is accepted by at least two-thirds (2/3) in dollar amount of the Allowed Claims in such Class and more than one-half (1/2) in number of Holders of such Claims, in each case, that have voted on the Plan.

5.2    *Tabulation of Votes on a Non-Consolidated Basis.*

All votes on the Plan shall be tabulated on a non-consolidated basis by Class and by Debtor for the purpose of determining whether the Plan satisfied sections 1129(a)(8) and/or 1129(a)(10).

5.3    *Confirmation Pursuant to Section 1129(b) of the Bankruptcy Code or "Cramdown."*

Because certain classes are deemed to have rejected the Plan, the Debtors will request confirmation of the Plan, as it may be modified and amended from time to time, under section 1129(b) of the Bankruptcy Code with respect to such Classes.  Subject to Article 13.3 and Article 13.4 of this Plan, the Debtors reserve the right to alter, amend, modify, revoke or withdraw this Plan in order to satisfy the requirements of section 1129(b) of the Bankruptcy Code, if necessary.

5.4    *Elimination of Vacant Classes.*

Any Class of Claims or Interests that, as of the commencement of the Confirmation Hearing, does not have at least one Holder of a Claim or Interest that is Allowed in an amount greater than zero for voting purposes shall be considered vacant, deemed eliminated from the Plan for purposes of voting to accept or reject the Plan, and disregarded for purposes of determining whether the Plan satisfies section 1129(a)(8) of the Bankruptcy Code with respect to that Class.

5.5    *Voting Classes; Deemed Acceptance by Non-Voting Classes.*

If a Class contains Claims or Interests eligible to vote and no Holders of Claims or Interests eligible to vote in such Class vote to accept or reject the Plan, the Plan shall be deemed accepted by the Holders of such Claims or Interests in such Class.

## ARTICLE 6        MEANS FOR IMPLEMENTATION.

6.1    *Joint Chapter 11 Plan.*

The Plan is a joint chapter 11 plan for each of the Debtors, with the Plan for each Debtor being non-severable and mutually dependent on the Plan for each other Debtor.

6.2    *No Substantive Consolidation.*

The Plan is a joint plan that does not provide for substantive consolidation of the Debtors' Estates, and on the Effective Date, the Debtors' Estates shall not be deemed to be substantively consolidated for purposes hereof.  Except as specifically set forth herein, nothing in this Plan shall constitute or be deemed

to constitute an admission that any one of the Debtors is subject to or liable for any claim against any other Debtor. Notwithstanding the foregoing, solely for distribution purposes, Holders of Allowed General Unsecured Claims shall be entitled to a single Claim with respect to any particular debt owed.

6.3    *General Settlement of Claims and Interests.*

As discussed in detail in the Disclosure Statement and as otherwise provided herein, pursuant to section 1123 of the Bankruptcy Code and Bankruptcy Rule 9019, and in consideration for the classification, distributions, releases, and other benefits provided under the Plan, on the Effective Date, the provisions of the Plan shall constitute a good-faith compromise and settlement of all Claims, Interests, Causes of Action, and controversies released, settled, compromised, or otherwise resolved pursuant to the Plan. The Plan shall be deemed a motion to approve the good-faith compromise and settlement of all such Claims, Interests, Causes of Action, and controversies pursuant to Bankruptcy Rule 9019, and the entry of the Confirmation Order shall constitute the Bankruptcy Court's approval of such compromise and settlement under section 1123 of the Bankruptcy Code and Bankruptcy Rule 9019 of all such Claims, Interests, Causes of Action, and controversies, as well as a finding by the Bankruptcy Court that such compromise and settlement is fair, equitable, reasonable, and in the best interests of the Debtors, their Estates, and Holders of Claims and Interests. Subject to Article 7 of the Plan, all distributions made to Holders of Allowed Claims and Interests in any Class are intended to be and shall be final.

6.4    *Sources of Consideration for Plan Distributions.*

The Distribution Agent shall fund distributions under the Plan with the Wind-Down Debtor Assets. The Wind-Down Debtor Assets shall be used to pay the Wind-Down Debtor Expenses (including the compensation of the Plan Administrator and any professionals retained by the Wind-Down Debtor), and to satisfy payment of Allowed Claims and Interests as set forth in the Plan.

6.5    *Restructuring Transactions.*

On or about the Effective Date, the Debtors, the Reorganized Debtors, the Wind-Down Debtor, or the Plan Administrator, as applicable, may take all actions as may be necessary or appropriate to effectuate a Reorganization Transaction, a Sale Transaction, or a Liquidation Transaction, as applicable (any of these, a "Restructuring Transaction"), including, in each case, as applicable: (a) the execution and delivery of any appropriate agreements or other documents of merger, amalgamation, consolidation, restructuring, conversion, disposition, transfer, formation, organization, dissolution, or liquidation containing terms that are consistent with the terms of the Plan, and that satisfy the requirements of applicable law and any other terms to which the applicable Persons may agree, including the documents comprising the Plan Supplement; (b) the execution and delivery of appropriate instruments of transfer, assignment, assumption, or delegation of any asset, property, right, liability, debt, or obligation on terms consistent with the terms of the Plan and having other terms for which the applicable Persons agree; (c) the execution, delivery, and filing, if applicable, of appropriate certificates or certificates of incorporation, formation, reincorporation, merger, amalgamation, consolidation, conversion, arrangement, continuance, or dissolution pursuant to applicable Law; (d) such other transactions that are required to effectuate the Restructuring Transactions in the most efficient manner for the Debtors, including in regard to tax matters and any mergers, consolidations, restructurings, conversions, dispositions, transfers, formations, organizations, dissolutions, or liquidations; (e) the dollarization of Cryptocurrency; (f) the execution and delivery of the Plan Administrator Agreement; (g) any transactions necessary or appropriate to form or convert into the Wind-Down Debtor; (h) such other transactions that are required to effectuate the Restructuring Transactions, including any sales, mergers, consolidations, restructurings, conversions, dispositions, transfers, formations, organizations, dissolutions, or liquidations; and (i) all other acts or actions contemplated or reasonably necessary or appropriate to

promptly consummate the Restructuring Transactions, including making filings or recordings that may be required by applicable law.

On the Effective Date, the Debtors will retain or transfer, as applicable, all Wind-Down Debtor Assets to the Wind-Down Debtor.  On or after the Effective Date, the Wind-Down Debtor, or the Plan Administrator, as applicable, (i) may liquidate Cryptocurrency solely to the extent they determine, within their reasonable business judgment, that such liquidation is reasonable and necessary to make payments in Cash as otherwise required under the Plan, and (ii) make distributions of Cash and/or Cryptocurrency to Holders of Allowed Claims.

The Confirmation Order shall, and shall be deemed to, pursuant to sections 1123 and 363 of the Bankruptcy Code, authorize, among other things, all actions as may be necessary or appropriate to effectuate any transaction described in, approved by, contemplated by, or necessary to effectuate the Plan, including the Restructuring Transactions.

6.6     *Creditors' Committee Consent Rights.*

Notwithstanding anything to the contrary herein, the Creditors' Committee shall have consent rights (which consent shall not be unreasonably withheld) with respect to provisions of the Plan, the Disclosure Statement, and the Confirmation Order, the applicable Plan Supplement Documents, Restructuring Transactions Memorandum, solely to the extent such provisions materially impact General Unsecured Creditor recoveries (including any potential materially adverse tax consequences) or the governance or operation of the Wind-Down Debtor.  For the avoidance of doubt, the Creditors' Committee shall not have consent rights with respect to the Reorganization Transaction Documents or the Sale Transaction Documents other than as provided herein; *provided, however*, that the Creditors' Committee shall have consultation rights with respect to all Plan Supplement documents.  Nothing in this Article 6.6 prevents the Debtors from granting additional consent rights to the Creditors' Committee.

6.7     *Reorganization Transaction.*

In the event a Reorganization Transaction is consummated, the following provisions shall apply.

(a)     Implementation Pursuant to the Restructuring Transactions Memorandum.

If the Debtors pursue a Reorganization Transaction, the Debtors or the Reorganized Debtors, as applicable, shall implement the Reorganization Transaction as set forth in in the Restructuring Transaction Memorandum, which will be, in all cases, consistent with the terms of this Plan.

(b)     Continued Corporate Existence.

Except as otherwise provided in the Plan or any agreement, instrument, or other document incorporated in the Plan or the Plan Supplement, on and after the Effective Date, each Reorganized Debtor, as applicable, shall continue to exist as a separate corporation, limited liability company, partnership, or other form of entity, as the case may be, with all the powers of a corporation, limited liability company, partnership, or other form of entity, as the case may be, pursuant to the applicable law in the jurisdiction in which the particular Debtor is incorporated or formed and pursuant to their respective certificate of incorporation and bylaws (or other similar formation and governance documents) in effect prior to the Effective Date, except to the extent such certificate of incorporation and bylaws (or other similar formation and governance documents) are amended under the Plan or otherwise, and to the extent such documents

are amended, such documents are deemed to be amended pursuant to the Plan and require no further action or approval (other than any requisite filings required under applicable state, provincial, or federal law).

        (c)      <u>The New Board</u>.

Upon the Effective Date, the New Board shall consist of [•] directors.  If known, the identities of the directors and officers of the of the Reorganized Debtors shall be disclosed prior to or at the Confirmation Hearing, in accordance with Bankruptcy Code section 1129(a)(5).

Except to the extent that a member of the board of directors or managers, as applicable, of a Debtor continues to serve as a director or managers, as applicable, of a Debtor on or after the Effective Date, the members of the board of directors or managers, as applicable, the members of the board of directors or managers of each Debtor prior to the Effective Date, in their capacities as such, shall have no continuing obligations to the Reorganized Debtors on or after the Effective Date and each such director or manager, as applicable, shall be deemed to have resigned or shall otherwise case to be a director or manager, as applicable, to the applicable Debtor, on the Effective Date.

        (d)      <u>Issuance of Reorganized Equity Interests; Section 1145 Exemption</u>.

On the Effective Date, the Reorganized Equity Interests shall be issued and distributed as provided for in the Plan Sponsorship Agreement and the Plan to the Entities entitled to receive the Reorganized Equity Interests pursuant to, and in accordance with, the Plan Sponsorship Agreement and the Plan.  On the Effective Date, the issuance of Reorganized Equity Interests shall be authorized without the need for any further corporate action and without any action by the Holders of Claims or other parties in interest.  All of the Reorganized Equity Interests issued under the Plan shall be duly authorized, validly issued, fully paid, and non-assessable consistent with the terms of the New Organizational Documents.

Each distribution and issuance of the Reorganized Equity Interests as of the Effective Date shall be governed by the terms and conditions set forth in the Plan applicable to such distribution, issuance, and/or dilution, as applicable, and by the terms and conditions of the instruments evidencing or relating to such distribution, issuance, and/or dilution, as applicable, including the New Organizational Documents, the terms and conditions of which shall bind each Entity or Person receiving such distribution of the Reorganized Equity Interests. Any Entity's or Person's acceptance of Reorganized Equity Interests shall be deemed as its agreement to the New Organizational Documents, as the same may be amended or modified from time to time following the Effective Date in accordance with their terms. The Reorganized Equity Interests will not be registered on any exchange as of the Effective Date and shall not meet the eligibility requirements of DTC.

All units of Reorganized Equity Interests, issued and distributed pursuant to the Plan, will be issued and distributed without registration under the Securities Act or any similar federal, state, or local law in reliance upon (1) section 1145 of the Bankruptcy Code; (2) section 4(a)(2) of the Securities Act or Regulation D promulgated thereunder; or (3) such other exemption as may be available from any applicable registration requirements.

The offering, issuance, and distribution of all shares of Reorganized Equity Interests pursuant to the Plan in reliance upon section 1145 of the Bankruptcy Code is exempt from, among other things, the registration requirements of Section 5 of the Securities Act and any other applicable U.S. state or local law requiring registration prior to the offering, issuance, distribution, or sale of securities. Such units of Reorganized Equity Interests to be issued under the Plan (a) are not "restricted securities" as defined in Rule 144(a)(3) under the Securities Act, and (b) subject to the terms of the New Organizational Documents, are freely tradable and transferable by any initial recipient thereof that (i) is not an "affiliate" of the Debtors

as defined in Rule 144(a)(1) under the Securities Act, (ii) has not been such an "affiliate" within 90 days of such transfer, and (iii) is not an entity that is an "underwriter" as defined in subsection (b) of section 1145 of the Bankruptcy Code.

The availability of the exemption under section 1145 of the Bankruptcy Code or any other applicable securities laws shall not be a condition to the occurrence of the Effective Date.

Should the Reorganized Debtors elect, on or after the Effective Date, to reflect all or any portion of the ownership of the Reorganized Equity Interests through the facilities of DTC, the Reorganized Debtors shall not be required to provide any further evidence other than the Plan or Final Order with respect to the treatment of such applicable portion of the Reorganized Equity Interests, and such Plan or Confirmation Order shall be deemed to be legal and binding obligations of the Reorganized Debtors in all respects.

DTC shall be required to accept and conclusively rely upon the Plan and Confirmation Order in lieu of a legal opinion regarding whether the Reorganized Equity Interests is exempt from registration and/or eligible for DTC book-entry delivery, settlement, and depository services.

Notwithstanding anything to the contrary in the Plan, no entity (including, for the avoidance of doubt, DTC) may require a legal opinion regarding the validity of any transaction contemplated by the Plan, including, for the avoidance of doubt, whether the Reorganized Equity Interests are exempt from registration.

      (e)      New Organizational Documents.

On or immediately prior to the Effective Date, the New Organizational Documents shall be adopted automatically by the Reorganized Debtors. To the extent required under the Plan or applicable non-bankruptcy law, the Reorganized Debtors shall file their respective New Organizational Documents with the applicable Secretaries of State and/or other applicable authorities in their respective states, provinces, or countries of incorporation in accordance with the corporate laws of the respective states, provinces, or countries of incorporation. The New Organizational Documents shall, among other things: (1) authorize the issuance of the Reorganized Equity Interests; and (2) pursuant to and only to the extent required by section 1123(a)(6) of the Bankruptcy Code, include a provision prohibiting the issuance of non-voting equity securities of the Debtors. After the Effective Date, each Reorganized Debtor may amend and restate its limited liability company agreement, certificate of incorporation and other formation and constituent documents as permitted by the laws of its respective jurisdiction of formation and the terms of the New Organizational Documents.

      (f)      Vesting of Assets in the Reorganized Debtors.

Except as otherwise provided herein, or in any agreement, instrument or other document incorporated herein, on the Effective Date, pursuant to sections 1141(b) and (c) of the Bankruptcy Code, all property in each Debtor's Estate (other than Wind Down Debtor Assets), all Causes of Action of the Debtors' Estates (other than any Causes of Action that are expressly waived, relinquished, exculpated, released, compromised or settled in the Plan or Causes of Action that comprise Wind-Down Debtor Assets) and any property acquired by any of the Debtors under the Plan shall vest in each respective Reorganized Debtor, free and clear of all Liens, Claims, charges and/or other encumbrances. On and after the Effective Date, except as otherwise provided herein, each Reorganized Debtor may operate its business and may use, acquire, or dispose of property and pursue, compromise or settle any Claims, Interests, or Causes of Action

with respect to the Debtors without further notice to, action, or approval of the Bankruptcy Court and free of any restrictions of the Bankruptcy Code or Bankruptcy Rules.

(g)     Limitation of Liability of Reorganized Debtors.

Notwithstanding anything to the contrary contained herein, the Reorganized Debtors in their capacity as such, shall have no liability whatsoever to any party for the liabilities and/or obligations, however created, whether direct or indirect, in tort, contract, or otherwise, of the Debtor, the Wind-Down Debtor, the Plan Administrator, or the Creditors' Litigation Trust.

6.8     *Liquidation Transaction.*

If neither a Sale Transaction nor a Reorganization Transaction is not consummated by the Effective Date, then the following terms shall govern:

On the Effective Date, the Debtors or the Wind-Down Debtor, as applicable, will pursue the Liquidation Transaction in accordance with the Liquidation Procedures and Article 7.6 below. Pursuant to the Liquidation Transaction, the Debtors, the Wind-Down Debtor, or the Plan Administrator, as applicable, shall (i) wind down and dissolve the Debtors, and (ii) pursue final administration of the Debtors' Estates pursuant to the Bankruptcy Code.

