**Exhibit 1**

**Liquidation Analysis**

**EXHIBIT B**

**LIQUIDATION ANALYSIS**

**INTRODUCTION**

Often referred to as the "best interests of creditors" test, section 1129(a)(7) of the Bankruptcy Code requires that each holder of a claim or interest in each impaired class either (i) accept the plan or (ii) receive or retain under the plan property of a value, as of the effective date of the confirmed plan, that is not less than the amount such holder would receive if the debtor was liquidated under chapter 7 of the Bankruptcy Code.

To demonstrate that the Plan satisfies the best interests test, the Debtors, with the assistance of their financial advisors, have prepared this hypothetical liquidation analysis (the "**Liquidation Analysis**") and have taken the following steps:

i) estimated the cash proceeds that a chapter 7 trustee (a "**Trustee**") would generate if each Debtor's chapter 11 case was converted to a chapter 7 case on the Effective Date and the assets of such Debtor's estate were liquidated (the "**Liquidation Proceeds**");

ii) determined the distribution that each Holder of a Claim or Interest would receive from the Liquidation Proceeds under the priority scheme set forth in chapter 7 of the Bankruptcy Code (the "**Liquidation Distribution**"); and

iii) compared each Holder's Liquidation Distribution to the distribution such Holder would receive under the Debtors' Plan if the Plan were confirmed and consummated.

This Liquidation Analysis represents an estimate of cash distributions and recovery percentages based on a hypothetical chapter 7 liquidation of the Debtors' assets. It is, therefore, a hypothetical analysis based on certain assumptions discussed herein and in the Disclosure Statement. As such, asset values and claims discussed herein may differ materially from amounts referred to in the Plan and Disclosure Statement. This Liquidation Analysis should be read in conjunction with the assumptions, qualifications, and explanations set forth in the Disclosure Statement and the Plan in their entirety, as well as the notes and assumptions set forth below.

The determination of the costs of, and proceeds from, the hypothetical liquidation of the Debtors' assets in a chapter 7 case involves the use of estimates and assumptions that, although considered reasonable by the Debtors based on their business judgment and input from their advisors, are subject to significant business, legal, economic, and competitive uncertainties and contingencies beyond the control of the Debtors, their management, and their advisors. This Liquidation Analysis was prepared for the sole purpose of generating a reasonable, good faith comparison of the proceeds that would be generated if the Debtors' assets were liquidated in accordance with chapter 7 of the Bankruptcy Code versus under the Plan. The Liquidation Analysis is not intended, and should not be used, for any other purpose.

All limitations and risk factors set forth in the Disclosure Statement are applicable to this Liquidation Analysis and are incorporated by reference herein. The underlying financial information in the Liquidation Analysis was not compiled or examined by independent accountants and was not prepared to comply with Generally Accepted Accounting Principles or SEC reporting requirements.

Based on this Liquidation Analysis, the Debtors, with the assistance of their advisors, believe the Plan satisfies the best interests test and that each Holder of an Impaired Claim or Interest will receive value under the Plan on the Effective Date that is not less than the value such Holder would receive if the Debtors liquidated under chapter 7 of the Bankruptcy Code. The Debtors believe that this Liquidation Analysis and the conclusions set forth herein are fair and represent the Debtors' best judgment regarding the results of a hypothetical liquidation of the Debtors under chapter 7 of the Bankruptcy Code.

THE DEBTORS AND THEIR ADVISORS MAKE NO REPRESENTATIONS OR WARRANTIES REGARDING THE ACCURACY OF THE ESTIMATES CONTAINED HEREIN OR A CHAPTER 7 TRUSTEE'S OR A PLAN ADMINISTRATOR'S OR A WIND-DOWN TRUSTEE'S ABILITY TO ACHIEVE THE ILLUSTRATED RESULTS. ACTUAL RESULTS COULD VARY MATERIALLY FROM THE ESTIMATES SET FORTH IN THIS LIQUIDATION ANALYSIS.

**BASIS OF PRESENTATION**

The Liquidation Analysis has been prepared assuming that the Debtors' chapter 7 liquidation commences on or about November 30, 2023 (the "**Liquidation Date**"). The pro forma values referenced herein are projected as of the Liquidation Date and utilize (i) input from the Debtors' management team and advisors and (ii) projected results of operations and cash flows over the period from August 14, 2023 to the Liquidation Date (the "**Projection Period**").

