IN THE UNITED STATES BANKRUPTCY COURT
FOR THE DISTRICT OF DELAWARE

| | |
|---|---|
| In re:<br><br>Prime Core Technologies Inc., *et al.*,[1]<br><br>　　　　　　　　　　　　Debtors. | Chapter 11<br><br>Case No. 23-11161 (JKS)<br><br>(Jointly Administered)<br><br>**Obj. Deadline: Oct. 27, 2023 at 4:00 p.m. ET**<br>**Hrg. Date: Nov. 14, 2023 at 1:00 p.m. ET** |

**DEBTORS' MOTION FOR ENTRY OF AN ORDER (I) AUTHORIZING THE DEBTORS TO (A) REJECT UNEXPIRED LEASES OF NONRESIDENTIAL REAL PROPERTY, EFFECTIVE AS OF OCTOBER 31, 2023, AND (B) ABANDON *DE MINIMIS* PROPERTY IN CONNECTION THEREWITH; AND (II) GRANTING RELATED RELIEF**

Prime Core Technologies Inc. and certain of its affiliates and subsidiaries, as debtors and debtors in possession in the above-captioned chapter 11 cases (collectively, the "Debtors"), hereby move (the "Motion"), pursuant to sections 365(a) and 554(a) of title 11 of the United States Code (the "Bankruptcy Code"), and Rules 6006 and 9014 of the Federal Rules of Bankruptcy Procedure (the "Bankruptcy Rules"), for entry of an order, substantially in the form attached hereto as **Exhibit A** (the "Proposed Order"), (i) authorizing the Debtors to (a) reject the Rejected Leases (as defined below) effective as of October 31, 2023, and (b) abandon the Abandoned Property (as defined below), and (ii) granting related relief. In support thereof, the Debtors respectfully represent as follows:

**JURISDICTION AND VENUE**

1. The United States Bankruptcy Court for the District of Delaware (the "Court") has jurisdiction to consider the Motion pursuant to 28 U.S.C. §§ 157 and 1334 and the *Amended*

---

[1] The debtors in these chapter 11 cases, along with the last four digits of each debtor's federal tax identification number are: Prime Core Technologies Inc. (5317); Prime Trust, LLC (6823); Prime IRA LLC (8436); and Prime Digital, LLC (4528). The Debtors' service address is 10845 Griffith Peak Dr., #04-153, Las Vegas, NV 89135.

1

*Standing Order of Reference* from the United States District Court for the District of Delaware, dated February 29, 2012. This is a core proceeding under 28 U.S.C. § 157(b). Venue in these cases and the Motion in this District is proper under 28 U.S.C. §§ 1408 and 1409.

2. The legal predicates for the relief requested herein are Bankruptcy Code sections 365(a) and 554(a) and Bankruptcy Rules 6006 and 9014.

3. The Debtors confirm their consent, pursuant to Rule 9013-1(f) of the Local Rules of Bankruptcy Practice and Procedure of the United States Bankruptcy Court for the District of Delaware (the "Local Rules"), to the entry of a final order by the Court in connection with the Motion in the event that it is later determined that the Court, absent consent of the parties, cannot enter final orders or judgments in connection herewith consistent with Article III of the United States Constitution.

## BACKGROUND

**I.     The Chapter 11 Cases**

1. On August 14, 2023 (the "Petition Date"), each Debtor commenced a case by filing a voluntary petition for relief under chapter 11 of the Bankruptcy Code (collectively, the "Chapter 11 Cases"). These cases have been jointly administered for procedural purposes only.

2. The Debtors continue to manage their properties as debtors and debtors in possession pursuant to Bankruptcy Code sections 1107(a) and 1108.

3. On August 29, 2023, the Office of the United States Trustee for the District of Delaware (the "U.S. Trustee") appointed an official committee of unsecured creditors pursuant to Bankruptcy Code section 1102 (the "Committee") [Docket No. 51]. The Committee is comprised of the following unsecured creditors: (a) Yousef Abbasi; (b) Allsectech, Inc.; (c) DMG Blockchain Solutions, Inc.; (d) Net Cents Technology, Inc.; (e) Polaris Ventures; (f) Stably Corporation; and (g) Austin Ward.

