```
                    UNITED STATES BANKRUPTCY COURT
                        DISTRICT OF DELAWARE

                                .  Chapter 11
IN RE:                          .
                                .  Case No. 23-11161(JKS)
PRIME CORE TECHNOLOGIES,        .
INC., et al,                    .
                                .
                                .  824 Market Street
                                .  Wilmington, Delaware 19801
                Debtors. .
. . . . . . . . . . . . . . .    Thursday, October 5, 2023
```

                       TRANSCRIPT OF HEARING
                BEFORE THE HONORABLE J. KATE STICKLES
                   UNITED STATES BANKRUPTCY JUDGE

APPEARANCES:

For the Debtors:            Maris J. Kandestin, Esq.
                            Dante S. Pavan, Esq.
                            MCDERMOTT, WILL & EMERY, LLP
                            1007 North Orange Street
                            10th Floor
                            Wilmington, Delaware 19801

                            Darren Azman, Esq.
                            Joseph B. Evans, Esq.
                            MCDERMOTT, WILL & EMERY, LLP
                            One Vanderbilt Avenue
                            New York, New York 10017

                            Michael Wombacher, Esq.
                            MCDERMOTT, WILL & EMERY, LLP
                            2501 North Harwood Street
                            Suite 1900
                            Dallas, Texas 75201
(Appearances Continued)

Audio Operator:             Electronically Recorded
                            by Madeline Dungey, ECRO

Transcription Company:      Reliable
                            1007 N. Orange Street
                            Wilmington, Delaware 19801
                            (302)654-8080
                            Email:  gmatthews@reliable-co.com

Proceedings recorded by electronic sound recording,
transcript produced by transcription service.

APPEARANCES:   (Continued)

| | |
|---|---|
| For the U.S. Trustee: | Joseph Cudia, Esq.<br>OFFICE OF THE U.S. TRUSTEE<br>844 King Street, Suite 2207<br>Wilmington, Delaware 19801 |
| For the Official Committee<br>of Unsecured Creditors: | Elazar Kosman, Esq.<br>WOMBLE BOND DICKINSON (US), LLP<br>1313 North Market Street<br>Suite 1200<br>Wilmington, Delaware 19801 |
| | Robert J. Stark, Esq.<br>Bennett S. Silverberg, Esq.<br>BROWN RUDNICK, LLP<br>Seven Times Square<br>New York, New York 10036 |
| For Bittrex: | Kenneth J. Enos, Esq.<br>YOUNG, CONAWAY, STARGATT<br> & TAYLOR, LLP<br>Rodney Square<br>1000 North King Street<br>Wilmington, Delaware 19801 |
| For Polaris: | Ryan M. Bartley, Esq.<br>YOUNG, CONAWAY, STARGATT<br> & TAYLOR, LLP<br>Rodney Square<br>1000 North King Street<br>Wilmington, Delaware 19801 |
| For AnchorCoin, LLC: | Marcy J. McLaughlin Smith, Esq.<br>TROUTMAN PEPPER HAMILTON<br> SANDERS, LLP<br>Hercules Plaza<br>1313 Market Street, Suite 5100<br>Wilmington, Delaware 19801 |

APPEARANCES VIA ZOOM:

| | |
|---|---|
| For the Debtors: | Joseph B. Evans, Esq.<br>Gregg Steinman, Esq.<br>Jake Jumbeck, Esq.<br>MCDERMOTT, WILL & EMERY, LLP |

(Appearances Continued)

APPEARANCES VIA ZOOM:  (Continued)

For the Official Committee
of Unsecured Creditors:        Jennifer Schein, Esq.
                               BROWN RUDNICK, LLP

For Tiki Labs, Inc.,
d/b/a Audius, Inc.:            Traci Shafroth, Esq.
                               KELLER BENVENUITTI KIM, LLP

For Protego Holdings
Corporation:                   George Kalikman, Esq.
                               KELLER BENVENUITTI KIM, LLP

For Tiki Labs, Inc. and
Allegheny Casualty
Company:                       John Weiss, Esq.
                               PASHMAN STEIN WALDER HAYDEN, PC

For Mercato Partners,
et al:                         Joshua Gruss, Esq.
                               MAYER BROWN, LLP

For Coinbits:                  David Neumann, Esq.
                               MEYERS, ROMAN, FRIEDBERG & LEWIS

For Kado Software, Inc.,
d/b/a Kado Money:              David Forsh, Esq.
                               RAINES FELDMAN LITTRELL, LLP

For George Gerglades,
Kevin Lehtinlitty, and
Scott Purcell:                 Jason Rosell, Esq.
                               PACHULSKI, STANG, ZIEHL
                                & JONES, LLP

Also Appearing:                Joseph Berman
                               Jin Dong
                               David Dunn
                               PROVINCE, INC.

                               Steven Eliscu
                               DMG BLOCKCHAIN SOLUTIONS, INC.

                               Robert Winning
                               William Murphy
                               M3 ADVISORY PARTNERS, LP

                               Alex Chen, *Pro Se*

(Appearances Continued)

APPEARANCES VIA ZOOM:  (Continued)

Also Appearing:                 Bob Zhao, Interested Party on
                                 behalf of the Debtors

                                Peter Sprofera, *Pro Se*

                                Jor Law, Interested Party on
                                 behalf of the Debtors

                                Patty Wang, Interested Party on
                                 behalf of the Debtors

                                Matt Parella, Interested Party on
                                 behalf of the Debtors

                                Michael Wyse, Interested Party on
                                 behalf of the Debtors

                                Kevin Mehrabi, Interested Party
                                 on behalf of Wealthchain, Inc.

                                John Wilcox, Interested Party on
                                 behalf of the Debtors

                                Taylor Harrison
                                DEBTWIRE

                                Jeffrey Montgomery
                                LAW 360/PORTFOLIO MEDIA

                                Paula Subda
                                Rachel Werkheiser
                                U.S. BANKRUPTCY COURT

INDEX

PAGE

DEBTORS' MOTION FOR ENTRY OF INTERIM AND FINAL ORDERS          6
(I) AUTHORIZING DEBTORS TO (A) CONTINUE TO OPERATE
THEIR CASH MANAGEMENT SYSTEM AND (B) MAINTAIN EXISTING
BANK ACCOUNTS AND BUSINESS FORMS AND HONOR CERTAIN
PREPETITION OBLIGATIONS RELATED THERETO; (I) AUTHORIZING
THE DEBTORS TO (A) CONTINUE TO PERFORM INTERCOMPANY
TRANSACTIONS AND (B) GRANTING ADMINISTRATIVE EXPENSE
STATUS FOR POST-PETITION INTERCOMPANY CLAIMS; (III)
EXTENDING THE TIME FOR THE DEBTORS TO COMPLY WITH
REQUIREMENTS SET FORTH IN 11 U.S.C., SECTION 345(b);
AND (III) GRANTING RELATED RELIEF

DEBTORS' MOTION FOR ENTRY OF AN ORDER (I) APPROVING          7
THE DISCLOSURE STATEMENT ON AN INTERIM BASIS FOR
SOLICITATION PURPOSES ONLY; (II) ESTABLISHING PROCEDURES
FOR SOLICITATION AND TABULATION OF VOTES TO ACCEPT OR
REJECT THE PLAN; (III) APPROVING THE FORM OF BALLOT AND
SOLICITATION PACKAGES; (IV) ESTABLISHING THE VOTING
RECORD DATE; (V) SCHEDULING A COMBINED HEARING FOR FINAL
APPROVAL OF THE ADEQUACY OF INFORMATION IN THE
DISCLOSURE STATEMENT AND CONFIRMATION OF THE PLAN;
AND (VI) GRANTING RELATED RELIEF

    Court Decision                                          71

| WITNESS | DIRECT | CROSS | REDIRECT | RECROSS |
|---------|--------|-------|----------|---------|

FOR THE DEBTORS

WILLIAM MURPHY
     By The Court          55

1      (Proceedings commence at 2:01 p.m.)

2      (Call to order of the Court)

3      **(No Recording Microphones at Counsel Table and Lectern)**

4          THE COURT:  Good afternoon, everyone.  Please be

5   seated.

6          This is Judge Stickles.  We're on the record in

7   Prime Core Technologies, Case Number 23-11161.

8          MS. KANDESTIN:  Good afternoon, Your Honor.

9          THE COURT:  Good afternoon.

10         MS. KANDESTIN:  For the record, Maris Kandestin of

11  McDermott, Will & Emery on behalf of the debtors.

12         In the courtroom with me today are my partner

13  Darren Azman and my colleagues Michael Wombacher and Dante

14  Pavan.

15         THE COURT:  Good afternoon.

16         MS. KANDESTIN:  Also in the courtroom today is Bill

17  Murphy, who is with M3 Partners, our financial advisor.

18         Your Honor, we recently filed a second amended

19  agenda.  Does Your Honor have a copy?

20         THE COURT:  I was just handed a copy.

21         MS. KANDESTIN:  Okay.  Great.

22         So, turning to the agenda, we'd like to thank Your

23  Honor for entering orders prior to today on Items 1 through

24  5, and which brings us to Item 6, which is our request for a

25  third interim cash management order with respect to the

1    345(b) waivers.

2             We spoke to the U.S. Trustee about this and they

3    have agreed to a further extension through October 18th, our

4    next hearing.

5             And I have a redline.  May I approach?

6             THE COURT:  Okay.  Yes, please.  Thank you.

7             MS. KANDESTIN:  And Your Honor, in the redline,

8    you'll see that it's basically just changing the date and

9    accounting for the second interim order.  And we have

10    uploaded this, as well.

11             So, if Your Honor doesn't have any questions, we'd

12    ask that you enter the order.

13             THE COURT:  Mr. Cudia, do you want to be heard?

14             MR. CUDIA:  Good afternoon, Your Honor.  Joseph

15    Cudia for the United States Trustee.

16             Ms. Kandestin is correct, we do consent to the

17    further interim order --

18             THE COURT:  Okay.

19             MR. CUDIA:  -- 345 release.

20             THE COURT:  Okay.  Thank you.  We will get that

21    entered.

22             MS. KANDESTIN:  Thank you, Your Honor.

23             Item 7 on the agenda is our request for conditional

24    approval of the disclosure statement, as well as approval of

25    proposed solicitation, voting, and notice procedures, our

1    proposed confirmation time line and the forms of solicitation

2    and noticing procedures.

3         We filed our initial plan and disclosure statement

4    on September 8th at Docket Numbers 92 and 93.  And since that

5    time, we've been working with a number of parties to make

6    adjustments, changes, and negotiate some resolutions to

7    concerns that have been raised, both in informal objections

8    or comments and formal objections filed with the Court.

