## IN THE UNITED STATES BANKRUPTCY COURT
## FOR THE DISTRICT OF DELAWARE

| | |
|---|---|
| In re: | Chapter 11 |
| Prime Core Technologies Inc., *et al.*,[1] | Case No. 23-11161 (JKS)<br>(Jointly Administered) |
| Debtors. | |

## MOTION OF BMO BANK, N.A. FOR ALLOWANCE
## AND PAYMENT OF ADMINISTRATIVE EXPENSE CLAIM

BMO Bank, N.A. f/k/a BMO Harris Bank N.A. ("**BMO**"), pursuant to sections 507(a)(2) and 503(b)(1)(a) and (b)(4) of title 11 of the United States Code, 11 U.S.C. §§ 101 *et seq.* (the "**Bankruptcy Code**"), hereby moves (the "**Motion**") for entry of an order granting the allowance and directing payment of its administrative priority claim in the amount of $17,794.98 for services provided to the above-captioned debtors and debtors-in-possession (collectively, the "**Debtors**") during the pendency of the above-captioned bankruptcy proceedings.  In support of its Motion, BMO respectfully states as follows:

### JURISDICTION AND VENUE

1.      The Court has jurisdiction over the subject matter of this Motion pursuant to 28 U.S.C. § 1334.  This matter is a core proceeding pursuant to 28 U.S.C. § 157(b)(2)(A), (B), and (O).

2.      Venue in this Court is proper pursuant to 28 U.S.C. §§ 1408 and 1409.

---

[1]     The debtors in these chapter 11 cases, along with the last four digits of each debtor's federal tax identification number are:  Prime Core Technologies Inc. (5317); Prime Trust, LLC (6823); Prime IRA LLC (8436); and Prime Digital, LLC (4528). The Debtors' service address is 330 South Rampart Blvd., Suite 260, Las Vegas, NV 89145.

## **GENERAL BACKGROUND**

1.      On August 14, 2023 (the "**Petition Date**"), the Debtors commenced these jointly administered cases by filing voluntary petitions for relief under chapter 11 of the Bankruptcy Code in the United States Bankruptcy Court for the District of Delaware.

2.      On August 24, 2023, the Debtors filed a Motion for Entry of Final Order (I) Authorizing Debtors to (A) Continued to Operate Their Cash Management System, and (B) Maintain Existing Bank Accounts and Business Forms and Honor Certain Prepetition Obligations Related Thereto; (II) Authorizing the Debtors to (A) Continue to Perform Intercompany Transactions and (B) Granting Administrative Expense Status for Post-petition Intercompany Claims; (III) Extending the Time for the Debtors to Comply with Requirements Set Forth in 11 U.S.C. § 345(b); and (IV) Granting Related Relief (Docket No. 20, the "**Cash Management Motion**") [Docket No. 20]. As set forth in the Cash Management Motion, BMO is the primary cash management bank for Debtors.

3.      On August 29, 2023, the United States Trustee for the District of Delaware (the "**U.S. Trustee**") appointed an official committee of unsecured creditors (the "**Committee**") [Docket No. 51].

4.      On September 20 2023, the Court entered a Final Order Authorizing Debtors to (A) Continued to Operate Their Cash Management System, and (B) Maintain Existing Bank Accounts and Business Forms and Honor Certain Prepetition Obligations Related Thereto; (II) Authorizing the Debtors to (A) Continue to Perform Intercompany Transactions and (B) Granting Administrative Expense Status for Post-petition Intercompany Claims; (III) Extending the Time for the Debtors to Comply with Requirements Set Forth in 11 U.S.C. § 345(b); and (IV) Granting Related Relief ([Docket No. 170], the "**Cash Management Order**").

5.      The Cash Management Order provides that Debtors are authorized to perform their obligations under the documents and agreements governing the Debtors' bank accounts, subject to the terms thereof.  Cash Management Order, ¶ 4.  The Cash Management Order further provides that the existing deposit agreements shall continue to govern the Debtors and their banks post-petition and that the applicable fee provisions shall remain in full force and effect. Cash Management Order, ¶ 12.

6.      Pursuant to that certain Treasury Services Agreement executed on or about January 18, 2022 (the "**Treasury Services Agreement**"), between Debtor Prime Trust, LLC and BMO, Debtor Prime Trust, LLC is required to indemnify BMO for all costs and expenses, including reasonable attorneys' fees and expenses, resulting from BMO's performance of treasury management services. *See* Declaration of Adam Tarr ("**Tarr Decl**."), attached hereto as **Exhibit A**, Ex. 1, ¶ 8.

