**Exhibit B**

**IN THE UNITED STATES BANKRUPTCY COURT**
**FOR THE DISTRICT OF DELAWARE**

| | |
|---|---|
| In re:<br><br>Prime Core Technologies Inc., *et al.*,<br><br>Debtors.[1] | Chapter 11<br><br>Case No. 23-11161 (JKS)<br><br>(Jointly Administered)<br><br>**Re: Docket Nos. 325 & 374** |

**DEBTORS' REPLY IN SUPPORT OF DEBTORS' MOTION FOR ENTRY OF AN ORDER DIRECTING WITNESS TO (I) SIT FOR A RULE 2004 EXAMINATION, (II) PRODUCE DOCUMENTS, AND (III) PROVIDE SWORN INTERROGATORY RESPONSES IN RESPONSE TO RULE 2004 REQUESTS**

Prime Core Technologies Inc. and certain of its affiliates and subsidiaries, as debtors and debtors in possession in the above-captioned chapter 11 cases (collectively, the "Debtors" or the "Company"), hereby submit this reply (this "Reply"), pursuant to section 105(a) of title 11 of the United States Code (the "Bankruptcy Code") and Rule 9006-1(d) of the Local Rules of Bankruptcy Practice and Procedure of the United States Bankruptcy Court for the District of Delaware (the "Local Rules"), in further support of the *Debtors' Motion for Entry of an Order Directing Witness to (I) Sit for a Rule 2004 Examination, (II) Produce Documents, and (III) Provide Sworn Interrogatory Responses in Response to Rule 2004 Requests* [Docket No. 325] (the "2004 Motion") and in response to *Opposition to Debtor's Motion for Entry of an Order Directing Witness to (I) Sit for a Rule 2004 Examination, (II) Produce Documents, and (III) Provide Sworn Interrgatory Responses in Response to Rule 2004 Requests* [Docket No. 374] ("Party 1's

---

[1] The Debtors in these chapter 11 cases, along with the last four digits of each Debtor's federal tax identification number are: Prime Core Technologies Inc. (5317); Prime Trust, LLC (6823); Prime IRA LLC (8436); and Prime Digital, LLC (4528). The Debtors' service address is 10845 Griffith Peak Drive, #03-153, Las Vegas, NV 89135.

1

Objections"). In support of this Reply, Debtors, by and through undersigned counsel, respectfully state as follows:

## PRELIMINARY STATEMENT

1. Party 1[2] was the Chief Technology Officer of Prime Trust until February of 2021. Debtors' internal records reflect that he was intimately involved in the decision-making to provide customer deposit digital addresses which led to the depositing of tens of millions of dollars of currently inaccessible Ethereum into the digital wallet known as the "98f Wallet."[3] It appears that Party 1 was also tasked with the "recycling" of the use of these deposit digital addresses. Now, Party 1 refuses to provide answers to basic interrogatory requests such as "Identify Seed Phrases Concerning 98f" and "Identify the individuals and entities who are in possession of Hardware Devices."[4] The discovery sought in the 2004 Motion is well within the ambit of Rule 2004 of the Federal Rule of Bankruptcy Procedure and relates to one of the most important goals of the Chapter 11 Cases—to investigate and recover access to the 98f Wallet. Party 1 filed a week-late opposition which provides no legitimate basis to deny Debtors the opportunity to conduct a 2004 examination.

2. After making multiple threats that a motion for sanctions would be filed if Debtors filed a 2004 motion (Evans Declaration, Ex. 3), Party 1 made the following offer: "My client will answer a series of requests for admission, ***under oath***, that he never had possession of the seed phrase for 98f, never knew who did, and doesn't know when the seed phrase/key was generated, who generate[d] it or how it was generated, ***nor any documents about the same***. In exchange,

---

[2] The identity of Party 1 has previously been disclosed under seal at Docket No. 326. The names of other individuals identified anonymously in this Reply as Parties 8, 9 and 10 are contained in Exhibit 1 to this Reply, a redacted version of which is attached hereto. An unredacted version of Exhibit 1 is being filed separately under seal.

