**EXHIBIT J**

We're here to help.

# Terms and Conditions

This Commercial Account Agreement (the "Agreement") applies to each commercial deposit account established by you with BMO Harris Bank N.A. or BMO Harris Central N.A. previously, at this time, or in the future, except for deposit accounts governed by the Deposit Account Agreement for Personal and Business Accounts. In this Agreement, the terms "you" and "your" refer to the owner(s) of an applicable commercial deposit account (the "Account") and to authorized representatives as appropriate. The terms "us," "we," and "our" refer to BMO Harris Bank N.A. or BMO Harris Central N.A., as applicable. This Agreement replaces any prior agreement between you and us regarding the Account. By signing a signature card, signing corporate account resolutions, or using the Account after the receipt of this Agreement, you accept and agree to all terms and conditions in this Agreement as may be modified by us from time to time. This Agreement incorporates the Funds Availability Policy attached hereto. The Account may be used for business purposes only and not for personal, family, or household purposes of any kind.

1. **Authorization Forms**

   We require separate account authorization forms which designate the person or persons authorized to access the Account and conduct banking business with us and the limitations, if any, on their authority. We will honor such authorization according to its terms until we receive properly authorized written notice that the existing authorization is changed or terminated and we have a reasonable opportunity to act on such notice. We will not be responsible for any losses if you fail to timely and properly notify us of changes in authorization or authorized individuals. You must also promptly notify us in writing of any change in the name of your company or your address.

   If you allow Items to be written and presented before we receive properly completed authorization forms, we may either refuse to pay the Items (even though there are funds in the Account) or elect to pay the Items, in which event you bear sole responsibility for such Items. Regardless of our election, we will not be liable to you with respect to such Items or our handling of the Items.

2. **TIN**

   You must provide us with your Taxpayer Identification Number ("*TIN*"), certify its authenticity, and provide us with other requested identification information before the Account is opened. If we have not received your certified TIN and the other requested information, we may refuse to accept your initial deposit, pay interest on your balances, or permit withdrawals or transfers, and may close the Account. Any interest paid prior to receipt of your certified TIN is subject to back-up withholding under IRS regulations.

3. **USA Patriot Act**

   To help the government fight the funding of terrorism and money laundering activities, Federal law requires all financial institutions to obtain, verify, and record information that identifies each person or business entity which opens an Account.

   When you open an Account with us, you must provide us with your name, principal and local (if different) address, date of establishment, employer identification number, and other information. You must also provide us with your organizational documents when requested. We may also seek identification information about individuals who will have authority over the Account, initially and in the future. You agree that we may seek information about you from third parties to confirm

## Terms and Conditions (Cont'd)

your identity and for other Account related purposes. You represent and warrant to us that the information provided to us by you or on your behalf is true and correct. You understand that we will maintain a record of this information.

4. **Separate Agreements**

   The provisions of this Agreement are in addition to, and not in place of, any separate service or other agreement between us and you covering your use of banking services for the Account. If there is a conflict between the provisions of this Agreement and a separate service or other agreement, the separate service or master agreement controls for that service.

5. **Fees and Charges; Finance Charges**

   You agree to pay fees and other charges in connection with the Account as established by us from time to time. You also agree to pay us our costs and hourly fees for complying with subpoenas or other legal orders and your requests. You authorize us to debit or otherwise deduct the fees and other charges, and costs from the Account, even if it creates an overdraft. We may assess finance charges on any amount due us under this Agreement that is not paid by you within thirty (30) days of receipt of your statement or an invoice showing the amount due.

6. **Deposits**

   Deposits made before the applicable cut-off time on a Business Day are considered made on the day of your deposit. Deposits made after the applicable cut-off time or on a day which is not a Business Day, are considered made on the next Business Day. All transactions including deposits (even those for which we have provided a receipt) are subject to final verification by us. The amount we credit you for a deposit, regardless of our Funds Availability Policy, is provisional and subject to verification and reversal or adjustment at any time without notice to you if we determine it to be incorrect for any reason. You agree that we may make adjustments to the Account to reflect the correction of errors at any time.

   We reserve the right to (i) refuse to accept deposits or specific Items for deposit; (ii) establish or modify a minimum or maximum balance that may be maintained in the Account; and (iii) limit the number of deposits and Items deposited. We will not be liable to you even if such action causes Items to be dishonored and returned.

   We will rely on the account number in a deposit record even if it identifies a party different from the entity named in the record. We are not obligated to identify any inconsistency in identification.

   We may from time to time make available night deposit boxes at one or more of our branch locations. Deposits made at a night deposit box will be retrieved and verified by us once at the beginning of each Business Day. Therefore, if you use a night deposit box during the day, the deposit will not be considered received by us until the next Business Day when we retrieve it and process it. You agree that risk of loss of any deposit to a night deposit box does not pass to us until after we have retrieved it and processed it. Our records as to the amount of any deposit to a night deposit box shall be final and binding, and shall be conclusive evidence of the amount of the deposit. The risk of any loss or shortage is expressly assumed by you.

7. **Returned or Fraudulent Items**

   We have the right to charge the Account for the amount of any deposited Item that is returned to us for any reason unpaid, or paid and later returned, or is the subject of a breach of warranty claim, or we have reason to suspect is fraudulent, counterfeit, or invalid for any reason (and reverse or recover any associated interest or earnings credit), even if you have withdrawn any of the funds or an overdraft in the Account is created or increased. This right to charge the Account is not affected by expiration of any applicable midnight deadline. We may also impose a service charge. We may, in our discretion present an unpaid Item for payment again without notice to you. You agree to immediately repay any overdraft

## Terms and Conditions (Cont'd)

caused by any such charge to the Account.

8. **Acts and Omissions of Other Banks**

If you cash or deposit an Item with us, we act as your collecting agent to collect the Item. We will use reasonable care in selecting collection banks, but we are not responsible for errors they make including loss of Items in transit. You have the risk of loss for Items lost, mishandled or destroyed in the collection process. We may charge back or debit the Account (or any other account of yours with us) for, or otherwise obtain a refund of, the amount of any credit we gave you for the deposited Item, if the Item is lost, or destroyed or returned unpaid. You agree to assist us in collecting lost, destroyed or returned Items. You also understand that we are not responsible for the insolvency or neglect, or any action or failure to act, of any other bank or intermediary in the collection process.

9. **Foreign Currencies**

Except as provided in any multi-currency agreement or arrangement between us, we may accept deposits in the Account of Items payable in foreign currencies which are convertible to U.S. dollars. We will credit the Account when we receive proceeds in U.S. dollars, and you will bear exchange rate exposure until that time. We will convert foreign currencies to U.S. dollars in accordance with our customary practices. You agree that an Item drawn on a financial institution in a foreign country may be accepted on a collection basis even after we have taken physical possession of such Item, in which case the Funds Availability Policy does not apply to such Items. The actual credit for Items payable in foreign currency will be at the exchange rate in effect at the time of final collection in U.S. dollars and will be net of any fees payable in connection with the currency conversion.

