**<u>EXHIBIT D</u>**

# Customer Agreement

Updated January 7, 2022

In consideration of Voyager Digital, LLC, and its agents and assigns, which includes affiliated entities, ("Voyager") opening an account (the "Account") on your ("Customer") behalf, Customer represents and agrees to the terms and conditions set forth below (the "Customer Agreement"). For the avoidance of doubt, this Customer Agreement governs the relationship between Customer and Voyager exclusively as it relates to the services provided by Voyager as described herein. Any other services, now or in the future, provided by an affiliate of Voyager, whether in connection with the Account, or otherwise, unless specifically identified herein shall not be governed by this Customer Agreement. Customer understands that the Voyager trading platform (the "Platform") is operated by Voyager, together with certain of its affiliates (each, an "Affiliate" and together, the "Affiliates"), and may be accessed via website (the "Website") and mobile application (the "App").

**CUSTOMER UNDERSTANDS THAT THE TERMS AND CONDITIONS OF THIS CUSTOMER AGREEMENT GOVERN ALL ASPECTS OF RELATIONSHIP WITH VOYAGER REGARDING CUSTOMER'S ACCOUNT. THE CUSTOMER WILL CAREFULLY READ, UNDERSTAND AND ACCEPT THE TERMS AND CONDITIONS OF THIS CUSTOMER AGREEMENT BEFORE CHECKING THE BOX AND CLICKING CONTINUE UNDER "BY CREATING AN ACCOUNT, YOU AGREE TO OUR TERMS" (WHICH ARE AVAILABLE BY CLICKING ON "TERMS" LINK (OR SIMILAR LINK). IF THE CUSTOMER HAS ANY QUESTIONS ABOUT ANY OF THE PROVISIONS IN THIS CUSTOMER AGREEMENT, THE CUSTOMER MAY EMAIL SUPPORT@INVESTVOYAGER.COM. THE CUSTOMER UNDERSTANDS THAT CLICKING CONTINUE UNDER "BY CREATING AN ACCOUNT, YOU AGREE TO OUR TERMS" IS THE LEGAL EQUIVALENT OF MANUALLY SIGNING THIS CUSTOMER AGREEMENT AND THE CUSTOMER WILL BE LEGALLY BOUND BY ITS TERMS AND CONDITIONS. BY ENTERING INTO THIS CUSTOMER AGREEMENT, THE CUSTOMER ACKNOWLEDGES RECEIPT OF THE VOYAGER PRIVACY POLICY.**

THE TRADING OF CRYPTOCURRENCY INVOLVES SIGNIFICANT RISK. BY ENTERING INTO THIS CUSTOMER AGREEMENT, THE CUSTOMER ACKNOWLEDGES RECEIPT OF THE VOYAGER RISK DISCLOSURE STATEMENT.

1. **Acceptance of Terms and Conditions**

By using the Platform, Customer agrees to follow and be bound by this Customer Agreement, including, without limitation, the policies referenced herein. If Customer does not agree to be bound by the terms of this Customer Agreement, Customer should not access the Platform. Customer further understands that Voyager has the right to change and modify the terms and conditions of the Customer Agreement at any time in Voyager's sole discretion. If Voyager materially updates, modifies, or revises the Customer Agreement, Voyager will, at its discretion, post a revised copy of the Customer Agreement on the Website, or make it available through the App, as further detailed in **Section 33 - Miscellaneous**. Other than as may be required pursuant to applicable law, Voyager shall have full discretion to determine when and how Voyager notifies Customer of changes to the Customer Agreement. All changes will be effective immediately. Customer understands that by continuing to use the Platform, accessing the Account, or utilizing the Services (as defined below) constitutes an act of acceptance with respect to any such changes.

2. **Capacity and Status; Eligibility**

The Customer represents and warrants that Customer is of legal age under the laws of the state where the Customer resides and is authorized to enter into the Customer Agreement. Voyager reserves the right to assess or reassess at any time Customer's eligibility to maintain an Account and utilize the Platform. Without limiting the foregoing, by accessing the Platform and utilizing the Services, Customer acknowledges and understands that laws regarding financial instruments, which sometimes include Cryptocurrency (as defined below), may vary from state to state, and it is Customer's obligation alone to ensure that Customer fully complies with any law, regulation or directive, relevant to Customer's state of residency with regard to the use of the Platform and the Services. For the avoidance of doubt, the ability to open an Account and access the Platform does not necessarily mean that Customer's activities in connection therewith are legal under the laws, regulations or directives relevant to the Customer's state of residency. "Cryptocurrency" means any digital asset or digital currency that is available for trading or custody through the Services.

3. **U.S. Residents Only**

The Information (as defined below), Platform, and associated Services are intended for U.S. residents only. They shall not be considered a solicitation to any person in any jurisdiction where such solicitation would be illegal. The products and services described on the Website and available through the Platform are offered only in jurisdictions where they may be legally offered. Neither the Website nor the App shall be considered a solicitation for, or offering of, any investment product or service to any person in any jurisdiction where such solicitation or offering would be illegal. Customer understands that Voyager, at Voyager's sole discretion, may accept unsolicited accounts from non-U.S. residents, depending on the country of residence and other factors.

**4.    Account Opening; Applicable Laws and Regulations**

To help the U.S. government better detect the funding of terrorism and money laundering activities, federal law requires all financial institutions to obtain, verify, and record information that identifies each person who opens an Account. Customer understands that when the Customer opens an Account that Voyager will ask for the Customer's name, address, date of birth and other identifying information. Voyager may also ask for copies of the Customer's driver's license, passport or other identifying documents. The Customer understands that Voyager will take steps to verify the accuracy of the information the Customer provides to Voyager in connection with an Account opening. These verification procedures may, in Voyager's sole discretion, require that Customer verify certain information provided to Voyager or provide additional documentation to Voyager, including but not limited to providing bank statements, social security number verification, bank account ownership verification, or liveness checks. Voyager will not open an Account or may restrict Customer's access to the Account and the Services at any time and in Voyager's sole discretion, but in any event until such time as all verification procedures have been completed to Voyager's satisfaction.

The Customer further understands that if the Customer attempts to access the Account from a jurisdiction subject to certain U.S. sanctions or if the Customer is ordinarily resident in such a jurisdiction, or if Voyager reasonably believes that the Customer is attempting such access or has become a resident in such a jurisdiction, Voyager may restrict the Account, and any pending orders may be cancelled. If this happens, the Customer understands that the Customer should contact support@investvoyager.com, and that the Customer may be asked to provide supplemental information as part of this process. The Customer further understands that the Customer must close all Accounts before establishing residency in any jurisdiction subject to U.S. sanctions.

**5.    Account Funding; Regulatory Treatment**

(A)  Customer Cash. Customer understands and acknowledges that Customer may arrange to deposit United States Dollars ("USD" or "Cash") into the Account. Cash deposited into the Customer's Account is maintained in an omnibus account at Metropolitan Commercial Bank (the "Bank"), which is a member of the Federal Deposit Insurance Corporation ("FDIC"). Voyager maintains an agreement with the Bank whereby the Bank provides all services associated with the movement of and holding of USD in connection with the provision of each Account. Therefore, each Customer is a customer of the Bank. All U.S. regulatory obligations associated with the movement of, and holding of, USD in connection with each Account are the responsibility of the Bank.  For purposes of clarity, any services pertaining to the movement of, and holding of, USD are not provided by Voyager or its Affiliates. Cash in the Account is insured up to $250,000 per depositor by the FDIC in the event the Bank fails if specific insurance deposit requirements are met. FDIC insurance does not protect against the failure of Voyager or any Custodian (as defined below) or malfeasance by any Voyager or Custodian employee. Voyager is not a member of the Financial Industry Regulatory Authority, Inc. ("FINRA") or the Securities Investor Protection Corporation ("SIPC"), and therefore Cash is not SIPC-protected.

(B)  Customer Cryptocurrency Deposits. When Customer initiates a Cryptocurrency deposit (a "Cryptocurrency Deposit") into the Customer's Account, Customer is solely responsible for executing the Cryptocurrency Deposit properly and accurately. Voyager is not responsible for any Cryptocurrency until such time as such Cryptocurrency is successfully deposited into the relevant wallet address provided by Voyager to Customer as evidenced by such deposit appearing on the relevant block explorer for such deposit. Voyager is not responsible for any delays, losses or fees in connection with a Cryptocurrency Deposit and is not obligated to assist or support Customer in any fashion with respect to an unsuccessful Cryptocurrency Deposit or with respect to any issues that Customer may experience at a point in time prior to the successful completion of a Cryptocurrency Deposit; *provided*, *however*, that Voyager may, in its sole discretion, provide reasonable assistance to Customer in the event that a Customer requests assistance in connection with an attempted, failed, erroneous, or otherwise incomplete Cryptocurrency Deposit, including but not limited to, those deposits sent by Customer to a Cryptocurrency wallet designated by Voyager for a different type of Cryptocurrency than the Cryptocurrency being sent by Customer, whether or not such deposit is evidenced on the blockchain. Voyager does not guarantee that any such assistance will result in the successful completion or remediation of a Cryptocurrency Deposit or the recovery of any Cryptocurrency. Furthermore, subject to Voyager's sole discretion, Voyager may charge reasonable fees in connection with

any such assistance upon recovery of Customer assets to Customer Account. Customer understands that a Cryptocurrency Deposit cannot be reversed once properly initiated.

(C) Customer Cryptocurrency. Customer authorizes and instructs Voyager to hold Customer's Cryptocurrency (whether purchased on the Platform or deposited by Customer into the Account pursuant to the Cryptocurrency Deposit mechanics outlined above) on its behalf. Customer understands that Voyager may hold Customer's Cryptocurrency together with the Cryptocurrency of other Voyager customers in omnibus accounts or wallets. In addition, Customer understands and authorizes Voyager to delegate some or all custody functions to one or more Affiliates or third parties (which may include, but not be limited to exchanges and custodians) at Voyager's discretion (each a "Custodian"). Some or all custody functions provided by a Custodian may be performed, supported, or conducted in foreign jurisdictions, or conducted by Custodians domiciled, registered, or subject to the laws and regulations of foreign jurisdictions. Voyager will exercise reasonable skill and care in the selection, appointment, and periodic review of any such Custodian. Voyager will maintain true, complete, and accurate records relating to Customer Cryptocurrency. Customer and Voyager understand that the legal treatment of Cryptocurrency is unsettled and disparate across different jurisdictions. In the event that Customer, Voyager or a Custodian become subject to an insolvency proceeding it is unclear how Customer Cryptocurrency would be treated and what rights Customer would have to such Cryptocurrency. How an insolvency court would categorize and treat Customer Cryptocurrency is a highly fact-dependent inquiry that necessarily depends upon the circumstances of each individual case. In addition, within the U.S. there is notably little case law addressing insolvency proceedings involving Cryptocurrency. As such, the law governing the likely treatment of Customer Cryptocurrency in the event of a Customer, Voyager or Custodian insolvency proceeding remains largely unsettled. Voyager does not make any representation as to the likely treatment of Customer Cryptocurrency in the event of a Customer, Voyager, or Custodian insolvency proceeding whether in the U.S. or in any other jurisdiction. Customer explicitly understands and acknowledges that the treatment of Customer Cryptocurrency in the event of a Customer, Voyager, or Custodian insolvency proceeding is unsettled, not guaranteed, and may result in a number of outcomes that are impossible to predict, including but not limited to Customer being treated as an unsecured creditor and/or the total loss of all Customer Cryptocurrency.

(D) Consent to Rehypothecate. Customer grants Voyager the right, subject to applicable law, without further notice to Customer, to hold Cryptocurrency held in Customer's Account in Voyager's name or in another name, and to pledge, repledge, hypothecate, rehypothecate, sell, lend, stake, arrange for staking, or otherwise transfer or use any amount of such Cryptocurrency, separately or together with other property, with all attendant rights of ownership, and for any period of time and without retaining a like amount of Cryptocurrency, and to use or invest such Cryptocurrency at Customer's sole risk.

## 6.   Voyager Services

The Account is self-directed. The services offered by Voyager pursuant to this Customer Agreement include, but are not limited to (a) the ability to place various types of orders through the Platform with respect to Cryptocurrency, (b) participation in the Rewards Program (as defined below), and (c) such other programs, features, or services as Voyager may make available to Customer through the Platform from time to time (collectively, the "Services").

