# **EXHIBIT G**



# Enhanced Yield Agreement

When you sign this Agreement and fund your Enhanced Yield Account, you are agreeing to extend a loan of assets to CRED LLC. The purpose of the loan is to allow you to earn an enhanced yield on your Bitcoin, payable in Bitcoin, US dollars or other Stable Coin as specified in this Agreement. The loan from you to CRED LLC functions in some ways like a bank deposit account but CRED LLC is <u>not</u> a bank and the funds in your Enhanced Yield Account are <u>not</u> insured by the FDIC.

**How to contact us:**

Email us at support@mycred.io

Call us at (213) 262-6000

## Important Terms of Your Enhanced Yield Account

| The Yield You Will Earn | |
|---|---|
| **Annual Rate** | 12% is the interest rate per annum (the "**Yield**") applicable to your Enhanced Yield Account on the day you fund that account. (the "**Funding Date**"). Interest is paid in Bitcoin on the last business day of every calendar quarter after Funding Date, or on the date on which your Enhanced Yield Account matures (the "**Closure Date**"). <br><br>We may increase or decrease the Yield in our sole discretion 30 days after notifying you of the change (a "**Yield Change Notice**"). If you do not notify CRED of your decision to close your Enhanced Yield Account within 15 days of receiving a Yield Change Notice (a "**Closure Notice**"), then this Agreement will remain in effect and you cannot withdraw your funds until the Closure Date. If you deliver a Closure Notice within 15 days of after we send you a Yield Change Notice, then we will either not change your Yield or we will close your account and return your funds. We will do so within 45 days after CRED receives your Closure Notice, and during which time the previously agreed Annual Rate will apply to your Account. |
| **Initial Term of Your Enhanced Yield Account** | |

***NOT* FDIC-insured**

| | |
|---|---|
| **Initial Term** | Your Enhanced Yield Account will mature as follows:<br><br>[X]   on or about August 31, 2019 (calendar month end, 6 months after Funding Date)<br><br>However, your Enhanced Yield Account will mature sooner if you timely deliver a Closure Notice as described above or in the Event of Default section below. If you do not withdraw your funds within 15 days after the scheduled maturity date, we will either extend your account for another period equal to the original period or close your account and return your funds. |
| **Loan Assets** | You are lending Bitcoin to CRED. Bitcoin should be transferred to Cred's BTC wallet at its paying agent ( **"Paying Agent Wallet"**) using the following address. *Please send an initial small-value test transfer, and after confirmation of receipt transfer the balance*:<br><br>3MXVTPasaHSAP91wohZDy3UbFdcLqVGx3U<br><br>Assets will be credited to your Enhanced Yield Account upon confirmation of receipt to the Paying Agent Wallet. |
| **Commitment Amount** | You agree to initially lend CRED [up to 1,250] Bitcoin, which must be fully funded to CRED's Paying Agent Wallet on the Funding Date. Future Loan Assets are subject to a Tranche Agreement, found in Exhibit 1 of this Agreement. |
| **Funding Date** | Expected on [February 15, 2019]. The actual Funding Date will be the date CRED confirms receipt of the Loan Assets into Cred's BTC Paying Agent Wallet. |

## Additional Terms of Your Enhanced Yield Account

| Introduction | |
|---|---|
| **About your Enhanced Yield Agreement** | This document is referred to as the Enhanced Yield Agreement (the "**Agreement**") between you and CRED LLC with respect to your Enhanced Yield Account. This Agreement documents a loan of assets from you to us, not a deposit relationship, although we refer to the relationship between you and us as an "account" or specifically as an "Enhanced Yield Account."<br><br>When you fund your Enhanced Yield Account, you agree to the terms of this Agreement. |
| **Changing the Agreement** | We may change this Agreement in our discretion, subject to applicable law. We may do this in response to the business, legal or competitive environment. This written Agreement is a final expression of the agreement governing the Enhanced Yield Account. The written Agreement may not be contradicted by any alleged oral agreement.<br><br>Changes to some terms may require advance notice, and we will tell you in the |

