# EXHIBIT D

**Excerpts from August 25, 2023 Hearing Transcript**

```
 1                    UNITED STATES BANKRUPTCY COURT
                           DISTRICT OF DELAWARE
 2

 3   IN RE:                         .   Chapter 11
                                    .   Case No. 23-11161 (JKS)
 4   PRIME CORE                     .
     TECHNOLOGIES, INC.,            .   (Joint Administration Requested)
 5   et al.,                        .
                                    .   Courtroom No. 6
 6                                  .   824 Market Street
                 Debtors.           .   Wilmington, Delaware 19801
 7                                  .
                                    .   Friday, August 25, 2023
 8   . . . . . . . . . . . . . .    .   3:30 p.m.

 9
                          TRANSCRIPT OF ZOOM HEARING
10                 BEFORE THE HONORABLE J. KATE STICKLES
                      UNITED STATES BANKRUPTCY JUDGE
11

12   APPEARANCES:

13   For the Debtors:          Maris J. Kandestin, Esquire
                               MCDERMOTT WILL & EMERY, LLP
14                             1007 North Orange Street
                               10th Floor
15                             Wilmington, Delaware 19801

16                             Darren T. Azman, Esquire
                               Joseph B. Evans, Esquire
17                             One Vanderbilt Avenue
                               New York, New York 10017
18

19   (APPEARANCES CONTINUED)

20   Audio Operator:           Sean Moran, ECRO

21   Transcription Company:    Reliable
                               The Nemours Building
22                             1007 N. Orange Street, Suite 110
                               Wilmington, Delaware 19801
23                             Telephone: (302)654-8080
                               Email: gmatthews@reliable-co.com
24
     Proceedings recorded by electronic sound recording,
25   transcript produced by transcription service.
```

1   consolidated creditor matrix as well as a consolidated list
2   of their top 50 unsecured creditors, redact the personally
3   identifiable information of the debtors current and former
4   employees and customers from public filings in this case, and
5   to serve parties solely through electronic means.
6              Specifically, the debtors seek to serve customers
7   by email in instances where the debtors have a valid email
8   address on file and the customer has neither designated a
9   physical mailing address nor have they requested to be served
10  with hard copies of notices in this case.  Then the debtors
11  also seek to serve non-customers via email in instances where
12  the debtors have a valid email address, but no physical
13  address on file, and where the customer has neither
14  designated a mailing address nor requested to be served with
15  hard copies of pleadings in this case.
16             As I mentioned earlier, the U.S. Trustee has two
17  objections to the relief requested in the motion.  My
18  understanding is that, first, the U.S. Trustee objects to the
19  debtors' request to seal the names of their customers and
20  employees.  Its our understanding that the U.S. Trustee has
21  no objection to our request to seal the physical and email
22  addresses of these parties.  And second, the U.S. Trustee has
23  an objection to our request to serve parties via email.
24             Your Honor, at this point I would like to proffer
25  the testimony of Jor Law, who is still in the virtual

1 courtroom, in connection with the debtors' request to seal as
2 well as to serve parties via email.
3      THE COURT:  Let me ask, does anybody object to the
4 use of a proffer?
5      MR. CUDIA:  Your Honor, Joseph Cudia for the
6 United States Trustee.  I don't object to the use of a
7 proffer provided its subject to cross-examination should I
8 need.
9      THE COURT:  Certainly.  You may proffer subject to
10 cross-examination.
11      MS. KANDESTIN:  Thank you, Your Honor.  If called
12 to the stand Mr. Law would testify as follows:
13      With respect to the debtors' request to seal the
14 names of its employees he would testify that he has been
15 informed that while the company was operating there were
16 instances of employees being threatened physically and/or
17 electronically by crypto enthusiasts and that these threats
18 triggered security changes at the debtors' corporate
19 headquarters.  Mr. Law would further testify that he has been
20 informed that one such example of this was when a crypto
21 enthusiast posted a message hoping that the company's
22 employees would "go to jail or go die."
23      He would also testify that his understanding is
24 that targeted attacks such as this are not uncommon among
25 crypto enthusiasts.  Mr. Law would testify that he has been

1  order protecting the information.  He would further testify
2  that the public disclosure of customer data and confidential
3  information could trigger a post-petition violation of these
4  agreements.
5           Mr. Law would testify that disclosure of the names
6  of these indirect and direct customers would severely
7  jeopardize their lucrative relationships with their corporate
8  and institutional clients.  He would testify that since the
9  filing of these Chapter 11 cases he has been informed that
10 the debtors have received inbound requests from integrator
11 customers requesting that the debtors not publish their names
12 in the public domain.
13          Mr. Law would further testify that the debtors'
14 customer lists are highly proprietary and the public
15 disclosure of the identities of their direct and indirect
16 customers would give their competitors an unfair advantage
17 and cause irreparable harm to the debtors' restructuring
18 efforts.
19          With respect to the debtors' request to serve the
20 debtors direct and indirect -- with respect to serve parties
21 via electronic mail Mr. Law would testify that he has been
22 informed that the debtors communicate with their customers
23 via email and that there are very few instances, if any,
24 where the debtors have communicated with customers through
25 more traditional mail channels, and that their agreements

1  provide that customers will receive statements via email and
2  that they will not receive hard copies.
3            Mr. Law would testify that the debtors' commercial
4  agreements generally contain the following language, I will
5  quote:
6            "Each party hereby agrees that all current and
7  future notices, confirmations, and other communications
8  regarding the agreement specifically, and future
9  communications in general between the parties may be made by
10 email, sent to the email address of record without necessity
11 of confirmation of receipt, delivery or reading and such a
12 form of electronic communication is sufficient for all
13 matters regarding the relationship between the parties."
14           He would further testify that the agreements
15 further contain language to the effect of, again I'm going to
16 quote here:
17           "No physical paper documents will be sent to
18 customer and if customer desires physical documents, then it
19 agrees to be satisfied by directly and personally printing,
20 at customers own expense, either the electronically sent
21 communications or the electronically available communications
22 by logging onto the customer's account.  Then maintaining
23 such physical records in any manner or form that the customer
24 desires."
25           Mr. Law would testify that it is his understanding

1 that the debtors have email addresses for their customers on
2 file and that service by email is not only the means by which
3 customers expect to be served, but it's the quickest, most
4 reliable, and effective means of reaching the highest number
5 of customers with important notices in these Chapter 11
6 cases.
7       He would also testify that it is his understanding
8 that there are approximately 50,000 non-customer creditors
9 listed on the matrix in this case and that there are
10 approximately 5.4 million customers listed on the creditor's
11 matrix. He would further testify that the costs associated
12 with serving customers with notices via regular mail and when
13 necessary, through expedited means such as using Federal
14 Express would exorbitant and given the customers'
15 expectations with respect to receiving communications from
16 the company, such service would be a waste of the company's
17 very limited resources.
18       Mr. Law would testify that he has been informed
19 that the cost to serve the notice of commencement in this
20 case would come to approximately $10.2 million.  He would
21 further testify that he has been informed that the cost to
22 serve these parties via email is drastically less than the
23 service by regular mail.
24       That would conclude Mr. Law's testimony with
25 respect to this motion.