# EXHIBIT 1

**Revised Rule 2004 Requests**

**DEFINITIONS**

The following definitions of terms apply to all Requests, Interrogatories, and Topics of Examination. Unless otherwise defined herein, all words and phrases used herein shall be accorded their usual meaning and shall be interpreted in their common, ordinary sense.

1. Any references to a corporation, partnership, proprietorship, association, organization, or any other business or legal entity (including any of the Debtors) shall be deemed to include the corporation's, partnership's, proprietorship's, association's, organization's, or other business or legal entities' current or former agents, accountants, advisors, employees, attorneys, officers, directors, direct or indirect shareholders, members, representatives, affiliates, subsidiaries, predecessors, successors, assigns, or any other person acting or purporting to act (or who acted or purported to act) on behalf of the corporation, partnership, proprietorship, association, organization, or other business or legal entity.

2. The use of any singular noun shall be construed to include the plural, and vice versa, and a verb in any tense shall be construed as the use of the verb in all other tenses.

3. The terms "all," "any," and "each" shall each be construed as encompassing any and all.

4. The connectives "and" and "or" shall be construed either disjunctively or conjunctively as necessary to bring within the scope of the discovery request all responses that might otherwise be construed to be outside of its scope.

5. "Communication" means the transmittal of information (in the form of facts, ideas, inquiries, or otherwise). For the avoidance of doubt, this may encompass any oral, written, or electronic transmission of information without limitation, including meetings, discussions, conversations, telephone calls, e-mail messages, text messages, chats, iMessages, Bloomberg,

Telegram, WhatsApp, GroupMe, WeChat, Signal, Dust, Slack, Proton, memoranda, letters, analyst reports, telecopies, telefaxes, telexes, conferences, seminars, messages, notes, videotapes, photographs, microfilm, microfiche, magnetic disks, or other media of any kind. Requests for "communication" include pictures or snapshots of any "communication."

6. "Concerning" means relating to, referring to, describing, evidencing, or constituting.

7. "Cryptocurrency" or "Crypto" means all digital assets that are traded on a blockchain, broadly defined to include all types of digital assets, including virtual currency, tokens, ERC-20 compliant tokens, security tokens, utility tokens, stablecoins, and any other digital assets. This includes, but is not limited to, Bitcoin, Bitcoin Cash, Ethereum (ETH), USD Coin, Tether (USDt), Dai, IDOL, XRP, Cardano, Polkadot, Binance Coin, Litecoin, Chainlink, Stellar, Dogecoin, Aave, Uniswap, Wrapped Bitcoin, Bitcoin SV, EOS, Monero, Maker, Cosmos, TRON, NEM, Synthetix, Tezos, THETA, Compound, VeChain, Neo SushiSwap, Huobi Token, UMA, Elrond, IOTA, Solana, and any other digital asset.

8. "Digital Address(es)" means the alphanumeric strings that identifies a digital wallet.

9. "Documents" mean documents or electronic information, including all written, graphic, or printed matter of any kind, however produced or reproduced, including all originals, drafts, working papers, and non-identical copies, whether different from the originals by reason of any notation made on such copies or otherwise, and all electronic, mechanical, or optical records or representations of any kind or other data compilations from which information can be obtained or translated, if necessary, through detection devices into reasonable usable form. The term "Documents" includes, but is not limited to:

  a. correspondence, memoranda, notes, calendar or diary entries, statistics, letters, electronic mail, notebooks, telegrams, journals, minutes, agendas, notices, announcements, instructions, charts, schedules, requests, contracts, prospective contracts, agreements, prospective agreements, licenses, prospective licenses, order forms, books, accounts, records, reports, studies, surveys, experiments, analyses, checks, cancelled checks, wire confirmations, statements, receipts, returns, vouchers, statements, credit memoranda, sales slips, promissory notes, summaries, pamphlets, prospectuses, manuals, brochures, announcements, certificates, drawings, plans, inter-office and intraoffice communications, pitchbooks, marketing materials, or offers;

  b. any written, or electronic transmission of information without limitation, including meetings, discussions, conversations, telephone calls, e-mail messages, text messages, chats, iMessages, Bloomberg, Telegram, WhatsApp, GroupMe, WeChat, Signal, Dust, Slack, Proton, memoranda, letters, analyst reports, telecopies, telefaxes, telexes, conferences, seminars, messages, notes, videotapes, photographs, microfilm, microfiche, magnetic disks, or other media of any kind;

