## IN THE UNITED STATES BANKRUPTCY COURT
## FOR THE DISTRICT OF DELAWARE

| | |
|---|---|
| In re: | Chapter 11 |
| Prime Core Technologies Inc., *et al.*,[1] | Case No. 23-11161 (JKS) |
| Debtors. | (Jointly Administered) |
| | **Obj. Deadline: Dec. 12, 2023 at 4:00 p.m. (ET)**<br>**Hearing Date: Dec. 19, 2023 at 10:00 a.m. (ET)** |

**DEBTORS' MOTION FOR ENTRY OF AN ORDER (I) APPROVING
SETTLEMENT AGREEMENT AMONG THE DEBTORS, TIKI LABS, INC.
D/B/A AUDIUS INC., AND THE SETTLING AUDIO HOLDERS;
(II) AUTHORIZING THE DEBTORS TO SELL CERTAIN AUDIO
FREE AND CLEAR OF ALL LIENS, CLAIMS, INTERESTS
AND ENCUMBRANCES; AND (III) GRANTING RELATED RELIEF**

The debtors and debtors in possession (collectively, the "<u>Debtors</u>") in the above-captioned chapter 11 cases (the "<u>Chapter 11 Cases</u>") hereby move (the "<u>Motion</u>"), pursuant to sections 105(a) and 363 of title 11 of the United States Code (the "<u>Bankruptcy Code</u>"), Rules 6004 and 9019 of the Federal Rules of Bankruptcy Procedure (the "<u>Bankruptcy Rules</u>"), and Rule 6004-1 of the Local Rules of Bankruptcy Practice and Procedure of the United States Bankruptcy Court for the District of Delaware (the "<u>Local Rules</u>"), for entry of an order, substantially in the form attached hereto as **<u>Exhibit A</u>** (the "<u>Proposed Order</u>"), (i) approving the Settlement Agreement (as defined below) entered into between the Debtors, on the one hand, Tiki Labs, Inc. d/b/a Audius Inc. ("<u>Audius</u>") and certain other persons and entities who execute a joinder the Settlement Agreement (collectively, the "<u>Settling AUDIO Holders</u>," and together

---

[1] The debtors in these chapter 11 cases, along with the last four digits of each debtor's federal tax identification number are:  Prime Core Technologies Inc. (5317); Prime Trust, LLC (6823); Prime IRA LLC (8436); and Prime Digital, LLC (4528). The Debtors' service address is 10845 Griffith Peak Dr., #03-153, Las Vegas, NV 89135.

with Audius, the "Audius Parties"), on the other hand;[2] (ii) authorizing the sale of certain of the

AUDIO (as defined below), free and clear of all liens, claims, interests, and encumbrances, as

more particularly set forth below; and (iii) granting related relief. In support of this Motion, the

Debtors rely upon the *Declaration of Robert Winning in Support of Debtors' Motion for Entry of*

*an Order (I) Approving Settlement Agreement Among the Debtors, Tiki Labs, Inc. d/b/a Audius*

*Inc., and the Settling AUDIO Holders; (II) Authorizing the Debtors to Sell Certain AUDIO Free*

*and Clear of All Liens, Claims, Interests, and Encumbrances Pursuant to Bankruptcy Code*

*Section 363; and (III) Granting Related Relief* (the "Winning Declaration").  In further support

of this Motion, the Debtors respectfully state as follows:

## JURISDICTION AND VENUE

1.      The United States Bankruptcy Court for the District of Delaware (the "Court")

has jurisdiction over this Motion pursuant to 28 U.S.C. §§ 157 and 1334, and the *Amended*

*Standing Order of Reference* from the United States District Court for the District of Delaware,

dated February 29, 2012. This matter is a core proceeding within the meaning of 28 U.S.C.

§ 157(b)(2). Venue in this Court is proper pursuant to 28 U.S.C. §§ 1408 and 1409.

2.      The statutory predicates for the relief sought herein are Bankruptcy Code sections

105(a) and 363, Bankruptcy Rules 6004 and 9019, and Local Rule 6004-1.

3.      The Debtors confirm their consent, pursuant to Local Rule 9013-1(f), to the entry

of a final order by the Court in connection with this Motion to the extent that it is later

determined that the Court, absent consent of the parties, cannot enter final orders or judgments in

connection herewith consistent with Article III of the United States Constitution.

