# IN THE UNITED STATES BANKRUPTCY COURT
# FOR THE DISTRICT OF DELAWARE

| | |
|---|---|
| In re: | Chapter 11 |
| Prime Core Technologies Inc., *et al.*,[1] | Case No. 23-11161 (JKS) |
| Debtors. | (Jointly Administered) |
| | Re: Docket No. 480 |

**DECLARATION OF ROBERT WINNING IN SUPPORT OF
DEBTORS' MOTION FOR ENTRY OF AN ORDER (I) APPROVING
SETTLEMENT AGREEMENT AMONG THE DEBTORS, TIKI LABS, INC.
D/B/A AUDIUS INC., AND THE SETTLING AUDIO HOLDERS;
(II) AUTHORIZING THE DEBTORS TO SELL CERTAIN AUDIO
FREE AND CLEAR OF ALL LIENS, CLAIMS, INTERESTS
AND ENCUMBRANCES; AND (III) GRANTING RELATED RELIEF**

I, Robert Winning, hereby declare pursuant to section 1746 of title 28 of the United States Code:

1. I am a managing director at M3 Advisory Partners, LP ("M3"), which maintains its principal office at 1700 Broadway, New York, NY 10019. M3 has been retained by the above-captioned debtors and debtors-in-possession as its financial advisor. I have more than a decade of professional advisory experience in corporate restructurings, first as an attorney and then since 2020 as a financial advisor. I have been involved in dozens of chapter 11 proceedings, across sizes and industries, advising creditors, companies, and acquirors of assets.

---

[1] The debtors in these chapter 11 cases, along with the last four digits of each debtor's federal tax identification number are: Prime Core Technologies Inc. (5317); Prime Trust, LLC (6823); Prime IRA LLC (8436); and Prime Digital, LLC (4528). The Debtors' service address is 10845 Griffith Peak Dr., #03-153, Las Vegas, NV 89135.

2. I submit this declaration (this "Declaration") in support of *Debtors' Motion for Entry of an Order (I) Approving Settlement Agreement Among the Debtors, Tiki Labs, Inc. d/b/a Audius Inc., and the Settling AUDIO Holders; (II) Authorizing the Debtors to Sell Certain AUDIO Free and Clear of All Liens, Claims, Interests and Encumbrances; and (III) Granting Related Relief* filed contemporaneously herewith (the "Motion").

3. Except as otherwise indicated, all facts set forth in this Declaration are based on my personal knowledge of the Debtors' operations and finances, information learned from my review of relevant documents, and information I have received from other members of the Debtors' management team and advisors. I have reviewed the Motion and believe that it accurately reflects the development of, and justification and need for, the Settlement Agreement and Proposed Sale. If I were called to testify, I could and would testify competently to the facts set forth herein.

**The Settlement Agreement is in the Best Interests of the Debtors' Estates**

4. I understand that, beginning in October 2023, Audius[2] and the Debtors commenced settlement discussions to resolve the Parties' disagreement regarding ownership of the AUDIO. Those negotiations ultimately culminated with the Settlement Agreement.

5. The Debtors and/or their advisors were involved throughout the negotiations, and undertook significant efforts to facilitate the Settlement Agreement.

6. The negotiations between the Debtors, and Audius occurred in good faith at arm's length, and consisted of several rounds of settlement offers and counteroffers over the course of multiple weeks. The Settlement Agreement provides that the Debtors will retain 11,000,000

---

[2] Capitalized terms used but not defined herein shall have the meanings ascribed to them in the Motion.

AUDIO, which will be treated as property of the Debtors' estate, and transfer the balance of the AUDIO held by the Debtors to Audius.

7. Other holders of AUDIO (referred to as "AUDIO Holders") are permitted to join the Settlement Agreement, but they must agree to the terms of the Settlement Agreement by a specified date. If those AUDIO Holders agree, they will receive the AUDIO held by the Debtors that is associated with their respective accounts (as Audius is responsible for transmitting the AUDIO originally held by the Debtors to the AUDIO Holders that join the Settlement Agreement). The Settlement Agreement also contemplates the indemnification of the Debtors by Audius for any costs incurred as a result of any entity making a claim that Audius did not have authority to execute the Settlement Agreement. Finally, Audius is also releasing all claims against the Debtors that relate to the Chapter 11 Cases and withdrawing all proofs of claim filed in the Chapter 11 Cases. For the reasons explained below, I believe that the Settlement Agreement serves the paramount interests of the Debtors' estates, their creditors, and other parties in interest and is a sound exercise of business judgment. The value of the 11,000,000 AUDIO will be realized through the Proposed Sale and inure to the benefit of all of the Debtors' creditors.

8. The Settlement Agreement also resolves potential litigation between the Debtors and Audius that could otherwise extend the Debtors' bankruptcy proceedings and force their estates to fund the administrative costs of pursuing and defending against claims.[3] Avoidance of these costs will increase the distributable value available for creditors.

---

[3] Based on information and facts provided to me by the Debtors and their other advisors, I understand that defending against Audius' claims and asserting any potential counterclaims would require significant time, money, and efforts.

9.      For these reasons, I believe that the Settlement Agreement is a significantly better result for the Debtors, their estates, and creditors when compared to the alternative of proceeding with a costly and uncertain litigation. Accordingly, I believe that the Settlement Agreement advances the paramount interest of the Debtors, their estates, and all stakeholders and should be approved.

### The Proposed Sale is in the Best Interests of the Debtors' Estates

10.     It is my understanding that the Debtors intend to convert the AUDIO to fiat which they will retain under the Settlement Agreement in accordance with their prepetition (and pre-Cease and Desist Order) practice with respect to efficiently liquidating cryptocurrencies without a marketing and auction process. The Debtors intend to efficiently liquidate the AUDIO. A relatively liquid market for AUDIO exists.

11.     Because a relatively liquid market for AUDIO exists, a marketing or auction process would be inefficient. For the liquidation of this amount of AUDIO, a marketing or auction process would likely incur more professional fees than cost savings, if any.

12.     Accordingly, I believe the Proposed Sale advances the paramount interest of the Debtors, their estates, and all stakeholders and should be approved.

Pursuant to 28 U.S.C. §1746, I declare under penalty of perjury that the foregoing statements are true and correct.

Executed on this 28th of November, 2023

>*/s/ Robert Winning*_____
>Robert Winning
>Managing Director
>M3 Advisory Partners, LP