IN THE UNITED STATES BANKRUPTCY COURT
FOR THE DISTRICT OF DELAWARE

| | |
|---|---|
| In re:<br><br>Prime Core Technologies Inc., *et al.*,[1]<br><br>　　　　　　　　　　Debtors. | Chapter 11<br><br>Case No. 23-11161 (JKS)<br><br>(Jointly Administered)<br><br>**Obj. Deadline: Dec. 12, 2023 at 4:00 p.m. (ET)**<br>**Hearing Date: Dec. 19, 2023 at 10:00 a.m. (ET)** |

**DEBTORS' MOTION FOR ENTRY OF AN ORDER (I) APPROVING
DEBTORS' ENTRY INTO LICENSE AGREEMENT WITH
ELECTRIC SOLIDUS INC., AND (II) GRANTING RELATED RELIEF**

Prime Core Technologies Inc. and certain of its affiliates and subsidiaries, as debtors and debtors in possession in the above-captioned chapter 11 cases (collectively, the "Debtors"), hereby move (the "Motion") for entry of an order, substantially in the form attached hereto as **Exhibit A** (the "Proposed Order"), (i) authorizing and approving the Debtors' entry into the License Agreement (as defined below) with Electric Solidus Inc. d/b/a Swan Bitcoin ("Swan" or the "Licensee"). In support of the Motion, the Debtors submit the *Declaration of Michael Wyse in Support of Debtors' Motion for Entry of an Order (I) Approving the Debtors' Entry Into License Agreement With Electric Solidus Inc., and (II) Granting Related Relief* (the "Wyse Declaration"), which is attached hereto as **Exhibit B** and incorporated herein as if set forth in full. In further support of the Motion, the Debtors respectfully represent as follows:

---

[1] The debtors in these chapter 11 cases, along with the last four digits of each debtor's federal tax identification number are: Prime Core Technologies Inc. (5317); Prime Trust, LLC (6823); Prime IRA LLC (8436); and Prime Digital, LLC (4528). The Debtors' service address is 10845 Griffith Peak Dr., #03-153, Las Vegas, NV 89135.

**JURISDICTION AND VENUE**

1. The United States Bankruptcy Court for the District of Delaware (the "Court") has jurisdiction to consider the Motion pursuant to 28 U.S.C. §§ 157 and 1334 and the *Amended Standing Order of Reference* from the United States District Court for the District of Delaware, dated February 29, 2012. This is a core proceeding under 28 U.S.C. § 157(b). Venue of these cases and the Motion in this District is proper under 28 U.S.C. §§ 1408 and 1409.

2. The legal predicates for the relief requested herein are sections 105(a) and 363(b) of title 11 of the United States Code (the "Bankruptcy Code"), Rule 6004 of the Federal Rules of Bankruptcy Procedure (the "Bankruptcy Rules"), and Rule 9013-1 of the Local Rules of Bankruptcy Practice and Procedure of the United States Bankruptcy Court for the District of Delaware (the "Local Rules").

3. The Debtors confirm their consent, pursuant to Local Rule 9013-1(f), to the entry of a final order by the Court in connection with the Motion in the event that it is later determined that the Court, absent consent of the parties, cannot enter final orders or judgments in connection herewith consistent with Article III of the United States Constitution.

**RELEVANT BACKGROUND**

**A.    General Background**

4. On August 14, 2023 (the "Petition Date"), each Debtor commenced a case (collectively, the "Chapter 11 Cases") by filing a voluntary petition for relief under chapter 11 of the Bankruptcy Code. The Chapter 11 Cases have been jointly administered for procedural purposes only.

5. The Debtors continue to manage their properties as debtors in possession pursuant to Bankruptcy Code sections 1107(a) and 1108.

6. On August 29, 2023, the Office of the United States Trustee for the District of Delaware (the "U.S. Trustee") appointed an official committee of unsecured creditors pursuant to Bankruptcy Code section 1102 (the "Committee") [Docket No. 51]. The Committee is comprised of the following unsecured creditors: (a) Yousef Abbasi; (b) Allsectech, Inc.; (c) DMG Blockchain Solutions, Inc.; (d) Net Cents Technology, Inc.; (e) Polaris Ventures; (f) Stably Corporation; and (g) Austin Ward.

