<u>**Exhibit A**</u>

**Disclosure Statement Supplement**

THIS IS NOT A SOLICITATION OF VOTES ON THE PLAN. VOTES MAY NOT BE SOLICITED UNTIL THE BANKRUPTCY COURT HAS APPROVED A DISCLOSURE STATEMENT. THIS DISCLOSURE STATEMENT IS BEING SUBMITTED FOR APPROVAL BUT HAS NOT YET BEEN APPROVED BY THE BANKRUPTCY COURT. THE INFORMATION IN THIS DISCLOSURE STATEMENT IS SUBJECT TO CHANGE. THIS DISCLOSURE STATEMENT IS NOT AN OFFER TO SELL ANY SECURITIES AND IS NOT A SOLICITATION OF AN OFFER TO BUY ANY SECURITIES.

# IN THE UNITED STATES BANKRUPTCY COURT
# FOR THE DISTRICT OF DELAWARE

| | |
|---|---|
| In re: | Chapter 11 |
| Prime Core Technologies Inc., *et al.*,[1] | Case No. 23-11161 (JKS) |
| Debtors. | (Jointly Administered) |

## SUPPLEMENT TO DISCLOSURE STATEMENT PURSUANT TO SECTION 1125 OF THE BANKRUPTCY CODE WITH RESPECT TO THE JOINT CHAPTER 11 PLAN OF REORGANIZATION FOR PRIME CORE TECHNOLOGIES INC. AND ITS AFFILIATED DEBTORS

**MCDERMOTT WILL & EMERY LLP**
Maris J. Kandestin (No. 5294)
1000 N. West Street, Suite 1400
Wilmington, Delaware 19801
Telephone:     (302) 485-3900
Facsimile:     (302) 351-8711
Email:     mkandestin@mwe.com

**MCDERMOTT WILL & EMERY LLP**
Darren Azman (admitted *pro hac vice*)
Joseph B. Evans (admitted *pro hac vice*)
One Vanderbilt Avenue
New York, New York 10017-3852
Telephone:     (212) 547-5400
Facsimile:     (646) 547-5444
Email:     dazman@mwe.com
          jbevans@mwe.com

**MCDERMOTT WILL & EMERY LLP**
Gregg Steinman (admitted *pro hac vice*)
333 SE 2nd Avenue, Suite 4500
Miami, Florida 33131
Telephone:     (305) 358-3500
Facsimile:     (305) 347-6500
Email:     gsteinman@mwe.com

**MCDERMOTT WILL & EMERY LLP**
R. Jacob Jumbeck (admitted *pro hac vice*)
Rebecca E. Trickey (admitted *pro hac vice*)
444 W. Lake Street, Suite 4000
Chicago, Illinois 60606-0029
Telephone:     (312) 372-2000
Facsimile:     (312) 984-7700
Email:     jjumbeck@mwe.com
          rtrickey@mwe.com

*Counsel to the Debtors and Debtors in Possession*

Dated: November 28, 2023

---

[1] The Debtors in these chapter 11 cases, along with the last four digits of each Debtor's federal tax identification number are:  Prime Core Technologies Inc. (5317); Prime Trust, LLC (6823); Prime IRA LLC (8436); and Prime Digital, LLC (4528). Prime Trust, LLC's service address is 10845 Griffith Peak Dr., #03-153, Las Vegas, NV 89135.

**HOLDERS OF CLAIMS OR INTERESTS SHOULD NOT CONSTRUE THE CONTENTS OF THE DISCLOSURE STATEMENT AS PROVIDING ANY LEGAL, BUSINESS, FINANCIAL, OR TAX ADVICE AND SHOULD CONSULT WITH THEIR OWN ADVISERS BEFORE CASTING A VOTE WITH RESPECT TO THE PLAN.**

**THE ISSUANCE OF AND THE DISTRIBUTION OF THE REORGANIZED EQUITY INTERESTS TO ARTICLE 6.7 OF THE PLAN SHALL BE EXEMPT, PURSUANT TO SECTION 1145 OF THE BANKRUPTCY CODE, WITHOUT FURTHER ACT OR ACTIONS BY ANY PERSON, FROM REGISTRATION UNDER THE SECURITIES ACT OF 1933, AS AMENDED (THE "SECURITIES ACT"), AND ALL RULES AND REGULATIONS PROMULGATED THEREUNDER, AND ANY OTHER APPLICABLE SECURITIES LAWS, TO THE FULLEST EXTENT PERMITTED BY SECTION 1145 OF THE BANKRUPTCY CODE.**

