# Exhibit A

**Revised Liquidation Analysis**

Case 23-11161-JKS    Doc 497-1    Filed 12/01/23    Page 1 of 12

# EXHIBIT B LIQUIDATION ANALYSIS

## INTRODUCTION

Often referred to as the "best interests of creditors" test, section 1129(a)(7) of the Bankruptcy Code requires that each holder of a claim or interest in each impaired class either (i) accept the plan or (ii) receive or retain under the plan property of a value, as of the effective date of the confirmed plan, that is not less than the amount such holder would receive if the debtor was liquidated under chapter 7 of the Bankruptcy Code.

To demonstrate that the Plan satisfies the best interests test, the Debtors, with the assistance of their financial advisors, have prepared this hypothetical liquidation analysis (the "**Liquidation Analysis**") and have taken the following steps:

i) estimated the cash proceeds that a chapter 7 trustee (a "**Trustee**") would generate if each Debtor's chapter 11 case was converted to a chapter 7 case on the Effective Date and the assets of such Debtor's estate were liquidated (the "**Liquidation Proceeds**");

ii) determined the distribution that each Holder of a Claim or Interest would receive from the Liquidation Proceeds under the priority scheme set forth in chapter 7 of the Bankruptcy Code (the "**Liquidation Distribution**"); and

iii) compared each Holder's Liquidation Distribution to the distribution such Holder would receive under the Debtors' Plan if the Plan were confirmed and consummated.

This Liquidation Analysis represents an estimate of cash distributions and recovery percentages based on a hypothetical chapter 7 liquidation of the Debtors' assets. It is, therefore, a hypothetical analysis based on certain assumptions discussed herein and in the Disclosure Statement. As such, asset values and claims discussed herein may differ materially from amounts referred to in the Plan and Disclosure Statement. This Liquidation Analysis should be read in conjunction with the assumptions, qualifications, and explanations set forth in the Disclosure Statement and the Plan in their entirety, as well as the notes and assumptions set forth below.

The determination of the costs of, and proceeds from, the hypothetical liquidation of the Debtors' assets in a chapter 7 case involves the use of estimates and assumptions that, although considered reasonable by the Debtors based on their business judgment and input from their advisors, are subject to significant business, legal, economic, and competitive uncertainties and contingencies beyond the control of the Debtors, their management, and their advisors. This Liquidation Analysis was prepared for the sole purpose of generating a reasonable, good faith comparison of the proceeds that would be generated if the Debtors' assets were liquidated in accordance with chapter 7 of the Bankruptcy Code versus under the Plan. The Liquidation Analysis is not intended, and should not be used, for any other purpose.

All limitations and risk factors set forth in the Disclosure Statement are applicable to this Liquidation Analysis and are incorporated by reference herein. The underlying financial information in the Liquidation Analysis was not compiled or examined by independent accountants and was not prepared to comply with Generally Accepted Accounting Principles or SEC reporting requirements.

Based on this Liquidation Analysis, the Debtors, with the assistance of their advisors, believe the Plan satisfies the best interests test and that each Holder of an Impaired Claim or Interest will receive value under the Plan on the Effective Date that is not less than the value such Holder would receive if the Debtors liquidated under chapter 7 of the Bankruptcy Code. The Debtors believe that this Liquidation Analysis and the conclusions set forth herein are fair and represent the Debtors' best judgment regarding the results of a hypothetical liquidation of the Debtors under chapter 7 of the Bankruptcy Code.

THE DEBTORS AND THEIR ADVISORS MAKE NO REPRESENTATIONS OR WARRANTIES REGARDING THE ACCURACY OF THE ESTIMATES CONTAINED HEREIN OR A CHAPTER 7 TRUSTEE'S OR A PLAN ADMINISTRATOR'S OR A WIND-DOWN TRUSTEE'S ABILITY TO ACHIEVE THE ILLUSTRATED RESULTS. ACTUAL RESULTS COULD VARY MATERIALLY FROM THE ESTIMATES SET FORTH IN THIS LIQUIDATION ANALYSIS.

**BASIS OF PRESENTATION**

The Liquidation Analysis has been prepared assuming that the Debtors' chapter 7 liquidation commences on or about December 31, 2023 (the "**Liquidation Date**"). The pro forma values referenced herein are projected as of the Liquidation Date and utilize (i) input from the Debtors' management team and advisors and (ii) projected results of operations and cash flows over the period from November 18, 2023 to the Liquidation Date (the "**Projection Period**").

