**IN THE UNITED STATES BANKRUPTCY COURT
FOR THE DISTRICT OF DELAWARE**

| | |
|---|---|
| In re: | Chapter 11 |
| Prime Core Technologies Inc., *et al.*,[1] | Case No. 23-11161 (JKS) |
| Debtors. | (Jointly Administered) |
| | **Re: Docket Nos. 258, 485, 486** |

**NOTICE OF FILING OF FIRST AMENDED PLAN SUPPLEMENT
WITH RESPECT TO DEBTORS' AMENDED JOINT CHAPTER 11 PLAN OF
REORGANIZATION UNDER CHAPTER 11 OF THE BANKRUPTCY CODE**

> **PLEASE TAKE NOTICE** that, on October 5, 2023, Prime Core Technologies Inc. and certain of its affiliates and subsidiaries (collectively, the "Debtors") filed the *Joint Chapter 11 Plan of Reorganization for Prime Core Technologies Inc. and Its Affiliated Debtors* [Docket No. 258] (as amended, modified, or supplemented and including all exhibits and supplements thereto, the "Plan")[2] in the United States Bankruptcy Court for the District of Delaware (the "Court").

> **PLEASE TAKE FURTHER NOTICE** that, on November 28, 2023, the Debtors filed the *Amended Joint Chapter 11 Plan of Reorganization for Prime Core Technologies Inc. and Its Affiliated Debtors* [Docket No. 485-1] (the "Amended Plan") with the Court.

> **PLEASE TAKE FURTHER NOTICE** that on November 28, 2023, the Debtors filed the *Plan Supplement with Respect to the Debtors' Amended Joint Chapter 11 Plan of Reorganization under Chapter 11 of the Bankruptcy* (the "Plan Supplement") [Docket No. 486] in support of the Plan.

> **PLEASE TAKE FURTHER NOTICE THAT** the Debtors hereby file this first amended plan supplement (the "First Amended Plan Supplement"), in support of the Plan and as contemplated therein.

> **PLEASE TAKE FURTHER NOTICE** that the First Amended Plan Supplement includes the following documents, as may be modified, amended, or supplemented from time to time by the Debtors in accordance with the Amended Plan, as set forth below:

---

[1]    The debtors in these chapter 11 cases, along with the last four digits of each debtor's federal tax identification number are:  Prime Core Technologies Inc. (5317); Prime Trust, LLC (6823); Prime IRA LLC (8436); and Prime Digital, LLC (4528). The Debtors' service address is 10845 Griffith Peak Dr., #03-153, Las Vegas, NV 89135.

[2]    Capitalized terms used but not otherwise defined herein shall have the meanings ascribed to such terms in the Plan.

| Exhibit | Description |
|---|---|
| **Exhibit C** | Amended Schedule of Vested Causes of Action |
| **Exhibit C-1** | Redline of **Exhibit C** to Exhibit C of the Plan Supplement |
| **Exhibit H** | Amended Organizational Documents |

**PLEASE TAKE FURTHER NOTICE** that certain documents, or portions thereof, contained in this First Amended Plan Supplement remain subject to ongoing negotiations among the Debtors, the official committee of unsecured creditors appointed in these cases (the "Committee"), and other interested parties with respect thereto. The Debtors reserve all rights to amend, revise, or supplement the First Amended Plan Supplement, and any of the documents and designations contained herein, at any time before the Effective Date, or any such other date in accordance with the Plan, the Confirmation Order, or any other order of the Court. Each of the documents contained in the First Amended Plan Supplement or its amendments are subject to certain consent and approval rights to the extent so provided in the Plan.

**PLEASE TAKE FURTHER NOTICE** that the Amended Plan, the First Amended Plan Supplement, and other documents and materials filed in the above-captioned chapter 11 cases may be examined by any party-in-interest (a) between the hours of 8:00 a.m. and 4:00 p.m., Monday through Friday, excluding federal holidays, at the Office of the Clerk of the Court (the "Clerk"), 824 N. Market St., 3rd Floor, Wilmington, Delaware 19801; (b) free of charge at the Debtors' case website (https://cases.stretto.com/primetrust/); or (c) for a fee at the Court's website (http://www.deb.uscourts.gov) (a PACER account is required). Such documents may also be obtained by written request to Stretto, Inc. (the "Voting Agent") at PrimeCoreInquiries@stretto.com or by telephoning the Voting Agent at (888) 533-4753 (toll-free) or (303) 536-6996 (if calling from outside the U.S. or Canada).

Dated: December 4, 2023
Wilmington, Delaware

**MCDERMOTT WILL & EMERY LLP**

*/s/ Maris J. Kandestin*
Maris J. Kandestin (No. 5294)
1000 N. West Street, Suite 1400
Wilmington, Delaware 19801
Telephone:  (302) 485-3900
Facsimile:  (302) 351-8711
Email:        mkandestin@mwe.com

-and-

Darren Azman (admitted *pro hac vice*)
Joseph B. Evans (admitted *pro hac vice*)
One Vanderbilt Avenue
New York, New York 10017-3852
Telephone:  (212) 547-5400
Facsimile:  (646) 547-5444
Email:        dazman@mwe.com
                  jbevans@mwe.com

-and-

Gregg Steinman (admitted *pro hac vice*)
333 SE 2nd Avenue, Suite 4500
Miami, Florida 33131
Telephone:  (305) 358-3500
Facsimile:  (305) 347-6500
Email:        gsteinman@mwe.com

*Counsel to the Debtors and Debtors in Possession*

# EXHIBIT C

**Amended Schedule of Vested Causes of Action**

## SCHEDULE OF VESTED CAUSES OF ACTION[1]

Article 6.15 of the Plan provides (emphasis added):

> In accordance with section 1123(b) of the Bankruptcy Code, the Wind-Down Debtor and/or the PCT Litigation Trust, as applicable, shall succeed to all rights to commence and pursue any and all Vested Causes of Action of the Debtors, whether arising before or after the Petition Date, including, without limitation, any actions specifically enumerated in the Schedule of Vested Causes of Action other than Excluded Causes of Action. Such rights shall be preserved by the Debtors and Wind-Down Debtor and shall vest in the Wind-Down Debtor and/or the PCT Litigation Trust, as applicable, with the Wind-Down Debtor's and/or the PCT Litigation Trust's rights to commence, prosecute, or settle such Causes of Action preserved notwithstanding the occurrence of the Effective Date, other than any Excluded Causes of Action, which Excluded Causes of Action shall be deemed released and waived by the Debtors, the Wind-Down Debtor, and the PCT Litigation Trust as of the Effective Date.

> The Wind-Down Debtor may pursue such Vested Causes of Action or assign such Vested Causes of Action to the PCT Litigation Trust, as appropriate, in accordance with the best interests of the Holders of Allowed Claims and in accordance with the Plan Administrator Agreement and the Plan. **No Entity may rely on the absence of a specific reference in the Schedules, the Plan, the Plan Supplement, the Disclosure Statement, or the Schedule of Vested Causes of Action as any indication that the Debtors, the Wind-Down Debtor, the Reorganized Debtors, or the PCT Litigation Trust, as applicable, will not pursue any and all available Vested Causes of Action of the Debtors against it. The Wind-Down Debtor, on behalf of the Debtors, expressly reserves all rights to prosecute any and all Vested Causes of Action against any Entity, or to assign such rights to the PCT Litigation Trust, except as otherwise provided in the Plan, including Article 10.4 and Article 10.5 of the Plan.** Except with respect to Excluded Causes of Action, the Wind-Down Debtor, on behalf of the Debtors and in accordance with the Plan Administrator Agreement, expressly reserves all such Vested Causes of Action for later adjudication, and, therefore, no preclusion doctrine, including the doctrines of res judicata, collateral estoppel, issue preclusion, claim preclusion, estoppel (judicial, equitable, or otherwise), or laches, shall apply to such Vested Causes of Action upon, after, or as a consequence of confirmation or Consummation of the Plan.

> The Wind-Down Debtor, on behalf of the Debtors, reserves and shall retain such Causes of Action of the Debtors notwithstanding the rejection or repudiation of any Executory Contract or Unexpired Lease during the Chapter 11 Cases or pursuant to the Plan. In accordance with section 1123(b)(3) of the Bankruptcy Code, any Cause of Action that a Debtor may hold against any Entity shall vest in the Wind-Down

---

[1] Capitalized terms not otherwise defined herein shall have the meaning provided in the Plan. Pursuant to the Plan, upon the Effective Date the Plan Administrator or the PCT Litigation Trustee, as applicable, shall be vested with the sole right and obligation to pursue the Vested Causes of Action.

Debtor, except as otherwise provided in the Plan, including Article 10.4 and Article 10.5 of the Plan. The Wind-Down Debtor and/or the PCT Litigation Trust, through their respective authorized agents or representatives, shall retain and may exclusively enforce any and all such Causes of Action. Subject to the provisions of the Plan Administrator Agreement and/or the PCT Litigation Trust Agreement, the Wind-Down Debtor and/or the PCT Litigation Trust, as applicable, shall have the exclusive right, authority, and discretion to determine and to initiate, file, prosecute, enforce, abandon, settle, compromise, release, withdraw, or litigate to judgment any such Causes of Action, or to decline to do any of the foregoing, without the consent or approval of any third party or any further notice to or action, order, or approval of the Bankruptcy Court in accordance with the Plan.

Notwithstanding, and without limiting the generality of, Article 6.15 of the Plan, attached hereto as **Exhibit 1** is a list of specific types of Vested Causes of Actions expressly preserved by the Wind-Down Debtor and/or the PCT Litigation Trust, as applicable, subject to the terms of the Plan, the Plan Administrator Agreement, and the PCT Litigation Trust Agreement. **Review of the Vested Causes of Action is ongoing. Except as otherwise provided in the Plan, or to the extent a Cause of Action is designated as an Excluded Cause of Action on Exhibit 1 hereto, all Causes of Action are expressly preserved for later prosecution, adjudication, or settlement by the Wind-Down Debtor, the Plan Administrator, and/or the PCT Litigation Trustee, as applicable, including, without limitation, Causes of Action not specifically identified or of which the Debtors may presently be unaware or which may arise or exist by reason of additional facts or circumstances unknown to the Debtors at this time or facts or circumstances that may change or be different from those the Debtors now believe to exist. For the avoidance of doubt, the specific types of Vested Causes of Action set forth on Exhibit 1 hereto are non-exclusive and are not intended to be a comprehensive list of all Vested Causes of Action retained in connection with the Plan. The Debtors and Wind-Down Debtor expressly reserve the right to alter, modify, amend, remove, augment, or supplement the Vested Causes of Action.**

## Exhibit 1

Vested Causes of Action:

1.      All claims and Causes of Action under 11 U.S.C. §§ 547 and 550 (to the extent such claims arise solely in connection with claims under section 547), and any state law analogs, including any related claims or Causes of Action under 11 U.S.C. § 502 (collectively, the "Preference Claims"), other than the Released Preference Claims.[2]  For the avoidance of doubt, and notwithstanding anything to the contrary in the Plan, the Released Preference Claims shall constitute Excluded Causes of Action.

2.      All claims and causes of action under 11 U.S.C. §§ 544, 548, 549, and 550, and any state law analogs, including any related claims and causes of action under 11 U.S.C. § 502, and all other Avoidance Actions not constituting Released Preference Claims or other Excluded Causes of Action.

