## IN THE UNITED STATES BANKRUPTCY COURT
## FOR THE DISTRICT OF DELAWARE

| | |
|---|---|
| In re:<br><br>Prime Core Technologies, *et al.*,[1]<br><br>　　　　　Debtors. | Chapter 11<br><br>Case No. 23-11161 (JKS)<br><br>(Jointly Administered)<br><br>**Re: Docket No. 413** |

### RESERVATION OF RIGHTS OF THE BITTREX PLAN ADMINISTRATOR REGARDING CONFIRMATION OF THE DEBTORS' AMENDED JOINT CHAPTER 11 PLAN OF REORGANIZATION

David Maria, as plan administrator (the "Plan Administrator") in the chapter 11 cases Bittrex, Inc. ("BUS"), Desolation Holdings LLC, Bittrex Malta Holdings Ltd., and Bittrex Malta Ltd. hereby submits this reservation of rights with respect to the *Amended Joint Chapter 11 Plan of Reorganization for Prime Core Technologies Inc. and its Affiliated Debtors* [D.I. 508] (the "Plan"). In support of this Reservation of Rights, the Plan Administrator states as follows:

1.　　BUS is a Georgia corporation with its principal place of business at 701 5th Ave., Suite 4200, Seattle, WA 98104. BUS is the Wind Down Entity following the confirmation and effective date of the plan in the bankruptcy cases pending before the United States Bankruptcy Court for the District of Delaware (the "Court") and captioned *In re Desolation Holdings, et al.*, Case No. 23-10597 (BLS) (Bankr. D. Del.) (the "Bittrex Chapter 11").

2.　　Prime Trust[2] holds cash belonging to BUS in two accounts: (a) a FBO account ("FBO Account") in which are deposited approximately $800,000; and (b) a ACH reserve account

---

[1]　The "Debtors" in these chapter 11 cases, along with the last four digits of each Debtor's federal tax identification number are: Prime Core Technologies Inc. (5317); Prime Trust, LLC (6823); Prime IRA LLC (8436); and Prime Digital, LLC (4528). The Debtors' service address is 330 South Rampart Blvd., Suite 260, Las Vegas, NV 89145.

[2]　"Prime Trust" mean Prime Trust LLC.

("Reserve Account") in which are deposited approximately $1 million (collectively, the "Bittrex Funds").

3. The FBO Account is controlled by a March 2, 2023 *Self-Directed Account Agreement* with Prime Trust, which, among other things, established a custodial account, required Prime Trust to "hold as custodian all assets deposited to, or collected with respect to such Account," and stated that Prime Trust "will act solely as custodian" of the property in the account.

4. The Reserve Account is governed by a *ACH Services Attachment for Prime Trust Custodial Services* ("ACH Agreement") with Prime Trust LLC, which is attached to the *Prime Trust Master Services Agreement* between BUS and Prime Trust LLC ("MSA").  In connection with the ACH services, BUS was required to fund the Reserve Account, which Prime Trust LLC could only use to "offset any deficiency in any amount owed to Prime Trust by [BUS] or any losses that [BUS] is liable for under this [ACH Agreement]."  The ACH Agreement makes clear that BUS, and not Prime Trust, owns the funds in the Reserve Account, because it contains several provisions granting Prime Trust certain rights that could only belong to a creditor, not an owner.  For example, BUS granted Prime Trust a first priority security interest in the Reserve Account and the funds therein.  Moreover, the ACH Agreement explicitly states that "Prime Trust shall have all of the rights and remedies of a secured party under Applicable Law with respect to the Reserve Account and the funds therein …."

5. On August 14, 2023, the Debtors commenced their chapter 11 cases by filing petitions with the Court.  Since that time, the Debtors have acknowledged the existence of an

ongoing issue regarding ownership of the Bittrex Funds, which led to the inclusion of the following prohibiting language in the Court's Cash Management Order:[3]

> Notwithstanding anything to the contrary in this Order, the Debtors shall not use or transfer funds, except as otherwise required by Bankruptcy Code section 345, from Customer Accounts to honor any prepetition obligations or pay for any postpetition obligations absent further order of the Court. All parties' rights are reserved regarding whether and to what extent any funds or other property are held by a Debtor in trust or constitute property of the Debtors' estates.

6. On October 22, 2023, BUS filed a proof of claim, with reference number PC-111217, specifying that based on the terms of the parties' agreements, BUS believes it owns the funds being held by Prime Trust, but filing the proof of claim out of an abundance of caution.

