# **EXHIBIT C**

**Ashe Declaration**

**IN THE UNITED STATES BANKRUPTCY COURT**
**FOR THE DISTRICT OF DELAWARE**

| | |
|---|---|
| In re: | Chapter 11 |
| Prime Core Technologies Inc., *et al.*,[1] | Case No. 23-11161 (JKS) |
| Debtors. | (Jointly Administered) |

**DECLARATION OF MICHAEL ASHE IN SUPPORT OF DEBTORS' MOTION FOR ENTRY OF AN ORDER (I) AUTHORIZING THE DEBTORS TO OBTAIN SECURED PRIMING POSTPETITION FINANCING, (II) GRANTING LIENSAND SUPERPRIORITY ADMINISTRATIVE EXPENSE CLAIMS, (III) AUTHORIZING THE USE OF CASH COLLATERAL, (IV) MODIFYING THE AUTOMATIC STAY, AND (V) GRANTING RELATED RELIEF**

I, Michael Ashe, hereby declare under penalty of perjury that the following is true to the best of my knowledge, information, and belief:

1. I am the Head of Investment Banking at Galaxy Digital Partners LLC ("Galaxy"), an investment bank firm, with offices at 300 Vesey Street, New York, NY 10282. Galaxy provides full-service independent investment banking services within the crypto and digital asset space utilizing extensive experience in both the crypto industries and more traditional finance. Galaxy was engaged by the Debtors in August 2023 to provide investment banking services.

2. I have served as the Head of Investment Banking at Galaxy since 2020. Prior to joining Galaxy, I worked at Oppenheimer & Co. for six years and helped lead emerging and industrial technology investment banking there. Before joining Oppenheimer, I spent seven years working in divisions of CitiGroup, including within Equity Capital Markets, Structured Finance, and Strategy & Planning.

---

[1] The debtors in these chapter 11 cases, along with the last four digits of each debtor's federal tax identification number are: Prime Core Technologies Inc. (5317); Prime Trust, LLC (6823); Prime IRA LLC (8436); and Prime Digital, LLC (4528). The Debtors' service address is 10845 Griffith Peak Dr., #03-153, Las Vegas, NV 89135.

3. I submit this Declaration in support of the *Debtors' Motion for Entry of an Order (I) Authorizing the Debtors to Obtain Secured Priming Postpetition Financing, (II) Granting Liens and Superpriority Administrative Expense Claims, (III) Authorizing the Use of Cash Collateral, (IV) Modifying the Automatic Stay, and (V) Granting Related Relief* filed contemporaneously herewith (the "DIP Motion").[2]

4. Except as otherwise indicated, all statements set forth in this Declaration are based on my personal knowledge, my discussions with the Debtors' senior management, other members of the Galaxy team, and the Debtors' other advisors, and my review of relevant documents or my opinion based upon my experience. If called upon to testify, I would testify competently to the facts set forth herein.

5. Since the Petition Date, and in connection with the Debtors' postpetition marketing and sale process, Galaxy has (a) contacted various market participants, financial investors, strategic investors, and lenders, to assess potential market interest in the Debtors and their Assets, and (b) fielded inbound interest in the Debtors and their assets from interested parties. In total, Galaxy contacted more than 470 parties, and entered into Confidentiality Agreements with over twenty parties. Galaxy has also populated a data room and provided additional information to such parties. In connection with this process, Galaxy proposed various options to interested parties, including, among others, (i) sales of some or all of the Debtors' Assets, (ii) the sale of all of the Debtors' equity, and (iii) alternative financing options either from potential bidders to provide bridge financing to a sale closing or to potential lenders to provide DIP financing.

---

[2] All capitalized terms used but not immediately defined shall have the meanings ascribed to them in the DIP Motion.

6.      Obtaining postpetition financing in these cases proved to be particularly challenging given the undetermined nature of the assets in the Debtors' possession. It is my understanding that reaching a final court determination with respect to whether certain assets in the Debtors' possession are property of the estates is time consuming and very costly. Without a clear understanding as to what assets constitute property of the Debtors' estates, however, parties were reluctant to agree to provide financing because it was unclear what assets could be used as collateral to protect the lender's interests. Accordingly, any postpetition lender would be undertaking significant risk or agreeing to provide financing on an unsecured basis.

7.      The only party that proposed a feasible postpetition financing option with an ability to close was Polaris. I do not believe that there are alternative sources of financing reasonably available given the circumstances and the Debtors' unsuccessful solicitation of alternative financing proposals. The Debtors have searched for actionable alternative proposals and, in this regard, the market has spoken. There are no better options in the market.

8.      The proposed DIP Facility will provide the Debtors with the necessary liquidity to, among other things, (a) preserve estate assets, (b) investigate potential claims and causes of action and otherwise pursue the recovery of estate assets, and (c) prosecute confirmation of their chapter 11 plan. I believe the DIP Facility is appropriate and reasonable, is the only viable source of postpetition financing reasonably attainable under the circumstances, and is in the best interests of the Debtors and is necessary to avoid irreparable harm to the Debtors and their estates.

Pursuant to 28 U.S.C. § 1746, I declare under penalty of perjury that the foregoing is true and correct to the best of my knowledge, information, and belief.

Dated: December 5, 2023

/s/ Michael Ashe
By: Michael Ashe
Title: Head of Investment Banking
Galaxy Digital Partners, LLC