**IN THE UNITED STATES BANKRUPTCY COURT**
**FOR THE DISTRICT OF DELAWARE**

| | |
|---|---|
| In re:<br><br>PRIME CORE TECHNOLOGIES, INC, *et al.*[1],<br><br>Debtors. | Chapter 11<br><br>Case No. 23-11161 (JKS)<br><br>(Jointly Administered)<br><br>Re: D.I. 92, 508, 521<br><br>Hearing Date: Dec. 19, 2023 at 10:00 a.m. ET<br><br>Objection Deadline: Dec. 12, 2023 at Noon ET for U.S. Trustee |

**UNITED STATES TRUSTEE'S OBJECTION TO THE AMENDED JOINT CHAPTER 11 PLAN OF REORGANIZATION FOR PRIME CORE TECHNOLOGIES INC. AND ITS AFFILIATED DEBTORS**

Andrew R. Vara, the United States Trustee for Regions 3 and 9 ("U. S. Trustee"), through his counsel, files this objection (the "Objection") to the Amended Joint Chapter 11 Plan of Reorganization for Prime Core Technologies Inc. and its Affiliated Debtors (the "Plan") and in support of his Objection, states:

[1]The debtors in these chapter 11 cases, along with the last four digits of each debtor's federal tax identification number are: Prime Core Technologies Inc. (5317); Prime Trust, LLC (6823); Prime IRA LLC (8436); and Prime Digital, LLC (4528). The Debtors' service address is 330 South Rampart Blvd., Suite 260, Las Vegas, NV 89145

**PRELIMINARY STATEMENT**

1. The U.S. Trustee objects to confirmation of the Plan (defined below) because it includes an exculpation provision which purports to cover non-fiduciary employees of the Debtors, third party non-estate fiduciaries, and post-effective date entities.

2. The U.S. Trustee also objects to the recently-proposed expansion of the Debtor Release[2] to include the Released Employees because (a) the costs of these releases to the estates have not been quantified such that parties in interest may fully evaluate them, (b) the reasons set forth for the releases do not pass muster under applicable law, and (c) the expansion represents a material change to the Plan such that parties in interest should receive more than one week notice before the deadline to object.

3. For these reasons, as set forth below, confirmation of the Plan should be denied.

**JURISDICTION, VENUE, AND STANDING**

4. This Court has jurisdiction over the above-captioned cases pursuant to 28 U.S.C. § 1334. Venue of the cases is proper in this District pursuant to 28 U.S.C. § 1408(1).

5. Pursuant to 28 U.S.C. § 586, the U. S. Trustee is charged with the administrative oversight of cases commenced pursuant to chapter 11 of title 11 of the United States Code (the "Bankruptcy Code"). This duty is part of the U. S. Trustee's overarching responsibility to enforce the bankruptcy laws as written by Congress and interpreted by the courts. *See United States Trustee v. Columbia Gas Sys., Inc. (In re Columbia Gas Sys., Inc.)*, 33 F.3d 294, 295-96 (3d Cir. 1994) (noting that UST has "public interest standing" under 11 U.S.C. § 307, which goes

[2] Capitalized terms used herein shall have the meaning ascribed to them in the Plan, unless defined otherwise in this Objection.

beyond mere pecuniary interest); *Morgenstern v. Revco D.S., Inc. (In re Revco D.S., Inc.)*, 898 F.2d 498, 500 (6th Cir. 1990) (describing the U. S. Trustee as a "watchdog").

6. Pursuant to 28 U.S.C. § 586(a)(3)(B), the U.S. Trustee has the duty to monitor plans and disclosure statements filed in Chapter 11 cases and to comment on such plans and disclosure statements.

7. Pursuant to 11 U.S.C. § 307, the U. S. Trustee has standing to be heard with regard to Plan confirmation and this Objection.

**FACTUAL BACKGROUND**

8. The above-captioned Debtors filed voluntary petitions for relief under chapter 11 of the Bankruptcy Code in this Court on August 14, 2023 (the "Petition Date").

