**IN THE UNITED STATES BANKRUPTCY COURT
FOR THE DISTRICT OF DELAWARE**

| | |
|---|---|
| In re: | Chapter 11 |
| Prime Core Technologies Inc., *et al.*,[1] | Case No. 23-11161 (JKS) |
| Debtors. | (Jointly Administered) |
| | **Re: Docket Nos. 259, 521 & 557** |

**DECLARATION OF MICHAEL WYSE IN SUPPORT OF (I) APPROVAL OF THE DISCLOSURE STATEMENT ON A FINAL BASIS AND (II) CONFIRMATION OF THE AMENDED JOINT CHAPTER 11 PLAN OF REORGANIZATION FOR PRIME CORE TECHNOLOGIES INC. AND ITS AFFILIATED DEBTORS**

I, Michael Wyse, hereby declare under penalty of perjury:

1. I submit this declaration (this "Declaration") in support of (a) approval of the *Disclosure Statement Pursuant to Section 1125 of the Bankruptcy Code With Respect to the Joint Chapter 11 Plan of Reorganization for Prime Core Technologies Inc. and Its Affiliated Debtors* [Docket No. 259] (as amended, modified, or supplemented and including all exhibits and supplements thereto, the "Disclosure Statement") on a final basis and (b) confirmation of the *Amended Joint Chapter 11 Plan of Reorganization for Prime Core Technologies Inc. and Its Affiliated Debtors* [Docket No. 521-1] (as modified, amended, or supplemented from time to time, the "Plan").[2]

2. The statements in this Declaration are, except where specifically noted, based on (a) my personal knowledge of the Debtors' operations and finances based on information provided

---

[1] The debtors in these chapter 11 cases, along with the last four digits of each debtor's federal tax identification number are: Prime Core Technologies Inc. (5317); Prime Trust, LLC (6823); Prime IRA LLC (8436); and Prime Digital, LLC (4528). The Debtors' service address is 10845 Griffith Peak Dr., #03-153, Las Vegas, Nevada 89135.

[2] Capitalized terms used but not otherwise defined herein shall have the meanings ascribed to them in the Plan or the Disclosure Statement, as applicable.

by the Debtors, (b) my review of relevant documents, including information provided by other parties, (c) information provided to me through discussions with the members of the Debtors' management team or their other advisors, and/or (d) my opinion based upon my experience.

3. Since 2015, I have been a managing partner of Wyse Advisors LLC ("Wyse Advisors"), a financial services firm focused on delivering distressed restructuring solutions. Including my time at Wyse Advisors, I have over twenty years of leadership experience across numerous industries, including in the financial services and technology sectors. I have served in various capacities in situations involving distressed companies; I have acted as an advisor, chief restructuring officer, C-level manager, independent director, investment banker, and liquidator to many financially challenged companies. I hold a combined BBA/MBA with a concentration in Accounting from St. Bonaventure University, and I am a Certified Insolvency and Restructuring Advisor.

4. Since August 10, 2023, I have served as a member of the special restructuring committee of the Debtors (the "Special Committee"), which, among other things, has sole decision-making authority with respect to these chapter 11 cases.

5. I have reviewed and am generally familiar with the terms and provisions of the Disclosure Statement and the Plan. With the Debtors' bankruptcy counsel, I was personally involved in the development and negotiation of the Disclosure Statement and Plan. The Plan is the result of good faith, arm's-length negotiations among the Debtors and key stakeholders, including the Creditors' Committee.

6. On October 6, 2023, the Court entered the *Order (I) Approving the Disclosure Statement on an Interim Basis for Solicitation Purposes Only; (II) Establishing Procedures for Solicitation and Tabulation of Votes to Accept or Reject the Plan; (III) Approving the Form of*

*Ballot and Solicitation Packages; (IV) Establishing the Voting Record Date; (V) Scheduling a Combined Hearing for Final Approval of the Adequacy of Information in the Disclosure Statement and Confirmation of the Plan; and (VI) Granting Related Relief* [Docket No. 264] (the "Conditional Approval Order"). To the best of my knowledge, with the assistance of Stretto, Inc., the Debtors have complied with the solicitation and noticing procedures approved through the Conditional Approval Order, as well as the applicable provisions of the Bankruptcy Code and the Bankruptcy Rules, as evidenced by the certificate of service filed by Stretto [Docket Nos. 268, 424, 459].

