**IN THE UNITED STATES BANKRUPTCY COURT
FOR THE DISTRICT OF DELAWARE**

| | |
|---|---|
| In re: | Chapter 11 |
| Prime Core Technologies Inc., *et al.*,[1] | Case No. 23-11161 (JKS) |
| Debtors. | (Jointly Administered) |
| | **Related to Docket Nos. 94, 259, 362, 497, 521, & 557** |

**DECLARATION OF WILLIAM MURPHY IN SUPPORT OF CONFIRMATION OF
THE AMENDED JOINT CHAPTER 11 PLAN OF REORGANIZATION FOR
PRIME CORE TECHNOLOGIES INC. AND ITS AFFILIATED DEBTORS**

I, William Murphy, hereby declare under penalty of perjury:

1. I am a Senior Director at M3 Advisory Partners, LP ("M3 Advisory"), financial advisor for the above-captioned debtors and debtors in possession (collectively, the "Debtors") in connection their chapter 11 cases (collectively, the "Chapter 11 Cases"). I have over forty (40) years of professional advisory experience, including more than thirty (30) years specializing in corporate restructurings. Over the course of my career, I have held a wide range of positions across companies of all sizes, including serving as chief financial officer, chief restructuring officer, and other positions responsible for overseeing company operations.

2. I am over the age of 18 and authorized to submit this declaration (this "Declaration") in support of confirmation of the *Amended Joint Chapter 11 Plan of Reorganization for Prime Core Technologies Inc. and its Affiliated Debtors* [Docket No. 521-1] (as may be

---

[1] The debtors in these chapter 11 cases, along with the last four digits of each debtor's federal tax identification number are: Prime Core Technologies Inc. (5317); Prime Trust, LLC (6823); Prime IRA LLC (8436); and Prime Digital, LLC (4528). The Debtors' service address is 10845 Griffith Peak Dr., #03-153, Las Vegas, Nevada 89135.

supplemented, amended, or modified from time to time, the "Plan")[2] and in support of the *Debtors' Memorandum of Law (I) in Support of (A) Approval of the Disclosure Statement on a Final Basis, and (B) Confirmation of the Debtors' Amended Joint Chapter 11 Plan of Reorganization for Prime Core Technologies Inc. and its Affiliated Debtors, and (II) in Response to Remaining Objections to Confirmation* (the "Confirmation Brief"), filed contemporaneously herewith. I have reviewed, and am generally familiar with, the provisions of the Plan and the requirements for confirmation under section 1129 of the Bankruptcy Code. I have previously submitted declarations in connection with plan confirmation proceedings, including with respect to the "best interests test" set forth in section 1129(a)(7) of the Bankruptcy Code. If called to testify, I could and would competently testify to the facts set forth herein.

3. Except as otherwise indicated herein, the statements set forth in this Declaration are based on (a) my personal knowledge of the Debtors' operations and finances based on information provided by the Debtors, (b) my review of relevant documents, including information provided by other parties, (c) information provided to me by employees of M3 Advisory working under my supervision, direction, or control, (d) information provided to me by or discussions with the members of the Debtors' management team or their other professional advisors, and/or (e) my opinion based on my experience, knowledge, and information concerning the Debtors' operations and financial condition.

4. I have overseen an M3 Advisory team which, since August 2023, has been one of the principal advisors for the Debtors and, in that capacity, I have been directly involved in the matters leading up to the Debtors' chapter 11 filings and during the Chapter 11 Cases. As a result

---

[2] Capitalized terms used but not otherwise defined herein shall have the meanings ascribed to them in the Plan, Disclosure Statement, or Liquidation Analysis, as applicable.

of my tenure with the Debtors, my review of relevant documents, and my discussions with other members of the Debtors' management team and professionals, I am generally familiar with the Debtors' day-to-day operations, business and financial affairs, and books and records.

5. Neither M3 Advisory nor I am being specifically compensated for this testimony, other than compensation to M3 Advisory as a professional services firm employed by the Debtors, pursuant to the *Order Authorizing and Approving the Employment and Retention of M3 Advisory Partners, LP as Financial Advisor for the Debtors, Effective as of the Petition Date* [Docket No. 245].

