FILED

**IN THE UNITED STATES BANKRUPTCY COURT**
**FOR THE DISTRICT OF DELAWARE** 2023 DEC 14  PM 3:52

CLERK
US BANKRUPTCY COURT
DISTRICT OF DELAWARE

|  |  |
|---|---|
| In re:<br><br>Prime Core Technologies Inc., *et al.*,<br><br>Defendant. | )<br>)<br>)  Chapter 11<br>)<br>)  Case No.: 23-11161 (JKS)<br>)<br>)  OPPOSITION OF AUSTIN WARD TO<br>)  DEBTORS' FIRST (SUBSTANTIVE)<br>)  OMNIBUS OBJECTION TO PROOF OF<br>)  CLAIM |

1.     On November 18, 2023, Debtors Prime Core Technologies Inc.; Prime Trust
LLC; Prime IRA LLC; and Prime Digital, LLC (collectively "Debtors") filed a First
(Substantive) Omnibus Objection to Certain Filed Proofs of Claim. Dkt. 436. Exhibit 1 to that
Objection identified the claim of Austin Ward as a "No Liability Claim." Dkt. 436-2 at p. 6. The
basis for the objection, according the Exhibit, was an examination of books and records
concluding "the Debtors have no information about this claimant, any amount owed to this
claimant, or any reason to know who this claimant is." *Id.*

2.     Debtors do know who Claimant Austin Ward is. They have engaged in litigation
with him for over a year. He is one of the named plaintiffs in a class action lawsuit now pending
in the District Court of the State of Nevada. That case, which has been moved into receivership
is titled *O'Laughlin v. Prime Core Technologies, Inc., et al.*, Case No. A-23-872963-B (Clark
County, Nevada). Prior to the receivership action, the case had been litigated since November 2,
2022, in both the Nevada State Court as *Ward, et al. v. Prime Trust LLC*, Case No. A-22-
860739-B (Clark County, Nevada), and then in the United States District Court, District of
Nevada as *Ward, et al. v. Prime Trust LLC*, Case No. 2:22-cv-02034-APG-EJY (D. Nev.).

3.     Not only are the Debtors aware of who Claimant is, but they have aggressively
argued in motions filed in the federal court matter that they had privity of contract with him and

the other named plaintiffs in the *Ward, et al. v. Prime Trust LLC* lawsuits. *See* Ex. 1, attached hereto, Prime Trust LLC Motion to Dismiss Complaint, at p. 7.

4.     For the reasons stated above, Debtors' Objection to Claimant Austin Ward's Claim should be overruled.

Respectfully submitted,

Dated this 13th day of December 2023.

Austin Ward

2

## CERTIFICATE OF SERVICE

I hereby certify that on this 13th day of December, 2023, the foregoing

**OPPOSITION OF AUSTIN WARD TO DEBTORS' FIRST (SUBSTANTIVE) OMNIBUS**

**OBJECTION TO PROOF OF CLAIM** was served on the below parties.

_____

**Prime Core Technologies Inc.; Prime Trust LLC; Prime IRA LLC; and Prime Digital, LLC**
**Darren Azman**
McDermott Will & Emery LLP
One Vanderbilt Avenue
New York, NY 10017-3852
dazman@mwe.com

*--and--*

**Maris J. Kandestin**
McDermott Will & Emery LLP
1000 N. West Street, Suite 1400
Wilmington, Delaware 19801
mkandestin@mwe.com

*--and--*

**Gregg Steinman**
McDermott Will & Emery LLP
333 SE 2nd Avenue, Suite 4500
Miami, Florida 33131
gsteinman@mwe.com

**U.S. Trustee**
**Joseph F. Cudia**
844 King Street
Suite 2207
Wilmington, DE 19801
joseph.cudia@usdoj.gov

**Official Committee of Unsecured Creditors**
**Robert J. Stark**
Brown Rudnick LLP
7 Times Square
New York, NY 10036
rstark@brownrudnick.com

# Exhibit 1

1  MITCHELL J. LANGBERG (NVBN 10118)
   *mlangberg@bhfs.com*
2  ERIC D. WALTHER (NVBN 13611)
   *ewalther@bhfs.com*
3  **BROWNSTEIN HYATT FARBER**
   **SCHRECK, LLP**
4  100 North City Parkway, Suite 1600
   Las Vegas, NV 89106
5  Phone: +1 702 464 7098

6  JONATHAN A. SHAPIRO (*admitted pro hac vice*)
   *JShapiro@goodwinlaw.com*
7  **GOODWIN PROCTER LLP**
   Three Embarcadero Center, 28th Floor
8  San Francisco, CA 94111
   Phone: +1 415 733 6000
9  Fax: +1 415 677 9041

10 AARON S. THOMPSON (*admitted pro hac vice*)
   *AThompson@goodwinlaw.com*
11 NATALIE R. GARSON (*admitted pro hac vice*)
   *NGarson@goodwinlaw.com*
12 **GOODWIN PROCTER LLP**
   520 Broadway, Suite 500
13 Santa Monica, CA 90401
   Phone: +1 424 252 6400
14 Fax: +1 424 252 6401

15 *Attorneys for Defendant Prime Trust, LLC*

16                    **UNITED STATES DISTRICT COURT**

17                          **DISTRICT OF NEVADA**

| | |
|---|---|
| 18  AUSTIN WARD, DAVID KREVAT, and NABIL MOHAMAD, individually and on behalf of others similarly situated, | Case No. 2:22-cv-02034-APG-EJY |
| 19 | **DEFENDANT PRIME TRUST'S MOTION TO DISMISS COMPLAINT** |
| 20                    Plaintiffs, | |
| 21         v. | Date:     January 27, 2023 |
| | Judge:    Hon. Andrew P. Gordon |
| 22  PRIME TRUST, LLC; and DOES 1-10, | Lloyd D. George Federal Courthouse |
| 23         Defendant(s). | 333 Las Vegas Blvd. South |
| | Las Vegas, NV 89101 |
| 24 | Removal filed:  December 8, 2022 |
| 25 | ORAL ARGUMENT REQUESTED |
| 26 | |
| 27 | |
| 28 | |

1

## **TABLE OF CONTENTS**

**Page(s)**

I. INTRODUCTION ........................................................................................................ 1

II. LEGAL STANDARD .............................................................................................. 4

III. FACTUAL BACKGROUND .................................................................................... 4

   A. Plaintiffs' Allegations About "Denied" Orders To Sell Their UST. ............... 5

IV. ARGUMENT ............................................................................................................ 6

   A. Plaintiffs Fail To State A Claim For Deceptive Trade Practices. ................... 6

     1. Plaintiffs Fail To Plead Misrepresentations With Rule 9(b) Particularity. ...... 6

       a. May 2018 YouTube in Los Angeles. ................................................ 7

       b. July 2021 YouTube in Los Angeles ................................................. 8

       c. July 2019 Statement and March 2022 Statement ........................... 10

       d. October 2022 Statement ................................................................ 11

   B. Plaintiffs Fail To State A Claim For Breach Of Fiduciary Duty. ................. 12

     1. The theories are not supported by the required factual predicate. ............... 12

     2. The Trust Theory is foreclosed by the User Agreement and Nevada directed trust law. .............................................................................................................. 14

   C. Plaintiffs Fail To State A Claim For Conversion. ....................................... 17

   D. Plaintiffs Fail To State A Claim For Unjust Enrichment. ............................ 17

   E. Plaintiffs Fail To State A Claim For Negligence. ....................................... 18

V. CONCLUSION ...................................................................................................... 21

2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

# TABLE OF AUTHORITIES

**Page(s)**

**Cases**

*Andes Indus., Inc. v. Cheng Sun Lan,*
   774 F.App'x 358 (9th Cir. 2019) ..........................................................................................12

*Bell Atlantic Corp. v. Twombley,*
   550 U.S. 544 (1955)...........................................................................................................2, 4

*Borenstein v. Animal Found.,*
   526 F.Supp. 3d 820 (D. Nev. 2021)....................................................................................20

*Certified Fire Prot. Inc. v. Precision Constr.,*
   128 Nev. 371, 283 P.3d 250 (2012) ...................................................................................18

*Chemeon Surface Technology, LLC. v. Metalast Int'l, Inc.,*
   2018 WL 1863064 (D. Nev. 2018) .....................................................................................18

