**IN THE UNITED STATES
BANKRUPTCY COURT FOR THE
DISTRICT OF DELAWARE**

**FEE APPLICATION COVER SHEET FOR THE PERIOD
AUGUST 31, 2023 THROUGH JANUARY 5, 2024**

| | | | |
|---|---|---|---|
| Debtor: | Prime Core Technologies Inc. et al.,[1] | Applicant: | Brown Rudnick LLP |
| Case No.: | 23-11161(JKS) | Client: | Official Committee of Unsecured Creditors |
| Chapter: | 11 | Case Filed: | August 14, 2023 |

## SECTION 1
## FEE SUMMARY

☐ Monthly Fee Application No. _ or ☐ Interim Fee Application No. _ or ☒ Final Fee Application

Summary of Amounts Requested for the Period from August 31, 2023 through January 5, 2024 (the "Final Fee Application").

| | |
|---|---|
| **Total Fees and Disbursements Requested:** | **$1,433,022.96** |
| Total Fees Requested: | $1,420,513.00[2] [3] |
| Total Disbursements Requested: | $12,509.96[4] |
| | |
| **Holdbacks Due:** | **$ 514,479.63** |
| | |
| **Amount Due not Previously Requested:** | |
| January 1, 2024 – January 5, 2024 Fees and Expenses: | $32,873.15 |
| Fees Incurred in Preparation of Final Fee Application[5]: | $29,390.00 |

---

[1] The Debtors in these chapter 11 cases, along with the last four digits of each debtor's federal tax identification number are: Prime Core Technologies Inc. (5317); Prime Trust, LLC (6823); Prime IRA LLC (8436); and Prime Digital, LLC (4528). The Debtors' service address is 10845 Griffith Peak Dr., #03-153, Las Vegas, NV 89135.

[2] Brown Rudnick excluded fees in the amount of $68,586.50 in respect of transient timekeepers and other voluntary reductions.

[3] The total fees requested in this Final Fee Application include $29,390.00 for time spent in connection with the preparation and filing of the December Monthly Fee Application and this Final Fee Application.

[4] Brown Rudnick has voluntarily excluded a total of $1,231.15 in costs during the Final Fee Application Period.

[5] Includes fees incurred in preparation of December Monthly Fee Application.

| NAME OF PROFESSIONAL & TITLE | YEAR ADMITTED (Or Years of Professional Service) | HOURS | RATE[6] | FEE |
|---|---|---|---|---|
| 1.  Robert J. Stark | Partner 1995 | 133.3 | $1,950 | $244,905.00 |
| 2.  Bennett S. Silverberg | Partner 2001 | 237.4 | $1,390 | $318,284.00 |
| 3.  Stephen D. Palley | Partner 1998 | 13.9 | $1,390 | $19,321.00 |
| 4.  Vincent J. Guglielmotti | Partner 2005 | 1.2 | $1,375 | $1,650.00 |
| 5.  Barbara J. Kelly | Counsel 1982 | 64.0 | $1,375 | $88,000.00 |
| 6.  Philip J. Flink | Partner 1981 | 11.2 | $1,360 | $15,232.00 |
| 7.  Michael S. Winograd | Partner 2001 | 5.3 | $1,280 | $6,784.00 |
| 8.  Kenneth J. Aulet | Partner 2012 | 2.0 | $1200 | $2,400.00 |
| 9.  Nicole M. Bouchard | Partner 2009 | 30.8 | $1,200 | $37,020.00 |
| 10.  John C. Cushing | Partner 1999 | 3.6 | $1,140 | $4,104.00 |
| 11.  Shari I. Dwoskin | Partner 2014 | 109.5 | $1,025 | $112,237.50 |
| 12.  Tristan G. Axelrod | Partner 2015 | 168.5 | $1,000 | $165,900.00 |
| 13.  Hailey Lennon | Partner 2012 | 9.4 | $975 | $7,905.00 |
| 14.  Daniel J. Healy | Partner 1999 | 29.6 | $925 | $27,380.00 |
| 15.  Matthew A. Sawyer | Associate 2019 | 145.6 | $890 | $126,068.50 |
| 16.  Lydell W. Benson, Jr. | Associate 2022 | 15.2 | $765 | $11,628.00 |
| 17.  Jennifer M. Schein | Associate 2017 | 179.7 | $765 | $136,476.00 |
| 18.  Jane W. Motter | Associate 2021 | 56.9 | $685 | $40,245.50 |
| 19.  Richard Jean -Baptiste | Associate 2021 | 5.9 | $685 | $4,041.50 |
| 20.  Harriet E. Cohen | Paralegal | 16.6 | $490 | $8,134.00 |
| 21.  Thomas Burns | Paralegal | 37.6 | $490 | $18,424.00 |
| 22.  Madelyn A. Soliman | Paralegal | 8.4 | $470 | $3,948.00 |
| **TOTALS** | | **1285.6** | | **$1,400,088.00[7]** |

Fee Totals:                          $1,420,513.00

Disbursements Totals:                $12,509.96

Total Fee Application                $1,433,022.96

---

[6]    Rates do not reflect rate increases as provided in Docket No. 608, which took effect January 1, 2024.

