## IN THE UNITED STATES BANKRUPTCY COURT
## FOR THE DISTRICT OF DELAWARE

| | |
|---|---|
| In re:<br><br>PRIME CORE TECHNOLOGIES, INC.,[1]<br><br>Debtors. | Chapter 11<br><br>Case No. 23-11161 (JKS)<br><br>(Jointly Administered)<br><br><u>Objection Date</u>: Feb. 12, 2025 at 4:00 p.m. (ET)<br><u>Proposed Hearing Date</u>: Feb. 14, 2025 at 10:00 a.m. (ET) |

### MOTION OF COINBASE FOR LEAVE TO FILE AN AMICUS RESPONSE TO THE PLAN ADMINISTRATOR'S MOTION FOR ENTRY OF AN ORDER APPROVING THE PLAN ADMINISTRATOR'S DETERMINATION THAT THE DEBTORS' ASSETS ARE PROPERTY OF THE BANKRUPTCY ESTATES

Thomas S. Kessler*
**CLEARY GOTTLIEB STEEN
& HAMILTON LLP**
One Liberty Plaza
New York, New York  10006
Telephone: (212) 225-2000
Facsimile: (212) 225-3999
Email: tkessler@cgsh.com
*Counsel for Coinbase*
* Pro hac vice pending

Jeremy M. Ryan (No. 4057)
Brett M. Haywood (6166)
**POTTER ANDERSON
& CORROON LLP**
1313 N. Market Street, 6th Floor
Wilmington, Delaware 19801
Telephone: (302) 984-6000
Facsimile:  (302) 658-1192
Email: jryan@potteranderson.com
bhaywood@potteranderson.com

---

[1]      The Debtors in these cases, along with the last four digits of each Debtor's federal tax identification number, are: Prime Core Technologies Inc. (5317); Prime Trust, LLC (6823) ("Prime Trust"); Prime IRA LLC (8346); and Prime Digital, LLC (4528). The Debtors' mailing address is Prime Core Technologies, Inc. Plan Administrator, c/o Province Fiduciary Services, LLC, 2360 Corporate Circle, Suite 340, Henderson, Nevada 89074.

1.      Coinbase, Inc. ("Coinbase"), as *amicus curiae*, by and through its undersigned counsel, submits this motion (the "Motion") pursuant to Rule 9013(b) of the Federal Rules of Bankruptcy Procedure (the "Bankruptcy Rules") and Rule 9006-1(c)(ii) of the Local Rules for the United States Bankruptcy Court for the District of Delaware (the "Local Rules") for entry of an order under section 105(a) of title 11 of the United States Code, 11 U.S.C. §§ 101–1532 (the "Bankruptcy Code") permitting Coinbase to file a brief of *amicus curiae*, substantially in the form of Exhibit C hereto (the "Response"), in response to the Plan Administrator's *Motion for Entry of an Order (I) Approving the Plan Administrator's Determination that the Debtors' Assets are Property of the Bankruptcy Estates; (II) Approving Distributions of Estate Property; (III) Establishing Procedures for Setting a Disputed Claims Reserve; and (IV) Granting Related Relief* [D.I. 919] (the "Determination Motion"). [2]  In support of this Motion, Coinbase states as follows:

## PRELIMINARY STATEMENT

2.      As detailed more completely in the Response, the Determination Motion seeks relief that would have a profound impact on the application of Article 8 of the Uniform Commercial Code ("Article 8") to custody arrangements, with consequences that would extend far beyond the confines of the instant case and harm the stability of the broader financial markets. Coinbase is cognizant that it is not a creditor or customer of the Debtors and does not have a direct financial interest in the claims against the Estate that are covered by the Determination Motion. However, the Determination Motion does not mention (let alone address) the provisions of the Debtors' agreements with its customers that implicate Article 8, and Coinbase therefore believes that it is imperative to bring these provisions and their import to the Court's attention.  Otherwise,

---

[2]      Capitalized terms used but not defined herein have the meaning ascribed to them in the Determination Motion.

2

a decision granting the Determination Motion could serve to undermine a well-established statutory framework on which U.S. financial markets depend.

