## IN THE UNITED STATES BANKRUPTCY COURT
## FOR THE DISTRICT OF DELAWARE

| | |
|---|---|
| In re:<br><br>Prime Core Technologies., *et al.*[1]<br><br>Debtors. | Chapter 11<br><br>Case No. 23-11161 (JKS)<br>(Jointly Administered)<br><br>Objection Deadline: February 5, 2025 at 4:00 p.m. (ET)<br>Hearing Date: February 14, 2025 at 10:00 a.m. (ET)<br><br>Re: Docket No. 919 |

**OBJECTION OF ELECTRIC SOLIDUS, LLC D/B/A SWAN BITCOIN TO THE PLAN ADMINISTRATOR'S MOTION FOR ENTRY OF AN ORDER (I) APPROVING THE PLAN ADMINISTRATOR'S DETERMINATION THAT THE DEBTORS' ASSETS ARE PROPERTY OF THE BANKRUPTCY ESTATES; (II) APPROVING DISTRIBUTIONS OF ESTATE PROPERTY; (III) ESTABLISHING PROCEDURES FOR SETTING A DISPUTED CLAIMS RESERVE; AND (IV) GRANTING RELATED RELIEF**

Electric Solidus, LLC d/b/a Swan Bitcoin ("Swan"), a creditor of the above-captioned debtors and debtors in possession in the above jointly administered cases, files this Objection to the *Plan Administrator's Motion for Entry of an Order (I) Approving the Plan Administrator's Determination that the Debtors' Assets are Property of the Bankruptcy Estates, (II) Approving Distributions of Estate Property; (III) Establishing Procedures for Setting a Disputed Claims Reserve; and (IV) Granting Related Relief* [Docket No. 919] (the "Motion") (this "Objection"), and states as follows:

### INTRODUCTION

Swan objects to the Plan Administrator's Motion because it effectively seeks to use the Debtors' fraud and mismanagement as an excuse to shirk its fiduciary obligations to its creditors and customers, including Swan, and to misappropriate creditors' funds to paper over its own financial mismanagement. The Motion is based on inaccurate assumptions, a flawed understanding of the nature of the assets at issue, and a complete disregard for the rights of Prime Trust's creditors and customers and Prime Trust's obligations to them, and should be denied.

---

[1] A complete list of the Debtors in these chapter 11 cases is available on the website of the Debtors' claims and noticing agent, https://cases.stretto.com/primetrust/.

**BACKGROUND**

Debtor Prime Trust LLC is a trust company, registered with the state of Nevada to do business as a trust company and regulated as such ("Prime Trust").

Swan (and its customers) deposited at least $500,000 (and, upon information and belief, significantly more) in various cryptocurrencies with the Debtors. As part of the process for making these deposits, the parties executed various agreements to safeguard Swan's and its customers' funds and to govern the relationship between the parties. These agreements included the Amended and Restated API Technology Agreement (the "Tech Agreement") attached hereto as **Exhibit 1**; the Prime Trust User Agreement (the "User Agreement") attached hereto as **Exhibit 2**; and the Prime Trust Services for Crypto Individual Retirement Account Addendum (the "Crypto Addendum"), attached hereto as **Exhibit 3**. These documents make clear that Prime Trust was acting in a trust capacity, and had a fiduciary duty to Swan and its customers. For example:

1. The Tech Agreement recitals state that "Prime Trust is a chartered Nevada trust company that provides various trust and custody services";

2. The Tech Agreement states that services provided by Prime Trust include "various types of trust and custodial accounts";

3. The Tech Agreement requires Prime Trust to "warrant[] that it will operate its business in compliance with all applicable federal and state laws, rules and regulations, including the rules and regulations of applicable regulators" and to "provide the Services in compliance with all applicable laws and regulations, and refrain from any unethical conduct or any other conduct, use or misuse that may materially damage the reputation of Integrator."

    a. Applicable Nevada law, the Nevada Trust Act, obligates a licensed trust company (such as Prime Trust) to comply with certain fiduciary obligations. *See, e.g.* NRS 669.029 ("'trust company' means the holding out by a person, by advertising, solicitation or other means, that it is available to act as a fiduciary in this state and undertaking to act as a fiduciary in the regular course of its business."); NRS

669.050 ("'Private trust' means a fiduciary relationship other than a court trust.").

