IN THE UNITED STATES BANKRUPTCY COURT

FOR THE DISTRICT OF DELAWARE

| | |
|---|---|
| In re:<br><br>Prime Core Technologies Inc., et al.<br><br>Debtors. | Chapter 11<br><br>Case No. 23-11161 (JKS)<br><br>(Jointly Administered)<br><br><br>**Obj. Deadline: Feb. 5, 2025 at 4:00 p.m. (ET)**<br><br>**Hearing Date: Feb. 14, 2025 at 10:00 a.m. (ET)** |

## LIMITED OBJECTION TO PLAN ADMINISTRATOR'S DETERMINATION THAT THE DEBTORS' ASSETS ARE PROPERTY OF THE BANKRUPTCY ESTATES

COMES NOW, the Creditor, Parth Patel (Email: parth33320@gmail.com), acting pro se, and hereby file this limited objection in response to the Plan Administrator's determination that the Debtors' assets are property of the Bankruptcy estates **(Document 919).**

This objection is broadly based on the following grounds:

a. Plan Administrator's claims that neither a trust nor a fiduciary relationship existed between Prime Trust and the end-users is grounded neither in law nor in fact.
b. Fraud, mismanagement, commingling of trust assets and inability to trace at least some of trust assets do not automatically terminate a trust nor discharge obligations as under a trust.
c. Prime Trust had assumed fiduciary duties and responsibility towards end-users as to assets in their accounts through their conduct and representations as a regulated custodian and trustee to the public at large, with such representations particularly directed at the end-users, and reasonable detrimental reliance that the end-users have suffered as a result.

## PRELIMINARY STATEMENT

As is part of general public knowledge, it is a well-known trite fact that Prime Trust is a Trust Company, and is registered and regulated by the State of Nevada as such. Simply as a matter of legal definition, Prime Trust's core business role and responsibility was to act as the trustee and custodian of customer assets, while owing fiduciary responsibility towards end-users, who are beneficiaries of the trust.

It is puzzling and bizarre to see repeated factually untrue claims by the Plan Administrator that no such trustee or fiduciary duties existed and that Prime Trust had the ability to hypothecate customer assets, especially when copies of actual agreements and representations provided by Prime Trust itself to the Creditor who are end-users suggest just the opposite. This had been reiterated by the Creditor to the Plan Administrator between February 9, 2024 and February 13, 2024 by means of zoom call(s), emails and extensive supplementary documentation containing matters of law and

fact. In addition, relevant facts pertaining to the Creditor as MyConstant (integrator) customer as trust beneficiaries have been previously made public via prior submissions before the Court in the present case. Any alternative supposition to that effect would be incredulous and akin to a bank in bankruptcy declaring that it had no banking relationship with its customer/client whatsoever, and that by the virtue of its so-called "user agreement", the customer agrees that there was no banking relationship whatsoever despite opening and maintaining checking/savings/deposit accounts for them. Notwithstanding the foregoing, the Creditor presents detailed case facts, arguments and analysis to refute any such assertions.

## ARGUMENT AND ANALYSIS

### A. Existence of trust and fiduciary duties

1. Contrary to claims in Document 919 (Preliminary Statement, P.10, P.11 and P.76), the end-user agreement(s) proffered by Prime Trust to the Creditor do not contain any explicit language whatsoever to the effect that there was neither a fiduciary nor a trust relationship between the parties.

2. To the contrary, Prime Trust describes itself as a "Custodian" and a "Directed Fiduciary" pursuant to Nevada regulations. This directly displaces any notion that all property held by the Debtor as of the Petition date is property of the Bankruptcy estate. Prime Trust Agreement appears to have been removed from Prime Trust's website and the exhibit shows the version of the document as of April 6, 2023.

3. NRS 163.554 explicitly states that *"Fiduciary" means a trustee or custodian under any instrument, or an executor, administrator or personal representative of a decedent's estate or any other person, including an investment trust adviser, trust protector or a trust committee which is acting in a fiduciary capacity for any person, trust or estate.*

4. In addition, Prime Trust declares that their duties are "ministerial in nature", and that they "shall collect and hold all funds when Custodial Property may mature, be redeemed or sold". Creditor had specifically exercised an option through the integrator's website (MyConstant, alias, Const LLC) to automatically escrow all of their balance with Prime Trust. Thus, a trust was created with the appropriate funds in the Creditor's favor, or that such a trust of specific assets ought to have been duly created by Prime Trust. This option was exercised well prior to Prime Trust declaring bankruptcy (and additionally, also before MyConstant ceased operations).

5. As previously elaborated, Prime Trust has forged customer signatures on "Prime Trust New Account Agreement" fraudulently, and now appears to seek to rely on subsequent unilateral 'agreement updates' to the original fraudulently executed agreement to claim rights to hypothecate customer assets. This is also directly at odds

with Prime Trust's public representations by means of a repost on Twitter/X that they do not hypothecate customer assets and that they are kept separate from corporate funds. In the present case, allegations of mismanagement, commingling of customer funds with corporate funds and widespread fraud by Prime Trust's management coupled with a fraudulent internal ledger is echoed by Plan Administrator himself **(Document 919,** Preliminary Statement and P.87).

6. The absence of any binding contractual agreements is further corroborated by the course of dealing between Prime Trust and end-users. Contrary to the so-called contractual agreements, there were no fees directly payable or ever demanded by Prime Trust as under the contract. Prime Trust did not itself provide a dedicated portal for the end-users as to where they could monitor the status of their custodial accounts, but rather directed end-users to their respective integrators instead for any account-related queries. The absence of such binding contractual agreements is no bar for the existence of trust and accompanying trustee and/or fiduciary duties.