The Debtors or the Wind-Down Debtor, as applicable, shall be authorized to take all actions as may be deemed necessary or appropriate to consummate the Liquidation Transaction pursuant to this Plan. On or before the date that is twenty-one days prior to the anticipated commencement of the Liquidation Transaction, the Debtors or the Wind-Down Debtor, as applicable, shall file the Liquidation Procedures with the Bankruptcy Court. Parties in interest shall have ten days to object to the Liquidation Procedures, and if no objections are timely filed, the Liquidation Procedures shall be approved. In the event of a timely objection, the Bankruptcy Court shall adjudicate any objection to the Liquidation Procedures.

On and after the Effective Date, except as otherwise provided in the Plan, the Plan Administrator Agreement, and the Liquidation Procedures, the Debtors or the Wind-Down Debtor, as applicable, may operate their businesses and may use, acquire or dispose of property and compromise or settle any claims, Interests, or Causes of Action without supervision or approval by the Bankruptcy Court and free of any restrictions of the Bankruptcy Code or Bankruptcy Rules; *provided*, that the Bankruptcy Court shall retain jurisdiction to resolve any cases, controversies, suits, disputes, or Causes of Action that may arise in connection with any of the foregoing.

6.9     *Non-Released D&O Claims.*

Any Claims or Causes of Action held by the Debtors or their respective estates against the Debtors' Directors and Officers that are expressly related to the 98f Wallet are not released pursuant to the Plan (collectively, the "Non-Released D&O Claims"), and shall be assigned and transferred to the Wind-Down Debtor to be pursued, settled, or resolved by the Wind-Down Debtor. The Wind-Down Debtor shall be a successor to the Debtors' rights, title, and interest in any Non-Released D&O Claims, and the Wind-Down Debtor shall have standing to pursue the Non-Released D&O Claims; *provided* that: (i) any recovery by the Wind-Down Debtor or the Creditors' Litigation Trust on account of any Non-Released D&O Claim against Current Directors and Officers, including in each case by way of settlement or judgment, shall be satisfied solely by and to the extent of the proceeds of the Debtors' available D&O Policies after payment from such D&O Policies of any and all covered costs and expenses incurred in connection with the defense of the Non-Released D&O Claims; (ii) any party, including any Holder of an Allowed Claim that may receive distributions from the Wind-Down Debtor, seeking to execute, garnish, or otherwise attempt to collect on

any settlement of or judgment in the Non-Released D&O Claims against Current Directors and Officers shall do so solely upon available insurance coverage from the Debtors' available D&O Policies; and (iii) no party shall (a) record any judgment against any Current Director or Officer, or (b) otherwise attempt to collect, directly or indirectly, from the personal assets of such Current Directors and Officers with respect to the Non-Released D&O Claims. For the avoidance of doubt, this provision does not enjoin, limit, or impair direct claims held by third parties against the Debtors' Directors or Officers (if any) other than any direct claims held by Holders of Claims or Interests that are Releasing Parties. Only upon the occurrence of the earlier of (x) a release being given as part of any later settlement of the Non-Released D&O Claims; (y) final resolution of any coverage claims asserted against the Debtors' available D&O Policies on account of the Non-Released D&O Claims; or (z) exhaustion of the available insurance coverage under the D&O Policies, the Non-Released D&O Claims against Current Directors and Officers shall be released and discharged without the need for further action or Bankruptcy Court order. For the avoidance of doubt, (i) any release of the Non-Released D&O Claims against Current Directors and Officers shall not become effective until one of the three conditions stated in the preceding sentence above has been met and (ii) nothing in this paragraph limits the ability of the Wind-Down Debtor (or the Creditors' Litigation Trust, as applicable) to pursue Non-Released D&O Claims against Persons who are not Current Directors and Officers.

6.10    *Wind-Down Debtor.*

(a)    Establishment of a Wind-Down Debtor.

On the Effective Date, the Wind-Down Debtor shall be identified, formed or converted into for the benefit of the Holders of Allowed Claims and each of the Debtors shall transfer the Wind-Down Debtor Assets for distribution in accordance with the terms of the Plan. The Confirmation Order shall be deemed to, pursuant to sections 363 and 1123 of the Bankruptcy Code, authorize, among other things, all actions as may be necessary or appropriate to effectuate any transaction described in, approved by, contemplated by, or necessary to effectuate the Plan.

The Wind-Down Debtor shall be the successor-in-interest to the Debtors, and the Wind-Down Debtor shall be a successor to the Debtors' rights, title, and interest to the Wind-Down Debtor Assets. The Wind-Down Debtor will conduct no business operations and will be charged with winding down the Debtors' Estates. The Wind-Down Debtor shall be managed by the Plan Administrator and shall be subject to the Wind-Down Debtor Oversight Committee. The Wind-Down Debtor shall be administered in accordance with the terms of the Plan Administrator Agreement and shall be subject to the Wind-Down Budget and the Non-Released D&O Claim Budget.

Prior to the Effective Date, any and all of the Debtors' assets shall remain assets of the Estates pursuant to section 1123(b)(3)(B) of the Bankruptcy Code and on the Effective Date such assets shall, subject to the Plan Administrator Agreement, be transferred to and vest in the Wind-Down Debtor. For the avoidance of doubt, to the extent not otherwise waived in writing, released, settled, compromised, assigned or sold pursuant to a prior order or the Plan, the Wind-Down Debtor specifically retains and reserves the right to assert, after the Effective Date, any and all of the Vested Causes of Action and related rights, whether or not asserted as of the Effective Date, and all proceeds of the foregoing.

Pursuant to section 1123(b)(3)(B) of the Bankruptcy Code, only the Wind-Down Debtor and the Plan Administrator shall have the right to pursue or not to pursue, or, subject to the terms hereof and the Plan Administrator Agreement, compromise or settle any Wind-Down Debtor Assets transferred to the Wind-Down Debtor. On and after the Effective Date, the Wind-Down Debtor may, without further Bankruptcy Court approval, commence, litigate, and settle any Vested Causes of Action or Claims relating to any Wind-Down Debtor Assets transferred to the Wind-Down Debtor or rights to payment or Claims

that belong to the Debtors as of the Effective Date or are instituted by the Wind-Down Debtor and the Plan Administrator on or after the Effective Date, except as otherwise expressly provided herein and in the Plan Administrator Agreement. All of the Wind-Down Debtor's activities shall be subject to the Wind-Down Budget and the Non-Released D&O Claim Budget. The Wind-Down Debtor shall be entitled to enforce all defenses and counterclaims to all Claims asserted against the Debtors and their Estates, including setoff, recoupment and any rights under section 502(d) of the Bankruptcy Code.

The Wind-Down Debtor shall be deemed hereby substituted as plaintiff, defendant, or in any other capacity for the Debtors and the Committee, as applicable, in any Causes of Action pending before the Bankruptcy Court or any other court that relates to a Wind-Down Debtor Asset without the need for filing any motion for such relief. On the Effective Date, the Debtors and the Plan Administrator shall execute the Plan Administrator Agreement and shall have established the Wind-Down Debtor pursuant hereto. In the event of any conflict between the terms of this Article 6.10 and the terms of the Plan Administrator Agreement, the terms of the Plan Administrator Agreement shall control.

(b)    Wind-Down Debtor Assets.

Notwithstanding any prohibition on assignability under applicable non-bankruptcy law, on the Effective Date and thereafter if additional Wind-Down Debtor Assets become available, the Debtors shall be deemed, subject to the Plan Administrator Agreement, to have automatically transferred to the applicable Wind-Down Debtor all of their right, title, and interest in and to all of the Wind-Down Debtor Assets, in accordance with section 1141 of the Bankruptcy Code. All such assets shall automatically vest in the Wind-Down Debtor free and clear of all Claims, Liens, and other interests, subject only to the Allowed Claims and Interests as set forth herein and the expenses of the Wind-Down Debtor as set forth herein and in the Plan Administrator Agreement. Thereupon, the Debtors shall have no interest in or with respect to the Wind-Down Debtor Assets or the Wind-Down Debtor.

(c)    Appointment of Plan Administrator.

The Plan Administrator shall be selected by the Creditors' Committee, in consultation with the Debtors, and shall be identified in the Plan Supplement. The appointment of the Plan Administrator shall be approved in the Confirmation Order, and the Plan Administrator's duties shall commence as of the Effective Date.

The Plan Administrator shall administer the distributions to the Holders of Allowed Claims pursuant to the terms of the Plan, and shall serve as a representative of the Estates under section 1123(b) of the Bankruptcy Code for the purpose of enforcing Vested Causes of Action belonging to the Estates that are not released, waived, settled, compromised, or transferred pursuant to the Plan and subject to the limitations set forth in the Plan, including Article 10.4 and Article 10.5.

In accordance with the Plan Administrator Agreement, the Plan Administrator shall serve in such capacity through the earlier of (i) the date on which the Wind-Down Debtor is dissolved in accordance with the Plan Administrator Agreement, and (ii) the date on which a Plan Administrator resigns, is terminated, or is otherwise unable to serve; *provided*, *however*, that, in the event that a Plan Administrator resigns, is terminated, or is otherwise unable to serve, the Wind-Down Debtor Oversight Committee shall appoint a successor to serve as a Plan Administrator in accordance with the Plan Administrator Agreement. If the Wind-Down Debtor Oversight Committee does not appoint a successor within the time periods specified in the Plan Administrator Agreement, then the Bankruptcy Court, upon the motion of any party-in-interest, including counsel to the Wind-Down Debtor, shall approve a successor to serve as a Plan Administrator.

(d)    Responsibilities of Plan Administrator.

Responsibilities of the Plan Administrator shall be as identified in the Plan Administrator Agreement and shall include, but are not limited to:

(i)     Implementing the Wind-Down Debtor, and making distributions contemplated by the Plan;

(ii)    Marshalling, marketing for sale, and winding down any of the Debtors' assets constituting Wind-Down Debtor Assets;

(iii)   Overseeing the accounts of the Debtors and the Wind-Down Debtor and the wind down and dissolution of the Debtors and the Wind-Down Debtor, including effectuating the transactions described in the Restructuring Transactions Memorandum;

(iv)    Receiving, maintaining, conserving, supervising, prosecuting, collecting, settling, managing, investing, protecting, and where appropriate, causing the Wind-Down Debtor to abandon the Wind-Down Debtor Assets, including causing the Wind- Down Debtor to invest any moneys held as Wind-Down Debtor Assets;

(v)     Opening and maintaining bank accounts on behalf of or in the name of the Debtors or the Wind-Down Debtor, including, in the Plan Administrator's discretion, separating bank accounts for each of the Debtors;

(vi)    Entering into any agreement or executing any document or instrument required by or consistent with the Plan, the Confirmation Order, or the Plan Administrator Agreement, and to perform all obligations thereunder;

(vii)   Collecting and liquidating all Wind-Down Debtor Assets, including the sale of any Wind-Down Debtor Assets;

(viii)  Protecting and enforcing the rights to the Wind-Down Debtor Assets (including any Vested Causes of Action and Contributed Third-Party Claims) vested in the Wind-Down Debtor and Plan Administrator by the Plan Administrator Agreement by any method deemed appropriate, including, without limitation, by judicial proceedings or otherwise;

(ix)    Investigating any Wind-Down Debtor Assets, and any other potential Vested Causes of Action and Contributed Third-Party Claims;

(x)     Reviewing, reconciling, compromising, settling, objecting, or prosecuting Claims or Interests of any kind;

(xi)    Seeking the examination of any Person pursuant to Federal Rule of Bankruptcy Procedure 2004;

(xii)   Retaining professionals, disbursing agents, and other agents, independent contractors, and third parties pursuant to the Plan

35

Administrator Agreement and paying the reasonable compensation thereof;

(xiii)    Paying all lawful expenses, debts, charges, taxes, and other liabilities, and making all other payments relating to the Wind-Down Debtor Assets, solely out of Wind-Down Debtor Assets;

(xiv)    Prosecuting and settling the Vested Causes of Action;

(xv)    Reviewing, reconciling, pursuing, commencing, prosecuting, compromising, settling, dismissing, releasing, waiving, withdrawing, abandoning, resolving, or electing not to pursue all Vested Causes of Action;

(xvi)    Acquiring litigation and other claims related to the Debtors, and prosecuting such claims;

(xvii)    Reviewing and compelling turnover of the Debtors or the Wind-Down Debtor's property;

(xviii)    Calculating and making all Distributions to the holders of Allowed Claims against each Debtor and, solely to the extent of payment in full of Allowed Claims, to holders of Allowed Interests, as provided for in, or contemplated by, the Plan and the Plan Administrator Agreement; *provided* that because the Plan does not substantively consolidate the Debtors' Estates, the Plan Administrator shall make Distributions from the Wind-Down Debtor Assets to the holders of Claims and Interests (if applicable) against that specific Debtor;

(xix)    Establishing, administering, adjusting, and maintaining the Wind-Down Reserve and the Disputed Claims Reserve;

(xx)    Withholding from the amount distributable to any Person the maximum amount needed to pay any tax or other charge that the Plan Administrator has determined, based upon the advice of his agents or professionals, may be required to be withheld from such Distribution under the income tax or other laws of the United States or of any state or political subdivision thereof;

(xxi)    In reliance upon the Debtors' Schedules, the official Claims Register maintained in the Chapter 11 Cases and the Debtors' filed lists of equity security holders, reviewing, and where appropriate, allowing or objecting to Claims and (if applicable) Interests, and supervising and administering the commencement, prosecution, settlement, compromise, withdrawal, or resolution of all objections to Disputed Claims and (if applicable) Disputed Interests required to be administered by the Wind-Down Debtor;

(xxii)    Making all tax withholdings, filing tax information returns, filing and prosecuting tax refunds claims, making tax elections by and on behalf of the Debtors or the Wind-Down Debtor, and filing tax returns for the

36

Debtors or the Wind-Down Debtor, pursuant to and in accordance with the Plan, and paying taxes, if any, payable for and on behalf of the Debtors or the Wind-Down Debtor, as applicable; *provided, however*, that notwithstanding any other provision of the Plan Administrator Agreement, the Plan Administrator shall not have any responsibility or personal liability in any capacity whatsoever for the signing or accuracy of the Debtors' income tax returns that are due to be filed after the Effective Date or for any tax liability related thereto;

(xxiii)   Abandoning or donating to a charitable organization qualifying under IRC section 501(c)(3) any Wind-Down Debtor Assets that the Plan Administrator determines to be too impractical to distribute or of inconsequential value;

(xxiv)   Seeking a determination of tax liability or refund under Bankruptcy Code section 505;

(xxv)   Establishing reserves for taxes, assessments, and other expenses of administration of the Debtors or the Wind-Down Debtor as may be necessary and appropriate for the proper operation of matters incident to the Debtors or the Wind-Down Debtor;

(xxvi)   Paying Wind-Down Debtor Expenses;

(xxvii)   If the Plan Administrator deems appropriate in the Plan Administrator's sole discretion, seeking to establish a bar date for filing proofs of Interest in any Debtor or otherwise to determine the holders and extent of Allowed Interests in any Debtor;

(xxviii)   Filing and prosecuting any objections to Claims or Interests or settling or otherwise compromising such Claims and Interests, if necessary and appropriate, in accordance with the Plan hereof;

(xxix)   Purchasing and carrying all insurance policies that the Plan Administrator deems reasonably necessary or advisable and paying all associated insurance premiums and costs;

(xxx)   Undertaking all administrative functions remaining in the Chapter 11 Cases to the extent necessary to carry out the Debtors', the Wind-Down Debtor's, or the Plan Administrator's duties under the Plan, including reporting and making required payments of fees to the U.S. Trustee and overseeing the closing of the Chapter 11 Cases;

(xxxi)   Retaining, terminating, appointing, hiring, or otherwise employees, personnel, management, and directors at any of the Debtors to the extent necessary to carry out the purposes of the Plan Administrator Agreement and the Plan, including, without limitation, to address any disputes between the Debtors;

(xxxii)    Exercising, implementing, enforcing, and discharging all of the terms, conditions, powers, duties, and other provisions of the Plan, the Confirmation Order, and the Plan Administrator Agreement; and

(xxxiii)    Taking all other actions consistent with the provisions of the Plan and the Plan Administrator Agreement that the Plan Administrator deems reasonably necessary or desirable to administer the Debtors and the Wind-Down Debtor.