In preparing the Liquidation Analysis, the Debtors estimated Allowed Claims based on scheduled liabilities as of the Petition Date and certain Filed claims following the Petition Date and during the Projection Period. Cessation of the Debtors' current operations in liquidation may trigger certain claims and funding requirements that would otherwise not exist under the Plan if a sale or reorganization transaction is not consummated. Such claims could include contract rejection damage claims, chapter 7 administrative expense claims, including wind down costs, trustee fees, and professional fees, among other claims. Some of these claims and funding obligations could be significant and would be entitled to administrative or priority status. The Debtors' estimates of Allowed Claims set forth in the Liquidation Analysis should not be relied on for the purpose of determining the value of any distribution to be made on account of Allowed Claims or Interests under the Plan.

NOTHING CONTAINED IN THE LIQUIDATION ANALYSIS IS INTENDED TO BE, OR CONSTITUTES, A CONCESSION, ADMISSION, OR ALLOWANCE OF ANY CLAIM OR

INTEREST BY THE DEBTORS. THE ACTUAL AMOUNT OR PRIORITY OF ALLOWED CLAIMS AND INTERESTS IN THE CHAPTER 11 CASES COULD MATERIALLY DIFFER FROM THE ESTIMATED AMOUNTS SET FORTH AND USED IN THE LIQUIDATION ANALYSIS. THE DEBTORS RESERVE ALL RIGHTS TO SUPPLEMENT, MODIFY, OR AMEND THE ANALYSIS SET FORTH HEREIN.

**Deconsolidated Liquidation**

The Liquidation Analysis assumes that the Debtors would be liquidated in a jointly administered, but not substantively consolidated proceeding. The results of this analysis have been consolidated for convenience.

Chapter 7 administrative expense claims that arise in a liquidation scenario would be paid in full from the Liquidation Proceeds prior to proceeds being made available for distribution to Holders of Allowed Claims. Under the "absolute priority rule," no junior creditor may receive any distributions until all senior creditors are paid in full, and no equity holder may receive any distribution until all creditors are paid in full. The assumed distributions to creditors as reflected in the Liquidation Analysis are estimated in accordance with the absolute priority rule.

The commencement of chapter 7 liquidation may trigger certain additional claims that would otherwise not exist under the Plan, such as contract rejection damage claims that are not reflected herein. Additionally, the Liquidation Analysis does not estimate contingent, unliquidated claims, or regulatory claims. Finally, the Liquidation Analysis does not include estimates for the tax consequences that may be triggered upon the liquidation and sale of assets. Such tax consequences could be material.

**LIQUIDATION PROCESS**

The Debtors' liquidation would be conducted pursuant to chapter 7 of the Bankruptcy Code. The Debtors have assumed that their liquidation would occur over a period of approximately twelve months (the "**Liquidation Period**") during which time the Trustee would monetize substantially all the assets on the consolidated balance sheet and administer and wind down the Estates.

As part of the Trustee's liquidation process, the initial step would be to develop a liquidation plan designed to generate proceeds from the sale of assets that the Trustee would then distribute to creditors. The Liquidation Analysis assumes all Liquid Cryptocurrency is sold. This liquidation process would have three major components:

i) Cash proceeds from asset sales, including the sale of all Cryptocurrency and illiquid assets ("**Gross Liquidation Proceeds**");

ii) Costs to liquidate the business and administer the Estates under chapter 7 ("**Liquidation Adjustments**"); and

iii) Remaining proceeds available for distribution to claimants ("**Net Liquidation Proceeds Available for Distribution**").

**i) Gross Liquidation Proceeds**

The Gross Liquidation Proceeds reflect the estimated proceeds the Trustee would generate from a hypothetical chapter 7 liquidation. Under section 704 of the Bankruptcy Code, a Trustee must, among other duties, collect and convert property of the Estates as expeditiously as is compatible

3

with the best interests of parties in interest, which could result in potentially distressed recoveries. This Liquidation Analysis assumes the Trustee will market the assets on an accelerated timeline and consummate the sale transactions within twelve months from the Liquidation Date. The Liquidation Analysis assumes the sale of all Cryptocurrency for cash, including Liquid Cryptocurrency and other Cryptocurrency investments. While not reflected herein, asset values in a chapter 7 liquidation process may be materially reduced due to, among other things, (i) the accelerated time frame in which the assets are marketed and sold, (ii) negative vendor and customer reaction, and (iii) the generally forced nature of the sale.