4.       Additional information regarding the Debtors and these Chapter 11 Cases, including the Debtors' business operations, capital structure, financial condition, and the reasons for and objectives of these Chapter 11 Cases, is set forth in the *Declaration of Jor Law, Interim Chief Executive Officer and President of Prime Core Technologies Inc.,* et al*., in Support of Chapter 11 Petitions and First Day Motions* [Docket No. 14], which is incorporated by reference as if fully set forth herein.

## II.     The Rejected Leases

5.       The Debtors and their advisors have conducted an in-depth analysis of the value of (a) the Debtors' lease (the "Sioux Falls Lease") with SLS Financial Services, LLC (the "Sioux Falls Landlord") for the premises located at 3801 South Western Avenue, Sioux Falls, South Dakota 57105 (the "Sioux Falls Leased Premises"), and (b) the Debtors' lease (the "Palo Alto Lease" and, together with the Sioux Falls Lease, the "Rejected Leases") with Regus Management Group, LLC (the "Palo Alto Landlord" and, together with the Sioux Falls Landlord, the "Landlords") for the premises located at 530 Lytton Avenue, Palo Alto, California 94301 (the "Palo Alto Leased Premises" and, together with the Sioux Falls Leased Premises, the "Leased Premises") in order to determine whether, in the Debtors' business judgement, the Rejected Leases should be rejected. The Debtors have determined that the Rejected Leases, which the Debtors pay more than $8,000.00 per month in the aggregate in rent to maintain, are of little or no value to the Debtors' estates.[2] Indeed, the total cost to maintain the Leased Premises will amount to nearly $20,000 through the conclusion of these Chapter 11 Cases, as the Palo Alto Lease is not set to expire until November 2023, and the Sioux Falls Lease until May 2024. As such, the Debtors believe that rejection of the Rejected Leases is in the best interests of the Debtors' estates, creditors, and stakeholders.

---

[2]   The monthly rent under the Sioux Falls Lease is $1,878.33, and the monthly rent under the Palo Alto Lease is $6,299.02.

3

6. The Debtors previously used the Leased Premises for office space in connection with their business activities. As the Debtors are not currently engaged in any business activities, they do not have need of the Leased Premises. Indeed, the Debtors already vacated the Sioux Falls Leased Premises and returned the keys to the Sioux Falls Landlord in August 2023. The Debtors also vacated the Palo Alto Leased Premises in February 2023, and will return the keys to the Palo Alto Landlord on or before October 31, 2023.

7. Accordingly, as the Leased Premises currently serve no purpose, the Debtors' rejection of the Rejected Leases is in the best interests of the Debtors' estates, creditors, and stakeholders.

### III. The Abandoned Property

8. The Debtors have removed any valuable personal property from the Leased Premises to maximize the value of the Debtors' estates.[3] To the extent that any personal property, equipment, furniture, or fixtures remain at the Leased Premises that cannot be sold, the Debtors have determined that such property (the "Abandoned Property") is of inconsequential value to their estates, or the cost of removing and storing such property exceeds its value to the Debtors' estates. Accordingly, the Debtors have determined that abandoning the Abandoned Property is in the best interests of their estates, creditors, and stakeholders.

### RELIEF REQUESTED

9. The Debtors seek entry of the Proposed Order, substantially in the form attached hereto as **Exhibit A**, (a) authorizing the Debtors to (i) reject the Rejected Leases effective as of October 31, 2023, and (ii) abandon the Abandoned Property, and (b) granting related relief.

---

[3] To the extent the Debtors seek to sell any of personal property located at the Leased Premises, they will separately seek Court approval to monetize same.

**BASIS FOR RELIEF**

**I.     Rejection of the Rejected Leases Constitutes a Sound Exercise of the Debtors' Reasonable Business Judgment.**

10.     Bankruptcy Code section 365(a) provides that a debtor, "subject to the court's approval, may assume or reject any . . . executory contract or unexpired lease of the debtor." The purpose behind Bankruptcy Code section 365(a) is "to permit the trustee or debtor-in-possession to use valuable property of the estate and to renounce title to and abandon burdensome property." *In re Republic Airways Holdings Inc.*, 547 B.R. 578, 582 (Bankr. S.D.N.Y. 2016) (quoting *Orion Pictures Corp. v. Showtime Networks, Inc. (In re Orion Pictures Corp.)*, 4 F.3d 1095, 1098 (2d Cir. 1993)); *see also In re Exide Techs.*, 607 F.3d 957, 967 (3d Cir. 2010) (Abro, J., concurring) ("Courts may use § 365 to free a [debtor] from burdensome duties that hinder its reorganization"); *see also NLRB v. Bildisco & Bildisco*, 465 U.S. 513, 528 (1984) ("[T]he authority to reject an executory contract is vital to the basic purpose to a Chapter 11 reorganization, because rejection can release the debtor's estate from burdensome obligations that can impede a successful reorganization.").