9         In particular, we've been working very, very

10   closely with the U.S. Trustee's Office and the committee.

11   And indeed, I think we've been working around the clock.  And

12   we got, really, down to the wire with the committee on this

13   one.  So I want to thank the U.S. Trustee's Office and the

14   committee for working so cooperatively and quickly with us.

15        We incorporated some of these changes to

16   (indiscernible) versions of the plan and disclosure statement

17   that we filed on the 2nd of October, which was Monday, and

18   those were at Docket Numbers 235 and 236.

19        And yesterday, very late, we filed new versions,

20   which incorporate even more (indiscernible)

21        THE COURT:  You mean this morning.

22        MS. KANDESTIN:  Yes.  So -- yes.  My days and

23   nights are --

24        THE COURT:  Blend --

25        MS. KANDESTIN:  -- blending together.

1          THE COURT:  But yes, I -- today, you filed amended

2    --

3          MS. KANDESTIN:  Yes.  Yes.  Thank you for that

4    correction, Your Honor, it was today, at Docket Numbers 250

5    and 251.

6          And we also filed a revised proposed conditional

7    approval order this morning at Docket Number 252.

8          And if it would please the Court, I'd like to

9    provide an overview of the plan and disclosure statement

10   before I turn to objections.

11         THE COURT:  Yes, that would be great.

12         MS. KANDESTIN:  So, Your Honor, we believe that

13   this -- the disclosure statement contains adequate

14   information that would allow parties, voting parties, to make

15   an informed decision to vote or -- to reject or accept the

16   plan.

17         Among other things, the disclosure statement

18   provides information concerning the debtors' business,

19   organizational structure, capital structure, the key events

20   that led to these cases, as well as the major events that

21   have happened thus far in the cases.

22         It provides an overview of the plan, including the

23   classification and treatment of claims and interests.

24         It outlines the potential risk factors associated

25   with the plan and also includes a liquidation analysis

1    demonstrating the difference between recoveries under this

2    plan versus a hypothetical Chapter 7.

3         That -- we filed our liquidation analysis today at

4    Docket Number 253.  Does Your Honor have a copy?

5         THE COURT:  I do.

6         MS. KANDESTIN:  Okay.  It also includes an

7    explanation of the plan structure, including what I'll call

8    the "one and a half" -- or "two and a half toggles," rather.

9         So, specifically, there are a number of

10   restructuring events that are possible under the plan, and

11   the first is a sale transaction, which would be consummated

12   outside of the plan pursuant to 363.  And then the plan

13   administrator would then wind down the residual estate.

14        There is also the possibility of a reorganization

15   transaction, where a third party makes a capital contribution

16   in exchange for a hundred percent of the equity interest in

17   the reorganized debtors.

18        And if those two fail or are not consummated, the

19   plan would then toggle to a straight liquidation.

20        The disclosure statement also includes a

21   description of the releases under the plan.  And just to sort

22   of put it on the record, it -- former directors and officers

23   are not released parties under the plan.  And with certain

24   exceptions, current directors and officers are also not

25   released parties, and those are current directors and

1    officers are not released with respect to what we're calling

2    "98f Wallet" causes of action or avoidance action other --

3    avoidance actions other than those related to ordinary course

4    benefits and wages.

5              THE COURT:  Okay.

6              MS. KANDESTIN:  But current directors and officers

7    are exculpated under the plan.

8              The disclosure statement also includes a

9    description of who qualifies under releasing party, as well

10   as the opt-out procedures.  And under those, all parties can

11   opt out of the releases.  The voting parties can check the

12   opt-out box on the ballot, and the non-voting creditor notice

13   includes a box, as well.

14             So those parties can either file a formal objection

15   to the releases with the Court, or they can just check that

16   box and return it to the claims agent.  And of course, you

17   know, the voting parties can also file objections --

18             THE COURT:  Right.

19             MS. KANDESTIN:  -- (indiscernible)

20             Your Honor, turning to the objections and informal

21   comments, many of the -- they fell into two buckets in my

22   mind, disclosure objections and confirmation objections, and

23   I believe we've resolved most, if not all, of the disclosure

24   objections through language in the plan and disclosure

25   statement.

1          The disclosure objections were focusing primarily

2     on maintaining the status quo established under the final

3     cash management order and including information regarding the

4     debtors' investigation and when it will be completed and also

5     available insurance.

6          And we've made changes, to the extent we could, to

7     the plan and disclosure statement, and I'll just put into the

8     record where they are.

9          In the disclosure statement, at Sections 6(b)(4)

10    and 7(h)(6)(A) and -- sorry -- that's 6(h)(6)(A) and 7(a)(2),

11    and as well as in Article 2.4 of the plan.  And I also

12    believe there's something in 6.9.

13         THE COURT:  You think --

14         MS. KANDESTIN:  And --

15         THE COURT:  -- there's something what?  I'm sorry,

16    I didn't hear that.

17         MS. KANDESTIN:  It's in Article 6.9 --

18         THE COURT:  Oh --

19         MS. KANDESTIN:  -- of the plan, as well.  I think

20    that just got (indiscernible) right before court.

21         So, Your Honor, with respect to the detail that we

22    provided about the investigation, I expect folks are going to

23    be unhappy, they would like more.  But what I'll say is that,

24    you know, we are investigating the 98f Wallet issues, as well

25    as the property of the estate issues, as quickly as we can.

1    These are very complicated issues.  We are being as

2    thoughtful as we can and, like I said, we're working as fast

3    as we can.  But either, at this time, we have nothing more to

4    report than what's in the disclosure statement --

5              THE COURT:  Okay.

6              MS. KANDESTIN:  -- or we cannot report more because

7    it would jeopardize the investigation.  So what we tried to

8    do is balance, you know, the disclosures against where we are

9    in the investigation.

10             And in terms of when we'll be completed, you know,

11   we are taking a very thoughtful, careful approach.  So, at

12   this time, I don't have an update as to when those matters

13   will be completed, either one of them, but we're working as

14   quickly as we can.  We're serving 2004 notices.  I believe

15   we're going to file a 2004 motion today, perhaps requesting

16   to shorten time, so we can have it heard on the 18th, but we

17   just (indiscernible) hearing, so -- but you know, we're doing

18   what we can, but we don't have a definitive outside date.

19             And then the terms of --

20             THE COURT:  And let me ask you.

21             MS. KANDESTIN:  Sure.

22             THE COURT:  If you discovered information that you

23   could share, would you file like a supplement --

24             MS. KANDESTIN:  Absolutely, Your Honor.

25             THE COURT:  -- if you had it prior to the plan

1    supplement?

2           MS. KANDESTIN:  Yes.  Yes.  If we have -- I believe

3    what I usually do in these cases is I file a -- sort of a

4    supplement to the disclosure statement at the time -- or of

5    the plan supplement that explains the changes from the oldest

6    -- like from the --

7           THE COURT:  Right.

8           MS. KANDESTIN:  -- disclosure statement that was

9    solicited.  And of course, we only anticipate recoveries

10   getting better, not worse than the plan that's on file or is

11   about (indiscernible) get on file here today.  So, yes, we

12   would definitely do that, Your Honor.

13          And the confirmation order were really related to

14   the scope of the releases, which we've been negotiating with

15   the committee very closely and you know, the treatment of

16   claims and specifically cryptocurrency and fiat currency and

17   customer accounts, which is, you know, touching on the

18   property of the estate issue, which I -- you know, we haven't

19   settled on yet.

20          And you know, with respect to confirmation

21   objections, it's our position that, you know, we're treating

22   those as preserved until the final hearing.  We're not --

23   nobody is being prejudiced by pushing those off.

24          And with that -- oh, with that, I'm just going to

25   walk Your Honor through changes we made since we filed these

1    --

2              THE COURT:  Okay.

3              MS. KANDESTIN:  -- earlier -- well, last -- early

4    this morning.  But I don't believe we have them.  Okay.  So

5    perhaps --

6              THE COURT:  Well, maybe I should hear from

7    objectors.  I don't even know who's a live objection right

8    now.

9              MS. KANDESTIN:  I'm sorry.  What?

10             THE COURT:  I don't even know who are live

11   objections right now.

12             MS. KANDESTIN:  I believe we have -- I can run

13   through what I believe has happened.

14             I believe that we have resolved Allegheny

15   Casualty's objection by including the other secured claims

16   class, which was inadvertently left out.

17             With respect to Tiki Labs, I believe we have

18   resolved their disclosure objection by including language in

19   2.4 of the plan, but that they might want to just put

20   something on the record with respect to their reservation of

21   rights to confirmation.

22             And Coinbits was a joinder to Tiki Labs, so I'm not

23   sure -- I think they still have concerns about the

24   disclosures with respect to the investigation, as far as I

25   know.

1          And then AnchorCoin, we made a number of changes to

2     the plan to address their concerns.  And we did send the

3     revised changed pages to them before the hearing, but I have

4     not heard from them, one way or the other.

5          So I will cede the podium to anybody --

6          THE COURT:  Yeah.

7          MS. KANDESTIN:  -- any objections (indiscernible)

8          THE COURT:  Yeah, if parties could just let me know

9     where we stand.

10          MR. STARK:  Well, Your Honor, just from the

11     committee's perspective, would you like us to be heard

12     afterwards or as -- however Your Honor wants it.

13          THE COURT:  Well, I'd like to start with the

14     objection.

15          MR. STARK:  Sure.

16          THE COURT:  And then I'm assuming that you're in

17     line with the debtor and their response?

18          MR. STARK:  For the most part, yes, Your Honor.

19          THE COURT:  Okay.  So why don't we hear from

20     objectors?  The committee can respond together with the

21     debtors.

22          MR. STARK:  Certainly, Your Honor.

23          THE COURT:  And let's take an issue -- you know, an

24     objector at a time.

25          MS. MCLAUGHLIN SMITH:  Good afternoon, Your Honor.

1        THE COURT:  Good afternoon.

2        MS. MCLAUGHLIN SMITH:  Marcy McLaughlin Smith of

3   Troutman Pepper Hamilton Sanders on behalf of AnchorCoin.

4        AnchorCoin did file an objection at Docket Number

5   221; and, specifically, we raised three objections to the

6   disclosure statement:

7        Our first objection was that the initial disclosure

8   statement didn't mention any of the resolutions reached in

9   the final cash management order.  There is language that has

10  been added in 2.4 of the plan to address that the customer

11  account funds won't be used or transferred.  And so we might

12  have a tweak or two here or there in the plan, but we're

13  still in active discussions with debtors' counsel.  And we're

14  comfortable at this point proceeding and just reserve on that

15  for confirmation.