7.      Further, pursuant to that certain Commercial Account Agreement (the "**Commercial Account Agreement**" and together with the Treasury Services Agreement, the "**Account Documents**") governing the Debtors' accounts, the Debtors have agreed to pay BMO's fees and expenses, including reasonable attorneys' fees, in responding to any legal process relating to the Debtors.  *See* Ex. 2 to Tarr Decl., ¶ 37.

8.      In both the Treasury Services Agreement and the Commercial Account Agreement, the Debtors also grant BMO a first-priority security interest in all of the Debtors' accounts to secure payment of all obligations owed to BMO, inclusive of BMO's professional fees.  *See* Tarr Decl., Ex. 1, ¶ 3, Ex. 2, ¶ 36.

### The Administrative Priority Claim

9.      On October 20, 2023, BMO filed a proof of claim, together with the attached supporting invoices, in Case No. 23-11162 (the "**Administrative Proof of Claim**"), asserting an administrative claim in a total amount $17,794.98.   *See* Tarr Decl., Ex. 3.

10.      The Administrative Proof of Claim identifies a claim of $17,794.98 as entitled to administrative priority for services provided to the Debtors during the pendency of these chapter 11 cases.   Specifically, following the Petition Date, BMO provided cash management services, which allowed the Debtors to continue operating its business in the ordinary course.   BMO's ability to continue providing cash management and banking services to the Debtors following the filing of the Debtors' petition necessitated the retention of counsel to, among other items, review and negotiate the Cash Management Order, and advise BMO as to the appropriate use of the Debtors' treasury management services following the filing of the petition.   The Account Documents contemplate Debtors' payment of BMO's professionals pursuant to their terms.   *See* Tarr Decl., Ex. 1-3, ¶¶ 4-5. The Cash Management Order confirms that Debtors are to continue to abide by the terms of the Account Documents and therefor permits the payment of such expenses.

11.      Thus, the $17,794.98 outstanding should be allowed as an administrative claim under section 507(a)(2) of the Bankruptcy Code for services provided in the ordinary course of the Debtors' business and provided following the Petition Date.

### REQUESTED RELIEF

12.      BMO seeks entry of an order, substantially in the form attached hereto as **Exhibit B**, granting BMO an allowed administrative priority claim under section 503(b)(1)(a) and (b)(4) of the Bankruptcy Code in the amount of $17,794.98 for the full value of the attorneys' fees

incurred by BMO in relation to the cash management services provided to the Debtors following the Petition Date.

## BASIS FOR REQUESTED RELIEF

13.     Section 503 of the Bankruptcy Code provides that, after notice and a hearing, there shall be allowed administrative expenses, including the "actual, necessary costs and expenses of preserving the estate."  11 U.S.C. § 503(b)(1)(A).  An "actual or necessary cost" is one that has conferred a benefit upon the bankruptcy estate and was necessary to preserve the value of the estate assets.  *Calpine Corp. v. O'Brien Envtl. Energy, Inc*. (*In re O'Brien Envtl. Energy, Inc.*), 181 F.3d 527, 533 (3d Cir. 1999); *Matter of H.L.S. Energy Co.*, 151 F.3d 434, 437 (5th Cir. 1998) ("The 'benefit' requirement has no independent basis in the Code, however, but is merely a way of testing whether a particular expense was truly 'necessary' to the estate"); *see also* 4 COLLIER ON BANKRUPTCY ¶ 503.06[1] (Richard Levin & Henry J. Sommer eds., 16th ed.).

14.     "To be eligible for administrative expense priority, a post-petition transaction need not involve the exchange of money or formation of a contract. . .  Indeed, a claimant's performance of a pre-petition contract, and a debtor's acceptance of that performance, can establish a post-petition transaction."  *In re Goody's Family Clothing, Inc.*, 401 B.R. 656, 671 (D. Del. 2009) *aff'd sub nom.* 610 F.3d 812 (3d Cir. 2010).  Thus, the term "benefit" "is not restricted to goods or services that lead to a direct economic enhancement of the estate" but can also cover less concrete benefits such as the ability to continue to conduct business as usual.  *See In re Texas Pellets, Inc*., 2017 WL 6508974, at *2 (Bankr. E.D. Tex. Dec. 19, 2017) (citing *Matter of H.L.S. Energy*, 151 F.3d at 438); *see also Matter of TransAm. Natural Gas Corp.*, 978 F.2d 1409, 1420 (5th Cir. 1992) (allowing administrative expense claim where debtor received "other less readily calculable benefits, such as the ability to continue to conduct business as usual") (internal citation omitted).