[3] Capitalized terms not otherwise defined herein shall have the meanings ascribed to such terms in the 2004 Motion.

[4] 98f is a "multi-signature (multi-sig)" wallet that holds cryptocurrency. "Seed phrases" are lists of 12 or 24 words one can use to access one of the "signers" for 98f. The "hardware devices" are physical items which permit a user to access one of the "signers" for 98f.

2

there will be no other forms of discovery. No requests for production of documents. No 2004 examination. No deposition." (Evans Declaration, Ex. 1.) Party 1's opposition falsely states that Debtors did not respond to this offer. (Party 1's Objection ¶ 8.) In reality, Debtors immediately rejected this offer in writing. (Evans Declaration, Ex. 1.) This offer was unacceptable because Debtors need to maintain the ability to test in a deposition any sworn statement by Party 1 that he "never knew" anything about 98f and does not have "any documents about the same." This is primarily because Debtors are in possession of documents indicating that Party 1 has knowledge concerning 98f and is in possession of relevant information. (Evans Declaration ¶ 9.) This includes: (a) text messages produced by another former executive containing communications with Party 1 which are directly responsive to multiple 2004 Requests and concern the 98f investigation; (b) a sworn interrogatory from another former executive that Party 1 "had access to Prime Wallets, participated in wallet management, executed transactions, or would otherwise have knowledge concerning how to access Prime Wallets"; and (c) contemporaneous internal Debtor emails reflecting that Party 1 has intimate knowledge of key issues concerning the 98f investigation. (Evans Declaration ¶ 9.)

3. Party 1 also waived his right to object to the issuance of the subpoenas sought by the 2004 Motion. The 2004 Motion was filed on October 20, 2023, and objections were due October 26, 2023. "An objection, if any, to the Motion must be in writing, filed with the Court and served upon undersigned counsel to Debtors on or before 4:00 p.m. (ET) on October 26, 2023." [Docket No. 327.] October 26, 2023 came and went with no filing by Party 1. On November 2, 2023, Party 1 filed his objection without also filing any motion or request for late filing. [Docket No. 374.] It should be rejected as untimely.

3

4. On November 2, 2023, Party 1 filed the *Declaration of Kathryn S. Diemer, Esq. In Support of Opposition to Debtor's Motion for Entry of an Order Directing Witness to (I) Sit for a Rule 2004 Examination, (II) Produce Documents, and (III) Provide Sworn Interrgatory Responses in Response to Rule 2004 Requests* [Docket No. 376] ("Diemer Declaration"), which revealed highly confidential, non-public information on the public docket. The Diemer Declaration and exhibits contained transparent marker redactions. [Docket No. 376] As a result, the full digital address of 98f and names of current and former employees were publicly filed, which was in violation of the *Amended Order (I) Authorizing Debtors to File a Consolidated Creditor Matrix and Top 50 Creditors List; (II) Authorizing Redaction of Certain Personally Identifiable Information; (III) Authorizing the Debtors to Serve Certain Parties by Electronic Mail; (IV) Approving Certain Notice Procedures; and (V) Granting Related Relief* [Docket No. 189]. Party 1 filed a *Notice of Withdrawal* [Docket No. 379] and re-filed the Diemer Declaration [Docket No. 382].[5]

5. Party 1's Objections and the Diemer Declaration contain inaccurate statements. Contrary to counsel's contentions, Party 1 was aware that Debtors were filing a 2004 Motion well before October 22, 2023 (*contra* Diemer Declaration ¶ 10). During an October 4, 2023 meet-and-confer, Debtors' counsel informed Party 1's counsel that they intended to file a 2004 Motion. On October 17, 2023, in response to Party 1's offer, counsel for Debtors immediately sent an email rejecting it and informing Party 1 that it would be filing a 2004 motion.[6] (*Declaration of Joseph B. Evans, Esq. in Support of Debtors' Reply in Support of Debtors' Motion for Entry of an Order*

---

[5] As the Court is no doubt aware, withdrawing the document does not remove it from the public docket. As a result, Debtors' counsel undertook its own efforts to restrict the document. Unfortunately, Counsel for Party 1 filed afterhours, which left the unredacted document available in the public domain overnight.