10. **Warranties; Remotely Created Checks**

For each Item you deposit with us, or which we cash for you or otherwise give consideration, you make the following warranties to us in addition to any other warranties under applicable law: all necessary signatures and endorsements have been placed on the Item and are authorized and genuine, the Item has not been materially altered, you have good title to the Item, and no defense of any party to the Item is good against you. If any such warranty is breached, we may deduct the amount of the Item from the Account or otherwise collect from you this amount plus our related fees and expenses.

You agree not to deposit a remotely created check (i.e. a check that is not created by the paying bank and that does not bear a signature applied, or purported to be applied, by the person on whose account the check is drawn) into the Account. We reserve the right to reject remotely created checks from any deposit and reduce the amount of the deposit accordingly or post debit adjustments for the value of any remotely created checks. If you nevertheless deposit a remotely created check and we accept such remotely created check for deposit, you warrant and guarantee that the person on whose account the remotely created check is drawn authorized the issuance of the check in the amount stated on the check and to the payee stated on the check. If any such warranty is breached, we may deduct the amount of the Item from the Account or otherwise collect from you this amount plus our related fees and expenses. You agree to maintain, at our request, a balance in a non-interest bearing account with us in the amount we determine based on a percentage of the amount of remotely created checks you deposit and the return history of such deposits. You further agree to maintain such balance in such account for a period of at least ninety (90) days after the date of the last remotely created check deposited prior to closure of the Account to pay us for any amounts due hereunder.

**Terms and Conditions (Cont'd)**

11. **Funds Availability Policy**

    Funds from your deposits will be available for withdrawal as provided in our Funds Availability Policy which is a part of, and included with, this Agreement. The Funds Availability Policy may change from time to time without prior notice to you.

12. **Check Endorsement Requirements**

    Our Funds Availability Policy also describes our check endorsement requirements. You agree to abide by our endorsement requirements and agree that we have no responsibility for your failure to comply with our endorsement requirements. You agree to indemnify us for and defend and hold us harmless from and against any and all actions, losses, damages, claims, demands, liabilities, costs, or expenses, including court costs and reasonable attorneys' fees and expenses (collectively, "*Claims*"), we may suffer as a direct or indirect result of your failure to comply with our endorsement requirements. You understand that we may refuse to accept Items not properly endorsed by you. We may, however, supply a missing endorsement on an Item we accept for deposit or cash.

13. **Funds Transfers**

    The following terms and conditions are in addition to and do not replace any other agreements that we have with you governing electronic transfers.

    (a) *System Rules.* Except to the extent conflicting with this Agreement (in which event this Agreement will control to the extent legally permitted), funds transfers (payment orders and ACH entries) to or from the Account are subject to the rules then in effect for the funds transfer system through which the transfers are made, including, for ACH transactions, the rules of NACHA – The Electronic Payments Association®, and for transfers through the funds transfer system of the Federal Reserve Banks, the applicable laws and regulations of the Board of Governors of the Federal Reserve System and related operating circulars.

    (b) *Credits.* Unless we have otherwise agreed in writing, the periodic statements we provide will notify you of funds transfer payments and credits received by us for credit to the Account. All credits to the Account for funds transfers that we receive are provisional until we receive final settlement for the funds except where otherwise required by applicable law or rule. If we do not receive final settlement, you agree that we are entitled to a refund (through reversal debit or otherwise) of the amount credited to the Account for that transfer, together with any associated interest or credit. We have the right to charge the Account for the amount of any funds transfer credit that we have reason to suspect is fraudulent, erroneous, or invalid for any other reason (and reverse or recover any associated interest or earnings credit), even if you have withdrawn any of the funds or an overdraft in the Account is created or increased. You agree to immediately repay any overdraft caused by any such charge to the Account.

    (c) *Transfers.* You are responsible for the contents of each funds transfer instruction and entry sent to us by you or on your behalf. In the absence of specific written instruction, we will choose the funds transfer system and intermediary banks, as necessary to complete your funds transfer. You acknowledge and agree that we and any bank or intermediary are entitled to rely on the account number and bank identification number which appear on any payment order issued by you or on your behalf, without any obligation to look at the name of the receiving customer or bank which may also appear on the payment order.

    (d) *ACH.* You authorize us to debit or credit the Account for ACH entries to or from the Account. ACH entries must be transmitted to us in accordance with the applicable rules and our policies and procedures. You are responsible for all entries authorized by you and entries transmitted to, and accepted by, us in accordance with the ACH procedures, including the security procedures.

## Terms and Conditions (Cont'd)

**14. Dates and Instructions**

You agree not to issue or present incomplete, post-dated or conditional Items. You agree that we may, without inquiry or liability, accept or pay an Item drawn on the Account even though (a) it is received prior to the date of the Item or contrary to special instructions identified on the Item (whether or not we are aware of such date or special instructions), or (b) the Item is undated or the date on the Item is more than six months old. If you do not want us to honor an Item, you must give us a stop payment order.

**15. Payment of Items**

**The order in which you make withdrawals from the Account will not necessarily be the same as the order in which we post these transactions to the Account, and this posting order may affect whether you incur service fees and costs associated with overdrafts, as set forth in Section 17 below. You have no right to tell us the order to use when posting Items or other transactions to the Account.**

The Account may be debited on the day an Item is presented by any means, including, for example, electronically, or at an earlier time based on notification we receive that an Item drawn on the Account has been presented for payment or collection.

At the end of each Business Day, we will process and post transactions to the Account in the following order, by category and within each category:

(a) <u>Credits</u> - Any deposits and other credits we receive, prior to the identified cutoff times, will be posted to the Account Credits for interest will be handled in accordance with category (e) below.

(b) <u>Certain Other Debits</u> - Outgoing wires, most internal transfers to other Accounts with us, transfers to other accounts initiated through our Online Banking for Business service, cash withdrawals, and checks which were cashed by us, will be processed based on the amount of the transaction, from lowest to highest.

(c) <u>ACH transactions</u> – All ACH transactions will be processed based on the amount of the transaction from lowest to highest. If you use a check which is electronically converted by the payee, it will be processed as an ACH transaction.

(d) <u>Checks</u> – All check transactions will be processed based on the number of the check, from lowest to highest, regardless of the date on which the check was originally written or the amount of the check. This includes checks created through a bill payment service, which may have a number that is not in sequence with other checks you write from your checkbook. If a check number is not available, all numbered checks will be processed first, any remaining checks will be processed based on the amount of the check, from lowest to highest.

(e) <u>Bank generated transactions</u> – such as fees that are owed to us and interest credits will generally be processed as they occur.