Customer appoints Voyager as Customer's agent for the purposes of (a) supporting Customer's activities with respect to the Services, (b) carrying out Customer's instructions to Voyager in accordance with the terms and conditions of this Customer Agreement, and (c) taking any action that Voyager reasonably and in good faith deems necessary or advisable to accomplish the purposes of this Customer Agreement.

Customer understands and acknowledges that Voyager is authorized at all times to place, withdraw, modify, suspend, cancel, terminate, or alter, in any fashion orders and transactions placed by Customer through the Platform, as well as take any and all other actions that Voyager deems appropriate or necessary in order to carry out Customer instructions.

## 7. Orders

(A) Overview. Customer may place market orders through the Account in either USD amounts or in Cryptocurrency amounts. In addition to market orders, Customer may also place limit orders. A limit order may be "good till canceled" which means the order remains valid until (A) it is executed, or (B) Customer cancels the order. Customer understands that limit orders may not be executed at any particular time, or at all, if there is not sufficient trading at or better than the limit price that Customer specifies, and are good until Customer cancels them; provided, however, that Voyager has the right, in its sole discretion, to cancel any limit order, whether "good till canceled" or otherwise, that remains unexecuted for sixty (60)

calendar days or if deemed a risk by Voyager. Customer understands that additional transaction and order types may be made available to Customer on the Platform from time to time as determined by Voyager in Voyager's sole discretion.

(B)  Sufficient Funds. To execute a purchase order for Cryptocurrency, Voyager requires that Customer's Account contain available funds equal to, but in most cases, greater than the purchase price of the Cryptocurrency plus any associated fees or commissions and that all payments for the purchase be made without set-off, counterclaim or deduction. Customer agrees that any purchase order accepted by Voyager (inadvertently or otherwise) without sufficient funds or Cryptocurrency in Customer's Account will be subject to liquidation at Customer's expense.

(C)  No Liability for Failure to Settle. Customer understands and agrees that Voyager is not responsible for any delay in the settlement of a transaction resulting from circumstances beyond Voyager's reasonable control, or the failure of any other person or party (including Customer) to perform all necessary steps to enable the completion of a transaction.

(D)  Refusal to Allow USD Withdrawals. Voyager may refuse to allow a USD withdrawal from Customer's Account, when it deems it appropriate or necessary, in its sole discretion, including in the following instances: (1) Voyager believes that such refusal is necessary in order for Voyager to comply with its anti-money laundering compliance obligations, (2) the withdrawal would leave insufficient funds in the Account to pay for any unsettled transactions, (3) the amount of such withdrawal is equal to or greater than the sum of all USD deposits made into the Account within the immediately preceding sixty (60) days, or (4) the account ownership, naming convention, or other details associated with the withdrawal account, do not match the Account. Where Customer makes a deposit into the Account and effectuates one or more transactions thereafter, subsequent withdrawal requests may be subject to delays, holds, or limits, as determined by Voyager in its sole discretion.

(E)  Discretion to Decline Execution of or Cancel Orders. Voyager may, in its sole discretion, decline the execution of any order for any reason, including, but not limited to, the size of an order, market conditions, Customer breach of this Customer Agreement, actual, potential, or apparent violation of any applicable laws, rules or regulations, insufficient or inadequate funds in the Account (including all commission, charges, taxes and any amount in addition to the price of the Cryptocurrency that Voyager reasonably considers may be necessary), or any other appropriate risk considerations. If Voyager accepts an order and then an event takes place which means that it is no longer reasonable for Voyager, in its sole determination, to act on that order, Voyager will be entitled to disregard or cancel Customer's order and Voyager shall not have any liability to Customer as a result of such action. Voyager further reserves the right not to execute orders for Cryptocurrency or to close any open positions therein without any further notice to Customer, in the following circumstances: (a) Customer order violates any applicable laws, rules, regulations, or appears intended to defraud or manipulate the market; (b) the existence of abnormal market conditions or a significant disruption in, or premature close of, trading in or of the underlying Cryptocurrency or the market or an exchange on which the underlying Cryptocurrency is traded; (c) Force Majeure (as defined in **Section 15 - Information**), or action by an exchange, regulatory or governmental authority that disrupts trading in the relevant security; or (d) Voyager is unable to obtain satisfactory liquidity in order to satisfy the order.

(F)   Trade Receipts. Voyager will prepare receipts outlining the details of orders and the corresponding transactions effected by a Customer through the Platform, in form and format as required pursuant to applicable law, rule or regulation (each, a "Trade Receipt"). Voyager will deliver and make available Trade Receipts to Customer electronically, through the App, or otherwise, in Voyager's sole discretion.

(G)  Cancellations. Customer agrees that it is Customer's responsibility to review order execution confirmations and statements promptly upon receipt. Notwithstanding any other provision in this Agreement, Trade Receipts will be considered binding on Customer unless Customer notifies Voyager of any objections within two (2) hours from the time Trade Receipts are delivered. Customer understands that any objection that Voyager receives from Customer consistent with the immediately preceding sentence is simply a request that Voyager attempt to cancel or modify an order. Voyager is not liable to Customer if Voyager is unable to cancel or modify an order. Customer understands and agrees that, if an order cannot be cancelled or modified, Customer is bound by any execution of the original order, even if Customer's objection to the transaction is ultimately determined to be valid.

(H)  No Guarantee Order Will be Filled. There is no guarantee that an order will be filled. An Order may fail to be filled or Voyager may, in its sole discretion, refuse to execute an order for any reason, including: (1) due to the failure, misuse, degradation, corruption, downtime, or unavailability of any Voyager or third party trading, communication or operations systems, (2) market volatility, (3) the existence, detection, or suspicion of unusual market, trading, or order activity, or (4) the existence, detection, or suspicion of fraud or any other activity that presents, or potentially presents to Voyager, in Voyager's

sole discretion, any commercial, economic, or reputational risk. Where a delay in fulfilling an order occurs for any reason, Voyager will attempt to execute the order as soon as reasonably practicable; provided that Voyager reserves the right to cancel a delayed order in the event of a material price fluctuation or for any other reason in accordance with this Customer Agreement. Voyager will not be liable or have any responsibility for any Losses (as defined below) suffered by Customer in connection with an order that is not filled or is erroneously filled.

(I)    Aggregation of Orders. Customer understands and acknowledges that Voyager may, in its sole discretion, aggregate Customer orders with the orders of other customers (a "Batched Order"). In such instances, a Customer order may not be placed or executed on a real-time basis, but rather batched with one or more orders from other Voyager customers. The price of a particular Cryptocurrency may be higher or lower at the time of execution of a Batched Order as compared to the time at which the Customer's original order was placed. A Batched Order may only partially fill, in which case some or part of the order is executed. In the event of a partial fill, Voyager will allocate the purchased Cryptocurrency or proceeds among the participating Customers in the Batched Order in a pro-rata fashion. A Batched Order may become fully executed through one or more partial fills, in which case the price of the relevant Cryptocurrency or amount of proceeds may change, or, for a variety of reasons, a Batched Order may only ever be executed partially. Voyager will not be liable or have any responsibility for any Losses suffered by Customer in connection with or as a result of a Customer order being included in a Batched Order.

(J)    Market Volatility. In the event of a market disruption or Force Majeure, Voyager may do one or more of the following: (a) suspend access to the Account; (b) prevent Customer from completing any and all actions via the Services, including closing any open positions in the Account; or (c) cease to follow any Customer instructions. Following any such event, when trading resumes, Customer acknowledges that prevailing market rates may differ significantly from the rates available prior to such event.

(K)    Suspension. If at any time any exchange, trading venue, or market suspends trading in any Cryptocurrency that forms the subject of a Customer order, then the applicable order may be suspended. In addition, Customer may not be able to sell any Cryptocurrency that Voyager holds on Customer's behalf or effectuate Withdrawals (defined in **Section 8 – Cryptocurrency Withdrawals** below) or USD withdrawals until such suspension is terminated and trading recommences. Following the lifting of a suspension, outstanding orders with respect to the affected Cryptocurrency will be executed as and when Voyager is reasonably able to do so. Voyager cannot guarantee the price at which such orders will execute.

(L)    Delisting or Non-Supported Cryptocurrency. Voyager, at all times and in its sole and absolute discretion, determines the Cryptocurrencies available on the Platform. Voyager may, at any time and in its sole and absolute discretion, (i) remove or restrict the trading of a particular Cryptocurrency on the Platform, either completely or limit such removal or restriction to a particular jurisdiction, and (ii) determine the time and date on which trading should cease or be restricted. Customers shall generally receive not less than 30 days' notice, which notice shall be posted in the App, (see **Section 23 – Consent to Electronic Delivery of Documents**) regarding any such actions, unless Voyager determines in its sole and absolute discretion that immediate removal or restriction of such Cryptocurrency is appropriate and/or necessary due to legal, regulatory, compliance, reputational or similar concerns. If at any time any Cryptocurrency that forms the subject of a Customer order is delisted or Voyager no longer supports the trading in such Cryptocurrency for any reason, then the applicable order will be immediately closed. If Voyager is notified that a Cryptocurrency in Customer's Account is likely to be delisted or removed or canceled from one or more exchanges or trading venues, and Voyager reasonably believes that trading in the Cryptocurrency will be materially affected by such delisting, removal or cancellation, then Customer authorizes Voyager to attempt to sell the Cryptocurrency on Customer's behalf at such time and price, and in such manner, as Voyager may determine in its sole discretion (a "Delisting Sale"). Customer understands and agrees that Voyager is not obligated to engage in a Delisting Sale and will not be liable for any loss sustained by Customer during Voyager's attempt to execute a Delisting Sale.

(M) Position Limits. Customer understands and acknowledges that Voyager may impose trading and/or position or volume limits on Customer's Account ("Limits"). Limits are subject to change at any time in Voyager's sole discretion. In the event that Customer attempts to place an order or effect a transaction that would result in the breach of a particular Limit, Voyager may, in its sole discretion, refuse to act upon such instructions. Customers may request details regarding Limits by contacting Voyager at support@investvoyager.com.

(N)    No Leverage. Customer understands that Voyager does not offer leverage as part of the Services. For the avoidance of doubt each purchase of Cryptocurrency must be fully funded.

8.    **Cryptocurrency Withdrawals**

Customer may arrange to withdraw and transfer Cryptocurrency in the Account to an external wallet (such process, a "***Withdrawal***"). Voyager will effectuate a Withdrawal based upon Customer's written instructions; provided that Customer understands and agrees that Voyager may, in its sole discretion, delay, modify or prohibit, in whole or in part, any requested Withdrawal, including in instances where: (a) Voyager believes such action is prudent in order to satisfy Voyager's anti-money laundering obligations, (b) Voyager suspects that the Customer, the wallet address, or the Withdrawal itself are connected to, associated with, or being used in furtherance of potential fraud, (c) Customer is in violation of the Customer Agreement, (d) the Withdrawal is being attempted within sixty (60) days of a deposit of USD or Cryptocurrency into the Account, or (e) outstanding fees are associated with the Account or the Account would, after the Withdrawal, have an insufficient balance to cover actual or anticipated fees. Customer understands that, once initiated on the network associated with the Cryptocurrency subject to the Withdrawal, a Withdrawal will typically be processed at the speed of such network, but that in certain situations, a Withdrawal may be delayed in connection with any latency, congestion, disruption, or other delay of such network. Customer understands that Voyager cannot reverse a Withdrawal that has been broadcast to a Cryptocurrency network. Customer also understands that Voyager reserves the right to cancel any pending Withdrawal as required by law or in response to a subpoena, court order, or other binding government order.

Customer understands that Customer is exclusively responsible for ensuring that a Withdrawal is being made to the correct or intended wallet address. Withdrawals cannot be reversed once broadcast to the relevant Cryptocurrency network. Voyager will not be liable for any loss that results from inaccurate, incomplete, or misleading details that Customer may provide in connection with a Withdrawal. Voyager will not bear any liability for any failure, error or delay in processing a Withdrawal. Voyager may, in its sole discretion, provide reasonable assistance to Customer in the event that a Customer requests reasonable assistance in connection with an attempted, failed, or otherwise erroneous Withdrawal. Voyager does not guarantee that any such assistance will result in the successful completion or remediation of a Withdrawal or the recovery of any Cryptocurrency. Voyager may charge fees in connection with any such assistance. Customer understands that a Withdrawal cannot be reversed once properly initiated.