2

| | |
|---|---|
| | notice if you have the right to reject a change. |
| Words we use in the Agreement | "**We**", "**us**", "**our**" and "**CRED**" mean CRED LLC.<br><br>"**You**" and "**your**" mean the person who applied for and funded your Enhanced Yield Account. By funding your Enhanced Yield Account, you loan those funds to CRED subject to the terms and conditions of this Agreement.<br><br>"**Loan**" or "**Lend**" means the loan you extend to CRED by funding your Enhanced Yield Account. |
| **Electronic Account** | |
| Your account is all electronic | Your Enhanced Yield Account is all electronic. This means that you will not receive any paper notifications, statements or disclosures. You can request any statement or other notice in paper form within 180 days of the date of the notice. To receive a paper copy of any notice that has been previously provided to you electronically, please contact member support at support@mycred.io<br><br>Future notices will continue to be delivered electronically unless you specifically inform us that you wish to withdraw your consent to receive electronic documents. If you decide to withdraw your consent, the legal effectiveness, validity or enforceability of prior electronic notices will not be affected, we may decide to close your Enhanced Yield Account. |
| **About using your credit line** | |
| Account credentials | Keep your Enhanced Yield Account information safe and don't let anyone else access your Enhanced Yield Account. If your Enhanced Yield Account is being used without your permission, contact us right away.<br><br>You may not use your Enhanced Yield Account for illegal activities, or any transaction that is illegal in the state where you live or the state where you are making your transaction. |
| The loan | When you fund your Enhanced Yield Account, you are agreeing to lend to us all funds in the account. We agree to repay, with interest, all amounts we borrow from you, subject to provisions of this Agreement that allow us to deduct certain fees in some circumstances.<br><br>We calculate interest on a simple interest basis based on the number of days amounts are drawn and outstanding.<br><br>Our calculations as to the amounts we have borrowed and repaid, the amounts of accrued and paid interest, and all other calculations and determinations we make are binding on you and conclusive for all purposes unless you obtain a final, non-appealable judgment to the contrary.<br><br>Interest payments not received by you within three business days after due will accrue a late fee equal to 10% annualized, calculated daily.<br><br>In the event CRED fails to pay any amounts due or to return any digital currency hereunder, CRED shall pay you upon demand all reasonable costs and expenses, including without limitation, reasonable attorneys' fees and court costs incurred by you in connection with the enforcement of its rights hereunder. |
| Hard fork | In the event of a hard fork in the relevant digital currency blockchain, lender shall provide email notification to borrower. There will be no immediate termination of loans due to hard fork.<br><br>Lender will receive the benefit of any incremental tokens generated as a result of a hard fork in the relevant digital currency protocol that results in a second token (the "New Token") being created. |