  c. notations in any form made of conversations, telephone calls, meetings, negotiations, or other communications;

  d. bulletins, circulars, schedules, lists, guides, printed matter (including newspapers, magazines and other publications, articles and clippings therefrom), press releases, computer printouts, teletypes, telecopies, telexes, invoices, ledgers, balance sheets, financial statements, or worksheets;

  e. electronic, mechanical, or optical records or representations of any kind (including tapes, cassettes, discs, hard drives, recordings, voice mail, electronic mail, and computer-stored data or material), or transcriptions thereof; and

  f. all drafts, alterations, modifications, changes and amendments of any of the foregoing, and any material underlying, supporting, or used in the preparation of any document.

  g. a draft or non-identical copy is a separate document within the meaning of this term.

10. "Fireblocks" means Fireblocks, Inc., and its affiliated companies which are commonly knowns as Fireblocks (*see* https://www.fireblocks.com).

11. "Hardware Device(s)" means any device purchased by the Prime Entities used to provide access to digital wallets, including Trezor Wallets[1], Ledger Nano Wallets[2], BitBox[3], Cryptosteel[4], Ellipal[5], GridPlus[6], KeepKey[7], Keystone Pro[8], NGRAVE[9], and SecuX Cold Wallets[10].

12. "Include" and "Including" means "include without limitation" and "including without limitation," respectively, so that these terms are as inclusive as possible.

13. "Legacy Wallets" means the digital wallets in which the Prime Entities held Crypto which were not held at Fireblocks.

14. "PIN" means the password, series of numbers and letters, or other alphanumeric combination which permits users to access and/or reset Hardware Devices.

15. "Prime Entity" or "Prime Entities" mean Prime Core Technologies, Inc., Prime Trust, LLC, Prime IRA, LLC, Prime Digital, LLC, and/or Prime New York Trust, LLC, and each of their predecessors, successors, subsidiaries, partners, principals, officers, directors, attorneys, managers, professionals, and other advisors, agents, employees, representatives, and persons acting or purporting to act on their behalf.

16. "Prime Trust Wallets" means any digital wallets used by the Prime Entities to store Crypto.

---

[1] https://trezor.io/.
[2] https://shop.ledger.com/pages/ledger-nano-x, https://shop.ledger.com/products/ledger-nano-s-plus.
[3] https://bitbox.swiss/.
[4] https://cryptosteel.com.
[5] https://www.ellipal.com.
[6] http://www.gridplus.io.
[7] https://www.keepkey.com.
[8] https://keyst.one/shop/products/keystone-pro.
[9] https://shop.ngrave.io.
[10] https://shop.secuxtech.com.

4

17. "▋▋▋" "You", or "Your" means ▋▋▋ individually, and any employees, agents, representatives, attorneys, auditors, accountants, consultants, or any other person(s) now or heretofore under the control of the foregoing or acting or purporting to act on his behalf.

18. "Records" mean all documents and communications including emails, statements, applications, transaction hashes, onboarding forms, communications, correspondence, know your customer/anti-money laundering related documents, SWIFT records, records reflecting transactions, checks (front and back), wire transfers, tax documents and filings, certificates of foreign status of beneficial owners, memoranda, notes, custodian agreements, trustee agreements, forms and/or related documents and communications, beneficiary agreements, forms and/or related documents and communications, and all other documents concerning the owners, signatories, beneficial owners, trustees, and all other persons associated with an Account in any way, and any other documents, communications, or bank records.

19. "Seed Phrase" means the series of words that can be used to access a digital wallet.

20. "Vendor" means any entity contracted with or employed by the Prime Entities.

21. "Wallet Management" means issues concerning digital wallets at Prime, including Digital Addresses, Hardware Devices, Seed Phrases, Fireblocks, BitGo, 98f, and self-hosted wallets.

22. "98f" means the Ethereum blockchain address ▋▋▋▋▋▋▋▋▋▋▋▋▋▋▋298f.

▋▋▋▋▋▋▋▋▋▋▋▋▋▋▋▋▋▋▋▋▋▋▋▋▋298f).