---

[2]     A true and correct copy of the Settlement Agreement is attached to the Proposed Order as **Exhibit 1**.

**BACKGROUND**

A.    **General Background**

4.      On August 14, 2023 (the "Petition Date"), the Debtors commenced the Chapter 11 Cases. These cases have been jointly administered for procedural purposes only.

5.      The Debtors continue to manage their properties as debtors and debtors in possession pursuant to Bankruptcy Code sections 1107(a) and 1108.

6.      On August 29, 2023, the United States Trustee for the District of Delaware (the "U.S. Trustee") appointed the Official Committee of Unsecured Creditors (the "Committee") in these Chapter 11 Cases [Docket No. 51]. The Committee is comprised of the following unsecured creditors: (a) Yousef Abbasi; (b) Allsectech, Inc.; (c) DMG Blockchain Solutions, Inc.; (d) Net Cents Technology, Inc.; (e) Polaris Ventures; (f) Stably Corporation; and (g) Austin Ward. No trustee or examiner has been appointed in these cases.

7.      Additional information regarding the Debtors and these Chapter 11 Cases, including the Debtors' business operations, capital structure, financial condition, and the reasons for and objectives of these Chapter 11 Cases, is set forth in the *Declaration of Jor Law, Interim Chief Executive Officer and President of Prime Core Technologies Inc., et al., in Support of Chapter 11 Petitions and First Day Motions* [Docket No. 14] (the "First Day Declaration"), which is incorporated by reference as if fully set forth herein.

B.    **The Audius Claims**

8.      On or around October 2020, Audius[3] contracted with Debtor Prime Trust, LLC ("Prime Trust") for the provision of certain services, and, in connection therewith, Audius

---

[3]    Audius was founded to advance the development and success of Audius Music and the Audius Protocol, an open source, decentralized content streaming and sharing service. *See* The *Objection of Tiki Labs, Inc. DBA Auduis [sic] Inc. to Debtors' Disclosure Statement Pursuant to Section 1125 of the Bankruptcy Code with Respect to the Joint Chapter 11 Plan of Reorganization for Prime Core Technologies Inc. and its Affiliated*

maintained $AUDIO crypto (the "AUDIO") with Prime Trust.[4]  *See Id.* ¶ 6. The Debtors are

currently holding 323,976,629.27 AUDIO.

    9.    The Debtors and Audius disagree as to which entity holds legal and equitable title

to the AUDIO, and thus, whether the AUDIO constitute property of the Debtors' estates.[5]

## C.    The Settlement Agreement

    10.    Over the course of these Chapter 11 Cases, the Debtors and Audius have engaged

in good faith, arms'-length discussions regarding their disputes surrounding the AUDIO.

Following such discussions, the Parties entered into that certain *Settlement Agreement*, executed

November 27, 2023, by and between the Debtors, on the one hand, and the Audius Parties, on the

other hand (the "Settlement Agreement").[6]  The salient terms of the Settlement Agreement are

described below.[7]

| SUMMARY OF MATERIAL TERMS OF SETTLEMENT AGREEMENT | |
| --- | --- |
| **Parties**<br><br>(Settlement Agreement, preamble) | The Debtors, Audius, and any Settling AUDIO Holders that execute a joinder to the Settlement Agreement. |

---

*Debtors* [Docket No. 214] (the "Audius Objection"), ¶ 4. The Audius ecosystem provides a blockchain-based alternative to existing streaming platforms to help artists publish and monetize their work and distribute it directly to fans. *See id.*, at ¶5. Participants on the Audius platform could earn $AUDIO tokens from the network through a variety of activities and services. *See id.*

[4]    The Parties' relationship is governed by: (i) that certain *Prime Trust Order Form* dated August 15, 2022 (the "Order Form"), (ii) that certain *Prime Trust Master Services Agreement* (the "MSA"), and (iii) that certain *Service Schedule for Prime Trust Custodial Services* (the "Service Schedule," and together with the Order Form and the MSA, the "Agreement"). The MSA and the Service Schedule are incorporated into the Order Form by reference. *Id.* ¶ 8.

[5]    On October 5, 2023, Audius filed proof of claim no. 320 in connection with these Chapter 11 Cases, and on October 16, 2023, Audius filed proof of claim no. 707, which amended proof of claim no. 320 (the amended claim, the "Audius Claim").