7. Additional information regarding the Debtors and the Chapter 11 Cases, including the Debtors' business operations, capital structure, financial condition, and the reasons for and objectives of the Chapter 11 Cases, is set forth in the *Declaration of Jor Law, Interim Chief Executive Officer and President of Prime Core Technologies Inc., et al., in Support of Chapter 11 Petitions and First Day Motions* [Docket No. 14] (the "First Day Declaration"), which is incorporated by reference as if fully set forth herein.

**B. The Sale Process**

8. Prior to ceasing operations in June 2023, the Debtors were market leaders in the cryptocurrency industry, offering their customers an all-in-one solution through "a unique set of digital asset infrastructure tools that powered innovation in the digital economy by simplifying the complexity of building with digital assets, making it easier for [their] customers to build, launch, and scale quickly."[2] Oftentimes, customers would utilize the Debtors' services because developing these infrastructure tools independently would prove too difficult, cost-prohibitive, or time-intensive. The Debtors recognize that if third parties had access to these tools, such parties could potentially elevate their in-house offerings, broaden their customer base, and otherwise receive value-accretive benefits.

---

[2] *See* First Day Declaration, ¶ 1.

9. Upon the cessation of their operations, without any source of operating revenue, the Debtors rapidly began facing significant liquidity constraints. Accordingly, prior to the Petition Date, the Debtors began exploring options to obtain additional sources of liquidity, including through the sale of some or all of their assets (the "Sale Process").[3] Since the commencement of the Sale Process, the Debtors' professionals have reached out to approximately 470 potential purchasers in an attempt to monetize their assets and bring value into the Debtors' estates.

**C.    The License Agreement**

10. In connection with the Sale Process, the proposed Licensee expressed an interest in licensing the Debtors' Technology (as defined below). To that end, the Debtors, on the one hand, and Swan, on the other hand, have entered into that certain *License Agreement* (the "License Agreement").[4] Pursuant to the terms of the License Agreement, Swan would obtain a non-exclusive license of the Technology (as defined in the License Agreement and described below) in exchange for a license fee of ▓▓▓▓▓▓▓▓ (the "License Fee"), to be paid by Swan as follows: (a) ▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓ (the "License Effective Date"),[5] and (b) ▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓

---

[3] Shortly following the Petition Date, the Debtors should approval of certain bid procedures (the "Bid Procedures") to facilitate the post-petition sale of their assets. *See* Docket No. 55. On September 14, 2023, the Court entered an *Order (I) Approving Bidding Procedures for the Sale of All or Substantially All of Debtors' Assets, (II) Authorizing the Debtors to Enter Into One or More Stalking Horse Agreements, (III) Scheduling an Auction and Related Dates Thereto, (IV) Approving the Form and Manner of Notice Thereof, (V) Approving Contract Assumption and Assignment Procedures, and (IV) Granting Related Relief* [Docket No. 119] (the "Bid Procedures Order").

[4] A true and correct copy of the License Agreement is attached to the Proposed Order as **Exhibit 1**.

[5] The License Effective Date is the date upon which the Court approves the License Agreement by granting the Motion.

██████████████████████████████████████████████████████████

██████████.[6]

11.      The License Agreement further provides that ████████████████████

████████████████████████████████████████████████████████████

██████████████████████████████████████████.[7] To assist with the

onboarding of the Technology, ████████████████████████████████

████████████████████████████████████████████████████████████

████████████████████████████████████████████████████████████

██████████████████████████████████.[8]

12.      The License Agreement further grants ████████████████████

████████████████████████████████████████████████████████████

████████████████████████████████████████████████████████████

████████████████████████████████████████████████████████████

████████████████████████████.[9] ████████████████████████████

████████████████████████████████████████████████████████████

████████████████████████████████████████████████████████████

████████████████████████████████████████████████████████████

████████████████████████████.[10] ███████████████████████████

---

6    See License Agreement, § 5.1.

7    See id., at § 4.1(a).

8    See id., at § 4.1(b)-(c).

9    See id., at § 5.4(a).

10   See id., at § 5.4(b).

5

███████████████████████████████████████████████████████

████████████████████████████████████.[11] ████████████████████

████████████████████████████████████████████████████████

█████.[12]

13. Stated more particularly, the key terms of the License Agreement are as follows:[13]

| | |
|---|---|
| **Parties:** (Preamble) | Prime Core Technologies Inc., Prime Trust, LLC, Prime IRA LLC and Prime Digital, LLC and Electric Solidus Inc. |
| **Technology:** (Section 1) | "Technology" means ████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████ |

---

[11] *See id.*, at § 5.4(a).