**WITH RESPECT TO THE FOREGOING SECURITIES ISSUED IN RELIANCE ON THE EXEMPTION FROM REGISTRATION SET FORTH IN SECTION 4(A)(2) OF THE SECURITIES ACT AND REGULATION D THEREUNDER, SUCH SECURITIES WILL BE CONSIDERED "RESTRICTED SECURITIES" AND MAY NOT BE TRANSFERRED EXCEPT PURSUANT TO AN EFFECTIVE REGISTRATION STATEMENT OR UNDER AN AVAILABLE EXEMPTION FROM THE REGISTRATION REQUIREMENTS OF THE SECURITIES ACT, SUCH AS UNDER CERTAIN CONDITIONS, THE RESALE PROVISIONS OF RULE 144 OF THE SECURITIES ACT.  WITH RESPECT TO THE FOREGOING SECURITIES ISSUED PURSUANT TO SECTION 1145(A) OF THE BANKRUPTCY CODE, SUCH SECURITIES MAY BE RESOLD WITHOUT REGISTRATION UNDER THE SECURITIES ACT OR OTHER FEDERAL SECURITIES LAWS PURSUANT TO THE EXEMPTION PROVIDED BY SECTION 4(A)(1) OF THE SECURITIES ACT, UNLESS THE HOLDER IS AN "UNDERWRITER" WITH RESPECT TO SUCH SECURITIES, AS THAT TERM IS DEFINED IN SECTION 1145(B) OF THE BANKRUPTCY CODE.  IN ADDITION, SUCH SECTION 1145 EXEMPT SECURITIES GENERALLY MAY BE RESOLD WITHOUT REGISTRATION UNDER STATE SECURITIES LAWS PURSUANT TO VARIOUS EXEMPTIONS PROVIDED BY THE RESPECTIVE LAWS OF THE SEVERAL STATES.**

**THE AVAILABILITY OF THE EXEMPTION UNDER SECTION 1145 OF THE BANKRUPTCY CODE, SECTION 4(A)(2) OF THE SECURITIES ACT, OR ANY OTHER APPLICABLE SECURITIES LAWS WILL NOT BE A CONDITION TO THE OCCURRENCE OF THE EFFECTIVE DATE.**

**THE SECURITIES ISSUED PURSUANT TO THE PLAN HAVE NOT BEEN APPROVED OR DISAPPROVED BY THE SECURITIES AND EXCHANGE COMMISSION (THE "SEC") OR BY ANY STATE SECURITIES COMMISSION OR SIMILAR PUBLIC, GOVERNMENTAL, OR REGULATORY AUTHORITY, AND NEITHER THE SEC NOR ANY SUCH AUTHORITY HAS PASSED UPON THE ACCURACY OR ADEQUACY OF THE INFORMATION CONTAINED IN THE DISCLOSURE STATEMENT OR UPON THE MERITS OF THE PLAN.  ANY REPRESENTATION TO THE CONTRARY IS A CRIMINAL OFFENSE.**

CERTAIN STATEMENTS CONTAINED IN THE DISCLOSURE STATEMENT, INCLUDING STATEMENTS INCORPORATED BY REFERENCE, PROJECTED FINANCIAL INFORMATION (SUCH AS THAT REFERRED TO IN THE PRECEDING PARAGRAPH) AND OTHER FORWARD-LOOKING STATEMENTS, ARE BASED ON ESTIMATES AND ASSUMPTIONS. THERE CAN BE NO ASSURANCE THAT SUCH STATEMENTS WILL BE REFLECTIVE OF ACTUAL OUTCOMES. FORWARD-LOOKING STATEMENTS SHOULD BE EVALUATED IN THE CONTEXT OF THE ESTIMATES, ASSUMPTIONS, UNCERTAINTIES, AND RISKS DESCRIBED HEREIN.

FURTHERMORE, READERS ARE CAUTIONED THAT ANY FORWARD-LOOKING STATEMENTS HEREIN, INCLUDING ANY PROJECTIONS, ARE SUBJECT TO A NUMBER OF ASSUMPTIONS, RISKS, AND UNCERTAINTIES, MANY OF WHICH ARE BEYOND THE CONTROL OF THE DEBTORS, INCLUDING THE IMPLEMENTATION OF THE PLAN. IMPORTANT ASSUMPTIONS AND OTHER IMPORTANT FACTORS THAT COULD CAUSE ACTUAL RESULTS TO DIFFER MATERIALLY INCLUDE, BUT ARE NOT LIMITED TO, THOSE FACTORS, RISKS AND UNCERTAINTIES DESCRIBED IN MORE DETAIL UNDER THE HEADING "CERTAIN RISK FACTORS TO BE CONSIDERED" BELOW, AS WELL AS CERTAIN OTHER RISKS INHERENT IN THE DEBTORS' BUSINESSES. PARTIES ARE CAUTIONED THAT THE FORWARD-LOOKING STATEMENTS SPEAK AS OF THE DATE MADE, ARE BASED ON THE DEBTORS' CURRENT BELIEFS, INTENTIONS AND EXPECTATIONS, AND ARE NOT GUARANTEES OF FUTURE PERFORMANCE. ACTUAL RESULTS OR DEVELOPMENTS MAY DIFFER MATERIALLY FROM THE EXPECTATIONS EXPRESSED OR IMPLIED IN THE FORWARD-LOOKING STATEMENTS, AND THE DEBTORS UNDERTAKE NO OBLIGATION TO UPDATE ANY SUCH STATEMENTS. THE DEBTORS AND REORGANIZED DEBTORS, AS APPLICABLE, DO NOT INTEND AND UNDERTAKE NO OBLIGATION TO UPDATE OR OTHERWISE REVISE ANY FORWARD-LOOKING STATEMENTS, INCLUDING ANY PROJECTIONS CONTAINED HEREIN, TO REFLECT EVENTS OR CIRCUMSTANCES EXISTING OR ARISING AFTER THE DATE HEREOF OR TO REFLECT THE OCCURRENCE OF UNANTICIPATED EVENTS OR OTHERWISE, UNLESS INSTRUCTED TO DO SO BY THE BANKRUPTCY COURT.