In preparing the Liquidation Analysis, the Debtors estimated Allowed Claims based on scheduled liabilities as of the Petition Date and certain Filed Claims following the Petition Date and during the Projection Period. The Debtors' estimates of Allowed Claims set forth in the Liquidation Analysis should not be relied on for the purpose of determining the value of any distribution to be made on account of Allowed Claims or Interests under the Plan.

NOTHING CONTAINED IN THE LIQUIDATION ANALYSIS IS INTENDED TO BE, OR CONSTITUTES, A CONCESSION, ADMISSION, OR ALLOWANCE OF ANY CLAIM OR INTEREST BY THE DEBTORS. THE ACTUAL AMOUNT OR PRIORITY OF ALLOWED CLAIMS AND INTERESTS IN THE CHAPTER 11 CASES COULD MATERIALLY DIFFER FROM THE ESTIMATED AMOUNTS SET FORTH AND USED IN THE LIQUIDATION ANALYSIS. THE DEBTORS RESERVE ALL RIGHTS TO SUPPLEMENT, MODIFY, OR AMEND THE ANALYSIS SET FORTH HEREIN.

**DECONSOLIDATED LIQUIDATION**

The Liquidation Analysis assumes that the Debtors would be liquidated in a jointly administered, but not substantively consolidated proceeding. The results of this analysis have been consolidated for convenience.

Chapter 7 administrative expense claims that arise in a liquidation scenario would be paid in full from the Liquidation Proceeds prior to proceeds being made available for distribution to Holders of Allowed Claims. Under the "absolute priority rule," no junior creditor may receive any distributions until all senior creditors are paid in full, and no equity holder may receive any distribution until all creditors are paid in full. The assumed distributions to creditors as reflected in the Liquidation Analysis are estimated in accordance with the absolute priority rule.

The commencement of chapter 7 liquidation may trigger certain additional claims that would otherwise not exist under the Plan. Additionally, the Liquidation Analysis does not estimate contingent, unliquidated claims, or regulatory claims. Finally, the Liquidation Analysis does not include estimates for the tax consequences that may be triggered upon the liquidation and sale of assets. Such tax consequences could be material.

**CHAPTER 7 LIQUIDATION PROCESS**

As part of a hypothetical chapter 7 Trustee's liquidation process, the initial step would be to develop a liquidation plan designed to generate proceeds from the sale of assets that the Trustee would then distribute to creditors. The Liquidation Analysis assumes all liquid cryptocurrency is sold. This liquidation process would have three major components:

i) Cash proceeds from asset sales, including the sale of all cryptocurrency and illiquid assets ("**Gross Liquidation Proceeds**");

ii) Costs to liquidate the business and administer the Estates under chapter 7 ("**Liquidation Adjustments**"); and

iii) Remaining proceeds available for distribution to claimants ("**Net Liquidation Proceeds Available for Distribution**").

**Gross Liquidation Proceeds**

The Gross Liquidation Proceeds reflect the estimated proceeds the Trustee would generate from a hypothetical chapter 7 liquidation. Under section 704 of the Bankruptcy Code, a Trustee must, among other duties, collect and convert property of the Estates as expeditiously as is compatible with the best interests of parties in interest, which could result in potentially distressed recoveries.

The Debtors' estimates of proceeds set forth in the Liquidation Analysis reflect a number of simplifying assumptions, including complicated legal questions, and are illustrative for the purposes of comparing liquidation under the Plan to Chapter 7. These estimates should not be

relied on for any reason, including for the purpose of determining the value of any distribution to be made on account of Allowed Claims or Interests under the Plan.

**Liquidation Adjustments**

Liquidation Adjustments reflect the costs the Trustee would incur to monetize the assets and wind down the Estates in chapter 7 and include the following:

- Expenses necessary to efficiently and effectively monetize the assets (the "**Liquidation Costs**");

- Chapter 7 professional fees (lawyers, financial advisors, and brokers to support the sale and transition of assets over the liquidation period); and

- Chapter 7 Trustee fees.

**Net Liquidation Proceeds Available for Distribution**

The Net Liquidation Proceeds Available for Distribution reflect estimated amounts available to Holders of Claims and Interests after the Liquidation Adjustments are netted against the Gross Liquidation Proceeds. Under this analysis, the Liquidation Proceeds are distributed to Holders of Claims against, and Interests in, the Debtors in accordance with the Bankruptcy Code's priority scheme.