3.      Any and all Causes of Action related to the Series A Financing and Series B Financing, including against then-existing equity holders who sold equity in the Debtors pursuant to the Series A Financing or Series B Financing, any equity holders who received distributions or other consideration on account of such equity, or against any other party, including but not limited to Causes of Action to avoid and recover transfers under chapter 5 of the Bankruptcy Code and any state law analogs, other than, for the avoidance of doubt, against any Released Party.

4.      Any and all 98f Wallet Causes of Action, including for illustrative purposes and without limitation, claims and Causes of Action for:  (i) the recovery of the 98f Wallet seed phrases and/or the cryptocurrency in the 98f Wallet; (ii) claims and Causes of Action concerning the 98f Wallet sounding in negligence, willful misconduct, breach of fiduciary duty, fraud, fraudulent transfer, unjust enrichment, breach of contract, or any other Cause of Action against any current or former director, officer, independent contractor, advisor, vendor, employee, customer, service provider, or agent of any of the Debtors, or any party that provided financial accommodations, goods, or services of any kind to any Debtor, other

---

[2]     The term "Released Preference Claims" means all Preference Claims against any Customer whose Allowed, scheduled, or stipulated Class 3B Claim (without giving effect to 11 U.S.C. § 502(d)) is in an amount that equals at least 10% of the total amount withdrawn by such Customer during the 90-day period prior to the Petition Date, unless the Customer: (a) is a current or former insider of any Debtor, or a relative of any such insider; (b) is a current or former employee or independent contractor of any Debtor, or a relative of any such employee or independent contractor; (c) is an entity of which any officer, director, manager or advisor is or was an insider of any Debtor; (d) is an officer, director, manager, or employee of an entity falling within the immediately preceding clause (c); (e) received manual permission to facilitate withdrawals from the Debtors when withdrawals were otherwise halted; (f) withdrew an amount greater than $500,000.00 on or after June 21, 2023; or (g) is listed on **Annex A** hereto (the "Non-Released Customer Claims").  The list of Non-Released Customer Claims is being filed under seal; however, each of the Persons or Entities set forth on the Non-Released Customer Claims shall receive individualized notice of their inclusion on such list.

For the avoidance of doubt, and consistent with Article 6.9 of the Plan, (x) Preference Claims against the Released Employees shall constitute Released Preference Claims, and (y) Preference Claims against Current Employees for ordinary wages and compensation shall constitute Released Preference Claims.

than, for the avoidance of doubt, any Released Party, subject to Article 6.9 of the Plan; (iii) claims and Causes of Action related to transactions, purchase, sale, deposit, and/or withdrawal of digital assets, including transactions to fund the shortfall related to the 98f Wallet, against any party other than, for the avoidance of doubt, any Released Party; (iv) claims and Causes of Action under chapter 5 of the Bankruptcy Code and any state law analogs, or for equitable subordination, unjust enrichment, or any other equitable remedies, on account of distributions from the 98f Wallet.

5.    Subject to Article 6.9 of the Plan, any and all Non-Released D&O Claims, including for illustrative purposes and without limitation, claims and Causes of Action sounding in negligence, gross negligence, willful misconduct, breach of fiduciary duty, aiding and abetting breach of fiduciary duty, conversion, fraud, fraudulent transfer, unjust enrichment, breach of contract, unfair competition, misappropriation of intellectual property, interference with prospective economic advantage, or any other Cause of Action against any current or former director, officer, or employee of the Debtors (including the Non-Released D&O and the Former Directors and Officers), other than, for the avoidance of doubt, any Released Party.

6.    Any and all claims and Causes of Action concerning spoliation of evidence.

7.    Any and all claims and Causes of Action against entities that provide liquidity, accessibility, and/or trading services, including, without limitation, liquidity providers.

8.    Any and all claims and Causes of Action related to agreements and contracts, to which any of the Debtors is or was a party or pursuant to which any of the Debtors has any rights whatsoever (regardless of whether such agreement or contract is specifically identified in the Plan, the Plan Supplement, or any amendments thereto), including claims and Causes of Action (a) for overpayments, back charges, duplicate payments, improper holdbacks, deposits, warranties, guarantees, indemnities, recoupment, or setoff; (b) for wrongful or improper termination, suspension of services or supply of goods, or failure to meet other contractual or regulatory obligations; (c) for failure to fully perform or to condition performance on additional requirements under contracts or leases with the Debtors before the assumption or rejection, if applicable, of such contracts or leases; (d) for payments, deposits, holdbacks, reserves or other amounts owed by any creditor, utility, supplier, vendor, insurer, surety, factor, lender, bondholder, lessor or other party; (e) for any liens, including mechanic's, artisan's, materialman's, possessory, or statutory liens held by the Debtors; (f) arising out of environmental or containment exposure matters against landlords, lessors, environmental, consultants, environmental agencies, or suppliers of environmental services or goods; (g) counter-claims and defenses related to any contractual obligations; (h) any turnover actions arising under sections 542 or 543 of the Bankruptcy Code; (i) for unfair competition, interference with contract or potential business advantage, breach of contract, infringement of intellectual property, or any business tort claims; and (j) any and all indemnification rights.

9.    Any and all claims and Causes of Action concerning the issue of whether any particular assets are property of the Debtors' Estates.

10.    Any and all claims and Causes of Action concerning actual and/or constructive fraudulent transfer(s).

11.    Any and all claims and Causes of Action related to accounts receivable and accounts payable.

12.    Any and all claims and Causes of Action related to audits conducted of the Debtors.

13.    Any and all claims and Causes of Action, including defenses, against any Governmental Unit, including any regulatory body involved in any way in the operation of the Debtors prior to the Effective Date.

14.    Any and all claims and Causes of Action related to insurance policies, insurance contracts, and/or surety bonds (including the Surety Bonds) to which the Debtors are or were a party or pursuant to which the Debtors have any rights whatsoever, regardless of whether such contract or policy is specifically identified in the Plan, the Plan Supplement, or any amendments thereto, including, without limitation, claims and Causes of Action against insurance carriers, reinsurance carriers, insurance brokers, underwriters, occurrence carriers, indemnity, contribution, reimbursement, or any other matters.

15.    Any and all claims and Causes of Action related to tax obligations and refunds.

16.    Any and all claims and Causes of Action related to any type of deposit, prepayment, retainer, or collateral, regardless of whether such posting of deposit, adequate assurance payment, or any other type of deposit, prepayment, or collateral is specifically identified herein.

17.    Any and all claims and Causes of Action based in whole or in part upon any and all Liens, regardless of whether such Lien is specifically identified herein.

18.    Any and all claims and Causes of Action concerning setoff, regardless of whether such setoff rights are specifically identified herein.

19.    Any and all claims and Causes of Action against or involving any Person or Entity that owed any legal duty, no matter how arising, to any Debtor.

20.    Any and all claims and Causes of Action against or involving agents, service providers, vendors, independent contractors, or any party that provided financial accommodations, goods, or services of any kind to any Debtor.

21.    Any and all claims and Causes of Action against or involving entities that have filed, or may file, a proof of claim or request for payment of administrative expenses in these Chapter 11 Cases.

22.    Any and all claims and Causes of Action concerning the Debtors' ownership of equity in any Entity.

23. Any and all other Causes of Action of the Debtors and/or the Debtors' Estates that are not Excluded Causes of Action, including without limitation, any and all claims, defenses, cross-claims, and counterclaims against or related to all Entities that are party to or that may in the future become party to litigation, arbitration, or any other type of adversarial proceeding or dispute resolution proceeding, whether formal or informal, judicial or non-judicial.

## Annex A

Preference Claims against the following Persons or Entities, and their parents, subsidiaries, affiliates, officers, directors, managers, employees, agents, and any and all accounts associated with such Persons or Entities, including accounts holding assets for "end-users" and others for which the account was opened, set up, controlled, or is otherwise associated (collectively, the "Associated Accounts"), are all considered "Exempted Preference Claims" and shall not constitute Released Preference Claims.[3]

1. Name Redacted For Confidentiality
2. Name Redacted For Confidentiality
3. Name Redacted For Confidentiality
4. Name Redacted For Confidentiality
5. Name Redacted For Confidentiality
6. Name Redacted For Confidentiality
7. Name Redacted For Confidentiality
8. Name Redacted For Confidentiality
9. Name Redacted For Confidentiality
10. Name Redacted For Confidentiality
11. Name Redacted For Confidentiality
12. Name Redacted For Confidentiality
13. Name Redacted For Confidentiality
14. Name Redacted For Confidentiality
15. Name Redacted For Confidentiality
16. Name Redacted For Confidentiality
17. Name Redacted For Confidentiality
18. Name Redacted For Confidentiality
19. Name Redacted For Confidentiality
20. Name Redacted For Confidentiality
21. Name Redacted For Confidentiality
22. Name Redacted For Confidentiality
23. Name Redacted For Confidentiality

---

[3] This **Annex A** remains subject to ongoing review. The Debtors, in consultation with the Committee and the DIP Lender, anticipate supplementing this **Annex A** with additional Persons and Entities.

# EXHIBIT C-1

**Redline of <u>Exhibit C</u> to <u>Exhibit C</u> of the Plan Supplement**

## ~~Exhibit C~~SCHEDULE OF VESTED CAUSES OF ACTION[1]

### ~~Schedule of Vested Causes of Action[1]~~

Article 6.15 of the Plan provides (emphasis added):

In accordance with section 1123(b) of the Bankruptcy Code, ~~any and all Causes of Action that are not expressly released or waived or limited under the Plan are preserved and vested by the Debtors and~~ the Wind-Down Debtor ~~on the Effective Date (the "Vested Causes of Action"), and~~/or the ~~Wind-Down Debtor~~PCT Litigation Trust, as applicable, shall succeed to all rights to commence~~, prosecute, and~~ pursue~~, and/or settle~~ any and all Vested Causes of Action of the Debtors, whether arising before or after the Petition Date, including, without limitation, any actions specifically enumerated in the Schedule of ~~Retained~~Vested Causes of Action other than ~~the causes of action that are expressly released, waived, or limited under the Plan (the "~~Excluded Causes of Action~~").~~ ~~The~~Such rights shall be preserved by the Debtors and Wind-Down Debtor and shall vest in the Wind-Down Debtor and/or the PCT Litigation Trust, as applicable, with the Wind-Down Debtor's and/or the PCT Litigation Trust's rights to commence, prosecute, or settle such Causes of Action preserved notwithstanding the occurrence of the Effective Date, other than any Excluded Causes of Action, which Excluded Causes of Action shall be deemed released and waived by the Debtors, the Wind-Down Debtor, and the [PCT] Litigation Trust as of the Effective Date.

The Wind-Down Debtor may pursue such Vested Causes of Action or assign such Vested Causes of Action to the [PCT] Litigation Trust, as appropriate, in accordance with the best interests of the Holders of Allowed Claims ~~against the Debtors' estates~~ and in accordance with the Plan Administrator Agreement and the Plan. **No Entity may rely on the absence of a specific reference in the Schedules, the Plan, the Plan Supplement, the Disclosure Statement, or the Schedule of ~~Retained~~Vested Causes of Action as any indication that the Debtors, the Wind-Down Debtor, the Reorganized Debtors, or the [PCT] Litigation Trust, as applicable, will not pursue any and all available Vested Causes of Action of the Debtors against it. The Wind-Down Debtor, on behalf of the Debtors, expressly reserves all rights to prosecute any and all Vested Causes of Action against any Entity, or to assign such rights to the [PCT] Litigation Trust, except as otherwise provided in the Plan, including Article 10.4 and Article 10.5 of the Plan.** Except with respect to Excluded Causes of Action**,** the Wind-Down Debtor, on behalf of the Debtors~~,~~ and in accordance with the Plan Administrator Agreement, expressly reserves all such

---

[1]    Capitalized terms not otherwise defined herein shall have the meaning provided in the Plan.  Pursuant to the Plan, upon the Effective Date the Plan Administrator or the PCT Litigation Trustee, as applicable, shall be vested with the sole right and obligation to pursue the Vested Causes of Action.