7. The Debtors' Plan specifies in section 2.5 that it is not resolving any issues regarding the ownership of fiat currency or cryptocurrencies, and that the Debtors or the Wind-Down Debtors will not use or transfer any funds subject to a customer agreement absent an order of the Court:

> 2.5 *Non-Estate Assets/Account Treatment Issues.*
> Any Assets of a Debtor that are determined by such Debtor or by the Bankruptcy Court not to be property of such Debtor's Estate (the "Non-Estate Assets") shall be (i) transferred, if necessary, to the Wind-Down Debtor; and/or (ii) returned to the owner or owners of such Non-Estate Assets in kind in accordance with Article 7 of the Plan, subject to set-off for (a) any negative Account balances, including for any ACH chargeback transactions and (b) any applicable withdrawal fees. For the avoidance of doubt, subject to the outcome of a final determination by the Debtors, the Wind-Down Debtors or the Bankruptcy Court, as applicable, (w) any such Assets shall not be included as part of the Cash Allocation or the Cryptocurrency Allocation, (x) any General Unsecured Claim against a Debtor shall be net of Non-Estate Assets actually received by the Holder of

---

[3] "Cash Management Order" refers to the *Final Order (I) Authorizing Debtors to (A) Continue to Operate Their Cash Management System, and (B) Maintain Existing Bank Accounts and Business Forms and Honor Certain Prepetition Obligations Related Thereto; (II) Authorizing the Debtors to (A) Continue to Perform Intercompany Transactions and (B) Granting Administrative Expense Status for Postpetition Intercompany Claims; (III) Extending the Time for the Debtors to Comply with Requirements Set Forth in 11 U.S.C. §345(b); and (IV) Granting Related Relief* [D.I. 170].

> such General Unsecured Claim, (y) in no circumstance shall any such Non-Estate Assets be transferred to or become property of the Reorganized Debtors or the Wind-Down Debtor, and (z) distributions pursuant to the terms of the Plan, including distributions made in accordance with Article 7.6 of the Plan, shall only be from Assets, or proceeds of Assets, determined to be property of such Debtor's Estate. For the avoidance of doubt, nothing set forth in the Plan, including in this Article 2.5, or the Disclosure Statement, is intended to indicate that the Debtors or the Wind-Down Debtor, as applicable, have made a determination or taken a position with respect to whether any Accounts or the fiat or Cryptocurrencies therein, are property of their respective Estates (collectively, the "Account Treatment Issues"). ***Pending a determination of the Account Treatment Issues by the Bankruptcy Court, the Debtors or the Wind-Down Debtors, as applicable, will not use or transfer the funds subject to a Customer Agreement absent an order of the Bankruptcy Court.***

Emphasis added.

8. The *Disclosure Statement Pursuant to Section 1125 of the Bankruptcy Code with Respect to the Joint Chapter 11 Plan of Reorganization for Prime Core Technologies Inc. and its Affiliated Debtors* [D.I. 259] ("Disclosure Statement") contains nearly identical language:

> **4. Non-Estate Asset/Account Treatment Issues.**
>
> Any Non-Estate Asset shall be (i) transferred, if necessary, to the Wind-Down Debtor; and (ii) returned to the owner or owners of such Non-Estate Assets in kind in accordance with Article 7 of the Plan, subject to set-off for (a) any negative Account balances, including for any ACH chargeback transactions and (b) any applicable withdrawal fees. For the avoidance of doubt, subject to the outcome of a final determination by the Debtors or the Bankruptcy Court, as applicable, (w) any such Assets shall not be included as part of the Cash Allocation or the Cryptocurrency Allocation, (x) any General Unsecured Claim against a Debtor shall be net of NonEstate Assets actually received by the Holder of such General Unsecured Claim, (y) in no circumstance shall any such Assets be transferred to or become property of the Reorganized Debtors, and (z) distributions pursuant to the terms of the Plan, including distributions made in accordance with Article 7.6 of the Plan, shall only be from Assets, or proceeds of Assets, determined to be property of such Debtor's Estate. For the avoidance of doubt, nothing set forth in the Plan, including in Article 2.4 of the Plan, or the Disclosure Statement, is intended to indicate that the Debtors have made a determination or taken a position with respect to the Account Treatment Issues. ***Pending a determination of the Account Treatment Issues, the***

4

> ***Debtors will not use or transfer the funds subject to a Customer Agreement absent an order of the Bankruptcy Court.***

Emphasis added.