9. On August 29, 2023, the U.S. Trustee appointed an official committee of unsecured creditors.

10. On September 8, 2023, the Debtors filed their *Joint Chapter 11 Plan of Reorganization* [D.I. 92].

11. On September 8, 2023, the Debtors filed their *Disclosure Statement Pursuant to Section 1125 of the Bankruptcy Code with Respect to the Joint Chapter 11 Plan of Reorganization* [D.I. 92]

12. On September 9, 2023, the Debtors filed the *Motion for Entry of an Order (I) Approving the Disclosure Statement on an Interim Basis for Solicitation Purposes Only; (II) Establishing Procedures for Solicitation and Tabulation of Votes to Accept or Reject the Plan; (III) Approving the Form of Ballot and Solicitation Packages; (IV) Establishing the Voting Record Date; (V) Scheduling a Combined Hearing for Final Approval of the Adequacy of Information in*

*the Disclosure Statement and Confirmation of the Plan; and (VI) Granting Related Relief* [D.I. 94] (the "Disclosure Statement Motion").

13. On October 2, 2023, the Debtors filed their *Revised Joint Chapter 11 Plan of Reorganization* [D.I. 235].

14. On October 6, 2023, the Court entered an order approving the Disclosure Statement Motion on an interim basis [D.I. 264] (the "Disclosure Statement Order").

15. On October 31, 2023, the Court entered an order amending the Disclosure Statement Order [D.I. 362].

16. On November 28, 2023, the Debtors filed their *Amended Joint Chapter 11 Plan of Reorganization for Prime Core Technologies Inc. and its Affiliated Debtors* [D.I. 485]

17. Also on November 28, 2023, the Debtors filed the *Disclosure Statement Supplement* [D.I. 487].

18. On December 4, 2023, the Debtors filed their *Amended Joint Chapter 11 Plan of Reorganization* [D.I. 508].

19. On December 5, 2023, the Debtors filed a further *Amended Joint Plan of Reorganization* [D.I. 521] (the "Plan").

**The Plan**

20. In the Plan, the definition of "Exculpated Parties" reads as follows:

> 1.74. "Exculpated Parties" means, collectively, and in each case in its capacity as such: (a) each of the Debtors; **(b) the Reorganized Debtors; (c) the Wind-Down Debtor**; (d) the Special Committee, and each of the current and former members thereof, solely in their capacity as such; (e) the Creditors' Committee, and each of the members thereof, solely in their capacity as such; (f) each of the Released Professionals; (g) the Current Officers; **(h) the Released Employees**; (i) Cooley LLP; and (j) **J.S. Held LLC**.

Plan at Art. 1.74 (emphasis added). In the Plan, the definition of "Released Employees" reads as follows:

> 1.146. "Released Employees" means the Current Employees, solely to the extent listed in the Plan Supplement, which list shall be filed under seal, consistent with the Privacy Protection Order. **For the avoidance of doubt, the Former Directors and Officers, the Current Officers, the Former Employees, and the Non-Released D&O are not Released Employees**.

*Id*. at 1.146. (emphasis added)[3] In the Plan, the definition of "Current Employees" reads as follows:

> 1.47. "Current Employees" means those Persons employed by the Debtors as of November 15, 2023 through the Effective Date. For the avoidance of doubt, (a) the Former Directors and Officers, the Current Officers, the Former Employees, and the Non-Released D&O are not Current Employees and (b) the Current Employees were not offered or promised releases or any other compensation or consideration in exchange for being Current Employees.