**II.     THE PLAN COMPLIES WITH THE FOLLOWING CONFIRMATION STANDARDS SET FORTH IN THE BANKRUPTCY CODE**

7. I believe the Plan complies with the following provisions of the Bankruptcy Code:

**B.     The Plan Complies with the Applicable Provisions of the Bankruptcy Code (Section 1129(a)(1))**

8. I believe the Plan satisfies section 1129(a)(1) of the Bankruptcy Code as that provision has been described to me by the Debtors' professionals.

9. Sections 1122 and 1123(a)(1) of the Bankruptcy Code: I understand that sections 1122 and 1123(a)(1) of the Bankruptcy Code govern the manner in which a debtor may classify claims and interests. I believe that the Plan's classification of Claims and Interests satisfies the requirements of section 1122 of the Bankruptcy Code because the Plan places Claims and Interests into twelve separate Classes of Claims and Interests. Each Class contains only Claims or Interests that are substantially similar to each other.

10. I believe that valid business, legal, and factual reasons justify the separate classification of the particular Claims or Interests into the Classes created under the Plan, and no unfair discrimination exists between or among Holders of Claims and Interests. In particular, I understand that general unsecured claims are broken into four classes, Prime Core General

Unsecured Claims, Prime Trust General Unsecured Claims, Prime Digital General Unsecured Claims, and Prime IRA General Unsecured Claims Unsecured Claims to comport with certain requirements of the Bankruptcy Code and to account for the fact that Holders of such claims have legal recourse against only specific Debtors.[3]  Moreover, similar Claims and Interests have not been placed into different Classes in order to affect the outcome of the vote on the Plan.

11. <u>Section 1123(a)(2) of the Bankruptcy Code</u>:  I understand that Article 4 of the Plan identifies each Class that is unimpaired.

12. <u>Section 1123(a)(3) of the Bankruptcy Code</u>:  I understand that Article 4 of the Plan identifies each Class that is impaired and describes the treatment thereof.

13. <u>Section 1123(a)(4) of the Bankruptcy Code</u>:  I understand that section 1123(a)(4) of the Bankruptcy Code requires that the Plan provide the same rights and treatment to each holder of claims or interests as other holders of allowed claims or interests within such holders' respective class.  I believe that the Plan satisfies this requirement, as all Holders of Allowed Claims or Interests will receive the same rights and treatment as other Holders of Allowed Claims or Interests within such Holders' respective Class. In particular, all Account Holder Claims will be "dollarized" as of the Petition Date, and the Holders thereof will receive recoveries proportional to the "dollarized" value of their account holdings relative to the aggregate dollarized value of all customer accounts or payment-in-kind.

---

[3]  I understand that the Plan provides that "[a]ny Class of Claims or Interests that, as of the commencement of the Confirmation Hearing, does not have at least one Holder of a Claim or Interest that is Allowed in an amount greater than zero for voting purposes shall be considered vacant, deemed eliminated from the Plan for purposes of voting to accept or reject the Plan, and disregarded for purposes of determining whether the Plan satisfies section 1129(a)(8) of the Bankruptcy Code with respect to that Class." Plan, Art. 5.4.  Thus, as there were no votes cast in Class 3C, the Debtors disregarded it for purposes of tabulation and under section 1129(a)(8) of the Bankruptcy Code.