## THE PLAN SATISFIES SECTION 1129(A)(7) OF THE BANKRUPTCY CODE

6. Section 1129(a)(7) of the Bankruptcy Code, commonly known as the "best interests test," requires that each holder of an impaired claim or interest either (a) accept the plan or (b) receive or retain under the plan property of a value, as of the effective date of the plan, that is not less than the value such holder would receive if the debtor was liquidated under chapter 7 of the Bankruptcy Code. Relying on information from the Debtors' advisors and my own personal knowledge, I have reviewed the classification of Claims and Interests under the Plan and the proposed distributions to each Class of Claims. I understand that the "best interests test" does not apply to Class 1A (Secured Tax Claims), Class 1B (Other Secured Claims), or Class 2 (Other Priority Claims) because such Classes are Unimpaired under the Plan. As such, I further understand that, to satisfy the "best interests test," the Debtors must demonstrate that Holders in (a) Class 3A (Prime Core General Unsecured Claims), (b) Class 3B (Prime Trust General Unsecured Claims, (c) Class 3C (Prime IRA General Unsecured Claims), (d) Class 3D (Prime Digital General Unsecured Claims) (collectively, with Class 3A, Class 3B, and Class 3C, the "Unsecured Claim Classes"), and (e) Class 4 (Convenience Claims) (the "Convenience Claim Class") have either (x) voted to accept the Plan or (y) will receive an amount under the Plan as of

the Effective Date that is not less than the amount that such Holders would receive in a hypothetical chapter 7 liquidation as of such date. Based on my review of the Plan and the Liquidation Analysis (as set forth below), to the best of my knowledge, information, and belief, I believe that the Plan satisfies the "best interests test."

7. In order to determine whether the Plan satisfies the "best interests test," the Debtors, with the assistance of M3 Advisory, prepared a liquidation analysis, the original version of which was attached to the *Disclosure Statement Pursuant to Section 1125 of the Bankruptcy Code with Respect to the Joint Chapter 11 Plan of Reorganization for Prime Core Technologies Inc. and its Affiliated Debtors* [Docket No. 259] (the "Disclosure Statement") as Exhibit B and the revised version of which was filed at Docket No. 497-1 (the "Liquidation Analysis"). I personally oversaw the preparation of the Liquidation Analysis, and worked closely with a team of M3 Advisory personnel in its development. The Liquidation Analysis was completed after due diligence by the Debtors and M3 Advisory, and was based on a variety of assumptions, which I believe are reasonable.

8. In summary, the Liquidation Analysis compares the projected recoveries that would result from the liquidation of the Debtors in a hypothetical conversion to chapter 7 of the Bankruptcy Code on or about December 31, 2023 (the "Liquidation Date"), with the estimated recoveries to holders of Allowed Claims and Interests under the Plan. The values referenced in the Liquidation Analysis are projected as of the Liquidation Date and utilize (a) input from the Debtors' management team and advisors and (b) projected results of operations and cash flows over the period from November 18, 2023 to the Liquidation Date (the "Projection Period"), in each case, based on the assumptions set forth therein.

9. In preparing the Liquidation Analysis, the Debtors estimated Allowed Claims based on scheduled liabilities as of the Petition Date and certain Filed Claims following the Petition Date and during the Projection Period. The Liquidation Analysis also incorporates various estimates and assumptions, including (a) the additional costs and expenses that would be incurred by the Debtors as a result of a chapter 7 trustee's fees and retention of new professionals, (b) the delay and erosion of value that would be caused to the Debtors' assets, and (c) the reduced recoveries caused by an accelerated or disrupted sale or disposition of the Debtors' assets by the chapter 7 trustee.[3] I believe the methodology used to prepare the Liquidation Analysis is appropriate, and the assumptions, estimates, and conclusions set forth therein are reasonable and based on the knowledge and expertise of the Debtors' professionals, including the M3 Advisory team, who have extensive knowledge of the Debtors' business and financial affairs as well as relevant industry and financial experience. As such, I believe the Liquidation Analysis should be afforded deference.

10. As set forth in the Liquidation Analysis, any hypothetical chapter 7 liquidation would include three major components: (a) cash proceeds from asset sales, including the sale of all cryptocurrency and illiquid assets (the "<u>Gross Liquidation Proceeds</u>"); (b) costs to liquidate the business and administer the Estates under chapter 7 of the Bankruptcy Code (the "<u>Liquidation Adjustments</u>"); and (c) remaining proceeds available for distribution to claimants (the "<u>Net Liquidation Proceeds Available for Distribution</u>").