*Ehmann v. Desert Palace, LLC,*
   No. 219CV01199APGBNW, 2021 WL 4395044 (D. Nev. Sept. 24, 2021) ...........................9

*Estrada v. Steam Maxx Carpet & Upholstery Cleaning,*
   133 Nev. 1006 (Nev. App. 2017).......................................................................................19

*Evans v. Dean Witter Reynolds, Inc.,*
   116 Nev. 598, 5 P.3d 1043 (2000) .....................................................................................17

*Harlow v. MTC Fin. Inc.,*
   865 F.Supp. 2d 1095 (D. Nev. 2012)..................................................................................12

*Hazen v. Prudential Sec., Inc.,*
   12 F.3d 1106 (9th Cir. 1993) .............................................................................................14

*Horner v. Semenza,*
   129 Nev. 1123 (2013) ........................................................................................................13

*Hughes v. Accretive Health, Inc.,*
   No. 13 CV 3688, 2014 WL 4784082 (N.D. Ill. Sept. 25, 2014)..........................................18

*Kula v. Karat, Inc.,*
   91 Nev. 100, 531 P.2d 1353 (1975)....................................................................................20

*Kwan v. SanMedica Int'l,*
   854 F.3d 1088 (9th Cir. 2017) .............................................................................................4

*Maya v. Centex Corp.,*
    658 F.3d 1060 (9th Cir. 2011) ...........................................................................4

*Motogolf.com, LLC v. Top Shelf Golf, LLC,*
    528 F.Supp. 3d 1168 (D. Nev. 2021), *reconsideration denied*, No.
    220CV00674APGEJY, 2022 WL 834790 (D. Nev. Mar. 21, 2022) .....................6, 7

*Puri v. Khalsa,*
    674 F.App'x 679 (9th Cir. 2017) ......................................................................17

*Ronconi v. Larkin,*
    253 F.3d 423 (9th Cir. 2001) ........................................................................8, 11

*Scialabba v. Brandise Const. Co., Inc.,*
    112 Nev. 965, 921 P.2d 928 (1996) ..................................................................19

*In Re Secure Computing Corp. Securities Litigation,*
    120 F.Supp. 2d 810 (N.D. Cal. 2000) ...............................................................11

*In re Tracht Gut, LLC,*
    836 F.3d 1146 (9th Cir. 2016) ........................................................................2, 4

*Tsambis v. Irvine,*
    No. 217CV2482JCMCWH, 2018 WL 3186940 (D. Nev. June 28, 2018) ..............18

*Urb. Outfitters, Inc. v. Dermody Operating Co., LLC,*
    No., 2022 WL 4134127 (D. Nev. Sept. 12, 2022) ....................................7, 8, 10, 11

*Vess v. Ciba-Geigy Corp. USA,*
    317 F.3d 1097 (9th Cir. 2003) ........................................................................6, 19

*In re W. World Funding, Inc.,*
    52 B.R. 743 (Bankr. D. Nev. 1985), *aff'd in part, rev'd in part sub nom.*
    *Buchanan v. Henderson*, 131 B.R. 859 (Bankr. D. Nev. 1990), *rev'd*, 985 F.2d
    1021 (9th Cir. 1993).........................................................................................17

**Statutes**

NRS 41.600 .................................................................................................6

NRS 163.003 ...............................................................................................14

NRS 163.004 ...............................................................................................14

NRS 163.5548 .............................................................................................16

NRS 163.5549 .........................................................................................16, 20

NRS 163.5549(2) .........................................................................................16

iii

NRS 163.5549(a) & (b)..................................................................................................20

NRS 598.0915(5) .........................................................................................................8

NRS 598.0915(9) .........................................................................................................8

NRS 598.0915(15) .......................................................................................................8

1    **I.    INTRODUCTION**

2            Prime Trust, LLC respectfully requests that the Court dismiss the Complaint filed against

3    it by Austin Ward, David Krevat and Nabil Mohamad.    Plaintiffs claim to have lost their

4    investment in a cryptocurrency that collapsed in May 2022, but nowhere does their Complaint

5    plead in any coherent form of words why or how Prime Trust is possibly responsible for Plaintiffs'

6    *own* decision to make such a speculative investment and/or is to blame for an epic crypto market

7    collapse.

8            Specifically, Plaintiffs claim to have invested in TerraUSD, which goes by the shorthand

9    "UST" and is allegedly among dozens of speculative cryptocurrencies in a loosely-defined

10   subcategory of "so-called stablecoins." Compl. ¶ 35, ECF No. 1-2. According to Plaintiffs, by

11   buying and holding UST they *"stood to make astronomical gains"* that would be *"over twenty*

12   *times higher* than [] the average American savings account." *Id.* Plaintiffs' astronomical

13   expectations ended in May 2022, when the UST market collapsed in a "fall of over 90 percent"

14   that "wiped out billions of dollars of market capital in a matter of days." *Id.* ¶ 44.

15           Plaintiffs claim to have been holding undisclosed positions in UST when it collapsed, and

16   are suing Prime Trust to recoup their investment losses.    The lawsuit must be dismissed.    Nowhere

17   in the meandering Complaint—endless crypto-speak about "tokens," "Anchor Protocol,"

18   "backend aspects of trading," and random soundbites from Federal Reserve Chair Janet Yellen—

19   do Plaintiffs allege clearly and specifically why any of this was Prime Trust's fault.

20           First, Plaintiffs do not plead that Prime Trust had any role whatsoever in their purchase of

21   UST—which is a colossal hole in a Complaint seeking damages because the UST they bought did

22   not lead to "astronomical" gains but instead "collapsed."    Plaintiff do *not allege* that Prime Trust

23   was the sponsor or issuer of UST.[1]    *Nor do they allege* that Prime Trust ever recommended that

24   Plaintiffs purchase UST (or for that matter purchase anything), much less claim that Prime Trust

25   promised or even predicted that they would reap any "gains" from UST (or from anything).

26

27   ─────────────
     [1] To the contrary, Plaintiffs plead that a UST was "part of a lending program" that was
     "controlled by Terraform Labs," which for whatever reason they have not sued. Compl. ¶ 35.

28

1

1   Plaintiffs do not *plead any source* for their (ridiculous) comparison between a speculative crypto

2   "token" and a FDIC-insured savings account.  And Plaintiffs *do not even disclose the most*

3   *rudimentary facts* about the UST investment that is the basis for their case— *i.e., when* they

4   purchased UST, *how much* they purchased, *what* they paid, *where* and from *whom* they purchased,

5   and *whether* and *why* any of it had to do with Prime Trust.

6         Second, Plaintiffs do not plead any basis to hold Prime Trust responsible for the UST

7   market collapse in May 2022.  This too is an obvious hole in a Complaint whereby Plaintiffs are

8   suing Prime Trust to recover from losses they incurred from not selling before the open market

9   price (in dollars) dropped "over 90 percent."

10         Third, the *only* concrete allegations against Prime Trust do not state a claim.    Plaintiffs

11   allege that on May 9, 2022, they "placed sell orders" with some never-identified non-party "wallet

12   services" that, in turn, "routed" the sell orders to Prime Trust—but that the orders were "denied"

13   and that "no transactions were processed."  Compl. ¶¶ 7, 9-11.  That is not a viable claim, even

14   assuming all of it is true for purposes of this Rule 12(b)(6) motion.  Plaintiffs do not allege that

15   Prime Trust had any obligation to find a buyer willing to pay U.S. Dollars for their UST, much

16   less at any price.  Nor do they make any allegation that Prime Trust ever guaranteed any particular

17   return on any "stablecoin," much less their USTs.  Nor do Plaintiffs allege that Prime Trust was

18   obligated to accept an order and "process" a sale after a market collapse where there were no

19   buyers, or that Prime Trust charged them for processing the allegedly "denied" orders.