[7]    Does not reflect voluntary reductions of $8,965.00 in the aggregate following informal comments from the United States Trustee to certain Monthly Fee Statements or $29,390.00 related to the preparation of the December Monthly and Final Fee Applications.

**SECTION II**
**SUMMARY OF SERVICES**

| SERVICES RENDERED | HOURS | FEE |
|---|---|---|
| a) **Asset Analysis and Recovery:**<br><br>Identification and review of potential assets including causes of action and non-litigation recoveries. | 185.8 | $192,460.00 |
| b) **Avoidance Action Litigation**<br><br>Preference and fraudulent transfer litigation. | 1.0 | $1,894.00 |
| c) **Case Administration**<br><br>Coordination and compliance activities, including preparation of statement of financial affairs, schedules, list of contracts, United States Trustee interim statements and operating reports; contacts with the United States Trustee; general creditor inquires. | 98.6 | $78,122.00 |
| d) **Claims Administration and Objections**<br><br>Specific claim inquiries; bar date motions; analyses, objections and allowance of claims. | 11.4 | $12,858.50 |
| e) **Fee/Employment Applications**<br><br>Preparations of employment and fee applications for self or others; motions to Establish interim procedures. | 111.90 | $93,254.00 |
| f) **Fee/Employment Objections**<br><br>Review of an objections to the employment and fee applications of others. | 15.6 | $13,771.50 |
| g) **Financing**<br><br>Matters under 361, 363 and 364 including cash collateral and secured claims; loan document analysis. | 28.8 | $34,987.00 |
| h) **Litigation/Contested Matters**<br><br>Other than Avoidance Action Litigation (there should be a separate category established for each major matter). | 7.0 | $5,425.00 |
| i) **Meetings of Creditors**<br><br>Preparing for and attending the conference of creditors, the 341(a) meeting and creditors' committee meetings. | 189.8 | $237,789.00 |
| j) **Plan and Disclosure Statement**<br><br>Formulation, presentation and confirmation; compliance with the plan confirmation order, related orders and rules; disbursement and case closing activities, except those related to allowance and objections to allowance of claims. | 506.6 | $591,059.00 |
| k) **Tax**<br><br>Analysis of tax issues and preparation of state and federal tax returns. | 19.7 | $21,511.50 |
| l) **Travel Time (billed @ 50%)** | 35.6 | $26,540.50 |
| m) **Committee Governance Matters**<br><br>Analysis regarding committee governance matters, including creation of by-laws and addressing other governance matters. | 15.2 | $16,325.00 |

| SERVICES RENDERED | HOURS | FEE |
|---|---|---|
| n) **Investigation and Due Diligence** <br> **(Committee Investigation)** <br> Investigation and analysis of prepetition transactions and activities of the Debtor and related entities and assessment of potential claims and causes of action. | 64.4 | $64,981.50 |
| o) **Hearings** <br> Preparation for and attendance at hearings. | 28.1 | $38,499.50 |
| **SERVICE TOTALS:** | **1292.5** | **$1,420,513.00** |

## SECTION III
## FEE APPLICATIONS FILED IN ACCORDANCE WITH
## INTERIM FEE ORDER MONTHLY FEE
## APPLICATIONS

| | Fee Period | Date & Docket No. | Requested Fees | Requested Expenses | Previously Allowed Fees (80%) | Previously Allowed Expenses (100%) | Fee Holdback (20%) | Total Remaining to Be Paid |
|---|---|---|---|---|---|---|---|---|
| 1 | 8/31/23 – 9/30/23 | 10/27/23 Docket No. 353 | $535,140.00 | $2,248.84 | $428,112.00 | $2,248.84 | $107,028.00 | $107,028.00 |
| 2 | 10/1/23 – 10/31/23 | 12/7/23 Docket No. 533 | $414,783.00[8] | $3,145.08 | $331,826.40 | $3,145.08 | $82,956.60 | $82,956.60 |
| 3 | 11/1/23 – 11/30/23 | 12/26/23 Docket No. 657 | $188,533.00[9] | $2,384.61 | $150,826.40 | $2,384.61 | $37,706.60 | $37,706.60 |
| 4 | 12/1/23 – 12/31/23 | 1/19/24 Docket No. 709 | $220,034.50 | $4,490.78 | N/A | N/A | N/A | $224,525.28 |
| | 1/1/24 – 1/5/24 Not Previously Submitted | N/A | $32,632.50 | $240.65 | N/A | N/A | N/A | $32,873.15 |
| | Time Spent Preparing Final Fee Application | N/A | $29,390.00 | $0.00 | N/A | N/A | N/A | $29,390.00 |
| | | TOTAL | $1,420,513.00 | $12,509.96 | $910,764.80 | $7,778.53 | $227,691.20 | $514,479.63 |