3.    The Determination Motion implicates the protections afforded by Article 8 because the Custodial Agreements and End-User Agreements that form the basis of the Determination Motion's contain what are commonly referred to as "financial asset elections." Pursuant to these provisions, the Debtors and their customers agreed that Currency held for customers constituted "financial assets" credited to a "securities account" and that and the customers were the "entitlement holders," each within the meaning of Article 8 of the Uniform Commercial Code (as implemented in accordance with Nevada law) (the "UCC").[3] As detailed in the Response, Article 8 contains unambiguous statutory text that parties may agree to treat a host of assets, including cash or digital assets, as financial assets credited to a securities account, and that assets subject to such agreement are not property of the custodian's estate.[4]

4.    Financial asset elections of the sort contained in the Custody Agreements and End-User Agreements are ubiquitous in U.S. financial markets and form a core part of the foundation

---

[3]    Dunn Decl., Ex. 2 at § 3.1(a) ("Customer is an 'Entitlement Holder' in a 'Financial Asset,' as defined by, and for purposes of, the Uniform Commercial Code, including Article 8 thereto, as adopted and implemented in accordance with Nevada law . . .. Applicable Custodial Property are "Financial Assets" for purposes of the UCC and are not assets of Prime Trust."); *Id.*, Ex. 2 at § 6 ("[T]he Parties agree the relationship between Prime Trust and Customer is governed by Article 8 of the UCC and that for the purposes of this Service Schedule: Customer is an "entitlement holder" and any Custodial Property will be treated as a "Financial Asset" within the meaning of Nevada Revised Statutes . . . 104.8102(h) and (j)."); *Id.*, Ex. 3 at § 2.4(a) ("Account Holder is an "Entitlement Holder" in a "Financial Asset," as defined by, and for purposes of, the Uniform Commercial Code, including Article 8 thereto, as adopted and implemented in accordance with Nevada law . . . . Applicable Custodial Property are "Financial Assets" for purposes of the UCC and are not assets of Prime Trust."); *Id.*, Ex. 3 at § 7 ("Except as otherwise provided under Applicable Law, the Parties agree the relationship between Prime Trust and Account Holder is governed by Article 8 of the UCC and that for the purposes of this Agreement: Account Holder is an 'entitlement holder' and any Custodial Property will be treated as a 'Financial Asset' within the meaning of Nevada Revised Statutes . . . 104.8102(h) and (j).").

[4]    UCC §§ 104.8102(j)(3) (defining financial asset as "any property that is held by a securities intermediary for another person in a securities account if the securities intermediary has expressly agreed with the other person that the property is to be treated as a financial asset under this Article"); 104.8503 ("To the extent necessary for a securities intermediary to satisfy all security entitlements with respect to a particular financial asset, all interests in that financial asset held by the securities intermediary are held by the securities intermediary for the entitlement holders, *are not the property of the securities intermediary and are not subject to claims of creditors of the securities intermediary . . . .*") (emphasis added).

upon which custodial arrangements are built. They appear in traditional prime brokerage agreements and securities custody agreements, commodity brokerage agreements, the rules of clearing agencies and derivatives clearing organizations, digital asset custody and user agreements, and host of other documents.[5] Financial asset elections support trillions of dollars of financial transactions because they provide market participants with certainty that the provisions of Article 8 of the UCC will apply to their relationships in accordance with their terms and that therefore financial assets held by custodians remain property of their clients.

5.      The clear and simple rules of Article 8 are critical not only for allowing customers to know that their assets are their own rather than subject to their custodian's creditors. They also provide market participants with confidence that they can perfect their security interests through control[6] and that good faith purchasers for value can take free of adverse claims. This confidence is essential for smooth and liquid markets in financial assets to function.[7] These rules also provide custodians with certainty that assets held in a custodial capacity can be properly reflected as off