4. The User Agreement states that the funds are being held as custodial property:

   a. "Account Holder owns all Custodial Property held by Prime Trust on behalf of Account Holder in accordance with this Agreement. Account Holder's Custodial Property will not be reflected on Prime Trust's balance sheet as assets of Prime Trust. Prime Trust may, for convenience, take and hold title to Custodial Property or any part thereof in its own name with Account Holder's ownership of Custodial Property segregated on Prime Trust's books and records.

5. The User Agreement states that Prime Trust is a "directed fiduciary" under Nevada law.

6. The Crypto Addendum defines an "End-User Custody Account" as "Prime Trust asset custody account for and in the name of the End-User."

Swan has never executed a Master Services Agreement or "MSA" as heavily relied-upon in the Motion to disclaim any fiduciary relationship. *See* Motion, ¶ 11.

Upon information and belief, at all times Prime Trust and the Debtors held Swan's assets in a separate account. In fact, Swan received periodic statements from Prime Trust showing the segregation of these assets. *See* **Exhibit 4**, Reserve Account Statement for the period ending June 30, 2023.

On December 12, 2023, the Debtors filed with this Court an Account Treatment Plan, which provided a noticing procedure regarding any determination as to whether Currency constitutes Property of the Estate. The procedures provide that after notice is provided to each Customer as to the determination:

> the Wind-Down Debtor and such Customer shall meet and confer with respect to formulating a proposed scheduling order to govern, among other things, the date by which the Wind-Down Debtor will file a motion with the Bankruptcy Court with respect to the Account Treatment Issues for such Customer (an "Account Treatment Motion"), and dates and deadlines relating to discovery and the adjudication of the Account Treatment Motion.

Account Treatment Plan. This plan pre-dates and preempts the Motion.

These Chapter 11 cases were filed August 14, 2023; Province was appointed as the Plan Administrator in December of 2023; and the Plan was effective as of January 5, 2024. Since that date, Swan's and other customers' cryptocurrency has been held in trust by Fireblocks, a third-party vendor.

## ARGUMENT

There are several fundamental flaws with the Motion, each of which is sufficient for this Court to reject it. First, the Motion seeks a sweeping declaration voiding depositors' rights in the assets, tantamount to the theft of these funds.[2] Second, the assertion that the cryptocurrency assets are inseparably commingled rests of a flawed understanding and analysis, because the various blockchain cryptocurrencies cannot, by definition, be commingled and are designed to be disaggregated. Third, the attempt to consolidate and misappropriate these funds violates the Account Treatment Plan filed with this Court in order to manage the treatment of just such assets. Finally, the Motion violates the Debtors' clear fiduciary obligations and trust relationship with Swan and its other customers.

*1. The Motion is an Unlawful Attempt to Misappropriate Creditors' and Customers' Funds*

The Motion unlawfully and unreasonably seeks to make the Debtors' creditors and customers responsible for the Debtors' bad acts. The Motion admits that "Prime utilized omnibus accounts, poor and improper accounting practices, and errant and intentionally corrupted internal recordkeeping, resulting in the Currency being improperly tracked and hopelessly commingled prior to and upon the bankruptcy filing." Motion, ¶ 14. The costs of remedying this fraud and mismanagement should not be born by Swan, its customers, or others with assets still remaining in the Debtors' custody. And certainly, any impacts should be felt proportionately by similarly-situated creditors, as required by the

---

[2] This cash grab is made worse considering that the Motion seeks to value the assets at the Petition Date, ignoring the significant appreciation in the price of cryptocurrency in the intervening year and a half.

- 4 -

Bankruptcy Code, not based on the Debtors' desire to misappropriate as many funds as possible from whatever entities possible in order to cobble together funds to fix its own errors and abuses.

This Court should not set the precedent that a Debtor's malfeasance or misfeasance in the commingling of assets or the poor management of records can extinguish a customer or creditor's property rights or the obligations of a fiduciary towards those to whom they owe a duty. This would allow a fiduciary to profit from the breach of its most basic obligation to safeguard the property of its beneficiaries.