7. Case circumstances clearly suggest that Prime Trust, acting through its ex-CEO, Scott Purcell, or otherwise, not only intended to assume fiduciary responsibilities towards the end-users, but also act as a trustee and custodian of customer assets.

8. The crux of the Creditor's argument is that a trust and a fiduciary relationship arose as a result of the Prime Trust's manifest intent, conduct, representations and the Creditor's reasonable reliance to their detriment in circumstances, and not because of a direct contractual agreement between Prime Trust and the Creditor.

## B. Subsequent commingling of trust assets and practical inability to trace assets

9. The substantive reason for existence of Prime Trust as a regulated trust company and a custodian of end-user account is for them to act as a trustee with fiduciary duties. This needs to be given an overriding effect given the overall intentions of the parties.

10. Equity continues regarding trust assets mixed with other property as separate property. Assets held in a trust are simply deemed to be not readily distinguishable in such a scenario. Misfeasance, malfeasance or nonfeasance by the trustee causing commingling of trust assets contrary to their duties cannot have the effect of extinguishing the trust, trustee duties or trustee liabilities itself. Any notion to the contrary would have the undesirable effect of allowing trustees to gain an undue benefit of discharging their liability and further duties through breach of trust and wrongful acts.

11. The Creditor does appreciate that subject matter certainty and specific identification is generally essential for formation and recognition of a trust. However, in the circumstances of immediate case, the Creditor presents an argument that a trust ought to be found (either as an actual trust, or imposed as a constructive trust) as to the mass of the Debtors' possessions - both commingled possessions and separate possessions (if and when found or recovered in the future) with the end-users being the beneficiaries of such a trust. This would have a desirable dual effect of enabling pro rata distributions as to commingled assets, as well as preserve separate/individual interests for assets that aren't commingled. This would further afford the end-users the added benefit and protection of a trust, while preserving flexibility in distributions as circumstances evolve. In particular, this would help ensure that obligations to the end-users as under the trust are preserved and survive liquidation of Prime Trust as a



legal entity.

12. Fiduciaries and trustees owe a strict duty to ensure the beneficial owner's assets and interests are safeguarded. This duty has been clearly breached as in this case, and fiduciaries and trustees are personally liable to restore the value of the beneficiaries' assets.

13. Tracing is, in essence, a factual inquiry as to the value of the assets and not necessarily as to the assets themselves. Where equities between harmed end-users are equal, and application of any tracing rules is likely to result in haphazard results (as may be the present case), the Court may apportion the mass of traceable funds in a pro rata fashion, proportionate to end-user's individual interests. Thus, to that extent, the Creditor does not object to the practical end result of the Plan Administrator's proposal, but take issue with the reasoning and the legal treatment of the funds behind such a decision/evaluation.

14. Further, treatment of Debtor's assets as part of the bankruptcy estate would deprive the Creditor of any legal benefit the trust mechanism affords, which the Creditor is already entitled to. In particular, the Creditor asserts exclusive interest in the funds that were escrowed (or ought to be) in their favor, and embezzled from the Creditor by the integrator (MyConstant) that Prime Trust is obligated to either recoup in the future or repay as the trustee of the assets. This duty can neither be discharged nor absolved unilaterally by Prime Trust merely by retroactively disavowing any trustee and fiduciary responsibilities owed by them to the end-users.

**SUMMARY**

1. The Creditor does not necessarily object to the result of the Plan Administrator's proposal - that is to distribute "hopelessly commingled" assets currently in possession pro rata, subject to applicable case facts and relevant laws, including tracing rules.

2. However, the Creditor believes that the legal basis put forth by the Plan Administrator is deeply flawed, given case facts, where it would cause real harm and injustice to the end-users in general and affect recoveries in specific circumstances. A finding of trust with accompanying fiduciary duties is likely to do justice to the parties, while preserving their present and future interests.

3. The Creditor has been harmed by unlawful activities of both the integrator (MyConstant) and Prime Trust, which played a key role in facilitating the fraud.

**CONCLUSION AND PRAYER**

4. The Creditor respectfully asks the Honorable Court for a specific declaration as to positively finding an existence of a trust in their favor, with Prime Trust as the trustee, owing fiduciary and trustee duties towards them.

5. Further, the Creditor asks the Honorable Court to direct the Plan Administrator to assume and execute on the responsibilities Prime Trust itself originally professed to have - that is to collect/repay all monies owed to the Creditor as under the trust that

were embezzled by the integrator (MyConstant) and reimburse them with the recouped funds.

6. The Creditor also pleads before the Honorable Court for relief in being made financially as whole as possible, in particular, with respect to their funds that were or ought to have been fully escrowed by Prime Trust. While the Creditor does realize the maxim that " quity deems as done that which ought to be done" isn't strictly legally binding per se, the Creditor requests the Honorable Court's consideration as to relative equities between the victims who may be differently situated.

7. Given the scale of fraud (Roughly, $23 million in principal amounts), the number of victims involved in MyConstant alone (Over five thousand), and considerable public interest and harm involved, the Creditor respectfully urge sthe Honorable Court to take serious cognizance of the issues herein and render justice by all means at its disposal.

## CERTIFICATE OF SERVICE

I HEREBY CERTIFY that the foregoing document is being served this day, February 04, 2025, on all counsel of record or prose parties in a manner or procedure authorized by law.

By:

/s/ Parth Patel

Parth Patel

Mailing Address:

13 Shannon Way,

Feasterville-Trevose,

Pennsylvania - 19053

United States of America

Email: parth33320@gmail.com

Phone: +1-215-345-5608