(e)    <u>Wind-Down Debtor Oversight Committee</u>.

The Wind-Down Debtor Oversight Committee shall consist of those parties selected by the Creditors' Committee and identified in the Plan Supplement, and which, at no time shall consist of greater than seven members.

The Wind-Down Debtor Oversight Committee shall have the responsibility to review and advise the Plan Administrator with respect to the liquidation and distribution of the Wind-Down Debtor Assets transferred to the Wind-Down Debtor in accordance herewith and the Plan Administrator Agreement. For the avoidance of doubt, in advising the Plan Administrator, the Wind-Down Debtor Oversight Committee shall maintain the same fiduciary responsibilities as the Plan Administrator. The responsibilities, compensation, obligations, and governance of the Wind-Down Debtor Oversight Committee shall be as set forth in the Plan Administrator Agreement.

(f)    <u>Expenses of Wind-Down Debtor</u>.

The Wind-Down Debtor Expenses shall be paid from the Wind-Down Debtor Assets subject to the Initial Wind-Down Budget and the Initial Non-Released D&O Claim Budget.

(g)    <u>Insurance; Bond</u>.

The Plan Administrator may obtain insurance coverage (in the form of an errors and omissions policy or otherwise) with respect to the liabilities and obligations of the Plan Administrator and the Wind-Down Debtor Oversight Committee under the Plan Administrator Agreement. Unless otherwise agreed to by the Wind-Down Debtor Oversight Committee, the Plan Administrator shall serve with a bond, the terms of which shall be agreed to by the Wind-Down Debtor Oversight Committee, and the cost and expense of which shall be paid by the Wind-Down Debtor.

(h)    <u>Fiduciary Duties of the Plan Administrator</u>.

Pursuant hereto and the Plan Administrator Agreement, the Plan Administrator shall act in a fiduciary capacity on behalf of the interests of all Holders of Claims and Interests that will receive distributions pursuant to Plan.

(i)    <u>Termination of the Wind-Down Debtor</u>.

The Wind-Down Debtor will terminate on the earlier of: (a) (i) the final liquidation, administration, and distribution of the Wind-Down Debtor Assets in accordance with the terms of the Plan Administrator Agreement and the Plan, and its full performance of all other duties and functions as set forth herein or in the Plan Administrator Agreement and (ii) entry of a final decree with respect to the Chapter 11 Cases; or (b) the Plan Administrator determines in Plan Administrator's reasonable judgment that the Wind-Down Debtor lacks sufficient assets and financial resources, after reasonable collection efforts, to complete the duties and powers assigned to him or her under the Plan, the Confirmation Order and/or the Plan

Administrator Agreement. After (x) the final distributions pursuant hereto, (y) the Filing by or on behalf of the Wind-Down Debtor of a certification of dissolution with the Bankruptcy Court, and (z) any other action deemed appropriate by the Plan Administrator, the Wind-Down Debtor shall be deemed dissolved for all purposes without the necessity for any other or further actions.

(j)      Liability of Plan Administrator; Indemnification.

Neither the Plan Administrator, the Wind-Down Debtor Oversight Committee, their respective members, employees, employers, designees or professionals, or any of their duly designated agents or representatives (each, a "Wind-Down Debtor Party" and collectively, the "Wind-Down Debtor Parties") shall be liable for losses, claims, damages, liabilities or expenses in connection with the affairs of the Wind-Down Debtor or for the act or omission of any other Wind-Down Debtor Party, nor shall the Wind-Down Debtor Parties be liable for any act or omission taken or omitted to be taken pursuant to the discretion, powers and authority conferred, or in good faith believed to be conferred by the Plan Administrator Agreement or the Plan other than for specific acts or omissions resulting from such Wind-Down Debtor Party's willful misconduct, gross negligence or actual fraud. Subject to the Plan Administrator Agreement, the Plan Administrator shall be entitled to enjoy all of the rights, powers, immunities and privileges applicable to a chapter 7 trustee, and the Wind-Down Debtor Oversight Committee shall be entitled to enjoy all of the rights, powers, immunities and privileges of an official committee of unsecured creditors. The Plan Administrator or the Wind-Down Debtor Oversight Committee may, in connection with the performance of its functions, and in its sole and absolute discretion, consult with its attorneys, accountants, financial advisors and agents, and shall not be liable for any act taken, omitted to be taken, or suffered to be done in accordance with advice or opinions rendered by such persons, regardless of whether such advice or opinions are provided in writing. Notwithstanding such authority, neither the Plan Administrator nor the Wind-Down Debtor Oversight Committee shall be under any obligation to consult with its attorneys, accountants, financial advisors or agents, and their determination not to do so shall not result in the imposition of liability on the Plan Administrator, the Wind-Down Debtor Oversight Committee, or their respective members and/or designees, unless such determination is based on willful misconduct, gross negligence, or actual fraud. The Wind-Down Debtor shall indemnify and hold harmless the Wind-Down Debtor Parties (in their capacity as such), from and against and in respect of all liabilities, losses, damages, claims, costs and expenses (including, without limitation, reasonable attorneys' fees, disbursements, and related expenses) that such parties may incur or to which such parties may become subject in connection with any action, suit, proceeding or investigation brought by or threatened against such parties arising out of or due to their acts or omissions, or  consequences of such acts or omissions, with respect to the implementation or administration of the Wind-Down Debtor or the Plan or the discharge of their duties hereunder; *provided*, *however*, that no such indemnification will be made to such Persons for actions or omissions as a result of willful misconduct, gross negligence, or actual fraud. Persons dealing or having any relationship with the Plan Administrator shall have recourse only to the Wind-Down Debtor Assets and shall look only to the Wind-Down Debtor Assets to satisfy any liability or other obligations incurred by the Wind-Down Debtor or the Wind-Down Debtor Oversight Committee to such Person in carrying out the terms of the Plan Administrator Agreement, and neither the Plan Administrator nor the Wind-Down Debtor Oversight Committee, shall have any personal obligation to satisfy any such liability. The Plan Administrator and/or the Wind-Down Debtor Oversight Committee members shall not be liable whatsoever except for the performance of such duties and obligations as are specifically set forth herein, and no implied covenants or obligations shall be read into the Plan Administrator Agreement against any of them. The Wind-Down Debtor shall promptly pay expenses reasonably incurred by any Wind-Down Debtor Party in defending, participating in, or settling any action, proceeding or investigation in which such Wind-Down Debtor Party is a party or is threatened to be made a party or otherwise is participating in connection with the Plan Administrator Agreement or the duties, acts or omissions of the Plan Administrator or otherwise in connection with the affairs of the Wind-Down Debtor, upon submission of invoices therefor, whether in advance of the final disposition of such action, proceeding, or investigation or otherwise. Each Wind-Down

Debtor Party hereby undertakes, and the Wind-Down Debtor hereby accepts his or her undertaking, to repay any and all such amounts so advanced if it shall ultimately be determined that such exculpated party is not entitled to be indemnified therefor under the Plan Administrator Agreement. The foregoing indemnity in respect of any Wind-Down Debtor Party shall survive the termination of such Wind-Down Debtor Party from the capacity for which they are indemnified.

(k)      No Liability of the Wind-Down Debtor.

On and after the Effective Date, the Wind-Down Debtor shall have no liability on account of any Claims or Interests except as set forth herein and in the Plan Administrator Agreement. All payments and all distributions made by the Plan Administrator hereunder shall be in exchange for all Claims or Interests against the Debtors.

(l)      Corporate Existence and Dissolution.

Except as otherwise provided in the Plan, each Debtor shall continue to exist after the Effective Date as a separate corporate entity, limited liability company, partnership, or other form, as the case may be, with all the powers of a corporation, limited liability company, partnership, or other form, as the case may be, pursuant to the applicable law in the jurisdiction in which each applicable Debtor is incorporated or formed and pursuant to the respective certificates or articles of incorporation, certificates of formation, certificates of organization, or certificates of limited partnership and bylaws, operating agreements, limited prior to the Effective Date, except to the extent such certificates or articles of incorporation, certificates of formation, certificates of organization, or certificates of limited partnership and bylaws, operating agreements, limited liability company agreements, or limited partnership agreements (or other formation documents) are amended pursuant to the Plan or otherwise, and to the extent such documents are amended, such documents are deemed to be amended pursuant to the Plan and require no further action or approval (other than any requisite filings under applicable state or federal law).

On and after the Effective Date, the Wind-Down Debtor will be authorized and directed to implement the Plan and any applicable orders of the Bankruptcy Court, and the Wind-Down Debtor shall have the power and authority to take any action necessary to wind down and dissolve the Debtors' Estates.

Upon a certification to be Filed with the Bankruptcy Court by the Plan Administrator of all distributions having been made and completion of all of its duties under the Plan and/or the Plan Administrator Agreement, and entry of a final decree closing the last of the Chapter 11 Cases, the Wind-Down Debtor shall be deemed to be dissolved without any further action by the Debtors, the Reorganized Debtors, or the Wind-Down Debtor, including the Filing of any documents with the secretary of state for the state in which the Wind-Down Debtor are formed or any other jurisdiction. The Plan Administrator, however, shall have authority to take all necessary actions to dissolve the Debtors, the Reorganized Debtors, or the Wind-Down Debtor in and withdraw the Wind-Down Debtor from applicable states.

As soon as practicable after the Effective Date, the Wind-Down Debtor shall take such actions as the Wind-Down Debtor may determine to be necessary or desirable to carry out the purposes of the Plan. Any certificate of dissolution or equivalent document may be executed by the Wind-Down Debtor on behalf of any Wind-Down Debtor without need for any action or approval by the shareholders or board of directors or managers of such Debtor. On and after the Effective Date, the Debtors, the Reorganized Debtors, or the Wind-Down Debtor (1) for all purposes shall be deemed to have withdrawn their business operations from any state in which the Debtors were previously conducting, or are registered or licensed to conduct, their business operations, and shall not be required to file any document, pay any sum, or take any other action in order to effectuate such withdrawal, (2) shall be deemed to have cancelled pursuant to this Plan all Interests, and (3) shall not be liable in any manner to any taxing authority for franchise, business, license,

or similar taxes accruing on or after the Effective Date. Pursuant to the terms of this Plan, any Money Transmitter Licenses that have not been terminated shall be deemed withdrawn and no further action is required to be taken by the Debtors, the Reorganized Debtors, or the Wind-Down Debtor to effectuate such withdrawal.  Notwithstanding such Debtors' dissolution, such Debtors shall be deemed to remain intact solely with respect to the preparation, filing, review, and resolution of applications for Professional Fee Claims.

(m)   Vesting of Assets in Wind-Down Debtor.

Except as otherwise provided in the Plan, or in any agreement, instrument, or other document incorporated in the Plan, notwithstanding any prohibition of assignability under applicable non-bankruptcy law and in accordance with section 1141 of the Bankruptcy Code, on the Effective Date, all property constituting Wind-Down Debtor Assets, including all Vested Causes of Action of the Debtors (unless otherwise released, waived, compromised, settled, transferred, or discharged pursuant to the Plan), and any property acquired by any of the Debtors under the Plan shall vest in the Wind-Down Debtor, free and clear of all Liens, Claims, charges, or other encumbrances.

(n)   Directors, Officers, Managers, Members and Authorized Persons of the Debtors.

On the Effective Date, each of the Current Directors and Officers shall be discharged from their duties and terminated automatically without the need for any corporate action or approval and without the need for any corporate filings, and, unless subject to a separate agreement with the Debtors, the Reorganized Debtors, or the Wind-Down Debtor, as applicable, and shall have no continuing obligations to the Debtors following the occurrence of the Effective Date.

6.11   *Cancellation of Notes, Instruments, Certificates, and Other Documents.*

Except for the purpose of evidencing a right to and allowing Holders of Claims and Interests to receive a distribution under the Plan or to the extent otherwise specifically provided for in the Plan, the Confirmation Order, any Definitive Document, Reorganization Transaction Document, Liquidation Document, Plan Document on the Effective Date, all notes, bonds, indentures, certificates, Securities, shares, purchase rights, options, warrants, collateral agreements, subordination agreements, intercreditor agreements, or other instruments or documents directly or indirectly evidencing, creating, or relating to any indebtedness or obligations of, or ownership interest in, the Debtors, giving rise to any Claims against or Interests in the Debtors or to any rights or obligations relating to any Claims against or Interests in the Debtors shall be deemed cancelled without any need for a Holder to take further action with respect thereto.

6.12   *Elimination of Duplicate Claims.*

Any duplicate Claim or Interest or any Claim or Interest that has been paid or satisfied, or any Claim that has been amended or superseded, may be adjusted or expunged on the claims register by the Debtors, the Wind-Down Debtor, or the Plan Administrator, as applicable, upon stipulation between the parties in interest without a Claims objection having to be filed and without any further notice or action, order, or approval of the Bankruptcy Court; *provided* that, if any such modification results in a claim in excess of $1,000,000, such modification shall become effective only after notice and an opportunity for parties-in-interest to object.  If a Claim has been satisfied, the Debtors, the Wind-Down Debtor, or the Plan Administrator, or the applicable claimant, as applicable, may amend the Claims register indicating that such Claim has been satisfied.

6.13    *Corporate Action.*

Upon the Effective Date, all actions contemplated by the Plan (including any action to be undertaken by the Debtors, the Reorganized Debtors, or the Wind-Down Debtor, as applicable) shall be deemed authorized, approved, and, to the extent taken prior to the Effective Date, ratified without any requirement for further action by Holders of Claims or Interests, Debtors, the Reorganized Debtors, or the Wind-Down Debtor, as applicable, or any other Entity or Person.  All matters provided for in the Plan involving the corporate structure of the Debtors, and any corporate action required by the Debtors in connection therewith, shall be deemed to have occurred and shall be in effect, without any requirement of further action by the Debtors or the Debtors' Estates.

6.14    *Exemption From Certain Transfer Taxes.*

To the maximum extent provided by section 1146(a) of the Bankruptcy Code, any post-Confirmation sale by any Debtor, or any transfer from any Entity pursuant to, in contemplation of, or in connection with the Plan or pursuant to:  (i) the issuance, distribution, transfer, or exchange of any debt, equity security, transfer, liquidation, or dollarization of any Cryptocurrency, or other interest in the Debtors; or (ii) the making, delivery, or recording of any deed or other instrument of transfer under, in furtherance of, or in connection with, the Plan, including any deeds, bills of sale, assignments, or other instruments of transfer executed in connection with any transaction arising out of, contemplated by, or in any way related to the Plan, shall not be subject to any document recording tax, stamp tax, conveyance fee, intangibles or similar tax, mortgage tax, real estate transfer tax, mortgage recording tax, Uniform Commercial Code or similar filing or recording fee, or other similar tax or governmental assessment, in each case to the extent permitted by applicable bankruptcy law, and the appropriate federal, state, provincial or local government officials or agents shall forego collection of any such tax or governmental assessment and accept for filing and recordation any of the foregoing instruments or other documents without the payment of any such tax or governmental assessment.

6.15    *Preservation of Rights of Action.*

In accordance with section 1123(b) of the Bankruptcy Code, the Wind-Down Debtor shall succeed to all rights to commence and pursue any and all Vested Causes of Action of the Debtors, whether arising before or after the Petition Date, including, without limitation, any actions specifically enumerated in the Schedule of Vested Causes of Action other than Causes of Action released, waived, settled, compromised, or transferred. Such rights shall be preserved by the Debtors and Wind-Down Debtor and shall vest in the Wind-Down Debtor, with the Wind-Down Debtor's rights to commence, prosecute, or settle such Causes of Action preserved notwithstanding the occurrence of the Effective Date, other than the Causes of Action expressly released, waived, settled, compromised, or transferred by the Debtors pursuant to the releases and exculpations contained in the Plan, including in <u>Article VIII</u> of the Plan or pursuant to the Asset Purchase Agreement, which shall be deemed released and waived by the Debtors and Wind-Down Debtor as of the Effective Date.