The Debtors' estimates of proceeds set forth in the Liquidation Analysis reflect a number of simplifying assumptions, including complicated legal questions, and are illustrative for the purposes of comparing liquidation under the Plan to Chapter 7. These estimates should not be relied on for any reason, including for the purpose of determining the value of any distribution to be made on account of Allowed Claims or Interests under the Plan.

### ii) Liquidation Adjustments

Liquidation Adjustments reflect the costs the Trustee would incur to monetize the assets and wind down the Estates in chapter 7 and include the following:

- Expenses necessary to efficiently and effectively monetize the assets (the "**Liquidation Costs**");

- Chapter 7 professional fees (lawyers, financial advisors, and brokers to support the sale and transition of assets over the Liquidation Period); and

- Chapter 7 Trustee fees.

### iii) Net Liquidation Proceeds Available for Distribution

The Net Liquidation Proceeds Available for Distribution reflect estimated amounts available to Holders of Claims and Interests after the Liquidation Adjustments are netted against the Gross Liquidation Proceeds. Under this analysis, the Liquidation Proceeds are distributed to Holders of Claims against, and Interests in, the Debtors in accordance with the Bankruptcy Code's priority scheme.

#### CONCLUSION

The Debtors have determined, as summarized in the table below, on the Effective Date, that the Plan will provide all Holders of Allowed Claims and Interests with a recovery that is not less than what they would otherwise receive pursuant to a liquidation of the Debtors' assets under chapter 7 of the Bankruptcy Code. Accordingly, the Plan satisfies the requirement of section 1129(a)(7) of the Bankruptcy Code.

**Specific Notes to the Liquidation Analysis**

*Gross Liquidation Proceeds from External Assets*

The below table summarizes the estimated recovery percentages for each of the Debtors' assets.

| Note | Asset Type / Assumptions | Debtors' Projected Midpoint Recovery (Ch. 11 / Ch. 7) |
|---|---|---|
| [A] | Cash consists of all unrestricted cash deposits in money market, corporate operating, receipt, and disbursement accounts, as well as fiat amounts in customer accounts.<br><br>**Notwithstanding this presentation, the Debtors have not made a determination as to whether certain cryptocurrency and/or fiat held in any customer accounts are general unsecured claims or property of the estate, and the Debtors reserve all rights with respect to any such determination.**<br><br>The Valuation Date cash balance has been adjusted pro forma to the Liquidation Date, including the amounts projected to be used to pay administrative claims that are anticipated to be paid prior to emergence, including estimated accrued professional fees for August, September, and October subject to a 20% holdback. The valuation date amount excludes funds held in the Wang 2018 Trust account. | 60% / 60% |
| [B] | Cryptocurrencies[1] – Available – Includes cryptocurrency amounts assumed for purposes of this Liquidation Analysis to be property of the estate, and includes various types of Cryptocurrency held in Fireblocks wallets. Based on the liquidity of tokens included in Fireblocks wallets, and the time for the Chapter 7 Trustee to liquidate the portfolio. There is not expected to be any discount to this line item.<br><br>**Notwithstanding this presentation, the Debtors have not made a determination as to whether certain cryptocurrency and/or fiat held in any customer accounts are general unsecured claims or property of the estate, and the Debtors reserve all rights with respect to any such determination.** | 100% / 100% |

---

[1] For purposes of this Liquidation Analysis, all cryptocurrency is priced as of the Petition Date. The Liquidation Analysis does not consider movements in pricing subsequent to the Petition Date and all recovery estimates assume cryptocurrency is converted to fiat based on Petition Date pricing.