11.     The standard applied to determine whether the rejection of an executory contract or unexpired lease should be authorized is the "business judgment" standard. *See Grp. of Institutional Inv'rs, Inc. v. Chi., Milwaukee, St. Paul & Pac. R.R.*, 318 U.S. 523, 550 (1943) (noting that "the question whether a lease should be rejected . . . is one of business judgment"); *see also In re Bildisco*, 682 F.2d 72, 79 (3d Cir. 1982), aff'd, 465 U.S. 513 ("The usual test for rejection of an executory contract is simply whether rejection would benefit the estate, the 'business judgment' test."); *accord In re HQ Glob. Holdings, Inc.*, 290 B.R. 507, 511 (Bankr. D. Del. 2003).

12.     In applying the business judgment standard, bankruptcy courts give substantial deference to a debtor's decision to assume or reject leases. *See, e.g.*, *Sharon Steel Corp. v. Nat'l*

*Fuel Gas Distrib. Corp.*, 872 F.2d 36, 39-40 (3d Cir. 1989) (affirming the rejection of a service agreement as a sound exercise of the debtor's business judgment when the bankruptcy court found that such rejection would benefit the debtors' estate); *In re Caribbean Petroleum Corp.*, 444 B.R. 263, 268 (Bankr. D. Del. 2010) (quoting *In re Trans World Airlines, Inc.,* 261 B.R. 103, 121 (Bankr. D. Del. 2001) ("[A] debtor's decision to reject an executory contract must be summarily affirmed unless it is the product of bad faith, or whim or caprice.").

13. Upon finding that a debtor has exercised its sound business judgment, courts regularly approve a request to reject under Bankruptcy Code section 365(a). *See Bildisco*, 465 U.S. at 523 (1984) (recognizing the "business judgment" standard used to approve rejection of executory contracts); *In re Penn Traffic Co.*, 524 F.3d 373, 383 (2d Cir. 2008) (same).

14. The Debtors believe that rejection of the Rejected Lease is a sound exercise of their business judgment and is in the best interest of their estates, creditors, and stakeholders in these Chapter 11 Cases. As noted above, the Debtors are not operating currently, and therefore, do not require multiple locations to administer these Chapter 11 Cases, and as such, the Debtors have concluded that the cost of maintaining the Rejected Leases outweighs any value that the Rejected Leases could possibly generate for the Debtors' estates.[4]

15. Further, the Debtors believe that without rejection, the Rejected Leases will continue to burden the Debtors' estates with unnecessary administrative expenses at a critical time when the Debtors are making a concerted effort to maximize the value of the Debtors' estates and preserve capital. Rejecting the Rejected Leases will help ease the Debtors' cash burn and increase the Debtors' liquidity.

---

[4] The Court previously entered an order approving the Debtors' rejection of their former headquarters. *See* Docket No. 187].

16. Accordingly, the Debtors respectfully request that the Court authorize the rejection of the Rejected Leases pursuant to Bankruptcy Code section 365.