16       Our second objection was that there was inadequate

17  information with respect to claims that were being released

18  for available insurance.  The debtors did address the D&O

19  insurance and added additional disclosures there.  But with

20  respect to estate claims that were being released, that's

21  still an open issue from our perspective, which tied directly

22  into our third objection, which is:

23       That the debtors' current directors and officers

24  should not be releases from any estate or third-party claims

25  and causes of action.  And it's our understanding from

1    debtors' counsel, as was previewed, that the debtors are

2    proposing to release current directors and officers with

3    respect to claims, except for the defined "non-released D&O

4    claims."

5         But the plan and disclosure statement we find are

6    very confusing on this point.  So nowhere in the definition

7    of "released parties" are the current directors listed.  But

8    then, at the end of the definition, it says, quote:

9              "Notwithstanding the foregoing, the directors and

10             officers against whom the debtors hold non-released

11             D&O claims as of the petition date shall not be

12             released parties under the plan."

13        But as noted, that definition of "released parties"

14   only includes eight separate parties, and none of them are

15   the current D&Os.

16        So it's our position that the plan and disclosure

17   statement need to be amended to make clear exactly what

18   releases the debtors are proposing to grant to current

19   directors and officers, except with respect to those non-

20   released D&O claims.

21        And then (indiscernible) to the end of this, the

22   disclosure statement, in our position, lacks adequate

23   information as to what value -- what claims are being

24   released for D&Os, what the value of those claims are, as

25   well as what the contribution is that the D&Os are making in

1  exchange for those releases.  We understand that there are

2  ongoing investigations, but there's no other discussion of

3  what these claims may be, what their value are.  And it's

4  really adequate information to provide voting creditors with

5  a reasonable understanding of what the plan is doing and, you

6  know, to make an informed judgment as to how to vote on the

7  plan.

8          Therefore, we would respectfully request that the

9  Court require an amendment to the disclosure statement to add

10  sufficient information regarding what claims are being

11  released and the estimated value and what contribution is

12  being made in exchange.

13          And then, just with respect to confirmation, we

14  reserve the right to bring any confirmation objections

15  related to the third-party and any plan debtor releases.

16          And with that, Your Honor, I'm happy to answer to

17  any questions you may have.

18          THE COURT:  No.  But I'd like to hear from the

19  debtor or the committee their position.

20          And I know you were just getting documents, so I

21  don't know if you heard the end of that.

22          MS. KANDESTIN:  Your Honor, so a couple of things.

23          Mr. Bennett has -- Mr. Silverberg has told me that

24  I may have misstated the scope of the releases for the

25  current directors and officers.  They are not released

1    parties with respect to 98f Wallet causes of action, I want

2    to just make that clear.

3            So I have the redlines now.  May I approach with

4    the --

5            THE COURT:  Certainly.

6            MS. KANDESTIN:  Thank you.

7        (Participants confer)

8            THE COURT:  Thank you.

9            Is this just a blackline of edits since this

10   morning?

11           MS. KANDESTIN:  Yes.

12           THE COURT:  Okay.

13           MS. KANDESTIN:  So, Your Honor, the -- in the

14   disclosure statement, we added -- I'm sorry, these aren't

15   numbered -- we added a description of the released parties at

16   -- it's the -- it's on Page 86 (indiscernible)

17       (Laughter)

18           THE COURT:  Okay.

19           MS. KANDESTIN:  And it says at the bottom:

20           "Importantly, certain claims and causes of action

21           are preserved against current officers and

22           directors" -- "directors and officers, subject to

23           applicable limitations, and the debtors do not

24           propose to release former directors and officers"

25           (indiscernible) "plan."

1           I went through what -- and I think that the plan is

2      clear, in terms of who -- what the releases are related to.

3           And I hate to jump around like this.  But in the

4      redline of the plan --

5           THE COURT:  The redline you just gave me?

6           MS. KANDESTIN:  The blackline of the plan.

7           THE COURT:  Okay.  Right.  Okay.

8         (Laughter)

9           MS. KANDESTIN:  Yes, the (indiscernible)

10          We added language at the end of Section 6.9 that

11     also describes, you know, the scope of the releases and it

12     covers that they're not being released, except for avoidance

13     actions, except for ordinary course wages.  And it's not --

14     Article 6.9 is not intended to release or otherwise limit or

15     modify claims of action against one of the officers.

16          So I -- maybe I'm just too in the weeds, but I

17     don't know that it's unclear.  And we had tried to work with

18     AnchorCoin to make it clear.  I think we've maybe made a

19     dozen changes on their behalf.  And I just -- I'll let the

20     committee speak to this, but I'm not sure it's unclear.

21          And the scope of -- in terms of who is released, I

22     think that's a confirmation issue.  And that might change

23     between now and then.  So their rights with respect to that

24     are preserved in my mind.  And if -- when we get to the plan

25     supplement stage, perhaps the solution is we put a list of

1   released directors and officers as part of the plan

2   supplement.

3           MR. STARK:  Good afternoon, Your Honor.  Robert

4   Stark from Brown Rudnick --

5           THE COURT:  Good afternoon.

6           MR. STARK:  -- proposed counsel to the creditors'

7   committee.

8           I'm going to do something a little bit at risk

9   here.  My partner has been doing the language, so I may get

10  this wrong, and he will come up and tell me where I have it

11  wrong.

12          But I think these folks have not been sleeping for

13  days, just to put in context.  It's been a lot of hard work.

14  And we're just looking at the language now.

15          I think what's really important to understand is,

16  unlike so many other cases that we do here where the releases

17  are everyone and their affiliated people and then their

18  affiliates and their affiliates and so on and so on.  And the

19  releases that have been negotiated here are very, very, very

20  narrow.  Okay?

21          And so what we're talking about, in terms of --

22  what's easy in lots of other cases, everyone is released.

23  Here, it's like almost no one is released.  And whatever the

24  investigation is yielding will -- whatever value is accretive

25  as a result of that and, as Ms. Kandestin said -- Kandestin,

1    I'm sorry -- said, if, between now and when we get to the

2    plan supplement time and there's more information that's

3    yielded, that will be made available to everyone.

4            So it's this inversion, I think, of the fact that

5    it's a little more complicated because of the very few people

6    that are being released and you have to trail the definition

7    around to figure that out.  But it's really the people who

8    are working on this bankruptcy case, it's really the people

9    who are on the special committee, right?  And not that much

10   more.

11           So prior people who were at the company, who are no

12   longer there, no releases.  Anybody related to the 98f issue,

13   no releases.  Any individual claims that creditors have, no

14   releases.  We can't really delineate all of those people

15   because it's sort of everybody.

16           It's almost -- so I don't know if that's really

17   where the confusion lies as to why somebody may say there's

18   not enough disclosure.  There is enough disclosure.  It's

19   that there's not a releases going on here, and that's

20   probably what -- and I think that's what this new language

21   that I'm just reading for the first time -- because we're

22   working very fast --

23           THE COURT:  Right.

24           MR. STARK:  -- and very hard --

25           THE COURT:  I understand.

1          MR. STARK:  -- effectively says.

2          THE COURT:  Maybe --

3          MR. STARK:  I would be --

4          THE COURT:  Maybe AnchorCoin's counsel -- I think

5   she just got an opportunity to look at it.  So maybe --

6          MS. MCLAUGHLIN SMITH:  Yes, Your Honor.  Can I just

7   have 30 seconds (indiscernible)

8          THE COURT:  Yes, certainly.

9       (Participants confer)

10          MS. MCLAUGHLIN SMITH:  Your Honor, myself and my

11   co-counsel were able just to get a better understanding of

12   the changes that were just made and, with our discussion with

13   debtors' counsel, we're resolved on that issue.

14          THE COURT:  Okay.  Thank you.  I appreciate that.

15       (Pause in proceedings)

16          THE COURT:  Excuse me.  Does that resolve all of

17   AnchorCoin's issues, understanding that you're reserving

18   rights for the confirmation hearing?

19          MS. MCLAUGHLIN SMITH:  Your Honor, we do still

20   think that there should be some -- that there should be some

21   more of a disclosure with respect to what claims are going to

22   be released and the value and what contribution for current

23   and former directors -- or I guess just current, excuse me --

24   than just the one sentence that there's an investigation

25   ongoing.

1          THE COURT:  I guess I'm a little concerned with the

2    ongoing investigation.  What would it -- what information

3    would you contemplate could be provided that would answer

4    your question, in light of the fact that it's an ongoing

5    investigation?

6          MS. MCLAUGHLIN SMITH:  I mean, I heard the point

7    that there -- if there could be a supplement, there would be

8    a supplement in advance of the -- well, I guess it was

9    discussed as part of the plan supplement.  I think that it

10   would need to be somewhat in advance of the voting deadline.

11         THE COURT:  Don't worry.  I have an issue with the

12   plan supplement date, it's not compliant with the local

13   rules, so ...

14         MS. MCLAUGHLIN SMITH:  And so I think that would

15   give us some comfort.

16         But I understand that there's confidentiality

17   potentially with an ongoing investigation.  But there's

18   really no basis for a creditor to read that one sentence and

19   understand what they may or may not be giving up by accepting

20   or rejecting the plan.  And so I think there just needs to be

21   some kind of (indiscernible) say there's an investigation,

22   and I don't know what that means as a creditor and what value

23   might be at stake, and also, on the flip side, what

24   contribution is being made by parties proposed to be released

25   related to that in exchange for the release, so ...

1          (Pause in proceedings)

2          MS. KANDESTIN:  Your Honor, with respect to, you

3     know, consideration that's to be provided for the releases.

4     We'll address that in advance confirmation and at

5     confirmation.

6          And would you like me to walk you through the

7     redlines or blackline I just handed up or -- before we turn

8     to the order?

9          THE COURT:  Well, let me -- I want to resolve the

10    one outstanding issue here, since we're kind of mid --

11         MS. KANDESTIN:  Uh-huh.

12         THE COURT:  -- objection.

13         So is there any additional information that could

14    be provided with respect to investigations?

15         MS. KANDESTIN:  I'll let Mr. Stark speak to this,

16    as well.

17         Unfortunately, no.  We are in the middle of them.

18    And I wish we could provide more information, as well.  But

19    we'll provide what we can when we have it.

20         THE COURT:  What happens if you have nothing

21    available at the time of the confirmation hearing.  That's

22    one over my overall arching concerns here.  And I appreciate

23    comments that were made to me at the prior hearing about

24    these types of cases lost money and they need to run on a

25    parallel track.  But as a consequence of that, you don't have

1  the information that you might otherwise have available if

2  you were waiting a couple of weeks.  But I don't know if that

3  means weeks or months or years for an investigation.

4       MS. KANDESTIN:  Your Honor, I think that, you know,

5  it's not out of the realm of possibility in this case or

6  other cases that an investigation goes into the post-

7  effective-date time line.  You know, we'll know what -- we'll

8  have an update when we do the amended disclosure statement

9  supplement, but you know, it can go two ways, right?