15.     Determining whether a creditor has an administrative claim is a two-prong test. First, the claimant must show either that the debtor-in-possession incurred the transaction on which the claim is based, or that the claimant furnished the consideration to the debtor- in-possession. Second, it must show that the transaction resulted in a direct benefit to the debtor-in-possession. *In re Harnischfeger Indus., Inc.,* 293 B.R. 650, 659 (Bankr. D. Del. 2003); *see also In re O'Brien Envtl. Energy, Inc.,* 181 F.3d at 532-33.

16.     Debtors should be required to pay the post-petition invoices for services provided by BMO and its professionals following the Petition Date.

17.     As set forth in the Cash Management Motion, Debtor specifically sought BMO's services and those services provided benefits to Debtors.

18.     BMO's post-petition services preserved the value of Debtors' estate by ensuring the Debtors' continued operations were able to continue uninterrupted. The provision of such services by BMO necessitated the retention of legal professionals, for which the Debtors are obligated to pay pursuant to the terms of the Account Documents.

19.     Accordingly, BMO is entitled to an administrative expense claim in the total amount of $17,794.98, as these are costs and expenses that are "actual" and "necessary" to "preserving the estate" and arise out of post-petition transactions.

20.     BMO is further entitled to an administrative expense claim under 11 U.S.C. § 503(b)(4), as it incurred reasonable professional fees in providing a substantial contribution to this case. 11 U.S.C. § 503(b)(4); 11 U.S.C. § 503(b)(3)(d).

21.     In determining whether a creditor has provided a substantial contribution to the chapter 11 proceeding, the court can consider the following factors: "1) whether the services were rendered solely to benefit the client or to benefit all parties in the case; 2) whether the services

provided direct, significant and demonstrable benefit to the estate; and, 3) whether the services were duplicative of services rendered by attorneys for the committee, the committees themselves, or the debtor and its attorneys." *Matter of Buckhead Am. Corp.,* 161 B.R. 11, 15 (Bankr. D. Del. 1993).

22.     Here, in providing treasury management services which allowed the Debtors to continue to maintain their existing bank accounts and cash management systems, BMO ensured the Debtors' continued operations for the benefit of all stakeholders.  Given the nature of the Debtors' business, the services provided by BMO in maintaining the Debtors' banking systems were integral to their ability to operate their business and satisfy their customer obligations. Further, the provision of cash management services clearly provides a "tangible, clearly demonstrable benefits to the estate" satisfying the second prong of the test.  *See In re M&G USA Corp.*, 599 B.R. 256, 262 (Bankr. D. Del. 2019) citing 5 Collier on Bankruptcy, ¶ 503.10[a] (Alan N. Resnick & Henry J. Sommer eds., 15th ed. 2015) (collecting cases).  Finally, the services provided by BMO and its professionals as treasury services provider were not duplicative of services provided by the Debtors/Debtors' counsel, the Committee/Committee counsel or other parties/stakeholders involved in this proceeding.

23.     Accordingly, BMO has established its entitlement to an administrative expense claim under 11 U.S.C. § 503(b)(4).

24.     BMO further reserves its rights and intends to pursue reimbursement for any fees incurred in connection with the filing of this motion and BMO's claim, along with any further accruing fees that may be incurred pursuant to the terms of the applicable Account Documents.

## **CONCLUSION**

**WHEREFORE**, BMO respectfully requests entry of an order, substantially in the form attached hereto as **Exhibit B**, (i) granting BMO an allowed administrative claim with respect to the services provided to Debtor in the amount of no less than $17,794.98; (ii) directing the payment of the administrative expense claim; and (iii) granting such other and further relief as the Court deems just and proper.

Date: October 22, 2023                              Respectfully submitted,

                                                    GELLERT SCALI BUSENKELL &
                                                    BROWN, LLC

                              By:      */s/ Ronald S. Gellert*
                                       Ronald S. Gellert (DE 4259)
                                       1201 North Orange Street, Suite 300
                                       Wilmington, DE 19801
                                       Telephone: (302) 425-5806
                                       Facsimile:   (302) 425-5814
                                       rgellert@gsbblaw.com

                                       and

                                       CHAPMAN AND CUTLER LLP
                                       Mia D. D'Andrea (admitted pro hac vice)
                                       320 S. Canal Street
                                       Chicago, IL 60606
                                       Telephone: (312) 845-3766
                                       Facsimile:  (312) 516-1466
                                       dandrea@chapman.com

                                       *Counsel for BMO Bank N.A.*