[6] Exhibit 6 of the Diemer Declaration contains this email from Debtors' counsel, dated October 17, 2023, but cuts off the earlier in time email from Ms. Diemer that preceded it.

*Directing Witness to (I) Sit for a Rule 2004 Examination, (II) Produce Documents, and (III) Provide Sworn Interrogatory Responses in Response to Rule 2004 Requests* (the "<u>Evans Declaration</u>"), Ex. 1). Accordingly, the statement in Party 1's Objections that "Debtors ignored the offer [of Party 1]" is wrong. (Party 1's Objection ¶ 23.)

6. The Diemer Declaration states "Debtor refused to cooperate in extending the time to respond" to the 2004 Motion. (Party 1's Objection ¶ 8.) This is also not true. On October 26, 2023, Debtors agreed in writing to seek to extend the hearing date as long as counsel for Party 1 agreed to shorten the compliance dates should an order granting the 2004 Motion be issued. (Evans Declaration, Ex. 2.) Party 1 never responded.

7. The 2004 Requests served on Party 1 are narrowly tailored to critical issues related to the 98f investigation. They are limited by subject matter and only seek discovery within Party 1's possession, custody, or control. (*See* Instruction No. 3 to the 2004 Requests, Docket No. 325-2.) They also only seek discovery from the date of Party 1's employment with the Company to the present. (*See* Instruction No. 14 to the 2004 Requests, Docket No. 325-2.) The 2004 Requests also contain nine interrogatories which are squarely aimed at discovering whether Party 1 has in his possession information that could lead to accessing 98f. (*See* Interrogatories to the 2004 Requests, Docket No. 325-2.) There is no reason in fact or law to deprive Debtors the opportunity to examine a witness who clearly has access to relevant information covered by Rule 2004. Accordingly, the Rule 2004 Motion should be granted in every respect.

**<u>DEBTORS CONTINUOUSLY SOUGHT VOLUNTARY COMPLIANCE</u>**

8. Debtors provided Party 1 with the 2004 Requests on August 18, 2023. Since that time, Debtors have been seeking voluntary compliance.

5

9. Party 1 contends that "[n]othing in the letter which Mr. Evans sent to [Party 1] in any way indicated that the 2004 examination and the accompanying subpoena were voluntary, and not court ordered" is inaccurate. (Party 1's Objections ¶ 2.) In the cover letter that was annexed to the 2004 Requests, Debtors explicitly state "We are seeking your *voluntary* cooperation." (Diemer Declaration, Ex. 1) (emphasis added). Debtors also state the following in that cover letter: "[u]nder the Local Rules for the United States Bankruptcy Court for the District of Delaware, 'a motion under Fed. R. Bankr. P. 2004 is not required if the proposed examinee agrees to *voluntarily* appear or produce documents." *See* Del. Bankr. L.R. 2004-1(c); *see also* Del. Bankr. L.R. 2004-1(e) ('*consensual discovery* can be conducted by agreement and not under the provisions of Fed. R. Bankr. P. 2004 or this Local Rule, as applicable') (emphasis added)."[7]

10. Meet-and-confers with Debtors' counsel have been occurring since August 2023. The Diemer Declaration leaves out critical emails in which Debtors' counsel offered to resolve matters, made reasonable timing accommodations, and responded to the multiple threats by counsel for Party 1 that motions for sanctions would be filed against Debtors. (Evans Declaration, Exs. 1–4.)