The description of the Items above is intended to be representative of the most common types of transactions within each category. Other Items may be debited from the Account even though not specifically listed above.

We may, as a condition of withdrawal, require you to provide identification or information acceptable to us.

## Terms and Conditions (Cont'd)

16. **Checks Presented Over the Counter**

    If a check you have written is presented to us "*over-the-counter*" by someone who is not our customer, we may require proper identification and may charge a fee. We may dishonor the check if the person refuses to pay the required fee or provide proper identification.

17. **Overdrafts/Insufficient Funds**

    You agree to limit all withdrawals and transfers from the Account to the amount of the Available Balance in the Account at the time the withdrawal or transfer is made or initiated. We may, at our option and without notice to you, pay or refuse to pay Items, and may accept or reject payment orders if there is or would be an insufficient Available Balance in the Account without regard to whether we may have previously honored Items or accepted payment orders in similar circumstances. If we honor an Item or accept the payment order and create an overdraft, you agree to be liable for, and immediately repay any Account deficit resulting from, charges or overdrafts to the Account, however arising, together with our service fee and the costs we incur to collect the deficit, including, to the extent not prohibited by law, our reasonable attorneys' fees. We may also place a hold for the amount of the overdraft on the Account. We may, without notice to you, refuse to pay Items, honor payment orders or permit withdrawals against uncollected funds.

18. **Check and Form Specifications**

    All checks, withdrawal forms, deposit slips, and other forms used in connection with the Account must be on forms obtained from us or approved by us. You agree that we may refuse to accept for deposit or process any forms presented in a form that cannot be processed on equipment used in our normal business operations.

19. **Signature Requirements; Forgeries and Alterations**

    You understand that we process Items using high speed automated equipment based on information encoded on such Items, and we are not required to examine each Item drawn against the Account for dates, signatures, legends, or indorsements. You agree that we will have no liability to you for failing to detect a forged or missing signature on, or an alteration of, an Item provided that we exercise ordinary care in the processing of such Item, and you agree that our use of electronic processing and automated payment of Items without manual verification of signature, or other examination, is a procedure that does not vary unreasonably from general banking usage and constitutes ordinary care by us in processing Items. We may collect your signature in connection with the opening or maintenance of the Account, but this does not create any responsibility on our part to verify signatures on Items and other charges to the Account.

    We will have no responsibility for reviewing the number or combination of signatures on an Item drawn against the Account. Even if you have indicated that more than one signature is required in connection with an Item drawn on the Account, whether on the Item itself or otherwise, or there are two or more lines on an Item for signature, these are solely for your internal control purposes and are not binding on us, and you authorize us to honor or pay an Item or transaction through the Account contrary to the signature requirements you have specified.

20. **Facsimile or Mechanical Signatures/Automatic Check Writing Device**

    You agree that if you use a facsimile or other mechanical signature (including a stamp) to sign or indorse Items, or if you use a computer or other device to create and/or sign or indorse Items you have the sole responsibility for securing such device and the entire risk of unauthorized use, and we may conclusively rely on that signature as your authorized signature without regard to when, by whom, or by what means such signature may have been made or affixed to an Item. If you use a facsimile or other mechanical signature (including a stamp) to sign or indorse Items, or if you use a computer or other device to create and/or sign or indorse Items, we may also conclusively treat as authorized any signature that

## Terms and Conditions (Cont'd)

reasonably resembles your facsimile or mechanical signature whether such indorsement was affixed by you or by someone having no authority to supply your indorsement.

21. **Protection Against Unauthorized Items, etc.**

    You acknowledge that the Account is susceptible to losses from unauthorized, altered, or counterfeit Items and other types of fraud. We offer a variety of products and services, such as "*positive pay*" and account blocks and filters, designed to detect and deter fraud. If you decline to use or fail to implement any of these products and services, or you fail to follow the procedures necessary for proper use of these products or services, or you fail to follow other precautions reasonable for your particular circumstances, you understand that there is a substantially greater risk of loss from fraud, and you agree that (a) you will be treated as having assumed the risk of those losses, (b) you will be precluded from asserting any claims against us for paying any unauthorized, altered, counterfeit or other fraudulent Item that such product, service, or precaution was designed to detect or deter, and (c) we will not be required to re-credit the Account or otherwise have any liability for paying such Items.

22. **Internal Controls**

    You acknowledge that you share responsibility for preventing the fraudulent or unauthorized use of the Account. You agree to institute and maintain reasonable and effective procedures to ensure the security of your checks and check stock, access to the Account, and your internal procedures.

23. **Lost Checks or Devices**

    You agree to notify us promptly, both orally and in writing, at the telephone number and address listed on your statement, of any suspected loss, theft, or unauthorized use of your checks or any card, code, or device permitting access to, or evidencing the Account. Until we have a reasonable opportunity to act on such notice, we may maintain debits and honor transactions effected on the Account (except as otherwise provided by law) through the use of any such checks, card, code or device. We may close the Account, permit withdrawals by you, or issue new evidence of an Account on such conditions as we may require.

24. **Stop Payment Orders**

    You may instruct us to stop payment on a check that has not been paid. We will not have a duty to stop payment until you have given us all of the information that we require, including the proper Account name, Account number, check number and date, the payee and the amount of the check, and we have had a reasonable opportunity to take action prior to us paying, accepting, cashing, certifying or otherwise acting with respect to, or becoming obligated on, the check. We reserve the right to require additional information. All of the required information must be correct for the stop order to be effective. A written order is effective for twelve months unless we agree in writing to a different period. A stop payment order may be renewed for additional periods as permitted by our procedures and policies then in effect (subject to an overall maximum of six years) by submitting a written request with the required information prior to expiration of the then-effective stop payment order. An oral order is effective for no more than 14 days, unless confirmed by you in writing within that period. We may pay a check after the stop payment order expires or if required by law. Stop payment orders received after regular banking hours (or a later time as specified by us for a particular service) or on a day which is not a Business Day are deemed received at the opening of business on the next Business Day. If you have preauthorized us to make payments out of an Account, stop payment orders must be received by us at least three Business Days before the payment is scheduled to be made. You may not issue stop payment orders for cashiers checks, certified checks, or other bank obligations. By placing a stop payment order, you agree to indemnify us for and defend and hold us harmless from and against any and all Claims incurred by us due to our refusal to pay the Item. You also agree to pay our fees for stop payment orders.

## Terms and Conditions (Cont'd)

25. **Interest**

Except with respect to CDs as described in Section 35 or as otherwise agreed to by us in writing, interest-bearing accounts will bear interest at annual rates that we may establish and change from time to time in our discretion and that are calculated and compounded by such methods as we may establish and change from time to time in our discretion. The interest rate may be dependent upon the balance in the Account. Unless governing law or regulations specify otherwise, we reserve the right to pay interest only on Available Balances, not to pay interest on an Account open for less than 90 days or an inactive Account, and not to pay interest accrued but not credited at the time an Account closes. We will not pay interest on an Account that does not meet eligibility requirements established by law.