With respect to certain Cryptocurrencies on the Voyager Platform, the Services available to Customer may only include the ability to purchase or sell Cryptocurrencies, and may not permit the transfer or withdrawal of all or any part of the balance held in such Cryptocurrencies (a "Non-Supported Transfer Cryptocurrency"). The Cryptocurrencies that Voyager supports for transfer or withdrawal as part of the Services on the Platform may change from time to time, in Voyager's sole and absolute discretion. Customer acknowledges and agrees that, unless Voyager supports the Cryptocurrency for withdrawal and transfer, Customer will not be able to take possession of Cryptocurrencies. Accordingly, a Non-Supported Transfer Cryptocurrency may not be withdrawn or transferred from Customer Account to any wallet, address, storage device or the like, or exchange, brokerage, bank, staking platform, custodian or the like. Subject to other limitations set forth herein, Customer shall have the option to sell Customer's Non-Supported Transfer Cryptocurrencies on the Voyager Platform and withdraw all or any part of the balance (held in U.S. dollars) from Customer Account.

9.    **Cryptocurrency Networks; Forks; Aidrops.**

(A)  Voyager does not own or control the underlying software protocols which govern the operation of a Cryptocurrency available for trading on the Platform. In general, the underlying protocols are open source and anyone can use, copy, modify, and distribute them. Voyager is not responsible for operation of the underlying protocols, and Voyager makes no guarantee of their functionality, security, or availability. The underlying protocols are subject to sudden changes in operating rules ("Forks"), and such Forks may materially affect the value, function, or even the name of the Cryptocurrency Voyager or its Custodian holds for Customer benefit. In the event of a Fork or any other similar operational change to a Cryptocurrency network Voyager may take all steps that it determines necessary to protect the security and safety of the Platform, including temporarily suspending Voyager operations (with or without advance notice to Customer). Voyager will use its reasonable efforts to provide notice to Customer of its response to any Fork or similar operational change affecting a Cryptocurrency. In response to a Fork or other similar operational change, Voyager may determine not to support such Cryptocurrency on the Platform. Customer understands and accepts the risks of Forks and other similar operating changes to Cryptocurrency available through the Platform. Customer agrees that Voyager is not responsible for any loss of value that Customer may experience as a result, whether directly or indirectly, from any such Fork or similar operating change. Customer further acknowledges and accepts that Voyager has no obligation or responsibility to assist Customer with respect to any Cryptocurrency that Voyager determines not to support.

(B)  In the event that a Cryptocurrency network attempts to or does contribute (an "Airdrop") Cryptocurrency ("Airdropped Cryptocurrency") or any other similar event to a Cryptocurrency network, then Voyager may, in its sole discretion, take steps that it determines necessary to manage the Platform, including how and whether to incorporate Airdropped Cryptocurrency into the Platform, distribute it to Customer or do nothing, or such other action or inaction that Voyager deems appropriate in its sole discretion. Customer understands and accepts the risks of Airdrops and other similar events to a Cryptocurrency available through the Platform, and understands and agrees that ownership of a Cryptocurrency in the Voyager App for which an Airdrop is occurring on the date of such Airdrop does not in and of itself grant entitlement to or ownership of the Airdropped Cryptocurrency. Customer agrees that Voyager is not responsible for any loss of value that Customer may experience as a result, whether directly or indirectly, from any such Airdrop or similar event. Customer further acknowledges and accepts that Voyager has no obligation or responsibility to assist Customer with respect to any Cryptocurrency that Voyager determines not to support whether or not Voyager receives an Airdropped Cryptocurrency by virtue of its holding omnibus custody of the Cryptocurrency related to such airdrop. To the extent that Voyager is aware of the Airdrop, Voyager will use its reasonable efforts to provide notice to Customer of its response to any Airdrop. Voyager may, in its sole discretion, elect to: (1) subject to potential fees, support the Airdropped Cryptocurrency and update the Account as appropriate, (2) abandon or otherwise not pursue obtaining the Airdropped Cryptocurrency from the relevant network, (3) liquidate the Airdropped Cryptocurrency and distribute the proceeds to Customer or hold the funds in Customers Account for the benefit of Customer, (4) deliver the Airdropped Cryptocurrency to Customer within a time period as determined by Voyager in its sole discretion, together with any credentials, keys, or other information sufficient to gain control over such Airdropped Cryptocurrency (subject to the withholding and retention by Voyager of any amount reasonably necessary, as determined by Voyager in its sole discretion, to fairly compensate Voyager for the efforts expended to obtain and deliver such Airdropped Cryptocurrency to Customer), or (5) determine, in its sole discretion, that the Airdrop, although received by Voyager, does not have sufficient market support or sufficient value to warrant Voyager incorporating the Airdropped Cryptocurrency into the Platform in any way or distribute the Airdropped Cryptocurrency to its users.

## 10.  Rewards Program

By entering into this Customer Agreement, and subject to clause (F) of this Section 10, Customer understands, acknowledges and agrees that Customer is opting into the Voyager Earn Program (the "Rewards Program"). The Rewards Program allows Customer to earn additional Cryptocurrency of the same kind of Cryptocurrency held in Customer's Account (the "Rewards"). The terms and conditions governing the Rewards Program are as follows:

(A)  Overview. Each Customer participating in the Rewards Program acknowledges and agrees that Voyager may rely on the consent to rehypothecate granted by each customer pursuant to **Section 5(D) – Consent to Rehypothecate** with respect to Cryptocurrency held in such Customer Account. Such consent to rehypothecate expressly includes allowing Voyager to (1) stake Cryptocurrency held in an omnibus fashion through various blockchain protocols (either by delegating Cryptocurrencies to the financial institutions which, in return, stake such Cryptocurrencies or using staking service providers to stake Cryptocurrencies); and (2) lend such Cryptocurrency to various institutional third parties (each, a "Borrower") determined at Voyager's sole discretion (each, a "Loan"). Voyager enters into these Loans as principal and independently negotiates with each Borrower the terms of a Loan, but these Loans are generally unsecured, for a fixed term of less than one year or can be repaid on a demand basis, and provide a fee payable in Cryptocurrency based on the percentage and denominated in the Cryptocurrency lent. Voyager selects which and how much Cryptocurrencies are available for such staking and lending.

(B)  How Rewards Are Calculated. Rewards earned on Cryptocurrency are variable. Voyager will typically publish anticipated reward rates once per month on or before the first business day of each month. Reward rates may be tiered, with specified rates in effect at any time only applied to specified portions of amounts of Cryptocurrency held in the Account. Rewards will be payable in arrears and added to the Account on or before the fifth business day of each calendar month for the prior calendar month. Voyager uses the daily balance method to calculate the Rewards on the Account. This method applies a daily periodic rate to the specified principal in the Account each day. The daily periodic rate is calculated by dividing the applicable interest rate by three hundred sixty-five (365) days, even in leap years. Voyager will determine the Reward rates and tiers for each month in Voyager's sole discretion, and Customer acknowledges that such Rewards may not be equivalent to benchmark interest rates observed in the market for bank deposit accounts.

(C)  How Rewards Are Paid. Rewards will be credited to the Account within five (5) business days following the end of each calendar month. The Account must be open on such date in order to receive this payment of Rewards. All Rewards will be

paid in Cryptocurrency. Once Rewards have been credited to the Account, Customer may earn Rewards on such Cryptocurrency in future months. Rewards will be paid in kind (i.e., in the type of Cryptocurrency that is held in the Account).

(D)  <u>Withdrawals</u>. Customer may request a Withdrawal at any time, consistent with the mechanics outlined in **Section 8 – Cryptocurrency Withdrawals**. However, for Customers in the Rewards Program, Withdrawals may be delayed, or in some instances subject to partial completion. Customer understands and acknowledges that Customer may only be able to earn Rewards to the extent that Customer satisfies certain minimum Cryptocurrency balance requirements ("Minimum Balance"). Voyager will publish Minimum Balance details on the Platform. Minimum Balance details are subject to change at any time. If a Withdrawal results in a particular Cryptocurrency balance in Customer's Account falling below a Minimum Balance, then Customer will not earn Rewards with respect to such Cryptocurrency.

**(E)  REWARDS PROGRAM RISKS. Participating in the Rewards Program may put Customer's Cryptocurrency at risk.**

> **(1)   Voyager will use Customer's Cryptocurrency to engage in staking and lending activities. Loans made by Voyager may not be secured. Customer has exposure to both Voyager's and each Borrower's credit risk. In the event of a Borrower default, Voyager does not have an obligation or the ability to return affected Cryptocurrency back to Customer's Account.**

> **(2)   Loans may not be secured. Cryptocurrency subject to all lending activity or certain staking activity delegated to a third party financial institution will not be held by Voyager or its Custodians. Customer understands and acknowledges that Voyager is not responsible for any Cryptocurrency that Voyager does not itself hold or that is not held with one of its Custodians.**

> **(3)   The Rewards Program and Voyager's underlying staking and lending activities are not insured.**

> **(4)   Customer understands each of the aforementioned risks and accepts the risk of loss associated with participating in the Rewards Program up to, and including, total loss of all Customer Cryptocurrency.**

(F)  Opt Out. Customer may opt-out of the Rewards Program at any time by doing so in the App.

**CUSTOMER UNDERSTANDS AND ACKNOWLEDGES THAT EVEN IF CUSTOMER OPTS OUT OF THE REWARDS PROGRAM, CUSTOMER WILL REMAIN SUBJECT TO THE TERMS OF SECTION 5 – ACCOUNT FUNDING; REGULATORY TREATMENT. THEREFORE, EVEN IF CUSTOMER DOES NOT PARTICIPATE IN THE REWARDS PROGRAM, CUSTOMER CRYPTOCURRENCY WILL STILL BE SUBJECT TO BEING HELD BY CUSTODIANS, WHICH MAY BE: (1) LOCATED WITHIN THE U.S. OR IN A FOREIGN JURISDICTION OR (2) HELD IN VOYAGER'S NAME OR OTHERWISE, OR (3) PLEDGED, REPLEDGED, HYPOTHECATED, SOLD, LOANED, STAKED OR OTHERWISE TRANSFERRED AT CUSTOMER'S SOLE RISK AND IN VOYAGER'S SOLE DISCRETION.**

**11.  Account Termination**

(A)  <u>Termination by Customer.</u> Customer may request to close or terminate the Account at any time by notifying Voyager Support at support@investvoyager.com and requesting in writing that their Account be closed. Closing the Account will not affect any rights and obligations incurred prior to the date of Account closure. Upon the termination of the Account, Customer authorizes Voyager to immediately settle all outstanding transactions in the Account and liquidate outstanding positions in the Account, as necessary. Customer shall be required to provide transfer instructions with respect to USD or Cryptocurrency remaining in the Account. Customer understands and agrees that Customer is responsible for any fees, costs, expenses, charges, or obligations (including, but not limited to, attorney and court fees or transfer costs of funds or Cryptocurrency) associated with closing the Account. In the event that the costs of closing the Account exceed the value in the Account, Customer will be responsible for reimbursing Voyager. Voyager may delay or refuse to terminate an Account, in instances it deems appropriate or necessary, in its sole discretion, including but not limited to, where: (a) Voyager believes such action is prudent in order to satisfy Voyager's anti-money laundering obligations, (b) Voyager suspects that the Customer is connected to, engaged in, or acting in furtherance of fraud, or potential fraud, (c) Customer is in violation of the Customer Agreement, (d) termination is being attempted within sixty (60) days of a deposit of USD or Cryptocurrency into the Account, or (e) the Account has outstanding actual or anticipated fees or other charges against it (the "Voyager Hold Purposes").

(B) <u>Termination by Voyager</u>. Customer agrees that, without notice, Voyager may terminate this Customer Agreement, suspend, restrict, limit or shutdown all or part of the Services, the Account, as well as Customer's access to the Platform, with or without cause at any time and effective immediately, whether for maintenance or otherwise. Voyager shall not be liable to Customer or any third party for the termination or suspension of the Services or Platform, or any claims related to such termination or suspension.

(C) <u>Effect of Termination</u>. Upon termination or cancellation of the Account, Customer must provide Voyager with transfer instructions, together with all other information that Voyager may reasonably request, in order to transfer any remaining Cryptocurrency out of the Account. All such transfers must be completed within ninety (90) days following Account deactivation or cancellation. Voyager may delay or refuse to effectuate such a transfer or termination, in instances it deems appropriate or necessary, in its sole discretion, including, but not limited to, the Voyager Hold Purposes described in Section 11(A) above. If Cryptocurrency is not transferred out of the Account within ninety (90) days of the termination or cancellation of the Account, Customer hereby agrees that Voyager is permitted to sell any remaining Cryptocurrency on the open market at the prevailing market price and return the proceeds (less any damages, fee, costs, or other obligations to which Voyager is entitled) to any valid bank account linked to the Account.