3

CRED_EXAMINER_00001088

| | |
|---|---|
| | For purposes of this agreement, a hard fork will have been deemed to have occurred if any two of the following four conditions are met:<br>• Hash Power: the average hash power mining the New Token on the 30th day following the occurrence of the fork (calculated as a 30-day average on such date) is at least 5% of the hash power mining the relevant digital currency on the day preceding the hard fork (calculated as a 3-day average of the 3 days preceding the hard fork). The source for the relevant digital currency hash power will be blockchain.info (or, if blockchain.info does not provide the required information, bitinfocharts.com, and if neither provides the required information, the parties shall discuss in good faith to mutually agree upon another data source) and the source for the hash power of the New Token will be bitinfocharts.com (or, if bitinfocharts.com does not provide the required information, the parties shall discuss in good faith to mutually agree upon another data source prior to the 30-day mark of the creation of the New Token).<br>• Market Capitalization: the average market capitalization of the New Token (defined as the total value of all New Tokens) on the 30th day following the occurrence the hard fork (calculated as a 30-day average on such date) is at least 5% of the average market capitalization of the relevant digital currency (defined as the total value of the relevant digital currency) (calculated as a 30-day average on such date). The source for the relevant digital currency market capitalization will be blockchain.info (or, if blockchain.info does not provide the required information, bitinfocharts.com, and if neither provides the required nformation, the parties shall discuss in good faith to mutually agree upon another data source) and the source for the market capitalization of the New Token will be (or, if bitinfocharts.com does not provide the required information, the parties shall discuss in good faith to mutually agree upon another data source prior to the 30-day mark of the creation of the New Token).<br>• 24-Hour Trading Volume: the average 24-hour trading volume of the New Token on the 30th day following the occurrence the hard fork (calculated as a 30-day average on such date) is at least 1% of the average 24-hour trading volume of the relevant digital currency (calculated as a 30-day average on such date). The source for the relevant digital currency 24-hour trading volume will be blockchain.info (or, if blockchain.info does not provide the required information, bitinfocharts.com, and if neither provides the required information, the parties shall discuss in good faith to mutually agree upon another data source) and the source for the 24-hour trading volume of the New Token will be (or, if bitinfocharts.com does not provide the required information, the parties shall discuss in good faith to mutually agree upon another data source prior to the 30-day mark of the creation of the New Token).<br>• Wallet Compatibility: the New Token is supported by at least one wallet among Uphold, BitGo or Ledger wallets within 30 days of the hard fork.<br><br>If the hard fork meets the criteria above, borrower will have up to 60 days from the hard fork to pay lender. Borrower can reimburse lender for the value of the New Tokens with any combination of a one-time digital currency payment of the relevant digital currency reflecting the amount of the New Token due using the agreed upon spot rate at the moment of repayment, returning the loaned digital currency so that lender can split the tokens themselves, sending the New Tokens directly to lender, or a U.S. Dollar cash payment at the agreed upon spot rate of the New Token at the time of repayment. |
| **Periodic statements** | Each month or quarter we may create a statement with that period's transactions on it. We may provide this statement to you electronically or you may need to log in to your account to see it. We may not provide a statement if there has been no |

CRED_EXAMINER_00001089

| | |
|---|---|
| | activity in your Enhanced Yield Account or if it is not required by law. |
| **Other important information** | |
| **Changing your contact information** | You must notify us immediately if you change:<br><br>- the e-mail address to which we send notices, statements and other information;<br>- your phone number that you designate for communicating with us;<br>- your mailing address; or<br>- any linked bank account or wallet from which you send or receive funds.<br><br>If you have more than one account with us, you need to notify us separately for each account. We may update your contact information if we receive information that it has changed or is incorrect.<br><br>If you change your contact information and do not notify us, and we are unable to reach you or confirm delivery of information, or we are unable to process transfers between your Enhanced Yield Account and your bank account or wallet, we will assess (and collect via set off) a monthly fee of up to 1% of your account balance per month during such period that we are unable to make contact with you or process transfers. |
| **Event of default** | The following defaults shall constitute events of default hereunder and are hereinafter referred to as an "Event of Default" or "Events of Default":<br><br>(a) the failure of the Borrower to return any borrowed amount or pay any borrowing fees when due hereunder;<br>(b) a material default in the performance of any of the other agreements, conditions, provisions or stipulations contained in any of the loan documents;<br>(c) any bankruptcy, insolvency, reorganization or liquidation proceedings or other proceedings for the relief of debtors or dissolution proceedings shall be instituted by or against the Borrower and shall not be dismissed within thirty (30) days of their initiation; or<br>(d) any representation or warranty made in any of the loan documents proves to be untrue in any material respect as of the date of making or deemed making thereof.<br><br>Upon the occurrence and during the continuation of any Event of Default, the lender may, at its option (a) declare the entire borrowed amount outstanding hereunder immediately due and payable, (b) terminate this agreement by delivery of a Closure Notice to Borrower, and (c) exercise all other rights and remedies available to the lender hereunder, under applicable law, or in equity; provided, that upon any Event of Default the borrowed amount and the amount of any borrowing fee then outstanding hereunder shall automatically become and be immediately due and payable. |
| **Sending you notices** | Whenever possible, we will send you notices via email, text message, or through the mobile application, subject to applicable law. Any notice that we send to you in those ways is deemed to be given when sent.<br><br>We may also mail you notices through the U.S. mail, postage prepaid, and address them to you at the latest billing address on our records. Any notice that we send you this way is deemed to be given when deposited in the U.S. mail. |
| **We may contact you** | If we need to contact you to process a transfer or otherwise service your account, you authorize us (and our affiliates, agents and contractors) to contact you at any number you provide, from which you call us, or at which we believe we can reach you. We may contact you in any way, such as calling, text messaging, through the mobile application, or email. |