**SCHEDULE A - DOCUMENT REQUESTS**

<u>INSTRUCTIONS</u>

1. The preceding definitions apply to these Instructions and each of the succeeding Requests.

2. All terms defined above shall have the meanings set forth therein, whether capitalized in the Requests or not.

3. ▓▓▓ is required to produce all responsive documents in ▓▓▓ possession, custody, or control, wherever located, including without limitation those in the custody of ▓▓▓ employees, agents, representatives, consultants, attorneys, auditors, accountants, consultants, or any other person(s) now or heretofore under the control of the foregoing or acting or purporting to act on his behalf.

4. These Requests are continuing requests pursuant to the Bankruptcy Rules. ▓▓▓ must supplement any production of documents that are received, discovered, or created after any of ▓▓▓ responses to the Requests, or that are otherwise within ▓▓▓ possession, custody, or control, wherever located, including without limitation those in the custody of ▓▓▓ representatives, agents, Professionals, affiliates, or anyone acting on ▓▓▓ behalf.

5. If ▓▓▓ objects to any part of any Request, ▓▓▓ must produce all documents that are responsive to the portions of the Request to which ▓▓▓ does not object. ▓▓▓ also must state the nature of, and grounds for, the objection.

6. If ▓▓▓ cannot comply with any Request in full, ▓▓▓ must comply to the fullest extent possible, and ▓▓▓ should provide an explanation as to why full compliance is not possible.

7. Where ▓▓▓ asserts a claim of privilege in objecting to a Request and withholds a responsive document on this basis, ▓▓▓ must provide a privilege log setting forth: (a) the nature of the privilege being claimed, (b) the type of document being withheld, (c) the general subject

matter of the document, (d) the date of the document, and (e) such other information sufficient to identify the document, including, where appropriate, the author of the document, the title or subject line of the document, the addressee of the document, and, where not apparent, the relationship of the author and the addressee to each other.

8. If a document contains both privileged and non-privileged material, ▮ must disclose the non-privileged material to the fullest extent possible without thereby disclosing the privileged material. If a party asserts a privilege to part of the material contained in a document, the party asserting the privilege must clearly indicate the portions as to which it claims the privilege. When a document has been redacted or altered in any fashion, ▮ must identify as to each document the reason for the redaction or alteration, the date of the redaction or alteration, and the person performing the redaction or alteration. Any redaction must be clearly visible on the redacted documents.

9. All documents produced in electronic format shall be in their native format and shall be OCR (Optical Character Recognition) capable and shall be produced with Relativity compatible load files.

10. Additional special processing of certain electronically stored information shall be as follows: Microsoft Excel spreadsheet fields shall not be converted to TIFF files and shall be produced in native format. A placeholder TIFF image shall be created, Bates numbered, and the produced Excel file shall be renamed to match the Bates number on its corresponding placeholder page. The exception shall be for redacted spreadsheets which shall be produced in TIFF format. Images for the redacted spreadsheets shall display the content in the same manner as if it were printed. The extractable metadata and text shall be provided for native files, and OCR will be provided for the un-redacted portions of the documents.

11. If any document called for by these Requests has been destroyed or discarded, ▮ must identify that document in writing by providing the following information: (a) any sender/author and any addressee; (b) any indicated or blind copies; (c) the document's date, subject matter, number of pages, and attachments or appendices; (d) all persons to whom the document was distributed, shown, or explained; (e) its date of destruction or discard, manner of destruction or discard, and reason for destruction or discard; (f) the persons who authorized and carried out such destruction or discard; and (g) whether any copies of the document presently exist and, if so, the name of the custodian of each copy.

12. Any copy of a document that varies in any way whatsoever from the original or from any other copy of the document, whether by reason or any handwritten mark or other notation or any omission, is a separate document and must be produced, whether or not the original of such a document is within ▮ possession, custody, or control. A request for any document includes a request for all drafts thereof, and all revisions and modifications thereto, including any red-lined versions or document comparisons, in addition to the document itself. Each document is to be produced in its entirety, without abbreviation or expurgation.

13. In producing documents, all documents that are physically attached to each other, or segregated or separated from other documents, when originally located, should be produced as is. If no document exists that is responsive to a particular request, ▮ must state so in writing.

14. Except where otherwise specified, the Requests seek documents dated, created, or otherwise obtained on or between ▮ employment with the Prime Entities to the present.

## DOCUMENT REQUESTS[11]

1. All Documents, Communications, and Records concerning 98f.

---

[11] Per the definition of "Documents," each of these document requests seek information stored on personal mobile devices, messaging applications and other modes of communication.