[6]    The Settlement Agreement is entered into between Audius and the Debtors (together, the "Parties") but includes a mechanism by which persons and entities that transferred AUDIO to the Debtors (i.e., the Settling AUDIO Holders) may join the Settlement Agreement.

[7]    This summary is qualified in its entirety by reference to the applicable provisions of the Settlement Agreement. To the extent there exists any inconsistency between this summary and the provisions of the Settlement Agreement, the provisions of the Settlement Agreement shall control.

| | |
|---|---|
| **Audio Inventory**<br><br>(Settlement Agreement, § 2) | The Parties agree that the Debtors are holding 323,976,629.27 AUDIO. |
| **Treatment of AUDIO**<br><br>(Settlement Agreement, § 3) | a.  The Audius Parties agree that 11,000,000 AUDIO that is currently held by Prime Trust in an account attributed to Audius (the "<u>Settlement Payment</u>") will be treated as Prime Trust's property.<br><br>b.  Prime Trust agrees to take reasonable efforts to not liquidate in excess of 10% of the "24 Hour Trading Volume" of AUDIO as reflected on www.coingecko.com.<br><br>c.  The AUDIO Prime Trust holds in accounts of the Audius Parties will be transferred to Audius within 7 days of the Effective Date ("<u>Released AUDIO</u>").  Audius is responsible for transmitting Released AUDIO to the Settling AUDIO Holders.<br><br>d.  The Parties agree that Audius and Prime Trust will find a mutually agreeable time to participate in a recorded zoom conference during which they will execute two test transactions prior to transmitting the remaining Released AUDIO.  The Parties further agree that each of them may employ at their own expense a blockchain professional to facilitate the transfer of the Released AUDIO.  The Parties understand that there are inherent risks in executing cryptocurrency transactions and assume that risk in connection with the payment of the Released AUDIO.<br><br>e.  Any person or entity that holds an account at Prime that is not an Audius Party is not bound by this Settlement Agreement and will not receive any Released AUDIO.  Prime Trust reserves all arguments and causes of action against persons or entities that do not execute this Settlement Agreement. |
| **Settling AUDIO Holders**<br><br>(Settlement Agreement, § 4) | Other persons or entities that transferred AUDIO to Prime that desire to be bound by this Settlement Agreement must sign Schedule A to the Settlement Agreement by no later than 12 days after Audius and Prime execute this Settlement Agreement.  The Released AUDIO will be calculated using the books and records of Prime, which currently list a total amount of 323,976,629.27 AUDIO.  The Parties agree to meet and confer concerning any discrepancies concerning the amount of AUDIO attributed to any particular Settling AUDIO Holder.  In any case, the Released AUDIO will not exceed 312,976,629.27 AUDIO.  By executing this Settlement Agreement, the Audius Parties represent that they have the authority to bind all entities and persons who have any claim or right to the portion of the Released AUDIO attributable to any of the Audius Parties. |
| **Audius Indemnification**<br><br>(Settlement Agreement, § 5) | If a person or entity claims that any of the Audius Parties did not have the authority to execute this Settlement Agreement or to receive the |

| | |
|---|---|
| | Released AUDIO, Audius agrees to indemnify Prime Trust for all costs, legal fees, or liability associated with any such claim. |
| **Release of Debtors and Withdrawal of Audius Claim**<br><br>(Settlement Agreement, § 6) | Upon entry into this Settlement Agreement, Audius Parties, including Audius' directors, officers, managers, present and former trustees, agents, affiliates, representatives, successors, and assigns (collectively, "<u>Audius Releasing Parties</u>"), hereby irrevocably, completely, finally, and fully forever release, remise, acquit, compromise, settle, extinguish, relinquish, and forever discharge without limitation, Prime, Prime's bankruptcy estate, and Prime's successors, assigns, advisors, consultants, attorneys, representatives, employees, licensors, licensees, subrogees, agents, heirs, executors, personal representatives, estates, and administrators (collectively, "<u>Prime Released Parties</u>") from any and all causes of action, suits, charges, debts, dues, sums of money, accounts, reckonings, bonds, bills, specialties, covenants, contracts, appraisal rights, torts, controversies, agreements, promises, variances, trespasses, damages, judgments, executions, claims and demands whatsoever, whether asserted or unasserted, contingent or remote, known or unknown, and whether arising in law, admiralty, or equity which the Audius Releasing Parties or any of them had, now have, or which their successors or assigns hereinafter can, shall, or may have against any of the Prime Released Parties from the beginning of the world to the Effective Date and that relate to the Chapter 11 Cases. Upon entry into this Settlement Agreement, the Audius Release Parties will and hereby do withdraw all proofs of claim filed in the Chapter 11 Cases. Audius Parties relinquish all rights to any distributions in the Chapter 11 Cases. |