[12] *See id.*, at § 4.2(b).

[13] The following description of the terms of the License Agreement are intended to be summary in fashion and such description is qualified in its entirety by the terms and conditions set forth in the License Agreement attached to the Proposed Order as **Exhibit 1**. Capitalized terms not otherwise defined in the following chart have the meanings ascribed to them in the License Agreement.

Case 23-11161-JKS    Doc 483    Filed 11/28/23    Page 7 of 13

| | |
|---|---|
| | ■ |
| **License Grant:** (Section 3.1) | ■ |
| **License Fee:** (Section 5.1) | ■ |
| ■ (Section 4.1(b)-(c)) | ■ |
| ■ (Section 5.4(a)) | ■ |

7



**(Section 5.4(b))**

| | |
|---|---|
| |  |
| **Term:** (Section 2.1) | |

14. In addition to the foregoing key terms, the License Agreement contains additional provisions that are customary for this type of agreement, including confidentiality requirements (Section 7), representations and warranties (Section 8), indemnification provisions (Section 9), among others.

## RELIEF REQUESTED

15. By the Motion, the Debtors request that the Court enter the Proposed Order, substantially in the form attached hereto as **Exhibit A**, (i) authorizing and approving the License Agreement, and (ii) granting related relief.

## BASIS FOR RELIEF REQUESTED

16. Bankruptcy Code section 363(b) provides that "the trustee [or debtor in possession], after notice and a hearing, may use, sell, or lease, other than in the ordinary course of business, property of the estate." 11 U.S.C. § 363(b)(1). Section 363(b) does not specify a standard for determining when a court should approve the use of estate property outside the ordinary course. Courts, however, approve such uses when they reflect the "sound business judgment" of the debtor. *In re Culp*, 545 B.R. 827, 844 (D. Del. 2016), *aff'd*, 681 F. App'x 140 (3d Cir. 2017) (citing *In re Filene's Basement, LLC*, No. 11-13511 (KJC), 2014 WL 1713416, at

9

\*12 (Bankr. D. Del. Apr. 29, 2014) ("Transactions under § 363 must be based upon the sound business judgment of the debtor or trustee.")).

17. Courts show great deference to a debtor's decisions when applying this business judgment standard. *See Culp*, 545 B.R. at 844 ("Where the trustee [or debtor] articulates a reasonable basis for the business decision, courts will generally not entertain objections."); *see also In re Dura Auto. Sys., Inc.*, No. 06-11202 KJC, 2007 WL 7728109, at \*92 (Bankr. D. Del. Aug. 15, 2007) (explaining that "once 'the debtor articulates a reasonable basis for its business decisions (as distinct from a decision made arbitrarily or capriciously), courts will generally not entertain objections to the debtor's conduct.'" (quoting *Committee of Asbestos–Related Litigants and/or Creditors v. Johns-Manville Corp. (In re Johns-Manville Corp.)*, 60 B.R. 612, 616 (Bankr. S.D.N.Y. 1986))). Further, "[f]f a valid business justification exists, then a strong presumption follows that the agreement at issue was negotiated in good faith and is in the best interests of the estate." *Filene's Basement*, 2014 WL 1713416, at \*12; *Johns–Manville*, 60 B.R. at 615–16 ("a presumption of reasonableness attaches to a debtor's management decisions").

18. Here, as explained in the Wyse Declaration, the Debtors' entry into the License Agreement is a sound exercise of business judgment that should be approved. The parties negotiated the License Agreement in good faith and on an arm's-length basis over the course of several weeks. The License Agreement provides the Debtors with the opportunity to monetize their Technology at a time when it is not being utilized by the Debtors and when the Debtors are in desperate need of additional liquidity to further these Chapter 11 Cases. ███████████
████████████████████████████████████████████████████
████████████████████████████████████████████
██████████████████████████

10

██████████████████████████████. For these reasons, the Debtors submit that their entry into the License Agreement is the product of the Debtors' reasoned business judgment and is in the best interests of the Debtors and their estates, creditors, and other stakeholders. Accordingly, the Debtors request that the Court approve the relief requested herein.