NO INDEPENDENT AUDITOR OR ACCOUNTANT HAS REVIEWED OR APPROVED THE LIQUIDATION ANALYSIS HEREIN.

THE DEBTORS HAVE NOT AUTHORIZED ANY PERSON TO GIVE ANY INFORMATION OR ADVICE, OR TO MAKE ANY REPRESENTATION, IN CONNECTION WITH THE PLAN OR THE DISCLOSURE STATEMENT.

THE STATEMENTS CONTAINED IN THE DISCLOSURE STATEMENT ARE MADE AS OF THE DATE HEREOF UNLESS OTHERWISE SPECIFIED. THE TERMS OF THE PLAN GOVERN IN THE EVENT OF ANY INCONSISTENCY WITH THE SUMMARIES IN THE DISCLOSURE STATEMENT.

**ALL EXHIBITS TO THE DISCLOSURE STATEMENT ARE INCORPORATED INTO AND ARE A PART OF THE DISCLOSURE STATEMENT AS IF SET FORTH IN FULL HEREIN.**

**THE PLAN PROVIDES THAT THE FOLLOWING PARTIES ARE DEEMED TO GRANT THE RELEASES PROVIDED FOR THEREIN: (I) HOLDERS OF ALL CLAIMS OR INTERESTS THAT VOTE TO ACCEPT THE PLAN, (II) HOLDERS OF ALL CLAIMS OR INTERESTS WHOSE VOTE TO ACCEPT OR REJECT THE PLAN IS SOLICITED BUT THAT DO NOT VOTE EITHER TO ACCEPT OR TO REJECT THE PLAN, (III) HOLDERS OF ALL CLAIMS OR INTERESTS THAT VOTE, OR ARE DEEMED, TO REJECT THE PLAN BUT DO NOT OPT OUT OF GRANTING THE RELEASES SET FORTH THEREIN, (IV) HOLDERS OF ALL CLAIMS AND INTERESTS THAT ARE GIVEN NOTICE OF THE OPPORTUNITY TO OPT OUT OF GRANTING THE RELEASES SET FORTH THEREIN BUT DO NOT OPT OUT, AND (V) THE RELEASED PARTIES.**

**HOLDERS OF CLAIMS IN VOTING CLASSES (CLASS 3A, CLASS 3B, CLASS 3C, CLASS 3D, AND CLASS 4) THAT WISH TO OPT OUT OF THE RELEASE PROVIDED IN THE PLAN MAY DO SO BY CHECKING THE "OPT OUT BOX" ON THE BALLOT. HOLDERS OF CLAIMS IN NON-VOTING CLASSES (CLASS 1A, CLASS 1B, CLASS 2, CLASS 5, CLASS 6, CLASS 7, AND CLASS 8) MAY OPT OUT OF THE RELEASES BY EITHER (I) TIMELY FILING WITH THE BANKRUPTCY COURT AN OBJECTION TO THE RELEASES SET FORTH IN <u>ARTICLE 10.5</u> OF THE PLAN BY THE DEADLINE ESTABLISHED TO FILE OBJECTIONS TO THE PLAN OR (2) COMPLETING THE OPT-OUT NOTICE ACCOMPANYING THE NOTICE OF NON-VOTING STATUS AND RETURNING IT IN ACCORDANCE WITH THE INSTRUCTIONS SET FORTH THEREON**

## I.    <u>INTRODUCTION</u>

Reference is made to the *Amended Joint Chapter 11 Plan of Reorganization for Prime Core Technologies Inc. and Its Affiliated Debtors*, which can be found at https://cases.stretto.com/public/X274/12452/PLEADINGS/1245211292380000000049.pdf (the "<u>Amended Plan</u>"), which the Debtors filed on November 28, 2023 [Docket No. 485]. The Debtors submit this supplement (this "<u>Disclosure Statement Supplement</u>") to the *Disclosure Statement Pursuant to Section 1125 of the Bankruptcy Code with Respect to the Joint Chapter 11 Plan of Reorganization for Prime Core Technologies Inc. and Its Affiliated Debtors* [Docket No. 259] (the "<u>Disclosure Statement</u>").[2]

On October 6, 2023, the Bankruptcy Court entered the *Order (I) Approving the Disclosure Statement on an Interim Basis for Solicitation Purposes Only; (II) Establishing Procedures for Solicitation and Tabulation of Votes to Accept or Reject the Plan; (III) Approving the Form of Ballot and Solicitation Packages; (IV) Establishing the Voting Record Date; (V) Scheduling a Combined Hearing for Final Approval of the Adequacy of Information in the Disclosure Statement and Confirmation of the Plan; and (VI) Granting Related Relief* [Docket No. 264] (as amended at Docket No. 362, the "<u>Conditional Approval Order</u>"). Pursuant to the Conditional Approval Order, the Bankruptcy Court approved the Disclosure Statement on an interim basis and approved the Debtors' proposed solicitation, balloting, and noticing procedures with respect to the Debtors' *Joint Chapter 11 Plan of Reorganization for Prime Core Technologies Inc. and Its Affiliated Debtors* [Docket No. 258] (the "<u>October 5th Plan</u>").