**CONCLUSION**

The Debtors have determined, as summarized in the table below, on the Effective Date, that the Plan will provide all Holders of Allowed Claims and Interests with a recovery that is not less than what they would otherwise receive pursuant to a liquidation of the Debtors' assets under chapter 7 of the Bankruptcy Code. Accordingly, the Plan satisfies the requirement of section 1129(a)(7) of the Bankruptcy Code.

**SPECIFIC NOTES TO THE LIQUIDATION ANALYSIS**

A.  Cash

Consists of all unrestricted cash deposits in money market, corporate operating, receipt, and disbursement accounts, as well as fiat amounts in customer accounts, that is projected to be on hand on the Liquidation Date per the Debtors' cash flow projections. Notwithstanding the foregoing, the cash amount used for purposes of the Liquidation Analysis excludes funds held in the Wang 2018 Trust account.

The Liquidation Analysis shows cash at the Liquidation Date approximately $0.8MM higher under a chapter 11 liquidation compared to a chapter 7 liquidation. This differential is the result of the DIP funding amount exceeding the funding of the carveout account under the DIP by approximately $0.8MM, thereby increasing cash on hand as of the Liquidation Date. The chapter 7 scenario assume there is no DIP financing.

**Notwithstanding this presentation, the Debtors have not made a determination as to whether certain cryptocurrency and/or fiat held in any customer accounts are general unsecured claims or property of the estate, and the Debtors reserve all rights with respect to any such determination. In some cases where the Debtors have made a determination, counterparties have disagreed. If fiat and or crypto is determined to belong to customers and not the Debtors' estates, that would reduce the recovery to creditors (while also reducing the claims pool)**

B.  Cryptocurrencies – Available[1,2]

Represents cryptocurrency held in the Debtors' Fireblocks account, including cryptocurrency deposited by customers, except the Liquidation Analysis assumes that the Debtors' pending settlement with Tiki Labs, Inc. concerning AUDIO tokens is consummated.[3]

**Notwithstanding this presentation, the Debtors have not made a determination as to whether certain cryptocurrency and/or fiat held in any customer accounts are general unsecured claims or property of the estate, and the Debtors reserve all rights with respect**

---

[1] For purposes of this Liquidation Analysis, the Cryptocurrencies Available line item utilizes Petition Date pricing. The Liquidation Analysis does not consider movements in pricing subsequent to the Petition Date and all recovery estimates assume cryptocurrency in this category is converted to fiat based on Petition Date pricing. For purposes of this Liquidation Analysis, the Cryptocurrencies are assumed to be liquidated and distributions made in cash in both chapter 7 and chapter 11. However, in chapter 11, the Debtors maintain the flexibility to make distributions in-kind. Whereas in a chapter 7 proceeding, the Trustee is obligated to liquidate cryptocurrency under section 704.

[2] Amounts for the Cryptocurrencies – Available line item do not reflect postpetition Bitcoin deposits made by Abra during October 2023.

[3] In accordance with the terms of the Tiki Labs, Inc. settlement, the Liquidation Analysis assumes that all AUDIO tokens are turned over to Tiki Labs, Inc. other than the 11.0MM AUDIO tokens treated as property of estate under the terms of the settlement, which are projected to be liquidated to cash and are included in the projected Liquidation Date cash amount.

**to any such determination. In some cases where the Debtors have made a determination, counterparties have disagreed.**

C.  Cryptocurrencies – 98f Wallet[4]

Includes cryptocurrencies presently inaccessible and unavailable to the Debtors in the 98f Wallet. Although the Debtors have made progress unlocking the Wallet, the outcome is uncertain to whether the cryptocurrency in the wallet will ever become available to the Debtors for the benefit of creditors. The Liquidation Analysis illustratively shows access to the 98f wallet as being restored in both a chapter 7 and chapter 11 liquidation.

Although the Liquidation Analysis shows the recovery of the 98f Wallet for creditors in both scenarios, the Debtors believe recovery is more likely in a chapter 11 liquidation due to an increased likelihood of continuity of certain professionals with significant institutional knowledge.

D.  Accounts Receivable

In both chapter 7 and chapter 11, the Liquidation Analysis assumes a recovery of 3% of the net book value of Accounts Receivable. Although the Debtors did not perform a full assessment of the collectability of receivables in conjunction with the preparation of the Liquidation Analysis, substantially all of the Debtors' receivables are currently aged over 90 days.

E.  Intellectual Property

The Liquidation Analysis assumes a successful sale of the Debtors' intellectual property pursuant to the Debtors' motion to enter into a license agreement with Electric Solidus, Inc. In the chapter 11 liquidation scenario, it is assumed that the Debtors would receive an initial payment of $1.0MM, plus an additional $1.4MM thereafter in accordance with the terms of the agreement.