~~[1] Capitalized terms not otherwise defined herein shall have the meaning provided in the Plan.  Pursuant to the Plan, upon the Effective Date the Plan Administrator or the [PCT] Litigation Trustee, as applicable, shall be vested with the sole right and obligation to pursue the Vested Causes of Action.~~

Vested Causes of Action for later adjudication, and, therefore, no preclusion doctrine, including the doctrines of res judicata, collateral estoppel, issue preclusion, claim preclusion, estoppel (judicial, equitable, or otherwise), or laches, shall apply to such Vested Causes of Action upon, after, or as a consequence of confirmation or Consummation of the Plan.

The Wind-Down Debtor, on behalf of the Debtors, reserves and shall retain such ~~Vested~~ Causes of Action of the Debtors notwithstanding the rejection or repudiation of any Executory Contract or Unexpired Lease during the Chapter 11 Cases or pursuant to the Plan. In accordance with section 1123(b)(3) of the Bankruptcy Code, any ~~Vested~~ Cause of Action that a Debtor may hold against any Entity shall vest in the Wind-Down Debtor, except as otherwise provided in the Plan, including Article 10.4 and Article 10.5 of the Plan. The Wind-Down Debtor and/or the PCT Litigation Trust, through their respective authorized agents or representatives, shall retain and may exclusively enforce any and all such ~~Vested~~ Causes of Action. Subject to the provisions of the Plan Administrator Agreement and/or the PCT Litigation Trust Agreement, the Wind-Down Debtor and/or the PCT Litigation Trust, as applicable, shall have the exclusive right, authority, and discretion to determine and to initiate, file, prosecute, enforce, abandon, settle, compromise, release, withdraw, or litigate to judgment any such ~~Vested~~ Causes of Action, or to decline to do any of the foregoing, without the consent or approval of any third party or any further notice to or action, order, or approval of the Bankruptcy Court in accordance with the Plan.

Notwithstanding, and without limiting the generality of, Article 6.15 of the Plan, attached hereto as **Exhibit** ~~C to this Plan Supplement includes~~**1** is a list of specific types of Vested Causes of Actions expressly preserved by the Wind-Down Debtor~~,~~ and/or the ~~[PCT]~~ Litigation Trust, as applicable, subject to the terms of the Plan, the Plan Administrator Agreement, and the ~~[PCT]~~ Litigation Trust Agreement. **Review of the Vested Causes of Action is ongoing. Except as otherwise provided in** ~~Article [•] of~~ **the Plan, or to the extent a Cause of Action is designated as an Excluded Cause of Action on** ~~this Schedule [•]~~**Exhibit 1 hereto, all Causes of Action are expressly preserved for later prosecution, adjudication, or settlement by the Wind-Down Debtor, the Plan Administrator, and/or the** ~~[PCT]~~ **Litigation Trustee, as applicable, including, without limitation, Causes of Action not specifically identified or of which the Debtors may presently be unaware or which may arise or exist by reason of additional facts or circumstances unknown to the Debtors at this time or facts or circumstances that may change or be different from those the Debtors now believe to exist. For the avoidance of doubt, the specific types of Vested Causes of Action** ~~listed in~~set forth on **Exhibit** ~~C to this Plan Supplement~~**1 hereto are non-exclusive and are not intended to be a comprehensive list of all Vested Causes of Action retained in connection with the Plan. The Debtors and Wind-Down Debtor expressly reserve the right to alter, modify, amend, remove, augment, or supplement the Vested Causes of Action.**

**Exhibit ~~C~~1**

Vested Causes of Action:

1.  All claims and Causes of Action under 11 U.S.C. §§ 547 and 550 (to the extent such claims arise solely in connection with claims under section 547), and any state law analogs ~~(the "Preference Claims")~~, including any related claims or Causes of Action under 11 U.S.C. § 502 (collectively, the "Preference Claims"), other than the Released Preference Claims.[2]  For the avoidance of doubt, and notwithstanding anything to the contrary in the Plan, the Released Preference Claims shall constitute Excluded Causes of Action.

2.  All claims and causes of action under 11 U.S.C. §§ 544, 548, 549, and 550, and any state law analogs, including any related claims and causes of action under 11 U.S.C. § 502, and all other Avoidance Actions not constituting Released Preference Claims or other Excluded Causes of Action.

3.  Any and all Causes of Action related to the Series A Financing and Series B Financing, including against then-existing equity holders who sold equity in the Debtors pursuant to the Series A Financing or Series B Financing, any equity holders who received distributions or other consideration on account of such equity, or against any other party, including but not limited to Causes of Action to avoid and recover transfers under chapter

---

[2]   The term "Released Preference Claims" means all Preference Claims against any ~~customer~~Customer whose ~~allowed~~Allowed, scheduled, or stipulated Class 3B Claim (without giving effect to 11 U.S.C. § 502(d)) is in an amount that equals at least 10% of the total amount withdrawn by such ~~customer~~Customer during the 90-day period prior to the Petition Date, unless the ~~customer~~Customer: (a) is a current or former insider of any Debtor, or a relative of any such insider; (b) is a current or former employee or independent contractor of any Debtor, or a relative of any such employee or independent contractor; (c) is an entity of which any officer, director, manager or advisor is or was an insider of any Debtor; (d) is an officer, director, manager, or employee of an entity falling within the immediately preceding clause (c); (e) received manual permission to facilitate withdrawals from the Debtors when withdrawals were otherwise halted; (f) withdrew an amount greater than $500,000.00 on or after June 21, 2023; or (g) is listed on **Annex ~~1~~A** hereto (the "Non-Released Customer Claims").  The list of Non-Released Customer Claims is being filed under seal; ~~*provided,*~~ however, that~~each of the Persons or Entities set forth on the Non-Released Customer Claims shall receive individualized notice of their inclusion on such list.~~

For the avoidance of doubt, and consistent with Article 6.9 of the Plan, (x) Preference Claims ~~for ordinary wages and compensation~~ against the Released Employees shall constitute Released Preference Claims, and (y) Preference Claims ~~for ordinary wage and compensation payments to~~against Current Employees for ordinary wages and compensation shall constitute Released Preference Claims.  ~~The Debtors, the Committee, and the DIP Lender are continuing to discuss the scope of the Released Preference Claims, as well as a list of parties to be included on Annex 1, which list of parties will be filed as part of an amendment to the Plan Supplement.~~

5 of the Bankruptcy Code and any state law analogs, other than, for the avoidance of doubt, against any Released Party.

4.     Any and all 98f Wallet Causes of Action, including for illustrative purposes and without limitation, claims and Causes of Action for:  (i) the recovery of the 98f Wallet seed phrases and/or the cryptocurrency in the 98f Wallet; (ii) claims and Causes of Action concerning the 98f Wallet sounding in negligence, willful misconduct, breach of fiduciary duty, fraud, fraudulent transfer, unjust enrichment, breach of contract, or any other Cause of Action against any current or former director, officer, independent contractor, advisor, vendor, employee, customer, service provider, or agent of any of the Debtors, or any party that provided financial accommodations, goods, or services of any kind to any Debtor, other than, for the avoidance of doubt, any Released Party, subject to Article 6.9 of the Plan; (iii) claims and Causes of Action related to transactions, purchase, sale, deposit, and/or withdrawal of digital assets, including transactions to fund the shortfall related to the 98f Wallet, against any party other than, for the avoidance of doubt, any Released Party; (iv) claims and Causes of Action under chapter 5 of the Bankruptcy Code and any state law analogs, or for equitable subordination, unjust enrichment, or any other equitable remedies, on account of distributions from the 98f Wallet.

5.     AnySubject to Article 6.9 of the Plan, any and all Non-Released D&O Claims, including for illustrative purposes and without limitation, claims and Causes of Action sounding in negligence, gross negligence, willful misconduct, breach of fiduciary duty, aiding and abetting breach of fiduciary duty, conversion, fraud, fraudulent transfer, unjust enrichment, breach of contract, unfair competition, misappropriation of intellectual property, interference with prospective economic advantage, or any other Cause of Action against any current or former director, officer, or employee of the Debtors (including the Non-Released D&O and the Former Directors and Officers), other than, for the avoidance of doubt, any Released Party, and subject to Article 6.9 of the Plan.

6.     Any and all claims and Causes of Action concerning spoliation of evidence.

7.     Any and all claims and Causes of Action against entities that provide liquidity, accessibility, and/or trading services, including, without limitation, liquidity providers.

8.     Any and all claims and Causes of Action related to agreements and contracts, to which any of the Debtors is or was a party or pursuant to which any of the Debtors has any

rights whatsoever (regardless of whether such agreement or contract is specifically identified in the Plan, the Plan Supplement, or any amendments thereto), including claims and Causes of Action (a) for overpayments, back charges, duplicate payments, improper holdbacks, deposits, warranties, guarantees, indemnities, recoupment, or setoff,; (b) for wrongful or improper termination, suspension of services or supply of goods, or failure to meet other contractual or regulatory obligations,; (c) for failure to fully perform or to condition performance on additional requirements under contracts or leases with the Debtors before the assumption or rejection, if applicable, of such contracts or leases,; (d) for payments, deposits, holdbacks, reserves or other amounts owed by any creditor, utility, supplier, vendor, insurer, surety, factor, lender, bondholder, lessor or other party,; (e) for any liens, including mechanic's, artisan's, materialman's, possessory, or statutory liens held by the Debtors,; (f) arising out of environmental or containment exposure matters against landlords, lessors, environmental, consultants, environmental agencies, or suppliers of environmental services or goods,; (g) counter-claims and defenses related to any contractual obligations,; (h) any turnover actions arising under sections 542 or 543 of the Bankruptcy Code,; (i) for unfair competition, interference with contract or potential business advantage, breach of contract, infringement of intellectual property, or any business tort claims,; and (j) any and all indemnification rights.

9.    Any and all claims and Causes of Action concerning the issue of whether any particular assets are property of the Debtors' estatesEstates.

10.   Any and all claims and Causes of Action concerning actual and/or constructive fraudulent transfer(s).

11.   Any and all claims and Causes of Action related to accounts receivable and accounts payable.

12.   Any and all claims and Causes of Action related to audits conducted of the Debtors.

13.   Any and all claims and Causes of Action, including defenses, against any Governmental Unit, including any regulatory body involved in any way in the operation of the Debtors prior to the Effective Date.

14.  Any and all claims and Causes of Action related to insurance policies, insurance contracts, and/or surety bonds (including the Surety Bonds) to which the Debtors are or were a party or pursuant to which the Debtors have any rights whatsoever, regardless of whether such contract or policy is specifically identified in the Plan, the Plan Supplement, or any amendments thereto, including, without limitation, claims and Causes of Action against insurance carriers, reinsurance carriers, insurance brokers, underwriters, occurrence carriers, indemnity, contribution, reimbursement, or any other matters.

15.  Any and all claims and Causes of Action related to tax obligations and refunds.

16.  Any and all claims and Causes of Action related to any type of deposit, prepayment, retainer, or collateral, regardless of whether such posting of deposit, adequate assurance payment, or any other type of deposit, prepayment, or collateral is specifically identified herein.