9. The Disclosure Statement even reiterates that the issue of ownership of fiat currencies deposited by customers is not being resolved by the Plan:

> **2. Key Legal Issues Affecting Distributions.**
>
> **(a) Customer Deposits**
>
> As noted above, one of the key legal issues that must be resolved to determine the amount of distributions available to the Holders of Claims is whether customer-deposited Cryptocurrency and fiat currency are property of the estate. A debtor's filing for bankruptcy brings into existence the bankruptcy estate under section 541(a)(1) of the Bankruptcy Code. The bankruptcy estate is, with limited exceptions "comprised of the debtor's property as of the commencement of the case." 11 U.S.C. § 541(a).
>
> Despite this general rule, section 541 contains numerous exceptions. Among the listed exceptions is section 541(b)(1), which excludes from property of the estate any power that the debtor may exercise solely for the benefit of another. Similarly, section 541(d) provides that the estate does not include "any power that the debtor may exercise solely for the benefit of an entity other than the debtor," including the power to distribute assets of a trust.
>
> These issues come to light when certain companies hold cryptocurrency and fiat assets for third parties. If the third party that stored its cryptocurrency assets with a debtor transferred ownership (i.e., a beneficial interests) of such assets to the debtor, then the cryptocurrency constitute property of the debtor's estate. The result is the debtor can use those assets to, among other things, fund distributions to creditors. If, however, the debtor merely holds cryptocurrency in trust for the third party (i.e., the debtor only has legal, but not equitable title, to the cryptocurrency), then cryptocurrency belongs to the third party.
>
> The Debtors are investigating two key issues that are instructive on this question: whether (i) certain agreements with Customers may have formed a debtor–creditor relationship (as opposed to a trust relationship) and (ii) Customer funds have been commingled. The overall result of this analysis will determine the amount of property the Debtors have available to distribute to Holders of Claims and Interests. ***Pending a determination as to whether customer fiat or Cryptocurrency constitute property of the***

> *Estate, the Debtors will not use or transfer the funds subject to a Customer Agreement absent an order of the Bankruptcy Court.*

Emphasis added.

10. Based on the above-cited provisions in the Plan and Disclosure Statement, the Debtors are not attempting to determine the ownership of the Bittrex Funds via the Plan. Moreover, the above-cited provisions make clear that the Debtors or Wind-Down Debtors will not use any of the Bittrex Funds absent an order of the Court. Based on these provisions, the Plan Administrator does not object to confirmation of the Plan, but reserves all rights to object in the event that the Debtors amend the Plan and/or Disclosure Statement to remove or substantially alter these provisions.

| | |
|---|---|
| Date: December 5, 2023<br>Wilmington, DE | **YOUNG CONAWAY STARGATT & TAYLOR, LLP**<br><br>*/s/ Kenneth Enos*<br>Kenneth Enos (Delaware Bar No. 4544)<br>Robert S. Brady (Delaware Bar No. 2847)<br>Rodney Square<br>1000 North King Street<br>Wilmington, Delaware 19801<br>Telephone: 302-571-6600<br>Facsimile: 302-571-1253<br>Email: kenos@ycst.com<br>Email: rbrady@ycst.com<br><br>-and-<br><br>**QUINN EMANUEL URQUHART & SULLIVAN, LLP**<br>Susheel Kirpalani *(admitted pro hac vice)*<br>Patricia B. Tomasco *(admitted pro hac vice)*<br>Daniel Holzman *(admitted pro hac vice)*<br>Alain Jaquet *(admitted pro hac vice)*<br>Razmig Izakelian *(admitted pro hac vice)*<br>Joanna D. Caytas *(admitted pro hac vice)*<br>51 Madison Avenue, 22nd Floor<br>New York, New York 10010<br>Telephone: 212-849-7000 |

Facsimile: 212-849-7100
Email: susheelkirpalani@quinnemanuel.com
Email: pattytomasco@quinnemanuel.com
Email: danielholzman@quinnemanuel.com
Email: alainjaquet@quinnemanuel.com
Email: razmigizakelian@quinnemanuel.com
Email: joannacaytas@quinnemanuel.com

**COUNSEL FOR THE PLAN ADMINISTRATOR**