*Id*. at 1.47. In the Plan, the definition of Released Preference Claims reads as follows:

> 1.148. "Released Preference Claims" means all Preference Claims against any Customer whose allowed, scheduled, or stipulated Class 3B Claim (without giving effect to 11 U.S.C. § 502(d)) is in an amount that equals at least 10% of the total amount withdrawn by such Customer during the 90-day period prior to the Petition Date, unless the Customer: (a) is a current or former insider of any Debtor, or a relative of any such insider; (b) is a current or former employee or independent contractor of any Debtor, or a relative of any such employee or independent contractor; (c) is an entity of which any officer, director, manager or advisor is or was an insider of any Debtor; (d) is an officer, director, manager, or employee of an entity falling within the immediately preceding clause (c); (e) received manual permission to facilitate withdrawals from the Debtors when withdrawals were otherwise halted; (f) withdrew an amount greater than $500,000.00 on or after June 21, 2023; or (g) is listed in the Plan Supplement (such Persons or Entities subject to the immediately preceding clause (g), the "Non-Released Customer Claims"). For the avoidance of doubt, and consistent with Article 6.9 of the Plan, (x) Preference Claims against the Released Employees shall constitute Released Preference Claims, and (y)

[3] The definition of Released Employees states that "the Former Directors and Officers, the Current Officers, the Former Employees and the Non-Released D&O are not Released Employees.". The identities of the Released Employees have not been publicly disclosed; the list was filed under seal. [D.I. 540].

> Preference Claims against Current Employees for ordinary wages and compensation shall constitute Released Preference Claims.

*Id*. at 1.148. In the Plan, the definition of Non-Released D&O Claims is as follows:

> Any Claims or Causes of Action held by the Debtors or their respective estates against the Debtors' Directors and Officers (other than any Claims or Causes of Action against the Special Committee), including any Claims or Causes of Action, including, without limitation, any 98f Wallet Causes of Action and any Claims and Causes of Action related to or arising from the Debtors' redemption of equity prior to the Petition Date, are not released pursuant to the Plan (collectively, the "Non-Released D&O Claims").

*Id*. at 6.9(a). The Exculpation provision reads as follows:

> 10.6 Exculpation.
>
> Effective as of the Effective Date, to the fullest extent permissible under applicable law and without affecting or limiting either the Debtor release or the third party release, and except as otherwise specifically provided in the Plan, no Exculpated Party shall have or incur, and each Exculpated Party is exculpated from any Cause of Action for any act or omission arising on or after the Petition Date and prior to the Effective Date based on the Chapter 11 Cases, the formulation, preparation, dissemination, negotiation or filing, or consummation of the Disclosure Statement, the Bid Procedures Order, the Plan, any Definitive Document, any Plan Document, any Reorganization Transaction Document, any Sale Transaction Document, any Liquidation Transaction Document, any Restructuring Transactions, dollarization of Cryptocurrency, any contract, instrument, release, or other agreement or document created or entered into in connection with the Disclosure Statement, the Plan or any Restructuring Transactions, the filing of the Chapter 11 Cases, the pursuit of Confirmation, the pursuit of Consummation of the Plan, the administration of the Chapter 11 Cases, the administration and implementation of the Plan, including the issuance of Securities pursuant to the Plan, or the distribution of property under the Plan or any other related agreement (including, for the avoidance of doubt, providing any legal opinion requested by any Entity regarding any transaction, contract, instrument, document, or other agreement contemplated by the Plan or the reliance by any Exculpated Party on the Plan or the Confirmation Order in lieu of such legal opinion), except for Causes of Action related to any act or omission that is determined in a Final Order of a court of competent jurisdiction to have constituted actual fraud, willful misconduct, malpractice, or gross negligence, but in all respects such Entities shall be entitled to reasonably rely upon the

> advice of counsel with respect to their duties and responsibilities pursuant to the Plan.

*Id.* at 10.6.