14. <u>Section 1123(a)(5) of the Bankruptcy Code</u>: I understand that section 1123(a)(5) of the Bankruptcy Code requires that a chapter 11 plan provide adequate means for a plan's implementation. I believe that the Plan provides adequate means for implementation as required under section 1123(a)(5) of the Bankruptcy Code. Among other things, Article 6 of the Plan:

(1) the general settlement of Claims and Interests;

(2) the sources of consideration required for distributions to be made under the Plan on the Effective Date;

(3) the execution and delivery of the Plan Administrator Agreement and the appointment of the Plan Administrator;

(4) the vesting of assets in the Wind-Down Debtor;

(5) the execution and delivery of the PCT Litigation Trust Agreement and the creation of the PCT Litigation Trust;

(6) the cancellation of certain existing securities and other documents evidencing or creating any indebtedness or obligation or ownership in the Debtors, and the release and discharge of all obligations thereunder or in any way related thereto (subject to certain exceptions as set forth in the Plan);

(7) the continued existence of the Debtors as separate entities;

(8) the amendment of the governing documents of the Debtors as required to be consistent with the provisions of the Plan and the Bankruptcy Code;

(9) the actions necessary to effectuate or implement certain contracts, securities, instruments, releases, indentures, and other agreements or documents;

(10) the funding of the Professional Fee Escrow Account;

(11) the funding of the Wind-Down Debtor Reserve;

(12) the preservation of Vested Causes of Action;

(13) exemption from certain transfer taxes and recording fees; and

(14) all other actions that the applicable Entities determine to be necessary or appropriate, including making filings or recordings that may be required by applicable law in connection with the Plan.

On the Effective Date, the Wind-Down Debtor Assets shall, subject to the Plan Administrator Agreement, be transferred to and vest in the Wind-Down Debtor. The Wind-Down Debtor will be charged with winding down the Debtors' estates and will be the successor-in-interest to the Debtors, and a successor to the Debtors' rights, title and interest to the Wind-Down Debtor Assets. The Wind-Down Debtor will be managed by the Plan Administrator and will be subject to a Wind-Down Debtor Oversight Committee.

15. <u>Section 1123(a)(6) of the Bankruptcy Code</u>: I understand that section 1123(a)(6) of the Bankruptcy Code requires that a debtor's organizational documents prohibit the issuance of nonvoting equity securities. The Debtors are winding down, and there will not be any issuance of nonvoting equity securities or preferred stock. Accordingly, I believe section 1123(a)(6) of the Bankruptcy Code is inapplicable to the Plan.

16. <u>Section 1123(a)(7) of the Bankruptcy Code</u>: I understand that section 1123(a)(7) of the Bankruptcy Code requires that any provisions in the Plan with respect to the manner of selection of any director, officer, or trustee be consistent with the interests of creditors, equity holders, and public policy. I believe that the Plan satisfies this requirement by providing that, on the Effective Date, the authority, power, and incumbency of the persons acting as directors and officers of the Debtors will be deemed to have resigned, solely in their capacities as such, and the Plan Administrator will be appointed by the Debtors as the sole director and the sole officer of the Wind-Down Debtor and will succeed to the powers of the Debtors' directors and officers. The Debtors filed the Plan Administrator Agreement with the Plan Supplement, which provides the identity of the Plan Administrator and Wind-Down Oversight Committee.

C.  **Discretionary Contents of the Plan (Section 1123(b))**

17. I understand that section 1123(b) of the Bankruptcy Code provides for various discretionary provisions that may be incorporated into a chapter 11 plan. I believe that the Plan is consistent with section 1123(b) of the Bankruptcy Code for the following reasons.

18. <u>Section 1123(b)(2) of the Bankruptcy Code</u>:  I understand that section 1123(a)(2) of the Bankruptcy Code require that a debtor's chapter 11 plan provide for the assumption or rejection of executory contracts or unexpired leases not previously rejected. Article 9 of the Plan provides that all executory contracts and unexpired leases of the Debtors will be deemed rejected by the Debtors as of the Effective Date, except for those that previously have been, or will be, assumed and assigned pursuant to an order of this Court. The Debtors have no need for the vast majority of their contracts and leases, which will continue to incur expenses for the Wind-Down Estates if not rejected. Accordingly, I believe that the Plan complies with section 1123(b)(2) of the Bankruptcy Code.