---

[3] As set forth in the Liquidation Analysis, actual results may vary from the assumptions contained therein, which are subject to potentially material changes, including with respect to economic and business conditions as well as legal rulings.

a)  The Gross Liquidation Proceeds reflect the estimated proceeds that a chapter 7 trustee would generate from a hypothetical chapter 7 liquidation. The Debtors' estimates of proceeds set forth in the Liquidation Analysis reflect a number of simplifying assumptions, including complicated legal questions, and are illustrative for the purposes of comparing liquidation under the Plan to chapter 7.

b)  The Liquidation Adjustments reflect the costs that a chapter 7 trustee would incur to monetize the assets and wind down the Debtors' estates in chapter 7 and including (i) expenses necessary to efficiently and effectively monetize the assets; (ii) chapter 7 professional fees (including lawyers, financial advisors, and brokers to support the sale and transition of assets over the liquidation period); and (iii) chapter 7 trustee fees.

c)  The Net Liquidation Proceeds Available for Distribution reflect estimated amounts available to holders of Claims and Interests after the Liquidation Adjustments are netted against the Gross Liquidation Proceeds. Under this analysis, the Liquidation Proceeds are distributed to holders of Claims against, and Interests in, the Debtors in accordance with the Bankruptcy Code's priority scheme.

11. As set forth in the Liquidation Analysis, the estimated recoveries for the Unsecured Claim Classes and the Convenience Claim Class under the Plan compared with recoveries for such Classes post-chapter 7 liquidation are as follows:

| Category of Claims | Chapter 11 | Chapter 7 |
|---|---|---|
| Unsecured Claim Classes Recovery (%) | 72.1% | 67.8% |
| Convenience Claim Class Recovery (%) | 70.0% | N/A[4] |

12. The foregoing comparison indicates that each holder of Claims in the Unsecured Claim Classes and the Convenience Claim Class will receive or retain under the Plan property of a value, as of the Effective Date, that is not less than the value such holder would receive if the Debtors were liquidated under chapter 7 of the Bankruptcy Code. Based on the projected recoveries set forth in the Plan and Disclosure Statement for the Unsecured Claim Classes and the Convenience Claim Class, I believe that the projected chapter 7 liquidation recoveries are lower

---

[4] Under a chapter 7 liquidation there would not be a convenience class. As such, these claims would be included in the unsecured claim classes and the recovery to this group would be 67.8%.

6

than the projected recoveries for such Classes under the Plan. In addition, I believe that a chapter 7 liquidation may cause substantial delay in distributing creditor recoveries and will add additional, unnecessary expenses to the Debtors' estates, particularly given the potential costs incurred by a chapter 7 trustee and other retained professionals, to the severe detriment of unsecured creditors and their projected recoveries. The Debtors have been working diligently to minimize disruption to their books and records and maintain the ability to access information in a wind-down, which efforts may be disrupted in the event of a conversion to chapter 7. Such a disruption could materially increase the difficulty in successfully maximizing value for creditors after the Effective Date.

13.     Accordingly, it is my conclusion that the recoveries to the holders of Claims and Interests, particularly those in the Unsecured Claim Classes and the Convenience Claim Class, under the Plan are at least as much as the potential recoveries provided to the holders of Claims and Interests in a liquidation under chapter 7 of the Bankruptcy Code. I believe that the Liquidation Analysis provides a fair and reasonable assessment of the effects that a conversion of the Chapter 11 Cases to chapter 7 cases could have on the proceeds available for distribution to holders of unsecured Claims. In light of the foregoing, I believe that the Debtors have satisfied the "best interests test" under section 1129(a)(7) of the Bankruptcy Code and, therefore, I believe confirmation of the Plan is in the best interests of the Debtors and their Estates.

*[Remainder of page intentionally left blank]*

Pursuant to 28 U.S.C. § 1746, I declare under penalty of perjury that the foregoing statements are true correct.

Dated: December 12, 2023

*/s/ William Murphy*
William Murphy
Senior Director
M3 Advisory Partners, LP