20         The absurdity of the claim that Prime Trust is liable for non-processed transactions is laid

21   bare in the exceptionally-detailed "Prime Trust User Agreement."[2]  That detailed contract forms

22   the very basis for Plaintiffs relationship with Prime Trust, defines the "Services" that Prime Trust

23   actually agreed to provide,  but is strangely not addressed in the Complaint. The User Agreement

24

---

25   [2] Plaintiffs falsely claim "there was no privity of contract with between themselves and Prime
Trust."  Compl. ¶ 31. The Court need not assume false legal assertions to be true.  *See In re*
26   *Tracht Gut, LLC*, 836 F.3d at 1151 (*citing Bell Atlantic Corp. v. Twombley*, 550 U.S. 544, 555-
56 (1955)).  Plaintiffs' "User Agreements" are "relevant agreements" referenced in their
Complaint, ¶ 16, also contain the *class action waiver* upon which Prime Trust has concurrently
27   filed its Motion To Strike, and are judicially noticeable under the legal authorities cited in the
Motion to Strike.   *See* Exhibits A, B and C to the concurrently-filed Motion to Strike.

28

2

1    makes redundantly clear that Prime Trust is a "custodian"—*i.e.*, it holds whatever Plaintiffs

2    "deposit" into an account—with no such responsibility whatsoever for Plaintiffs' decisions of what

3    to buy or sell, nor responsibility for finding someone to buy whatever Plaintiffs may have in their

4    accounts.    The User Agreement that Plaintiffs signed warns in the darkest of terms that

5    cryptocurrency is so risky that there may never be a willing buyer, leading to a *"total loss of*

6    *value," i.e.*, exactly what happened.

7            Fourth, Plaintiffs cannot recover their investment losses from Prime Trust with the false

8    charge that it "agreed to redeem such orders," a misrepresentation theory asserted under the

9    Nevada Deceptive Practices Statute. Nowhere do Plaintiffs plead with Rule 9(b) particularity any

10   actual statement by Prime Trust, that was false when made, that Plaintiffs relied on, and that caused

11   their losses (*i.e.*, failure to sell "tokens" after a market collapse). None of the five statements

12   Plaintiffs sound-bite from YouTube and other internet sources even refer to UST. Nor do Plaintiffs

13   allege that they ever heard or read any statement, much less when, which is a basic pleading failure

14   for claims that require both "reasonable reliance" and "causation." None of the statements is

15   alleged to have been knowingly false when made, which is another missing element. Three of the

16   five statements could not plausibly have anything to do with UST losses —two were made at least

17   a year *before* UST was launched, and one was allegedly made months *after* the market collapsed.

18           Fifth, Plaintiffs cannot sue Prime Trust for breach of fiduciary duty. They cannot impose

19   a "fiduciary duty" on Prime Trust simply by saying that everyone "trusted [its] integrity" because

20   the law requires a meaningful factual predicate that Prime Trust agreed to serve in that special role.

21   Here again Plaintiffs flatly ignore their User Agreements, which explicitly exculpate Prime Trust

22   from any such all-purpose fiduciary duty pursuant to a specific and controlling Nevada Statute that

23   is cited in the Agreement, but again not mentioned in the Complaint.

24           Finally, the remaining claims are makeweight.    Prime Trust did not do anything

25   negligent—it "did not process "sell orders" where there were no buyers. It was not "unjustly

26   enriched"—it never earned a penny from the denied-and-not-processed orders.    Nothing was

27   "converted"—Plaintiffs still own their UST, they are sitting in their account, and they can have

28

1    them back.

2         Simply put, it is Plaintiffs' obligation to plead their case in a way that is "short and plain"

3    and, because the claims sound in fraud, to support their claims with a factual predicate that also is

4    precise and "particular." *See* Fed. R. Civ. Pro. 8(a), 9(b). The pleading before the Court is neither

5    "plain" nor "particular"—at least with respect to any claim that Prime Trust is liable for Plaintiffs'

6    speculative investment losses.[3] It respectfully ought to be dismissed.

7    **II.   LEGAL STANDARD**

8         "To survive a motion to dismiss [under Rule 12(b)(6)], a complaint must contain sufficient

9    factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" Ashcroft

10   v. Iqbal, 556 U.S. 662, 678, (2009) (*quoting Twombley*, 550 U.S. at 544). Dismissal under Rule

11   12(b)(6) "may be based on either a 'lack of a cognizable legal theory' or 'the absence of sufficient

12   facts alleged under a cognizable legal theory.'" *Kwan v. SanMedica Int'l*, 854 F.3d 1088, 1093

13   (9th Cir. 2017) (internal citations and quotations omitted). The Court must "accept as true all facts

14   alleged in the complaint and draw all reasonable inferences in favor of the plaintiff." *In re Tracht*

15   *Gut, LLC*, 836 F.3d 1146 at 1150 (9th Cir. 2016) (*citing Maya v. Centex Corp.*, 658 F.3d 1060,

16   1067-68 (9th Cir. 2011)). However, "conclusory allegations in a complaint or legal claims asserted

17   in the form of factual allegations" ought not be accepted as true by the Court. *Id*. at 1051 (*citing*

18   *Twombley*, 550 U.S. at 555-56). As set forth below, this case sounds in fraud, and therefore must

19   also be pleaded with the high degree of particularity demanded by Rule 9(b).

20   **III.   FACTUAL BACKGROUND**

21        Plaintiffs claim losses occurring on and after May 9, 2022, when the market for UST

22   cryptocurrency collapsed. Plaintiffs' core theory—the basis for every claim—is that Prime Trust

23   _____

24   [3] Indeed, this pleading is so impenetrably technical and dense that it seems calculated to conceal
     the lack of allegations against Prime Trust for the allegedly "denied" orders that it didn't
     "process," as if Courts are so easily overwhelmed that they just assume the necessary allegations

25   are somewhere in the undigested prolixity. *See, e.g.*, Compl. ¶¶ 23 (allegations about Prime
     Trust's "application programing" that has nothing to do with Plaintiffs or UST); 25 (allegations

26   about Prime Trust's banking business that is not alleged to involve Plaintiffs or UST); 41
     (asserting Prime Trust and other entities did not register UST with federal regulators, but

27   nowhere explaining whether registration was required, whether Prime Trust could ever register
     UST, or why any of it matters at all to Plaintiffs' claims).

28

4

1  failed to live up to some supposed duty to sell the UST in that collapsed market, to a buyer willing

2  to pay U.S. dollars, and/or that Prime Trust *itself* was obligated to purchase the UST from

3  Plaintiffs. They also accuse Prime Trust of making false statements about "stablecoin" in general,

4  but fail to identify any statements that relate to the UST for which Plaintiffs seek to recover,  nor

5  claim to have relied on any statement when making their speculative UST investments.

6  **A.    Plaintiffs' Allegations About "Denied" Orders To Sell Their UST.**

7  Plaintiffs identify two categories of asset that can be traded for each other—fiat currency

8  (*e.g.* U.S. dollars) and cryptocurrency. Compl. ¶ 19. Plaintiffs allege that Prime Trust *facilitates*

9  transactions among USD and UST, *i.e.*, whereby UST is purchased or sold for U.S. dollars.

10  Plaintiffs allege that they "held" UST on May 2022, but beyond that allege literally nothing about

11  what they held, when they acquired it, and anything about the economics.[4]

12  Specifically, on May 9, Plaintiffs allege that they sought to sell UST by "placing sell

13  orders" with some never-identified non-party "wallet services" (where that UST resided outside

14  of Prime Trust's custody) that, in turn, "routed" the sell orders to Prime Trust. Compl. ¶¶ 7, 9-11.

15  Plaintiffs complain that the orders were "denied" and that "no transactions were processed." *Id.*

16  Plaintiffs claim that Prime Trust was somehow obligated to have accepted the "denied" orders and

17  also was obligated to have paid them $1.00 per UST. *Id.* at ¶¶ 42-43.

18  The User Agreements set forth the "services" that Prime Trust agreed to provide. Notably,

19  neither the User Agreements, nor the Complaint, state that Prime Trust agreed to take on any duty

20  to act as a market maker and buy UST upon demand. *See generally* User Agreements; Compl.

21  Further, although Plaintiffs are suing Prime Trust for having "denied" their orders, they do not

22  allege that Prime Trust was obligated to accept and process any order.  The  Complaint also fails

23  to identify anybody who was willing to pay USD for UST on May 9, 2022 (particularly at $1.00

24  per UST Plaintiffs demand), i.e. the date that Plaintiffs' never-identified "wallet service"

---

[4] The Complaint does not allege how or when the Plaintiffs obtained their UST, starting with
whether they purchased it with U.S. dollars, some other cryptocurrency or whether it was a gift
or the result of some sort of barter transaction. Nor do they allege any other details about the
economics and timing of any such transaction or even the mechanics of such transaction
(including whether Prime Trust was in any respect involved).

supposedly routed the sell order to Prime Trust that was "denied."[5]   *See generally* Compl.