---

[8]   Brown Rudnick agreed to reduce the fees sought in the Application from $416,729.00 to $414,783.00 following informal comments from the United States Trustee.

[9]   Brown Rudnick agreed to reduce the fees sought from $195,552.00 to $188,533.00 following informal comments from the United States Trustee.

**SECTION IV**
**SUMMARY OF DISBURSEMENTS**

| DISBURSEMENTS | AMOUNT |
|---|---|
| a)   **Filing Fees**<br>· | $12.12 |
| b)   **Computer Assisted Legal Research**<br>Westlaw, Lexis and a description of manner calculated.  Westlaw and LEXIS at vendor cost. | $958.26 |
| c)   **Pacer Fees**<br>Payable to the Pacer Service Center for search and/or print. | $10.80 |
| d)   **In-house Reproduction Services**<br>Exclusive of overhead charges. | $568.60 |
| e)   **Outside Reproduction Services**<br>Including scanning services.  This includes trial preparation. | $860.71 |
| f)   **Court Reporting**<br>Transcripts. | $5,139.53 |
| g)   **Travel**<br>Mileage, tolls, airfare, taxi, train, parking. | $4,363.49 |
| h)   **Other (specify) Meals** | $178.50 |
| i)   **Other (specify) eDiscovery Hosting** | $354.60 |
| j)   **Messenger** | $63.35 |
| **DISBURSEMENTS TOTAL:** | **$12,509.96** |

I certify under penalty of perjury that the above is true and correct to the best of my knowledge, information, and belief.

Date:  March 5, 2024                    _____/s/ *Robert J. Stark*_____

**IN THE UNITED STATES BANKRUPTCY COURT**
**FOR THE DISTRICT OF DELAWARE**

| | |
|---|---|
| In re: | Chapter 11 |
| Prime Core Technologies Inc. *et al.*,[1] | Case No. 23-11161 (JKS) |
| Debtors. | Objection Deadline: April 4, 2024 at 4:00 p.m. (prevailing Eastern Time) |

**FINAL APPLICATION FOR ALLOWANCE OF FEES AND REIMBURSEMENT OF EXPENSES OF BROWN RUDNICK LLP, AS COUNSEL TO THE OFFICIAL COMMITTEE OF UNSECURED CREDITORS, FOR SERVICES RENDERED AND REIMBURSEMENT OF EXPENSES INCURRED FOR THE PERIOD FROM AUGUST 31, 2023 THROUGH AND INCLUDING JANUARY 5, 2024**

Brown Rudnick LLP ("Brown Rudnick"), counsel to the Official Committee of Unsecured Creditors (the "Committee"), submits this final fee application (the "Application"), pursuant to sections 330(a) and 331 of title 11 of the United States Code, (the "Bankruptcy Code"), Rule 2016 of the Federal Rules of Bankruptcy Procedure (the "Bankruptcy Rules"), Rules 2016-1 and 2016-3 of the Local Rules of the United States Bankruptcy Court for the District of Delaware (the "Local Rules"), the *Findings of Fact, Conclusions of Law, and Order (I) Approving the Disclosure Statement on a Final Basis and (II) Confirming the Amended Chapter 11 Plan of Reorganization of Prime Core Technologies Inc. and its Affiliated Debtors Pursuant to Chapter 11 of the Bankruptcy Code* (the "Confirmation Order") [Docket No. 644], and Article 2.2(a) of the *Amended Joint Chapter 11 Plan of Reorganization For Prime Core Technologies Inc. And Its Affiliated Debtors* [Docket No. 521], seeking approval of fees and expenses for the period from August 31,

---

[1] The Debtors in these chapter 11 cases, along with the last four digits of each debtor's federal tax identification number are: Prime Core Technologies Inc. (5317); Prime Trust, LLC (6823); Prime IRA LLC (8436); and Prime Digital, LLC (4528). The Debtors' service address is 10845 Griffith Peak Dr., #03-153, Las Vegas, NV 89135.