---

[5]     *See e.g.*, *U.S. Prime Brokerage Agreement* (December 11, 2013), Ex. A § 2(c), https://www.sec.gov/Archives/edgar/data/889284/000119312514026486/d647213dex99h8.htm (accessed January, 2025) (containing a financial asset election under Article 8); *Custodial Undertaking in Connection with Master Repurchase Agreement* (December 1, 2003), § 5(A)(v), https://www.sec.gov/Archives/edgar/data/877233/000119312508203393/dex99h8.htm (accessed January 28, 2025) (same); *Futures and Options on Futures Account Agreement* (November 11, 2018), § 6, https://www.sec.gov/Archives/edgar/data/916490/000119312522105588/d349045dex9928h5.htm (accessed January 28, 2025) (same); *Coinbase User Agreement* (December 13, 2024) § 2.7.2, https://www.coinbase.com/legal/user_agreement/united_states (accessed January 28, 2025) (same); *Rules, By-Laws and Organization Certificate of the Depository Trust Company* (August 2023) at 14, https://www.dtcc.com/-/media/Files/Downloads/legal/rules/dtc_rules.pdf (accessed January 28, 2025) (defining "Security" as meaning "financial asset" within the meaning of the UCC and providing that "[a]ny item credited to an Account (by the act of being credited to the Account) shall be deemed a Security under these Rules and shall be treated as a financial asset under Article 8 of the NYUCC.").

[6]     UCC § 9-106(c) (providing that a secured party has control over security entitlements in a securities account has control over the securities account); UCC § 8-106(d) (providing that a purchaser has control of a security entitlement if such purchaser is the entitlement holder to that security entitlement).

[7]     UCC § 8-110(b) (local law of a securities intermediary's jurisdiction governs whether an adverse claim can be asserted against an acquiror of a security entitlement).

balance sheet for the custodian.[8]  Accordingly, absent this Court's close review, a decision to grant the Determination Motion could unintentionally upend this well-established certainty, with detrimental effects across financial markets.

6.      For these reasons, and the reasons set forth below, Coinbase submits this motion to respectfully request that the Court grant leave to file the Response.

## JURISDICTION AND VENUE

7.      This Court has jurisdiction over this Motion pursuant to 28 U.S.C. §§ 157 and 1334, the *Amended Standing Order of Reference from the United States District Court for the District of Delaware*, dated as of February 29, 2012, and Article 12 of the Amended Joint Chapter 11 Plan of Reorganization for Prime Core, Inc. and its Affiliated Debtors, dated December 14, 2023 (Docket No. 592), as amended (the "Plan").  Venue is proper before this Court pursuant to 28 U.S.C. §§ 1408 and 1409.  The statutory predicate for the relief requested herein is section 105(a) of the Bankruptcy Code.

8.      This is a core proceeding under 28 U.S.C. § 157(b).  Pursuant to Local Rule 9013-1(f), Coinbase consents to the entry of a final judgment or order with respect to this Motion if it is determined that the Court would lack Article III jurisdiction to enter such final order or judgment absent consent of the parties.

## BACKGROUND

9.      Coinbase is a global provider of digital asset services to a variety of customers, including custody services governed by custody agreements that enjoy the protections afforded by Article 8 of the UCC.

---

[8]      Accounting Standards Codification § 860-10-40-5(a) (describing when a transfer of financial assets must be accounted for as a sale, including when such transfer involves assets beyond the reach of the powers of a bankruptcy trustee).

10.     On December 14, 2023, the Debtors filed the Plan, which was confirmed on December 21, 2023 with the entry of the *Findings of Fact, Conclusions of Law, and Order (I) Approving the Disclosure Statement on a Final Basis and (II) Confirming the Amended Chapter 11 Plan of Reorganization of Prime Core Technologies Inc. and its Affiliated Debtors Pursuant to Chapter 11 of the Bankruptcy Code* [D.I. 644] (the "Confirmation Order").  The Plan went effective on January 5, 2024, [D.I 694].  The Plan calls for the winding down of the Debtors' estates.

11.     The Confirmation Order does not authorize the Plan Administrator to transfer or distribute any Non-Estate Assets or include such assets in the Cash or Cryptocurrency Allocation until a "final determination by the Debtors, the Wind-Down Debtors or the Bankruptcy Court, as applicable, in accordance with the Account Treatment Procedures" that such assets are property of the Debtors' estates.  *See* Confirmation Order at ¶ 36.  The Plan further provides that "pending a determination of the Account Treatment Issues by the Bankruptcy Court, the Debtors or the Wind-Down Debtors, as applicable, will not use or transfer the funds subject to a Customer Agreement absent an order of the Bankruptcy Court."  *See* Plan § 2.5.