> 2. *The Motion Inappropriately and Incorrectly Asserts, as a Key Foundation, that the Cryptocurrency Assets are Commingled and Cannot be Disaggregated*

A key foundation of the Motion is that the cryptocurrency held by the Debtors has been "hopelessly commingled" and therefore cannot be traced and distributed to creditors and customers. This is absurd, and demonstrates a failure to either understand the nature of the cryptocurrency assets at issue and/or to properly analyze the Debtors' books and records.

One of, if not the, key virtue of cryptocurrencies is that they are fundamentally impossible to commingle, because the on-chain identity of each token allows for precise asset tracing and distribution. Because cryptocurrencies such as Bitcoin are built on blockchain technology, they operate as separate ledgers and cannot be combined into a single account. Moreover, the blockchain technology allows for the tracing of cryptocurrencies, regardless of the negligent and intentional mishandling of records by the Debtors. Therefore, cryptocurrency deposits that are rightly the property of Swan and its customers should be identifiable and distributable on a pro rata basis. Moreover, there is no evidence (and none has been presented) that cryptocurrency balances were in fact commingled within the Fireblocks infrastructure.

The Motion asserts that such tracing and distribution is impossible due to the volume of holdings, but this again fails to comprehend the nature of cryptocurrencies. Because each cryptocurrency deposit is associated with a unique address, with every on-chain transaction visible in the

publicly verifiable ledger. Despite the Debtor's mismanagement of its records, the opposing sides of each transaction—for both cryptocurrency and fiat currency, or cash—can be traced and matched. Thus, robust forensic analysis is not only possible but routine and frequently performed in bankruptcies and other financial investigations.

### 3. The Motion Violates the Account Treatment Plan in this Case

The Motion must be denied because it fails to comply with the Account Treatment Plan. The Plan Administrator has combined the Notice and the Account Treatment Motion while not complying with the safeguards of (i) a procedure that addresses each customer (such as by providing for individualized adversary proceedings) or (ii) the basic meet and confer requirement for each customer as provided for under the Account Treatment Plan. The Court should reject the Motion and insist on fair and equitable treatment of all customers in accordance with the Account Treatment Plan.

### 4. The Motion Violates the Debtors' Fiduciary and Trust Obligations

The Motion attempts to disclaim any trust relationship or fiduciary obligations by the Debtors to creditors and customers, including Swan. In fact, the Motion makes only a single cursory statement to the effect that, in the Plan Administrator's judgment, "it is clear to the Plan Administrator that there was no fiduciary or trust relationship between the parties." Motion, at 2. This is nonsense. The documentation and agreements between Swan (and its customers) and the Debtors make clear that Prime Trust was acting as a trustee of Swan's and its customers' funds, and that Prime Trust therefore had fiduciary obligations to Swan and its customers. The Debtors held themselves out as custodians and fiduciaries, including but not limited to the content of their agreements with creditors and customers, as well as their public statements. Thus, there is a trust and a fiduciary relationship between the Debtors and Swan (and Swan's customers), a relationship on which Swan reasonably relied to its detriment.

**Reservation of Rights and Discovery**

To the extent that this Court does not summarily deny the Motion, the Court should enter a scheduling order permitting discovery, requiring the Debtors to produce evidentiary support for their position, and setting a full evidentiary hearing with respect to the Motion. Swan reserves its rights to seek discovery in connection with the Motion.

**CONCLUSION**

This Court should not permit the Debtors to inappropriately and unlawfully misappropriate Swan's, its customers', and other creditors' and customers' funds (both fiat and cryptocurrencies) in order to cover for the errors and misdeeds of the Debtors. The Motion is legally and factually incorrect, violates Swan's and its customers' rights, and should be denied.

Respectfully submitted,

CONNOLLY GALLAGHER LLP

Dated: February 5, 2025

By: /s/ Jeffrey C. Wisler
Jeffrey C. Wisler (Del. Bar. #2795)
1201 North Market Street, 20th Floor
Wilmington, DE 19801
Tel: (302) 757-7300
Fax: (302) 658-0380
Email: jwisler@connollygallagher.com

and

MANATT, PHELPS & PHILLIPS, LLP
Schuyler G. Carroll (pro hac vice pending)
7 Times Square
New York, NY 10036
Tel: (212) 790-4500
e-mail: SCarroll@manatt.com

*Attorneys for Electric Solidus, LLC d/b/a Swan Bitcoin*

#05861933