The Wind-Down Debtor may pursue such Vested Causes of Action or assign such Vested Causes of Action to the Creditors' Litigation Trust, as appropriate, in accordance with the best interests of the Holders of Allowed Claims of the Wind-Down Debtor and in accordance with the Plan Administrator Agreement and the Plan. **No Entity may rely on the absence of a specific reference in the Schedules, the Plan, the Plan Supplement, the Disclosure Statement, or the Schedule of Vested Causes of Action to any Cause of Action against it as any indication that the Debtors or the Wind-Down Debtor Debtors, the Reorganized Debtors, or the Wind-Down Debtor, as applicable, will not pursue any and all available Causes of Action of the Debtors against it. The Wind-Down Debtor, on behalf of the Debtors, and the Wind-Down Debtor, expressly reserves all rights to prosecute any and all Causes of**

**Action against any Entity, or to assign such rights to the Creditors' Litigation Trust, except as otherwise provided in the Plan, including Article 10.4 and Article 10.5 of the Plan.** Unless any Cause of Action of the Debtors is expressly waived, relinquished, exculpated, released, compromised, or settled in the Plan or pursuant to a Final Order, the Wind-Down Debtor, on behalf of the Debtors and Wind-Down Debtor and in accordance with the Plan Administrator Agreement, expressly reserves all such Causes of Action for later adjudication, and, therefore, no preclusion doctrine, including the doctrines of res judicata, collateral estoppel, issue preclusion, claim preclusion, estoppel (judicial, equitable, or otherwise), or laches, shall apply to such Causes of Action upon, after, or as a consequence of Confirmation or Consummation.

The Wind-Down Debtor, on behalf of the Debtors, reserves and shall retain such Causes of Action of the Debtors notwithstanding the rejection or repudiation of any Executory Contract or Unexpired Lease during the Chapter 11 Cases or pursuant to the Plan. In accordance with section 1123(b)(3) of the Bankruptcy Code, any Cause of Action that a Debtor may hold against any Entity shall vest in the Wind-Down Debtor, except as otherwise provided in the Plan, including Article 10.4 and Article 10.5 of the Plan. The Wind-Down Debtor, through their authorized agents or representatives, shall retain and may exclusively enforce any and all such Causes of Action. The Wind-Down Debtor shall have the exclusive right, authority, and discretion to determine and to initiate, file, prosecute, enforce, abandon, settle, compromise, release, withdraw, or litigate to judgment any such Causes of Action, or to decline to do any of the foregoing, without the consent or approval of any third party or any further notice to or action, order, or approval of the Bankruptcy Court in accordance with the Plan.

6.16    *D&O Policies.*

As of the Effective Date, the Debtors, the Reorganized Debtors, or the Wind-Down Debtor, as applicable, shall be deemed to have assumed all of the D&O Policies pursuant to sections 105(a) and 365(a) of the Bankruptcy Code, and coverage for defense and indemnity under any of the D&O Policies shall remain in full force and effect subject to the terms and conditions of the D&O Policies. Entry of the Confirmation Order will constitute the Bankruptcy Court's approval of the Debtors' foregoing assumption of each D&O Policy. Notwithstanding anything to the contrary contained in the Plan, and except as otherwise may be provided in an order of the Bankruptcy Court, confirmation of the Plan shall not impair or otherwise modify any obligations assumed by the foregoing assumption of the D&O Policies, and each such obligation will be deemed and treated as an executory contract that has been assumed by the Debtors under the Plan as to which no proof of Claim need be filed. For the avoidance of doubt, the D&O Policies provide coverage for those insureds currently covered by such policies for the remaining term of such policies and runoff or tail coverage after the Effective Date to the fullest extent permitted by such policies. On and after the Effective Date, the Debtors, the Reorganized Debtors, or the Wind-Down Debtor, as applicable, shall not terminate or otherwise reduce the coverage under any of the D&O Policies in effect or purchased as of the Petition Date.

6.17    *Indemnification of Directors, Officers and Employees.*

For purposes of the Plan, the obligation of the Debtors to indemnify and reimburse any Person or entity serving at any time on or after the Petition Date as one of its directors, officers or employees by reason of such Person's or entity's service in such capacity, or as a director, officer or employee of any of the Debtors or any other corporation or legal entity, to the extent provided in such Debtor's constituent documents, a written agreement with the Debtor(s), in accordance with any applicable law, or any combination of the foregoing, shall survive confirmation of the Plan and the Effective Date solely to the extent of available insurance. For the avoidance of doubt, nothing herein shall be construed as the Debtors assuming any obligation with respect to any self-insured retention for which the applicable insurer has the ability to assert a prepetition Claim against the applicable Debtor in accordance with the Bar Date Order or other order of the Bankruptcy Court. On and after the Effective Date, the coverage under any of the D&O

Policies in effect on the Petition Date shall not be terminated or otherwise reduced by or on behalf of the Debtors, and all directors and officers of the Debtors at any time shall be entitled to the full benefits of any such policy for the full term of such policy regardless of whether such directors and/or officers remain in such positions after the Effective Date.

6.18    *Withholding and Reporting Requirements.*

(a)    <u>Withholding Rights</u>.    In connection with the Plan, any party issuing any instrument or making any distribution described in the Plan shall comply with all applicable withholding and reporting requirements imposed by any federal, state, provincial or local taxing authority, and all distributions pursuant to the Plan and all related agreements shall be subject to any such withholding or reporting requirements.  Notwithstanding the foregoing, each Holder of an Allowed Claim or any other Person that receives a distribution pursuant to the Plan shall be liable for any taxes imposed by any Governmental Unit, including, without limitation, income, withholding, and other taxes, on account of such distribution.  Any party issuing any instrument or making any distribution pursuant to the Plan has the right, but not the obligation, to not make a distribution until such Holder has made arrangements satisfactory to such issuing or disbursing party for payment of any such tax obligations.

(b)    <u>Forms</u>.    Any party entitled to receive any property as an issuance or distribution under the Plan shall, upon request, deliver to the Wind-Down Debtor, the Plan Administrator, or such other Person designated by the Wind-Down Debtor or the Plan Administrator, as applicable (which entity shall subsequently deliver to the Wind-Down Debtor, the Plan Administrator, or such other Person designated by the Wind-Down Debtor or the Plan Administrator, as applicable any applicable IRS Form W-8 or Form W-9 received) an appropriate Form W-9 or (if the payee is a foreign Person) Form W-8 or any other form or document as reasonably requested by the Wind-Down Debtor or the Plan Administrator, as applicable, or such other Person designated by the Wind-Down Debtor or the Plan Administrator, as applicable, to eliminate or reduce any tax (including withholding tax), unless the Plan Administrator or such other Person designated by it determines it is not required to eliminate or reduce any tax (including withholding tax).  If such request is made by the Wind-Down Debtor or the Plan Administrator, as applicable, or such other Person designated by the Wind-Down Debtor or the Plan Administrator, as applicable (which entity shall subsequently deliver to the Wind-Down Debtor or the Plan Administrator, as applicable, and the Holder fails to comply before the date that is 150 days after the request is made, the amount of such distribution shall irrevocably revert to the Wind-Down Debtor, and any Claim in respect of such distribution shall be forever barred from assertion against any Debtor or the Wind-Down Debtor, and their respective property.

6.19    *Effectuating Documents; Further Transactions.*

On and after the Effective Date, the Debtors, the Reorganized Debtors, the Wind-Down Debtor, or the Plan Administrator, as applicable, are authorized to and may issue, execute, deliver, file or record such contracts, securities, instruments, releases, and other agreements or documents and take such actions as may be necessary or appropriate to effectuate, implement and further evidence the terms and conditions of the Plan in the name of and on behalf of the Debtors, without the need for any approvals, authorization, or consents except for those expressly required pursuant to the Plan.

6.20    *Closing of the Chapter 11 Cases.*

On and after the Effective Date, the Wind-Down Debtor shall be permitted to classify all of the Chapter 11 Cases of the Debtors except for the Chapter 11 Case of a Debtor entity identified in the Restructuring Transactions Memorandum as having its Chapter 11 Case remain open following the Effective Date, as closed, and all contested matters relating to any of the Debtors, including objections to Claims or Interests and any adversary proceedings, may be administered and heard in the Chapter 11 Case

of the Debtor entity identified in the Restructuring Transactions Memorandum as having its Chapter 11 Case remain open following the Effective Date, irrespective of whether such Claims or Interests were Filed or such adversary proceeding was commenced against a Debtor whose Chapter 11 Case was closed.

6.21    *Creditors' Litigation Trust.*

(a)    Creditors' Litigation Trust/Vesting of Vested Causes of Action.

On the Effective Date, solely in the event that the Creditors' Committee determines prior to the Effective Date that it is in the best interest of the Classes 3A through 3D creditors, a Creditors' Litigation Trust shall be established. Notwithstanding anything to the contrary in Article 6, if the Creditors' Litigation Trust is established, the provisions of this Article 6.21 shall apply.

On the Effective Date, the Vested Causes of Action identified by the Debtors and the Creditors' Committee shall vest in the Creditors' Litigation Trust free and clear of all Claims, Interests, liens, and other encumbrances. All provisions of the Plan regarding rights, powers, duties, and obligations vested in the Plan Administrator with respect to such Vested Causes of Action, including, but not limited to, all provisions in Article 6.10 hereof, shall instead be vested in the Creditors' Litigation Trust.

The Creditors' Litigation Trust Agreement shall be drafted by the Creditors' Committee and in substantially the form included in the Plan Supplement. The Creditors' Litigation Trust shall be established to make distributions to Holders of Allowed Claims in Classes 3A through 3D in accordance with the Plan. All expenses (including taxes) incurred by Creditors' Litigation Trust shall be recorded on the books and records (and reported on all applicable tax returns) as expenses of the Creditors' Litigation Trust; *provided however*, that, such expenses shall be funded timely by the Wind-Down Debtor Assets upon written request of the Wind-Down Debtor or the Plan Administrator, as applicable.

The Bankruptcy Court shall have continuing jurisdiction over the Creditors' Litigation Trust.

(b)    The Creditors' Litigation Trustee.

The identity of the Creditors' Litigation Trustee shall be set forth in the Plan Supplement. The Creditors' Litigation Trustee is expected to be the individual designated as the Plan Administrator.

(c)    Certain Tax Matters.

The Creditors' Litigation Trust is intended to be treated, and shall be reported, as a "qualified settlement fund" for U.S. federal income tax purposes and shall be treated consistently for state and local tax purposes to the extent applicable. The Creditors' Litigation Trustee shall be the "administrator" of the Creditors' Litigation Trust within the meaning of Treasury Regulations section 1.468B-2(k)(3).

The Creditors' Litigation Trustee shall be responsible for filing all tax returns of the Creditors' Litigation Trust and the payment of any taxes due by or imposed on the Creditors' Litigation Trust.

The Creditors' Litigation Trustee may request an expedited determination of taxes under section 505(b) of the Bankruptcy Code for all tax returns filed by or on behalf of the Creditors' Litigation Trust for all taxable periods through the dissolution thereof.

**ARTICLE 7        DISTRIBUTIONS.**

7.1    *Timing and Calculation of Amounts to Be Distributed.*

Except (1) as otherwise provided herein, (2) upon a Final Order, or (3) as otherwise agreed to by the Debtors, the Reorganized Debtors, or the Wind-Down Debtor, as applicable, and the Holder of the applicable Claim, on the Effective Date or as soon as reasonably practicable thereafter (or if a Claim is not an Allowed Claim on the Effective Date, on the next Distribution Date after such Claim becomes, as applicable, an Allowed Claim, or as soon as reasonably practicable thereafter), each Holder of an Allowed Claim shall receive the full amount of distributions that the Plan provides for Allowed Claims in the applicable Class from the Distribution Agent on the Distribution Date.  In the event that any payment or distribution under the Plan is required to be made or performed on a date that is not a Business Day, then the making of such payment or distribution may be completed on the following Business Day, but shall be deemed to have been completed as of the required date.  Except as specifically provided in the Plan, Holders of Claims shall not be entitled to interest, dividends, or accruals on the distributions provided for in the Plan, regardless of whether such distributions are delivered on or at any time after the Effective Date.

7.2    *Rights and Powers of Distribution Agent.*

(a)    Powers of the Distribution Agent.

The Distribution Agent shall be empowered to:  (a) effect all actions and execute all agreements, instruments, and other documents necessary to perform its duties and exercise its rights under the Plan; (b) make all distributions contemplated under the Plan; (c) employ professionals to represent it with respect to its responsibilities and powers; and (d) exercise such other powers as may be vested in the Distribution Agent by order of the Bankruptcy Court, pursuant to the Plan, or as deemed by the Distribution Agent to be necessary and proper to implement the provisions of the Plan.

(b)    Expenses Incurred on or after the Effective Date.

Except as otherwise ordered by the Bankruptcy Court, the amount of any reasonable fees and expenses incurred by the Distribution Agent on or after the Effective Date and any reasonable compensation and expense reimbursement claims (including reasonable attorney and/or other professional fees and expenses) made by such Distribution Agent shall be paid in Cash by the Debtors or the Wind-Down Debtor, as applicable.

7.3    *Delivery of Distributions and Undeliverable or Unclaimed Distributions.*

(a)    Distributions Generally.

Except as otherwise provided in the Plan, the Distribution Agent shall make distributions to Holders of Allowed Claims at the address for each such Holder as indicated on the applicable register or in the Debtors' records as of the date of any such distribution (as applicable), including the address set forth in any Proof of Claim filed by that Holder.

(b)    Distributions on Account of Obligations of Multiple Debtors.

For all purposes associated with distributions under the Plan, all guarantees by any Debtor of the obligations of any other Debtor, as well as any joint and several liability of any Debtor with respect to any other Debtor, shall be deemed eliminated so that any obligation that could otherwise be asserted against more than one Debtor shall result in a single distribution under the Plan.  Any such Claims shall be subject

to all potential objections, defenses, and counterclaims, and to estimation pursuant to section 502(c) of the Bankruptcy Code.

(c)        Record Date of Distributions.

The Debtors or the Wind-Down Debtor, as applicable, shall, by notice on the docket in the Chapter 11 Cases, establish the Distribution Record Date, which as to any Distribution Date in connection with Allowed Class 4 Claims, shall be a date not less than thirty (30) days prior to such Distribution Date. On the Distribution Record Date, the various transfer registers for each Class of Claims or Interests as maintained by the Debtors or their respective agents shall be deemed closed, and there shall be no further changes in the record Holders of any Claims or Interests. The Distribution Agent shall have no obligation to recognize any transfer of Claims or Interests occurring on or after the Distribution Record Date. In addition, with respect to payment of any Cure Claim or disputes over any Cure Claim, neither the Debtors, the Wind-Down Debtor, nor the Distribution Agent shall have any obligation to recognize or deal with any party other than the non-Debtor party to the applicable Executory Contract or Unexpired Lease as of the Effective Date, even if such non-Debtor party has sold, assigned, or otherwise transferred its Cure Claim.

(d)        Special Rules for Distributions to Holders of Disputed Claims and Interests.

Notwithstanding any provision otherwise in the Plan and except as otherwise agreed to by Debtors or the Wind-Down Debtor, as applicable, on the one hand, and the Holder of a Disputed Claim or Interest, on the other hand, or as set forth in a Final Order, no partial payments and no partial distributions shall be made with respect to a Disputed Claim or Interest until all of the Disputed Claim or Interest has become an Allowed Claim or Interest or has otherwise been resolved by settlement or Final Order; *provided, however,* that, if the Debtors or the Wind-Down Debtor, as applicable, does not dispute a portion of an amount asserted pursuant to an otherwise Disputed Claim or Interest, the Distribution Agent may make a partial distribution on account of that portion of such Claim or Interest that is not Disputed at the time and in the manner that the Distribution Agent makes distributions to similarly situated Holders of Allowed Claims or Interests pursuant to the Plan. Any dividends or other distributions arising from property distributed to Holders of Allowed Claims or Interests, as applicable, in a Class and paid to such Holders under the Plan shall also be paid, in the applicable amounts, to any Holder of a Disputed Claim or Interest, as applicable, in such Class that becomes an Allowed Claim or Interest after the date or dates that such dividends or other distributions were earlier Paid to Holders of Allowed Claims or Interests in such Class.

(e)        De Minimis Distributions ; Minimum Distributions.

The Distribution Agent shall not make any Cash distributions to any Holder of an Allowed Claim or Interest pursuant to Article VII of this Plan on account of such Allowed Claim or Interest if such distribution is valued, in the reasonable discretion of the Distribution Agent, at less than $10.00, and each Holder of an Allowed Claim or Interest to which this limitation applies shall not be entitled to any distributions under the Plan.