| | | |
|---|---|---|
| [C] | Cryptocurrencies[2] – 98f Wallet – Includes cryptocurrencies presently inaccessible and unavailable to the Debtors in the 98f Wallet. Although the Debtors have made progress unlocking the Wallet, the outcome is uncertain to whether the cryptocurrency in the wallet will ever become available to the Debtors for the benefits of creditors. As contemplated, the Liquidation Analysis illustratively shows access to the 98f wallet as being restored, and as a result, cryptocurrency held in this wallet is shown as being available to the Debtors. | 100% / 100% |
| [D] | Accounts Receivable – Consists of receivables reported at net book value, which includes allowance for doubtful accounts. Although the Debtors did not perform a full assessment of the collectability of receivables in conjunction with the preparation of the Liquidation Analysis, substantially all of the Debtors' receivables are currently aged over 90 days. Recovery of this asset category, if any, depends upon, among other things, the age of these receivable and the success of collecting such accounts under a liquidation proceeding. | 2.5% / 2.5% |
| [E] | Intellectual Property – Consists of amounts for software licensing and domain names held by the Debtors' at book value, net of accumulated amortization. The Debtors' are presently engaged in a sale process which may yield a value for these assets which differs materially in a material difference in the stated net book value of these assets used for purposes of this Liquidation Analysis. | 50% / 50% |
| [F] | Other Assets – Consists of equity investments, prepaid expenses, accrued interest receivables, COBRA reimbursement receivables, and deferred tax assets.<br><br>Additional items in this asset category include various fixed assets such as computers and hardware, internally developed software, reported at book value, net of any accumulated amortization or depreciation. | 5% / 5% |
| [G] | Domestic and International Preference – Based on an ongoing analysis being conducted by the Debtors with regard to customers that took both fiat and cryptocurrency off the platform in the period prior to the Petition Date. The figure shown is the gross withdrawal amount for both fiat and cryptocurrency, and the recovery amount is assumed to be 5% for domestic preference actions. International preference actions are assumed to | 5% / 5% |

---

[2] For purposes of this Liquidation Analysis, all cryptocurrency is priced as of the Petition Date. The Liquidation Analysis does not consider movements in pricing subsequent to the Petition Date and all recovery estimates assume cryptocurrency is converted to fiat based on Petition Date pricing.

| | | |
|---|---|---|
| | be 0% at this time given the uncertainty of the ability for the litigation trust to pursue creditors in foreign jurisdictions. The Debtors reserve the right to revise the assumptions on domestic and international preference actions up or down in the future.<br><br>The amount that is assumed to be recovered has been added back to customer claims as an unsecured claim. The 502(h) claim is allowed and added to the general unsecured claims.<br><br>**The Debtors have not made any determination on the critical property of the estate issue nor have the Debtors' pursued any preference actions to-date. As presented, the Liquidation Analysis illustratively shows estimates for preference recoveries, although these amounts are contingent on the determination of the property of the estate issue** | |
| [H] | While there is some pending litigation and an investigation is ongoing, because we don't foresee a significant difference in litigation recoveries in Chapter 7 versus Chapter 11, we have not ascribed a value for litigation recovery for purposes of this analysis. This is for purposes of the Liquidation Analysis only and is without waiving the right to assert significant damages in current and prospective litigation. | 0% / 0% |

*Liquidation Adjustments*

I.   Chapter 7 Trustee Fee

Pursuant to section 326(a) of the Bankruptcy Code, under a chapter 7 liquidation, Trustee fees may not exceed 3% of distributable proceeds *in excess* of $1MM. The Liquidation Analysis assumes the Trustee fees would be approximately 3% of Gross Liquidation Proceeds from external assets, which equals approximately $5.1MM.

Under a chapter 11 liquidation, there are no Chapter 7 Trustee Fees incurred.

J.   Chapter 7 Professional Fees

The Chapter 7 professional fees include estimates for certain professionals that will provide assistance and services to the Trustee during the Liquidation Period. The Liquidation Analysis assumes the Trustee will retain lawyers, financial advisors, and brokers to assist in the liquidation. The retention of potentially new advisors by the Trustee may cause unnecessary delay and additional expense than in a chapter 11 liquidation. Such new professionals will need to spend time familiarizing themselves with the Debtors, the Debtors' Assets, and the Debtors' operations, which include complicated and novel cryptocurrency concepts that the majority of restructuring professionals are unfamiliar with. These advisors will assist in marketing the Debtors' assets, litigating claims and resolving tax litigation matters, and resolving other matters relating to the liquidation of the Debtors' Estates. The advisors will also collect broker fees for the sale of certain alternative investments. Total professional fees are estimated to be approximately $4MM.

Under a chapter 11 liquidation, Chapter 7 Professional Fees would not be applicable.