**II.   Retroactive Rejection of the Rejected Leases is Appropriate Under the Facts and Circumstances.**

17. Bankruptcy Code section 365 does not restrict a bankruptcy court from applying rejection retroactively. *See In re Jamesway Corp.*, 179 B.R. 33, 37 (S.D.N.Y. 1995) (stating that section 365 does not include "restrictions as to the manner in which the court can approve rejection"); *see also In re CCI Wireless, LLC*, 297 B.R. 133, 138 (D. Colo. 2003) (noting that section 365 "does not prohibit the bankruptcy court from allowing the rejection . . . to apply retroactively"). Courts have held that a bankruptcy court may, in its discretion, authorize rejection retroactively to a date prior to entry of an order authorizing such rejection where the balance of equities favors such relief. *See In re Thinking Machs. Corp.*, 67 F.3d 1021, 1028-29 (1st Cir. 1995) (stating "rejection under section 365(a) does not take effect until judicial approval is secured, but the approving court has the equitable power, in suitable cases, to order a rejection to operate retroactively"); *In re Chi-Chi's, Inc.*, 305 B.R. 396, 399 (Bankr. D. Del. 2004) (stating "the court's power to grant retroactive relief is derived from the bankruptcy court's equitable powers so long as it promotes the purposes of § 365(a)"); *CCI Wireless*, 297 B.R. at 140 (holding that a "court has authority under section 365(d)(3) to set the effective date of rejection at least as early as the filing date of the motion to reject"); *BP Energy Co. v. Bethlehem Steel Corp.*, 2002 WL 31548723, at *3 (S.D.N.Y. Nov. 15, 2002) ("We cannot conclude . . . that a bankruptcy court's assignment of a retroactive rejection date falls outside of its authority when the balance of the equities favors this solution."); *see also In re At Home Corp.*, 392 F.3d 1064, 1065-66 (9th Cir. 2004) (holding "that a bankruptcy court may approve retroactively the rejection of an unexpired nonresidential lease").

18. In *In re Namco Cybertainment, Inc.*, the Court stated that retroactive rejection of an unexpired lease was permissible, provided: (a) the premises (and the keys thereto) were surrendered with an unequivocal statement of abandonment to the Landlord; (b) the motion was served on the Landlord; (c) the official committee consented to the requested relief; and (d) the debtor waived its right to withdraw the motion. No. 98-173 (PJW) (Bankr. D. Del. Feb. 6, 1998); *see also TW, Inc. v. Angelastro (In re TW, Inc.)*, No. 03-10785, 2004 WL 115521, at *2 (D. Del. Jan. 14, 2004) (upholding bankruptcy court ruling denying rejection of leases nunc pro tunc to the petition date when the debtor had not surrendered possession prior to the petition date).

19. In this instance, the balance of the equities favors approval of the rejection of the Rejected Leases as of October 31, 2023. Without such relief as to the Rejected Leases, the Debtors will continue to incur unnecessary administrative expenses that provide no benefit to the estates. *See* 11 U.S.C. § 365(d)(3). Further, the Landlords will not be unduly prejudiced if the rejection is deemed effective as of October 31, 2023. Possession of the Leased Premises, including the turnover of keys, has been or will be delivered to the respective Landlords on, or prior to, October 31, 2023, accompanied by an unequivocal and irrevocable statement of surrender and abandonment of the Leased Premises. Contemporaneously with the filing of this Motion, the Debtors will cause notice of this Motion to be served on the Landlords, thereby allowing the Landlords sufficient opportunity to respond accordingly. The Debtors also unequivocally waive their right to withdraw this Motion.

20. This Court has previously granted similar relief in connection with these Chapter 11 Cases. *See* Docket No. 187. In addition, courts in this jurisdiction have approved relief similar to that requested herein. *See, e.g.*, *In re Town Sports International, LLC*, No. 20-12168 (CSS) (Bankr. D. Del. Oct. 16, 2020) (authorizing rejection of unexpired leases effective as of the rejection date); *In re Bluestem Brands, Inc.*, No. 20-10566 (MFW) (Bankr. D. Del. Apr. 15, 2020) (authorizing

rejection of unexpired leases effective as of the rejection date); *In re Forever 21, Inc.*, No. 19-12122 (KG) (Bankr. D. Del. Oct. 28, 2019) (authorizing rejection of unexpired leases nunc pro tunc to the petition date); *In re PES Holdings, LLC*, No. 19-11626 (KG) (Bankr. D. Del. Sept. 19, 2019) (authorizing rejection of unexpired leases and executory contract nunc pro tunc to the specific dates); *In re Charming Charlie Holdings, Inc.*, No. 17-12906 (CSS) (Bankr. D. Del. Jan. 10, 2018) (authorizing rejection of unexpired leases nunc pro tunc to specified date); *In re Samson Resources Corp.*, No. 15-11934) (CSS) Bankr. D. Del. Sept. 2, 2016) (same); *In re Dex Media, Inc.*, No. 16-11200 (KG) (Bankr. D. Del. June 8, 2016) (authorizing rejection of unexpired leases and executory contracts nunc pro tunc to petition date).