10       We get access to the 98f Wallet or we don't.

11       And with respect to the property of the estate

12  issues, there's a number of different types of contracts that

13  have different provisions, and we need to analyze all of

14  those to determine whether, you know, we agree with -- under

15  a certain contract, if there is not -- like it's not property

16  of the estate, or whether we want to bring it to Your Honor

17  for you to decide whether it's property of the estate, based

18  on our analysis.

19       So those motions will be coming.  You know, we are

20  serving -- we've been active in the 2004 process and, you

21  know, we'll be serving those 2004 motions and bringing as

22  much as we can to Your Honor to decide before confirmation.

23  But the -- there's a mechanism set up in the plan, so that,

24  if those continue, there will be somebody to carry that on

25  post-effective-date.

1          But I -- before -- at the time we get to

2     confirmation, though, we will know which type of transaction

3     we have and, you know, what the value is of that transaction,

4     so we will have additional information for creditors.  But I

5     can't commit to a time line on the investigation piece.

6          MR. STARK:  Your Honor, if I may?

7          THE COURT:  Please.

8          MR. STARK:  Thank you.  Again, Robert Stark on

9     behalf of the committee.

10          Your Honor, I think the fundamental -- it's

11     important to understand the fundamental nature of this plan,

12     as it compares against other plans, for disclosure purposes

13     today.  This is not a reorganizing company plan.  We are not

14     rehabilitating a business and going in and issuing -- and

15     delivering stock to people and hoping for the best, right?

16     This is sale of a nonoperational business, and that may be

17     the path, it may be a different path.

18          This is a transitional plan.  This is a plan that

19     takes where we are in bankruptcy with all this administrative

20     expense, with all of the burden on Your Honor's docket, and

21     says let's wrap it up, tie it up, and wind it down according

22     to what is value accretive going forward.  I view those as

23     more transitional plans.  Okay?

24          The nature of disclosure in the former matter, the

25     typical widget reorganization, is what am I getting, how am I

1     getting it, what is it worth, what can I do with it, right?

2     In that scenario, if I'm getting stock, if I'm getting a

3     beneficial interest in a liquidation trust, if there's going

4     to be causes of action, of course we want to know exactly

5     what it is I'm getting, how I'm getting it, what it's worth.

6          When you're in a transitional plan, where we're

7     using the means of Chapter 11 to wrap up on a very cost-

8     effective, efficient, and value accretive for the creditors

9     and we don't yet know those things, respectfully, Your Honor,

10    nobody knows what's in it, how it's going to be, where it's

11    going to go because that's not the nature of the plan, that's

12    not the nature of our case.  We can't lick our finger, stick

13    it up in the air, and know how these things go because we

14    don't know the answer to those questions, and then sit down

15    and say, well, we can't get a disclosure statement approved,

16    and people won't know how to vote on whether or not wrapping

17    it up is the better way to go.  I don't think that's what

18    1125 does in this context.  Granted, in other contexts, but

19    that's not us here.

20         Your Honor, I had a few words that I wanted to say

21    about it, about just generally what we're doing today, but I

22    wanted to address that --

23         THE COURT:  Okay.

24         MR. STARK:  -- (indiscernible) helpful.  Is now a

25    good time?

1          THE COURT:  Yeah, go ahead.

2          MR. STARK:  Okay.  Thank you.

3          The committee's position for purposes of today --

4    we filed a reservation of rights and we are -- we have no

5    issue with the relief requested by the debtor today.  And in

6    saying that, I want to acknowledge something, too.

7          These folks have worked awfully hard and they have

8    met us more than halfway to accommodate the committee's

9    information needs, negotiating requests, made concessions,

10   achieved a deal that I think, from a plan perspective, we're

11   almost there.  Okay?  I am incredibly thankful and I'm

12   honored to have worked with them (indiscernible) they did a

13   great job, and the board, as well, and the professionals,

14   especially.

15         We are not, today, on board with the plan.  And

16   that's not that there's things in the plan that are making us

17   uncomfortable, it's that this case is moving extremely

18   quickly for reasons that have to do, as I just mentioned

19   before, we're not reorganizing or rehabilitating a business,

20   we're running a sale process and we're wrapping up the case.

21         But it's kind of the old novel theory, it's what's

22   below the surface of the water.  You know?  It's like, if you

23   write a good novel, it's only a little bit (indiscernible)

24   below the surface.  This is complicated, this is a

25   complicated case.  And this company historically operated in

1    a complicated and important way in a rather large ecosystem,

2    and we're trying to get to all of that stuff here, and

3    there's an M&A process going on.

4            We think we're going to be supportive and we think

5    that we'll be in a position to announce that support very

6    quickly, days, a week or two, but we're not there just today.

7    We have some tying down that we have to do just yet.

8            We provided debtors' counsel with a draft of a

9    letter of support, you know, a typical creditors' committee

10   letter of support.  I do not believe that it's been presented

11   to Your Honor for approval.  My understanding that they way

12   that we've been operating under this is that, first off, we -

13   - I don't have authority to release that letter or authorize

14   the debtor to release it to creditors just yet, we're working

15   to achieve that.

16           And I understand, from the debtors' perspective,

17   that their view would be that the letter, since they have

18   signed off, I believe, on the letter form, would be

19   acceptable from their perspective.  I just don't want to be

20   in an 1125 --

21           THE COURT:  Uh-huh.

22           MR. STARK:  -- of having, either we submit that

23   letter directly, or the debtor do it, without Your Honor

24   having the opportunity to approve it.

25           I've certainly been involved in cases before many

1   judges in Delaware where it was fine, as long as the debtor

2   approved it, it didn't need judicial imprimatur, but I don't

3   want to be presumptuous along those lines.  So that procedure

4   works for us, if it works for Your Honor.  If you would like

5   to -- if you think it's better --

6            THE COURT:  I'd like to review it before it goes

7   out.

8            MR. STARK:  I'm sorry.  Excuse me, Your Honor?

9            THE COURT:  I'd like to review it before it goes

10  out.

11           MR. STARK:  Certainly.

12           And with that, Your Honor, do you have any

13  questions for me?

14           THE COURT:  I don't, not now.

15           MR. STARK:  Thank you, Your Honor.

16           MS. KANDESTIN:  Your Honor, I wasn't sure if we had

17  the final version of that letter --

18           THE COURT:  No, that's --

19           MS. KANDESTIN:  -- so, if Mr. Stark -- if you want

20  to file it --

21           MR. STARK:  Sure.

22           MS. KANDESTIN:  -- under notice after the hearing?

23           MR. STARK:  Yeah.  We're -- it's not --

24           THE COURT:  If it -- once you finalize it.  I don't

25  -- yeah, I don't want to see it until --

1          MR. STARK:  Okay.  So, presuming (indiscernible)

2     presuming that, in the next --

3          THE COURT:  Because I understand the committee

4     hasn't approved it yet, correct?

5          MR. STARK:  We -- I believe the committee has

6     approved the form of the letter, but we're not yet positioned

7     to announce that we're publicly supporting.

8          THE COURT:  Right.

9          MR. STARK:  We have some things that we have to do

10    first.

11         Assuming that we get to that point, then we would -

12    - I would be authorized to tender it to the debtors for

13    solicitation or otherwise publicize it.  But if Your Honor

14    wants -- believes that -- and we think that makes a lot of

15    sense.  Should we do it under sort of certification of

16    counsel or notice?

17         THE COURT:  Notice --

18         MR. STARK:  However Your Honor thinks --

19         THE COURT:  -- is fine.

20         MR. STARK:  Okay.  And then, as long -- I want to

21    be sure that whatever we're doing -- today would enable --

22    and I'm a little bit confused procedurally.  If I notice it

23    up --

24         MS. KANDESTIN:  I --

25         MR. STARK:  -- do I file a notion for -- a motion

1   for --

2               MS. KANDESTIN:  (Indiscernible)

3               MR. STARK:  -- (indiscernible)

4               MS. KANDESTIN:  Your Honor, if you're inclined to

5   approve a letter, we can include it as -- the revised

6   proposed form of order as an exhibit.

7               THE COURT:  Yeah.  I just want to see it.

8               MS. KANDESTIN:  So notice and then that's it.

9               MR. STARK:  All right.  Thank you, Your Honor.

10              MS. KANDESTIN:  Okay.  Would you like me to walk

11  through this now, the redline that we handed up?

12              THE COURT:  Yes, let's walk -- I mean, I understand

13  that AnchorCoin still has an open issue, but let's walk

14  through the changes.

15              MS. KANDESTIN:  So, since we filed the Chapter 11

16  plan early this morning, we've made a number of changes for

17  the committee and (indiscernible) changes, as well.

18              The first one is in 1.142, Section 1.142.  And we

19  deleted this concept of released (indiscernible) settled,

20  compromised causes of action because we defined -- included a

21  defined term called "excluded causes of action," just to

22  simplify this language.  So that's a cleanup.

23              The creditors litigation trust agreement, we are

24  allowing the -- we agreed that the creditors' committee can

25  prepare it.  How it was originally drafted in our prior

1    version was that, you know, they had to be -- it had to be

2    reasonably acceptable to the committee.  But now it's just to

3    us.  So they're sort of spearheading that agreement, as well

4    as the plan administrator agreement.

5                    THE COURT:  Okay.

6                    MS. KANDESTIN:  In 1.145 -- sorry -- 1.45, that was

7    a change that the committee requested, same with 1.54, and

8    the same with 1.87 and 88 and 89.

9                    THE COURT:  Bear with me just a second.

10                   MS. KANDESTIN:  Uh-huh.

11                   THE COURT:  Okay.

12                   MS. KANDESTIN:  In 1.101, this is a change where

13   the committee (indiscernible) fine with.  It's just

14   clarifying the 98f Wallet causes of action and the scope of

15   that.

16                   In 1.149, again, we've deleted the phrase because

17   we corrected that with another defined terms, that was a

18   cleanup change.  And that's the same in 1.165.

19                   In 1.166, these are changes at the request of the

20   U.S. -- I mean, I'm sorry -- the committee, but we've also

21   made some clarifying changes.  Okay.  I'm seeing that they're

22   not -- they did not make it into this draft.  So, when we

23   file the plan after this hearing, I'll make it -- I'll make

24   those changes.