11. Debtors' 2004 Motion should have not been a surprise to Party 1. Debtors' counsel informed counsel for Party 1 that they intended to file a 2004 Motion during the parties' meet-and-confer on October 4, 2023. Similarly, Debtors stated via email on October 17, 2023 that it would be filing a 2004 Motion. (Evans Declaration, Ex. 1).

---

[7] As indicated in the 2004 Motion, Debtors served Party 1 with 2004 Requests that were styled as subpoenas substantially in the form of Exhibit B annexed to the 2004 Motion. [Docket No. 325-2]. The primary difference between Exhibit B of the 2004 Motion [Docket No. 325-2] and Exhibit 2 of the Diemer Declaration [Docket No. 382-2] is that Exhibit B does not use the prior Definition No. 18, which grouped former employees under one category as opposed to listing them out individually in the request.

12. In describing the 2004 Motion, counsel for Party 1 states that "Debtors refused to cooperate in extending the time to respond." (Party 1's Objection ¶ 6.) Counsel for Party 1 fails to mention that Debtors had agreed to extend the 2004 Motion hearing date if Party 1 agreed to shorten the compliance deadlines in the Proposed Order and that counsel for Party 1 failed to respond to Debtors' offer. (Evans Declaration, Ex. 2 (stating that Debtors "are willing to push back the hearing date for the 2004 Motion until November 14 as long as you are in agreement that we can change the compliance dates in the Proposed Order to the 2004 Motion…This will avoid prejudice to Debtors of having to wait an additional week for the hearing and discovery compliance").

13. Unfortunately, despite reasonable efforts to obtain voluntary compliance, Party 1 has refused.

## RULE 2004 PERMITS THE PRODUCTION OF WRITTEN DISCOVERY AND DOCUMENTS BY THIRD PARTIES

14. This Court and others around the country have issued orders authorizing the production of written discovery and documents by third parties pursuant to Rule 2004.

15. Courts have interpreted the text of Rule 2004 liberally, explaining that "[u]nlike traditional discovery, which narrowly focuses on the issues germane to the dispute, the scope of Rule 2004 is broad and unfettered, and has been likened to a fishing expedition and an inquisition." *In re Millennium Lab Holdings II, LLC*, 562 B.R. 614, 626 (Bankr. D. Del. 2016) (internal quotations and citations omitted).

16. Here, in an effort to seek relevant information about assets of the estate, 98f, and the Wallet Event in a cost-efficient and expedient manner from numerous witnesses, Debtors have been seeking the production of written discovery in the form of interrogatories and documents as the first phase of Rule 2004 discovery efforts. Practice commentaries have recognized that

interrogatories and document productions sought under Rule 2004 are permissible, commenting that "[a]lthough usually employed to schedule depositions, there is no logical reason why interrogatories or document demands could not be propounded under Rule 2004 as well." New York Practice Series, Commercial Litigation in New York State Courts § 60:34. (4th ed. 2023).

17. The unique issues present in these Chapter 11 Cases, particularly the Wallet Event (as defined in the *Declaration of Jor Law, Interim Chief Executive Officer and President of Prime Core Technologies Inc., et al., In Support of Chapter 11 Petitions and First Day Motions* [Docket No. 14] (the "First Day Declaration"), make interrogatories a particularly helpful discovery device. They are a quick and effective way for Debtors to obtain critical information that could lead to the recovery of millions of dollars for the estate, such as the discovery of seed phrases and the names of individuals who have information relevant to the 98f investigation and the Wallet Event. Debtors have sought nine basic and obviously relevant interrogatories, including "Identify Seed Phrases Concerning 98f," "Identify the individuals or entities who are in possession of Seed Phrases," and "Identify all individuals who may have information about Hardware Devices used to provide access to 98f." (2004 Motion, Ex. B, Interrogatories 1, 3, 5)

18. The bankruptcy court is a court of equity. *See Local Loan Co. v. Hunt,* 292 U.S. 234, 240 (1934). The court has broad discretion to fashion appropriate Rule 2004 orders. *See In re Millennium Lab Holdings II, LLC*, 562 B.R. at 626. This Court has entered similar orders for other witnesses in this case, albeit those were unopposed. *Order Directing Certain Individuals to (I) Sit for a Rule 2004 Examination, (II) Produce Documents, and (III) Provide Sworn Interrogatory Responses in Response to Rule 2004 Requests* [No. 318].