26. **Checking Subaccounts**

For various accounting purposes, the Account (and, for eligible customers, your NOW account) may consist of two sub-accounts: a transaction sub account and a money market sub-account. The account will still be treated as a single account for most other purposes including determining any fees, charges, earnings credits, interest calculations and Available Balances and for information reporting and statement purposes. All deposits or credits to the account will be credited to your transaction sub-account, and all of your checks, transfers, withdrawals and other debits (collectively, "Debits") will be deducted from your transaction sub-account. Balances above a threshold level set by us are periodically transferred into your money market sub-account. As funds in your money market sub-account are needed to pay Debits and maintain the threshold balance, they are transferred back to your transaction sub-account. Transfers to your transaction sub-account will be made up to the maximum number of times per period permitted for MMDAs hereunder. The last permitted transfer will include the transfer of the entire balance of your money market sub-account into your transaction sub-account. We set the threshold balance and may change it at any time in our discretion. Generally, we will allow withdrawals from your money market sub-account at any time without prior notice from you. However, in accordance with Federal Regulation D, we reserve the right to require at least seven (7) calendar days' prior notice that a withdrawal is going to be made.

27. **Statements and Notices; Responsibility**

(a) *General.* At your election, we will either provide to you electronically through our Online Banking for Business service (the "Website") or by mail at your current address in our files periodic statements ("Statements"), notices and other information regarding the Account ("Regulatory Disclosures"). In either case, we may assess charges for such service, as determined by us from time to time. You acknowledge that you are in the best position to discover the payment of an Item charged to the Account which is unauthorized (e.g., because of a forgery, alteration, or unauthorized or missing signature) or altered, as well as erroneous charges, debits, or other entries to the Account (collectively, "errors"). You agree to promptly examine each statement, record, notice, canceled check and other Items provided or made available to you (whether originals, images, copies or in other formats) and to promptly notify us of any error or problem. You must notify us of a forged or unauthorized signature, alteration, any other error or account problem, including an erroneous statement entry, unauthorized or missing indorsement, discrepancy or improper charge or entry, within a reasonable time under the circumstances (not to exceed 14 days) after we send or otherwise make available to you your statement, your checks (whether originals, images, copies or in other formats), or information identifying the transactions or indicating the error or problem. Such notifications are to be made by calling us or writing to us at the telephone number or address listed on your statement. If you fail to notify us promptly within the timeframes described above, we will not be obligated to re-credit or refund the amount of the error or account problem and you will be precluded from asserting the error or account problem against us. If you make a claim for an error or problem, you agree to cooperate with us as we may request (including providing an appropriate affidavit) in the investigation of the situation and any effort by us to recover funds on your or our behalf.

## Terms and Conditions (Cont'd)

(b) *Consent to Electronic Statements.* If you elect to receive Statements and Regulatory Disclosures electronically through the Website pursuant to Section 27(a) above, you hereby consent to the receipt of such Statements and Regulatory Disclosures electronically in lieu of paper Statements; provided, however, we may provide paper Statements at any time.

(c) *Unencrypted Email Communication.* You recognize that unencrypted messages, including email, are not secure. If you choose to communicate with us by email, you acknowledge that we may rely on the contents of the email as having been authorized by you, if we accept and act on it in good faith. You agree that we may reply to you in an email with the requested information. You assume the entire risk for unencrypted electronic communications.

28. **Indemnity and Limitations**

    IN NO EVENT UNDER ANY THEORY SHALL WE OR ANY OF OUR AFFILIATES, OR ANY OF OUR RESPECTIVE DIRECTORS, OFFICERS, EMPLOYEES, AGENTS, OR SERVICE PROVIDERS, HAVE ANY LIABILITY TO YOU OR ANY OTHER PERSON OR COMPANY FOR ANY CLAIM OR DAMAGE OF ANY KIND (WHETHER IN TORT, CONTRACT OR OTHERWISE) ARISING OUT OF, OR RELATING TO, OUR PROVIDING THE ACCOUNT OR ANY SERVICES RELATED TO THE ACCOUNT, EXCEPT TO THE EXTENT THAT SUCH CLAIMS OR DAMAGES ARE DETERMINED BY BINDING ARBITRATION IN ACCORDANCE WITH SECTION 46 OR A COURT OF COMPETENT JURISDICTION BY A FINAL AND NON-APPEALABLE JUDGMENT TO HAVE RESULTED FROM OUR GROSS NEGLIGENCE OR WILLFUL MISCONDUCT; PROVIDED THAT IN NO EVENT SHALL WE OR ANY OF OUR AFFILIATES, DIRECTORS, OFFICERS, EMPLOYEES OR AGENTS HAVE ANY LIABILITY TO YOU OR ANY PERSON OR COMPANY FOR INDIRECT LOSSES, SPECIAL, CONSEQUENTIAL, INCIDENTAL, OR PUNITIVE DAMAGES, OR DAMAGES FOR LOST BUSINESS, PROFITS OR REVENUE, GOODWILL, OR ANTICIPATED SAVINGS, EVEN IF WE ARE AWARE OF THE POSSIBILITY OF, OR COULD REASONABLY FORESEE, SUCH DAMAGES.

    To the extent that provisions of applicable law prohibit an agreement to disclaim a bank's responsibility for its failure to exercise ordinary care, our responsibility to you under this Agreement is limited to the exercise of ordinary care in providing the Account and any services related to the Account. Our ordinary care is to be evaluated based on reasonable commercial banking standards prevailing in our industry and location for similarly situated commercial banks.

    You agree to indemnify us and our affiliates and each of our respective directors, officers, employees, agents, and service providers (the "Indemnified Parties") from, and defend and hold harmless each of the Indemnified Parties from and against, any and all Claims directly or indirectly arising out of or relating to our providing the Account or services related to the Account (including, without limitation, any and all Claims in connection with complying with or responding to subpoenas, summonses, search warrants, or requests or demands from government agencies), except to the extent that such Claims are determined by binding arbitration in accordance with Section 46 or a court of competent jurisdiction by a final and non-appealable judgment to have resulted from our gross negligence or willful misconduct.

29. **Transfer and Assignment Restrictions**

    You are prohibited from transferring or assigning your rights to, or granting a security interest in, the Account without our prior written consent. You agree to indemnify us for and defend and hold us harmless from and against all claims, losses, liabilities and expenses incurred by us if you transfer, assign or grant a security interest in the Account (whether or not we consented to such security interest). Any assignment or pledge of the Account is subject to our prior security interest and right of set-off.