## 12. Customer Representations, Warranties and Responsibilities

Customer represents, warrants, and/or acknowledges, as applicable, as of the date of this Customer Agreement, and on each date that the Customer utilizes the Services:

(A) <u>Self-Directed Account.</u> Customer understands and acknowledges that the Account is self-directed, and that Customer is solely responsible for any and all orders placed in the Account. Customer understands that Customer is fully responsible for safeguarding Customer's login credentials and that Customer is responsible for any trade placed through, originating from, or associated with the Account whether placed by Customer or another third-party as a result of Customer's failure to safeguard the login credentials. Customer represents that all orders entered by Customer through the Account are unsolicited and based upon Customer's decisions.

(B) <u>Investment Advice</u>. Customer understands that Voyager, together with its affiliates, does not provide recommendations or any investment advice. Customer represents that Customer has not received any investment advice from Voyager, or its affiliates, and does not expect to receive any investment advice from Voyager or any of its affiliates. Customer understands and agrees that under no circumstances will Customer's use of the Platform or Account be deemed to create a relationship that includes the provision of or tendering of investment advice.

(C) <u>Research Materials.</u> To the extent that research materials or similar information is made available through the Platform, the Customer understands that these materials are intended for information and educational purposes only and they do not constitute a recommendation to enter into any transactions or to engage in any investment strategies.

(D) <u>Anti-Money Laundering</u>. Customer represents and warrants to Voyager that Customer is not: (a) located in, under the control of, or a national or resident of any country to which the United States has embargoed goods or services, (b) identified as a "Specially Designated National," (c) placed on the Commerce Department's Denied Persons List, and (d) a person who is subject to any law, regulation, or list of any government authority (including, without limitation, the U.S. Office of Foreign Asset Control list) that would prohibit or limit Voyager's ability to conduct business with Customer. Customer further represents and warrants that Customer will not use the Platform if the laws of Customer's country or jurisdiction prohibit Customer from doing so in accordance with this Agreement.

(E) <u>Customer Information</u>. Customer: (i) certifies that the information contained in this Customer Agreement, the Account application, and any other document that Customer furnishes to Voyager in connection with the Account is complete, true, and correct; (ii) authorizes Voyager to contact any individual or firm noted on documents provided to Voyager and any other normal sources of debit or credit information; (iii) authorizes anyone so contacted to furnish such information to Voyager as Voyager may request; and (iv) agrees that this Customer Agreement, the Account application, and any other document Customer furnishes in connection with the Account is Voyager's property. Customer shall promptly advise Voyager of any changes to the information in such agreements and documents in writing within ten (10) calendar days. Customer authorizes Voyager to obtain reports and provide information to others concerning Customer's creditworthiness and business conduct. Upon Customer request, Voyager agrees to provide Customer a copy of any report so obtained. Voyager may retain this Customer Agreement, the Account application, and all other such documents and their respective records at Voyager's sole discretion. Customer understands that Voyager may take steps to verify the accuracy of the information Customer provides

to Voyager in the Voyager Account application or otherwise, including by directly or indirectly making any inquiries Voyager considers necessary to verify Customer identity or protect against fraud and that Voyager may restrict Customer access to the Account or take other action Voyager reasonably deems necessary pending such verification.

(F)   Risks. The Customer understands that all investments involve risk, that losses may exceed the principal invested, and that the past performance of a Cryptocurrency, industry, sector, market, or financial product does not guarantee future results or returns. Customer further understands that there are risks associated with utilizing an internet-based trading system including, without limitation, the failure of hardware, software and internet connections as well as the risk of malicious software introductions.

(G)   Assistance by Voyager. Customer understands that when Customer requests assistance from Voyager or Voyager employees in using the tools available on the Website or the App, it will be limited to an explanation of the tool's functionality and, if requested by Customer, to the entry by Voyager or Voyager or its affiliates employees of variables provided by Customer, and that such assistance does not constitute investment advice, a recommendation, an opinion with respect to the suitability of any transaction, or solicitation of any orders.

(H)   Unavailability in Certain Jurisdictions. Customer understands that the Service is not provided to, and may not be used by, any person in any jurisdiction where the provision or use thereof would be contrary to applicable laws and regulations. Voyager is not available in all jurisdictions. Customer agrees to refrain from using the Service if Customer begins to reside in a jurisdiction where the Service would violate any of the laws and regulations of such jurisdiction. Customer will not provide incorrect information about Customer's address, residency or domicile and will immediately inform Voyager if there is any change to previously provided information.

(I)   No Tax or Legal Advice. Customer understands that neither the Customer Agreement or any other document or communication received from Voyager shall be construed as providing any legal, accounting, estate, actuary, or tax advice. Customer agrees to review publicly available information regarding the Customer's positions in the Account, Account statements and Trade Confirmations. Customer must rely upon its own representatives, including its own legal counsel and accountant, as to legal, tax and related matters concerning any of Customer's activities with respect to the Account, including any assets or transactions in the Account and for preparation of any legal, accounting or tax documents.

## 13.  Risk Disclosure Statement

Customer represents that they have read and understands the Voyager Cryptocurrency Disclosure Statement, available at https://www.investvoyager.com/riskdisclosure/.

## 14.  Limited License; Restrictions; Related Terms

(A)   Limited License. Subject to the registration and eligibility requirements and the terms and conditions set forth herein, Voyager hereby grants to Customer a limited, non-exclusive and non-transferable license to (i) download the App from an authorized application store and install and use the App in accordance with this Customer Agreement and any and all other documentation governing the use of the App, and (ii) use the Services, made available in or otherwise accessible through the App.

(B)   Restrictions. Customer will not: (i) copy the App, except as expressly permitted by this license; (ii) modify, translate, adapt, or otherwise create derivative works or improvements, whether or not patentable, of the App; (iii) reverse engineer, disassemble, decompile, decode, or otherwise attempt to derive or gain access to the source code of the App or any part thereof; (iv) remove, delete, alter, or obscure any trademarks or any copyright, trademark, patent, or other intellectual property or proprietary rights notices from the App, including any copy thereof; (v) rent, lease, lend, sell, sublicense, assign, distribute, publish, transfer, or otherwise make available the App, or any features or functionality of the App, to any third-party for any reason, including by making the App available on a network where it is capable of being accessed by more than one device at any time; or (vi) remove, disable, circumvent, or otherwise create or implement any workaround to any copy protection, rights management, or security features in or protecting the App.

(C)   Related Terms. Customer acknowledges and agrees that the App is provided under license, and not sold, to Customer. Customer does not acquire any ownership interest in the App under this Customer Agreement, or any other rights thereto other than to use the App in accordance with the license granted, and subject to all terms, conditions, and restrictions, under this Customer Agreement. Voyager and its licensors reserve and shall retain their entire right, title, and interest in and to the

App, including all copyrights, trademarks, and other intellectual property rights therein or relating thereto, except as expressly granted to Customer in this Customer Agreement. Customer acknowledges that when Customer downloads, installs, or uses the App, Voyager may use automatic means (including, for example, cookies and web beacons) to collect information about Customer's Mobile Device (as defined below) and about Customer's use of the App. Customer also may be required to provide certain information as a condition for downloading, installing, or using the App or certain of its features or functionality. All information Voyager collects through or in connection with the App is subject to Voyager's Privacy Policy. By downloading, installing, using, and providing information to or through the App, Customer consents to all actions taken by Voyager with respect to Customer information in compliance with the Privacy Policy. Voyager may, from time to time, in its sole discretion, develop and provide App updates, which may include upgrades, bug fixes, patches, other error corrections, and/or new features (collectively, including related documentation, "Updates"). Updates may also modify or delete in their entirety certain features and functionality. Customer agrees that Voyager has no obligation to provide any Updates or to continue to provide or enable any particular features or functionality. Based on Customer's Mobile Device settings, when Customer's Mobile Device is connected to the internet either (i) the App will automatically download and install all available Updates; or (ii) Customer may receive notice of or be prompted to download and install available Updates. Customer shall promptly download and install all Updates and acknowledge and agree that the App or portions thereof may not properly operate should Customer fail to do so. Customer further agrees that all Updates will be deemed part of the App and be subject to all terms and conditions of this Customer Agreement. Customer acknowledges and agrees that, in order to use certain features and functions of the App, including the ability to purchase and sell Cryptocurrency, Customer must have and maintain an active Account. In addition, Customer acknowledges and agrees that Customer may not be able to access all or some of the Services through the App outside of jurisdictions where Voyager is approved to conduct business. Customer acknowledges and agrees that Voyager may suspend or terminate, at any time and without notice to Customer, Customer's license to download, install, and use the App, and to access and use Services through the App.

## 15. Information

The Platform and Services may include and make available certain Information. "Information" includes, without limitation, market data, various analytical tools (such as price quotes, exchange rates, news, headlines and graphs), links to other websites, newsletters and other information ("Third Party Information") provided by third parties (each, a "Third Party" and collectively, the "Third Parties"). By making Information available through the Platform, neither Voyager nor any of its Affiliates endorse, represent, warrant, guarantee, sponsor or otherwise are responsible for the accuracy, correctness, timeliness, completeness or suitability of such Information. Information is provided solely for the Customer's personal and noncommercial use. Customer understands that Voyager is not required to continue to provide or update any Information and that Voyager may cease to provide such Information at any time. For the avoidance of doubt, Voyager is not responsible for the termination, interruption, delay or inaccuracy of any Information. Customer undertakes not to enable deep linking or any other form or re-distribution or re-use of the Information. None of the Information may be redistributed or used for any purpose other than with respect to the Services, including, without limitation, any trading activity outside of the Platform and the Services. In addition, certain Third Parties may impose additional restrictions and rules with respect to the use of Third Party Information, the terms of which are available on the relevant Third Party websites.

Third Party Information may also include links to other websites or resources. Customer acknowledges and agrees that neither Voyager nor the Third Parties are responsible for the availability of such external sites or resources. Voyager and the Third Parties do not endorse and are not liable for any content, advertising, products, or other materials on or available through such sites or resources.

Voyager does not prepare, edit, or endorse Third Party Information. Voyager does not guarantee the accuracy, timeliness, completeness or usefulness of Third Party Information, and is not responsible or liable for any content, advertising, products, or other materials on or available from third party sites. Customer will not hold Voyager and/or any Third Party liable in any way for (a) any inaccuracy of, error or delay in, or omission of the Information; or (b) any loss or damage arising from or occasioned by (i) any error or delay in the transmission of such Information; (ii) interruption in any such Information due either to any negligent act or omission by any party to any "Force Majeure" (e.g., flood, extraordinary weather conditions, earthquake or other act of God, fire, war, insurrection, epidemic, pandemic, riot, labor dispute, accident, action of government, communications or power failure, equipment or software malfunction); (iii) to any other cause beyond the reasonable control of Voyager and/or Third Party; or (iv) non-performance.

## 16.  Third Party Services

Voyager may, at Voyager's sole discretion, arrange for certain actions on the Platform to be performed by or through certain Third Parties. In addition, Customer may be made aware of, or offered, additional services, content, features, products, non-Voyager applications, offers and promotions provided through Third Parties ("Third Party Services"). Voyager's inclusion or promotion of Third Party Services on the Platform does not reflect a sponsorship, endorsement, approval, investigation, verification and certification or monitoring of such Third Party Services by Voyager. Customer's acquisition of Third Party Services, and any exchange of data between Customer and any provider of Third Party Services, is solely between Customer and such Third Party. Customer chooses to use any Third Party Services at Customer's own risk, and under terms and conditions agreed between Customer and such Third Party. Customer further acknowledges that Voyager has no control over Third Party Services and that Customer may be charged fees by the Third Party Service provider. Voyager is not responsible for any Third Party Services' fees. Customer is solely responsible for the use of any Third Party Service, and Customer agrees to comply with all terms and conditions applicable to any Third Party Service when using such.

**17. Prohibited Use**

In connection with Customer's use of the Services, Customer agrees and represents that it will not engage in any Prohibited Business or Prohibited Use (each as defined below). Voyager reserves the right to cancel or suspend an Account or block transactions or freeze funds or Cryptocurrency immediately and without notice if Voyager determines, in its sole discretion, that an Account is associated with a Prohibited Use or a Prohibited Business.