5

| | |
|---|---|
| | We may monitor and record any calls between you and us. |
| **Assigning the Agreement** | We may sell, transfer or assign this Agreement and your Enhanced Yield Account. We may do so at any time without notifying you. You may not sell, assign or transfer your Enhanced Yield Account or any of your rights, benefits, duties or obligations under this Agreement. |
| **Rights and remedies cumulative** | No delay or omission by the lender in exercising any right or remedy hereunder shall operate as a waiver of the future exercise of that right or remedy or of any other rights or remedies hereunder. All rights of the lender stated herein are cumulative and in addition to all other rights provided by law, in equity. |
| **Severability** | If at any time after the date of this Agreement, any of the provisions of this Agreement, with the exception of the mandatory arbitration provision below, which is governed by a separate severability provision, are held by any court of competent jurisdiction to be illegal, void or unenforceable, such provision shall be of no force and effect, but the illegality and unenforceability of such provision shall have no effect upon and shall not impair the enforceability of any other provisions of this Agreement. |
| **Governing law** | All extensions of credit are made by us in the state of Utah. Utah law and federal law govern this Agreement and your Enhanced Yield Account. They govern without regard to internal principles of conflicts of law. |
| **Dispute resolution** | |
| **How to resolve a mistake** | If you think we made a mistake in how we have handled your account, email us at support@mycred.io, call our support line at (213) 262-6000 or write to us at:<br><br>CRED LLC<br>2121 S. El Camino Real, 5th floor<br>San Mateo, CA 94403<br><br>In your email or letter, please provide:<br><br>• your name and your telephone number or email address associated with your Enhanced Yield Account;<br>• the dollar amount of the suspected error; and<br>• a description of the error and why you believe it is a mistake.<br><br>You must contact us within 30 days after the error appeared on any statement, notice or other communication from us to you or will waive your objection.<br><br>Within 30 days of receiving your call, email, or letter, we will confirm that we received your call, email, or letter and we will notify you if we have already corrected the error. Within 90 days of receiving your call, email, or letter, if we have not already resolved the error, we will correct the error or explain to you why we believe the statement is correct. |
| **Mandatory arbitration** | PLEASE READ THIS ARBITRATION PROVISION CAREFULLY AS IT AFFECTS YOUR RIGHTS AND WILL IMPACT HOW LEGAL CLAIMS YOU BRING AGAINST CRED LLC OR THAT CRED LLC BRINGS AGAINST YOU ARE RESOLVED.<br><br>You and we agree that any claim or dispute at law or equity that has arisen or may arise between us will be resolved in accordance with the provisions set forth in this mandatory arbitration provision.<br><br>**Contact CRED First**<br><br>If you have a dispute regarding your Enhanced Yield Account, we encourage you to contact us first at support@mycred.io or (213) 262-6000 to try resolving your problem directly with us. |

CRED_EXAMINER_00001091

**Agreement to Arbitrate**

Except as explicitly provided in this Agreement, any dispute or claim arising out of or relating to this Agreement, or relating in any way to your Enhanced Yield Account, your loan, or the use of any of our products, websites, web applications, or mobile applications that cannot be resolved directly between you and us, including without limitation, any claims based in contract, statute, tort, fraud, misrepresentation or any other legal theory, shall be resolved by non-appearance based binding arbitration, rather than in court. You may also assert claims in small claims court, if your claims qualify and so long as the matter remains in such court and advances only on an individual (non-class, non-representative) basis. The Federal Arbitration Act and federal arbitration law apply to this Agreement. There is no judge or jury in arbitration and court review of an arbitration award is limited, but an arbitrator can award an individual the same damages and relief as a court and must apply and follow the terms of this Agreement as a court would. YOU UNDERSTAND THAT ABSENT THIS PROVISION, YOU WOULD HAVE THE RIGHT TO SUE IN COURT AND HAVE A JURY TRIAL.