2. All Documents, Communications, and Records concerning 98f Seed Phrases.

3. All Documents, Communications, and Records concerning Seed Phrases for Prime Wallets.

4. All Seed Phrases in ▇▇▇ possession concerning Prime Wallets.

5. All images, photos, pictures, hard copy papers, notes, messages, drawings, or any other reference to Seed Phrases in your possession.

6. All Documents, Communications, and Records concerning the purchase of Hardware Devices.

7. All Documents, Communications, and Records concerning any Hardware Devices in ▇▇▇ possession.

8. All Documents, Communications, and Records concerning PINs for any Hardware Devices, including the creation of, storage of, and sharing of PINs for any Hardware Device.

9. All PINs in ▇▇▇ possession for any Hardware Device.

10. All Documents, Communications, and Records concerning any payments made to any Vendor of the Prime Entities concerning Wallet Management.

11. All Documents, Communications, and Records concerning compensation of any kind made by Vendors concerning Wallet Management to ▇▇▇ or any former officers of the Prime Entities and their associates, including: ▇▇▇ ▇▇▇ ▇▇▇ ▇▇▇ ▇▇▇ ▇▇▇ ▇▇▇ ▇▇▇ ▇▇▇ ▇▇▇ ▇▇▇ ▇▇▇ ▇▇▇ and/or ▇▇▇ ▇▇▇.

12. All Documents, Communications, and Records concerning the Prime Entities' transition to Fireblocks.

9

13. All Communications with ▮ ▮ ▮ ▮ and/or ▮ ▮ concerning Wallet Management.

14. All Communications with ▮ ▮ ▮ ▮ and/or ▮ ▮ concerning Wallet Management since You ceased to be employed by the Prime Entities.

15. All Documents, Communications, and Records concerning Digital Addresses to Legacy Wallets that were flagged by Prime Trust Entities as "inactive."

16. All Documents, Communications, and Records concerning Digital Addresses designated by Prime Entities as "inactive."

17. All Documents, Communications, and Records concerning the use of customer deposits.

18. All Documents, Communications, and Records concerning the funding of withdrawals requests concerning 98f.

19. All Documents, Communications, and Records concerning the segregation and/or commingling of Prime Entities and customer deposit fiat and crypto.

20. All Documents, Communications, and Records concerning the Cease-and-Desist Order issued on June 21, 2023 by the Nevada Financial Institutions Division.

21. All Documents, Communications, and Records concerning the Petition for an Appointment of Receivership issued on June 26, 2023, by the Nevada Financial Institutions Division.

22. All Documents, Communications, and Records concerning the Order to Show Cause issued on July 14, 2023, by Judge Susan Johnson.

23. All Documents, Communications, and Records concerning a Chapter 11 Bankruptcy filing by the Prime Entities.

# SCHEDULE B – RULE 2004 EXAMINATION

## TOPICS OF EXAMINATION

1. 98f, including: creation of signatory status for 98f; assets held in 98f; 98f transactions, including withdrawals and deposits into 98f; 98f Seed Phrases; inaccessibility to 98f; and recovery efforts for Seed Phrases to 98f.

1. Seed Phrases to Prime Trust Wallets, including Seed Phrases to 98f.

2. The loss of any Seed Phrase to any Prime Trust Wallet, including 98f.

3. Hardware Devices, including the purchase, storage, custody, security, and/or location of any Hardware Devices.

4. Recovery procedures for PIN and/or Seed Phrases to Prime Trust Wallets.

5. Modes of communication that ▮▮▮ used to discuss the Prime Entities, Prime Trust Wallets, Seed Phrases to Prime Trust Wallets, 98f, and/or Hardware Devices in any capacity.

6. The transition of information about Hardware Devices and Seed Phrases from employees ending their employment with Prime Entities and current employees at the Prime Entities.

7. Communications with ▮▮▮ ▮▮▮ ▮▮▮ and/or ▮▮▮ ▮▮▮ concerning the Prime Entities.

8. Financial relationships with any vendors for the Prime Entities.

9. Legacy Wallets.

10. Withdrawal requests by customers of the Prime Entities.

11. The Prime Entities' financial condition.

12. The Cease-and-Desist Order issued on June 21, 2023, by the Nevada Financial Institutions Division.

13. The Petition for an Appointment of Receivership issued on June 26, 2023, by the Nevada Financial Institutions Division.

14. The Order to Show Cause issued on July 14, 2023, by Judge Susan Johnson.

15. Chapter 11 Bankruptcy filing by the Prime Entities.