D.       **The Proposed Sale**

11.      The Debtors seek to convert the 11,000,000 AUDIO to fiat, in accordance with

the terms of the Settlement Agreement (the "Proposed Sale").  The nature of the AUDIO does

not lend itself to undertaking a traditional marketing and sale process.  Because a relatively

liquid market exists for AUDIO, a marketing and sale process would be inefficient.  For

liquidating 11,000,000 AUDIO, a marketing and sale process would likely incur more

professional fees than incremental benefits, if any.  The Debtors believe that selling or otherwise

liquidating the AUDIO quickly and efficiently is in the best interests of their estates, creditors,

and stakeholders.  As such, the Debtors are seeking authority through this Motion to convert the

AUDIO to fiat; and to treat that fiat as property of Debtors' estate without further order of the

Court.[8]

## RELIEF REQUESTED

12.      By this Motion, the Debtors request entry of the Proposed Order, substantially in

the form attached hereto as **Exhibit A**, (i) approving the Settlement Agreement pursuant to

Bankruptcy Rule 9019 and Bankruptcy Code section 105; (ii) approving the sale of the AUDIO

pursuant to Bankruptcy Code section 363(b), Bankruptcy Rule 6004, and Local Rule 6004-1; and

(iii) granting related relief.

---

[8]      Prior to the issuance of the Cease and Desist Order (as defined in the First Day Declaration), the Debtors sold
cryptocurrencies in the ordinary course of their business within the meaning of Bankruptcy Code section 363(c).
Thus, the Debtors arguably may sell the AUDIO without leave of this Court.  That said, the Debtors are seeking
authority from this Court to sell the AUDIO pursuant to Bankruptcy Code section 363(b) out of an abundance
of caution and for purposes of this Motion only. The Debtors are also seeking to sell the AUDIO free and clear
of all liens, claims, and encumbrances pursuant to Bankruptcy Code 363(c) and Bankruptcy Rule 6004(c).

## BASIS FOR RELIEF REQUESTED

**A.     The Settlement Agreement is an Exercise of the Debtors' Sound Business Judgment and Should be Approved.**

13.     This Court has authority to approve the Settlement Agreement pursuant to

Bankruptcy Rule 9019.  *See* Fed. R. Bankr. P. 9019(a) (providing that "[o]n motion by the

[debtor in possession] and after notice and a hearing, the court may approve a compromise or

settlement.").  Additionally, Bankruptcy Code section 105(a) provides a bankruptcy court with

broad powers in the administration of a case under the Bankruptcy Code. Section 105(a)

provides that "[t]he court may issue any order, process, or judgment that is necessary or

appropriate to carry out the provisions of [the Bankruptcy Code]." 11 U.S.C. § 105(a). Provided

that a bankruptcy court does not employ its equitable powers to achieve a result not

contemplated by the Bankruptcy Code, the exercise of its section 105(a) power is proper. *In re*

*Fesco Plastics Corp.*, 996 F.2d 152, 154 (7th Cir. 1993); *Pincus v. Graduate Loan Ctr. (In re*

*Pincus)*, 280 B.R. 303, 312 (Bankr. S.D.N.Y. 2002). Pursuant to section 105(a), a court may

fashion an order or decree that helps preserve or protect the value of a debtor's assets. *See, e.g.*,

*Chinichian v. Campolongo (In re Chinichian)*, 784 F.2d 1440, 1443 (9th Cir. 1986) ("Section

105 sets out the power of the bankruptcy court to fashion orders as necessary pursuant to the

purposes of the Bankruptcy Code."); *In re Cooper Props. Liquidating Tr., Inc.*, 61 B.R. 531, 537

(Bankr. W.D. Tenn. 1986) (noting that the bankruptcy court is "one of equity and as such it has a

duty to protect whatever equities a debtor may have in property for the benefit of its creditors as

long as that protection is implemented in a manner consistent with the bankruptcy laws").