## WAIVER OF BANKRUPTCY RULE 6004

19. To successfully implement the foregoing, the Debtors seek a waiver of the 14-day stay of an order authorizing the use, sale, or lease of property under Bankruptcy Rule 6004(h).

## RESERVATION OF RIGHTS

20. Nothing in the Motion or any order granting the relief requested in the Motion and no action taken pursuant to the relief requested or granted (including any payment made in accordance with any such order): (a) is intended or shall be deemed to constitute an assumption of any agreement pursuant to Bankruptcy Code section 365, an admission as to the executory nature of any agreement, or the basis for or the validity of any claim against the Debtors or their estates; (b) shall impair, prejudice, waive, or otherwise affect the rights of the Debtors or their estates to contest the validity, priority, or amount of any claim against the Debtors or their estates; (c) shall impair, prejudice, waive, or otherwise affect the rights of the Debtors or their estates with respect to any and all claims or causes of action against any third party; (d) shall be construed as a promise to pay a claim or continue any applicable program postpetition, which decision shall be in the sole discretion of the Debtors; (e) is or shall be deemed an implication, admission, or finding that any particular claim is an administrative expense claim, other priority claim, or otherwise of a type specified or defined in this Motion or any order granting the relief requested by this Motion; (f) is or shall be deemed an admission to the validity, priority, enforceability, or perfection of any lien on, security interest in, or other encumbrance on property

of the Debtors' estates; or (g) is or shall be deemed a waiver or limitation of any claims, causes of action, or other rights of the Debtors or any other party in interest against any person or entity under the Bankruptcy Code or any other applicable law. Any payment made pursuant to an order of the Court granting the relief requested herein is not intended to be nor should it be construed as an admission as to the validity of any claim or a waiver of the Debtors' rights to subsequently dispute such claim.

## **NO PRIOR REQUEST**

21.    No prior request for the relief sought in this Motion has been made to this or any other court.

## **NOTICE**

22.    The Debtors will provide notice of the Motion to: (a) the U.S. Trustee; (b) counsel for the Committee; (c) Swan or its counsel; and (d) any party that has requested notice pursuant to Bankruptcy Rule 2002. The Debtors submit that no other or further notice is required.

*[Remainder of page intentionally left blank.]*

**CONCLUSION**

WHEREFORE, the Debtors request that the Court enter the Proposed Order, substantially in the form attached hereto as **Exhibit A**, (i) authorizing and approving the Debtors' entry into the License Agreement, and (ii) granting such other relief as the Court deems appropriate under the circumstances.

| | |
|---|---|
| Dated: November 28, 2023<br>Wilmington, Delaware | **MCDERMOTT WILL & EMERY LLP**<br><br>*/s/ Maris J. Kandestin*<br>Maris J. Kandestin (No. 5294)<br>1000 N. West Street, Suite 1400<br>Wilmington, Delaware 19801<br>Telephone:    (302) 485-3900<br>Facsimile:    (302) 351-8711<br>Email:           mkandestin@mwe.com<br><br>-and-<br><br>Darren Azman (admitted *pro hac vice*)<br>Joseph B. Evans (admitted *pro hac vice*)<br>Jessica Greer Griffith (admitted *pro hac vice*)<br>One Vanderbilt Avenue<br>New York, New York 10017-3852<br>Telephone:    (212) 547-5400<br>Facsimile:    (646) 547-5444<br>Email:           dazman@mwe.com<br>                     jbevans@mwe.com<br><br>-and-<br><br>Gregg Steinman (admitted *pro hac vice*)<br>333 SE 2nd Avenue, Suite 4500<br>Miami, Florida 33131<br>Telephone:    (305) 358-3500<br>Facsimile:    (305) 347-6500<br>Email: gsteinman@mwe.com<br><br>*Counsel to the Debtors and Debtors in Possession* |