The Debtors submit this Disclosure Statement Supplement to provide updates, clarifications, and other changes to the October 5th Plan since entry of the Conditional Approval Order. Discussions of the provisions of the October 5th Plan and the Amended Plan are designed to be summaries and are qualified in their entireties by the terms of the October 5th Plan or the Amended Plan, as applicable.

## II. <u>OVERVIEW OF RECENT DEVELOPMENTS</u>

### A.    **Bankruptcy Updates**

i.    <u>Sale Process</u>

On September 14, 2023, the Bankruptcy Court entered the *Order (I) Approving Bidding Procedures for the Sale of All or Substantially All of Debtors' Assets, (II) Authorizing the Debtors to Enter into One or More Stalking Horse Agreements, (III) Scheduling an Auction and Related Dates Thereto, (IV) Approving the Form and Manner of Notice Thereof, (V) Approving Contract Assumption and Assignment Procedures, and (VI) Granding Related Relief* [Docket No. 110] (the "<u>Bid Procedures Order</u>"), approving certain relief requested by the Debtors, including approval of the bidding procedures attached to the Bid Procedures Order as an exhibit (the "<u>Bid Procedures</u>"). The Bid Procedures set forth the requirements for participation in the auction process, including all relevant dates and deadlines.

---

[2]    Capitalized terms not used but otherwise defined herein shall have the meanings ascribed to such terms in the October 5th Plan, the Amended Plan, or the Disclosure Statement, as applicable.

Pursuant to the Bid Procedures Order, the Debtors ran an extensive marketing process and several parties expressed interest in a potential transaction. Since the commencement of the sale process, the Debtors' professionals reached out to about 470 potential purchasers in an attempt to monetize their assets and bring value into the Debtors' estates.  To facilitate a potential transaction, the Debtors adjourned the auction several times to allow the Debtors and potential purchasers additional time to negotiate the terms of a transaction, as well as to allow certain purchasers additional time to clear contingencies and otherwise improve their bids.[3] Despite these efforts, however, no Sale Transaction or Reorganization Transaction materialized, and on November 17, 2023, the Debtors cancelled the Auction.[4]

As a result, the Debtors elected to pursue a Liquidation Transaction under the Plan.

ii.    <u>Pursuit of Liquidation Transaction</u>

As noted, the Debtors elected to pursue a Liquidation Transaction.  By way of background, the October 5th Plan provides for three toggles:  (a) a "Reorganization Transaction," pursuant to which a Plan Sponsor would purchase substantially all the Reorganized Equity Interests in the Reorganized Debtors[5]; (b) a "Sale Transaction," pursuant to which a potential purchaser would acquire all, or substantially all, the Assets of the Debtors in exchange for cash consideration; and (c) a "Liquidation Transaction" that the Debtors would pursue in the event neither a Reorganization Transaction nor a Sale Transaction materialized.[6]   Because neither a Reorganization Transaction nor a Sale Transaction materialized, the Amended Plan contemplates a Liquidation Transaction.

iii.    <u>Contract and Lease Rejections</u>

Because the Debtors have no ongoing operations, in an effort to cut costs and avoid unnecessary administrative expenses, the Debtors analyzed their Executory Contracts and Unexpired Leases to determine which such agreements should be rejected. In that vein, on August 28, 2023,[7] October 13, 2023,[8] October 31, 2023,[9] November 15, 2023,[10] and November 17, 2023,[11] respectively, the Debtors sought to reject certain Executory Contracts and Unexpired Leases.  On

---

[3]    *See* Docket Nos. 129, 269, 282, 292, 313, 329, and 377.

[4]    *See* Docket No. 432.

[5]    *See* Oct. 5th Plan, Art. 6.7.

[6]    *Id.* art. 6.8.

[7]    *See* Docket No. 47.

[8]    *See* Docket No. 290.

[9]    *See* Docket No. 368.

[10]    *See* Docket Nos. 428, 429.

[11]    *See* Docket No. 430.

September 22, 2023,[12] November 8, 2023,[13] November 17, 2023,[14] the Bankruptcy Court entered orders authorizing the Debtors' rejection of certain Executory Contracts and Unexpired Leases. The remainder of the pending rejection motions are scheduled to be heard on December 19, 2023, at 10:00 a.m. (prevailing Eastern Time).

      iv.   <u>Objections to Claims</u>

In consultation with their advisors, the Debtors performed a review of the proofs of claim that had been filed in connection with these Chapter 11 Cases. On review, the Debtors and their advisors concluded that the Debtors should object to certain filed proofs of claim, and on November 18, 2023, the Debtors filed the Debtors' Objection to Proof of Claim No. 416 Filed by Conor O'Brien Pursuant to Section 502 of the Bankruptcy Code and Bankruptcy Rule 3007 [Docket No. 434] *Debtors' First (Substantive) Omnibus Objection to Certain Filed Proofs of Claim* [Docket No. 435] (the "<u>First Omnibus Objection</u>"); and the *Debtors' Second (Non-Substantive) Omnibus Objection to Certain Filed Proofs of Claim* [Docket No. 437] (the "<u>Second Omnibus Objection</u>").