Under a chapter 7 liquidation it was assumed the Debtors would receive initial consideration of $1.0MM, but would not receive the additional payment of $1.4MM due to elevated risks of non-performance that may arise from the disruption of a chapter 7 conversion.

The Debtors continue to market their intellectual property, but no additional proceeds are assumed for purposes of the Liquidation Analysis.

F.  Other Assets

Consists of surety bond collateral, equity investments, prepaid expenses, accrued interest receivables, reimbursement receivables, and deferred tax assets. Additional items in this asset category include various fixed assets such as computers and hardware, and internally developed software.

---

[4] For purposes of this Liquidation Analysis, cryptocurrency held in the 98f Wallet is priced as of November 29, 2023.

Both chapter 7 and chapter 11 liquidation scenarios assume 50% recovery of book value, primarily driven by the potential recovery of surety bond collateral.

G.  Domestic and International Preference

The Liquidation Analysis illustratively assumes 1.5% of gross transfers (of fiat and cryptocurrency) made to domestic customers in the 90-day period prior to the Petition Date are recovered as preferences.

International preference actions are illustratively assumed to be 0% given the uncertainty of the ability for the litigation trust to pursue creditors in foreign jurisdictions. The Debtors may revise the assumptions on domestic and international preference actions up or down in the future.

Although the Liquidation Analysis does not illustrate different preference recoveries between chapter 7 and chapter 11, recoveries may vary in the different scenarios. Notably in chapter 11, certain smaller potential preferences, or potential preferences against customers with unsecured claims may be released and therefore recoveries may be slightly lower than in a chapter 7. On the other hand, the Debtors are working diligently to minimize disruption to their books and records and ability to access information in the winddown, which efforts may be disrupted in the event of a conversion to a chapter 7. Such a disruption could increase the difficulty in successfully pursuing litigation and potentially reduce recoveries from preferences in a chapter 7 vs. a chapter 11 liquidation.

**The Debtors have not made any determination on the critical property of the estate issue nor have the Debtors' pursued any preference actions to-date. As presented, the Liquidation Analysis illustratively shows estimates for preference recoveries, although these amounts are contingent on the determination of the property of the estate issue.**

H.  Litigation Recoveries

The Debtors' investigation into potential claims is ongoing. Although potentially significant claims may exist, at this point it would be speculative to project recoveries. Therefore, the Liquidation Analysis illustratively does not reflect any recovery from litigation in either a chapter 7 or a chapter 11 scenario. The Debtors do believe, however, that potential disruption from a conversion to chapter 7 could make it harder to access information and records. The Debtors' record keeping systems are highly technical and require specialized expertise. Thus, the Debtors' ability to effectively prosecute claims in a chapter 11 liquidation is likely significantly greater.

I.  Chapter 7 Trustee Fee

Pursuant to section 326(a) of the Bankruptcy Code, under a chapter 7 liquidation, Trustee fees may not exceed 3% of distributable proceeds *in excess* of $1.0MM. The Liquidation Analysis assumes the Trustee fees would be approximately 3% of Gross Liquidation Proceeds, which equals approximately $2.8MM.

Under a chapter 11 liquidation, there are no Chapter 7 Trustee Fees.

J.  Professional Fees

Under a chapter 7 liquidation proceeding, the professional fees include estimates for certain professionals that will provide assistance and services to the Trustee during the liquidation period. The Liquidation Analysis assumes the Trustee will retain lawyers, financial advisors, and brokers to assist in the liquidation. The retention of potentially new advisors by the Trustee may cause additional expense than in a chapter 11 liquidation. Such new professionals will need to spend time familiarizing themselves with the Debtors, the Debtors' assets, and the Debtors' operations, which include complicated and novel cryptocurrency concepts that some professionals are unfamiliar with. These advisors will assist in monetizing the Debtors' assets, litigating claims and resolving tax litigation matters, and resolving other matters relating to the liquidation of the Debtors' Estates. Under a chapter 7 liquidation proceeding, total professional fees are estimated to be approximately $4.0MM.

Under a chapter 11 liquidation proceeding, estimated professional fees are assumed be lower as compared to chapter 7 liquidation because there is a higher likelihood that professionals with significant institutional knowledge from involvement in the chapter 11 cases to-date, as well as expertise in the cryptocurrency and digital asset space, will remain involved in the liquidation. Under a chapter 11 liquidation proceeding, total professional fees are estimated to be approximately $2.5MM.