17.  Any and all claims and Causes of Action based in whole or in part upon any and all liensLiens, regardless of whether such lienLien is specifically identified herein.

18.  Any and all claims and Causes of Action concerning setoff, regardless of whether such setoff rights are specifically identified herein.

19.  Any and all claims and Causes of Action against or involving any Person or Entity that owed any legal duty, no matter how arising, to any Debtor.

20.  Any and all claims and Causes of Action against or involving agents, service providers, vendors, independent contractors, or any party that provided financial accommodations, goods, or services of any kind to any Debtor.

21.  Any and all claims and Causes of Action against or involving entities that have filed, or may file, a proof of claim or request for payment of administrative expenses in these Chapter 11 Cases.

22.    Any and all claims and Causes of Action concerning the Debtors' ownership of equity in any Entity.

23.    Any and all other Causes of Action of the Debtors and/or the Debtors' Estates that are not Excluded Causes of Action, including without limitation, any and all claims, defenses, cross -claims, and counterclaims against or related to all Entities that are party to or that may in the future become party to litigation, arbitration, or any other type of adversarial proceeding or dispute resolution proceeding, whether formal or informal, judicial or non-judicial.

DM_US 202330124-5.121647.0012

**Annex A**

Preference Claims against the following Persons or Entities, and their parents, subsidiaries, affiliates, officers, directors, managers, employees, agents, and any and all accounts associated with such Persons or Entities, including accounts holding assets for "end-users" and others for which the account was opened, set up, controlled, or is otherwise associated (collectively, the "Associated Accounts"), are all considered "Exempted Preference Claims" and shall not constitute Released Preference Claims.[3]



1.
2.
3.
4.
5.
6.
7.
8.
9.
10.
11.
12.
13.
14.
15.
16.
17.
18.
19.
20.
21.
22.
23.

---

[3]    This **Annex A** remains subject to ongoing review. The Debtors, in consultation with the Committee and the DIP Lender, anticipate supplementing this **Annex A** with additional Persons and Entities.

Document comparison by Workshare Compare on Monday, December 4, 2023
4:48:23 PM

| Input: | |
|---|---|
| Document 1 ID | file://C:\Users\jjumbeck\AppData\Local\Temp\Workshare\wmtemp4824\PT - Schedule of Retained Causes of Action [Filing Version]170.docx |
| Description | PT - Schedule of Retained Causes of Action [Filing Version]170 |
| Document 2 ID | iManage://imanageus.mwe.com/DM_US/202330124/11 |
| Description | #202330124v11<imanageus.mwe.com> - PT - Schedule of Retained Causes of Action [Filing Version] |
| Rendering set | Standard |

| Legend: | |
|---|---|
| Insertion | |
| ~~Deletion~~ | |
| ~~Moved from~~ | |
| Moved to | |
| Style change | |
| Format change | |
| ~~Moved deletion~~ | |
| Inserted cell | |
| Deleted cell | |
| Moved cell | |
| Split/Merged cell | |
| Padding cell | |

| Statistics: | |
|---|---|
| | Count |
| Insertions | 109 |
| Deletions | 67 |
| Moved from | 2 |
| Moved to | 2 |
| Style changes | 0 |
| Format changes | 0 |

| Total changes | 180 |

## EXHIBIT H

**Amended Organizational Documents**

**EXHIBIT H-1**

**Second Amended & Restated Certificate of Incorporation of Prime Core Technologies, Inc.**

**SECOND AMENDED AND RESTATED**

**CERTIFICATE OF INCORPORATION**

**OF**

**PRIME CORE TECHNOLOGIES INC.**

Prime Core Technologies Inc., a corporation organized and existing under and by virtue of the provisions of the General Corporation Law of the State of Delaware (the "***DGCL***"),

DOES HEREBY CERTIFY:

**1.**    That the name of this corporation is Prime Core Technologies Inc., and that this corporation was originally incorporated pursuant to the DGCL on January 1, 2021.

**2.**    This amendment and restatement of the Amended and Restated Certificate of Incorporation of this corporation, was duly adopted in accordance with the provisions of the DGCL, including Section 303 of the DGCL. Provision for amending and restating the Amended and Restated Certificate of Incorporation of this corporation as set forth herein is contained in the order of the United States Bankruptcy Court for the District of Delaware dated as of [_____], 2023 confirming the First Amended Joint Chapter 11 Plan of Reorganization for this corporation and its affiliated debtors, as amended (the "***Plan***") filed pursuant to Section 1121(a) of chapter 11 of title 11 of the United States Code, 11 U.S.C. §§ 101, *et seq.*, as amended from time to time (the "***Bankruptcy Code***").

The Amended and Restated Certificate of Incorporation of this corporation is hereby amended and restated in its entirety to read as follows:

**I.**

The name of this corporation is Prime Core Technologies Inc. (the "***Corporation***").

**II.**

The registered office of the Corporation in the State of Delaware is 1209 Orange Street – Corporation Trust Center, City of Wilmington, County of New Castle, 19801 and the name of the registered agent of the Corporation in the State of Delaware at such address is The Corporation Trust Company.

**III.**

The purpose of the Corporation is to engage in any lawful act or activity for which a corporation may be organized under the DGCL and will at all times act in a manner consistent with the Plan.

**IV.**

The Corporation is authorized to issue only one class of stock, to be designated Common Stock. The total number of shares of Common Stock presently authorized is one (1), having a par value of $0.00001.  Except as set forth in the following sentence, the Common Stock shall not be sold, pledged or otherwise transferred, and the Corporation shall not recognize any such sale, pledge or transfer. Notwithstanding the forgoing, in the event that the person appointed to serve as the Plan Administrator (as defined in the Plan) (the "***Existing Plan Administrator***") pursuant to the Plan Administrator Agreement (as

1

defined in the Plan) ceases to serve as Plan Administrator and a new Plan Administrator (the "***New Plan Administrator***") is appointed to serve as Plan Administrator pursuant to the Plan Administrator Agreement, the Existing Plan Administrator is required to, and shall, transfer the Common Stock held by the Existing Plan Administrator to the New Plan Administrator, and the Corporation shall recognize such transfer.

## V.

**A.**    **Management by Board of Directors**. The management of the business and the conduct of the affairs of the Corporation will be vested in its Board of Directors.  The number of directors which will constitute the whole Board of Directors will be fixed at one (1). At all times, the sole member of the Board of Directors shall be the individual appointed to serve as Plan Administrator pursuant to the Plan Administrator Agreement. No election of the sole director need be in writing unless the Bylaws of the Corporation shall so provide.

**B.**    **Empowerment Regarding Bylaws**. The Board of Directors is expressly empowered to adopt, amend or repeal the Bylaws of the Corporation.  The stockholders will also have power to adopt, amend or repeal the Bylaws of the Corporation.

## VI.

The Corporation reserves the right to amend, alter, change or repeal any provision contained in this Second Amended and Restated Certificate of Incorporation, in the manner now or hereafter prescribed by statute, and all rights conferred upon the stockholders herein are granted subject to this reservation.


*[Remainder of this page intentionally left blank]*

This Second Amended and Restated Certificate has been executed by a duly authorized officer of this Corporation as of [_____], 2023.

**PRIME CORE TECHNOLOGIES INC.**

By: _____

Name: _____

Title: _____

## EXHIBIT H-2

**Second Amended & Restated Bylaws of Prime Core Technologies, Inc.**

**SECOND AMENDED AND RESTATED BYLAWS**

**OF**

**PRIME CORE TECHNOLOGIES INC.**

**(A DELAWARE CORPORATION)**

**Adopted as of [_____], 2023**

# TABLE OF CONTENTS

Page

ARTICLE I OFFICES ...........................................................................................................1

    Section 1.01       Registered Office ...............................................................................1

    Section 1.02       Other Offices......................................................................................1

ARTICLE II MEETINGS OF STOCKHOLDERS .................................................................1

    Section 2.01       Annual Meeting..................................................................................1

    Section 2.02       Special Meeting..................................................................................1

    Section 2.03       Place of Meeting ................................................................................1

    Section 2.04       Notice of Meeting ..............................................................................1

    Section 2.05       Voting List .........................................................................................2

    Section 2.06       Quorum ..............................................................................................2

    Section 2.07       Voting.................................................................................................2

    Section 2.08       Proxies...............................................................................................2

    Section 2.09       Consent of Stockholders ...................................................................3

    Section 2.10       Voting of Stock of Certain Holders ..................................................3

    Section 2.11       Treasury Stock ...................................................................................3

    Section 2.12       Fixing Record Date ...........................................................................3

ARTICLE III BOARD OF DIRECTORS ...............................................................................4

    Section 3.01       Powers ...............................................................................................4

    Section 3.02       Number, Election and Term...............................................................4

    Section 3.03       Vacancies, Additional Directors, and Removal from Office .................4

    Section 3.04       Resignation........................................................................................4

    Section 3.05       Regular Meetings ..............................................................................4

    Section 3.06       Special Meetings ...............................................................................5

    Section 3.07       Quorum ..............................................................................................5

    Section 3.08       Communications ................................................................................5

    Section 3.09       Action Without Meeting ....................................................................5

    Section 3.10       Compensation....................................................................................5

ARTICLE IV COMMITTEES .................................................................................................6

    Section 4.01       Designation, Powers and Name .........................................................6

    Section 4.02       Minutes..............................................................................................6

ARTICLE V NOTICE ...................................................................................................6

    Section 5.01       Methods of Giving Notice.....................................................6

    Section 5.02       Consent to Electronic Notice ................................................7

    Section 5.03       Waiver ...................................................................................7

ARTICLE VI OFFICERS ...........................................................................................7

    Section 6.01       Officers .................................................................................7

    Section 6.02       Election and Term of Office ..................................................7

    Section 6.03       Removal and Resignation .....................................................7

    Section 6.04       Vacancies .............................................................................8

    Section 6.05       Salaries .................................................................................8

ARTICLE VII CONTRACTS, CHECKS AND DEPOSITS .........................................8

    Section 7.01       Contracts ..............................................................................8

    Section 7.02       Checks ..................................................................................8

    Section 7.03       Deposits ................................................................................8

ARTICLE VIII CERTIFICATES OF STOCK..............................................................8

    Section 8.01       Issuance ................................................................................8

    Section 8.02       Lost Certificates ...................................................................9

    Section 8.03       Transfers...............................................................................9

    Section 8.04       Registered Stockholders.......................................................9

ARTICLE IX DIVIDENDS.........................................................................................9

    Section 9.01       Declaration ...........................................................................9

    Section 9.02       Reserve ...............................................................................10

ARTICLE X INDEMNIFICATION.............................................................................10

    Section 10.01      Third Party Actions ............................................................10

    Section 10.02      Actions By or In the Right of the Corporation....................10

    Section 10.03      Mandatory Indemnification.................................................11

    Section 10.04      Determination of Conduct ..................................................11

    Section 10.05      Payment of Expenses in Advance ......................................11

    Section 10.06      Indemnity Not Exclusive....................................................11

    Section 10.07      Continuation of Indemnity .................................................12

ARTICLE XI MISCELLANEOUS...............................................................................12

    Section 11.01      Seal.....................................................................................12

    Section 11.02      Books ..................................................................................12

Section 11.03    Section Headings.................................................................................12

Section 11.04    Amendments .......................................................................................12

**SECOND AMENDED AND RESTATED BYLAWS**
**OF**
**PRIME CORE TECHNOLOGIES INC.**
**(a Delaware corporation)**

**ARTICLE I**
**OFFICES**

Section 1.01    Registered Office.  The registered office of the corporation in the State of Delaware is 1209 Orange Street – Corporation Trust Center, City of Wilmington, County of New Castle, 19801  or in such other location as the Board of Directors of the corporation (the "Board of Directors") may from time to time determine or the business of the corporation may require.