**The Disclosure Statement Supplement**

Article II C of the Disclosure Statement Supplement states:

> i. Summary of Revised Releases
>
> The October 5th Plan outlined the extent, if any, of the releases (the "October 5th Releases") to be provided to certain current and former directors and officers under the October 5th Plan. The Amended Plan includes revisions to the Releases (the "Revised Releases," and together with the October 5th Releases, the "Releases") with respect to the small subset of employees and officers who agreed to remain employed (or who have agreed to provide services as a contractor) through the Effective Date of the Plan following the departure of the majority of the Debtors' employees on November 14, 2023 (collectively, the "Released Employees"). The Released Employees are critical to the successful winding up of the Debtors' business arms, the preservation of critical data (some, as required by applicable law), and the general preservation of, and transfer to, the Plan Administrator and Creditors' Litigation Trustee, of the Debtors' books and records, which is critical to their post-Effective Date efforts. Importantly, the Revised Releases are narrowly tailored and limited in scope. In other words, the Revised Releases do not grant full releases to the Released Employees.
>
> *Summary of Changes to Releases vis-à-vis Released Employees*
>
> In sum, the only changes to the Releases for the Released Employees in the Amended Plan versus the October 5th Plan is that the Released Employees will receive: (i) a release of all preference exposure (expanded from a release for ordinary wage and compensation payments), and (ii) recoveries on account of all Non-Released D&O Claims will be solely from available insurance proceeds (expanded beyond just 98f Wallet Causes of Action).

Supp. Disc. Stmt. Art. II.C.

## ARGUMENT

### A. Exculpated Parties Must be Limited to Estate Fiduciaries

21. The Plan definition of Exculpated Parties is inconsistent with controlling case law in two ways:

a. It includes the Reorganized Debtors and the Wind-Down Debtor, which are entities that only exist after a confirmed plan's effective date, and

b. the Released Employees and J.S. Held LLC are not all estate fiduciaries.

22. The Third Circuit in *In re PWS Holding Corporation*, 228 F.3d 224 (3d Cir. 2000) articulated the standard of liability to which estate fiduciaries are held in a chapter 11 case in a plan. *See id*. at 246. This Court has consistently interpreted *PWS Holding Corporation* and uniformly held that a party's entitlement to exculpation is based upon its role or status as an estate fiduciary. S*ee In re Washington Mutual, Inc*., 442 B.R. 314, 350-51 (Bankr. D. Del. 2011) (holding that an "exculpation clause must be limited to the **fiduciaries *who have served during the chapter 11 proceeding*: estate professionals, the Committees and their members, and the Debtors' directors and officers**.") (emphasis added); *accord In re Tribune Compan*y, 464 B.R. 126, 189 (Bankr. D. Del. 2011); *In re Indianapolis Downs, LLC*., 486 B.R. 286, 306 (Bankr. D. Del. 2013); *In re PTL Holdings LLC*, No. 11-12676 (BLS), 2011 WL 5509031, at *38 (Bankr. D. Del. Nov. 10, 2011) (Shannon, J.) ("courts have permitted exculpation clauses insofar as they merely state[] the standard to which ... estate fiduciaries [a]re held in a chapter 11 case. That fiduciary standard, however, applies only to estate fiduciaries, no one else.") (internal quotations omitted). Estate fiduciaries are typically estate professionals, the Committees and their members, and the Debtors' directors and officers. *Wash. Mut.,* 442 B.R. at 350-51.

23. Here, the Released Employees, as defined in the Plan and relevant documents, are not limited to the Debtors' directors and officers, and J.S. Held LLC is not a retained professional in these cases.

24. Because exculpation is limited to estate fiduciaries who served in the bankruptcy case and that only exist by virtue of the bankruptcy case, exculpation must also be limited to actions and omissions taking place during the bankruptcy case. *See Wash. Mut.*, 442 B.R. at 350 (exculpations cover "actions in the bankruptcy case") (citing *PWS*, 228 F.3d at 246).

25. In considering the U.S. Trustee's objection to the temporal scope of the exculpation clause in *In re Mallinckrodt PLC*, 639 B.R. 837 (Bank. D. Del. 2022), the Court recently held that exculpation "only extends to conduct that occurs between the Petition Date and the effective date," and ordered the debtors to strike contrary language from the exculpation provision. *Id.* at 883.

26. Here, the Reorganized Debtors and the Wind-Down Debtor will not come into existence until after the effective date of the Plan. Therefore, pursuant to applicable law they should not be exculpated parties.