19. <u>Section 1123(b)(6) of the Bankruptcy Code</u>: Article 10 of the Plan contains certain release, exculpation and injunction provisions. I believe that these provisions are, among other things, the product of good faith, arm's-length negotiations, in exchange for substantial consideration from various parties, including the Released Parties, and critical to obtaining the support of various constituencies for the Plan and the funding of the Plan.

20. I understand that the Plan provides for consensual releases of the Debtors' claims and causes of action against the Released Parties (the "<u>Releases by the Debtors</u>"). The Releases by the Debtors are intended to release the Released Parties from any and all claims and Causes of Action arising before the Effective Date of the Plan. However, there are several important exceptions.  For example, the Debtors are not proposing to release any Claim or Cause of Action included in the Schedule of Vested Causes of Action.  Further, under the Plan, with certain limited

7

exceptions pertaining to Preference Claims against the Current Directors, Current Officers, and the Released Employees, I understand that none of the Former Directors and Officers, Current Directors, Current Officers, or the Non-Released D&O are receiving a release through the Debtor Release, and all such Claims and Causes of Action are preserved under the plan. However, recoveries on account of Non-Released D&O Claims against certain employees will be limited to the Debtors' available proceeds under their insurance policies. I believe that the Releases by the Debtors are a vital component of the Plan and are a sound exercise of the Debtors' business judgement and should be approved for each of the following reasons:

21. *First*, each Released Party, as a stakeholder and critical participant in the Plan process, shares a common goal with the Debtors in seeing the Plan succeed.

22. *Second*, the Released Parties played integral roles in the development of the Plan and have expended significant time and resources resolving the complex issues in these Chapter 11 Cases to enable the Debtors to maximize recoveries to creditors as quickly as possible. Without the Releases by the Debtors, I believe that the Debtors and their stakeholders would not have been able to secure the substantial benefits provided by the Plan in the timeframe in which the Debtors propose to exit bankruptcy.

23. In addition to the Released Parties, the Debtor Release also contemplates a release of both: (a) certain Preference Claims against certain of the Debtors' Customers, and (b) Preference Claims against the Released Employees, consisting of a very limited subset of employees employed by the Debtors as of November 14, 2023 through the Effective Date of the Plan, which I believe are grounded in the significant contributions, concessions, and compromises made by the Released Parties and the Released Employees in the process of formulated and supporting the Plan.

24. I understand that the Debtor Release includes release of Preference Claims against certain of the Debtors Customers whose Allowed, scheduled, or stipulated Class 3B Claim (without giving effect to section 502(d) of the Bankruptcy Code) is in an amount that equals at least 10% of the total amount withdrawn by such Customer during the 90-day period prior to the Petition Date (the "Preference Amnesty Program"). The Preference Amnesty Program is designed to release from potential Preference Claims those Customers that Debtors have determined had no advanced notice of the issues that precipitated the imposition of the cease and desist order by the Nevada Department of Business and Industry Division of Financial Institutions. I believe that doing so therefore provides closure and comfort to those Customers, who have consistently expressed concern over being the target of preference actions and for whom these Chapter 11 Cases have been particularly challenging. I understand that these releases are not "third party releases" because they are held by the Debtors. Furthermore, the Treatment of the Released Preference Claims will not result in disparate treatment because the exempted creditors had no expectation that they would receive such a waiver and, therefore, there is no impact on the treatment of claims from the original plan relative to claims from the current plan.

25. With respect to the Released Employees, each of the employees in question was hand-selected by the Special Committee and has provided valuable services to the Debtors throughout the Chapter 11 Cases following the reduction in force that went into effect on November 14, 2023. I believe that without their efforts—which they provided without an expectation of any expanded release of Preference Claims or expanded recovery limitations—I believe these Chapter 11 Cases would have almost certainly converted. That result would have created a chaotic situation for any chapter 7 trustee appointed. Furthermore, I understand that the Released Employees are not receiving broad releases through the Debtor Release – they are

receiving a release of Preference Claims, which, based on the Debtors' Statement of Financial Affairs, are of little to no value to the Debtors' Estates. Expanding the limitation of recoveries to insurance proceeds for the Released Employees to cover all Non-Released D&O Claims (beyond 98f Wallet Causes of Action), is appropriate and warranted under the facts and circumstances of these Chapter 11 Cases. Ensuring these employees receive some benefit and level of comfort for their efforts is both (a) crucial to consummation of the Plan and the Liquidation Transaction and (b) supported by the Committee.