## IV.   **ARGUMENT**

Plaintiffs assert five causes of action: (1) deceptive trade practices under Nevada law based on alleged false statements (2) breach of fiduciary duty, (3) conversion, (4) unjust enrichment, and (5) negligence.   Compl. ¶¶ 59–107.   Every claim seeks damages for essentially the *same* alleged misconduct—*i.e.*, Prime Trust's failure to process (that is, fulfill or carry out) "sell orders" first made on May 9, 2022 (or after) by Plaintiffs hoping to sell their USTs to cash buyers.   Each of the causes of action are deficient, and the Court should dismiss them.

### A.   **Plaintiffs Fail To State A Claim For Deceptive Trade Practices.**

Plaintiffs claim that Prime Trust violated Nevada's deceptive trade practice statute, NRS 41.600, by making certain "knowingly" "false representations" or "advertising . . . services with intent not to sell or lease them as advertised."   Compl. ¶ 75.   According to Plaintiffs, those alleged misrepresentations caused them to lose money when "wallet services" routed sell orders to Prime Trust that were "denied" after the UST market collapsed on May 9, 2022.   That claim must be dismissed because Plaintiffs do not plead that *any* of the five statements alleged in the Complaint was materially and knowingly false at the time made, much less that Plaintiffs relied on any statement and that caused any loss.

#### 1.   **Plaintiffs Fail To Plead Misrepresentations With Rule 9(b) Particularity.**

Plaintiffs' deceptive trade practices claim sounds in fraud, and should be dismissed for their failure to plead with the particularity demanded by Rule 9(b).   "Rule 9(b) requires a plaintiff to 'state with particularity the circumstances constituting fraud.'"   *Motogolf.com, LLC v. Top Shelf Golf, LLC*, 528 F.Supp. 3d 1168, 1174 (D. Nev. 2021), *reconsideration denied*, No. 220CV00674APGEJY, 2022 WL 834790 (D. Nev. Mar. 21, 2022).   That means Plaintiffs "must

---

[5] Plaintiffs conspicuously use the passive voice and do not even allege who it was that denied their orders.   Was it Prime Trust?   Was it the wallet provider?   Was it their bank that refused the U.S. Dollars because Plaintiffs happen to be Russian officials on a sanction list?   The Complaint does not say.

1   provide the 'who, what, when, where, and how' of the fraudulent misconduct" in the Complaint.

2   *Motogolf.com*, 528 F.Supp. 3d, at 1174 (citing *Vess v. Ciba-Geigy Corp. USA*, 317 F.3d 1097,

3   1106 (9th Cir. 2003)). "The plaintiff must set forth what is false or misleading about a statement,

4   and why it is false." *Motogolf.com*, 528 F.Supp. 3d, at 1174. There is no question that Rule 9(b)

5   must be satisfied to state a claim under the Nevada Deceptive Trade Practices Act ("NDTPA").

6   *See id.* at 1174, 1178-1179; *Urb. Outfitters, Inc. v. Dermody Operating Co., LLC*, No., 2022 WL

7   4134127, at *4 (D. Nev. Sept. 12, 2022).

8   Here, Plaintiffs have failed to plead a cognizable claim against any of the five "statements"

9   challenged in the Complaint, which are scrutinized separately below in accordance with the

10  statement-by-statement approach familiar to Ninth Circuit courts.

11                    **a.    May 2018 YouTube in Los Angeles.**

12  Plaintiffs' first identified statement is an excerpt from a YouTube video of a speech

13  allegedly made at a Los Angeles conference in May 2018, *years* before UST was released. Compl.

14  ¶ 26. This claim fails because (1) the statement makes no mention of the UST at issue here, (2)

15  Plaintiffs fail to allege why the statement was false, much less *contemporaneous* falsity, *i.e.*, that

16  it was knowingly false at the time made, and (3) the Complaint fails to identify if—and if so,

17  when—Plaintiffs heard the YouTube video, much less that they actually relied on it..

18  First, the May 2018 statement does not even mention UST. It is a generic statement about

19  "stablecoins" in a paragraph that acknowledges that Prime Trust offers services involving

20  "approximately 30 stablecoins." Compl. at ¶ 26. There certainly is no basis for Plaintiffs to ask

21  the Court to assume that a 2018 broad statement about "stablecoins" said anything about UST

22  because UST was not launched until September 2020.[6] Accordingly, Plaintiffs' challenge to a *pre*-

23  UST launch statement literally makes no sense, falling short of even the "plausibility" required by

24  Rule 8(a). Plaintiffs certainly have failed to allege with particularity "a false representation in

25  connection with a transaction," as this Court has held Rule 9(b) requires for a deceptive trade

26  ─────────────────────
[6] Do Kown, *Announcing TerraUSD (UST)-the Interchain Stablecoin*, MEDIUM.COM (Sept. 21,

27  2020), https://medium.com/terra-money/announcing-terrausd-ust-the-interchain-stablecoin-
    53eab0f8f0ac (last accessed Jan. 27, 2023).

28

1  practice claim. *Urb. Outfitters, Inc.*, 2022 WL 4134127, at \*4.

2        Second, in order to be actionable, a Complaint must explain why a statement was

3  ***knowingly false at the time made***—*i.e.*, fraud-by-hindsight attacks against *old* statements that are

4  based on *later* "facts" do not state a claim for deceptive trade practices. *See, e.g.*, NRS 598.0915(5)

5  (requiring knowingly false representation); NRS 598.0915(9) (advertising with *intent* to not sell

6  or lease as advertised);  NRS 598.0915(15) (requiring knowingly making a false representation).

7  The Complaint, of course, fails to allege that Prime Trust provided services related to UST in 2018

8  (which would be impossible because UST did not exist until 2020[7]), let alone that Prime Trust

9  *knew* in May 2018 that, four years later, there would be a cash buyer for UST on May 9, 2022

10  (again, impossible). *See, e.g.*, *Ronconi v. Larkin*, 253 F.3d 423, 430 (9th Cir. 2001) ("[F]raud by

11  hindsight is not actionable.") (citations omitted).

12        Finally, reliance and causation are also required elements of a deceptive trade practices

13  claim based on consumer fraud, and they too must be pleaded with particularity. *Urb. Outfitters,*

14  *Inc.*, 2022 WL 4134127, at \*5.  Accordingly, Plaintiffs must identify "how or when" they relied

15  on Prime Trust's pre-UST statements about stablecoins when they engaged in a UST transaction

16  years later—and from there, how those statements caused the alleged damages. *See id.*  Here,

17  Plaintiffs fail to plead that they ever read or heard the May 2018 statement, much less when.  Of

18  course, even if Plaintiffs had watched the YouTube, no reasonable person would rely on a

19  statement prior to the launch of UST (in 2018) when seeking to trade UST years later (in May

20  2022).

21                  **b.**     **July 2021 YouTube in Los Angeles.**

22        Plaintiffs' second identified statement is another excerpt from a YouTube of an alleged TV

23  interview in Los Angeles in July 2021.  Compl. ¶ 26.  This statement also fails because (1) the

24  statement makes no mention of UST, *i.e.*, the cryptocurrency at issue here, (2) Plaintiffs fail to

25  allege why the statement was knowingly false, much less *contemporaneous* falsity, and (3) the

26  Complaint fails plead when Plaintiffs watched the YouTube video and why they reasonably relied

27  _____

  [7] *Supra* note 6.

28

8

1    on it.