2023, through January 5, 2024 (the "Final Application Period") in the amount of $1,420,513.00[2] in compensation for professional services and $12,509.96[3] in reimbursement of actual and necessary expenses and requests entry of an order substantially in the form submitted herewith.  In support of the Application, Brown Rudnick respectfully represents as follows:

1. On August 14, 2023 (the "Petition Date"), each of the Debtors filed voluntary petitions for relief under Chapter 11 of the Bankruptcy Code, thereby commencing the instant cases (the "Chapter 11 Cases").  On January 5, 2024, Debtors consummated their restructuring pursuant to the *Amended Chapter 11 Plan of Reorganization of Prime Core Technologies Inc. and its Affiliated Debtors* (the "Plan") [Docket No. 621].  Between the Petition Date and the Effective Date, the Debtors operated and managed their businesses as debtors-in-possession under sections 1107 and 1108 of the Bankruptcy Code.

2. The Debtors' Chapter 11 Cases are being jointly administered for procedural purposes only pursuant to Bankruptcy Rule 1015(b) [Docket No. 33].  No trustee or examiner has been appointed in the Chapter 11 Cases.

3. On August 29, 2023, the Office of the United States Trustee (the "U.S. Trustee") appointed the Committee in these Chapter 11 Cases.  *See Notice of Appointment of Official Committee of Unsecured Creditors* (the "Notice of Appointment") [Docket. No. 51].[4]

4. On August 31, 2023, the Committee selected Brown Rudnick as counsel subject to the Court's approval.  On October 16, 2023, the Court entered an order approving the retention

---

[2]  Brown Rudnick excluded fees in the amount of $68,586.50 in respect of transient timekeepers and other voluntary reductions.

[3]  Brown Rudnick voluntarily excluded a total of $1,231.15 of reimbursable costs during the Final Application Period.

[4]  On November 29, 2023, the U.S. Trustee filed the *Notice of Amended Appointment of Official Committee of Unsecured Creditors* on November 29, 2023, to reflect the removal of one member from the Committee [Docket No. 490].

and employment of Brown Rudnick as counsel *nunc pro tunc* to August 31, 2023 [Docket No. 300].

5.      This Application is Brown Rudnick's final application for allowance of compensation for services rendered and for reimbursement of expenses.  Brown Rudnick previously sought interim compensation through the filing of four monthly fee statements covering the period from August 31, 2023 through December 31, 2023 (collectively, with the January Application attached hereto as Exhibit B, the "Monthly Fee Statements") in accordance with the *Order Establishing Procedures for Interim Compensation and Reimbursement of Expenses of Professionals* (the "Interim Compensation Order") [Docket No. 149].  The Monthly Fee Statements were served upon the Debtors, the Office of the United States Trustee, and the other required notice parties.  The Monthly Fee Statements are incorporated herein by reference.

6.      This Application also includes (i) a request for payment of services rendered and for reimbursement of expenses incurred for the first five days of January (*i.e.*, the period of January which precedes the Effective Date) in accordance with paragraph 27 of the Confirmation Order,[5] and (ii) $29,390.00 of fees related to preparation of this Application and the December Monthly Fee Application.[6]

**SUMMARY OF SERVICES PERFORMED BY**
**BROWN RUDNICK DURING THE FINAL APPLICATION PERIOD**

7.      The services rendered by Brown Rudnick during these Chapter 11 Cases can be grouped into the categories set forth below.  Brown Rudnick attempted to place the services

---

[5]   Paragraph 27 of the Confirmation Order provides that "[a]ny Professional seeking approval by the Court of Professional Fee Claims for services rendered or reimbursement of expenses *incurred through and including the Effective Date* under sections 327, 328, 330, 331, 503(b)(2), 503(b)(3), 503(b)(4), 503(b)(5), or 1103 of the Bankruptcy Code shall file, on or before sixty (60) days after service of the notice of the Effective Date, final requests for payment of such Professional Fee Claims." (*emphasis added*).  An invoice for the first five days of January is attached hereto as Exhibit B.

[6]   An invoice for fees related to preparation of this Application is attached hereto as Exhibit C.

provided in the category that best relates to such services.  However, because certain services may relate to one or more categories, services pertaining to one category may in fact be included in another category.  The following provides a narrative description of project categories to which attorneys and paraprofessionals of Brown Rudnick dedicated the most significant time (*i.e.*, time charges in excess of $20,000 in the aggregate) during the Final Application Period:

(a)     **Plan and Disclosure Statement: Fees: $591,059.00; Total Hours: 506.6.**  The project which Brown Rudnick professionals devoted the most time and energy was the Debtors' Plan and Disclosure Statement.   The Debtors and Committee ultimately jointly pursued confirmation of a Plan which transitioned control of the Debtors to representatives of their creditors.  However, the initial Plan filed by the Debtors in these cases was somewhat unusual insofar as it reflected the fact that the Debtors commenced these Chapter 11 Cases without a preordained exit strategy.  Their articulated objectives were to exit bankruptcy either by way of a standalone restructuring, a sale, or a liquidation.   The Debtors prepared a Plan and related disclosure statement preserving maximum optionality which would ultimately toggle in whatever direction the cases took the Debtors.