12.     Pursuant to this requirement, the Plan Administrator filed the Determination Motion on January 15, 2025 requesting a final determination concerning the treatment of the funds subject to Customer Agreements contemplated by the Plan and Confirmation Order.  [D.I. 919].  In support of the Determination Motion, the Plan Administrator filed the *Declaration of David Dunn in Support of Plan Administrator's Motion for Entry of an Order (I) Approving the Plan Administrator's Determination that the Debtors' Assets are Property of the Bankruptcy Estates; (II) Approving Distributions of Estate Property; (III) Establishing Procedures for Setting a Disputed Claims Reserve; and (IV) Granting Related Relief* [D.I. 920] (the "Dunn Declaration").

## RELIEF REQUESTED

13.      Coinbase seeks entry of an order, substantially in the form of the proposed order attached hereto as Exhibit B (the "Proposed Order") authorizing Coinbase to file the Response attached as Exhibit C.

## BASIS FOR RELIEF

14.      Although there is no express rule governing the submission of amicus briefs or responses at the court of first impression, this Court is authorized to accept amicus briefs through the exercise of its powers under section 105(a) of the Bankruptcy Code (providing that the Court "may issue any order, process, or judgment that is necessary or appropriate to carry out the provisions" of the Bankruptcy Code) and through its inherent powers as a tribunal, which are exercisable at this Court's discretion. *Cf. In re Nazi Era Cases Against German Defendants Litig.*, 153 F. App'x 819 (3d Cir. 2005) ("Although appellate rules regulate the submission of amicus briefs on appeal, a district court's decision to accept or reject an amicus filing is entirely within the court's discretion.") (citation omitted); *In re Bayshore Ford Truck Sales, Inc.*, 471 F.3d 1233, 1249 n.34 (11th Cir. 2006) ("[D]istrict courts possess the inherent authority to appoint 'friends of the court' to assist in their proceedings."); *League of Women Voters of Ohio v. LaRose*, 2024 WL 3495332 at *21 (N.D. Ohio July 22, 2024) ("[A] district court may grant leave [to file an amicus brief] under their inherent authority where the filing may provide a unique perspective that assists the district court in resolving the pending dispute.") (collecting cases); *Glen v. Trip Advisor LLC*, 529 F. Supp. 3d 316 (D. Del. 2021) (exercising discretion to grant motion for leave to file an amicus brief), *aff'd*, 2022 WL 3538221 (3d Cir. Aug. 18, 2022).

15.      "[A]s recognized by other courts, nothing precludes a party from seeking leave to file an amicus brief." *In re Fam. Christian, LLC*, 530 B.R. 417, 425 (Bankr. W.D. Mich. 2015).

In the absence of any applicable statute or rule, Bankruptcy Rule 8017, which is derived from Rule 29 of the Federal Rules of Appellate Procedure, and which governs the filing of amicus submissions in appeals from the Bankruptcy Court to the District Court or Bankruptcy Appellate Panel, is instructive. Under Bankruptcy Rule 8017, "permission to file a brief as amicus is within the sound discretion of the court. However, permission to file an amicus brief is freely granted, so it rarely makes sense for a party not to agree to its filing." 10 Collier on Bankruptcy ¶ 8017.03 (16th ed. 2018).

16.     Bankruptcy Courts in this district have previously exercised their discretion to grant leave to file an amicus brief where the party seeking the relief demonstrates (i) an adequate interest in the matter under consideration, (ii) that the amicus's participation would be desirable, and (iii) that the amicus brief would be relevant to the matter. *See In re W.R. Grace & Co.*, 2016 WL 6068092 at n. 37 (Bankr. D. Del. Oct. 17, 2016), *aff'd in part, vacated in part, remanded*, 900 F.3d 126 (3d Cir. 2018). Here, Coinbase has an adequate interest in this Court's consideration and disposition of the Determination Motion, given the centrality of Article 8 to the legal analysis necessary to resolve the Determination Motion and the importance of Article 8 to its business and the broader industry in which it operates.[9] Coinbase's participation similarly is desirable because it raises an issue for the Court's attention that has not been addressed in the Determination Motion. Lastly, the Response is plainly relevant to the consideration of the Determination Motion because, as outlined in the Response itself, a straightforward application of Article 8 should be outcome-

---

[9]     Dunn Decl., Ex. 3 at § 2.4(a) ("Account Holder is an "Entitlement Holder" in a "Financial Asset," as defined by, and for purposes of, the Uniform Commercial Code, including Article 8 thereto, as adopted and implemented in accordance with Nevada law . . . . Applicable Custodial Property are "Financial Assets" for purposes of the UCC and are not assets of Prime Trust."); *Id.*, Ex. 3 at § 7 ("Except as otherwise provided under Applicable Law, the Parties agree the relationship between Prime Trust and Account Holder is governed by Article 8 of the UCC and that for the purposes of this Agreement: Account Holder is an 'entitlement holder' and any Custodial Property will be treated as a 'Financial Asset' within the meaning of Nevada Revised Statutes . . . 104.8102(h) and (j).").

determinative of the relief sought by the Determination Motion.