(f)        Undeliverable Distributions and Unclaimed Property.

In the event that either (i) a distribution to any Holder is returned as undeliverable or (ii) the Holder of an Allowed Claim or Interest does not respond to a request by the Debtors or the Distribution Agent for information necessary to facilitate a particular distribution, no distribution to such Holder shall be made unless and until the Distribution Agent has determined the then-current address of such Holder or received the necessary information to facilitate a particular distribution, at which time such distribution shall be made to such Holder without interest, dividends, or other accruals of any kind; *provided, however*, that such distributions shall be deemed unclaimed property under section 347(b) of the Bankruptcy Code on the date

that is one year after the Effective Date. After such date, all unclaimed property or interests in property shall revert to the Debtors, the Wind-Down Debtor automatically and without need for a further order by the Bankruptcy Court (notwithstanding any applicable local, state, federal, or foreign escheat, abandoned, or unclaimed property laws to the contrary), and the Claim or Interest of any Holder to such property or interest in property shall not be entitled to any distributions under the Plan.

(g)     Manner of Payment Pursuant to the Plan.

At the option of the Distribution Agent, any Cash payment to be made hereunder may be made by check, wire transfer, automated clearing house, credit card, or as otherwise provided in applicable agreements.

7.4     *Compliance Matters.*

In connection with the Plan, to the extent applicable, Debtors or the Wind-Down Debtor, as applicable, and any other applicable withholding and reporting agents shall comply with all tax withholding and reporting requirements imposed on them by any Governmental Unit, and all distributions pursuant to the Plan shall be subject to such withholding and reporting requirements.  Notwithstanding any provision in the Plan to the contrary, Debtors, the Wind-Down Debtor, and the Distribution Agent, as applicable, and any other applicable withholding and reporting agents shall be authorized to take all actions necessary or appropriate to comply with such withholding and reporting requirements, including wind-down a portion of the distribution to be made under the Plan to generate sufficient funds to pay applicable withholding taxes, withholding distributions pending receipt of information necessary to facilitate such distributions, or establishing any other mechanisms that are reasonable and appropriate; *provided, however*, that Debtors or the Wind-Down Debtor, as applicable, shall request appropriate documentation from the applicable distributees and allow such distributees a reasonable amount of time to respond.  The Debtors or the Wind-Down Debtor, as applicable, and any other applicable withholding and reporting agents reserve the right to allocate all distributions made under the Plan in compliance with all applicable wage garnishments, alimony, child support, and other spousal awards, liens, and encumbrances.

7.5     *Foreign Currency Exchange Rate.*

Except as otherwise provided in a Bankruptcy Court order, as of the Effective Date, any Claim, asserted in government issued currency (for the avoidance of doubt, not including any Cryptocurrency) other than U.S. dollars shall be automatically deemed converted to the equivalent U.S. dollar value using the exchange rate for the applicable currency as published in The Wall Street Journal, National Edition, on the Effective Date.

7.6     *Dollarization of Account Holder Claims.*

As is required by section 502(b) of the Bankruptcy Code, each Account Holder's Claim is determined by the fair market value of the Cryptocurrency (based in United States dollars pursuant to the Cryptocurrency Conversion Table) held by the Account Holder at the Debtors as of the Petition Date at 11.59 p.m. UTC. This process is generally referred to as a "dollarization." Dollarization allows the Debtors to put all Account Holders' Claims on equal footing to calculate recoveries in accordance with the requirements of the Bankruptcy Code.

Notwithstanding the foregoing, (i) Distributions to Holders of Claims in Class 3 that allege claims arising from the Debtors' custody of Cryptocurrency in Accounts shall be made, subject to the Wind-Down Debtor's reasonable business judgment, in the form of the Cryptocurrency deposited by each respective Account Holder and from the Debtor with which such Cryptocurrency was deposited, and (ii) the Wind-

Down Debtor shall liquidate Cryptocurrency solely to the extent it determines, within its reasonable business judgment, that such liquidation is reasonable and necessary to make payments in Cash as otherwise required under the Plan.

      7.7    *Claims Paid or Payable by Third Parties.*

      (a)    <u>Claims Paid by Third Parties</u>.

The Debtors or the Wind-Down Debtor, as applicable, shall reduce a Claim or Interest, and such Claim or Interest (or portion thereof) shall be Disallowed without an objection to such Claim or Interest having to be Filed and without any further notice to or action, order, or approval of the Bankruptcy Court, to the extent that the Holder of such Claim or Interest receives a payment on account of such Claim or Interest from a party that is not the Wind-Down Debtor or the Plan Administrator (or other Distribution Agent), as applicable, including payments made in connection with the Sale Transaction, as applicable. To the extent a Holder of a Claim or Interest receives a distribution on account of such Claim or Interest and receives payment from a party that is not the Wind-Down Debtor or the Plan Administrator (or other Distribution Agent), as applicable, including payments made in connection with the Sale Transaction, as applicable, on account of such Claim or Interest, such Holder shall, within ten (10) Business Days of receipt thereof, repay, return, or deliver any distribution held by or transferred to the Holder to the Wind-Down Debtor or the Plan Administrator to the extent the Holder's total recovery on account of such Claim or Interest from the third party and under the Plan exceeds the amount of such Claim or Interest as of the date of any such distribution under the Plan. The failure of such Holder to timely repay, return, or deliver such distribution shall result in the Holder owing the Wind-Down Debtor or the Plan Administrator, as applicable, annualized interest at the Federal Judgment Rate on such amount owed for each Business Day after the ten-Business Day grace period specified above until the amount is repaid.

      (b)    <u>Claims Payable by Third Parties</u>.

No distributions under the Plan shall be made on account of an Allowed Claim or Interest that is payable pursuant to one of the Debtors' Insurance Policies until the Holder of such Allowed Claim or Interest has exhausted all remedies with respect to such Insurance Policy. To the extent that one or more of the Debtors' insurers agrees to satisfy in full or in part a Claim or Interest (if and to the extent adjudicated by a court of competent jurisdiction or otherwise settled), then immediately upon such payment, such Claim or Interest may be expunged or reduced on the Claims Register by the Claims Agent to the extent of any such payment without an objection to such Claim or Interest having to be filed and without any further notice to or action, order, or approval of the Bankruptcy Court.

      (c)    <u>Applicability of Insurance Policies</u>.

Except as otherwise provided herein, payments to Holders of Claims or Interests shall be in accordance with the provisions of any applicable Insurance Policy. Nothing contained in the Plan shall constitute or be deemed a release, settlement, satisfaction, compromise, or waiver of any rights, defenses, or Cause of Action that the Debtors, or any other Entity may hold against any other Entity, including insurers, under any policies of insurance, agreements related thereto, or applicable indemnity, nor shall anything contained herein constitute or be deemed a waiver by such insurers of any rights or defenses,

including coverage defenses, held by such insurers under the applicable Insurance Policies, agreements related thereto, and applicable non-bankruptcy law.

      7.8     *Setoffs and Recoupment.*

Except as otherwise expressly provided for herein, each Debtor or the Wind-Down Debtor or Creditors' Litigation Trust, as applicable, or such Entity's designee as instructed by such Debtor or Wind-Down Debtor or Creditors' Litigation Trust, as applicable, may, pursuant to the Bankruptcy Code (including section 553 of the Bankruptcy Code), applicable non-bankruptcy law, or as may be agreed to by the Holder of a Claim, set off against or recoup from an Allowed Claim and any distributions to be made pursuant to the Plan on account of such Allowed Claim, any Claims, rights, and Causes of Action of any nature whatsoever that the Debtors, the Reorganized Debtors, the Wind-Down Debtor, or the Creditors' Litigation Trust, as applicable, may have against the Holder of such Allowed Claim, to the extent such Claims, rights, or Causes of Action have not been otherwise compromised, settled, or released on or prior to the Effective Date (whether pursuant to the Plan or otherwise).  Notwithstanding the foregoing, except as expressly stated in Article 10.4 of this Plan, neither the failure to effect such a setoff or recoupment nor the allowance of any Claim pursuant to the Plan shall constitute a waiver or release by the Debtors, the Reorganized Debtors, Wind-Down Debtor, or the Creditors' Litigation Trust of any such Claims, rights, or Causes of Action the Debtors, the Reorganized Debtors, the Wind-Down Debtor, or the Creditors' Litigation Trust may possess against such Holder.

      7.9     *Allocation between Principal and Accrued Interest.*

Except as otherwise provided herein, the aggregate consideration paid to Holders with respect to their Allowed Claims shall be treated pursuant to the Plan as allocated first to the principal amount of such Allowed Claims (to the extent thereof and as determined for federal income tax purposes) and second, to the extent the consideration exceeds the principal amount of the Allowed Claims, to the remaining portion of such Allowed Claim, if any.

## ARTICLE 8      PROCEDURES FOR DISPUTED CLAIMS.

      8.1     *Objections to Claims.*

As of the Effective Date, objections to, and requests for estimation of Claims against the Debtors may only be interposed and prosecuted by the Reorganized Debtors or the Wind-Down Debtor, as applicable.  Such objections and requests for estimation shall be served and filed on or before the Claims Objection Deadline or the Administrative Claims Objection Deadline, as applicable.

      8.2     *Allowance of Claims.*

After the Effective Date, the Reorganized Debtors or the Wind-Down Debtor, as applicable, shall have and shall retain any and all rights and defenses that the Debtors had with respect to any Claim against a Debtor, except with respect to any Claim deemed Allowed under this Plan.  Except as expressly provided in this Plan or in any order entered in the Chapter 11 Cases prior to the Effective Date (including, without limitation, the Confirmation Order), no Claim shall become an Allowed Claim unless and until such Claim is deemed Allowed under this Plan or the bankruptcy Code or the Bankruptcy Court has entered a Final Order, including, without limitation, the Confirmation Order, in the Chapter 11 Cases allowing such Claim.

8.3    *Estimation of Claims.*

The Debtors, the Reorganized Debtors, or the Wind-Down Debtor, as applicable, may at any time request that the Bankruptcy Court estimate any contingent, unliquidated, or Disputed Claim, pursuant to section 502(c) of the Bankruptcy Code regardless of whether any party in interest previously objected to such Claim or whether the Bankruptcy Court has ruled on any such objection.  In the event that the Bankruptcy Court estimates any contingent, unliquidated, or Disputed Claim, the amount so estimated shall constitute either the Allowed amount of such Claim or the maximum limit of such Claim, as determined by the Bankruptcy Court.  If the estimated amount constitutes a maximum limitation on the amount of such Claim, the Reorganized Debtors or the Wind-Down Debtor, as applicable, may pursue supplementary proceedings to object to the allowance of such Claim.  All of the aforementioned objection, estimation, and resolution procedures are intended to be cumulative and not exclusive of one another.  Claims may be estimated and subsequently compromised, settled, withdrawn, or resolved by any mechanism approved by the Bankruptcy Court.

8.4    *No Distributions Pending Allowance.*

No payment or Distribution provided under the Plan shall be made on account of a Disputed Claim unless and until such Disputed Claim becomes an Allowed Claim.

8.5    *Distributions After Allowance.*

To the extent that a Disputed Claim or Interest ultimately becomes an Allowed Claim, distributions (if any) shall be made to the Holder of such Allowed Claim or Interest in accordance with the provisions of the Plan. As soon as reasonably practicable after the date that the order or judgment of the Bankruptcy Court Allowing any Disputed Claim or Interest becomes a Final Order, the Distribution Agent shall provide to the Holder of such Allowed Claim or Interest the distribution (if any) to which such Holder is entitled under the Plan as of the Effective Date, without any interest, dividends, or accruals to be paid on account of such Allowed Claim or Interest unless required under applicable bankruptcy law.

8.6    *No Interest.*

Unless otherwise specifically provided for herein or by Final Order of the Bankruptcy Court, postpetition interest shall not accrue or be paid on Claims against the Debtors, and no Holder of a Claim against the Debtors shall be entitled to interest accruing on or after the Petition Date on any such Claim. Additionally, and without limiting the foregoing, interest shall not accrue or be paid on any Disputed Claim.

8.7    *Resolution of Claims.*

Except as otherwise provided herein (including the release provisions hereof) or in the Confirmation Order, or in any contract, instrument, release, or other agreement or document entered into in connection with this Plan, in accordance with section 1123(b) of the Bankruptcy Code, on and after the Effective Date, the Reorganized Debtors, the Wind-Down Debtor, or the Creditors' Litigation Trust, as applicable, or may enforce, sue on, settle, or compromise (or decline to do any of the foregoing) all Claims, Disputed Claims, rights, Causes of Action, suits and proceedings, whether in law or in equity, whether known or unknown, that the Debtors, the Reorganized Debtors, the Wind-Down Debtor, or the Creditors' Litigation Trust, as applicable, may hold against any Entity, and any contract, instrument, release, indenture, or other agreement entered into in connection herewith.  From and after the Effective Date, the Reorganized Debtors, the Wind-Down Debtor, or the Creditors' Litigation Trust, as applicable, may settle or compromise any Disputed Claim without approval of the Bankruptcy Court; *provided, however,* that any settlement of

a Disputed Claim that results in an Allowed Claim in excess of $1,000,000 must be made after notice and an opportunity for parties-in-interest to object.

      8.8    *Disallowance of Claims.*

Any Claims or Interests held by Entities from which property is recoverable under sections 542, 543, 550, or 553 of the Bankruptcy Code or that is a transferee of a transfer avoidable under sections 522(f), 522(h), 544, 545, 547, 548, 549, or 724(a) of the Bankruptcy Code, shall be deemed disallowed pursuant to section 502(d) of the Bankruptcy Code, and Holders of such Claims may not receive any distributions on account of such Claims or Interests until such time as such Causes of Action against that Entity have been settled or a Bankruptcy Court order with respect thereto has been entered and all sums due, if any, to the Debtors by that Entity have been turned over or paid to the Debtors, the Reorganized Debtors, or the Wind-Down Debtor, as applicable.

**Except as otherwise provided herein or as agreed to by the Debtors, the Reorganized Debtors, or the Wind-Down Debtor, any and all Proofs of Claim Filed after the applicable Bar Date shall be deemed disallowed and expunged as of the Effective Date subject to the approval of the Bankruptcy Court, and Holders of such Claims may not receive any distributions on account of such Claims, unless such late Proof of Claim has been deemed timely Filed by a Final Order of the Bankruptcy Court.**

      8.9    *Amendments to Claims and Late Filed Claims.*

Following the Effective Date, except as otherwise provided in this Plan, the Confirmation Order, or the Plan Administrator Agreement, as applicable, no Claim may be filed, amended, or supplemented without the approval of the Bankruptcy Court or without the prior written authorization of the Wind-Down Debtor or the Plan Administrator, as applicable.

      8.10    *Insured Claims.*

If any portion of an Allowed Claim is an Insured Claim, no distributions under the Plan shall be made on account of such Allowed Claim until the Holder of such Allowed Claim has exhausted all remedies with respect to any applicable Insurance Policies.  To the extent that the Debtors' insurers agree to satisfy a Claim in whole or in part, then immediately upon such agreement, the portion of such Claim so satisfied may be expunged without an objection to such Claim having to be filed and without any further notice to or action, order or approval of the Bankruptcy Court.

**ARTICLE 9**        **EXECUTORY CONTRACTS AND UNEXPIRED LEASES.**

      9.1    *Assumption and Rejection of Executory Contracts and Unexpired Leases.*

On the Effective Date, except as otherwise provided herein, each Executory Contract and Unexpired Lease not previously rejected, assumed, or assumed and assigned, including any Employee Arrangements, and other Executory Contracts under which employee obligations arise, shall be deemed (a) in the event a Reorganization Transaction is consummated, automatically assumed pursuant to sections 365 and 1123 of the Bankruptcy Code, and (b) in the event the Debtors pursue a Liquidation Transaction, and to the extent not assumed and assigned in connection with the consummation of the Sale Transaction, automatically rejected pursuant to sections 365 and 1123 of the Bankruptcy Code, in each case unless such Executory Contract or Unexpired Lease: (1) is specifically described in the Plan as to be assumed or rejected, as applicable, in connection with confirmation of the Plan, or is specifically scheduled to be assumed, assumed and assigned, or rejected, as applicable, pursuant to the Plan or the Plan

Supplement; (2) is subject to a pending motion to assume or reject such Unexpired Lease or Executory Contract as of the Effective Date; (3) is to be assumed by the Debtors or assumed by the Debtors and assigned to another third party, as applicable, as identified in the Initial Assumption and Cure List; or (4) is a contract, instrument, release, indenture, or other agreement or document entered into in connection with the Plan. Entry of the Confirmation Order by the Bankruptcy Court shall constitute approval of such assumptions, assignments, and rejections, including the assumption, assumption and assignment, or rejection of the Executory Contracts or Unexpired Leases as provided in the Plan Supplement, pursuant to sections 365(a) and 1123 of the Bankruptcy Code.