K.   Operating Expenses

Consist of employee/consulting costs, sales, general and administrative ("**SG&A**") expenses, and software costs (e.g., Fireblocks, GitHub, Salesforce, etc.). Under a chapter 7 or chapter 11 liquidation, the Debtors' would need to continue to conduct business with a number of software vendors in order to access the wallets in which the cryptocurrency is held, distribute the cryptocurrency, and to access customer data and records. Total operating expenses are estimated to be $8MM in a chapter 7 or chapter 11 liquidation.

L.   Convenience Class

Under a chapter 7 liquidation there is no convenience class.

Under a chapter 11 liquidation, the Convenience Class (i.e., all Creditors with claims below $300) are assumed to accept the convenience class offer (i.e., a 70% recovery), which results in a recovery of approximately $0.5MM against a claim amount of approximately $0.8MM.

M.   Litigation Trust

Under a chapter 7 liquidation it was assumed there would not be a litigation trust.

Under a chapter 11 liquidation, the Debtors are projecting that $2.5MM in estate assets will be allocated for the Litigation Trust, which will pursue causes of action and other litigation-related claims on behalf of the Estates.

N. Professional Fees – Banker

In accordance with the motion to retain Galaxy Digital Partners LLC ("**Galaxy**") as the Debtors' investment banker, the Debtors' agree to pay to Galaxy a fee of no less than $750,000 in either the event of a chapter 11 liquidation or a restructuring.

O. Trading and Conversion Costs

Trading and Conversion Costs are assumed to be incurred through either block trades with counterparties or slippage from transacting illiquid coins by the Company. These costs are presumed to be $0.7MM, and are assumed to be the same under a chapter 7 or chapter 11 liquidation. This assumes any distributions are made in fiat.

P. Professional Fees – Legal / FA

Under a chapter 11 liquidation proceeding, estimated professional Fees for Legal / Financial Advisory are assumed to take advantage of the existing knowledge of the Debtors as well as the facts and circumstances of the chapter 11 cases. Accordingly, these fees are expected to be lower under a chapter 11 proceeding compared to a chapter 7 liquidation given the pre-existing knowledge of the professionals that have been involved in the chapter 11 cases to-date, as well as their expertise in the cryptocurrency and digital asset space. It was estimated these fees would total $2.5MM.

*Claims*

Q. Administrative / Priority Claims

Other than professional fees, the Debtors are not currently aware of any administrative / priority claims. For purposes of the Liquidation Analysis, it was assumed these claims would equal the remaining 20% of professional fees at the Liquidation Date that have not yet been paid. The Debtors' have a general bar date which has not yet passed. Administrative and priority claims would be the same under a chapter 7 or a chapter 11 liquidation.

R. Trade Claims

Trade Claims consist of prepetition amounts owed to vendors and are estimated to total approximately $2.4MM. These amounts would be the same under a chapter 7 or a chapter 11 liquidation.

S. Customer Claims

In a chapter 7 liquidation Customer Claims are estimated to be approximately $175.8MM based on the number of customer coins and coin prices as of the Petition Date, as well as fiat amounts held in accounts on behalf of these customers.

In a chapter 11 liquidation, Customer Claims would be $175MM due to the inclusion of a convenience class.

**Notwithstanding this presentation, the Debtors have not made a determination as to whether certain cryptocurrency and/or fiat held in any customer accounts are general unsecured claims or property of the estate, and the Debtors reserve all rights with respect to any such**

**determination.**

T.  Convenience Claims

Under a chapter 7 liquidation, there are no Convenience Claims, given there is no Convenience Class under the Chapter 7 Liquidation scenario.

Under a Chapter 11 liquidation, the Convenience Class, or all Creditors with claims below $300, are assumed to accept the convenience class offer (70% recoveries), which result in a recovery of approximately $0.5MM against a claim amount of approximately $0.8MM.

U.  Contract Rejection Claims

Contract Rejection Claims includes potential claims for the rejection of the Debtors' lease, in addition to any other potential claims that may arise from contract rejection. For purposes of the Liquidation analysis, these were estimated to total $2.9MM. Actual contract rejection claims may differ from this estimate. These claims would be the same under a chapter 7 or chapter 11 liquidation.