### III.     The Court Should Approve the Abandonment of the *de minimis* Personal Property at the Leased Premises.

21.     Bankruptcy Code section 554(a) provides that "[a]fter notice and a hearing, the trustee may abandon any property of the estate that is burdensome to the estate or that is of inconsequential value and benefit to the estate." The right to abandon property is virtually unfettered, unless (a) abandonment of the property will contravene laws designed to protect public health and safety or (b) the property poses an imminent threat to the public's welfare. *See In re Midlantic Nat'l Bank*, 474 U.S. 494, 501 (1986). Neither of these limitations is relevant under the instant facts.

22.     The Debtors believe that the costs of moving, retrieving, or storing the Abandoned Property would far outweigh any benefit to their estates. Therefore, it is in the best interests of the Debtors' estates to abandon the Abandoned Property. Furthermore, the Court should authorize the Landlords to dispose of the Abandoned Property in their sole and absolute discretion without liability to the Debtors or any consenting third party and without notice or further order of the Court.

**RESERVATION OF RIGHTS**

23.     Nothing in this Motion or any order granting the relief requested in this Motion, and no action take pursuant to the relief requested or granted (including any payment made in accordance with any such order): (a) is intended or shall be deemed to constitute an assumption of any agreement pursuant to Bankruptcy Code section 365, an admission as to the executory nature of any agreement, or the basis for or the validity of any claim against the Debtors or their estates; (b) shall impair, prejudice, waive, or otherwise affect the rights of the Debtors or their estates to contest the validity, priority, or amount of any claim against the Debtors or their estates; (c) shall impair, prejudice, waive, or otherwise affect the rights of the Debtors or their estates with respect to any and all claims or causes of action against any third party; (d) shall be construed as a promise to pay a claim or continue any applicable program postpetition, which decision shall be in the sole discretion of the Debtors; (e) an implication, admission, or finding that any particular claim is an administrative expense claim, other priority claim, or otherwise of a type specified or defined in this Motion or any order granting the relief requested by this Motion; (f) an admission to the validity, priority, enforceability, or perfection of any lien on, security interest in, or other encumbrance on property of the Debtors' estates; or (g) a waiver or limitation of any claims, causes of action, or other rights of the Debtors or any other party in interest against any person or entity under the Bankruptcy Code or any other applicable law. Any payment made pursuant to an order of the Court granting the relief requested herein is not intended to be nor should it be construed as an admission as to the validity of any claim or a waiver of the Debtors' rights to subsequently dispute such claim.

## NOTICE

24. The Debtors will provide notice of the Motion to: (a) the U.S. Trustee; (b) the proposed counsel to the Committee; (c) the Landlords; and (d) any party that has requested notice pursuant to Bankruptcy Rule 2002. The Debtors submit that no other or further notice is required.

*[Remainder of page intentionally left blank.]*

WHEREFORE, the Debtors respectfully request that the Court enter the Proposed Order, substantially in the form attached hereto as **Exhibit A**, granting the relief requested herein and such other and further relief as may be just and proper.

| | |
|---|---|
| Dated: October 13, 2023<br>Wilmington, Delaware | **MCDERMOTT WILL & EMERY LLP**<br><br>*/s/ Maris J. Kandestin*<br>Maris J. Kandestin (No. 5294)<br>1000 N. West Street, Suite 1400<br>Wilmington, Delaware 19801<br>Telephone: (302) 485-3900<br>Facsimile: (302) 351-8711<br>Email: mkandestin@mwe.com<br><br>-and-<br><br>Darren Azman (admitted *pro hac vice*)<br>Joseph B. Evans (admitted *pro hac vice*)<br>Jessica Greer Griffith (admitted *pro hac vice*)<br>One Vanderbilt Avenue<br>New York, New York 10017-3852<br>Telephone: (212) 547-5400<br>Facsimile: (646) 547-5444<br>Email: dazman@mwe.com<br>jbevans@mwe.com<br>ggriffith@mwe.com<br><br>-and-<br><br>Gregg Steinman (admitted *pro hac vice*)<br>333 SE 2nd Avenue, Suite 4500<br>Miami, Florida 33131<br>Telephone: (305) 358-3500<br>Facsimile: (305) 347-6500<br>Email: gsteinman@mwe.com<br><br>*Counsel to the Debtors and Debtors in Possession* |