25                   But essentially, in the wind-down debtor assets,

1    for (a), with respect to the cryptocurrency and the 98 wallet

2    and the insurance policies in (c) and the books and records

3    in (f), we added a qualifier that, unless it's -- there's

4    something to the contrary in the plan supplement, a plan

5    supplement document, or the restructuring transactions

6    memorandum, just to account for, you know, whatever the

7    transaction ends up looking like, maybe there's a policy that

8    needs to stay with -- you know, with the buyer; or, you know,

9    if the buyer -- if the cash provided by the buyer satisfies

10   all of the claims, they should be able to retain the 98f

11   Wallet, these assets, things like that.  So just to sort of

12   caveat it, to make sure that it's not -- we're not, you know,

13   misrepresenting anything.

14           Number 1.168 is another change (indiscernible)

15           And 2.4, these are cleanup changes.  We made a

16   number of changes before the hearing to this paragraph, to

17   resolve (indiscernible) objections, including with respect to

18   the status quo of these, regarding the (indiscernible)

19   cryptocurrency and customer accounts.

20           But these are -- we added "transfer" to this for

21   AnchorCoin, so that it was clear that it really did maintain

22   the status quo because transfer was also covered in that

23   final cash management order.

24           Article 3.6, these are changes by the committee,

25   which we agreed to.

1          And then, if you turn to the next page, you're

2     going to see, in each class of claim -- of -- each of the

3     subclasses in Class 3, the general unsecured creditors, we've

4     added, at the committee's request, this sort of Subparagraph

5     (e), which my understanding is, if some cash or

6     cryptocurrency is allocated to a particular subclass, if it's

7     not used, they can reshuffle that into another class, which

8     we thought was appropriate.

9          THE COURT:  Who -- describe -- I mean, I understand

10    what the papers saw.  But at a more granular level, who are

11    the creditors in the three classes, the Class 3 and its

12    subclasses?

13         MS. KANDESTIN:  So the general -- it's the general

14    unsecured creditors --

15         THE COURT:  Right.

16         MS. KANDESTIN:  -- for the debtor, each debtor, and

17    it's the trade creditors and the customers.

18         THE COURT:  Right.  So it's -- do you -- are there

19    many trade creditors or is this primarily customers?

20         MS. KANDESTIN:  I think, between the amount of

21    trade debt and customer debt, it's definitely customer debt

22    heavy.

23         THE COURT:  Okay.

24         MS. KANDESTIN:  On the next page, I guess it's 33

25    of our -- 6.7, we --

1          THE COURT:  But --

2          MS. KANDESTIN:  -- (indiscernible)

3          THE COURT:  Before you get there.

4          MS. KANDESTIN:  Yes.

5          THE COURT:  Can I just ask you because we're here?

6          MS. KANDESTIN:  Uh-huh.

7          THE COURT:  What -- explain to me the convenience

8   class --

9          MS. KANDESTIN:  So --

10          THE COURT:  -- Class 4.

11          MS. KANDESTIN:  So what we've learned is that we

12   have a number, a large amount, actually, of claims that are

13   very small and -- we just have a lot of creditors, but some

14   of them have very small claims.  And we wanted to give them

15   an opportunity to select -- elect to have this convenience

16   class where they can get their money faster, they don't have

17   to participate in a claims reconciliation process or anything

18   like that.  And we thought that, given sort of the nature of

19   crypto and the whole -- the diverse cryptocurrency holder

20   body, that this might be attractive to people with lower face

21   claims.

22          THE COURT:  But it doesn't -- does it identify the

23   amount?

24          MS. KANDESTIN:  Yes.

25          THE COURT:  I'm sorry.  I must have missed it.  And

1    maybe it's a definition.

2            MS. KANDESTIN:  No, I think it's just not in this

3    redline maybe because it -- these are just changed pages.

4    But it is in the redline that we filed this morning, and it's

5    --

6            MR. AZMAN:  Your Honor, are you asking for the

7    Delaware threshold?

8            THE COURT:  Yes.

9            MR. AZMAN:  It's $300, Your Honor.

10           THE COURT:  Oh, okay.

11           MR. AZMAN:  And just for context, that's, you know,

12   more than 20,000 --

13           THE COURT:  Claims.

14           MR. AZMAN:  -- claims that we can eliminate through

15   that mechanism.  So, of course, the administrative costs of

16   not dealing with that seemed worthwhile here.

17           THE COURT:  Okay.  Thank you for that

18   clarification.

19           MR. AZMAN:  You're welcome.

20           THE COURT:  Okay.  I think you were at 6.6 maybe?

21           MS. KANDESTIN:  Yes.  Okay.  So, on Page 33, at the

22   top, in a prior version, we had given the creditors'

23   committee pretty broad consent rights and including with

24   respect to potentially adverse tax consequences to their

25   constituents.  And what we added here is that -- you know, we

1    added that we can't reduce any of their consent rights under

2    the plan.  You know, we can grant them more.  We can't pull

3    them back, either.

4           On the next page, I -- it's just cleanup.

5           And then 6.9, we -- at the -- you know, in

6    discussions with the committee, we have expended the -- sort

7    of the definition of "non-released D&O claims" to include,

8    you know, causes of action related to redemption of equity by

9    the debtors.  I don't have a lot of details on it, but we

10   agreed that that would be appropriate.

11          And so a lot of these changes are to clarify that

12   and also to, at the end of that paragraph, to talk about what

13   we discussed today at -- with respect to the avoidance

14   actions for directors and officers, current directors and

15   officers.

16          Turning to Page 38, another one of those cleanup

17   changes.

18          And on Page 40, we agreed to make this

19   modification, you know, putting this under the purview of the

20   plan administrator.  This is the rights and duties of the

21   plan administrator section.  Same with on 41.

22          And Page 46, another one of the cleanups.

23          On -- right above 6.16 is more cleanup.

24          And then 6.16 is to modify it to, you know, explain

25   -- to cover all insurance policies, not just D&O policies.

1          On 6.21, we originally had the debtors and

2    creditors' committee identifying the vested causes of action.

3    They asked that we take that out and we were okay with that.

4          In 9.6, the changes to the prior insurance section

5    I just discussed, we had no need for those, so we just agreed

6    to delete them.

7          And those are all the changes to the plan for

8    today.

9          THE COURT:  Okay.

10          MS. KANDESTIN:  Would you like me to turn to the

11    disclosure statement.

12          THE COURT:  Yes, please.

13          MS. KANDESTIN:  So many of these changes might be

14    just implementing the changes I just discussed, so I'll skip

15    over those.

16       (Pause in proceedings)

17          MS. KANDESTIN:  Still looking for one.  Okay.

18          So I think that brings us all the way to 86, which

19    is -- I discussed earlier about we put in an explanation of

20    (indiscernible) releases and exculpation in the disclosure

21    statement to try and address AnchorCoin's concerns, so that,

22    you know, people didn't have to parse through all the

23    definitions.  We did a cross-reference back to know they can

24    find more information about (indiscernible) release

25    (indiscernible)

1          THE COURT:  Bear with me a second.

2      (Pause in proceedings)

3          THE COURT:  Just I think, on Page 87, I think the

4  "each of the released professionals" is duplicative of the

5  preceding page, Bullet Point 6.

6      (Participants confer)

7          THE COURT:  Oh, they're exculpated.  I'm sorry.

8          MS. KANDESTIN:  Are you saying we should just

9  remove it --

10         THE COURT:  No.

11         MS. KANDESTIN:  -- or would you --

12         THE COURT:  No.

13         MS. KANDESTIN:  -- like (indiscernible)

14         THE COURT:  That was my --

15         MS. KANDESTIN:  Oh --

16         THE COURT:  -- misreading, sorry.  That's what

17  happens when you publicly read things.

18      (Pause in proceedings)

19         THE COURT:  Okay.

20         MS. KANDESTIN:  Does Your Honor have any questions

21  for me at this (indiscernible) disclosure statement?

22         THE COURT:  I do not.

23         MS. KANDESTIN:  All right, Your Honor.  Would you

24  like to turn to the proposed order?

25         THE COURT:  Actually, I don't really want to

1  discuss the order until we go through objections.

2          MS. KANDESTIN:  Okay.

3          THE COURT:  And I also would like an explanation on

4  the liquidation analysis because I don't understand it.  And

5  I understand that that's for another day, in terms -- but I

6  need to determine that this is -- that I don't have a

7  feasibility issue that would preclude solicitation.

8          MS. KANDESTIN:  Understood, Your Honor.  And Mr.

9  Murphy is happy to explain that.  He's the chief architect of

10  the liquidation analysis and will do a fine -- much better

11  job than I would.

12          THE COURT:  And maybe we should just wait until we

13  hear from an objector.

14          MS. KANDESTIN:  Uh-huh.

15          THE COURT:  But at some point, I'm going to want to

16  hear from it -- on it, but I want to hear from objectors

17  first.

18          So I think where we left off with respect to

19  objections was AnchorCoin still having an open issue with

20  respect to what was being disclosed with respect to

21  investigation.  Is that correct?

22          MS. MCLAUGHLIN SMITH:  Yes, Your Honor.

23          So I was pinch hitting a bit today, catching up

24  from being out last week.  I do think that the changes to --

25  and I think it might be 6.9, changing the carveout from the

1  current debtors -- current directors and officers being

2  released for only the 98f Wallet causes of action to the

3  broader "all claims and causes of action," going through that

4  just now, it was very helpful to see it more specifically.

5       So my understanding then is that the only thing the

6  current directors and officers are being released for is the

7  ordinary course (indiscernible) avoidance actions.  And so,

8  with that, Your Honor, I think we can stand on the needing

9  more information on the investigations because those

10  investigated claims are not being (indiscernible)

11       THE COURT:  Okay.  And is that -- her understanding

12  is correct?

13       MS. KANDESTIN:  Your Honor, almost.  They're not

14  getting released for anything but the ordinary

15  (indiscernible) avoidance actions.  But also, if they're not

16  found liable with respect to the 98f issues, they will be

17  released from those.  And they are -- again, they are

18  exculpated.

19       MS. MCLAUGHLIN SMITH:  Well, then I guess then it

20  is -- it does kind of bring us back to how do we know what

21  the creditors are agreeing to release or not release if --

22       THE COURT:  It's a toggle release.

23       MS. MCLAUGHLIN SMITH:  -- they don't have any

24  insight into what steps the investigation is -- or what

25  claims were looked at or anything along those lines.  And

1   then ...

2          (Participants confer)

3          THE COURT:  I'm sorry, Mr. Stark.  I can't hear

4   you.

5          MR. STARK:  I'm sorry.  I'm trying to --

6          (Laughter)

7          THE COURT:  Oh, are you talk -- oh, do you need a

8   minute?

9          MS. MCLAUGHLIN SMITH:  No, no.

10          MR. STARK:  No.

11          MS. MCLAUGHLIN SMITH:  So he was asking if it was

12   related to the release or the exculpation.  I understand the

13   exculpation is related to, you know, post-petition

14   activities, that's not our concern.