19. Counsel for Party 1 cites seven cases in support of Party 1's contention that Rule 2004 does not permit written discovery. (Party 1's Objections ¶ 9.) None of them are cases issued

by a bankruptcy court nor do they deal with discovery pursuant to Rule 2004. *See, e.g., SEC v. Desai*, 672 Fed. Appx. 201 (3d Cir. 2016) (appeal from orders in a civil case brought against individual by the Securities and Exchange Commission); *Russe v. United States*, 2022 WL 4137837 (W.D.N.C. Sept. 12, 2022) (Western District of North Carolina action involving a motion to compel responses to special interrogatories served on defendant's expert witnesses); *Taggart v. Wells Fargo Home Mortgage, Inc.*, 2012 WL 4462633 (E.D. Pa. Sept. 27, 2012) (Eastern District of Pennsylvania mortgage foreclosure case); *Arugu v. City of Plantation*, 2010 WL 11520178 (S.D. Fla. June 21, 2010) (Southern District of Florida action involving a motion for leave to propound in excess of twenty-five interrogatories on defendants seeking information that plaintiff believes was insufficiently addressed in defendants expert witness's report); *Lehman v. Kornblau*, 206 F.R.D. 345 (E.D.N.Y. 2001) (Eastern District of New York action brought by pro se plaintiff alleging that county officials and federal Postal Inspection Service officials conspired to maliciously prosecute him for insurance fraud); *Chiquita Fresh North America v. Long Island Banana Corp.*, 2018 WL 4853049 (E.D.N.Y. Sept. 28, 2018) (Eastern District of New York action involving allegations that plaintiff was not paid for wholesale quantities of produce sold and delivered to defendants); *Krishanthi v. Rajaratnam*, 2023 WL 5605565 (D.N.J. Aug. 30, 2023) (District of New Jersey action involving allegations that Defendants, through charitable contributions to United States-based relief organizations, financed a known terrorist organization in Sri Lanka).

20. Debtors cited several cases in which bankruptcy courts have exercised their discretion to authorize written discovery and interrogatories as a form of Rule 2004 discovery. *See, e.g., In re Lowe*, No. 22-31438, 2023 WL 2482730, at *1 (Bankr. N.D. Ohio Mar. 13, 2023) ("The Order granting the motion for Rule 2004 Examination provides that it will initially be conducted through

interrogatories and document production, with the possibility of a later oral examination and third-party subpoenas. The interrogatories and the list of documents to be produced pursuant to the order are attached as Exhibit A to the Rule 2004 exam motion."); *In re: Abeinsa Holding Inc., et al.*, No. 16-10790, Dkt. 711 (Bankr. D. Del. Oct. 25, 2016) (ordering examinees to "provide responses to the Interrogatories set forth in…the Discovery Request" pursuant to Rule 2004); *see also In re Discovery Zone, Inc.*, No. 99-941, 2001 WL 1819994, at *1 (Bankr. D. Del. Sept. 14, 2001) (suggesting that a party "seek a Rule 2004 order which will allow it to propose interrogatories"). Counsel for Party 1 contends that these decisions are distinguishable because they do not involve independent third-party witnesses. (Party 1's Objections ¶¶11–14.) Not so. Rule 2004 does not distinguish between party and non-party status nor does it distinguish between witnesses who have filed a claim in the case versus those who have not. Rule 2004 states "on motion of any party in interest, the court may order the examination of any entity." Fed. R. Bankr. P. 2004(a) (emphasis added).