30. **Privacy and Disclosure of Information**

    We protect the confidentiality of your financial information. We do not disclose information about the Account or transactions in the Account except as follows: (a) to third parties where it is necessary for completing transfers or tracing transactions, or resolving errors or claims; (b) to credit bureaus or to verify or disclose the existence, amount, or condition

## Terms and Conditions (Cont'd)

of the Account for third parties, such as merchants, or other financial institutions; (c) pursuant to court orders and other legal process; (d) in connection with examinations by banking authorities or to comply with subpoenas, summonses, search warrants, or requests from government agencies; (e) to companies affiliated with us; (f) to companies who provide services to us, such as check printers and data processors; (g) in connection with any litigation involving, or the enforcement of our rights and remedies under or in connection with, this Agreement or any other agreement between us; (h) whenever required by law, regulation, or rules, including, where applicable, the rules of NACHA – The Electronic Payments Association® or other funds transfer systems used in connection with a funds transfer; (i) as permitted under any other agreement between you and us; and (j) with your consent.

31. **No Internet Gambling Transactions**

We are subject to the Unlawful Internet Gambling Enforcement Act (the "*UIGEA*"). You represent and warrant and agree that you are not engaged in the business of betting or wagering (as such terms are defined in the UIGEA). You acknowledge and agree that this Account will be subject to closure in the event that you, at any time, engage in the business of betting or wagering.

32. **Termination**

We reserve the right to close the Account, with or without cause, at any time. You may, at any time, close the Account after we have received written notice and have had a reasonable opportunity to act on it. The existence of a zero balance in the Account does not itself terminate the Account. Our rights under this Agreement will survive the closing or termination of the Account.

33. **Pre-Authorized Debits for Loan Payments**

Unless other arrangements for loan payments have been agreed upon in writing, you authorize us to charge to the Account any unpaid amounts or other extensions of credit which may be outstanding at any time. We will attempt to give you notice prior to debiting the Account, but we are not obligated to do so.

34. **Provisions for our Corporate Money Market Deposit Account ("MMDA")**

   (a) *Interest Earnings.* The daily Collected Balance in the MMDA will earn interest as described in Section 25. However, no interest will accrue for any day on which the daily Collected Balance falls below our minimum balance requirement for this type of account. If the average daily Collected Balance for a statement month falls below the minimum, no interest will accrue for that month. "Collected Balance" means the total of currency deposits made to the MMDA plus the total amount of checks and other Items deposited which have become available to you according to our Funds Availability Policy, plus all interest credited to the Account minus all withdrawals and other debits charged to the MMDA. This balance is calculated daily and is applied to the posted interest rate for that day. Accrued daily interest earnings will be credited to the MMDA on the last day of the month.

   (b) *Deposits.* After opening the MMDA with the minimum initial deposit, you can make additional deposits at any time. Generally, your additional deposit may be in any amount, but we reserve the right to refuse or limit the amount of additional deposits to the MMDA.

   (c) *Withdrawals.* We may, at our option, limit you to no more than a combined total of six (6) transfers and withdrawals from an MMDA per month, or monthly statement period or cycle, to another account of yours with us or to a third party, by means of a preauthorized or automatic transfer, telephonic, facsimile, or computer generated order or instruction, or check, draft, debit card, or other similar order made payable to a third party. The following transfers would not be subject to, or included in, such six (6) transfer or withdrawal limitation: (i) transfers from an

## Terms and Conditions (Cont'd)

MMDA to repay loans originated or serviced by us and associated expenses, (ii) transfers from an MMDA to another Account, and (iii) withdrawals from an MMDA, in each case when such transfers or withdrawals are made by mail, messenger, ATM, or in person or when such withdrawals are made by telephone via a check mailed to you.

We may, at our option, decline any withdrawal or transfer that exceeds these limits or we may charge a fee for any withdrawal that exceeds these limits. If you exceed these withdrawal limitations, we reserve the right to change the MMDA to another type of deposit account that pays a lower rate of interest or no interest, but has more flexible withdrawal capabilities, or we may close the Account.

(d) *Notice of Withdrawal.* Generally, we will allow withdrawals from the MMDA at any time without prior notice. However, in accordance with Federal Regulation D, we reserve the right to require at least seven (7) calendar days' prior written notice that a withdrawal is going to be made.

(e) *Closing.* Either you or we may close the MMDA at any time. The MMDA may continue to earn interest upon closing. Any accrued interest may be credited to the Account.

35. **Certificate of Deposit (Time Deposit) Accounts**

This section applies to certificate of deposit (time deposit) Accounts ("CDs"). If there are any conflicts between the provisions of this section and any other provisions of this Agreement insofar as they relate to CDs, the provisions of this section shall control. We will provide you with a Certificate of Deposit Account Disclosure describing certain specific terms and conditions of each CD, such as the maturity date, interest rate, interest payment terms, interest computation method, renewal provisions, and early withdrawal terms, including any applicable early withdrawal fees. Unless otherwise provided in the Certificate of Deposit Account Disclosure, the rate of interest paid, interest computation method, renewal provisions, and early withdrawal terms of the CD will not change during its term. CDs are not eligible for check transactions or funds transfer and other treasury management services. Periodic statements will not be provided for CDs.

36. **Security Interest; Set-off**

(a) *Security Interest.* You grant us and each of our Affiliates a first priority security interest in all Accounts owned by you, now or in the future, with us or any of our Affiliates, to secure payment of any or all obligations (including for service fees and charges) you may have to us or any of our Affiliates, whether direct or indirect, absolute or contingent, due or to become due, whether now existing or hereafter arising, and whether several, joint or joint and several, regardless of whether another party is also liable for such obligations or such obligations relate to the Account, a credit agreement, or other circumstances. For purposes of this Agreement, "Affiliate" means any corporation, limited liability company, or other legal entity that controls, is controlled by, or is under common control with another legal entity.

(b) *Set Off.* In addition to our rights under this Agreement or otherwise, we and each of our Affiliates may exercise the right of set-off against any or all of your Accounts and deposits except as prohibited by applicable law. If you have any obligation to us or any of our Affiliates, under this Agreement or otherwise, whether or not then due, we can use the funds or balances from any Account you have with us or any of our Affiliates to pay or satisfy the obligation or may set off against any amount we owe you in order to obtain payment of such obligation. Except as may be restricted by applicable law, this right may be exercised at any time and without prior notice, regardless of whether it creates an overdraft or results in subsequent dishonor of checks or request to transfer funds. If the law imposes conditions or limits on our ability to take or setoff funds in your Accounts, to the extent that you may do so by contract, you waive those conditions and limits and you authorize us to apply funds in any or all of your Accounts to obligations you owe us or our Affiliates.