(A) Prohibited Use. Without express written consent from Voyager and compliance with applicable laws and regulations, Customer may not use an Account to engage in the following categories of activity ("Prohibited Uses"). Each of the below examples are representative, but not exhaustive. If at any time Customer is uncertain as to whether or not Customer's use of the Services involves a Prohibited Use, or if Customer has any questions about how these requirements apply, please contact Voyager at support@investvoyager.com. By opening an Account, Customer confirms that it will not use an Account to do any of the following:

(1) Investment Activity. Make statements as to Customer's eligibility to provide investment advice, portfolio management or any other services or activities which may require a license, registration or notification in the state where the Customer is resident or the state where other Customers are resident.

(2) Endorsements. Make statements that Voyager or its Affiliates endorse, maintain any control or guarantee the accuracy or completeness of any information published, posted or shared by Customer with other Customers.

(3) Unlawful Activity. Activity which would violate, or assist in violation of, any law, statute, ordinance, or regulation, sanctions programs administered in the countries where Voyager conducts business, including, without limitation, the U.S. Department of Treasury's Office of Foreign Assets Control ("OFAC"), or which would involve proceeds of any unlawful activity; publish, distribute or disseminate any unlawful material or information.

(4) Abusive Activity. Actions which impose an unreasonable or disproportionately large load on Voyager's infrastructure, or detrimentally interfere with, intercept, or expropriate any system, data, or information; transmit or upload any material to the Platform that contains viruses, trojan horses, worms, or any other harmful or deleterious programs; attempt to gain unauthorized access to the Platform, other Customers' Accounts, computer systems or networks connected to the Platform, through password mining or any other means; use Account information of another party to access or use the Platform; or transfer Customer's Account access or rights to Customer's Account to a third party, unless by operation of law or with the express permission of Voyager.

(5) Circumvention and Reverse Engineering. Unlawfully access or attempt to gain access, reverse engineer or otherwise circumvent any security measures that Voyager has applied to the Services or the Platform.

(6) Abusive Trading Techniques. Utilize trading strategies aimed at exploiting errors in prices or concluding trades at off-market prices, or taking advantage of internet delays (such a scalping or sniping), including, without limitation, entering into transactions or combinations of transactions which taken together or separately are for the purpose of manipulating the Platform and the Services.

(7) Abuse Other Customers. Interfere with another individual's or entity's access to or use of any Services; defame, abuse, extort, harass, stalk, threaten or otherwise violate or infringe the legal rights (such as, but not limited to, rights of privacy, publicity and intellectual property) of others; incite, threaten, facilitate, promote, or encourage hate, racial

intolerance, or violent acts against others; harvest or otherwise collect information from the Platform about others, including without limitation, email addresses, without proper consent.

(8)  Fraud: Activity which operates to defraud Voyager, Voyager customers, or any other person; provide any false, inaccurate, or misleading information to Voyager.

(9)  Gambling: Lotteries; bidding fee auctions; sports forecasting or odds making; fantasy sports leagues with cash prizes; internet gaming; contests; sweepstakes; games of chance.

(10)  Intellectual Property Infringement: Engage in transactions involving items that infringe or violate any copyright, trademark, right of publicity or privacy or any other proprietary right under the law, including, without limitation, sales, distribution, or access to counterfeit music, movies, software, or other licensed materials without the appropriate authorization from the rights holder; use of Voyager intellectual property, name, or logo, including, without limitation, use of Voyager trade or service marks, without express consent from Voyager or in a manner that otherwise harms Voyager or the Voyager brand; any action that implies an untrue endorsement by or affiliation with Voyager.

(11)  Competition: Utilize confidential information received by Customer from Voyager or Third Party to develop a service that competes with the Services, or the services of any of Voyager's Affiliates.

(B)  Prohibited Business. In addition to the Prohibited Uses described above, the following categories of businesses, business practices, and sale items are barred from the Services ("Prohibited Businesses"). Most Prohibited Businesses categories are imposed by law as well as card networks, the requirements of Voyager's banking providers or processors. The specific types of use listed below are representative, but not exhaustive. If Customer is uncertain as to whether or not Customer's use of the Services involves a Prohibited Business, or if Customer has any questions about how these requirements apply, please contact Voyager support@investvoyager.com. By opening an Account, Customer confirms that Customer will not use the Services in connection with any of the following businesses, activities, practices or items:

(1)  Intellectual Property or Proprietary Rights Infringement: Sales, distribution, or access to counterfeit music, movies, software, or other licensed materials without the appropriate authorization from the rights holder.

(2)  Counterfeit or Unauthorized Goods: Unauthorized sale or resale of brand name or designer products or services; sale of goods or services that are illegally imported or exported or which are stolen.

(3)  Drugs and Drug Paraphernalia: Sale of narcotics, controlled substances, and any equipment designed for making or using drugs, such as bongs, vaporizers, and hookahs.

(4)  Pseudo-Pharmaceuticals: Pharmaceuticals and other products that make health claims that have not been approved or verified by the applicable local or national regulatory body.

(5)  Substances Designed to Mimic Illegal Drugs: Sale of a legal substance that provides the same effect as an illegal drug (e.g., salvia, kratom).

(6)  Multi-level Marketing: Pyramid schemes, network marketing, and referral marketing programs.

(7)  Unfair, Predatory or Deceptive Practices: Investment opportunities or other services that promise high rewards; Sale or resale of a service without added benefit to the buyer; resale of government offerings without authorization or added value; sites that Voyager determines, in its sole discretion, to be unfair, deceptive, or predatory towards consumers.

(8)  High Risk Businesses: Any businesses that Voyager believes poses elevated financial risk, legal liability, or violates card network or bank policies.

## 18. Privacy

By accessing the Platform and using the Services, Customer is consenting to having Customer's personal data transferred to and processed by Voyager. For information about how Voyager collects, uses, shares and otherwise processes Customer information, please see Voyager's Privacy Policy.

By entering into this Customer Agreement, Customer acknowledges receipt of the Privacy Policy, which may be amended from time to time by posting a new version to the Website, or as made available through the App.

**19.  State License Disclosures**

Voyager maintains various licenses to engage in money transmission activities. Voyager maintains licenses in each of the jurisdictions identified in the Voyager State License Disclosure, available here. By accessing the Platform and using the Services, Customer acknowledges receipt of the Voyager State License Disclosure.

**20.  Limitation of Liability; Indemnification**

Customer agrees that the Customer's use of the Information, Services and Platform is provided by Voyager at the Customer's sole risk. The Platform, Services, Information, or any other information or features provided, or made available by, Voyager, any of its Affiliates, or any Third Party, including, without limitation, Third Party Services are provided on an "as is," "as available" basis without warranties of any kind, either express or implied, statutory (including, but not limited to, timeliness, truthfulness, sequence, completeness, accuracy, freedom from interruption), implied warranties arising from trade usage, course of dealing, course of performance, or the implied warranties of merchantability or fitness for a particular purpose or application, other than those warranties which are implied by and incapable of exclusion, restriction or modification under the laws applicable to the Customer Agreement.

**THE CUSTOMER UNDERSTANDS AND AGREES THAT VOYAGER, ITS AFFILIATES, AND THEIR RESPECTIVE PARTNERS, MANAGING DIRECTORS, DIRECTORS, OFFICERS, EMPLOYEES, AGENTS, AND THIRD PARTY PROVIDERS WILL NOT BE LIABLE TO THE CUSTOMER OR TO THIRD PARTIES UNDER ANY CIRCUMSTANCES, OR HAVE ANY RESPONSIBILITY WHATSOEVER, FOR ANY SPECIAL, INDIRECT, INCIDENTAL, PUNITIVE OR CONSEQUENTIAL DAMAGES (INCLUDING, WITHOUT LIMITATION, LOST PROFITS, TRADING LOSSES, AND DAMAGES) THAT THE CUSTOMER MAY INCUR IN CONNECTION WITH THE CUSTOMER'S USE OF THE SERVICES (INCLUDING BUT NOT LIMITED TO THIRD PARTY SERVICES) OR THE PLATFORM PROVIDED BY VOYAGER UNDER THE CUSTOMER AGREEMENT. VOYAGER, ITS AFFILIATES AND ITS AND THEIR RESPECTIVE PARTNERS, DIRECTORS, OFFICERS, EMPLOYEES, AND AGENTS SHALL NOT BE LIABLE BY REASON OF DELAYS OR INTERRUPTIONS OF INFORMATION, THE PLATFORM OR SERVICES (INCLUDING BUT NOT LIMITED TO THIRD PARTY SERVICES) OR TRANSMISSIONS, OR FAILURES OF PERFORMANCE OF VOYAGER'S, ITS AFFILIATES, OR THIRD PARTY SYSTEMS, REGARDLESS OF CAUSE, INCLUDING, WITHOUT LIMITATION, THOSE CAUSED BY GOVERNMENTAL OR REGULATORY ACTION, THE ACTION OF ANY EXCHANGE OR OTHER SELF REGULATORY ORGANIZATION, OR THOSE CAUSED BY SOFTWARE OR HARDWARE MALFUNCTIONS.**

Except as otherwise provided by law, Voyager, its Affiliates and their respective partners, directors, officers, employees or agents (collectively, "Indemnified Parties") shall not be liable for any expenses, losses, costs, damages, liabilities, demands, debts, obligations, penalties, charges, claims, causes of action, penalties, fines and taxes of any kind or nature (including, without limitation, legal expenses and attorneys' fees) (whether known or unknown, absolute or contingent, liquidated or unliquidated, direct or indirect, due or to become due, accrued or not accrued, asserted or unasserted, related or not related to a third party claim, or otherwise) (collectively, "Losses") by or with respect to any matters pertaining to the Customer Agreement, the Services, Information, or Third Party Services, except to the extent that such Losses are actual Losses and are determined by a court of competent jurisdiction or an arbitration panel in a final non-appealable judgment or order to have resulted solely from the Voyager's gross negligence or intentional misconduct. In addition, the Customer agrees that the Indemnified Parties shall have no liability for, and the Customer agrees to indemnify, defend and hold harmless the Indemnified Parties from all Losses that result from: (i) any noncompliance by the Customer with any of the terms and conditions of the Customer Agreement or Third Party Services; (ii) any third-party actions related to the Customer's receipt and use of any Information, Third Party Services, other third party content, or other such information obtained through the Platform, whether authorized or unauthorized under the Customer Agreement; (iii) any third party actions related to the Customer's use of the Platform, Information, or Third Party Services; (iv) the Customer or the Customer's agent's misrepresentation or alleged misrepresentation, or act or omission; (v) Indemnified Parties following the Customer or the Customer's agent's directions or instructions, or failing to follow the Customer or the Customer's agent's unlawful or unreasonable directions or instructions; (vi) any activities or services of the Indemnified Parties in connection with an Account (including, without limitation, any technology services, reporting, trading, or research services); (vii) the occurrence of, and any Indemnified Parties' action or inaction with respect to, a Potential Fraudulent Event (as defined in paragraph 3 of Section 21 below); or (viii) the failure by any person not controlled by the Indemnified Parties and their Affiliates to perform any obligations to the Customer. Further, if the Customer authorizes or allows third parties to gain access to the Platform, Information or the Account, whether by virtue of Third Party Services or otherwise, the Customer will indemnify, defend and hold harmless Voyager, its Affiliates

and its and their respective directors, officers, employees and agents against any Losses arising out of claims or suits by such third parties based upon or relating to such access and use. Voyager does not warrant against loss of use or any direct, indirect or consequential damages or Losses to the Customer caused by the Customer's assent, expressed or implied, to a third party accessing an Account or information, including, without limitation, access provided through any Third Party Service.

The Customer also agrees that Indemnified Parties will have no responsibility or liability to the Customer in connection with the performance or non-performance by any exchange, clearing organization, data provider, or other third party (including, but not limited to, other money services businesses, clearing firms, banks, liquidity providers, or market makers) or any of their respective agents or affiliates, of its or their obligations relative to any Cryptocurrency or other products. The Customer agrees that Indemnified Parties will have no liability, to the Customer or to third parties, or responsibility whatsoever for: (i) any Losses resulting from a cause over which Indemnified Parties do not have direct control, including, without limitation, the failure of mechanical equipment, hack, unauthorized access, theft, operator errors, government restrictions, force majeure, market data availability or quality, exchange rulings or suspension of trading; and (ii) any special, indirect, incidental, consequential, punitive or exemplary damages (including, without limitation, lost profits, trading losses and damages) that the Customer may incur in connection with the Customer's use of the Platform, and other services provided by Indemnified Parties under the Customer Agreement or in connection therewith.