Except as explicitly provided in elsewhere in this Agreement, all claims you or we bring must be resolved in accordance with this mandatory arbitration provision. Any claim filed or brought contrary to this mandatory arbitration provision shall be considered improperly filed.

**Arbitration Procedures**

Either you or we can initiate arbitration through the alternative dispute resolution provider the American Arbitration Association (the "**AAA**") under its rules and procedures and, where appropriate, the then-current Supplementary Procedures for Consumer Related Disputes (the "**Consumer Rules**"), as modified by this mandatory arbitration provision. The AAA's rules and Consumer Rules are available at the AAA website www.adr.org.

The arbitration shall be conducted by telephone or electronic means and/or shall be solely based on written submissions, the specific manner of which shall be chosen by the party initiating the arbitration. The arbitration shall not involve any personal appearance by the parties or witnesses unless the arbitrator determines that an in-person hearing is necessary based on the request of one of the parties. The arbitrator will make a decision in writing, and shall provide a statement of reasons if requested by either party. The arbitrator will decide the substance of all claims in accordance with applicable law, including recognized principles of equity, and will honor all claims of privilege recognized by law. Any judgment on the award rendered by the arbitrator shall be final and may be entered in any court of competent jurisdiction.

**Costs of Arbitration**

Your arbitration fees and your share of arbitrator compensation shall be governed by the AAA rules and, where appropriate, limited by the AAA Consumer Rules. If such costs are determined by the arbitrator to be excessive, we will pay all arbitration fees and expenses.

**Prohibition of Class and Representative Actions and Non-Individualized Relief**

YOU AND WE EACH AGREE THAT ANY DISPUTE RESOLUTION PROCEEDINGS WILL BE CONDUCTED ONLY ON AN INDIVIDUAL BASIS AND NOT IN A CLASS, CONSOLIDATED OR REPRESENTATIVE ACTION. UNLESS BOTH YOU AND WE AGREE OTHERWISE, THE ARBITRATOR MAY NOT CONSOLIDATE OR JOIN MORE THAN ONE PERSON'S OR PARTY'S CLAIMS AND MAY NOT OTHERWISE PRESIDE OVER ANY FORM OF A

CRED_EXAMINER_00001092

CONSOLIDATED, REPRESENTATIVE, OR CLASS PROCEEDING. ALSO, THE ARBITRATOR MAY AWARD RELIEF ONLY IN FAVOR OF THE INDIVIDUAL PARTY SEEKING RELIEF AND ONLY TO THE EXTENT NECESSARY TO PROVIDE RELIEF NECESSITATED BY THAT PARTY'S INDIVIDUAL CLAIM(S). ANY RELIEF AWARDED CANNOT AFFECT OTHER CRED CUSTOMERS.

If for any reason a claim proceeds in court rather than in arbitration, we each waive any right to a jury trial and agree to proceed only on an individual basis and not in a class, consolidated, or representative action.

**Exceptions**

You and we agree that the following disputes are not subject to the above provisions concerning informal negotiations and binding arbitration: (1) any case we file to collect assets you owe under this Agreement (however, if you respond to the collection lawsuit by claiming any wrongdoing, we may require you to arbitrate); (2) any disputes seeking to enforce or protect, or concerning the validity of, any of your or our intellectual property rights; and (3) any claim for injunctive relief.

We also both agree that you or we may bring suit in court to obtain interim or preliminary injunctive relief necessary to protect the rights or property of you or CRED and all of our partners, affiliates, shareholders, employees, and agents of any kind (together, our "**Affiliates**").

**Severability**

With the exception of any of the provisions in the subsection above entitled "Prohibition of Class and Representative Actions and Non-Individualized Relief", if a court decides that any part of this mandatory arbitration provision is invalid or unenforceable, the other parts of this mandatory arbitration provision shall still apply. If a court decides that any of the provisions in the subsection entitled "Prohibition of Class and Representative Actions and Non-Individualized Relief" is invalid or unenforceable, then the entirety of this mandatory arbitration provision shall be null and void. The remainder of the Agreement will continue to apply.