14.     Settlements are often used to expedite case administration and reduce unnecessary

administrative costs. As such, they are favored in bankruptcy. *See In re Nutraquest, Inc.*, 434

F.3d 639, 646 (3d Cir. 2006) ("[i]t is axiomatic that settlement will almost always reduce the

complexity and inconvenience of litigation"). A bankruptcy court may approve a settlement

under Bankruptcy Rule 9019 so long as the proposed compromise is fair, reasonable and in the

best interest of the estate. *See In re Marvel Entm't Grp., Inc.*, 222 B.R. 243, 249 (D. Del 1998)

("[T]he ultimate inquiry [is] whether 'the compromise is fair, reasonable, and in the interest of

the estate.'"); *In re Nw. Corp.*, 2008 WL 2704341, at *6 (Bankr. D. Del. July 10, 2008) ("[T]he

bankruptcy court must determine whether the compromise is fair, reasonable, and in the best

interests of the estate."); *In re Key3Media Grp., Inc.*, 336 B.R. 87, 92 (Bankr. D. Del. 2005)

("[T]he bankruptcy court has a duty to make an informed, independent judgment that the

compromise is fair and equitable."). A proposed compromise need not be the best result that a

debtor could have achieved, but only must fall within the "reasonable range of litigation

possibilities." *In re Coram Healthcare Corp.*, 315 B.R. 321, 330 (Bankr. D. Del. 2004).

15.     In determining whether a compromise is fair and reasonable, the Third Circuit has

adopted a four-factor balancing test: "(1) the probability of success in litigation; (2) the likely

difficulties in collection; (3) the complexity of the litigation involved, and the expense,

inconvenience and delay necessarily attending it; and (4) the paramount interest of the creditors."

*Meyers v. Martin (In re Martin)*, 91 F.3d 389, 393 (3d Cir. 1996); *see also Nutraquest*, 434 F.3d

at 643; *Key3Media*, 336 B.R. 87 at 93 (when determining whether a compromise is in the best

interests of the estate, courts must "assess and balance the value of the claim that is being

compromised against the value to the estate of the acceptance of the compromise proposal")

(internal citations omitted).

16.     As described below, the Settlement Agreement satisfies the *Martin* factors and

should be approved.

17.    *Probability of Success in Litigation.* The Parties dispute whether AUDIO constitutes property of the estate. Litigating whether AUDIO constitutes property of Debtors' estate would be costly and time consuming. Accordingly, this factor weighs in favor of approving the Settlement Agreement.

18.    *Likely Difficulties in Collection.* The AUDIO are in the Debtors possession. This factor is not dispositive. *See In re Capmark Fin. Group Inc.*, 438 B.R. 471 (Bankr. D. Del. 2010) (approving settlement motion despite finding that there would not be any difficulties in collection).

19.    *Complexity of Litigation, Expense, Inconvenience, Delay.* Litigation regarding whether AUDIO is property of Debtors' estate would be complex and expensive.  Such litigation could delay distributions to creditors.  Accordingly, this factor weighs in favor of approving the Settlement Agreement.

20.    *Paramount Interest of the Creditors.* The Settlement Agreement allows for the recovery of a substantial amount of AUDIO, which the Debtors can efficiently convert to fiat. This will benefit creditors and other stakeholders.  Accordingly, this factor weighs in favor of approving the Settlement Agreement.

21.    Based on the foregoing, the Debtors submit that the Settlement Agreement reflects the reasoned exercise of their business judgment.  Entry into the Settlement Agreement will allow the Debtors to retain valuable estate assets, eliminate the Audius Claim, and avoid significant costs and uncertainties attendant to objecting to and otherwise litigating the Audius Claim. The Settlement Agreement is thus within the range of reasonable outcomes were litigation to proceed and is in the best interests of the Debtors' estates, their creditors, and stakeholders and should be approved.