Contemporaneously with the filing of this Disclosure Statement Supplement, the Debtors also filed an *Omnibus Determination Motion for Estimation and Temporary Allowance of Claim Nos. 173, 1319, 859, and 47 for Voting Purposes Pursuant to Bankruptcy Rule 3018* (the "<u>3018 Motion</u>"). Pursuant to the 3018 Motion, the Debtors seek to reduce certain Claims (as defined in the 3018 Motion) to avoid diluting both the votes of the other Holders of Claims in Class 3B.

      v.   <u>Motion to Sell Foreign Currency</u>

On November 13, 2023, the Debtors filed the *Motion of the Debtors for Entry of an Order Authorizing the Debtors to Sell Certain Foreign Currency Free and Clear of All Liens, Claims, Interests, and Encumbrances Pursuant to Bankruptcy Code Section 363* [Docket No. 413] (the "<u>Foreign Currency Motion</u>"). Pursuant to the Foreign Currency Motion, the Debtors seek approval from the Bankruptcy Court to convert $8,867,904 worth of its foreign currencies (the "<u>Foreign Currency</u>") to U.S. dollars. The Foreign Currency had been deposited under the Agreements (as defined in the Foreign Currency Motion) with TrustToken, Inc. ("<u>TrustToken</u>"), which permitted the Debtors to "invest" and "rehypothecate" and explicitly did not create a trust relationship. As such, the relationship between the Debtors and TrustToken was that of a debtor and creditor. Therefore, the Foreign Currency deposits are property of the estates and the Debtors should be permitted to convert the Foreign Currency.

      vi.   <u>Swan License Agreement</u>

Electric Solidus Inc. d/b/a Swan Bitcoin ("<u>Swan</u>") expressed interest in licensing certain technology from the Debtors (the "<u>Technology</u>"), and the Debtors and Swan entered into that certain *License Agreement* (the "<u>Swan License Agreement</u>"), for which the Debtors are seeking

---

[12]  *See* Docket No. 187.

[13]  *See* Docket No. 399.

[14]  *See* Docket No. 431.

Bankruptcy Court approval through the *Debtors' Motion for Entry of an Order (I) Approving Debtors' Entry into License Agreement with Electric Solidus Inc., and (II) Granting Related Relief* [Docket No. 483] (the "Swan Motion"). As set forth in more detail in the Swan Motion, among other things, the Swan License Agreement provides the Debtors with the opportunity to monetize their Technology at a time when it is not being utilized by the Debtors and when the Debtors are in desperate need of additional liquidity to further these Chapter 11 Cases. For the avoidance of doubt, no releases are being granted to Swan through the License Agreement.

vii.    Debtor-in-Possession Financing

The Debtors anticipate filing a motion (the "DIP Motion") seeking approval of debtor-in-possession financing ("DIP Financing") in the coming days. The DIP Motion will seek Bankruptcy Court approval of superpriority secured debtor-in-possession financing in the amount of $10,000,000.00 to be provided by Polaris Ventures, a prepetition custodial account holder, Swiss nonprofit corporation, and member of the Committee. The proposed DIP Financing accrues no interest in the absence of a default and matures no later than January 12, 2024. The Debtors intend on using the debtor-in-possession financing to consummate the Amended Plan and adequately capitalize the Wind-Down Debtor, and therefore, the [PCT] Litigation Trust.

**B.    Investigation Updates**

In connection with these Chapter 11 Cases, the Debtors have been conducting investigations into: (a) the recovery of assets contained in the multi-signature wallet known as "98f"; (b) the recovery of assets that are property of the estate, including preference and fraudulent transfer claims; and (c) claims against directors and officers (collectively, the "Investigations"). As part of these Investigations, the Debtors have been conducting extensive discovery pursuant to Bankruptcy Rule 2004, performing targeted document review, analyzing historical cryptocurrency transactions, commencing the process of obtaining the return of estate property from third parties, and identifying potential claims and causes of action that may be brought against individuals, including insiders. Through the Debtors' efforts, there have been significant progress made in gaining access to 98f. This includes, but is not limited to, obtaining copies of confirmed Seed Phrases and potential partial Seed Phrases. The Debtors have not yet gained access to 98f, but they will continue to investigate with accessing 98f as its primary goal. A brief description of the investigation is set forth below. Due to the confidential nature of the investigation and ongoing settlement discussions, we will provide a high-level overview.

i.    Discovery

The Debtors have been conducting extensive 2004 discovery efforts as part of its Investigations, including serving *Combined Requests for Production of Documents, Interrogatories, and Rule 2004 Examination Pursuant to Fed. R. Bankr. P. 2004* (the "2004 Requests") and reviewing documents collected from the Debtors.