K.  Operating Expenses

Estimates of employee/consulting costs, sales, general and administrative ("**SG&A**") expenses, and software costs. Under a chapter 7 or chapter 11 liquidation, the Debtors would need to continue to conduct business with a number of software vendors in order to access the wallets in which the cryptocurrency is held, distribute the cryptocurrency, and to access customer and corporate data and records. The Debtors will also require tax advice and assistance. Total operating expenses are estimated to be $1.5MM in a chapter 7 or chapter 11 liquidation.

As presented, estimates for operating expenses consider current cost reduction initiatives being undertaken by the Debtors as well as the status of negotiations between the Debtors and various software vendors. The Debtors continue working to reduce theses costs materially.

L.  Convenience Class

Under a chapter 7 liquidation there is no convenience class.

Under a chapter 11 liquidation, the Convenience Class (i.e., all Creditors with claims less than or equal to $300) are assumed to accept the convenience class offer (i.e., a 70% recovery), which results in a recovery of approximately $0.5MM against a claim amount of approximately $0.8MM.

The Convenience Class is expected to eliminate tens of thousands of claims, potentially reducing the administrative costs of the estates.

M.  <u>Trading and Conversion Costs</u>

Trading and Conversion Costs are assumed to be incurred through either block trades with counterparties or slippage from transacting illiquid coins by the Company. These costs are presumed to be $0.7MM, and are assumed to be the same under a chapter 7 or chapter 11 liquidation. This assumes any distributions are made in fiat.

N.  <u>DIP Financing</u>

The Debtors are presently engaged in negotiations with a potential lender to provide DIP financing in the amount of $10.0MM. Under a chapter 11 liquidation, it was assumed the Debtors close the transaction and receive $10.0MM in DIP proceeds. An additional claim of $0.3MM is included to reflect estimated legal costs incurred by the lender, which will be added to the principal balance of the DIP (for $10.3MM DIP claim in aggregate).

In a chapter 7 liquidation it is assumed the Debtors would not receive DIP financing. Accordingly, there are no claims for DIP financing or related legal fees under this scenario.

For purposes of this Liquidation Analysis, it is assumed that the DIP is repaid within a year of the Plan's Effective Date, and therefore no interest accrues under the DIP.

O.  <u>Administrative / Priority Claims</u>

In both the chapter 7 and chapter 11 scenarios, the Debtors' analysis includes $1.5MM of administrative and priority claims, exclusive of chapter 11 professional fees. The Debtors' review and reconciliation of these administrative and priority claims is ongoing.

In the chapter 7 scenario, there would also be administrative claims on account of unpaid chapter 11 professional fees accrued as of the Liquidation Date. The Debtors estimate these fees would total $9.2MM. These fees are assumed to be funded and satisfied through the DIP in a chapter 11 scenario.

P.  <u>Professional Fees - Banker</u>

The Debtors' investment banker is entitled to a $0.8MM fee in either a chapter 7 or chapter 11 liquidation. Moreover, if the Debtors successfully license their Intellectual Property pursuant to the pending motion and recover the full $2.4MM of consideration, then the Debtors' investment banker is entitled to an additional fee of $0.8MM. Accordingly, the Liquidation Analysis assumes a $0.8MM fee to the Debtors' investment banker in a chapter 7 (where only $1.0MM of proceeds from Intellectual Property is assumed), but a $1.5MM fee in a chapter 11, where it is assumed that the entire $2.4MM of consideration for the Intellectual Property will be received.

Q. Trade Claims

Trade Claims consist of prepetition amounts owed to vendors and are estimated to total approximately $2.2MM. These amounts would be the same under a chapter 7 or a chapter 11 liquidation. The Debtors review and analysis of Trade Claims is ongoing.

R. Customer Claims[5]

Customer Claims are estimated to be approximately $100.9MM in a chapter 11 liquidation vs. $101.6MM in a chapter 7 liquidation. The difference between these two scenarios is the inclusion of a convenience class under a chapter 11 liquidation, which results in a recovery of approximately $0.5MM against a claim amount of approximately $0.8MM. Further detail on the convenience class is described in Paragraph L.

Under both liquidation scenarios, Customer Claim amounts exclude contingent, unliquidated, and disputed claims and are otherwise based on the Debtors' amended schedules and statements. The estimates also assume that the Debtors' pending settlement with Tiki Labs, Inc. is consummated. Finally, the estimates also assume that recoveries from preferences illustrated in the Liquidation Analysis are allowed section 502(h) claims that are reflected in these estimates.