Section 1.02    Other Offices.  The corporation may also have offices at such other places both within and without the State of Delaware as the Board of Directors may from time to time determine or the business of the corporation may require.

**ARTICLE II**
**MEETINGS OF STOCKHOLDERS**

Section 2.01    Annual Meeting.   The annual meeting of stockholders for the election of directors, and for the transaction of any other proper business, shall be held at such date and time as shall be designated from time to time by the Board of Directors and stated in the notice of the meeting.

Section 2.02    Special Meeting.  Special meetings of the stockholders, for any purpose or purposes, unless otherwise prescribed by statute or by the corporation's certificate of incorporation (as may be amended and/or restated from time to time, the "Certificate of Incorporation"), may be called at any time by the Chief Executive Officer or by the Board of Directors or by written order of a majority of the directors and shall be called by the Chief Executive Officer or the General Counsel and Secretary at the request in writing of stockholders owning not less than ten percent (10%) of the capital stock of the corporation issued and outstanding and entitled to vote.  Such request shall state the purposes of the proposed meeting.

Section 2.03    Place of Meeting.  All meetings of stockholders shall be held at such place, if any, either within or without the State of Delaware, as shall be designated from time to time by the Board of Directors and stated in the notice of such meeting.  The Board of Directors may, in its sole discretion and subject to such guidelines and procedures as the Board of Directors may from time to time adopt, determine that the meeting shall not be held at any specific place, but may instead be held solely by means of remote communication.

Section 2.04    Notice of Meeting.  Written or other proper notice of any meeting of stockholders, stating the place, if any, date and hour of the meeting, the means of remote communications, if any, by which stockholders and proxyholders may be deemed to be present in person and vote at such adjourned meetings, and, in the case of a special meeting, the purpose or purposes thereof, shall be given to each stockholder entitled to vote thereat, not less than ten (10)

nor more than sixty (60) days before the meeting.  Business transacted at any special meeting of stockholders shall be limited to the purposes stated in the notice.

Section 2.05    Voting List.  The officer who has charge of the stock ledger of the corporation shall prepare and make, at least ten (10) days before every meeting of stockholders, a complete list of the stockholders entitled to vote at the meeting, arranged in alphabetical order, and showing the address of each stockholder and the number of shares registered in the name of each stockholder.  Such list shall be open to the examination of any stockholder, for any purpose germane to the meeting, during ordinary business hours, for a period of at least ten (10) days prior to the meeting (a) on a reasonably accessible electronic network, *provided* that the information required to gain access to such list is provided with the notice of the meeting, or (b) during ordinary business hours, at the principal place of business of the corporation.  If the meeting is to be held at a specific place, then the list shall be produced and kept at the time and place of the meeting during the whole time thereof, and may be inspected by any stockholder who is present.  If the meeting is to be held solely by means of remote communication, then the list shall also be open to the examination of any stockholder during the whole time of the meeting on a reasonably accessible electronic network, and the information required to access such list shall be provided with the notice of the meeting.

Section 2.06    Quorum.  At any meeting of the stockholders, the holders of a majority of the shares issued and outstanding and entitled to vote thereat, present in person or represented by proxy, shall constitute a quorum for the transaction of business, except as otherwise provided by statute, by the Certificate of Incorporation or by these bylaws.  If, however, such quorum shall not be present or represented at any meeting of the stockholders, the stockholders entitled to vote thereat, present in person or represented by proxy, shall have power to adjourn the meeting from time to time, without notice other than announcement at the meeting, until a quorum shall be present or represented.  At such adjourned meeting at which a quorum shall be present or represented any business may be transacted which might have been transacted at the meeting as originally notified.  If the adjournment is for more than thirty (30) days, or if after the adjournment a new record date is fixed for the adjourned meeting, a notice of the adjourned meeting shall be given to each stockholder of record entitled to vote at the meeting.

Section 2.07    Voting.  When a quorum is present at any meeting of the stockholders, the vote of the holders of a majority of the shares entitled to vote on the subject matter and present in person or represented by proxy shall decide any question brought before such meeting, unless the question is one upon which, by express provision of applicable statutes, of the Certificate of Incorporation or of these bylaws, a different vote is required, in which case such express provision shall govern and control the decision of such question.  Except as otherwise provided in the Certificate of Incorporation, each stockholder entitled to vote at any meeting of the stockholders shall be entitled to one vote for each share of capital stock held by the stockholder.

Section 2.08    Proxies.  Each stockholder entitled to vote at a meeting of the stockholders may authorize, by an instrument in writing subscribed by such stockholder, bearing a date not more than three (3) years prior to voting, unless such instrument provides for a longer period, and filed with the General Counsel and Secretary of the corporation before, or at the time of the meeting, another person or persons to act for him by proxy.

Section 2.09   <u>Consent of Stockholders</u>.   Unless otherwise provided in the Certificate of Incorporation, any action required to be taken at any annual or special meeting of stockholders of the corporation, or any action which may be taken at any annual or special meeting of such stockholders, may be taken without a meeting, without prior notice and without a vote, if a consent in writing, setting forth the action so taken, shall be signed by the holders of outstanding stock having not less than the minimum number of votes that would be necessary to authorize or take such action at a meeting at which all shares entitled to vote thereon were present and voted. Prompt notice of the taking of the corporate action without a meeting by less than unanimous written consent shall be given to those stockholders who have not consented in writing.  For the purposes of this <u>Section 2.09</u> to the extent permitted by law, an electronic transmission consenting to an action to be taken and transmitted by a stockholder or proxyholder, or by a person or persons authorized to act for a stockholder or proxyholder, shall be deemed to be written, signed and dated as of the date on which such writing or other electronic transmission is transmitted.

Section 2.10   <u>Voting of Stock of Certain Holders</u>.   Shares of the corporation's capital stock standing in the name of another business entity, domestic or foreign, may be voted by such officer, agent, or proxy as the bylaws or applicable governance document of such business entity may prescribe, or in the absence of such provision, as the board of directors or applicable managers of such business entity may determine.  Shares standing in the name of a deceased person may be voted by the executor or administrator of such deceased person, either in person or by proxy.  Shares standing in the name of a guardian, conservator, or trustee may be voted by such fiduciary, either in person or by proxy, but no such fiduciary shall be entitled to vote shares held in such fiduciary capacity without a transfer of such shares into the name of such fiduciary.  Shares standing in the name of a receiver may be voted by such receiver, either in person or by proxy.  A stockholder whose shares are pledged shall be entitled to vote such shares, unless in the transfer by the pledgor on the books of the corporation, such stockholder has expressly empowered the pledgee to vote thereon, in which case only the pledgee, or its proxy, may represent the stock and vote thereon.

Section 2.11   <u>Treasury Stock</u>.   The corporation shall not vote, directly or indirectly, shares of its own capital stock owned by it; and such shares shall not be counted in determining the total number of outstanding shares of the corporation's capital stock.

Section 2.12   <u>Fixing Record Date</u>.  The Board of Directors may fix in advance a date, which shall not be more than sixty (60) days nor less than ten (10) days preceding the date of any meeting of stockholders, nor more than sixty (60) days preceding the date for payment of any dividend or distribution, or the date for the allotment of rights, or the date when any change, or conversion or exchange of capital stock shall go into effect, or a date in connection with obtaining a consent, as a record date for the determination of the stockholders entitled to notice of, and to vote at, any such meeting and any adjournment thereof, or entitled to receive payment of any such dividend or distribution, or to receive any such allotment of rights, or to exercise the rights in respect of any such change, conversion or exchange of capital stock, or to give such consent, and in such case such stockholders and only such stockholders as shall be stockholders of record on the date so fixed, shall be entitled to such notice of, and to vote at, any such meeting and any adjournment thereof, or to receive payment of such dividend or distribution, or to receive such allotment of rights, or to exercise such rights, or to give such consent, as the case may be,

notwithstanding any transfer of any stock on the books of the corporation after any such record date fixed as aforesaid.

## ARTICLE III
## BOARD OF DIRECTORS

Section 3.01    Powers.  Subject to the Certificate of Incorporation, the business and affairs of the corporation shall be managed by or under the direction of the Board of Directors, which may exercise all such powers of the corporation and do all such lawful acts and things as are not by statute or by the Certificate of Incorporation or by these bylaws directed or required to be exercised or done by the stockholders.

Section 3.02    Number, Election and Term.  Except as provided in the Certificate of Incorporation, the number of directors that shall constitute the whole Board of Directors shall be initially fixed at one (1).  Subject to the Certificate of Incorporation, such number of directors shall from time to time be fixed and determined by the directors and shall be set forth in the notice of any meeting of stockholders held for the purpose of electing directors.  The directors shall be elected at the annual meeting of stockholders, except as provided in Section 3.03, and each director elected shall hold office until his or her successor has been elected and qualified or, if earlier, his or her death, resignation, retirement, disqualification or removal.  The vote of any stockholder on an election of directors may be taken in any manner and no such vote shall be required to be taken by written ballot or by electronic transmission unless otherwise required by law.  Directors need not be residents of the State of Delaware, citizens of the United States of America or stockholders of the corporation.

Section 3.03    Vacancies, Additional Directors, and Removal from Office.  Unless otherwise provided in the Certificate of Incorporation, and subject to the rights of the holders of any class or series of capital stock of the corporation pursuant to any stockholders agreement of the corporation, (i) if any vacancy occurs in the Board of Directors caused by death, resignation, retirement, disqualification, or removal from office of any director, or otherwise, or if any new directorship is created by an increase in the authorized number of directors, a majority of the directors then in office, though less than a quorum, or a sole remaining director, may choose a successor or fill the newly created directorship; and a director so chosen shall hold office until the next election and until his or her successor shall be duly elected and shall qualify, unless sooner displaced, and (ii) any director may be removed either for or without cause at any special meeting of stockholders duly called and held for such purpose.

Section 3.04    Resignation.  Any director may resign at any time upon notice given in writing or by electronic transmission to the corporation.  A resignation from the Board of Directors shall be deemed to take effect immediately upon receipt by the corporation of such notice or at a later time, or upon the occurrence of a later event or events, as the director may specify in the notice.

Section 3.05    Regular Meetings.  A regular meeting of the Board of Directors shall be held each year, without other notice than this Section 3.05, at the place of, and immediately following, the annual meeting of stockholders; and other regular meetings of the Board of Directors may be held at such places (within or without the State of Delaware), if any, and at such

times as the Board of Directors may provide, by resolution, without other notice than such resolution.

Section 3.06    Special Meetings.  A special meeting of the Board of Directors may be called by the Chief Executive Officer of the corporation.  Further, the General Counsel and Secretary shall call a special meeting of the Board of Directors on the written request of any director.  Notice of special meetings of the Board of Directors shall be given to each director at least forty-eight (48) hours prior to the time of such meeting and shall be given in writing or by electronic transmission.  Each such notice shall state the time and place (within or without the State of Delaware), if any, of the meeting but need not state the purposes thereof, except that notice shall be given of any proposed amendment to these bylaws if it is to be adopted at any special meeting or with respect to any other matter where notice is required by statute or by these bylaws.