27. For these reasons, unless the definition of Exculpated Parties is narrowed consistent with *PWS*, Plan confirmation should be denied.

**B. Recent Changes to the Release Provisions Make the Plan Unconfirmable**

28. On November 28, 2023, the Debtors filed an Amended Plan and a Supplemental Disclosure Statement. [D.I. 485, 487]. The Amended Plan contained significant changes to the debtor releases, primarily the addition of rank-and-file employees to parties receiving partial releases through the addition of the Released Employees provision.

29. The Plan now proposes to release Released Employees for any preference exposure and limit any recovery for Non-Released D&O Claims[4] to proceeds from available insurance policies. Plan § 6.9.

30. Reasons put forth for the Revised Releases is that the recipients agreed to stay on past November 14, 2023, and "are critical to the successful winding up of the Debtors' business arms, the preservation of critical data (some, as required by applicable law), and the general preservation of, and transfer to, the Plan Administrator and Creditors' Litigation Trustee, of the Debtors' books and records, which is critical to their post-Effective Date efforts." Supp. Disc. Stmt. § II. C. i.

31. Pursuant to this Court's decision in *Tribune* (464 B.R. 126 (Bankr. D. Del. 2011)) and *Washington Mutual* (442 B.R. 314 (Bankr. D. Del. 2011)), among others, the five factors set forth in *In re Zenith Electronics Corp.,* 241 B.R. 92, 110 (Bankr. D. Del 1999) and *In re Master Mortgage Inv. Fund, Inc*., 168 B.R. 930, 937-38 (Bankr. W. D. Mo. 1994) should be considered to determine whether, notwithstanding § 524(e) of the Code, a plan may provide for releases by debtors of non-debtor entities. See *Tribune* 464 B.R. at 186; *Wash. Mut*., 442 B.R. at 346; *In re Spansion*, *Inc.,* 426 B.R. at 142-43, n. 47; *In re Coram Healthcare Corp.,* 315 B.R. 321, 335 (Bankr. D. Del. 2004). Those factors are as follows:

> a. identity of interests between debtor and non-debtor releasee, so that a suit against the non-debtor will deplete the estate's resources (e.g., due to a debtor's indemnification of a non-debtor);
>
> b. substantial contribution to the plan by non-debtor;
>
> c necessity of release to the reorganization;
>
> d. overwhelming acceptance of plan and release by creditors; and

---

[4] Since the definition of Non-Released D&O Claims only refers to claims against the Debtors' Directors and Officers, and the definition of Released Employees specifically excludes those parties, it is unclear exactly what claims are being released.

e. payment of all or substantially all of the claims of the creditors and interest holders under the plan.

*Tribune* 464 B.R. at 186 (citing *Wash. Mut.*, 442 B.R. at 346 (citing *Zenith*, 241 B.R. at 110)). "The factors are neither exclusive nor conjunctive requirements, but simply provide guidance in the Court's determination of fairness." *Tribune* 464 B.R. at 186 (citing *Washington Mutual*, 442 B.R. at 346).

32. The Debtors have the burden to establish whether the *Zenith/Master Mortgage* factors have been met as to each of the Released Employees who are the beneficiaries of the Revised Releases. The Debtors are releasing the Released Employees from personal financial responsibility for claims, whether known or unknown. If, for example, it is later learned that Released Employee of one the Debtors misappropriated Debtor funds at any time up to the Effective Date, it appears that any personal financial liability for that claim based on such misappropriation would be released under the Plan.[5] Such immunity is not permitted under the holding of the Third Circuit in *PWS Holding Corp.,* 228 F.3d 224 (3d Cir. 2000). If in fact some Released Employees are estate fiduciaries, as recognized by this Court in *Washington Mutual*, parties who are fiduciaries of the estates are proposed to be exculpated, and therefore receipt by such parties of releases is "unnecessary, duplicative and exceed the limits of what they are entitled to receive" pursuant to the Plan's exculpation provision. *Washington Mut.,* 442 B.R. at 350 (emphasis added).