26. I believe the Debtor Release is necessary, appropriate, and critical to the Plan as a whole and is a product of valid and appropriate settlements of Claims and Causes of Action reached after extensive arm's-length negotiations among the Debtors and the Committee. Further, absent the releases described herein, the Plan may not have garnered the necessary support of the requisite parties, making it impossible for the Debtors to have moved through these Chapter 11 Cases.

27. Additionally, I believe the Debtor Release is limited in scope and exceedingly narrow. Unlike the typical formulation in other chapter 11 plans—e.g., releases for countless unidentified persons and entities affiliated with a debtor and other stakeholders—the scope of Released Parties is a finite universe of identifiable parties: (a) the Debtors; (b) the Wind-Down Debtor; (c) the Special Committee; (d) the Committee and its current and former members; (e) Professionals of the Debtors' Estates; and (f) the DIP Lender. Further, I understand that the releases do not extend to claims arising out of or relating to any act or omission of a Released Party that constitute willful misconduct, actual fraud or gross negligence, which is customary. Additionally, the Debtor Release does not release direct claims held by third parties against any Released Party—such claims are preserved to the extent stakeholders object to, or opt out of, the Third-Party Release.

28. Moreover, in consideration for the Debtor Releases, the Debtors and their Estates will receive mutual releases from potential Claims and Causes of Action of each of the Released Parties. I believe that the Debtor Release reflects the important and substantial contributions, concessions, and compromises made by the Released Parties and the Released Employees in the process of formulating and supporting the Plan.

29. Further, I understand that the Voting Parties overwhelmingly voted in favor of the Plan, including the Debtor Release. I believe that this further reinforces and affirms the Debtors' determination that the Debtors Release is in the best interests of the Debtors' Estates.

30. For these reasons, I believe that the Releases of the Debtors are justified, are a sound exercise of the Debtors' business judgment, are in the best interest of creditors and all stakeholders, are an integral part of the Plan, and satisfy key factors that I understand are considered by courts in determining whether a debtor release is proper.

31. Article 10.6 of the Plan contains an exculpation provision (the "Exculpation"), which exculpates only certain estate fiduciaries. The Exculpation exculpates the Exculpated Parties from claims arising out of or related to, among other things, the administration of these Chapter 11 Cases; the postpetition marketing and sale process; the creation of the Wind-Down Debtor and PCT Litigation Trust; the negotiation, formulation, and preparation of the Plan and Disclosure Statement; and the transactions contemplated under the Plan.

32. I believe that the Exculpation is appropriate under both the applicable law and the facts of these Chapter 11 Cases because it is intended to protect estate and non-estate professionals for acts taken in connection with the Debtors' restructuring efforts, and does not extend to fraud, gross negligence and willful misconduct.

33. Therefore, I believe that the Exculpation Provisions set forth in Article 10.6 of the Plan should be approved.

34. Article 10.7 of the Plan implements the Plan's release and exculpation provisions, in part, by permanently enjoining all entities from, with respect to any Claims or Interests, (a) commencing or maintaining any action; (b) enforcing, attaching, collecting, or recovering any judgment; (c) creating, perfecting, or enforcing any encumbrance; (d) asserting any right of setoff, subrogation, or recoupment, unless such Holder has filed a motion requesting the right to perform such setoff; or (e) acting or proceeding in any manner that does not conform to or comply with the Plan (the "Injunction"). I believe that the Injunction is a key provision of the Plan because it enforces the Debtor Release, the Third-Party Release, and the Exculpation that are centrally important to the Plan.

### D. The Debtors Will Cure Monetary Defaults of Any Assumed Contracts and Unexpired Leases (Section 1123(d))

35. I understand that section 1123(d) of the Bankruptcy Code requires that cure amounts be determined in accordance with the underlying agreement and nonbankruptcy law.