2           *First*, the July 2021 YouTube is even more vague than the inactionable May 2018

3    YouTube. Plaintiffs' excerpt is an "answer" to a question on YouTube about whether there would

4    be increasing demand for "know your customer" services (*i.e.* customer verification sometimes

5    referred to as "KYC").[8]  There is literally nothing in this case about KYC, and even taking the

6    excerpt as true on its acontextual face, the soundbite does not even remotely relate to Plaintiffs'

7    theory that Prime Trust promised or represented that it would always accept and process requests

8    to sell UST to cash buyers. All the statement says is that for "any company" with which Prime

9    Trust works, Prime Trust will ensure that the funds are "there" to back the coin for anything else

10   that is minted. Compl. ¶ 26. The "back the coin" comment does not mention UST, and could not

11   even apply to UST because Plaintiffs themselves *admit* in the Complaint that UST is "unlike other

12   stablecoins." *Id.* ¶ 34. That is, UST is *not* "backed" by any hard asset held in reserve, but instead

13   used "an algorithm and system of supply controls and swaps." *Id.* ¶ 34. Accordingly, even

14   assuming that Prime Trust worked with "any company" to make sure funds on deposit will "back"

15   that never-named company's coins (if that even makes sense), there is no pleaded basis that such

16   services could ever be a construed as a some sort of promise about backing UST (again, because

17   "unlike other stablecoins," UST is not backed by hard reserve assets).[9]

18          *Second*, Plaintiffs fail to plead the required Rule 9(b) particularized basis—or indeed, even

19   a plausible "short and plain" Rule 8(a) basis—that the statement about "other stablecoins" was

20   knowingly false at the time made. That is, there is no pleading that in July 2021 Prime Trust was

21   not, in fact, ensuring that generic funds were "there" to back whatever coins may have been out

---

[8] *Prime Trust Raises $64M to Scale Fintech Infrastructure Business*, YOUTUBE (Jul. 29, 2021), https://www.youtube.com/watch?v=mW0PXJhKUTk&t=336s (last visited Jan. 27, 2023).
[9] The handful of statements quoted in the Complaint to the effect that Prime Trust would in some generic way "back the stablecoins" or find funds to "back the coin" (Compl. ¶ 26) are themselves hard to follow—and are more confusing still because Plaintiffs cherrypick select phrases, including an "answer" without the fair context of the "question." To the extent any of these "back the coin" excerpts are coherent, it is the sort of broadly promotional, non-specific marketing "puffery" that as a matter of law is too oblique to be actionable. *See Ehmann v. Desert Palace, LLC*, No. 219CV01199APGBNW, 2021 WL 4395044, at *2 (D. Nev. Sept. 24, 2021) ("Statements of opinion or puffery are not actionable because they are not objectively false statements.").

28

1   there, and doing its job to the satisfaction of the never-identified "any company" that Prime Trust

2   may have been referring to on YouTube.  Accordingly, Plaintiffs have not alleged that Prime Trust

3   knew of the (never) alleged falsity at the time.

4           Finally, Plaintiffs fails to allege if (and if so, when) they allegedly read or heard the

5   statement, and whether and why they reasonably relied upon the never-read statement, as required

6   to show causation.  *Urb. Outfitters, Inc.*, 2022 WL 4134127, at *5.

7                   **c.      July 2019 Statement and March 2022 Statement**

8           Plaintiffs' third and fourth identified statements occurred in July 2019 and March 2022.

9   Compl. ¶ 27.  These statements fail because (1) the statements do no relate to UST, or for that

10  matter Prime Trust's willingness to process any cryptocurrency sale when there is no willing buyer,

11  (2) Plaintiffs fail to allege why the statements were knowingly false when made, and (3) the

12  Plaintiffs fail to plead when they read the statements, much less that they relied on them.

13          First, regarding the July 2019 statement, the Complaint merely alleges that Prime Trust

14  said that "clients" could "instantly transfer any assets" between account holders in "real time."

15  But *a transfer* between accounts (*i.e.* sending or receiving assets) *is not remotely similar* to what

16  Plaintiffs have sued Prime Trust for—*i.e.*, allegedly failing to "process" a token-for-cash sales

17  transaction that was "denied" in a market collapse where there was no willing buyer.

18          Regardless, the July 2019 statement could not possibly have related to UST because, again,

19  UST did not exist and was not even launched until a year later.  *See Supra* Section VI.  The March

20  2022 statement also has nothing seemingly to do with UST. Plaintiffs discuss "settlement" of

21  trades (*i.e.* instantly processing an agreed-upon trade that did go forward), and, of course, the

22  settlement of a trade means that a seller and buyer actually agreed to a trade in the first instance.

23  The March, 2022 statement says nothing about whether or how long it might take for a seller to

24  match with a willing buyer, much less a buyer willing to pay cash (U.S. dollars) for a "token" at

25  any point in the indeterminate future. Nothing in the statement is even close to a promise by Prime

26  Trust that it would ever find a buyer for UST, or anything—again, Prime Trust processes trades

27  that are made, and can only process the sale of UST-for-dollars if there are two parties who agree

28

1   to such a deal.

2         Second, even assuming that the March 2022 statement somehow was a representation to

3   Plaintiff that Prime Trust would never "deny" an order and/or always be able to find a cash buyer

4   for UST in the future (again, that would be an unreasonable reading of the words), the Complaint

5   fails to plead any particularized basis that in March 2022 Prime Trust harbored any doubt about

6   its future ability to process trades and/or the future liquidity of the UST market.  To the contrary,

7   the *only* facts alleged in the Complaint are that the *first* time that UST ever became "unpegged"

8   from the USD was May 9, 2022, which Plaintiffs admit was the first time the "risk materialized"

9   and market failed.  Compl. ¶ 41.  There is no particularized basis that Prime Trust—or frankly,

10  anyone—knew that in March 2022 that there would be a "market collapse" two months later.  *See*

11  *Ronconi*, 253 F.3d, at 430 (affirming dismissal of fraud claims where, as here, complaint failed to

12  plead facts showing speakers knew what would occur in future).

13        Third, the Complaint fails to allege that Plaintiffs heard the statements or relied upon them,

14  and does not plead that the never-heard statements caused investment losses in May 2022, as

15  required to plead reliance and causation.  *Urb. Outfitters, Inc.*, 2022 WL 4134127, at *5.

16           **d.**    **October 2022 Statement.**

17        Plaintiffs' final challenged statement is from October 2022 (Compl. ¶ 27), which cannot

18  state a claim for all the reasons set forth above.  Worse still, Plaintiffs could never possibly plead

19  "reliance" and "causation" with respect to this statement because it allegedly was made in ***October***

20  ***2022—five months after Plaintiffs allegedly attempted to liquidate their UST on May 9, 2022.***

21        To the extent this post "collapse" challenged "statement" demonstrates anything, it is that

22  Plaintiffs have overwhelmed their Complaint with impertinent material that could not possibly

23  state a claim, perhaps in an effort to conceal their failure  to do so.[10]  *See, e.g., In Re Secure*

24

---

25  [10] In this regard, Plaintiffs further obscure their threadbare claims with endless quotation from
the media that have nothing to do with Prime Trust, and seemingly damning soundbites that do
26  not plead any claims against Prime Trust.  For example, quoting Senator Durbin and Federal
Reserve Chair Janet Yellen about risks related to 401(k) investing in cryptocurrency (which is
27  not alleged here), or the need to regulate certain stablecoins because they present "run-on-the-
bank" risk *after* the market collapsed in May 2022, do not plead anything about whether Prime

28

1  *Computing Corp. Securities Litigation*, 120 F.Supp. 2d 810, 816 (N.D. Cal. 2000) (ordering

2  plaintiff to reformulate complaint in straightforward manner where, as here, plaintiff populated

3  complaint with distracting, superficial but substantively irrelevant "allegations" that could not

4  support fraud theory)).

5       **B.    Plaintiffs Fail To State A Claim For Breach Of Fiduciary Duty.**

6       Plaintiffs allege that Prime Trust owed them fiduciary duties based on three theories: (1)

7  "virtue of the confident reposed in the integrity of Defendants by Plaintiffs" (Compl. ¶ 60)

8  ("Confidence Theory"), (2) because Prime Trust was the trustee of a trust for which Plaintiffs were

9  beneficiaries (*id.* at ¶ 61) ("Trust Theory"), and (3) because Prime Trust served as the "role of

10  escrow agents in transactions" to which Plaintiffs were parties (*id.* at ¶ 62) ("Escrow Agent

11  Theory"). These theories are confused, conflated and, when untangled, fail to state a legitimate

12  "fiduciary" claim.