This initial Plan was prepared and filed without any input from the Committee.  In advance of the hearing to consider the adequacy of the Disclosure Statement, Brown Rudnick, on behalf of the Committee, provided extensive comments to these documents.  At that time, the focus was largely on the liquidation option, given that extensive further revisions would be necessary if a reorganization or sale alternative materialized.  The Committee was concerned that, no matter how remote the possibility, the Debtors would expend a considerable amount of time and resources exploring a non-liquidation option.   To date, "crypto" companies have a poor record of successfully restructuring.

"Relaunching" operations on a standalone basis seemed unlikely in the face of a regulator's cease and desist order and loss of customer confidence upon disclosure that the Debtors were unable to access the "98f Wallet." This option was abandoned fairly early on in these Chapter 11 Cases. The likelihood of a sale seemed similarly remote; however, the Committee was given hope that a transaction was possible, in part based on the optimism expressed by the Debtors' investment banker, Galaxy Digital Partners LLC, and its ability to attract a letter of intent early in the sales process. Ultimately, no prospective party emerged with an actionable transaction proposal. This left the liquidation alternative as the Debtors' sole option.

Even a liquidation presented a fair amount of complexity. The commencement of these Chapter 11 Cases presented the Debtors with the option to pursue vast numbers of avoidance action (*i.e.*, preference actions) against their customers. At one point in time, the Debtors announced that customers withdrew in excess of $1.3 billion of crypto and cash (valued at the Petition Date) from the Debtors' platform within the 90-days prior to the commencement of these Chapter 11 Cases. The Committee cautioned that pursuing preferences early in the cases would leave the Debtors in a litigation morass with little possibility of driving consensus with its creditors towards a confirmable plan. The Debtors ultimately agreed and put the pursuit of preferences on pause.

The Committee, however, in evaluating the Plan, determined that it was necessary to provide its constituency with assurances that every withdrawing customer was not going to both suffer losses on their claims and be forced to disgorge amounts withdrawn during the preference vulnerability period. The Committee, together with its advisors – including Brown Rudnick – assessed various legal questions, including whether cash and/or crypto assets withdrawn from the platform were "property of the estate" and potential defences to preference actions, and devised a preference "amnesty" program designed to only preserve preference claims against those

5

customers (and vest those actions in the reorganized Debtors) which withdraw the bulk of their crypto and cash deposits with the Debtors.  The Plan ultimately incorporated the terms of this program.

The pivot to a liquidation also required Brown Rudnick, on behalf of the Committee, to assess the most efficient means to maintain the Debtors' crypto assets (especially considering the adverse regulatory environment for crypto companies at the time), consider the liquidity needs for the reorganized Debtors, negotiate certain elements of the Plan opposite the Debtors' DIP lender (a former Committee member), evaluate the proposed Debtor releases under the Plan, ensure proper corporate governance for the reorganized Debtor and litigation trust, and minimize any adverse tax impact to creditors under the Plan.  Brown Rudnick ultimately prepared new corporate organizational documents for the reorganized Debtors, a plan administrator agreement, and trust documents for a creditor litigation trust which would retain and pursue certain causes of action, and reviewed and commented upon various Plan supplement documents, including a comprehensive retained action schedule.

Brown Rudnick professionals also actively participated at the Confirmation Hearing to advocate for confirmation of the Plan and to address issues which presented themselves at the Confirmation Hearing in conjunction with the Debtors' advisors.  Following entry of the Court's order confirming the Plan on December 21, 2023, Brown Rudnick worked alongside the Debtors' advisors to prepare the Plan Administrator for the occurrence of the Effective Date under the Plan.

(b)      **Meetings and Communications with Creditors: Fees: $237,789.00; Total Hours: 189.8.**  These fees include all services rendered by Brown Rudnick relating to in-person or virtual meetings with the Committee.  Due to the size and complexity of these Chapter 11 Cases, it was necessary for Brown Rudnick to meet and consult with the Committee on a regular basis to

keep the Committee adequately informed on case developments and strategic decisions. During the Final Application Period, Brown Rudnick and other Committee professionals conducted weekly meetings with the Committee, as well as additional meetings and communications as circumstances warranted. Brown Rudnick also prepared regular updates for the Committee to apprise the Committee of upcoming meetings, deadlines, related case developments, and ongoing workstreams to streamline discussions with the Committee. Further, Brown Rudnick responded to numerous creditor inquiries regarding the status of these Chapter 11 Cases, including questions related to proof of claims and timing of distributions.