17.    Other Bankruptcy Courts have seen fit to grant such relief upon a determination, in their sound discretion, that the contribution of the amicus would be beneficial to the Court's adjudication of a disputed issue, or where the amicus raises a position not otherwise considered by the parties.  *See e.g.*, *In re Gawker Media LLC*, 581 B.R. 754, n. 7 (Bankr. S.D.N.Y. 2017) (granting an amicus brief by various media organizations who sought to raise the interests of journalists affected by a decision on a pending sale motion); *In re FirstEnergy Sols. Corp.*, 2018 WL 2315916 at *6 (Bankr. N.D. Ohio May 18, 2018) (granting a request to file an amicus brief by non-parties with an interest in the effect of an injunction on the application of federal energy regulations), *aff'd in part, rev'd in part and remanded*, 945 F.3d 431 (6th Cir. 2019); *In re Karlinger-Smith*, 544 B.R. 126, n. 31 (Bankr. W.D. Tex. 2016) (granting a request to file an amicus in connection with a motion to convert a case from chapter 7 to chapter 11); *In re Stringer*, 508 B.R. 668, 670 (Bankr. N.D. Miss. 2014) (granting requests to file two amicus briefs in connection with the confirmation of a chapter 13 plan).[10]

18.    Here, and as set forth in the Response, the Plan Administrator's Determination Motion threatens to undermine the well-established application of Article 8 of the UCC, upon which Coinbase and many other industry participants rely to support and safeguard their customers' assets.  As a result, this Court's decision on the Determination Motion is of great public interest to market participants and related parties, in addition to creditors in the instant proceedings, and Coinbase should be permitted to file the Response to ensure that this issue is fully raised for

---

[10]    For the avoidance of doubt, although amici are definitionally not parties to the dispute before the court, they are not precluded from advocating a position or from taking positions in support of or adverse to a particular party. *See, e.g.*, *United States v. Michigan*, 940 F.2d 143, 166 (6th Cir. 1991); Collier ¶8017.03 ("most amicus briefs support one side or the other"); *Id.* n.7 (citing *Funbus Sys., Inc. v Cal. Pub. Utils. Comm'n*, 801 F.2d 1120, 1125 (9th Cir. 1986) (amicus curiae may "take a legal position and present legal arguments")).

this Court's attention and the consideration of all parties in interest.

## NOTICE

19.     Notice of this Motion has been provided to (i) counsel to the Plan Administrator, (ii) the Office of the United States Trustee, and (iii) all parties that have requested notice of pleadings in these cases pursuant to Bankruptcy Rule 2002.  In light of the nature of the relief requested herein, Coinbase submits no other or further notice is required.

## CONCLUSION

For the foregoing reasons, Coinbase respectfully requests that the Court grant this Motion, enter the Proposed Order and permit Coinbase to file the Response.

[*Remainder of Page Left Intentionally Blank*]

Dated:  February 5, 2025
        Wilmington, Delaware

Respectfully submitted,

*/s/ Brett M. Haywood*
Jeremy M. Ryan (No. 4057)
Brett M. Haywood (6166)
**POTTER ANDERSON & CORROON LLP**
1313 N. Market Street, 6th Floor
Wilmington, Delaware 19801
Telephone: (302) 984-6000
Facsimile:  (302) 658-1192
Email: jryan@potteranderson.com
bhaywood@potteranderson.com

-and-

Thomas S. Kessler*
**CLEARY GOTTLIEB STEEN
& HAMILTON LLP**
One Liberty Plaza
New York, New York  10006
Telephone: (212) 225-2000
Facsimile: (212) 225-3999
Email: tkessler@cgsh.com
*Counsel for Coinbase*
* Pro hac vice pending