9.2     *Preexisting Obligations to the Debtors Under Executory Contracts and Unexpired Leases.*

Rejection of any Executory Contract or Unexpired Lease pursuant to the Plan or otherwise shall not constitute a termination of preexisting obligations owed to the Debtors, the Reorganized Debtors, or the Wind-Down Debtor, as applicable, under such Executory Contract or Unexpired Lease. Without limiting the general nature of the foregoing, and notwithstanding any non-bankruptcy law to the contrary, the Debtors, the Reorganized Debtors, or the Wind-Down Debtor, as applicable, expressly reserve and do not waive any right to receive, or any continuing obligation of a counterparty to provide, warranties or continued maintenance obligations on goods previously purchased by the Debtors contracting from non-Debtor counterparties to any rejected Executory Contract or Unexpired Lease.

9.3     *Determination of Cure Claims and Deemed Consent.*

(a)     Except as with respect to the Initial Cure Objection Deadline and the Initial Assumption and Cure List, the Debtors shall file, as part of the Plan Supplement, the Schedule of Assumed Contracts and Leases. At least seven (7) calendar days before the deadline to object to confirmation of the Plan, the Debtors shall serve a notice on parties to Executory Contracts or Unexpired Leases to be assumed or assumed and assigned reflecting the Debtors' intention to potentially assume or assume and assign the contract or lease in connection with this Plan and, where applicable, setting forth the proposed Cure Claim (if any) to the extent not already notified pursuant to the Initial Assumption and Cure List. **Any objection by a counterparty to an Executory Contract or Unexpired Lease to the proposed assumption, assumption and assignment, or related Cure Claim must be filed, served, and actually received by the Debtors within the time periods set forth in the Initial Assumption and Cure List and the Initial Cure Objection Deadline, or such shorter period as agreed to by the parties or authorized by the Bankruptcy Court**. Any counterparty to an Executory Contract or Unexpired Lease that does not timely object to the notice of the proposed assumption of such Executory Contract or Unexpired Lease shall be deemed to have assented to assumption of the applicable Executory Contract or Unexpired Lease notwithstanding any provision thereof that purports to (i) prohibit, restrict, or condition the transfer or assignment of such contract or lease; (ii) terminate or modify, or permit the termination or modification of, a contract or lease as a result of any direct or indirect transfer or assignment of the rights of any Debtor under such contract or lease or a change, if any, in the ownership or control to the extent contemplated by this Plan; (iii) increase, accelerate, or otherwise alter any obligations or liabilities of any Debtor, the Wind-Down Debtor, or the Purchaser, as applicable, under such Executory Contract or Unexpired Lease; or (iv) create or impose a Lien upon any property or Asset of any Debtor or the Wind-Down Debtor, as applicable. Each such provision shall be deemed to not apply to the assumption of such Executory Contract or Unexpired Lease pursuant to this Plan and counterparties to assumed Executory Contracts or Unexpired Leases that fail to object to the proposed assumption in accordance with the terms set forth in this <u>Article 9.3</u> shall forever be barred and enjoined from objecting to the proposed assumption or assumption and assignment, or the validity of such assumption or assignment (including with respect to any Cure Claims or the provision of adequate assurance of future performance), or taking actions prohibited by the foregoing or the Bankruptcy Code on account of transactions contemplated by this Plan.

(b)    If there is a dispute pertaining to the Assumption Dispute regarding the assumption or assignment of an Executory Contract or Unexpired Lease (other than a dispute pertaining to a Cure Claim), such dispute shall be heard by the Bankruptcy Court prior to such assumption or assumption and assignment being effective, *provided, however*, that the Debtors, the Wind-Down Debtor, or the Purchaser, as applicable, may settle any dispute regarding the Cure Claim or the nature thereof without any further notice to any party or any action, order, or approval of the Bankruptcy Court.

(c)    To the extent an Assumption Dispute relates solely to the Cure Claim, the Debtors, the Reorganized Debtors, or the Wind-Down Debtor may assume and/or assume and assign the applicable Executory Contract or Unexpired Lease prior to the resolution of the Assumption Dispute; *provided, however*, that the Debtors, the Wind-Down Debtor, or the Purchaser, as applicable, reserve Cash in an amount sufficient to pay the full amount reasonably asserted as the required cure payment by the non-Debtor party to such Executory Contract or Unexpired Lease (or such smaller amount as may be fixed or estimated by the Bankruptcy Court or otherwise agreed to by such non-Debtor party and the Debtors, the Reorganized Debtors, the Wind-Down Debtor, or the Purchaser, as applicable.

(d)    Notwithstanding anything to the contrary herein, in the event of a Sale Transaction, the terms of the Bid Procedures, the Sale Transaction Documents, or any other related orders of the Bankruptcy Court, to the extent inconsistent with the terms of this Plan, shall govern the assumption and assignment of the relevant Executory Contracts or Unexpired Leases with respect to the Sale Transaction; *provided, however*, that if the Bid Procedures, the Sale Transaction Documents, and any other related order of the Bankruptcy Court do not provide for the assumption or assumption and assignment of an Executory Contract or Unexpired Lease, the terms of this Plan shall govern the assumption or rejection of an Executory Contract or Unexpired Lease.

9.4    *Payments Related to Assumption of Executory Contracts and Unexpired Leases.*

(a)    Any Cure Claim shall be satisfied, pursuant to section 365(b)(1) of the Bankruptcy Code, by payment of the Cure Claim by the Debtors, the Reorganized Debtors, the Wind-Down Debtor, or the Purchaser, as applicable, as reflected in the applicable Cure Notice, in Cash on the Effective Date or promptly thereafter, subject to the limitations described below, or on such other terms as the parties to such Executory Contracts or Unexpired Leases and the Debtors, the Reorganized Debtors, the Wind-Down Debtor, or the Purchaser, as applicable, may otherwise agree.

(b)    Assumption or assumption and assignment of any Executory Contract or Unexpired Lease pursuant to this Plan or otherwise shall result in the full release and satisfaction of any Claims against any Debtor or defaults by any Debtor, whether monetary or nonmonetary, including defaults of provisions restricting the change in control or ownership interest composition or other bankruptcy-related defaults, arising under any assumed Executory Contract or Unexpired Lease at any time before the date that the Debtors, the Reorganized Debtors, or the Wind-Down Debtor, as applicable, assume or assume and assign such Executory Contract or Unexpired Lease. Any proofs of Claim filed with respect to an Executory Contract or Unexpired Lease that has been assumed or assumed and assigned shall be deemed disallowed and expunged, without further notice to or action, order, or approval of the Bankruptcy Court or any other Entity, upon the assumption of such Executory Contract or Unexpired Lease.

9.5    *Claims Based on Rejection of Executory Contracts or Unexpired Leases.*

In the event that the rejection of an Executory Contract or Unexpired Lease hereunder results in damages to the other party or parties to such Executory Contract or Unexpired Lease, any Claim for such damages shall be classified and treated in Class 3A (Prime Core General Unsecured Claims), Class 3B (Prime Trust General Unsecured Claims), Class 3C (Prime IRA General Unsecured Claims), or Class 3D

(Prime Digital General Unsecured Claims), as applicable.  Such Claim shall be forever barred and shall not be enforceable against the Debtors, the Reorganized Debtors, the Wind-Down Debtor, or their respective properties or interests in property as agents, successors, or assigns, unless a Proof of Claim is filed with the Bankruptcy Court and served upon counsel for the Debtors, the Reorganized Debtors, or the Wind-Down Debtor, as applicable, by the later of (i) forty-five (45) days after the filing and service of the notice of the occurrence of the Effective Date, which notice shall set forth the bar date to file claims for rejection damages; and (ii) thirty (30) days after service of notice of entry of an Order rejecting such contract or lease if such contract or lease is the subject of a pending Assumption Dispute.

> 9.6    *Insurance Policies and Surety Bonds.*

>> (a)    <u>D&O Policies</u>.

On the Effective Date, the Wind-Down Debtor shall be deemed to have assumed all D&O Policies with respect to the Debtors' directors, managers, officers, and employees, as applicable, who served in such capacity at any time on or before the Effective Date pursuant to sections 105 and 365 of the Bankruptcy Code. Entry of the Confirmation Order shall constitute the Bankruptcy Court's approval of the Wind-Down Debtor assumption of each of the D&O Policies.  After the Effective Date, the Debtors, the Reorganized Debtors, or the Wind-Down Debtor, , as applicable, shall not terminate or otherwise reduce the coverage under any D&O Policies in effect on the Effective Date with respect to conduct occurring before the Effective Date, and all officers, directors, managers, and employees of the Debtors who served in such capacity at any time before the Effective Date shall be entitled to the full benefits of any such policy for the full term of such policy subject to the terms thereof regardless of whether such officers, directors, managers, or employees remain in such positions after the Effective Date; *provided, however,* that nothing in this paragraph shall preclude a reduction in the amount of available policy proceeds under the D&O Policies through payment of claims under any D&O Policies to or on behalf of the Debtors, the Reorganized Debtors, or the Wind-Down Debtor, as applicable.

>> (b)    <u>Assumption of Insurance Policies</u>.

On the Effective Date, each Insurance Policy shall be assumed by the Debtors, the Reorganized Debtors, or the Wind-Down Debtor, as applicable, pursuant to sections 105 and 365 of the Bankruptcy Code, unless such Insurance Policy (i) was identified on the Rejected Contracts Schedule, (ii) was rejected by the Debtors pursuant to an order of the Bankruptcy Court, or (ii) is the subject of a motion to reject pending on the Effective Date. Entry of the Confirmation Order shall constitute the Bankruptcy Court's approval of the Debtors, the Reorganized Debtors' or the Wind-Down Debtor's, as applicable, assumption of such Insurance Policies.

>> (c)    <u>Insurance Neutrality</u>.

Nothing in the Plan or the Confirmation Order, shall in any way operate to, or have the effect of, impairing, altering, supplementing, changing, expanding, decreasing, or modifying (i) the rights or obligations of any Insurer or (ii) any rights or obligations of the Debtors, the Reorganized Debtors, or the Wind-Down Debtor, as applicable, arising out of or under any Insurance Policy. The Insurers, the Debtors, the Reorganized Debtors, or the Wind-Down Debtor, as applicable, shall retain all rights and defenses under such Insurance Policies, and such Insurance Policies shall apply to, and be enforceable by and against, the insureds and the Reorganized Debtors or the Wind-Down Debtor, as applicable, in the same manner and according to the same terms and practices applicable to the Debtors, as existed before the Effective Date. Further, for all issues relating to insurance coverage, the provisions, terms, conditions, and limitations of the Insurance Policies shall control.

(d)    Surety Bonds.

Only in the event of an Reorganization Transaction, on the Effective Date, (i) all of the Debtors' obligations and commitments to any surety bond providers shall be deemed reaffirmed by the Reorganized Debtors or the Wind-Down Debtor, as applicable; (ii) surety bonds and related indemnification and collateral agreements entered into by the Debtors will be vested and performed by the Reorganized Debtors or Wind-Down Debtor, as applicable, and will survive and remain unaffected by entry of the Confirmation Order; and (iii) the Reorganized Debtors or the Wind-Down Debtor, as applicable, shall be authorized to enter into new surety bond agreements and related indemnification and collateral agreements, or to modify any such existing agreements, in the ordinary course of business. Nothing in the Plan shall in any way operate to, or have the effect of, impairing, altering, supplementing, changing, expanding, decreasing, or modifying the rights or obligations of the Debtors or any surety bond provider with respect to any unexpired surety bond agreement or related indemnification or collateral agreement.  For the avoidance of doubt, in the event of a Liquidation Transaction or Sale Transaction, none of the foregoing shall apply.

9.7    *Reservation of Rights.*

Nothing contained in this Plan or the Plan Documents (unless otherwise explicitly provided) shall constitute an admission by the Debtors or any other party that any contract or lease is in fact an Executory Contract or Unexpired Lease or that any Debtor, Reorganized Debtor, or the Wind-Down Debtor, as applicable, has any liability thereunder.  If there is a dispute regarding whether a contract or lease is or was executory or unexpired at the time of assumption or rejection, the Reorganized Debtor or the Wind-Down Debtor, as applicable, shall have forty-five (45) days following entry of a Final Order resolving such dispute to alter their treatment of such contract or lease, including by rejecting such contract or lease effective as of the Confirmation Date.

9.8    *Nonoccurrence of Effective Date.*

In the event that the Effective Date does not occur, the Bankruptcy Court shall retain jurisdiction with respect to any request to extend the deadline for assuming or rejecting Unexpired Leases pursuant to section 365(d)(4) of the Bankruptcy Code.

9.9    *Contracts and Leases Entered into After the Petition Date.*

Contracts and leases entered into after the Petition Date by any Debtor, including any Executory Contracts and Unexpired Leases assumed under section 365 of the Bankruptcy Code, will be performed by the applicable Debtor, Reorganized Debtor, or the Wind-Down Debtor, as applicable, liable thereunder in the ordinary course of its business.  Such contracts and leases that are not rejected under the Plan shall survive and remain unaffected by entry of the Confirmation Order.

**ARTICLE 10    SETTLEMENT, RELEASES, INJUNCTIONS, AND RELATED PROVISIONS.**

10.1    *Release of Liens.*

Except as otherwise provided in the Plan or in any Definitive Document, Plan Document, Reorganization Document, or in any Sale Transaction Document, all mortgages, deeds of trust, Liens, pledges, or other security interests against any property of the Estates shall be fully released, settled, and compromised and all rights, titles, and interests of any Holder of such mortgages, deeds of trust, Liens, pledges, or other security interests against any property of the Estates shall revert to the Debtors and vest in the Reorganized Debtors or the Wind-Down Debtor, as applicable, on the Effective Date.

10.2   *Discharge and Satisfaction of Claims.*

In the event a Reorganization Transaction is consummated, pursuant to sections 105 and 1141(d) of the Bankruptcy Code, and except as otherwise specifically provided in the Plan or in a contract, instrument, or other agreement or document executed pursuant to the Plan, the distributions, rights, and treatment that are provided in the Plan shall be in complete satisfaction, discharge, and release, effective as of the Effective Date, of Claims, Interests, and Causes of Action of any nature whatsoever, including any interest accrued on Claims from and after the Petition Date, whether known or unknown, against, liabilities of, Liens on, obligations of, rights against, and interests in respect of, the Debtors or any of their assets or properties, regardless of whether any property shall have been distributed or retained pursuant to the Plan on account of such Claims, including demands, liabilities, and Causes of Action that arose before the Effective Date, any contingent or non-contingent liability on account of representations or warranties issued on or before the Effective Date, any Claims for withdrawal liability that relate to services  performed by employees of the Debtor before the Effective Date or that arise from a termination of employment, and all debts of the kind specified in sections 502(g), 502(h), or 502(i) of the Bankruptcy Code, in each case whether or not (i) a Proof of Claim based upon such debt or right is Filed or deemed Filed pursuant to section 501 of the Bankruptcy Code; (ii) a Claim based upon such debt or right is Allowed pursuant to section 502 of the Bankruptcy Code; or (iii) the Holder of such a Claim has voted to accept or reject the Plan. Any default or "*event of default*" by the Debtors with respect to any Claim that existed immediately before or on account of the Filing of the Chapter 11 Cases shall be deemed cured (and no longer continuing) as of the Effective Date. The Confirmation Order shall be a judicial determination of the discharge of all Claims subject to the Effective Date occurring.

For the avoidance of doubt, in the event the Debtors pursue a Liquidation Transaction or Sale Transaction, pursuant to the provisions of section 1141(d)(3) of the Bankruptcy Code, the Debtors shall not be entitled to a discharge and shall be wound down as set forth in the Plan and the applicable Plan Documents.