*Chapter 11 vs. 7 (Mid-Point) Comparison*

| Assets | Chapter 11 Orderly Wind-Down | Chapter 7 Liquidation (Mid-Case) | Variance |
|---|---|---|---|
| Cash | $10.0 | $10.0 | – |
| Cryptocurrencies - Available | 72.7 | 72.7 | – |
| Cryptocurrencies - 98f Wallet | 44.7 | 44.7 | – |
| Accounts Receivable | 0.1 | 0.1 | 0.0 |
| Intellectual Property | 0.2 | 0.2 | – |
| Other Assets | 0.8 | 0.8 | (0.0) |
| **Asset Recoveries** | **$128.5** | **$128.5** | **$0.0** |
| | | | |
| **Other Recoveries** | | | |
| Domestic Preference Recoveries | $40.0 | $40.0 | – |
| International Preference Recoveries | – | – | – |
| Litigation Recoveries | – | – | – |
| **Gross Asset Value** | **$168.5** | **$168.5** | **$0.0** |
| | | | |
| **Expenses** | | | |
| Chapter 7 Trustee Fee | – | $5.1 | $5.1 |
| Litigation Trust | 2.5 | – | (2.5) |
| Professional Fees - Legal / FA | 2.5 | 4.0 | 1.5 |
| Professional Fees - Banker | 0.8 | – | (0.8) |
| Operating Expenses | 8.0 | 8.0 | – |
| Trading / Conversion Costs | 0.7 | 0.7 | – |
| **Total Expenses** | **$14.5** | **$17.8** | **$3.3** |
| | | | |
| **Net Value to Creditors** | **$154.1** | **$150.8** | **($3.3)** |

| Recoveries | Chapter 11 Orderly Wind-Down | Chapter 7 Liquidation (Mid-Case) | Variance |
|---|---|---|---|
| **Priority Claims** | | | |
| Administrative Claims | $3.5 | $3.5 | – |
| **Total Priority Recoveries** | **$3.5** | **$3.5** | **–** |
| | | | |
| **Unsecured Claims** | | | |
| Trade Claims | $1.5 | $1.5 | ($0.0) |
| Customer Claims (Property of Estate) | 146.5 | 143.8 | (2.7) |
| Convenience Class | 0.5 | – | (0.5) |
| Contract Rejection Claims | 2.0 | 1.9 | (0.0) |
| **Total Unsecured Claims** | **$150.6** | **$147.3** | **($3.3)** |
| | | | |
| *Total Claims* | $224.4 | $224.4 | |
| *Total Recoveries* | 154.1 | 150.8 | |
| **Total Recovery %** | **68.7%** | **67.2%** | |
| *Admin Claim Recovery* | $3.5 | $3.5 | |
| **Admin Claim Recovery %** | **100.0%** | **100.0%** | |
| *Convenience Claim Recovery* | $0.5 | – | |
| **Convenience Claim Recovery %** | **70.0%** | **–** | |
| Non-Convenience Claim Recovery | $150.0 | $147.3 | |
| **Non-Convenience Claim Recovery %** | **68.1%** | **81.4%** | |

*Chapter 11 Orderly Wind-Down*

| Notes | Assets | Valuation Date | Pro Forma Adjustments | Emergence Pro Forma Value |
|---|---|---|---|---|
| [A] | Cash | $20.5 | ($10.5) | $10.0 |
| [B] | Cryptocurrencies - Available | 72.7 | – | 72.7 |
| [C] | Cryptocurrencies - 98f Wallet | 44.7 | – | 44.7 |
| [D] | Accounts Receivable | 3.3 | (3.2) | 0.1 |
| [E] | Intellectual Property | 0.4 | (0.2) | 0.2 |
| [F] | Other Assets | 15.2 | (14.4) | 0.8 |
| | **Other Recoveries** | | | |
| [G] | Domestic Preference Recoveries | $799.3 | ($759.3) | $40.0 |
| [G] | International Preference Recoveries | 507.9 | (507.9) | – |
| [H] | Litigation Recoveries | – | – | – |
| | **Gross Asset Value** | **$1,464.0** | **($1,295.5)** | **$168.5** |
| | **Expenses** | | | |
| [K] | Operating Expenses | $8.0 | | $8.0 |
| [I] | Chapter 7 Trustee Fees | – | | – |
| [L] | Convenience Class | 0.5 | | – |
| [M] | Litigation Trust | 2.5 | | 2.5 |
| [N] | Professional Fees - Banker | 0.8 | | 0.8 |
| [P] | Professional Fees - Legal / FA | 2.5 | | 2.5 |
| [O] | Trading / Conversion Costs | 0.7 | | 0.7 |
| | **Total Expenses** | **$15.0** | **–** | **$14.5** |
| | **Net Asset Value** | **$1,449.0** | **($1,295.5)** | **$154.1** |