15          Our concern is with the release.  And hearing that,

16   if the investigation shows that a current directors and

17   officers is not liable for a 98f Wallet cause of action, I

18   think it comes back to our -- you know, our client and other

19   creditors' concerns of how do we know what that investigation

20   entailed, what causes and claims of action were looked at in

21   evaluating them found to not be liable for if, you know,

22   we're agreeing to accept a plan that would release them

23   before we know the outcome of what steps were taken.

24          MR. STARK:  May I, Your Honor?

25          THE COURT:  Yes, please.

1          MR. STARK:  There's no releases.  All that's

2     happening is it's channeled to insurance.  It's a mechanic

3     that is used in many, many, many, many of the plans that I

4     have been involved in.  And never once has anybody said to me

5     it has to delineate before in the disclosure statement what

6     and how.  In cases where the knowledge is ready and

7     available, we don't have to do that, and we don't have the

8     information ready and available.

9          People are voting as to whether or not, on the

10     whole, the deal is sufficient.  If you don't like the deal,

11     vote against it.  If you want to do something else, let us

12     know.  But there isn't information to add and no one is

13     getting releases.  It's just, if they're found liable, it's

14     done by the insurance, not their own personal wallets.

15          THE COURT:  I don't think that's what the plan

16     says.

17          MS. KANDESTIN:  So my point was not that they're

18     being released.  It was that if they're liable for these 98f

19     Wallet issues, then they're off the hook, that's all.  They -

20     - you know, they shouldn't have -- if it's decided that, you

21     know, they weren't participating, no knowledge, nothing with

22     these issues, then they're just not liable.  It's not a

23     release.  It's just me -- that was probably backwards

24     explaining it.

25          THE COURT:  You're saying, under the plan, they are

1    not released.

2              MS. KANDESTIN:  Right.

3              THE COURT:  If there is subsequent litigation post-

4    effective-date, and they are found not liable, it is what it

5    is.

6              MS. KANDESTIN:  Exactly.

7              THE COURT:  But they are not getting a release.

8              MS. KANDESTIN:  No.

9         (Participants confer)

10             MR. STARK:  That is our understanding

11   (indiscernible)

12             MS. MCLAUGHLIN SMITH:  With that representation,

13   Your Honor, that they are not released, it's just a matter of

14   if they're found liable or not, it's -- I believe we're

15   resolved.

16             THE COURT:  Okay.

17             MS. MCLAUGHLIN SMITH:  Thank you.

18             THE COURT:  Thank you.

19             Other objectors.

20             MR. WEISS:  Your Honor, John Weiss of Pashman Stein

21   Walder Hayden on behalf of both Tiki Labs, Inc. and Allegheny

22   Casualty Company.

23             THE COURT:  Good afternoon --

24             MR. WEISS:  With --

25             THE COURT:  -- Mr. Weiss.

48

1          MR. WEISS:  Thank you, Judge Stickles.

2          The -- with respect to Allegheny Casualty, whom

3     I'll speak for today, and then I will cede the podium to my

4     co-counsel Traci Shafroth from the Keller Benvenuitti firm.

5          With respect to Allegheny Casualty, we appreciate

6     the debtors adding the secured class to the plan.  We do have

7     issues that we'll have to address in connection with the plan

8     with respect to overall treatment and collateral that we're

9     holding, et cetera.  We anticipate continuing to work with

10    the debtors, those discussions have begun.  And we'll simply

11    reserve rights, *vis-a-vis* plan issues, to be addressed at

12    that time, if necessary.

13         And other than that, Your Honor, if I could just

14    turn the podium over, please, to my co-counsel.  And with

15    that introduction, I believe she'll be speaking for Traci --

16    Tiki Labs.

17         THE COURT:  Okay.  Thank you.

18         MR. WEISS:  Thank you, Your Honor.

19         THE COURT:  Ms. Shafroth?  Did I say that --

20         MS. SHAFROTH:  It's Shafroth.  Thank you, Your

21    Honor.

22         THE COURT:  I'm sorry.  Pronounce that again.

23         MS. SHAFROTH:  Traci Shafroth.

24         THE COURT:  Okay.  Good afternoon.

25         MS. SHAFROTH:  And -- good afternoon, Your Honor.

1    I'm with Keller Benvenuitti Kim, LLP.  As Mr. Weiss

2    mentioned, we represent Tiki Labs, Incorporated, doing

3    business as Audius, Incorporated.

4         So we appreciate all of the work that the debtors

5    have done to address the objections, to the extent they can

6    at this point, at the disclosure statement.  But we did want

7    to make sure we preserved our rights with respect to those

8    objections.

9         Tiki Labs holds a significant amount of

10   cryptocurrency in a customer custody account.  And so the

11   determination of not estate assets and the account treatment

12   issues are of paramount importance to Tiki.

13        We appreciate that the debtors added language

14   making it clear that they would not take tokens subject to

15   customer agreement without a court order.  But at this point,

16   without an understanding of the debtors -- you know, the

17   debtors have not taken a position yet on whether customer

18   custody accounts or the cryptocurrencies in those accounts

19   are estate property and how those will be treated.  So,

20   without that information, Tiki Labs doesn't have adequate

21   information to be able to make an informed vote on a plan.

22        So, at this point, we just wanted to make sure that

23   we preserved Tiki Labs' rights to raise those objections to

24   the adequacy of the information in conjunction with the final

25   approval of the disclosure statement and the confirmation of

1    the plan.

2              THE COURT:  Bear with me a second.

3         (Pause in proceedings)

4              THE COURT:  Let me ask the debtors.  I'm looking at

5    Local Rule 3017-2, objections not made at the time of the

6    hearing on voting procedures, form of notice, and form of

7    ballot aren't considered at the time of confirmation.

8              Is it the debtors' position that Tiki can reserve

9    its right with respect to customer accounts to the hearing --

10   at the confirmation hearing to address the adequacy of the

11   disclosure statement.

12             MS. KANDESTIN:  Yes, Your Honor.  I would like them

13   to have an opportunity to see our supplements.  And then, you

14   know, to the extent -- and we'll work with them between now

15   and then.  But to the extent there's no -- they're not

16   satisfied with the disclosures, it's our position that those

17   are preserved.

18             THE COURT:  Okay.  Does the U.S. Trustee have any

19   issue with that position or the committee?

20             MR. CUDIA:  Yes.  Joseph Cudia for the United

21   States Trustee.

22             Yes.  And again, I did want to thank debtors'

23   counsel for working with us to get most of our issues

24   resolved.

25             As far as the disclosure statement issues, they are

1    resolved, as far as we're concerned.  We do want to reserve

2    our rights as far as confirmation issues, which we do have

3    some.  But again, a lot of hard work on their part.

4              THE COURT:  Okay.  But as to Tiki, the U.S. Trustee

5    doesn't take a position whether those issues are reserved

6    regarding adequacy of the disclosure statement?

7              MR. CUDIA:  No, we're not taking a position.

8              THE COURT:  Okay.  Terrific.  Thank you.

9              And Mr. Cudia, let me thank you.  I can tell the

10   U.S. Trustee had a hand in many of the modifications and I

11   appreciate that.

12             MR. STARK:  Your Honor, as far as the committee is

13   concerned, we're fully -- we're perfectly find with

14   (indiscernible) it makes sense under the circumstances.

15             THE COURT:  Okay.  All right.  Were there any other

16   issues with respect to Tiki?

17             MS. SHAFROTH:  No, that was it, Your Honor.  Thank

18   you.

19             THE COURT:  Okay.  Thank you.

20             Other objections?

21             MR. NEUMANN:  Your Honor, this is --

22             THE COURT:  Yes.

23             MR. NEUMANN:  This is David Neumann on behalf of

24   Coinbits.

25             I filed a joinder to Ms. Shafroth's objection.  It

1   was just very well written and really encapsulated the

2   concerns that my client has.

3           We -- my client and its users are the owners of

4   about a little over 100 bitcoins out of, I believe, a pool of

5   300 bitcoins that the debtors have under their trust -- under

6   our -- under various trust agreements.  And our only concern

7   is that we know that, as far as we can tell from the

8   disclosure statement, that Bitcoin, BTC, was never involved

9   at all in this wallet issue.

10          And so our concern is, without knowing the timing

11  of the supplement and then knowing at least a statement as to

12  where the matter is currently, just where the investigation

13  is, is it ongoing, what stage it's at, it's really hard to

14  get over our objections to the fact that our ownership in BTC

15  and the process with regards to resolving the ownership

16  issues as to BTC are not disclosed in any way in the

17  disclosure statement, as those BTC issues, the Bitcoin

18  issues, are unique to Bitcoin holders, and as it doesn't seem

19  like anything was -- that any issues in this case affected

20  the BTC rights under the Fireblocks technology that was used

21  to maintain wallets in this case.

22          THE COURT:  Let me hear from the debtors.

23          MS. KANDESTIN:  Well, Your Honor, I think earlier

24  in the -- today's hearing, I addressed that we've not made a

25  determination with respect to any cryptocurrency, BTC or

1    otherwise, and whether it's property of the estate, and that

2    those are ongoing.  I believe the disclosure statement

3    provides that as well.  And that, you know, the parties will

4    have an opportunity to review the supplemental disclosure

5    statement, which will have additional details.

6          But at this time, I can't put more information in

7    if I don't have it.

8          MR. STARK:  May I, Your Honor?

9          THE COURT:  Mr. Stark, yes.

10       (Participants confer)

11          MS. KANDESTIN:  And I'd like to reiterate that

12   we'll continue to work with all of these parties to address

13   these concerns between now and the final hearing.  And to the

14   extent they are not addressed to their satisfaction, we

15   consider those to be preserved.

16          THE COURT:  Mister --

17          MR. NEUMANN:  And that's sufficient, that's

18   sufficient for us, Your Honor.

19          THE COURT:  Okay.  So I would encourage you to

20   continue to, and your issue is reserved for the final

21   hearing.

22          MS. KANDESTIN:  We will, Your Honor.

23          Are we -- with that, would you like to turn to the

24   order or --

25          THE COURT:  No, actually.

1          MS. KANDESTIN:  No.

2          THE COURT:  Sorry.

3          And let me just reiterate to Mr. Neumann, this --

4    today's approval of a disclosure statement would be only on

5    the interim basis, so it will be readdressed.

6          MR. NEUMANN:  Oh, Your Honor, I really do

7    appreciate it.  Thank you so much for the opportunity to

8    appear before you.  I do appreciate it.

9          THE COURT:  Certainly.

10         I would like explanation -- let me -- I appreciate

11   liquidity -- I mean the liquidation analysis is not before me

12   today.  But I could not or did not understand -- and I'm

13   afraid I did not bring it out here with me -- how parties or

14   creditors receive more in an 11 than a 7 based on the

15   analysis that was attached.