20. Counsel for Party 1 also complains that Debtors are seeking documents and interrogatories prior to a deposition. Producing documents at the same date and time as the commencement of the deposition would not be efficient for anyone and could result in Debtors needing to seek additional depositions concerning the documents provided. The Court frequently enters orders requiring the production of documents prior to Rule 2004 examinations. *See, e.g.*, *In re: Woodbridge Group of Companies*, No. 17-12560, Dkt. Nos. 1264 & 1663 (Bankr. D. Del. Apr. 27, 2018) (ordering document production first and witness depositions to follow); *In re Corp Group Bankings S.A.*, No. 21-10969, Dkt. 301 (Bankr. D. Del. Oct. 22, 2021) (same); *In re: Secure Home Holdings LLC*, No. 21-10745, Dkt. 164 (Bankr. D. Del. May 25, 2021) (ordering document production within ten days and allowing Debtors to schedule oral examination at a later date as

may be mutually agreed upon by the parties); *In re: Celsius Network LLC*, No. 22-10964, Dkt. 3091 (Bankr. S.D.N.Y. July 26, 2023) (ordering document production and reserving Debtors' rights to "request depositions and any additional documents under Bankruptcy Rule 2004 based on any other information that may be revealed as a result of the documents provided"); *In re: Celsius Network LLC*, No. 22-10964, Dkt. 3449 (Bankr. S.D.N.Y. Sept. 12, 2023) (same); *In re: The Roman Catholic Diocese of Albany*, No. 23-10244, Dkt. 512 (Bankr. N.D.N.Y. Oct. 2, 2023) (same).

**THE DISCOVERY SOUGHT IN THE 2004 REQUESTS IS NARROWLY TAILORED**

21.     The 2004 Requests are narrowly tailored and seek information solely in the possession of Party 1. The information sought is plainly covered by Rule 2004 and is all directed towards discovering information concerning 98f.

22.     Instruction No. 3 of the 2004 Requests makes it clear that Debtors are seeking responsive documents "in [Party 1's] possession, custody, or control." [Docket No. 325-2.] In other words, Debtors are only seeking documents, such as e-mails, text messages, photos, hard copy documents, etc., that are responsive to the 2004 Requests which are still in Party 1's possession.

23.     Instruction No. 14 of the 2004 Requests makes it clear that the 2004 Requests are seeking documents "dated, created, or otherwise obtained on or between [Party 1's] employment with the Prime Entities to the present"—not during any point in time as counsel for Party 1 contends. [Docket No. 325-2.]

24.     Counsel for Party 1 complains about Requests 13 and 14 contending that Party 1 has "known [Party 8] since they were children", he "was social friends with [Party 8] prior to working at Prime Core," and he "remains friends with [Party 8], [Party 9], and [Party 10] since he

left Prime Core in 2021." (Party 1's Objections ¶ 26.) Counsel for Party 1 contends that "Requests 13 and 14 can be construed to be any communication with these gentlemen" and that "[g]iven their friendship, it is outrageous to ask for any and all forms of communication, over the entire life of their relationship." (*Id.*) Requests 13 and 14 explicitly state that they only seek communications with these individuals "concerning the Prime Entities" (Request No. 13) and "concerning the Prime Entities since You ceased to be employed by the Prime Entities" (Request No. 14.) [Docket No. 325-2.]

25. Debtors are not asking Party 1 to produce information that is publicly available as counsel for Party 1 suggests. Rather, Debtors are seeking information that is *in the possession, custody, or control* of Party 1. (*See* Instruction No. 3 of the 2004 Requests, Docket No. 325-2.) For example, Interrogatory No. 4 seeks "All Seed Phrases in [Party 1's] possession concerning Prime Wallets." [Docket No. 325-2.] This is not burdensome to answer. Party 1 either has a seed phrase in his possession or he does not.