## Terms and Conditions (Cont'd)

    (c) *Claims on the Account*. You also grant us the right to terminate or place a hold on, and dishonor all Items drawn on the Account that you have assigned or in which you have granted a security interest to any third party (whether or not we consented to such security interest). Upon receipt of oral or written notice from any party of a claim regarding the Account, we may place a hold on the Account. You agree to indemnify us for and defend and hold us harmless from and against our failure or refusal to honor any Item drawn on a pledged or encumbered Account or any other withdrawal instruction.

37. **Legal Process**

We may comply with any writ of attachment, adverse claim, execution, judgment, garnishment, tax levy, citation to discover assets, turnover or restraining order, subpoena, warrant or other legal process, however served or made which we believe to be valid. Any such legal process is subject to our security interest and rights of set-off. We may, in our sole discretion, respond to legal process by placing a hold on funds in the Account subject to such legal process, close the Account, or interplead the funds. You agree to pay us all of our fees and expenses, including reasonable attorneys' fees in responding to any such legal process, which fees and expenses may be charged against the Account even if an overdraft is created. We may also create a hold on the Account in anticipation of such fees and expenses. We will have no liability for complying with such legal process, or if there are insufficient funds available in or another restriction on the Account because of actions we take in response to such legal process. We may also place a hold on the Account and conduct an investigation if we suspect there to be fraud or illegal activity associated with the Account.

38. **Accounts That May Be Eligible for Pass-Through Deposit Insurance**

This section applies as of the compliance date of the FDIC's Rules and Regulations for Recordkeeping for Timely Deposit Insurance Information, 21 CFR Part 370. If you have opened an Account on behalf of the beneficial owner(s) of the funds in the Account (for example as an agent, nominee, guardian, executor, custodian or in some other capacity for the benefit of others), the Account may be eligible for "pass-through" deposit insurance from the FDIC. This means the Account could qualify for more than the standard maximum deposit insurance amount. For such Accounts, in order for us to comply with §370.5(a) of the FDIC's Rules and Regulations, if the Account has transactional features (such as check writing capability and/or the use of Debit Cards) as defined in § 370.2(j) of the FDIC's Rules and Regulations, you must agree to provide a record of the interests of the beneficial owner(s) in accordance with the FDIC's requirements as specified below. Following these procedures may minimize the delay that these beneficial owner(s) may face when accessing their FDIC-insured funds in the event of a bank failure. Section 370 of the FDIC's Rules and Regulations can be accessed on the FDIC's website at https://www.fdic.gov/regulations/laws/rules/2000-9200.html.

The FDIC has published a guide that describes the process to follow and the information you will need to provide in the event the bank fails. In addition, the FDIC has published an addendum as section VIII of the guide (the "Addendum"), which is a good resource to understand the FDIC's alternative recordkeeping requirements for pass-through deposit insurance. The Addendum sets forth the FDIC's expectations for demonstrating eligibility for pass-through deposit insurance coverage for deposit accounts, including those with transactional features. The Addendum also describes the records you should keep on the beneficial owner(s) of the funds and the format in which to provide the records to the FDIC in the event the bank fails. The Addendum can be accessed on the FDIC's website at https://www.fdic.gov/deposit/deposits/brokers/part-370-appendix.html.

You agree to cooperate fully with us and the FDIC in connection with determining the insured status of funds in the Account at any time. In the event the bank fails and the FDIC is appointed as its receiver, you agree to provide the FDIC with the information described above in the required format within 24 hours of bank failure for all Accounts with transactional features and any other Accounts to which you need rapid access. As soon as the FDIC is appointed, a hold or freeze may be placed on the Account so that the FDIC can conduct the deposit insurance determination. That hold or freeze will not be released until the FDIC obtains the information required to enable the FDIC to calculate the deposit insurance. You

## Terms and Conditions (Cont'd)

understand and agree that your failure to provide the required information to the FDIC may result in a delay in receipt of insured funds by the beneficial owner(s) and legal claims against you from the beneficial owner(s). This Agreement survives after the FDIC is appointed as our receiver, and as a result, the FDIC shall be entitled to enforce the terms of this section.

39. **Governing Law**

This Agreement, the Account, and transactions in the Account are subject to the laws and regulations of the United States and of the State of Illinois (including the Illinois Uniform Commercial Code, as in effect from time to time), and applicable rules and regulations. To the extent any such laws, rules or regulations may be modified or supplemented by agreement of the parties and the provisions of this Agreement or any other agreement or document applicable to the Account or transactions have done so, you and we agree to such modifications and supplements. To the extent any term or condition in this Agreement is inconsistent with such laws, rules or regulations it will be deemed modified and applied in a manner consistent with such laws, rules or regulations.

40. **Certain Instructions**

If you ask us to follow instructions which we believe expose us to potential liability or claims, we may refuse to follow your instructions, or we may require a surety bond or other protections satisfactory to us, such as your indemnity, before we follow the instructions.

41. **Inactive Accounts**

If an Account has had no withdrawal or deposit activity, and we have had no contact from you regarding the Account for eighteen (18) months, we may consider the Account inactive and stop sending Account statements. Service fees and other terms applicable to active accounts will apply to the Account while it is inactive except where prohibited by law. An inactive Account may be subject to additional fees. You understand that under state abandoned property laws, we must turn over to the state the Account if it has been inactive for a specified period of time as prescribed by applicable law.

42. **Relationship**

The relationship created by any deposit is that of debtor and creditor and otherwise the relationship between us is that of independent contractor. No fiduciary or other special relationship exists except as required by law.

43. **Recording**

You authorize us to monitor, record, and retain telephone calls, electronic messages and other data transmissions at any time without notice for any reason including to provide a record of instructions with respect to the Account, but we are not obligated to do so.

44. **Miscellaneous**

If any provision of this Agreement is determined to be invalid, illegal, or unenforceable in any respect, the validity, legality or enforceability of the remaining provisions of this Agreement will not be affected or impaired as a result. We may waive any provision of this Agreement, but the waiver will apply only to that provision and on that occasion. In no event is any waiver or series of waivers to be construed as creating or requiring a waiver of any provision in the future.

## Terms and Conditions (Cont'd)

45. **Facsimilies and Email**

    We may, in our discretion, accept facsimiles of Account documentation and related matters as originals. Email communications from you, including instructions, are not binding on us and do not constitute notice to us as contemplated by this Agreement unless we otherwise expressly agree in writing.

46. **Claims Subject to Arbitration**

    We and you agree to arbitrate all disputes or claims between you and us arising out of or relating in any way to the Account or this Agreement, any other agreement related to the Account, or any transactions arising hereunder or thereunder, whether based in contract, tort, statute, fraud, misrepresentation or any other legal theory. This arbitration provision is intended to be broadly interpreted and to cover, without limitation, any claims that arose before the effective date of this Agreement or any prior agreement governing the Account (including, but not limited to, claims relating to advertising, promotions, or disclosures) and any claims that may arise after the termination of this Agreement.