**CUSTOMER AGREES TO INDEMNIFY VOYAGER FOR ACTUAL, REASONABLE LEGAL COSTS AND EXPENSES DIRECTLY RELATED TO THE ACCOUNT THAT ARE A RESULT OF ANY REGULATORY INQUIRY, LEGAL ACTION, LITIGATION, DISPUTE, OR INVESTIGATION THAT ARISES OR RELATES TO CUSTOMER OR CUSTOMER'S USE OF THE ACCOUNT OR THE SERVICES. CUSTOMER UNDERSTANDS THAT, AS A RESULT, VOYAGER WILL BE ENTITLED TO CHARGE THE ACCOUNT FOR SUCH COSTS WITHOUT NOTICE, INCLUDING LEGAL AND ENFORCEMENT RELATED COSTS THAT VOYAGER INCURS. ANY WITHHOLDING WILL LAST FOR A PERIOD OF TIME THAT IS REASONABLY NECESSARY TO RESOLVE ANY REGULATORY OR LEGAL ISSUE AT HAND, AND VOYAGER MAY PLACE ANY AMOUNTS GARNERED FROM CUSTOMER IN A SEPARATE ACCOUNT, AND WILL PAY TO CUSTOMER THE REMAINING BALANCE AFTER ANY NOTED ISSUE HAS BEEN RESOLVED. FURTHERMORE, CUSTOMER AGREES THAT WHERE SUCH ACTIONS RELATE TO A SPECIFIC ASSET IN THE ACCOUNT, THAT ASSET MAY NOT BE TRANSFERRED OUT OF THE ACCOUNT UNTIL THE MATTER IS RESOLVED.**

**21.  Electronic Access**

Customer is solely responsible for keeping all Account numbers and CSI confidential and will not share this information with third parties. "CSI" shall mean all of the Customer's sensitive information regarding access to the Account, including the Customer's username, password, as well as any other information connected to Customer's two-factor authentication Account access methodology ("2-Factor Authentication"). Customer agrees and accepts full responsibility for monitoring and safeguarding the Accounts and access to the Accounts. Specifically, by using the Services, Customer represents and warrants to Voyager that Customer has installed and implemented appropriate means of protection relating to the security and integrity of the internet-connected device(s) that Customer uses to access the Platform and the Services and that Customer has taken appropriate action to protect such devices from viruses or other similar harmful or inappropriate materials, devices, information, or data. Customer further undertakes to protect Voyager from any wrongful transmission of computer or other viruses or similarly harmful or inappropriate materials or devices to the Platform.

**CUSTOMER UNDERSTANDS AND ACKNOWLEDGES THAT THE USE OF 2-FACTOR AUTHENTICATION PROVIDES ADDITIONAL SECURITY AND PROTECTION AGAINST UNAUTHORIZED ACCOUNT ACCESS. FAILURE TO IMPLEMENT 2-FACTOR AUTHENTICATION EXPOSES CUSTOMER TO POTENTIAL SIGNIFICANT RISK, INCLUDING THE RISK OF UNAUTHORIZED ACCOUNT ACCESS AS WELL AS THE COMPLETE LOSS OF ALL FUNDS AND CRYPTOCURRENCY IN THE CUSTOMER ACCOUNT. IF CUSTOMER CHOOSES TO ACCESS THE ACCOUNT AND THE SERVICES WITHOUT 2-FACTOR AUTHENTICATION ENABLED IT SHALL DO SO AT ITS SOLE RISK AND SHALL BE SOLELY LIABLE FOR ANY LOSSES SUFFERED BY CUSTOMER OR VOYAGER IN CONNECTION WITH ANY UNAUTHORIZED ACCOUNT ACCESS, TAKEOVER, OR USE OF ANY KIND.**

The Customer agrees to immediately notify Voyager in writing, delivered via e-mail and a recognized international delivery service, if the Customer becomes aware of: (i) any loss, theft, or unauthorized use of Customer CSI or Account numbers, including inability to utilize 2-Factor Authentication; (ii) any failure by the Customer to receive any communication from Voyager indicating that an order was received, executed or cancelled, as applicable; (iii) any failure by the Customer to receive an accurate written confirmation of an order, execution, or cancellation; (iv) any receipt by the Customer of confirmation of an order, execution or

cancellation, which the Customer did not place; (v) any inaccurate information in or relating to the Customer orders, trades, margin status, Account balances, deposits, withdrawals, securities positions or transaction history; or (vi) any other unauthorized use or access of the Customer Accounts.

Each of the events described above shall be deemed a "Potential Fraudulent Event." The use and storage of any information including the Account numbers, CSI, portfolio information, transaction activity, account balances and any other information or orders available on the Customer's wireless, web-enabled cellular telephone or similar wireless communications device (each, a "Mobile Device") or the Customer's personal computer is at the Customer's own risk and is the Customer's sole responsibility. The Customer represents that the Customer is solely responsible for and has authorized any orders or instructions appearing in, originating from, or associated with the Accounts, the Account numbers, the Customer username and password, or CSI. The Customer agrees to notify Voyager immediately after the Customer discovers any Potential Fraudulent Event, but in no event more than twenty-four (24) hours following discovery.

Upon the occurrence of a Potential Fraudulent Event or Voyager's suspicion that a Potential Fraudulent Event has occurred or is likely to occur, Voyager may amend or issue Customer new CSI, require Customer to change CSIs, and/or suspend or limit access to the Platform and Services. In the event that Customer is unable to access the Account due to the fact that they are unable, for any reason, to complete necessary 2-Factor Authentication, including because Customer is unable to access their Mobile Device, changed their telephone number, or otherwise, Customer may be unable to access the Account for an extended period of time. Voyager will provide Customer with reasonable assistance in an attempt to restore 2-Factor Authentication operability.

Upon request by Voyager, the Customer agrees to report any Potential Fraudulent Event promptly to legal authorities and to provide Voyager a copy of any report prepared by such legal authorities. The Customer agrees to cooperate fully with the legal authorities and Voyager in any investigation of any Potential Fraudulent Event and the Customer will complete any required affidavits promptly, accurately and thoroughly. The Customer also agrees to allow Voyager access to the Customer's Mobile Device, the Customer's computer, and the Customer's network in connection with Voyager's investigation of any Potential Fraudulent Event. The Customer understands that if the Customer fails to do any of these things the Customer may encounter delays in regaining access to the Account.

## 22. Electronic Signatures: Modifications to the Customer Agreement

The Customer agrees to transact business with the Voyager electronically. By electronically signing the Customer Agreement, the Customer acknowledges and agrees that such electronic signature is valid evidence of the Customer's consent to be legally bound by the Customer Agreement and such subsequent terms as may govern the use of the Platform. The use of an electronic version of any document fully satisfies any requirement that the document be provided to the Customer in writing. The Customer accepts notice by electronic means as reasonable and proper notice, for the purpose of any and all laws, rules and regulations. Customer understands that, if required by applicable law, or if Voyager decides in its sole discretion, Voyager may provide Customer with notices by other means, including emails linking to the Platform, other emails, or text messages. The electronically stored copy of the Customer Agreement on the Website is considered to be the true, complete, valid, authentic and enforceable record of the Customer Agreement, admissible in judicial or administrative proceedings to the same extent as if the documents and records were originally generated and maintained in printed form. The Customer agrees to not contest the admissibility or enforceability of Voyager's electronically stored copy of the Customer Agreement.

In addition, if the Customer requests other Services provided by Voyager that require the Customer to agree to specific terms and conditions electronically (through clicks or other actions) or otherwise, such terms and conditions will be deemed an amendment and will be incorporated into and made part of this Customer Agreement.

## 23. Consent to Electronic Delivery of Documents

(A)  Consent. By agreeing to electronic delivery, the Customer is giving informed consent to electronic delivery of all Agreement Documents, as defined below, other than those the Customer has specifically requested to be delivered in paper form. "Agreement Documents" include notices, disclosures, current and future account statements, regulatory communications (such as prospectuses, proxy solicitations, and privacy notices), trade confirmations, tax-related documents, and any other information, documents, data, and records regarding the Account, the Customer Agreement (including, without limitation, amendments to the Customer Agreement), and the Services delivered or provided to the Customer by Voyager, and any other parties. The Customer agrees that the Customer can access, view, download, save, and print any Agreement Documents received via electronic delivery for the Customer's records.

(B)  <u>Electronic Delivery System</u>. The Customer acknowledges Voyager's primary method of communication with the Customer includes: (i) posting information on the Website, (ii) providing information via the App, (iii) sending email(s) to the Customer's email address of record, and, to the extent required by law, (iv) providing the Customer with notice(s) that will direct the Customer to the App or the Website where information can be read and printed. Unless otherwise required by law, Voyager reserves the right to post Agreement Documents on the Website without providing notice to the Customer. Further, Voyager reserves the right to send Agreement Documents to the Customer's postal or email address of record, or via the App or Website. The Customer agrees that all Agreement Documents provided to the Customer in any of the foregoing manners is considered delivered to the Customer personally when sent or posted by Voyager, whether the Customer receives it or not.

All email notifications regarding Agreement Documents will be sent to the Customer's email address of record. The Customer agrees to maintain the email address provided to Voyager until the Customer provides Voyager with a new one. The Customer understands that email messages may fail to transmit promptly or properly, including being delivered to SPAM folders. The Customer further understands that it is their sole responsibility to ensure that any emails from Voyager are not marked as SPAM. Regardless of whether or not the Customer receives an email notification, the Customer agrees to check the Website regularly to avoid missing any information, including time-sensitive or otherwise important communication. If the Customer authorizes someone else to access the email account provided to Voyager, the Customer agrees to tell the authorized individual to share the Agreement Documents with the Customer promptly, and the Customer accepts the risk that they will see sensitive Account information. The Customer understands that if a work email address or computing or communications device is used for Account access the employer or other employees may have access to the Agreement Documents.

Additionally, the Customer acknowledges that the internet is not a secure network and agrees that the Customer will not send any confidential information, including, without limitation, Account numbers or passwords, in any unencrypted emails. The Customer also understands that communications transmitted over the internet may be accessed by unauthorized or unintended third parties and agrees to hold Voyager and its Affiliates, and each Voyager's and ifs Affiliates' respective directors, officers, employees and agents harmless for any such access regardless of the cause.

The Customer agrees to promptly and carefully review all Agreement Documents when they are delivered and notify Voyager in writing within five (5) calendar days of delivery if there is objection to the information provided (or other such time specified in the Customer Agreement). If the Customer fails to object in writing within such time, Voyager is entitled to treat such information as accurate and conclusive. The Customer will contact Voyager to report any problems with accessing the Agreement Documents.

(C)  <u>Costs</u>. Potential costs associated with electronic delivery of Agreement Documents may include charges from internet access providers and telephone companies, and the Customer agrees to bear these costs. Voyager will not charge the Customer additional online access fees for receiving electronic delivery of Agreement Documents.

(D)  <u>Revocation of Consent</u>. Subject to the terms of the Agreement Documents, the Customer may revoke or restrict consent to electronic delivery of Agreement Documents at any time by notifying the Voyager in writing of the intention to do so. The Customer also understands that the Customer has the right to request paper delivery of any Agreement Document that the law requires Voyager to provide to the Customer in paper form. Voyager will not treat the Customer request for paper copies as a withdrawal of consent to electronic delivery of Agreement Documents. The Customer understands that if revoking or restricting consent to electronic delivery or requesting paper delivery of Agreement Documents, Voyager, in its sole discretion, may charge the Customer a reasonable service fee for the delivery of any Agreement Documents that would otherwise be delivered to the Customer electronically, restrict or close the Account(s), or terminate the Customer's access to the Platform in each case, in Voyager's sole discretion. The Customer understands that neither the revocation or restriction of consent, nor the request for paper delivery, nor Voyager's delivery of paper copies of Agreement Documents will affect the legal effectiveness or validity of any electronic communication provided while consent was in effect.