**Opt-Out Procedure**

Notwithstanding the above, you may choose to pursue your claim in court and not by arbitration if you opt out of this arbitration provision within 30 days from the date you accept this Agreement for the first time (the "**Opt Out Deadline**"). You may opt out of this mandatory arbitration provision by sending us a written notice that you opt out to the following address: CRED LLC, 2121 S. El Camino Real, 5th floor, San Mateo, CA 90043  Any opt-out received after the Opt Out Deadline (allowing three (3) additional days for mailing) will not be valid and you must pursue your claim in arbitration or small claims court. If you opt out of arbitration provisions, all other parts of this Agreement will continue to apply. Opting out of this mandatory arbitration provision has no effect on any previous, other, or future arbitration agreements that you may have with us.

**Future Amendments to this Arbitration Provision**

Notwithstanding any provision in this Agreement to the contrary, you and we agree that if we make any amendment to this mandatory arbitration provision (other than an amendment to any notice address, telephone number, or website link provided herein) in the future, that amendment shall not apply to any claim that was filed in a legal proceeding against us prior to the effective date of the amendment. The amendment shall apply to all other disputes or claims governed by the arbitration provisions that have arisen or may arise between you and us. We will notify you of amendments to this mandatory arbitration provision by posting the amended terms on mycred.io at least 30 days before the effective date of the amendments and by providing notice through email. If you do not

8


| | agree to these amended terms, you may close your Enhanced Yield Account within the 30-day period and you will not be bound by the amended terms. |
|---|---|

[Balance of page intentionally left blank]

9

CRED_EXAMINER_00001094

**IN WITNESS WHEREOF**, the parties hereto have caused this Agreement to be duly executed as of the Effective Date written below.  It is specifically agreed and understood that this Agreement is not binding upon the parties until the date it is actually signed by CRED.

Effective Date: [February 15, 2019]

| | |
|---|---|
| Dan Schatt, President<br>For and on behalf of CRED LLC | [Lender]<br>For and on behalf of [entity – if any] |
| Borrower | Lender |
| _____<br>Signature | _____<br>Signature |
| _____<br>Printed | _____<br>Printed |
| Addresses for notices: | Addresses for notices: |
| Support@mycred.io<br>Cc: James Alexander<br>james.alexander@mycred.io | [email of Lender for notices] |

10

**SAMPLE EXHIBIT 1 –** *TO BE COMPLETED FOR SUBSEQUENT INVESTMENTS*

<u>**TRANCHE AGREEMENT No. [2]**</u>

Borrower and Lender hereby agree as follows:

1) Each has elected to proceed with a new Tranche transaction involving additional Bitcoin loaned by You.

2) Each agrees that the Enhanced Yield Agreement, effective on or about _____ is incorporated by reference into this Tranche Agreement and that the following terms are part of the Agreement:

| Loan Assets | [X]    Bitcoin |
|---|---|
| Commitment Amount | _____ Bitcoin |
| Interest Rate | _____% per annum for this Tranche, based on market conditions and Lender's adjustments to its normally-prevailing rates, which Lender modifies from time to time in its sole discretion. |
| Funding Date | _____<br><br>The actual Funding Date will be the date CRED confirms receipt of the Loan Assets into Cred's Paying Agent Wallet at the following address:<br><br>3MXVTPasaHSAP91wohZDy3UbFdcLqVGx3U |
| Initial Term | Your Enhanced Yield Account will mature as follows:<br><br>[X]    on [_____] (calendar month end, 6 months after Funding Date)<br><br>[_]    on _____ (days after the Funding Date)<br><br>However, your Enhanced Yield Account will mature sooner if you timely deliver a Closure Notice as described above. If you do not withdraw your funds within 15 days after the scheduled maturity date, we will either extend your account for another period equal to the original period or close your account and return your funds. |
| Execution Date | _____, 20___ |

3) This Tranche Agreement No. [_] documents a new Tranche and becomes a binding agreement on the Execution Date set forth above.

[Balance of page intentionally left blank.]

11

| | |
|---|---|
| Dan Schatt, President<br>For and on behalf of CRED LLC | [Lender] |
| Borrower | Lender |
| _____<br>Signature | _____<br>Signature |
| _____<br>Printed | _____<br>Printed |

12