**B.    The Proposed Sale is in the Best Interests of the Debtors' Estates and Should be Approved.**

22.    The conversion of AUDIO to fiat is in the best interest of the Debtors' estates.

Bankruptcy Code section 363(b)(1) provides, in relevant part, that a debtor in possession, "after

notice and a hearing, may use, sell, or lease, other than in the ordinary course of business,

property of the estate." 11 U.S.C. § 363(b)(1). Although Bankruptcy Code section 363 does not

specify a standard for determining when it is appropriate for a court to authorize the use, sale, or

lease of property of the estate, bankruptcy courts routinely authorize sales of a debtor's assets if

such sale is based upon the sound business judgment of the debtor. *See In re Chateaugay Corp*.,

973 F.2d 141 (2d Cir.1992) (approval of section 363(b) sale is appropriate if good business

reasons exist for such sale); *see also In re Lionel Corp*., 722 F.2d 1063,1071 (2d Cir. 1983);

*Meyers v. Martin (In re Martin)*, 91 F.3d 389, 395 (3d Cir. 1996); *In re Montgomery Ward*

*Holding Corp*., 242 B.R. 147, 153 (Bankr. D. Del. 1999); *In re Delaware & Hudson Ry. Co*., 124

B.R. 169, 176 (Bankr. D. Del. 1991); *In re Trans World Airlines, Inc*., Case No. 01- 00056, 2001

Bankr. LEXIS 980, at *29 (Bankr. D. Del. Apr. 2, 2001); *Stephens Indus. Inc. v. McClung*, 789

F.2d 386, 390 (6th Cir. 1986) (approving a sale of assets pursuant to section 363(b)).

23.    Courts in this Circuit have wide latitude to approve a sale of a debtor's assets in

the exercise of the debtor's discretion where a sound business purpose dictates such action. As

this Court has recognized:

> The Bankruptcy Court has "considerable discretion" in deciding whether to
> approve a sale. "In determining whether to authorize use, sale or lease of property
> of the estate under [Section 363], courts require the [Trustee] to show that a sound
> business purpose justifies such actions." If the bankruptcy trustee's decision
> evidences a sound business purpose, then the Bankruptcy Court should approve the
> sale.

*In re Culp*, 550 B.R. 683, 697 (D. Del. 2015) (quoting *In re Montgomery Ward Holding Corp.*,

242 B.R. 147, 152–53 (D.Del.1999)) (citations omitted) (alterations in original); see also

*Stephens Indus., Inc.*, 789 F.2d at 388 ("Determining whether a sale should be approved under § 363 falls within the sound discretion of the trial court.").

24.     The business judgment rule under Bankruptcy Code section 363(b)(1) shields a debtor from judicial second-guessing. *See Abbotts Dairies of Pa., Inc.*, 788 F.2d 143, 149-50 (3d Cir. 1986) (applying good faith standard to transaction by debtor); *Comm. of Asbestos-Related Litigants and/or Creditors v. Johns-Manville Corp. (In re Johns-Manville Corp.)*, 60 B.R. 612, 615-16 (Bankr. S.D.N.Y. 1986) ("a presumption of reasonableness attaches to a debtor's management decisions"). "In evaluating whether a sound business purpose justifies the use, sale or lease of property under Section 363(b), courts consider a variety of factors, which essentially represent a 'business judgment test.'" *In re Montgomery Ward Holding Corp.*, 242 B.R. at 153. Whether a debtor "articulates a reasonable basis for its business decisions . . . , courts will generally not entertain objections to the debtor's conduct." *In re Johns-Manville Corp.*, 60 B.R. at 616.

25.     Moreover, Bankruptcy Rule 6004(f) authorizes debtors to sell assets outside the ordinary course of business by private sale. Fed. R. Bankr. P. 6004(f). A debtor is obligated to maximize the return to its estate resulting from an asset sale, whether public or private. *See In re Bakalis*, 220 B.R. 525, 532 (Bankr. E.D.N.Y. 1998) ("When a debtor or trustee conducts a sale under § 363(b), it has an obligation to maximize revenues for the estate."); *In re Nepsco, Inc.*, 36 B.R. 25, 26 (D. Me. 1983) ("Clearly, the thrust of the statutory scheme is to provide maximum flexibility to the trustee, subject to the oversight of those for whose benefit he acts, i.e., the creditors of the estate."). Accordingly, if a debtor in possession concludes that a particular private purchase offer is the "most advantageous of the estate," a court should defer to the debtor in possession's business judgment. *Bakalis*, 220 B.R. at 532.