The Debtors have served 2004 Requests on twenty-two (22) targets and anticipates serving 2004 Requests on three (3) or more new targets in the near future. The Debtors have filed three motions concerning compliance with their 2004 Requests and participated in two Bankruptcy

Court hearings involving these motions.   This resulted in three Court Orders requiring compliance with 2004 Requests.

The Debtors have deposed two witnesses, noticed dates for five additional upcoming depositions, and are meeting-and-conferring with several other witnesses to schedule deposition dates in the near future.  The majority of the recipients of the 2004 Requests have responded to the document requests and interrogatories, and the Debtors anticipate the other recipients will comply or substantially comply in the near future.  To date, the Debtors have received sworn interrogatory responses from seventeen (17) recipients of the 2004 Requests who have provided sworn statements about information in his or her possession regarding access to 98f, seed phrases and hardware devices to 98f, 98f transactions, issues concerning digital wallets at Prime ("Prime Wallet Management"), and individuals who may have information concerning Prime Wallet Management.

The Debtors have been reviewing discovery (including e-mails, hard copy documents, and text messages) produced by recipients of the 2004 Requests that were in their possession, custody, or control.  The Debtors also have been performing a targeted review of the approximately 3.3 million documents collected from twenty-one (21) custodians from the time period January 1, 2018, through early September 2022, and of the supplemental documents it collected from the Debtors.

ii.    Recovery of Digital Assets from 98f

As described in the *Declaration of Jor Law, Interim Chief Executive Officer and President of Prime Core Technologies Inc., et al., in Support of Chapter 11 Petitions and First Day Motions* [Docket No. 14] (the "First Day Declaration"), the Debtors have been unable to access the digital assets in the multi-sig 98f Wallet due to missing Hardware Devices[15] and seed phrases.  The Debtors have been conducting an extensive investigation into locating these Hardware Devices and seed phrases so that the digital assets in the 98f Wallet can be accessed.

The discovery collected in response to the 2004 Requests to date has yielded a significant amount of information regarding the establishment, use, recycling, and accessibility of 98f, the Wallet Event, and Prime Wallet Management.  This discovery has revealed the identity of additional witnesses who likely have information about 98f, the Wallet Event, and Prime Wallet Management who have not previously been interviewed or contacted about these topics.

iii.    Recovery of Assets that are Property of the Estate, including Preference Claims

After a thorough review of agreements that Prime customers executed with Prime ("Customer Agreements") and analysis of which assets were held by Prime pursuant to these Customer Agreements, the Debtors identified assets that should be deemed property of the bankruptcy estate and available for use by the bankruptcy estate.  The Debtors have sent demand

---

[15]    Capitalized terms not otherwise defined herein shall have the meanings ascribed to such terms in the First Day Declaration.

letters to several of Debtors' customers asserting that assets currently in Debtors' custody are property of the Debtors' estates.

After sending a demand letter to Tiki Labs, Inc. (d/b/a Audius), the Debtors were able to reach a settlement concerning the AUDIO that is currently deposited with Prime.  The settlement contemplates the retention by the Debtors of a significant amount of AUDIO as well as the release and withdrawal of Audius' claims against the Debtors.

On November 28, 2023, the Debtors filed its *Motion for Entry of an Order (I) Approving Settlement Agreement Among the Debtors, Tiki Labs, Inc. d/b/a Audius Inc., and the Settling AUDIO Holders; (II) Authorizing the Debtors to Sell Certain AUDIO Free and Clear of All Liens, Claims, Interests and Encumbrances; and (III) Granting Related Relief* [Docket No. 480], seeking Bankruptcy Court approval of the settlement as well as authority to convert the AUDIO that will remain with the estate into fiat and approval for use by the Debtors' estate. The Debtors also sent a demand letter to TrustToken concerning $8,867,904 of foreign currencies held at Prime.  The Debtors filed the Foreign Currency Motion containing substantively the same arguments as in the demand letter.  There are a number of other litigation targets the Debtors are investigating.

**C.    Amended Plan – Updates to October 5th Plan**

As noted above, on October 5, 2023, the Debtors filed the October 5th Plan and commenced solicitation of same. As is customary following solicitation of a chapter 11 plan, certain updates have been made to the October 5th Plan to reflect and otherwise implement updates resulting from events, compromises, and settlements that occurred since the filing of the October 5th Plan. Certain of these events are described in detail in Article II.A of this Disclosure Statement Supplement. Below are summaries of additional revisions and clarifications to the October 5th Plan that are reflected in the Amended Plan.

i.    Summary of Revised Releases

The October 5th Plan outlined the extent, if any, of the releases (the "October 5th Releases") to be provided to certain current and former directors and officers under the October 5th Plan.  The Amended Plan includes revisions to the Releases (the "Revised Releases," and together with the October 5th Releases, the "Releases") with respect to the small subset of employees and officers who agreed to remain employed (or who have agreed to provide services as a contractor) through the Effective Date of the Plan following the departure of the majority of the Debtors' employees on November 14, 2023 (collectively, the "Released Employees"). The Released Employees are critical to the successful winding up of the Debtors' business arms, the preservation of critical data (some, as required by applicable law), and the general preservation of, and transfer to, the Plan Administrator and Creditors' Litigation Trustee, of the Debtors' books and records, which is critical to their post-Effective Date efforts.  Importantly, the Revised Releases are narrowly tailored and limited in scope. In other words, the Revised Releases do not grant full releases to the Released Employees.