**Notwithstanding this presentation, the Debtors have not made a determination as to whether certain cryptocurrency and/or fiat held in any customer accounts are general unsecured claims or property of the estate, and the Debtors reserve all rights with respect to any such determination.**

S. Convenience Claims

Under a chapter 7 liquidation, there are no Convenience Claims, given there is no Convenience Class under the chapter 7 Liquidation scenario.

Under a chapter 11 liquidation, the Convenience Class, or all Creditors with claims less than or equal to $300, are assumed to accept the convenience class offer (70% recoveries), which results in a recovery of approximately $0.5MM against a claim amount of approximately $0.8MM.

T. Contract Rejection Claims

Contract Rejection Claims includes potential claims for the rejection of the Debtors' leases, in addition to any other potential claims that may arise from contract rejection. For purposes of the Liquidation Analysis, these were estimated to total $4.3MM. Actual contract rejection claims may differ from this estimate. These claims are assumed to be the same under a chapter 7 or chapter 11 liquidation.

---

[5] Customer Claims do not reflect postpetition Bitcoin deposits made by Abra during October 2023

*Chapter 11 vs. 7 Comparison*

| Notes | Assets | Chapter 11 Orderly Wind-Down | Chapter 7 Liquidation | Variance |
|---|---|---|---|---|
| [A] | Cash | $16.5 | $15.7 | *$0.8* |
| [B] | Cryptocurrencies - Available | 10.7 | 10.7 | – |
| [C] | Cryptocurrencies - 98f Wallet | 49.4 | 49.4 | – |
| [D] | Accounts Receivable | 0.1 | 0.1 | – |
| [E] | Intellectual Property | 2.4 | 1.0 | *1.4* |
| [F] | Other Assets | 5.0 | 5.0 | – |
|  | **Asset Recoveries** | **$84.1** | **$81.8** | **$2.2** |
|  | **Other Recoveries** |  |  |  |
| [G] | Domestic Preference Recoveries | $12.0 | $12.0 | – |
| [G] | International Preference Recoveries | – | – | – |
| [H] | Litigation Recoveries | – | – | – |
|  | **Gross Asset Value** | **$96.1** | **$93.8** | **$2.2** |
|  | **Expenses** |  |  |  |
| [I] | Chapter 7 Trustee Fee | – | $2.8 | *$2.8* |
| [J] | Professional Fees - Legal / FA | 2.5 | 4.0 | *1.5* |
| [L] | Convenience Class | – | – | – |
| [K] | Operating Expenses | 1.5 | 1.5 | – |
| [M] | Trading / Conversion Costs | 0.7 | 0.7 | – |
|  | **Total Expenses** | **$4.7** | **$9.1** | **$4.3** |
|  | **Net Value to Creditors** | **$91.3** | **$84.8** | **$6.5** |

| Notes | Recoveries | Chapter 11 Orderly Wind-Down | Chapter 7 Liquidation | Variance |
|---|---|---|---|---|
|  | **Secured and Administrative / Priority Claims** |  |  |  |
| [N] | DIP Financing | $10.3 | – | *$10.3* |
| [O] | Administrative / Priority Claims | 1.5 | 10.7 | *(9.2)* |
| [P] | Professional Fees - Banker | 1.5 | 0.8 | *0.8* |
|  | Secured and Administrative / Priority Claims | $13.3 | $11.4 | $1.9 |
|  | *Secured and Administrative / Priority Claims Recovery (%)* | *100.0%* | *100.0%* | *–* |
|  | **Residual Value to Unsecured Creditors** | **$78.0** | **$73.4** | **$4.7** |
|  | **Unsecured Claim** |  |  |  |
| [Q] | Trade Claims | $2.2 | $2.2 | – |
| [R] | Customer Claims (Property of Estate) | 100.9 | 101.6 | *(0.8)* |
| [S] | Convenience Class | 0.8 | – | *0.8* |
| [T] | Contract Rejection Claims | 4.3 | 4.3 | – |
|  | **Total Unsecured Claim** | **$108.2** | **$108.2** | **–** |
|  | *Unsecured Claim Recovery ($)* | *$78.0* | *$73.4* | *$4.7* |
|  | **Unsecured Claim Recovery (%) (excl. Convenience Class)** | **72.1%** | **67.8%** | **4.3%** |
|  | *Convenience Claim Recovery (%)* | *70.0%* | *–* | *NA* |