Section 3.07    Quorum.  One-third (1/3) of the total number of directors shall constitute a quorum for the transaction of business at any meeting of the Board of Directors, and the act of a majority of the directors present at any meeting at which there is a quorum shall be the act of the Board of Directors, except as may be otherwise specifically provided by the Delaware General Corporation Law (the "DGCL"), by the Certificate of Incorporation or by these bylaws; provided, however, that when only one (1) director is authorized, then one (1) director will constitute a quorum.  If a quorum shall not be present at any meeting of the Board of Directors, the directors present threat may adjourn the meeting from time to time, without notice other than announcement at the meeting, until a quorum shall be present.

Section 3.08    Communications.  Members of the Board of Directors, or of any committee thereof, may participate in a meeting of such board or committee by means of conference telephone or other communications equipment by means of which all persons participating in the meeting can hear each other, and participation in a meeting pursuant to this Section 3.08 shall constitute presence in person at such meeting.

Section 3.09    Action Without Meeting.  Unless otherwise restricted by the Certificate of Incorporation or these bylaws, any action required or permitted to be taken at any meeting of the Board of Directors, or of any committee thereof may be taken without a meeting, if all the members of the Board of Directors or of such committee, as the case may be, consent thereto in writing or by electronic transmission, and the writing or writings or electronic transmission or transmissions are filed with the minutes of proceedings of the Board of Directors or such committee.  Such filing shall be in paper form if the minutes are maintained in paper form and shall be in electronic form if the minutes are maintained in electronic form.

Section 3.10    Compensation.  Unless otherwise restricted by the Certificate of Incorporation or these bylaws, the Board of Directors shall have the authority to fix the compensation of directors.  In addition, the directors may be paid their expenses, if any, of attendance at each meeting of the Board of Directors.  Nothing herein shall preclude any director from serving the corporation in any other capacity and receiving compensation therefor.  Members of special or standing committees may be allowed like compensation for attending committee meetings or serving on such committees.

**ARTICLE IV**
**COMMITTEES**

Section 4.01   <u>Designation, Powers and Name</u>.  The Board of Directors may, by resolution passed by a majority of the Board of Directors, designate one or more committees, including, if they shall so determine, an Executive Committee, each such committee to consist of one or more of the directors of the corporation. The Board of Directors may, in its discretion, appoint individuals who are not directors to serve as members of any committee.  Unless prohibited by Section 141(c) of the DGCL, the committee shall have and may exercise such of the powers of the Board of Directors in the management of the business and affairs of the corporation as may be provided in such resolution.  The committee may authorize the seal of the corporation (if any) to be affixed to all papers that may require it.  The Board of Directors may designate one or more directors as alternate members of any committee, who may replace any absent or disqualified member at any meeting of such committee.  In the absence or disqualification of any member of such committee or committees, the member or members thereof present at any meeting and not disqualified from voting, whether or not he, she, or they constitute a quorum, may unanimously appoint another member of the Board of Directors to act at the meeting in the place of any such absent or disqualified member.  Such committee or committees shall have such name or names and such limitations of authority as may be determined from time to time by resolution adopted by the Board of Directors.

Section 4.02   <u>Minutes</u>.  Each committee of the Board of Directors shall keep regular minutes of its proceedings and actions and report on its proceedings and actions to the Board of Directors when required.

**ARTICLE V**
**NOTICE**

Section 5.01   <u>Methods of Giving Notice</u>.  Whenever, under the provisions of applicable statutes, the Certificate of Incorporation or these bylaws, notice is required to be given to any director, member of any committee or stockholder, it shall not be necessary that personal notice be given, and such notice may be given in writing, by mail, addressed to such director, member, or stockholder at his, her or its address as it appears on the records of the corporation or at his, her or its residence or usual place of business, with postage thereon prepaid, and such notice shall be deemed to be given at the time when the same shall be deposited with the United States Postal Service.  Notice also may be given in any other proper form, as authorized by the DGCL. Notice that is given by facsimile shall be deemed delivered when sent to a number at which any director, member or stockholder has consented to receive such notice.  Notice that is given in person or by telephone shall be deemed to be given when the same shall be delivered.  Without limiting the manner by which notice otherwise may be given effectively to any director, member or stockholder, any notice given under any provision of these bylaws shall be effective if given by a form of electronic transmission consented to by such person.  Notice given by electronic mail shall be deemed delivered when directed to an electronic mail address at which such person has consented to receive notice and notice given by a posting on an electronic network together with separate notice to such person of such specific posting shall be deemed delivered upon the later of (a) such posting and (b) the giving of such separate notice.  Notice given by any other form of

electronic transmission shall be deemed given when directed to any director, member or stockholder in the manner consented to by such director, member or stockholder.

Section 5.02    <u>Consent to Electronic Notice</u>.  Subject to the limitations set forth in Section 232(e) of the DGCL, each stockholder, by acceptance of his or her certificate for shares of capital stock of the corporation, consents to the delivery of any notice to stockholders given by the corporation under the Delaware General Corporation Law or the Certificate of Incorporation or these bylaws by (i) facsimile telecommunication to the facsimile number for the stockholder, if any, in the corporation's records, (ii) electronic mail to the electronic mail address for the stockholder, if any, in the corporation's records, (iii) posting on an electronic network together with separate notice to the stockholder of such specific posting, or (iv) any other form of electronic transmission (as defined in the Delaware General Corporation Law) directed to the stockholder. The foregoing consent may be revoked by a stockholder by written notice to the corporation and may be deemed revoked in the circumstances specified in Delaware General Corporation Law § 232.

Section 5.03    <u>Waiver</u>.  Whenever any notice is required to be given under the provisions of an applicable statute, the Certificate of Incorporation, or these bylaws, a waiver thereof in writing, signed by the person or persons entitled to said notice, or a waiver by electronic transmission by the person or persons entitled to said notice, whether before or after the time stated therein, shall be deemed equivalent thereto.  Attendance of a person at a meeting shall constitute a waiver of notice of such meeting, except when the person attends a meeting for the express purpose of objecting, at the beginning of the meeting, to the transaction of any business because the meeting is not lawfully called or convened.

## ARTICLE VI
## OFFICERS

Section 6.01    <u>Officers</u>.  The officers of the corporation (the "<u>Officers</u>") may include the following: a Chief Executive Officer, one or more Vice Presidents, a Chief Operating Officer, a Chief Financial Officer, a Treasurer, General Counsel and a Secretary, each having the respective powers and duties set forth in <u>Section 6.06</u>.  The Board of Directors may appoint such other officers and agents as the Board of Directors shall deem necessary, who shall hold their offices for such terms and shall exercise such powers and perform such duties as shall be determined by the Board of Directors.  Any two or more offices may be held by the same person. None of the officers need be a director, and none of the officers need be a stockholder of the corporation. The person appointed to serve as the Plan Administrator (as defined in the Certificate of Incorporation) shall be the sole officer of the corporation.

Section 6.02    <u>Election and Term of Office</u>.  The Officers of the corporation shall be elected annually by the Board of Directors at its first regular meeting held after the annual meeting of stockholders or as soon thereafter as conveniently possible.  Each Officer shall hold office until his or her successor shall have been elected and shall have qualified or until his or her death or the effective date of his or her resignation or removal.

Section 6.03    <u>Removal and Resignation</u>.  Any officer elected by the Board of Directors may be removed with or without cause, for any or no reason, at any time by the Board

of Directors.  Any officer may resign at any time by giving written notice to the corporation.  Any such resignation shall take effect at the date of the receipt of such notice or at any later time specified therein, and unless otherwise specified therein, the acceptance of such resignation shall not be necessary to make it effective.

Section 6.04    Vacancies.  Any vacancy occurring in any office of the corporation by death, resignation, removal, or otherwise, may be filled by the Board of Directors for the unexpired portion of the term.

Section 6.05    Salaries.    The compensation of all officers and agents of the corporation shall be fixed by the Board of Directors or pursuant to its direction; and no officer shall be prevented from receiving such salary by reason of his or her also being a director.

## ARTICLE VII
## CONTRACTS, CHECKS AND DEPOSITS

Section 7.01    Contracts.    The Board of Directors may authorize any officer, officers, agent, or agents, to enter into or execute or affix the seal of the corporation or a facsimile thereof (if any) to, any contract and deliver any instrument in the name of and on behalf of the corporation, and such authority may be general or confined to specific instances.

Section 7.02    Checks.    All checks, demands, drafts, or other orders for the payment of money, notes, or other evidences of indebtedness issued in the name of the corporation, shall be signed by such officer or officers or such agent or agents of the corporation, and in such manner, as shall be determined by the Board of Directors.

Section 7.03    Deposits.  All funds of the corporation not otherwise employed shall be deposited from time to time to the credit of the corporation in such banks, trust companies, or other depositories as the Board of Directors may select.

## ARTICLE VIII
## CERTIFICATES OF STOCK

Section 8.01    Issuance.  Each stockholder of this corporation shall be entitled to a certificate or certificates showing the number of shares of capital stock registered in his or her name on the books of the corporation.  The certificates shall be in such form as may be determined by the Board of Directors, shall be issued in numerical order and shall be entered in the books of the corporation as they are issued.  They shall include the holder's name and number of shares and shall be signed by two authorized Officers.  The same person shall be permitted to sign a single stock certificate in more than one capacity.  If any certificate is countersigned (a) by a transfer agent other than the corporation or any employee of the corporation, or (b) by a registrar other than the corporation or any employee of the corporation, any other signature on the certificate may be a facsimile.  If the corporation shall be authorized to issue more than one class of stock or more than one series of any class, the designations, preferences, and relative participating, optional, or other special rights of each class of stock or series thereof and the qualifications, limitations, or restrictions of such preferences and rights shall be set forth in full or summarized on the face or back of the certificate which the corporation shall issue to represent such class of stock; *provided* that, except as otherwise provided by statute, in lieu of the foregoing requirements there may be

set forth on the face or back of the certificate which the corporation shall issue to represent such class or series of stock, a statement that the corporation will furnish to each stockholder who so requests the designations, preferences and relative, participating, optional, or other special rights of each class of stock or series thereof and the qualifications, limitations, or restrictions of such preferences and rights.  All certificates surrendered to the corporation for transfer shall be canceled and no new certificate shall be issued until the former certificate for a like number of shares shall have been surrendered and canceled, except that in the case of a lost, stolen, destroyed, or mutilated certificate a new one may be issued therefor upon such terms and with such indemnity, if any, to the corporation as the Board of Directors may prescribe.  Certificates shall not be issued representing fractional shares of stock.

Section 8.02    Lost Certificates.  The Board of Directors may direct a new certificate or certificates to be issued in place of any certificate or certificates theretofore issued by the corporation alleged to have been lost, stolen, or destroyed, upon the making of an affidavit of that fact by the person claiming the certificate of stock to be lost, stolen or destroyed.  When authorizing such issue of a new certificate or certificates, the Board of Directors may, in its discretion and as a condition precedent to the issuance thereof, require (a) the owner of such lost, stolen, or destroyed certificate or certificates, or his or her legal representative, to advertise the same in such manner as it shall require, (b) such owner to give the corporation a bond in such sum as it may direct as indemnity against any claim that may be made against the corporation with respect to the certificate or certificates alleged to have been lost, stolen, or destroyed, or (c) both requirements set forth in (a) and (b) of this Section 8.02.

Section 8.03    Transfers.  Upon surrender to the corporation or the transfer agent of the corporation of a certificate for shares duly endorsed or accompanied by proper evidence of succession, assignment, or authority to transfer, it shall be the duty of the corporation to issue a new certificate to the person entitled thereto, cancel the old certificate, and record the transaction upon its books.  Transfers of shares shall be made only on the books of the corporation by the registered holder thereof, or by his or her attorney thereunto authorized by power of attorney and filed with the General Counsel and Secretary or the transfer agent of the corporation.