33. Similarly, in *In re Tribune Company, 464 B.R. 126* (Bankr. D. Del. 2011)*,* this Court rejected the proposed release by the debtors of their Related Persons, which included all the debtors' "current and former officers, directors, **employees**, attorneys, advisors and

[5] Since Released Employees are not Released Parties, presumably the carve outs for actual fraud, willful misconduct, or gross negligence contained in the Releases by the Debtors would not apply to Released Employees.

professionals." 464 B.R. at 187 (emphasis added). Applying the *Zenith/Master Mortgage* factors, the Court held: "There is no basis in the record to support any finding that any "substantial contribution" has been made by the Debtors' Related Persons or that a release is necessary to the reorganization. Despite acceptance by a majority of creditors, I cannot conclude that the Plan's release of the Debtors' Related Persons, based on this record, would be fair." *Id*. at 188. In *Genesis Health*, the Court also rejected the debtors' releases of their officers, directors, **employees** and professionals, holding that:

> [T]he release of the debtors' pre-petition claims against the officers, directors, employees and professionals of the debtors is beyond the ***post-petition focus*** of the *PWS Holding Corporation* [228 F.3d 224 (3d Cir. 2000)] release clause. . . . As in *Zenith*, the officers and directors of the debtors no doubt made meaningful contribution to the reorganization by designing and implementing the operational restructuring of the companies, and negotiating the financial restructuring with parties in interest. **However, the officers, directors and employees have been otherwise compensated for their contributions, and the management functions they performed do not constitute contributions of "assets" to the reorganization.**

*Genesis Health,* 266 B.R. at 606–07 (emphasis added).

34. Here, the reason given for the addition of the Released Employees provision, they "agreed to remain employed (or who have agreed to provide services as a contractor) through the Effective Date of the Plan following the departure of the majority of the Debtors' employees on November 14, 2023 . . ." amounts to a retention bonus; they get the release for remaining employed through confirmation. It is unclear what, if any, "substantial contribution," (as that term is used in *Tribune*) is being made by the Released Employees to justify the Revised Releases. The case law clearly establishes that merely staying employed is insufficient consideration to support an estate release.

**C. The Revised Releases Are Not Accompanied by Adequate Information**

35. A decision on whether accept or reject a proposed plan must be on the basis of adequate information. *First American Bank of New York (FAB) v. Century Glove, Inc.,* 81 B.R. 274, 278 (D. Del. 1988). This "means information of a kind, and in sufficient detail, as far as is reasonably practicable in light of the nature and history of the debtor and the condition of the debtor's books and records, that would enable a hypothetical reasonable investor typical of holders of claims or interests of the relevant class to make an informed judgment about the plan…." *Id*. at 279 (quoting 11 U.S.C. 1125(a)(2)(C).

36. If a plan is modified post-balloting in a way that "materially and adversely changes the way that claim or interest holder is treated," they are entitled to a new disclosure statement and another vote. *In re New Power Co*., 438 F.3d 1113, 1117-18 (11th Cir. 2006).

37. The effect on the *res* of the estate from the addition of the Released Employees provision has not been quantified. The number and identity of the Released Employees was not filed with the Court until December 9, 2023, under seal. [D.I. 540]. Until disclosures are made in regards to the Revised Releases' effect on the estates, and parties in interest have had time to review such disclosures, the Plan should not be confirmed.

**CONCLUSION**

WHEREFORE, the U.S. Trustee respectfully requests that the Court, consistent with this Objection, deny confirmation of the Plan.

Dated: December 12, 2023
Wilmington, Delaware

Respectfully submitted,

**ANDREW R. VARA**
**UNITED STATES TRUSTEE**

By: /s/ *Joseph F. Cudia*

Joseph F. Cudia
Trial Attorney
United States Department of Justice
Office of the United States Trustee
J. Caleb Boggs Federal Building
844 King Street, Suite 2207, Lockbox35
Wilmington, Delaware 19801
Phone: (302) 573-6492
Fax: (302) 573-6497
Email: joseph.cudia@usdoj.gov