36. I believe that the Plan complies with section 1123(d) of the Bankruptcy Code. The Plan provides for the satisfaction of cure costs under each Executory Contract and Unexpired Lease to be assumed under the Plan on the Effective Date, subject to the limitations described in Article 9 of the Plan, and that the Wind-Down Debtor shall pay any Cure Amounts on the Effective Date.

### E. The Debtors Complied with the Solicitation Requirements of the Bankruptcy Code (Section 1129(a)(2))

37. I understand that section 1129(a)(2) of the Bankruptcy Code requires that plan proponents comply with the applicable provisions of the Bankruptcy Code and, in that regard, is specifically intended to ensure compliance with the disclosure and solicitation requirements set

12

forth in sections 1125 and 1126 of the Bankruptcy Code. Based on my review of information provided by the Debtors and their advisors, along with the Voting Affidavit, I believe that the Debtors have complied with sections 1125 and 1126 of the Bankruptcy Code.

### F. The Plan Has Been Proposed in Good Faith (Section 1129(a)(3))

38. The Plan has been proposed by the Debtors in good faith. Throughout these cases, the Debtors have focused on maximizing value for their various stakeholders. The Disclosure Statement, the Plan, Plan Supplement, and all documents necessary to effect the Plan were developed after months of analysis and negotiations between the Debtors and other key constituents and were proposed with the legitimate and honest purpose of maximizing the value of the Debtors' estates and effectuating a successful and speedy wind-down of the Debtors' operations. Moreover, the Plan is the product of arm's-length negotiations among the Debtors and their key creditor constituencies, including the Committee.

### G. The Plan Provides for the Payment of Professional Fees and Expenses in Compliance with Section 1129(a)(4) of the Bankruptcy Code

39. I understand that section 1129(a)(4) of the Bankruptcy Code requires a court to approve certain fees and expenses that either a plan proponent, debtor, or person receiving property distributions under the plan has paid as reasonable. I can confirm that Professional Fee Claims and corresponding payments are subject to prior Court approval and the reasonableness requirements under sections 328 or 330 of the Bankruptcy Code. Article 2.2(b) of the Plan, moreover, provides that Professionals shall file all final requests for payment of Professional Fee Claims no later than 60 days after the Effective Date, thereby providing an adequate period of time for interested parties to review such Professional Fee Claims.

**H.    The Plan Identifies Individuals Proposed to Serve as Successor to the Debtor (Section 1129(a)(5))**

40.     As part of the Plan Supplement, the Debtors have disclosed the identities of the Plan Administrator, the Wind-Down Debtor Oversight Committee, the PCT Litigation Trustee, and the PCT Litigation Trust Oversight Committee. Such appointments will allow the Debtors to wind down under applicable law in an orderly fashion, make distributions to creditors and is consistent with the interests of creditors and interest holders and with public policy.

**I.    The Plan is in the "Best Interests" of Creditors and Interest Holders (Section 1129(a)(7))**

41.     I am advised and believe the Plan satisfies the "best interests test" under section 1129(a)(7) of the Bankruptcy Code because confirmation of the Plan will provide each Holder of Allowed Claims with an equal or greater recovery than the value of any distributions if the Chapter 11 Cases were converted to cases under chapter 7 of the Bankruptcy Code.[4]

**J.    The Plan is Confirmable Notwithstanding Section 1129(a)(8)**

42.     I understand that the Bankruptcy Code generally requires that each class of claims or interests must either accept the plan or be unimpaired under the plan. I further understand that if any class of claims or interests rejects the plan, the plan must satisfy the "cramdown" requirements with respect to the claims or interests in that class.

43.     I understand that Holders of Claims in Classes 3A, 3B, 3D, and 4 voted to accept the Plan. I understand that because certain Classes are deemed to reject the Plan, the Debtors do not satisfy section 1129(a)(8) of the Bankruptcy Code. Nevertheless, I believe that the Debtors still satisfy section 1129(b) of the Bankruptcy Code as at least one Impaired Class voted to accept the

---

[4] Further discussion of the Plan's satisfaction of the best interests test provided in the *Declaration of William Murphy in Support of Confirmation of the Amended Joint Chapter 11 Plan of Reorganization for Prime Core Technologies Inc. and Its Affiliated Debtors*, filed contemporaneously herewith.