13       **1.    The theories are not supported by the required factual predicate.**

14       Plaintiffs' fiduciary theories are thematic conclusions that are unsupported by the pleaded

15  facts necessary to show that any hypothesized fiduciary relationship actually existed. *See Andes*

16  *Indus., Inc. v. Cheng Sun Lan*, 774 F.App'x 358, 360 (9th Cir. 2019) (affirming dismissal of

17  conclusory allegation that defendant owed fiduciary duty).

18       First, with respect to the Confidence Theory, Plaintiffs make the fact-free assertion that

19  they "reposed" "confidence . . . in the integrity of Defendant[]." Compl. ¶ 60. To forge a fiduciary

20  duty, Plaintiffs must go beyond saying "I trusted" the defendant by pleading *facts* that would give

21  rise to such a fiduciary duty of trust. *Harlow v. MTC Fin. Inc.*, 865 F.Supp. 2d 1095, 1099 (D.

22  _____

23  Trust knew about the collapse before it happened—and certainly Senator Durbin and
Chairwoman Yellen didn't claim any such foresight. Compl. ¶¶ 20, 44.

24       Further, quoting someone named "John Eggleton," who accused Prime Trust of
"violating the law" in May 2022 (*id.* ¶ 49),—without any pleading who he is, and why his

25  pejoratives mean anything— is *just name-calling, not a Rule 9(b) pleading.* By the way, if
Plaintiffs consider it appropriate plead "fraud-by-Eggleton," he also publicly stated how "proud

26  [he is] to work with Prime Trust which offers best-in-class financial infrastructure." *See*
*Intellabridge Announces Collaboration with Prime Trust to Onramp US Customers,* NEWSFILE

27  (Jan. 18, 2022), https://www.newsfilecorp.com/release/110621/Intellabridge-Announces-
Collaboration-with-Prime-Trust-to-Onramp-US-Customers (last visited Jan. 27, 2023).

28

1    Nev. 2012) ("A fiduciary duty also may arise when there are "facts evidencing a confidential

2    relationship above and beyond that ordinarily found between [grantor] and trustee. . . [;] [s]uch

3    facts include . . . where a [grantor] reposes its trust or confidence in the trustee and *relies* on the

4    trustee's guidance.") (emphasis added).   However, the Complaint fails to identify *any* act or

5    statement evidencing any "confidential relationship"—much less one where Prime Trust assumed

6    any duties beyond the commercial contractual relationship the parties memorialized in the User

7    Agreement.   Plaintiffs, for example, do not allege (1) that Prime Trust said or did anything to

8    solicit Plaintiffs' confidence in a fiduciary way, (2) that  Prime Trust said or did anything to

9    indicate that it had voluntarily accepted Plaintiffs' confidence, or (3) that Prime Trust offered any

10   "guidance," much less that Plaintiffs had done anything, on any day, in reliance upon any guidance

11   or advice.  Instead all that exists in the Complaint is the *ipsi dixt* claim that Prime Trust voluntarily

12   accepted—or was assumed by Plaintiffs to have accepted—Plaintiffs' confidence in Prime Trust's

13   "integrity."  If saying "I trusted you" or "I thought you had integrity," was enough to create a

14   fiduciary duty, any commercial relationship could be a "fiduciary" lawsuit.

15            Second, with respect to the Escrow Theory, Plaintiffs similarly fail to plead facts sufficient

16   to show that the existence of any escrow relationship.  Under Nevada law, to create duties for an

17   escrow agent there must be an "escrow agreement," which requires that "a buyer and seller agree

18   to conditions for a deposit, the escrow agent agrees to receive and distribute the deposit under the

19   conditions, and the agent receives the deposit."  *Horner v. Semenza*, 129 Nev. 1123, at *3 (2013).

20            Here the Complaint does not allege any "escrow agreement" as required by Nevada law.[11]

21   Nor does the Complaint allege how or when Prime Trust did anything else to assume the "role of

22   escrow agents in transactions" in the absence of the required "agreement."  *Compare* Compl. ¶ 62

23   to *Horner*, 129 Nev., at *2.  The Complaint *(i)* does not even identify any specific "transactions"

24   where any Plaintiff was a seller (or buyer) and where Prime Trust was the "escrow agent" in the

25   middle; *(ii)* does not identify the statutorily-required "conditions for [any] deposit;" and *(iii)* does

26

27   [11] The "User Agreement" that forms the basis for the parties' relationship also says *nothing whatsoever* about any "escrow."  *See generally* User Agreements.

28

13

1  not even identify any counter-party to the never-alleged transactions (*i.e.*, the buyer or seller).

2        Third, any claim for breach of fiduciary duty—under the Escrow Theory, Confidence

3  Theory, Trust Theory, or any common law tort theory—requires Plaintiffs to plead that the breach

4  caused damages. *See Hazen v. Prudential Sec., Inc.*, 12 F.3d 1106, at \*3 (9th Cir. 1993) (fiduciary

5  duty claim insufficient where, as here, plaintiff failed to allege proximate causation under Nevada

6  law). Here, Plaintiffs' core claim is that Prime Trust *did not process* "sell orders" after the market

7  "collapsed"— the orders were "denied." *See Compl.* ¶¶ *7, 9-11.* Although Plaintiffs claim their

8  UST lost all (or most) of its value, those investment losses are not alleged to have been proximately

9  "caused" by any fiduciary breach. Prime Trust is not alleged to have ever once advised Plaintiffs

10  to buy UST in the first instance, nor alleged to have ever once advised Plaintiffs whether or when

11  they should profitably sell UST. Nor could Plaintiffs in good faith ever so allege because in the

12  User Agreement they agreed to be "solely responsible" for investment decisions, and "Prime Trust

13  will . . . make no recommendation of investments or transactions." User Agreement § 2.4(b).

14        **2.**    **The Trust Theory is foreclosed by the User Agreement and Nevada**

15             **directed trust law.**

16        Plaintiffs' alternative Trustee Theory must be dismissed because the Complaint fails to

17  plead facts necessary to give rise to any supposed "breach in the role of trustee." Compl. ¶ 61.

18  Under Nevada law, "[a] trust is created *only if* . . . [t]he settlor [*i.e.* the entity making the trust]

19  properly manifests an intention to create a trust." NRS 163.003. Here, Plaintiffs' problem is that

20  the parties *did* agree to form a contractual relationship by entering into the User Agreement—and

21  by its very terms the Agreement explicitly exculpates Prime Trust from any such fiduciary trust

22  liability with direct contractual reference to Nevada state law.

23        First, under NRS 163.004, a relationship-creating instrument like the User Agreements,

24  "may expand, restrict, eliminate or otherwise vary the rights and interests of beneficiaries *in any*

25  *manner*" "[a] fiduciary's powers, duties, standards of care, rights of indemnification and liability

26  to persons whose interests arise from the trust instrument." NRS 163.004 (emphasis added). In

27  other words, a contract is the binding instrument that defines and limits the scope of any potential

28

"trustee" duties—and here Plaintiffs fail to allege any breaches of the duties as defined in the User

Agreements. From there, the *User Agreements expressly eliminated the duties* that Plaintiffs allege

Prime Trust violated—*i.e.*, the allegedly breached duty to "process" Plaintiffs' "sell orders" and/or

any duty to find willing cash buyers for their UST (itself essentially a claim that Prime Trust was

obligated to ensure open market liquidity). In this regard, the User Agreements states "***Prime***

***Trust may not promptly or in a timely manner execute Account Holder order(s)*** due to internal

delays, and Prime Trust makes no representation that its Services are in any way suitable for active

trading or any activity requiring prompt or exact execution." User Agreement § 2.4(t)(vi).