(c)      **Asset Recovery and Analysis: Fees: $192,460.00; Total Hours: 185.8.**   These fees related to significant time spent by Brown Rudnick analyzing, among other things, the Debtors' sale and marketing efforts of their cryptocurrency custody platform and certain licenses related to the operations of their business. Brown Rudnick negotiated certain modifications to the Debtors' proposed bidding procedures and conducted numerous discussions with the Debtors' professionals to understand the universe of potentially interested parties in the Debtors' assets and execution risk of any potential transaction. Brown Rudnick then analyzed incoming bids for certain of the Debtors' assets, and advised the Committee with respect to such bids.

Brown Rudnick, on behalf of the Committee, also spent considerable time analyzing whether customer fiat and cryptocurrency deposits should be treated as property of the Debtors' estates pursuant to the terms of the customer agreements and applicable law.

There was also effort devoted to assessing the Debtors' available insurance coverage in respect of estate claims and causes of action. Specifically, Brown Rudnick investigated whether insurance may be available to respond to claims asserted against those responsible for the loss of

funds stored in the "98f Wallet" and the related mismanagement and collapse of the Debtors into Chapter 11.

(d)    **Employment and Fee Applications: Fees: $93,254.00[7]; Total Hours: 111.9.** These fees include all services rendered by Brown Rudnick relating to the preparation of its Monthly Fee Statements during the Final Application Period and this final Application. Brown Rudnick also assisted the Committee's other professionals in preparation of their respective applications for payment of fees and expenses.

(e)    **Case Administration: Fees: $78,122.00; Total Hours: 98.6.** These fees include all services rendered by Brown Rudnick with respect to the general administration of these Chapter 11 Cases on behalf of the Committee and may also include specific matters that are not readily classifiable into other more specific matters. This category includes time expended by Brown Rudnick monitoring the case docket, maintaining the case calendar, circulating pertinent filings, coordinating internally to optimize workstreams, preparing materials ahead of upcoming hearings, and handling all other day-to-day administrative matters in connection with these cases and Brown Rudnick's representation of the Committee.

(f)    **Committee Investigation: Fees: $64,981.50; Total Hours: 64.4.** These fees include all services rendered by Brown Rudnick in connection with its investigation into and analysis of the "98f Wallet," including participating in related Rule 2004 discovery, analyzing relevant insurance policies, and revising the protective order.

(g)    **Hearings:    Fees: $38,499.50; Total Hours: 28.1.** These fees include services provided in preparing for and attending hearings on behalf of the Committee during the Final Application Period, including hearings related to Debtors' investigation and the Plan.

---

[7]    This includes $29,390.00 in fees preparing this Application and the December Monthly Fee Application.

(h) **Financing:  Fees: $34,987.00; Total Hours: 28.8.**  These fees include services providing in connection with reviewing the Debtors' proposed wind-down budget and DIP financing proposal provided by the Debtors' DIP lender.

(i) **Non-Working Travel:  Fees: $26,540.50; Total Hours:  35.6.** To the extent Brown Rudnick professionals incurred "non-working travel time", such time was charged at 50% of Brown Rudnick's rates applicable to this engagement.

(j) **Tax: Fees: $21,511.50; Total Hours: 19.7.**  These fees relate to Brown Rudnick's analysis of tax considerations to customers and creditors under the Debtors' Plan.

## DISBURSEMENTS

8.      Brown Rudnick incurred $12,509.96 as actual and necessary expenses in providing professional services during the Final Application Period. None of these expenses exceeds the maximum rate set by the Guidelines. These charges are intended to cover Brown Rudnick's direct costs, which costs are not incorporated into the Brown Rudnick hourly fees. Only clients who use services of the types for which reimbursement is sought are separately charged for such service.

9.      Brown Rudnick asserts that the foregoing services were necessary to the administration of the Chapter 11 Cases and were beneficial to the Committee at the time which the services were rendered.  All services were performed within a reasonable amount of time commensurate with the complexity, importance, and nature of the problem, issue or task addressed.

## SUPPORTING DOCUMENTATION

10.      As noted above, Brown Rudnick was retained to serve in the capacity of counsel to the Committee by Order of this Court dated October 16, 2023, which retention was effective *nunc pro tunc* to August 31, 2023.

11.     This Application represents Brown Rudnick's final fee application as counsel to the Committee, and covers the period from August 31, 2023 through January 5, 2024.