10.3   *Term of Injunctions or Stays.*

Unless otherwise provided, all injunctions or stays arising under or entered during the Chapter 11 Cases under section 105 or 362 of the Bankruptcy Code, or otherwise, and in existence on the Confirmation Date, shall remain in full force and effect until the later of the Effective Date and the date indicated in the order providing for such injunction or stay.

10.4   ***Releases by the Debtors.***

**Notwithstanding anything in the Plan to the contrary, pursuant to section 1123(b) of the Bankruptcy Code, in exchange for good and valuable consideration, the adequacy of which is hereby confirmed, on and after the Effective Date, each Released Party is, and is deemed to be, hereby conclusively, absolutely, unconditionally, irrevocably, and forever released by each of the Debtors, their respective Estates, and any Person seeking to exercise the rights of any of the Debtors or their Estates (including any successors to any of the Debtors or their Estates or any estate representatives appointed or selected pursuant to section 1123(b)(3) of the Bankruptcy Code), in each case, on behalf of themselves and their respective successors, assigns, and representatives, and any and all other Persons who may purport to assert any Cause of Action, derivatively, by, through, for, or because of any of the foregoing Persons, from any and all Claims and Causes of Action, other than any 98f Wallet Causes of Action, whether known or unknown, foreseen or unforeseen, matured or unmatured, existing or hereafter arising, contingent or non-contingent, in law, equity, contract, tort or otherwise, that any of the Debtors, the Reorganized Debtors, the Wind-Down Debtor, the Creditors' Litigation Trust, their respective Estates, or any successors to or representatives of the**

foregoing appointed or selected pursuant to section 1123(b)(3) of the Bankruptcy Code, would have been legally entitled to assert in their own right (whether Individually or collectively) or that any holder of any Claim against or any Interest in, any of the Debtors could have asserted on behalf of any of the Debtors, the Reorganized Debtors, the Wind-Down Debtor, the Creditors' Litigation Trust, or their respective Estates, based on, relating to, or in any manner arising from, in whole or in part, any of the Debtors (including the capital structure, management, ownership, or operations thereof), any Security of any of the Debtors, the subject matter of, or the transactions or events giving rise to, any such Claim, Cause of Action or Interest, the business or contractual arrangements between any Debtor and a Released Party, any of the Debtors' restructuring efforts, any Avoidance Actions held by any of the Debtors or their Estates, any intercompany transactions performed by any of the Debtors, the Chapter 11 Cases (including the Filing thereof and any relief obtained by the Debtors therein), the formulation, preparation, dissemination, negotiation, or Filing of the Plan (including the Plan Supplement), the Disclosure Statement, the Bid Procedures Order (and the procedures approved thereby), any Definitive Document, any Plan Document, any Reorganization Transaction Document, any Sale Transaction Document, any Liquidation Transaction Document, any Reorganization Transactions, dollarization of Cryptocurrency, or any other contract, instrument, release, or other agreement or document (including any legal opinion requested by any Person regarding any transaction, contract, instrument, document or other agreement contemplated by the Plan or the reliance by any Released Party on the Plan or the Confirmation Order with respect to the Plan in lieu of such legal opinion) created or entered into, whether before or during the Chapter 11 Cases, in connection with the Filing of the Debtors' Chapter 11 Cases, the Bid Procedures Order, the Disclosure Statement, the Plan (including, for the avoidance of doubt, the Plan Supplement), any Reorganization Transactions, any Definitive Document, any Plan Document, any Reorganization Transaction Document, any Sale Transaction Document, any Liquidation Transaction Document, any Reorganization Transactions, dollarization of Cryptocurrency, the solicitation of votes with respect to the Plan, the pursuit of Confirmation of the Plan, the pursuit of Consummation of the Plan, and the administration implementation of the Plan, and the administration and the implementation of the Plan, including the issuance or distribution of Securities or any other property pursuant to the Plan, or any other act or omission, transaction, agreement, event, or other occurrence related or relating to any of the foregoing taking place on or before the Effective Date other than Claims and liabilities resulting therefrom arising out of or relating to any act or omission of a Released Party that constitutes actual fraud, willful misconduct, or gross negligence, in each case, solely to the extent determined by a Final Order of a court of competent jurisdiction.

Notwithstanding anything to the contrary in the foregoing, the releases set forth above do not release (a) any post-Effective Date Claims or obligations of any Person (other than Exculpated Parties except as otherwise set forth herein) under the Plan, the Confirmation Order with respect to the Plan, any Reorganization Transactions, any Definitive Document, any Plan Document, any Reorganization Transaction Document, any Sale Transaction Document, any Liquidation Transaction Document, any Reorganization Transactions, dollarization of Cryptocurrency, or any document, instrument, or agreement (including those set forth in the Plan Supplement) executed to implement the Plan, (b) any right of objection, defense, mandatory counterclaim, or right of setoff to any Claim against or Interest in the Debtors, or (c) any 98f Wallet Cause of Action.

Notwithstanding anything to the contrary contained herein, nothing in the Plan shall release, waive, or otherwise limit the rights, duties, or obligations of (i) if applicable, the Purchaser under the Asset Purchase Agreement or the Plan Sponsor under the Plan Sponsorship Agreement, and (ii) the Non-Released D&O Claims, but such Non-Released D&O Claims shall remain subject to the limitations contained in <u>Article 6.9</u> of this Plan.

Entry of the Confirmation Order shall constitute the Bankruptcy Court's approval, pursuant to section 1123(b) of the Bankruptcy Code and Bankruptcy Rule 9019, of the releases described in this <u>Article 10.4</u> by the Debtors, which includes by reference each of the related provisions and definitions contained in this Plan, and further, shall constitute the Bankruptcy Court's finding that each release described in this <u>Article 10.4</u> is:  (1) in exchange for the good and valuable consideration provided by the Released Parties; (2) a good-faith settlement and compromise of such Causes of Action; (3) in the best interests of the Debtors and all Holders of Claims and Interests; (4) fair, equitable, and reasonable; (5) given and made after due notice and opportunity for hearing; (6) a sound exercise of the Debtors' business judgment; and (7) except to the extent contemplated by <u>Article 10.4</u> and <u>Article 10.5</u> of the Plan, a bar to any Debtor, the Wind-Down Debtor, the Creditors' Litigation Trust, or their respective Estates asserting any Cause of Action related thereto, of any kind, against any of the Released Parties or their property, in all cases subject to the entry of the Confirmation Order.

10.5    *Releases By Holders of Claims and Interests.*

Except as otherwise expressly set forth in the Plan or the Confirmation Order, on and after the Effective Date, in exchange for good and valuable consideration, the adequacy of which is hereby confirmed, each Released Party is, and is deemed to be, hereby conclusively, absolutely, unconditionally, irrevocably and forever, released by each Releasing Party from any and all Causes of Action, other than any 98f Wallet Causes of Action, whether known or unknown, foreseen or unforeseen, matured or unmatured, existing or hereafter arising, contingent or non-contingent, in law, equity, contract, tort, or otherwise, including any derivative claims asserted on behalf of the Debtors, that such Person would have been legally entitled to assert (whether individually or collectively), based on or relating to, or in any manner arising from, in whole or in part, any of the Debtors (including the capital structure, management, ownership, or operation thereof), any security of any of the Debtors, any of the Reorganized Debtors, or the Wind-Down Debtor, the subject matter of, or the transactions or events giving rise to, any Claim or Interest that is treated in the Plan, the business or contractual arrangements between any Debtor and any Released Party, the assertion or enforcement of rights and remedies against any of the Debtors, the Debtors' in- or out-of-court restructuring efforts, any Avoidance Actions held by any of the Debtor(s) or their Estates, intercompany transactions between or among an Debtor and another Debtor, the formulation, preparation, dissemination, negotiation, or Filing of the Chapter 11 Cases, the Bid Procedures Order, Disclosure Statement, the Plan (including, for the avoidance of doubt, the Plan Supplement), any Definitive Document, any Plan Document, any Reorganization Transaction Document, any Sale Transaction Document, any Liquidation Transaction Document, any Reorganization Transactions, dollarization of Cryptocurrency, any Reorganization Transactions contemplated by the Plan, any contract, instrument, release, or other agreement or document created or entered into, whether before or during the Chapter 11 Cases, in connection with the Filing of the Debtors' Chapter 11 Cases, the Bid Procedures Order, the Disclosure Statement, the Plan (including, for the avoidance of doubt, the Plan Supplement), any Reorganization Transactions, any Definitive Document, any Plan Document, any Reorganization Transaction Document, any Sale Transaction Document, any Liquidation Transaction Document, any Reorganization Transactions, dollarization of Cryptocurrency, the solicitation of votes with respect to the Plan, the pursuit of Confirmation of the Plan, the pursuit of Consummation of the Plan, and the administration implementation of the Plan. Notwithstanding anything to the contrary in the foregoing, the releases set forth in this <u>Article 10.5</u> shall not be construed as (i) releasing any Released Party from Claims or Causes of Action arising from an act or omission that is judicially determined by a Final Order to have constituted actual fraud, willful misconduct, or gross negligence; (ii) releasing any post-Effective Date obligations of or under (A) any party or Entity under the Plan, (B) any Executory Contract or Unexpired Lease to the extent such Executory Contract or Unexpired Lease has been assumed by the Debtors pursuant to a

Final Order, or (C) any document, instrument, or agreement executed to implement the Plan; (iii) releasing any rights to distributions required to be paid or delivered pursuant to the Plan or the Confirmation Order; (v) releasing or discharging any properly-pled direct claim (other than claims against the Debtors) held by a creditor that is not a Releasing Party.  For the avoidance of doubt, to the extent that any creditor had a direct claim against a non-Debtor under applicable non-bankruptcy law (other than a fraudulent transfer claim) prior to the Petition Date, such claim did not vest in the Debtors on the Petition Date and remains property of such creditor.

      10.6    *Exculpation.*

      Effective as of the Effective Date, to the fullest extent permissible under applicable law and without affecting or limiting either the Debtor release or the third party release, and except as otherwise specifically provided in the Plan, no Exculpated Party shall have or incur, and each Exculpated Party is exculpated from any Cause of Action for any act or omission arising on or after the Petition Date and prior to the Effective Date based on the Chapter 11 Cases, the formulation, preparation, dissemination, negotiation or filing, or consummation of the Disclosure Statement, the Bid Procedures Order, the Plan, any Definitive Document, any Plan Document, any Reorganization Transaction Document, any Sale Transaction Document, any Liquidation Transaction Document, any Reorganization Transactions, dollarization of Cryptocurrency, any contract, instrument, release, or other agreement or document created or entered into in connection with the Disclosure Statement, the Plan or any Reorganization Transactions, the filing of the Chapter 11 Cases, the pursuit of Confirmation, the pursuit of Consummation of the Plan, the administration of the Chapter 11 Cases, the administration and implementation of the Plan, including the issuance of Securities pursuant to the Plan, or the distribution of property under the Plan or any other related agreement (including, for the avoidance of doubt, providing any legal opinion requested by any Entity regarding any transaction, contract, instrument, document, or other agreement contemplated by the Plan or the reliance by any Exculpated Party on the Plan or the Confirmation Order in lieu of such legal opinion), except for Causes of Action related to any act or omission that is determined in a Final Order of a court of competent jurisdiction to have constituted actual fraud, willful misconduct, malpractice, or gross negligence, but in all respects such Entities shall be entitled to reasonably rely upon the advice of counsel with respect to their duties and responsibilities pursuant to the Plan.

      The Exculpated Parties have, and upon Consummation of the Plan shall be deemed to have, participated in good faith and in compliance with the applicable laws with regard to the solicitation of votes and distribution of consideration pursuant to the Plan and, therefore, are not, and on account of such distributions shall not be, liable at any time for the violation of any applicable law, rule, or regulation governing the solicitation of acceptances or rejections of the Plan or such distributions made pursuant to the Plan.

      Entry of the Confirmation Order shall constitute the Bankruptcy Court's approval, pursuant to section 1123 of the Bankruptcy Code and Bankruptcy Rule 9019, of the exculpations set forth in this <u>Article 10.6</u>, subject to entry of the Confirmation Order.

      10.7    *Injunction.*

      (a)    Upon entry of the Confirmation Order, all Holders of Claims and Interests and other parties in interest, along with their respective present or former employees, members, managers, agents, officers, directors, principals, and affiliates, shall be enjoined from taking any actions to interfere with the implementation or Consummation of the Plan in relation to any Claim extinguished, or released pursuant to the Plan.

(b)        Except as expressly provided in the Plan, the Confirmation Order, or a separate order of the Bankruptcy Court or as agreed to by the Debtors and a Holder of a Claim against or Interest in the Debtors, all Entities who have held, hold, or may hold Claims against or Interests in the Debtors (whether or not proof of such Claims or Interests has been filed and whether or not such Entities vote in favor of, against or abstain from voting on the Plan or are presumed to have accepted or deemed to have rejected the Plan) and other parties in interest, along with their respective present or former employees, members, managers, agents, officers, directors, principals, and affiliates are permanently enjoined, on and after the Effective Date, solely with respect to any Claims, Interests, and Causes of Action that will be or are extinguished, or released pursuant to the Plan from (i) commencing, conducting, or continuing in any manner, directly or indirectly, any suit, action, or other proceeding of any kind (including, without limitation, any proceeding in a judicial, arbitral, administrative or other forum) against or affecting the Debtors, the Wind-Down Debtor, the Creditors' Litigation Trust, or the property of any of the Debtors, the Reorganized Debtors, the Wind-Down Debtor, the Creditors' Litigation Trust, or their respective properties or Estates, as applicable; (ii) enforcing, levying, attaching (including, without limitation, any prejudgment attachment), collecting, or otherwise recovering by any manner or means, whether directly or indirectly, any judgment, award, decree, or order against the Debtors, the Wind-Down Debtor, the Creditors' Litigation Trust, or the property of any of the Debtors, the Wind-Down Debtor, the Creditors' Litigation Trust, the Reorganized Debtors, or their respective Estates; (iii) creating, perfecting, or otherwise enforcing in any manner, directly or indirectly, any encumbrance of any kind against the Debtors, the Wind-Down Debtor, the Creditors' Litigation Trust, or the property of any of the Debtors, the Wind-Down Debtor, the Creditors' Litigation Trust, the Reorganized Debtors, or against their respective Estates; (iv) asserting any right of setoff, directly or indirectly, against any obligation due from the Debtors, the Wind-Down Debtor, the Creditors' Litigation Trust, or against the property of any of the Debtors, the Wind-Down Debtor, the Creditors' Litigation Trust, the Reorganized Debtors, or their respective Estates, or against property or interests in property of any of the Debtors, the Wind-Down Debtor or the Creditors' Litigation Trust, except as contemplated or allowed by the Plan; and (v) acting or proceeding in any manner, in any place whatsoever, that does not conform to or comply with the provisions of the Plan.

(c)        By accepting distributions pursuant to the Plan, each Holder of an Allowed Claim or Interest extinguished, or released pursuant to the Plan shall be deemed to have affirmatively and specifically consented to be bound by the Plan, including, without limitation, the injunctions set forth in this **Article 10.7**.

(d)        The injunctions in this **Article 10.7** shall extend to any successors of the Debtors, the Reorganized Debtors, or the Wind-Down Debtor, as applicable, and their respective property and interests in property.