| Notes | Claims | Estimated Claim Value ($) | Recovery (%) | Recovery ($) |
|---|---|---|---|---|
| | **Priority Claims** | | | |
| [Q] | Administrative / Priority Claims | $3.5 | 100.0% | $3.5 |
| | **Total Priority Claims** | **$3.5** | | **$3.5** |
| | *Amount Remaining for Unsecured Claims* | | | *$150.6* |
| | **Unsecured Claims** | | | |
| [R] | Customer Claims (Property of Estate)[1] | $215.0 | 68.1% | $146.5 |
| [S] | Trade Claims | 2.3 | 68.1% | 1.5 |
| [T] | Convenience Claims | 0.8 | 70.0% | 0.5 |
| [U] | Conract Rejection Claims | 2.9 | 68.1% | 2.0 |
| | **Total Unsecured Claims** | **$220.9** | | **$150.6** |

Note(s):
(1) Includes customer claims at the Petition Date (~$175MM) plus claims, if any, associated with recoveries for preferences as detailed above

*Chapter 7 Liquidation*

| Notes | Assets | Valuation Date | % Discount (Mid-Case) | Pro Forma Value (Mid-Case) |
|---|---|---|---|---|
| [A] | Cash | $20.5 | 48.9% | $10.0 |
| [B] | Cryptocurrencies - Available | 72.7 | 100.0% | 72.7 |
| [C] | Cryptocurrencies - 98f Wallet | 44.7 | 100.0% | 44.7 |
| [D] | Accounts Receivable | 3.3 | 2.5% | 0.1 |
| [E] | Intellectual Property | 0.4 | 50.0% | 0.2 |
| [F] | Other Assets | 15.2 | 5.0% | 0.8 |
| | **Other Recoveries** | | | |
| [G] | Domestic Preference Recoveries | $799.3 | 5.0% | $40.0 |
| [G] | International Preference Recoveries | 507.9 | – | – |
| [H] | Litigation Recoveries | – | – | – |
| | **Gross Asset Value** | **$1,464.0** | | **$168.5** |

| | Expenses | Valuation Date | % Discount (Mid-Case) | Pro Forma Value (Mid-Case) |
|---|---|---|---|---|
| [I] | Chapter 7 Trustee Fees[1] | | 3.0% | $5.1 |
| | **Expenses** | | | |
| [J] | Chapter 7 Fees - Legal / FA | $4.0 | 100.0% | $4.0 |
| [K] | Operating Expenses | 8.0 | 100.0% | 8.0 |
| [L] | Convenience Class | – | 100.0% | – |
| [M] | Litigation Trust | – | 100.0% | – |
| [N] | Professional Fees - Banker | – | 100.0% | – |
| [O] | Trading / Conversion Costs | 0.7 | 100.0% | 0.7 |
| | **Total Expenses** | **$8.7** | | **$17.8** |
| | **Net Asset Value** | **$1,455.3** | **10.4%** | **$150.8** |

| | Claims | Estimated Claim Value ($) | Recovery % (Mid-Case) | Recovery $ (Mid-Case) |
|---|---|---|---|---|
| [P] | Administrative / Priority Claims | $3.5 | 100.0% | $3.5 |
| | **Total Priority Claims** | **$3.5** | | **$3.5** |
| | *Amount Remaining for Unsecured Claims* | | | $147.3 |
| [Q] | Trade Claims | $2.3 | 66.7% | $1.5 |
| [R] | Customer Claims | 175.8 | 66.7% | 143.8 |
| [S] | Convenience Claims | – | – | – |
| [U] | Contract Rejection Claims | 2.9 | 66.7% | 1.9 |
| | **Total Unsecured Claims** | **$180.9** | **81.4%** | **$147.3** |
| | *Memo: Claims including Preferences* | | | $215.8 |

Note(s):
(1) 3% is fee charged on distributions by Chapter 7 Trustee