16         MS. KANDESTIN:  With Your Honor's permission, I

17   would ask Mr. Murphy to come to the podium and to walk Your

18   Honor through this --

19         THE COURT:  Okay.

20         MS. KANDESTIN:  -- (indiscernible)

21         THE COURT:  And could you just wait a second while

22   I find the report that was actually provided?

23         MS. KANDESTIN:  I'm sorry, Your Honor?

24         THE COURT:  I can't find my copy of the report.

25         MS. KANDESTIN:  Oh, I --

1          THE COURT:  That's all.  I'm just --

2          MS. KANDESTIN:  Well, we have another copy.

3          THE COURT:  Just give me a second.  Sorry.  Oh, I

4     have it.

5          MS. KANDESTIN:  Okay.

6          MR. MURPHY:  Good afternoon, Your Honor.

7          THE COURT:  Good afternoon.  I don't -- wait one

8     second.

9          (Court and court personnel confer)

10          THE COURT:  Since he's the financial advisor, I'm

11     going to have him sworn in.

12          MS. KANDESTIN:  Okay.

13          THE COURT:  You can stand there, sir, but you're

14     going to be sworn in.

15          THE ECRO:  And could you please raise your right

16     hand?

17          WILLIAM MURPHY, WITNESS FOR THE DEBTORS, AFFIRMED

18          THE ECRO:  And could you please state your full

19     name and spell your last name for the record?

20          THE WITNESS:  William Murphy, M-u-r-p-h-y.

21          THE ECRO:  Thank you.

22          THE COURT:  Thank you, Mr. Murphy.

23                              EXAMINATION

24     BY THE COURT:

25     Q    I had a question about the liquidation analysis because

1    I don't appreciate how -- I understand this says they would -

2    - a creditor would receive more in an 11 than a 7.  But I

3    don't understand, based on the numbers that are attached,

4    particularly -- I'm looking at the Chapter 11 orderly wind-

5    down that's on Page 13 of 14, versus the Chapter 7

6    liquidation that's on Page 14 of 14, where it reflects an

7    81.4 percent recovery as a mid case to Chapter 7.  And yet,

8    if I look at the Chapter 11 orderly wind-down, it breaks it

9    out for customer claims, trade, convenience, contract.  And

10   it seems to be a lesser percentage to me.

11   A    I'd like to recalculate that, Your Honor.  That is a --

12   that's an error.

13   Q    Oh, okay.  Because I'm like --

14   A    Yes.

15   Q    Do you want -- would it be helpful if we took a quick

16   break?

17   A    It --

18          MR. AZMAN:  Yes.

19   A    Yes.

20          MR. AZMAN:  Yes.

21          THE COURT:  Okay.  All right.

22          MR. AZMAN:  That (indiscernible)

23          THE COURT:  All right.  That would be very helpful

24   because I didn't want to make a representation about

25   something being patently unconfirmable if there is an error.

1        So why don't we taken ten minutes?

2              THE WITNESS:  No more.

3              THE COURT:  Okay.  All right.  Let's take a --

4    we'll stand in recess for ten minutes.

5              MS. KANDESTIN:  Thank you, Your Honor.

6         (Witness excused)

7         (Recess taken at 3:07 p.m.)

8         (Proceedings resume at 3:19 p.m.)

9         (Call to order of the Court)

10             THE COURT:  Please be seated.  Okay.

11             MS. KANDESTIN:  (Indiscernible) Your Honor.  So we

12   discovered what the matter was.

13             THE COURT:  Okay.

14             MS. KANDESTIN:  And I'll explain that.  But we'll

15   file an updated, corrected version that goes into the

16   disclosure statement that will be solicited if you approve

17   it.

18             THE COURT:  Okay.  All right.

19             MS. KANDESTIN:  Okay.  So the Chapter 11 orderly

20   wind-down column --

21             THE COURT:  Uh-huh.

22             MS. KANDESTIN:  -- that is 68.2 percent.  And the

23   Chapter 7 liquidation column should be 66.9.

24             THE COURT:  Wait.  Hold on one second.  So -- I'm

25   sorry.  I was writing with a dead pen.

1          So it should be 68.2 with respect to Chapter 11

2     orderly wind-down.  And then, with respect to Chapter 7

3     liquidation, it should be what?

4          MS. KANDESTIN:  66.9.  And the error was a result

5     of the formula excluding -- even though it looks like the $40

6     million up here in international preference recoveries

7     (indiscernible) no, domestic preference recoveries, it

8     indicates it's up here earlier in the column.  When we did

9     the actual formula, it was not included.

10         THE COURT:  Okay.  So the 66.9 --

11         MS. KANDESTIN:  Uh-huh.

12         THE COURT:  -- that replaces what number --

13         MS. KANDESTIN:  It replaces --

14         THE COURT:  -- 81.4?

15         MS. KANDESTIN:  Yeah.  I can't see it.  Yes.

16         THE COURT:  Okay.  I just want to make sure.

17      (Participants confer)

18         MS. KANDESTIN:  Mr. Murphy vigorously and very

19     carefully and (indiscernible) scratched it out

20     (indiscernible)

21         THE COURT:  So wait a minute.  So it's 68.2

22     recovery under 11 --

23         MS. KANDESTIN:  Uh-huh.

24         THE COURT:  -- and 81.4 under 7?

25         MS. KANDESTIN:  No.  So the 81.4 is not -- I think

1    that's -- no, that's not correct.  It should be 66.9.

2                THE COURT:  Oh --

3                MS. KANDESTIN:  And the 70 percent is convenience

4    class in 11, which is right above it.  So the 81.4 comes out

5    and it is replaced at 66 --

6                THE COURT:  Six point nine.

7                MS. KANDESTIN:  Right.

8                THE COURT:  So it's the differential between 68.2 -

9    -

10               MS. KANDESTIN:  Yes.

11               THE COURT:  -- and 66.  So it's a 2 percent

12   differential.

13               MS. KANDESTIN:  Yes.

14               THE COURT:  Okay.  All right.  Thank you for that

15   clarity, I appreciate it.

16               MS. KANDESTIN:  Thank you for bringing that to our

17   attention, Your Honor.

18               How would you like to proceed?

19               THE COURT:  Let me ask before we proceed any

20   further:  Is there anyone else who wishes to be heard with

21   respect to the solicitation motion, the disclosure statement,

22   or the proposed form of order?

23          (No verbal response)

24               THE COURT:  Okay.  I hear none.

25               Let's proceed forward with the order.

1          MS. KANDESTIN:  Thank you, Your Honor.

2          So this is based on the -- we haven't made any

3     changes to the version we filed early this morning.

4          THE COURT:  Okay.

5          MS. KANDESTIN:  And has Your Honor had a chance to

6     review those or would you like us to walk through, me to walk

7     through?

8          THE COURT:  I did review them.  Bear with me a

9     second, I have a lot of paper.

10          MS. KANDESTIN:  I have a preemptive change that

11     were done during the break.

12          THE COURT:  Well, I have my comments typed out, so

13     ...

14          MS. KANDESTIN:  Okay.

15          THE COURT:  I might have to work with you a little

16     bit --

17          MS. KANDESTIN:  Sure.

18          THE COURT:  -- on what paragraph because the --

19     when the revised was filed, it changed the page numbers and I

20     made my comments last night, but I did look at it --

21          MS. KANDESTIN:  Okay.

22          THE COURT:  -- this morning, what was filed.

23          MS. KANDESTIN:  Okay.  So would you like to just

24     run through your comments and --

25          THE COURT:  Yeah.  Do you know the docket number?

1         MS. KANDESTIN:  For -- yes.

2         THE COURT:  I'm just going to --

3         MS. KANDESTIN:  It is --

4         THE COURT:  -- pull it up right now, so I --

5         MS. KANDESTIN:  Two -- it's 252.

6         THE COURT:  Okay.

7         MS. KANDESTIN:  And the redline starts at -- it's

8    252-2.

9         THE COURT:  Okay.  I think this will be probably

10   more efficient.

11        So I can tell you, as probably the biggest issue

12   that I have -- and it's going to change a lot of things --

13        MS. KANDESTIN:  Okay.

14        THE COURT:  -- is that the schedule doesn't work

15   because of two fundamental things:

16        One, November 10 is a court holiday, the Court is

17   closed.

18        MS. KANDESTIN:  I apologize, Your Honor.

19        THE COURT:  No, it's okay.  And as a consequence, I

20   -- the earliest I can schedule something is November 14 at

21   one o'clock.

22        MS. KANDESTIN:  Okay.

23        THE COURT:  So that's going to kind of trigger some

24   date changes.

25        But the other fundamental issue I had is that I am

1   -- I'm going to require compliance with the local rule

2   regarding a plan supplement.  This is a very big issue, often

3   expressed by the United States Trustee's Office, that plan

4   supplements have to be in seven days, the earlier of the

5   deadline to vote or the deadline to object to the plan.

6        And in this case, it's just -- it's too close.  It

7   would have to be -- your plan supplement, if you maintain

8   this schedule, is going to have to be filed by October 27th.

9        MS. KANDESTIN:  Right.  And that's exactly where we

10  landed.

11       THE COURT:  Oh, okay.  Terrific.

12       MS. KANDESTIN:  So, in the break -- during the

13  break, we landed at moving that to the 27th.  Since the

14  hearing is on the 14th, that might shift down a bit, just to,

15  you know --

16       THE COURT:  Yeah.  I didn't know if you wanted to

17  keep it -- so, if we have a hearing on the 14th, I'm working

18  back up.  But if you have the hearing at 14 -- the 14th at 1,

19  your agenda is going to be due the 9th at noon.

20       MS. KANDESTIN:  Uh-huh.

21       THE COURT:  So your brief, declarations, et cetera,

22  have to be the 8th at four o'clock.

23       MS. KANDESTIN:  Uh-huh.

24       THE COURT:  So I don't know how you --

25       MS. KANDESTIN:  We'll keep it --

1          THE COURT:  -- want to work --

2          MS. KANDESTIN:  -- at 10/27.

3          THE COURT:  I think so.

4          The only other question I had -- and I can be

5    convinced on this -- but the debtor in this case -- okay.  So

6    the bar date hasn't occurred yet, right?  I mean, it -- we

7    have a bar date, but it has expired.

8          MS. KANDESTIN:  Uh-huh.

9          THE COURT:  And the debtor just filed -- or I

10   entered an order allowing the filing of the schedules as late

11   as October 10th.

12         MS. KANDESTIN:  Well, Your Honor, we did file our

13   schedules.