26. Counsel for Party 1 objects to Requests 20, 21, 22, and 23 as seeking information that is publicly available. (Party 1's Objections ¶ 27.) However, Debtors are not requesting that Party 1 produce publicly available information about the Cease-and-Desist Order issued by the Nevada Financial Institutions Division, the Petition for an Appointment of Receivership issued by the Nevada Financial Institutions Division, the Order to Show Cause issued by Judge Susan Johnson, or the Chapter 11 Bankruptcy filing by the Prime Entities. Rather, Debtors are seeking documents, e-mails, text messages, and other communications in his possession concerning these events.

## GOOD CAUSE EXISTS FOR THE 2004 EXAMINATION OF PARTY 1

27. The text of Rule 2004 establishes that "[o]n motion of any party in interest, the

court may order the examination of *any entity*." Fed. R. Bankr. P. 2004(a) (emphasis added). Where applicable, "the Court may authorize the examination of third parties that possess knowledge of the debtor's acts, conduct, liabilities or financial condition which relate to the administration of the bankruptcy estate." *In re E. W. Resort Dev. V*, No. 10-10452, 2014 WL 4537500, at *7 (Bankr. D. Del. Sept. 12, 2014) (Internal citations and quotations omitted).

28. Debtors have good cause for requesting a Rule 2004 Examination of Party 1. The Topics of Examination seek discovery from Party 1 that is narrow in scope and time as well as limited to information solely in Party 1's possession, custody, or control about the "debtor's acts, conduct, liabilities or financial condition which relate to the administration of the bankruptcy estate," including 98f. *See In re E. W. Resort Dev. V*, 2014 WL 4537500, at *7. Without the information requested and an opportunity to depose Party 1 regarding information that is solely in his possession, custody, or control, Debtors will suffer undue injustice.

29. Party 1 seeks to avoid having to sit for a 2004 Examination based on his "offer[] to provide a sworn written statement that he does not have any information about the 98f issue." (Party 1's Objections ¶ 30.) However, this offer is unacceptable because other recipients of 2004 Requests have already produced text messages with Party 1 in which Party 1 shares information that is directly relevant to the 98f investigation and responsive to multiple of the 2004 Requests. (Evans Declaration ¶ 9.)

## **CONCLUSION**

30. For the foregoing reasons, the Court should grant entry of the Proposed Order attached to the 2004 Motion directing Party 1 to: (I) sit for a Rule 2004 examination, (II) produce documents, and (III) provide sworn interrogatory responses in response to Rule 2004 Requests.

Dated: November 7, 2023
       Wilmington, Delaware

                                  **MCDERMOTT WILL & EMERY LLP**

                                  */s/ Maris J. Kandestin*

                                  Maris J. Kandestin (No. 5294)
                                  1000 N. West Street, Suite 1400
                                  Wilmington, Delaware 19801
                                  Telephone: (302) 485-3900
                                  Facsimile: (302) 351-8711
                                  Email: mkandestin@mwe.com

                                  -and-

                                  Darren Azman (admitted *pro hac vice*)
                                  Joseph B. Evans (admitted *pro hac vice*)
                                  J. Greer Griffith (admitted *pro hac vice*)
                                  One Vanderbilt Avenue
                                  New York, New York 10017
                                  Telephone: (212) 547-5400
                                  Facsimile: (646) 547-5444
                                  Email: dazman@mwe.com
                                            jbevans@mwe.com
                                            ggriffith@mwe.com

                                  -and-

                                  Gregg Steinman (admitted *pro hac vice*)
                                  333 SE 2nd Avenue, Suite 4500
                                  Miami, Florida 33131
                                  Telephone: (305) 358-3500
                                  Facsimile: (305) 347-6500
                                  Email: gsteinman@mwe.com

                                  *Counsel to the Debtors*
                                  *and Debtors in Possession*

**<u>Exhibit 1</u>**

**(Filed Under Seal)**