    This Agreement evidences a transaction in interstate commerce, and thus the Federal Arbitration Act, 9 U.S.C. § 1 et. seq., governs the interpretation and enforcement of this provision. An American Arbitration Association ("AAA") arbitrator will decide the substance of all Claims in accordance with all applicable law, including recognized principles of equity and statutes of limitations, and will honor all claims of privilege recognized by law.

    Unless both you and we agree otherwise, each party must bring all related or similar Claims in a single arbitration proceeding. If you or we later initiate a subsequent arbitration asserting Claims that are related or similar to ones that were raised by such party in an earlier-filed arbitration, the AAA or the arbitrator will either: (i) consolidate the subsequent arbitration with the earlier proceeding if it is ongoing or (ii) dismiss the subsequent arbitration if it raises Claims that would be barred by applicable law if brought in court.

    (a) *Notice of Dispute and Arbitration Procedures.* A party who intends to pursue a Claim must first send to the other a letter describing the Claim and containing the information described below (a "Notice of Dispute"). Any Notice of Dispute sent to us should be addressed to:

    BMO Harris Bank N.A.
    Documentation Analysis and Control
    111 West Monroe Street 9 Center
    Chicago, IL 60603

    Any Notice of Dispute sent to you by us will be sent to the address in our records that is associated with the Account at the time the Notice of Dispute is sent. The Notice of Dispute must (a) describe the nature and basis of the Claim; (b) set forth the specific relief sought; (c) set forth the name and address of the claimant; and (d) include the Account numbers and/or the provision of the applicable agreement to which the Claim relates. If we and you do not reach an agreement to resolve the Claim described in the Notice of Dispute within forty-five (45) days after the Notice of Dispute is received, you or we may commence an arbitration proceeding with AAA. If you or we attempt to commence arbitration proceedings before providing the requisite Notice of Dispute, the other party may inform the AAA of this agreement and direct it to refrain from commencing administration of arbitration proceedings until the requisite time period for notice has passed. Neither you nor we will disclose to the arbitrator the existence, amount, or terms of any settlement offers made by either party until after the arbitrator issues a final award resolving the Claim.

    The arbitration will be governed by the AAA's Commercial Dispute Resolution Procedures, as amended from time to time (the "AAA Rules") as modified by this Agreement, and will be administered by the AAA.

## Terms and Conditions (Cont'd)

    The arbitrator is bound by the terms of this Agreement. All issues are for the arbitrator to decide, except that issues relating to the arbitrability of Claims or the scope, and enforceability of this arbitration provision, including the interpretation of the prohibition of class and representative actions and non-individualized relief, are for the court to decide. The right to a hearing will be determined by the AAA Rules. Any in-person arbitration hearing will take place in Chicago, Illinois. Regardless of the manner in which the arbitration is conducted, the arbitrator, upon the request of either party made prior to the closing of the hearing (or, if there is no oral hearing, prior to or along with submission of final documents to the AAA), will issue a reasoned written decision sufficient to explain the essential findings and conclusions on which the award, if any, is based. Unless otherwise agreed by you and us, any award will be rendered by the arbitrator not later than fourteen (14) days from the date of the closing of the hearing or, if there is no oral hearing, from the date of the AAA's transmittal of the final statements and proofs to the arbitrator in accordance with the AAA Rules.

(b) *Prohibition of Class and Representative Actions and Non-Individualized Relief*. The arbitrator may award injunctive relief only in favor of the individual party seeking relief and only to the extent necessary to provide relief necessitated by that party's individual Claim; any injunctive relief must be individualized in nature and cannot affect individuals other than the claimant. YOU AND WE AGREE THAT EACH MAY BRING CLAIMS AGAINST THE OTHER ONLY IN YOUR OR OUR INDIVIDUAL CAPACITY AND NOT AS A PLAINTIFF OR CLASS MEMBER IN ANY PURPORTED CLASS OR REPRESENTATIVE PROCEEDING, OR AS A PRIVATE ATTORNEY GENERAL OR ON BEHALF OF THE GENERAL PUBLIC. Further, unless both you and we agree otherwise, the arbitrator may not consolidate more than one person's claims, and may not otherwise preside over any form of a representative or class proceeding. If a court decides that any part of this arbitration provision (other than the prohibition of class or representative actions and/or consolidation) is invalid or unenforceable, the other parts of this arbitration provision will still apply. However, if a court decides that this paragraph's prohibition of class or representative actions and/or consolidation is invalid or unenforceable, then the entirety of this arbitration provision will be null and void.

(c) *Access to Government Agencies*. This arbitration provision does not preclude you from bringing issues to the attention of federal, state, or local agencies. Such agencies can, if the law allows, seek relief against us on your behalf.

(d) *Other Remedies*. This arbitration provision and the exercise of any of the rights you and we have under this provision will not prohibit you or us from exercising any lawful rights either you or we have to use other remedies available to preserve, foreclose or obtain possession of real or personal property or exercise self-help remedies, including set-off rights as described in this Agreement.

47. **Amendment**

From time to time, we may amend, add to or change (an "amendment") the provisions of this Agreement. Amendments will be communicated by notice given to you by mail or if permitted by law, electronic notice, and will be effective on the date indicated in the notice. If an effective date is not indicated, the effective date will be ten (10) Business Days from the date the notice was sent. If you do not wish to be bound by an amendment, you may close the Account before the effective date of the amendment. Your continued use of the Account after the effective date is deemed your agreement to the amendment. Any other amendment will be effective only if it is in writing and signed by our duly authorized officer. A change in our interest rates, fees or service charges, funds availability or operating procedures does not constitute an amendment of this Agreement and we may effect such changes without prior notice to you.

48. **Entire Agreement**

This Agreement, including our Funds Availability Policy and information specifically referred to in this Agreement, and any separate service or master agreement in effect constitutes the entire agreement between us regarding the subject matter

## Terms and Conditions (Cont'd)

of this Agreement and supersedes any and all prior representations, warranties, understandings and proposals. There are no oral agreements between us. You acknowledge that you have not relied on any representation or warranty, express or implied, or other understanding or proposal not contained in this Agreement, the Funds Availability Policy or information specifically referred to in this Agreement, or any separate service or master agreement in effect. This Agreement is binding upon and for the benefit of the account owners, their permitted successors and assigns, and us and our successors and assigns. This Agreement also applies to each of your subsidiaries and affiliates which have an Account with us or have access to the Account as if it were a party to this Agreement. You represent and warrant to us that you have the authority to act for and bind such subsidiaries and affiliates to this Agreement, and agree to be responsible for any unpaid fees, charges or other obligations of such subsidiaries or affiliates. Otherwise, except as expressly provided in this Agreement, this Agreement is not for the benefit of any other person, and no other person will have any right against you or us in connection with this Agreement.