(E)  <u>Duration of Consent.</u> Customer consent to receive electronic delivery of Agreement Documents will be effective immediately and will remain in effect unless and until either the Customer or Voyager revokes it. In the event that Customer revokes such consent, Customer understands and acknowledges that Voyager may immediately terminate this Agreement. The Customer understands that it may take up to three (3) business days to process a revocation of consent to electronic delivery, and that the Customer may receive electronic notifications until such consent is processed.

(F)  <u>Hardware and Software Requirements</u>. The Customer understands that in order to access the Platform, utilize the Services and receive electronic deliveries, the Customer must have access to a computer or Mobile Device, a valid e-mail

address, and the ability to download such applications as Voyager may specify and to which the Customer has access. The Customer also understands that if the Customer wishes to download, print, or save any information, that the Customer must have access to a printer or other device in order to do so.

(G)  Consent and Representations. The Customer hereby agrees to have carefully read the above information regarding informed consent to electronic delivery and fully understand the implications thereof. Additionally, the Customer hereby agrees to all conditions outlined above with respect to electronic delivery of any Agreement Document. The Customer will maintain a valid e-mail address and continue to have access to the internet.

## 24.  Electronic Fund Transfers

(A)  Overview. Customer understands that the Account provides for certain electronic fund transfer ("EFT") capabilities. This Section applies solely with respect to EFTs. Customer understands and agrees that Customer's use of any EFT function is subject to the disclosures set forth in Section 24 – Electronic Fund Transfers, and Customer acknowledges that they have received and reviewed such disclosures.

(B)  Customer Liability. Customer agrees to contact Voyager immediately if Customer believes an EFT has been initiated without Customer's permission. Also, in the event that an Account Statement shows an EFT transfer that Customer did not make, Customer agrees to contact Voyager promptly but in any event within 60 days after the Account Statement is made available to Customer. The longer Customer waits to notify Voyager of any unauthorized EFT the more likely it is that Customer will be unable to obtain any lost funds.

(C)  Contact Information. In the event of an unauthorized EFT Customer should contact Voyager Support.

(D)  Transfer Types and Limits. EFTs are subject to the following limits:

USD Deposits: Daily limit: $5,000.

USD Withdrawals: Daily limit: $25,000.

(E)  Fees. Voyager will not charge Customer any fees in connection with the initiation and completion of any EFT, however, third party fees, including foreign taxes, as applicable, may apply.

(F)  Confidentiality. Voyager may disclose information to third parties about Customer as well as the EFTs effectuated out of the Account in the following circumstances:

(1)  Where it is necessary or helpful for completing or correcting transactions and resolving claims regarding transactions;

(2)  In order to verify the existence and condition of the Account to a third party;

(3)  In order to comply with a valid request by a government agency a court order, or other legal or administrative reporting requirements;

(4)  If Customer consents by giving Voyager written permission; to Voyager employees, auditors, affiliates, service providers, or attorneys as needed;

(5)  In order to prevent, investigate or report possible illegal activity;

(6)  In order to authorize EFTs; or

(7)  Otherwise as necessary to fulfill our obligations under this Agreement.

Please see Voyager's Privacy Policy for further details.

(G)  Documentation. Upon the completion of an EFT Customer has a right to a written receipt (an "EFT Receipt") including the details of the EFT. In addition, the Customer has a right to transaction statements in connection with the Account ("Account Statements").

(H) <u>Voyager Liability</u>. In no event will Voyager be liable to Customer for any equitable, consequential (including lost profits, indirect, extraordinary, incidental, punitive, or special damages). For instance, Voyager will not be liable to Customer if:

(1) Customer does not have enough funds in the Account to complete the EFT;

(2) Voyager has placed a hold or other limit on Customer's Account in connection with any legal, regulatory, or administrative process, or in connection with Voyager's anti-money laundering and compliance obligations;

(3) Voyager experienced a technical malfunction that the Customer was aware of at the time of the transaction;

(4) Voyager suspects that the requested EFT is unauthorized; or

(5) Circumstances beyond Voyager's control prevent the completion of the EFT or otherwise cause an EFT to be completed incorrectly or inaccurately.

(I) <u>Errors; Questions.</u>
In the event that Customer believes an EFT Receipt or Account Statement is incorrect (an "EFT Error") or if Customer has any questions about an EFT, contact Voyager at Voyager Support.

The following are considered EFT Errors:

(1) An unauthorized EFT;

(2) An incorrect EFT to or from Customer's Account;

(3) An improperly recorded EFT on Customer's Account Statement; or

(4) A computational or bookkeeping error related to Customer's Account.

The following are NOT considered EFT Errors:

(1) A routine inquiry about Customer's account balance or the status of pending transfers to or from Customer's account, unless Customer expressly notifies Voyager of an error in connection with the transfer;

(2) A request for information for tax or other recordkeeping purposes; or

(3) A request for duplicate copies of documentation.

Voyager must be properly notified no later than 60 days after Customer was provided access to the statement in question. In order for Voyager to be properly notified, Customer must conduct the following steps:

(1) Contact Voyager Support and submit the request under the subcategory: **Unauthorized USD Transfer or USD Transfer Error.**

(2) Provide Voyager with Customer's name and email address or phone number that is actively associated with the Account.

(3) Describe the EFT Error or the transfer that Customer is unsure of and explain as clearly as Customer can why Customer believes an error is present or why Customer needs more information.

(4) State the type, date, and dollar amount of the suspected EFT Error.

If Customer orally notifies Voyager of an EFT Error or question, Customer is required to send the complaint or question, in writing and in the same manner described above, to Voyager Support within 10 business Days.

Voyager will generally determine whether an error occurred within 10 business days after Voyager is properly notified of the EFT Error by Customer and will correct any error promptly. If Voyager needs more time, however, Voyager may take up to 45 days to investigate Customer's complaint or question.

For EFT Errors involving new Accounts and point-of-sale transactions, Voyager may take up to 90 days to investigate the complaint or question.

Within 3 business days after completing an investigation, Voyager will communicate the results to Customer. If Voyager determines that there was no error, Voyager will send Customer a written explanation. Customer may ask for copies of the documents that Voyager used in an investigation. "Business days" are Monday through Friday, excluding federal holidays.

**25. ACH**

Customer authorizes Voyager, at its discretion and without further prior notice, to utilize an electronic check process or Automated Clearing House ("ACH") facility to draft funds in the amount of any checks payable to Voyager, its agents or assigns. Money deposited via ACH is normally not available for five (5) to ten (10) business days. Customer understands that for ACH transfers to be established, the name on the Account must match Customer's bank account. To send and receive funds via ACH, Customer's bank must be a member of the ACH system. For ACH transactions, Customer hereby grants Voyager limited power of attorney to effectuate such transactions. Customer understand that if Customer decides to rescind an ACH transfer, or if an ACH transaction is returned to Customer's bank for any reason, Customer hereby directs and grants Voyager power of attorney to redeem any and all Cryptocurrency purchases and deposits necessary to fulfill and make such rescission regardless of whether Customer incurs a loss. The remediation described in the preceding sentence may result in a delay of returned funds or liquidation of Customer assets. Voyager may also choose to sever the client relationship and return prior deposits if warranted to protect Voyager from risk or potential fraud. An ACH bank reversal may occur when (1) there are insufficient funds in Customer's bank account, (2) there is a duplicate transaction, (3) the transaction is denied, (4) the type of account is incorrect, or 5) any of the return reasons as noted in ACH Return Codes R01 – R33. Customer acknowledges that in the event of an ACH bank reversal, Customer might incur a fee.

**26. Questions; Feedback; Complaints**

If Customer has any questions, would like to provide feedback, or would like more information regarding the Services, please feel free to email Voyager at support@investvoyager.com.

If Customer has a complaint or dispute with Voyager in connection with the Services (a "Complaint"), Customer agrees to contact Voyager through Voyager's support team at support@investvoyager.com in order to attempt to resolve any such Complaint amicably. When submitting a Complaint, please provide Voyager with your name, address, and any other information that Voyager may need in order to identify Customer and the Account. Voyager will acknowledge receipt of the Complaint upon receipt. Upon receipt of a Complaint, a Voyager support member will review the Complaint based upon the information provided in such Complaint and, if necessary, reach out to Customer via email in order to attempt to resolve such Complaint. Customer satisfaction is a priority and while Voyager hopes that all issues related to the Account or Service can be resolved through the aforementioned Customer support process, if a Complaint is not resolved in a manner satisfactory to Customer, the Customer may require that Customer and Voyager pursue any unresolved Complaint (or portion thereof) through arbitration, consistent with the terms of **Section 26 – Arbitration Agreement** below.

**27. Arbitration Agreement**

Voyager and Customer agree to attempt informal resolution of any Complaint arising in connection with this Agreement, the Account, the Platform, or the Services consistent with the procedures outlined in **Section 25 – Questions; Feedback; Complaints,** including but not limited to engaging in non-lawyer mediation, prior to any demand for arbitration.

**VOYAGER AND CUSTOMER FURTHER AGREE THAT IF THE PARTIES CANNOT RESOLVE SUCH COMPLAINT INFORMALLY AND CONSISTENT WITH THE PROCEDURES OUTLINED IN SECTION 25 – QUESTIONS; FEEDBACK; COMPLAINTS, THE COMPLAINT SHALL BE FINALLY AND EXCLUSIVELY RESOLVED IN BINDING ARBITRATION, ON AN INDIVIDUAL BASIS, ADMINISTERED BY THE AMERICAN ARBITRATION ASSOCIATION ("AAA") AND IN ACCORDANCE WITH THE AAA'S RULES FOR ARBITRATION OF CONSUMER-RELATED DISPUTES. VOYAGER AND CUSTOMER HEREBY EXPRESSLY WAIVE ANY RIGHT TO GO TO COURT, TO HAVE A TRIAL BY JURY, AND THE RIGHT TO PARTICIPATE IN A CLASS-ACTION LAWSUIT OR CLASS-WIDE ARBITRATION. UNLESS VOYAGER AND CUSTOMER BOTH AGREE IN WRITING, THE ARBITRATOR MAY NOT CONSOLIDATE PROCEEDINGS OR MORE THAN ONE CUSTOMER'S CLAIMS, AND MAY NOT OTHERWISE PRESIDE OVER ANY FORM OF REPRESENTATIVE OR CLASS PROCEEDING. THE ARBITRATOR SHALL ALSO HAVE EXCLUSIVE AUTHORITY TO DECIDE ANY ISSUES RELATING TO THE MAKING, VALIDITY, ENFORCEMENT, OR SCOPE OF THIS ARBITRATION AGREEMENT, ARBITRABILITY, DEFENSES TO ARBITRATION INCLUDING UNCONSCIONABILITY, OR THE VALIDITY OF THE JURY TRIAL OR CLASS ACTION WAIVERS.**

THE ARBITRATION WILL BE CONDUCTED CONFIDENTIALLY BY A SINGLE, NEUTRAL ARBITRATOR AND WILL OCCUR ON A DOCUMENTS-ONLY BASIS OR, IF VOYAGER OR CUSTOMER CHOOSES, OVER TELEPHONE, VIDEO, OR IN PERSON. FOR AN IN-PERSON ARBITRATION, THE PROCEEDINGS WILL BE IN THE CITY OR COUNTY WHERE CUSTOMER PRIMARILY RESIDES, OR IF CUSTOMER DOES NOT RESIDE IN THE UNITED STATES, IN THE STATE OF NEW JERSEY. CUSTOMER AGREES TO BEAR ITS OWN ATTORNEY'S FEES, COSTS, AND EXPENSES. THE ARBITRATOR MAY AWARD ANY RELIEF THAT A COURT OF COMPETENT JURISDICTION COULD AWARD, INCLUDING ATTORNEYS' FEES WHEN AUTHORIZED BY LAW, AND THE ARBITRATOR'S DECISION MAY BE ENFORCED IN ANY COURT. ANY DISPUTE BETWEEN THE PARTIES WILL BE GOVERNED BY THIS CUSTOMER AGREEMENT AND THE LAWS OF THE STATE OF NEW JERSEY AND APPLICABLE UNITED STATES LAW, WITHOUT GIVING EFFECT TO ANY CONFLICT OF LAWS PRINCIPLES THAT MAY PROVIDE FOR THE APPLICATION OF THE LAW OF ANOTHER JURISDICTION. VOYAGER AND CUSTOMER FURTHER AGREE THAT THE STATE OR FEDERAL COURTS IN NEW JERSEY HAVE EXCLUSIVE JURISDICTION OVER ANY APPEALS OF OR AN APPLICATION TO VACATE AN ARBITRATION AWARD AND OVER ANY LAWSUIT BETWEEN THE PARTIES NOT SUBJECT TO ARBITRATION. IN SUCH CASES, VOYAGER AND CUSTOMER AGREE TO SUBMIT TO THE PERSONAL JURISDICTION OF THE STATE AND FEDERAL COURTS OF NEW JERSEY AND AGREE TO WAIVE ANY AND ALL OBJECTIONS TO THE EXERCISE OF JURISDICTION OVER THE PARTIES BY SUCH COURTS AND TO VENUE IN SUCH COURTS.