26.     The Debtors submit that the Proposed Sale reflects a reasonable exercise of its business judgment. By converting the AUDIO to fiat, the Debtors will be able to recover the value of these assets for the benefit of its estate and creditors. Moreover, the existence of a relatively liquid market will allow the Debtors to sell the AUDIO at the highest available price in an efficient manner without the expenses associated with a marketing process.

**C.     The Court Should Authorize the Debtors to Sell the AUDIO Free and Clear of All Liens, Claims, and Encumbrances Under 11 U.S.C. § 363(f)**

27.     Pursuant to Bankruptcy Code section 363(f), a debtor in possession may sell property of the estate "free and clear of any interest in such property of an entity other than the estate" if

> (1) applicable non-bankruptcy law permits the sale of such property free and clear of such interest;
> (2) such entity consents;
> (3) such interest is a lien and the price at which such property is to be sold is greater than the aggregate value of all liens on such property;
> (4) such interest is in bona fide dispute; or
> (5) such entity could be compelled, in a legal or equitable proceeding, to accept a money satisfaction of such interest.

11 U.S.C. § 363(f)(1)–(5). Because these requirements are listed in the disjunctive, the Debtors only need to satisfy one of the five requirements to permit the AUDIO to be sold "free and clear" of liens and interests. *In re Wolverine Radio Co.*, 930 F.2d 1132, 1147 n.24 (6th Cir. 1991) (stating that section 363(f) of the Bankruptcy Code is written in the disjunctive; holding that the court may approve the sale "free and clear" provided at least one of the subsections of section 363(f) of the Bankruptcy Code is met).

28.     The Debtors do not believe that anyone other than the Parties has asserted an interest in the AUDIO.  However, the Debtors are seeking to sell the AUDIO free and clear of all liens, claims, and encumbrances under Bankruptcy Code 363(f) so that they may transfer clear

title to the AUDIO as quickly as possible. Accordingly, the requirements of Bankruptcy Code section 363(f) have been satisfied.

## **WAIVER OF BANKRUPTCY RULE 6004(h)**

29.     Bankruptcy Rule 6004(h) provides that an order authorizing the use, sale, or lease of property is stayed until the expiration of fourteen (14) days after entry of the order, unless the court orders otherwise. The Debtors, however, request that the Proposed Order, and any sale consummated pursuant thereto, be effective immediately. It is in the best interests of the Debtors' estates to facilitate the closing of the Proposed Sale, thereby expediting the receipt of related sale proceeds into the estate. Accordingly, the Debtors submit that the fourteen-day stay set forth in Bankruptcy Rule 6004(h) should be waived with respect to the Proposed Order and in connection with the Proposed Sale.

## **NOTICE**

30.     Notice of the Motion has been provided to (i) counsel to the Committee; (ii) the U.S. Trustee; (iii) Audius or its counsel; and (iv) all parties that have requested notice pursuant to Bankruptcy Rules 2002.  The Debtors submit that no other or further notice is required.

*[Remainder of Page Intentionally Left Blank]*

14

## <u>CONCLUSION</u>

**WHEREFORE**, the Debtors requests entry of the Proposed Order, substantially in the form attached hereto as **<u>Exhibit A</u>**, (i) approving the Settlement Agreement; (ii) authorizing the Debtors to sell the AUDIO; and (iii) granting related relief.

Dated: November 28, 2023
      Wilmington, Delaware

**MCDERMOTT WILL & EMERY LLP**

*/s/ Maris J. Kandestin*
Maris J. Kandestin (No. 5294)
1000 N. West Street, Suite 1400
Wilmington, Delaware 19801
Telephone:    (302) 485-3900
Facsimile:    (302) 351-8711
Email:    mkandestin@mwe.com

-and-

Darren Azman (admitted *pro hac vice*)
Joseph B. Evans (admitted *pro hac vice*)
J. Greer Griffith (admitted *pro hac vice*)
One Vanderbilt Avenue
New York, New York 10017-3852
Telephone:    (212) 547-5400
Facsimile:    (212) 547-5444
Email:    dazman@mwe.com
        jbevans@mwe.com
        ggriffith@mwe.com

-and-

Gregg Steinman (admitted *pro hac vice*)
333 SE 2nd Avenue, Suite 4500
Miami, Florida 33131
Telephone:    (305) 358-3500
Facsimile:    (305) 347-6500
Email:    gsteinman@mwe.com

*Counsel to the Debtors and Debtors in Possession*