Below are summaries of the scope and extent of the October 5th Releases as compared with the proposed Revised Releases, as well as descriptions of the directors, officers, and employees implicated by the Releases.

*a. Description of Released and Non-Released Directors, Officers, and Employees of the Debtors*

- **"Current Directors"** means the directors of the Debtors as of the Petition Date and continuing through the Effective Date unless otherwise set forth in the Plan. For the avoidance of doubt, the Non-Released D&O is not a Current Director. *See* Amended Plan, Art. I.A.1.46.

- **"Current Employees"** means the Current Officers and any other Persons employed by the Debtors and their Affiliates serving in such capacity on or after the Petition Date through November 14, 2023 unless otherwise set forth in the Amended Plan. *See* Amended Plan, Art. I.A.1.47.

- **"Current Officers"** means the officers of the Debtors as of the Petition Date and continuing through November 14, 2023 unless otherwise set forth in the Plan. For the avoidance of doubt, the Non-Released D&O is not a Current Officer. *See* Amended Plan, Art. I.A.1.48.

- **"Former Directors and Officers"** means the Directors and Officers who are not Current Directors or Current Officers. *See* Amended Plan, Art. I.A.1.79.

- **"Non-Released D&O"** means Mr. Jor Law. *See* Amended Plan, Art. I.A.1.107.

- **"Released Employees"** means the Current Employees listed in the Plan Supplement, which shall be filed under seal. For the avoidance of doubt, neither the Former Directors and Officers, nor the Non-Released D&O, are Released Employees. *See* Amended Plan, Art. I.A.1.143.

*b. Description of October 5th Releases*

| OCTOBER 5th RELEASES | |
| --- | --- |
| **Party** | **Scope of Releases/Exculpation** |
| Current Directors | o Exculpation for actions taken in connection with the Chapter 11 Cases, including preparing to file same. *See* October 5th Plan, Articles I.A.1.70 & 10.6. <br><br> o Release of preference exposure, solely to the extent the payment of ordinary course wages and benefits. *See* October 5th Plan, Art. 6.9. <br><br> o Current Directors were not released under the October 5th Plan with respect to Non-Released D&O Claims;[16] however, |

---

[16] The term "Non-Released D&O Claims" refers to "[a]ny Claims or Causes of Action held by the Debtors or their respective estates against the Directors and Officers (other than Claims or Causes of Action against the Special Committee), including any Claims or Causes of Action, including, without limitation, any 98f Wallet Causes of

| | |
|---|---|
| | recoveries with respect to 98f Wallet Causes of Action[17] to be satisfied solely from the proceeds of the Debtors' available Insurance policies.  *See* October 5th Plan, Art. 6.9 |
| Current Employees | o   Exculpation for actions taken in connection with the Chapter 11 Cases, including preparing to file same.  *See* October 5th Plan, Articles I.A.1.70 & 10.6. |
| Current Officers | o   Exculpation for actions taken in connection with the Chapter 11 Cases, including preparing to file same.  *See* October 5th Plan, Articles 6.9 & 10.6. |
| Former Directors and Officers | o   No Releases<br><br>o   No Exculpation |
| Non-Released D&O | o   No Releases<br><br>o   Exculpation for actions taken in connection with the Chapter 11 Cases, including preparing to file same.  *See* October 5th Plan, Article 10.6. |
| Released Employees | o   *See* Current Officers and Current Employees, above. |

*c.   Description of Revised Releases*

| REVISED RELEASES | |
|---|---|
| **Party** | **Scope of Releases/Exculpation** |
| Current Directors | o   Exculpation for actions taken in connection with the Chapter 11 Cases, including preparing to file same.  *See* October 5th Plan, Articles I.A.1.70 & 10.6.<br><br>o   Release of preference exposure, solely to the extent the payment of ordinary course wages and benefits. *See* October 5th Plan, Art. 6.9.<br><br>o   Current Directors were **not** released under the October 5th Plan with respect to Non-Released D&O Claims; however, recoveries with respect to 98f Wallet Causes of Action to be satisfied solely from the proceeds of the Debtors' available Insurance policies. *See* October 5th Plan, Art. 6.9. |

---

Action and any Claims and Causes of Action related to or arising from the Debtors' redemption of equity prior to the Petition Date[.]"  *See* October 5th Plan, Art. 6.9; Amended Plan, Art. 6.9.