Section 8.04    Registered Stockholders.  The corporation shall be entitled to treat the holder of record of any share or shares of the corporation's capital stock as the holder in fact thereof and, accordingly, shall not be bound to recognize any equitable or other claim to or interest in such share or shares on the part of any other person, whether or not it shall have express or other notice thereof, except as otherwise provided by the laws of the State of Delaware.

**ARTICLE IX**
**DIVIDENDS**

Section 9.01    Declaration.  Subject to the provisions of the Certificate of Incorporation, if any, dividends with respect to the shares of the corporation's capital stock may be declared by the Board of Directors at any regular or special meeting, pursuant to applicable law. Dividends may be paid in cash, in property, or in shares of capital stock, subject to the provisions of the Certificate of Incorporation.

Section 9.02    <u>Reserve</u>.  Before payment of any dividend, there may be set aside out of any funds of the corporation available for dividends such sum or sums as the Board of Directors from time to time, in their absolute discretion, think proper as a reserve or reserves to meet contingencies, or for equalizing dividends, or for repairing or maintaining any property of the corporation, or for such other purpose as the Board of Directors shall think conducive to the interest of the corporation, and the Board of Directors may modify or abolish any such reserve in the manner in which it was created.

**ARTICLE X**
**INDEMNIFICATION**

Section 10.01    <u>Third Party Actions</u>.  The corporation shall indemnify any director or officer of the corporation, and may indemnify any other person, who was or is a party or is threatened to be made a party to any threatened, pending, or completed action, suit, or proceeding, whether civil, criminal, administrative or investigative (other than an action by or in the right of the corporation) by reason of the fact that he or she is or was a director, officer, employee, or agent of the corporation, or is or was serving at the request of the corporation as a director, officer, employee, or agent of another corporation, partnership, joint venture, trust, or other enterprise, against expenses (including attorneys' fees), judgments, fines, and amounts paid in settlement actually and reasonably incurred by him or her in connection with such action, suit, or proceeding if he or she acted in good faith and in a manner he or she reasonably believed to be in or not opposed to the best interests of the corporation, and, with respect to any criminal action or proceeding, had no reasonable cause to believe his or her conduct was unlawful.  The termination of any action, suit, or proceeding by judgment, order, settlement, or conviction, or upon a plea of nolo contendere or its equivalent, shall not, of itself, create a presumption that the person did not act in good faith and in a manner which he or she reasonably believed to be in or not opposed to the best interests of the corporation, and, with respect to any criminal action or proceeding, had reasonable cause to believe that his or her conduct was unlawful.

Section 10.02    <u>Actions By or In the Right of the Corporation</u>.  The corporation shall indemnify any director or officer, and may indemnify any other person, who was or is a party or is threatened to be made a party to any threatened, pending, or completed action or suit by or in the right of the corporation to procure a judgment in its favor by reason of the fact that he or she is or was a director, officer, employee, or agent of the corporation, or is or was serving at the request of the corporation as a director, officer, employee, or agent of another corporation, partnership, joint venture, trust, or other enterprise against expenses (including attorneys' fees) actually and reasonably incurred by him or her in connection with the defense or settlement of such action or suit if he or she acted in good faith and in a manner he or she reasonably believed to be in or not opposed to the best interests of the corporation and except that no indemnification shall be made in respect of any claim, issue, or matter as to which such person shall have been adjudged to be liable to the corporation unless and only to the extent that the Delaware Court of Chancery or the court in which such action or suit was brought shall determine upon application that, despite the adjudication of liability but in view of all the circumstances of the case, such person is fairly and reasonably entitled to indemnity for such expenses as the Delaware Court of Chancery or such other court shall deem proper.

Section 10.03  <u>Mandatory Indemnification</u>.  To the extent that a present or former director or officer of the corporation has been successful on the merits or otherwise in defense of any action, suit or proceeding referred to in <u>Sections 10.01</u> and <u>10.02</u>, or in defense of any claim, issue or matter therein, such person shall be indemnified against expenses (including attorneys' fees) actually and reasonably incurred by such person in connection therewith.

Section 10.04  <u>Determination of Conduct</u>.  Any indemnification under <u>Section 10.01</u> or <u>10.02</u> of this Article X (unless ordered by a court) shall be made by the corporation only as authorized in the specific case upon a determination that indemnification of the present or former director, officer, employee, or agent is proper in the circumstances because he or she has met the applicable standard of conduct set forth in <u>Section 10.01</u> or <u>10.02</u> of this Article X.  Such determination shall be made (a) by a majority vote of directors who were not parties to such action, suit or proceeding, even though less than a quorum, or (b) by a committee of such directors designated by majority vote of such directors, even though less than a quorum, or (c) if there are no such directors, or if such directors so direct, by independent legal counsel in a written opinion or (d) by the stockholders.

Section 10.05  <u>Payment of Expenses in Advance</u>.  Expenses (including attorneys' fees) incurred in defending a civil or criminal action, suit, or proceeding may be paid by the corporation in advance of the final disposition of such action, suit, or proceeding upon receipt of an undertaking by or on behalf of the director, officer, employee, or agent to repay such amount if it shall ultimately be determined that he or she is not entitled to be indemnified by the corporation as authorized in this Article X.  Such expenses (including attorneys' fees) incurred by former directors and officers or other employees and agents may be so paid upon such terms and conditions, if any, as the corporation deems appropriate.

Section 10.06  <u>Indemnity Not Exclusive</u>.  The indemnification and advancement of expenses provided or granted hereunder shall not be deemed exclusive of any other rights to which those seeking indemnification or advancement of expenses may be entitled under the Certificate of Incorporation, any other bylaw, agreement, vote of stockholders or disinterested directors, or otherwise, both as to action in his or her official capacity and as to action in another capacity while holding such office.  Definitions.  For purposes of this Article X:

(a)  "the corporation" shall include, in addition to the resulting corporation, any constituent corporation (including any constituent of a constituent) absorbed in a consolidation or merger that, if its separate existence had continued, would have had power and authority to indemnify its directors, officers, and employees or agents, so that any person who is or was a director, officer, employee or agent of such constituent corporation, or is or was serving at the request of such constituent corporation as a director, officer, employee or agent of another corporation, partnership, joint venture, trust or other enterprise, shall stand in the same position under this Article X with respect to the resulting or surviving corporation as he or she would have with respect to such constituent corporation if its separate existence had continued;

(b)  "other enterprises" shall include employee benefit plans;

(c)  "fines" shall include any excise taxes assessed on a person with respect to any employee benefit plan;

(d)     "serving at the request of the corporation" shall include any service as a director, officer, employee, or agent of the corporation that imposes duties on, or involves services by, such director, officer, employee, or agent with respect to an employee benefit plan, its participants or beneficiaries; and

(e)     a person who acted in good faith and in a manner he or she reasonably believed to be in the interest of the participants and beneficiaries of an employee benefit plan shall be deemed to have acted in a manner "not opposed to the best interests of the corporation" as referred to in this Article X.

Section 10.07  <u>Continuation of Indemnity</u>.  The indemnification and advancement of expenses provided or granted hereunder shall, unless otherwise provided when authorized or ratified, continue as to a person who has ceased to be a director, officer, employee, or agent and shall inure to the benefit of the heirs, executors, and administrators of such a person.

## ARTICLE XI
## MISCELLANEOUS

Section 11.01  <u>Seal</u>.  The corporate seal, if one is authorized by the Board of Directors, shall have inscribed thereon the name of the corporation, and the words "Corporate Seal, Delaware."  The seal may be used by causing it or a facsimile thereof to be impressed or affixed or otherwise reproduced.

Section 11.02  <u>Books</u>.  The books of the corporation may be kept (subject to any provision contained in the statutes) outside the State of Delaware at the offices of the corporation, or at such other place or places as may be designated from time to time by the Board of Directors.

Section 11.03  <u>Section Headings</u>.  The headings contained in these bylaws are for reference purposes only and shall not be construed to be part of and shall not affect in any way the meaning or interpretation of these bylaws.

Section 11.04  <u>Amendments</u>.  Unless otherwise provided by applicable law or the Certificate of Incorporation, the stockholders, by the affirmative vote of the holders of a majority of the stock issued and outstanding and having voting power may, at any annual or special meeting if notice of such alteration or amendment of these bylaws is contained in the notice of such meeting, adopt, amend, or repeal these bylaws.

* * End * *

**PRIME CORE TECHNOLOGIES INC.**
**CERTIFICATE OF SECRETARY**

**I hereby certify that:**

I am the duly elected and acting Secretary of **Prime Core Technologies Inc.**, a Delaware corporation (the "***Company***"); and

Attached hereto is a complete and accurate copy of the Second Amended and Restated Bylaws of the Company as duly adopted and said Amended and Restated Bylaws are presently in effect.

This Certificate of Secretary may be executed via facsimile, electronic mail (including pdf or any electronic signature complying with the U.S. federal ESIGN Act of 2000, Uniform Electronic Transactions Act or other applicable law) or other transmission method and will be deemed to have been duly and validly delivered and be valid and effective for all purposes. Signed on [_____], 2023.

_____

**Bob Zhao**
Secretary

**<u>EXHIBIT H-3</u>**

**Fifth Amended and Restated Articles of Organization of Prime Trust, LLC**

**FIFTH AMENDED AND RESTATED ARTICLES OF ORGANIZATION**

**ARTICLE 1**
**NAME OF LIMITED-LIABILITY COMPANY**

The name of the Company is **PRIME TRUST, LLC** (the "Company").

**ARTICLE 4**
**REGISTERED AGENT FOR SERVICE OF PROCESS**

The name of the Company's registered agent in the State of Nevada is Saltzman Mugan Dushoff, PLLC, and the street address of said registered agent where process may be served on the Company is 1835 Village Center Circle, Las Vegas, NV 89134.  The mailing address and the street address of the said registered agent are identical.

**ARTICLE 5**
**MANAGEMENT**

The Company shall be managed by Members.

**ARTICLE 6**
**NAMES AND ADDRESSES OF EACH MANAGING MEMBER**

Prime Core Technologies Inc.
10845 Griffith Peak Dr., 03-0153
Las Vegas, NV 89135, USA

*Additional Articles:*

**ARTICLE 13**
**COMPANY PURPOSE AND POWERS**

The purpose for which the Company is formed is to engage in any legal activity permitted under law.

**ARTICLE 14**
**OPERATING AGREEMENT**

The members of the Company are authorized to adopt or repeal an Operating Agreement of the Company, except as otherwise specifically provided therein.

**<u>EXHIBIT H-4</u>**

**Third Amended & Restated Operating Agreement of Prime Trust, LLC**

**THIRD AMENDED AND RESTATED OPERATING AGREEMENT**

**OF**

**PRIME TRUST, LLC,**
**A NEVADA LIMITED LIABILITY COMPANY**

THIS THIRD AMENDED AND RESTATED OPERATING AGREEMENT (the "Operating Agreement") of PRIME TRUST, LLC, a Nevada limited liability company, dated effective [_____ __], 2023, amends and restates in full that certain Second Amended and Restated Operating Agreement of the Company dated January 19, 2023 (the "Original Operating Agreement").