Plan, and because the Plan does not discriminate unfairly and is fair and equitable with respect to the rejecting Classes.

### K.    The Plan Provides for Payment of Priority Claims (Section 1129(a)(9))

44.    I understand that the bankruptcy code generally requires that claims entitled to administrative priority must be repaid in full in cash on the effective date or receive certain other specified treatment that the Holder of such claim has agreed to.  I understand that the Plan provides that each Holder of an Allowed Administrative Claim will receive Cash equal to the amount of such Allowed Administrative Claim on the later of the Effective Date and the date on which such Claim becomes an Allowed Claim (or as soon as reasonably practicable thereafter).  Further, no Holders of the Claims specified in section 1129(a)(9)(B) of the Bankruptcy Code are Impaired under the Plan.  Finally, Article 2.3 of the Plan specifically provides that Holders of Allowed Priority Tax Claims shall be treated in a manner consistent with the Bankruptcy Code. Accordingly, I believe that the Plan fully complies with and satisfies all of the requirements of section 1129(a)(9) of the Bankruptcy Code.

### L.    Classes of Impaired Claim Holders Have Voted to Accept the Plan (Section 1129(a)(10))

45.    I understand that the Bankruptcy Code provides that, to the extent there is an impaired class of claims, at least one impaired class of claims must accept the plan "without including any acceptance of the plan by any insider," as an alternative to the requirement under section 1129(a)(8) of the Bankruptcy Code that each class of claims or interests must either accept the plan or be unimpaired under the plan.  I understand that the following Impaired Classes of Claims entitled to vote on the Plan—Classes 3A, 3B, 3D, and 4—voted to accept the Plan, independent of any insiders' votes.

**M.  The Plan Satisfies the Feasibility Requirement of the Bankruptcy Code (Section 1129(a)(11))**

46. I understand that section 1129(a)(11) of the Bankruptcy Code requires a court to determine that a chapter 11 plan is feasible, and that confirmation of such plan is not likely to be followed by the liquidation or further financial reorganization of the Debtors (or any successors thereto) unless such liquidation or reorganization is proposed in the Plan. The Plan provides for a wind-down of the Debtors and distributions in accordance with the priorities set forth in the Bankruptcy Code, and there will be no need for a further liquidation.

**N.  The Plan Provides for the Payments of All Fees Under Section 1129(a)(12) of the Bankruptcy Code**

47. I understand that section 1129(a)(12) of the Bankruptcy Code requires the payment of all fees payable under 28 U.S.C. § 1930. Section 2.6 of the Plan provides that the Debtors, Wind-Down Debtor, and Plan Administrator, as applicable, shall pay all fees and charges due and payable pursuant to 28 U.S.C. § 1930.

**O.  Sections 1129(a)(13)–(16) of the Bankruptcy Code are Not Applicable to the Plan**

48. The Debtors (a) do not have any retiree benefits as that term is defined in section 1114(a) of the Bankruptcy Code; (b) are not required to pay any domestic support obligations; (c) are not individuals; and (d) are not nonprofit corporations or trusts. Accordingly, sections 1129(13)–(16) of the Bankruptcy Code are inapplicable to the Plan.

**P.  The Plan Complies with the Other Provisions of Section 1129 of the Bankruptcy Code**

  **i.  The Cram Down Provisions are Appropriate (Section 1129(b))**

49. I understand that if all applicable requirements of section 1129(a) of the Bankruptcy Code are satisfied, other than section 1129(a)(8), a plan may still be confirmed so long as the requirements set forth in section 1129(b) of the Bankruptcy Code are satisfied. I believe that the

Debtors satisfied all applicable requirements of section 1129(b) of the Bankruptcy Code as Impaired Classes 3, 4B, and 4C voted to accept the Plan, thus permitting the Debtors to "cram down" the Plan pursuant to section 1129(b) of the Bankruptcy Code on any Class deemed to reject the Plan.