The User Agreements further explain that liquidity is not based on Prime Trust's ability to

fulfil orders, but on the market. The User Agreements state "[t]he value of Digital Assets may be

derived from the continued willingness of market participants to exchange Fiat Currencies or

Digital Assets for Digital Assets, which may result in the potential for ***permanent and total loss***

***of value of a particular Digital Asset should the market for that Digital Asset disappear.*** " User

Agreement § 2.4(o). And as if that were not enough, the Agreements darkly and precisely warned

that digital assets such as UST could completely lose value due to liquidity collapses: "[t]he price

and liquidity of Digital Assets have fluctuated substantially in the past and may fluctuate

substantially in the future, and such fluctuation may affect the value of your Account, ***including a***

***total loss of the value of Digital Assets.*** " User Agreement § 2.4(i).[12]

Similarly, the User Agreements disclaim Prime Trust's responsibility for making

investment recommendations. Plaintiffs agreed that "Prime Trust will not exercise any legal,

*investment*, tax, or accounting planning, advice, discretion, or recommendation whatsoever

regarding your Account." User Agreement § 1.7 (emphasis added). The Plaintiffs also agreed to

---

[12] Plaintiffs acknowledged many redundantly similar warnings in their User Agreements   -
including that there may not be buyers, or enough buyers, willing to pay any expected price. *See*
User Agreement § 2.4(q) ("Due to the volatility and unpredictability of the price of Digital Assets
relative to Fiat Currencies, trading and owning Digital Assets may result in significant loss over a
short period of time."), § 2.4(t)(ii) ("[O]ther orders may trade ahead of Account Holder's order and
exhaust available volume at a posted price."); § 2.4(t)(iii) ("[E]xchanges, market makers or other
types of sellers or purchasers may fail to honor posted or otherwise agreed-upon prices.").

1    accept sole responsible for their own investment decisions:

> "Account Holder is solely responsible for, and Prime Trust has no involvement in,
> determining whether any investment, investment strategy, or related transaction is
> appropriate for Account Holder. Prime Trust will have no duty or responsibility to
> review or perform due diligence on any investments or transactions and will make
> no recommendation of investments or transactions, nor supervise any such
> investments or transactions. *You will perform your own due diligence on all
> investments and take sole responsibility for all decisions made for your Account.*"

6    User Agreement § 2.4(b) (emphasis added).

7        Second, under Nevada Trust Law, Prime Trust also cannot be liable for any alleged breach

8    because it was a directed fiduciary. The User Agreements are crystal clear that Prime Trust served

9    as a directed fiduciary for Plaintiffs "in accordance with NRS 163.5548" and that Plaintiffs were

10    directed trust advisors "in accordance with NRS 163.5549." *See* User Agreements § 12.1. Here,

11    any "direction" by Plaintiffs to sell their UST was impossible in a market without buyers—and

12    NRS 163.5549 explicitly exculpates Prime Trust from liability for "[f]ailing to take any action" if

13    the action was "contingent upon a condition that was not met or satisfied." *See* NRS 163.5549

14    Here, Prime Trust is alleged to have failed to "process" transactions ("sell orders") under

15    circumstances where plaintiffs do not allege that the most basic "contingency" was satisfied, *i.e.*,

16    that there were any buyers willing to pay U.S. dollars for the UST that Plaintiffs wanted to sell.

17    To the extent that Plaintiffs plead anything relevant, they are facts that foreclose the contingency

18    that there were willing buyers. Compl. ¶ 48 ("UST has been essentially abandoned").

19        Third, Plaintiffs' apparent theory that Prime Trust breached some fiduciary duty by not

20    informing Plaintiffs of the risks of investing, including that it may become impossible to "process"

21    sales if there are no buyers and/or that UST was "uncollateralized"[13] (Compl. ¶ 70), is also

22    foreclosed by NRS 163.5549(2), which states:

> 2.  A directed fiduciary is not liable for any obligation to perform an investment
> or suitability review, inquiry or investigation or to make any recommendation or
> evaluation with respect to any investment, to the extent that the investment is made
> by a directing trust adviser.

---

[13] Notably, Plaintiffs concede that the fact that UST was uncollateralized was known, just not
"commonly known." Compl. ¶ 41. Plaintiffs cannot claim that anyone fraudulently concealed a
"known fact," and are conspicuously silent as to whether that fact was "known" to them.

1  That statutory exculpation from liability is also consistent with the User Agreements, where

2  Plaintiffs personally acknowledged that Prime Trust owed no such duty, User Agreement § 2.4(b),

3  and as noted *supra,* Prime Trust compulsively and redundantly disclosed the enormous risk.

4          **C.**       **Plaintiffs Fail To State A Claim For Conversion.**

5          The conversion claim fails because Plaintiffs do not allege that Prime Trust has taken

6  anything.  Conversion is "a distinct act of dominion wrongfully exerted over another's personal

7  property in denial of, or inconsistent with his title or rights therein or in derogation, exclusion, or

8  defiance of such title or rights."  *Evans v. Dean Witter Reynolds, Inc.*, 116 Nev. 598, 606, 5 P.3d

9  1043, 1048 (2000) (citation omitted).  Plaintiffs must either (1) allege "a demand and subsequent

10  refusal by the defendants to turnover the" property allegedly converted, or (2) allege facts that the

11  conversion is complete without a demand and refusal.  *In re W. World Funding, Inc.*, 52 B.R. 743,

12  765 (Bankr. D. Nev. 1985), *aff'd in part, rev'd in part sub nom. Buchanan v. Henderson*, 131 B.R.

13  859 (Bankr. D. Nev. 1990), *rev'd*, 985 F.2d 1021 (9th Cir. 1993).

14          The Complaint does not state a claim under either scenario.  All Plaintiffs allege is that

15  Prime Trust refused to "process" the sale of UST.  Compl. ¶ 86.  Plaintiffs do not claim that they

16  have ever requested the return any UST that they deposited in a Prime Trust account, much less

17  that Prime Trust refused to do so.  That is, Plaintiffs are not suing to recover whatever UST may

18  be in Prime Trust's custody, but instead are seeking damages for their inability to sell illiquid

19  crypto tokens to some third-party cash buyer (that since May 9, 2022 does not seem to exist).

20  Compl. ¶¶ 7, 9-11.  If Plaintiffs request UST back, they will get it back.   The UST is not Prime

21  Trust's property.  Prime Trust is a *contractual custodian*.

22          **D.**       **Plaintiffs Fail To State A Claim For Unjust Enrichment.**

23          Plaintiffs' unjust enrichment claim also must be dismissed.

24          First, Plaintiffs' unjust enrichment claim should be dismissed because it is based on fraud

25  and fails to meet the same Rule 9(b) standard addressed *supra,* Section IV(A)(1).  *See also Puri v.*

26  *Khalsa*, 674 F.App'x 679, 690 (9th Cir. 2017) (unjust enrichment claim based on fraud must meet

27  Rule 9(b) particularized pleading requirements).  Specifically, Plaintiffs allege that Prime Trust

28

acquired the alleged benefit from Plaintiffs by "failing to disclose" certain information that Plaintiffs "previously alleged" elsewhere in the Complaint.  Compl. ¶ 96.  That is word salad. Plaintiffs fail to plead any particulars, including why any statement was false at the time made, whether Plaintiffs relied upon any statement, and how the never-specified statements "unjustly enriched" Prime Trust.  *See supra* Section I.[14]

Second, Plaintiffs' unjust enrichment claim fails because Plaintiffs' allegations do not match (a) the alleged "benefit" conferred on Prime Trust to (b) the alleged enrichment appreciated by Prime Trust.  The unjust enrichment remedy is for a plaintiff who confers a benefit on the defendant, where the defendant appreciates such benefit, and there is acceptance and retention by the defendant of such benefit under circumstances such that it would be inequitable for him to retain the benefit without payment of the value thereof.  *Certified Fire Prot. Inc. v. Precision Constr.*, 128 Nev. 371, 381, 283 P.3d 250, 257 (2012); *Tsambis v. Irvine*, No. 217CV2482JCMCWH, 2018 WL 3186940, at *9 (D. Nev. June 28, 2018).

Here, Plaintiffs allege that the benefit they conferred upon Prime Trust was from "granting Defendants access to withdraw funds from their accounts and allowing Defendants the power to execute transactions on their behalf."  Compl. ¶ 92.  More doublespeak.  That is not an allegation that Prime Trust ever received any benefit at all—Plaintiffs themselves allege that Prime Trust has "refused to execute the transaction" sought by the Plaintiffs.  Compl. ¶ 93.  "None of these allegations indicate that the plaintiff directly conferred a benefit on the defendants." *See Tsambis*, 2018 WL 3186940, at *9 (quoting *Chemeon Surface Technology, LLC. v. Metalast Int'l, Inc.*, 2018 WL 1863064, at *7 (D. Nev. 2018)).