12.     The computerized time sheets included with the Monthly Fee Statements detail the services rendered by the members and associates of Brown Rudnick, the hourly rate charged by each member, associate or paralegal, and the actual time expended in the performance of such services. Said time sheets reflect that Brown Rudnick has expended 1,292.5 hours in performing services for the Committee, resulting in charges of $1,420,513.00**.**  The blended hourly rate charged herein is $1,099.04, which Brown Rudnick believes is fair and reasonable in light of the nature of the services rendered and the expertise of the professionals rendering such services.

13.     The Monthly Fee Statements also include a detailed breakdown of all out-of-pocket disbursements incurred by Brown Rudnick in the performance of its duties as counsel to the Committee, which total $12,509.96.  In the normal course of Brown Rudnick's practice, expenses are only charged to a client after the expenses are actually incurred by Brown Rudnick.

14.     The following Monthly Fee Statements represent the fees and expenses sought in the Final Application Period. The Monthly Fee Statements covering September, October, November and December 2023, were filed with the Court and served pursuant to the Interim Compensation Order:

| Date Filed and Docket No. | Filing Period | Total Fees (at 100%) | 20% Holdback | Fees Requested (at 80%) | Expenses Requested (at 100%) |
|---|---|---|---|---|---|
| (First) 10/27/2023 Docket No. 353 | August 31, 2023 – September 30, 2023 | $535,140.00 | $107,028.00 | $428,112.00 | $2,248.84 |
| (Second) 12/7/2023 Docket No. 533 | October 1, 2023 – October 31, 2023 | $414,783.00 | $82,956.60 | $331,826.40 | $3,145.08 |
| (Third) 12/26/2023 Docket No. 657 | November 1, 2023- November 30, 2003 | $188,533.00 | $37,706.50 | $150,826.40 | $2,384.61 |

| | | | | | |
|---|---|---|---|---|---|
| (Fourth)<br>1/19/2024<br>Docket No. 709 | December 1, 2023 –<br>December 31, 2023 | $220,034.50 | N/A | N/A | $4,490.78 |
| January 1, 2024<br>through<br>January 5, 2024<br>Not Previously<br>Submitted | January 1, 2024 –<br>January 5, 2024 | $32,632.50 | N/A | N/A | $240.65 |
| Time Spent<br>Preparing<br>December and<br>Final Fee<br>Application | | $29,390.00 | N/A | N/A | N/A |
| **TOTAL** | | **$1,420,513.00** | **$227,691.20** | **$910,764.80** | **$12,509.96** |

15. Annexed hereto and made part hereof as Exhibit A is the Certification of Robert J. Stark with respect to compliance of Local Rules 2016-1 and 2016-3 and the U.S. Trustee Guidelines.

## THE REQUESTED COMPENSATION SHOULD BE ALLOWED

16. Section 331 of the Bankruptcy Code provides for interim compensation of professionals and incorporates the substantive standards of section 330 to govern a court's award of such compensation. 11 U.S.C. § 331.

17. Section 330 also sets forth the criteria for the award of such compensation and reimbursement:

In determining the amount of reasonable compensation to be awarded, the court should consider the nature, extent, and the value of such services, taking into account all relevant factors, including:

a. the time spent on such services;

b. the fees charged for such services;

c. whether the services were necessary to the administration of or beneficial at the time at which the service was rendered toward the completion of a case under this title;

      d.      whether the services were performed within a reasonable amount of time commensurate with the complexity, importance, and nature of the problem, issue, or task addressed; and

      e.      whether the compensation is reasonable based on the customary compensation charged by comparably skilled practitioners in cases other than cases under this title.

11 U.S.C. § 330(a)(3).

18.      As set forth in greater detail below, Brown Rudnick respectfully submits that it has satisfied the requirements of section 330 of the Bankruptcy Code. The services for which it seeks compensation in this Application were necessary for and beneficial to the Committee. Brown Rudnick's request for compensation is reflective of a reasonable and appropriate amount of time expended in performing such services commensurate with the complexity, importance and nature of the problem, issue, or task involved. These services were performed without unnecessary duplication of effort by professionals employed by Brown Rudnick. The compensation sought by Brown Rudnick is reasonable based on the customary compensation charged by comparably skilled practitioners in cases other than cases under the Bankruptcy Code. Indeed, Brown Rudnick's monthly fees are comparable with other similarly qualified legal advisors appearing in this and other Chapter 11 cases. For all of the foregoing reasons, Brown Rudnick respectfully requests that the Court grant this Application.

## **SUPPLEMENTAL DISCLOSURE REQUIRED BY UST GUIDELINES**

19.      Pursuant to Section C.3 of the UST Guidelines, Brown Rudnick's hourly rates for bankruptcy services are comparable to the hourly rates charged in complex Chapter 11 cases by comparably skilled bankruptcy attorneys. In addition, Brown Rudnick's hourly rates for bankruptcy services are comparable to the rates charged by the firm, and by comparably skilled practitioners in other firms, for complex corporate and litigation matters, whether in court or otherwise, regardless of whether a fee application is required.