## ARTICLE 11        CONDITIONS PRECEDENT TO THE EFFECTIVE DATE.

11.1    *Conditions Precedent to the Effective Date.*

The occurrence of the Effective Date of the Plan is subject to the following conditions precedent:

(a)        the Bankruptcy Court shall have entered the Confirmation Order, and the Confirmation Order shall not be subject to any stay, modification, vacation on appeal, and shall have become a Final Order;

(b)      all funding, actions, documents and agreements necessary to implement and consummate the Plan and the transactions and other matters contemplated thereby, shall have been effectuated or executed, including the funding of the Wind-Down Reserve, if applicable;

(c)      the Sale Transaction shall have been consummated in accordance with Asset Purchase Agreement, if applicable;

(d)      the transactions contemplated under the Plan Sponsorship Agreement shall have been consummated in accordance with the terms thereof, if applicable;

(e)      the Wind-Down Debtor shall be established and validly existing and the Plan Administrator Agreement shall have been executed;

(f)      all professional fees and expenses of the Debtors and the Creditors' Committee that, as of the Effective Date, were due and payable under an order of the Bankruptcy Court shall have been paid in full, other than any Professional Fee Claims subject to approval by the Bankruptcy Court;

(g)      the Debtors shall have funded the Professional Fee Escrow Account in accordance with Article 2.3 herein;

(h)      no governmental entity or federal or state court of competent jurisdiction shall have enacted, issued, promulgated, enforced or entered any law or order (whether temporary, preliminary or permanent), in any case which is in effect and which prevents or prohibits consummation of the Plan or any of the other transactions contemplated hereby and no governmental entity shall have instituted any action or proceeding (which remains pending at what would otherwise be the Effective Date) seeking to enjoin, restrain or otherwise prohibit consummation of the transactions contemplated by the Plan;

(i)      all authorizations, consents, regulatory approvals, rulings or documents that are necessary to implement and effectuate the Plan as of the Effective Date shall have been received, waived or otherwise resolved; and

(j)      all documents and agreements necessary to implement the Plan, including those set forth in the Plan Supplement, shall have (i) been tendered for delivery and (ii) been effectuated or executed by all Entities party thereto, and all conditions precedent to the effectiveness of such documents and agreements shall have been satisfied or waived pursuant to the terms of such documents or agreements.

11.2    *Waiver of Conditions Precedent.*

Each of the conditions precedent in Article 11.1 other than the condition set forth in Article 11.1(a) and (k) may be waived in writing by the Debtors, in consultation with the Creditors' Committee or, to the extent applicable, with the consent of the Creditors' Committee (which shall not be unreasonably withheld) consistent with Article 6.6 hereof.  Any such waivers may be effectuated at any time, without notice, without leave or order of the Bankruptcy Court and without any formal action.

11.3    *Substantial Consummation.*

On the Effective Date, the Plan shall be deemed to be substantially consummated under sections 1101 and 1127(b) of the Bankruptcy Code.

11.4    *Effect of Vacatur of Confirmation Order.*

If the Confirmation Order is vacated, (i) no distributions under the Plan shall be made, (ii) the Debtors and all Holders of Claims and Interests shall be restored to the status quo ante as of the day immediately preceding the Confirmation Date as though the Confirmation Date never occurred, and (iii) all the Debtors' obligations with respect to the Claims and the Interests shall remain unchanged and nothing contained herein shall be deemed to constitute a waiver or release of any Claims by or against the Debtors or any other entity or to prejudice in any manner the rights of the Debtors or any other entity in any further proceedings involving the Debtors or otherwise.

## ARTICLE 12    RETENTION OF JURISDICTION.

On and after the Effective Date, the Bankruptcy Court shall retain jurisdiction over all matters arising in, arising under, and related to the Chapter 11 Cases for, among other things, the following purposes:

(a)    to hear and determine motions and/or applications for the assumption or rejection of Executory Contracts or Unexpired Leases and the allowance, classification, priority, compromise, estimation, or payment of Claims resulting therefrom;

(b)    resolve any matters related to Executory Contracts or Unexpired Leases, including: (i) the assumption, assumption and assignment, or rejection of any Executory Contract or Unexpired Lease to which a Debtor is party or with respect to which a Debtor may be liable and to hear, determine, and, if necessary, liquidate, any Cure Claims or other Claims arising therefrom, including pursuant to Bankruptcy Code section 365; (ii) any potential contractual obligation under any Executory Contract or Unexpired Lease that is assumed or assumed and assigned; and (iii) any dispute regarding whether a contract or lease is or was executory, expired, or terminated;

(c)    to determine any motion, adversary proceeding, application, contested matter, or other litigated matter pending on or commenced after the Confirmation Date, including any such motion, adversary proceeding, application, contested matter, or other litigated matter brought by the Wind-Down Debtor;

(d)    to ensure that distributions to Holders of Allowed Claims are accomplished as provided herein;

(e)    to consider Claims or the allowance, classification, priority, compromise, estimation or payment of or objection to any Claim;

(f)    to enter, implement or enforce such orders as may be appropriate in the event the Confirmation Order is for any reason stayed, reversed, revoked, modified or vacated;

(g)    to issue injunctions, enter and implement other orders, and take such other actions as may be necessary or appropriate to restrain interference by any Person with the Consummation, implementation or enforcement of the Plan, the Confirmation Order, or any other order of the Bankruptcy Court;

(h)    to hear and determine any application to modify the Plan in accordance with section 1127 of the Bankruptcy Code, to remedy any defect or omission or reconcile any inconsistency in the Plan, or any order of the Bankruptcy Court, including the Confirmation Order, in such a manner as may be necessary to carry out the purposes and effects thereof;

(i)       to hear and determine all applications under sections 330, 331, and 503(b) of the Bankruptcy Code for awards of compensation for services rendered and reimbursement of expenses incurred before the Confirmation Date;

(j)       to hear and determine disputes, including regulatory disputes, arising in connection with the interpretation, implementation, or enforcement of the Plan, the Confirmation Order, any Sale Transaction Document, any Reorganization Transaction Document (and any Final Orders approving the same), the Plan Administrator Agreement, or any agreement, instrument, or other document governing or relating to any of the foregoing;

(k)       to take any action and issue such orders as may be necessary to construe, interpret, enforce, implement, execute, and consummate the Plan or to maintain the integrity of the Plan following Consummation;

(l)       to hear any disputes arising out of, and to enforce, any order approving alternative dispute resolution procedures to resolve personal injury, employment litigation and similar Claims pursuant to section 105(a) of the Bankruptcy Code;

(m)       to determine such other matters and for such other purposes as may be provided in the Confirmation Order;

(n)       to hear and determine matters concerning state, local, foreign, and federal taxes in accordance with sections 346, 505, and 1146 of the Bankruptcy Code (including any requests for expedited determinations under section 505(b) of the Bankruptcy Code);

(o)       to adjudicate any and all disputes arising from or relating to distributions under the Plan;

(p)       to hear and determine any other matters over which the Bankruptcy Court has jurisdiction;

(q)       to enter one or more final decrees closing the Chapter 11 Cases;

(r)       to enforce all orders previously entered by the Bankruptcy Court;

(s)       to recover all assets of the Debtors and property of the Debtors' Estates, wherever located;

(t)       to hear and determine any rights, Claims or Causes of Action held by or accruing to the Debtors pursuant to the Bankruptcy Code or pursuant to any federal statute or legal theory;

(u)       matters pursued by the Creditors' Litigation Trust; and

(v)       any other matters that may arise in connection with or relate to the Plan, the Plan Supplement, the Disclosure Statement, the Confirmation Order, any Sale Transaction Document, any Reorganization Transaction Document (and any Final Orders approving the same), or any contract, instrument, release, indenture, or other agreement or document created in connection therewith.

**ARTICLE 13        MISCELLANEOUS PROVISIONS.**

13.1    *Subordinated Claims.*

The allowance, classification, and treatment of all Allowed Claims and Interests and the respective distributions and treatments under the Plan take into account and conform to the relative priority and rights of the Claims and Interests in each Class in connection with any contractual, legal, and equitable subordination rights relating thereto, whether arising under general principles of equitable subordination, section 510(b) of the Bankruptcy Code, or otherwise.  Pursuant to section 510 of the Bankruptcy Code, the Debtors reserve the right for the Wind-Down Debtor to re-classify any Allowed Claim or Interest in accordance with any contractual, legal, or equitable subordination relating thereto.

13.2    *Dissolution of Creditors' Committee.*

On the Effective Date, the Creditors' Committee shall dissolve, and the members thereof and the professionals retained by the Creditors' Committee or the members thereof shall be released and discharged from all rights and duties arising from, or related to, the Chapter 11 Cases; *provided, however*, that after the Effective Date, the Creditors' Committee shall continue to exist and have standing and a right to be heard for the following limited purposes:  (a) applications, and any relief related thereto, for payment of Professional Fee Claims and requests for allowance of Administrative Expense Claims for substantial contribution pursuant to section 503(b)(3)(D) of the Bankruptcy Code; and (b) any appeals of the Confirmation Order or other appeal to which the Creditors' Committee is a party.

13.3    *Amendments.*

(a)     Plan Modifications.  The Plan may be amended, modified or supplemented by the Debtors prior to the Effective Date, in the manner provided for by section 1127 of the Bankruptcy Code or as otherwise permitted by law without additional disclosure pursuant to section 1125 of the Bankruptcy Code, subject to the Creditors' Committee Consent Rights set forth in Article 6.6 hereof.  In addition, after the Confirmation Date, the Debtors may institute proceedings in the Bankruptcy Court to remedy any defect or omission or reconcile any inconsistencies in the Plan or the Confirmation Order, with respect to such matters as may be necessary to carry out the purposes and effects of the Plan.

(b)     Other Amendments.  Before the Effective Date, the Debtors may make appropriate technical adjustments and modifications to the Plan and any of the documents prepared in connection herewith without further order or approval of the Bankruptcy Court.

13.4    *Revocation or Withdrawal of the Plan.*

The Debtors reserve the right to revoke or withdraw the Plan, including the right to revoke or withdraw the Plan for any Debtor or all Debtors, prior to the Confirmation Date.  If the Debtors revoke or withdraw the Plan, or if Confirmation or Consummation does not occur, then:  (i) the Plan shall be null and void in all respects; (ii) any settlement or compromise embodied in the Plan (including the fixing or limiting to an amount certain of any Claim or Interest or Class of Claims or Interests), assumption or rejection of Executory Contracts or Unexpired Leases effected by the Plan, and any document or agreement executed pursuant to the Plan, shall be deemed null and void; and (ii) nothing contained in the Plan shall: (A) constitute a waiver or release of any Claims or Interests; (B) prejudice in any manner the rights of the Debtors, the Debtors' Estates, or any other Entity; or (C) constitute an admission, acknowledgement, offer, or undertaking of any sort by the Debtors, the Debtors' Estates, or any other Entity.

13.5    *Severability of Plan Provisions Upon Confirmation.*

If, before the entry of the Confirmation Order, any term or provision of the Plan is held by the Bankruptcy Court to be invalid, void, or unenforceable, the Bankruptcy Court, at the request of the Debtors, shall have the power to alter and interpret such term or provision to make it valid or enforceable to the maximum extent practicable, consistent with the original purpose of the term or provision held to be invalid, void, or unenforceable, and such term or provision shall then be applicable as altered or interpreted. Notwithstanding any such holding, alteration or interpretation, the remainder of the terms and provisions of the Plan will remain in full force and effect and will in no way be affected, impaired or invalidated by such holding, alteration or interpretation. The Confirmation Order shall constitute a judicial determination and shall provide that each term and provision of the Plan, as it may have been altered or interpreted in accordance with the foregoing, is (i) valid and enforceable pursuant to its terms; (ii) integral to the Plan and may not be deleted or modified without the consent of the Debtors, the Reorganized Debtors, the Wind-Down Debtor, or the Plan Administrator, as applicable; and (iii) not severable and mutually dependent.

13.6    *Governing Law.*

Except to the extent that the Bankruptcy Code or other federal law is applicable, or to the extent an exhibit hereto provides otherwise, the rights, duties and obligations arising under the Plan shall be governed by, and construed and enforced in accordance with, the laws of the State of Delaware, without giving effect to the principles of conflict of laws thereof.

13.7    *Time.*

In computing any period of time prescribed or allowed by the Plan, unless otherwise set forth herein or determined by the Bankruptcy Court, the provisions of Bankruptcy Rule 9006 shall apply.

13.8    *Additional Documents.*

On or before the Effective Date, the Debtors may, after consultation with, if applicable, the Plan Sponsor, file with the Bankruptcy Court such agreements and other documents as may be necessary or appropriate to effectuate and further evidence the terms and conditions of the Plan. The Debtors and all Holders of Claims or Interests receiving distributions pursuant to the Plan and all other parties in interest shall, prepare, execute, and deliver any agreements or documents and take any other actions as may be necessary or advisable to effectuate the provisions and intent of the Plan.

13.9    *Immediate Binding Effect.*

Subject to Article 11 and the applicable provisions of the Bankruptcy Code, and notwithstanding Bankruptcy Rules 3020(e), 6004(h), or 7062 or otherwise, upon the occurrence of the Effective Date, the terms of the Plan shall be immediately effective and enforceable and deemed binding upon and inure to the benefit of the Debtors, the Wind-Down Debtor, the Holders of Claims and Interests, the Releasing Parties, the Released Parties, the Exculpated Parties, and each of their respective successors and assigns, including, without limitation, the Wind-Down Debtor.

13.10    *Successor and Assigns.*

The rights, benefits and obligations of any Person named or referred to in the Plan shall be binding on, and shall inure to the benefit of any heir, executor, administrator, successor or permitted assign, if any, of each Entity.

13.11   *Entire Agreement.*

On the Effective Date, the Plan and the Confirmation Order shall supersede all previous and contemporaneous negotiations, promises, covenants, agreements, understandings and representations on such subjects, all of which have become merged and integrated into the Plan.

13.12   *Notices.*

All notices, requests and demands to or upon the Debtors to be effective shall be in writing (including by facsimile transmission) and, unless otherwise expressly provided herein, shall be deemed to have been duly given or made when actually delivered or, in the case of notice by facsimile transmission, when received and telephonically confirmed, addressed as follows:

       (a)       <u>if to the Debtors or the Reorganized Debtors</u>:

**Prime Core Technologies Inc.**
10845 Griffith Peak Dr., #03-153,
Las Vegas, NV 89135

-and-

**McDermott Will & Emery LLP**
Maris J. Kandestin
1000 N. West Street, Suite 1400
Wilmington, Delaware 19801
Telephone:     (302) 485-3900
Facsimile:      (302) 351-8711
Email:         mkandestin@mwe.com

-and-

Darren Azman
Joseph B. Evans
One Vanderbilt Avenue
New York, New York 10017-3852
Telephone:     (212) 547-5400
Facsimile:      (646) 547-5444
Email:         dazman@mwe.com
                  jbevans@mwe.com

-and-

Gregg Steinman
333 SE 2nd Avenue, Suite 4500
Miami, Florida 33131
Telephone:     (305) 358-3500
Facsimile:      (305) 347-6500
Email:         gsteinman@mwe.com

-and-

R. Jacob Jumbeck
Rebecca E. Trickey
444 W. Lake Street, Suite 4000
Chicago, Illinois 60606-0029
Telephone:      (312) 372-2000
Facsimile:      (312) 984-7700
Email:          jjumbeck@mwe.com
                rtrickey@mwe.com

(b)      if to the Creditors' Committee:

**Brown Rudnick LLP**
Robert Stark
Bennett Silverberg
Kenneth Aulet
7 Times Square
New York, New York 10036
Telephone:      (212) 209-4800
Facsimile:      (212) 209-4801
Email:          rstark@brownrudnick.com
                bsilverberg@brownrudnick.com
                kaulet@brownrudnick.com

-and-

Tristan Axelrod
Sharon Dwoskin
Matthew Sawyer
One Financial Center
Boston, Massachusetts 02111
Telephone:      (617) 856-8200
Facsimile:      (617) 856-8201
Email:          taxelrod@brownrudnick.com
                sdwoskin@brownrudnick.com
                msawyer@brownrudnick.com

-and-

**Womble Bond Dickinson (US) LLP**
Donald J. Detweiler
Elazar A. Kosman
1313 North Market Street, Suite 1200
Wilmington, Delaware 19801
Telephone:      (302) 252-4320
Facsimile:      (302) 252-4330
Email:          don.detweiler@wbd-us.com
Email:          elazar.kosman@wbd-us.com

(c)      If to the Wind-Down Debtor:

[•]

68

After the Effective Date, the Reorganized Debtors, the Plan Administrator, the Wind-Down Debtor have authority to send a notice to Entities that to continue to receive documents pursuant to Bankruptcy Rule 2002, they must file a renewed request to receive documents pursuant to Bankruptcy Rule 2002.  After the Effective Date, the Reorganized Debtors, the Plan Administrator, or the Wind-Down Debtor, as applicable, are authorized to limit the list of Entities receiving documents pursuant to Bankruptcy Rule 2002 to those Entities who have filed such renewed requests and to those Entities who are required to be served under Local Rule 2002-1(b).

[Remainder of page left intentionally blank.]

Dated: October 2, 2023

Respectfully submitted,

By: _/s/ Michael Wyse_
    Name: Michael Wyse
    Title:  Member, Special Committee of the
           Debtors and Debtors in Possession,
           solely in his capacity as such