14         THE COURT:  Oh, you did.

15         MS. KANDESTIN:  Yes.

16         THE COURT:  Okay.  So 3018 is not going to be an

17   issue then.

18         MS. KANDESTIN:  Yes.

19         THE COURT:  I had a concern with 3018 and I had a

20   concern with tabulation.

21         MS. KANDESTIN:  And I don't --

22         THE COURT:  So they are --

23         MS. KANDESTIN:  -- remember when because it seems

24   like a million years ago.

25         THE COURT:  Okay.  All right.

1          MS. KANDESTIN:  (Indiscernible)

2          THE COURT:  I didn't check.  I just knew I entered

3     an order that provided for a later date.

4          Okay.  All right.  So, with respect to the order

5     itself, let me -- I want to -- I didn't know if you need to

6     update the intro to address your revised documents.

7          MS. KANDESTIN:  Yes, Your Honor.  Thank you.

8          THE COURT:  Let me just get the case number here

9     and I can pull it up.

10          MS. KANDESTIN:  And Your Honor, we'll file a

11     solicitation version of the disclosure statement and --

12          THE COURT:  Oh, that would --

13          MS. KANDESTIN:  -- the current plan.

14          THE COURT:  -- be terrific.

15          MS. KANDESTIN:  So we'll include those docket

16     numbers, just to make everything really super clear.

17          THE COURT:  So let me get your most recent order.

18     Do you know the docket number?  I think you just said it.

19          MS. KANDESTIN:  Of the most recent -- oh, of the

20     order?

21          THE COURT:  Uh-huh.

22          MS. KANDESTIN:  It's 252.

23        (Participants confer)

24          MS. KANDESTIN:  We also have a copy if you'd like

25     me to approach.

1          THE COURT:  Oh, that would be great.

2      (Participants confer)

3          MS. KANDESTIN:  Mr. Cudia to the rescue.  May I

4  approach?

5          THE COURT:  Oh, that would be great.  Yeah, thank

6  you.

7      (Participants confer)

8          THE COURT:  I know you all have been working really

9  hard.  This is the most colorful blackline I think I have

10  ever seen, and it obviously reflects a lot of work going into

11  it.

12          Okay.  So I didn't know if you need to update.  I

13  think you do say amended, as amended or supplemented, so --

14          MS. KANDESTIN:  Uh-huh.

15          THE COURT:  -- probably not necessary.

16          On Paragraph (a), I'm going to make -- I'm not

17  making any chance to the order.  I'm just telling you, on the

18  ballot, voting ballots, I'm going to ask you to make a

19  modification.

20          MS. KANDESTIN:  Okay.

21          THE COURT:  But I'll wait until we get there.

22          So Paragraph 3, have to modify the confirmation

23  hearing date.

24          You're going to have to modify the dates in

25  Paragraph 4 of the disclosure statement --

1          MS. KANDESTIN:  Uh-huh.

2          THE COURT:  -- objection and plan objection

3    deadline.

4          Paragraph 6, no change needed.  But I am going to,

5    like I said, make an edit to the balance.

6          MS. KANDESTIN:  Okay.

7          THE COURT:  Ballots.  Excuse me.

8          The confirmation schedule, as we just discussed, as

9    long as you update to reflect the plan supplement date and

10   the actual hearing date.

11         MS. KANDESTIN:  Will do, Your Honor.

12         MR. AZMAN:  Your Honor, just one moment?  May I

13   just confer with --

14         THE COURT:  Sure.

15         MR. AZMAN:  -- Ms. Kandestin?

16      (Participants confer)

17         MS. KANDESTIN:  Sorry, Your Honor.

18         THE COURT:  Is -- okay.  Paragraph 10.  How are --

19   solicitation materials with respect to the voting class are

20   primarily email, correct?

21         MS. KANDESTIN:  Uh-huh.  Yes, Your Honor.  We tried

22   to (indiscernible) throughout this that we'll be in

23   compliance with your order --

24         THE COURT:  Right, right.

25         MS. KANDESTIN:  -- which we're calling the "privacy

1    projection order."

2          THE COURT:  Okay.  So my question is -- and I know

3    this is really granular -- but is this going to be a single

4    email with PDFs in it or is it going to be like multiple PDFs

5    attached to a file?  And my thinking here goes to the ballot,

6    and we'll get to that in a minute.  Like is --

7          MS. KANDESTIN:  So my understanding is that it's

8    going to be separate PDFs, so that they don't have to fish

9    around for the ballot.  So it will be a PDF of the plan and

10   the disclosure statement and then the appropriate ballot sent

11   with it.

12         THE COURT:  Okay.  All right.  That ...

13      (Participants confer)

14         MS. KANDESTIN:  There are also going to be

15   hyperlinks in the notices, where the --

16         THE COURT:  Oh, so they'll get both?

17         MS. KANDESTIN:  Yeah.  So the hyperlinks and the --

18   in some of the exhibits to this order, we have the

19   hyperlinks.  And we let the U.S. Trustee know this.  Due to

20   cost -- they wanted us to list out the released parties in a

21   lot of places and we did in a lot of places.  But certain

22   places, we used a hyperlink, and that's the ballots.  But we

23   do --

24         THE COURT:  Oh --

25         MS. KANDESTIN:  All they have to do is click on it

1     and then they can see all of the releases.  And there will be

2     a PDF that go -- that they can -- that will be -- they'll be

3     sent directly to that, which just has releases, and there

4     will be one that just has the schedule.

5               THE COURT:  Okay.  And is there a hyperlink like,

6     if you want to do electronic balloting, you can do it right

7     from --

8               MS. KANDESTIN:  Yes.

9               THE COURT:  Okay.  All right.  In Paragraph 11 --

10    and I know we discussed this at the last hearing about return

11    email and mailing.  I would just ask that there be a

12    commercially reasonable effort to resend a ballot --

13              MS. KANDESTIN:  Okay.

14              THE COURT:  -- that comes back.

15              And Paragraph 12, we'll have to update -- oh, I

16    guess it's now Paragraph 13, the voting deadline.

17              MS. KANDESTIN:  Uh-huh.

18              THE COURT:  And Paragraph 14, you just answered the

19    question I had.

20              MS. KANDESTIN:  Uh-huh.

21              THE COURT:  15, I don't know if your voting

22    declaration deadline is going to change with the change of

23    the hearing date.

24              MS. KANDESTIN:  I think it will stay the -- it will

25    be the reply deadline.

1          THE COURT:  And the same ...

2      (Pause in proceedings)

3          THE COURT:  Just so you know, there are two

4  Paragraph 15s in this order.  When it was blacklined -- it

5  wasn't before, it just became that -- the way it is today.

6  And so it may just reflect that way on the blackline, but --

7          MS. KANDESTIN:  I'll keep an eye out.

8          THE COURT:  Yeah.

9      (Participants confer)

10          THE COURT:  And of course, the plan supplement date

11  is going to have to change.

12          All right.  Here's my comment with respect to the

13  ballot, and this is my last comment.  I permit opt-out and --

14  but I'm always concerned that it be obvious --

15          MS. KANDESTIN:  Okay.

16          THE COURT:  -- early in the ballot and not on Page

17  7 or 8, that there's an opt-out contained within the

18  document.  So I just think there should be a more prominent

19  disclosure of the release opt-out on the front of the ballot.

20          MS. KANDESTIN:  Okay.

21          THE COURT:  And I don't know if it goes in the

22  title, I'll leave it to your discretion, but I want it to be

23  obvious.

24          MS. KANDESTIN:  Okay.

25          THE COURT:  And then, on the ballots -- and I

1    appreciate that it's in the notice.  And the reason I'm ask -

2    - that's the reason I ask about how this was being presented

3    in an email.

4            But with respect to the ballots, the release

5    language is in here, but not the definition.  But I think

6    you're telling me that you edited for that.

7            MS. KANDESTIN:  We -- this is where we added a

8    hyperlink that they can click on when they have their ballot

9    and it goes directly to the current version of the releases.

10           THE COURT:  Okay.

11           MS. KANDESTIN:  It's a separate PDF that they'll go

12   directly to it, they don't have to -- it's not sending them

13   to the plan tab, go find it, it's not sending them to the

14   whole plan.  It's sending them directly to that language in

15   an excerpt.

16           THE COURT:  Okay.

17           MS. KANDESTIN:  And the same --

18           THE COURT:  All right.

19           MS. KANDESTIN:  -- with the time line.  It's -- one

20   of the comments from the U.S. Trustee's Office was that we

21   put the chart with all the dates and deadlines in the

22   confirmation hearing notice.  And given our, you know, cost

23   concerns, we suggested a hyperlink to that schedule, as well,

24   and we were doing that.

25           THE COURT:  And for the purpose -- for purposes of

1    the record, these are people who have chose to do business

2    with the debtor via email.

3              MS. KANDESTIN:  Yes.

4              THE COURT:  Mr. Cudia, do you have -- does the U.S.

5    Trustee have any issue with this process?

6              MR. CUDIA:  No, Your Honor.

7              THE COURT:  Okay.  Does anyone else wish to be

8    heard with respect to the form of order and the comments we

9    just addressed?

10        (No verbal response)

11             THE COURT:  Okay.  Having not heard any comments,

12   I'm satisfied the debtor has carried its burden and the

13   relief sought in the motion is appropriate, subject to the

14   modifications that we discussed here this afternoon.

15             Specifically, in accordance with Local Rule 3017-2,

16   I will grant the motion and approve the disclosure statement

17   on an interim basis with the reservations that were set forth

18   on the record today, the solicitation procedures to be

19   utilized, the form of notice of confirmation hearing and

20   ballots, and approve the revised schedule.

21             So, if you could submit that under certification of

22   counsel, we'll get it approved.

23             MS. KANDESTIN:  Yes, Your Honor.  Thank you.

24             THE COURT:  Certainly.

25             MS. KANDESTIN:  Thank you for your time.

1          THE COURT:  All right.  Thank you, all.  I

2    appreciate everyone's time this afternoon.

3          And let me -- I do appreciate this has been very

4    fluid and I understand the amount of work that went into this

5    and I do appreciate the parties working together.

6          UNIDENTIFIED:  Thank you, Your Honor.

7          THE COURT:  Thank you, all.  Have a great

8    afternoon.

9          UNIDENTIFIED:  Thank you, Your Honor.

10          THE COURT:  We stand adjourned.

11      (Proceedings concluded at 3:35 p.m.)

12                              *****

13                        CERTIFICATION

14          I certify that the foregoing is a correct

15    transcript from the electronic sound recording of the

16    proceedings in the above-entitled matter to the best of my

17    knowledge and ability.

18

19

20

21

22    _____     October 13, 2023

23    Coleen Rand, AAERT Cert. No. 341

24    Certified Court Transcriptionist

25    For Reliable