49. **Cash Withdrawals**

   If you request to withdraw large amounts in cash, we may place reasonable restrictions on the time and place of your withdrawal based on our security and operational considerations.

50. **Defined Terms**

   **Available Balance** — means the most current record we have about the balance in the Account that is available for withdrawal from the Account.

   **Business Day** — means every day except Saturdays, Sundays or federal holidays.

   **Item** — includes a check, draft, demand draft, preauthorized draft, or other order or instruction for the payment, transfer, or withdrawal of funds (including a withdrawal slip), and electronic transactions (including ACH, ATM and POS).

## General Funds Availability Policy Commercial Checking Accounts

Our general policy for Commercial Checking Accounts (including Commercial Checking, Commercial NOW and Commercial Money Market) is to make the funds from your wire transfers and electronic direct deposits available to you on the Business Day we receive the deposit. Funds from cash deposits will be made available to you on the day of deposit. Funds from check deposits will be made available to you according to the Availability Schedule assigned to your check deposits. The length of delay varies depending on the type and method of deposit, and is explained below. Once the funds are available, we will use the funds to pay checks you have written or you can withdraw the funds in cash.

**Determining Availability**
For purposes of this Funds Availability Policy, every day is a "Business Day" except Saturdays, Sundays and federal holidays. If you make a deposit before our cut-off time on a Business Day that we are open, we will consider that day to be the day of your deposit. The cut-off time for deposits made at a branch is the closing time of the branch where the deposit is made. Deposits made at a night drop location or night depository will be retrieved and verified by us once at the beginning of each Business Day. Therefore, if you use a night drop during the day, that deposit will not be considered received by us until the next Business Day when we retrieve it and process it. The cut-off time for deposits made in connection with certain banking services that we offer may vary; the earliest cut-off time is 4:00 p.m. Central Time (except with respect to certain vault services, for which cut-off times range between 1:00 p.m. ET and 5:00 p.m. PT). Please review the service agreements that govern these banking services to determine the applicable cut-off times. If you make a deposit after our cut-off time or on a day that we are not open, we will consider that the deposit was made on the next Business Day we are open.

**Immediate Availability**
Cash deposited at branches or through the mail before the cut-off times listed above will be available for immediate use on the day that we receive the deposit. Because we cannot process deposits made until we receive them, we strongly recommend that you do not send cash deposits through the mail. Cash deposited after the cut-off times will be available on the next Business Day after we receive the deposit.

**Same Day Availability**
Funds from the following types of deposits will generally be available on the Business Day we receive the deposit:

- Federal Reserve Bank wire transfers
- Preauthorized electronic credits

**Next Day Availability**
Funds from the following types of deposits will generally be available on the next Business Day after the day we receive the deposit:

- U.S. Treasury checks
- Checks drawn on and drafts payable through us.
- Federal Reserve Bank checks, Federal Home Loan Bank checks, and postal money orders
- State and local government checks
- Checks drawn on banks located inside the United States of America

**Other Check Deposits**
Subject to Section 9 of the Commercial Account Agreement, funds from all other checks will generally be available no later than the second Business Day after the day of your deposit. The first $225 of these deposits, however, will be available on the first Business Day after the day of your deposit.

## General Funds Availability Policy Commercial Checking Accounts (Cont'd)

**Cashing a Check Not Drawn On Us**
If we cash a check that is drawn on another bank, we may withhold the availability of a corresponding amount of funds that are already in your checking account or another account you have with us (or one of our affiliates). Those funds will be available at the time funds from the check we cashed would have been available had you deposited it.

**Longer Delays May Apply To Some Deposits**
In some cases, we will not make all of the funds that you deposit by check available to you as described above. In these cases, funds will generally be available on the second Business Day after we receive your deposit; however, the first $225 of your deposit, will still be available on the first Business Day. If we are going to delay availability, we will notify you at the time you make your deposit. We will also tell you when the funds will be available. If your deposit is not made directly through one of our employees, or if we decide to take this action after you leave the premises, we will mail you the notice no later than the day after we receive your deposit. We will also tell you when the funds will be available. If your deposit is not made directly through one of our employees, or if we decide to take this action after you leave the premises, we will mail you the notice no later than the day after we receive your deposit.

If you will need the funds from a deposit immediately, you should ask us when the funds will be available.

In addition, funds you deposit by check may be delayed for a longer period under the following circumstances:
- If we believe a check deposited will not be paid
- If deposited checks total $5,525 or more on any one day
- If you redeposit a check that has been returned unpaid
- If you have overdrawn your account repeatedly in the last six months
- If there is an emergency situation such as a failure of communications or computer equipment, or severe weather

We will attempt to notify you if we delay your ability to withdraw funds for any of these reasons, and we will tell you when the funds will be available. Funds will generally be available no later than the seventh Business Day after the day of your deposit.

### Additional Information Concerning Your Accounts

**Endorsement Requirements**
Payee endorsements are restricted by federal law to an area up to 1.5 inches from the trailing edge of a check. The trailing edge is defined as the left side of the check when looking at it from the front. The endorsement area reserved for the bank of first deposit is the area 3.0 inches from the leading edge of the check and 1.5 inches from the trailing edge of the check. The leading 3.0 inches is the area designated for endorsements of subsequent collecting banks. While checks may vary in size, the size of the areas designated for payee endorsement will always be as described above.

**Legibility of Endorsements**
Endorsements or other writing or markings on the reverse side of checks by issuers, payees, or endorsers should be limited to the space reserved for the payee's endorsement as described above. Otherwise, the endorsement of the depository bank may be obscured, and this may delay the return of the check or the notice of nonpayment. You shall be liable for any loss or damages arising from this condition.

**Sufficient Balances**
While funds will be made available based on the preceding time frames, you remain responsible for ensuring that sufficient ledger balances and Available Balances are kept or deposited to cover all withdrawals and other charges against the Account. If a deposited check is returned unpaid, we retain the right to charge that item back to the Account even though the funds for that check were made available. You remain responsible to immediately repay any overdrafts.

## General Funds Availability Policy Commercial Checking Accounts (Cont'd)

If you have any questions regarding this policy, or about the availability of any deposit you make, please contact the Client Response Center at 1-877-895-3278.

**International Items**
All international items should be directed to:

| **Mailing Address:** | **Overnight / Courier:** |
| --- | --- |
| BMO Harris Bank | BMO Harris Bank |
| Naperville Operations Center | Naperville Operations Center |
| Attn: Foreign Collections | Attn: Foreign Collections |
| PO Box 5731 | 1200 E. Warrenville Road |
| Carol Stream, IL 60197 | Naperville, IL 60593 |

Availability Schedules are subject to change without notice.