IN THE EVENT THE PROHIBITION ON CLASS ARBITRATION OR ANY OTHER PROVISION OF THIS SECTION IS DEEMED INVALID OR UNENFORCEABLE, THEN CUSTOMER AGREES AND UNDERSTANDS THAT THE REMAINING PORTIONS OF THE ARBITRATION PROVISIONS IN THIS SECTION WILL REMAIN IN FULL FORCE AND EFFECT.

NOTWITHSTANDING VOYAGER AND CUSTOMER'S AGREEMENT TO RESOLVE ALL DISPUTES THROUGH ARBITRATION, EITHER VOYAGER OR CUSTOMER MAY SEEK RELIEF IN A SMALL CLAIMS COURT FOR DISPUTES OR CLAIMS WITHIN THE SCOPE OF THAT COURT'S JURISDICTION.

### 28.  Telephone Conversations and Electronic Communications

Customer understands and agrees that Voyager may record and monitor any telephone or electronic communications with the Customer. Unless otherwise agreed in writing in advance, Voyager does not consent to the recording of telephone conversations by any third party of the Customer. The Customer acknowledges and understands that not all telephone or electronic communications are recorded by Voyager, and Voyager does not guarantee that recordings of any particular telephone or electronic communications will be retained or are capable of being retrieved.

### 29.  Oral Authorization

Customer agrees that Voyager shall be entitled to act upon any oral instructions given by the Customer with respect to the Account so long as Voyager reasonably believes such instruction was actually given by the Customer or the Customer's authorized agent.

### 30.  Effect of Attachment or Sequestration of Account

If Voyager, a service provider, or their respective officers, directors, agents, employees, and representatives (collectively, the "Voyager Representatives") are served with levies, attachments, garnishments, summons, subpoenas, court orders, or other legal process which name Customer as a debtor or otherwise, Voyager Representatives shall be entitled to rely upon the representations, warranties, and statements made in such legal process. Customer hereby agrees that Voyager Representatives may respond to any such legal process in their own discretion without regard to jurisdiction or forward such legal process to any other party as may be appropriate. Voyager Representatives shall not be liable for refusing to obey any orders given by or for the Customer with respect to an Account that has been subject to an attachment or sequestration in any legal proceeding against the Customer, and Voyager Representatives shall be under no obligation to contest the validity of any such attachment or sequestration. Customer agrees to indemnify, defend, and hold all of the Voyager Representatives harmless from all actions, claims, liabilities, losses, costs, attorney's fees, or damages associated with compliance with any process that any Voyager Representative reasonably believes in good faith to be valid.

### 31.  Event of Death

It is agreed that in the event of the Customer's death or the death of one of the joint Account holders, the representative of the Customer's estate or the survivor or survivors shall promptly give Voyager written notice thereof, and Voyager may, before or after receiving such notice, take such proceedings, require such papers and inheritance or estate tax waivers, retain such portion of, or

restrict transactions in the Accounts as Voyager may deem advisable to protect Voyager against any tax, liability, penalty or loss under any present or future laws or otherwise. Notwithstanding the above, in the event of the Customer's death or the death of one of the joint Account holders, all open orders shall be canceled, but Voyager shall not be responsible for any action taken on such orders prior to the actual receipt of notice of death. Further, in Voyager's discretion it may close out the Account without awaiting the appointment of a personal representative for the Customer's estate and without demand upon or notice to any such personal representative. The estate of any of the Account holders who have died shall be liable and each survivor shall continue to be liable, jointly and severally, to Voyager for any net debit balance or loss in said Account in any way resulting from the completion of transactions initiated prior to the receipt by Voyager of the written notice of the death of the decedent or incurred in the liquidation of the Account or the adjustment of the interests of the respective parties, and for all other obligations pursuant to the Customer Agreement. Such notice shall not affect Voyager's rights under the Customer Agreement to take any action that Voyager could have taken if the Customer had not died.

Upon the death or incapacity of an Account owner and if the legal heirs or representatives of such Account owner would like to withdraw the remaining balance in the Account, to the extent there is any, such legal heirs should present to Voyager the necessary official legal documents from the applicable authorities in the relevant jurisdiction, and Voyager, upon checking such documents, shall allow such withdrawal in accordance with any applicable laws.

### 32.  Unclaimed Property

If there are funds or Cryptocurrency in an Account and Voyager is unable to contact Customer at the address shown in Voyager's records, and has no record of Customer's use of the Services for an extended period (as defined by applicable law), Voyager may be required to report and deliver such funds or Cryptocurrency to the applicable governmental authority as unclaimed property. Voyager reserves the right to deduct a dormancy fee or other administrative charges from such unclaimed funds and Cryptocurrency, as permitted by applicable law.

### 33.  Tax Reporting; Tax Withholding

The taxation of Cryptocurrency transactions is extremely complex, and no attempt is made herein to fully describe the various tax rules that apply to such transactions or to explain in complete detail the rules which are mentioned. However, generally, any sales, exchanges or dispositions of Cryptocurrency may have U.S. federal, state, local and non-U.S. income tax consequences for the Customer and may result in the Customer having to pay additional income taxes. Customers may have a variety of tax reporting obligations with respect to certain Cryptocurrency. Each Customer should confer with their tax advisor regarding the tax consequences of utilizing each of the Account based upon the Customer's particular circumstances. The Customer and Customer's tax advisors are responsible for how Customer's activity in the Account is reported to the Internal Revenue Service ("IRS") or any other taxing authority. Voyager assumes no responsibility to Customer for the tax consequences of any transactions.

The proceeds of sale transactions and dividends paid will be reported to the IRS in accordance with applicable law. Under penalties of perjury, the Customer certifies that the taxpayer identification number provided or will provide to Voyager (including any taxpayer identification number on any Form W-9 that the Customer has provided or will provide to Voyager) is the Customer's correct taxpayer identification number. The Customer certifies that the Customer is not subject to backup withholding and is a United States Person (including a U.S. resident alien) as such term is defined in section 7701(a)(30) of the Internal Revenue Code of 1986, as amended ("U.S. Person"). If a correct Taxpayer Identification Number is not provided to Voyager, the Customer understands the Customer may be subject to backup withholding tax at the appropriate rate on all dividends, interest and gross proceeds paid to the Customer. Backup withholding taxes are sent to the IRS and cannot be refunded by Voyager. The Customer further understands that if the Customer waives tax withholding and fails to pay sufficient estimated taxes to the IRS, the Customer may be subject to tax penalties.

### 34. Miscellaneous.

(A)  Interpretation. The heading of each provision of the Customer Agreement is for descriptive purposes only and shall not be (1) deemed to modify or qualify any of the rights or obligations set forth in the Customer Agreement or (2) used to construe or interpret any of the provisions under the Customer Agreement. When a reference is made in this Customer Agreement to a Section, such reference shall be to a Section of this Customer Agreement unless otherwise indicated. Whenever the words "include," "includes" or "including" are used in the Customer Agreement, they shall be deemed to be followed by the words "without limitation." The word "or," when used in the Customer Agreement, has the inclusive meaning represented by the phrase "and/or." Unless the context of the Customer Agreement otherwise requires: (i) words using the singular or plural number also include the plural or singular number, respectively; and (ii) the terms "hereof," "herein,"

"hereunder" and derivative or similar words refer to the Customer Agreement in its entirety. The word "will" expresses an obligation equivalent to "shall." The Customer Agreement will not be construed in favor of or against any party by reason of the extent to which any party participated in the preparation of the Customer Agreement.

(B)  Binding Effect; Assignment. This Customer Agreement shall bind Customer's heirs, assigns, executors, successors, conservators, and administrators. Customer may not assign this Customer Agreement or any rights or obligations under this Customer Agreement without first obtaining Voyager's prior written consent. Voyager may assign, sell or transfer the Account and this Customer Agreement, or any portion thereof, at any time, without prior notice to Customer.

(C)  Severability. If any provisions or conditions of this Customer Agreement are or become inconsistent with any present or future law, rule or regulation of any applicable government, regulatory, or self-regulatory agency or body, or are deemed invalid or unenforceable by any court of competent jurisdiction, such provisions shall be deemed rescinded or modified, to the extent permitted by applicable law, to make this Customer Agreement in compliance with such law, rule or regulation, or to be valid and enforceable, but in all other respects, this Customer Agreement shall continue in full force and effect.

(D)  Website Postings. Customer agrees and understands that Voyager or any of its Affiliates may post other specific agreements, disclosures, policies, procedures, terms and conditions that apply to Customer's use of the App, the Website or the Account on the Website ("Website Postings"). Customer understands that it is Customer's continuing obligation to understand the terms of the Website Postings, and Customer agrees to be bound by the Web Postings as are in effect at the time of Customer's use.

(E)  Entirety of Agreement. This Customer Agreement, any attachments hereto, other agreements and policies referred to in this Customer Agreement (including the Website Postings), and the terms and conditions contained in Customer's Account statements and confirmations, contain the entire agreement between Voyager and Customer and supersedes all prior or contemporaneous communications and proposals, whether electronic, oral or written, between Voyager and Customer, provided, however, that any and all other agreements between Voyager and Customer, not inconsistent with this Customer Agreement, will remain in full force and effect.

(F)  Amendment. Voyager may, at any time, amend the Customer Agreement without prior notice to the Customer. No provision of the Customer Agreement can be amended by Customer in any respect. The current version of the Customer Agreement will be posted on the Website and made available through the App and Customer's continued use of the Platform after such amendment constitutes agreement to be bound by all then-in-effect amendments to the Customer Agreement, regardless of whether the Customer has actually reviewed it. Continued use of the Platform after such posting will constitute the Customer's acknowledgment and acceptance of such amendment. The Customer agrees to regularly consult the App and Website for up-to-date information about the Services and any modifications to the Customer Agreement.

(G)  No Waiver; Cumulative Nature of Rights and Remedies; Non-Waiver of Rights. Customer understands that Voyager's failure to insist at any time upon strict compliance with any term contained in this Customer Agreement, or any delay or failure on Voyager's part to exercise any power or right given to Voyager in this Customer Agreement, or a continued course of such conduct on Voyager's part, shall at no time operate as a waiver of such power or right, nor shall any single or partial exercise preclude any other further exercise. All rights and remedies given to Voyager in this Customer Agreement are cumulative and not exclusive of any other rights or remedies to which Voyager is entitled. This Customer Agreement shall not be construed to waive rights that cannot be waived under applicable laws and regulations.

(H)  Relationship of the Parties. Customer agrees and understands that nothing in this Customer Agreement shall be deemed to constitute, create, imply, give effect to, or otherwise recognize a partnership, employment, joint venture, or formal business entity of any kind; and the rights and obligations of the parties shall be limited to those expressly set forth herein.

(I)   No Third-Party Beneficiaries. Except for the indemnity and exculpation provisions herein, nothing expressed in, mentioned in, or implied from this Customer Agreement is intended or shall be construed to give any person other than the parties hereto any legal or equitable right, remedy, or claim under or in respect to this Customer Agreement to enforce any of its terms which might otherwise be interpreted to confer such rights to such persons, and this Customer Agreement and all representations, warranties, covenants, conditions and provisions hereof are intended to be and are for the exclusive benefit of the parties.

(J)   <u>Survival</u>. All provisions of this Customer Agreement that by their nature extend beyond the expiration or termination of this Agreement, including, without limitation, sections pertaining to suspension or termination, debts owed, general use of the Services, disputes with Voyager, and general provisions, shall survive the termination or expiration of this Agreement.

(K)   <u>Written Notice.</u> Customer agrees that if Voyager sends an email to the email address on record for the Account, this constitutes "written notice" from Voyager to Customer. For all notices made by email, the date of receipt is considered to be the date of transmission.

(L)   <u>Governing Law.</u> The laws of the State of New Jersey (regardless of the choice of law rules thereof) shall govern this Customer Agreement and all transactions in the Account.