[17]   The term "98f Wallet Cause of Action" refers to "any Claim or Cause of Action arising from or related to the Debtors' loss of, or loss of access to[,] assets held within the 98f Wallet, and/or the Debtors' use of Cash or other assets to satisfy redemptions or withdrawals by customers following the loss of access in the 98[f] Wallet."  *See* October 5th Plan, Art. I.A.1.101; Amended Plan, Art. I.A.1.104.

| Current Employees | o Exculpation for actions taken in connection with the Chapter 11 Cases, including preparing to file same. *See* October 5th Plan, Article 10.6. |
|---|---|
| Current Officers | o Exculpation for actions taken in connection with the Chapter 11 Cases, including preparing to file same. *See* October 5th Plan, Articles 6.9 & 10.6. |
| Former Directors and Officers | o No Releases<br><br>o No Exculpation |
| Non-Released D&O | o No Releases<br><br>o Exculpation for actions taken in connection with the Chapter 11 Cases, including preparing to file same. *See* October 5th Plan, Articles I.A.1.103 & 10.6. |
| Released Employees | o Exculpation for actions taken in connection with the Chapter 11 Cases, including preparing to file same. *See* October 5th Plan, Article 10.6; *see* Amended Plan (same).<br><br>o Full release of preference exposure. *See* Amended Plan, Art. 6.9.<br><br>o Released Employees are **not** released with respect to Non-Released D&O Claims; however, recoveries with respect to all Non-Released D&) Claims to be satisfied solely from the proceeds of the Debtors' available Insurance policies. *See* Amend Plan, Art. 6.9 |

          d.     *Summary of Changes to Releases vis-à-vis Released Employees*

In sum, the only changes to the Releases for the Released Employees in the Amended Plan versus the October 5th Plan is that the Released Employees will receive: (i) a release of all preference exposure (expanded from a release for ordinary wage and compensation payments), and (ii) recoveries on account of all Non-Released D&O Claims will be solely from available insurance proceeds (expanded beyond just 98f Wallet Causes of Action).

          ii.    <u>Tax Treatment of PCT Litigation Trust</u>

The PCT Litigation Trust shall be established for the primary purpose of liquidating and distributing the Wind-Down Trust Assets transferred to it with no objective to continue or engage in the conduct of a trade or business. Accordingly, the PCT Litigation Trustee may, in an expeditious but orderly manner, monetize the Wind-Down Debtor Assets, make distributions to the Wind-Down Debtor, and not unduly prolong the duration of the PCT Litigation Trust. To the extent that the Wind-Down Debtor Assets owned by the PCT Litigation Trust are monetized, the PCT Litigation Trustee shall distribute the proceeds of such monetization to the Wind-Debtor for the purposes set forth in the Plan Administrator Agreement.

The PCT Litigation Trust is intended to qualify as a "grantor trust" for federal income tax purposes with the Wind-Down Debtor treated as the grantor thereof. As such, the Wind-Down Debtor Assets owned by the PCT Litigation Trust are deemed **for tax purposes only** as if they are

owned by the Wind-Down Debtor.  In addition, the income and expenses of the PCT Litigation Trust are required to be reported to the Internal Revenue Service (and any other applicable taxing authority recognizing grantor trust status) on the tax returns of the Wind-Down Debtor.

### D.    Update to Confirmation Timeline

#### i.    Amended Plan Schedule

On October 31, 2023, the Bankruptcy Court entered an *Amendment to Order (I) Approving the Disclosure Statement on an Interim Basis for Solicitation Purposes Only; (II) Establishing Procedures for Solicitation and Tabulation of Votes to Accept or Reject the Plan; (III) Approving the Form of Ballot and Solicitation Packages; (IV) Establishing the Voting Record Date; (V) Scheduling a Combined Hearing for Final Approval of the Adequacy of Information in the Disclosure Statement and Confirmation of the Plan; and (VI) Granting Related Relief* [Docket No. 362], which approved certain revisions to the confirmation schedule set forth in the Conditional Approval Order (the "Amended Plan Schedule"). The changes under the Amended Plan Schedule are summarized in the table below.

| Event | Conditional Disclosure Statement Order Date and Time[18] (if any) | Amended Plan Schedule Date and Time[19] (if any) |
|---|---|---|
| Deadline to File Rule 3018 Motion | Oct. 27, 2023, at 4:00 p.m. | Nov. 28, 2023, at 4:00 p.m. |
| Deadline to File Plan Supplement | Oct. 27, 2023, at 4:00 p.m. | Nov. 28, 2023, at 4:00 p.m. |
| Confirmation Objection Deadline | Nov. 7, 2023, at 4:00 p.m. | Dec. 5, 2023, at 4:00 p.m. |
| Deadline to Object to Rule 3018 Motions | Nov. 7, 2023, at 4:00 p.m. | Dec. 5, 2023, at 4:00 p.m. |
| Voting Deadline | Nov. 7, 2023, at 4:00 p.m. | Dec. 5, 2023, at 4:00 p.m. |
| Deadline to File Voting Affidavit | Nov. 9, 2023 | Dec. 12, 2023 |
| Deadline to File Declarations, Brief, in Support of Confirmation, Replies in support of Rule 3018 Motions | Nov. 9, 2023, at 4:00 p.m. | Dec. 12, 2023, at 4:00 p.m. |
| Confirmation Hearing | Nov. 14, 2023, at 1:00 p.m. | Dec. 19, 2023, at 10:00 a.m. |

---

[18]    All times are prevailing Eastern Time.

[19]    All times are prevailing Eastern Time.