**RECITALS:**

**WHEREAS** on April 13, 2016, the Articles of Organization for the Company were filed in the Office of the Nevada Secretary of State, as amended and restated in full by that certain Amended and Restated Articles of Organization for the Company filed on January 19, 2017, in the Office of the Nevada Secretary of State, as amended and restated in full by that certain Second Amended and Restated Articles of Organization for the Company filed on October 1, 2021 in the Office of the Nevada Secretary of State, as amended and restated in full by that certain Third Amended and Restated Articles of Organization for the Company filed on December 7, 2021, in the Office of the Nevada Secretary of State, as amended and restated in full by that certain Fourth Amended and Restated Articles of Organization for the Company filed on May 20, 2022, in the Office of the Nevada Secretary of State, as amended and restated in full by that certain Fifth Amended and Restated Articles of Organization for the Company filed on [December __], 2023, in the Office of the Nevada Secretary of State (as otherwise further amended, collectively, the "Articles"); and

**WHEREAS**, the sole member desires to adopt and approve this Agreement in order to amend and restate in full, and supersede, the Original Operating Agreement and pursuant to Nevada law.

**I**
**Contract and Intent of the Parties**

This Agreement is adopted by the undersigned, who is currently the sole member of the Company ("Member" or "Managing Member") and is enforceable against any party hereto who violates its terms. Any and all new Members must sign this Operating Agreement as a condition precedent of membership.

The Agreement is adopted in connection with the First Amended Joint Chapter 11 Plan of Reorganization for the Company and its affiliated debtors, as amended (the "Plan") filed pursuant to Section 1121(a) of chapter 11 of title 11 of the United States Code, 11 U.S.C. §§ 101, et seq., as amended from time to time (the "Bankruptcy Code").

Except as otherwise set forth in the Plan, the Company will be classified as an association taxable as a corporation for U.S. federal income tax purposes, and neither the Company nor the Member will take any action (including the filing of any election) that would cause it to be taxable as anything other than a corporation for U.S. federal income tax purposes.

**II**
**Office**

The principal office of the Company may be designated by the Member and may be changed from time to time by the Member.  The Company may have such other offices, either within or without the state as the Members may designate or as the business of the Company may require, and as further set forth in paragraph XXIII herein.  The registered office and registered agent of the Company as required by NRS Chapter 86 to be maintained in the State of Nevada shall be Saltzman Mugan Dushoff, PLLC, at 1835 Village Center Circle, Las Vegas, Nevada 89134, and may be changed from time to time by the Member.

## III
## Purpose

The Company is authorized to engage in, and to conduct, any lawful activities.

## IV
## Allocation of Profits and Losses

During any period when the Company is treated as a disregarded entity for Federal income tax purposes, all profits and losses of the Company shall be allocated to the Member. During any period when the Company is treated as a partnership for Federal income tax purposes, the Company's profits and losses shall be allocated among the Members in proportion to the limited liability company interests in the Company held by each Member.

## V
## Capital Contributions

The identity of the initial Member and its initial capital contribution are:

| Name | Percentage Membership Interest | Capital Contribution |
|------|-------------------------------|----------------------|
| Prime Core Technologies Inc. | 100% | |

The Member is not required to make any contributions to the capital of the Company (such amounts, the "Capital Contributions"). The Member shall not have the right to demand the return of any Capital Contributions. The Member shall not be required to contribute additional capital to the Company or to provide any additional financing to the Company except to the extent required by applicable law. No interest shall be paid on any capital contributed to the Company.

## VI
## Additional Capital Contributions

Additional Members, if any, may contribute in proportionate amounts additional capital for the operation of the Company, if and to the extent such additional capital is deemed necessary or appropriate by Members holding a majority of the membership interests; *provided*, *however*, that if any Member refuses or fails to contribute his share of any or all of such additional capital, then the other Members may contribute the additional capital not paid in by such refusing or failing Member and shall receive therefor an increase in their membership interests in the Company in direct proportion to such additional capital contributed.  Unless otherwise agreed, the right to make up such additional capital contributions shall be available in the same order as the right to purchase a membership interest in the case of withdrawal of a Member, as provided in Section XVIII.

## VII
## Division of Profits and Losses

Except as set forth in the Plan, all distributions of cash or other property in respect of a Member's membership interest (collectively, "Distributions") shall be made as and when determined by the Members.

## VIII
## Rights and Duties

The Members shall have the rights and duties set forth in this Operating Agreement.

## IX
## Management

The Company is to be managed by the Members. When there is more than one Member, Company decisions and actions shall be decided by Members holding a majority of the membership interests, at a meeting duly called with notice to all Members or by the written consent of Members holding a majority of the membership interests. For purposes of determining a majority of the membership interests, a Member's membership interest is his percentage interest in the profits of the Company, and a majority means more than 50%.

The Members may hire employees and appoint officers of the Company to oversee the daily operation of the Company. Such officers shall be subject to removal by the Member at any time. The Members and any officer of the Company are authorized to execute, deliver and file, in the name of and on behalf of the Company, any and all documents, agreements, certificates, receipts, instruments, forms, letters, or similar documents and to do or cause to be done any other actions as each Member or such officer may deem necessary or desirable to further the interests of the Company, except as may be limited by the terms of this Agreement; *provided*, that the Member may authorize individuals or entities who are not officers of the Company to act as authorized signatories of the Company to execute, deliver and file, in the name of and on behalf of the Company, such documents, agreements, certificates, receipts, instruments, forms, letters, or similar documents as the Member may deem necessary or desirable.

## X
## Costs and Expenses

Except as agreed by the sole Member or by Members holding a majority of the membership interests, no Member shall be separately compensated for service performed in carrying on the business of the Company. No salary or individual compensation shall be paid to any Member without consent of all the Members, for the normal management of the Company.

## XI
### Powers; No Personal Liability

The Members are responsible for the overall supervision of the business and affairs of the Company.  A Member may sign, on behalf of the Company, deeds, mortgages, bonds, contracts or other instruments which have been appropriately authorized for execution by the Members, except where the signing is expressly delegated by the Members, or by this Operating Agreement, or by statute to some other representative of the Company.

No person who is a Member, officer or agent of the Company shall be personally liable under any judgment of a court, or in any other manner, for any debt, obligation, or liability of the Company, whether arising in contract, tort, or otherwise, solely by reason of being a Member, officer or agent of the Company.

## XII
### Duties and Restrictions

When there is more than one Member, no Member, without the consent of all Members or as expressly authorized by this Operating Agreement, may endorse any note or act as an accommodation party, or otherwise become surety for any person in any transaction involving the Company.  Without the consent of a majority of the membership interests or as otherwise provided by this Operating Agreement, no Member, when there is more than one Member, shall on behalf of the Company borrow or lend money, or make, deliver or accept any commercial paper, or execute any mortgage, security agreement, bond, or lease, or purchase or contract to purchase, or sell or contract to sell any property for or of the Company.  When there is more than one Member, no Member shall, except with the consent of a majority of the membership interests or as otherwise provided by this Operating Agreement, mortgage, grant a security interest in its membership interest or in the Company, its capital assets or property, or do any act detrimental to the best interest of the Company or which would make it impossible to carry on the business of the Company.

## XIII
### Indemnification

The Company may indemnify any Member, officer, employee or agent of the Company against expenses (including attorneys' fees), judgments, fines and amounts paid in settlement actually and reasonably incurred by him in connection with any action, suit or proceeding, if the Members determine that he acted in good faith in a manner he reasonably believed to be in the best interest of the Company. The termination of any action, suit, or proceeding by judgment, order, settlement, conviction, or on a plea of *nolo contendere* or its equivalent, will not in itself create a presumption that the person did or did not act in good faith and in a manner which he reasonably believed to be in the best interest of the Company and, with respect to any criminal action or proceeding, had or did not have reasonable cause to believe that his conduct was unlawful.

**XIV**
**Banking**

All funds of the Company shall be deposited in the Company's name in such bank accounts designated by the Members.  All withdrawals therefrom are to be made upon checks or other bank instruments signed by a Member or an authorized representative.

**XV**
**Books**

The Company's books shall be maintained at the Company's office, and each Member shall have access to them.  The books shall be kept on a calendar year basis, and shall be closed and balanced at the end of each year.  The Members shall cause all known business transactions of the Company to be entered properly and completely in said books.  The Company shall furnish copies of annual financial statements to the Members and prepare tax returns in a timely manner.

**XVI**
**Insurance**

The Company shall carry liability insurance in such amounts as are deemed appropriate by the Members.

**XVII**
**Voluntary Termination**

If the Company is dissolved, the Members shall proceed with reasonable promptness to liquidate the assets of the Company.  The assets of the Company shall be distributed in the following order:

A.      To pay or provide for the payment of Company liabilities to creditors other than Members, and liquidating expenses and obligations;

B.      To pay debts owing to Members other than for capital and profits;

C.      To pay debts owing to Members in respect of capital; and

D.      To pay debts owing to Members in respect of profits.

**XVIII**
**Withdrawal of Member by Sale or Other Transfer**

When there is more than one Member, any Member who desires to sell or otherwise transfer his membership interest shall give a right of first refusal to purchase said interest (but not less than the entire interest that the Member desires to sell or otherwise transfer) to the remaining Members at the same price and on the same terms as are being offered by a bona fide buyer or transferee.  Each Member electing to purchase has the right to purchase that percentage of the entire interest being sold obtained by dividing his respective percentage interest in the Company by the total percentage interests of all Members electing to purchase.

When there is more than one Member, the unanimous written consent of all Members is required for a Member to sell or otherwise transfer his interest to a non-Member or for an assignee of a Member to become a Member.

Upon a Member's sale or other transfer of his entire membership interest to an existing Member or to a third party who thereby becomes a Member in a manner authorized by this Operating Agreement and applicable law, the transferring Member shall thereupon cease to be a Member.

## XIX
## Death of a Member

In the event of the death of a Member, the deceased Member's heir(s) or legatee(s) shall succeed to the interest of the deceased Member.

## XX
## Distributions

Prior to dissolution and at least annually as income is received by the Company, its accounts determined and tax returns filed, the Members shall determine funds available for distribution, as well as any escrows, reserves or liquidating accounts deemed advisable by the Members.

## XXI
## Amendment of Operating Agreement

When there is more than one Member, this Operating Agreement may be altered, amended or repealed and a new operating agreement may be adopted only with the unanimous written consent of the Members.

## XXII
## Violation of this Operating Agreement

Any Member who violates any term, condition, or provision of this Operating Agreement shall indemnify and hold harmless the Company and the other Members from any and all claims, demands and actions which may arise out of or by reason of such violation.

## XXIII
## Capital Accounts

The Company shall maintain for each Member a capital account which reflects that Member's separate share, whether or not distributed, of each class or item of Company income, gain, loss, deduction, or credit for federal income tax purposes. If it is determined that a Member's allocation of income, gain, loss, deduction, or credit does not have substantial economic effect, then his distributive share of such item shall be determined in accordance with his percentage interest in the Company. Any special allocations of income, gain, loss or deduction for each Member are to be specified in an exhibit to this Operating Agreement.

## XXIV
## Foreign Qualification

The Company shall not engage in business in any jurisdiction outside the State of Nevada unless and until the Company has complied with any and all requirements to qualify the Company as a foreign limited liability company in such jurisdiction.

**XXV**
**Limitation on Authority**

When there is more than one Member, no Member has the authority or power to act for or on behalf of the Company, to do any act that would be binding on the Company, or to incur any expenditure that has not been approved by Members holding a majority of the membership interests or such greater interest required by this Operating Agreement, the Company's articles of organization, or applicable law.

IN WITNESS WHEREOF, the sole Member has executed this Operating Agreement as of the date first set forth above.

**MEMBER:**

Prime Core Technologies Inc.,
a Delaware corporation


_____

By: _____
Its: _____