### ii. The Debtors Seek to Confirm Only One Plan

50. I understand that section 1129(c) of the Bankruptcy Code prohibits the confirmation of multiple plans. That provision does not apply here because there is only one proposed plan of reorganization.

### iii. The Principal Purpose of the Plan Is Not the Avoidance of Taxes as Required Under Section 1129(d) of the Bankruptcy Code

51. The Plan was not filed for the purpose of avoidance of taxes or the application of section 5 of the Securities Act of 1933, as amended. Rather, the Debtors filed the Plan to accomplish their objective of efficiently and responsibly effectuating distributions to creditors in the face of unprecedented circumstances in a developing market and consummating the most value-maximizing transaction available. Moreover, I understand that no party that is a governmental unit, or any other entity, requested that the Court decline to confirm the Plan on the grounds that the principal purpose of the Plan is the avoidance of taxes or the avoidance of the application of section 5 of the Securities Act of 1933. Accordingly, I believe that the Debtors satisfied the requirements of section 1129(d) of the Bankruptcy Code.

### iv. Section 1129(e) of the Bankruptcy Code Is Inapplicable

52. Lastly, I understand that section 1129(e) of the Bankruptcy Code does not apply to the Plan because none of the Debtors' chapter 11 cases is a "small business case" within the meaning of the Bankruptcy Code.

## III. GOOD CAUSE EXISTS TO WAIVE THE STAY OF THE CONFIRMATION ORDER

53. I understand that certain Bankruptcy Rules provide for the stay of an order confirming a chapter 11 plan, but that such a stay may be waived upon court order after a showing of good cause.

54. Given that each day the Debtors remain in chapter 11 they incur significant administrative and professional costs, the Debtors may take certain steps to effectuate the Plan in anticipation of and to facilitate the occurrence of the Effective Date so that the Effective Date can occur as soon as needed. Additionally, given the nature of these Chapter 11 Cases, the volatility of the cryptocurrency market, and the fact that substantially all objections to the Plan have been resolved, I believe that good cause exists to waive any stay imposed by the Bankruptcy Rules so that the proposed Confirmation Order may be effective immediately upon its entry.

## IV. RE-SOLICITATION OF THE PLAN IS NOT REQUIRED

55. I understand that the Debtors will be filing a revised version of the Plan reflecting some modifications, including changes to address certain objections.

56. I have been advised that if modifications of a plan do not disrupt or reduce distributions and do not adversely affect the rights of holders of claims in classes that voted to accept the plan, debtors do not need to re-solicit the plan.

57. The modified Plan makes certain non-material modifications, including fixing typographical errors, revising certain definitions, and including additional information on various released claims.

58. The modifications proposed in the revised Plan do not disrupt or reduce the amount of distribution to any Class. Further, I do not believe that any of the changes made to the Plan adversely affect the holders of Claims in impaired voting Classes.

## V. ADVERSE CONSEQUENCES OF NON-CONFIRMATION OF THE PLAN

59. If the Plan is not confirmed in the near term, I believe it is unlikely that the Debtors would be able to provide the same recoveries to their creditors as are currently contemplated by the Plan. Non-confirmation would guarantee the continued incurrence of substantial restructuring costs relating to the pendency of these cases or the conversion of the Debtors' chapter 11 cases to cases under chapter 7 of the Bankruptcy Code. I believe the Plan is in the best interests of the Debtors, their estates and creditors. Accordingly, I believe it is imperative that the Plan be confirmed and that the Debtors emerge from chapter 11 as quickly as possible.

Pursuant to 28 U.S.C. § 1746, I declare under penalty of perjury that the foregoing statements are true and correct to the best of my knowledge and belief.

| | |
|---|---|
| New York, New York<br>December 12, 2023 | /s/ *Michael Wyse*<br>Michael Wyse<br>Member of the Special Committee of the Debtors and Debtors in Possession, solely in his capacity as such |