### E.   Plaintiffs Fail To State A Claim For Negligence.

Plaintiffs cannot recast their deficient claims as "negligence."

First, Plaintiffs incorrectly claim that Prime Trust owed a duty based on affirmative

---

[14] Saying that all the missing particularity is "previously alleged" is a classic example of the "puzzle pleading" that has been rejected for years.  *See, e.g.*, *Hughes v. Accretive Health, Inc.*, No. 13 CV 3688, 2014 WL 4784082, at *5 (N.D. Ill. Sept. 25, 2014) (puzzle pleading occurs when complaint quotes statement followed with stock assertion that statement is false for reasons stated in some earlier paragraph, creating puzzle that court and defendants must piece together).

conduct. Compl. ¶ 102(a). But Plaintiffs never allege *what* that duty was supposed to be—and what conduct gave rise to it. Other than allegations that appear to go to their fiduciary duty claim, the Complaint is silent on how or why Prime Trust's conduct purportedly created any duty owing to Plaintiffs.[15] The conduct alleged in paragraph 102(a) could as easily have been undertaken by a bank teller, courier, or office assistant as it could have by Prime Trust, and why any of that conduct imposes a duty of care to accept a "sell order," or do anything else, is a msytery.

Second, Plaintiffs also appear to incorrectly claim that Prime Trust owed Plaintiffs a duty based on affirmative representations. Compl. ¶ 102(a). But since the Plaintiffs' affirmative representation allegation sounds in fraud, it fails due to the Complaints' failure to meet the requirements of Rule 9(b). *See supra* Section IV(A)(1); *Vess v. Ciba-Geigy Corp. USA*, 317 F.3d 1097, 1103–04 (9th Cir. 2003) (even where fraud is not a necessary element of every claim, if plaintiff alleges defendant engaged in fraudulent conduct, pleading of other claims must satisfy Rule 9(b)). Again, Prime Trust never promised to accept orders, so it wasn't negligent for having allegedly "denied" them.

Third, Plaintiffs also incorrectly argue that "public policy supports a finding of duty through a special relation" based on the circumstances alleged in the Complaint. Compl. ¶ 102(b). Plaintiffs do not identify what "public policy" makes prime trust negligent. This vague theory seems to run directly counter to the public policy already memorialized in the Nevada statutes governing directed trusts. Specifically, Nevada courts have explained "[a] special relationship [sufficient to create a duty of care] generally arises where a party's ability to protect herself is limited in some way by submitting to the control of the other party." *Estrada v. Steam Maxx Carpet & Upholstery Cleaning*, 133 Nev. 1006 (Nev. App. 2017) (citing *Scialabba v. Brandise Const. Co., Inc.*, 112 Nev. 965, 969, 921 P.2d 928, 930 (1996)). Here, Plaintiffs *have not* submitted to the control of Prime Trust; it is the other way around. Prime Trust is a *directed* fiduciary and

---

[15] As discussed above, *supra* Section IV(B), Plaintiffs failed to allege facts sufficient to create fiduciary duties, and to the extent such fiduciary duties are based on Prime Trust's role as a trustee, Nevada state law and the User Agreements exculpate and disclaim duties that cover the alleged acts here.

1  Plaintiffs are the directing trust advisor—*i.e.*, it is Plaintiffs who do the "directing." *See* User

2  Agreement § 12. Plaintiffs had direct control over when to sell UST and at what price to sell UST.

3  In such circumstances, Nevada has already decided the appropriate public policy for this Court to

4  apply; where a directed fiduciary, such as Prime Trust, acts under the direction of a directed

5  fiduciary such as Plaintiffs (or cannot act because of a failure of condition required to act), the

6  directed fiduciary should not be liable in any way. NRS 163.5549(a) & (b). Finding a special

7  relationship under such circumstances—as Plaintiffs request—would run counter to established

8  Nevada public policy.

9         Fourth, Plaintiffs' alleged duty of care arising under a bailment theory giving "rise to a

10  duty to use care in handling the funds and to *return the funds as ordered*" (Compl. ¶ 102(c)

11  (emphasis added)) fails because Plaintiffs nowhere allege that they asked Prime Trust to return

12  whatever UST they placed in a Prime Trust account. *See Borenstein v. Animal Found.*, 526 F.Supp.

13  3d 820, 838 (D. Nev. 2021) ("Where a bailee, either for hire or gratuitously, is entrusted with care

14  and custody of goods, it becomes his duty . . . to return the goods or show that their loss occurred

15  without negligence on his part.") (*citing Kula v. Karat, Inc.*, 91 Nev. 100, 531 P.2d 1353, 1355

16  (1975)). *See also supra* Section IV(C). Again, they can have their UST back, if they ask.

17         Fifth, Plaintiffs' negligence *per se* claims (Compl. ¶¶ 105-106) fail because they are based

18  on their inadequate allegations that Prime Trust violated Nevada's deceptive trade practices law

19  (*id.* at ¶ 105(a)), and their inadequate allegations Prime Trust violated Nevada's trustee law (*id.* at

20  ¶ 105(b) & (c)). As explained above, the Complaint fails to adequately plead deceptive trade

21  practices with specificity including why Prime Trust's statements were false at the time made, and

22  fails to identify any reliance by Plaintiffs on Prime Trust's alleged representations. *Supra* Section

23  IV(A)(1). Any negligence *per se* claim based on Prime Trust's alleged violation of the deceptive

24  trade practices statute is similarly deficient. Likewise, the Complaint either (1) fails to adequately

25  allege the creation of a trust relationship (*supra* Section IV(B)), or (2) the User Agreements make

26  clear that there can be no liability in light of NRS 163.5549 and the limitations on Prime Trust's

27  duties set forth in the User Agreement (*supra* Section IV(A)).

28

V.   **CONCLUSION**

The Court should grant Prime Trust's motion and dismiss Plaintiffs' Complaint, with prejudice.

Respectfully submitted,

Dated: January 27, 2023                    By: /s/ Jonathan A. Shapiro

MITCHELL J. LANGBERG (NVBN 10118)
*mlangberg@bhfs.com*
ERIC D. WALTHER (NVBN 13611)
*ewalther@bhfs.com*
**BROWNSTEIN HYATT FARBER
SCHRECK, LLP**
100 North City Parkway, Suite 1600
Las Vegas, NV 89106
Phone: +1 702 464 7098

JONATHAN A. SHAPIRO (*admitted pro hac vice*)
*JShapiro@goodwinlaw.com*
**GOODWIN PROCTER LLP**
Three Embarcadero Center, 28th Floor
San Francisco, CA 94111
Phone: +1 415 733 6000
Fax: +1 415 677 9041

AARON S. THOMPSON (*admitted pro hac vice*)
*AThompson@goodwinlaw.com*
NATALIE R. GARSON *(admitted pro hac vice)*
*NGarson@goodwinlaw.com*
**GOODWIN PROCTER LLP**
520 Broadway, Suite 500
Santa Monica, CA 90401
Phone: +1 424 252 6400
Fax: +1 424 252 6401

*Attorneys for Defendant Prime Trust, LLC*

1

**CERTIFICATE OF SERVICE**

2        Pursuant to Fed. R. Civ. P. 5(b), and Section IV of District of Nevada Electronic Filing

3    Procedures, I certify that I am an employee of BROWNSTEIN HYATT FARBER SCHRECK,

4    LLP, and that the foregoing **DEFENDANT PRIME TRUST'S MOTION TO DISMISS**

5    **COMPLAINT** was served via electronic service and email on the 27th day of January, 2023, to

6    the addresses shown below:

7    Michael Gayan, Esq.                    Julie Erickson, Esq.
     Mona Kaveh, Esq.                       Elizabeth Kramer, Esq.
8    KEMP JONES, LLP                        Kevin Osborne, Esq.
     m.gayan@kempjones.com                  ERICKSON KRAMER OSBORNE LLP
9    m.kaveh@kempjones.com                  Julie@eko.law
                                            elizabeth@eko.law
10                                          kevin@eko.law

11   *Attorneys for Plaintiffs*

12

13                              */s/ Wendy Cosby*
                                an employee of BROWNSTEIN HYATT FARBER
14                              SCHRECK, LLP

15

16

17

18

19

20

21

22

23

24

25

26

27

28