20.     The following statements address the information pursuant to Section C.5 of the

UST Guidelines:

a. **Question**: Did you agree to any variations from, or alternatives to, your standard or customary billing rates, fees or terms for services pertaining to this engagement that were provided during the application period?  If so, please explain.

   **Answer**:  No.

b. **Question**: If the fees sought in this fee application as compared to the fees budgeted for the time period covered by this fee application are higher by 10% or more, did you discuss the reasons for the variation with the client?

   **Answer**: The fees sought in this Application are not more than 10% higher as compared to the budget provided in Exhibit D.  Indeed, the aggregate amount of fees incurred by Brown Rudnick is less than the amounts budgeted.

c. **Question**: Have any of the professionals included in this fee application varied their hourly rate based on geographic location of the bankruptcy case?

   **Answer**: No.

d. **Question**: Does the fee application include time or fees related to reviewing or revising time records or preparing, reviewing, or revising invoices?  (This is limited to work involved in preparing and editing billing records that would not be compensable outside of bankruptcy and does not include reasonable fees for preparing a fee application.).  If so, please quantify by hours and fees.

   **Answer**: No.

e. **Question**: Does this fee application include time or fees for reviewing time records to redact any privileged or other confidential information?  If so, please quantify by hours and fees.

   **Answer**: No.

f. **Question**: If the fee application includes any rate increases in retention: (i) did your client review and approve those rate increases in advance?  and (ii) Did your client agree when retaining the law firm to accept all future rate increases?  If not, did you inform your client that they need not agree to modified rates or terms in order to have you continue the representation, consistent with ABA Formal Ethics Opinion 11-458?

   **Answer**: The Application reflects Brown Rudnick's customary hourly rate increases, which went into effect on January 1, 2024.  The Committee reviewed and approved such rate increases prior to such rate increases taking effect, and notice thereof was filed on the docket at Docket No. 608.

## <u>STATEMENTS OF BROWN RUDNICK</u>

21.     No agreement or understanding prohibited by section 504 of the Bankruptcy Code exists between Brown Rudnick and any other person for a sharing of compensation received or to be received for services rendered in or in connection with these Chapter 11 Cases, nor shall Brown Rudnick share or agree to share the compensation paid or allowed from the Debtors' estates for such services with any other person in contravention of section 504 of the Bankruptcy Code.  No agreement or understanding prohibited by 18 U.S.C. § 155 has been made by Brown Rudnick.

22.     Pursuant to Bankruptcy Rule 2016, Brown Rudnick states that no payments have heretofore been made or promised to Brown Rudnick for services rendered or to be rendered in any capacity in connection with these Chapter 11 Cases, except as authorized by the Court in the Retention Order and the Interim Compensation Order.

23.     The undersigned has reviewed the requirements of Local Rule 2016-2 and certified that this Application complies with that Local Rule.

24.     Notice of this Application has been provided in accordance with the Plan and Confirmation Order.  Brown Rudnick submits that no other or further notice need be provided.

25.     Brown Rudnick reserves all rights and claims.  Without limiting the generality of the foregoing, Brown Rudnick reserves its rights to include any time expended in the Final Application Period in future application(s) if it is not included herein.

WHEREFORE, Brown Rudnick respectfully requests that this Court (i) ratify the prior payments made to Brown Rudnick on account of its monthly fee statements and first and second interim fee applications, (ii) approve and ratify final allowance of compensation and reimbursement of expenses in the amounts of $1,420,513.00 and $12,509.96, respectively, for the Final Application Period, and (iii) grant such other relief as may be just and proper.

New York, New York
Dated: March 5, 2024

Respectfully submitted,

By: */s/ Robert J. Stark*
**BROWN RUDNICK LLP**
Robert J. Stark, Esq. *(pro hac vice)*
Bennett S. Silverberg, Esq. *(pro hac vice)*
Kenneth J. Aulet, Esq. *(pro hac vice)*
Seven Times Square
New York, NY  10036
Telephone: (212) 209-4800
Fax: (212) 209-4801
Email: rstark@brownrudnick.com
Email: bsilverberg@brownrudnick.com
Email: kaulet@brownrudnick.com

-and-

Tristan G. Axelrod, Esq. *(pro hac vice)*
Matthew A. Sawyer, Esq. *(pro hac vice)*
One Financial Center
Boston, MA 02111
Telephone: (617) 856-8200
Fax: (617) 856-8201
Email: taxelrod@brownrudnick.com
Email: msawyer@brownrudnick.com

*Counsel for the Official*
*Committee of Unsecured Creditors*

15